**S. AMANDA MARSHALL, OSB #95347**
United States Attorney
District of Oregon
**ADRIAN L. BROWN, OSB #05020**
adrian.brown@usdoj.gov
**BILLY J. WILLIAMS, OSB # 90136**
Bill.Williams@usdoj.gov
Assistant United States Attorneys
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone:     (503) 727-1003
Facsimile:     (503) 727-1117

**THOMAS E. PEREZ**
Assistant Attorney General
**JONATHAN M. SMITH**
Chief
**LAURA COON**
Special Counsel
**R. JONAS GEISSLER**
jonas.geissler@usdoj.gov
**MICHELLE JONES**
michelle.jones2@usdoj.gov
Senior Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
50 Pennsylvania Ave., NW
Washington, D.C.  20530
Telephone:     (202) 514-6255
Facsimile:     (202) 514-4883

  Attorneys for Plaintiff, United States

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF PORTLAND,<br><br>　　　　Defendant. | Case No. 3:12-cv-02265-SI<br><br>MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION |

## INTRODUCTION

The parties seek to resolve the Complaint filed by the United States pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 (1994) ("Section 14141") through entry of the attached proposed Settlement Agreement ("Agreement"). *See* Attachment 1. The United States' Complaint alleges that the Portland Police Bureau ("PPB") engages in a pattern or practice of using excessive force on individuals with actual or perceived mental illness in violation of the Fourth Amendment to the Constitution and other laws of the United States.

Specifically, the United States alleges that in encounters with persons with mental illness or perceived mental illness, PPB officers: (1) too frequently use a higher level of force than necessary; (2) use electronic control weapons ("ECWs"), commonly referred to as "Tasers," in circumstances when such force is not justified, or deploy ECWs more times than necessary on an individual; and (3) use a higher degree of force than justified for low level offenses.

The City of Portland ("City") disagrees with the conclusions of United States regarding PPB's alleged use of excessive force, but nonetheless has agreed to enter into the Agreement out of a mutual desire to protect the constitutional rights of all members of the Portland community, to continuously improve the safety and security of the people of Portland, to keep PPB employees safe, and to increase public confidence in PPB, all in a cost-effective, timely, and collaborative manner.

As further discussed below, entry of the proposed Settlement Agreement is appropriate in this case because: it is fair, adequate, and reasonable; resulted from arm's-length negotiations by sophisticated parties; is consistent with the purpose of Section 14141; and is the most effective way to implement the systemic reforms needed to address the allegations in the Complaint.

## ARGUMENT

Entry of the proposed Settlement Agreement is appropriate because it is fair, adequate, and reasonable, resulted from arm's-length negotiations by sophisticated parties, is consistent with the purpose of Section 14141, and is the most effective way to implement the systemic reforms needed to address the allegations in the Complaint.[1]  *Officers for Justice* v. *Civil Service Comm'n, et al.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *United States* v. *Oregon*, 913 F.2d 576, 586 (9th Cir. 1990); *Cemex Inc.* v. *L.A. County*, 166 Fed. Appx. 306, 307 (9th Cir. 2006) (finding that consent decree was negotiated in good faith and at "arm's length"). This analysis does not require "the achievement of the optimal outcome for all

---

[1]   This Agreement is not a consent decree, but is a settlement agreement that the parties agree should be subject to judicial oversight. In other contexts, the courts have used consent decree analysis to approve and retain judicial enforcement of court-enforceable agreements that were not consent decrees.  *See Oregon*, 913 F.2d at 580 (discussing approval and retained jurisdiction over the "Salmon Plan").

Page 3 -   Memorandum in Support of Joint Motion To Enter The Parties' Settlement Agreement; *U.S. v. City of Portland,* Case No. 3:12-cv-02265-SI

parties," but rather, "[t]he court need only be satisfied that the decree represents a reasonable factual and legal determination." *Id*. at 580-81.

Further, public policy favors settlement, particularly in complex litigation such as the pattern or practice claim brought by the United States. *Officers for Justice*, 688 F.2d at 625 ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution."); *United States* v. *McInnes*, 556 F.2d 436, 441 (9th Cir.1977) ("We are committed to the rule that the law favors and encourages compromise settlements."). In this case, the Agreement demonstrably reaches and surpasses the legal standard for court approval.

**I.     The Agreement Conforms to Section 14141 and is Fair, Adequate, and Reasonable**

Before approving a court-enforceable agreement, a district court must be satisfied that the Settlement Agreement is at least "fundamentally fair, adequate and reasonable." *Oregon*, 913 F.2d at 580. In making this determination, the courts balance several factors, including but not limited to: "strength of the plaintiffs' case; risk, expense, complexity and possible duration of continued litigation; relief offered in settlement; extent of discovery already completed; stage of proceedings; experience and views of counsel; governmental participation; and reaction of the class members." *See, e.g*., *Davis v. City and County of San Francisco*, 890 F.2d 1438, 1445 (9th Cir. 1989) (citing *Officers for Justice*, 688 F.2d at 625).). In addition, because court enforceable agreements are a form of judgment, they must conform to applicable laws. *Oregon*, 913 F.2d at 580 -581.

The parties' proposed Agreement in this case corresponds to the United States' authority to ensure constitutional policing practices through injunctive relief under Section 14141. Congress enacted Section 14141 to forbid law enforcement officers from engaging in a pattern or practice "that deprives persons of rights, privileges, or immunities secured or protected by the
Page 4 -     Memorandum in Support of Joint Motion To Enter The Parties' Settlement Agreement; *U.S. v. City of Portland,* Case No. 3:12-cv-02265-SI

Constitution or laws of the United States." 42 U.S.C. § 14141(a). The statute contains no limitation on the nature of the constitutional or federal rights that it protects. Where a pattern or practice of constitutional or statutory violations exists, Congress granted the Justice Department the authority to sue police departments to correct the underlying policies that lead to the misconduct. H.R. Rep. No. 102-242, at 137-138 (1991). Section 14141 authorizes the United States to seek injunctive relief to remedy violations, but does not establish an individual right to damages or provide for any other relief.

On September 13, 2012, following a 14-month investigation, the United States released a Findings Letter, which concluded that systemic deficiencies in PPB's policy, training, and supervisory oversight mechanisms resulted in a pattern or practice of PPB officers using excessive force against persons who have or are perceived to have mental illness ("the Findings"). *See* Declaration of Billy J. Williams (hereinafter "Williams Decl.") ¶ 8. Today, the United States filed a Complaint alleging that PPB is engaged in a pattern or practice of violating the Fourth Amendment and Section 14141 on account of PPB officers' use of excessive force against persons who have or are perceived to have mental illness. Complaint, ECF #1.

While the City disagrees with these allegations, the parties have nevertheless entered into an Agreement that requires the City and PPB to implement numerous reforms in the following areas to address the alleged systemic deficiencies: use of force policy, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement and oversight. Among other things, Defendant has agreed to revise PPB's use of force policies, restructure crisis intervention efforts, implement new training standards, refine officer accountability systems, and shorten the timeframe for resolving misconduct investigations and citizen complaints, while maintaining the quality of

investigations, as well as solicit public input in the reform process.  The extensive record, described below, demonstrates that the Agreement is tailored to the alleged deficiencies identified by the United States, while also being fair to the concerns of the community and incorporating significant community engagement and oversight.  Community input received by the parties also guided the structure of the Community Oversight Advisory Board, which is described in the Agreement.  *See* Williams Decl. ¶¶ 15, 18 and Declaration of Clay Roberts Neal (hereinafter "Neal Decl.) ¶¶ 11, 13, 16.  Accordingly, the Agreement is consistent with and furthers the objectives of Section 14141 because it embodies the agreement of the City and its police bureau to ensure that no pattern or practice of police misconduct exists.

The nexus between these agreed-upon reforms and the alleged pattern or practice of constitutional violations in the United States' Complaint provides strong evidence that the Agreement furthers the purpose of Section 14141 and is therefore fair, adequate, and reasonable.

## II. The Agreement Is a Result of Arm's-Length Negotiations, Supported by the Investigation, and Is Inclusive of Community Input.

The process of crafting the Agreement underscores its reasonableness and demonstrates that it is not the product of fraud, collusion, or overreaching.  *Officers for Justice*, 688 F.2d at 625; *State of Oregon*, 913 F.2d at 580; *Cemex Inc.*, 166 Fed. Appx. at 307  (finding that in a different legal context, that of a consent decree, the decree was negotiated in good faith and at "arm's length").  All of the Agreement's provisions derive from intense negotiations between sophisticated parties, which included extensive consideration of community input through written comments, public hearings, and personal and group meetings.  *See generally* Williams Decl.; Neal Decl.  The Agreement is not only tailored to the constitutional allegations of excessive force, but also includes the critical element of community engagement and oversight of the Agreement's implementation, which is necessary for the Agreement's success.

Page 6 -    Memorandum in Support of Joint Motion To Enter The Parties' Settlement Agreement; *U.S. v. City of Portland,* Case No. 3:12-cv-02265-SI

The parties engaged in intensive negotiations beginning shortly after the United States announced, on September 13, 2012, that its 14-month investigation into PPB's policies and practices regarding use of force revealed reasonable cause, under Section 14141, to believe that PPB engages in a pattern or practice of excessive force against persons with actual or perceived mental illness. *See* Williams Decl. ¶8. The United States also identified serious concerns about the lack of trust between PPB and certain minority communities within Portland. Just after the announcement of the Findings, the parties jointly released a Statement of Intent describing the broad concepts that would be included in a court-enforceable settlement agreement. *Id*. During the negotiations, the parties hosted public conference calls on October 2-3 for two hours each night allowing the public to provide comments and input on the parties' Statement of Intent. Williams Decl. ¶10. The parties also received written comments via email and hard copy from both individuals and organizations concerning their interests in remedial relief. *Id*. at ¶13; Neal Decl. ¶5.

The parties carefully considered the public comments in reaching the proposed Agreement that was submitted to City Council for public comment and consideration by Council on November 1, 2012. *Id*. During that hearing, Council heard from dozens of citizens who testified and received several written submissions of comments from individuals and organizations concerning the proposed Agreement. At the conclusion of the hearing, Mayor Sam Adams invited proposals for amendments to the Agreement and set a further hearing on proposed amendments for November 8, 2012. *See* Neal Decl ¶¶ 10-11. In between these hearings, City Commissioners and the Justice Department received additional written comments from both individuals and organizations and held individual and group meetings to discuss and address the suggestions and concerns raised within those comments. *See* Williams Decl. ¶13; Neal Decl.

Page 7 -    Memorandum in Support of Joint Motion To Enter The Parties' Settlement Agreement; *U.S. v. City of Portland,* Case No. 3:12-cv-02265-SI

¶11. The parties again engaged in additional negotiations regarding amendments arising from public comments and submitted a revised proposal to City Council on November 8, 2012. At that time, City Council heard additional public testimony and received additional written comments. At the conclusion of that hearing, Council unanimously voted to adopt the proposed amendments, and Mayor Adams scheduled a final vote for the Agreement on November 14, 2012. *See* Neal Decl. ¶12. On November 14, 2012, City Council voted unanimously to approve the Agreement. *Id.* at ¶14.

The public input that the parties received throughout the process of negotiation was not entirely consistent; nor did the parties incorporate all of the public's suggestions into the final proposed Agreement. *Id*. at ¶13. Nevertheless, the parties solicited, considered, and responded to public comment on multiple occasions prior to submitting the original proposed Agreement to City Council, as well as up to and including City Council's vote to approve the final proposed Agreement on November 14, 2012.

The Agreement reflects the parties' considered efforts to ensure that the causes of the alleged violations are remedied and do not recur. The parties are well versed in PPB's practices and have invested significant time considering public comment and negotiating the terms of the Agreement. During this process, both the United States and the City consulted with subject matter experts to ensure that each remedial measure in the Agreement is tailored to address the failures alleged and each measure may be reasonably implemented. This adversarial posture, combined with the respective duties of these government agencies towards those they represent, provides further assurance that the Agreement is fair, adequate, reasonable, and not the product of collusion. Accordingly, the Court may rely upon this posture and these duties in so finding.

Moreover, the United States' Findings, following a 14-month investigation, support the fairness, reasonableness, and adequacy of the Agreement. The United States' investigative team consisted of lawyers and other staff from the Civil Rights Division and the United States' Attorneys Office for the District of Oregon (collectively, "DOJ"), working closely with police and mental health professionals with expertise in the areas on which the investigation focused. *See* Williams Decl. ¶2. The City and PPB fully cooperated with the investigation. *See* Williams Decl. ¶5.

During its comprehensive inquiry, DOJ and its experts gathered information through interviews and meetings with PPB officers, supervisors and command staff, as well as members of the public, City and State officials, and community stakeholders. The investigation included on- and off-site review of a wide array of documents, and two on-site tours in which DOJ personnel and experts accompanied PPB officers on ride-alongs and met with mental health partners and stakeholders. *Id*. In sum, DOJ reviewed hundreds of thousands of pages of documents, including PPB policies and procedures, training materials, internal use of force reports, public reports, the Independent Police Review ("IPR") procedures and processes, and investigative files and data generated from PPB databases. *Id*. The investigation also included hundreds of interviews and meetings with PPB officers, supervisors and command staff, as well as City officials, local community advocates and attorneys, and members of the Portland community at large. *See* generally Williams Decl. DOJ hosted more than 50 individual interviews with community members as well as a town hall meeting with approximately 75 persons providing public comment. *Id.* The United States summarized the results of its investigation in its Findings. *See* Williams Decl. ¶8  While litigation of the City's liability may create an even more extensive factual record, litigation may not result in such a comprehensive

Page 9 -    Memorandum in Support of Joint Motion To Enter The Parties' Settlement Agreement; *U.S. v. City of Portland,* Case No. 3:12-cv-02265-SI

Agreement and would no doubt delay the implementation of necessary reforms. The results of DOJ's investigation establish a more than adequate factual record supporting the legitimacy of the Agreement.

Page 10 -   Memorandum in Support of Joint Motion To Enter The Parties' Settlement Agreement; *U.S. v. City of Portland,* Case No. 3:12-cv-02265-SI

## **CONCLUSION**

The proposed Agreement is fair, adequate, reasonable, and not the product of collusion. For the reasons described herein, the parties request that this Court enter the Agreement as an Order of the Court.

DATED this __17th__ day of ___December_____, 2012.

Respectfully submitted,

| | |
|---|---|
| S. AMANDA MARSHALL<br>United States Attorney<br>District of Oregon<br><br>*/s/ Adrian L. Brown*<br>ADRIAN L. BROWN<br>BILLY J. WILLIAMS<br>Assistant U.S. Attorneys | THOMAS E. PEREZ<br>Assistant Attorney General<br>Civil Rights Division<br>JONATHAN M. SMITH<br>Chief, Special Litigation Section<br><br>*/s/ Laura L. Coon*<br>LAURA L. COON<br>Special Counsel<br>*/s/ R. Jonas Geissler*<br>R. JONAS GEISSLER<br>*/s/ Michelle A. Jones*<br>MICHELLE A. JONES<br>Senior Trial Attorneys |

For the City of Portland:


*/s/ James H. Van Dyke*
JAMES H. VAN DYKE
City Attorney