**S. AMANDA MARSHALL, OSB #95347**
United States Attorney
District of Oregon
**ADRIAN L. BROWN, OSB #05020**
adrian.brown@usdoj.gov
**BILLY J. WILLIAMS, OSB # 90136**
Bill.Williams@usdoj.gov
Assistant United States Attorneys
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone:     (503) 727-1003
Facsimile:      (503) 727-1117

**THOMAS E. PEREZ**
Assistant Attorney General
**JONATHAN M. SMITH**
Chief
**LAURA COON**
Special Counsel
**R. JONAS GEISSLER**
jonas.geissler@usdoj.gov
**MICHELLE JONES**
michelle.jones2@usdoj.gov
Senior Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
50 Pennsylvania Ave., NW
Washington, D.C. 20530
Telephone:     (202) 514-6255
Facsimile:      (202) 514-4883

        Attorneys for Plaintiff, United States

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 3

I.     GENERAL PROVISIONS ................................................................... 5

II.    DEFINITIONS ....................................................................................... 7

III.   USE OF FORCE ................................................................................... 16

     A.   Use of Force Policy .......................................................... 17

     B.   Compliance Audits Related to Use of Force ...................... 22

IV.   TRAINING ........................................................................................... 28

V.    COMMUNITY-BASED MENTAL HEALTH SERVICES ............... 32

VI.   CRISIS INTERVENTION ................................................................. 35

     A.   Addictions and Behavioral Health Unit and Advisory Committee ...................... 36

     B.   Continuation of C-I Program ............................................ 37

     C.   Establishing "Memphis Model" Crisis Intervention Team ................................... 38

     D.   Mobile Crisis Prevention Team ......................................... 40

     E.   Service Coordination Team ................................................ 41

     F.   BOEC ................................................................................. 41

VII.  EMPLOYEE INFORMATION SYSTEM ......................................... 41

VIII. OFFICER ACCOUNTABILITY ....................................................... 43

     A.   Investigation Timeframe .................................................... 43

     B.   On Scene Public Safety Statements and Interviews ........... 44

     C.   Conduct of IA Investigations ............................................ 45

     D.   CRC Appeals ..................................................................... 49

     E.   Discipline ........................................................................... 49

     F.   Communication with Complainant and Transparency ........ 50

IX.   COMMUNITY ENGAGEMENT AND CREATION OF COMMUNITY OVERSIGHT ADVISORY BOARD .................................................. 50

X.    AGREEMENT IMPLEMENTATION AND ENFORCEMENT ........ 59

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

CITY OF PORTLAND,

Defendant.

Case No. 3:12-cv-02265-SI

SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2)

## <u>INTRODUCTION</u>

The United States and the City of Portland ("City") (collectively "the Parties") recognize that the vast majority of the City's police officers are honorable law enforcement professionals who risk their physical safety and well-being for the public good. The Parties enter into this Agreement with the goal of ensuring that the Portland Police Bureau ("PPB") delivers police services to the people of Portland in a manner that effectively supports officer and public safety, and complies with the Constitution and laws of the United States. Specifically, this Agreement is targeted to strengthen initiatives already begun by PPB to ensure that encounters between police and persons with perceived or actual mental illness, or experiencing a mental health crisis, do not result in unnecessary or excessive force.

The Parties recognize there has been an accelerating movement toward a model of police management that relies on both existing and still-developing management and

Page 3 —   SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 3 - Attachment 1

monitoring tools and systems. This model requires both vision and fiscal commitment, and is necessary to legitimate policing. The United States recognizes that PPB has endeavored to adopt components of modern management despite being a lean organization, and greatly appreciates the City's commitment, in this agreement, to provide PPB the fiscal support necessary to rapidly and fully implement a complete state-of-the-art management and accountability system. The Parties further recognize that the ability of police officers to protect themselves and the community they serve is largely dependent on the quality of the relationship they have with that community. Public and officer safety, constitutional policing, and the community's trust in its police force are, thus, interdependent. The full and sustained implementation of this Agreement is intended to protect the constitutional rights of all members of the community, continuously improve the safety and security of the people of Portland, keep PPB employees safe, and increase public confidence in PPB, all in a cost-effective, timely, and collaborative manner. The United States commends the City for the steps it already has taken to implement measures to effectuate these goals.

To fully achieve these goals, this Agreement requires the City and PPB to further revise or, where needed, adopt new policies, training, supervision, and practices in the following areas: the use of force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement.

This Agreement further requires that the City and PPB put in place more effective systems of oversight and self-correction that will identify and correct problems before

Page 4 −    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 4 - Attachment 1

they develop into patterns or practices of unconstitutional conduct and/or erode community trust.

This Agreement further identifies measures, to be met within fixed periods of time, that will assist the Parties and the community in determining whether: (1) the City has changed its procedures and taken the actions listed in this agreement; (2) community trust in PPB has increased; and (3) the improvements will be sustainable.

For these reasons, and noting the general principle that settlements are to be encouraged, particularly settlements between government entities, the Parties agree to implement this Agreement under the following terms and conditions.

## I.    **GENERAL PROVISIONS**

1.    The United States has filed a complaint in the Federal District Court for the District of Oregon in Portland, Oregon asserting that the City has engaged in a pattern and practice of constitutional violations pursuant to the authority granted to United States Department of Justice ("DOJ") under 42 U.S.C. § 14141 to seek declaratory or equitable relief to remedy a pattern or practice of conduct by law enforcement officers that deprives individuals of rights, privileges, or immunities secured by the Constitution or federal law. The City expressly denies that the allegations of the complaint are true.

2.    The Parties agree that nothing in this Agreement shall be construed as an admission of wrongdoing by the City or evidence of liability under any federal, state, or municipal law.  Upon execution of this Agreement by both Parties, the United States agrees to conditionally dismiss the complaint it filed with prejudice, subject to the Court retaining jurisdiction to enforce the Agreement, followed by final dismissal with prejudice upon performance of this Agreement.

Page 5 —    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
          *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

3.      This Agreement shall constitute the entire integrated agreement of the Parties.  No prior drafts or prior or contemporaneous communications, oral or written, shall be relevant or admissible for purposes of determining the meaning of any provisions herein in any litigation or any other proceeding.  If, in the course of interpreting this Agreement, there is an ambiguity that cannot be resolved by the Parties or in mediation, evidence including the Parties' course of dealing and parol evidence may be used.

4.      This Agreement is binding upon all Parties hereto, by and through their officials, agents, employees, and successors.  If the City establishes or reorganizes a government agency or entity whose function includes overseeing, regulating, accrediting, investigating, or otherwise reviewing the operations of PPB or any aspect thereof, the City agrees to ensure these functions and entities are consistent with the terms of this Agreement and shall incorporate the terms of this Agreement into the oversight, regulatory, accreditation, investigation, or review functions of the government agency or entity as necessary to ensure consistency.

5.      This Agreement is enforceable only by the Parties.  No person or entity is, or is intended to be, a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action, and accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement.  The Parties agree to defend the terms of this Agreement should they be challenged in this or any other forum.

6.      This Agreement is not intended to impair or expand the right of any person or organization seeking relief against the City, PPB, or any officer or employee thereof, for their conduct or the conduct of PPB officers; accordingly, it does not alter

Page 6 –      SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 6 - Attachment 1

legal standards governing any such claims by third parties, including those arising from city, state, or federal law.  This Agreement does not expand, nor will it be construed to expand access to any City, PPB, or DOJ document, except as expressly provided by this Agreement, by persons or entities other than DOJ, the City, and PPB.  All federal and state laws governing the confidentiality or public access to such documents are unaffected by the terms of this Agreement.

7.      The City shall be responsible for providing necessary support and resources to enable PPB to fulfill its obligations under this Agreement.  The improvements outlined in this Agreement will require the dedication of additional funds and personnel.

8.      The purpose of this Agreement is to ensure that the City and PPB, by and through their officials, agents, employees, and successors, undertake the actions required by the Agreement, which in turn will resolve the concerns expressed by the United States in its complaint.  The United States greatly appreciates the effort and expertise the current PPB leadership team has contributed to the investigation, agreement, and ongoing reform processes.  The United States feels that continuity of management and effort is essential for timely compliance with the terms of this Agreement.

## II.      <u>DEFINITIONS</u>

Unless otherwise noted, the following terms and definitions shall apply to this Agreement:

9.      "Chief" means the Chief of Police of the Portland Police Bureau or his or her authorized designee.

Page 7 –      SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 7 - Attachment 1

10.     "City" means the City of Portland, including its agents, officers, and employees in their official capacity.

11.     "C-I-Team" stands for Crisis Intervention Team.

12.     "C-I-Training" stands for Crisis Intervention Training, which is training on how to respond to persons in behavioral or mental health crisis, including persons under the influence of drugs or alcohol.  Officers who receive such training are "C-I-Trained."

13.     "City Auditor" is the City Auditor, whose duties regarding independent police oversight are governed by Portland City Code Chapter 3.21.

14.     "COCL" refers to the Compliance Officer Community Liaison, discussed in detail in Section X.

15.     "Complainant" means any person, including a PPB officer or employee, who makes a complaint against PPB or a sworn officer.

16.     "Complaint" means any complaint made to the City by a member of the public, a PPB officer, or a civilian PPB employee of alleged misconduct by a sworn PPB employee.

17.     Computer-Assisted Dispatch ("CAD") is a computerized method of dispatching police officers on a service call.  It can also be used to send messages to the dispatcher and store and retrieve data (i.e., radio logs, field interviews, schedules, etc.). PPB Manual 612.00.

18.     "CRC" is the Citizen Review Committee, whose duties are governed by Portland City Code Section 3.21.080.

Page 8 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 8 - Attachment 1

19.     "Critical firearm discharge" means each discharge of a firearm by a PPB officer.  This term includes discharges at persons where no one is struck.  This term is not intended to include discharges at the range or in training or negligent discharges not intended as an application of force, which are still subject to administrative investigation.

20.     "Day" means a calendar day.

21.     "Demographic category" means to the extent such information is currently collected by PPB, age, race, color, ethnicity, national origin, religion, gender, disability, sexual orientation, source of income, or gender identity.

22.     "Discipline" means a personnel action for violation of an established law, regulation, rule, or PPB policy, including written reprimand, suspension, demotion, or dismissal.

23.     "DOJ" refers jointly to the Civil Rights Division of the United States Department of Justice and the United States Attorney's Office for the District of Oregon.

24.     "ECW" means Electronic Control Weapon, a weapon, including Tasers, designed primarily to discharge electrical charges into a subject that will cause involuntary muscle contractions and overrides the subject's voluntary motor responses.

25.     "ECW application" means the contact and delivery of electrical impulse to a subject with an ECW.

26.     "Effective Date" means the date this Agreement is entered by the Court.

27.     "EIS" means the Employee Information System as provided in PPB Manual 345.00.

28.     "Ensure" means that the City and PPB are using objectively good faith efforts to achieve the outcome desired.

Page 9 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 9 - Attachment 1

29.     "Exigent circumstances" means circumstances in which a reasonable person would believe that imminent and serious bodily harm to a person or persons is about to occur.

30.     "Firearm" is any instrument capable of discharging ammunition as defined in PPB Manual 1020.00.

31.     "Force" means any physical coercion used to effect, influence or persuade an individual to comply with an order from an officer.  The term shall not include the ordinary handcuffing of an individual who does not resist.

32.     "IA" means the Internal Affairs unit of PPB's Professional Standards Division ("PSD").

33.      "Implement" or "implementation" means the development or putting into place of a policy or procedure, including the appropriate training of all relevant personnel, and the consistent and verified performance of that policy or procedure in actual practice through the regular use of audit tools.

34.     "Including" means "including, but not limited to."

35.     "Inspector" is a command position in the PSD responsible for reviewing all uses of force and making recommendations regarding improvements to systems of accountability in relation to force management.

36.     "IPR" means the Independent Police Review Division, an independent, impartial office, readily available to the public, responsible to the City Auditor, empowered to act on complaints against sworn PPB members for alleged misconduct, and recommend appropriate changes of PPB policies and procedures toward the goals of safeguarding the rights of persons and of promoting higher standards of competency,

Page 10 −     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 10 - Attachment 1

efficiency, and justice in the provision of community policing services, governed by Portland City Code Chapter 3.21.

37.      "Less-lethal" force means a force application that is not intended or expected to cause death or serious injury and that is commonly understood to have less potential for causing death or serious injury than conventional, more lethal police tactics. Nonetheless, use of less-lethal force can result in death or serious injury.

38.      "Lethal force" means any use of force likely to cause death or serious physical injury, including the use of a firearm, carotid neck hold, or strike to the head, neck, or throat with a hard object.

39.      "Line Investigation" or "Directive 940.00 Investigation" means the use of force investigation conducted pursuant to PPB Directive 940.00.

40.      "Mental Health Crisis" means an incident in which someone with an actual or perceived mental illness is experiencing intense feelings of personal distress (e.g., anxiety, depression, anger, fear, panic, hopelessness), obvious changes in functioning (e.g., neglect of personal hygiene, unusual behavior) and/or catastrophic life events (e.g., disruptions in personal relationships, support systems or living arrangements; loss of autonomy or parental rights; victimization or natural disasters), which may, but not necessarily, result in an upward trajectory of intensity culminating in thoughts or acts that are dangerous to self and/or others.

41.      "Mental Illness" is a medical condition that disrupts an individual's thinking, perception, mood, and/or ability to relate to others such that daily functioning and coping with the ordinary demands of life are diminished.  Mental illness includes, but is not limited to, serious mental illnesses such as major depression, schizophrenia, bipolar

Page 11 –      SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
              *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

disorder, obsessive compulsive disorder ("OCD"), panic disorder, posttraumatic stress disorder ("PTSD"), and borderline personality disorder. Mental illness includes individuals with dual diagnosis of mental illness and another condition, such as drug and/or alcohol addiction.

42.     "Misconduct" means conduct by a sworn officer that violates PPB regulations or orders, or other standards of conduct required of City employees.

43.     "Misconduct complaint" means any allegation of improper conduct by a sworn officer, whether the complaint alleges corruption or other criminal misconduct; a violation of law; or a violation of PPB policy, procedure, regulations, orders, or other standards of conduct required of City employees including, but not limited to, the improper use of force. This definition is not intended to create a right of appeal to the CRC for lethal force or in-custody death cases.

44.     "Mobile Crisis Prevention Team" (formerly Mobile Crisis Unit) means the team of a PPB patrol officer and mental health case worker who are specifically detailed to conduct outreach and response to persons with known mental illness or experiencing an actual or perceived mental health crisis, with the goal of intervening with individuals before a crisis exists and to link the individual with community mental health services.

45.      "Non-disciplinary corrective action" refers to action other than discipline taken by a PPB supervisor to enable or encourage an officer to improve his or her performance.

46.     "Passive resistance" means non-compliance with officer commands that is non-violent and does not pose an immediate threat to the officer or the public.

47.     "Personnel" means PPB officers and employees.

Page 12 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 12 - Attachment 1

48.     "Police officer" or "officer" means any law enforcement agent employed by or volunteering for PPB, including supervisors, reserve officers, and cadets.

49.     Police Review Board ("PRB") is an advisory body to the Chief governed by Portland City Code § 3.20.140.  The PRB makes recommendations as to findings and proposed officer discipline to the Chief.

50.     "Policies and procedures" means regulations or directives, regardless of the name, describing the duties, functions, and obligations of PPB officers and/or employees, and providing specific direction in how to fulfill those duties, functions, or obligations.

51.     "PPB Manual" refers to PPB's Policy and Procedure Manual, revised January 2009, and includes the most current edition and supplements thereto.

52.     "PPB unit" or "unit" means any designated organization of officers within PPB, including precincts and specialized units.

53.     Portland Police Data System ("PPDS") is PPB's records management system that integrates officers' access to other agency systems such as LEDS, NCIC/III, DMV, DA-Crimes, ESWIS and OJIN.  *See, e.g.*, PPB Manual 1226.00.

54.     "Precinct" refers to one of the service areas of PPB, which together cover the entire geographic area of the City of Portland.  Each precinct is led by a precinct commander.

55.     "Probable cause" means that there is a substantial objective basis for believing that, more likely than not, an offense has been committed and a person to be arrested has committed it.

Page 13 —    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 13 - Attachment 1

56.     "PSD" means the Professional Standards Division, the PPB unit charged with, among other tasks, conducting or overseeing all internal and administrative investigations of PPB officers, agents, and employees arising from complaints, whose current duties are governed by PPB Manual 330.00.

57.     "Qualified Mental Health Professional" means an individual who has, at a minimum,  a masters-level education and training in psychiatry, psychology, counseling, social work, or psychiatric nursing, and is currently licensed by the State of Oregon to deliver those mental health services he or she has undertaken to provide.

58.     "Serious Use of Force" means:  (1) all uses of force by a PPB officer that reasonably appear to create or do create a substantial risk of death, serious disfigurement, disability, or impairment of the functioning of any body part or organ; (2) all critical firearm discharges by a PPB officer; (3) all uses of force by a PPB officer resulting in a significant injury, including a broken bone, an injury requiring hospitalization, or an injury deemed to be serious by an officer's supervisor; (4) all head, neck, and throat strikes with an object or carotid neck holds; (5) force used upon juveniles known or reasonably assumed to be under 15 and females known or reasonably assumed to be pregnant; (6) all uses of force by a PPB officer resulting in a loss of consciousness; (7) more than two applications of an ECW on an individual during a single interaction, regardless of the mode or duration of the application, regardless of whether the applications are by the same or different officers, and regardless of whether the ECW application is longer than 15 seconds, whether continuous or consecutive; (8) any strike, blow, kick, ECW application, or similar use of force against a handcuffed, otherwise

Page 14 —     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
                *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 14 - Attachment 1

restrained, under control, or in custody subject with or without injury; and (9) any use of force referred by an officer's supervisor to IA that IA deems serious.

59.    "Shall" means a mandatory duty.

60.    "Supervisor" means a sworn PPB employee at the rank of sergeant or above (or anyone acting in those capacities) and non-sworn personnel with oversight responsibility for other officers.

61.    "Supported by evidence" means the standard of proof applied in CRC appeals pursuant to Portland City Code Section 3.21.160.  A finding regarding a complaint is "supported by the evidence" when a reasonable person could make the finding regarding a complaint in light of the evidence, whether or not the reviewing body agrees with the finding.  The CRC decides whether the recommended finding is supported by the evidence using a reasonable person standard, that is, the CRC decides whether City decision makers could have reached the conclusion they reached based on the evidence developed by the investigation.

62.    "Training" means any adult-learning methods that incorporate role-playing scenarios and interactive exercises that instruct officers about how to exercise their discretion at an administrative level, as well as traditional lecture formats.  Training also includes testing and/or writings that indicate that the officer comprehends the material taught.

63.    "Use of Force" means any physical coercion used to effect, influence, or persuade an individual to comply with an order from an officer, above unresisted handcuffing, including actively pointing a firearm at a person.

Page 15 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
    *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 15 - Attachment 1

64.    "Use of force that could result in criminal charges" means that use of force that a reasonable and trained supervisor could conclude would result in criminal charges due to the apparent circumstances, such as:  (a) the level of force used as compared to the offense committed or resistance encountered; (b) material discrepancies between the force actually used and the use of force as described by the officer; or (c) the nature of the injuries.

65.    "Welfare Check" means a response by PPB to a call for service that is unrelated to an allegation of criminal conduct, but is instead to determine whether a person requires assistance for a medical or mental health crisis.

### III.    <u>USE OF FORCE</u>

PPB shall revise its existing use of force policy and force reporting requirements to ensure that all force, particularly force involving persons with actual or perceived mental illness:  (a) is used only in accordance with the Constitution and laws of the United States; (b) is no greater than necessary to accomplish a lawful objective; (c) is properly documented, reported, and accounted for; and (d) is properly investigated, reviewed, evaluated, and, if necessary, remedied.  PPB shall attempt to avoid or minimize the use of force against individuals in perceived behavioral or mental health crisis, or those with mental illness and direct such individuals to the appropriate services where possible.  In addition, PPB shall ensure that officers use non-force and verbal techniques to effect compliance with police orders whenever feasible, especially in the course of conducting welfare checks or effecting arrests for minor offenses or for persons whom officers have reason to believe are experiencing a mental health crisis; de-escalate the use of force at the earliest possible moment; only resort to those use of force weapons,

Page 16 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 16 - Attachment 1

including less-lethal weapons, as necessary; and refrain from the use of force against individuals who are already under control by officers, or who may express verbal discontent with officers but do not otherwise pose a threat to officers or others, or impede a valid law enforcement function.  To achieve these outcomes, PPB shall implement the requirements set out below.

**A.       Use of Force Policy**

66.       PPB shall maintain the following principles in its existing use of force policies:

> a.       PPB shall use only the force reasonably necessary under the totality of circumstances to lawfully perform its duties and to resolve confrontations effectively and safely; and
>
> b.       PPB expects officers to develop and display, over the course of their practice of law enforcement, the skills and abilities that allow them to regularly resolve confrontations without resorting to force or the least amount of appropriate force.

67.       PPB shall add to its use of force policy and procedures the following use of force principles:

> a.       Officers shall use disengagement and de-escalation techniques, when possible, and/or call in specialized units when practical, in order to reduce the need for force and increase officer and civilian safety;
>
> b.       In determining whether to use force, officers will take into account all information, when feasible, including behavior, reports, and

Page 17 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 17 - Attachment 1

known history as conveyed to or learned by the officer by any means, indicating that a person has, or is perceived to have, mental illness;

c. The use of force shall be de-escalated as resistance decreases and the amount of force used, including the number of officers who use force, shall de-escalate to a level reasonably calculated to maintain control with the least amount of appropriate force; and

d. Objectively unreasonable uses of force shall result in corrective action and/or discipline, up to and including termination.

## 1. Electronic Control Weapons

68.     PPB shall revise PPB Directive 1051.00 regarding Taser, Less-Lethal Weapon System to include the following principles:

a. Prohibition against the use of ECWs for pain compliance against those suffering from mental illness or emotional crisis except in exigent circumstances, and then only to avoid the use of a higher level of force;

b. Unless it would present a danger to the officer or others, that officers shall issue a verbal warning, or attempt to utilize hand signals where there is a language barrier or the subject is hearing impaired, prior to deploying their ECW;

c. Officers shall follow protocols developed by PPB in conjunction with medical professionals on their responsibilities following ECW use;

Page 18 −     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
      *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 18 - Attachment 1

d.     Only one ECW at a time may be used on a subject, intentionally, except where lethal force would be permitted;

e.     After one standard ECW cycle (5 seconds), the officer shall reevaluate the situation to determine if subsequent cycles are necessary, including waiting for a reasonable amount of time to allow the subject to comply with the warning.  Officers shall describe and explain the reasonableness of each ECW cycle in their use of force reports;

f.     Officers shall make every reasonable effort to attempt handcuffing during and between each ECW cycle.  Officers should avoid deployments of more than three ECW cycles unless exigent circumstances warrant use;

g.     ECWs shall not be used on handcuffed or otherwise restrained persons, unless doing so is necessary to prevent them from causing serious physical injury to themselves or others, or if lesser attempts of control have been ineffective and/or to avoid greater application of use of force; and

h.     Officers receive annual ECW in service training including proficiency and policy changes, if any.

**2.   Use of Force Reporting Policy and Use of Force Report**

69.     PPB shall revise its policies related to use of force reporting, as necessary, to require that:

Page 19 −   SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 19 - Attachment 1

a.      All PPB officers that use force, including supervisory officers,

draft timely use of force reports that include sufficient information

to facilitate a thorough review of the incident in question by

supervisory officers; and

b.      All officers involved or witnesses to a use of force provide a full

and candid account to supervisors.

**3.   Use of Force Supervisory Investigations and Reports**

70.      PPB shall continue enforcement of Directive 940.00, which requires

supervisors who receive notification of a force event to respond to the scene, conduct an

administrative review and investigation of the use of force, document their findings in an

After Action Report and forward their report through the chain of command.  PPB shall

revise Directive 940.00 to further require that supervisory officers:

a.      Complete After Action Reports within 72 hours of the force event;

b.       Immediately notify his or her shift supervisor and PSD regarding

all officer's Serious Use of Force, any Use of Force against

persons who have actual or perceived mental illness, or any

suspected misconduct.  Where the supervisor suspects possible

criminal conduct, the supervisor shall notify the PPB Detective

Division.  Where there is no misconduct, supervisors also shall

determine whether additional training or counseling is warranted.

PPB shall then provide such counseling or training consistent with

this Agreement;

Page 20 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 20 - Attachment 1

c.     Where necessary, ensure that the subject receives medical attention from an appropriate medical provider; and

d.     Interview officers individually and not in groups.

71.     PPB shall maintain adequate patrol supervision staffing, which at a minimum, means that PPB and the City shall maintain its current sergeant staffing level, including the September 2012 addition of 15 sergeants.

72.     PPB shall develop a supervisor investigation checklist to ensure that supervisors carry out these force investigation responsibilities.  PPB shall review and revise the adequacy of this checklist regularly, at least annually.

73.     PPB shall revise its policies concerning chain of command reviews of After Action Reports, as necessary, to require that:

a.     EIS tracks all Directive 940.00 comments, findings and corrections;

b.     All supervisors in the chain of command are subject to and receive corrective action or discipline for the accuracy and completeness of After Action Reports completed by supervisors under their command;

c.     All supervisors in the chain of command are accountable for inadequate reports and analysis;

d.     A supervisor receives the appropriate corrective action, including training, demotion, and/or removal from a supervisory position when he or she repeatedly conducts deficient investigations. Where a shift commander, or precinct commander, repeatedly

Page 21 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
             *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

permits deficient investigations, the shift commander, or precinct

commander, receives the appropriate corrective action, including

training, demotion, and/or removal from a supervisory position;

e.     When, after investigation, a use of force is found to be out of

policy, PPB shall take appropriate corrective action consistent with

the Accountability provisions of this Agreement;

f.     Where the use of force indicates policy, training, tactical, or

equipment concerns, the immediate supervisor shall notify the

Inspector and the Chief, who shall ensure that PPB timely conducts

necessary training and that PPB timely resolves policy, tactical, or

equipment concerns; and

g.     The Chief or designee, as well as PSD, has discretion to re-assign a

use of force investigation to the Detective Division or any PPB

supervisor.

**B.      Compliance Audits Related to Use of Force**

74.     In consultation with the COCL, the Inspector, as part of PPB's quarterly

review of force, will audit force reports and Directive 940.00 Investigation Reports to

ensure that:

a.     With respect to use of force generally:

i.     reports describe the mental health information available to officers

and the role of that information in their decision making;

ii.     officers do not use force against people who engage in passive

resistance that does not impede a lawful objective;

Page 22 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 22 - Attachment 1

iii.   when resistance decreases, officers de-escalate to a level reasonably calculated to maintain control with the least amount of appropriate force;

iv.   officers call in specialty units in accordance with procedure;

v.   officers routinely procure medical care at the earliest available opportunity when a subject is injured during a force event; and

vi.   officers consistently choose options reasonably calculated to establish or maintain control with the least amount of appropriate force.

b.   With respect to ECW usages:

i.   ECW deployment data and Directive 940.00 reports are consistent, as determined by random and directed audits.  Discrepancies within the audit should be appropriately investigated and addressed;

ii.   officers evaluate the reasonableness and need for each ECW cycle and justify each cycle; when this standard is not met, this agreement requires supervisor correction;

iii.   officers are universally diligent in attempting to use hands-on control when practical during ECW cycles rather than waiting for compliance; and

iv.   officers do not attempt to use ECW to achieve pain compliance against subjects who are unable to respond rationally unless doing

Page 23 –   SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 23 - Attachment 1

so is reasonably calculated to prevent the use of a higher level of force.

c.      With respect to use of force reporting, the reports:

    i.  are completed as soon as possible after the force incident occurs, but no later than the timeframes required in policy;

    ii.  include a detailed description of the unique characteristics of the event, using common everyday language, sufficient to allow supervisors to accurately evaluate the quality of the officer's decision making and performance;

    iii.  include a decision point description of the force decision making;

    iv.  include a detailed description of the force used, to include descriptive information regarding the use of any weapon;

    v.  include a description of any apparent injury to the suspect, any complaint of injury, or the absence of injury (including information regarding any medical aid or on-scene medical evaluation provided);

    vi.  include the reason for the initial police presence;

    vii.  include a description of the level of resistance encountered by each officer that led to each separate use of force and, if applicable, injury;

    viii.   include a description of why de-escalation techniques were not used or whether they were effective;

Page 24 —   SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 24 - Attachment 1

ix.  include whether the individual was known by the officer to be mentally ill or in mental health crisis;

x.  include a general description of force an officer observes another officer apply; and

xi.  demonstrate that officers consistently make diligent efforts to document witness observations and explain when circumstances prevent them from identifying witnesses or obtaining contact information.  Reports will include all available identifying information for anyone who refuses to provide a statement.

75.  In consultation with the COCL, the Inspector shall audit force reports and Directive 940.00 investigations to determine whether supervisors consistently:

a.  Complete a Supervisor's After Action Report within 72 hours of notification;

b.  Review all use of force reports to ensure they include the information required by this Agreement and PPB policy;

c.  Evaluate the weight of the evidence;

d.  Use a "decision-point" approach to analyze each use of force;

e.  Determine whether the officer's actions appear consistent with PPB policy, this Agreement, and best practices;

f.  Determine whether there was legal justification for the original stop and/or detention;

Page 25 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 25 - Attachment 1

g.  Assess the incident for tactical and training implications, including whether the use of force may have been avoided through the use of de-escalation techniques or lesser force options;

h.  Determine whether additional training or counseling is warranted;

i.  Implement corrective action whenever there are material omissions or inaccuracies in the officers' use of force report, and for failing to report a use of force, whether applied or observed;

j.  Document any non-disciplinary corrective action to remedy training deficiencies, policy deficiencies, or poor tactical decisions in EIS;

k.  Notify PSD and the shift supervisor of every incident involving an officer's Serious Use of Force, and any Use of Force that could appear to a reasonable supervisor to constitute misconduct; and

l.  Notify the Detective Division and shift supervisor of every force incident in which it could reasonably appear to a supervisor that an officer engaged in criminal conduct.

76.  In consultation with the COCL, the Inspector shall conduct a quarterly analysis of force data and supervisors' Directive 940.00 reports designed to:

a.  Determine if significant trends exist;

b.  Determine if there is variation in force practice away from PPB policy in any unit;

c.  Determine if any officer, PPB unit, or group of officers is using force differently or at a different rate than others, determine the

Page 26 –  SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 26 - Attachment 1

reason for any difference and correct or duplicate elsewhere, as appropriate;

    d.     Identify and correct deficiencies revealed by the analysis; and

    e.     Document the Inspector's findings in an annual public report.

77.     In consultation with the COCL, the Inspector shall audit the adequacy of chain of command reviews of After Action Reports using the following performance standards to ensure that all supervisors in the chain of command:

    a.  Review Directive 940.00 findings using a preponderance of the evidence standard;

    b.  Review Directive 940.00 reports to ensure completeness and order additional investigation, when necessary;

    c.  Modify findings as appropriate and document modifications;

    d.  Order additional investigation when it appears that there is additional relevant evidence that may assist in resolving inconsistencies or improve the reliability or credibility of the findings and counsel the investigator;

    e.  Document any training deficiencies, policy deficiencies, or poor tactical decisions, ensure a supervisor discusses poor tactical decisions with the officer and ensure the discussion is documented in EIS;

    f.  Suspend an investigation immediately and notify the branch Assistant Chief, the Director of PSD, and the Detectives Division whenever the investigating supervisor, shift commander or Division

Page 27 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 27 - Attachment 1

commander finds evidence of apparent criminal conduct by a PPB

officer; and

g.   Reports a matter to PSD for review and investigation whenever an

investigating supervisor, shift commander or precinct commander

finds evidence of apparent misconduct by a PPB officer or

employee.

## IV.        TRAINING

78.     All aspects of PPB training shall reflect and instill agency expectations

that officers are committed to the constitutional rights of the individuals who have or are

perceived to have mental illness whom they encounter, and employ strategies to build

community partnerships to effectively increase public trust and safety.  To achieve these

outcomes, PPB shall implement the requirements below.

79.     The Training Division shall review and update PPB's training plan

annually.  To inform these revisions, the Training Division shall conduct a needs

assessment and modify this assessment annually, taking into consideration:  (a) trends in

hazards officers are encountering in performing their duties; (b) analysis of officer safety

issues; (c) misconduct complaints; (d) problematic uses of force; (e) input from members

at all levels of PPB; (f) input from the community; (g) concerns reflected in court

decisions; (h) research reflecting best practices; (i) the latest in law enforcement trends;

(j) individual precinct needs; and (k) any changes to Oregon or federal law or  PPB

policy.

80.     Within 180 days of the Effective Date, PPB shall develop and implement a

process that provides for the collection, analysis, and review of data regarding the

Page 28 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
              *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

effectiveness of training for the purpose of improving future instruction, course quality, and curriculum.  These evaluations shall measure and document student satisfaction with the training received; student learning as a result of training; and the extent to which program graduates are applying the knowledge and skills acquired in training to their jobs.  This audit shall be reported to the Training Division Manager and shall include student evaluations of the program and the instructor.

81.     PPB shall ensure that the Training Division is electronically tracking, maintaining, and reporting complete and accurate records of current curricula, lesson plans, training delivered, attendance records, and other training materials in a central, commonly-accessible, and organized file system.  Each officer's immediate supervisor shall review the database for the officers under his/her command at least semi-annually.

82.     PPB shall report training delivered and received semi-annually to the Assistant Chief of Operations and, during the pendency of this Agreement, to DOJ.

83.     PPB shall institute guidelines to govern its selection of officers that serve as trainers and shall ensure that those officers do not have a history of using excessive force.   The trainer selection guidelines shall prohibit the selection of officers who have been subject to disciplinary action based upon the use of force or mistreatment of people with mental illness within the three (3) preceding years, or twice in the preceding five (5) years, and will take into account if a civil judgment has been rendered against the City in the last five (5) years based on the officer's use of force.

84.     All training that PPB provides shall conform to PPB's current policies at the time of training.  PPB shall train all officers on the Agreement's requirements during the next in-service training scheduled.

Page 29 −    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
              *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 29 - Attachment 1

a.     With respect to patrol officers, PPB shall:

    i. increase the use of role-playing scenarios and interactive exercises that illustrate proper use of force decision making, specifically including interactions with people who have or are perceived to have mental illness, including training officers on the importance and impact of ethical decision making and peer intervention;

    ii. emphasize the use of integrated de-escalation techniques, when appropriate, that encourage officers to make arrests without using force;

    iii. continue to provide training regarding an officer's duty to procure medical care whenever a subject is injured during a force event, and enhance and revise training as necessary to ensure that PPB's training in this regard is proactive and responsive to deficiencies identified by the Inspector, if any;

    iv. continue to train on proactive problem solving and to utilize, when appropriate, disengagement, area containment, surveillance, waiting out a subject, summoning reinforcements, requesting specialized units, including CIT officers and mental health professionals, or delaying arrest;

    v. describe situations in which a force event could lead to potential civil or criminal liability; and

    vi. continue to train officers to avoid using profanity, prohibit using derogatory/demeaning labels, and also avoiding terms not currently

Page 30 —   SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 30 - Attachment 1

appropriate for person-center communication, such as the term

"mentals," in all work-related settings and communications, as

well as when interacting with the public.

b.    With respect to supervisors, provide additional training on how to:

i.    conduct use of force investigations, including the supervisory

investigatory responsibilities identified in **Section III.A.3**;

ii.   evaluate officer performance as part of PPB's annual performance

evaluation system; and

iii.  foster positive career development and impose appropriate

disciplinary sanctions and non-disciplinary corrective action.

85.    In consultation with the COCL, the Inspector shall audit the training

program using the following performance standards to ensure that PPB does the

following:

a.    Conducts a comprehensive needs assessment annually;

b.    Creates a Training Strategic Plan annually;

c.    Within 180 days of the Effective Date, develops and implements a

process for evaluation of the effectiveness of training;

d.    Maintains accurate records of Training delivered, including

substance and attendance;

e.    Makes Training Records accessible to the Director of Services,

Assistant Chief of Operations, and DOJ;

f.    Trains Officers, Supervisors, and Commanders on areas specific to

their responsibilities; and

Page 31 —    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

g.    Ensures that sworn PPB members are provided a copy of all PPB directives and policies issued pursuant to this Agreement, and sign a statement acknowledging that they have received, read, and had an opportunity to ask questions about the directives and/or policies, within 30 days of the release of the policy.

86.    In consultation with the COCL, the Inspector shall gather and present data and analysis on a quarterly basis regarding patterns and trends in officers' uses of force to the Chief, the PPB Training Division, and to the Training Advisory Council. The Training Division and Training Advisory Council shall make written recommendations to the Chief regarding proposed changes in policy, training, and/or evaluations based on the data presented. The Inspector shall also, in coordination with the COCL and PSD, identify problematic use of force patterns and training deficiencies. The Chief's Office shall assess all use of force patterns identified by the Training Division and/or Training Advisory Council and timely implement necessary remedial training to address deficiencies so identified.

87.    Training Advisory Council meetings will be open to the public unless the matter under discussion is confidential or raises public safety concerns, as determined by the Chief.

## V.    COMMUNITY-BASED MENTAL HEALTH SERVICES

88.    The absence of a comprehensive community mental health infrastructure often shifts to law enforcement agencies throughout Oregon the burden of being first responders to individuals in mental health crisis. Under a separate agreement, the United States is working with State of Oregon officials in a constructive, collaborative manner to

Page 32 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
              *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

address the gaps in state mental health infrastructure. The state-wide implementation of an improved, effective community-based mental health infrastructure should benefit law enforcement agencies across the State, as well as people with mental illness. The United States acknowledges that this Agreement only legally binds the City to take action. Nonetheless, in addition to the City, the United States expects the City's partners to help remedy the lack of community-based addiction and mental health services to Medicaid clients and uninsured area residents. The City's partners in the provision of community-based addiction and mental health services include: the State of Oregon Health Authority, area Community Care Organizations ("CCOs"), Multnomah County, local hospitals, health insurance providers, commercial health providers, and existing Non-Governmental Organizations ("NGOs") such as community-based mental health providers, and other stakeholders.

89.     The United States expects that the local CCOs will establish, by mid-2013, one or more drop-off center(s) for first responders and public walk-in centers for individuals with addictions and/or behavioral health service needs. All such drop off/walk in centers should focus care plans on appropriate discharge and community-based treatment options, including assertive community treatment teams, rather than unnecessary hospitalization.

90.     The CCOs will immediately create addictions and mental health-focused subcommittee(s), which will include representatives from PPB's Addictions and Behavioral Health Unit ("ABHU"), the ABHU Advisory Board, Portland Fire and Rescue, Bureau of Emergency Communications ("BOEC") and other City staff. These

Page 33 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
             *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 33 - Attachment 1

committees will pursue immediate and long-term improvements to the behavioral health care system.  Initial improvements include:

    a.    Increased sharing of  information, subject to lawful disclosure, between agencies and organizations including BOEC, Multnomah County, and health care providers to create an information exchange among first responders and providers to better serve those suffering from mental illness;

    b.    Creation of rapid-access clinics so those in crisis have access to timely medication management appointments;

    c.    Enhancing access to primary care providers to shift low-to-moderate acuity patients to primary care programs creating more capacity for acute patients in existing outpatient crisis mental health systems;

    d.    Expanding the options and available capacity for BOEC Operators to appropriately divert calls to qualified civilian mental health providers as first responders;

    e.    Addressing issues of unmet needs identified by Safer PDX and its community partners;

    f.    Expanding and strengthening networks of Peer-Mediated services to:

        i.    develop a referral guide delineating these services and locations and assist with accessing information;

Page 34 —  SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 34 - Attachment 1

    ii.   better educate the community of the viability of these services as alternative first engagement sites/programs for those having difficulty engaging with "professional driven" services;

    iii.  expand peer services connected to peer supports in the community for inpatient psychiatric units (including Emergency Departments) and in the community;

    iv.  add peer guides to work alongside Emergency Department guides for those patients with behavioral health issues entering the Emergency Department; and

    v.  evaluate opportunities to expand use of peers to coordinate with PPB ABHU (as described herein) and function as a link with impacted individuals; and

   g.  pursue tele-psychiatry (a provision of mental health care by video conferencing) as a way for first responders to take advantage of existing IT infrastructure to provide direct care or provider-evaluation supporting the provision of appropriate services to an individual in crisis.

## VI.     <u>CRISIS INTERVENTION</u>

The City acknowledges that the community of consumers of mental health services, and their families and advocates, have an interest in interactions between PPB and people experiencing mental health symptoms or crises.  The PPB will add new capacity and expertise to deal with persons perceived or actually suffering from mental illness, or experiencing a mental health crisis as required by this Agreement.  Despite the

Page 35 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
              *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

critical gaps in the state and local mental health system, the City and PPB must be equipped to interact with people in mental health crisis without resorting to unnecessary or excessive force.

**A.      Addictions and Behavioral Health Unit and Advisory Committee**

91.      In order to facilitate PPB's successful interactions with mental health consumers and improve public safety, within 60 days of the Effective Date, PPB shall develop an Addictions and Behavioral Health Unit ("ABHU") within the PPB.  PPB shall assign command-level personnel of at least the rank of Lieutenant to manage the ABHU. ABHU shall oversee and coordinate PPB's Crisis Intervention Team ("C-I Team"), Mobile Crisis Prevention Team ("MCPT"), and Service Coordination Team ("SCT"), as set forth in this Agreement.

92.      ABHU will manage the sharing and utilization of data that is subject to lawful disclosure between PPB and Multnomah County, or its successor.  PPB will use such data to decrease law enforcement interactions or mitigate the potential uses of force in law enforcement interactions with consumers of mental health services.

93.      ABHU shall track outcome data generated through the C-I Team, MCPT, and SCT, to:  (a) develop new response strategies for repeat calls for service; (b) identify training needs; identify and propose solutions to systemic issues that impede PPB's ability to provide an appropriate response to a behavioral crisis event; and (c) identify officers' performance warranting commendation or correction.

94.      Within 90 days of the Effective Date, PPB shall also establish an ABHU Advisory Committee.  The ABHU Advisory Committee shall include representation from:  PPB command leadership, CIT, MCPT, and SCT; BOEC; civilian leadership of

Page 36 –      SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 36 - Attachment 1

the City government; and shall seek to include representation from:  the Multnomah County's Sheriff's Office; Oregon State Department of Health and Human Services; advocacy groups for consumers of mental health services; mental health service providers; coordinated care organizations; and persons with lived experience with mental health services.

95.     The ABHU Advisory Committee shall provide guidance to assist the City and PPB in the development and expansion of C-I Team, MCPT, SCT, BOEC Crisis Triage, and utilization of community-based mental health services.  The ABHU Advisory Committee shall analyze and recommend appropriate changes to policies, procedures, and training methods regarding police contact with persons who may be mentally ill or experiencing a mental health crisis, with the goal of de-escalating the potential for violent encounters.  The ABHU Advisory Committee shall report its recommendations to the ABHU Lieutenant, PPB Compliance Coordinator, COCL (as described herein), and the BOEC User Board.

96.     Within 240 days of the Effective Date of this Agreement, the ABHU Advisory Committee will provide status reports on the implementation of the ABHU and BOEC Crisis Triage, and identify recommendations for improvement, if necessary.  PPB will utilize the ABHU Advisory Committee's recommendations in determining appropriate changes to systems, policies, and staffing.

**B.      Continuation of C-I Program**

97.     PPB provides C-I Training to all its officers.  C-I is a core competency skill for all sworn police officers in the City.  PPB shall continue to train all officers on C-I.

Page 37 −    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
     *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 37 - Attachment 1

98.     PPB agrees to continue to require a minimum of 40 hours of C-I training to all officers before officers are permitted to assume any independent patrol or call-response duties.  Additionally, PPB shall include C-I refresher training for all officers as an integral part of PPB's on-going annual officer training.  PPB's Training Division, in consultation with ABHU Advisory Committee, shall determine the subjects and scope of initial and refresher C-I training for all officers.

## C.     Establishing "Memphis Model" Crisis Intervention Team

99.     Within 120 days of the Effective Date, PPB shall establish a Memphis Model Crisis Intervention team ("C-I Team").

100.     PPB's C-I Team shall be comprised of officers who volunteer for assignment to the C-I Team.  The number of C-I Team members will be driven by the demand for C-I Team services, with an initial goal of 60-80 volunteer, qualified officers.

101.     No officers may participate in C-I Team if they have been subject to disciplinary action based upon use of force or mistreatment of people with mental illness within the three years preceding the start of C-I Team service, or during C-I Team service.  PPB, with the advice of the ABHU Advisory Committee, shall define criteria for qualification, selection, and ongoing participation of officers in the C-I Team.

102.     PPB shall specially train each C-I Team member before such member may be utilized for C-I Team operations.  PPB, with the advice of the ABHU Advisory Committee, shall develop such training for C-I Team members consistent with the Memphis Model.

Page 38 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 38 - Attachment 1

103.    C-I Team members will retain their normal duties until dispatched for use as a C-I Team.  BOEC or PPB may dispatch C-I Team members to the scene of a crisis event.

104.    PPB will highlight the work of the C-I Team to increase awareness of the effectiveness of its work.

105.    For each crisis event to which a C-I Team is dispatched, the C-I Team member shall gather data that ABHU shall utilize to track and report data on public safety system interactions with individuals with perceived or actual mental illness or who are in crisis.  These data shall include:

    a.    Date, time, and location of the incident;

    b.    Subject's name, age, gender, and address;

    c.    Whether the subject was armed, and the type of weapon;

    d.    Whether the subject is a U.S. military veteran;

    e.    Complainant's name and address;

    f.    Name and DPSST number of the officer on the scene;

    g.    Whether a supervisor responded to the scene;

    h.    Techniques or equipment used;

    i.    Any injuries to officers, subject, or others;

    j.    Disposition;

    k.    Whether a mental health professional responded to the scene;

    l.    Whether a mental health professional contacted the subject as a result of the call; and

Page 39 —    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 39 - Attachment 1

m.    A brief narrative of the event (if not included in any other

document).

**D.    Mobile Crisis Prevention Team**

106.    PPB currently has an MCPT comprised of a two-person team, one sworn

officer and one contractor who is a qualified mental health professional.  Within 120 days

of the Effective Date, City shall expand MCPT to provide one MCPT car per PPB

precinct.

107.    Each MCPT car shall be staffed by one sworn PPB officer and one

qualified mental health professional.  MCPT shall be the fulltime assignment of each

such officer.

108.    No officers may participate in MCPT if they have been subject to

disciplinary action based upon use of force or mistreatment of people with mental illness

within the three years preceding the start of MCPT service, or during MCPT service.

PPB, with the advice of the ABHU Advisory Committee, shall define criteria for

qualification, selection, and ongoing participation of officers in the MCPT.

109.    PPB shall specially train each MCPT member before such member may be

utilized for MCPT operations.  PPB, with the advice of the ABHU Advisory Committee,

shall develop such training for MCPT members.

110.    MCPT shall utilize C-I Team data to proactively address mental health

service, in part, by connecting service recipients with service providers.

111.    Within 180 days of the Effective Date, PPB, with the advice of the ABHU

Advisory Committee, shall develop policies and procedures for the transfer of custody or

voluntary referral of individuals between PPB, receiving facilities, and local mental

Page 40 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 40 - Attachment 1

health and social service agencies.  These policies and procedures shall clearly describe the roles and responsibilities of these entities and of MCPT officers in the process.

**E.**     **Service Coordination Team**

112.     The Service Coordination Team ("SCT"), or its successor, shall serve to facilitate the provision of services to individuals who interact with PPB that also have a criminal record, addictions, and highly acute mental or physical health service needs.

**F.**     **BOEC**

113.     Within 120 days of the Effective Date, BOEC and PPB, with the advice of the ABHU Advisory Committee, shall complete policies and procedures to triage calls related to mental health issues, including changes to protocols for assigning calls to Multnomah County Crisis Call Center, and adding new or revised policies and protocols to assign calls to the PPB ABHU or directly to NGOs or community-based mental health professionals.

114.     Within 180 days of the Effective Date, the City will complete training of all BOEC Dispatchers in Crisis Triage. The City, with the advice of the ABHU Advisory Committee, shall develop ongoing training for BOEC Dispatchers.

115.     Within 180 days of the Effective Date, the City shall ensure Crisis Triage is fully operational to include the implementation of the policies and procedures developed pursuant to the above paragraph and operation by trained staff.

**VII.          EMPLOYEE INFORMATION SYSTEM**

116.     PPB has an existing Employee Information System ("EIS") to identify employees and design assistance strategies to address specific issues affecting the employee.  *See* PPB Manual 345.00.  PPB agrees to enhance its EIS to more effectively

Page 41 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 41 - Attachment 1

identify at-risk employees, supervisors and teams to address potentially problematic trends in a timely fashion. Accordingly, within 90 days of the Effective Date, PPB shall:

    a.    Require that commanders and supervisors conduct prompt reviews of EIS records of employees under their supervision and document the review has occurred in the EIS performance tracker;

    b.    Require that commanders and supervisors promptly conduct reviews of EIS for officers new to their command and document the review has occurred in the EIS performance tracker; and

    c.    Require that EIS staff regularly conduct data analysis of units and supervisors to identify and compare patterns of activity.

117.    PPB agrees to collect data necessary to conduct these analyses at supervisor- and team-levels.

118.    PPB shall continue to use existing thresholds, and specifically continue to include the following thresholds to trigger case management reviews:

    a.    Any officer who has used force in 20% of his or her arrests in the past six months; and

    b.    Any officer who has used force three times more than the average number of uses of force compared with other officers on the same shift.

119.    Within 90 days of the Effective Date, PPB shall add one additional threshold to trigger case management review any officer who has three uses of force in a one-month period.

Page 42 —    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 42 - Attachment 1

120.     Within 90 days of the Effective Date, PPB shall PPB identify and train a second EIS administrator.  This individual may be assigned to other tasks within the Professional Standards Division or as otherwise needed.

## VIII.  OFFICER ACCOUNTABILITY

PPB and the City shall ensure that all complaints regarding officer conduct are fairly addressed; that all investigative findings are supported by a preponderance of the evidence and documented in writing; that officers and complainants receive a fair and expeditious resolution of complaints; and that all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair and consistent.  The City and PPB seek to retain and strengthen the citizen and civilian employee input mechanisms that already exist in the PPB's misconduct investigations by retaining and enhancing IPR and CRC as provided in this Agreement.

### A.     Investigation Timeframe

121.     PPB and the City shall complete all administrative investigations of officer misconduct within one-hundred eighty (180) days of receipt of a complaint of misconduct, or discovery of misconduct by other means.  For the purposes of this provision, completion of administrative investigations includes all steps from intake of allegations through approval of recommended findings by the Chief, including appeals, if any, to CRC.  Appeals to CRC shall be resolved within 21 days.

122.     PPB shall conduct administrative investigations concurrently with criminal investigations, if any, concerning the same incident.  All administrative investigations shall be subject to appropriate tolling periods as necessary to conduct a

Page 43 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 43 - Attachment 1

concurrent criminal investigation, or as otherwise provided by law, or as necessary to meet the CRC or PRB recommendation to further investigate.

123.    If PPB is unable to meet these timeframe targets, it shall undertake and provide to DOJ a written review of the IA process, to identify the source of the delays and implement an action plan for reducing them.

**B.    On Scene Public Safety Statements and Interviews**

124.    Within 90 days of the Effective Date, the City and PPB shall review its protocols for compelled statements to PSD and revise as appropriate so that it complies with applicable law and current professional standards, pursuant to *Garrity* v. *New Jersey*, 385 U.S. 493 (1967).  The City will submit the revised protocol to DOJ for review and approval.   Within 45 days of obtaining DOJ's approval, PPB shall ensure that all officers are advised on the revised protocol.

125.    Separation of all witness and involved officers to lethal force events is necessary in order to safeguard the integrity of the investigation of that event. Immediately following any lethal force event, PPB shall continue to issue a communication restriction order ("CRO") to all witness and involved officers, prohibiting direct or indirect communications between those officers regarding the facts of the event. The CRO will continue, unless extended further, until the conclusion of the Grand Jury or, if no Grand Jury is convened, until a disposition is determined by the District Attorney.

126.    PPB shall continue to require witness officers to lethal force events to give an on-scene briefing to any supervisor and/or a member of the Detective Division to ensure that victims, suspects, and witnesses are identified, evidence is located, and

Page 44 —    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
          *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 44 - Attachment 1

provide any information that may be required for the safe resolution of the incident, or any other information as may be required.

127.    In agreement and collaboration with the Multnomah County District Attorney, PPB shall request that involved officers in lethal force and in-custody death events provide a voluntary, on-scene walk-through and interview, unless the officer is incapacitated.

### C.    Conduct of IA Investigations

128.    Currently, both IPR and PPB's PSD have authority to conduct administrative investigations, provided that IPR interview of PPB Officers must only be conducted jointly with IA.  Within 120 days of the Effective Date, the City will develop and implement a plan to reduce time and effort consumed in the redundant interview of witnesses by both IPR and IA, and enable meaningful independent investigation by IPR, when IPR determines such independent investigation is necessary.

129.    The City and PPB shall ensure that all allegations of use of excessive force are subject to full and completed IA investigations resulting in findings, unless there is clear and convincing evidence to IPR that the allegation has no basis in fact.

130.    The City and PPB shall continue to expressly prohibit all forms of retaliation, including discouragement, intimidation, coercion, or adverse action, against any person who reports misconduct, makes a misconduct complaint, or cooperates with an investigation of misconduct.

131.    The City and PPB shall retain Police Review Board procedures currently utilized for purposes of investigation and making recommended findings on administrative complaints, except as outlined below:

Page 45 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

a.      Currently, seven voting members of the PRB review use of force incidents, including two citizen members.  When PRB reviews uses of force case, one of the two citizen member slots shall be drawn from the Citizen Review Committee members.

b.      The CRC slot on the PRB in use of force cases will rotate among the CRC membership so that different CRC members participate on the PRB.  Within 60 days of the Effective Date, the Auditor shall develop a membership rotation protocol.

c.      All members participating in the PRB must maintain confidentiality and be able to make thoughtful, unbiased, objective recommendations to the Chief of Police and Police Commissioner that are based on facts, consistent with PRB city code provisions and "just cause" requirements set forth in Portland City Charter, City rules, and labor agreements.

d.      All community members and CRC members must meet the following qualifications to participate on the PRB:

   i.      Pass a background check performed by the Bureau.

   ii.      Participate in Bureau training to become familiar with police training and policies, including the PRB process.

   iii.      Sign a confidentiality agreement.

   iv.      Participate in ride-alongs to maintain sufficient knowledge of police patrol procedures.

Page 46 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
             *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

e.    Current city code provides that the City Auditor and the Chief have authority to recommend to City Council the removal of citizen members from the PRB pool.  Likewise, the City Auditor or Chief shall have authority to recommend to City Council removal of a CRC member from serving on the PRB.  The Chief or the City Auditor may recommend that City Council remove a community member or member of the CRC from the pool for the following reasons:

    i.    Failure to attend training;

    ii.    Failure to read Case Files;

    iii.    Objective demonstration of disrespectful or unprofessional conduct;

    iv.    Repeated unavailability for service when requested;

    v.    Breach of confidentiality;

    vi.    Objective demonstration of bias for or against the police; or

    vii.    Objective demonstration of conflict of interest.

f.    Removal from participation in the PRB shall not affect CRC membership.

g.    Like current PRB citizen members, CRC members serving on the PRB may serve in that capacity for no more than three (3) years.

h.    A CRC member who participates in a PRB review shall recuse himself/herself during any later appeal of the same allegation(s) to the CRC.

Page 47 —    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 47 - Attachment 1

132.     By majority vote, the PRB may request that investigations of misconduct be returned to its investigating entity, i.e. PSD or IPR, to complete the investigation as to factual matters necessary to reach a finding regarding the alleged misconduct.  The investigating entity must make reasonable attempts to conduct the additional investigation or obtain the additional information within 10 business days or provide a written statement to the PRB explaining why additional time is needed.

133.     If an officer's use of force gives rise to a finding of liability in a civil trial, PPB shall:  (1) enter that civil liability finding in the EIS; (2) reevaluate the officer's fitness to participate in all current and prospective specialized units ; (3) if no IA investigation has previously been conducted based upon the same allegation of misconduct and reached an administrative finding, conduct a full IA investigation with the civil trial finding creating a rebuttable presumption that the force used also violated PPB policy, which presumption can only be overcome by specific, credible evidence by a preponderance of evidence; (4) if an IA investigation has already concluded based upon the same allegation of misconduct and failed to reach a sustained finding, identify whether any new evidence exists in the record of the civil trial to justify the reopening of the IA investigation, and if so, reinitiate an IA investigation; and (5) if an IA investigation has already concluded based upon the same allegation of misconduct and failed to reach a sustained finding, and no new evidence from the civil trial justifies reopening the IA investigation, work with IPR to identify the reason why the administrative finding was contrary to the civil trial finding and publish a summary of the results of the inquiry.

Page 48 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
                 *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 48 - Attachment 1

**D.    CRC Appeals**

134.    The City shall expand the membership of the CRC to 11 members, representative of the many and diverse communities in Portland, who are neutral, unbiased, and capable of making objective decisions.  The quorum of CRC members necessary to act may remain at its existing level.

135.    The City and PPB agree that the CRC may find the outcome of an administrative investigation is unreasonable if the CRC finds the findings are not supported by the evidence.

136.    In its review process for purposes of the appeal, the CRC may make one request for additional investigation or information to the investigating entity, i.e. PSD or IPR at any point during its review.  The investigating entity must make reasonable attempts to conduct the additional investigation or obtain the additional information within 10 business days or provide a written statement to the CRC explaining why additional time is needed.  The request for additional investigation or information may contain multiple points of inquiry, but no follow-up requests will be permitted.  The additional request be voted on by a quorum, the members voting must have read the Case File in order to vote, and any request with multiple points of inquiry must be prioritized.

**E.    Discipline**

137.    Within 60 days of the Effective Date, PPB and the City shall develop and implement a discipline guide to ensure that discipline for sustained allegations of misconduct is based on the nature of the allegation and defined, consistent, mitigating and aggravating factors and to provide discipline that is reasonably predictable and consistent.

Page 49 —    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 49 - Attachment 1

**F.      Communication with Complainant and Transparency**

138.      Within 180 days of the Effective Date, the City shall enhance its existing website to ensure that a complainant can file and track his or her own complaint of officer misconduct.

139.      Within 120 days of the Effective Date, the City shall review its protocols to ensure that the City shares with complainants requested documentation about his or her own complaint to the extent permitted by law.

140.      The City shall ensure that IPR provides each complainant a tracking number upon receipt of the complaint, informs each complainant of the complaint classification, assignment (precinct or IA) and outcome of the complaint (sustained, unproven, etc.) in writing (whether mail, email/text, or fax), including information regarding whether the City took any corrective action.  The City Attorney's Office shall determine whether disclosures regarding corrective action are required on a case-by-case basis consistent with Oregon's Public Records Law.

## IX.      COMMUNITY ENGAGEMENT AND CREATION OF COMMUNITY OVERSIGHT ADVISORY BOARD

There is significant community and City interest in improving PPB's community relationships.  The community is a critical resource.  Redefining and restructuring existing community input mechanisms to provide for independent oversight of the Agreement, while also enhancing PPB's current community outreach efforts will promote community confidence in PPB and facilitate police/community relationships necessary to promote public safety.  To achieve this outcome, at a minimum, PPB shall implement the requirements below.

Page 50 –      SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
                    *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 50 - Attachment 1

141.    To leverage the ideas, talent, experience, and expertise of the community, the City, in consultation with DOJ, shall establish a Community Oversight Advisory Board ("COAB"), within 90 days of the Effective Date of this Agreement.  The COAB shall be authorized to:  (a) independently assess the implementation of this Agreement; (b) make recommendations to the Parties and the COCL on additional actions; (c) advise the Chief and the Police Commissioner on strategies to improve community relations; (d) provide the community with information on the Agreement and its implementation; (e) contribute to the development and implementation of a PPB Community Engagement and Outreach Plan ("CEO Plan"); and (f) receive public comments and concerns.

142.    Membership of the COAB shall be comprised of fifteen (15) voting members, five (5) advisory members, and the COCL.

    a.    The 15 voting members and the five advisory members shall be selected as follows:

        i.    Each member of City Council will select one representative to serve on the COAB, for a total of five voting representatives;

        ii.    The chair of the Human Rights Commission shall designate one Human Rights Commissioner to serve on the COAB;

        iii.    The chair of the Portland Commission on Disability shall designate one Commissioner on Disability to serve on the COAB;

        iv.    The chair of the Human Rights Commission and the chair of the Portland Commission on Disability shall jointly

Page 51 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2); *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 51 - Attachment 1

select three community members to serve as representatives of the mental health community on the COAB, after soliciting and reviewing applications from the public. These three COAB members will possess demonstrated expertise in the field of mental health in the form of either: (a) certification as a Qualified Mental Health Professional; or (b) no less than ten (10) years of demonstrated service to persons with mental illness.  These three selections shall be completed within 60 days of the COCL selection.

v.    The community-at-large will select five voting representatives directly from the community.  The process used for this selection is discussed in paragraph 145 herein; and,

vi.   The Chief will select a diverse group of five sworn officers within various ranks to serve as advisors and non-voting members of the COAB, and may consider whether the officer resides in Portland ("Advisory Members").

b.    The COAB's membership will come from a reasonably broad spectrum of the community, such as:  areas of expertise, advocacy experience, community involvement, profession, education, race, ethnicity, gender, gender identity, sexual orientation, national origin, age, religion, mental or physical disability and geographic identification. COAB members, including Advisory Members,

Page 52 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

must live, work, worship, or attend school in the City of Portland. COAB members shall not have an actual or perceived conflict of interest with the City of Portland.

143.     The 15 voting members of COAB are independent of the City and PPB and shall not be currently employed by the City.  Members must agree to serve for a minimum of a two-year term, and may be reappointed for one additional year.  The COAB may create an  executive committee or other subcommittees, as appropriate, to accomplish the tasks designated to it under this Agreement.  The City shall provide administrative support so that the COAB can perform the duties and responsibilities identified in this Agreement.

144.     The COAB shall report to the COCL.  The COCL will chair the COAB, preside over COAB meetings, take and count votes, and perform such other activities as are necessary for the efficient operation of the COAB.  If the COCL determines that a COAB member is no longer fit to serve on account of misconduct, the COCL shall consult with DOJ prior to removing such member.  Following the removal of a COAB member, an alternative shall be selected from the same pool of applicants as the removed COAB member.

145.     Selection of the five (5) community voting members shall be made as follows:

   a.     Each neighborhood coalition in Portland may propose a candidate for membership on the Committee.  Any other non-profit organization within the City may also propose a candidate for membership.  Any other person who lives, works, or is enrolled in

Page 53 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 53 - Attachment 1

school in Portland and is over the age of 15 may be considered provided they provide the City with the names of 50 verified residents over the age of 15 of the City of Portland who support his or her nomination;

b.      The City shall widely advertise and hold a public meeting where previously nominated candidates will be selected.  Any Portland resident is welcome to attend and participate in the selection process.  The City will publicize the meeting throughout all the various communities of Portland;

c.      At the public meeting, candidates will be given an opportunity to speak and ask for support.  In their statements, candidates must indicate whether they live, work, worship, and/or attend school within the City of Portland;

d.      Attendees at the public meeting and will be asked to select their choice of candidates;

    i.      If there are ten or fewer candidates, then the attendees present will select the top five candidates receiving the most votes;

    ii.     If there are more than ten candidates, a preliminary vote will be taken and the top ten candidates receiving the most votes will be selected and a second vote will be taken to reduce the number to the five persons that will serve on the COAB;

Page 54 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
              *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

      iii.      The next two candidates who receive the most votes shall be identified as potential alternates, should a COAB member be removed or incapacitated; and,

      iv.      Because the number of persons who may be interested in participating in this process is unknown, the City may adopt other procedures necessary to conduct the meeting and to carry out the intent of these provisions.

    e.      This process of selecting the five community members shall be completed within 60 days of the COCL selection.

146.      To ensure constitutional policing, to closely interact with the community to resolve neighborhood problems, and to increase community confidence, PPB shall work with City resources knowledgeable about public outreach processes to develop and finalize a CEO Plan:

    a.      Within 90 days of the COAB selection, the City, in consultation with COAB, will conduct a reliable, comprehensive, and representative survey of members of the Portland community, including civilians and PPB officers, regarding their experiences with and perceptions of PPB's prior community outreach efforts and accountability efforts and where those efforts could be improved, to inform the development and implementation of the CEO Plan;

    b.      COAB, in conjunction with PPB, shall consult with community members (not only through PPB Advisory Councils and

Page 55 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 55 - Attachment 1

Roundtables) and hold at least two (2) public hearings, completed within 90 days of the COAB selection, in addition to the representative survey described above, to gather public input on PPB's outreach efforts; the hearings shall be held in locations to ensure that PPB receives input from all parts of the Portland community;

c.   COAB shall review PPB's prior community outreach efforts to contribute to the development of a new CEO Plan;

d.   COAB shall solicit and consider input from the Human Rights Commission's Community Police Relations Committee ("CPRC"), including its work to implement the 2009 PPB "Plan to Address Racial Profiling";

e.   Within 60 days of the anticipated due date for survey results, the COAB and PPB, in consultation with the appropriate City resources knowledgeable about public outreach and survey analysis, shall review and analyze the results of the survey and other public comments discussed above;

f.   The CEO Plan shall include strategies to ensure greater public outreach and engagement, including opportunities for outreach to a broad cross-section of community members.  The Plan shall also identify gaps in available resources to achieve its goals.

Page 56 —   SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 56 - Attachment 1

g.    The COAB may also provide information to the PPB on other areas related to community engagement and outreach to contribute to the development of the CEO Plan, including:

    i.    integration of community and problem-oriented policing principles into PPB's management, policies and procedures;

    ii.    recruitment, selection, training, promotion, and personnel evaluations;

    iii.    tactics and deployment of resources; and

    iv.    systems of accountability.

g.    COAB shall submit its recommended CEO Plan to the Chief, in writing, within 90 days of the COAB's completion of survey analysis.

h.    The Chief's Office, in consultation with the five PPB advisory members of the COAB shall utilize the COAB's recommendations in developing and implementing the CEO Plan.  The Chief's Office shall present the final proposed CEO (with implementation timeline) to the COAB for a vote of approval within 240 days of the effective date of this Agreement.

147.    PPB shall continue to collect appropriate demographic data for each precinct so that the Precinct Commander, together with the COAB, may develop outreach and policing programs specifically tailored to the residents of the precincts.

Page 57 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
        *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

148.    PPB shall continue to require that officers document appropriate demographic data regarding the subjects of police encounters, including the race, age, sex and perceived mental health status of the subject, and provide such information to the CPRC to contribute to their analysis of community concerns regarding discriminatory policing.  In consultation with the COAB and CPRC, PPB shall consider enhancements to its data collection efforts, and report on its efforts to enhance data collection to the DOJ by no later than December 31, 2013, and quarterly thereafter.

149.    The COAB, COCL, PPB, and DOJ will jointly develop metrics to evaluate community engagement and outreach.

150.    Annually, PPB shall issue a publicly available PPB Annual Report, which shall include a summary of its problem-solving and community policing activities.  A draft of the Annual Report shall be reviewed by the COAB before the report is finalized and released to the public.  Once released, PPB shall hold at least one meeting in each precinct area and at a City Council meeting, annually, to present its Annual Report and to educate the community about its efforts in community policing in regard to the use of force, and about PPB's policies and laws governing pedestrian stops, stops and detentions, and biased-free policing, including a civilian's responsibilities and freedoms in such encounters.

151.    The COAB may make recommendations approved by a majority of its membership regarding implementation of the terms of this Agreement.

152.    The COAB, shall meet at least twice per year with the Chief, the Police Commissioner, PPB Precinct Commanders, PPB Neighborhood Response Teams, and a representative of the Office of Neighborhood Involvement Crime Prevention to assess

Page 58 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 58 - Attachment 1

and solicit comment on PPB's activities in regards to community outreach, engagement, and problem-solving policing. The COAB shall also provide the opportunity for public comment at each of its meetings to keep open lines of communication with the public-at-large.

153.     A representative of the Oregon U.S. Attorney's Office shall be invited to attend all COAB meetings.

154.     COAB shall meet as needed to accomplish their objectives as set forth in this Agreement. All COAB meetings shall be open to the public. In addition, COAB shall attend quarterly meetings with the COCL as provided in Par 163. To the extent that COAB meetings are subject to the Oregon Public Meetings Law, or similar regulatory or statutory requirements, the City shall be responsible to give advice necessary to the COCL to ensure compliance with those laws and agrees to represent COCL in any challenges regarding compliance with those laws.

155.     The City shall provide COAB members with appropriate training necessary to comply with requirements of City and State law.

## X.     AGREEMENT IMPLEMENTATION AND ENFORCEMENT

156.     PPB shall implement immediately all provisions of this Agreement which involve the continuation of current policies, procedures, and practices specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement. Except where otherwise specifically indicated, PPB shall implement all other provisions of this Agreement no later than within 180 days of the Effective Date.

Page 59 –   SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
           *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 59 - Attachment 1

157.     With regard to any provision that provides for DOJ's review and approval, including review of all policies that must be revised, approval will be granted in a timely fashion provided that the PPB's action reasonably satisfies the requirements and standards set forth in the relevant provision(s).

158.     All PPB audits and reports related to the implementation of this Agreement shall be made publicly available via website and at PPB, IPR, City Hall, and other public locations.  Audits and reports shall be posted on PPB's website.

159.     PPB shall collect and maintain all data and records necessary to facilitate and ensure transparency and wide public access to information related to PPB decision making and activities, and compliance with this Agreement, in accordance with the Oregon Public Records Law.

**A.     Compliance Officer/Community Liaison**

160.     Within 60 days from the Effective Date, the City shall publicly identify three potential candidates with expertise in police practices, community engagement, and crisis intervention methods, to serve as a Compliance Officer and Community Liaison ("COCL").  Following a 30-day public comment period, the City Council shall select a COCL, who shall be responsible for synthesizing data related to PPB's use of force, reporting to the City Council, DOJ, and the public and gathering input from the public related to PPB's compliance with this Agreement.  The COCL shall not be attached to any one City office, shall be wholly independent of PPB, and shall be responsive to the entire City Council, the public, and DOJ.  The City shall provide administrative support so that the COCL can perform the duties and responsibilities identified in this Agreement.

Page 60 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 60 - Attachment 1

161.     In order to collect data and report on PPB's implementation of each substantive provision of this Agreement, the COCL shall conduct the reviews specified in paragraph 173 of this Agreement and such additional reviews regarding the implementation of this Agreement as the COCL, the City, or DOJ deems appropriate. Based on the COCL's reviews and community input, the COCL shall make recommendations to the City regarding measures necessary to ensure full and timely implementation of this Agreement.

162.     The COCL shall prepare quarterly, written, public reports detailing PPB's compliance with, and implementation of, each substantive provision of this Agreement. The reports shall specify:  (a) the methodology and monitoring activities employed; (b) the COCL's assessment of compliance for each paragraph; and (c) the COCL's recommendations regarding necessary steps to achieve compliance, as warranted.  The COCL shall substantiate his or her compliance assessments and recommendations.  The COCL's reports shall be written with due regard for the privacy interests of individual officers and the subjects involved in the use of force interactions, and the interest of PPB in protecting against disclosure of non-public information.

163.     The COCL shall provide a copy of all reports to the Parties and the COAB in draft form and allow the Parties and the COAB 30 days to informally comment on the reports.  The COCL shall also hold open town hall meetings on a quarterly basis where he/she will present his/her draft compliance report to the COAB, and receive public comment on his/her assessments of compliance and recommendations.  The COAB will be responsible for drafting comments to the COCL's report, and shall incorporate any comments or concerns from the public-at-large related to PPB's compliance with the

Page 61 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
              *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 61 - Attachment 1

Agreement into its comments.  The public shall have the opportunity to raise comments or concerns at the open town hall meeting or via online and/or electronic mail submissions.  The COCL and COAB shall jointly ensure that the time and location of these quarterly town hall meetings are well publicized with sufficient advance notice and that significant efforts are made to procure attendance of a community body broadly representative of the many and diverse communities in Portland, including persons with mental illness, mental health providers, faith communities, minority, ethnic, and other community organizations, and student or youth organizations.  These quarterly meetings shall facilitate the sharing of information on the Agreement and its implementation with the broad community body and permit the COCL and the COAB to receive comments and concerns.

164.    The COCL shall consider the Parties' responses and COAB's response to its draft report and make appropriate changes, if any, before issuing a final version of the report.  The COCL shall issue the final report to the Parties and make all final reports publicly available through posting on the City's website.  The Parties' responses and COAB's response to the COCL's draft report shall also be published on the City's website.  The Parties may submit any COCL reports to the Court if questions arise concerning compliance with this Agreement.  The Parties agree that COCL reports may be used to evidence compliance or non-compliance with this Agreement, subject to the weight afforded to such reports by the Court.

**B.    PPB Compliance Coordinator**

165.    PPB will hire or retain an employee familiar with the operations of PPB for the duration of this Agreement, to serve as a PPB Compliance Coordinator.  The

Page 62 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
             *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 62 - Attachment 1

Compliance Coordinator will serve as a liaison between PPB and both the COCL and

DOJ and will assist with PPB's compliance with this Agreement.  At a minimum, the

Compliance Coordinator will:

        a.    Coordinate PPB's compliance and implementation activities;

        b.    Facilitate the provision of data, documents, materials, and access to PPB personnel to the COCL and DOJ, as needed;

        c.    Ensure that all documents and records are maintained as provided in this Agreement;

        d.    Assist in assigning compliance tasks to PPB personnel, as directed by the Chief of Police or the Chief's designee; and

        e.    Take primary responsibility for collecting the information the COCL requires to carry out his/her assigned duties.

## C.  Access to People and Documents

166.  The COCL shall have full and direct access to all PPB and City staff, employees, facilities, and documents that the COCL reasonably deems necessary to carry out his/her duties.  If a document requested by the COCL is a privileged attorney-client communication, the COCL shall not disclose the document in a manner that destroys that privilege without the approval of the City Attorney.  The COCL shall cooperate with PPB and the City to access people, facilities, and documents in a reasonable manner that minimizes, to the extent possible, interference with daily operations.    In order to report on PPB's implementation of this Agreement, the COCL shall regularly conduct reviews to ensure that PPB implements and continues to implement all measures required by this

Page 63 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 63 - Attachment 1

Agreement.  The COCL may conduct on-site reviews without prior notice to PPB or the City.

167.    For the purpose of monitoring this Agreement, DOJ and its consultative experts and agents shall have full and direct access to all PPB and City staff, employees, facilities, and documents, that DOJ reasonably deems necessary to carry out the enforcement and monitoring provisions of this Agreement to the extent permitted by law. DOJ and its consultative experts and agents shall cooperate with PPB and the City to access involved personnel, facilities, and documents in a reasonable manner that minimizes interference with daily operations; however, DOJ may conduct on-site reviews without prior notice to PPB or the City.   DOJ shall provide PPB or the City with reasonable notice of a request for copies of documents.  Upon such request, PPB or the City shall provide DOJ with copies (electronic, where readily available) of any documents that DOJ is entitled to access under this Agreement, except any documents protected by the attorney-client privilege.  Should PPB decline to provide DOJ with access to a document based on attorney-client privilege, PPB promptly shall provide DOJ with a log describing the document, including its author, recipients, date of production, and general topic.

168.    All non-public information provided to the COCL or DOJ by PPB or the City shall be maintained in a confidential manner.  Nothing in this Agreement requires the City to disclose documents protected from disclosure by the Oregon Public Records Law to third parties.

Page 64 –   SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 64 - Attachment 1

**D.       Review of Policies and Investigations**

169.       Within 180 days of the Effective Date, PPB shall revise and/or develop its policies, procedures, protocols, training curricula, and practices to ensure that they are consistent with, incorporate, address, and implement all provisions of this Agreement specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement.  PPB shall revise and/or develop as necessary other written documents such as handbooks, manuals, and forms, to effectuate the provisions of this Agreement.  PPB shall send new or revised policies, procedures, protocols, and training curricula regarding use of force, interactions with persons in mental health crisis and systems of accountability to DOJ as they are promulgated, with a copy to the COCL.  DOJ and the COCL will provide comments within 45 days and will not unreasonably withhold recommendations about policies, procedures, protocols, and training curricula.  The COCL shall seek the timely input of the relevant members of the Training Division and patrol officers, as well members of the community.  If the City disagrees with DOJ's comments, the City shall, within 14 days of being informed of the DOJ's comments, inform the Parties in writing of the disagreement.  Within 14 days thereafter, the Parties shall meet and confer on the disagreement at a mutually agreeable time.  Upon approval by the Parties, policies, procedures, training curricula, and manuals shall be implemented within 30 days of agreement or the Court's decision.  PPB shall provide initial and in-service training to all officers and supervisors with respect to newly implemented or revised policies and procedures.  PPB shall document employee review of and training in new or revised policies and procedures.

Page 65 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
              *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 65 - Attachment 1

170.     The Chief shall post on PPB's website final drafts of all new or revised policies that are proposed specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement, to allow the public an opportunity for notice and comment, prior to finalizing such policies.

171.     The Chief's Office shall coordinate a review of each policy or procedure required by this Agreement 180 days after such policy or procedure is implemented, and annually thereafter (on a regularly published schedule), to ensure that such policy or procedure provides effective direction to PPB personnel and remains consistent with the purpose and requirements of this Agreement.

172.     PPB shall apply policies uniformly and hold officers accountable for complying with PPB policy and procedure.

173.     In addition to compliance reviews, the COCL shall lead semi-annual qualitative and quantitative outcome assessments to measure whether the City and PPB's implementation of this Agreement has created:  (1)  capable systems and resources for responding to persons in mental health crisis; (2) competent accountability and oversight systems; (3)  effective training for police officers that increases the knowledge, skills and abilities necessary for effective and successful delivery of service to persons in mental health crisis; (4) proper management of the use of force to meet constitutional standards; and (5) robust systems of community engagement.   These outcome assessments shall be informed by the following:

Page 66 –     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 66 - Attachment 1

a.    Use of Force Data:

i.    the number of police interactions where force was used on individuals with actual or perceived mental illness, including the type of force used; the reason for the interaction, i.e., suspected criminal conduct or a well-being check; the threat to public safety, including whether the person was armed and if so, with what; a description of the type of resistance offered, if any; and a description of any attempts at strategic disengagement;

ii.    the rate of force used per arrest by PPB; force implement used; geographic area (i.e., street address, neighborhood, or police precinct or district); type of arrest; and demographic category;

iii.    the rate of force complaints that are sustained, overall and by force type; source of complaint (internal or external); type of arrest; type of force complained of; demographic category;

iv.    uses of force that were found to violate policy overall and by force type; type of arrest; demographic category; force implement used; and number of officers involved;

v.    the number and rate of use of force administrative investigations/reviews in which each finding is supported by a preponderance of the evidence;

Page 67 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 67 - Attachment 1

vi.    the number of officers who frequently or repeatedly use force, or have more than one instance of force found to violate policy;

vii.    the rate at which ECW usage decreases or increases compared to the use of force overall and by weapon; and

viii.    the rate at which officer and subject injuries decrease or increase overall and by severity of injury.

b.    Mental health interaction data on:

i.    MCPT dispositions;

ii.    the flow of people in mental health crisis through PPB, the County jail, emergency receiving facilities, and community agencies;

iii.    officer and agency staff satisfaction with the transfer process;

iv.    the rate of repeat calls for service involving individuals in mental health crisis;

v.    the use of the mental health commitment law; and

vi.    the availability of appropriate treatment options;

c.    Training data, including:

i.    officer evaluation of adequacy of training; and

ii.    the Training Division's assessment of incidents involving officer or civilian injury.

d.    Performance data, including:

Page 68 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 68 - Attachment 1

      i.      uses of force found to be unreasonable, complaints sustained and not sustained, and other performance related indicators for supervisors/commanders promoted pursuant to the requirements of this Agreement, and for the units these supervisors/commanders command; and

      ii.      initial identification of officer violations and performance problems by supervisors, and effectiveness of supervisory response.

e.      Accountability data, including:

      i.      the number of complaints (broken out by type of complaint), with a qualitative assessment of whether any increase or decrease appears related to access to the complaint process;

      ii.      rate of sustained, not sustained, exonerated complaints;

      iii.      the number and rate of complaints in which the finding for each allegation is supported by a preponderance of the evidence;

      iv.      the number of officers who are subjects of repeated complaints, or have repeated instances of sustained complaints; and

      v.      the number, nature, and settlement amount of civil suits against PPB officers regardless of whether the City is a defendant in the litigation.

Page 69 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 69 - Attachment 1

174. In conducting these outcome assessments, the COCL may use any relevant data collected and maintained by PPB, provided that it has determined, and the Parties agree, that this data is reasonably reliable and complete. Additionally, the COCL shall solicit input from community groups or initiatives that have relevant experience conducting statistical analyses. The COCL will contribute to and review the Annual Community Survey.

175. Two years after the Effective Date, DOJ shall conduct a comprehensive assessment to determine whether and to what extent the outcomes intended by the Agreement have been achieved. DOJ will further examine whether any modifications to the Agreement are necessary in light of changed circumstances or unanticipated impact (or lack of impact) of the Agreement's requirements. This assessment also shall address areas of greatest achievement and the requirements that appear to have contributed to this success, as well as areas of greatest concern, including strategies for accelerating full and effective compliance. Based upon this comprehensive assessment, DOJ may recommend modifications to the Agreement that are necessary to achieve and sustain intended outcomes. Where the City agrees with DOJ's recommendations, the Parties shall stipulate to modify the Agreement accordingly. Nothing in this assessment shall empower DOJ to unilaterally modify the terms of this Agreement.

## E.    City Reports and Records

176. Beginning with the COCL's first quarterly report, as set forth in paragraph 166 of this Agreement, PPB shall prepare a status report no later than 45 days before the COCL's quarterly report is due. The PPB Compliance Coordinator shall lead the effort in preparing this status report and shall provide copies to the COCL, DOJ, and the public.

Page 70 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 70 - Attachment 1

PPB's report shall delineate the steps taken by PPB during the reporting period to comply with each provision of this Agreement.

177.     PPB shall maintain all records, as applicable, necessary to document their compliance with the terms of this Agreement and all documents expressly required by this Agreement.

## F.     Enforcement

178.     The Parties agree jointly to file this Agreement with the United States District Court for the District of Oregon, in a matter to be captioned *United States* v. *City of Portland*, Civil Action No. --CV--.  The joint motion shall request that the Court enter the Agreement pursuant to Federal Rule of Civil Procedure 41(a)(2),  and conditionally dismiss the complaint in this action with prejudice, while retaining jurisdiction to enforce the Agreement.  If the Court does not retain jurisdiction to enforce the Agreement, the Agreement shall be void.

a.     The Parties anticipate that the City will have substantially complied with all provisions of the Agreement by October 12, 2017.  Substantial compliance is achieved if any violations of the Agreement are minor or occasional and are not systemic.

b.     The Court shall retain jurisdiction of this action for all purposes until the City has substantially complied with all provisions of this Agreement and maintain substantial compliance with all provisions for one year.

c.     The Parties may agree to jointly ask the Court to terminate the Agreement before the end of the five year term, provided the City

Page 71 −     SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 71 - Attachment 1

has substantially complied with all provisions of the Agreement and maintained substantial compliance with all provisions for one year.  If the case has not yet been dismissed, the Parties agree to ask the Court for a non-evidentiary hearing on the status of compliance on or near October 12, 2017.  If the Parties agree that there is non-compliance, or if there is a dispute about compliance, the Parties will so inform the Court, and the Court may set additional hearing dates as appropriate.  The Parties may agree jointly at any time to allow for additional time to resolve compliance issues.

179.    The United States acknowledges the good faith of PPB and the City in trying to address the remedial measures that are needed to promote police integrity and ensure constitutional policing in the City.  The United States, however, reserves its right to seek enforcement of the provisions of this Agreement if it determines that PPB or the City have failed to fully comply with any provision of this Agreement.

180.    The United States understands that many portions of this Agreement will take time to implement and that implementation may require changes to, among other things, collective bargaining agreements, the city code, and current city policies and will likely require additional revenue resources that have not yet been identified at the time this Agreement is executed.

181.    If the United States reasonably believes the City has failed to implement the terms of the Agreement, it shall promptly notify the City in writing and identify with specificity the portion or portions of the Agreement about which it has concerns.

Page 72 −    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
             *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Similarly, if the City believes that DOJ has misinterpreted a provision of this Agreement it may promptly notify DOJ of its concerns, noting the specific portions of the Agreement that it believes has been misinterpreted.

182.    Notices provided by the United States or by the City shall be in writing and provided by mail to the following persons:

| | |
|---|---|
| Chief of Police | City Attorney |
| 1111 SW Second | 1221 SW 4th Avenue, Suite #430 |
| Portland, Oregon  97204 | Portland, Oregon  97204 |
| | |
| Section Chief | U.S. Attorney |
| Special Litigation Section | District of Oregon |
| 950 Pennsylvania Ave., N.W. | 1000 S.W. Third Ave., Suite 600 |
| Washington, D.C.  20530 | Portland, OR  97204 |

183.    Following receipt by mail of any written Notice, the City or DOJ shall respond in writing within 30 days to the concerns raised by the other Party.  Depending on the nature and number of the concerns the City or DOJ may request additional time to respond, and such a request shall not be unreasonably denied.  The Notice and the Party's Response thereto shall be considered to be in the nature of settlement discussions between the Parties and subject to Federal Rule of Procedure 408.

184.    If the Response fails to resolve the other Party's concerns, the Parties agree to meet as soon thereafter as is mutually convenient to discuss the City's compliance with the portion(s) of the Agreement identified in the Notice or the interpretation of the Agreement by DOJ.  Persons attending the meeting shall have authority to resolve the concerns, unless resolution of the concern requires adoption of an ordinance or resolution by City Council or by the Assistant Attorney General in Charge of the DOJ Civil Rights Division.

Page 73 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 73 - Attachment 1

185.    If a meeting between the Parties fails to resolve the concerns, the Parties agree to participate in mediation conducted by a neutral third party mutually agreeable to the Parties.  If the Parties cannot agree upon the selection of a mediator, the Parties shall submit three names of potential mediators to each other.  Each Party may then strike two of the three names provided by the other Party.  The remaining two names shall be given to the Chief Judge of the U.S. District Court for the District of Oregon and the Chief Judge shall appoint the mediator from one of the names provided.

186.    If mediation fails to resolve the concerns, the United States or the City may file a Motion in the Federal District Court for the District of Oregon, located in Portland, Oregon, to enforce compliance with the terms of this Agreement or to seek a Declaration of the meaning of this agreement.   The Motion or request for Declaration shall only allege concerns raised by the Parties which were the subject of mediation.  The Parties shall then meet with the court to schedule a date on which the Motion or Declaration shall be heard or will otherwise comply with the court's preferred procedure. The Parties agree the Judge hearing the Motion shall determine whether or not the Agreement has been breached and may interpret the meaning of the Agreement and has the power to issue an appropriate remedy, if any.   If, for any reason, the Judge finds the City is not in compliance with the Agreement, but that noncompliance was beyond the reasonable control of the City, the City shall not be in breach of this Agreement. However, in the event of noncompliance beyond the reasonable control of the City, the Parties agree that the Court may exercise its equitable powers to devise an appropriate remedy or modification of this Agreement to accomplish the same result as that intended

Page 74 —    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 74 - Attachment 1

by the portion of the Agreement with which noncompliance was found, provided the Parties cannot reach agreement on the remedy or modification.

187.    Nothing prohibits the Parties from engaging in any informal or formal discussions regarding this Agreement or the City's compliance with this Agreement.  The Parties may jointly stipulate to make changes, modifications, and amendments to this Agreement, which shall be effective, absent further action from the Court, 45 days after a joint motion has been filed with the Court.  Any modification of this Agreement by the City of Portland must be approved by the City Council of the City by written ordinance.

188.    The Parties agree to defend the provisions of this Agreement.  The Parties shall notify each other of any court or administrative challenge to this Agreement.  In the event any provision of this Agreement is challenged in any City, county, or state court, removal to a federal court shall be sought by the Parties.

189.    The PPB and the City agree to promptly notify DOJ if any term of this Agreement becomes subject to collective bargaining.  The City agrees to keep DOJ apprised of the status of the resulting negotiations.

190.    All PPB officers and persons related to the implementation of this Agreement shall sign a statement indicating that they have read and understand this Agreement within 90 days of the effective date of this Agreement.  Such statement shall be retained by PPB.  PPB shall require compliance with this Agreement by their respective officers, employees, agencies, assigns, or successors.

Page 75 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 75 - Attachment 1

RESPECTFULLY SUBMITTED this __17th__ day of __December_____ 2012.

FOR THE UNITED STATES:

ERIC HOLDER
Attorney General

| | |
|---|---|
| */s/ S. Amanda Marshall*_____<br>S. AMANDA MARSHALL<br>United States Attorney<br>District of Oregon<br><br><br>ADRIAN L. BROWN<br>BILLY J. WILLIAMS<br>Assistant United States Attorneys | */s/ Thomas E. Perez*_____<br>THOMAS E. PEREZ<br>Assistant Attorney General<br>Civil Rights Division<br><br>JONATHAN M. SMITH<br>Chief<br>Special Litigation Section<br>LAURA COON<br>Special Counsel<br>R. JONAS GEISSLER<br>MICHELLE JONES<br>Senior Trial Attorneys |

| FOR THE CITY OF PORTLAND | APPROVED AS TO FORM: |
|---|---|
| */s/ Sam Adams*_____<br>SAM ADAMS<br>Mayor<br>Police Commissioner | */s/ James H. Van Dyke*_____<br>JIM VAN DYKE<br>City Attorney |

Page 76 —    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);<br>*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 76 - Attachment 1

APPROVED and ORDERED this _____ day of _____, 2012.

_____
HONORABLE
United States District Judge
District of Oregon

Page 77 –    SETTLEMENT AGREEMENT PURSUANT TO FED. R. CIV. P. 41(a)(2);
*United States v. City of Portland,* Case No. 3:12-cv-02265-SI

Page 77 - Attachment 1