**S. AMANDA MARSHALL, OSB #95347**
United States Attorney
District of Oregon
**ADRIAN L. BROWN, OSB #05020**
adrian.brown@usdoj.gov
**BILLY J. WILLIAMS, OSB # 90136**
Bill.Williams@usdoj.gov
Assistant United States Attorneys
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone:    (503) 727-1003
Facsimile:    (503) 727-1117

**THOMAS E. PEREZ**
Assistant Attorney General
**JONATHAN M. SMITH**
Chief
**LAURA COON**
Special Counsel
**R. JONAS GEISSLER**
jonas.geissler@usdoj.gov
**MICHELLE JONES**
michelle.jones2@usdoj.gov
Senior Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
50 Pennsylvania Ave., NW
Washington, D.C.  20530
Telephone:    (202) 514-6255
Facsimile:    (202) 514-4883

    Attorneys for Plaintiff, United States

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    **Plaintiff,**<br><br>    v.<br><br>CITY OF PORTLAND,<br><br>    **Defendant.** | Case No. 3:12-cv-02265-SI<br><br>DECLARATION OF BILLY J. WILLIAMS |

    I, BILLY J. WILLIAMS, hereby make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 and submit this declaration in support of the parties' Joint Motion for Entry of Settlement Agreement. I make this declaration on personal knowledge and, if called upon to do so, I could and would competently testify to the following matters:

    1.     I am employed by the United States Department of Justice as an Assistant United States Attorney ("AUSA") for the District of Oregon and have been so since October 2000. I am currently Chief of the Criminal Division of the United States Attorney Office. In that capacity my responsibilities include management of over 50 attorneys and support staff, and supervision of all criminal cases investigated and filed in the District. Prior to my appointment as an AUSA, I served as a Deputy District Attorney for the Multnomah County District Attorney's Office from 1990 to September of 2000, last serving in the capacity of Senior Deputy District Attorney.

    2.     The United States Attorney requested my participation on the team responsible for investigating the Portland Police Bureau ("PPB") policies and practices concerning use of force in accordance with 42 U.S.C. § 14141 ("§ 14141"). The team consists of U.S. Department

of Justice ("DOJ") attorneys from both the United States Attorney's Office in Oregon and the Civil Rights Division in Washington, D.C., as well as three experts in the field of police practices and mental health. I assisted the investigative team, in part from my experience as a prosecutor handling a variety of cases investigated by PPB, and my experiences working with numerous members of the public who were victims and witnesses in a wide variety of criminal cases. Working as a prosecutor provided invaluable experiences and opportunities to interact with individual community members, as well as community groups. I have participated in the investigation continuously since it was publicly announced on June 8, 2011, and throughout the settlement process, which was completed in November 2012 when the parties reached the settlement agreement now proposed to the Court ("the Agreement").

      3.      Throughout the investigation, the team broadly solicited community input to aid in our understanding of the public's interaction with the PPB, as described herein. Solicitation for public comment and input began when the investigation was announced. The Civil Rights Division set up a dedicated email and toll-free number to which the public could provide comments, questions, and/or concerns regarding our investigation. The United States Attorney's Office also has a dedicated email and phone number for civil rights complaints. Contact information for both of these options to communicate with the team was widely distributed in press releases throughout the course of this case. The same day of the investigation announcement, the team met with members of the African-American community, including the Albina Ministerial Alliance ("AMA"), the Urban League, and other individual community activists in the African-American community. The following day, the team met with the ACLU and the Portland Police Association. These meetings were held to answer questions about the

scope of the investigation and to encourage these groups to provide us information they would like us to consider as we conducted our investigation.

4. In August 2011, attorneys and experts on the team conducted numerous in-person individual interviews with community members in locations throughout Portland. The purpose of these meetings was to provide community members the opportunity to speak to us individually about any matters they wanted us to consider during the investigation. Information obtained from community members during the course of these interviews was critical to our findings on PPB's use of excessive force as well as our concerns regarding the lack of community trust by minority groups, particularly the African-American community.

5. The team also spent considerable time in August 2011 and again in February 2012 speaking with city officials and volunteers, command and non-command staff of PPB, and mental health professionals who are either partners with PPB or invested stakeholders. The purpose of these meetings was to assist in our understanding of PPB's policies and procedures regarding use of force, training, crisis intervention, officer accountability, and misconduct investigations. The team also participated in ride-alongs with PPB officers and spent time both on and off site reviewing an array of documents provided by the City pursuant to document requests totaling thousands of pages. City Officials, staff, and PPB Officers fully cooperated with the USDOJ team throughout the course of the investigation.

6. On February 11, 2012, the United States Attorney, Amanda Marshall, along with the Chief of our Civil Division, Ron Silver, and I, attended a public forum hosted by the AMA regarding community concerns about the PPB. There, we heard from several community members through public testimony, and individually after the forum concluded.

7. DOJ further engaged the public at a town hall style meeting on February 28, 2012. During this meeting, the team heard more than two hours of public testimony from approximately 75 community members with comments and concerns regarding PPB practices.

8. On September 13, 2012, Assistant Attorney General of the Civil Rights Division Tom Perez and U.S. Attorney Marshall announced the findings of our investigation. We found reasonable cause to believe that PPB engages in a pattern or practice of excessive use of force against individuals with actual or perceived mental illness, in violation of the Fourth Amendment of the Constitution and other laws of the United States. Attachment 1. That same day, DOJ and PPB released a Statement of Intent demonstrating our joint commitment to resolve the Findings through certain remedial measures in a court enforceable settlement agreement. Attachment 2.

9. The same day that our Findings were announced, as well as the following day, DOJ attorneys met with members of the African-American community, mental health advocates, and legal advocates to solicit input on ideas of specific remedial measures to meet the objectives listed in the Statement of Intent. These comments and suggestions assisted the team in crafting the Agreement's remedial measures.

10. To provide an opportunity for individual community members to speak with the team regarding specific remedial measures provided in the Statement of Intent, we hosted a community conference call on October 3 and 4, 2012. Each night the line was open to callers for two hours. During these calls, we received more than a dozen additional comments concerning what the public would like to see in our settlement with PPB. We also considered these comments and suggestions from community members in crafting the Agreement's remedial measures.

11. On October 9, 2012, the team conducted separate conference calls with both the Portland Police Association ("PPA") and the Portland Police Commanding Officers Association ("PPCOA") to solicit their input on specific remedial measures, which were, again, considered for the Agreement's remedial measures.

12. On October 26, 2012, U.S. Attorney Marshall, Mayor Sam Adams, and PPB Chief Mike Reese held a press conference announcing that the USDOJ and the City of Portland had reached a proposed settlement agreement for City Council's consideration and released a copy of the proposed settlement agreement to the public. City Council scheduled a hearing on the matter for November 1, 2012.

13. Between October 28 and November 1, 2012, USDOJ received written comments on the proposed settlement agreement from five individuals and community groups. The DOJ team read and discussed each of these comments. Additionally, U.S. Attorney Marshall scheduled individual meetings with each group or individual to address their concerns.

14. On November 1, 2012, attorneys on the DOJ team either attended the City Council hearing in person or watched over the internet via live streaming, and listened to approximately three hours of public testimony. After considering all public comment, the DOJ team later discussed specific proposals with the City regarding sections of the Agreement that could be amended to clarify confusion and address other concerns raised by the public testimony.

15. On November 8, 2012, City Council received proposed amendments to the Agreement from the City Attorney's office and held another hearing on the matter. The proposed amendments were directly related to the comments received from the community regarding Agreement provisions on use of force policies, training, officer accountability and community oversight and engagement. The Council heard approximately two hours of public

Page 6 –    DECLARATION OF BILLY J. WILLIAMS;
            *United States v. City of Portland,* Case No. 3:12-cv-02265-SI

testimony and received additional written comments from the public.  Attorneys on the team again either attended the hearing in person or watched the hearing over the internet via live streaming.  At the conclusion of this hearing, City Council voted unanimously to adopt the proposed amendments as submitted.

16. Although the team considered and discussed additional comments from the public, DOJ and the City did not further amend the Agreement after November 13, 2012.  City Council unanimously approved the Agreement on November 14, 2012.

17. The extensive community input received throughout the investigative and negotiation process greatly impacted the substance of the proposed Agreement, particularly in the community engagement and oversight sections.

Dated this _17th_ day of ___December_____, 2012

              _____/s/ Billy J. Williams_____
              BILLY J. WILLIAMS