ANIL S. KARIA, OSB No. 063902
E-mail: anil@miketlaw.com
Tedesco Law Group
3021 NE Broadway
Portland, OR  97232
Telephone:  866-697-6015
Facsimile:  503-210-9847
        Attorneys for Intervener-Defendant
        Portland Police Association

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>v.<br><br>**THE CITY OF PORTLAND,**<br>Defendant.<br><br>_____ | Civil Case No. 3:12-CV-02265-SI<br><br>**MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE ASSOCIATION'S FRCP 24 MOTION TO INTERVENE** |

Table of Contents

I.    INTRODUCTION.................................................................................................. 1

II.   BACKGROUND.................................................................................................. 1

III.  ARGUMENT. .................................................................................................... 3

    A.   The PPA is entitled to intervene as a matter of right. .......................................... 3

        1.   The PPA's motion to intervene is timely........................................................ 4

        2.   The PPA has significant, protectable interests in the subject of this  litigation. .............. 5

        3.   An adverse decision in this forum would impair the PPA's ability to protect its
        contractual rights with the City and impede enforcement of state-law bargaining rights..... 28

        4.   The PPA's interests will not be adequately represented by the City. ........................... 29

    B.   Alternatively, the court should permit the PPA to intervene permissively........................ 30

    C.   The PPA has submitted a proposed answer to the United States' Complaint. ................... 32

IV.  CONCLUSION. ................................................................................................ 32

Table of Authorities

**Cases**

*Ahern v. Ore. Public Employees Union*, 329 Or. 428, 434-35 (1999)........................................... 26

*Amalgamated Transit Union, Division 757 v. Tri-Met of Oregon,* ERB Case No. UP-062-05, 22 PECBR 911, 951–953 (2009), *aff'd,* 250 Or. App. 681 (2012) ................................................. 26

*Beaverton Police Ass'n v. City of Beaverton,* ERB Case No. UP-10-01. 19 PECBR 925 (2002), *aff'd,* 194 Or. App. 531 (2004)........................................................................................................... 27

*EEOC v. Thompson*, No. CV 03-64-HA, 2003 WL 23538025 at *2 (D. Or., July 15, 2003) ........ 5

*Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 843-44 (9th Cir. 2011)..... 31

*Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 649-50 (N.D. Cal. 2004) ...................... 4

*Ore. Nat. Desert Ass'n v. Shuford,* No. CV 06–242–AA, 2006 WL 2601073 at *2-*5 (D. Or., Sept. 8, 2006) ................................................................................................................................... 4

*Portland Fire Fighters Ass'n, Local 43 v. City of Portland*, 16 PECBR 245, 250-252 (1995).... 25

*Portland Police Ass'n v. City of Portland*, ERB Case No. UP-05-08, 23 PECBR 856, 866 (2010), *aff'd,* 248 Or. App. 109 (2011)...................................................................................................... 26

*San Jose Mercury News, Inc. v. U.S. Dist. Court -N. Dist. (San Jose),* 187 F.3d 1096, 1101 (9th Cir. 1999) ............................................................................................................................................. 4

*Springfield Police Ass'n v. City of Springfield*, 16 PECBR 712, 721 (1996), *aff'd without opinion*, 147 Or App 729 (1997) ...................................................................................................................... 25

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001)................................ 3

*U.S. v. City of Los Angeles,* 288 F.3d 391, 397 (9th Cir. 2002)............................................... passim

*United States v. City of Hialeah*, 140 F.3d 968, 982 (11th Cir. 1998)........................................ 25

*Venegas v. Skaggs*, 867 F.2d 527, 530-31 (9th Cir. 1989), *aff'd sub nom.*, *Venegas v. Mitchell*, 495 U.S. 82 (1990) ............................................................................................................................. 32

*Washington County Police Officers Ass'n v. Washington County*, 321 Or. 430, 439 (1995)....... 27

**Statutes**

28 U.S.C. § 1331 ............................................................................................................................. 31

42 U.S.C. § 14141 ............................................................................................................... 1, 5, 7, 31

ORS 243.650-243.782 ....................................................................................................................... 1

ORS 243.712....................................................................................................................................... 27

ORS 243.736....................................................................................................................................... 27

ORS 243.742....................................................................................................................................... 27

ORS 243.746....................................................................................................................................... 27

**Rules**

Fed. R. Civ. P. 24......................................................................................................................... passim

Fed. R. Civ. P. 41 ............................................................................................................................... 2

I.      INTRODUCTION.

Plaintiff United States of America ("United States") has filed suit against the City of

Portland ("City"), alleging that the City's police officers systematically use excessive force

against persons with actual or perceived mental illnesses. The police officers are members of a

labor union, the Portland Police Association ("PPA"). As part of this action, the United States

and the City have entered into a proposed settlement agreement that would materially alter the

PPA's collective bargaining agreement and state law collective bargaining rights. Indeed, in their

77-page settlement agreement, the United States and the City have agreed to sweeping changes

to Portland Police Bureau standards, policies, and procedures that significantly undermine the

collective bargaining rights of the PPA and its members. The liberal standards of intervention

under Fed. R. Civ. P. 24 provide the PPA with the right to intervene in this action.

II.     BACKGROUND.

The PPA is a labor union that represents a bargaining unit of police officers, sergeants,

criminalists, and detectives employed by the City. (Declaration of Anil S. Karia ("Karia Decl.")

at ¶ 5). The PPA and the City are parties to a collective bargaining agreement that governs the

terms and conditions of employment for police officers in the bargaining unit. (Karia Decl. at ¶ 6

and Ex. A). Under Oregon's Public Employee Collective Bargaining Act, ORS 243.650-243.782

("PECBA"), the City and the PPA must collectively bargain in good faith over the terms and

conditions of employment for the PPA's members.

On December 17, 2012, the United States filed a Complaint against the City under the

Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, alleging a pattern

and practice of unconstitutional force by the City's police officers against persons with actual or

Page 1 –  MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND
            POLICE ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

perceived mental illnesses. (Compl. at ¶ 1, Docket No. 1). As a remedy, the United States seeks injunctive relief against the City and its police officers, including a declaration that the City has engaged in a pattern or practice of depriving individuals of their constitutional rights; an order enjoining the City and its police officers from engaging in excessive force; and an order requiring the City and its police officers to adopt, implement, and abide by policies and procedures that would remedy the pattern or practice of constitutional violations. (Compl. at ¶¶ 22-24).

The United States and the City have asked this court to approve a settlement agreement between the United States and the City ("Settlement Agreement"). Under the Settlement Agreement, this court would conditionally dismiss the complaint pursuant to Fed. R. Civ. P. 41 (a)(2) and place the action on the court's inactive docket pending the parties' performance of the terms of the Settlement Agreement. (Joint Mot. To Enter The Parties' Settlement Agreement; Docket No. 3). The PPA is not a party to the Settlement Agreement, and was excluded from the negotiations that resulted in the Settlement Agreement. (Karia Decl. at ¶ 7).

As more fully explained below, the Settlement Agreement requires the City to implement changes that violate the collective bargaining agreement between the PPA and the City. The Settlement Agreement also alters terms and conditions of employment without requiring the City to bargain in good faith with the PPA over those mandatorily negotiable bargaining subjects as required by the PECBA.

Well-established case law in the Ninth Circuit instructs that the PPA has a protectable interest in the merits and remedies of the Complaint and Settlement Agreement because:  the Complaint seeks injunctive relief against members of the PPA; the Complaint raises factual

allegations that the PPA's members have committed unconstitutional acts in the line of duty; and the Settlement Agreement seeks remedies which contradict the terms of the labor agreement between the PPA and the City and infringe on state-law bargaining rights.

III.   ARGUMENT.

    A.   <u>The PPA is entitled to intervene as a matter of right.</u>

The PPA satisfies each element of the four-part test for determining when intervention as of right under Fed. R. Civ. P. 24(a) is warranted. Under this test, the PPA must show that:

    (1) Its motion is timely;

    (2) It has a "significant protectable interest relating to the property or transaction that is the subject of the action;"

    (3) It is so situated that "the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest;" and

    (4) The "existing parties may not adequately represent the applicant's interest."

*U.S. v. City of Los Angeles,* 288 F.3d 391, 397 (9th Cir. 2002).

The test is applied liberally and in favor of potential interveners. *Id.* at 397-398. "By allowing parties with a *practical* interest in the outcome of a particular case to intervene, [courts] often prevent or simplify future litigation involving related issues; at the same time, [courts] allow an additional interested party to express its views before the court." *Id.* (emphasis in original; internal quotations omitted). A court's analysis is guided "primarily by practical and equitable considerations, not technical distinctions." *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001) (internal quotations omitted). When ruling on a motion to intervene, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to

intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true[.]" *Id*. at 820.

      1.    <u>The PPA's motion to intervene is timely.</u>

To assess timeliness, the court examines:  (1) the stage of litigation; (2) the prejudice to other parties; and (3) the reason for and length of any delay. *San Jose Mercury News, Inc. v. U.S. Dist. Court -N. Dist. (San Jose),* 187 F.3d 1096, 1101 (9th Cir. 1999). A motion to intervene may be filed at either the merits phase or the remedial phase of the litigation. *See City of Los Angeles,* 288 F.3d at 399-400 (finding that labor union representing Los Angeles police officers had right to intervene in both phases of litigation where the United States and City of Los Angeles entered into consent agreement to settle complaint); *Ore. Nat. Desert Ass'n v. Shuford,* No. CV 06–242–AA, 2006 WL 2601073 at *2-*5 (D. Or., Sept. 8, 2006) (the court permitted Harney County to intervene in the remedial phase of the litigation).

Here, the PPA filed this motion the day after the United States filed its Complaint and the Settlement Agreement. The litigation is in its early stages; no discovery has been had and no dispositive motions have been filed or decided. Neither the United States nor the City have any basis to assert prejudice, and there has been no delay. The PPA's motion is timely. *See City of Los Angeles,* 288 F.3d at 398 (union filed its motion to intervene one-and-a-half months after suit was filed); *San Jose Mercury News, Inc.,* 187 F.3d at 1101 (finding motion to intervene timely filed twelve weeks after basis for intervening occurred); *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 649-50 (N.D. Cal. 2004) (motion timely when no dispositive motions have been decided); *EEOC v. Thompson*, No. CV 03-64-HA, 2003 WL 23538025 at *2 (D. Or., July 15,

2003) (motion filed over five months after suit initiated and during early stages of discovery was timely).

      2.      <u>The PPA has significant, protectable interests in the subject of this litigation.</u>

The second prong of the intervention analysis requires that the PPA possess an interest relating to the property or transaction that is the subject matter of the litigation. The PPA has a significant protectable interest in an action if it asserts an interest that is protected under some law, and there is a relationship between its legally protected interest and the plaintiff's claims. *City of Los Angeles*, 288 F.3d at 398.

The relationship requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant." *Id.* The "interest" prong is not a clear-cut or bright-line rule, because "[n]o specific legal or equitable interest need be established." *Id.* Instead, the interest prong directs courts to make a "practical, threshold inquiry," and "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (internal quotations and citations omitted).

The Ninth Circuit has previously held that a labor union, such as the PPA, has a legally protectable interest in both the merits and remedies of litigation between the United States and an employer when that litigation impacts state-law collective bargaining obligations. In *City of Los Angeles*, a case nearly identical to the one at hand, the United States alleged that the City of Los Angeles engaged in a pattern or practice of depriving individuals of constitutional rights through the use of excessive force, false arrests, and improper searches and seizures in violation of 42 U.S.C. § 14141. Before filing suit, the parties agreed to enter into a consent decree that would resolve the suit. Accordingly, on the same day that the United States filed the complaint, the

Page 5 –  MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND
POLICE ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

parties filed a "Joint Application to Enter Consent Decree" and lodged a proposed consent decree with the district court. *City of Los Angeles*, 288 F.3d at 396.

The Los Angeles Police Protective League ("Police League"), the labor union representing the Los Angeles police officers, responded by moving to intervene in the action. The Police League claimed that the consent decree was incompatible with the labor agreement between the Police League and the City. The district court denied the Police League's motion to intervene as a matter of right and its motion, in the alternative, for permissive intervention. *Id.*

The Ninth Circuit Court of Appeals reversed, holding that the Protective League had a protectable interest in the merits and remedies of the case because the complaint:  (1) sought injunctive relief against members of the Protective League; (2) raised factual allegations that the member officers had committed unconstitutional acts in the line of duty; and (3) sought remedies which could affect terms of the labor agreement between the Protective League and the City under which members of the Police League were employed. *Id.* at 399.

With respect to the Protective League's interest in the merits of the litigation, the court explained that the allegations in the complaint alone provided the police union with a protectable interest:

> [T]he Police League claims a protectable interest because the complaint seeks injunctive relief against its member officers and raises factual allegations that its member officers committed unconstitutional acts in the line of duty. These allegations are sufficient to demonstrate that the Police League had a protectable interest in the merits phase of the litigation.

*Id.* at 399.

Further, the court explained that the police union had a separate, independent protectable interest in the remedy sought by the United States because the consent decree conflicted with

Page 6 –  MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND
POLICE ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

provisions of the labor agreement between the City of Los Angeles and the police union and also infringed on state-law bargaining rights:

> The Police League has state-law rights to negotiate about the terms and conditions of its members' employment as LAPD officers and to rely on the collective bargaining agreement that is a result of those negotiations. These rights give it an interest in the consent decree at issue. Thus, the Police League's interest in the consent decree is two-fold. To the extent that it contains or might contain provisions that contradict terms of the officers' [collective bargaining agreement], the Police League has an interest. Further, to the extent that it is disputed whether or not the consent decree conflicts with the [collective bargaining agreement], the Police League has the right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision to approve the consent decree.

*Id.* at 400 (citation omitted).

Here, the PPA has a protectable interest in the merits of the underlying action brought by the United States. As in *City of Los Angeles*, the United States has alleged that the City of Portland has engaged in a pattern or practice of depriving individuals of their constitutional rights through excessive force, in violation of 42 U.S.C. § 14141. The United States seeks injunctive relief against police officers who are members of the PPA (Compl. at ¶¶ 4, 11, 21-24) and raises factual allegations that the member officers committed unconstitutional acts in the line of duty (Compl at ¶¶ 1, 8-11, 16, 17, 19, 20). Thus, like the union in *City of Los Angeles*, the PPA has a protectable interest in the merits of the dispute between the United States and the City.

Further, the PPA has a separate, independent protectable interest in the remedy sought by the United States because the Settlement Agreement conflicts with provisions of the PPA-City collective bargaining agreement and also infringes on state-law bargaining rights. In the words of the United States, the Settlement Agreement:

Page 7 –  MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND
            POLICE ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

> *[R]equires* the City and PPB to implement numerous reforms in the following areas to address the alleged systemic deficiencies: use of force policy, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement and oversight. Among other things, *[the City] has agreed* to revise PPB's use of force policies, restructure crisis intervention efforts, implement new training standards, refine officer accountability systems, and shorten the timeframe for resolving misconduct investigations and citizen complaints, while maintaining the quality of investigations, as well as solicit public input in the reform process.

(Mem. in Supp. of Joint Mot. To Enter The Parties' Settlement Agreement at 5-6, Docket No. 4; emphasis added). That is, the United States is *requiring* the City to modify its policies, practices, and procedures, which has significant collective bargaining ramifications. And the City *has already agreed* to implement those changes before broaching, let alone satisfying, its collective bargaining obligations with the PPA.

The mandates of the Settlement Agreement conflict with the PPA's collective bargaining agreement with the City. Those conflicts are best illustrated by the grievance that the PPA has filed with the City. (Karia Decl. at ¶ 8 and Ex. B). By way of background, the PPA and City are parties to a collective bargaining agreement that "has as its purpose the promotion of harmonious relations between the City and the [PPA]; the establishment of an equitable and peaceful procedure for the resolution of differences; and the establishment of rates of pay, hours of work and other conditions of employment." (Karia Decl. at Ex. A, p. 7). The PPA-City collective bargaining agreement contains a grievance procedure for resolving "any grievances or complaints that might arise out of the application of this Contract." (Karia Decl. at Ex. A, p. 14). The grievance procedure culminates in "final and binding" arbitration before a private arbitrator mutually selected by the PPA and the City. (Karia Decl. at Ex. A, p. 14).

Page 8 –   MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND
POLICE ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

On November 27, 2012, the PPA filed a grievance under the collective bargaining agreement after the City notified the PPA that it had entered into the Settlement Agreement with the United States. (Karia Decl. at ¶ 8 and Ex. B at 1). The grievance alleges that in so doing, the City knowingly, willfully, and in bad faith altered mandatory bargaining subjects without first coming to agreement with the PPA, in violation of the collective bargaining agreement and the implied duty of good faith and fair dealing. (Karia Decl. at Ex. B, p. 1). The mandatory bargaining subjects at issue include without limitation, wages, monetary benefits, hours, working conditions, workload, safety, safety-related training, safety-related staffing, discipline, disciplinary procedures, job security, fundamental fairness, the right to legal and union representation, and recordation of officer statements. (Karia Decl. at Ex. B, p. 1).

In addition, the PPA set out in its grievance the following non-exhaustive list setting forth how certain provisions of the Settlement Agreement before this court violate specific provisions of the PPA-City collective bargaining agreement:

| Provision of City-USDOJ Agreement | Description of City-USDOJ Agreement | Articles and Description of PPA-City Collective Bargaining Agreement Violated |
|---|---|---|
| Section I (General Provisions), Para. 6 | "This [City-USDOJ] Agreement is not intended to impair . . . the right of any person or organization seeking relief against the City , PPB, or any officer or employee thereof[.]" | Articles 3, 9, 15, 20, 21, 59, 61, 62 and others; and the implied duty of good faith and fair dealing. The City has acted in bad faith and has impaired the PPA's rights under the CBA by unilaterally altering specific provisions of the CBA and unilaterally implementing changes to mandatorily negotiable subjects without first reaching agreement with the PPA, as more fully set forth below. |
| Section I (General Provisions), Para. 8 | "The purpose of this [City-USDOJ] Agreement is to ensure that the City and PPB . . . undertake the actions required by the [City-USDOJ] Agreement[.]" | Articles 3, 9, 15, 20, 21, 59, 61, 62 and others; and the implied duty of good faith and fair dealing. The City has acted in bad faith, has unilaterally altered specific provisions of the CBA, and has unilaterally implemented changes to mandatorily negotiable subjects without first reaching agreement with the PPA, as more fully set forth below. |
| Section III.A (Use of Force Policy) | The City has agreed to implement widespread changes to the PPB's general force policies and standards. | Article 3. The City has unilaterally implemented changes to the PPB's general force policies and standards that implicate mandatory bargaining subjects without first reaching agreement with the PPA. The mandatorily negotiable decisions and impacts include, without limitation, working conditions, safety, safety-related training, safety-related staffing, discipline, disciplinary procedures, and job security. |

Page 10 –  MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE ASSOCIATION'S FRCP 24
          MOTION TO INTERVENE

| | | |
|---|---|---|
| | | Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. Articles 20 and 21. The City has altered the just cause standard. |
| Section III.A.1 (Electronic Control Weapons) | The City has agreed to implement widespread changes to the PPB's Taser/ECW policies and standards. | Article 3. The City has unilaterally implemented changes to the PPB's Taser/ECW policies and standards that implicate mandatory bargaining subjects without first reaching agreement with the PPA. The mandatorily negotiable decisions and impacts include, without limitation, working conditions, safety, safety-related training, safety-related staffing, discipline, disciplinary procedures, and job security. Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. Articles 20 and 21. The City has altered the just cause standard. |
| Section III.A.2 (Use of Force Reporting Policy and Use of Force Report) | The City has agreed to implement widespread changes to the PPB's use of force reporting and review policies and standards. | Article 3. The City has unilaterally implemented changes to the PPB's use of force reporting policies and standards that implicate mandatory bargaining subjects without first reaching agreement with the PPA. The mandatorily negotiable decisions and impacts include, without limitation, hours, working conditions, safety, safety-related training, safety-related staffing, discipline, disciplinary procedures, job security, fundamental fairness, recordation of officer statements, the right to legal and union representation, and workload. |

|  |  | Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts.<br><br>Articles 20 and 21. The City has altered the just cause standard.<br><br>Article 61. The City has altered the administrative and criminal investigation standards.<br><br>Article 62. The City has altered the IPR investigation standards. |
|---|---|---|
| Section III.B (Compliance Audits Related to Use of Force) | The City has agreed to audit use of force incidents based on new policies and standards. | Article 3. The City has unilaterally implemented changes to the PPB's use of force reporting policies and standards that implicate mandatory bargaining subjects without first reaching agreement with the PPA. The mandatorily negotiable decisions and impacts include, without limitation, discipline, disciplinary procedures, and job security. For instance, because the City will reserve the right to discipline employees for any perceived patterns of policy violations or unsatisfactory performance revealed through use of force audits, there will necessarily be a resulting change in disciplinary standards and job security.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts.<br><br>Articles 20 and 21. The City has altered the just cause standard and the permissible uses of EIS. |

| | | |
|---|---|---|
| | | Article 61. The City has altered the administrative and criminal investigation standards.<br><br>Article 62. The City has altered the IPR investigation standards. |
| Section IV (Training) | The City has agreed to implement new policies and standards for the training division. | Article 3. The City has unilaterally implemented changes to the PPB's training division policies and standards that implicate mandatory bargaining subjects without first reaching agreement with the PPA. The mandatorily negotiable decisions and impacts include, without limitation, safety, safety-related training, discipline, disciplinary procedures, and job security. For instance, the PPB will train officers on new use of force standards that jeopardize officer safety; the PPB will not provide sufficient safety-related training; the PPB will use an officer's prior instances of force for which the officer was not disciplined to prohibit or remove an officer from a training division assignment, thereby implicating discipline and job security; and the PPB will discipline a training officer for ineffective training.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts.<br><br>Articles 20, 21, and 61. The City has agreed to train supervisors on "appropriate disciplinary sanctions," which alters the just cause standard and the disciplinary investigation process. This City will also discipline a training officer for ineffective training outside the bounds of just cause.<br><br>Article 59. The PPB will train supervisors on performance evaluations and may alter |

| | | |
|---|---|---|
| | | performance evaluations based on quarterly training reviews even though the City has not bargained to completion over the performance evaluation system. |
| Section V (Community-Based Mental Health Services) | The City has agreed to implement structural changes to community-based mental health services over which it has no control. | Article 3. The City has agreed to implement structural changes to community-based mental health services over which it has no control. As a result, the PPA's members will be first-line responders to individuals in mental health crises and will be unreasonably limited in the force tools available to them to safely resolve incidents given other provisions of the City-USDOJ agreement, thereby implicating on-the-job safety, safety-related training, safety-related staffing, discipline, and job security. The City has agreed to these changes without first coming to agreement with the PPA over those mandatorily negotiable subjects.

Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. |
| Section VI.A (Addictions and Behavioral Health Unit and Advisory Committee) | The City has agreed to implement new units and expand existing units. | Article 3. The City has implemented a new Addictions and Behavioral Health Unit (ABHU) and new Crisis Intervention Team (CIT), and has expanded the existing the Mobile Crisis Prevention Team (MCPT) and the Service Coordination Team (SCT) without first coming to agreement with the PPA over mandatorily negotiable subjects. Creating new units and expanding existing units implicates mandatory bargaining decisions and impacts, including without limitation wages, monetary benefits, hours, working conditions, workload, safety, safety-related training, safety-related staffing, discipline, job security, and fundamental fairness.

Article 15. The City has not provided the PPA with all drafts of the to-be-amended |

Page 14 –  MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE ASSOCIATION'S FRCP 24
           MOTION TO INTERVENE

| | | policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. |
|---|---|---|
| Section VI.B (Continuation of C-I Program) | The City has agreed to provide additional crisis intervention training. | Article 3. The City has implemented additional crisis intervention training without first coming to agreement with the PPA over the mandatorily negotiable subjects of safety and safety-related training.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. |
| Section VI.C (Establishing "Memphis Model" Crisis Intervention Team) | The City has agreed to implement a new unit Crisis Intervention Team unit. | Article 3. The City has implemented a new Crisis Intervention Team without first coming to agreement with the PPA over mandatorily negotiable subjects. Creating new units implicates mandatory bargaining decisions and impacts, including without limitation wages, monetary benefits, hours, working conditions, workload, safety, safety-related training, safety-related staffing, discipline, job security, and fundamental fairness.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. |
| Section VI.D (Mobile Crisis Prevention Team) | The City has agreed to expand the Mobile Crisis Prevention Team. | Article 3. The City has expanded the existing Mobile Crisis Prevention Team (MCPT) without first coming to agreement with the PPA over mandatorily negotiable subjects. Expanding existing units implicates mandatory bargaining decisions and impacts, including without limitation wages, monetary benefits, hours, working conditions, |

| | | workload, safety, safety-related training, safety-related staffing, discipline, job security, and fundamental fairness. |
|---|---|---|
| | | Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. |
| Section VI.E (Service Coordination Team) | The City has agreed to expand the Service Coordination Team. | Article 3. The City has expanded the existing Service Coordination Team (SCT) without first coming to agreement with the PPA over mandatorily negotiable subjects. Expanding existing units implicates mandatory bargaining decisions and impacts, including without limitation wages, monetary benefits, hours, working conditions, workload, safety, safety-related training, safety-related staffing, discipline, job security, and fundamental fairness.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. |
| Section VI.F (BOEC) | The City has agreed to changes to BOEC dispatching. | Article 3. The City has agreed to implement changes to BOEC dispatching, including protocols for routing calls to patrol officers or to community-based mental health services which do not exist. As a result, the PPA's members will be first-line responders to individuals in mental health crises and will be unreasonably limited in the force tools available to them to safely resolve incidents given other aspect of the City-USDOJ agreement, thereby implicating on-the-job safety, safety-related training, safety-related staffing, discipline, and job security. The City has agreed to these changes without first coming to agreement with the PPA over those mandatorily |

| | | negotiable subjects.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. |
|---|---|---|
| Section VII (Employees Information System) | The City has agreed to changes to its Employees Information System. | Article 3. The City has expanded the use and scope of its EIS system without first coming to agreement with the PPA over the mandatorily negotiable subjects of discipline and job security.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts.<br><br>Article 21.4 prohibits the City from using EIS reports "for disciplinary, transfer or promotion decisions." Nevertheless, the City will use EIS for those purposes. |
| Section VIII.A (Officer Accountability - Investigation Timeframe) | The City has agreed to complete administrative investigations of officer misconduct within 180 days of receipt or discovery of a complaint. | Article 3. The City has implemented a new investigation timeline in which it complete administrative investigations of officer misconduct within 180 days of receipt or discovery of a complaint without first coming to agreement with the PPA over mandatorily negotiable subjects, including discipline, disciplinary procedures, and job security.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. |

Page 17 –  MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE ASSOCIATION'S FRCP 24
             MOTION TO INTERVENE

| | | |
|---|---|---|
| | | Articles 20 and 21. The City has altered the just cause standard, including the due process component that calls for full, fair, and timely investigations.<br><br>Article 61. The City has altered the administrative and criminal investigation standards and procedures.<br><br>Article 62. The City has altered the IPR investigation standards and procedures. |
| Section VIII.B (Officer Accountability - On-Scene Public Safety Statements and Interviews) | The City has agreed to changes to its standards, policies, and procedures regarding compelled and voluntary statements in force incidents, including deadly force incidents. | Article 3. The City has changed its standards, policies, and procedures regarding compelled and voluntary statements in force incidents, including deadly force incidents, without first coming to agreement with the PPA over mandatorily negotiable subjects, including discipline, disciplinary procedures, job security, the right to legal and union representation, recordation of officer statements, and fundamental fairness.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts.<br><br>Articles 20 and 21. The City has altered the just cause standard.<br><br>Article 61. The City has altered the administrative and criminal investigation standards and procedures.<br><br>Article 62. The City has altered the IPR investigation standards and procedures. |

| Section VIII.C (Officer Accountability - Conduct of IA Investigations) | The City has agreed to changes to IA and IPR investigations and PRB reviews. | Article 3. The City had changed its standards, policies, and procedures regarding IA and IPR investigations and PRB reviews without first coming to agreement with the PPA over mandatorily negotiable subjects, including discipline, disciplinary procedures, job security, the right to legal and union representation, recordation of officer statements, and fundamental fairness.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts.<br><br>Articles 20 and 21. The City has altered the just cause standard. In addition, Article 21.4 prohibits the City from using EIS reports "for disciplinary, transfer or promotion decisions." Nevertheless, the City will use EIS for those purposes.<br><br>Article 61. The City has altered the administrative and criminal investigation standards and procedures, including without limitation the provisions regarding the PRB in Article 61.10.<br><br>Article 62. The City has altered the IPR investigation standards and procedures, including without limitation implementing the right of IPR to independently compel officer interviews. |
| Section VIII.D (Officer Accountability - CRC Appeals) | The City has agreed to expand the authority of CRC and the scope of CRC appeals. | Article 3. The City has changed its standards, policies, and procedures regarding the authority of CRC and the scope of CRC appeals without first coming to agreement with the PPA over mandatorily negotiable subjects, including discipline, disciplinary procedures, job security, the right to legal and union representation, recordation of |

| | | |
|---|---|---|
| | | officer statements, and fundamental fairness. Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. Articles 20 and 21. The City has altered the just cause standard. Article 61. The City has altered the administrative and criminal investigation standards and procedures. Article 62. The City has altered the IPR investigation standards and procedures. |
| Section VIII.E (Officer Accountability - Discipline) | The City has agreed to develop and implement and discipline guide. | Article 3. The City will develop and implement a discipline guide without first coming to agreement with the PPA over mandatorily negotiable subjects, including discipline, disciplinary procedures, and job security. Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts. Articles 20 and 21. The City has altered the just cause standard. |

| Section VIII.F (Officer Accountability - Communication with Complainant and Transparency) | The City has agreed to disseminate information regarding complaints of officer misconduct. | Article 3. The City will disseminate information regarding complaints of officer misconduct without first coming to agreement with the PPA over mandatorily negotiable subjects, including fundamental fairness.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided [the PPA with an opportunity to comment on the drafts.] |
|---|---|---|
| Section IX (Community Engagement and Creation of Community Oversight Advisory Board) | The City has agreed to create a Community Oversight Advisory Board that will independently assess the implementation of the City-USDOJ agreement and make recommendations to the City and USDOJ regarding additional actions. | Articles 3, 9, 15, 20, 21, 59, 61, 62 and others; and the implied duty of good faith and fair dealing. The City has given a Community Oversight Advisory Board (COAB) authority to oversee and recommend changes to policing issues, such as through a CEO Plan, that implicates specific provisions of the CBA and/or mandatorily negotiable bargaining subjects, which the City will implement without first reaching agreement with the PPA. Further, the City, by and through the PPB Chief of Police, has agreed to implement the CEO Plan without first reaching agreement with the PPA over changes to specific provisions of the CBA and/or mandatorily negotiable bargaining subjects. |

| | | |
|---|---|---|
| Section X (Agreement Implementation and Enforcement) & Section X.D (Agreement Implementation and Enforcement - Review of Policies and Investigations) & Section X.F (Agreement Implementation and Enforcement - Enforcement) | The City has agreed to immediately implement some aspects of the City-USDOJ agreement and to implement other aspects of the City-USDOJ agreement within 180-days of execution of the City-USDOJ agreement. The City has also agreed to submit policy changes to the DOJ for review and approval, to implement new or revised polices, to "hold officers accountable, and to modify the City-USDOJ agreement. | Articles 3, 9, 15, 20, 21, 59, 61, 62 and others; and the implied duty of good faith and fair dealing. The City has acted in bad faith; will immediately implement some aspects of the City-USDOJ agreement and will implement other aspects of the City-USDOJ agreement within 180-days of execution of the City-USDOJ agreement, in violation of existing CBA provisions and without first reaching agreement with the PPA over mandatorily negotiable bargaining subjects; will submit policy changes to the DOJ and COCL for review and approval, in violation of existing CBA provisions and without first reaching agreement with the PPA over mandatorily negotiable bargaining subjects; will implement new and/or revised policies specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement, in violation of existing CBA provisions and without first reaching agreement with the PPA over mandatorily negotiable bargaining subjects; will "hold officers accountable" for not complying with PPB policy and procedure, in violation of existing CBA provisions and without first reaching agreement with the PPA over mandatorily negotiable bargaining subjects; will modify the City-USDOJ agreement as it desires, in violation of existing CBA provisions and without first reaching agreement with the PPA over mandatorily negotiable bargaining subjects; will "substantially comply" with the City-USDOJ agreement by October 12, 2017, in violation of existing CBA provisions and without first reaching agreement with the PPA over mandatorily negotiable bargaining subjects; will change provisions of the CBA without the PPA's agreement; and will require all employees to comply with the City-USDOJ agreement even though it violates the PPA-City collective bargaining agreement. Article 9.1. The City is restraining and coercing PPA members by requiring them to comply with the City-USDOJ agreement even though it violates the PPA-City |

| | | |
|---|---|---|
| | | collective bargaining agreement.<br><br>Article 15. The City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts.<br><br>Articles 20 and 21. The City has altered the just cause standard.<br><br>Article 61 and 62. The City has altered the administrative and criminal investigation and IPR investigation standards and procedures. |
| Section X.A (Agreement Implementation and Enforcement - Compliance Officer/Community Liaison) & Section X.C (Agreement Implementation and Enforcement - Access to People and Documents) | The City has agreed to create a Compliance Officer and Community Liaison that will independently assess the implementation of the City-USDOJ agreement and make recommendations to the City and USDOJ regarding additional actions. | Articles 3, 9, 15, 20, 21, 59, 61, 62 and others; and the implied duty of good faith and fair dealing. The City has given a Compliance Officer and Community Liaison (COCL) authority to oversee and recommend changes to policing issues that implicate specific provisions of the CBA and/or mandatorily negotiable bargaining subjects, which the City will implement without first reaching agreement with the PPA. The decisions and impacts that are mandatory for bargaining include, without limitation, wages, monetary benefits, hours, working conditions, workload, safety, safety-related training, safety-related staffing, discipline, disciplinary procedures, job security, fundamental fairness, the right to legal and union representation, and recordation of officer statements. |

(Karia Decl. at Ex. B, pp. 4-15).

Page 23 –  MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE ASSOCIATION'S FRCP 24
         MOTION TO INTERVENE

To remedy these contract breaches, the PPA requests in its grievance that the City:

1. Cease and desist from implementing any changes to the above-referenced contract articles, existing conditions, and past practices without first reaching agreement with the PPA;

2. Restore any contract articles, existing conditions, and past practices that the City has changed;

3. Cease and desist from implementing any policies, practices, or procedures without first coming to agreement with the PPA over mandatorily negotiable subjects;

4. Restore any policies, practices, or procedures that the City has changed;

5. Cease and desist from implementing new units or expanding any existing units without first coming to agreement with the PPA over mandatorily negotiable subjects;

6. Rescind any discipline or any other employment action, such as reassignments or transfers, and make any affected PPA members whole in all ways, plus interest;

7. Make all affected PPA members whole in all ways, plus interest;

8. Discharge its duties under the PPA-City collective bargaining agreement in good faith and with fair dealing;

9. Pay to the PPA its reasonable attorney fees; and

10. Comply with such further awarded relief as may be appropriate under the circumstances.

(Karia Decl. at Ex. B, p. 16).

Simply put, the PPA's grievance against the City alleges that the Settlement Agreement before this court impairs and interferes with the PPA's rights under its collective bargaining agreement with the City. If its grievance is granted by an arbitrator, the PPA will secure a remedy that conflicts with the Settlement Agreement.

A simple example illustrates the point. At Section VIII.E of the Settlement Agreement, the City and the United States have already agreed that:

> Within 60 days of the Effective Date, PPB [the Portland Police Bureau] and the City shall develop and implement a discipline guide to ensure that discipline for sustained allegations of misconduct is based on the nature of the allegation and defined, consistent, mitigating and aggravating factors and to provide discipline that is reasonably predictable and consistent.

(Settlement Agreement at p. 49, Docket No. 4). For the PPA, the City's agreement to implement a discipline guide violates, among other things, Article 3 of the collective bargaining agreement, which requires the City to maintain "[s]tandards of employment related to wages, hours and working conditions which are mandatory for collective bargaining except those standards modified through collective bargaining" with the PPA. (Karia Decl. at Ex. A, p. 8). Discipline and job security—both of which are affected by a discipline guide—are mandatory for bargaining. *See Springfield Police Ass'n v. City of Springfield*, 16 PECBR 712, 721 (1996), *aff'd without opinion*, 147 Or App 729 (1997); *Portland Fire Fighters Ass'n, Local 43 v. City of Portland*, 16 PECBR 245, 250-52 (1995) (employer's unilateral change in level of discipline it would impose on certain employees was held unlawful). Because the City has not come to agreement with the PPA regarding a discipline guide, the City cannot implement a discipline guide as required by the Settlement Agreement without violating the collective bargaining agreement.

Further, intervention is warranted even if the conflict between the collective bargaining agreement and the Settlement Agreement is merely hypothetical. The mere threat of injury to the contractual rights of a union, embodied in a collective bargaining agreement, is sufficient to bar portions of a Settlement Agreement. *See United States v. City of Hialeah*, 140 F.3d 968, 982 (11th Cir. 1998) ("objectors [are] not required to prove with certainty that particular employees would lose contractual benefits"); *City of Los Angeles*, 288 F.3d at 400 ("To the extent that [the

consent decree] contains or *might* contain provisions that contradict terms of the officers' [collective bargaining agreement], the Police League has an interest.") (Emphasis added).

The changes in mandatory bargaining subjects summarized above not only violate the PPA-City collective bargaining agreement, they also trigger an obligation on the City to bargain with the PPA under Oregon's collective bargaining law. The Oregon Employment Relations Board ("ERB") has exclusive jurisdiction over collective bargaining disputes involving public employee labor organizations, such as the PPA, that are not otherwise subject to the grievance procedure under a collective bargaining agreement. *See Ahern v. Ore. Public Employees Union*, 329 Or. 428, 434-35 (1999); *Portland Police Ass'n v. City of Portland*, ERB Case No. UP-05-08, 23 PECBR 856, 866 (2010), *aff'd*, 248 Or. App. 109 (2011) ("The policies of the PECBA strongly favor resolving labor disputes through arbitration.").

Under the PECBA, the City must bargain in good faith and reach agreement with the PPA before it can implement changes to mandatory bargaining subjects. If the City implements the changes described in the Settlement Agreement without first fulfilling its bargaining obligations with the PPA, the City will commit an unfair labor practice under ORS 243.672(1)(e), which may result in additional litigation between the PPA and the City before the ERB. *See, e.g., Amalgamated Transit Union, Division 757 v. Tri-Met of Oregon,* ERB Case No. UP-062-05, 22 PECBR 911, 951–953 (2009), *aff'd,* 250 Or. App. 681 (2012) (employer violates ORS 243.673(1)(e) by implementing changes that impact mandatory bargaining subjects without first bargaining with labor union).

Even if the subject matter of a change proposed by the Settlement Agreement is permissive for bargaining (for example, establishing the new Crisis Intervention Unit), the City is still obligated to bargain over changes that impact mandatory subjects of bargaining (for

example, establishing the monetary benefits, hours, working conditions, workload, safety, safety-related training, safety-related staffing, and discipline standards for police officers assigned to the new Crisis Intervention Unit). *See Beaverton Police Ass'n v. City of Beaverton,* ERB Case No. UP-10-01, 19 PECBR 925 (2002), *aff'd,* 194 Or. App. 531 (2004) (explaining the decision/impact bargaining analysis).

If the parties were unable to reach agreement through good faith negotiations, the PPA and the City would be required to submit their collective bargaining dispute to an interest arbitrator, who has the exclusive authority to resolve collective bargaining disputes when the parties are themselves unable to reach agreement through good faith negotiations under the PECBA. *See* ORS 243.712, 243.736, 243.742, and 243.746.

Using the discipline guide example from above, the City would need to bargain in good faith with the PPA before it could implement a discipline guide that concerns job security and discipline, both of which are mandatory for bargaining. If the City and PPA were unable to reach agreement, they would need to submit the dispute to an interest arbitrator, who would have exclusive, state-law authority to resolve the bargaining impasse.

The complexities surrounding Oregon's collective bargaining law revolve around a simple premise–the City has bargaining obligations with the PPA that the City must satisfy notwithstanding the provisions of the Settlement Agreement. *See Washington County Police Officers Ass'n v. Washington County,* 321 Or. 430, 439 (1995) ("The fact that two legal duties may collide, or appear in conflict, does not excuse an employer from making good faith efforts to comply with those duties, or excuse [the Oregon Employment Relations Board] from enforcing them.").

In sum, as in *City of Los Angeles*, because the Complaint seeks injunctive relief against PPA member officers and raises factual allegations that its member officers committed unconstitutional acts in the line of duty, the PPA has a protectable interest in the merits phase of this litigation. Further, because the Settlement Agreement proposes changes that infringe on the PPA's state-law bargaining rights to negotiate about the terms and conditions of its members' employment and to rely on the collective bargaining agreement that is the result of those negotiations, the PPA also has a protectable interest in the remedy sought in this action.

3.     <u>An adverse decision in this forum would impair the PPA's ability to protect its contractual rights with the City and impede enforcement of state-law bargaining rights.</u>

Fed. R. Civ. P. 24(a) requires that an applicant for intervention as a matter of right be "so situated that disposition of the action may as a practical matter impair or impede the movant's ability to protect its interest." *City of Los Angeles*, 288 F.3d at 397. Fed. R. Civ. P. 24(a) does not require that the intervener's interests be legally impaired; the relevant inquiry is whether the intervener's interests "may" be impaired "as a practical matter." *Id.*

In *City of Los Angeles*, the Ninth Circuit found that the Police League satisfied this third prong of the intervention analysis because the Police League's continuing ability to protect and enforce its contract provisions *could* be impaired or impeded by the consent decree between the United States and the City. 288 F.3d at 401.

So too here. Denial of leave to intervene would impair the ability of the PPA to protect its contractual rights with the City. Should the court approve the Settlement Agreement, the conflict between the terms of the Settlement Agreement and the collective bargaining agreement will place opposing obligations on the City and likely result in breach of the collective bargaining agreement by the City. Without the PPA's involvement in this action, adjudicating the conflict

Page 28 –  MEMORANDUM IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

between the Settlement Agreement and the collective bargaining agreement will severely impair the substantial legal interests of the PPA in upholding its rights under the collective bargaining agreement on behalf of its members.

Further, the Settlement Agreement between the United States and the City would impede the rights of the PPA's members by changing their terms and conditions of employment without first satisfying the bargaining obligations imposed by the PECBA. As the Court noted in *City of Los Angeles*, a settlement agreement that overrides state law bargaining rights–even if court-approved–impedes the legal rights of bargaining unit members. *Id.* at 401.

4.    <u>The PPA's interests will not be adequately represented by the City.</u>

The PPA satisfies the final prong for intervention because the City may not adequately represent the PPA's interests. To assess adequate representation, the court considers:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervener's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervener would offer any necessary elements to the proceedings that other parties would neglect. The prospective intervener bears the burden of demonstrating that existing parties do not adequately represent its interests.

*City of Los Angeles*, 288 F.3d at 398 (citations omitted). The requirement of inadequate representation is satisfied if the applicant shows that representation of his interest by existing parties "may be" inadequate. *Id.*

Normally, "a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee." *City of Los Angeles,* 288 F.3d at 401 (internal quotations omitted). However, this presumption arises when the government is acting on behalf of a constituency that it represents; the situation is different when the government acts as an employer. The presumption does *not*

apply to parties who are antagonists in the collective bargaining process. *Id*. at 402. For this reason, the court in *City of Los Angeles* found that the Police League's interests diverged from those of the City of Los Angeles and held that the City of Los Angeles would not adequately represent the Police League's interests. *Id*. at 402.

The same result obtains here. The City will not adequately represent the PPA's interests because the City and the PPA are antagonists in the collective bargaining process. Indeed, they have a marked divergence on key elements of the Settlement Agreement and the underlying theories of liability. The mere fact that the PPA has filed a grievance regarding the City's agreement to implement widespread changes to the Portland Police Bureau's standards, policies, and procedures illustrates the parties' opposition in collective bargaining matters. Further, the Settlement Agreement itself points to the fact that collective bargaining agreements "may require changes" (Settlement Agreement at p. 72, para. 180) and highlights the City's need to negotiate with the PPA over collective bargaining issues (Settlement Agreement at p. 75, para. 189). The PPA and City stand in an adversarial position and, therefore, the City cannot adequately protect the PPA's interests.

> B.    Alternatively, the court should permit the PPA to intervene permissively.

Permissive intervention is governed in pertinent part by Fed. R. Civ. P. 24(b)(2)(B), which provides, "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Thus, "a court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *City of Los Angeles*, 288 F.3d at 403 (internal quotations omitted).

The threshold requirements for permissive intervention are clearly met here. The court has independent grounds for asserting jurisdiction over the PPA. The Complaint alleges that the PPA's members have deprived persons of rights, privileges, and immunities secured or protected by the Constitution of the United States, in violation of 42 U.S.C. § 14141, and seeks injunctive relief against the PPA's members. The Court has federal question jurisdiction over these claims. *See* 28 U.S.C. § 1331. (Compl. at ¶ 2). This is sufficient to establish this court's independent grounds for jurisdiction. *See Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 843-44 (9th Cir. 2011) (in federal-question cases, the jurisdictional requirement for permissive intervention is met if intervener relies on the same federal statute as the plaintiff).

As noted above, this motion is timely and allowing the PPA to intervene will not delay the litigation. Further, questions of law or fact are shared with the existing parties. The PPA seeks to defend its member officers against the allegations of police misconduct and the injunction request in the Complaint. The PPA also seeks to address the viability of the remedies in the Settlement Agreement and present evidence as to why many of those remedies are inappropriate given their conflict with the collective bargaining agreement and state-law bargaining obligations. The PPA does not seek to bring any new claims, and intervention by the PPA would neither delay the litigation nor alter the factual background around which the claims revolve.

As demonstrated above, the PPA's interest is distinct from, and not adequately represented by, the City. The PPA brings an important and distinct perspective to this case; a perspective that will assist the Court's resolution of this matter and further judicial economy by avoiding future litigation. The PPA will represent interests in this litigation that may not otherwise be represented, and its participation will contribute to the equitable resolution of this

conflict. *See Venegas v. Skaggs*, 867 F.2d 527, 530-31 (9th Cir. 1989), *aff'd sub nom.*, *Venegas v. Mitchell*, 495 U.S. 82 (1990) (permissive intervention should be granted where it will not unduly delay or prejudice the adjudication of an existing party's rights, where the movant's interest is not adequately represented by an existing party, and where judicial economy will benefit from the intervention). Accordingly, the PPA should be granted permissive intervention.

       C.      <u>The PPA has submitted a proposed answer to the United States' Complaint.</u>

As required by Fed. R. Civ. P. 24(c), the PPA has submitted with its motion a proposed answer to the United States' Complaint that "sets out the claim or defense for which intervention is sought." (Karia Decl. at ¶ 9 and Ex. C).

IV.      CONCLUSION.

For the reasons described above, the PPA respectfully requests that the court grant its motion to intervene as a defendant as a matter of right under Fed. R. Civ. P. 24(a) or, in the alternative, permissively under Fed. R. Civ. P 24(b).

DATED this 18th day of December, 2012.

TEDESCO LAW GROUP

By: <u>*/s/  Anil S. Karia*</u>
ANIL S. KARIA**,** OSB No. 063902
E-mail: anil@miketlaw.com
Tedesco Law Group
3021 NE Broadway
Portland, OR  97232
Telephone:  866-697-6015
Facsimile:  503-210-9847
     Attorneys for Intervener-Defendant
     Portland Police Association

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing MEMORANDUM IN SUPPORT OF

INTERVENER-DEFENDANT PORTLAND POLICE ASSOCIATION'S FRCP 24 MOTION

TO INTERVENE on:

| | |
|---|---|
| S. Amanda Marshall | Thomas E. Perez |
| Adrian L. Brown | Roy L. Austin, Jr. |
| Billy J. Williams | Jonathan M. Smith |
| United States Attorney's Office | Laura Coon |
| District of Oregon | R. Jonas Geissler |
| 1000 SW Third Ave., Ste 600 | Michelle Jones |
| Portland, OR  97204-2902 | Civil Rights Division |
|   Attorneys for Plaintiff United States | U.S. Department of Justice |
| | 50 Pennsylvania Ave., NW |
| | Washington, D.C.  20530 |
| |   Attorneys for Plaintiff United States |

James H. Van Dyke
City Attorney's Office
1221 SW Fourth Ave., Ste 430
Portland, OR  97204
  Attorney for Defendant City of Portland

by service electronically pursuant to LR 100.7 and by U.S. Mail.

DATED this 18th day of December, 2012.


TEDESCO LAW GROUP


By: <u>*/s/ Anil S. Karia*</u>
ANIL S. KARIA**,** OSB No. 063902
E-mail: anil@miketlaw.com
    Attorneys for Intervener-Defendant
    Portland Police Association