J. ASHLEE ALBIES, OSB #051846
E-mail: ashlee@civilrightspdx.com
CREIGHTON & ROSE, PC
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon 97204
Phone: (503) 221-1792
Fax:    (503) 223-1516

SHAUNA CURPHEY, OSB # 063063
E-mail: scurphey@curpheylaw.com
Curphey & Badger, P.A.
520 SW 6th Avenue, Suite 1040
Portland, OR 97204
Phone: (503) 241-2848

*Of Attorneys for Intervener-Plaintiff AMA Coalition for Justice and Police Reform*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:12-cv-02265-SI |
| Plaintiff, | |
| v. | |
| CITY OF PORTLAND | PROPOSED AMA COALITION'S COMPLAINT IN INTERVENTION |
| Defendant. | |

1. The Albina Ministerial Alliance Coalition for Justice and Police Reform (AMA Coalition) hereby seeks to intervene in this matter.

### I. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391. Defendant

AMA COALITION'S PROPOSED COMPLAINT IN INTERVENTION – PAGE 1

is located or resides in Oregon, and a substantial part of the events or omissions giving rise to this claim occurred in Oregon.

## II.    PARTIES

4.    Plaintiff is the United States of America.

5.    The Defendant is the City of Portland, which is liable for the acts or omissions of the Portland Police Bureau ("PPB"), a law enforcement agency operated by the City.

6.    Plaintiff in Intervention is the Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA Coalition"), a community organization at the forefront of community organizing for police accountability and oversight in Portland.

## III.    FACTUAL ALLEGATIONS

7.    The AMA Coalition was founded in 2003 after Kendra James, a young African American woman, was shot during a traffic stop. The Albina Ministerial Alliance ("AMA") is a group of 125 Portland-area churches, including many predominantly African-American congregations, which has been engaged in social justice work since the 1970s and served as a founding member of the AMA Coalition. In addition to faith-based organizations, other community organizations dedicated to bringing justice to the citizens of Portland and reforming the PPB now participate in the Coalition, including Portland Copwatch, Disability Rights Oregon, the Mental Health Association of Portland, the Portland Chapter of the National Lawyers Guild, and Oregon Action.

8. In 2010, the AMA Coalition participants coalesced around the following goals:

1. A federal investigation by the Justice Department to include criminal and civil rights violations, as well as a federal audit of patterns and practices of the Portland Police Bureau (PPB);

2. Strengthening the Independent Police Review Division and the Citizen Review Committee with the goal of adding power to compel testimony;

3. A full review of the Bureau's excessive force and deadly force policies and training with diverse citizen participation for the purpose of making recommendations to change policies and training;

4. Lobbying the Oregon State Legislature to narrow the language of the State statute for deadly force used by police officers;

5. Establishing a special prosecutor for police excessive force and deadly force cases.

The AMA Coalition pursues these goals with an emphasis on teamwork among its diverse members and on the principles of non-violent direct action enunciated by Dr. Martin Luther King, Jr.

9. Since its inception, the AMA Coalition has been at the forefront of public advocacy regarding police accountability in Portland, regularly meeting with City leaders, offering comprehensive analysis and critique of PPB policies and practices, and testifying at public hearings regarding police accountability and oversight. For example, several of its members served on the 2010 Police Oversight Stakeholder Committee ("Committee") -- a group effort tasked by the Portland City Council to review the structure of police oversight in Portland. The Committee, after months of study and deliberation, issued a comprehensive report in September 2010, which offered 43 recommendations. Despite the Committee's overwhelming success in reaching consensus on most of its recommendations, only a few, some relatively minor, were enacted by the Council.

10. The AMA Coalition's police reform work has also addressed issues of race. For example, several of its members served on the City's Task Force on Racial Profiling. In addition,

the AMA Coalition conducted an analysis of the PPB's release of 2010 pedestrian stop data, which revealed that the percentage of African Americans and Latinos who are searched after being stopped continues to be over twice as high as the percentage of whites who are searched. The data further revealed that in 2010, 14.5% of African Americans stopped were searched, 11.4% of Latinos stopped were searched, while only 6.5% of Whites stopped were searched.

11. The AMA Coalition intensified its efforts in the wake of several high profile police shootings and in-custody deaths of minority community members and individuals suffering from mental illness – including Jose Mejia Poot, Kendra James, James Jahar Perez, James Chasse, Jr., Aaron Campbell, Jack Dale Collins, and Keaton Otis -- as well as the many independent audits and reviews of PPB's systems and policies. As a result of this work, in October of 2010, the AMA Coalition submitted to the City a list of 49 Community Demands, including specific recommendations on the following areas: (1) Use of Force Policy, De-escalation Training, Discipline; (2) Creating a Plan, Chain of Command, Communication; (3) Medical Aid; (4) Investigation, Inquest and Grand Jury; (5) Racial and Other Profiling; (6) Oversight: Police Review Board; (7) Drug Testing; (8) Transparency; (9) Hiring; (10) Other Training and Equipment Needs. Despite the AMA Coalition's continual advocacy and engagement, however, the City failed to implement many of the recommendations, nor did it address why the proposed recommendations could not be implemented.

12. The AMA Coalition was instrumental in the genesis of the Department of Justice investigation of the PPB. In May 2010, the Coalition issued a letter to the DOJ requesting an investigation into the PPB's use of excessive force against people of color and people suffering from mental illness. The AMA Coalition sought "an investigation into what [the AMA

Coalition] believe[s] is a pattern and practice of unconstitutional behavior by the Portland Police Bureau against members of the minority community in Portland, including those who suffer from mental health issues, pursuant to [DOJ's] authority under The Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 and The Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. 3789d(c)(3) ("Safe Streets Act")."

13.    In June 2011, the DOJ commenced an investigation into whether the PPB engaged in a "pattern or practice" of civil rights violations relating to officers' use of force. At the press conference announcing the investigation, AMA Coalition Steering Committee members Jo Ann Hardesty (fka Bowman) and Joyce Harris urged the DOJ to look at race and poverty in its investigation. In addition, the AMA Coalition gathered information, witnesses, and evidence for the DOJ, and met with DOJ staff on several occasions. For example, just one day after the DOJ announced its investigation, the AMA Coalition provided the DOJ with information from public sources regarding PPB officer-involved shootings from the past decade, along with an analysis of that information which found that at least 30% of the 61 people shot at or killed were people of color, in a city that is almost 79% white. Of those 61 people shot or killed, 14, or 23%, were African American, compared to 6.4% of the city population, and twenty-two of the 61 people, or 36%, were either unarmed (eleven), in a vehicle with no other weapon (seven), or armed with "weapons" such as an umbrella, a pair of scissors, an aluminum pushbar, or an Xacto knife (four). In addition, the AMA Coalition provided its list of 49 Community Demands to the DOJ, and urged the DOJ to address disparaties in use of force based on race.

14.    In September 2012, the DOJ made public a Letter of Finding ("DOJ Letter") regarding its investigation into the PPB, finding that: "PPB engages in a pattern or practice of

unnecessary or unreasonable force during interactions with people who have or are perceived to have mental illness." While the DOJ noted "consistent concerns from members of the community" regarding racial bias in policing, it specifically declined to make a finding of a pattern or practice regarding PPB's interaction with people of color. Despite both the AMA Coalition's and Mayor Sam Adams' request that the DOJ look at PPB's relationship with communities of color, "the scope of [the DOJ's] investigation did not include an analysis of whether PPB engages in a pattern or practice of biased-based policing [.]" However, the DOJ recognized that feedback regarding racial tensions between the PPB and the community was "similar to comments that were provided to the City during a series of five community listening sessions in 2006 with community-based organizations and the PPB, and that data demonstrated PPB disproportionally stops African Americans. The DOJ's sole proposal for "remedial measures" with regard to the issue of race was to "require PPB to develop a community engagement and outreach plan with the goal of creating robust community relationships and sustainable dialogue with Portland's diverse communities."

15. The same day that the DOJ announced its findings, it also released a "Statement of Intent" outlining concepts the City had agreed to in principle. These included:

1) revision of the PPB's use of force policies specific to encounters with people with or perceived to have mental illness, Electronic Control Weapons, and de-escalation techniques;

2) expansion of the PPB's crisis intervention resources;

3) use of the City's Employee Information System to track "individual officers, supervisors and units for non-punitive corrective action, and to assess gaps in policy, training, supervision and accountability[.]"

4) taking steps to expedite misconduct investigations; and

AMA COALITION'S PROPOSED COMPLAINT IN INTERVENTION – PAGE 6

5)      creating a community oversight body to assess implementation of the agreement.

16.     After releasing its findings and the Statement of Intent, the DOJ invited the AMA Coalition, as well as other stakeholders, for a briefing and solicited their commentary on the content of a potential consent decree or agreement. The AMA Coalition submitted proposals in response to that request on September 27, 2012, which identified several areas where the Statement of Intent failed to fully address the problems identified in the DOJ's findings. Specifically, the AMA Coalition made recommendations concerning police misconduct and use of force investigations, review board hearings, community engagement, and measures to change the culture at the PPB.

17.     On October 26, 2012, the DOJ and the City released a draft settlement agreement and announced that it would be presented to City Council just five days later, on November 1, 2012. The AMA Coalition and other community groups were not privy to the negotiations between the DOJ and the City that led to the draft agreement. Members of the AMA Coalition testified at the November 1 hearing and submitted comments.

18.     Shortly after the initial City Council hearing, the AMA Coalition issued a statement entitled "Concerns about DOJ Agreement with the City of Portland" and testified again at the next Council hearing on the Agreement. One of the AMA Coalition's repeated concerns was that the DOJ and the City Council for the most part ignored its recommendations for unexplained reasons. Despite meetings with the DOJ and the City, it is not clear whether, or to what extent, the DOJ and City considered the information and feedback provided by the AMA Coalition.

19.     In December 2012, the DOJ filed this suit against the City, alleging a pattern and

practice of unconstitutionally excessive force by the Portland Police Bureau against people with actual or perceived mental illness, pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 USC § 14141. The DOJ alleges that PPB's pattern and practice of using excessive force against people who have or are perceived to have mental illness derives from systemic deficiencies in the City's policies, training, supervisory, oversight, and officer accountability measures. The DOJ and the City have filed a joint motion requesting the court to approve a negotiated settlement agreement (Agreement) and place this case on the court's inactive docket pending implementation of the Agreement.

20. The Agreement, as it now stands, fails to address the concerns raised by the AMA Coalition. As an initial matter, despite evidence and community feedback, the DOJ made no findings as to disparities in use of force related to race. While the Agreement keeps in place the Community/Police Relations Committee and directs them to continue overseeing implementation of the Racial Profiling Plan and participate in reviewing demographic data collected on police encounters, it does not go as far as the recommendations contained in the DOJ letter of findings. For example, the Agreement directs the Bureau to "continue to require that officers document appropriate demographic data regarding the subjects of police encounters," but (a) does not say whether that will include "mere conversations" as suggested in the Letter of Findings, and (b) gives the Bureau until December 31, 2013 to report on changes, rather than requiring changes to be made sooner.

21. The Agreement also fails to address concerns raised by the AMA Coalition regarding community involvement and officer use of force, among other issues. For example, the AMA called for involvement of people of color and mental health professionals in officer

training, enhanced community member involvement in Police Review Board hearings, and enforcement capacity of the Community Oversight Advisory Board (COAB). In addition, the AMA Coalition raised concerns about the extent to which the Agreement adequately restricted the use of Tasers and explained the appropriate use of force.

22. Moreover, the Agreement provides for no formal public input or Court oversight regarding outcomes. It provides that the DOJ is to conduct a comprehensive assessment two years after the effective date of the Agreement "to determine whether and to what extent the outcomes intended by the Agreement have been achieved." The Agreement further provides that when the City agrees with DOJ's recommendations, the Parties shall stipulate to modify it accordingly. Such modifications will not be subject to a Fairness Hearing, nor does the Agreement provide any formal process for public input or Court oversight. Thus, it is critical that an intervenor representing the public's interests be part of this process.

### IV. CAUSE OF ACTION

23. The AMA Coalition re-alleges and incorporates by reference the allegations set forth above.

24. Defendant City's conduct constitutes a pattern or practice of conduct by law enforcement officers that deprives individuals of their rights, privileges, or immunities secured or protected by the Constitution, including the Fourth and Fourteenth Amendments, or the laws of the United States, in violation of 42 USC § 14141.

25. Unless Defendant City is restrained by this Court, PPB will continue to engage in the illegal conduct averred herein, or other similar illegal conduct, against the people of Portland.

///

## V.    PRAYER FOR RELIEF

WHEREFORE Intervener AMA Coalition requests that it be recognized and be allowed to participate in all court proceedings related to this case.

DATED: January 8, 2012

Respectfully Submitted,

*s/ J. Ashlee Albies*
J. ASHLEE ALBIES, OSB # 051846
Email: ashlee@civilrightspdx.com
SHAUNA CURPHEY, OSB # 063063
Email: shauna@curpheylaw.com
