# CITY OF PORTLAND, OREGON

# POLICE OVERSIGHT STAKEHOLDER COMMITTEE

# FINAL REPORT

# SEPTEMBER 21, 2010

*"A stakeholder committee consisting of one member each from the Albina Ministerial Alliance, the IPR Citizen Review Committee, Oregon Action, the Portland Police Bureau, the Human Rights Commission, the Office of Independent Police Review, the National Alliance on Mental Illness, the National Lawyers Guild, the League of Women Voters, ACLU of Oregon, Copwatch, the Office of the Commissioner in Charge of Police, one representative from the Latino Network Center for Intercultural Organizing and one Native American representative, the City Attorney's Office, and a representative of each Council member's office shall convene to recommend additional improvements to the City's oversight of the Portland Police Bureau. Grant Commissioner Leonard the administrative authority to make sure that the community is well represented as a whole, including sexual minorities. The recommendations, including any proposed code amendments, shall be presented to the City Council within 90 days of the effective date of this ordinance."*

*— From the March 2010 enabling ordinance that established the Stakeholder Committee*

# Facilitator's Note

The directive given to the Committee by City Council — *to recommend additional improvements to the City's oversight of the Portland Police Bureau* — has been met with the presentation of this report. While the committee did not complete its work in the 90-day timeframe defined in the enabling ordinance, the committee did conclude the work in as timely a manner as was likely possible.

While some areas of broad consensus were reached (and are noted as such in this report), and *every* recommendation described in this report earned the support of the great majority of committee members who expressed an opinion on it, many recommendations did not earn consensus support from traditionally opposing groups. Therefore, one of the specific tasks we undertook in preparing this report of the Committee's work was to accurately reflect the degree of support expressed — either from the general committee discussion or from the final "ballot" used to assess opinions on selected remaining issues in a timely manner — for each recommendation listed. By making sure that the degree of support for each suggestion is appropriately represented, we believe the original intent of convening the committee — to provide a diverse group of defined community stakeholders an opportunity to recommend changes in the oversight system following the passage of a related ordinance in March of 2010 — has been fulfilled.

We also acknowledge that, in the highly charged environment in which this committee was convened, it was not always easy for those with differing opinions to express them and it had to be difficult at times for those with a long history in this subject area to find the necessary will to listen with fresh ears. We particularly thank all committee members who were willing to articulate views that seemed unpopular, consistently participate in the give and take of the discussion, or genuinely consider the nuance of differing opinions. And, of course most importantly, we wish all committee members the best in helping Portland to achieve one goal we may all agree on: a still safer city where the experience of trust, mutual respect, welcome partnership, and effective problem solving between community and police is increasingly shared by all.

*— John H. Campbell, Committee Facilitator*
*Campbell DeLong Resources, Inc.*
*September, 2010*

# Contents

Committee Membership ................................................................................................... 1

Key Outcomes ................................................................................................................ 2

Definition of a Committee "Recommendation" ............................................................... 3

Recommendations of the Committee ............................................................................. 4

    I. IPR authority & structure ......................................................................................... 5

    II. CRC and Council oversight authority/structure ...................................................... 8

    III. Openness, usefulness, and speed of reporting .................................................... 11

    IV. Police Review Board structure/process ............................................................... 16

    V. Complaint-driven PPB policy improvement process .............................................. 17

    VI. Non-complaint-driven PPB improvement process ............................................... 17

Appendix ....................................................................................................................... 18

    Other suggestions not vetted ..................................................................................... 18

    "Ballot" survey used in final vote ................................................................................ 20

    Meeting minutes ......................................................................................................... 29

    End notes ................................................................................................................... 47

*Common initials or acronyms used in this report:*

ACLU ..................................................American Civil Liberties Union of Oregon

AMA.................................................................. Albina Ministerial Alliance

CRC........................Citizen Review Committee of the Independent Police Review Division

IAD ..................................................Internal Affairs Division of the Portland Police Bureau

IPR ...........................Independent Police Review Division of the Office of the City Auditor

NAMI ............................................................National Alliance on Mental Illness

NAYA.............................................. Native American Youth & Family Center

PPA ...................................................................... Portland Police Association

PPB .........................................................................Portland Police Bureau

PPCOA..................................................Portland Police Commanding Officers Association

PRB ..........................................................................Police Review Board

# Committee Membership

1. Office of Mayor Sam Adams: Warren Jimenez.  Amy Stephens, alternate.
2. Office of Commissioner Amanda Fritz: Dora Perry.  Tom Bizeau, alternate.
3. Office of Commissioner Nick Fish: Jim Blackwood.  George Hocker, alternate.
4. Office of Commissioner Dan Saltzman: Shannon Callahan.
5. Office of Commissioner Randy Leonard: Commissioner Leonard.  Ty Kovatch, Stuart Oishi, alternates.
6. Office of the City Auditor: City Auditor LaVonne Griffin-Valade.
7. Independent Police Review Division (IPR) of the Office of the City Auditor: Mary-Beth Baptista, Director.  Constantin Severe, Irene Konev, alternates.
8. IPR Citizen Review Committee (CRC): Michael Bigham, Chairperson.
9. City Attorney's Office: Linly Rees.
10. Portland Police Bureau (PPB) Chief's Office: Chief Mike Reese.  Lt. Pat Walsh, alternate.
11. Portland Police Bureau Internal Affairs Division (IAD): Lt. Eric Schober.  Captain Edward R. Brumfield, alternate.
12. Portland Police Commanding Officers Association: Commander Dave Benson.  Commander Jim Ferraris, Lt. Robert King, alternates.
13. Portland Police Association: Doug Justus.  Daryl Turner, Dave Dobler, alternates.
14. Human Rights Commission: Damon Isiah Turner.  Maria Lisa Johnson, alternate.
15. American Civil Liberties Union of Oregon (ACLU): Andrea Meyer.
16. Albina Ministerial Alliance (AMA): Dr. LeRoy Haynes, Jr.
17. Basic Rights Oregon: Jeana Frazzini.
18. (I'm) Everyday People: Moses Rosen.  (Also represented by Commissioner Appointee Rev. Renee Ward)
19. Latino Network: Carmen Rubio.  Maria Serrano, alternate.
20. Center for Intercultural Organizing: Kayse Jama.  Andrew Riley, alternate.
21. League of Women Voters of Portland: Debbie Aiona.
22. National Alliance on Mental Illness (NAMI): Sylvia Zingeser.
23. Portland National Lawyers Guild: Ashlee Albies.  Mark Kramer, alternate.
24. Native American Youth & Family Center (NAYA): Donita Sue Fry.
25. Oregon Action: Sally Joughin.  Ron Williams, alternate.
26. Portland Copwatch: Dan Handelman.
27. Sisters of the Road: Chani Geigle-Teller.
28. Truth and Justice for All (TAJFA): A.L. "Skipper" Osborne.
29. Jo Ann Bowman, Commissioner appointee.
30. T.J. Browning, Commissioner appointee.
31. Dorothy Elmore, Commissioner appointee.
32. James Kahan, Commissioner appointee.
33. Rev. Renee Ward, Commissioner appointee, also representing (I'm) Everyday People.
34. Gregory Willeford, Commissioner appointee.

# Key Outcomes

The following core outcomes were reviewed, discussed, and revised at the June 3, 2010 Committee meeting.

1. Increase community faith that the oversight system is independent, fair, appropriate, worthwhile.

2. Reduce use-of-force incidents generally and use of deadly force incidents, specifically. Prevent all shootings of unarmed subjects and achieve fewer injuries to unarmed subjects who have mental illness or are in crisis.

3. Improve City's response to people who are mentally ill.

4. Demonstrate clearer Bureau commitment to improving trust and partnership relationships with communities served.

5. Increase percentage of community members experiencing officers as welcome and as safe to call and interact with.

**AMA Coalition Motion to Intervene**

# Definition of a Committee "Recommendation"

The committee worked with a limited timeframe to identify recommendations that could be forwarded to City Council. While attempts were made to reach broad consensus from traditionally opposing groups, the great majority of recommendations provided in this report have been specifically endorsed by most, or all, of the independent community groups and individuals serving on the committee, with the majority of the representatives of the City offices, departments, and bureaus electing to abstain from taking a position on specific issues raised.

Therefore, that the committee recommends a given idea *should not be construed as indicating approval or endorsement of any particular Bureau, Department, Office, or labor organization within the City of Portland.* While the committee's discussions often benefited from the expressed observations, concerns, or suggestions of City of Portland staff, it was the choice of many City staff on the committee to participate as subject matter experts or observers on behalf of their agency rather than to engage in voting on each issue.

In addition, we specifically note the following:

▶ Those participating on behalf of organized labor at the Portland Police Bureau contributed periodic observations, opinions, and ideas under the express understanding that their comments would in no way be construed as representing a position of their respective associations. *Therefore, no part of this report should be interpreted as reflecting the settled opinion (whether favoring, opposing, or neutral) of the* **Portland Police Association** *or the* **Portland Police Commanding Officers Association**.

▶ The **Independent Police Review Division** of the City Auditor's Office participated primarily as subject matter experts and generally refrained from taking a position during committee meetings about the specific recommendations discussed in this report.

▶ The representative from the **Office of the City Attorney** participated with the understanding that her role would not be that of a voting member, but rather as a resource available to the committee when questions or issues within the purview of her office were raised.

September 2010

**AMA Coalition Motion to Intervene**

# Recommendations of the Committee

Two types of recommendations are shown in this report.

**Committee discussion recommendations**.  These items were discussed in the full committee and reached sufficiently broad endorsement by committee members to merit listing as a recommendation in the report.  For these items, individual voting positions were not recorded and, as such, the level of agreement is described in a somewhat qualitative manner.  Note that, with these recommendations, two types of consensus are described:

▶ **General consensus**, which means that no members of the committee voiced opposition to the recommendation; and

▶ **"Community" consensus**, which means that the recommendation is endorsed by those committee members who represent independent groups or otherwise do not represent a City agency specifically.

**Ballot recommendations.**  These are items voted on in a final "ballot" survey distributed to all committee members in the interests of determining opinions on selected remaining issues in as timely a manner as possible.  For these items, individual voting positions were recorded and are noted as such in the text.  (While the details and language of the ballot recommendations were proposed by a volunteer subcommittee and further refined by the entire committee, the relative merits or drawbacks of specific ballot recommendations were not discussed in detail by the entire group.  In addition, the purpose of the subcommittee was not to endorse any ballot item, but simply to select and clarify remaining issues for a vote by the full committee.)

The Ballot allowed committee members to indicate whether they wished their votes to be considered representative of their agency or to represent their opinions alone.  Pursuant to those preferences stated, the 18 organizations or individuals voting are shown as the following:

| | |
|---|---|
| *A.M.A. Coalition* | *League of Women Voters of Portland* |
| *ACLU of Oregon* | *NAMI Multnomah* |
| *Basic Rights Oregon* | *Native American Youth and Family* |
| *Michael Bigham* | *Oregon Action* |
| *Jo Ann Bowman* | *Portland Copwatch* |
| *T.J. Browning* | *Portland National Lawyers Guild* |
| *Dorothy Elmore* | *Sisters Of The Road* |
| *(I'm) Everyday People* | *Damon Isiah Turner* |
| *James Kahan* | *Pat Walsh* |

For the sake of avoiding the obvious redundancy, we have not listed under each relevant recommendation the names of the agencies (or individuals) on the committee who chose not to return a ballot.  Those committee participants include:  *All participating City elected officials or their representatives, IPR Division of the Office of the City Auditor, Internal Affairs Division of the Portland Police Bureau, Portland Police Association,[1] Portland Police Commanding Officers Association, one at-large commissioner appointee, and representatives from the organizations Center for Intercultural Organizing, Latino Network, and Truth and Justice for All.*

 **Check mark = recommendations without any stated opposition.** While all recommendations shown have the support of many committee members, some became recommendations without *any* stated opposition — that is, they either had *no* opposing "ballot" votes or *no* opposing views offered during the relevant committee discussion even when, to test the validity of a potential emerging consensus, opposing viewpoints were directly requested.   At the request of the committee, those particularly high-consensus recommendations are indicated with a check mark symbol.

# I. IPR authority & structure

A. **Repair community distrust of use-of-force investigations (up to and including shootings and in-custody deaths).** While other recommendations in this report are more specific in the nature, this first one is a general observation about the perception of use-of-force investigations.  Public faith in the oversight system is critically important and, regardless of the steps taken in the past to improve public faith in the investigation of police use-of-force incidents, it is the position of many on the committee that public faith has not sufficiently improved. 

   ***Committee discussion recommendation: Community consensus.*** There is consensus from community stakeholders around this general concept.   The specific steps recommended to accomplish this general recommendation generated less consensus and were voted on in the final "ballot" distributed to committee members.  The related votes are reflected in the *ballot recommendations* listed in this report and include many of the following recommendations in this report section.

B. **Ensure that IPR investigations include specified more serious complaints (Ballot survey item 3).** When IPR conducts administrative[*] investigations they should be of use-of-force complaints, particularly those including shootings, deaths in custody, and physical injury requiring hospitalization.  IPR should monitor any associated criminal investigation as well.  IPR should conduct other investigations involving allegations of racial profiling, illegal searches, conflicts of interest, or other "high emotion in the community" issues. (Background: This recommendation is intended to be consistent with the findings of the Luna-Firebaugh report which includes various statements in support of IPR using its investigative authority in particular cases.  For example, page 12 of the report indicates, "The Office of Independent Police Review should exercise their authority under the ordinance to conduct independent investigations where the complaint is one of public import...")

   ***Ballot recommendation.***  Of those who participated in the voting, 16 voted in favor, 1 opposed, and 1 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch,[2] Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner.  *Voters who opposed:* Michael Bigham[3].  *Voters who abstained:* Pat Walsh.

C. **Ensure that IPR has, and exercises, the power to conduct or participate in investigations (from time zero) of specified serious incidents (Ballot survey item 4),**  including police shootings, deaths in custody, and other serious injury incidents consistent with the intent of the recommendations of the PARC report on the subject. (Background: Chapter 4 of the August 2003 PARC report[4] recommends that "*The PPB should replace its Homicide-only investigative model with one that takes a multidisciplinary approach to deadly force and in-custody death cases. We believe either the IA Overlay model as enhanced by*

---

[*] The term "administrative" investigation is used here to draw a distinction from the criminal investigation which would seek to determine if a crime has been committed. An administrative investigation would, for example, evaluate whether the officer acted in a manner that is consistent with Bureau policy and training or evaluate whether a review of policy or training practices is warranted.

*the LASD, or the enhanced Specialist Team model used in Washington, D.C., would work well in Portland.*" The approaches discussed are designed to accomplish the goal of more timely investigation without unnecessary conflicts during any initial time period when both criminal and administrative investigations are being conducted.)

***Ballot recommendation.*** Of those who participated in the voting, 17 voted in favor, none opposed, and 1 chose not to vote. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, Dorothy Elmore, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh. *Voters who chose not to vote:* TJ Browning.

D. **Ensure that IPR has the authority to compel officer testimony and directly interview police officers in administrative investigations (Ballot survey item 6).**

***Ballot recommendation.*** Of those who participated in the voting, 16 voted in favor, 1 opposed, and 1 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Voters who opposed:* Pat Walsh. *Voters who abstained:* Basic Rights Oregon.

E. **Ensure investigations conducted by IPR or IAD and reviews by CRC can proceed in a manner that is consistently and objectively independent.** There is a general consensus  that both investigations by IPR and reviews by CRC should be consistently permitted to "go where the investigation takes them" without delays associated with concerns that the resulting findings could have an impact on a civil claim against the City.

***Committee discussion recommendation: General consensus.*** A broad consensus on this general recommendation was reached with no opposition voiced when opposing views were requested. A related, supporting recommendation associated with granting the City Auditor more authority to hire outside counsel is described below.

F. **Make it easier for the Auditor to hire outside counsel at the Auditor's discretion (Ballot survey item 1).** Specifically, change Portland City Code 3.21.070.O. to read: 

*The Auditor may* ~~work through the City Attorney's Office to~~ *hire outside legal counsel to support the purpose and duties of IPR when* the Auditor determines ~~the Auditor and the City Attorney agree~~ *that outside legal advice is necessary or advisable.*

In addition, if it is determined that the above change cannot occur without a Charter change, then such a change should be supported to enable it.

***Ballot recommendation.*** Of those who participated in the voting, 17 voted in favor, none opposed, and 1 voted "no opinion." *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch,[5] Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Voting "no opinion:"* Pat Walsh.

G. **Require that IPR investigate or actively participate in the investigation of all complaints of those with the rank of captain or higher (Ballot survey item 5).** 

    **Ballot recommendation.** Of those who participated in the voting, 15 voted in favor, none opposed, 1 voted "no opinion," and 2 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh. *Voters who selected "no opinion:"* Jo Ann Bowman. *Voters who abstained:* Basic Rights Oregon, James Kahan.

H. **Diversify the pool of investigators at both IPR and IAD to include** 1) People with investigative skills who have not been police officers in general, nor Portland officers specifically, per Luna-Firebaugh recommendations[6], and 2) A much greater demographic (racial, ethnic, cultural) diversity and competency (one suggestion is to apply the diversity and conflict-of-interest guidelines already existent for the CRC.[7]) 

    ***Committee discussion recommendation: General consensus.*** A broad consensus was reached on this recommendation with no opposition voiced when opposing views were requested.

I. **Ask every complainant if they would prefer to have IPR or IAD investigate their complaint and document the response.** This recommendation is suggested primarily as a method to gather data that may help measure community trust in the complaint system. The concept is that IPR can immediately begin measuring complainant faith in the system by asking each complainant their opinion of whether they would prefer to have the complaint investigated by the Auditor's Office Independent Police Review Division or by the Portland Police Bureau's Internal Affairs Division. 

    ***Committee discussion recommendation: Community consensus.*** No opposition to this recommendation was voiced when opposing views were requested in the committee meeting.[8]

J. **If complainant opinions support doing so, increase investigative resources at IPR (Ballot survey item 2).** This is a follow-on recommendation to the above community consensus recommendation to ask complainants, at intake, their opinions of whether, if they had the choice, they would prefer to have IPR or IAD investigate the complaint. The additional recommendation is this: *If the results of such measurements indicate a substantive preference for investigations by IPR, increase investigative resources at IPR.*

    ***Ballot recommendation.*** Of those who participated in the voting, 16 voted in favor, 1 opposed, and 1 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild,[9] Sisters Of The Road, Damon Isiah Turner. *Opposed:* Pat Walsh. *Voters who abstained:* James Kahan.

K. **Formalize/mandate what is current practice to not use mediation in serious use-of-force cases.** It is the consensus of the committee that cases involving use of force that result in hospitalization should always be investigated and, as such, should not be eligible for mediation. Specifically *Portland City Code 3.21.120 (A) Mediation* should have an 

**AMA Coalition Motion to Intervene**

**3:12-cv-02265-SI**

additional sentence added to the end of the paragraph that would read as follows: "No use-of-force complaint that results in hospitalization shall be eligible for mediation." While the committee members recognize, and appreciate, that this is current practice, the desire is to ensure that the practice remains policy regardless of personnel/management turnovers.

*Committee discussion recommendation: General consensus.* A broad consensus was reached on this recommendation with no opposition voiced when opposing views were requested.

# II. CRC and Council oversight authority/structure

A. **Change the definition of "supported by the evidence" as that term is used in *Portland City Code 3.21.160 Hearing Appeals*.** The definition should change from the "reasonable person" standard defined in *3.21.020 Definitions* to a "preponderance of the evidence" standard, per the discussion in the Luna-Firebaugh report.[10] 

*Committee discussion recommendation: General consensus.* This recommendation was supported by the committee with no opposition stated.

B. **Give CRC the authority/permission to make policy recommendations directly to PPB.** Specifically, that Portland City Code 3.21.090 Powers and Duties of the Committee section (A)(3) be modified to read: "Recommend policy changes. To ~~help the Director~~ identify specific patterns of problems and to ~~participate in the~~ development ~~of~~ policy recommendations." 

*Committee discussion recommendation: General consensus.* The committee voted to endorse this recommendation with no opposing votes, a majority in favor, and a limited number of staff abstentions.

C. **Increase the length of term for CRC members from two years to three years.** Specifically, that Portland City Code 3.21.080(B)(2) be modified to read: "Each serve a term of ~~two~~ three years, subject to reappointment by Council. Upon expiration of the term, a committee member shall serve until re-appointed or replaced." 

*Committee discussion recommendation: General consensus.* The committee voted to endorse this recommendation with no opposing votes, a majority in favor, and a limited number of staff abstentions.

D. **Ensure CRC may hold hearings on all appeals requested by complainants or Bureau members (Ballot survey item 12).** Ensure that the CRC may conduct hearings on all appeals within its purview without delays associated with concerns that the outcome of their review could have an impact on a civil claim against the City. 

*Ballot recommendation.* Of those who participated in the voting, 17 voted in favor, none opposed, and 1 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh. *Voters who abstained:* Basic Rights Oregon.

E. **Clarify CRC authority to present directly to Council (Ballot survey item 13).**  Ensure that the CRC has the authority to make its own presentations in cases that go to Council for resolution when the CRC and Bureau do not reach agreement on findings in an appealed case.  Specifically: Modify Portland City Code 3.21.160.C. to include the sentence: _The Committee shall present its recommendations before Council._ 

**Ballot recommendation.**  Of those who participated in the voting, all 18 voted in favor — a unanimous vote in favor.  *Voting in favor:* A.M.A. Coalition, ACLU of Oregon,  Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh.

F. **Permit CRC to compel testimony (Ballot survey item 14).**  Ensure that the CRC has power to compel officer testimony and the testimony of other witnesses at appeal hearings.  Suggest changing Portland City Code 3.21.090.A. to include a new numbered paragraph that would read:   **Compel testimony.**  _At appeal hearings CRC shall have the power to compel officers and other witnesses to testify regarding the incident or incidents under review._

**Ballot recommendation.**  Of those who participated in the voting, 15 voted in favor, 1 opposed, and 2 abstained.  *Voting in favor:* A.M.A. Coalition, ACLU of Oregon,  Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, (I'm) Everyday People,  League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch,[11] Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Voters who opposed:* Pat Walsh. *Voters who abstained:*  Dorothy Elmore, James Kahan.

G. **If the CRC is not given authority to compel testimony, then grant City Council the power to hear new evidence (Ballot survey item 15).**  (Background: Currently, the CRC may hear new evidence when holding hearings on appeals, but cannot compel testimony, while the City Council can compel testimony but may not hear new evidence.   The overriding recommendation is to vest the power to do both in one review body.)

**Ballot recommendation.**  Of those who participated in the voting, 17 voted in favor and 1 opposed.  *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh.  *Voters who opposed:* James Kahan.

H. **Increase size of CRC (Ballot survey item 16).**  Increase the size of the CRC from 9 to 11 members.  This has been recommended as a method to encourage more diversity and spread out the workload.  Changes Portland City Code 3.21.080.A. to read: *The Committee shall consist of* _eleven_ ~~nine~~ *citizens…*

**Ballot recommendation.**  Of those who participated in the voting, 14 voted in favor, 1 opposed, 1 voted "no opinion," and 2 abstained or chose not to vote.  *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Jo Ann Bowman, Dorothy Elmore, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner.  *Voters who opposed:* Pat Walsh. *Voters*

*indicating "no opinion"*: Michael Bigham. *Voters who selected "Abstain" or chose not to vote:* Basic Rights Oregon, TJ Browning.

I.  **Allow CRC to review proposed allegations prior to investigation (Ballot survey item 17).** Develop a method that is consistent with the benefits of timely investigation (such as providing a limited time or opportunity to review) that allows the CRC, prior to IAD or IPR initiating a full investigation, to review the proposed allegations to ensure they match the complainant's concerns and align with Police Bureau policies.

    ***Ballot recommendation.*** Of those who participated in the voting, 16 voted in favor and 2 opposed. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Voters who opposed:* James Kahan, Pat Walsh.

J.  **Increase CRC authority to act on dismissed complaints, "service improvement opportunities," and formulation of allegations (Ballot survey item 18).** Specifically: Strengthen CRC's independent authority to send complaints back for further investigation, to re-categorize allegations, and to review dismissed and declined complaints. (Would modify Portland City Code 3.21.160.A.1.b. to broaden authority from revision of findings.)

    ***Ballot recommendation.*** Of those who participated in the voting, 15 voted in favor, 1 opposed, and 2 abstained or chose not to vote. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch,[12] Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Voters who opposed:* Pat Walsh. *Voters who abstained or chose not to vote:* James Kahan, TJ Browning.

K.  **Establish an avenue for appeal or reconsideration for cases involving quality-of-service or minor rule violations (Ballot survey item 19).** For example, allow community members to appeal dismissed complaints or low-level, "service improvement opportunity" complaints against officers to the Citizen Review Committee.

    ***Ballot recommendation.*** Of those who participated in the voting, 15 voted in favor, 1 opposed, and 2 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch,[13] Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Voters who opposed:* Pat Walsh. *Voters who abstained:* James Kahan, Basic Rights Oregon.

L.  **Provide dedicated staff to support the CRC (Ballot survey item 20).** Specifically: Change Portland City Code 3.21.090.A. to include a new numbered paragraph that would read: ***Direct committee staff.*** *To direct a staff person assigned to the Committee to provide staff support for the powers and duties outlined in this chapter.*

    ***Ballot recommendation.*** Of those who participated in the voting, 15 voted in favor, 1 opposed, and 2 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon

Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Voters who opposed:* Pat Walsh. *Voters who abstained:* James Kahan, Basic Rights Oregon.

# III. Openness, usefulness, and speed of reporting

**A.  Develop categories of findings regarding the specific allegation that includes four categories, instead of the current three.**  While some committee members envision these categories as *exonerated/in policy, unfounded/not supported, insufficient evidence and sustained/out of policy* (along with the currently-in-use *with/without debriefing* qualifiers), there is *not* a full consensus on using those terms specifically.  *There is, however, a **General Consensus Recommendation** regarding the need to achieve the fourth category by separating the current category of "unproven" into categories approximately equivalent to the technical understanding of the terms "unfounded" (meaning that the evidence does not, in fact, support the allegation) and "insufficient evidence" (meaning that there is simply not enough evidence to draw a conclusion as to whether the allegation is true or not).*  The distinction is one that is understood to be important in the mind of complainants, because the former is, roughly speaking, a finding in the officer's favor, while the latter is simply a statement that the investigation is inconclusive.



*The specific definitions recommended to accomplish the above did not reach a full consensus and were voted on in the final ballot, with the following recommendation resulting:*

**Use the following definitions specified for the four-category finding method (Ballot survey item 8).**  Definitions for separating the current three categories of findings into four categories (a concept that the committee has already agreed on), should be as follows:



    **Unfounded/Not supported:** Over 50% of the evidence shows that the officer did not do what the complainant alleges (the evidence does not support this allegation).

    **Exonerated/In policy:** Over 50% of the evidence shows that the officer did what the complainant alleges, but it was within Bureau policy.

    **Insufficient Evidence:** There is not enough evidence to show either (a) whether the officer did what was alleged or (b) whether the officer's actions were within Bureau policy.

    **Sustained/Out of policy:** Over 50% of the evidence shows that the officer did what the complainant alleges, and it was not within Bureau policy.

    All of the above could be qualified by "**With debriefing:**" While the officer was not necessarily out of policy, a supervisor will discuss ways the incident could have been handled better.

***Ballot recommendation.***  Of those who participated in the voting, 17 voted in favor, none opposed, and 1 elected not to vote on this question. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon,  Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, Dorothy Elmore, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild,[14] Sisters Of The Road, Damon Isiah Turner, Pat Walsh. *Voters who chose not to vote on this question:* TJ Browning.

**AMA Coalition Motion to Intervene**

**B.** **Ensure that findings indicate a separate rating regarding the overall incident that would identify the presence of any *policy-related issues* as that term is defined in Portland City Code[15] (as opposed to allegations regarding a specific Bureau member).** Recommended categories for this data are as follows: *Communication issues, Management issues, Training issues, Equipment issues and Other policy-related issues.* It must be emphasized that the ***General consensus recommendation*** that underlines this recommendation hinges on these categories being used to identify associated system deficiencies and expressly *not* used for the more narrow purpose of identifying an individual whose specific behavior associated with the complaint-incident requires investigation. The purpose of these categories, rather, is to identify important institutional/administrative issues that do not rise to the level of possible individual employee misconduct. (As is the current practice, instances of potential supervisory / management misconduct would continue to be dealt with through the process of investigating that specific behavior.)

*The specific definitions recommended to accomplish the above did not reach a full consensus in committee discussion and were voted on in the final ballot, with the following recommendation resulting:*

**Use the following definitions specified for policy-related issue findings (Ballot survey item 9).** (*Background:* The committee has already agreed to the concept of ensuring that findings routinely indicate a separate rating regarding the overall incident that would identify the presence of any "*policy-related issues*" — *a term defined in Portland City Code 3.21.010.U which is essentially intended to describe issues that pertain to Police Bureau practices but not pertaining specifically to the propriety or impropriety of a particular Bureau member's conduct*). It is recommended that the following definitions for those elements be as follows:

**Training issue:**

(i) One or more Bureau members did not receive adequate training about actions in question, or

(ii) The Bureau's training on this action is inadequate.

**Communication issue:** Relevant information was not communicated...

(i) Among Bureau members, or

(ii) From another agency to Bureau members.

**Management issue:** The outcome of the incident was due in part to

(i) The command structure and supervisory protocols surrounding the incident, or

(ii) Supervisory instructions, decisions, or behaviors that did not involve misconduct but did lead to action prompting the complaint.

**Equipment issue:** A better incident outcome would have been possible had improved, different, or additional equipment been available for use during the incident.

**Other policy-related issue:** While the Bureau member did not violate policy, (i) The policy appears either inadequate or incomplete for proper management of the incident and can be detrimental to community-police relations or public safety in this type of incident; or (ii) A policy does not exist to address the actions that prompted the complaint.

***Ballot recommendation.*** Of those who participated in the voting, all 18 voted in favor — a unanimous vote in favor. *Voting in favor: A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday*

**3:12-cv-02265-SI**
**AMA Coalition Motion to Intervene          Ex. 1 Page 16 of 52**

People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh.

C. **Replace the term "service improvement opportunity" with the term "non-disciplinary complaint" (Ballot survey item 10).** (Background: These are complaints about the quality of an officer's service or minor rule violations that are typically handled through a process that includes an officer's supervisor first speaking with the community member making the complaint, then to the officer, and then re-contacting the community member to explain the outcome. Supervisors document their conversations, recommendations, and actions in a memo, which must be approved by the precinct Commander, IAD, and IPR. Note that, while "minor complaint" was initially suggested for the new term, "non-disciplinary complaint" has been suggested because it describes the situation without the need to characterize a complainant's concern as necessarily "minor" in nature.)

*Ballot recommendation.* Of those who participated in the voting, 15 voted in favor, with 1 opposing and 2 voting "no opinion." *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, TJ Browning, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh. *Voters who opposed:* Jo Ann Bowman. *Voters who selected "no opinion:"* Michael Bigham, Dorothy Elmore.

D. **Ask opinion on complaint-handling preference (Ballot survey item 11).** For tracking and other purposes at intake, when applicable, the IPR will ask and record the complainant's opinion in response to this question: *If the choice were the complainant's, would he or she prefer to have a full investigation or to have the complaint handled through the non-disciplinary complaint (or Service Improvement Opportunity as it is currently called) process?*

*Ballot recommendation.* Of those who participated in the voting, 13 voted in favor, 2 opposed, and 3 abstained, did not vote, or voted "no opinion." *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Pat Walsh. *Voters who opposed:* Jo Ann Bowman, Damon Isiah Turner. Abstained: Basic Rights Oregon. *Voted "no opinion:"* Dorothy Elmore. *Chose not to vote on the question:* TJ Browning.

E. **Make it easier for complainants to get publicly available records (Ballot survey item 21).** Direct IPR and PPB to establish an interagency agreement that would allow the Director discretion to release case-specific records that are already generally available to the public to complainants or their representatives. (*Background:* The concept is to allow complainants a greater likelihood of being able to gain publicly-available information about their cases at one location — IPR in this case — rather than having to physically wait for service at both IPR and the Police Bureau Records Division for complete information.)

*Ballot recommendation.* Of those who participated in the voting, 17 voted in favor and 1 opposed. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon

Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh. *Opposed:* Dorothy Elmore.[16]

**F.  Make certain CRC review documents available to the public (Ballot survey item 22).** Ensure that documents utilized by the CRC in reviewing complaints are also accessible to the public, with the understanding that some documents may require redaction to protect the security of complainants, officers, and witnesses.

*Ballot recommendation.* Of those who participated in the voting, 16 voted in favor and 2 opposed. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Jo Ann Bowman, TJ Browning, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh. *Oppose:* Michael Bigham, Dorothy Elmore[17].

**G.  Required reporting on reasons for long investigations (Ballot survey item 23).** Require  monthly public reporting (including, but not limited to, reporting to the CRC at regularly scheduled meetings), by the investigating unit (either IPR or IAD) on the specific reasons that investigations lasting over 150 days have not been completed.

*Ballot recommendation.* Of those who participated in the voting, 16 voted in favor, none opposed, and 2 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh. *Abstain:* Basic Rights Oregon, James Kahan.

**H.  Make certain task forces public (Ballot survey item 25).** Require that any task force charged with policy review that includes members of IPR or the CRC be open to public observation. (Background: This recommendation grows out of concerns about a Use-of-Force Task Force whose meetings were not open to the public.)

*Ballot recommendation.* Of those who participated in the voting, 14 voted in favor, 2 opposed, and 2 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Oppose:* Michael Bigham, Pat Walsh. *Abstain:* Basic Rights Oregon, James Kahan.

**I.  Mandate investigative resource levels (Ballot survey item 26).** Mandate a level of investigation resources that is sufficient to ensure all investigations can be completed in a timely manner.

*Ballot recommendation.* Of those who participated in the voting, 16 voted in favor, 1 opposed, and 1 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Oppose:* Pat Walsh. *Abstain:* Basic Rights Oregon.

**J. Require prompt explanation for decisions that differ from the Police Review Board's recommendations (Ballot survey item 28).** Require the Chief or Commissioner to explain in writing, publicly, the basis for their decision when it differs from the PRB's recommendation and to do so in 30 days. 

*Ballot recommendation.* Of those who participated in the voting, 17 voted in favor, none opposed, and 1 voted "no opinion." *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner, Pat Walsh. *Voting "no opinion:"* Dorothy Elmore.

**K. Require more specific reporting on the relationship between sustained findings and discipline (Ballot survey item 29).** Require that the IPR annual report provide additional, non-officer-specific information about the scope of discipline imposed for specific categories of sustained findings. The intent of this recommendation is to encourage reporting that would allow better public understanding of the correlation between the seriousness of a sustained complaint and the level of discipline commonly imposed.

*Ballot recommendation.* Of those who participated in the voting, 14 voted in favor, 1 opposed, 2 voted "no opinion" and 1 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Oppose:* James Kahan. *Voted "no opinion:"* Dorothy Elmore, Pat Walsh. *Abstain:* Basic Rights Oregon.

**L. Report on aspects of the "mitigation" process (Ballot survey item 30).** The public shall be informed regarding the rate at which recommended discipline for cases that involve shootings, deaths in custody, or use-of-force injury requiring hospitalization is changed in mitigation. The intent of this recommendation is to encourage reporting that would allow better public understanding of the correlation between the level of discipline recommended for particularly serious cases and the level of discipline commonly imposed.

*Ballot recommendation.* Of those who participated in the voting, 15 voted in favor, 2 opposed, and 1 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild,[18] Sisters Of The Road, Damon Isiah Turner. *Oppose:* Pat Walsh, James Kahan. *Abstain:* Basic Rights Oregon.

**M. Order another expert review in 2012 (Ballot survey item 31).** On or before July 1, 2012, order an independent expert review of the Police Review system and the impact of the changes made by ordinance and practices since March of 2010.

*Ballot recommendation.* Of those who participated in the voting, 15 voted in favor, 1 opposed, and 2 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Oppose:* Pat Walsh. *Abstain:* Basic Rights Oregon, James Kahan.

N. **Hold another stakeholder review (Ballot survey item 32).** Have City Council require another stakeholder review to begin no later than upon completion of an expert review initiated in 2012 or, if no expert review is initiated, January 15, 2013.

*Ballot recommendation.* Of those who participated in the voting, 14 voted in favor, 1 opposed, 2 abstained, and 1 chose not to vote on the question. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, Jo Ann Bowman, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Oppose: Pat Walsh. Abstain:* Basic Rights Oregon, James Kahan. *Choosing not to vote on the question:* TJ Browning.


# IV. Police Review Board structure/process

A. **Do not permit the supervising RU (Resource Unit) commander to vote as a member of the Police Review Board (PRB) in specific situations.** The supervising RU commander should not be a voting member of the Police Review Board in cases of deadly force, in-custody death, or physical injury requiring hospitalization.

Background: This topic was taken up at the July 1, 2010 meeting in response to expressed concerns by some committee members regarding Ordinance 183995 that was subsequently passed by City Council on July 14, 2010. While there were no objections raised regarding other parts of that ordinance, there was strong opinion regarding the desire to go on record in this report regarding the specific issue described above. In particular, committee members referenced the findings of two PARC reports that recommended against having RU commanders vote in the situations described.[19]

*Committee discussion recommendation: Split vote.* Favored by most community stakeholders. After considerable discussion on the topic, this recommendation was not supported by a consensus of the committee but was supported by a vote of 11 to 1 (with 1 abstention) by community stakeholders present, and opposed by a vote of 5 to 1 (with 5 abstentions) by city staff persons present.

B. **Add another citizen member to PRB for use-of-force incidents (Ballot survey item 27).** 3.20.140.C.2. Police Review Board (Composition of Board) should be modified to read as follows:

*"However, when the incident to be reviewed by the board involves the following use of force incidents, one two additional citizen members and one additional peer member shall serve on the Board, for a total of seven eight voting members. A quorum of six seven voting members, including two three citizen members, and the RU manager or designee, and four Advisory members is required to be present to make recommendations to the Chief.*

*a. All officer involved shootings.*

*b. Physical injury caused by an officer that requires hospitalization.*

*c. All in-custody deaths.*

*d. Less lethal incidents where the recommended finding is "out of policy"."*

*Ballot recommendation.* Of those who participated in the voting, 16 voted in favor and 2 opposed. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael

Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Oppose:* James Kahan, Pat Walsh.

## V. Complaint-driven PPB policy improvement process

**A.  IPR & CRC to be provided drafts of certain policy-change decisions (Ballot survey item 24).**  All changes to Police Bureau policies that relate to Bureau member interactions with the public (or to the investigation of such interactions), including, but not limited to, use-of-force policies, should be provided to both IPR and CRC, in draft form prior to policy adoption, who shall then be given the opportunity to review and make recommendations.

*Ballot recommendation.*  Of those who participated in the voting, 15 voted in favor, none opposed, 2 voted "no opinion" and 1 abstained. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Michael Bigham, TJ Browning, Dorothy Elmore, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. *Voted "no opinion:"* Jo Ann Bowman, Pat Walsh. *Abstain:* Basic Rights Oregon.

## VI. Non-complaint-driven PPB improvement process

**A.  Request that Auditor's Office provide regular reports on the status of the Bureau's Employee Information System and on independent analysis of police stop data (Ballot survey item 7).** *The recommended approach:*

Revise 3.21.070 B. to read:  "Report on complaint <u>and related</u> activities. IPR shall track and report on the disposition of complaints to the public, IAD, the Chief, and the Council and monitor and report measures of activity and performance of IAD and IPR. IPR will also monitor<u>,</u> <s>and</s> track <u>and report to the same parties regarding</u> trends relating <u>to Bureau member interactions with the public as documented by other available data sources such as the Employee Information System (or equivalent), police stop data,</u> member history and complaint type and frequency, consistency and adequacy of discipline imposed. In performing these duties, IPR shall have access to Bureau data and records, including but not limited to raw data, tabulated summary statistics, other source materials, and any other format source necessary for IPR to perform its duties.  IPR shall also have direct access to original database sources as permitted by state and federal law."

*Ballot recommendation.*  Of those who participated in the voting, 17 voted in favor and 1 opposed. *Voting in favor:* A.M.A. Coalition, ACLU of Oregon, Basic Rights Oregon, Michael Bigham, Jo Ann Bowman, TJ Browning, Dorothy Elmore, (I'm) Everyday People, James Kahan, League of Women Voters of Portland, NAMI Multnomah, Native American Youth and Family, Oregon Action, Portland Copwatch, Portland National Lawyers Guild, Sisters Of The Road, Damon Isiah Turner. Opposed: Pat Walsh.

# Appendix

## Other suggestions not vetted

Committee members raised a wide range of topics and concerns, not all of which could be addressed in the timeline allotted. The following briefly summarizes suggestions that were either not discussed by the full committee or (where noted) were discussed without a substantive conclusion being reached. As such, these concepts do not necessarily represent a majority or consensus view of the Oversight Committee. In addition, as will be obvious, many are less specific in nature than the recommendations provided in the main body of the report. The following listing is only an attempt to summarize, in very compact form, examples of the nature of the other comments offered. *It is possible that some comments offered are based on inaccurate or outdated information about process or policies.*

▸ Consider changing **the policy on mediation** for complaints involving use of a racial, ethnic, gender or sexual-orientation-related epithet; or in cases of officers with a pattern of misconduct. This discussion relates to a recommendation discussed in the Luna-Firebaugh report.[20] *Facilitator's comment: While the committee endorsed forbidding mediation in cases involving use-of-force resulting in hospitalization, no consensus on forbidding mediation in the conditions described above was reached. The arguments in favor hinge on the concern that, unlike non-mediated complaints, the nature of mediated complaints are not recorded in an officer's personnel record. The arguments in opposition relate substantially to the benefits that both complainants and officers are said to experience when mediation is conducted.*

▸ Consider funding adoption of **technology that would video record, or at least audio record, every interaction** with the public. Existing technology would permit the creation of the functional equivalent of a 9-1-1 tape for every interaction. (May require legislative change to permit full use.) *Facilitator's comment: Full discussion of this topic was not explored. While preliminary discussions suggest interest by some Bureau members, there is substantial resistance among at least some community stakeholders to the concept of audio or video documentation of police/public interactions.*

▸ Consider **creation of a separate civilian committee** within IPR, perhaps made up of former CRC members, **to focus on policy review** as its sole duty. There should be overlap with the CRC because in many cases of civilian complaints about officer conduct there is no violation of policy, but those complaints help identify policies that need to be revised or improved. *Facilitator's comment: If the CRC is granted the committee's recommended permission to make recommendations directly to the Police Bureau, it would seem that the CRC would have all necessary authority to implement this type of approach under existing code which already permits it to create subcommittees with members who are not on the CRC (see PCC 3.21.090.A.7.)*

▸ Consider limiting, or further clarifying, the **IPR Director's discretion to dismiss complaints** when "it is more likely than not that no misconduct was committed" (see PCC 3.21.120 C.4.g.) *Facilitator's comment: While this recommendation was suggested in early surveys collected, it was not recommended for priority discussion in the formal committee meetings and preliminary discussions with individual committee members on this point did not indicate a substantive history of issues associated with this specific part of the code.*

▸ Consider modifying the **CRC member selection** process to further improve transparency, inclusiveness.

*Appendix: Suggestions not vetted*

▶   Consider methods to **ensure that future appointed IPR directors will continue to be fully sympathetic** to the purpose of independent police review.

▶   Consider giving complainants **the right to waive the time limits** and to receive written notification of time extensions.

▶   Consider clarifying the process to **ensure that voting Police Review Board members have access to all information** pertaining to the incident.  For example, clarify the process for determining which documents are "necessary and relevant" and thus available for voting PRB members to review.

▶   Consider methods to **require better reporting of policy recommendations received**, and policy changes made, by PPB.

▶   Consider requiring that **public reports** summarizing statements of findings and concerns about training and investigations **should include summaries of policy recommendations** the Police Review Board submitted to the Chief of Police.

▶   Consider **preserving investigation information** throughout the entire career of each officer investigated.

▶   Consider implementing a **"Quality Assurance" program** to better identify, correct, and improve institutional practices through a system that is not based on determining blame, but based on finding and correcting errors.  (The concept is not to replace complaint-based oversight tools, but to provide an alternate method to ensure responsive change regardless of whether specific proof of wrong-doing has been established.)

▶   Consider **enhancing efforts to recruit minority officers and those with high cultural competency** in order to improve the environment for building better police/community trust and partnership.

▶   Consider providing **more training of police on mental health and other issues** where enhanced skills can increase the likelihood of resolving incidents without the need to use lethal force.

▶   Consider **expanding police training on de-escalation techniques** and keep the Crisis Intervention Training program intact.

*Appendix: "Ballot" survey copy*

## "Ballot" survey used in final vote

September 2010

**AMA Coalition Motion to Intervene**

**3:12-cv-02265-SI**
**Ex. 1 Page 24 of 52**

# *Opinion Survey for Selected Suggestions*

**A reminder about the process:** At the July 15th meeting it was decided that a subcommittee would recommend a process for wrapping up the committee's work in a timely manner. Membership on the subcommittee was open to all, with a total of 8 individuals volunteering to participate. The subcommittee was formed because the number of remaining issues committee members desired to discuss was far greater than the full committee's ability to complete the discussion in the time permitted by the enabling ordinance. Rather than simply stop the committee's work as of the recommendations established by the 15th of July, the subcommittee was formed to determine a pathway to vet at least some additional suggestions in an efficient manner before the final report was completed. The following survey is the result of that work. Keep in mind that the items on the list are not necessarily endorsed by individual subcommittee members — they are simply presented here to solicit your opinion. In addition, remember that this list was further reviewed and refined by the full committee on August 12th, again for the purpose of clarifying intent, not endorsing, the suggestions listed.

The results of the survey, combined with the decisions already made by the committee, will be reflected in the final draft report, which will be reviewed at the September 16, 2010 meeting at which time changes noted that are necessary to correct factual errors will be addressed prior to submitting the final report to City Council.

**Return your response via e-mail, fax, or mail.** *This form is designed to be filled in electronically or by hand, whichever is easier for you.* To fill it in electronically (which we encourage), either use the "submit form" button within the PDF file (which should open an e-mail to send it back to us), or simply save the file and send a copy by return e-mail. If you prefer to fill it in by hand, print the file, fill it in and return it by fax to 503-221-4541 or mail to Campbell DeLong Resources, Inc., 2627 NE 33rd Avenue, Portland, OR 97212.

**Please respond by Monday, August 30th.** We have allowed two full weeks for filling in the survey in the interest of providing each of you sufficient time to consider the issues carefully and, as needed, consult background reports, other committee members, or people from your respective organizations.

We anticipate counting only one "vote" per committee member — that is, if both a committee member and one or more alternates fills in a survey, we will count the survey of the primary committee member. In addition, as discussed, we will report the survey tally in a manner that provides appropriate information beyond the simple question of majority result.

---

*The following information is required. Votes provided anonymously will not be counted.*

    Name ...................................  _____

    Stakeholder represented......  _____

---

PLEASE CHECK ONE: *For reporting purposes, my answers should be understood as…*

    Opinions provided on behalf of my agency or organization .........................................❑

    My own opinions that do *not* necessarily representing the official position of
    my agency or organization...................................................................................❑

| | |
|---|---|
| **1.  Make it easier for the Auditor to hire outside counsel at the Auditor's discretion.**  Specifically, change Portland City Code 3.21.070.O. to read:<br><br>*The Auditor may* ~~work through the City Attorney's Office to~~ *hire outside legal counsel to support the purpose and duties of IPR when* <u>the Auditor determines</u> ~~the Auditor and the City Attorney agree~~ *that outside legal advice is necessary or advisable.*<br><br>In addition, if it is determined that the above change cannot occur without a Charter change, then such a change should be supported to enable it. | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain ............☐ |
| **2.  If complainant opinions support doing so, increase investigative resources at IPR.**  *(Background:* There is already a committee consensus that it would be a beneficial measurement tool to ask complainants, at intake, their opinions of whether, if they had the choice, they would prefer to have IPR or IAD investigate the complaint.)  The additional recommendation is this: *If the results of such measurements indicate a substantive preference for investigations by IPR, increase investigative resources at IPR.* | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain ............☐ |
| **3.  Ensure that IPR investigations include specified more serious complaints.**  When IPR conducts administrative[1] investigations they should be of use-of-force complaints, particularly those including shootings, deaths in custody, and physical injury requiring hospitalization.  IPR should monitor any associated criminal investigation as well.  IPR should conduct other investigations involving allegations of racial profiling, illegal searches, conflicts of interest, or other "high emotion in the community" issues.  (Background: This recommendation is intended to be consistent with the findings of the Luna-Firebaugh report which includes various statements in support of IPR using its investigative authority in particular cases.  For example, page 12 of the report indicates, "The Office of Independent Police Review should exercise their authority under the ordinance to conduct independent investigations where the complaint is one of public import...") | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain ............☐ |
| **4.  Ensure that IPR has, and exercises, the power to conduct or participate in investigations (from time zero) of specified serious incidents,** including police shootings, deaths in custody, and other serious injury incidents consistent with the intent of the recommendations of the PARC report on the subject. (Background: Chapter 4 of the August 2003 PARC report[2] recommends that *"The PPB should replace its Homicide-only investigative model with one that takes a multidisciplinary approach to deadly force and in-custody death cases. We believe either the IA Overlay model as enhanced by the LASD, or the enhanced Specialist Team model used in Washington, D.C., would work well in Portland."* The approaches discussed are designed to accomplish the goal of more timely investigation without unnecessary conflicts during any initial time period when both criminal and administrative investigations are being conducted.) | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain ............☐ |

[1] The term "administrative" investigation is used here to draw a distinction from the criminal investigation which would seek to determine if a crime has been committed. An administrative investigation would, for example, evaluate whether the officer acted in a manner that is consistent with Bureau policy and training.
[2] Available online at the IPR report page at: http://www.portlandonline.com/auditor/index.cfm?c=27068.

**3:12-cv-02265-SI**
**AMA Coalition Motion to Intervene                 Ex. 1 Page 26 of 52**

| | |
|---|---|
| **5.   Require that IPR investigate or actively participate in the investigation of all complaints of those with the rank of captain or higher.** | Favor ................□<br>Oppose ..............□<br>No Opinion .......□<br>Abstain .............□ |
| **6.   Ensure that IPR has the authority to compel officer testimony and directly interview police officers in administrative investigations.** | Favor ................□<br>Oppose ..............□<br>No Opinion .......□<br>Abstain .............□ |
| **7.   Request that Auditor's Office provide regular reports on the status of the Bureau's Employee Information System and on independent analysis of police stop data.** *The recommended approach:*<br><br>Revise 3.21.070 B. to read:  "Report on complaint <u>and related</u> activities. IPR shall track and report on the disposition of complaints to the public, IAD, the Chief, and the Council and monitor and report measures of activity and performance of IAD and IPR. IPR will also monitor<u>, and</u> track <u>and report to the same parties regarding</u> trends relating <u>to Bureau member interactions with the public as documented by other available data sources such as the Employee Information System (or equivalent), police stop data,</u> member history and complaint type and frequency, consistency and adequacy of discipline imposed. In performing these duties, IPR shall have access to Bureau data and records, including but not limited to raw data, tabulated summary statistics, other source materials, and any other format source necessary for IPR to perform its duties.  IPR shall also have direct access to original database sources as permitted by state and federal law." | Favor ................□<br>Oppose ..............□<br>No Opinion .......□<br>Abstain .............□ |
| **8.   Use definitions specified for the four-category finding method.**<br>Definitions for separating the current three categories of findings into four categories (a concept that the committee has already agreed on), should be as follows:<br><br>**Unfounded/Not supported:** Over 50% of the evidence shows that the officer did not do what the complainant alleges (the evidence does not support this allegation).<br><br>**Exonerated/In policy:** Over 50% of the evidence shows that the officer did what the complainant alleges, but it was within Bureau policy<br><br>**Insufficient Evidence:** There is not enough evidence to show either (a) whether the officer did what was alleged or (b) whether the officer's actions were within Bureau policy<br><br>**Sustained/Out of policy:** Over 50% of the evidence shows that the officer did what the complainant alleges, and it was not within Bureau policy<br><br>All of the above could be qualified by "**With debriefing:**" While the officer was not necessarily out of policy, a supervisor will discuss ways the incident could have been handled better. | Favor ................□<br>Oppose ..............□<br>No Opinion .......□<br>Abstain .............□ |

| | |
|---|---|
| **9.  Use definitions specified for policy-related issue findings.**  (*Background:* The committee has already agreed to the concept of ensuring that findings routinely indicate a separate rating regarding the overall incident that would identify the presence of any *"policy-related issues" — a term defined in Portland City Code 3.21.010.U which is essentially intended to describe issues that pertain to Police Bureau practices but not pertaining specifically to the propriety or impropriety of a particular Bureau member's conduct*). It has been recommended that the following definitions for the those elements be as follows:<br>    **Training issue:**<br>      (i) One or more Bureau members did not receive adequate training about actions in question, or<br>      (ii) The Bureau's training on this action is inadequate.<br>    **Communication issue:** Relevant information was not communicated...<br>      (i) Among Bureau members, or<br>      (ii) From another agency to Bureau members.<br>    **Management issue:** The outcome of the incident was due in part to<br>      (i) The command structure and supervisory protocols surrounding the incident, or<br>      (ii) Supervisory instructions, decisions, or behaviors that did not involve misconduct but did lead to action prompting the complaint.<br>    **Equipment issue:** A better incident outcome would have been possible had improved, different, or additional equipment been available for use during the incident.<br>    **Other policy-related issue:**  While the Bureau member did not violate policy,<br>    (i) The policy appears either inadequate or incomplete for proper management of the incident and can be detrimental to community-police relations or public safety in this type of incident; or<br>    (ii) A policy does not exist to address the actions that prompted the complaint. | Favor ................❑<br>Oppose.............❑<br>No Opinion .......❑<br>Abstain .............❑ |
| **10. Replace the term "service improvement opportunity" with the term "non-disciplinary complaint."**  (Background: These are complaints about the quality of an officer's service or minor rule violations that are typically handled through a process that includes an officer's supervisor first speaking with the community member making the complaint, then to the officer, and then re-contacting the community member to explain the outcome. Supervisors document their conversations, recommendations, and actions in a memo, which must be approved by the precinct Commander, IAD, and IPR. Note that, while "minor complaint" was initially suggested for the new term, "non-disciplinary complaint" has been suggested because it describes the situation without the need to characterize a complainant's concern as necessarily "minor" in nature.) | Favor ................❑<br>Oppose.............❑<br>No Opinion .......❑<br>Abstain .............❑ |
| **11. Ask opinion on complaint-handling preference.**  For tracking and other purposes at intake, when applicable, the IPR will ask and record the complainant's opinion in response to this question: *If the choice were the complainant's, would he or she prefer to have a full investigation or to have the complaint handled through the non-disciplinary complaint (or Service Improvement Opportunity as it is currently called) process?* | Favor ................❑<br>Oppose.............❑<br>No Opinion .......❑<br>Abstain .............❑ |

**AMA Coalition Motion to Intervene**

| | |
|---|---|
| **12. Ensure CRC may hold hearings on all appeals requested by complainants or Bureau members.** Ensure that the CRC may conduct hearings on all appeals within its purview without delays associated with concerns that the outcome of their review could have an impact on a civil claim against the City. | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain .............☐ |
| **13. Clarify CRC authority to present directly to Council.** Ensure that the CRC has the authority to make its own presentations in cases that go to Council for resolution when the CRC and Bureau do not reach agreement on findings in an appealed case.  Specifically: Modify Portland City Code 3.21.160.C. to include the sentence: *The Committee shall present its recommendations before Council.* | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain .............☐ |
| **14. Permit CRC to compel testimony.** Ensure that the CRC has power to compel officer testimony and the testimony of other witnesses at appeal hearings. Suggest changing Portland City Code 3.21.090.A. to include a new numbered paragraph that would read:  ***Compel testimony.***  *At appeal hearings CRC shall have the power to compel officers and other witnesses to testify regarding the incident or incidents under review.* | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain .............☐ |
| **15. If the CRC is not given authority to compel testimony, then grant City Council the power to hear new evidence.** (Background: Currently, the CRC may hear new evidence when holding hearings on appeals, but cannot compel testimony, while the City Council can compel testimony but may not hear new evidence.  The overriding recommendation is to vest the power to do both in one review body.) | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain .............☐ |
| **16. Increase size of CRC.** Increase the size of the CRC from 9 to 11 members. This has been recommended as a method to encourage more diversity and spread out the workload.<br><br>Changes Portland City Code 3.21.080.A. to read: *The Committee shall consist of eleven ~~nine~~ citizens…* | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain .............☐ |
| **17. Allow CRC to review proposed allegations prior to investigation.** Develop a method that is consistent with the benefits of timely investigation (such as providing a limited time or opportunity to review) that allows the CRC, prior to IAD or IPR initiating a full investigation, to review the proposed allegations to ensure they match the complainant's concerns and align with Police Bureau policies. | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain .............☐ |
| **18. Increase CRC authority to act on dismissed complaints, "service improvement opportunities," and formulation of allegations.** Specifically: Strengthen CRC's independent authority to send complaints back for further investigation, to re-categorize allegations, and to review dismissed and declined complaints. (Would modify Portland City Code 3.21.160.A.1.b. to broaden authority from revision of findings.) | Favor ...............☐<br>Oppose.............☐<br>No Opinion .......☐<br>Abstain .............☐ |

| | |
|---|---|
| **19. Establishing an avenue for appeal or reconsideration for cases involving quality-of-service or minor rule violations.** For example, allow community members to appeal dismissed complaints or low-level, "service improvement opportunity" complaints against officers to the Citizen Review Committee. | Favor ................☐ Oppose.............☐ No Opinion .......☐ Abstain .............☐ |
| **20. Provide dedicated staff to support the CRC.** Specifically: <br><br> Change Portland City Code 3.21.090.A. to include a new numbered paragraph that would read: ***Direct committee staff. To direct a staff person assigned to the Committee to provide staff support for the powers and duties outlined in this chapter.*** | Favor ................☐ Oppose.............☐ No Opinion .......☐ Abstain .............☐ |
| **21. Make it easier for complainants to get publicly available records.** Direct IPR and PPB to establish an interagency agreement that would allow the Director discretion to release case-specific records that are already generally available to the public to complainants or their representatives. (*Background:* The concept is to allow complainants a greater likelihood of being able to gain publicly-available information about their cases at one location — IPR in this case — rather than having to physically wait for service at both IPR and the Police Bureau Records Division for complete information.) | Favor ................☐ Oppose.............☐ No Opinion .......☐ Abstain .............☐ |
| **22. Make certain CRC review documents available to the public.** Ensure that documents utilized by the CRC in reviewing complaints are also accessible to the public, with the understanding that some documents may require redaction to protect the security of complainants, officers, and witnesses. | Favor ................☐ Oppose.............☐ No Opinion .......☐ Abstain .............☐ |
| **23. Required reporting on reasons for long investigations.** Require monthly public reporting (including, but not limited to, reporting to the CRC at regularly scheduled meetings), by the investigating unit (either IPR or IAD) on the specific reasons that investigations lasting over 150 days have not been completed. | Favor ................☐ Oppose.............☐ No Opinion .......☐ Abstain .............☐ |
| **24. IPR & CRC to be provided drafts of certain policy-change decisions.** All changes to Police Bureau policies that relate to Bureau member interactions with the public (or to the investigation of such interactions), including, but not limited to, use-of-force policies, should be provided to both IPR and CRC, in draft form prior to policy adoption, who shall then be given the opportunity to review and make recommendations. | Favor ................☐ Oppose.............☐ No Opinion .......☐ Abstain .............☐ |
| **25. Make certain task forces public.** Require that any task force charged with policy review that includes members of IPR or the CRC be open to public observation. (Background: This recommendation grows out of concerns about a Use-of-Force Task Force whose meetings were not open to the public.) | Favor ................☐ Oppose.............☐ No Opinion .......☐ Abstain .............☐ |
| **26. Mandate investigative resource levels.** Mandate a level of investigation resources that is sufficient to ensure all investigations can be completed in a timely manner. | Favor ................☐ Oppose.............☐ No Opinion .......☐ Abstain .............☐ |

| | |
|---|---|
| **27. Add another citizen member to PRB for use-of-force incidents.** 3.20.140.C.2. Police Review Board (Composition of Board) should be modified to read as follows: "*However, when the incident to be reviewed by the board involves the following use of force incidents, ~~one~~ two additional citizen members and one additional peer member shall serve on the Board, for a total of ~~seven~~ eight voting members. A quorum of ~~six~~ seven voting members, including ~~two~~ three citizen members, and the RU manager or designee, and four Advisory members is required to be present to make recommendations to the Chief. a. All officer involved shootings. b. Physical injury caused by an officer that requires hospitalization. c. All in-custody deaths. d. Less lethal incidents where the recommended finding is "out of policy"."* | Favor ................☐ Oppose..............☐ No Opinion .......☐ Abstain .............☐ |
| **28. Require prompt explanation for decisions that differ from the Police Review Board's recommendations.** Require the Chief or Commissioner to explain in writing, publicly, the basis for their decision when it differs from the PRB's recommendation and to do so in 30 days. | Favor ................☐ Oppose..............☐ No Opinion .......☐ Abstain .............☐ |
| **29. Require more specific reporting on the relationship between sustained findings and discipline.** Require that the IPR annual report provide additional, non-officer-specific information about the scope of discipline imposed for specific categories of sustained findings. The intent of this recommendation is to encourage reporting that would allow better public understanding of the correlation between the seriousness of a sustained complaint and the level of discipline commonly imposed. | Favor ................☐ Oppose..............☐ No Opinion .......☐ Abstain .............☐ |
| **30. Report on aspects of the "mitigation" process.** The public shall be informed regarding the rate at which recommended discipline for cases that involve shootings, deaths in custody, or use-of-force injury requiring hospitalization is changed in mitigation. The intent of this recommendation is to encourage reporting that would allow better public understanding of the correlation between the level of discipline recommended for particularly serious cases and the level of discipline commonly imposed. | Favor ................☐ Oppose..............☐ No Opinion .......☐ Abstain .............☐ |
| **31. Order another expert review in 2012.** On or before July 1, 2012, order an independent expert review of the Police Review system and the impact of the changes made by ordinance and practices since March of 2010. | Favor ................☐ Oppose..............☐ No Opinion .......☐ Abstain .............☐ |
| **32. Hold another stakeholder review.** Have City Council require another stakeholder review to begin no later than upon completion of an expert review initiated in 2012 or, if no expert review is initiated, January 15, 2013. | Favor ................☐ Oppose..............☐ No Opinion .......☐ Abstain .............☐ |

*Appendix: Meeting Minutes*

**Meeting minutes**

September 2010
**AMA Coalition Motion to Intervene**
**3:12-cv-02265-SI**
**Ex. 1 Page 33 of 52**

# City of Portland
# Independent Police Review
# Police Oversight Stakeholder Group

## Meeting minutes for May 27, 2010

**Stakeholder Group Attendees:**
Commissioner Randy Leonard
LaVonne Griffin-Valade, City Auditor
Chief of Police Mike Reese
Debbie Aiona, League of Women Voters
Ashlee Albies, National Lawyers Guild
Mary-Beth Baptista, Independent Police Review Division, Office of the City Auditor
Cmdr. Dave Benson, Portland Police Commanding Officers Association
Michael Bigham, IPR Citizen Review Committee
TJ Browning, Commissioner appointee
Shannon Callahan, Office of City Commissioner Dan Saltzman
Dorothy Elmore, Commissioner appointee
Cmdr. Jim Ferraris, Portland Police Commanding Officers Association
Jeana Frazzini, Basic Rights Oregon
Donita Fry, Native American Representative/ NAYA
Dan Handelman, Portland Copwatch
Dr. LeRoy Haynes, Jr., Albina Ministerial Alliance
Kayse Jama, Center for Intercultural Organizing
Warren Jimenez, Office of Mayor Sam Adams
Sally Joughin, Oregon Action
Doug Justus, Portland Police Association
James Kahan, Commissioner appointee
Ty Kovatch, Office of City Commissioner Randy Leonard
Mark Kramer, National Lawyers Guild (Alternate for NLG)
Andrea Meyer, ACLU of Oregon
Stuart Oishi, Office of City Commissioner Randy Leonard
Dora Perry, Office of City Commissioner Amanda Fritz
Linly Rees, Office of the City Attorney
Carmen Rubio, Latino Network
Lt. Eric Schober, Internal Affairs, Portland Police Bureau
Damon Isiah Turner, Human Rights Commission, Office of Human Relations
Lt. Pat Walsh, Chief's Office, Portland Police Bureau
Rev. Renee Ward, Commissioner appointee
Gregory Willeford, Commissioner appointee
Sylvia Zingeser, National Alliance on Mental Illness

**Facilitation Staff:**
John Campbell, Facilitator, Campbell DeLong Resources, Inc.
Alicia Cash, Campbell DeLong Resources, Inc.

Location: Rose Room, City Hall

Meeting began at 10:10 a.m.

The meeting began with opening comments from the facilitator, followed by opening comments from Commissioner Randy Leonard, City Auditor Griffin-Valade, and Chief of Police Chief Mike Reese.   The facilitator discussed intent for the group's focus and process.   Introductions continued with brief introductions and statements of intent from all group members.

Following a short discussion about process and roles, the facilitator presented a very brief summary of responses to the meeting's advance survey sent to all members as a means to introduce a framework for the group's next steps, with additional discussion postponed to the next meeting.

The facilitator went over the remaining meeting schedule; the next meeting will be Thursday, June 3, 2010, tentatively scheduled to be in the Rose Room at City Hall.  In advance of that meeting, the facilitator will send an email announcement to group members that will also include additional reference information discussed during the meeting.

Meeting adjourned at 11:40 a.m.

# City of Portland
# Independent Police Review
# Police Oversight Stakeholder Committee

## Meeting minutes for June 3, 2010

**Stakeholder Committee Attendees:**
Commissioner Randy Leonard
Mary-Beth Baptista, Independent Police Review Division, Office of the City Auditor
Cmdr. Dave Benson, Portland Police Commanding Officers Association
Michael Bigham, IPR Citizen Review Committee
TJ Browning, Commissioner appointee
Capt. Edward R. Brumfield, Portland Police Bureau (IAD Alternate)
Shannon Callahan, Office of City Commissioner Dan Saltzman
Jeana Frazzini, Basic Rights Oregon
Donita Fry, Native American Representative/ NAYA
Dan Handelman, Portland Copwatch
Dr. LeRoy Haynes, Jr., Albina Ministerial Alliance
George E. Hocker, Jr., Office of City Commissioner Nick Fish (Alternate)
Warren Jimenez, Office of Mayor Sam Adams
Doug Justus, Portland Police Association
Ty Kovatch, Office of City Commissioner Randy Leonard
Mark Kramer, National Lawyers Guild (Alternate)
Stuart Oishi, Office of City Commissioner Randy Leonard
Dora Perry, Office of City Commissioner Amanda Fritz
Linly Rees, Office of the City Attorney
Andrew Riley, Center for Intercultural Organizing (Alternate)
Lt. Eric Schober, Internal Affairs, Portland Police Bureau
Damon Isiah Turner, Human Rights Commission, Office of Human Relations
Lt. Pat Walsh, Chief's Office, Portland Police Bureau
Rev. Renee Ward, Commissioner appointee
Gregory Willeford, Commissioner appointee
Ron Williams, Oregon Action
Sylvia Zingeser, National Alliance on Mental Illness

**Facilitation Staff:**
John Campbell, Facilitator, Campbell DeLong Resources, Inc.
Alicia Cash, Campbell DeLong Resources, Inc.

Location: Rose Room, City Hall

Meeting began at 10:04 a.m.

The meeting began with introductions of Stakeholder Committee members. The minutes of the May 27, 2010 meeting were distributed; no changes were suggested.

The facilitator presented responses to questions posed at the last meeting regarding the **purpose of the stakeholder committee**. As defined by City ordinance, the committee is convened to recommend additional improvements to the City's oversight of the Portland Police

Bureau, which includes both the specific question of additional changes to the system modified by the recent ordinance and may also include other methods that contribute specifically to the intended outcome of oversight (e.g., improved accountability and police/community trust).

The **limits of the group's mission was also discussed,** in part to clarify that the committee's role is limited to recommending and is not intended to supplant other areas of responsibility in the City.  Specifically, it was clarified by Commissioner Leonard that, in order to ensure a free flow of discussion, comments offered by representatives of police collective bargaining units will not be construed as representative of the union's bargaining position.

Next, there was a **discussion of desired outcomes** as compiled from committee members through the advance survey and interviews.  Handouts were distributed for both the outcomes as well as the facilitator's Web page (www.cdri.com/oversight/) for committee documents.

The facilitator then distributed a **summary of suggested methods** to achieve the outcomes that were also gathered from members in the survey and interview process.  Comments and discussion followed focusing on the summary as a means to manage the conversation regarding potential resulting recommendations.

**An overview of the current efforts and investigation process** utilized by the Independent Police Review Division was provided by IPR Director Mary-Beth Baptista.  Following her presentation, Michael Bigham, Chair of the Citizen Review Committee, gave an overview of the committee and distributed copies of its recent report from the PARC Report Workgroup.

After the resulting discussion, the facilitator indicated that the next meeting's focus would be specifically on suggested methods relating to the system of police oversight.  He will provide the committee members with a summary of key themes discussed as well as links on the group's Web site for documents referred to during discussions.  In addition, the facilitator asked that if members want additional documents to be linked on the Web site, that the necessary information to do so be forwarded to him.

The next meeting will be on Thursday, June 10, 2010 beginning at 9:30 a.m. in the Rose Room of City Hall.

Meeting adjourned at approximately 11:55 a.m.

*(Minutes amended July 1, 2010 to correct clerical error in date of next meeting.)*

# City of Portland
# Independent Police Review
# Police Oversight Stakeholder Committee
## Meeting minutes for June 10, 2010

**Stakeholder Committee Attendees:**
Commissioner Randy Leonard
Ashlee Albies, National Lawyers Guild
Mary-Beth Baptista, Independent Police Review Division, Office of the City Auditor
Cmdr. Dave Benson, Portland Police Commanding Officers' Association
Michael Bigham, IPR Citizen Review Committee
Jo Ann Bowman, Commissioner Appointee
TJ Browning, Commissioner appointee
Dave Dobler, Portland Police Association
Dorothy Elmore, Commissioner appointee
Cmdr. Jim Ferraris, Portland Police Commanding Officers' Association
Donita Fry, Native American Representative/ NAYA
Chani Geigle-Teller, Sisters of the Road
Dan Handelman, Portland Copwatch
Dr. LeRoy Haynes, Jr., Albina Ministerial Alliance
George E. Hocker, Jr., Office of City Commissioner Nick Fish (Alternate)
Kayse Jama, Center for Intercultural Organizing (Alternate)
James Kahan, Commissioner appointee
Ty Kovatch, Office of City Commissioner Randy Leonard
Andrea Meyer, American Civil Liberties Union of Oregon
Stuart Oishi, Office of City Commissioner Randy Leonard
Dora Perry, Office of City Commissioner Amanda Fritz
Linly Rees, Office of the City Attorney
Moses Rosen, I'm Everyday People
Lt. Eric Schober, Internal Affairs Division, Portland Police Bureau
Maria Serrano, Latino Network (Alternate)
Amy Stephens, Office of Mayor Sam Adams (Alternate)
Damon Isiah Turner, Human Rights Commission, Office of Human Relations
Lt. Pat Walsh, Chief's Office, Portland Police Bureau
Rev. Renee Ward, Commissioner appointee
Gregory Willeford, Commissioner appointee
Sylvia Zingeser, National Alliance on Mental Illness

Facilitation Staff:
John Campbell, Facilitator, Campbell DeLong Resources, Inc.
Alicia Cash, Campbell DeLong Resources, Inc.

Location: Rose Room, City Hall

Meeting began at 9:35 a.m.

The meeting began with brief introductions of committee members present and review of the
June 3, 2010 meeting minutes.

September 2010
**3:12-cv-02265-SI
Ex. 1 Page 38 of 52**
**AMA Coalition Motion to Intervene**

The facilitator addressed an issue raised in the last meeting regarding the process for identifying support/votes for recommendations on issues where a reasonable consensus cannot be reached. In order to address ongoing concerns expressed by community members on the committee regarding the ratio of City staff to non-City staff on the committee, it was suggested that, only when a consensus is not possible, votes be recorded in two parts, in order to identify the position of non-City staff committee members for the benefit of reporting. The discussion indicated general support of the approach.

**IPR Authority and Structure Discussion**

A Facilitation Draft document was distributed as a tool to assist in focusing the discussion and the topic of the IPR's authority and structure was opened for discussion.

Director Baptista gave a brief overview of IPR, including scope of authority, resources and budget. An extended and broad ranging discussion of IPR scope and authority that followed resulted in the following broad recommendations:

▸ In response to an extended discussion on the topic of IPR investigation resources, there was general agreement that it would make sense for IPR to measure complainant faith in the system by asking each complainant their opinion of whether they would prefer to have the complaint investigated by IPR or by the Internal Affairs Division. In addition, if the results of such measurements indicate a substantive preference for investigations by IPR, then such findings should be used to inform future decision-making about whether investigative resources should be moved from IAD to IPR.

▸ There is consensus from community stakeholders around this concept: Public faith in the oversight system is critically important and, regardless of the steps taken in the past to improve public faith in the investigation of police use-of-force incidents, public faith has not improved. The specific steps recommended to accomplish this have generated less consensus, with recommendations along the following lines mentioned more frequently:

  ✓ Have IPR conduct all administrative investigations of use of force complaints, and in particular, all shootings, deaths in custody, and other serious injury incidents. Monitor any associated criminal investigation as well. Have IPR conduct all other investigations involving allegations of racial profiling, illegal searches, conflicts of interest, or other "high emotion in the community" issues.

  ✓ Ensure that IPR has, and exercises, power to conduct the above described investigations with no waiting period.

▸ There is a consensus to support further diversifying the pool of investigators at both IPR and IAD to include:

  ✓ People with investigative skills who have not been police officers in general, nor Portland officers specifically, per Luna-Firebaugh recommendations.[*]

---

[*] "...In order to balance the IPR office, these new investigators should not have a police background. While it is important to retain existing staff, it is also important to broaden the recruitment, and selection process. Outreach for new staff positions should include civilian investigative arenas, for example, organizations that have investigators (e.g. OSHA, Housing authorities, health care programs and others), Public Defenders, Private Investigators, attorneys and legal workers. This will enhance public confidence in the office, while preserving dedicated staff in their positions." From Luna-Firebaugh report, Recommendation 4 shown on page 117.

- ✓ A much greater demographic (racial, ethnic, cultural) diversity and competency. (One suggestion is to apply the diversity and conflict-of-interest guidelines already existent for the CRC.[*])

▸ There was general agreement in support of requiring that IPR investigate complaints of those with the rank of captain or higher.

▸ There is a consensus among community stakeholders that both IPR and CRC should be able to "go where the investigation takes them," to do so without delay, and to appropriately publicly disclose the result. Concepts offered in support of the above consensus statement include:

- ✓ Make it easier for the Auditor to hire outside counsel at the Auditor's discretion.

- ✓ Ensure that the CRC may conduct all reviews within its purview at its own option exclusively.

The meeting closed with facilitator committing to summarizing the areas of agreement that had emerged from the discussions and encouraging members to contact him before the next meeting.

Meeting adjourned at 11:39 a.m.

---

[*] 3.21.080 A3: "Selection criteria shall include…[the] absence of any real or perceived conflict of interest." And 3.21.080 A6: "…consideration shall be given to the current composition of the Committee and appointments should be made that will cause the group to best reflect the demographic make-up of the community."

# City of Portland
# Independent Police Review
# Police Oversight Stakeholder Committee

## Meeting minutes for July 1, 2010

**Stakeholder Committee Attendees:**
Commissioner Randy Leonard
Mary-Beth Baptista, Independent Police Review Division, Office of the City Auditor
Mike Reese, Chief of Police, Portland Police Bureau
Debbie Aiona, League of Women Voters
Ashlee Albies, National Lawyers Guild
Dr. T. Allen Bethel, Albina Ministerial Alliance (Alternate)
Michael Bigham, IPR Citizen Review Committee
Jo Ann Bowman, Commissioner Appointee
TJ Browning, Commissioner appointee
Capt. Edward R. Brumfield, Portland Police Bureau (IAD Alternate)
Shannon Callahan, Office of City Commissioner Dan Saltzman
Dorothy Elmore, Commissioner appointee
Chani Geigle-Teller, Sisters of the Road
Dan Handelman, Portland Copwatch
George E. Hocker, Jr., Office of City Commissioner Nick Fish (Alternate)
Doug Justus, Portland Police Association
Sally Joughin, Oregon Action
James Kahan, Commissioner appointee
Lt. Robert King, Portland Police Commanding Officers' Association (Alternate)
Mark Kramer, National Lawyers Guild (Alternate)
Andrea Meyer, American Civil Liberties Union of Oregon
Stuart Oishi, Office of City Commissioner Randy Leonard
Linly Rees, Office of the City Attorney
Amy Stephens, Office of Mayor Sam Adams (Alternate)
Taj Suleyman, Center for Intercultural Organizing (Alternate)
Damon Isiah Turner, Human Rights Commission, Office of Human Relations
Rev. Renee Ward, Commissioner appointee
Sylvia Zingeser, National Alliance on Mental Illness

Facilitation Staff:
John Campbell, Facilitator, Campbell DeLong Resources, Inc.
Alicia Cash, Campbell DeLong Resources, Inc.

Location: Rose Room, City Hall

Meeting began at 9:35 a.m. with all present introducing themselves.

The minutes of the last meeting were not available for distribution and will be reviewed at the next meeting.

Discussion on scheduled meeting topics were suspended to allow the committee to discuss an ordinance before City Council that would allow an officer's RU Commander to act as a voting

**3:12-cv-02265-SI**
**AMA Coalition Motion to Intervene        Ex. 1 Page 41 of 52**

member on the Police Review Board.  After considerable discussion, with it being apparent that no meaningful consensus was likely to be reached, and in the interest of moving the agenda, a vote was recorded on the question of whether a supervising RU commander should not be permitted to be a voting member of the Police Review Board in the specific cases of deadly force, in-custody death, or physical injury requiring hospitalization.  Using the split vote model agreed upon at the June 10 meeting, community stakeholders voted 11 to 1 (with 1 abstention) in favor of disallowing the supervising RU commander a PRB vote in the specified situations, while City staff members present opposed the same question by a vote of 5 to 1 (with 5 abstentions).  Commissioner Leonard committed to bring the results of the vote, and the fact of this discussion, to the City Council upon the next reading of the proposed ordinance.

After a break, the facilitator addressed the facilitation draft document, summarizing the introduction and asked for comments.  There was a suggestion to change wording from "citizens" and "citizenry" to "community."  There was a request to rework language in one section in order to improve the balance in the tone.  No further comments were offered.

The section of the draft document that summarized the general recommendations from the previous meeting was discussed.  Clarifications and corrections in language were requested, including clarifying the CRC's role is more properly described as "review" not "investigation" and a request to provide a definition of what is meant by "administrative" (as opposed to criminal) investigation.

The topic of changing the standard for the CRC to determine whether a finding is "supported by the evidence" from a "reasonable person" standard to a "preponderance of the evidence" was discussed.  After discussion that included recommendations in support of the change, the facilitator asked for comments from others who had not spoken on the topic or any who could offer opposing views on the subject.  There being none offered, a general consensus was reached to include the recommendation in the report.

In closing the meeting, the facilitator encouraged group members to contact him, prior to the next meeting, with any comments and recommendations regarding likely consensus topics that could be reviewed at the next meeting.

Meeting adjourned at 11:34 a.m.

September 2010

# City of Portland
# Independent Police Review
# Police Oversight Stakeholder Committee
## Meeting minutes for July 15, 2010

**Stakeholder Committee Attendees:**
LaVonne Griffin-Valade, City Auditor
Commissioner Randy Leonard
Mary-Beth Baptista, Independent Police Review Division, Office of the City Auditor
Mike Reese, Chief of Police, Portland Police Bureau
Debbie Aiona, League of Women Voters
Michael Bigham, IPR Citizen Review Committee
Jo Ann Bowman, Commissioner Appointee
Capt. Edward R. Brumfield, Portland Police Bureau (IAD Alternate)
Shannon Callahan, Office of City Commissioner Dan Saltzman
Dorothy Elmore, Commissioner appointee
Donita Fry, Native American Representative/ NAYA
Dan Handelman, Portland Copwatch
George E. Hocker, Jr., Office of City Commissioner Nick Fish (Alternate)
Sally Joughin, Oregon Action
James Kahan, Commissioner appointee
Irene Konev, Independent Police Review Division, Office of the City Auditor
Mark Kramer, National Lawyers Guild
Andrea Meyer, American Civil Liberties Union of Oregon
Stuart Oishi, Office of City Commissioner Randy Leonard
Bryan Parman, Portland Police Commanding Officers' Association (Alternate)
Tom Perkins, Portland Police Association
Dora Perry, Office of City Commissioner Amanda Fritz
Linly Rees, Office of the City Attorney
Carmen Rubio, Latino Network
Amy Stephens, Office of Mayor Sam Adams (Alternate)
Rev. Renee Ward, Commissioner appointee
Sylvia Zingeser, National Alliance on Mental Illness

Facilitation Staff:
John Campbell, Facilitator, Campbell DeLong Resources, Inc.
Alicia Cash, Campbell DeLong Resources, Inc.

Location: Pettygrove Room, City Hall

Meeting began at 9:39 a.m. with all present introducing themselves.

The minutes of the June 10th and July 1st meetings were distributed and summarized with no comments or requested corrections offered from members.

Discussion began on the updated version of the facilitation draft document. The changes made in the document since the last meeting were summarized; without additional comments or corrections requested from members.

**Creation of a subcommittee to accelerate completion.**    The concept of creating a subcommittee to discuss items not having a clear consensus and to recommend to the larger committee a methodology for completing the work within the time frame of the remaining meetings scheduled.  Members expressed general agreement with the approach.

**Discussion topics.**  Discussion began on topics in the document listed under the heading "Recommended July 15 Discussion Topics."  The topics discussed included the following:

1.  Whether to recommend **giving the CRC the authority/permission to make policy recommendations directly to the Police Bureau.**  After discussion, the committee voted to endorse this recommendation with no opposing votes, a majority in favor, and a limited number of abstentions.

2.  Whether to recommend i**ncreasing the length of the term for CRC members from two to three years**.  After the CRC Chair and IPR Director described the current process for recruitment of CRC members and their associated tasks, with a show of hands the committee voted to endorse this recommendation with no opposing votes, a majority in favor, and a limited number of abstentions.

3.  Whether to recommend **revising the definition and categories of findings**.  Discussion included description of current and past practices, rationales for change, rationales for the current system, concerns about the utility of current categories for measurement/analysis, and possibilities for identifying changes needed in policies or training.  A consensus was reached for there to be four categories of findings, increased from the current number of three, with the current category of "unproven" separated into two.  The committee did not reach agreement on the specific language for these two finding definitions, though the general intent was for them to describe the differing scenarios approximately equivalent to the technical understanding of the terms "unfounded" (meaning that the evidence does not, in fact, support the allegation) and "insufficient evidence" (meaning that there is simply not enough evidence to draw a conclusion as to whether the allegation is true or not).

    Consensus was also reach on the concept that, in addition to the recommendation on the number and definition of findings, the Committee would also recommend that **a system for identifying concerns regarding "policy-related issues"** associated with the incident or allegation also be implemented.  Consensus hinged significantly and the need to make clear that the purpose of these additional categories is *not* to single out individual misconduct (which would be dealt with as a separate allegation, instead) but to capture information about the issues related to communication, management, policy, or training that may have contributed to the outcome as well.

4.  Whether to recommend **having the Auditor's Office monitor the Police Bureau's Employee Information System and provide independent analysis of police stop data and related management information**.  Discussion included current practices and reasons for the recommendation.  No final conclusion was reached. Two members agreed to further refine details and report back to the Committee.

5.  Whether to fund **adoption of technology that would provide video or audio** recordings of all police interactions with the public.  With limited time remaining in the meeting, the discussion on this topic was brief and not in-depth.   After a number of critical initial comments, it seemed apparent that it would be appropriate to table further discussion on the topic at least for the duration of the current meeting.

6. Whether to recommend a change in the policy for when mediation is an option for certain types of complaints. Members provided information on current practices, the implications of changes, and the relative benefits and drawbacks of mediation. After clarification, committee achieved **consensus to recommend that mediation not be an option in cases involving use of force resulting in hospitalization**, (it was noted that this is already current practice but is not require by code). No consensus was reached on restricting mediation for any other type of complaint.

**The facilitator called for those members interested in being on the subcommittee to identify themselves so that he could contact them to schedule meetings.** The following did so: Debbie Aiona, League of Women Voters; Dorothy Elmore, Commissioner appointee; Dan Handelman, Portland Copwatch; Jim Kahan, Commissioner appointee; Stuart Oishi, Office of Commissioner Leonard; Dora Perry, Office of Commissioner Fritz; Sylvia Zingeser, National Alliance on Mental Illness; and Sally Joughin, Oregon Action.

**The meeting adjourned** at approximately 11:40 a.m.

The next meeting is scheduled for Thursday, August 12, 2010 at 9:30 a.m. in the Rose Room, City Hall.

# City of Portland
# Independent Police Review
# Police Oversight Stakeholder Committee

## Meeting minutes for August 12, 2010

**Stakeholder Committee Attendees:**
LaVonne Griffin-Valade, City Auditor
Commissioner Randy Leonard
Mary-Beth Baptista, Independent Police Review Division, Office of the City Auditor
Mike Reese, Chief of Police, Portland Police Bureau
Debbie Aiona, League of Women Voters
Ashlee Albies, National Lawyers Guild
Cmdr. Dave Benson, Portland Police Commanding Officers' Association
TJ Browning, Commissioner appointee
Shannon Callahan, Office of City Commissioner Dan Saltzman
Dave Dobler, Portland Police Association (Alternate)
Dorothy Elmore, Commissioner appointee
Cmdr. Jim Ferraris, Portland Police Commanding Officers' Association (Alternate)
Dan Handelman, Portland Copwatch
George E. Hocker, Jr., Office of City Commissioner Nick Fish (Alternate)
Sally Joughin, Oregon Action
Irene Konev, Independent Police Review Division, Office of the City Auditor
Andrea Meyer, American Civil Liberties Union of Oregon
Stuart Oishi, Office of City Commissioner Randy Leonard (Alternate)
Dora Perry, Office of City Commissioner Amanda Fritz
Linly Rees, Office of the City Attorney
Lt. Eric Schober, Portland Police Bureau Internal Affairs
Amy Stephens, Office of Mayor Sam Adams
Jamie Troy, IPR Citizen Review Committee (Alternate)
Daryl Turner, Portland Police Association (Alternate)
Rev. Renee Ward, Commissioner appointee

**Facilitation Staff:**
John Campbell, Facilitator, Campbell DeLong Resources, Inc.
Alicia Cash, Campbell DeLong Resources, Inc.

Location: Pettygrove Room, City Hall

Meeting began at 9:37 a.m. with the facilitator providing an overview of the proposed process for the committee to accomplish its work by the next and final meeting. Following this introduction, all members present introduced themselves.

The minutes of the July 15th meeting were distributed and summarized with no corrections or revisions requested by members.

Committee discussion began with an overview of the work of the subcommittee that met weekly since the July 15 meeting to discuss and design an approach for dealing with the remaining list of suggested recommendations that had not yet been discuss by the full committee.

A draft of the recommendations of the committee as of the conclusion of the July 15th meeting was distributed and reviewed with clarifications in language recommended by committee members, with agreement by the facilitator to make such changes in the final document.

Discussion then moved to the subcommittee's work to clarify and refine a selection of remaining items for voting on by the committee members, with the review of a draft "ballot" survey with 32 suggested items on it.  Each of the 32 suggestions were briefly discussed, not for the purpose of establishing support or opposition, but for the purpose of clarifying language and intent of the item in question for the benefit of each committee member intending to vote.   Suggested revisions in language to the draft "ballot" were discussed, and agreed upon, to items 2, 3, 5, 6, 9, 12, 18, 19, 27, and 32.

Following the discussion, the facilitator committed to 1) Integrating the changes agreed upon and distributing the "ballot" electronically to members well in advance of the August 30th return due date; and 2) Providing a recommended draft final report well in advance of the final meeting on September 16th, 2010 at which meeting the remaining agenda item would be to review the report and make any final corrections to information it provides.

The meeting adjourned at approximately 11:30 a.m.

# City of Portland
# Independent Police Review
# Police Oversight Stakeholder Committee

## Meeting minutes for September 16, 2010

**Stakeholder Committee Attendees:**
LaVonne Griffin-Valade, City Auditor
Commissioner Randy Leonard
Mary-Beth Baptista, Independent Police Review Division, Office of the City Auditor
Debbie Aiona, League of Women Voters
Ashlee Albies, National Lawyers Guild
Michael Bigham, IPR Citizen Review Committee (Alternate)
Jo Ann Bowman, Commissioner Appointee
TJ Browning, Commissioner Appointee
Dorothy Elmore, Commissioner Appointee
Donita Fry, Native American Representative/ NAYA
Dan Handelman, Portland Copwatch
George E. Hocker, Jr., Office of City Commissioner Nick Fish (Alternate)
Chani Geigle-Teller, Sisters of the Road
Warren Jimenez, Office of Mayor Sam Adams
Sally Joughin, Oregon Action
James Kahan, Commissioner appointee
Irene Konev, Independent Police Review Division, Office of the City Auditor
Ty Kovatch, Office of City Commissioner Randy Leonard (Alternate)
Mark Kramer, National Lawyers Guild (Alternate)
Andrea Meyer, American Civil Liberties Union of Oregon
Stuart Oishi, Office of City Commissioner Randy Leonard (Alternate)
Dora Perry, Office of City Commissioner Amanda Fritz
Linly Rees, Office of the City Attorney
Lt. Eric Schober, Portland Police Bureau Internal Affairs
Damon Isiah Turner, Human Rights Commission
Rev. Renee Ward, Commissioner appointee
Sylvia Zingeser, National Alliance on Mental Illness

Facilitation Staff:
John Campbell, Facilitator, Campbell DeLong Resources, Inc.
Alicia Cash, Campbell DeLong Resources, Inc.

Location: Pettygrove Room, City Hall

Meeting began at 9:37 a.m. with the facilitator providing an overview of the agenda and process for the final meeting of the committee. Following this introduction, all members present introduced themselves.

The minutes of the August 12th meeting were distributed and summarized. The list of attendees will be amended to reflect that TJ Browning was in attendance; no other corrections or revisions requested.

### REVIEW OF DRAFT FINAL REPORT

**Disappointment in participation levels noted.**  Discussion of the final report began with multiple committee members raising concerns regarding the choice of members who elected not to participate in final "ballot" voting or otherwise refrained from expressing opinions during committee meetings.  While comments were not limited to the choice of the two police unions, there was particular disappointment that representatives on the unions' behalf had refrained from greater participation in light of the prior agreement that their opinions could be expressed without being construed as representative of any labor position in contract negotiations.  After various committee members offered expressions of disappointment and/or opinions regarding the importance of participation in committee give-and-take, the facilitator committed to ensuring that the disappointment would be noted in the final minutes and then requested that the discussion move on to other topics necessary to complete the final report.

**Appreciation/acknowledgements also noted.**  Comments were also offered to express appreciation for committee members with current or past Police Bureau experience who participated more fully.  The work of the facilitator was also acknowledged as beneficial.

**Specific report changes requested.**  After discussion and clarification of each issue raised, the facilitator committed to ensuring that the following changes would be reflected in the final report:

▸  A graphical device or other indicator (rendered as check marks in the final report) will be added that will allow the reader to more quickly observe which recommendations have the highest support — that is, those for which no opposing opinions or votes were offered.

▸  Corrections/clarification will be made in the language on two recommendations that had earned consensus during full committee meetings but that the facilitator had added equivocating language in the draft report as a result of out-of-committee concerns expressed to the facilitator by City employees on the committee.  In addition to process concerns expressed, the request was to make the language more clear.  It was agreed that modified language would be developed and, upon meeting the approval of committee members JoAnn Bowman, TJ Browning, and Andrea Meyer, will be included in the final report.

▸  A formatting change will be made to more clearly and consistently reflect the difference between a "committee discussion recommendation" and a "ballot recommendation."

▸  Various typographical errors and other incidental corrections were noted and will be corrected for the final report, as will formatting issues associated with some footnotes.

▸  The footnote regarding the definition of "administrative" versus "criminal" investigation was further revised to provide two examples instead of the single example provided in all earlier drafts.

▸  The word "routinely" was removed from recommendation III.B.

▸  The addition of references to the relevant findings of past PARC reports will be added to recommendation IV. A.

▸  Bolding will be added to selected phrasing in the section on "other suggestions not vetted."

▸  Additional endnotes will be added to clarify the position of certain key ballot votes or to provide requested references.

**Approval of final report.**  After no response to the facilitator's call for any additional revisions, a motion was made by committee member Andrea Meyer to accept the draft report with the changes agreed on at the meeting; the motion was seconded by committee member James Kahan.  The motion passed with the majority voting in favor, none voting to oppose, and a limited number of staff abstentions.

### WRAP-UP DISCUSSION

In the remaining time, members engaged in discussion on a range of topics relating to the committee's work including past efforts of citizens providing input to the City regarding police oversight, desires for future ongoing efforts, the process that members experienced during the development of the recommendations, next steps, and presentation of the report to City Council. Commissioner Leonard stated that, after receiving the final report, committee members would be notified of the further process for presentation of the recommendations to City Council. Auditor Griffin-Valade committed to providing am Auditor's Office response to the committee's report.

The meeting adjourned at 11:30 a.m. when a motion to adjourn for the final time was made, seconded, and approved by voice vote.

*The minutes of the final meeting were drafted by facilitation staff and reviewed by selected committee members.*

# End notes

[1] Representatives of both the PPA and the PPCOA notified the committee of their choice to respectfully decline to participate in the ballot/survey out of a stated concern that many of included items are topics relevant to contract negations.

[2] Portland Copwatch offers this ballot comment on survey items 3 & 4 (items between "++" marks indicate suggested additions): 3.21.020 (L) Review of closed investigations. (add at end) ++This provision does not exclude the IPR from conducting investigations in such cases.++  3.21.120 Handling Complaints. (B) (1) Complaint Type I: (add at end) ++This may include officer involved shootings and deaths in custody.++  (B) (2) Complaint Type II: (add at end) ++This may include any incident involving the discharge of a firearm or less lethal weapon.++  (B) (3) Complaint Type III: (add at end) ++This may include officer involved shootings and deaths in custody.++

[3] Michael Bigham offers this ballot comment: I do favor IPR participation in investigating serious complaints, (i.e., shootings and deaths in custody) but I would prefer that role be similar to its monitoring of IAD investigation of B and C complaints currently. This would include rollout to the scene and being present for interviews, but I don't think they have the resources or expertise to conduct or be the lead agency in those investigations.

[4] Available online at the IPR report page at: www.portlandonline.com/auditor/index.cfm?c=27068.

[5] Portland Copwatch Offers this ballot comment: We strongly recommend that Council have the next Charter commission allow the Auditor a separate legal counsel either for the entire Auditor's office, or in particular for the IPR, while also providing counsel to the ombudsman and the Office of Human Relations. This change would eliminate the inherent conflict of interest of the City Attorney providing legal advice to two sides of the same issue.

[6] From the Luna-Firebaugh report: "...In order to balance the IPR office, these new investigators should not have a police background. While it is important to retain existing staff, it is also important to broaden the recruitment, and selection process. Outreach for new staff positions should include civilian investigative arenas, for example, organizations that have investigators (e.g. OSHA, Housing authorities, health care programs and others), Public Defenders, Private Investigators, attorneys and legal workers. This will enhance public confidence in the office, while preserving dedicated staff in their positions." See: *Performance Review of the Independent Police Review Division*, January 2008, Recommendation 4, shown on Page 117, available online at: www.portlandonline.com/auditor/index.cfm?c=27068.

[7] Selection criteria description for CRC membership per Portland City Code: 3.21.080 A3: "Selection criteria shall include...[the] absence of any real or perceived conflict of interest." And 3.21.080 A6: "...consideration shall be given to the current composition of the Committee and appointments should be made that will cause the group to best reflect the demographic make-up of the community."

[8] While not part of committee meeting discussion at the time this recommendation (Section I. Letter I.) was approved, follow-up conversations indicate concerns about this approach from the IPR Director and at least one committee member attending on behalf of the Portland Police Commanding Officers Association.

[9] The Portland National Lawyers Guild notes in ballot comments a preference to "ensure that analysis of poll results is completed and presented to the Council before the next budget cycle for 2011."

[10] See: *Performance Review of the Independent Police Review Division*, January 2008, available online at: www.portlandonline.com/auditor/index.cfm?c=27068.

[11] Portland Copwatch offers this ballot comment: We checked both boxes [for items 14 & 15] because we hope Council will opt for one of the two methods to fix the current catch-22 that exists at the appeal level. Either one is an acceptable fix, but we prefer CRC have the power to compel so that their hearing is as complete as possible. We had made a specific recommendation that CRC be able to recommend discipline (though not necessarily the level of discipline) and it appears that issue did not end up in the final document. We hope that Council will add this, particularly because court cases indicate that CRC needs to be "an integral part of the disciplinary process" to compel officer testimony. [Suggested changes shown between "++" symbols include:] 3.21.090 Powers and Duties of the Committee ++(A) (9)

Recommend discipline. To recommend that discipline should occur for complaints with sustained findings that are more than minor complaints.++

[12] Portland Copwatch offers this ballot comment, with suggested changes indicated between "++" symbol: 3.21.160 Hearing Appeals. (A) (1) When a complainant or member appeals the finding the Committee shall decide:... (b) If the finding is not supported by the evidence. The Committee shall inform the complainant, member, IAD and the Chief of what finding should have been made, ++send the case back for further investigation by IPR or IAD, and/or send back the case to reclassify allegations++.

[13] Portland Copwatch offers these ballot comments with suggested changes shown between "++" marks: 3.21.140 Filing of requests for review. (A) Any complainant or member who is dissatisfied with an investigation of alleged member misconduct that occurred during an encounter with a community member may request a review. ++This provision includes third party complainants in cases in which the subject of alleged misconduct has not objected to the third party complaint or cannot file his/her own complaint. IPR shall also provide avenues for review in cases that are dismissed or handled as minor complaints.++

[14] The National Lawyers Guild offers the following additional ballot comment: Where the bureau member's actions are In Policy, but present policy related concerns, ensure a mechanism/category exists to record or relay (so the public can understand) where In Policy findings nonetheless raise "policy related issues."

[15] The current definition of "Policy-related issues" in Portland City Code "3.21.020.U: 'Policy-related issue' means a topic pertaining to the Police Bureau's hiring and training practices, the Manual of Policies and Procedures, equipment, and general supervision and management practices, but *not* pertaining specifically to the propriety or impropriety of a particular officer's conduct." [Emphasis added.]

[16] Dorothy Elmore provides this notation regarding her votes on survey items 21 and 22: "Although I do favor a process that would make it easier for complainants to get publicly available records (ballot survey item 21), I have a few concerns of allowing IPR or any other outside agency that is not the "official keeper of record" having the authority to release police reports to citizens. 1) A staff person in the police records division has full knowledge of state laws governing public records and follows strict guidelines to protect the public's interest. I don't know if IPR has such expertise. 2) The police bureau records staff reviews each report for information that may need to be redacted prior to release and to determine if the case has been adjudicated (if applicable). The requestor's information is logged in a database that is maintained with each report that was released. IPR would need the resources to implement a similar process and there would need to be a method to bridge the IPR process with the police records tracking system. Another way to make obtaining police records more easily accessible to the public would be for the Police Records Division to move *this particular service* to Central Precinct and/or out to the community precincts where there is easier access, free parking, and less waiting. There are fiscal challenges to this but many past chiefs and community groups have talked about it in regards to meeting the needs of the community."

[17] See immediately previous endnote by Dorothy Elmore on survey items 21 and 22.

[18] The National Lawyers Guild offers this ballot comment on recommendation III.L (Ballot survey item 30): We support this recommendation but strongly encourage that all use-of-force incidents that result in injuries, regardless of hospitalization, are publicly reported, so as not to dilute the power of this recommendation.

[19] See *PARC Report: Officer-involved Shootings and In-custody Deaths, Original Report, August 2003*, Recommendation 6.7: "The PPB should revise Section 1010.10 to make the unit commander a non-voting member of the Review Level Committee when it reviews officer-involved shootings, other deadly force cases, and in-custody death incidents." Also see follow-up discussion of the same recommendation on page 32 of *PARC Report: Officer-involved Shootings and In-custody Deaths, Second Follow-up Report December, 2006*. Both reports are online at: www.portlandonline.com/auditor/index.cfm?c=27068.

[20] See Luna-Firebaugh report, page 118: "The IPR should offer and conduct the mediation of complaints at the request of either party, and the concurrence of both, on all complaints that make allegations of discourtesy or procedural complaints. *The IPR should not offer mediation for complaints that allege use of force, legal violations such as improper stop, detention, search, or arrest, or where the officer has a pattern of misconduct.*" [emphasis added]. See: *Performance Review of the Independent Police Review Division*, January 2008, available online at: www.portlandonline.com/auditor/index.cfm?c=27068.

**3:12-cv-02265-SI**

**AMA Coalition Motion to Intervene**                    **Ex. 1 Page 52 of 52**