AMA COALITION FOR JUSTICE AND POLICE REFORM

**Community Demands following the death of Aaron Campbell, compiled June, 2010**
*Updated October, 2010*

**(1) USE OF FORCE POLICY, TRAINING (de-escalation), DISCIPLINE**

*1.1 Officers must be required by Bureau policy to use and document the use of less-lethal and non-lethal means to subdue suspects prior to using deadly force, in the absence of gunfire. (KJ AH 2, KJ P 3). *The decision to use lethal force must be tied to the seriousness of an alleged offense, presumably only violent arrestable offenses would justify "stepping up" the level of force. (KO 1)*

*1.2 The Portland Police Bureau should severely discipline any officer involved in failing to follow Bureau policy or taking actions unnecessarily or unwisely leading to the use of deadly force, and encourage any such officer to no longer work for the Police Bureau. (JJP R 1)

*1.3 The City of Portland will adopt a city wide ordinance against police brutality. (JMP 9, KJ P 10, JJP FR 2)

*1.4 The state of Oregon's statute on deadly force should include objective standards defining a threat to public safety, rather than an officer's "reasonable belief" that their life or another's is in danger. (KJ AH 4, JJP FR 4a, JC 10, AMA #4)

*1.5 The Bureau must involve community members in developing police training and policy. (JJP FR 1, AMA #3)

*1.6 If used at all, a less lethal ("Beanbag") shotgun should not be used for compliance, and not used from less than 10 feet. (AC 1)

*1.7 If used at all, use of police dogs should be coordinated so as not to be used simultaneously with other uses of force. (AC 2)

*1.8 All less lethal weaponry should be re-evaluated for effectiveness, potential dangers, and appropriateness for use against civilians, including Tasers, "beanbag" shotguns, and pepper spray. This review shall include the disturbing policy of using these weapons against suspects who are fatally wounded. (AC 3)

*1.9 At any scene requiring police action, no officer may put himself or herself into the car of a suspect. (KJ P 2)

*1.10 Reconcile the Bureau's training on use of force with the de-escalation taught to all officers in Crisis Intervention Team training, so that police are more likely to talk and less likely to cause injury. (KJ P 5, KJ T 8, JJP R 4, JC 4)

*1.11 Use of Tasers shall be limited as outlined by PARC in its 2009 report: limited to one discharge cycle by one officer, then a reassessment, then used no more than three times total. This includes not having multiple officers use Tasers simultaneously. (KO 2)*

*1.12 All officers will be thoroughly trained to insure removal of keys from cars in all traffic stops in which an arrest is imminent. The keys will not be put in a place where a suspect can grab them. (KJ T 2)*

*1.13 De-escalation includes using time as a factor; waiting for backup when there is not an immediate crisis is an example. (JDC 1)*

*1.14 Emphasize the preambles to the use of force and other policies which describe the value of human life. (KJ AH 5)*

**(2) CREATING A PLAN, CHAIN OF COMMAND, COMMUNICATION**

*2.1 Policy and training must require officers to be trained to de-escalate situations and apprehend suspects using the least amount of force possible. Senior officers must take the lead in developing simple and practical plans which can be communicated to all officers on the scene and documented afterward. Supervisors and backup must be present before extracting a suspect from a vehicle. (KJ P 1, KJ T 1, AC 4)

*2.2 Commanders should not leave the scene; clear line of command should be established. (AC 5)

*2.3 Communication between negotiators and other "teams" must be established. (AC 6)

*2.4 Proper equipment must be bought, distributed and trained with to ensure communication, such as earpieces which allow two-way dialogue. (AC 7)

*2.5 Public statements by involved officers or representatives of the Bureau regarding shootings and deaths should be cleared through the Chief's office. (KO 3)

**(3) MEDICAL AID**

*3.1 In case of injury of any suspect, all officers must remain on the scene and at least one officer must administer first aid/CPR and remain with the injured person or persons until paramedics arrive. Police must not hamper or delay prompt medical attention from being administered. First aid training must include direction to apply first aid as soon as possible. (KJ P 4, KJ T 3)

*3.2 Any person who loses consciousness or shows other signs of health emergency while in custody must immediately be transported to the nearest emergency room via ambulance transport. (JC 7)

**(4) INVESTIGATION, INQUEST AND GRAND JURY**

*4.1 The initial interview with officers involved in cases of serious injuries or deaths shall take place within [fortyeight] *twenty-four* hours of the incident. (KJ P 6)

*4.2 The Mayor and city council should pass an ordinance that if someone dies at the hands of the police there will be a medical examiner's inquest or other public airing of the facts by those involved. (KJ AH 8, JJP FR 3)

*4.3 Establish an independent prosecutor for all cases of possible police criminal conduct to avoid the inherent conflict of interest within the Multnomah County District Attorney's office. (JC 2, AMA #5)

*4.4 The State of Oregon must pass, and the City of Portland should support, legislation to open the grand jury process to greater public scrutiny, including the release of transcripts, for officer involved shootings and deaths in police custody. (KJ L 1, JJP FR 4b, JC 3)

* 4.5 The Chief of Police will request an FBI review on all controversial cases involving possible civil rights violations. (KJ P 11, AMA #1)

*4.6 The IPR Director or designee shall be called onto the scene of any shooting or death in custody to observe evidence collection, policies getting followed, civilian interviews, and the general background of the incident for use in the administrative (non-criminal) investigation. (KO 4)

*4.7 There should be an independent autopsy done in police shootings and deaths. (JC 13)

**(5) RACIAL *& OTHER* PROFILING**

*5.1 All officers in the Portland Police Bureau will receive intensive and comprehensive cultural diversity and unlearning racism training approved by members of communities vulnerable to police abuse. This will include training officers to engage in respectful conduct towards communities of color, ethnic minorities, the poor, and sexual minorities. This training will happen prior to graduation from police academy and followed by two weeks annually of advanced cultural diversity training. (KJ T 6, JJP R 2, AC 8, AMA #3)

*5. 2 The Police Bureau must immediately, internally address harassment and end racial profiling that occurs during stops, intervention and patrol, in part by training officers to respond only to suspicious or criminal behavior, and not to race or appearance. Officers who are found to be racially profiling will be disciplined. (JMP 8, KJ AH 6, KJ T 7, JJP R 3) *PPB should not profile based on how people look, how they are dressed or what kind of car they drive. (KO 5)*

*5.3 Cultural training shall include a "homeless immersion" and unlearning bias against people of low income. (JDC 2)*

*5.4 Create and enforce strict policies for when officers interact with individuals with disabilities. (JMP 4)*

### (6) OVERSIGHT: POLICE REVIEW BOARD

*6.1 The Independent Police Review Division (IPR) and the Citizen Review Committee (CRC) must have the authority, staff, and funding to comprehensively review all records of open and closed investigations of serious injury due to police action and/or deaths while in police custody within one year of the incident, and make all findings public. The IPR and CRC shall explicitly be able to engage in administrative (non-criminal) investigations of these incidents (KJ IR 5, JJP FR 5d, AMA #2)

*6.2 The IPR must gain more independence by adding an attorney not connected to the City Attorney's office and adding civilian investigators (JC 8, AMA #2)

*6.3 The IPR and CRC should review and change policies relating to the use of lethal force. (JMP 7, AMA #2 & 3)

*6.4 Both the IPR and CRC must be given the authority to compel testimony of anyone involved in a police action. (KJ IR 1, JJP FR 5a, AMA #2)

*6.5 The IPR and CRC must have the authority, staff, and funding to comprehensively review allegations of racial, sexual, socio-economic class, ethnic, and other harassment of the public by the Portland Police. (KJ IR 6, AMA #2)

*6.6 The CRC must have the authority to recommend whether discipline should be imposed on an officer, leaving the type of discipline to be rendered up to the Chief of Police. (KJ IR 9, JJP FR 5e, AMA #2)

*6.7 Meetings involving the IPR/CRC and the Portland Police Bureau about use of force should be open to the public. Use of force data shall be published regularly with the goal of systemic change. (JC 11)*

### (7) DRUG TESTING

*7.1 The City of Portland will adopt a policy of testing all officers involved in incidents that result in hospitalization or death of a civilian for use of controlled substances. (KJ P 9, JC 9)

### (8) TRANSPARENCY

*8.1 The City of Portland must commit to publicly airing the facts and discussing the issues surrounding controversial deaths at the hands of police. Family, community, and police representatives must have equal and adequate time to present a full accounting, with no distractions from the core issue of police use of force by diverting attention to mental health, homelessness or other unrelated issues. (JC 5, JC 6)

*8. 2 The City and the PPB need to release information much more quickly, concentrating on undisputed facts such as number of shots fired by police, number of times suspect was hit, names of involved officer(s), and name, age, gender and race of civilian(s). (AC 9)

### (9) HIRING

*9.1 All candidates applying for employment with the Portland Police Bureau shall undergo psychological examination by a culturally diverse group of psychologists. If they have not already, the City of Portland must adopt a non-hiring policy for all candidates who fail this examination. (KJ P 8)

*9.2 Hiring should be done to increase the diversity of the Police Bureau, by gender, race and ethnicity, at the same time the culture of the police is being changed to end the "blue wall of silence." (AC 10)

### (10) OTHER TRAINING & EQUIPMENT NEEDS

*10.1 The Portland Police Bureau will update its technology and human resources for training and field equipment to correlate with these recommended changes. (KJ T 9)

*10.2 The City of Portland must fund a budget upgrade for Community Policing. (KJ L 2)

*10.3 Broaden the use of cameras with audio recording from a few traffic vehicles to all police cars, and ensure the cameras, microphones and recording devices cannot be tampered with. (AC 11)

*10.4 Invite an outside study including diverse members of the community and implement a plan for changing the culture of the Portland Police Bureau that leads to "us vs. them" thinking and the "blue wall of silence." (KJ L 3)

*10.5 Examine the use of defensive gear such as mattresses and padded armor to defend against knives and apparently violent people in psychiatric crisis. (JDC 3)

**GUIDE:**

JMP: Jose Mejia Poot: Demands from the Latino Community (2001) [10 demands]

KJ: Kendra James Report Recommendations (2003) [45 demands]

AH: Ad Hoc Report; P: Policy; T: Training, L: Legislative IR: Independent Review

JJP: James Jahar Perez: Presented as a proposed Resolution to City Council (2004)
   R: Resolved; FR: Further Resolved [14 demands]

JC: James Chasse Jr Justice Committee (2007) [13 demands]

AC: Aaron Campbell: Proposed New Recommendations for Justice (2010) [11 demands]

*JDC: Jack Dale Collins (2010) [3 demands]*

*KO: Keaton Otis (2010) [5 demands]*

*101 recommendations have been collated into 49 demands divided into 10 categories.
   [June 15 version was 93 recommendations and 37 demands]*

6/15/10->  *11/3/10*