# COMMUNITY PROPOSED REMEDIES FOR THE PORTLAND POLICE/CITY OF PORTLAND TO PRESENT TO THE DEPARTMENT OF JUSTICE

based on the Letter of Finding and Statement of Intent published Sept. 12, 2012
Sept. 27, 2012
from the Albina Ministerial Alliance Coalition for Justice and Police Reform & Portland Copwatch

**Notes:**

**In this document**
**--AMA** refers to the 49 community demands compiled by the Albina Ministerial Alliance Coalition for Justice and Police Reform, most recent version dated November, 2010
**--POS** refers to the Police Oversight Stakeholder Report from 2010 (asterisks * = unanimous recommendations)
--**POS-O** refers to other recommendations in the Stakeholder report not voted upon
--**DOJ-R** refers to the 11 official remedies listed in the DOJ's letter of finding
--**DOJ-E** refers to the explicit recommendations the DOJ otherwise makes in its report
--**DOJ-I** refers to the implicit recommendations the DOJ makes in its report

**While the terms IPR, IA, CRC and PRB are used here**, one can apply most of the recommendations to a fully independent, fully integrated oversight system that combines the purposes of the intake and investigative agencies (IPR/IA), civilian review body (CRC), and internal Police Review Board.

*Italics* are used to differentiate *direct quotes from the DOJ* letter from paraphrases and community demands.

# INTRODUCTION/HIGHLIGHTS:

The Albina Ministerial Alliance (AMA) Coalition for Justice and Police Reform thanks the United States Department of Justice (DOJ) for their review of Portland Police Bureau (PPB) patterns and practices of excessive force. We support the recommendations made by the DOJ, though in some instances we have made suggestions where the recommendations need to be strengthened or modified. (For example, in many places where the DOJ says the Bureau "should" do something, we replaced that term with "must.") We also have identified areas of community concern that were not addressed in the DOJ's Letter of Findings. Below are some highlights of some general areas of support and concern.

**------Items the DOJ highlighted in the body of the report that the AMA Coalition would like to affirm:**

**Crisis Intervention:**

--Stop using the term "mentals" to describe people with mental illness (DOJ-E p. 22) This was supposedly taken care of after the police were calling people "12-34s" which meant "mental cases," exposed in a fall 1994 PIIAC report.

**Misconduct Investigations / Review Board Hearings:**

--Allow the civilian affected by police action to attend and participate in the Police Review Board hearings, and any police oversight hearing (DOJ-I suggested by a comment that lack of their presence is "*Curious*", p. 33)

**------Items the DOJ highlighted but didn't go far enough, or we'd like to propose an alternative solution:**

**Misconduct Investigations / PPB Use of Force Response:**

--A civilian review board investigator must be sent to the scene of use of force incidents in addition to a police supervisor (DOJ-R 8), to assist in the investigation and to ensure that the supervisor's response and approach are appropriate (AMA 2012.2).

### Misconduct Investigations / Deadly and Excessive Force Investigations:

--If the District Attorney takes over the homicide investigation of a police shooting (DOJ-E p. 31), there is a conflict of interest because of the DA's close relationship with the police. We recommend an independent prosecutor look into such incidents (AMA 4.3).

### Misconduct Investigations / Review Board Hearings:

--The Citizen Review Committee (or any future review board) must not be held to the current standard of findings (DOJ-E, p. 34) because that standard ("reasonable person") is too deferential. Instead, any such body must use the "preponderance of the evidence" standard (POS II-A).

--While evidence collected by the CRC (or a future board) must be included in the record, they must not be limited to requesting Internal Affairs do more investigation (DOJ-E p. 34) even if IA is compelled to do so (DOJ-R 10). The review body must also be given the power to compel testimony, and/or to compel the civilian investigators (such as at IPR) to conduct the investigation (AMA 6.4, POS II-F).

### Community Engagement and Outreach / Diversity/Racial Profiling:

--PPB must actively implement the 2009 PPB Plan to Address Racial Profiling , not just review implementation of it (DOJ-E p. 38).

--PPB must train on unlearning racism (AMA 5.1) not just train on cultural sensitivity and competency (DOJ-E p. 39.

### Community Engagement and Outreach / Hiring, Police Culture, Policy & Practices:

--In addition to ensuring diversity in the PPB (DOJ-E p. 39), such diversity must also be present in the command staff. (AMA 2012.3)

### ------Items the DOJ failed to mention:

### Early Intervention System:

--Ensure that patterns found in the EIS can be used for counseling or discipline, effective no later than July 1, 2013. (AMA 2012.1) {Highlighted}

### Misconduct Investigation / Deadly & Excessive Force Investigations:

--Test for use of controlled substances all officers involved in incidents that result in hospitalization or use of force (AMA 7.1)

### Misconduct Investigation / Complaint System-General

--Any oversight body must not be advised by the same attorneys' office that advises the Police Bureau and protects the City from liability claims (AMA 6.2 and POS I-F)

### Misconduct Investigation / Complaint System-Intake, Investigation and Case Handling:

--Civilian investigators for any review board must predominantly or entirely be made up of non-police (or retired police), and must be culturally and ethnically diverse (POS I-H)

### Misconduct Investigation / Review Boards-General

--A supervising officer who has already made a finding whether an officer's action was in or out of policy in use of force cases must not have a vote on any police review board (POS IV-A)

### Community Engagement and Outreach / Hiring, Police Culture, Policy & Practices:

--All PPB candidates shall undergo psychological examination by a culturally diverse group of psychologists (AMA 9.1)

# Section 1 -- USE OF FORCE:

**DE-ESCALATION/TRAINING/FORCE POLICIES (GENERAL):**

*Revise policies to place greater emphasis on de-escalation techniques and require officers to consider less intrusive alternatives before employing force.* (DOJ-R 2)

*Implement scenario-based training to ensure officers do not use excessive force and only use force justified to meet the government interest* (DOJ-R 3)

Policy and training must require officers to be trained to de-escalate situations and apprehend suspects using the least amount of force possible. Senior officers must take the lead in developing simple and practical plans which can be communicated to all officers on the scene and documented afterward. Supervisors and backup must be present before extracting a suspect from a vehicle. (AMA 2.1) Expand police training on de-escalation techniques. (POS-O)

De-escalation includes using time as a factor; waiting for backup when there is not an immediate crisis is an example. (AMA 1.13)

*Train and require officers to give warnings, where feasible, before using force.* (DOJ-R 6)

*Through strengthening of training, reducing the complexity and duration of the review and discipline processes and other measures, PPB can prevent unnecessary or unreasonable uses of force or self-identify incidents or patterns and undertake self-correcting action.* (DOJ-E p. 3)

In defining what is excessive force, DOJ quotes two court cases in the 9th Circuit (2001 & 2005), which must guide the PPB in its training and policies: *The "most important" factor under Graham ["totality of the circumstances" analysis] is whether the suspect posed an "immediate threat to the safety of the officers or others." ... "A simple statement by an officer that he fears for his safety or the safety others is not enough; there must be objective factors to justify such a concern."* (DOJ-I p. 9)

In outlining excessive force against people with mental illness, DOJ quotes the Lukus Glenn case in the 9th Circuit (2011), which must guide the PPB in its training and policies: *Courts also consider whatever specific factors may be appropriate in a particular case ... including "the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed. ... [E]ven when an emotionally disturbed individual is 'acting out and inviting officers to use deadly force,' the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual."* (DOJ-I p. 9)

Emphasize the preambles to the use of force and other policies which describe the value of human life. (AMA 1.14)

The City of Portland will adopt a city wide ordinance against police brutality. (AMA 1.3)

Commanders should not leave the scene; clear line of command must be established. (AMA 2.2)

Communication between negotiators and other "teams" must be established. (AMA 2.3)

Proper equipment must be bought, distributed and trained with to ensure communication, such as earpieces which allow two-way dialogue. (AMA 2.4)

**USE OF FORCE REPORTING/ANALYSIS:**

The PPB must use the "decision-point" method to analyze force in incidents: *Using a focused "decision-point" approach (also known as segmentation) to analyze each use of force incident, we considered each point when an officer made a decision that may have an effect on subsequent events, as opposed to focusing solely on the final decision to use force. The decision-point process allows the police supervisor to conduct more intensive and comprehensive reviews of the reasonableness of a particular use of force incident and to identify and address any flawed tactical decisions and training opportunities.* (DOJ-I p. 10)

When filing Use of Force reports: • Do not use conclusive language; • Take statements from independent witnesses and the person against whom force was used; • All officers on scene who use force must write reports; • Subordinate officers must not investigate superior officers; • Supervising officers must not sign off on their own uses of force; • Supervisors who order use of force must write force reports and after action reports; • Take pictures of injuries; • Write force reports close to the time of the incident; • Address or resolve discrepancies between involved officers' statements and reports; •Analyze whether there was reasonable suspicion or probable cause for the original stop and detention. (DOJ-I p. 25; these are listed deficiencies in +the DOJ's analysis of+ reviewed +force+ reports.)

## DEADLY FORCE/TASERS/LESS-LETHAL FORCE

Officers must be required by Bureau policy to use and document the use of less-lethal and non-lethal means to subdue suspects prior to using deadly force, in the absence of gunfire. The decision to use lethal force must be tied to the seriousness of an alleged offense, presumably only violent arrestable offenses would justify "stepping up" the level of force. (AMA 1.1)

*Train officers to go hands on following the first application of less-lethal force, when feasible, to effectuate the arrest, and to use as few cycles of the ECW as possible.* (DOJ-R 4)

*Train and require officers to avoid using more intrusive forms of force, such as beanbag guns and ECWs, on individuals who do not pose a threat to the safety of officers and others or who are suspected of committing minor offenses.* (DOJ-R 5)

Because of the weapons' dangers, officers must limit multiple Taser (or "ECW") discharges as outlined by PARC in its 2009 report: limited to one discharge cycle by one officer, then a reassessment, then used no more than three times total. This includes not having multiple officers use Tasers simultaneously. (AMA 1.11) *The use of an ECW on a person could result in serious injuries when intense pain and loss of muscle control cause a sudden and uncontrolled fall. And, ECW use can result in death.* (p. 14) ... *PPB's policy does not provide any guidance regarding the maximum number of ECW cycles an officer may deploy or limit how many officers can deploy their ECW at a single subject, absent exigent circumstances.* (DOJ-I p. 16) Use of Tasers shall be limited

Do not use Tasers on unarmed, naked individuals. (DOJ-I p. 15)

PPB must resolve ambiguities in the Taser policy regarding "display[ing] the intent to engage in" aggressive or physical resistance, and the definition of "physical resistance." (DOJ-I pp. 15-16)

(related to DOJ-R 2): PPB needs to clarify its policies limiting the use of fist strikes to the face/head, Tasers, pepper spray and "beanbag" guns, taking into consideration the underlying offense and threat of harm. (pp. 16-18) *Our review of FDCRs revealed numerous examples in which officers used ECWs, beanbag guns, and multiple fists strikes beyond what was necessary to effectuate the arrest and a failure to consider less intrusive alternatives.* (p. 17) *PPB's failure to identify these excessive uses of force as being out of policy, results in a missed opportunity to take corrective action.* (DOJ-I p. 19)

The City of Portland must support changing the state of Oregon's statute on deadly force to include objective standards defining a threat to public safety, rather than an officer's "reasonable belief" that their life or another's is in danger. (AMA 1.4)

If used at all, a less lethal ("Beanbag") shotgun must not be used for compliance, and not used from less than 10 feet. (AMA 1.6)

If used at all, use of police dogs must be coordinated so as not to be used simultaneously with other uses of force. (AMA 1.7)

All less lethal weaponry must be re-evaluated for effectiveness, potential dangers, and appropriateness for use against civilians, including Tasers, "beanbag" shotguns, and pepper spray. This review shall include the disturbing policy of using these weapons against suspects who are fatally wounded. (AMA 1.8)

**MEDICAL ATTENTION:**

*There must {should} be a bright line rule that whenever an injury occurs or whenever a subject complains of an injury, EMS is summoned. PPB must {should} review its data to determine if officers are routinely procuring medical care at the earliest opportunity and, if not, revise its policies and training accordingly.* (DOJ-E p. 37)

In case of injury of any suspect, all officers must remain on the scene and at least one officer must administer first aid/CPR and remain with the injured person or persons until paramedics arrive. Police must not hamper or delay prompt medical attention from being administered. First aid training must include direction to apply first aid as soon as possible. (AMA 3.1)

Any person who loses consciousness or shows other signs of health emergency while in custody must immediately be transported to the nearest emergency room via ambulance transport. (AMA 3.2)

# Section 2 -- CRISIS INTERVENTION:

*In addition to exposing all officers to crisis intervention training, have a specialized unit of crisis intervention officers who are selected based on their temperament, experience and desire to interact with individuals with mental illness or in mental health crisis.* (DOJ-R 1)

*PPB must take into account behaviors that are the product of mental illness in all encounters.* (DOJ-E p. 11)

*When dealing with someone with a mental illness, officers must take into account the subject's mental and emotional state before using force.* (DOJ-E p. 11)

*When officer safety is not implicated, officers* must {*should*} *have the discretion to consider mental health as a condition permitting alternative means of securing the individual* (DOJ-E p. 14).

*Officers must have the tools to identify when a person in crisis has a mental illness in order to appropriately adjust their approach and response.* (DOJ-E p. 21)

*One of the most effective ways to address the stigma of mental illness is to increase direct exposure to people with mental illness. The opportunity for officers to now see people, who may have been violent offenders when ill, as stable contributors in a crisis intervention class is a powerful game changer in crisis intervention training programs... By including persons in recovery in a crisis intervention class, PPB will not only involve the community, but it may also lower the level of fear, and lead to less fear-based unintended consequences.* (DOJ-E p. 21)

Revive role-playing in Crisis Intervention Training. *The current training in the basic and advanced academies involves training modules scattered over multiple days. The impact of a week-long crisis intervention training experience is lost. Our investigation also found that PPB abandoned live role playing, replacing role plays with discussions of scenarios. Discussions of given scenarios cannot replace role-playing realistic scenarios in front of peers.* (DOJ-I p. 21)

*Training must include police interactions with people who are symptomatic, but not in crisis, to avoid criminalizing mental illness.* (DOJ-E p. 22)

*For individuals who are perceived as not being dangerous to others, but are at risk of harm to self, officers should only practice strategic disengagement in consultation with a mental health professional and should attempt to develop a plan for when and how to hand off responsibility.* (DOJ-E p. 22)

*We observed the term "mentals" used as a descriptor during a roll call presentation. We recommend that PPB immediately stop using this term.* (DOJ-E footnote 23, p. 22) {Highlighted}

*The City should consider where resources are best dedicated to address the need for welfare checks. ... The City could better inform mental health care consumers and their families about available resources, including the crisis hotline and Project Respond. ... Project Respond could be utilized to address mental health crisis calls that do not involve a risk to community safety. ... The City should consider encouraging direct calls to Project Respond and permitting Project Respond to decide which calls to take and which to refer to the police.* (p. 22) *...Before implementing direct calls to Project Respond and an increased role for Project Respond in welfare checks, the City should carefully consider appropriate protocol and staffing. The City should also have an evaluation plan to test the efficacy of Project Respond's responses to service calls. ... The City* must {*should*} *have a backup plan should calls come in that Project Respond does not have the capacity to address.* (DOJ-E p. 23)

Establish *a secure 24/7 crisis triage center within the City {would} to allow officers the ability to hand over an individual in crisis to a mental health professional quickly and without authorization from the county or otherwise.* (DOJ-E p. 23)

Reconcile the Bureau's training on use of force with the de-escalation taught to all officers in Crisis Intervention Team training, so that police are more likely to talk and less likely to cause injury. (AMA 1.10)

Examine the use of defensive gear such as mattresses and padded armor to defend against knives and apparently violent people in psychiatric crisis. (AMA 10.5)

Provide more training of police on mental health and other issues. POS-O

# Section 3 -- EARLY INTERVENTION SYSTEM:

*An effective EIS ["Early Intervention System"] is a powerful tool that {should enable} PPB* **must use** *to identify officers whose at-risk behaviors exceed department guidelines, even if direct supervision of use of force incidents fail or are found to be within policy.* (DOJ-E p. 35)

Ensure that patterns found in the EIS can be used for counseling or discipline, effective no later than July 1, 2013. (AMA 2012.1)

*The EIS reportedly currently triggers with an officer who has used force in 20% of his or her arrests in the past six months, or who uses force three times more than the average number of uses of force compared with other officers on the same shift. ... We recommend that PPB* **must** *memorialize in its policy the Professional Standards Division's discretion to develop additional EIS triggers. Additionally, while these proportional-use-of-force triggers are helpful, we recommend that* PPB **must** *add definitive triggers to its EIS for uses of force, e.g., three uses of force in a month. ... A sudden uptick in uses of force within a shorter period of time* **must** *{should} trigger the EIS.* (DOJ-E p. 36)

*No officer should reasonably rely on EIS intervention to avoid IA investigation and the imposition of discipline for sustained wrongdoing. If there is any doubt on this point, we recommend that PPB immediately clarify by issuing an informative directive.* (DOJ-E p. 36)

*We recommend that as the system matures, PPB revise it EIS to trigger supervisors whose units collectively use force disproportionately more than other units.* (DOJ-E p. 36)

*We recommend that triggered [EIS] information, unless redundant, automatically go to the chains of command.* (DOJ-E p. 36)

*We recommend that PPB train other members to be proficient in the use of EIS.* (DOJ-E p. 36)

*Direct supervisors* **must** *{should} evaluate their subordinates at least annually. Prior to the evaluations, supervisors* **must** *{should} explain the evaluation process and the expectations to their subordinates. Supervisors* **must** *{should} also utilize EIS data in preparation for evaluations. In conducting evaluations, supervisors* **must** *{should} meet with their subordinates to discuss positive aspects of their police work, their complaint history, if any, and to discuss any problems or concerns officers may have concerning the department. The direct supervisors* **must** *{should} memorialize evaluations, including any discussions in face-to-face meetings. Supervisor* **must** *{should} then pass written evaluations through the chain of command, affording the opportunity for superiors to add comments. The written evaluations* **must** *{should} be stored in the employee's training or personnel file. PPB* **must** *{should} tie these evaluations into its promotion process, to the extent permitted by law and PPB's collective bargaining agreements.* (DOJ-E p. 37)

The Auditor's Office must provide regular reports on the status of the Bureau's Employee Information System and an independent analysis of police stop data. (POS VI-A)

# Section 4 -- MISCONDUCT INVESTIGATION:

**PPB USE OF FORCE RESPONSE:**

*Monitor all uses of force to ensure practice consistent with these standards and affirmatively enforce these standards when force is used in an inconsistent manner.* (DOJ-R 7)

*Conduct on-site supervisory investigations of all uses of force, including contemporaneous public safety and investigatory statements subject to constitutional protections against self incrimination.* (DOJ-R 8) In addition, a civilian review board investigator must be sent to the scene of use of force incidents to assist in the investigation and to ensure that the supervisor's response and approach are appropriate. (AMA 2012.2) {Highlighted}

(related to #8): *Following a use of force, supervisors* must {*should*} *be on the scene to ensure that a full inquiry of the circumstances of the force used by officers is conducted, including: • Ensuring medical attention is provided; • Identifying, separating, and interviewing all involved and witness officers; • Interviewing those subjected to force; • Canvassing for witnesses and taking statements from all witnesses; • Collecting evidence (e.g., hospital reports, photos of all injuries to all involved persons, physical evidence, Taser downloads consistent with the incident, diagrams); • Conducting a documented review of officers' reports of the incident for completeness, accuracy, and quality; and • Assessing whether further investigation is needed to determine the appropriateness of the use of force and whether the incident creates a need for retraining. ... It is essential that supervisors be required to gather evidence necessary to resolve material discrepancies and consider whether the description of the force used is consistent with the sustained injuries or hospital reports.* (DOJ-E p. 24)

(related to #8): *PPB* must {*should*} *further revise its policy to require the AAR process to include collecting forensic evidence, taking photographs, or audio and electronic reception of evidence. PPB* must {*should*} *also consider whether its current AAR policy, which suggests that a short one or two paragraph narrative is sufficient to describe the significant facts of the event,* must {*should*} *be revised to require supervisors to provide more details. PPB* must {*should*} *revise its AAR policy to include a strong and effective monitoring system to ensure AARs are being timely completed and contain sufficient data for supervisors to adequately analyze uses of force. This analysis* must {*should*} *include: • Was the original stop, detention or subsequent arrest lawful? • Was the type and amount of force used objectively reasonable and proportional to the resistance encountered? • Was the type and amount of force related to a legitimate law enforcement objective the officer or the department was trying to achieve? • Were efforts made to deescalate the situation without using force? • Was the force reasonably decreased as resistance subsided? • Was the force used consistent with generally accepted police tactics? •* Was the force used consistent with PPB training programs? (DOJ-E pp. 24-25)

Supervisors must investigate thoroughly and effectively counsel subordinates: *By tolerating supervisors' failures to investigate and complete uses of force investigation and reviews, PPB misses a crucial opportunity to correct officer behavior. Supervisors' failure to intercede and actively manage incidents results in a weak and ineffective force management system.* (DOJ-I pp. 25-26)

When reviewing force reports, supervisors must: • Identify when force used is excessive; • Reject inadequate After Action Reports which lack detail to assess use of force. (DOJ-I p. 26)

**DEADLY & EXCESSIVE FORCE INVESTIGATIONS (CRIMINAL/ADMINISTRATIVE):**

Establish an independent prosecutor for all cases of possible police criminal conduct to avoid the inherent conflict of interest within the Multnomah County District Attorney's office. (AMA 4.3) {Highlighted}

*PPB has an interest in preserving administrative accountability and public safety expeditiously through its IA process. This* must {*should*} *not be delayed by a parallel, bifurcated criminal investigation. ... PPB* must {*should*} *make clear in its policy that administrative and criminal investigation shall run concurrently. PPB* must {*should*} *consult with the DA, FBI, and/or United States Attorney's Office* or the office of an independent prosecutor (AMA 4.3) *at the outset and throughout this bifurcated process and prior to compelling statements.* The City shall take the position that, in reference to Section 61.2.1.3 of the Police Association contract, in the context of use of force incidents, "delay in conducting the interview" will always "jeopardize the successful accomplishment of the investigation" and "criminal culpability" is always an issue in deadly force cases. (AMA 2012.4)

*PPB* must {*should*} *also clearly set forth in policy that though IA may use criminal investigation material in appropriate circumstances, all administrative interviews compelling statements, if any, of the subject officer and all information flowing from those interviews must be bifurcated from the criminal investigation in order to avoid contamination of the evidentiary record in the criminal case.* (DOJ-E p. 31)

If no independent prosecutor is appointed, *provided the DA is not bound by the City's contract and its 48-hour waiting provision, the DA may consider questioning the officer, subject to his or her ability to exercise rights to counsel and remain silent, as soon as the DA sees fit. This should expedite the accurate resolution of the criminal investigation. ... PPB* must {*should*} *not hinder investigation of a potentially criminal action with this officer-specific delay.* (DOJ-E p. 31)

*Whether a criminal defendant is an involved officer or a civilian, PPB* must {*should*} *have a policy in place to transmit potentially exculpatory material to criminal defendants. We recommend that PPB, the City Attorney and the DA work collaboratively to establish a methodology for the handling of exculpatory material, mindful of the bifurcated administrative and criminal investigations in cases involving officers as defendants. PPB* must {*should*} *memorialize in policy or procedures this agreed-upon methodology.* (DOJ-E p. 32)

The initial interview with officers involved in cases of serious injuries or deaths shall take place within twenty-four hours of the incident. (AMA 4.1)

Test for use of controlled substances all officers involved in incidents that result in hospitalization or use of force (AMA 7.1) {Highlighted}

The Mayor and city council must pass an ordinance that if someone dies at the hands of the police there will be a medical examiner's inquest or other public airing of the facts by those involved. (AMA 4.2)

The City of Portland must support, legislation to open the grand jury process to greater public scrutiny, including the release of transcripts, for officer involved shootings and deaths in police custody. (AMA 4.4)

The Chief of Police will request an FBI review on all controversial cases involving possible civil rights violations. (AMA 4.5)

There must be an independent autopsy done in police shootings and deaths. (AMA 4.7)

The Independent Police Review Division (IPR) and the Citizen Review Committee (CRC) must have the authority, staff, and funding to comprehensively review all records of open and closed investigations of serious injury due to police action and/or deaths while in police custody within one year of the incident, and make all findings public. The IPR and CRC shall explicitly be able to engage in administrative (non-criminal) investigations of these incidents. (AMA 6.1)

Ensure that IPR investigations include specified more serious complaints. Particularly those including shootings, deaths in custody, and physical injury requiring hospitalization; racial profiling, illegal searches, conflicts of interest, or other "high emotion in the community" issues. (POS I-B)

Ensure that IPR has, and exercises, the power to conduct or participate in investigations (from time zero) of specified serious incidents, including police shootings, deaths in custody, and other serious injury. (POS *I-C)

**COMPLAINT SYSTEM-GENERAL:**

*Adopt policies and practices to streamline the investigation of all allegations of officer misconduct to increase efficacy of corrective action. This should include a mandate to address investigative inadequacies identified by CRC.* [Note: see "review Board Hearings", below regarding this item.] *PPB should also keep complainants actively informed and involved of the process.* (DOJ-R 10)

Any civilian oversight body such as IPR must attain independence by adding an attorney not connected to the City Attorney's office and adding civilian investigators. (AMA 6.2) {Highlighted}

Make it easier for the Auditor to hire outside counsel at the Auditor's discretion. If it is determined that the above change cannot occur without a Charter change, then such a change should be supported to enable it (POS *I-F)

Any civilian oversight bodies such as IPR and CRC must be given the authority to compel testimony of anyone involved in a police action, including the authority to directly interview police officers in administrative investigations. (AMA 6.4, POS I-D.)

Any civilian oversight bodies such as the IPR and CRC must have the authority, staff, and funding to comprehensively review allegations of racial, sexual, socio-economic class, ethnic, and other harassment of the public by the Portland Police. (AMA 6.5)

Repair community distrust of use-of-force investigations (up to and including shootings and in-custody deaths). (POS *I-A)

Ensure investigations or reviews conducted by any civilian or internal oversight body such as IPR, CRC or IAD can proceed in a manner that is consistently and objectively independent without delays associated with concerns that the resulting findings could have an impact on a civil claim against the City. (POS *I-E)

Order another expert review in 201. {On or before July 1,} Before the end of 2012, order an independent expert review of the Police Review system and the impact of the changes made by ordinance and practices since March of 2010. (POS III-M)

Hold another stakeholder review. Have City Council require another stakeholder review to begin no later than upon completion of an expert review initiated in 2012 or, if no expert review is initiated, January 15, 2013. (POS III-N)

Consider implementing a "Quality Assurance" program for the Bureau to better identify, correct, and improve institutional practices through a system that is not based on determining blame, but based on finding and correcting errors. (POS-O)

Consider methods to ensure that future appointed directors of any civilian oversight agency will continue to be fully sympathetic to the purpose of independent police review. (POS-O)

## COMPLAINT SYSTEM-INTAKE, INVESTIGATION AND CASE HANDLING:

*All allegations which, if true, would amount to a violation of policy* must {*should*} *be investigated*. (DOJ-E p. 28)

(related to #10): *We recommend that PPB, the City Attorney, and IPR work collaboratively to expedite the handling of this backlog* [of complaints awaiting an initial investigation]. *We also recommend clearer criteria for IPR declination that does not permit judgments based on incomplete information, particularly when IPR does not refer the complaint to any other entity for investigation.* (DOJ-E p. 28 & POS-O)

(related to #10): *PPB could ... simultaneous[ly] broadcast the SIOs from IA down the chain of command to the Sergeant, and the Sergeant's concomitant response directly to IA, with copy to the chain of command.* (DOJ-E p. 29)

Require that IPR or any civilian oversight agency investigate or actively participate in the investigation of all complaints of those with the rank of captain or higher. (POS *I-G)

Civilian investigators for any review board must predominantly or entirely be made up of non-police (or retired police), and must be culturally and ethnically diverse. (POS I-H, paraphrased) {Highlighted}

If the current oversight system remains, ask every complainant if they would prefer to have IPR or IAD investigate their complaint and document the response. Gather data that may help measure faith in the system. (POS *I-I) If complainant opinions support doing so, increase investigative resources at IPR. If the results of such measurements indicate a substantive preference for investigations by IPR, increase investigative resources at IPR. (POS I-J)

If the current oversight system remains, ask opinion on complaint-handling preference. At intake, when applicable, the IPR will record the complainant's opinion in response to this question: If the choice were the complainant's, would he or she prefer to have a full investigation or to have the complaint handled through the non-disciplinary complaint (or Service Improvement Opportunity) process? POS III-D.

Allow CRC or any similar civilian oversight body to review proposed allegations prior to investigation to ensure they match the complainant's concerns and align with Police Bureau policies. (POS II-I)

Establish an avenue for appeal or reconsideration for cases involving quality--service or minor rule violations Allow community members to appeal dismissed complaints or low-level, "service improvement opportunity" complaints against officers to the Citizen Review Committee or any similar civilian oversight body. (POS II-K)

Make it easier for complainants to get publicly available records. Direct IPR and PPB to establish an interagency agreement that would allow the Director discretion to release case-specific records that are already generally available to the public to complainants or their representatives. (POS III-E)

Required reporting on reasons for long investigations. (POS *III-G)

Mandate investigative resource levels that is sufficient to ensure all investigations can be completed in a timely manner. (POS III-I)

Give complainants the right to waive the time limits and to receive written notification of time extensions. (POS-O)

## REVIEW BOARD HEARINGS:

The Citizen Review Committee (or any future review board) must not be held to the current standard of findings (DOJ-E, p. 34) because that standard ("reasonable person"--PCC 3.21.020) is too deferential. Instead, any such body must use the "preponderance of the evidence" standard. (POS II-A) {Highlighted}

While evidence collected by the CRC (or a future board) must be included in the record, they must not be limited to requesting Internal Affairs do more investigation (DOJ-E p. 34) even if IA is compelled to do so (DOJ-R 10). The review body must also be given the power to compel testimony, and/or to compel the civilian investigators (such as at IPR) to conduct the investigation (AMA 6.4, POS II-F). {Highlighted} If the CRC is not given authority to compel testimony, then grant City Council the power to hear new evidence. (POS II-G)

Civilians must have access to Police Review Board hearings, and any police oversight hearing. *Curiously, a complaining civilian, if one is involved in the incident being reviewed, is not permitted to attend PPB's presentation.* (DOJ-I p. 33) {Highlighted}

Ensure CRC or any similar oversight body may hold hearings on all appeals requested by complainants or Bureau members without delays associated with concerns that the outcome of their review could have an impact on a civil claim against the City. (POS *II-D)

Increase CRC or any similar oversight body's authority to send complaints back for further investigation, to re-categorize allegations, and to review dismissed and declined complaints. (POS II-J)

If the current system remains, provide dedicated staff to support the CRC. Change Portland City Code 3.21.090.A. to include a new numbered paragraph that would read: Direct committee staff. To direct a staff person assigned to the Committee to provide staff support for the powers and duties outlined in this chapter. (POS II-L).

## REVIEW BOARDS-GENERAL:

To ensure demographic, cultural, gender, and other diversity, the CRC or any similar oversight body should be made up of a minimum of 11 people. (POS II-H paraphrased)

Require prompt explanation for decisions that differ from the Police Review Board's recommendations. Require the Chief or Commissioner to explain in writing, publicly, the basis for their and to do so in 30 days. (POS *III-J)

Do not permit the supervising RU (Reporting Unit) commander to vote as a member of the Police Review Board (PRB) in cases of deadly force, in custody death, or physical injury requiring hospitalization. (POS IV-A) A supervising officer who has already made a finding whether an officer's action was in or out of policy in use of force cases must not have a vote on any police review board. {Highlighted}

If the current system remains, add another citizen member to PRB for use-of-force incidents. (POS IV-B)

Consider clarifying the process to ensure that voting Police Review Board members have access to all information pertaining to the incident. (POS-O)

Consider modifying the CRC member selection process to further improve transparency, inclusiveness. (POS-O)

**REVIEW BOARDS-POLICY REVIEW:**

IPR & CRC or any similar oversight bodies shall be provided drafts of Police Bureau policies that relate to Bureau member interactions with the public (or to the investigation of such interactions). (POS *V-A)

The IPR and CRC must review and change policies relating to the use of lethal force. (AMA 6.3)

**FINDINGS:**

*We recommend that PPB and IPR adopt uniform standards on the possible outcomes for IA complaints. We also recommend that PPB add one additional finding: unfounded.* (DOJ-E p. 30) Develop categories of findings regarding the specific allegation that includes four categories, instead of the current three. Unfounded/Not supported; Exonerated/In policy; Insufficient Evidence; and Sustained/Out of policy. All of the above could be qualified by "With debriefing." (POS *III-A)

Ensure that findings indicate a separate rating regarding the overall incident that would identify the presence of any policy-related issues as that term is defined in Portland City Code (as opposed to allegations regarding a specific Bureau member). Recommended categories: Communication issues, Management issues, Training issues, Equipment issues and Other policy-related issues. (POS *III-B)

Replace the term "service improvement opportunity" with the term "non-disciplinary complaint." (POS III-C)

**DISCIPLINE:**

The Portland Police Bureau must severely discipline any officer involved in failing to follow Bureau policy or taking actions unnecessarily or unwisely leading to the use of deadly force, and encourage any such officer to no longer work for the Police Bureau. (AMA 1.2)

The CRC or any similar review body must have the authority to recommend whether discipline should be imposed on an officer, leaving the type of discipline to be rendered up to the Chief of Police. (AMA 6.6)

Require more specific reporting on the relationship between sustained findings and discipline. The IPR annual report provide additional, non-officer-specific information about the scope of discipline imposed for specific categories of sustained findings. (POS III-K)

Report on aspects of the "mitigation" process--the rate at which recommended discipline for cases that involve shootings, deaths in custody, or use-of-force injury requiring hospitalization is changed in mitigation. (POS III-L)

**MEDIATION:**

*PPB's mediation policy* must {*should*} *contain objective criteria to determine which matters are appropriate for mediation. Complaints of excessive force* must {*should*} *always be subject to investigation and a finding.* (DOJ-E p. 29, POS I-K) Change the policy on mediation for complaints involving use of a racial, ethnic, gender or sexual-orientation-related epithet; or in cases of officers with a pattern of misconduct, [to disallow mediation in such cases]. (POS-O)

*Mediation should be used to reach mutual agreement. ... PPB* must {*should*} *ensure that mediation is only used based on objective criteria and that the parties fully understand how mediation will be conducted and the potential outcomes.* (DOJ-E p. 30)

# Section 5 -- COMMUNITY ENGAGEMENT AND OUTREACH:

**DIVERSITY/RACIAL PROFILING:**

*We recommend that PPB continue to address this issue [that some community members perceive the practice of bias-based policing] directly with the community and seek to expand opportunities for community engagement.* (DOJ-E p. 38)

*PPB {should consider reviewing the implementation of} must implement its 2009 PPB Plan to Address Racial Profiling. ... Continuing to collect and track stop data {would} will give PPB a better sense of whether a perception of biased policing might be a problem that PPB needs to address. Engaging with the public concerning such data {would} will help assure the public that PPB is committed to ongoing analysis and remedial efforts to address allegations of biased policing.* (DOJ-E p. 38) {Highlighted}

*PPB {should consider utilizing} must utilize its EIS system to track complaints that officers and/or units engage in racially discriminatory policing.* (DOJ-E p. 39)

*PPB {may also consider conducting} must conduct a department-wide intensive cultural sensitivity {and} / competency and unlearning racism training, including and approved by members of the community vulnerable to police abuse.* (DOJ-E p. 39, AMA 5.1) {Highlighted} This will include training officers to engage in respectful conduct towards communities of color, ethnic minorities, the poor, and sexual minorities. This training will happen prior to graduation from police academy and followed by two weeks annually of advanced cultural diversity training. (AMA 5.1)

The Police Bureau must immediately, internally address harassment and end racial profiling that occurs during stops, intervention and patrol, in part by training officers to respond only to suspicious or criminal behavior, and not to race or appearance. Officers who are found to be racially profiling will be disciplined. PPB must not profile based on how people look, how they are dressed or what kind of car they drive. (AMA 5. 2)

Cultural training shall include a "homeless immersion" and unlearning bias against people of low income. (AMA 5.3)

Create and enforce strict policies for when officers interact with individuals with disabilities. (AMA 5.4)

**INFORMATION SHARING:**

Public statements by involved officers or representatives of the Bureau regarding shootings and deaths must be cleared through the Chief's office. (AMA 2.5)

The City of Portland must commit to publicly airing the facts and discussing the issues surrounding controversial deaths at the hands of police. Family, community, and police representatives must have equal and adequate time to present a full accounting, with no distractions from the core issue of police use of force by diverting attention to mental health, homelessness or other unrelated issues. (AMA 8.1)

The City and the PPB need to release information much more quickly, concentrating on undisputed facts such as number of shots fired by police, number of times suspect was hit, names of involved officer(s), and name, age, gender and race of civilian(s). (AMA 8. 2)

Meetings involving the IPR/CRC or any similar oversight bodies and the Portland Police Bureau about use of force or other subjects must be open to the public. Use of force data shall be published regularly with the goal of systemic change. (AMA 6.7, POS III-H)

Make certain review board documents available to the public. (POS III-F)

Require better reporting of policy recommendations received, and policy changes made, by PPB. (POS-O)

**HIRING, POLICE CULTURE, POLICY & PRACTICES:**

*Require that PPB officers document each citizen contact, including the reason they stopped the subject, whether the subject consented to the conversation, whether the officer informed the subject that he/she had the right to decline consent, whether the mere conversation escalated further, and demographical information about the subject. Require that supervisors conduct timely reviews of this data*. DOJ-R 9.

Create *a policy on how and when an officer initiates contacts with citizens {is missing}. ... Officers tend to blend the distinction between initiating a "mere conversation" and a Terry stop. ... Revising this practice will go a long way towards increasing rapport and trust with the community and reducing perceptions of bias-based policing.* (DOJ-E p. 40)

*Require PPB to develop a community engagement and outreach plan, with the goal of creating robust community relationships and sustainable dialogue with Portland's diverse communities.* (DOJ-R 11)

(related to #11): *It is incumbent on PPB officers, not just the executives, to appreciate the far reaching implications of the actions individual officers can have on the organization and the perceived us-against-them mentality.* (DOJ-E p. 39)

*PPB can cultivate community trust by providing incentives for its officers to maintain residency in the city they police.* (DOJ-E p. 39)

*Ensuring that PPB reflects the diversity of the communities being served would also help to improve the effectiveness of PPB.* (DOJ-E p. 39) Hiring must be done to increase the diversity of the Police Bureau, by gender, race and ethnicity, at the same time the culture of the police is being changed to end the "blue wall of silence." (AMA 9.2) In addition to ensuring diversity in the PPB, such diversity must also be present in the command staff. (AMA 2012.3) {Highlighted}

*Perhaps* [the program where recruits volunteer at local service juvenile assistance organizations] *can be expanded beyond juvenile assistance organizations.* (DOJ-E p. 40)

The Bureau must involve community members in developing police training and policy. (AMA 1.5)

All candidates applying for employment with the Portland Police Bureau shall undergo psychological examination by a culturally diverse group of psychologists. If they have not already, the City of Portland must adopt a non-hiring policy for all candidates who fail this examination. (AMA 9.1) {Highlighted}

The City of Portland must fund a budget upgrade for Community Policing. (AMA 10.2)

Invite an outside study including diverse members of the community and implement a plan for changing the culture of the Portland Police Bureau that leads to "us vs. them" thinking and the "blue wall of silence." (AMA 10.4)

# Section 6 -- OTHER

**NOTE: These are community recommendations that don't easily fit into the DOJ's five categories.**

At any scene requiring police action, no officer may put himself or herself into the car of a suspect. (AMA 1.9)

All officers will be thoroughly trained to insure removal of keys from cars in all traffic stops in which an arrest is imminent. The keys will not be put in a place where a suspect can grab them. (AMA 1.12)

The Portland Police Bureau will update its technology and human resources for training and field equipment to correlate with these recommended changes. (AMA 10.1)

Broaden the use of cameras with audio recording from a few traffic vehicles to all police cars, and ensure the cameras, microphones and recording devices cannot be tampered with. (AMA 10.3, POS-O)

Consider preserving investigation information throughout the entire career of each officer investigated. (POS-O)