**RATING THE AMENDMENTS TO THE DOJ AGREEMENT:**
**ALBINA MINISTERIAL ALLIANCE COALITION FOR JUSTICE&POLICE REFORM**
**November 13, 2012**

Mayor Adams and members of Council:

Below, the Albina Ministerial Alliance (AMA) Coalition for Justice and Police Reform has inserted analysis as to whether the City's November 8 amendments to the US Department of Justice Agreement fulfilled the concerns raised in our November 5 memo to Council.

**ALBINA MINISTERIAL ALLIANCE (AMA) COALITION FOR JUSTICE AND POLICE REFORM**
**CONCERNS ABOUT DOJ AGREEMENT WITH THE CITY OF PORTLAND**
**November 5, 2012**

**GENERAL COMMENTS:**

\* The US Department of Justice (DOJ)/City of Portland Agreement must be written in a way that encourages and allows more changes than are included in the current draft without concern that such changes would distract from, or be considered violations of, the Agreement. This is true for policies, training, oversight mechanisms, and just about every aspect of the Agreement.

-----------------------------------------------------------------------------------------------------------
ANALYSIS: It is still unclear whether asking for changes to what is currently written will be considered outside the scope of, or violations of, the Agreement.
-----------------------------------------------------------------------------------------------------------

\* The Agreement needs to include more remedies designed to improve the way Portland Police interact with communities of color.

-----------------------------------------------------------------------------------------------------------
ANALYSIS: While the Agreement keeps in place the Community/Police Relations Committee and directs them to (a) continue overseeing implementation of the Racial Profiling Plan (paragraph 146-d) and (b) participate in reviewing demographic data collected on police encounters (paragraph 148), it does not go as far as the recommendations contained in the DOJ letter of findings.
-----------------------------------------------------------------------------------------------------------

\* The suggestions below are the minimum changes the AMA Coalition seeks before the Agreement can move forward.

**USE OF FORCE**

\* We concur with the ACLU of Oregon, which asks that the Agreement provide that "even if a use of force in a particular case is lawful and constitutional it cannot be used if it is not the least amount of force necessary to achieve that lawful objective." We would add that the Force directive should guide officers on entering a situation using low levels of force, and should include a table similar to the "continuum of force" letting officers know the maximum allowable force based on resistance of the subject, so they can gauge how to apply the "least force necessary."

-----------------------------------------------------------------------------------------------------------
ANALYSIS: There were no meaningful changes to the Use of Force sections of the Agreement.
-----------------------------------------------------------------------------------------------------------

\* With regard to Tasers, there need to be more restrictions added than are in the Agreement, including prohibition of the use of Tasers to threaten or intimidate when no threat exists.

-----------------------------------------------------------------------------------------------------------
ANALYSIS: There were no changes to the Taser sections of the Agreement.
-----------------------------------------------------------------------------------------------------------

\* The Agreement should prohibit the use of force on injured persons who are likely mortally wounded in a police shooting; Portland officers have used Tasers, "bean-bags," police dogs and other force on downed subjects.

-----------------------------------------------------------------------------------------------------------
ANALYSIS: Nothing was added to protect the dignity, health and well-being of wounded suspects.
-----------------------------------------------------------------------------------------------------------

\* In paragraph 67d, the word "may" needs to be replaced with "shall": "Unreasonable uses of force SHALL result in disciplinary action."

-----------------------------------------------------------------------------------------------------------
ANALYSIS: The amended Agreement now says "Objectively unreasonable uses of force shall result in corrective action and/or discipline up to and including termination." This is a vast improvement.
-----------------------------------------------------------------------------------------------------------

## TRAINING

\* Training officers should be screened out if they have been called in for counseling because of the prescribed triggers in the Employee Information System (EIS) which indicate a pattern and practice of inappropriate behavior, in addition to the prohibition for officers who have been disciplined for misconduct as laid out in paragraph 84. This includes the DOJ's new threshold of three uses of force in one month (paragraph 118).

-----------------------------------------------------------------------------------------------------------
ANALYSIS: The amended Agreement adds that trainer selection "will take into account if a civil judgement has been rendered against the City in the last five years based on the officer's used of force" (now paragraph 83); while this is a step forward, it falls far short of the AMA Coalition recommendation. Also, civil trials may end with a judgment, a jury award or a settlement, all of which should be taken into account.
-----------------------------------------------------------------------------------------------------------

\* Community stakeholders should be involved directly in training officers, including people from the mental health community and people of color.

-----------------------------------------------------------------------------------------------------------
ANALYSIS: No meaningful changes have been made to allow community members to be an active part of the training process.
-----------------------------------------------------------------------------------------------------------

\* The training on the Agreement's requirements (paragraph 85) must be ongoing and not one time only, and training must be evaluated with a form of evidence based outcome analysis to be sure it is effective.

-----------------------------------------------------------------------------------------------------------
ANALYSIS: The amended Agreement now says that all training "shall conform to PPB's current policies at the time of training," (now paragraph 84) which is a step forward, but falls short of AMA's recommendation.
-----------------------------------------------------------------------------------------------------------

## CRISIS INTERVENTION

\* The same prohibitions listed above for training officers should also apply to CIT-Team officers (paragraph 100).

-----------------------------------------------------------------------------------------------------------
ANALYSIS: No changes were made to restrict certain officers from the CIT-Team.
-----------------------------------------------------------------------------------------------------------

\* We acknowledge that not all officers are equally committed to using their CIT training, but that training must be used to hold officers accountable when they fail to de-escalate as trained.

-----------------------------------------------------------------------------------------------------------
ANALYSIS: No changes were made to emphasize that officers failing to apply their CIT training will be held accountable.

---

## EMPLOYEE INFORMATION SYSTEM (EIS)

\* An external body must have access to the EIS in order to produce a quarterly report on how often the EIS has flagged at-risk officers, whether they have been counseled, and what kinds of patterns are being discovered.

---
ANALYSIS: No changes were made to oversight of the EIS.

---

\* The thresholds to trigger review must be able to be modified beyond the DOJ's one recommendation in paragraph 118.

---
ANALYSIS: No changes were made to allow more thresholds to be added to the EIS.

---

## OFFICER ACCOUNTABILITY

\* The suggestion from the DOJ's letter of findings to get rid of the so-called "48-hour rule" should be explicit in the agreement.

---
ANALYSIS: No changes were made to clarify the intent to end officers' special rights when involved in deadly force incidents.

---

\* The phrase "enable meaningful independent investigations" by the Independent Police Review Division (IPR) should be clarified to explain that IPR must have the power to compel officer testimony, including the involved officer (not just witnesses). IPR also needs to be given direction to conduct such investigations (paragraph 127).

---
ANALYSIS: No changes were made to clarify what powers IPR will be given.

---

\* The timeline to complete investigations should be 180 days until the complainant receives the findings, then the timeline to complete Citizen Review Committee (CRC) appeals (or an appropriate subsequent body) should be at least 90 days, not 21 days (paragraph 120).

---
ANALYSIS: No changes were made to the proposed timeline for appealing Bureau findings.

---

\* It is not acceptable for the Agreement to lock in place language saying the Police Review Board (PRB) procedures currently in place shall remain with a few exceptions (paragraph 130). Among other things, the PRB must:

__not allow the Supervisor who already made a determination about misconduct to vote on the Board;
__allow the community member involved (and/or their advocate) to participate in the hearings;
__open up to public scrutiny when the incident being reviewed involves a community member.

---
ANALYSIS: While a seemingly useful change was made requiring "reasonable attempts to complete" further investigation if the Police Review Board calls for such investigation, no other changes were proposed to the PRB.

---

\* The sentence in paragraph 43 defining Misconduct Complaint that excludes shootings and deaths victims to appeal the PRB's findings must be struck from the Agreement.

---
ANALYSIS: Paragraph 43 has not been modified.
---

\* Similarly, paragraph 61 defining "supported by the evidence" (as referenced in paragraph 134) must be struck from the Agreement, unless it is used to redefine "supported by the evidence" as a less deferential standard.

---
ANALYSIS: Paragraph 61 has not been removed.
---

## COMMUNITY ENGAGEMENT

\* The Compliance Officer/Community Liaison (COCL / paragraph 158) should be an entirely independent position, reporting to the Court, not to City Council, and should have access to all City documents, not limited to receiving information through the Bureau Compliance Coordinator. This role should be the same as the Monitor in other cities under DOJ jurisdiction.

---
ANALYSIS: While the COCL now clearly will be housed in his/her own office and is responsive to the public and the DOJ (amended paragraph, now numbered 160), the position is still a City employee, not a court monitor.
---

\* The COCL should administer and advise any community oversight body, not chair it, decide who is on it, or vote on it.

---
ANALYSIS: Paragraph 144 now states that the COCL will chair the COAB, but no longer provides for the COCL to cast tie-breaking votes, thus fulfilling one part of the AMA recommendation.
---

\* The COCL and the oversight body must have standing in the court to declare that the City is not fulfilling the terms of the agreement.

---
ANALYSIS: Nothing was changed regarding the COCL's standing in court.
---

\* The current structure for the Community Oversight Advisory Board (paragraph 141) must give more weight to community stakeholders. Rather than five CPRC members and five elected community members, the ten slots not assigned to City Council should be mostly reserved for community stakeholders, including but not limited to people from the mental health community, communities of color, and people who experience police misconduct.

---
ANALYSIS: The amended Agreement now provides for the Human Rights Commission and Portland Commission on Disabilities to select five of the COAB members (now paragraph 142). The qualifications of the people they are to appoint are narrowly drawn to include mental health professionals and people with 10 years of experience working in the mental health field, rather than peer members of the mental health community. There is no indication that the COAB should include stakeholders from communities at risk of being subject to police misconduct.
---

\* When police present their annual report, they must be joined by community stakeholders to help interpret the information being shared, including the presentation on rights and responsibilities at police stops (paragraph 148).

---
ANALYSIS: No change was made to the Bureau's public reporting requirements (now paragraph 150).
---

\* The police should engage another body than[t] the COAB or its replacement to make a community outreach plan. The oversight body's function must be to ensure that the PPB is fulfilling the terms of its agreement.

--------------------------------------------------------------------------------------------------------
ANALYSIS: The one reference to the COAB being the "Outreach and Oversight Advisory Board" has been removed, but all other outreach functions still fall to the COAB (section IX).
--------------------------------------------------------------------------------------------------------

\* The DOJ recommendation (#9) that the Bureau track every citizen contact as a way to build community trust must be included in the Agreement.

--------------------------------------------------------------------------------------------------------
ANALYSIS: A new paragraph (148) directs the Bureau to "continue to require that officers document appropriate demographic data regarding the subjects of police encounters," but (a) does not say whether that will include "mere conversations" as suggested in the Letter of Findings, and (b) gives the Bureau until December 31, 2013 to report on changes, rather than requiring changes to be made sooner.
--------------------------------------------------------------------------------------------------------

--------------------------------------------------------------------------------------------------------
CONCLUSION: While a few, mildly helpful changes have been made to the DOJ Agreement, it still has far to go to achieve its purported goal of ending excessive force by police, improving accountability, and creating community trust.
--------------------------------------------------------------------------------------------------------