**S. AMANDA MARSHALL, OSB #95347**
United States Attorney
District of Oregon
**ADRIAN L. BROWN, OSB #05020**
adrian.brown@usdoj.gov
**BILLY J. WILLIAMS, OSB # 90136**
bill.williams@usdoj.gov
Assistant United States Attorneys
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone:     (503) 727-1003
Facsimile:     (503) 727-1117


**THOMAS E. PEREZ**
Assistant Attorney General
**JONATHAN M. SMITH**
Chief
**LAURA COON**
Special Counsel
**R. JONAS GEISSLER**
jonas.geissler@usdoj.gov
**MICHELLE JONES**
michelle.jones2@usdoj.gov
Senior Trial Attorneys
Special Litigation Section
Civil Rights Division
United States Department of Justice
50 Pennsylvania Ave., NW
Washington, D.C.  20530
Telephone:     (202) 514-6255
Facsimile:     (202) 514-4883

          Attorneys for Plaintiff, United States

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,

v.

CITY OF PORTLAND,

                  Defendant.

Case No. 3:12-CV-02265-SI

MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENOR-DEFENDANT PORTLAND POLICE ASSOCIATION AND PROPOSED INTERVENOR-PLAINTIFF AMA COALITION'S FRCP 24 MOTIONS TO INTERVENE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iv

INTRODUCTION ................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

APPLICABLE LEGAL STANDARD ....................................................................................... 6

ARGUMENT ........................................................................................................................... 7

    I.    Intervention of Right ..................................................................................................... 7

    A.   PPA Is Not Entitled to Intervention of Right ............................................................... 7

        1.    PPA's Only Protectable Interest in This Litigation Is in the Remedy Phase. ............... 8

        a.    Merits Phase ............................................................................................................. 8

        b.    Remedy Phase ......................................................................................................... 10

        2.    This Litigation Does Not Impair PPA's Protected Interests in Its CBA ..................... 11

    B.   The AMA Coalition Is Not Entitled to Intervention of Right ...................................... 16

        1.    The AMA Coalition Does Not Have a Significant Protectable Interest That This Litigation Impairs. ............................................................................................................................. 17

        2.    The United States Adequately Represents Any Interest That the AMA Coalition Has .............. 19

    II.   Permissive Intervention ................................................................................................ 23

    A.   PPA Is Not Entitled to Permissive Intervention ......................................................... 23

    B.   The Court Should Not Grant AMA Permissive Intervention ....................................... 26

    III.   The Scope of Any Potential Intervention Should Be Limited and Clearly Defined ................. 28

CONCLUSION ...................................................................................................................... 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arakaki* v. *Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .................................................... 19

*Bivens* v. *Six Unknown Named Agents*, 403 U.S. 388 (1971) .................................................. 10, 24

*California ex rel. Lockyer* v. *U.S.*, 450 F.3d 436 (9th Cir. 2006) ..................................... 12, 13, 19

*Dawson* v. *Pastrick*, 600 F2.d 70, 75 (7th Cir. 1979) ............................................................ 29, 30

*Donnelly* v. *Glickman*, 159 F.3d 405 (9th Cir. 1998) ............................................................. passim

*Greene* v. *United States*, 996 F.2d 973 (9th Cir. 1993) ..................................................................... 8

*Local Number 93, Intern. Association of Firefighters, AFL-CIO C.L.C.* v. *City of Cleveland*, 478 U.S. 501 (1986) .................................................................. 29

*Monell* v. *City of New York Department of Social Svcs.*, 436 U.S. 658 (1978) ........................ 9, 24

*Officers for Justice* v. *Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982), *cert. denied, 459 U.S. 1217 (1983)* ......................................................... 29

*Orange* v. *Air Cal.*, 799 F.2d 535 (9th Cir.1986) ............................................................... 23

*Rean* v. *City of Portland*, 2009 WL 5066758 (D. Or., Dec. 16, 2009) ..................................... 9, 24

*So. Cal. Edison Co.* v. *Lynch*, 307 F.3d 794 (9th Cir. 2002) ........................................................ 29

*Spangler* v. *Pasadena City Board of Education*, 552 F.2d 1326 (9th Cir. 1977) ......................... 23

*United States* v. *City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ..................................... passim

*United States* v. *McInnes*, 556 F.2d 436 (9th Cir.1977) ............................................................. 29

*U.S.* v. *Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ........................................................ 7, 12

*U.S.* v. *Tennessee*, 260 F.3d 587 (6th Cir. 2001) ........................................................................ 12

## FEDERAL STATUTES

42 U.S.C. Sec. 1983 ........................................................................................................... 9

Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 (1994) ......... passim

Fed. R. Civ. P. 24 .............................................................................................................. 6

**STATE STATUTES**

Or. Rev. Stat. 243.662.................................................................................................................... 10

## <u>INTRODUCTION</u>

The United States opposes intervention by Proposed Intervenor-Defendant Portland Police Association ("PPA") and Proposed Intervenor-Plaintiff Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA Coalition") (collectively, "Movants").  For the reasons stated below, the Movants are entitled to neither intervention as of right nor permissive intervention because disposition of the action through the entry of the proposed Agreement ("Agreement") does not impair a significant protectable interest relating to the subject of the action, no asserted claims or defenses share a common question of law or fact with the main action, and intervention would unduly delay and prejudice the United States and the City of Portland (collectively, the "Parties").

PPA is not entitled to intervention of right because it fails to demonstrate that this litigation impairs any limited protectable interests it may have.  Rather, PPA's asserted interests are preserved in its separate collective bargaining process, which the Agreement does not inhibit. Moreover, PPA has no protected interest in disputing liability given that PPA and its members are not individually liable under the United States' cause of action.  Accordingly, PPA is not entitled to intervention of right.

Nor is PPA entitled to permissive intervention.  PPA presents no common claim or defense, but, instead, seeks to involve the Court in state law labor disputes.  PPA presents no basis for independent jurisdiction since the proposed Agreement preserves PPA's collective bargaining rights.  Finally, given that PPA seeks to set aside the entire Agreement to resolve allegations of unconstitutional conduct, PPA's permissive intervention also would unduly delay this matter and prejudice the Parties.  Therefore, the Court should not grant PPA permissive intervention.

**Page 1 -** **Memorandum in Opposition To Proposed Intervenor-Defendant Portland Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP 24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

The AMA Coalition also cannot meet the standards for intervention as of right or permissive intervention. While the AMA Coalition, too, may have a limited interest in the subject of this litigation, its current claims are outside the scope of the United States' Complaint and, as such, this case does not impede their separate litigation. To the extent that the AMA Coalition has a protectable interest in this case, the United States adequately protects that interest. Indeed, the United States has accommodated the AMA Coalition's interests in this action through extensive consultation and engagement during investigation and settlement negotiations. The Parties also will continue to accommodate and engage the AMA Coalition's interests through the Agreement's community oversight mechanisms. Lastly, because the AMA Coalition's intervention would unduly delay and prejudice the Parties by changing the entire scope of this litigation, the Court should not grant it permissive intervention.

Instead of intervention, the Court should permit the Movants to participate as *amici* during the life of this case, in addition to being allowed to present comments for the Court to consider in deciding whether the Agreement is fair, reasonable and adequate and should be entered as an Order.

In the alternative, if the Court deems intervention appropriate, the Court should strictly confine intervention to the remedy phase and to the scope of the respective Movant's limited protectable interest.[1] The Court should further make clear that, if a Movant is allowed to intervene, it may be subject to Court orders regarding the Agreement's implementation. Finally, neither Movant should be allowed to preclude or delay entry of the Agreement as a Court Order as to the United States and the City.

---

[1]    Should the Court grant limited intervention, further briefing regarding the scope of the intervention may be required, as PPA has only provided a "non-exhaustive list setting forth how certain provisions of the Settlement Agreement" allegedly violate its collective bargaining agreement.

**Page 2 -     Memorandum in Opposition To Proposed Intervenor-Defendant Portland Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP 24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

# BACKGROUND

On December 17, 2012, the United States filed a Complaint, pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 (1994) ("Section 14141"), alleging that the City, through the Portland Police Bureau ("PPB"), engages in a pattern or practice of using excessive force on individuals with actual or perceived mental illness in violation of the Fourth Amendment to the Constitution and other laws of the United States.  ECF # 1.  At the same time, the Parties filed a Joint Motion (ECF # 3) and a proposed Settlement Agreement ("Agreement") (ECF # 4-1), requesting that the Court enter an Order approving the proposed Agreement and place this matter on its inactive docket subject to recall to the active docket should enforcement of the Settlement Agreement become necessary.   At a status conference on December 21, 2012, the Court indicated it would conduct a fairness hearing to determine whether the Agreement is fair, reasonable, and adequate.[2]

The proposed Agreement is intended to resolve the United States' claims against the City and remedy the specific pattern or practice of unconstitutional conduct that the United States found.  Two organizations have moved separately to intervene in this matter:  (1) the PPA, a labor union that represents a bargaining unit of police officers, sergeants, criminalists, and detectives employed by the City; and (2) the AMA Coalition, an umbrella group of individuals and community organizations that seek greater police accountability and oversight of the PPB.

The United States' investigation began on June 6, 2011 and culminated in a Report of Findings ("Findings Letter") issued on September 13, 2012.  The Assistant Attorney General ("AAG") for the United States Department of Justice's Civil Rights Division ("DOJ") authorized

---

[2]    The United States has submitted for the Court's consideration a separate briefing and proposed Order that sets forth the United States' suggestions for how a fairness hearing should proceed.  *See* ECF #24.

**Page 3 -**    **Memorandum in Opposition To Proposed Intervenor-Defendant Portland Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP 24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

the investigation specifically to determine whether PPB engages in a pattern or practice of using excessive force, with an emphasis on the use of force against individuals with mental illness. *See* Attachment 1, Letter from AAG. DOJ did not open its investigation at the behest of any one individual or advocacy group, but rather received information and requests to investigate from a number of sources.

The investigation included an unprecedented level of interaction with community groups, individuals, criminal justice and mental health stakeholders, and PPB officers and their associations. DOJ representatives met with the PPA and community groups, including the AMA Coalition, to hear their concerns and suggestions for gathering facts relating to the investigation. DOJ conducted numerous in-person group and individual meetings, a town hall forum, and participated in officer "ride alongs." DOJ also maintained a toll-free number and dedicated email address available to anyone who wanted to provide comments, questions, and/or concerns.

On September 13, 2012, DOJ released its Findings Letter announcing that it had found reasonable cause to believe that PPB is engaging in a pattern or practice of using excessive force in encounters involving people with actual or perceived mental illness. Specifically, DOJ found that, in encounters with persons with actual or perceived mental illness, PPB officers: (1) too frequently use a higher level of force than necessary; (2) use electronic control weapons ("ECWs"), commonly referred to as "Tasers," in circumstances when such force is not justified, or deploy ECWs more times than necessary on an individual; and (3) use a higher degree of force than justified for low level offenses. *See* Attachment 2, Findings Letter at 2-3. DOJ further found that this pattern or practice of excessive force derives from systemic deficiencies in the City's policies, training, supervisory oversight, and officer accountability measures. *Id.* at 3.

On the same day the findings were released, DOJ and the City also released a Statement of Intent demonstrating the Parties' joint commitment to resolve the Findings through certain remedial measures in a court enforceable settlement agreement. *See* Attachment 3, Statement of Intent. This Statement of Intent announced that the Parties intended to reach a settlement that would prescribe changes in use of force; crisis intervention; early intervention system; misconduct investigation; and community outreach, and invited any interested parties to submit comments and suggestions for how the City's policies in these areas could be improved. *Id.*

Throughout the negotiation process, the United States continued to meet with interested stakeholders to elicit their concerns and ideas about how to remedy the problems. *See* ECF # 5, Decl. of Billy Williams and ECF # 6, Decl. of Clay Neal describing the Parties' robust community outreach efforts. Importantly, the United States interacted with a large number of interested stakeholders, including, but not limited to, the Movants. ECF # 5, Decl. of Billy Williams at 3. The Portland City Council ("City Council") also conducted multiple hearings, which DOJ attorneys observed either in person or via the internet, to solicit and record community input on the Agreement. ECF # 6, Decl. of Clay Neal at ¶¶ 10-11. Several members of the AMA Coalition presented testimony at these hearings. ECF # 21, Decl. of Dr. Leroy Haynes, Jr. at ¶¶ 15-16.

Ultimately, the Parties reached an agreement, which City Council unanimously approved, requiring the City to implement changes in PPB policy, training, supervisory oversight, community-based mental health services, crisis intervention, employee information systems, officer accountability, and community engagement and oversight. *See generally* ECF # 4-1. To ensure that the City accomplishes these reforms, the Agreement calls for an independent Compliance Officer and Community Liaison ("COCL") to:  synthesize data related to PPB's use

of force; report to the City Council, DOJ, and the public; and gather input from the public related to PPB's compliance with the Agreement.  ECF # 4-1 at ¶¶ 160-64.  The Agreement also incorporates numerous mechanisms to continue robust interaction among PPB, community members, and DOJ, including a Community Oversight Advisory Board ("COAB") for civil engagement and oversight of the reform process.  ECF # 4-1 at ¶¶ 141-155, 163-64.

## APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 24 provides for two forms of intervention: "Intervention of Right" and "Permissive Intervention."  Specifically, Rule 24 provides:

**(a)     Intervention of Right.**  On timely motion, the court must permit anyone to intervene who:

> **(1)** is given an unconditional right to intervene by a federal statute; or

> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**(b) Permissive Intervention**.

> **(1)** *In General.*  On timely motion, the court may permit anyone to intervene who:

> (A)is given a conditional right to intervene by a federal statute; or
> (B)has a claim or defense that shares with the main action a common question of law or fact.

> **(2)** *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24.  Accordingly, this rule, as interpreted by the binding legal authorities, provides the analytical framework for the Movants' proposed intervention.

## <u>ARGUMENT</u>

### I.    Intervention of Right

The Movants are not entitled to intervention of right.  An applicant seeking intervention as of right must show that:  (1) it has a "significant protectable interest" relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. *Donnelly* v. *Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).[3]  In determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations.  *Id.*  The party seeking to intervene bears the burden of showing that they have met all the requirements for intervention.  *U.S.* v. *Alisal Water Corp.*, 370 F.3d 915, 918 (9th Cir. 2004).

### A.    PPA Is Not Entitled to Intervention of Right

The Court should deny PPA's motion for intervention of right because PPA has failed to identify any impairment of a protectable interest.  The United States' Complaint does not allege that the PPA or its members are individually liable for PPB's alleged unconstitutional practices, so the PPA does not have an interest in the merits phase of the litigation.  The PPA does have a Collective Bargaining Agreement ("CBA") that gives it the right to negotiate with the City over matters that affect the salaries, wages, hours, and other conditions of employment of its member officers.  However, that interest in the remedy of this litigation is not impaired by the Agreement

---

[3]    Due to the Court's ruling at the December 21, 2012 hearing that any motions to intervene filed by January 8, 2013 will be deemed timely, the United States will not address the timeliness prong of the intervention analysis.  Also, because the Movants are not alleging that they have an unconditional right to intervene by a federal statute, the United States will focus its arguments on the requirements of Rule 24(a)(2).

because the Agreement does not alter the PPA's right to collectively bargain over these issues. Accordingly, PPA has failed to meet its burden of demonstrating an impairment of a protected interest on which to base intervention of right.

### 1.   PPA's Only Protectable Interest in This Litigation Is in the Remedy Phase.

PPA's only protectable interest in this litigation is in preserving its right to collectively bargain. An applicant has a "significant protectable interest" in an action if: (1) it asserts an interest that is protected under some law; and (2) there is a "relationship" between its legally protected interest and the plaintiff's claims. *Donnelly*, 159 F.3d at 409. An applicant generally satisfies the "relationship" requirement only if the resolution of the plaintiff's claims actually will affect the applicant. *Id*.; *Greene* v. *United States*, 996 F.2d 973, 976-78 (9th Cir. 1993) (holding that an applicant lacked a "significant protectable interest" in an action when the resolution of the plaintiff's claims would not affect the applicant directly). Courts frequently bifurcate their analysis of whether a potential intervenor has a protectable interest in the merits phase of the litigation and the liability phase. *See United States* v. *City of Los Angele*s, 288 F.3d 391, 398-400 (9th Cir. 2002); *Donnelly*, 159 F.3d at 409-410.

### a.   Merits Phase

PPA does not have a protectable interest in the merits phase of this case. Relying primarily on *City of Los Angele*s, PPA claims to have an interest in the merits phase because the United States "seeks injunctive relief against police officers who are members of the PPA and raises factual allegations that the member officers committed unconstitutional acts in the line of duty." PPA Mem. in Support of Mot. to Intervene ("PPA Mem.") at 10. In resolving this case, the City has not made any admissions regarding the allegations in the Complaint. Therefore, resolution of the litigation via the Agreement will not result in any findings pertaining to the

conduct of PPA officers.  Moreover, the liable parties in this action differ from those in *City of Los Angeles*.

In *City of Los Angeles*, the United States filed a complaint under Section 14141 against various defendants, including the City of Los Angeles, the Board of Police Commissioners of the City of Los Angeles, and the Los Angeles Police Department, alleging that LAPD officers had committed unconstitutional acts in the line of duty, and sought injunctive relief against all defendants.  *City of Los Angele*s, 288 F.3d at 396.  The same day the United States filed its complaint in that case, it also filed a proposed Consent Decree with the district court.  *Id*.

Unlike in *City of Los Angeles*, the United States has only filed a complaint against the City of Portland – not the City's policing agency – and the United States is only seeking injunctive relief from the City, not the PPB or its officers.  ECF # 1, Compl. ¶¶ 7, 22-24.  In fact, in the instant action, the City is the only entity that can be held responsible for constitutional violations committed by members of the PPB and is the sole juridical entity.  *See Rean* v. *City of Portland*, 2009 WL 5066758, *10 (D. Or., Dec. 16, 2009) (dismissing the Portland Police Bureau as a defendant in a § 1983 case upon finding that the City was the proper party to hold accountable for officers' actions).  Also, the United States did not attribute the constitutional violations it found to misconduct by individual PPB officers, but rather alleges that the violations result from the City's failure to provide adequate policies, training and supervision to PPB officers on the proper use, reporting, and investigation of force.

Further, the United States did not assert any alternative causes of action that would implicate PPA or it members.  This case is neither a *Monell*[4] claim asserting supervisory

---

[4]      *Monell* v. *City of New York Department of Soc. Svcs.*, 436 U.S. 658 (1978) (finding a municipality may be a person pursuant to 42 U.S.C. Sec. 1983, for the purposes of constitutional tort claims).

**Page 9 -      Memorandum in Opposition To Proposed Intervenor-Defendant Portland Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP 24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

liability, nor a *Bivens*[5] claim asserting individual liability.  In *City of Los Angeles*, the court was persuaded by the police union's argument that its member officers could potentially be held liable for the claims raised in the complaint.  *City of Los Angeles*, 288 F.3d at 399.  That is not the case here, so neither the PPA nor its members have a protected interest in the merits of the United States' claims.

### b.    Remedy Phase

A potential intervener does not have a protectable interest in the remedy unless it can demonstrate that the specific remedy that the plaintiff seeks implicates the potential intervenor's significant interest.  *Donnelly*, 159 F.3d at 410 (finding that proposed-intervenors did not have a significant protectable interest in the liability phase of the litigation after plaintiffs carefully amended their requested relief to exclude any remedy which would implicate the proposed intervenors' interest).

The PPA does have a protectable interest in the remedial phase of this litigation, but its interest is implicated in only a small number of the Agreement's provisions.  The PPA has the right to engage in collective bargaining on certain matters by virtue of Oregon law and its CBA.  *See* Or. Rev. Stat. § 243.662 (2012); ECF # 9-1, CBA.  Contrary to PPA's assertion, PPA does not have the right to engage in collective bargaining on every aspect of the Agreement.  Under state collective bargaining law, the PPA has the right to demand to bargain over mandatory subjects that represent a change in the status quo, such as "salaries, wages, hours and other conditions of employment."  ECF # 9-1, CBA 1.1.  The City retains "the exclusive right to exercise the customary functions of management including, but not limited to, directing the

---

[5]    *Bivens* v. *Six Unknown Named Agents*, 403 U.S. 388 (1971) (finding an implied cause of action against governmental defendants, as individuals).

**Page 10 -    Memorandum in Opposition To Proposed Intervenor-Defendant Portland Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP 24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

activities of the Bureau, determining the levels of service and methods of operation including . . . the right to hire, lay off, transfer and promote; to discipline or discharge for cause, to determine work schedules and assign work and any other such rights not specifically referred to in this Contract."  ECF # 9-1, CBA 2.1.  According to the CBA, "management rights . . .  are not subject to the Grievance Procedure."  *Id.*  PPA does not have the right, then, to collectively bargain over the vast majority of provisions in the Agreement.  PPA's motion fundamentally challenges the City's ability to engage in customary functions of management, such as revising policies and procedures in a way that brings an organization under its control, the PPB, in line with constitutional minima.

### 2. This Litigation Does Not Impair PPA's Protected Interests in Its CBA

To the extent that the PPA has a limited protectable interest in this litigation, the Agreement does not impair that interest because, unlike in *City of Los Angeles*, the Agreement preserves PPA's ability to collectively bargain, grieve, and arbitrate pursuant to the CBA.  The PPA contends that "the Settlement Agreement conflicts with provisions of the CBA and also infringes on state-law bargaining rights," and that the Agreement therefore impairs their protected interest.  PPA Mem. at 10.  The Agreement does neither.  While there are few provisions in the proposed Agreement that directly impact the salaries, wages, hours, and other conditions of employment of PPB officers, those provisions were specifically crafted in a manner that permits the City to engage in collective bargaining with the PPA regarding how those provisions are to be implemented.  PPA's limited protected interest in protecting the collective bargaining rights of its members is therefore not impaired by this Agreement.

The Ninth Circuit recognizes that even if a lawsuit may affect the proposed intervenor's interests, those interests are not practically impaired if the proposed intervenor has other means

of protecting their interest.  *See California ex rel. Lockyer* v. *U.S.*, 450 F.3d 436, 442 (9th Cir. 2006) (citing *Alisal Water Corp.*, 370 F.3d at 921) (holding that there was no practical impairment of proposed intervenor's interest where district court's order did not preclude the proposed intervenor from seeking enforcement of its judgment lien in another forum); *U.S.* v. *Tennessee*, 260 F.3d 587, 595 (6th Cir. 2001) (holding that there was no practical impairment of proposed intervenor's economic interest in a contract, which was the subject of the litigation, where the settlement agreement did not alter the proposed intervenor's ability to negotiate the terms of its contract).  Here, the PPA can protect its interest through the grievance and arbitration procedure established by the CBA, which is unimpeded by the Agreement.  ECF # 9-1, CBA 22.

Relying again on *City of Los Angeles*, PPA claims that its interest could be impaired by this litigation because the "conflict between the terms of the Settlement Agreement and the [CBA] will place opposing obligations on the City and likely result in breach of the [CBA] by the City."  PPA Mem. at 31.  While the consent decree at issue in *City of Los Angeles* directly impaired the police union's collective bargaining rights, this Agreement does not.  It is insufficient for PPA to argue that the remedies *could* go beyond their intended purpose and ultimately cause them harm when"[t]hat possibility is not inherent in any of the requested remedies."  *Donnelly*, 159 F.3d at 411.

The *City of Los Angeles* court found that the consent decree at issue in that case impaired the collective bargaining rights of the police union that sought to intervene in that case (the "Police League") because it gave the district court authority to override the officers' collective bargaining agreement.  The court pointed to the following aspects of the decree:

- The United States retained the right to file a motion to dissolve the consent decree and proceed with the suit if the City defendants and the Police League were unable to resolve a collective bargaining issue.

- The consent decree itself provided for an implementation process, part of which includes bargaining with the Police League over the specific provisions that are subject to bargaining.

- The consent decree altered the normal bargaining process.  Under the normal process, only California law governed, and any disputes would be resolved in California courts.  The consent decree provided that if the Police League and the City defendants were unable to agree on which provisions of the consent decree were subject to bargaining, the dispute would be resolved by the district court.  Moreover, if the City felt that the CBA would impair its ability to implement the consent decree, then the City could seek relief from the district court.

*City of Los Angeles*, 288 F.3d at 396.  *See also California ex rel. Lockyer*, 450 F.3d at 443 (recognizing that intervention was granted to the police union in *City of Los Angeles* "because the proposed consent decree in the case purported to give the district court authority to override the officers' collective bargaining agreement").  Ultimately, the court concluded that "the consent decree by its terms purports to give the district court the power, on the City's request, to override the Police League's bargaining rights under California law and require the City to implement disputed provisions of the consent decree."  *City of Los Angeles*, 288 F.3d at 396.

That is not the case here.  In contrast to the *City of Los Angeles* consent decree, this Agreement does not alter PPA's collective bargaining rights, nor does it empower the district court to override or preempt the collective bargaining process that is set forth in the CBA.

**Page 13 -**      **Memorandum in Opposition To Proposed Intervenor-Defendant Portland Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP 24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

Rather, this Agreement fully contemplates that the City will engage in collective bargaining with the PPA where required to do so, and promotes flexibility in the implementation of the Agreement through the following provisions:

    a.   Para 178(c):  [T]he Parties may agree jointly at any time to allow for additional time to resolve compliance issues.

    b.   Para 180:  The United States understands that many portions of this Agreement will take time to implement and that implementation may require changes to, among other things, collective bargaining agreements, the city code, and current city policies and will likely require additional revenue resources that have not yet been identified at the time this Agreement is executed. [6]

    c.   Para 187:  Nothing prohibits the Parties from engaging in any informal or formal discussions regarding this Agreement or the City's compliance with this Agreement.  The Parties may jointly stipulate to make changes, modifications, and amendments to this Agreement, which shall be effective, absent further action from the Court, 45 days after a joint motion has been filed with the Court.  Any modification of this Agreement by the City of Portland must be approved by the City Council of the City by written ordinance.

    d.   Para 189:  The PPB and the City agree to promptly notify DOJ if any term of this Agreement becomes subject to collective bargaining.  The City agrees to keep DOJ apprised of the status of the resulting negotiations.

---

[6]    While the Agreement acknowledges that implementation of the Agreement "*may*" require changes to various documents, including the CBA, there is no provision of the Agreement that *requires* the City to change the CBA, much less do so unilaterally.

These provisions ensure protection of PPA's interest in bargaining matters that it is entitled to bargain. PPA references Agreement ¶ 137,[7] which requires the City to create a disciplinary guide, as an example of a provision that cannot be implemented without violating the CBA. PPA Mem. at 28. However, this provision does not specify pertinent details such as how the discipline guide will be structured and what sanctions will correspond with particular types of misconduct. To the extent these matters, and others related to the implementation of a disciplinary guide, are appropriate for bargaining under the CBA, nothing in the Agreement prohibits the City from doing so. The same is true for any other provision in the Agreement that could potentially impact matters subject to collective bargaining.

One of the PPA's persistent arguments for how the Agreement has allegedly violated its collective bargaining rights is that "[t]he City has not provided the PPA with all drafts of the to-be-amended policies and procedures and has not provided the PPA with an opportunity to comment on the drafts." *See* PPA Mem. at 13-26. It is the United States' understanding that the City has begun to provide the PPA with drafts of policies that have been drafted, but the reason "all drafts" have not been provided is simple: those policies have yet to be drafted. As the policies and procedures are drafted, and to the extent they impact matters subject to collective bargaining, the City will provide copes to the PPA for the purpose of bargaining, as required by law. The City is well aware of its obligation to bargain certain subjects with the PPA, and the collective bargaining process is the appropriate vehicle to address the PPA's concerns related to

---

[7]        The entirety of Agreement ¶ 137 states: "Within 60 days of the Effective Date, PPB and the City shall develop and implement a discipline guide to ensure that discipline for sustained allegations of misconduct is based on the nature of the allegation and defined, consistent, mitigating and aggravating factors and to provide discipline that is reasonably predictable and consistent." Agreement ¶ 137.

**Page 15 -**       **Memorandum in Opposition To Proposed Intervenor-Defendant Portland Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP 24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

salaries, wages, hours and other conditions of employment that may arise from the implementation of this Agreement.

Moreover, unlike the consent decree at issue in *City of Los Angele*s, this Agreement does not contemplate active and ongoing court oversight and enforcement.  In fact, the Agreement embodies the Parties' request that this Court move this case to its inactive docket, only to be recalled in the event of persistent and sustained non-compliance.  ECF # 4-1 at ¶ 178.  This distinction underscores the fact that the Parties do not intend to use the Court as a vehicle to trump the PPA's right to engage in collective bargaining with the City on appropriate issues.

### B.    The AMA Coalition Is Not Entitled to Intervention of Right

The AMA Coalition is not entitled to intervention of right because it does not have a significant protectable interest that is impaired by this litigation, and the United States adequately represents any interest it may have.  The AMA Coalition's claims – i.e., allegations of racial profiling and discriminatory uses of force – differ from the United States' claims.  The AMA Coalition is free to bring a separate lawsuit for those allegations, but intervention in this case on the basis of those allegations is not appropriate.

1.    **The AMA Coalition Does Not Have a Significant Protectable Interest That This Litigation Impairs.**

The AMA Coalition contends that it has a significant protectable interest in this litigation because of its "history of public advocacy related to police reform on behalf of its members in Portland."  AMA Coalition Mem. at 12.  To assert a "significant protectable interest," however, there must be a "relationship" between AMA Coalition's legally protected interest and the United States' claims.  *Donnelly*, 159 F.3d at 409.  The crux of the AMA Coalition's intervention motion is that "DOJ has not addressed concerns of disparities in use of force based on race, as raised by the AMA Coalition and community members."  AMA Coalition Mem. at 13.

At the time DOJ opened this investigation, it was aware of the AMA Coalition's concerns that PPB used excessive force against minorities.  DOJ explored this allegation and reviewed data from the AMA Coalition regarding PPB's use of force over the past decade.  Section 14141, however, limits DOJ to obtaining injunctive relief.  In order to reach findings, DOJ must possess evidence of c*urrent and ongoing* violations of constitutional rights or federal law.  Thus, DOJ confined its investigation to an 18-month period and did not find evidence that PPB used excessive force disproportionately against minorities during this period.  Rather, DOJ found that the City, through the PPB, was engaged in a pattern or practice of using excessive force against people with actual or perceived mental illness, irrespective of their race.  *See* Attachment 2, Findings Letter, Pg. 37.  These findings are reflected in the Complaint and Agreement.

The AMA Coalition would like to expand the remedies in the Agreement to address violations that the United States has not alleged and seeks intervention to accomplish this purpose.  This it cannot do. *Donnelly*, 159 F.3d at 412 (internal citations omitted) ("The intervention rule is . . . not intended to allow the creation of whole new lawsuits by the

intervenors"). The United States cannot allege facts in a complaint without a good faith basis to do so, and the United States does not have a good faith basis to assert the allegations that the AMA Coalition would like it to allege. However, even if the Court were to find that the AMA Coalition has a significant protectable interest related to the subject matter of the litigation, it is doubtful that its interests are impaired by this litigation. As was true with the community intervenors in *City of Los Angeles*, this litigation does not prevent any individual from initiating suit against PPB officers who engage in unconstitutional practices or against the City defendants for engaging in unconstitutional patterns or practices. *City of Los Angeles*, 288 F.3d at 402. Nor does any aspect of the litigation prevent the community organizations from continuing to work on police reform. *Id.*

The AMA Coalition further contends that "the relief that DOJ seeks here could impair the relief available in any future litigation brought by the AMA Coalition to address disparities in use of force against minorities in Portland." AMA Coalition Mem. at 13. The only argument that the AMA Coalition makes in support of that contention is that "if AMA were to bring future legal action to address their remaining concerns . . . the PPB would have to implement additional changes, at additional costs." *Id.* Because the remedies DOJ seeks in this case do not have a direct bearing on racial profiling or on the use of force against minorities, it is unlikely that any relief the AMA Coalition would obtain in a potential lawsuit would conflict with the remedies obtained here. The fact that PPB may have to implement additional changes, at additional cost, does not to serve as an impediment to the AMA Coalition's ability to bring its own lawsuit focused on disparities in use of force against minorities.

### 2.    The United States Adequately Represents Any Interest that the AMA Coalition Has

The AMA Coalition cannot overcome the presumption that existing parties, namely the United States, will adequately represent its interests.  Courts consider three factors in determining the adequacy of representation:  (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.  *Arakaki* v. *Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).  The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties.  *Id.* (citing 7C Wright, Miller & Kane, § 1909, at 318 (1986)).  When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.  *Id.  See also California ex rel. Lockyer*, 450 F.3d 436, 443.  If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation.  *Id.* (citing 7C Wright, Miller & Kane, § 1909, at 318–19).

There is an additional presumption of adequacy when the government is acting on behalf of a constituency that it represents.  *Arakaki*, 324 F.3d at 1086 (citing *City of Los Angeles*, 288 F.3d at 401.)  In the absence of a "very compelling showing to the contrary," it is presumed that a state adequately represents its citizens when the applicant shares the same interest.  *Arakaki*, 324 F.3d at 1086 (citing 7C Wright, Miller & Kane, § 1909, at 332).  Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention. *Id*.

The United States, represented in this case by the U.S. Attorney's Office for the District of Oregon and the Civil Rights Division of the Department of Justice, adequately represents the AMA Coalition's interest in constitutional uses of force because the Agreement improves policies and practices for all uses of force. Any changes that the City makes to PPB's policies geared towards ensuring that PPB's use of force is constitutional will undoubtedly have collateral benefits for minority communities. Going forward, the Agreement calls for one revised policy for officers' use of force, not separate policies for the uses of force against people with mental illness and another for everyone else. Nor will the benefits that arise from making changes to officers' use of force training be limited to people with mental illness; nor the changes related to increased officer accountability and improved use of PPB's employee information system. These changes, and many others in the Agreement, will flow to the greater Portland community, including minorities, and result in a police force that operates within constitutional confines with respect to officers' use of force.

Also, despite the fact that DOJ did *not* make findings that the City engages in a pattern or practice of using excessive force against minorities, DOJ felt it was important to note in its Findings Letter the significant and persistent concerns it heard regarding the PPB's treatment of minorities. *See* Attachment 2, Findings Letter at 38-40. Moreover, while not going as far as the AMA Coalition would like, the Agreement includes provisions intended to help PPB improve its community policing efforts and reduce concerns of racial profiling or disparate treatment of minorities, such as requiring PPB to:

- develop and implement a CEO ("Community Engagement and Outreach") Plan, informed by public hearings and a reliable, comprehensive, and representative survey of members of the Portland community regarding their experiences with

**Page 20 -**   **Memorandum in Opposition To Proposed Intervenor-Defendant Portland Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP 24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

and perceptions of PPB's prior community outreach efforts and accountability efforts and where those efforts could be improved;

- continue to collect appropriate demographic data for each precinct so that the Precinct Commander, together with the COAB, may develop outreach and policing programs specifically tailored to the residents of the precincts;

- continue to require that officers document appropriate demographic data regarding the subjects of police encounters, including the race, age, sex and perceived mental health status of the subject, and provide such information to the Human Rights Commission's Community Police Relations Committee ("CPRC") to contribute to their analysis of community concerns regarding discriminatory policing;

- consider enhancements to PPB's data collection efforts, and report on its efforts to enhance data collection to the DOJ by no later than December 31, 2013, and quarterly thereafter; and

- issue a publicly available PPB Annual Report, which shall include a summary of its problem-solving and community policing activities and hold at least one meeting in each precinct area and at a City Council meeting, annually, to present its Annual Report and to educate the community about its efforts in community policing in regard to the use of force, and about PPB's policies and laws governing pedestrian stops, stops and detentions, and biased-free policing, including a civilian's responsibilities and freedoms in such encounters.

ECF # 4-1 at ¶¶ 146-50.

**Page 21 -    Memorandum in Opposition To Proposed Intervenor-Defendant Portland
Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP
24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

Although the AMA Coalition voices dissatisfaction with the degree of community oversight provided for in the Agreement, AMA Coalition Mem. at 9-10, the Agreement establishes a mechanism for an unprecedented level of community oversight over its implementation.  Specifically, the Agreement requires the City to establish the COAB to: (a)  independently assess the implementation of this Agreement; (b) make recommendations to the Parties and the COCL on additional actions; (c) advise the Chief and the Police Commissioner on strategies to improve community relations; (d) provide the community with information on the Agreement and its implementation; (e) contribute to the development and implementation of the CEO Plan; and (f) receive public comments and concerns.  ECF # 4-1 at ¶ 141.  Membership on the COAB will be comprised of 15 voting members, five advisory members, and the COCL.  *Id.*  The Agreement requires that the COAB's membership come from a reasonably broad spectrum of the community and specifies that five of its members will be directly selected by the public, while the other members are chosen by elected officials and chairs of the Human Rights Commission and Portland Commission on Disability.  ECF # 4-1 at ¶ 142.

Further, the COCL is required to prepare quarterly, written, public reports detailing PPB's compliance with, and implementation of, each substantive provision of this Agreement, and must provide copies of all reports to the Parties and the COAB in draft form and allow the Parties and the COAB thirty days to informally comment on the reports.  ECF # 4-1 at ¶¶ 162-64.  Significantly, the COCL is obligated to consider not just the Parties' responses to its draft report, but also the COAB's response, and make appropriate changes, if any, before issuing a final version of the report.  *Id.*  This is a significant amount of a power for a community

oversight board to wield and, if selected by their peers, members of the AMA Coalition could potentially sit on this board.

While the Agreement may differ in certain respects from the AMA Coalition's ideal remedy, one cannot ignore that this Agreement is a product of negotiation and compromise. There should be no doubt, however, that at every juncture, the United States has represented the AMA Coalitions' interest, even where its ability to do so was constrained by statutory authority.

## II.    Permissive Intervention

An applicant who seeks permissive intervention must prove that it meets three threshold requirements:  (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Donnelly*, 159 F.3d at 412.[8]  Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention.  *Id*. (citing *Orange* v. *Air Cal.*, 799 F.2d 535, 539 (9th Cir.1986) ("Permissive intervention is committed to the broad discretion of the district court."); *Spangler* v. *Pasadena City Board of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (identifying nonexclusive discretionary factors that the district court may consider when deciding whether to grant permissive intervention)).  In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties.  *Donnelly*, 159 F.3d at 412.

### A.    PPA Is Not Entitled to Permissive Intervention

This Court should deny PPA's motion to intervene based on permissive intervention because PPA asserts no claim or defense that shares a question of law or fact with this litigation

---

[8]    Because no potential intervenor has alleged that there is a conditional right to intervene by a federal statute, the United States focuses its arguments on Rule 24(b)(1)(B).

and PPA's intervention will unduly delay or prejudice the Parties' rights.  PPA's proposed

Answer raises affirmative defenses for failure to state claims for which relief can be granted,

estoppels, and illegality.  ECF # 9-3 at 4.  The United States brought its Section 14141

Complaint against the City, the sole juridical entity who could be named in a pattern or practice

lawsuit alleging that the City's policies, practices, and procedures result in unconstitutional

excessive use of force.  *Rean*, *supra*, 2009 WL 5066758, *10 (D. Or., Dec. 16, 2009).  The

United States did not bring alternative claims of liability against PPA or its members.  *Monell*,

*supra*, 436 U.S. 658; *Bivens*, 403 U.S. 388.

     Even if this Court were to find that PPA raises a defense that shares a question of law or

fact with this litigation, the Court should deny their intervention because it would unduly delay

and prejudice the Parties in this action.  The United States and the City have engaged in

exhaustive settlement negotiations to reach the Agreement and invited participation and input

from the community, including the PPA, at multiple junctures.  As described above, the Parties

first published a Statement of Intent to enter an agreement on September 13, 2012.  ECF #3,

Statement of Intent.  Later that day, the United States met with leadership from the PPA to

discuss its findings and the statement of intent, and again conducted conference calls with the

PPA on October 9, 2012.  *See* ECF # 5, Decl. of Billy Williams at ¶ 11.

     On October 26, 2012, the Parties announced that they had reached a proposed settlement

agreement for the City Council's consideration, released a copy of the proposed settlement

agreement to the public, and invited any interested parties to provide their feedback or share their

concerns.  *Id*. at ¶ 12.  On November 1, 2012, the City Council held a hearing to solicit public

testimony on the terms of the Settlement Agreement.  *Id*. at ¶ 14.  DOJ attorneys both attended

the City Council hearing in person and watched over the internet via live streaming, and listened

**Page 24 -**    **Memorandum in Opposition To Proposed Intervenor-Defendant Portland
Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP
24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

to approximately three hours of public testimony.  *Id.*  No representative of the police union testified at the City Council hearing, nor did they contact DOJ to express any specific concerns they had with the proposed settlement.[9]  The Parties amended the Agreement based on broad community input.  *See* ECF # 5, Decl. of Billy Williams at ¶ 14.

On November 8, 2012, the City Council received proposed amendments to the Agreement from the City Attorney's office and held another hearing on the matter.  *Id.* at ¶ 15.  The proposed amendments were directly related to the comments received from the community regarding Agreement provisions on use of force policies, training, officer accountability and community oversight and engagement.  The City Council heard approximately two hours of public testimony and received additional written comments from the public.  *Id.*  Again, the PPA neglected to provide any comments or suggestions regarding the proposed Agreement to either City Council or to the United States.[10]  The City Council voted unanimously to approve the Agreement on November 14, 2012.  *Id.* at ¶ 16.

The PPA now seeks to intervene to change the Agreement at this late juncture, after choosing to forgo multiple opportunities to comment on it.  If the Court makes any changes to the Agreement, the City would need City Council approval before signing the Agreement – assuming the City would agree to any such changes.  Since the Agreement was signed and presented to the Court on December 17, 2012, newly elected officials, including a new Mayor and new city council representatives have been sworn in.  It is foreseeable that the newly elected

---

[9]     City of Portland, Office of the City Auditor's Office, Council Meeting Recordings from Nov. 1, 2012 PM Session, Parts 6-8, available at http://efiles.portlandoregon.gov/webdrawer.dll/webdrawer/rec/5247759/ (last visited Jan. 22, 2013).

[10]    City of Portland, Office of the City Auditor's Office, Council Meeting Recordings from Nov. 8, 2012 PM Session, Parts 9-11, available at http://efiles.portlandoregon.gov/webdrawer.dll/webdrawer/rec/5254862/ (last visited Jan. 22, 2013).

City Council would want to hold its own hearings on a revised Agreement, which would be subject to lengthy procedures for approval as an ordinance, further delaying the Agreement's implementation.  Moreover, there is no guarantee that the newly elected representatives would authorize the City to enter any agreement with the United States to resolve its claims.  Without an agreement, the Parties would be forced into costly and time-consuming litigation, forestalling indefinitely a remedy for the people of Portland who have been deprived of their constitutional rights.  This delay and prejudice could have easily been avoided if the PPA had taken advantage of the many opportunities to participate in the comment process while it was ongoing, rather than waiting until after City Council approved the Agreement, after it was signed by the Parties, and after it was filed in Federal District Court.

Because PPA's intervention would cause the Parties significant delay and prejudice, its motion for permissive intervention should be denied.

### B.    The Court Should Not Grant AMA Permissive Intervention

The AMA Coalition's proposed complaint-in-intervention does not allege, as the United States' does, that the City, through the PPB, uses unconstitutional force against individuals with mental illness, or otherwise, and therefore does not share a common question of law or fact with the underlying action.  *Donnelly*, 159 F.3d at 412.  Instead, the AMA Coalition's allegations consist of a history of the AMA Coalition's efforts to reform the PPB (*see* AMA Coalition Compl. ¶¶ 7-12), a history of the United States' investigation of the PPB (*id*. ¶¶ 13-19), and a list of the AMA Coalitions' concerns with the Agreement (*id*. ¶¶ 13-19).  Thus, nowhere in the AMA Coalition's complaint does it actually allege facts or violations similar to what the United States has alleged.

Further, the AMA Coalition asserts, as its sole cause of action, that its proposed complaint is filed pursuant to 42 U.S.C. § 14141.  Section 14141 gives the Attorney General sole authority to bring a civil action "for or in the name of the United States" when the Attorney General has reasonable cause to believe that a governmental authority is engaged in "a pattern or practice of conduct by law enforcement officers" that deprives persons of their constitutional rights.  42 U.S.C. § 14141(a)-(b).  Section 14141 does not contain a private right of action, and the AMA Coalition has thus not asserted a cognizable claim.

Even if the Court were to conclude that the AMA Coalition shares a common question of law or fact with the main action, intervention by the AMA Coalition would unduly delay and prejudice the Parties.  The Parties have provided the AMA Coalition, along with many other interested stakeholders, a plethora of opportunities to provide their opinions about this Agreement, and many of the AMA Coalition's suggestions were incorporated into the Agreement.  The AMA Coalition will have another opportunity to relay any concerns it may have about the Agreement to the Court at the fairness hearing.  Further, the Agreement establishes a role for interested community members to engage in continued oversight over the implementation of the Agreement through membership on the COAB, and the AMA Coalition's members are eligible to serve on this board.  Moreover, through *amicus* status, the AMA Coalition would be able to achieve its primary objective of expressing to the Court any ongoing concerns regarding the Agreement throughout its implementation.  With the multiple avenues that the AMA Coalition has to be heard and present its issues to the Court, adding them as a party to this litigation would be duplicative and would unnecessarily complicate this litigation. Because the AMA Coalition does not assert a claim or defense that shares a common question of law or fact with this action, and because their intervention will surely delay or prejudice the

parties' rights, their motion to intervene should be denied, but they should be allowed to participate in this action through *amicus* status.

### III.    The Scope of Any Potential Intervention Should Be Limited and Clearly Defined

To the extent that this Court grants either of the Movants' motions for intervention, the Court should make clear that their intervention is limited to specified protectable interests in the remedy phase. [11]  For the PPA, their interest should be limited to ensuring that their collective bargaining rights are not trampled through the implementation and enforcement of this Agreement.  Practically speaking, that means the PPA's interests are best protected by this Court refraining from issuing orders that would require the City to circumvent PPA's collective bargaining rights and instead allowing matters that should be resolved through collective bargaining be resolved that way.  Thus, the relief available to PPA as an intervenor should be limited to obtaining a Court order that requires the City to engage in collective bargaining with the PPA.  To the extent the City disagrees that the matter at issue is subject to collective bargaining, the PPA should be required to follow the procedures set forth in its CBA to resolve grievances.  In no event should this Court involve itself in resolving state labor disputes between the City and the PPA.  The AMA Coalition's, interest is limited to ensuring that the Agreement is fair, adequate and reasonable.  These interests are best addressed through participation at the Fairness hearing and throughout the Agreement's implementation through *amicus* status. Further, the Court should make clear that even if allowed to intervene, entry of the Agreement will not hinge on the Movants' consent.  "While an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have

---

[11]    Should the Court granted limited intervention, further briefing regarding the scope of the intervention may be required, as PPA has only provided a "non-exhaustive list setting forth how certain provisions of the Settlement Agreement" PPA claims to violate its collective bargaining agreement.

**Page 28 -    Memorandum in Opposition To Proposed Intervenor-Defendant Portland Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP 24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

power to block the decree merely by withholding its consent." *Local No. 93*, 478 U.S. at 529-30

(holding that the district court properly entered the consent decree over the union-intervenor's

objection when the consent decree "did not bind [the Union] to do or not to do anything . . . and

imposes  no legal duties or obligations on the Union at all").  *See also So. Cal. Edison Co.* v.

*Lynch*, 307 F.3d 794, 806-807 (9th Cir. 2002) (holding the intervenor's consent "was not a

necessary precursor to the district court's accepting the Stipulated Judgment.").  And, while

parties who choose to resolve litigation through settlement may not dispose of an intervenor's

legitimate claims, the intervenor cannot preclude other parties from settling their own disputes

and thereby withdrawing from litigation." *Local No. 93*, 478 U.S. at 529.

Indeed, public policy favors settlement, particularly in complex litigation such as this.

*Officers for Justice* v. *Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459

U.S. 1217 (1983) ("[I]t must not be overlooked that voluntary conciliation and settlement are the

preferred means of dispute resolution."); *United States* v. *McInnes*, 556 F.2d 436, 441 (9th

Cir.1977) ("We are committed to the rule that the law favors and encourages compromise

settlements").  A consent decree is primarily a means by which parties settle their disputes

without having to bear the financial and other costs of litigating.  *Local No. 93, Intern. Ass'n of*

*Firefighters, AFL-CIO C.L.C.* v. *City of Cleveland*, 478 U.S. 501, 528-29 (1986).  When a

district court is asked to approve a settlement, it need not reach and resolve the merits of the

claims prior to granting approval.  *Dawson* v. *Pastrick*, 600 F2.d 70, 75 (7th Cir. 1979).  Rather,

it is ordinarily sufficient if the court determines whether the settlement agreement is appropriate

under the particular facts of the case.  *Id*.

Lastly, the Court should make clear that to the extent that either Movant becomes a party

to this litigation, it will be bound by court orders and subject to contempt proceedings for failure

**Page 29 -**     **Memorandum in Opposition To Proposed Intervenor-Defendant Portland**
**Police Association and Proposed Intervenor-Plaintiff AMA Coalition's FRCP**
**24 Motions To Intervene**; *United States v. City of Portland*, **3:12-CV-02265-SI**

to comply.  *Dawson*, 600 F2.d at 75 ("An intervenor is bound by any order entered after his joining the litigation, and he may appeal from any appealable order unless intervention has been limited to forbid it.").  For example, although the Agreement does not currently obligate the PPA to do or refrain from doing anything, to the extent PPA becomes a party to this litigation, the Court could issue orders to facilitate the Agreement's implementation, such as requiring the PPA to timely and in good faith collectively bargain with the City.

**CONCLUSION**

For the reasons described herein, the Court should deny all motions to intervene, but permit the Movants to participate through *amicus* status.  In the alternative, the Court should limit intervention to the remedy phase and to specific protectable interests and should not permit any intervenor to delay entry of the Agreement.

DATED this 22nd day of January, 2013.

Respectfully submitted,

| | |
|---|---|
| S. AMANDA MARSHALL | THOMAS E. PEREZ |
| United States Attorney | Assistant Attorney General |
| District of Oregon | Civil Rights Division |
| | JONATHAN M. SMITH |
| | Chief, Special Litigation Section |
| | |
| | |
| */s/ Adrian L. Brown* | */s/ Laura L. Coon* |
| ADRIAN L. BROWN | LAURA L. COON |
| BILLY J. WILLIAMS | Special Counsel |
| Assistant U.S. Attorneys | */s/ R. Jonas Geissler* |
| | R. JONAS GEISSLER |
| | */s/ Michelle A. Jones* |
| | MICHELLE A. JONES |
| | Senior Trial Attorneys |