J. ASHLEE ALBIES     OSB #051846
E-mail: ashlee@civilrightspdx.com
CREIGHTON & ROSE, PC
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon  97204
Phone:  (503) 221-1792
Fax:      (503) 223-1516

SHAUNA CURPHEY, OSB # 063063
E-mail: scurphey@curpheylaw.com
Curphey & Badger, P.A.
520 SW 6th Avenue, Suite 1040
Portland, OR 97204
Phone: (503) 241-2848
*Of Attorneys for Intervener-Plaintiff AMA Coalition for Justice and Police Reform*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PORTLAND<br><br>Defendant. | Case No. 3:12-cv-02265-SI<br><br>**REPLY TO DEFENDANT CITY OF PORTLAND'S RESPONSE IN SUPPORT OF CONDITIONAL GRANT OF AMA COALITION'S MOTION TO INTERVENE AND TO PLAINTIFF UNITED STATES' OPPOSITION TO AMA COALITION'S MOTION TO INTERVENE** |

The Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA Coalition") hereby submits its Reply to Defendant City of Portland's Response in Support of Conditional Grant of the AMA Coalition's Motion to Intervene, Dkt. #27, and to Plaintiff United

States' Memorandum in Opposition to the AMA Coalition's Motion to Intervene, Dkt. #25. Both the City of Portland, Def. Resp. at pp. 3-4, and the United States, Pl. Resp., at pp. 16-23, oppose the AMA Coalition's Motion to the extent it seeks to intervene as of right. The AMA Coalition maintains, however, that it may intervene as of right in the remedial phase, to address the adequacy of the proposed Settlement Agreement.

Contrary to the City's contention that the AMA Coalition seeks "to persuade this Court to reject the proposed Settlement Agreement," Def. Resp. at p.1, the AMA Coalition seeks intervenor status to ensure the Settlement is as effective as possible in addressing the Plaintiff's excessive force findings, and that it is stringently enforced. Moreover, should the Court order the parties to revise or renegotiate aspects of the Settlement, the AMA Coalition wants to be a party to those negotiations to ensure the community voice is present during that process. The AMA Coalition is best suited for this role, with its over 10 years of experience with and commitment to police oversight and accountability in Portland, as well as its role as a consistent advocate for reform of the Portland Police Bureau.

The City and the United States diverge on whether the Court should grant the AMA Coalition's Motion for Permissive Intervention. The City does not object to the AMA Coalition's motion for permissive intervention in the remedial phase. Def. Resp., at p. 6. The United States, however, opposes the AMA Coalition's motion for permissive intervention and argues that the Court should, at most, grant the Coalition *amicus* status. Pl. Resp., at pp. 26-28. The AMA Coalition contends that it is entitled to intervention as of right in the remedial phase, that permissive intervention in the remedial phase is also appropriate, and that *amicus* status is insufficient to adequately address its interests, as explained more fully below.

Finally, both the City and the United States note that an intervenor can neither prevent settlement of an action, nor dictate settlement terms. The AMA Coalition does not seek to do either. Instead, if granted intervenor status, the AMA Coalition will continue its advocacy and oversight role to ensure the Settlement Agreement is the most effective outcome, informed by a deep history of community engagement on the police issues that form the basis of this case.

**II.   The AMA Coalition Meets the Requirements to Intervene as of Right in This Action.**

    **A.   The AMA Coalition Has a Significant, Protectable Interest in the Remedial Phase of This Litigation.**

An applicant-intervenor demonstrates a significant protectable interest if: 1) the interest is protected by law and 2) there is a relationship between the legally protected interest and the plaintiff's claims. *Southwest Ctr. for Biological Diversity*, 268 F.3d 810, 818 (9th Cir. 2001). Here, neither the City nor the United States argue that the AMA Coalition does not have an interest protected by law. Instead, they both contend that the AMA Coalition's interest is not sufficiently related to the United States' claim under 42 U.S.C. § 14141 that the Portland Police Bureau (PPB) "engages in law enforcement practices that result in excessive force against individuals with actual or perceived mental illness in Portland." Compl., Dkt. #1, at ¶ 19.

The City contends that the AMA Coalition's Proposed Complaint in Intervention is too broad and that it fails to allege sufficient facts. Def. Resp., at p. 3. The City's argument, however, overlooks that the Proposed Complaint in Intervention relies on the DOJ's Letter of Findings regarding race, and its proposed remedy with regard to those findings. Proposed Compl., Dkt. #19, Ex. 1, at ¶ 14. In addition, the Proposed Complaint describes the AMA Coalition's longstanding efforts to reform the PPB in order to contextualize the AMA's recent efforts to ensure the Settlement Agreement adequately addresses the DOJ's findings. *Id.* at ¶ 16-18, 20-22.

Moreover, the AMA Coalition's cause of action incorporates those allegations by reference. *Id.* at ¶ 23. Thus, the AMA Coalition's allegations are not only factually sufficient; they are also closely intertwined with the DOJ's Findings that led to lawsuit now before the Court.

The United States, for its part, similarly argues that the AMA Coalition's interest is not sufficiently related to the United States' claims because the AMA Coalition seeks to intervene, in part, to include remedies that address race. Pl. Resp. at p. 17. The United States cites *Donnelly v. Glickman* in support of this argument. In that case, the court held that male intervenors' claims that the defendant subjected them to discriminatory treatment were not related to the female plaintiffs' claims that they were subjected to a hostile work environment, nor did any of the relief sought by the plaintiffs implicate the defendants' rights. 159 F.3d 405, 409-411 (9th Cir. 1998). Here, unlike in *Donnelly*, the relief sought by the United States' implicates the AMA Coalition's interest based on its public advocacy for reform of the PPB, regarding many of the same issues addressed in the current case. *See United States v. City of Los Angeles*, 288 F.3d 391, 402 n.5 (9th Cir. 2002). For decades, the AMA Coalition has pushed for policy changes to address excessive use of force, inadequate training and oversight, flawed training methodologies, and the City's "byzantine" "self-defeating oversight system." DOJ Findings Letter, Dkt. #21-8, p. 27.

The AMA Coalition does not, as the United States suggests, seek to insert entirely new, unrelated claims in this litigation. Rather, the parties have already included provisions in the proposed Settlement Agreement that specifically address race; The Agreement directs the PPB to "continue to require that officers document appropriate demographic data regarding the subjects of police encounters." Agmt., Dkt #4-1, p. 58. Every police use of force, reasonable or unreasonable, must begin with an initial encounter. Data collected by the PPB demonstrates a

disproportionate rate of stops of African-Americans, and the proposed Agreement seeks to address these concerns. DOJ Letter, Dkt. #21-8, p. 38. Thus, the AMA Coalition seeks to intervene to ensure that the proposed remedies adequately address the issues already raised by the DOJ's own investigation and findings and *already included* in the parties' proposed Settlement. AMA Mot., Dkt. #20, at p. 14-15; Prop. Compl., at ¶ 14, 20.

### B.  As a Practical Matter, the Present Litigation Impairs the AMA Coalition's Interest Because It Affects Its Ability to Obtain Further Reform in Areas Addressed in the Proposed Agreement.

The United States argues that the present suit does not impair the AMA Coalition's interest in police reform because individuals may still initiate suit to address unconstitutional police practices and, at any rate, the AMA Coalition can continue to work on police reform issues. This argument ignores the reality of police reform efforts, which, by the DOJ's own description, entail "lengthy procedures for approval of an ordinance" and/or "costly and time-consuming litigation." Pl. Resp. p. 26. It also overlooks the long history of police reform efforts in Portland, in which the AMA Coalition has played a leading role.

Moreover, the challenges of impact litigation – suits brought to bring systemic change to government policy – and the high evidentiary burden for attaining injunctive relief, have often proved preclusive. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Where litigation has been successful against the PPB – whether by settlement or a plaintiff's verdict – it has rarely been accompanied by policy change. For the majority of those cases the City does not even go so far as to discipline the individual officer. If it had, the DOJ investigation and its findings would likely not have been necessary.

To date, the numerous lawsuits and continuous reform efforts have done little to address

the PPB's systematic problems. As the DOJ's own Letter of Findings states, "rarely [is] the use of force found to be out of policy, even where it is clearly excessive." DOJ Letter, Dkt. #21-8, p. 27. Moreover, the DOJ found that the "PPB's force review process . . . is so complex that the progress of any given complaint through the stages of review is both difficult and lengthy" and "the layers of review have provided escape valves inappropriately eviscerating full administrative investigation and corrective action for some complaints." *Id.* at 27. For example, the 2010 Police Oversight Stakeholder Committee effort, referenced in the AMA Coalition's memo at pp. 2-3, spent months gaining consensus on measures to improve Portland's Police Oversight system, yet most of those recommendations were not implemented. *Id.* The DOJ described the oversight system as "byzantine" and "self-defeating," *id.*, yet the Agreement leaves it largely intact. Thus, the United States' argument that the AMA Coalition can continue reform efforts fails to consider that this suit is an unprecedented opportunity to effect change in a system that has resisted it for years, and will not likely welcome additional reforms once the Settlement is in the implementation stage.

Moreover, of the specific remedies listed in the proposed Settlement, it is doubtful if the AMA Coalition, or any other individual or group, would have standing to challenge its provisions. For example, the AMA Coalition recommends that training officers should be screened out if they have been called in for counseling because the Employee Information System (EIS) has indicated a pattern and practice of inappropriate behavior, AMA 11/13/12 Recommendations, Dkt. #21-11, p. 3, and that such information may be used for counseling or discipline, AMA 9/27/12 Recommendations, Dkt. #21-10, p. 2, in addition to the Proposed Agreement's existing prohibition for officers who have been disciplined for misconduct. In

addition, the Proposed Agreement states that trainer selection "will take into account if a civil judgment has been rendered against the City in the last five years based on the officer's use of force." Agmt, Dkt. #4-1, ¶ 84. This falls far short of the AMA Coalition recommendation, as, for example, civil trials may end with a judgment, a jury award or a settlement, all of which should be taken into account, but the AMA Coalition would not likely have standing to challenge this provision. Similarly, the AMA Coalition seeks to strengthen the oversight system by allowing civilians affected by police action to participate in some manner in Police Review Board Hearings. AMA 9/27/12 Recommendations, Dkt. #21-10, p. 1.[1]

The United States additionally argues, "the remedies the DOJ seeks in this case do not have a direct bearing on racial profiling or on the use of force against minorities." Pl. Resp. at p. 18. This argument overlooks the fact that the proposed Settlement Agreement affects a wide range of PPB policies, procedures and training, most of which are generally applicable, and not directly related solely to mental health, including the Use of Force policy, ECW policy, Use of Force Supervisory Investigations and Reports, Compliance Audits related to Use of Force, Training, Employee Information System, Officer Accountability, and Community Engagement. Agmt, Dkt. #4-1, ¶¶ 66-67, 69, 71-84, 86, 115-139, 146-148, 168-169. In fact, the United States' own motion admits that "changes the City makes to PPB's policies" will affect minority

---

[1] Concerns about the current Police Review Board system, untouched by the Agreement, are evidenced by the recent demotion of Capt. Todd Wyatt, who was found to have inappropriately touched female employees and escalated an off-duty road-rage confrontation. Against the recommendation of termination by the Police Review Board, Chief Reese demoted and assigned Wyatt to supervise sex assault and human trafficking investigators; in response to criticism, Wyatt has since been re-reassigned to the Chief's office. *See* Bernstein, Maxine, *Portland police chief finds Todd Wyatt can be effective as a lieutenant 'with close supervision,' his demotion letter says,* The Oregonian (Jan. 23, 2013)(available at
http://www.oregonlive.com/portland/index.ssf/2013/01/portland_police_chief_finds_to.html); *see also* Bernstein, Maxine, *Board urged firing of 'untruthful' Portland police captain, records show,* The Oregonian (Jan. 12, 2013)(available at
http://www.oregonlive.com/portland/index.ssf/2013/01/board_urged_firing_of_untruthf.html).

PAGE 7 - REPLY TO DEF CITY'S RESPONSE ISO CONDITIONAL GRANT OF AMA COALITION'S MOT TO INTERVENE AND TO PLTF U.S.'S OPP TO AMA COALITION'S MOT TO INTERVENE

communities, and "the greater Portland community." Pl. Resp. at p. 20.[2] Once the City institutes these policies and procedures, they will not only add to the complexity of an already-byzantine system of police oversight, they will become entrenched, such that efforts by the AMA Coalition to improve them will be impaired as a practical matter. *See Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006); *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988).

This case represents a unique opportunity for the PPB to change its policies, training and practices to address the systemic deficiencies identified by the DOJ investigation. This Agreement will have a profound and lasting impact on the community. It is critical the AMA Coalition be a voice at the table to ensure the changes are as effective as possible, and that their implementation is informed by the history of reform efforts in Portland.

### C.   The United States Does Not Adequately Represent the AMA Coalition's Interests.

Both the City and the United States argue that the United States adequately represents the AMA Coalition's interests. The City cites *United States v. Los Angeles* in support of its argument. 288 F.3d at 402. Def. Resp. at p. 4. In that case, the court held that the government adequately represented the interests of community intervenors because the intervenors did not challenge any portion of the proposed consent decree and instead merely sought its strict enforcement. *Id.* Here, however, unlike the intervenors in *Los Angeles*, the AMA Coalition takes issue with the adequacy of the remedies proposed in the Settlement Agreement negotiated by the United States.

The United States' reliance on *Arakaki v. Cayetano* is similarly unavailing. 324 F.3d

---

[2]   Importantly, a federal court is not necessarily barred from entering a consent decree merely because the decree provides "broader relief than the court could have awarded after trial." *Local Number 93, International Assoc. of Firefighters v. Cleveland*, 478 U.S. 501, 525 (1986).

1078, 1086 (9th Cir. 2003). Pl. Resp. at p. 19. In *Arakaki*, the court found that the proposed intervenor failed to demonstrate it would offer any necessary elements to the proceeding that other parties would neglect in part because a successful intervenor stated that it would raise some of the proposed intervenor's arguments. *Id.* Here, on the other hand, the AMA Coalition is the only community group that has sought to intervene. Moreover, in *Arakaki*, the record before the court demonstrated that the parties were capable and willing to make all of the proposed intervenor's arguments, *id.* at 1087, whereas here the AMA Coalition has demonstrated numerous instances in which it has disagreed with the DOJ regarding the proposed remedies. In fact, the United States' own statements belie its argument that it will adequately represent the AMA Coalition's interests, as it concedes that the proposed Agreement does "not go[] as far as the AMA Coalition would like." Pl. Resp. at p. 20. *See Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011) (finding government agency did not adequately represent the proposed intervenor's interest because the record showed it was willing to compromise with the opposing party, despite the proposed intervenor's protests).

    The AMA Coalition's position remains that the proposed changes to the Use of Force policies and Taser policies do not go far enough to reflect what is necessary to ensure all Portland residents are protected from excessive force. For example, the Agreement contemplates that the systemic problems with the PPB result from "deficiencies in policy, training, and supervision," DOJ Letter, Dkt. #21-8, p. 3, rather than individual officers. The Agreement proposes changes to training that do not directly involve community groups or stakeholders, those who are uniquely positioned to inform the police on how to best approach challenging interactions. Likewise, the proposed changes to the EIS system do not contain enough oversight

or triggers to ensure the system "catches" serious violations. Also, the Agreement fails to address the "48-hour rule," which allows officers involved in shootings 48 hours before giving a statement, nor does it grant the Independent Police Review Division explicit authority to review officer-involved shootings. Finally, the Community Oversight Advisory Body ("COAB") has no authority to recommend changes directly to the Court or the parties, and its recommendations can be ignored by the Compliance Officer Community Liaison ("COCL"). As such, should the parties be directed to continue to negotiate this Agreement, the AMA Coalition should be granted intervenor status to participate in those negotiations.

If the DOJ truly represented the AMA Coalition's interests, it would have brought the AMA Coalition into the negotiations early on in the process. Instead, the AMA Coalition was notified, along with the general public, during the press conference where the DOJ announced its findings, at the *same time* it announced a "statement of intent" by the parties regarding what the settlement agreement would contain. Thus, by the time the proposed settlement agreement was first announced on October 26, 2012, it was essentially a *fait accompli*. While the DOJ and the City made some changes in response to the public's input, the AMA Coalition was never informed as to how or why some recommendations were considered and others were ignored. During the nine weeks between the original announcement and the City Council adoption of the Proposed Settlement Agreement, the AMA Coalition was not privy to the negotiations between the parties.

Here, despite the AMA Coalition's continuous attempts to engage regarding its specific recommendations, the DOJ and the City, without explanation, did not implement them in the proposed Agreement. Specifically, while the DOJ touts the COAB as an unprecedented level of

community oversight, the COAB lacks any authority to ensure implementation beyond recommendations to the COCL. This fundamental difference, as well as the other areas of disagreement described above, establishes that the DOJ does not adequately represent the AMA Coalition's interests.

## II. The AMA Coalition Meets the Requirements for Permissive Intervention and Its Participation Will Benefit the Proceedings.

### A. The AMA Coalition Has Not Raised a New Claim and Therefore Need Not Assert an Independent Basis for Jurisdiction.

The City, Def. Resp. at p. 5-6, and the United States, Pl. Resp. at p. 27, both argue that the AMA Coalition has not asserted a cognizable claim because it cites to 42 U.S.C. § 14141 in its proposed Complaint in Intervention, which does not provide for a private cause of action. "The Ninth Circuit holds, [however] that the requirement for independent jurisdictional grounds does not apply in federal question cases when the proposed intervenor is not raising new state-law claims." 6 Moore's Federal Practice - Civil § 24.22 (citing *Freedom From Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843-844 (9th Cir. 2011) ("Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away."); *see also Local Number 93, International Assoc. of Firefighters v. Cleveland*, 478 U.S. 501, 507 (1986) (intervenor's complaint did not allege any causes of action or assert any claims against either party).

The AMA Coalition's Complaint in Intervention cites 42 U.S.C. § 14141 to demonstrate that the Coalition does not seek to add new claims, but rather seeks to intervene in the remedial phase of this case to ensure the Agreement is as effective as possible, and is fully and forcefully implemented. The AMA Coalition can best do this as an intervenor in this case, thereby gaining

a seat at the table for any future negotiations or discussion regarding the Agreement.[3]

The United States further argues that the AMA Coalition's proposed Complaint in Intervention does not share issues of law or fact with the underlying action because its allegation includes "a list of the AMA Coalition's concerns with the Agreement." Pl. Resp. at p. 26. The fairness of the Settlement Agreement, however, is the very issue presently before the Court, and specifically in the remedial portion of the case. Even the City agrees that the AMA Coalition's input is appropriate during the remedial phase. Thus, the United States' argument that the AMA Coalition claim lacks a common question of law or fact is not well-founded.

### B. Anything Less Than Intervenor Status Is Insufficient to Protect the AMA Coalition's Interests in This Case.

Both the City, Def. Resp. at 7-8, and the United States, Pl. Resp. at p. 28-29, correctly contend that an intervenor may not block the other parties' settlement of a case merely by withholding its consent. *See e.g., Local Number 93, Int'l Assoc. of Firefighters*, 478 U.S. 501, 529 (1986). The City also correctly points out that a court "may not require the parties to accept a settlement to which they have not agreed." Def. Resp. at p. 8 (citing *Evans v. Jeff D.*, 475 U.S. 717 at 726-27 (1986)).[4]

A court, however, may order parties to negotiate towards settlement and persuade the parties regarding the proper terms. *See, e.g., Local Number 93,, Int'l Assoc. of Firefighters*, 478 U.S. at 507-508 (describing the trial court's actions leading up to the settlement agreement

---

[3] To the extent that the Court finds, however, that the AMA Coalition must assert an independent, cognizable cause of action for permissive intervention, it asks that the Court allow it to amend its proposed Complaint in Intervention to assert 42 U.S.C. § 1983 as the basis for its cause of action. *See Bresgal v. Brock*, 637 F. Supp. 271, 272 (D. Or. 1985) ("The Ninth Circuit has generally endorsed liberal construction in favor of applications for intervention.") (citations omitted).

[4] The City also argues the AMA Coalition "is not a legal entity capable of suing or being sued." Def's Resp., at p. 7. This is simply not so. As an unincorporated association, the AMA Coalition may sue to enforce a substantive right. *See* Fed. R. Civ. P. 17(b)(3)(A).

---
eventually challenged on appeal). In addition, a court may order modification of a consent decree over the objections of a party after the decree has been entered. *See, e.g., Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 437 (1976). Moreover, an intervenor may appeal a trial court's adoption of a consent decree. *See, e.g., Local Number 93, , Int'l Assoc. of Firefighters*, 478 U.S. at 513; *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 802 (9th Cir. 2002).

The City and the United States both argue that the AMA Coalition's participation in the Fairness hearing is sufficient to address the AMA Coalition's concerns. Def's Resp. at p. 6, Pltf's Resp. at p. 27. This is not so. Should the Court consider the concerns voiced during the Fairness Hearing important enough to order the parties to continue to negotiate to address those concerns, the AMA Coalition needs intervenor status to be privy to those negotiations, for the many reasons outlined above.

The United States also argues that the AMA Coalition's participation should be limited to *amicus* status. Pl. Resp. at p. 27. This too is insufficient to address the AMA Coalition's concerns, as it will not allow for the AMA Coalition to be part of any future or continuing negotiations or to be directly involved with implementation and oversight. Likewise, the United States' argument that the AMA Coalition can simply join the COAB to address its concerns ignores the AMA Coalition's criticisms of that proposed body, and its lack of any true oversight authority.

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For the foregoing reasons, the AMA Coalition respectfully requests that this Court grant its Motion to Intervene as of Right, or, in the alternative, grant its Motion for Permissive Intervention, to allow it to intervene in the remedial phase of this case.

DATED: February 5, 2013

Respectfully Submitted,

                                    *s/ J. Ashlee Albies*
J. Ashlee Albies, OSB # 051846
ashlee@civilrightspdx.com
Shauna Curphey, OSB # 063063
scurphey@curpheylaw.com