ANIL S. KARIA, OSB No. 063902
E-mail: anil@miketlaw.com
Tedesco Law Group
3021 NE Broadway
Portland, OR 97232
Telephone: 866-697-6015
Facsimile: 503-210-9847
    Attorneys for Intervener-Defendant
    Portland Police Association

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>    Plaintiff,<br><br>    v.<br><br>**THE CITY OF PORTLAND,**<br>    Defendant.<br>_____ | Civil Case No. 3:12-CV-02265-SI<br><br>**REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE ASSOCIATION'S FRCP 24 MOTION TO INTERVENE** |

TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................1

    A. The PPA has the right to intervene on the merits of this action ......................................2

        1. The United States' attempt to distinguish *City of Los Angeles* is meritless ................2

        2. The City's attempt to distinguish *City of Los Angeles* is likewise without merit........2

    B. The PPA's protected interest in the remedy may, as a practical matter, be impaired by this action. ...................................................................................................................6

    C. The PPA is entitled to permissive intervention..............................................................11

    D. The PPA's participation in a fairness hearing is insufficient for the PPA to protect its interests ...........................................................................................................................14

III. CONCLUSION....................................................................................................................16

I. <u>INTRODUCTION.</u>

Plaintiff United States of America ("United States") and Defendant City of Portland ("Portland") try with all their might to distinguish this case from *U.S. v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002), in arguing that the Portland Police Association ("PPA") either has no basis to intervene or should be granted mere *amicus curie* status as an intervener. However, the Ninth Circuit's opinion in *City of Los Angeles*, a case that is squarely on point, yields but one outcome—the PPA has the right to intervene as a party to both the merits and remedial phases of this action.

II. <u>ARGUMENT.</u>

Although neither the United States' nor the City's objections to the PPA's motion to intervene are a model of clarity, their arguments can be boiled down to the following key points:

A. Both the United States and the City assert that the PPA has no right to intervene on the merits, but for different reasons. (United States Mem. in Opp'n to PPA's Mot. to Intervene ("U.S. Mem.") at 7-8, Docket No 25; City Mem. in Opp'n to PPA's Mot. to Intervene ("City Mem.") at 4-5, Docket No. 26).

B. While the City does not argue against the PPA's right to intervene at the remedial stage, (City Mem. at 8-9), the United States does argue against such intervention on the basis that the PPA can pursue other tracks of litigation, (U.S. Mem. at 10-16).

C. Both the United States and the City assert that the PPA cannot intervene permissively on the merits (U.S. Mem. at 23-25; City Mem. at 9-11), and the United States further asserts that the PPA cannot intervene permissively at the remedial phase of this action (U.S. Mem. at 23-25).

D. The United States and the City argue that if the Court grants the PPA intervener status, it should confer mere *amicus curie* status to the PPA. (U.S. Mem. at 28-30; City Mem. at 11-13).

Each argument fails.

Page 1 –  REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
    ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

A. The PPA has the right to intervene on the merits of this action.

1. The United States' attempt to distinguish *City of Los Angeles* is meritless.

In an attempt to distinguish this case from *City of Los Angeles*, the United States asserts that the PPA does not have a protectable interest in the merits of this litigation because the United States' Complaint does not name the Portland Police Bureau or individual police officers as defendants. (U.S. Mem. at 9). This attempted distinction is without merit. For the Ninth Circuit, the focus is not who is named as a defendant in the action, but rather what claims are asserted in the complaint. Indeed, in *City of Los Angeles*, the Ninth Circuit found that the police union had a protectable interest in the merits of the litigation because the "complaint [sought] injunctive relief against its member officers and raised factual allegations that member officers engaged in unconstitutional acts in the line of duty." 288 F.3d at 399. Individual officers were not named in the complaint in that case, nor was it of any import that the City of Los Angeles and its police department were named as defendants. *See id.*

The same is true here. The United States seeks injunctive relief against Portland police officers who are members of the PPA, (Compl. at ¶¶ 4, 11, 21-24), and raises factual allegations that member officers committed unconstitutional acts in the line of duty, (Compl. at ¶¶ 1, 8-11, 16, 17, 19, 20). Further, the Proposed Settlement Agreement compels the Portland Police Bureau and its officers—who are members of the PPA—to act. (*See, e.g.,* Proposed Settlement Agreement at ¶ 190, Docket No. 4-1). This is more than a sufficient basis for establishing the PPA's protectable interest in the merits of this litigation.

2. The City's attempt to distinguish *City of Los Angeles* is likewise without merit.

The City seeks the same end, but advances different arguments as its means. First, for the City, the PPA has no right to intervene on the merits because the lawsuit has been restructured by

Page 2 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
            ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

virtue of the Proposed Settlement Agreement. (City Mem. at 4-5). In other words, the City suggests that the Proposed Settlement Agreement obviates any need to prove liability on the merits of the United States' constitutional claims. (*See id.*). In support of its position, the City quotes the following passage from *City of Los Angeles*:

> When the potential scope of an action is narrowed by amended pleadings or court orders, or <u>when an existing party expressly and unequivocally disclaims the right to seek certain remedies, the court may consider the case as restructured</u> rather than on the original pleadings in ruling on a motion to intervene. For example, in *Donnelly*, we held that male Forest Service employees had no interest in the remedy phase of an employment discrimination suit brought by female Forest Service employees because the female plaintiffs expressly and unequivocally waived any right to seek remedies that might impact male employees, such as class-based wage or promotion relief. 159 F.3d at 410-11.

(City Mem. at 4, quoting *City of Los Angeles*, 288 F.3d at 399) (emphasis added by the City).

However, the City fails to set forth the Ninth Circuit's complete analysis:

> <u>[I]f restructuring of the action has not yet been accomplished, or if a party's disclaimer of certain remedies is contingent rather than unequivocal, then the district court is not free to consider the potential for issue reduction when determining whether a putative intervener has a protectable interest in the merits of the action.</u> *See Forest Conservation Council*, 66 F.3d at 1497 n. 9 (disregarding speculative statements made during oral argument on appeal about a willingness to narrow the scope of relief sought); *see also Brennan v. Conn. State UAW Cmty. Action Program Council (CAP)*, 60 F.R.D. 626, 631 (D. Conn. 1973) ("Whether an applicant's interest would be impaired by disposition of a lawsuit depends on the range of dispositions open to a court about which an applicant is entitled to be concerned, not the specific disposition the original parties are seeking to have a court approve.").
>
> Here, the case had not yet been restructured because the consent decree had not been entered. Further, the United States did not unequivocally and completely disclaim the remedies sought in its complaint against the Police League's member officers: it argued only that the officers would not be subject to injunctive relief if the district court approved the consent decree. In addition, the consent decree itself contains a provision allowing the United States, in

Page 3 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
          ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

> certain circumstances, to seek to dissolve the consent decree and litigate the merits of the action on the basis of the original complaint. Thus, when the district court denied the motion to intervene, the Police League still had a protectable interest in the merits of the litigation. The district court erred in concluding to the contrary, in anticipation of future approval of the proposed consent decree.

*City of Los Angeles*, 288 F.3d at 399 (emphasis added).

The flaw in the City's logic is that this Court has not approved the Proposed Settlement Agreement and, therefore, this case has not yet been restructured. Further, the United States' disclaimer of certain remedies in this case is contingent rather than unequivocal. The Proposed Settlement Agreement provides:

> The joint motion shall request that the Court enter the Agreement pursuant to Federal Rule of Civil Procedure 41(a)(2), and <u>conditionally dismiss the complaint</u> in this action with prejudice, while retaining jurisdiction to enforce the Agreement. <u>If the Court does not retain jurisdiction to enforce the Agreement, the Agreement shall be void</u>.

(Proposed Settlement Agreement at ¶¶ 178, Docket No. 4-1) (emphasis added). Just as it did in *City of Los Angeles*, the United States has "not unequivocally and completely disclaim[ed] the remedies sought in its complaint against the [PPA's] member officers: it argue[s] only that the officers would not be subject to injunctive relief if the district court approve[s] the [Proposed Settlement Agreement]." 288 F.3d at 399.

In addition, just as in *City of Los Angeles*, the United States retains the right to seek enforcement proceedings before this Court should the City of Portland fail to comply with its obligations under the Proposed Settlement Agreement:

> The United States, however, reserves its right to seek enforcement of the provisions of this Agreement if it determines that PPB or the City have failed to fully comply with any provision of this Agreement.

Page 4 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

(Proposed Settlement Agreement at ¶ 179, Docket No. 4-1). The agreement continues:

> If mediation fails to resolve the concerns, the United States . . . may file a Motion . . . to enforce compliance with the terms of this Agreement or to seek a Declaration of the meaning of this agreement.

(Proposed Settlement Agreement at ¶ 186, Docket No. 4-1). Thus, the City overreaches in assuming that this case has been restructured; all liability has not been extinguished and the PPA has an interest in defending against the merits of the United States' constitutional claims.

This point is not insignificant. Indeed, the Ninth Circuit in *City of Los Angeles* reversed the district court for this very reason:

> The district court found that the Police League did not have a protectable interest in the merits because the proposed consent decree's injunctive provisions pertained only to the City defendants and because approval of the proposed decree would obviate the need to prove liability. However, in reaching these conclusions the court impermissibly assumed that it would in fact approve the proposed consent decree. No hearing had yet been held on the consent decree and it was unknown whether the district court would enter decree at all or, if so, in the form then proposed.

*Id*. at 399. No hearing has been held on the Proposed Settlement Agreement; it is at best speculative whether this Court will approve the agreement at this early stage of the proceedings.

The City's second argument against the PPA's right to intervene on the merits centers on the City's assertion that it can adequately represent the PPA's members against the merits of the United States' Complaint. (City Mem. at 5-8). Applying the Ninth Circuit's three-part standard makes clear that the City is mistaken. The City will not "undoubtedly make all the [PPA's] arguments." Nor is the City "capable and willing" to make the PPA's argument that its members have not engaged in a pattern or practice of unconstitutional acts. *City of Los Angeles*, 288 F.3d at 398. In seeking to settle this action, the City has proclaimed that it will not rebut either the merits of the United States' constitutional claims or the injunctive relief sought by the United

Page 5 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

States against the PPA's members. Rather, the City will sidestep the question of liability altogether and instead agree to the relief sought by the United States. (City Mem. at 7). Finally, in defending its members against the United States' claims, the PPA will offer "necessary elements to the proceedings" on the merits of the constitutional claims "that other parties would neglect." *City of Los Angeles*, 288 F.3d at 398. Simply put, the City and the PPA have completely different interests with respect to the merits of the United States' claims.

      B.    <u>The PPA's protected interest in the remedy may, as a practical matter, be impaired by this action.</u>

The City concedes that the PPA has a right to intervene in the remedial stage of this action. (City Mem. at 8-9). While the United States concedes that the PPA has a protectable interest in the remedy given the collective bargaining implications of the Proposed Settlement Agreement, the United States argues that the PPA has alternate means to protect that interest either through the grievance procedure established by the collective bargaining agreement or through the collective bargaining process under the Public Employees Collective Bargaining Act ("PECBA"). (U.S. Mem. at 11-16). For the United States, the PPA's interests are not impaired by this action; as a result, the PPA has no right to intervene on the remedy. The United States' position is without merit for a number of reasons.

<u>First</u>, the four-factor test for determining intervention as of right does not contemplate whether the intervener has alternate means to protect its interest. *See City of Los Angeles*, 288 F.3d at 397 (setting forth test). Indeed, the cases cited by the United States do not alter this fact. Rather, the cases merely mention, in passing, that an intervener's interests might not be impaired if the court establishes and administers a separate process for protecting those interests. (United States Mem. at 11-12).

Page 6 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
            ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

For example, in *California ex rel. Lockyer v. U.S.*, the court considered—and granted—motions to intervene as of right by pro-life health care providers in a case brought by the State of California against the United States that challenged the constitutionality of certain federal appropriations tied to abortion procedures. 450 F.3d 436, 439 (9th Cir. 2006). The court stated the general proposition that, "Even if this lawsuit would *affect* the proposed intervenors' interests, their interests might not be *impaired* if they have 'other means' to protect them." *Id.* at 442 (citing *Alisal Water Corp.*, 370 F.3d 915, 921) (9th Cir. 2004)) (emphasis in original).

However, in granting intervener status to the movants, the *Lockyer* court distinguished *Alisal* and determined that the proposed interveners had no adequate, alternate means to protect their interests. As the court explained, "In *Alisal,* we held that litigation would not impair the creditor's interests *because the district court had set up a separate process* for approving claims against the debtor that was sufficient to protect the proposed intervenor's interests." *Id.* (emphasis added).

Unlike the separate claims approval process that was established and administered by the court in *Alisal*, this Court has not established an alternate, Court-monitored process. Contrary to the United States' assertion, neither the grievance procedure in the PPA collective bargaining agreement nor the PECBA collective bargaining process are suitable substitutes for this Court directly protecting the PPA's interests because the Court lacks jurisdiction over those alternate avenues. The grievance procedure in the PPA's collective bargaining agreement calls for final and binding arbitration before a private arbitrator, a process that exists outside the purview of this Court. (Karia Decl. at Ex. A, p. 14, Docket No. 9-1). Similarly, the administration of the PECBA collective bargaining process would occur not before this Court, but before the Oregon

Employment Relations Board ("ERB"), which has exclusive jurisdiction over the PECBA. *See Ahern v. Ore. Public Employees Union*, 329 Or. 428, 434-35 (1999).

Further, neither the grievance procedure nor the PECBA collective bargaining process provide the PPA with the ability to defend its members against the merits of the United States' constitutional claims and the injunctive relief sought in the Complaint. Those substantive issues cannot be litigated in any grievance under the PPA collective bargaining agreement, which is limited in scope to violations of the collective bargaining agreement itself. (Karia Decl. at Ex. A, p. 14, Docket No. 9-1). Nor can the constitutional claims be litigated before the ERB, which only has jurisdiction over collective bargaining disputes, not constitutional claims. *See generally* ORS 243.672, 243.676.

Likewise, the United States' reliance on *U.S. v. Tennessee*, 260 F.3d 587 (6th Cir. 2001), is misplaced. In *Tennessee*, a non-profit service provider for people with disabilities moved to intervene in actions brought by United States that challenged the State of Tennessee's treatment of persons with mental disabilities. 260 F.3d at 591. There, the movant did not challenge the terms of the proposed settlement agreements, nor did it contend that the agreements violated its rights. Rather, the movants simply asserted a financial interest as a beneficiary of the funding provisions of agreements. As the court put it, the movant's "claimed interest does not concern the constitutional and statutory violations alleged in the litigation, but rather how much its members get paid for providing services." *Id.* at 595. Thus, the court determined that intervention was unwarranted because the movant could simply negotiate with the State of Tennessee over how much its members would be paid for providing services. *Id.*

Page 8 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
            ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

In stark contrast, the PPA has claimed an interest in both the merits of the dispute, including the constitutional claims alleged by the United States against its members, and in the terms of the settlement agreement itself, which impair the PPA's collective bargaining rights.

In effect, by arguing against intervention in this case, the United States invites multiple tracks of litigation. The United States would have the City enter into the Proposed Settlement Agreement, and then defend the terms of the agreement against the PPA's grievance before a private arbitrator or against an unfair labor practice complaint before the ERB. This runs counter to the Ninth Circuit's prescription against "future litigation involving related issues," in favor of a "liberal policy" of intervention that "serves both efficient resolution of issues and broadened access to courts." *City of Los Angeles*, 288 F.3d at 397-98.

Second, the Proposed Settlement Agreement does not adequately protect the PPA's collective bargaining rights. The United States attempts to distinguish this case from *City of Los Angeles* on the basis that that the Proposed Settlement Agreement in this case "could" cause the PPA harm, but there is no evidence that it will usurp the PPA's collective bargaining rights, as the court found in *City of Los Angeles*. (U.S. Mem. at 12; emphasis added). The United States misconstrues the standard. Intervention is warranted even if the Proposed Settlement Agreement could conflict with the collective bargaining agreement. The mere threat of injury to the contractual rights of a union, embodied in a collective bargaining agreement, is sufficient to serve as a basis for intervention. *See City of Los Angeles*, 288 F.3d at 400 ("To the extent that [the consent decree] contains or *might* contain provisions that contradict terms of the officers' [collective bargaining agreement], the Police League has an interest.") (emphasis added); *U.S. v. City of Hialeah*, 140 F.3d 968, 982 (11th Cir. 1998) ("objectors [are] not required to prove with certainty that particular employees would lose contractual benefits"); *see also Lockyer*, 450 F.3d

Page 9 –  REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
    ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

at 442 ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case *may, as a practical matter*, affect it.") (emphasis added).

In any event, the Proposed Settlement Agreement does conflict with the collective bargaining agreement and Oregon collective bargaining law, as explained at length in the PPA's opening motion to intervene. (PPA Mem. in Supp. of Mot. to Intervene at 7-27, Docket No. 8). For the PPA, the core breach of its collective bargaining rights is that the United States is requiring the City to modify its policies, practices, and procedures, which has significant collective bargaining ramifications. And the City has already agreed to implement those changes before broaching, let alone satisfying, its collective bargaining obligations with the PPA. (*See id.* at 7). In other words, the City has already promised a predetermined outcome to the United States, rendering the collective bargaining process with the PPA an exercise in futility.

Further, contrary to the United States' assertions, the Proposed Settlement Agreement does not protect the PPA's collective bargaining interests. (U.S. Mem. at 13-15). Paragraph 180 of the Proposed Settlement Agreement merely acknowledges that the agreement "may require changes" to collective bargaining agreements, and paragraph 189 simply states that the United States will be "notified" by the City of the matters that the <u>City</u> believes are subject to bargaining. (Proposed Settlement Agreement at ¶¶ 180, 189, Docket No. 4-1). Those paragraphs of the Proposed Settlement Agreement do not reflect any right of the PPA to modify the agreement itself in response to the PPA's grievance or the PPA's collective bargaining interests. Rather, the paragraphs set forth a *fait accompli*—the PPA must conform its collective bargaining agreement to the terms of the Proposed Settlement Agreement.

Page 10 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
          ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

The impairment of the PPA's collective bargaining rights does not stop there. The Proposed Settlement Agreement contains a dispute resolution mechanism at paragraph 186 that empowers either the United States or the City to seek enforcement of the Proposed Settlement Agreement from this Court. Ultimately, this Court would have "equitable powers to devise an appropriate remedy or modification of this Agreement to accomplish the same result as that intended by the portion of the Agreement with which noncompliance was found, provided the Parties cannot reach agreement on the remedy or modification." (Proposed Settlement Agreement at ¶ 186, Docket No. 4-1). Just as in *City of Los Angeles*, the Proposed Settlement Agreement "by its terms purports to give the district court the power, on the City's request, to override the [PPA's] bargaining rights . . . and require the City to implement disputed provisions of the [Proposed Settlement Agreement]." 288 F.3d at 401. Thus, the PPA's "continuing ability to protect and enforce its contract provisions will be impaired or impeded by the [Proposed Settlement Agreement]." *Id.*

    C.    <u>The PPA is entitled to permissive intervention.</u>

The United States' and the City's arguments against the PPA permissively intervening in this action are also unavailing. Both the United States and the City assert that the PPA seeks to enlarge the scope of the litigation and this Court's jurisdiction by alleging affirmative defenses in its Proposed Answer. (U.S. Mem. at 24; City Mem. at 10-11). They are incorrect. At the outset, the Ninth Circuit has explained that, "In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant" because "the identity of the parties is irrelevant and the district court's jurisdiction is grounded in the federal question(s) raised by the plaintiff." *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843-44 (9th Cir. 2011). Further, where the district court exercises federal jurisdiction and there are no

counterclaims or cross-claims, the intervener "is not required to make any further showing that his intervention is supported by independent jurisdictional grounds." *Id.* Here, the PPA is seeking to intervene as a defendant; it has not invoked this Court's jurisdiction as a plaintiff, cross-claimant, or third-party plaintiff. Rather, the PPA has simply relied on the United States' federal question jurisdiction invoked under 42 U.S.C. § 14141.

In addition, there is a more fundamental problem with the United States' and City's position. The PPA's affirmative defenses are not claims for relief. *See Geithner*, 644 F.3d at 844 ("Where the proposed intervenor in a federal-question case brings no new *claims*, the jurisdictional concern drops away.") (emphasis added; citations omitted). The PPA's affirmative defenses are simply that—defenses. The PPA's first affirmative defense is that the United States has failed to state claims for relief. (PPA Proposed Answer at ¶ 27, Docket No. 9-3). That defense is not a claim; it is a defense against claims. Likewise, the PPA's second and third affirmative defenses of estoppel and illegality are defenses against the Proposed Settlement Agreement. (PPA Proposed Answer at ¶¶ 28-31). They are not claims for relief against the United States or the City. The United States and the City cannot escape the simple fact that, "An affirmative defense is a defense, not a claim for affirmative relief." *Doyle v. Ill. Cent. R.R. Co.*, No. CV F 08–0971, 2008 WL 4838556, at *3 (E.D. Cal. Nov. 5, 2008).

The United States levies an additional, unavailing argument against permissive intervention. The United States asserts that the PPA had an adequate opportunity to comment on the Proposed Settlement Agreement during informal meetings with the United States, during City Council meetings, and during telephone conferences with the public. In effect, the United States argues that because the PPA had a chance to speak up about its collective bargaining concerns but chose not to, it would be prejudicial and an undue delay to now allow the PPA to intervene.

Page 12 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
            ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

(U.S. Mem. at 24-26).

The United States' assertion strains credulity. Having the opportunity to merely comment during public forums is not a suitable substitute for intervener status. *See City of Los Angeles*, 288 F.3d at 400 ("amicus status is insufficient to protect the Police League's rights because such status does not allow the Police League to raise issues or arguments formally and gives it no right of appeal").

Further, the PPA has acted with all due haste in asserting its collective bargaining rights, which the City and United States have ignored. The United States and the City excluded the PPA from their settlement negotiations, notwithstanding the collective bargaining issues surrounding the Proposed Settlement Agreement. When the PPA learned of the possibility that the United States and the City may enter into a settlement agreement, the PPA notified the City in writing in October 2012 of its concerns over collective bargaining ramifications. The United States and the City continued to exclude the PPA from their discussions that resulted in the Proposed Settlement Agreement. (Supp. Decl. of Anil S. Karia in Supp. of PPA Reply Mem. ("Supp. Karia Decl.") at ¶3 and Ex. A). As soon as the City approved the Proposed Settlement Agreement with the United States in November 2012, the PPA asserted its collective bargaining rights by filing a grievance. (Karia Decl. at Ex. B, Docket No. 9-2). The City has denied the PPA's grievance, and the parties have continued to process the grievance to arbitration. (Supp. Karia Decl. at ¶ 4.). In fact, the day after the United States instituted this action in December 2012, the PPA moved to intervene to uphold its collective bargaining interests. (Docket No. 7). The United States and the City oppose the PPA's motion. (Docket Nos. 25, 26). That the United States and City chose to exclude the PPA from their negotiations over the Proposed Settlement Agreement does not now give them a basis to argue against permissive intervention, especially where the PPA has unequivocally

Page 13 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
            ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

asserted it collective bargaining rights.

> D. <u>The PPA's participation in a fairness hearing is insufficient for the PPA to protect its interests.</u>

Perhaps the most peculiar argument levied by the United States and City is that even if allowed to intervene, the PPA should hold no more than *amicus curie* status and should only be allowed to participate in a fairness hearing. (U.S. Mem. at 28; City Mem. at 11-12). The intervention standards do not allow for second-class parties.

Once intervener status is granted, the PPA "enter[s] the suit with the status of original parties." *U.S. v. Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1981); *see Alvarado v. J.C. Penney Co., Inc.*, 997 F.2d 803, 805 (10th Cir. 1993) ("When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party."); *see also* 7C Wright, Miller & Kane, *Federal Practice & Procedure* § 1920 (3d ed. 2010) (and cases cited therein).

Further, as in *City of Los Angeles*, "amicus status is insufficient to protect the [PPA's] rights because such status does not allow the [PPA] to raise issues or arguments formally and gives it no right of appeal." 288 F.3d at 400. Notwithstanding this clear statement from the Ninth Circuit, the City asserts that, "the Ninth Circuit in *U.S. v. City of Los Angeles*, held that an objecting union's participation in a fairness hearing was adequate to protect its rights." (City Mem. at 11). That is not true; nowhere in its opinion does the Ninth Circuit state that proposition. In fact, as stated above, the *City of Los Angeles* court specifically rejected the notion that merely participating in a fairness hearing as *amicus curie* was a suitable substitute for full party intervener status.[1]

---

[1] Likewise, the additional cases cited by the City do not in any way support its proposition that "an objecting union's participation in a fairness hearing [is] adequate to protect its rights." (*See* City. Mem., p. 11 at n.33). In fact, not one of those cases even contemplates this proposition.

Page 14 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

Finally, merely having the right to comment on the fairness, adequacy, and reasonableness of the Proposed Settlement Agreement—which completely sidesteps the issue of liability—robs the PPA of its right to defend its members against the merits of the United States' constitutional claims and the injunctive relief sought by the United States against its members. Such a result is unsupported by *City of Los Angeles*.

The United States and City make one last ditch effort to curtail the PPA's party status in this case. Both assert that the PPA cannot block or seek changes to the Proposed Settlement Agreement. (U.S. Mem. at 28-29; City Mem. at 11-12). That notion is irrelevant to the intervention analysis. *See City of Los Angeles*, 288 F.3d at 397 (setting forth intervention test). Further, in the cases cited by the United States and the City, the party seeking intervention was first granted party status and allowed to litigate, and then afforded the right to accept or deny the terms of any settlement agreement or consent decree. *See Local No. 93, Int'l Assoc. of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 506 (1986) (the district court properly granted full party intervener status to the movant; that the intervener later declined to be bound by a consent decree was irrelevant to the intervention analysis); *So. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 802 (9th Cir. 2002), *order modified*, 307 F.3d 943 (9th Cir. 2002) (same).

The United States and the City also speculate that the PPA may ultimately seek to modify or block the Proposed Settlement Agreement. (U.S. Mem. at 28-29; City Mem. at 12-13). However, the PPA's right to intervene as a party is not undermined by the possibility that it may not ultimately agree with the terms of the Proposed Settlement Agreement. Indeed, as a full party to the litigation, the PPA may reject a settlement agreement and elect to push forward with litigation against the United States on the merits and remedy, even if the City elects to settle the claims against it. As the Supreme Court of the United States has explained:

Page 15 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
            ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

> Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement. A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor. And, of course, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree.

*Local No. 93*, 478 U.S. at 529 (internal citations omitted). In any event, the United States and City are getting ahead of themselves; their speculation as to whether the PPA may agree to a global settlement agreement once the PPA is afforded party status is irrelevant to the intervention analysis.

### III.   CONCLUSION.

Try as they might, neither the United States nor the City can distinguish this case from *City of Los Angeles*, which squarely affords the PPA the right to intervene in this action as a full party to the litigation.

DATED this 5th day of February, 2013.

TEDESCO LAW GROUP

By: /s/ Anil S. Karia
ANIL S. KARIA, OSB No. 063902
E-mail: anil@miketlaw.com
Tedesco Law Group
3021 NE Broadway
Portland, OR  97232
Telephone:  866-697-6015
Facsimile:  503-210-9847
   Attorneys for Intervener-Defendant
   Portland Police Association

Page 16 –   REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE
   ASSOCIATION'S FRCP 24 MOTION TO INTERVENE

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that I served the foregoing REPLY IN SUPPORT OF INTERVENER-DEFENDANT PORTLAND POLICE ASSOCIATION'S FRCP 24 MOTION TO INTERVENE on:

| | |
|---|---|
| S. Amanda Marshall<br>Adrian L. Brown<br>Billy J. Williams<br>United States Attorney's Office<br>District of Oregon<br>1000 SW Third Ave., Ste 600<br>Portland, OR  97204-2902<br>  Attorneys for Plaintiff United States | Thomas E. Perez<br>Roy L. Austin, Jr.<br>Jonathan M. Smith<br>Laura Coon<br>R. Jonas Geissler<br>Michelle Jones<br>Civil Rights Division<br>U.S. Department of Justice<br>50 Pennsylvania Ave., NW<br>Washington, D.C.  20530<br>  Attorneys for Plaintiff United States |
| James H. Van Dyke<br>Ellen Osoinach<br>City Attorney's Office<br>1221 SW Fourth Ave., Ste 430<br>Portland, OR  97204<br>  Attorney for Defendant<br>  City of Portland | J. Ashlee Albies<br>Creighton & Rose, PC<br>500 Yamhill Plaza Building<br>815 SW Second Ave.<br>Portland, OR 97204<br>  Attorneys for Intervener-Plaintiff Albina<br>  Ministerial Alliance Coalition for Justice<br>  and Police Reform |
| Shauna Curphey<br>Curphey & Badger, P.A.<br>520 SW Sixth Ave., Ste 1040<br>Portland, OR 97204<br>  Attorneys for Intervener-Plaintiff<br>  Albina Ministerial Alliance Coalition<br>  for Justice and Police Reform | |

by service electronically pursuant to LR 100.7.

     DATED this 5th day of February, 2013.

                                                     TEDESCO LAW GROUP

                                                   By: */s/  Anil S. Karia*
                                                   ANIL S. KARIA, OSB No. 063902
                                                     Attorneys for Intervener-Defendant

Page 1 – CERTIFICATE OF SERVICE