# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:12-cv-02265-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **CITY OF PORTLAND,** | |
| Defendant. | |

S. Amanda Marshall, United States Attorney; Adrian L. Brown and Billy J. Williams, Assistant United States Attorneys, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902. Attorneys for Plaintiff.

Thomas E. Perez, Assistant Attorney General; Jonathan M. Smith, Chief; Laura Coon, Special Counsel; R. Jonas Geissler and Michelle Jones, Senior Trial Attorneys, Special Litigation Section; Civil Rights Division, United States Department of Justice, 50 Pennsylvania Avenue, NW, Washington, D.C. 20530. Attorneys for Plaintiff.

James Van Dyke, City Attorney; Ellen Osoinach, Deputy City Attorney, Office of City Attorney, 1221 S.W. Fourth Avenue, Room 430, Portland, OR 97204. Attorneys for Defendant.

Anil S. Karia, Tedesco Law Group, 3021 N.E. Broadway, Portland, OR 97232. Attorneys for Proposed Intervenor Portland Police Association.

J. Ashlee Albies, Creighton & Rose, PC, 500 Yamhill Plaza Building, 815 S.W. Second Avenue, Portland, OR 97204. Attorneys for Proposed Intervenor Albina Ministerial Alliance Coalition for Justice and Police Reform.

**SIMON, District Judge.**

## BACKGROUND

The United States of America has filed a complaint against the City of Portland, Oregon (the "City"), under the provisions of the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141 ("Section 14141") in order to remedy an alleged pattern or practice of conduct by the Portland Police Bureau ("Police Bureau") that subjects individuals with actual or perceived mental illness to excessive force, in violation of the Fourth and Fourteenth Amendments and other laws of the United States. At the same time the complaint was filed, the parties filed a Joint Motion to Enter Settlement Agreement and Conditional Dismissal of Action, requesting that the Court enter the Settlement Agreement negotiated between the parties and conditionally dismiss the action pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, subject to the Court retaining jurisdiction to enforce the Agreement.

The proposed Settlement Agreement contains detailed provisions concerning changes to Police Bureau's policies and practices relating to: (1) use of force; (2) dealing with persons perceived as or actually suffering from mental illness or mental health crises; (3) dealing with persons suffering from addictions and behavioral health challenges; (4) crises intervention; (5) identifying at-risk employees; (6) officer accountability; (7) training; (8) supervision; (9) misconduct complaint intake, investigation, and adjudication; (10) transparency and oversight; and (11) community engagement. In addition, the proposed Settlement Agreement includes detailed provisions regarding the implementation and enforcement of the proposed Settlement Agreement.

On December 18, 2012, one day after the complaint was filed, the Portland Police Association ("PPA") filed its motion to intervene. The PPA is a labor union that represents a

bargaining unit of police officers, sergeants, criminalists, and detectives employed by the City. The PPA and the City are parties to a collective bargaining agreement, effective July 1, 2010 through June 30, 2013, that governs the terms and conditions of employment for police officers in the bargaining unit ("Labor Agreement").  Under Oregon's Public Employee Collective Bargaining Act, ORS 243.650-782 ("PECBA"), the City and the PPA must collectively bargain in good faith over the terms and conditions of employment for the members of the PPA.

On December 21, 2012, the Court held a status hearing and entered an order requiring any person wishing to intervene in this action under Rule 24 of the Federal Rules of Civil Procedure to file a motion to intervene not later than January 8, 2013, and any party opposing any such motion to file its opposition not later than January 22, 2013. On January 8, 2013, the Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA Coalition") filed its motion to intervene. On January 22, 2013, the City and the United States filed their responses to the PPA and the AMA Coalition's motions. The City supported limited intervention of both the AMA Coalition and the PPA for remedy purposes only, and the United States opposed any intervention by either the PPA or the AMA Coalition.

For the reasons set forth below, the Court grants the PPA's motion to intervene as of right for remedy purposes, defers ruling on the PPA's motion to intervene for liability purposes, denies the AMA Coalition's motion to intervene for remedy purposes, defers ruling on the AMA Coalition's motion to intervene for liability purposes, and grants the AMA Coalition enhanced *amicus* status for remedy purposes that allows the AMA Coalition "a seat at the table" for purposes of both the required Fairness Hearing and any negotiations among the parties with regard to modifying the proposed Settlement Agreement either before or after the Fairness Hearing.

Page 3 – Opinion and Order

## INTERVENTION STANDARDS

**A.    Intervention of Right**

To intervene as of right under Rule 24(a)(2), an applicant must meet four requirements:

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

*United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)) (quotations omitted). Alternatively, Rule 24(a)(1) provides that a court must permit intervention of right to anyone who "is given an unconditional right to intervene by a federal statute," but no one claims any such a right in this action.

If a party seeking to intervene fails to meet any of these requirements, it cannot intervene as a matter of right. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). In evaluating whether these requirements have been, courts "are guided primarily by practical and equitable considerations" and generally construe the intervention rule "broadly in favor of proposed intervenors." *City of Los Angeles*, 288 F.3d at 397 (quotations and citations omitted). "An applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *Id*. at 398 (quoting *Donnelly*, 159 F.3d at 409). The "relationship" requirement is met if the resolution of the plaintiff's claims will affect the applicant. *Id*. The "interest" requirement directs courts "to make a practical, threshold inquiry." *Id*.

The considerations as to whether an applicant's interests are adequately represented by the existing parties include:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the

> present party is capable and willing to make such arguments; and
> (3) whether the would-be intervenor would offer any necessary
> elements to the proceedings that other parties would neglect. The
> prospective intervenor bears the burden of demonstrating that
> existing parties do not adequately represent its interests.

*Id.* (quotations and citation omitted). The burden on proposed intervenors in showing inadequate representation is minimal and is satisfied if the applicant shows that the representation of his interest "may be" inadequate. *Arakaki*, 324 F.3d at 1086 (quotations and citation omitted). When an applicant and an existing party "have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* When the government is acting on behalf of a constituency that it represents, in "the absence of a very compelling showing to the contrary, it will be presumed that [the government] adequately represents its citizens when the applicant shares the same interest." *Id.* Differences in legal strategy do not normally justify intervention when the parties share the same ultimate objective. *Id.* "When a plaintiff's action is narrowed by court order, the court may consider the case as restructured in ruling on a motion to intervene." *Arakaki*, 324 F.3d at 1083.

**B.    Permissive Intervention**

Applicants for permissive intervention under Rule 24(b) must meet three threshold requirements: "(1) an independent ground for jurisdiction; (2) a timely motion; (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). The requirement of an independent jurisdictional ground, however, "does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Id.* at 844. Even if an applicant satisfies the threshold requirements, a court still has discretion to deny permissive intervention. *Donnelly*, 159 F.3d at 412. In exercising this discretion, a court "must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.*

## ANALYSIS

The Court established a deadline for timely motions to intervene. The PPA and the AMA Coalition filed their motions on or before that deadline. Thus, timeliness is not at issue. Further, no order has been entered by the Court narrowing the action, so the case has not been restructured, and intervention therefore must be evaluated based on the allegations of the complaint. *Arakaki*, 324 F.3d at 1083. The remaining factors required for intervention are discussed below.

**A.      Portland Police Association's Motion to Intervene**

    **1.      Intervention of Right**

The PPA argues that it is entitled to intervene as of right in the remedy phase. The PPA asserts that: (1) it has a significant protectable interest because the terms of the proposed Settlement Agreement conflict with provisions of the Labor Agreement between the City and the PPA and infringe on the PPA's state-law bargaining rights; (2) the disposition of the action may impair or impede the PPA's continuing ability to protect and enforce its contractual rights with the City; and (3) the City does not and cannot adequately represent the PPA's interest because the City and the PPA are antagonists in the collective bargaining process. PPA Br. at 7, 25-30.

The City concedes that under Rule 24's broad policy in favor of intervention and the Ninth Circuit's *City of Los Angeles* opinion, the PPA is entitled to intervention as of right in the remedy phase of this litigation. City Br. at 2. The United States admits that the PPA has a protectable interest in the remedy phase of the litigation, but argues that the PPA's interest is implicated in only "a small number of the Agreement's provisions" and that the proposed Settlement Agreement does not impair that interest because it preserves the PPA's ability to collectively bargain, grieve, and arbitrate pursuant to the Labor Agreement. United States Br. at 10-11.

Page 6 – Opinion and Order

### a.    Significant Protectable Interest

A significant protectable interest requires an interest that is protected under some law and a relationship between that legally protected interest and the plaintiff's claims. *City of Los Angeles*, 288 F.3d at 398. The PPA has state-law rights to negotiate about the terms and conditions of its members' employment with the Police Bureau and to rely on the Labor Agreement that resulted from those negotiations. *See* ORS 243.650-782.

As the Ninth Circuit has unambiguously held: "Except as part of court-ordered relief after a judicial determination of liability, an employer cannot unilaterally change a collective bargaining agreement as a means of settling a dispute over whether the employer has engaged in constitutional violations." *City of Los Angeles*, 288 F.3d at 400 (citing *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 528-30 (1986), and *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 771 (1983)). Thus, if the proposed Settlement Agreement contains – or even might contain – provisions that contradict the terms of the Labor Agreement, then the PPA has a protectable interest. *Id.* Even if it is disputed whether the proposed Settlement Agreement conflicts with the Labor Agreement, the PPA would still have a protectable interest. *Id.* (noting that to the extent it is disputed whether the decree at issue conflicted with the collective bargaining agreement, the union still had a protectable interest and the "right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision to approve the consent decree").

The PPA identifies numerous clauses of the proposed Settlement Agreement that it contends conflict with the Labor Agreement. PPA Br. at 10-23. Both the City and the United States concede that the PPA has a protectable interest, although the United States asserts that only a few provisions of the proposed Settlement Agreement conflict with the Labor Agreement.

United States Br. at 10-11. The fact that the United States concedes that "a small number" of the provisions in the proposed Settlement Agreement conflict with the Labor Agreement, even though it disputes that others conflict, supports a finding that the PPA has a protectable interest. As long as the proposed Settlement Agreement reasonably *might* contain provisions that conflict with the Labor Agreement or if it is reasonably *disputed* whether certain provisions will or may conflict with the Labor Agreement, that is enough to establish a protectable interest. *City of Los Angeles*, 288 F.3d at 400. Thus, for purposes of intervention, the PPA has shown that it has a protectable interest in the remedy phase of this litigation.

### b.      Impediment or Impairment of Protectable Interest

The United States argues that although the proposed Settlement Agreement contains some provisions that impact the conditions of employment of PPA members, those provisions were crafted in a manner that permits the City to engage in collective bargaining and thereby protects the collective bargaining rights of PPA members. Thus, argues the United States, the protectable interest of the PPA is not impeded or impaired by the proposed Settlement Agreement. United States Br. at 11.

The United States acknowledges in the proposed Settlement Agreement that certain provisions may require changes to the Labor Agreement. Dkt. 4, Ex. 1, ¶ 180. The Police Bureau and the City agree in the proposed Settlement Agreement to notify the United States if any term of the agreement becomes subject to collective bargaining. *Id*. ¶189. The proposed Settlement Agreement does not specifically address how the United States and the City will resolve any issues that arise if the changes mandated by the Settlement Agreement are subject to collective bargaining and cannot be collectively bargained or resolved between the City and the PPA. The proposed Settlement Agreement does, however, broadly grant the United States "the right to seek

enforcement of the provisions of this Agreement if [the United States] determines that [the Police Bureau] or the City have failed to fully comply with any provision of this Agreement." *Id.* ¶ 179. The procedure established in the Settlement Agreement for enforcing such concerns is to first engage in mediation and then file a motion with this Court. *Id.* ¶¶ 185-186. Thus, under the proposed Settlement Agreement, if certain terms of the Settlement Agreement are subject to collective bargaining and if the City cannot successfully bargain those terms with the PPA and if the City cannot then fully implement the Settlement Agreement, the United States could pursue enforcement of those terms ultimately by seeking injunctive relief from this Court.

This is similar to the *City of Los Angeles* case, where certain terms of the consent decree at issue expressly protected the collective bargaining rights of the police union under California law and the collective bargaining agreement between the City of Los Angeles and the union representing Los Angeles police officers, but the implementation process in the consent decree included provisions allowing for relief by the district court if the collective bargaining process impaired the City's ability to implement the provisions of the consent decree. *City of Los Angeles*, 288 F.3d at 400-401. The Ninth Circuit found that the consent decree gave the district court power to override the union's bargaining rights. *Id.* at 401. The United States argued in that case that the union's rights were not impaired, for purposes of analyzing intervention, because it was speculative whether the parties would be unable to agree on what provisions were subject to collective bargaining or whether there would be disputes over provisions that would require resolution by the court. The Ninth Circuit rejected that argument, holding that the issue on intervention is whether the proposed decree "may" impair rights, not that it necessarily would impair them. *Id.*

Page 9 – Opinion and Order

Here, unlike in *City of Los Angeles*, the proposed Settlement Agreement does not explain precisely how the City or the United States will handle any unresolved collective bargaining issues affecting implementation of the proposed Settlement Agreement. But the broad enforcement provisions in the proposed Settlement Agreement still allow the United States to seek judicial enforcement in this Court of *any* provision of the proposed Settlement Agreement (after mediation), without providing any exception for those provisions that implicate the PPA's collective bargaining rights. Thus, although it is not as evident as in the *City of Los Angeles* consent decree, the result here is still be the same—if there are terms that require collective bargaining, implementation of those terms may end up before this Court in a motion by the United States for injunctive relief. Accordingly, the proposed Settlement Agreement *may* impair or impede the PPA's protectable interest. *City of Los Angeles*, 288 F.3d at 401.

### c.    Adequacy of Representation by Existing Parties

There is a general presumption of adequate representation when the government is acting on behalf of a constituency that it represents. *Arakaki*, 324 F.3d at 1086. Such a presumption does not apply, however, when the governmental body acts as an employer, such as the City is to the members of the PPA, or when the parties "are antagonists in the collective bargaining process." *City of Los Angeles*, 288 F.3d at 401-2. Here, the City and the members of the PPA are in an employment relationship. In addition, the City and the PPA are antagonists in the collective bargaining process. Further, based on the legal memoranda already submitted in connection with the PPA's motion to intervene, there may be a "marked divergence of positions concerning key elements" of the proposed Settlement Agreement. *Id.* at 402. Thus, the presumption of adequate representation does not apply here, and the PPA has sufficiently made the "minimal" showing that representation by the City "may not" adequately represent the PPA's interests. *Arakaki*, 324 F.3d at 1086.

Page 10 – Opinion and Order

### 2.      Permissive Intervention

Because the Court concludes that the PPA is entitled to intervention of right, the PPA's

alternative request for permissive intervention need not be addressed.

## B.      The AMA Coalition's Motion to Intervene

### 1.      Intervention of Right

#### a.      Significant Protectable Interest

The AMA Coalition was founded in 2003 and is a coalition of faith-based and

community organizations "dedicated to bringing justice to the citizens of Portland and reforming

the Portland Police Bureau." AMA Coalition Br. at 1-2. The AMA Coalition's member

organizations include the Albina Ministerial Alliance, Portland Copwatch, Disability Rights

Oregon, the Mental Health Association of Portland, Oregon Action, and the Portland Chapter of

the National Lawyers Guild. The AMA Coalition's police reform work has addressed issues of

mental health as well as issues of race.

The AMA Coalition argues that it has a significant protectable interest as an organization

with a long history of advocating for police reform in Portland. AMA Coalition Br. at 10-11. The

Ninth Circuit has noted, without deciding, that community organizations in a similar situation

*may* have a protectable interest analogous to the interest organizations have that seek to

challenge measures that the organization helped to create. *City of Los Angeles*, 288 F.3d at 402

n.5. The Ninth Circuit has also found, however, that organizations that have an "undifferentiated,

generalized interest" in the outcome of an ongoing action or organizations that have an interest

comparable to a substantial portion of the population do not have a legally protectable interest

for purposes of intervention. *Southern California Edison Co. v. Lynch*, 307 F.3d 794, 803

(9th Cir. 2002) (citing *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998) and

*Westlands Water Dist. v. U.S.*, 700 F.2d 561, 563 (9th Cir. 1983)).

This Court need not reach the issue of whether the AMA Coalition's interest falls into the former category or the latter because, even assuming the AMA Coalition does have a protectable interest in this litigation, that interest is not impaired and is adequately represented by the United States. Because all of the elements for intervention must be satisfied to support a right to intervene, the AMA Coalition is not entitled to intervention as of right. *Arakaki*, 324 F.3d at 1083.

### b.      Impediment or Impairment of Protectable Interest

The AMA Coalition argues that its interest in "proposed changes to [Police Bureau] practices related to use of force and race relations in Portland have not come to fruition," that while it could pursue litigation to address its concerns, such litigation is not practical, and that its interest is, therefore, impaired. AMA Coalition Br. at 12. The Court recognizes, appreciates, and respects the work the AMA Coalition has done and acknowledges that the AMA Coalition is interested in the resolution of this case and in remedying the alleged excessive use of force by the Police Bureau toward persons with actual or perceived mental illness and persons of color. To the extent that the AMA Coalition has a protectable interest in this lawsuit, however, that interest is limited to one that is related to the claim brought by the United States in the complaint. *See e.g., Arakaki*, 324 F.3d at 1083 (a party seeking to intervene must have a significantly protectable interest *relating to the property or transaction that is the subject of the action*). Intervention is not "intended to allow the creation of whole new lawsuits by the intervenors." *Donnelly*, 159 F.3d at 412. The complaint in this case addresses only alleged unconstitutional practices relating to perceived or actual mental illness and does not contain any allegations or claim of such practices based on race. Thus, the AMA Coalition's interest in this case is limited to remedying unconstitutional practices relating to mental health.

The AMA Coalition's desire to intervene to address the issue of unconstitutional practices based on race in a case that involves only alleged unconstitutional practices based on mental health is analogous to the case of male workers seeking to intervene to bring gender-based discrimination claims in a case involving female workers' claims of a hostile work environment, which was rejected by the Ninth Circuit. *See Donnelly*, 159 F.3d at 409. In *Donnelly*, the Ninth Circuit held that although both sets of claims were covered by Title VII and both were alleging discrimination against the same defendant, that was insufficient for intervention purposes because claims of discrimination by male employees are unrelated to the hostile work environment claim asserted by female employees. *Id*. Similarly, here, the AMA Coalition's claim of unconstitutional practices based on race are not related to the United States' claim of unconstitutional practices based on mental health and thus cannot serve as a basis for intervention. The issue for intervention is whether this lawsuit impairs the AMA Coalition's interest in remedying the alleged use of excessive force toward persons perceived as suffering, or actually suffering, from mental illness or mental health crises. The AMA Coalition has not demonstrated that this lawsuit impairs that interest.

Instead, the AMA Coalition argues that race is already included in the current lawsuit because the United States raised claims involving race in the U.S. Department of Justice's Letter of Findings. AMA Coalition Reply Br. at 3. The Letter of Findings, however, does not constitute or establish the claims in this lawsuit. The complaint is the operative document that establishes the scope and specific claims of this action, and the complaint here does not contain any allegations relating to excessive force based on race.

The AMA Coalition also argues that because the proposed Settlement Agreement contains a requirement that the Police Bureau document demographic data regarding the subjects

of police encounters and because that demographic data will include racial identification, the proposed Settlement Agreement seeks to address concerns of excessive force based on race. AMA Coalition Reply Br. at 4-5. The fact that the proposed Settlement Agreement tasks the Police Bureau with documenting general demographic data on police subjects, however, is insufficient to expand the scope of this lawsuit to include claims of excessive force based on race. No such claims are alleged in the complaint filed by the United States.

Moreover, even if the AMA Coalition had a protectable interest in more broadly preventing alleged unconstitutional practices by the Police Bureau, the proposed Settlement Agreement does not prevent or impair the AMA Coalition, or any other community organization or person, from initiating a suit against the City, the Police Bureau, or any officer for engaging in such conduct. *See City of Los Angeles*, 288 F.3d at 402. Thus, even if the AMA Coalition's broad interest in all alleged unconstitutional practices by the Police Bureau were a protectable interest for purposes of intervention in this case, that interest is not impaired by this lawsuit. *Id.*

### c.    Adequacy of Representation by Existing Parties

When the government is acting on behalf of a constituency it represents that shares the same interest, there is a strong presumption that the government adequately represents its constituents for intervention purposes. *Arakaki*, 324 F.3d at 1086. This presumption can only be overcome by a very compelling showing to the contrary. *Id.*

The United States and the AMA Coalition share the same interest in remedying the alleged pattern and practice by the Police Bureau of using excessive force in interactions with persons perceived as or actually suffering from mental illness or mental health crises. For those purposes, the AMA Coalition and its members *are* the constituency that the United States is seeking to protect. *See, e.g., City of Los Angeles*, 288 F.3d at 402. Where the AMA Coalition's

interest appears to diverge from the interest of the United States is that the AMA Coalition also seeks to remedy what it perceives as a pattern and practice by the Police Bureau of using excessive force in interactions with persons of color. But there is no such allegation or claim contained in the complaint and, thus, that issue is not before the Court.

Concerning the issues in the complaint relevant to intervention in this lawsuit, the United States has spent significant resources and efforts investigating the problem, evaluating and negotiating a remedy, drafting a detailed proposed Settlement Agreement, pursuing legal action, and defending its remedy in court. The AMA Coalition may not agree with the limited scope of the complaint or with the terms of the proposed Settlement Agreement, but differences in legal strategy do not normally justify intervention. *Arakaki*, 324 F.3d at 1086. Thus, the AMA Coalition has not met its burden of a making a "very compelling" showing that the United States will not adequately represent the interests of the AMA Coaltion in remedying the specific allegations actually contained in the complaint.

## 2.    Permissive Intervention

To qualify for permissive intervention, the AMA Coalition must prove that its claim shares a common question of law or fact with the main action and that the Court has an independent basis for jurisdiction over the AMA Coalition's claim to the extent that the AMA Coalition raises any new claims. *Donnelly*, 159 F.3d at 412; *Freedom Religion Found.*, 644 F.3d at 844. The only claim asserted by the AMA Coalition in its intervenor-plaintiff complaint is the same claim asserted by the United States, a claim for violations of Section 14141. That statute, however, does not provide for a private cause of action. The only party that may bring a claim under Section 14141 is the Attorney General, bringing claims on or behalf of the United States. 42 U.S.C. §14141(b). Thus, the AMA Coalition has not asserted a cognizable claim on which

this Court can base permissive intervention. The AMA Coalition anticipates this deficiency and asks the Court to allow the AMA Coalition to amend its proposed complaint in intervention to assert a claim under 42 U.S.C. § 1983. AMA Coalition's Reply Br. at 12 n.3.

Even if the AMA Coalition had asserted a cognizable claim, including one under Section 1983, the Court would nevertheless exercise its discretion to deny the AMA Coalition's application for permissive intervention under the facts currently before the Court. *Donnelly*, 159 F.3d at 412. If an applicant meets the requirements for permissive intervention, the Court "may also consider other factors in the exercise of its discretion, including the nature and extent of intervenors' interest and whether the intervenors' interests are adequately represented by other parties." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (quotations and citation omitted). As discussed in the analysis of intervention of right, to the extent that the AMA Coalition's interest in the claim pleaded in this case relates to mental health, the AMA Coalition has the same interest as the United States, and the United States adequately represents that interest. Moreover, the AMA Coalition's participation as an enhanced *amicus curiae*, *see* discussion below, will allow the AMA Coalition to apprise the Court of the AMA Coalition's positions, arguments, concerns, and perspective on whether the proposed Settlement Agreement is fair, adequate, and reasonable.

The Court must also, in exercising its discretion, consider whether intervention would unduly delay the main action or prejudice the existing parties. *Donnelly*, 159 F.3d at 412. The AMA Coalition's primary purpose in intervening appears to be to add into the case the issue of alleged unconstitutional practices by the Police Bureau relating to race. This would impermissibly expand the scope of the case as the United States, as Plaintiff, has chosen to frame it. As stated, if the AMA Coalition, or its members or anyone else, wants to bring a lawsuit

challenging the Police Bureau's practices with regard to race, including a lawsuit under Section 1983, any such group or person may do so.

### 3.    Enhanced *Amicus Curiae* Status for the AMA Coalition

The Court recognizes that the AMA Coalition has dedicated significant time and resources over many years to identifying possible issues and solutions concerning the Police Bureau and its alleged practice of using excessive force. The AMA Coalition has extensive community outreach, a deep understanding of the issues, including those raised in this lawsuit, and an important perspective to bring to the remedy phase of this action. The Court believes that the AMA Coalition can provide a valuable voice at the table during these proceedings. Accordingly, the AMA Coalition is granted enhanced *amicus curiae* status, as follows: (1) the AMA Coalition shall have the opportunity to present any briefing requested by the Court in the same manner as the parties; (2) the AMA Coalition shall have the opportunity to participate in any oral arguments to the same extent as the parties; (3) the AMA Coalition may present its arguments from counsel table along with the parties; (4) the AMA Coalition may participate in the Fairness Hearing to the same extent as the parties; and (5) to the extent that the United States, the City, and the PPA may participate in mediated settlement discussions under the authority of the Court and a court-appointed special master for settlement purposes, *see* discussion below, the AMA Coalition shall be invited and allowed to participate in those negotiations. In other words, in terms of having its issues and concerns noted and considered during the remedy phase of this lawsuit, the AMA Coalition shall have the same opportunity to provide insights and recommendations as the parties. Indeed, from this point forward and until further Court Order, the United States, the City, the PPA, and the AMA Coalition shall be collectively referred to in this lawsuit as the "Parties," and the Court will refer to each individually as a "Party" (even though the AMA Coalition, to be precise, is only an enhanced *amicus*).

## DIRECTIONS FOR GOING FORWARD

The PPA argues that the proposed Settlement Agreement prejudices the PPA's legal rights under the Labor Agreement and the collective bargaining laws of Oregon. If the PPA is correct, that might have significant implications for whether the Court could approve the Settlement Agreement as currently proposed. As discussed above, the Ninth Circuit has stated:

> Except as part of court-ordered relief after a judicial determination of liability, an employer cannot unilaterally change a collective bargaining agreement as a means of settling a dispute over whether the employer has engaged in constitutional violations.

*City of Los Angeles*, 288 F.3d at 400 (citing *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 528-30 (1986), and *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 771 (1983)). Thus, if the proposed Settlement Agreement between the United States and the City would constitute a material change in the Labor Agreement between the City and the PPA, it would appear that the Court might not have the legal authority to approve such an agreement over the objection of the PPA.

That is not to say, however, that the PPA may block such a consent decree *merely* by withholding its consent, especially *if* either the Court or the Parties have resolved the issues presented in the preceding paragraph. In fact, the PPA may *not* do that. *See Local No. 93*, 478 U.S. at 529-30 ("While an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent."); *see also So. Cal. Edison Co. v. Lynch,* 307 F.3d 794, 806-07 (9th Cir. 2002) (holding that an intervenor's consent "was not a necessary precursor to the district court's accepting the Stipulated Judgment").

Thus, before moving forward with a Fairness Hearing to determine, after receiving public comment and participation, whether the proposed Settlement Agreement, as currently proposed,

is "fundamentally fair, adequate, and reasonable," there are at least two preliminary questions that need to be resolved: (1) the Court must determine whether the proposed Settlement Agreement, in fact, prejudices the legal rights of the PPA under the Labor Agreement; and (2) if the proposed Settlement Agreement does prejudice the legal rights of the PPA under the Labor Agreement, the Court must then determine whether that conclusion necessarily precludes the authority of the Court to approve the proposed Settlement Agreement without a prior judicial determination of liability (either by trial or by summary judgment). In addition to the Supreme Court's decision in *Local No. 93*, the following cases may shed light on this second question: *Johnson v. Lodge No. 93 of the Fraternal Order of Police*, 393 F.3d 1096 (10th Cir. 2004); *United States v. City of Hialeah*, 140 F.3d 968 (11th Cir. 1998); *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1506 (9th Cir. 1990); *Kirkland v. The New York State Dept. of Corr. Servs.*, 711 F.2d 1117 (2nd Cir. 1983); and *United States v. City of Miami*, 664 F.2d 435 (former 5th Cir. 1981) (*en banc*). Briefing on both of these issues from the United States, the City, the PPA, and the AMA Coalition could be quite helpful to the Court.

It might not be necessary, however, for the Court to reach these issues. If the parties were to modify the proposed Settlement Agreement in such a way that all would agree that an amended proposed Settlement Agreement would not prejudice the legal rights of the PPA under the Labor Agreement, then there would be no need for the Court to resolve such counter-factual questions, and the Court could proceed promptly to the Fairness Hearing. Whether that can or should be done is for the parties to determine, at least in the first instance.

To assist the Parties in determining whether they may wish to amend the proposed Settlement Agreement before the Court convenes a Fairness Hearing, the Court requests that the Parties (*i.e.* the United States, the City, the PPA, and the AMA Coalition) agree upon a court-

authorized mediator (or a "Special Master for Settlement Purposes") and that this be done and reported to the Court not later than February 28, 2013. If the Parties cannot agree on a specific mediator, then each Party must submit to the Court three names of proposed mediators who would be acceptable to that Party, also not later than February 28, 2013. In addition to mediation to determine whether the parties wish to submit an amended proposed Settlement Agreement addressing the issues raised by the PPA before a Fairness Hearing is held, the Parties should also consider including in such a mediation any issues raised by the AMA Coalition that are within the scope of the complaint filed by the United States in this action.

On Tuesday, March 5, 2013, at 12:15 p.m., the Court will hold a brief status conference to address any remaining issues concerning mediation, including confirming the appointment of the mediator, if applicable.

If there is going to be a mediation, the Court directs that it be completed within 45 days, or not later than April 5, 2013, and that the Parties file a Joint Status Report with the Court not later than April 8, 2013. If there is not going to be a mediation or if there is a mediation but it is unsuccessful, then any Party wanting to be heard on either of the two questions identified above in this section must submit its brief not later than April 19, 2013 (*i.e.* simultaneous briefing). Any Party that submits an opening brief by April 19, 2013, may then have until May 3, 2013, in which to respond to the arguments submitted in any other Party's opening brief (*i.e.* simultaneous responses). The Court will hold oral argument on this issue, if necessary, on Thursday, May 23, 2013, at 9:00 a.m.

## CONCLUSION

Portland Police Association's Motion to Intervene (Dkt. 7) is GRANTED IN PART AND DEFERRED IN PART. The PPA is permitted to intervene at this time only in the "remedy

phase" of this litigation, with leave to renew its Motion to Intervene in a "liability phase" if such a phase becomes necessary. The AMA Coalition's Motion to Intervene (Dkt. 19) is DENIED IN PART AND DEFERRED IN PART, with leave to renew its Motion to Intervene (and file an amended complaint in intervention) in a "liability phase" if such a phase becomes necessary. Although the AMA Coalition may not formally "intervene" in the remedy phase," the Court GRANTS the AMA Coalition enhanced *amicus curiae* status as set forth in this Opinion and Order. The Court further Orders that the United States, the City, the PPA, and the AMA Coalition provide the several reports and briefing, if necessary, as directed in this Opinion and Order. The next status conference will be held on Tuesday, March 5, 2013, at 12:15.

**IT IS SO ORDERED**.

DATED this 19th day of February, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge