1                    IN THE UNITED STATES DISTRICT COURT

2                        FOR THE DISTRICT OF OREGON

3                            PORTLAND DIVISION

4
   UNITED STATES OF AMERICA,        )
5                                    )
                        Plaintiff,   )   Case No. 3:12-CV-2265-SI
6                                    )
                   v.                )
7                                    )   July 18, 2013
   CITY OF PORTLAND,                 )
8                                    )
                        Defendant.   )   Portland, Oregon
9  _____)

10

11

12

13

14                        STATUS CONFERENCE

15                    TRANSCRIPT OF PROCEEDINGS

16              BEFORE THE HONORABLE MICHAEL H. SIMON

17                UNITED STATES DISTRICT COURT JUDGE

18

19

20

21

22

23

24

25

```
 1                              APPEARANCES

 2   FOR THE PLAINTIFF:

 3   Adrian Brown
     Bill J. Williams
 4   Assistant United States Attorneys
     United States Attorney's Office
 5   1000 SW Third Avenue
     Room 600
 6   Portland, OR 97204

 7   R. Jonas Alexander Geissler
     (Telephonically)
 8   U.S. Department of Justice
     Civil Rights Division
 9   950 Pennsylvania Ave. N.W.
     Washington, DC 20530
10
     Laura Coon
11   (Telephonically)
     U.S. Department of Justice
12   Civil Rights Division
     950 Pennsylvania Ave., NW
13   Washington, DC 20530

14   Thomas J. Morse
     (Telephonically)
15   U.S. Department of Justice
     Civil Rights Division
16   950 Pennsylvania Ave., NW
     Washington, DC 20530
17
     FOR THE DEFENDANT CITY OF PORTLAND:
18   David Woboril
     Ellen C. Osoinach
19   City of Portland
     Office of the City Attorney
20   1221 SW 4th Avenue, Suite 430
     Portland, OR 97204
21

22   FOR THE DEFENDANT PORTLAND POLICE ASSOCIATION:
     Anil Karia
23   Tedesco Law Group
     3021 NE Broadway
24   Portland, OR 97232

25
```

1   FOR THE MOVANT ALBINA MINISTERIAL ALLIANCE COALITION FOR
    JUSTICE REFORM:
2
    Jessica Ashlee Albies
3   Creighton & Rose PC
    815 SW Second Ave., Suite 500
4   Portland, OR 97204

5   Shauna M. Curphey
    Curphey & Badger PA
6   520 SW 6th Ave. Suite 1040
    Portland, OR 97204

7

8   COURT REPORTER:         Jill L. Erwin, CSR, RMR, RDR, CRR

9                           Certified Realtime Reporter
                            Registered Merit Reporter
10                          Registered Diplomate Reporter

11                          United States District Courthouse
                            1000 SW Third Avenue, Room 301
12                          Portland, OR 97204

13                          (503)326-8191

14                                *   *   *

15

16

17

18

19

20

21

22

23

24

25

1                    TRANSCRIPT OF PROCEEDINGS

2              DEPUTY COURTROOM CLERK:  All rise.

3              THE COURT:  Good morning.  Good morning.

4              DEPUTY COURTROOM CLERK:  Your Honor, this is the

5     time set for Case No. CV-12-2265.  USA v. City of Portland.

6     Status conference.  Appearing by telephone for plaintiff,

7     USA, are Mr. Jonas Geissler.

8          Mr. Geissler, can you hear me?

9              MR. GEISSLER:  I can.  Thank you.

10             DEPUTY COURTROOM CLERK:  Thank you.

11    Mr. Jack Morse.  Mr. Morse, can you hear me?

12             MR. MORSE:  Yes, I can.  Thank you.

13             THE COURT:  And Ms. Laura Coon?

14             MS. COON:  Good morning.

15             DEPUTY COURTROOM CLERK:  Thank you.  I will ask

16    counsel in court, beginning with Ms. Brown, to please

17    identify themselves for the record.

18             MS. BROWN:  Thank you.  Good morning, Your Honor.

19    Adrian Brown for the United States.

20             MR. WILLIAMS:  Good morning, Your Honor.

21    Bill Williams for the United States.

22             MS. ALBIES:  Good morning, Your Honor.  J. Ashlee

23    Albies for the AMA Coalition.

24             MS. CURPHEY:  Good morning.  Shauna Curphey for

25    the AMA Coalition.

1          MR. KARIA:  Good morning, Your Honor.  Anil Karia,

2  lawyer for the Portland Police Association.

3          THE COURT:  Good morning.

4          MR. WOBORIL:  Good morning, Judge.  David Woboril

5  for the City of Portland.

6          THE COURT:  Good morning.

7          MS. OSOINACH:  Good morning.  Ellen Osoinach for

8  the City of Portland.

9          THE COURT:  Good morning, everyone.  We are here

10  in the status conference in this case and I have a number of

11  questions that I'd like to ask, mostly to make sure we're

12  all on the same page.  But before we get into that I will

13  tell you that I have read the status reports that everyone

14  has filed.  Dockets 41 and 43.  I also recall that -- from

15  one of our earlier orders, learning that the collective

16  bargaining agreement between the Portland Police Association

17  and the City was set to expire, by its own terms, on June

18  30th, 2013; a few weeks ago.  I'm unaware whether there were

19  any extensions or how, if at all, that expiration might

20  affect any of the issues that are before us.  So to whatever

21  extent you wish to address that early on, you're welcome.

22  To the extent you want to wait until later, when we talk

23  about where we're going in this case, you're welcome to do

24  that, as well.

25          But let me ask, beginning with plaintiff, is there

1    anything you would like to add at this time to the status

2    report that you filed?

3            MS. BROWN:  Yes, Your Honor.  Thank you.  And I

4    will refer to my colleague for the AMA Coalition, as well as

5    the City of Portland, but we are happy to successfully

6    report that we have reached an agreement between at least

7    the AMA, City of Portland, and the US DOJ.  I'll let my

8    colleagues elaborate on that more, but it does need to be

9    presented to city council.  So it's not in final approved

10   form.  But it will not be something that's filed with the

11   Court.  But it is an agreement that all the parties, between

12   the AMA, the US DOJ, and the City of Portland, will sign.

13           THE COURT:  Excellent and congratulations.

14           MS. BROWN:  Thank you.

15           THE COURT:  Anything that -- I'll go next to the

16   City of Portland, then I'll go to the Portland Police

17   Association, and then to the AMA.  Anything that the City of

18   Portland wishes to add by way of status report or any other

19   general comments now?

20           MS. OSOINACH:  No.  We'd like to thank you, first

21   of all, for giving us the opportunity to engage in

22   mediation.  It was successful in regard to the AMA, and I

23   want to thank them, in particular, for their persistence in

24   working with us towards an agreement.  As plaintiff said, we

25   won't be filing it with the courts, but the City will be

1    filing an ordinance today authorizing the city council to

2    enter an agreement, and that will be heard next week, on

3    July 24th.

4            THE COURT:  Very good, Ms. Osoinach.

5        Let's go next to Mr. Karia for Portland Police

6    Association.  Anything that you wish to add right now by way

7    of status report?

8            MR. KARIA:  Thank you, Your Honor.  As a

9    preliminary matter, with respect to your inquiry as to the

10   status of the current collective bargaining agreement, it

11   has expired.  There's a term in the collective bargaining

12   agreement that does what is loosely called an evergreen

13   clause that provides that the collective bargaining

14   agreement remains in full force and effect during our

15   negotiations period.  So just a little bit of extra

16   background for your knowledge.

17           THE COURT:  All right.  And a little bit later

18   today we'll talk about what effect that might have, in terms

19   of the Court's ability to consider whether or not to approve

20   a settlement agreement that may conflict with an expired

21   collective bargaining agreement; albeit, one with an

22   evergreen clause.  We'll talk about that a little later

23   today.

24           MR. KARIA:  Sure.

25           THE COURT:  Let me turn to Ms. Albies or

1  Ms. Curphey.   Am I pronouncing that right?

2                 MS. CURPHEY:   Curphey.

3                 THE COURT:   Curphey?   Thank you.

4      Any additional status that the AMA would like to

5  report?   And, by the way, congratulations to you on what

6  sounds like a successful settlement agreement or mediated

7  result.

8                 MS. ALBIES:   Thank you, Your Honor.   We don't have

9  much to add.   We appreciate the efforts of the City and the

10  DOJ.   And on behalf of our clients and the community to work

11  with us and to continue to hear our concerns, and we will

12  continue to advocate for strong oversight and

13  accountability.   Thank you.

14                 THE COURT:   Thank you, Ms. Albies.

15      All right.   Here's my thinking on what we should be

16  talking about and where we need to go with respect to what's

17  left in this case:   I'll start with the comment that I've

18  made both in my opinion and order that I issued on

19  February 19th of this year and that we've talked about in

20  various conferences, and this is my understanding of the law

21  that I must follow from the Ninth Circuit, and, frankly,

22  they're relying upon Supreme Court precedent.

23      And that's the comment that appears in the case of

24  *United States v. City of Los Angeles*, Ninth Circuit, 2002,

25  at 288 F.3d 391, and the quote appears on page 400.   And you

1    know it, but I'll put it on the record again.

2        The Ninth Circuit has unambiguously held that, quote,

3    Except as part of court-ordered relief after a judicial

4    determination of liability, an employer cannot unilaterally

5    change a collective bargaining agreement as a means of

6    settling a dispute over whether the employer has engaged in

7    constitutional violations, closed quote.  And that's the

8    Ninth Circuit citing, among other things, the *Local Number*

9    *93 International Association of Firefighters v. City of*

10   *Cleveland* decision from the United States Supreme Court in

11   1986.

12       So what that tells me is that I look at the proposed

13   settlement agreement.  I look at the collective bargaining

14   agreement, and I've read what the parties have said about

15   it.  And it does appear that the Portland Police Association

16   argues that there are a number of propositions in the

17   proposed settlement agreement that modify rights of the

18   Portland Police Association or its members under the

19   collective bargaining agreement.

20       Now, footnote here.  The collective bargaining

21   agreement that just expired on June 30th, 2013, but appears

22   to at least continue to enforce subject to its evergreen

23   clause in the footnote.

24       So I know there appears to be a disagreement between

25   the Portland Police Association and at least the United

1    States in terms of how many provisions are in conflict, but

2    even from the United States's briefing, I see that the

3    United States admits that there are what the United States

4    calls a small number of provisions that are in conflict

5    between the proposed settlement agreement that has been

6    presented to me and the collective bargaining agreement that

7    recently expired.  I don't think I necessarily need to

8    resolve which agreement -- which provisions really are in

9    conflict as long as right now I recognize parties do seem to

10   agree that there are at least some that are in conflict.

11       Would that -- by the way, I'm just telling you my

12   thinking right now.  If anyone thinks I'm analyzing this

13   incorrectly, you will have an opportunity to explain to me

14   your thinking, and I encourage you to do so.

15       Here's my thinking on it:  As long as there are some

16   provisions that are in conflict between the proposed

17   settlement agreement and the collective bargaining

18   agreement, putting aside this question of what are the legal

19   implications to the fact that the collective bargaining

20   agreement seems to have been -- seems to have expired,

21   putting it aside, as long as there are some provisions, I

22   think the U.S. Supreme Court case law and the Ninth Circuit

23   case law is pretty clear that I simply cannot give approval

24   even if I otherwise thought that the proposed settlement

25   agreement was fair, reasonable, and appropriate.  And I have

1    not made that decision yet.  That would have to await a

2    fairness hearing.  But even if I were to reach that

3    conclusion after a fairness hearing, I simply can't approve

4    a settlement agreement that conflicts with rights under a

5    collective bargaining agreement in that context.

6        The Ninth Circuit and the Supreme Court say the only

7    way I could do that -- namely, the "that" being affect

8    rights under a collective bargaining agreement -- is if I

9    were to first make a judicial determination of liability.

10    Namely, on the complaint that the United States presented, I

11    would need to find a determination that, yes, the plaintiff

12    is right on questions of liability; that the defendant

13    and/or the defendant interveners are liable; that there have

14    been a pattern and practice of constitutional violations

15    such that the Court's equitable power, injunctive power, is

16    appropriate.

17        And then I could proceed to determine what would be an

18    effective and appropriate and lawful remedy and there, if I

19    felt that the facts and circumstances warranted it, I could

20    enter appropriate relief even if that relief were

21    inconsistent with or violated or abrogated rights under the

22    collective bargaining agreement between the City and the

23    Portland Police Association.  That's the way I see it.

24        So it looks to me as if the right thing to do next is

25    to schedule a trial, because at -- right now it seems to

1    me -- again, this is where I'm going to be inviting your

2    feedback and your comments, but it seems to me that the

3    United States and the City on the one hand and the Portland

4    Police Association on the other really don't disagree that

5    there's a portion of the collective bargaining agreement

6    that is inconsistent with some of the relief requested in

7    the proposed settlement, and unless either the police

8    association drops its objections or the Government drops its

9    request for those provisions, then it seems that we have to,

10   then, make a judicial determination of whether there is or

11   is not liability.

12        Now, I'd also note that when I granted the motion to

13   intervene on behalf of the Portland Police Association, that

14   was requested by the Portland Police Association, remember I

15   did so only for purposes of remedy; their participation on

16   remedy.  Well, now it looks to me like I need to address a

17   motion to intervene on purposes of liability, as well.  It

18   seems to me that they should be allowed to intervene for

19   purposes of liability.  And, again, I'll hear whatever

20   arguments anyone wishes to make on that question, but it

21   seems to me that if we're going to be now addressing the

22   question of liability, since the reason why we're doing that

23   is because of the alleged conflict with the collective

24   bargaining agreement rights, it should be allowed to

25   intervene for purposes of liability.

1          Now, if that's right and if I don't allow them to

2     intervene for purposes of liability, then the next step

3     would be a trial date.  This, of course, is a bench trial.

4     The only relief being sought is declaratory relief and

5     injunctive relief.  There's no right to a jury trial here.

6     By the way, if anyone disagrees, let me know; but I don't

7     think there is.  And so I need to schedule a bench trial.

8          Now, under the Federal Rules of Civil Procedure, I can

9     bifurcate issues.  It's under 42B, and my plan would be to

10    bifurcate the issues and to hold a bench trial solely on the

11    question of liability.  That's all I would take evidence on.

12    That's all I would want to consider.  We would deal with the

13    appropriate remedy later if and when liability is found.

14         Again, if someone thinks that that is not the best way

15    to proceed, you're welcome in a few minutes to tell me that,

16    but that's the current state of my thinking on it.

17         That can raise the question, at least in my mind, and

18    I'm not seeing anything from any of the parties that answers

19    this question, so I'd appreciate your views on it.  And

20    folks primarily in the City, of course, is who's going to

21    defend that question of liability?  I know that the City

22    wanted to stipulate to the proposed settlement agreement

23    that was originally filed the first day this case began,

24    back in, I think, November of 2012.

25         Now, the City has a right, of course, to defend on the

1   liability question, but they don't have to.  And so at some

2   appropriate time, perhaps today -- but, if not today, then

3   soon -- I would like to know whether the City plans on

4   defending against the liability allegations asserted by the

5   United States.  If so, then that takes us in one direction;

6   but, if not, then so be it.  They don't have to.  There are

7   a number of civil cases that go to trial where a defendant

8   concedes liability and then proceeds directly to talk about

9   an appropriate remedy.

10       If the City decides not to challenge liability, and

11   maybe even if they do, then the question is will the

12   Portland Police Association want to be heard on questions of

13   liability and to defend liability issues and perhaps they

14   may be the only trial counsel, if you will, at that trial on

15   liability, or perhaps they'll do it in conjunction with the

16   City.  That remains to be seen.

17       But it seems to me that we need to, then, reach

18   conclusion on whether there is or is not a determination of

19   liability before we then proceed to the next phase, which is

20   an appropriate remedy.

21       And there I would envision, if -- and I -- I'm not

22   prejudging anything, but if there were a finding of

23   liability, then I would think that we would combine somehow

24   the remedy phase of the trial where the parties can each --

25   including intervener and including amicus -- can each

1    provide their input on the appropriate remedy based upon the

2    finding of liability, with that portion of a public hearing

3    or an opportunity to receive public input on an appropriate

4    remedy that I would otherwise hold if there were a fairness

5    hearing.

6        I'm not saying that particularly clearly, but here's

7    what I'm getting at:  If we bifurcate the trial into

8    liability first and then remedy later and if there were a

9    finding that, yes, there was liability, as part of the trial

10   on an appropriate remedy, where the parties and the

11   intervener and the amicus would all have the opportunity to

12   provide evidence and argument on the appropriate remedy,

13   which could very well simply be should we adopt the proposed

14   settlement agreement that the United States offers or should

15   there be some other remedial provisions, I would also like

16   to build into that an appropriate opportunity for public

17   comment on an appropriate remedy.

18       But that's down the road.  We can deal with the

19   specifics and the logistics of that later, after we make the

20   determination of whether or not there is or is not

21   liability.

22       At least that's how I view it.  And so it looks to me

23   like the next thing we should do, unless I'm missing

24   something, would be to grant the Portland Police

25   Association's motion for intervention for liability purposes

1   now, as well, unless someone wants to either defer doing

2   that or someone wants an opportunity to brief that issue,

3   but it does seem to me that that's the right way to proceed.

4   And also to schedule a trial date on the liability portion

5   only.  If someone wants to argue why it shouldn't be

6   bifurcated, I'll listen to that; but it does seem to me that

7   the right thing to do is to bifurcate and deal with the

8   liability and deal with remedy after that, if and when

9   there's a liability determination.

10          That's how I look at things right now.

11          I'm truly sincere when I say if anyone thinks that I'm

12   looking at it incorrectly, please speak up.  If anyone has

13   any better ideas of how to proceed, please speak up.  Anyone

14   who wishes to speak first, can do that.  But, in the absence

15   of seeing anybody raising hands and wanting to speak now, I

16   think I'll just go to my general order.  I'll call first on

17   the United States and then on the City and then on the

18   intervener police association and then on amicus, unless

19   somebody wants to raise a hand right now and speak first.

20          MR. GEISSLER:  Your Honor, this is Jonas Geissler

21   from the Civil Rights Division of DOJ in D.C.  Your Honor,

22   we would submit that for the issue of whether or not the PPA

23   should be granted intervention on liability, parties should

24   be permitted to brief that issue.  And, in fact, we do not

25   believe, as an initial matter, the PPA should have the

 1   ability to intervene on the liability issue.

 2           THE COURT:  Thank you, Mr. Geissler.

 3       Can you give me a general understanding of what sort of

 4   argument you anticipate presenting on that question?

 5           MR. GEISSLER:  I think I would do a disservice to

 6   my client to try to foreclose what arguments we may develop

 7   in light of Your Honor's opinion today.  However,

 8   from -- from our standing right now, it appears that the PPA

 9   would not have the standing to assert that they could not

10   consent to or be found liable on its own.  There is no

11   liability to the PPA members individually under the

12   injunctive relief that we seek.

13           THE COURT: All right.  Thank you.  Anything else

14   from anyone with the United States?

15       I see Ms. Brown standing.

16           MS. BROWN:  Yes, Your Honor.  Thank you.  Along

17   with the liability issue, and as Jonas mentioned, that we

18   don't seek any individual, you know, relief

19   against -- relief against individual members, but we do

20   believe, even before we get to that point -- I mean, we

21   agree with most of everything that you just -- just laid

22   out, as far as the process goes, with the exception to, you

23   know, what we talked about in our brief about conflicts with

24   collective bargaining agreements and sort of where we go

25   next.

1        I mean, we -- the United States does believe there are

2    a small amount of issues that may be subject to bargaining,

3    and that is something that, you know, we had previously

4    asked the Court, before we went into mediation, if we could,

5    you know, narrow the issues that may be subject to

6    collective bargaining, and the Court, understandably, said,

7    "Let's see if the parties can figure that out."  And at this

8    point in time we were unable to get an agreement on that.

9        But we do believe that there are -- there are issues

10   that would be subject to collective bargaining, but not

11   necessarily in conflict with the agreement.  So we do

12   believe that these issues -- there are many issues that

13   could be, you know, achieved through some sort of collective

14   bargaining, and we preserved that right in the -- you know,

15   in the settlement -- the proposed settlement agreement we

16   provided to the Court that this doesn't, you know, diminish

17   the ability for the City to collectively bargain issues that

18   are necessary to do so.

19       The other aspect of it is -- is the preliminary

20   questions that the Court thought needed to be resolved back

21   in its order on February 19th, and there were two

22   preliminary questions.  And I understand that, you know, the

23   Court at this point in time believes that there -- there may

24   be issues that do conflict, but we would ask that we be

25   provided an opportunity to brief those issues to the Court

1    prior to -- you know, I understand the Court would like to

2    set a trial date, and it's not that we have a problem with

3    that -- it's certainly a way to move a case forward, is to

4    set some dates and get the parties working towards those

5    dates -- but we would like the opportunity to be able to

6    brief the Court a little bit more about what, in fact,

7    the -- are the issues as to whether or not the settlement

8    agreement prejudices the legal rights of the PPA and of the

9    labor agreement.

10       And, you know, we do believe there is some concern

11   about use of judicial resources.  And even with the

12   evergreen clause, that if there is to be a new collective

13   bargaining agreement, that the Court would want to view the

14   scope in the -- in -- any prejudices that may exist under a

15   new collective bargaining agreement; not to say that we

16   should wait for that -- you know, forever, for that to

17   happen, but it very well may be that that -- that issues may

18   be able to be resolved, and, therefore, we would like the

19   opportunity to, I guess, provide the Court briefing on that

20   at a later -- at a later time, to allow those issues to go

21   forward.

22       As I said, we agree -- I think the bifurcation of a

23   trial makes sense, and I think the City does have some

24   issues to consider about whether or not they want to, you

25   know, concede to liability and whether or not PPA wants to

1    be heard, but on those issues, as Mr. Geissler said, we

2    would like an opportunity to brief the liability issues.

3            THE COURT:  Okay.  Thank you.

4        And what I heard Mr. Geissler also talk about is that

5    the Government wants an opportunity to brief the question of

6    intervention on liability, too.

7            MS. BROWN:  Yes.  That's what I mean.  Thank you,

8    Your Honor.

9            THE COURT:  Ms. Brown, I appreciate your comments.

10   I know this is probably what you would want to put into a

11   brief with more thought and more collaboration, but let me

12   ask you this now, anyway, based on what you said.  When you

13   talk about the fact that, yes, there are some number of

14   issues that may be in the proposed settlement that are

15   subject to bargaining, but when you say that they don't

16   necessarily conflict with the agreement, help me understand,

17   because here's what I'm seeing:  I'm seeing the proposed

18   settlement agreement says that if certain issues need to be

19   subject to collective bargaining, then collective

20   bargaining, with appropriate notices, will take place.  And

21   if the United States doesn't like the result of that or if

22   the collective bargaining process doesn't work and there

23   isn't an agreement reached, then the United States will

24   reserve the rights, if under the present settlement

25   agreement, if it were adopted, to come in and ask the Court

1    to order that the parties follow the settlement agreement.

2         So what that looks to me as, and this is where I'm

3    having problems with the *City of Los Angeles* decision from

4    the Ninth Circuit, it looks to me as if, well, there's a

5    possibility here that if there's a matter that's subject to

6    bargaining that doesn't result in everyone being satisfied,

7    including the plaintiff, the plaintiff can come in and have

8    me order the City to do something in a certain way,

9    notwithstanding the fact that it was not -- it was not

10   successfully bargained to the agreement between the City and

11   the Portland Police Association, and that may very well be

12   the right remedy that a court reaches after a judicial

13   finding of liability.  But absent that judicial finding of

14   liability, how could we possibly have that legal result

15   simply as a settlement agreement?

16        MS. BROWN:  We -- again, with the desire to have

17   some further collaboration, I don't disagree with you on

18   that.  I do believe that there is a possibility for the

19   issues -- any conflicts to be resolved through collective

20   bargaining, and I believe it's in paragraph 189 of the

21   proposed settlement agreement where we ask -- or the City

22   agrees that they will notify us if any term of the agreement

23   becomes subject to collective bargaining they'll keep us

24   apprised of that status.  If, indeed, there's a conflict

25   that can't come to resolution, that's the only way the Court

1    could order it, would be through a finding of liability.

2         MR. GEISSLER:  Your Honor, this is Jonas Geissler

3    again from the Civil Rights Division.  I would add that in

4    the scenario that you have placed before Ms. Brown, the

5    Court would be asked to apply upon whether or not a future

6    remedy would impair the PPA.  At this point in time that

7    issue is not yet ripe.  The settlement agreement, as

8    written, should not impair any rights of the union.  And

9    only if in the future the union refused or the City and the

10   union failed to arbitrate successfully in the outcome that

11   met the settlement agreement, only then would be asked to

12   implement.

13        THE COURT:  Now, Mr. Geissler, let me make sure I

14   understand what you're saying.  Take me through what would

15   happen in that future hypothetical.  So assume we have a

16   settlement agreement that's been approved, an unsuccessful

17   bargaining about some future issue, the United States then

18   wants me to enforce some substantive aspect of the

19   settlement agreement that could only be done if there were a

20   finding or determination of liability on the original

21   complaint.  How do we go about doing that in the context of

22   simply an enforcement proceeding of a settlement agreement?

23        MR. GEISSLER:  I -- at some future point we may

24   have to show liability, but at this point there's no legally

25   protected interest that is impaired that is a -- a -- a

1    necessary step of intervention in the liability phase.

2            THE COURT:  Now, I know you asked for an

3    opportunity to brief, and maybe the answer to my next

4    question will be that's what we would like to put in the

5    briefing, but do you have any case law that shows that what

6    you have just described is a lawful and workable solution in

7    this context?  Because it does look to me that it may very

8    well be in conflict with the Ninth Circuit's position in

9    *City of Los Angeles*.  On the other hand, it's also possible

10   that what we're talking about now is not necessarily

11   envisioned by the Ninth Circuit in *City of Los Angeles* and

12   therefore might be not covered by that opinion, in which

13   case my question is if there's any precedent that you're

14   aware of that supports the scenario that you're describing.

15           MR. GEISSLER:  Your Honor, I believe you're right.

16   The *City of Los Angeles* case did not address that specific

17   issue.  However, I'll agree with the Court's belief that

18   this is most appropriately addressed through briefing and at

19   a more extensive legal research on this particular issue and

20   probably on analogous cases, as there are very few cases

21   under 14141.

22           THE COURT:  Okay.  I understand what you're

23   saying.

24       All right.  Anything else from the Government at this

25   time on these issues?

1           MS. BROWN:  No, Your Honor.  Thank you.

2           THE COURT:  Does the City wish to be heard on

3    these issues?

4           MS. OSOINACH:  Yes.  Thank you, Your Honor.  I

5    guess just to clarify at the outset, I want to make it clear

6    that the City's position is that the settlement agreement

7    does not impair the collective bargaining rights and is not

8    in conflict with the PPA's collective and the City's

9    collective bargaining agreement.

10          What we did concede was that for the purposes of the

11   liberal intervention rules, under Rule 24 and the Ninth

12   Circuit's interpretation of that, that the PPA need merely

13   show that there was a hypothetical possibility that a

14   conflict could exist.  And for those reasons we conceded

15   that we thought that the PPA should be entitled to intervene

16   on the remedy portion, but we did not agree that the

17   settlement agreement and the CBA are in conflict.

18          As a second point, even if the Court were to find that

19   we had, in fact, by conceding the hypothetical possibility,

20   had conceded that there was a conflict between the CBA and

21   settlement agreement, I -- following the Court's lead in

22   pointing out of course that the old CBA is -- has expired

23   and despite the fact that it remains in full force and

24   agreement, it seems to me that the Court's role is to look

25   at the collective bargaining agreement, compare it with the

1    settlement agreement, and, since we know with certainty that

2    the new collective bargaining agreement will not be -- have

3    the same terms as the old collective bargaining agreement,

4    it seems to me that it -- there is some value in waiting for

5    the current collective bargaining process to play out so

6    that the Court can see what the new collective bargaining

7    agreement looks like.

8        And I think that's particularly appropriate in this

9    case, because the hypothetical nature of the conflict that

10   might appear before the Court I think very well could be

11   resolved in the collective bargaining process, because I

12   think it's very difficult to come up with scenarios where

13   something that would happen in the collective bargaining

14   process or something that would happen as a result of

15   arbitration would actually be a conflict that would be

16   presented to this Court and that this Court would be asked

17   to somehow override the results of the collective bargaining

18   process or what would happen in an interest arbitration or

19   what would happen as the result of a grievance.

20       And because of the speculative nature of it, it seems

21   to me that there's value in waiting 30 days, 90 days, for

22   the collective bargaining process to play out to see whether

23   or not the new collective bargaining agreement addresses the

24   speculative possibility that there could be a conflict.

25       So the City's position would be that we feel that it

1    would be helpful to have a date further out for us to check

2    back in with the Court and apprise you of the status of

3    those collective bargaining negotiations.

4         THE COURT:  Thank you, Ms. Osoinach, let me ask

5    you this:  Without going into positions, offers, or

6    counteroffers, can you just give me the sense of the

7    logistics and the general time table for how the City and

8    the Portland Police Association go about entering into a new

9    collective bargaining agreement?  Just, logistically and

10   temporally, how would that work?

11        MS. OSOINACH:  Sure.  Logistically, the City and

12   the PPA have a series of meetings that are -- have been and

13   will be set over the course of the next several months to

14   meet and exchange proposals.  At some point if the parties

15   declare that they are at impasse, the next step in the

16   procedure is for the parties to present their respective

17   proposals to an interest arbitrator who would then decide

18   which of the proposals was ultimately going to become the

19   collective bargaining agreement.

20       So at this point in the process I think probably the

21   best estimate that I could give you is that if the

22   negotiations had to proceed all the way to an interest

23   arbitration, where the arbitrator were to choose a proposal,

24   that that would be about six months from today when that

25   process would completely play out.  Of course in between now

1   and six months there are lots of opportunities for the

2   parties to come to agreement, but I would say that's, you

3   know, a -- a worst case or just a -- the lengthiest amount

4   of time scenario.

5           THE COURT:  One more question for you right now,

6   too, and if you want to answer this question by saying,

7   "It's too soon to tell," I'll accept that answer; but if you

8   can give me more information, I'll accept that, too.  And

9   that is question:  If I were to conclude that we need to

10  have a judicial determination on whether there is or is not

11  liability before we can deal with the issue of remedy, and

12  assuming -- you know, putting aside whether I do or do not

13  grant Portland Police Association intervener status for

14  liability purposes -- put that aside -- does the City know

15  now whether or not it would contest liability in whole or in

16  part or not at all?

17          MS. OSOINACH:  I think predictably my answer is

18  it's too soon to tell.  I can tell you we certainly thought

19  about exactly the scenario that you've just laid out; that

20  the Court might set a trial date.  So it is not that we're

21  uninformed.  It's just I think it's too soon for us to tell.

22  And, particularly, given the fact that the PPA has asked to

23  intervene on the merits, as you point out, that adds an

24  additional layer of consideration for the City.

25          And so I think the -- if the Court wishes to consider

1    the motion to intervene on the merits on the PPA's behalf, I

2    think probably that that, too, is -- is not ripe for

3    consideration, at least as of today, because, obviously, the

4    Court's analysis is going to be impacted by the City's

5    answer to your question about how we intend to defend or not

6    on the issue of liability.

7           THE COURT:  Okay.  Thank you.  By the way, that

8    answer does remind me there was a story I read somewhere

9    about the first meeting between President Nixon and

10   Chairman Mao from China when the President went for his

11   first visit to China.  They wanted to find some area of

12   discussion where they could break the ice; they could talk

13   about things that were not particularly controversial.  And

14   I think both advisors told both President Nixon and

15   Chairman Mao that both were interested in world history,

16   and, as I recall reading the story, President Nixon, early

17   on in the conversation, asked Chairman Mao whether he

18   thought the French Revolution of 1789 was good or bad for

19   the world, and Chairman Mao's response was, "It's too soon

20   to tell."

21      All right.  Any comments right now on any of these

22   issues or other issues that you wanted to comment on on

23   behalf of Portland Police Association, Mr. Karia?

24          MR. KARIA:  Thank you, Your Honor.  At the outset,

25   we are agreeable to the process as you've laid out, in terms

1   of bifurcation of the trial and whatnot.  In terms of the

2   issues raised by both Ms. Brown on behalf of the United

3   States and Ms. Osoinach on behalf of the City, I just wanted

4   to touch on some of those.  With respect to the notion of

5   let's just wait and see what happens in bargaining, the

6   difficulty with that is mainly the City is taking the

7   position that a number of, if not all of the issues related

8   to the proposed settlement agreement, are not subject to

9   collective bargaining, which raises the notion of if there's

10  nothing for collective bargaining in the proposed settlement

11  agreement why would we be waiting for the collective

12  bargaining process to be exhausted?  In other words, the

13  City would not be amenable for discussing, for instance, a

14  discipline guide at the bargaining table if it's taking the

15  position that a discipline guide is not something that it's

16  obligated to bargain over.

17       As to the issues of ripeness, whether these issues as

18  to liability and remedy are ripe, they are ripe, and I would

19  ask to address them individually.  As to liability, we did

20  brief these issues as to whether the PPA could intervene as

21  to the liability or merits phase in our briefing to you,

22  which resulted in your order.

23       And in that briefing we pointed to the same Ninth

24  Circuit case from the City of Los Angeles that we all seem

25  to be focusing in on.  And the standard enumerated there was

1    simply if the complaint raises an issue or request for

2    injunctive relief and in addition raises the notion that

3    there are unconstitutional acts by the officers who were

4    both employed by the City of Los Angeles and also union

5    members, that tips the boxes, if you will, for intervention

6    as to the merits.

7         So, in other words, I think we briefed this for the

8    Court, and I think we have the information before you, which

9    has prompted you to get to where you're at so far.  I don't

10   see much providence in regurgitating something to the Court

11   that it has before it.

12        As to the ripeness of these issues, we -- there seems

13   to be an identification of we're talking of speculation and

14   what ifs, and we respectfully disagree as to that notion.

15        What we have before us is a proposed settlement

16   agreement, which, for instance, requires the City to

17   implement a discipline guide.  The discipline guide -- the

18   notion of discipline as a general subject matter is

19   mandatory for bargaining under Oregon state law.  The

20   settlement agreement, if entered, would require the City to

21   agree to a discipline guide.

22        If we play out the hypothetical, if the discipline

23   guide was something the City and the PPA were to agree to

24   take to the collective bargaining process and the PPA takes

25   the position that we do not wish to have a discipline guide

1    and the City takes the position that we do wish to have a

2    discipline guide and we end up at an impasse, either the

3    parties do not end up with a discipline guide, whether as

4    ordered by an interest arbitrator, which is in conflict with

5    the proposed settlement agreement, and we get right back to

6    the notion that you identified, Your Honor, which is I am

7    now left with a piece of paper that is at odds with the

8    proposed settlement agreement and how can I now order

9    the -- the Portland Police Association to abide by the

10   proposed settlement agreement which says discipline guide,

11   whereas the parties have not agreed to a discipline guide

12   through the collective bargaining process without a finding

13   of judicial liability.  That issue is ripe.  It is before

14   us.  And it is ripe notwithstanding the notion that the

15   contract is expired.

16       The import of the evergreen clause is very important.

17   Article 3, within the Portland Police Association's contract

18   with the City.  It's called a maintenance and benefits

19   clause.  And what the maintenance and benefits clause states

20   is that all conditions of employment that are mandatory for

21   bargaining must be maintained at no less than the current

22   level, unless the parties agree, through collective

23   bargaining, to modify those issues.

24       So, for instance, a discipline guide, which the PPA

25   asserts is mandatory for bargaining, could not be agreed

1   upon or -- could not be implemented unilaterally by the City

2   unless the City wishes to violate Article 3 of the contract.

3        Article 3 of the contract survives the expiration of

4   the contract under the evergreen clause.  And so what we're

5   left with is, according to the association, an obligation on

6   the City and PPA's part not to upset the apple cart as it

7   relates to current collective bargaining matters, until they

8   agree, through collective bargaining, to modify the

9   agreement.

10       So if the City is now saying, through its proposed

11  settlement agreement, that it shall and will agree to enter

12  into a discipline guide without first getting the

13  association's agreement on that issue, it's essentially

14  presenting the association with a fait accompli.  The City

15  must have its discipline guide in order to comply with the

16  proposed settlement agreement.  Of course now we're left

17  with a situation at the PPA, through the collective

18  bargaining process, that says, no, can this Court then tell

19  the Portland Police Association you shall have a discipline

20  guide without a finding of judicial liability?  That issue

21  is ripe before us, and we think the answer is clearly no

22  under the Ninth Circuit's precedent.

23            THE COURT:  Let's follow that through.

24       Now, am I correct in concluding, if I were to agree

25  with you on that point, that if there were to be a trial and

1    if there were to be a finding of -- a judicial finding of

2    liability, then the Court has the legal authority, as part

3    of its remedy, as part of its equitable or injunctive relief

4    in the remedy stage, to order the City of Portland to have a

5    disability guide, perhaps with the sort recommended by the

6    United States, and that's what the Court orders,

7    notwithstanding anything that may otherwise be in conflict

8    between that order and the collective bargaining agreement?

9    Am I correct?

10         MR. KARIA:  Yes, Your Honor.  Based on what the

11   Ninth Circuit has told us, it's upon your finding of

12   liability.  If, yes, the City is liable for the issues

13   raised by the United States in the complaint and if, yes,

14   you find liability, you would then ask yourself, at the

15   remedy phase, is this a reasonable and appropriate remedy, a

16   discipline guide in this particular instance?  And if you

17   determine, yes, a discipline guide is reasonable and

18   appropriate, according to the Ninth Circuit, it is, yes, you

19   can tell the Portland Police Association that it shall have

20   a discipline guide.

21         THE COURT:  And if I heard you correctly -- tell

22   me if I didn't, but if I heard you correctly, you and your

23   client do not disagree with my approach of bifurcating

24   liability from remedy phases; correct?

25         MR. KARIA:  That's fine with us.  Yes, Your Honor.

1            THE COURT:  So am I hearing you say that you would

2    urge the Court both to allow PPA to have intervener status

3    for liability purposes and then proceed to the trial phase?

4            MR. KARIA:  Yes.

5            THE COURT:  Okay.  When would you recommend that

6    that trial be held?

7            MR. KARIA:  In due course.  Given the breadth of

8    the complaint, I would ask for at least 90 to 120 days to

9    allow us some minimal discovery so that we have an

10   opportunity to identify the particular instances of

11   unconstitutional conduct that the United States have alleged

12   in their complaint.  You know, given the pleading

13   requirements before this Court, we don't have a

14   particularized notion of exactly which cases it believes

15   constitute unconstitutional uses of excessive force.

16       Once we identify those, through some very quick --

17   hopefully, quick and easy discovery process, that we would

18   set a trial date 90 to 120 days from that.

19           THE COURT:  Again, I'll give you the opportunity,

20   as I give everybody, you're welcome to say, "It's too soon

21   to tell," or, "I'd rather not answer this question now," but

22   my question is this:  If we were to move forward towards a

23   trial date on liability and if it were to turn out that the

24   City of Portland chooses not to defend on the questions of

25   liability, is the Portland Police Association, if granted

1  intervener status for liability purposes, prepared to defend

2  the case on liability questions?

3          MR. KARIA:  Yes.

4          THE COURT:  Okay.  Thank you.  Anything further

5  you wish to add at this time, Mr. Karia?

6          MR. KARIA:  No, thank you, Your Honor.

7          THE COURT:  Views from the amicus, Albina

8  Ministries Association, either Ms. Albies or Ms. Curphey?

9          MS. ALBIES:  Thank you, Your Honor.  In terms of

10  the Court's position on bifurcation, that's not something

11  that the AMA Coalition -- that sounds reasonable.  We

12  would -- if you want to express the AMA Coalition's concerns

13  about further delay on the implementation of the settlement

14  agreement while the AMA Coalition has serious concerns that

15  remain as briefed when we filed our motion to intervene

16  about whether or not the settlement agreement goes as far as

17  it needs to go and those considerations and concerns remain

18  today, we're concerned about further delay and

19  implementation of the portions that might not address or

20  impact collective bargaining agreement.

21      In terms of moving forward, the AMA Coalition -- we

22  understand that we have an amicus status with regard to

23  the -- excuse me, with regard to the remedy phase, but we

24  would also request to take part in the same type of way in

25  the liability phase, specifically to address and weigh in on

 1   whether collective bargaining of this -- whether this issue

 2   is addressed, whether collective bargaining is impacted, and

 3   how.  I think there's a lot of public policy consideration

 4   involved in that.  And while the DOJ is certainly confident

 5   and capable of addressing a lot of those issues, I think,

 6   for the reasons we were granted amicus status, the community

 7   perspective on those issues is also very important.  So we

 8   would like to take part of the liability phase, as well.

 9        And, you know, how that looks, we would leave it to the

10   Court, but we do think it's important to be present for that

11   and to weigh in on that.

12        I think that's kind of the gist of what I wanted to say

13   with the AMA Coalition, but I'm happy to entertain any

14   further questions.

15             THE COURT:  I want to follow up a little bit on

16   your first point.  And with respect to your second point I

17   am inclined to agree that the AMA Coalition should continue

18   to have its enhanced amicus status with respect to liability

19   issues.  I do value the input from all the parties,

20   including the AMA Coalition.

21        You're not asking -- you're not reviewing a request for

22   intervener status, and, if you were, I would be disfavored

23   to grant it anyway, but I'm inclined to allow the AMA to

24   have the enhanced amicus status to continue for the

25   liability phase.  I'll give the parties an opportunity, if

1    they want, to file any written objections to that before

2    making a final decision, but I'm inclined to agree with you

3    on that.

4         But with respect to your former point about the

5    concerns about the amount of time it's taking before we

6    actually get to a remedy that the -- to the problems that

7    plaintiffs alleged and I think that the AMA is concerned

8    about as well, what does that tell us for all practical

9    purposes?  I do really think the right decision is to

10   bifurcate between liability and remedy.  That doesn't

11   necessarily mean we have to have months or more between

12   those two phases.  We can go from a liability phase to

13   a -- immediately to a -- a remedy phase, you know, within a

14   matter of days or a week or two or three, if we need to.

15        I just think in terms of hearing the evidence it seems

16   to me that it makes more sense to bifurcate.

17        Do you disagree with that, or do you think the evidence

18   really is in common?

19             MS. ALBIES:  I don't disagree that it makes sense

20   to bifurcate it.  I'm wondering if it would be helpful for

21   the Court to weigh in on what matters are subject to

22   mandatory bargaining, required by the bargaining, because

23   there may be agreement that areas are not -- and those areas

24   in the settlement agreement can go forward without

25   grievances being filed and that sort of thing.  So part of

1    me -- you know there's a part that wonders if briefing on

2    the collective bargaining aspect would be helpful to the

3    parties, including the City and the PPA, and going forward

4    on collective bargaining, as well.

5            THE COURT:  To what extent -- really this question

6    is addressed to all four sides.  Obviously, a federal court,

7    under Article 3 of the Constitution, can't give advisory

8    opinions.  So to what extent would the Court's view on what

9    areas of the proposed settlement agreement would or would

10   not be subject to collective bargaining, to what extent

11   would that be an impermissible advisory opinion versus to

12   what extent would that be a non-advisory and perfectly

13   permissible decision as part of the Court's decision-making

14   process here to either approve or disapprove a settlement or

15   to make appropriate liability and remedy determinations with

16   respect to the complaint?

17       Anyone want to be heard on that?

18            MS. ALBIES:  I'll defer to the Department of

19   Justice.

20            MS. BROWN:  Your Honor, again, we certainly would

21   want to have a little time to confer with the colleagues

22   that are on the phone, but I do believe that it could -- it

23   could help determine the two issues that the Court

24   identified in the February 19th order that the question is

25   whether or not the proposed settlement agreement, in fact,

1    prejudices the legal rights of the PPA under the labor

2    agreement, and if it does prejudice legal rights, then to

3    determine whether that conclusion necessarily precludes the

4    authority of the Court to approve the proposed settlement

5    agreement.

6         So I do think it could -- those are the types of issues

7    we could address in that briefing, and so that -- that -- as

8    far as allowing the Court to decide that there are -- if not

9    the entire settlement agreement, portions of the settlement

10   agreement, that -- that the Court can go ahead and approve

11   and -- and allow us to move forward on, could be -- could be

12   helpful in -- in condensing the issues that are left between

13   the PPA and the City.

14        THE COURT:  Anyone else wish to be heard on that

15   issue?

16        MS. OSOINACH:  Yes.  Thank you.  The City.  We

17   agree that -- I think that would be helpful to brief the

18   first question that you asked in your initial opinion that

19   Ms. Brown just cited.  I think that would be helpful both to

20   the parties in this proceeding as well as in the collective

21   bargaining process.

22        THE COURT:  Anyone else?

23        MR. KARIA:  Thank you, Your Honor.  I -- the

24   struggle that I think I'm having with this sort of an

25   analysis is that it takes us away from -- to use some loose

1    terminology -- kind of an all-or-nothing approach, which the

2    Ninth Circuit seems to implicitly be using in terms of when

3    it's approving a settlement agreement or consent decree of

4    looking at the agreement in toto.

5        Now we're possibly looking at severing out pieces of

6    the settlement agreement.  I'm not quite sure if that's the

7    direction the Ninth Circuit has given us or whether that's

8    actually a feasible direction.  All eyes seem to be on the

9    collective bargaining implications here as it relates to the

10   remedy.

11       There is still the issue, obviously, of the PPA's right

12   to intervene as to the liability phase, which the Ninth

13   Circuit set as a pretty low threshold and it explained -- in

14   our briefing to you, which has led us so far to this point,

15   explained that, yes, that per the Ninth Circuit it seems

16   that that low threshold is met.

17       And once we get to the liability phase or the merits

18   phase, there's no issue of whether -- are there collective

19   bargaining implications or not as to liability.  As to the

20   remedy, sure, if I can see the Court's interest in whether

21   collective bargaining rights may be impaired.  The question

22   of will they be impaired or may they be impaired, what we

23   also struggled with is is that the necessary step to take if

24   the Ninth Circuit has told us that in order to gain party

25   status in the -- in the affair, all the association must

1    show, as to remedy, is that the rights may be impaired.  But

2    if they've also been granted standing as to a party status

3    as to the liability, should we be, then, having both a -- a

4    discussion about liability and a discussion about remedy

5    simultaneously, when, without liability, we definitely

6    shouldn't necessarily be jumping directly to remedy quite

7    yet.

8              THE COURT:  I'm not sure I agree that -- at least

9    on the 14141 -- the section 14141 context, the Ninth Circuit

10   has said it's an all-or-nothing approach.  Frankly, even on

11   traditional class action settlements that's a little bit

12   ambiguous.  Is there case precedent I should look at that

13   you're aware of?

14             MR. KARIA:  Not aware of off the top of my head,

15   but I'm happy to look and provide that to the Court.

16             THE COURT:  I really did not think that

17   that's -- at least that's not my understanding of the

18   Court's rule, to simply do an up-or-down, all -- as you put

19   it, all-or-nothing approach.  I don't -- that's not the way

20   I understood it.

21        All right.  Anyone else want to --

22             MR. GEISSLER:  If I may, Your Honor, from the

23   Civil Rights Division's perspective, there is no necessity

24   to do an all-or-nothing approach, but, rather, if an

25   intervener is permitted to block remedy, the fact that it's

1    impaired, then that intervener would hold hostage the

2    imposition of remedies necessary for the remediation of

3    constitutional violations.

4        If the issue here is whether or not the PPA has a

5    legally protected interest that would be impaired, to

6    determine what portions of the settlement agreement would

7    have such an impairment -- we contend none -- it would

8    likely contend a much broader breadth of provisions that

9    they have in their initial briefing.  And that is -- right

10   now that if -- it really is a -- is an impediment limitation

11   to think they have nothing to do with the PPA.

12            THE COURT:  And I assume that was you,

13   Mr. Geissler, speaking; correct?

14            MR. GEISSLER:  Yes, Your Honor.  Thank you.

15            THE COURT:  And, frankly, what you've said is

16   consistent with my understanding from the cases that I've

17   read on this point.  That doesn't mean it's a final ruling

18   on any of these issues, but that's how I understood it, as

19   well, because it does say in the cases that I've seen that

20   the interveners do have a right -- or parties in the

21   position of what PPA is right now, it does have a right to

22   be heard to protect its protectable rights but does not have

23   the right or ability to thwart the implementation of the

24   entire settlement, provided that there's been an

25   appropriate -- procedurally appropriate vehicle used that

1    may result in the abrogation of collective bargaining

2    rights.

3       All right.  Here's where we are -- unless anyone wishes

4    to be heard further on any issues right now -- go ahead,

5    Ms. Albies.

6            MS. ALBIES:  Ms. Albies for the AMA Coalition.  I

7    don't know if I was entirely clear, although I understand

8    the Court probably assumes that the AMA Coalition would also

9    like to be heard on whether there's any briefing regarding

10   the PPA's intervener status in the liability phase.

11           THE COURT:  Okay.

12      Here's what I think we should do, and then I'll give

13   you all sort of one final attempt to try to talk me out of

14   this if you want.  Here's what I see:  I see three issues

15   right now I'm about to talk to you about.  Number one,

16   additional briefing.  I'm inclined to grant it.  And here's

17   the way I think it should proceed:  At a given date -- and,

18   by the way, I'll solicit your opinion as to when this

19   opinion should be, but at the given date for the filing of

20   opening briefs, I would like any party that wants to file an

21   opening brief to at least include, quite clearly and

22   explicitly, the following:  Number one, what specific

23   questions do you want the Court to answer?  And that could

24   be, of course, should the PPA be given intervener status for

25   liability purposes, as well as the other issues that we've

1  been talking about?  Point two, from your client's

2  perspective, what are your proposed answers to the questions

3  listed in section one?  And then, three, what are your

4  reasons or legal precedent and arguments that support your

5  proposed answers to the specific questions?

6      Okay.  That's relatively easy.

7      Then for any responsive brief that anybody may file,

8  that responds to what anybody else has said -- again, I'll

9  ask your opinion on when the appropriate date for that

10 should be -- I would like you to address the following:

11 First, are there any additional questions that have not yet

12 been presented to the Court; two, what are your responses,

13 or do you agree or disagree with somebody else's proposed

14 answers?  And here if you want to factor in that the Court

15 shouldn't answer some of the questions, your answer could

16 either be "We disagree with so and so's proposed answer," or

17 "We don't think that the Court should address it, because

18 it's an advisory opinion" or any other reason, or both, in

19 the alternative.  But the second section would be what are

20 your response to what the first party or the party you're

21 responding to is proposing in the answers?  And then the

22 third section is give me your -- I don't want -- I want it

23 clear and very easy for me to find.  And the third section

24 would be any reasons, arguments, legal precedence that

25 support whatever your responses are.

1    And then I would give folks a very brief time and typed

2    page limit on any reply briefs.  I really don't think I have

3    to make page limits beyond the 35 pages.  I think 35 pages

4    is enough for the opening two briefs.  The rely brief I

5    would like to see 10 pages or less.  Get right to the point.

6         So that's point number one.

7         Point number two:  I would like to hear your proposed

8    schedule for those three rounds of briefing.  I would

9    anticipate to schedule an oral argument to deal with all of

10   that.

11        And so I would like to hear your proposed schedule on

12   those four things:  The opening brief, the responsive brief,

13   the reply brief, and the oral argument.

14        And then third and, finally, should I schedule a trial

15   date now?  A trial date on liability issues.  And, if so,

16   when; and, if not, why not?

17        Those are my last questions to you.  Before I give you

18   the answers, I'll give you the opportunity to provide input

19   on what those answers should be.

20        First, the United States.

21             MS. BROWN:  Your Honor, first of all, we

22   definitely appreciate the opportunity to do additional

23   briefing and are -- are completely willing to comply with

24   the Court's laying out of the different types of briefs and

25   the page limits.  As far as the schedule for briefing and

1  for oral argument, we'd like the briefing to begin no

2  earlier than 90 days from now.  And so, again, to give the

3  parties some time to try to work these issues out and to

4  save in the interest of judicial economy and our precious

5  resources, if, indeed, we don't have to brief issues and

6  things can get worked out, then all the better for

7  everybody.

8      So that would be our proposed schedule for briefing, is

9  to start it, pick a date 90 days for the -- the due date for

10  any additional briefing, and then set the subsequent briefs

11  according to the Court's typical schedule for responses and

12  replies.

13      And while, you know, typically, I think -- I think

14  typically we would like to see the case move forward with

15  trial dates and discovery and motions, and things like that,

16  I -- I do believe that it's -- so much is going to ride on

17  the Court's consideration of these very important issues,

18  that we wait and set a trial date until after the Court has

19  heard the briefing.

20          THE COURT:  Okay.  And, typically, it's the

21  plaintiff who wants to get to trial sooner rather than

22  later.

23          MS. BROWN:  Yes, Your Honor.

24          THE COURT:  Obviously, you're trying to enforce

25  interests that -- and needs that you believe are very

1    important.  I've read through the complaint, so I think it's

2    significant that the plaintiff is not urging me to have a

3    trial date sooner rather than later.

4            MS. BROWN:  Yes, Your Honor.  Thank you.

5            THE COURT:  The City?

6            MS. OSOINACH:  Thank you, Judge.  As to the

7    briefing schedule, we appreciate you asking these questions

8    and allowing us the opportunity to brief on them.  Like

9    plaintiff, we think that 90 days, or at least some time in

10   October, for the first opening brief.  By that point I think

11   we will have additional information that will shed light on

12   these issues.  And, like plaintiff, I think it's premature

13   to set a trial date, and we would ask that the Court not do

14   that.

15           MR. KARIA:  Thank you, Your Honor.  Anil Karia for

16   the PPA.  Respectfully, we think briefing is probably

17   unnecessary.  We would see three potential questions put

18   forth before you, Your Honor, which is can the PPA -- may

19   the PPA intervene as to liability?  I think the answer -- I

20   think the briefing has already been provided to you on that

21   issue, since when the PPA moved to intervene we moved to

22   intervene both on the liability and remedial phases.

23       So with all due respect to my esteemed counsel, I think

24   we have everything before you that we already did -- found

25   necessary to get that answered question.

1    As to the remaining at least obvious questions that the

2 parties would at least make an attempt to answer for you,

3 which were the questions you initially posed in your order,

4 the first question is will the PPA's collective bargaining

5 rights be impaired with the United States's concession that

6 there are some collective bargaining agreement rights out

7 there that will be impaired.  I don't think we necessarily

8 have to find a full and complete briefing schedule just to

9 answer that question when the plaintiff has already agreed

10 that there's something out there that -- that could pose

11 problems for the collective bargaining side or, excuse me,

12 will pose problems on the collective bargaining side.

13    As to the last question that you had posed within your

14 briefing, which was can I impose changes to the collective

15 bargaining agreement without a judicial finding of

16 liability, I think the Ninth Circuit answered that question.

17 And although other circuits -- I have not read every single

18 circuit's take on this particular issue, but the Ninth

19 Circuit, having spoken, has probably lent us the guidance we

20 need.

21    As to a trial date, I -- we do respect the need for

22 judicial efficiency and the scarce resources that the

23 federal government is now working with, given the

24 sequestration, and whatnot, and so while we'd be agreeable

25 to setting the trial date out further to allow us to

1 continue discussions, we would seek to have a trial date set

2 so that the parties at least have some finish line as to

3 that issue in sight.  Thank you.

4          THE COURT:  Thank you.

5          MS. BROWN:  Your Honor, if I may just respond

6 one --

7          THE COURT:  You may.

8          MS. BROWN:  I just want to make it clear that the

9 United States has not conceded that this proposed agreement

10 impairs or conflicts with the collective bargaining.  We

11 believe there may be some issues that are subject to

12 collective bargaining, but not that it impairs collective

13 bargaining.  So I just wanted to make that point clear.

14          THE COURT:  The argument I'm hearing, and I heard

15 it from Ms. Osoinach, as well, is that the position of the

16 United States and maybe even the City, as well, is that

17 there may be provisions in the proposed settlement agreement

18 that might trigger the need for collective bargaining.  And

19 if collective bargaining results in an agreement that is

20 satisfactory to the City and to the Portland Police

21 Association and to which the United States does not object,

22 well then that problem is solved.  To the extent that there

23 is not collective bargaining, then I think everybody is in

24 agreement that the Court can't simply enter an order and

25 forcing as part of the settlement agreement something that

1  would violate collective bargaining rights of the Portland

2  Police Association or its members, but that there may be

3  other procedural vehicles, such as holding a limited trial

4  on liability purposes to see whether or not the Court should

5  then order, as some extension of the settlement agreement,

6  some additional remedy.

7      And the only question I think -- that's what I'm

8  hearing from both the United States and the City.  The

9  question that's in my mind is can I do that as part of a

10  settlement agreement?  Because what we're talking about is

11  that would be a dispute resolution mechanism that would be

12  built in to a settlement agreement, as opposed to don't I

13  have to make some finding of judicial liability on the

14  original complaint before I can ever do anything that

15  results in an abrogation of the collective bargaining

16  agreement.  That seems to be how I'm reading the *City of Los*

17  *Angeles* case, but I could be wrong.  There could be other

18  precedent.  I could be misunderstanding something.  You

19  could talk me out of that approach.  But that's the

20  question, the unresolved question, where at least I'm

21  hearing today is the United States and the City saying not

22  necessarily, but I'm hearing the Portland Police Association

23  saying, yes, that is how you have to do it.

24          MS. BROWN:  And that, Your Honor, is, I believe,

25  what the Court hasn't heard, or I disagree with my opposing

1    counsel, Mr. Karia.  I don't believe the Court has heard the

2    briefing on the two important issues it raised in its

3    February 19th opinion and therefore would desire -- United

4    States would desire to provide the Court that information on

5    whether or not it does in fact -- this proposed settlement

6    agreement does, in fact, prejudice legal rights of the PPA

7    under the labor agreement.

8            THE COURT:  And I'm inclined to agree with the

9    questions -- the two questions you're referring to of course

10   are on page 19 of my February 19th opinion, which is docket

11   32.  I'm inclined to agree.  We have not had briefing on

12   that.  That's why I said on that page that we need to have

13   briefing on that if there is no settlement.

14           What I do think I agree with Mr. Karia on, though, is

15   I've seen a lot of briefing on whether or not the PPA should

16   or should not be allowed intervener status on liability if

17   there is no settlement.  I deferred ruling on it.  I didn't

18   rule on it.  I didn't reject their motion.  I deferred

19   ruling on it, in part, because I figured why do I need to

20   address that question if there's a possibility of settlement

21   if there's not going to be a settlement, well, then I need

22   to address it.

23           Do I think I need more briefing on that question?

24   Honestly, no.  But if someone really wants to address that

25   as one of their proposed questions and use up part of your

1   page limitations on that answer, fine.   You can add a little

2   bit more to it if you want.

3              MS. BROWN:   Okay.   Thank you, Your Honor.

4              THE COURT:   All right.   Where were we?   Did I hear

5   from -- I think I need to hear from AMA on some of these

6   scheduling issues.   Did I already hear that and miss that?

7              MS. ALBIES:   No.   Thank you, Your Honor.   We agree

8   with the proposed additional briefing and how you framed it,

9   and we appreciate the Court's framing it for us.

10      Because, as I've already mentioned, the delay that's

11   already been ongoing in this case, we would urge the Court

12   to set a briefing schedule in 30 days.   First brief is due

13   in 30 days.   You know, we recognize that the DOJ and the

14   City are in agreement about a longer period, but we do think

15   that there are areas of the settlement agreement that can

16   move forward without impacting collective bargaining, and we

17   think that those should be starting to move forward in a way

18   that -- if there's a possibility and a way to do that, then

19   we would like to find that way.

20      And with regard to the trial date, it seems, just for

21   the purposes of everybody's schedule and determining what

22   the Court decides on briefing, that we would weigh in on

23   that at a later date.   We will agree with everyone else that

24   a trial date, while I agree with Mr. Karia, would help kind

25   of set the end line here, we also want to kind of get things

1    moving, but recognize people's -- the briefing issue is

2    going to take precedence.

3            THE COURT:  I understand the objective that you're

4    seeking is to try to see if we can get as many problems that

5    the AMA perceives exists right now solved sooner rather than

6    later, but I -- and I think that reaching an ultimate

7    resolution in getting a trial date, assuming there is a

8    finding of a liability, which I'm not prejudging, but if

9    there were and we imposed some remedy, hopefully the remedy

10   would be successful, and that may be a positive factor

11   towards reaching some improvement.

12      But I don't see how simply accelerating the briefing on

13   this -- the questions that -- these preliminary questions

14   that we're now talking about would necessarily play that big

15   of a role.  What am I missing?

16           MS. ALBIES:  Well, to the extent the parties brief

17   and the Court weighs in on what is subject to -- what kind

18   of prejudicial impact the settlement agreement might have on

19   collective bargaining and the parties are in the collective

20   bargaining, it might help frame the issues to help that

21   process move forward.

22           THE COURT:  Ms. Brown, any further thoughts on

23   that, given that you're the one asking for 90 days, although

24   the City agrees with you?

25           MS. BROWN:  I -- my only -- my only thought is

1  that while I understand what Ms. Albies is saying, that I

2  would hate for briefing to distract from the efforts of

3  collective bargaining.  And while I'm not involved in

4  collective bargaining and certainly I can turn my attention

5  to briefing -- although, I have plenty of other work to do,

6  you know, that is our -- our overall concern is to give

7  parties an attempt to do collective bargaining or other

8  means in an attempt to try to figure this out without

9  devoting precious resources to briefing.

10        THE COURT:  Ms. Osoinach, I assume the City agrees

11  with that?

12        MS. OSOINACH:  Yes.  Yes.  We -- I think it would

13  be very helpful in the process to have additional time, so

14  we agree with the plaintiff.

15        THE COURT:  And, Mr. Karia, you --

16        MR. KARIA:  Yeah.  Thank you, Your Honor.  To the

17  degree that the Court is inclined to set and have briefing,

18  I do agree with the United States and the City of Portland

19  that at least 90 days out to allow us the opportunity to

20  focus some significant attention on the underlying issues

21  would be a good course of action.

22        THE COURT:  Okay.  I'm inclined to agree and

23  accept the 90 days with the following caveat:  I'm now going

24  to add to one of the questions that I would like you all to

25  answer.  You can briefly answer it and a brief reason.  When

1   should the trial date be?  Please add that to your briefing.

2       Feel free to confer with each other, too, because if

3   you can all agree on that, it will make things more likely

4   that you will get what you want.  But I would like to --

5   I'll give you the 90 days on the briefing, I'll give you the

6   briefing schedule in a few minutes.  But once we're done

7   with those preliminary matters, and I've made those

8   decisions, I want to move rapidly to trial.

9       So figure out what discovery you're going to need.

10  Figure out who will and will not be fighting on liability

11  issues or not.  Figure out what discovery you need, both

12  plaintiff and/or defense directed, in order to be able to

13  get this case to trial.  And I want an early trial date, as

14  early as we can possibly make it, given all the complex

15  issues we have to address, because I do want to move this to

16  conclusion.

17      And my inclination, and I don't hear any disagreement

18  from anyone, is we should bifurcate and hear liability

19  issues first at trial.  But feel free, also, to tell me if

20  you think we should move promptly into a trial on remedy

21  issues or not.  What are your proposed schedules?  You don't

22  have to spend too much time or analysis on this, but I would

23  like to know your thinking and now you know my thinking.

24  I'm willing to give you the time to work through the issues

25  we've been describing, discussing, but I do want to make

1  sure that we don't lose sight that the complaint alleges

2  some very serious issues that are filed, and, in the absence

3  of a settlement agreement, that will then result in a

4  fairness hearing, where the community can participate, there

5  will be a trial on the merits.

6      All right.  Here's what we're going to do.  90

7  days -- today is July 18th.  The first round of briefs will

8  be due on October 21st, 2013.  That's 90 days, taking us to

9  the following Monday.  Is that right?  So we have -- yeah,

10 so October 21st.

11     I think it's sufficient to have two weeks for the

12 response and two weeks for the reply.  Anybody want to try

13 to talk me out of that?  Done.  All right.  Responses due

14 November 4th, 2013.  Replies due November 18th, 2013.

15     Give myself about two weeks to read -- make sure I've

16 read everything.

17     How are you on oral argument -- I have a trial that

18 week.  One moment.  How are you for oral argument on

19 Tuesday, December 3rd?

20         MR. GEISSLER:  Civil Rights Division.  I'm

21 available that date, Your Honor.

22         THE COURT:  Okay.  Seeing nobody else who wants to

23 make any objections on that date, any preferences for

24 morning or afternoon?  This may be a several-hour hearing.

25 It may not be.  I don't know.  But I'll give you a couple of

1   hours if you need it.   Any preference on the morning or

2   afternoon?

3           MS. BROWN:   United States has no preference.

4   Morning, I guess, would be preferable, as far as travel

5   involved from D.C., but --

6           THE COURT:   Let's schedule it -- hearing nobody

7   else, so let's schedule Tuesday, December 3rd, 10:00 a.m.

8   I'll give you two hours that morning for oral argument.

9       And as you think about when a trial date might be, this

10  was looking to me like it really should be the following

11  summer, or so, a couple of months of discovery.   I don't

12  know whether anyone is going to have a summary judgment or a

13  partial summary judgment motion, but we can do those fairly

14  quickly.   But it's looking to me like sometime summer of

15  2014 for a trial.   But you all can talk among yourselves and

16  give that some thought and let me know if you can agree on

17  something and what your preferences are.

18      Is there anything else we need to or should cover in

19  this morning's hearing?   Let me start with the Government,

20  the U.S.

21          MR. GEISSLER:   Your Honor, this is Jonas Geissler,

22  from the Civil Rights Division, again.   May I take it that

23  the parties may hold off on doing 26(a) disclosures until

24  after Your Honor's opinion on this additional briefing so

25  that we have a better understanding of the scope of the

1   hearing?

2          THE COURT:  Yes.  As a matter of fact, this

3   district generally has a practice of the parties stipulating

4   to waiving 26(a) disclosures and moving directly into

5   traditional forms of written and deposition discovery.

6       I don't think there's been a waiver filed here.  Let me

7   know if there's a problem along those lines; but generally,

8   yes, I'm not expecting 26(a) disclosures to be made right

9   now.  Let me know if the parties will or will not be waiving

10  26(a), but you don't have to do that right now.

11         MR. GEISSLER:  Thank you, Your Honor.  Nothing

12  else from the Civil Rights Division today.

13         MS. BROWN:  Nothing else, Your Honor.

14         THE COURT:  From the City?

15         MS. OSOINACH:  I just have one clarifying question

16  I think would be helpful for my clients.  On the issue of

17  the PPA intervening on the merits in the City's

18  decision-making with regard to how it will defend on

19  liability, is -- am I hearing from the Court that regardless

20  of whether or not the City chooses to defend on liability,

21  that the Court is inclined to believe that the PPA may

22  intervene on the merits?  So what I'm asking is if the City

23  were to choose to defend on liability, would we be

24  partnering with the PPA?  Is that the Court's inclination?

25         THE COURT:  Sure.  My -- my -- the way I'm looking

1    at it now, and it's subject to reading the briefs again or

2    reading any additional arguments folks want to make.  I'm

3    inclined to think that the PPA should be allowed to

4    intervene on liability.  I will look at arguments or

5    additional arguments folks want to make, but that's how I'm

6    tentatively looking at it.

7          That said, it's entirely possible that the City may or

8    may not want to defend on liability, in whole or in part,

9    and may end up agreeing, or disagreeing, on many issues or

10   even on some issues with respect to the PPA, defending on

11   liability if they're able to defend on liability.  And, you

12   know, the good news is it's a bench trial, not a jury trial,

13   so if things get a little cumbersome, so be it.  I can deal

14   with it.  If the City wants to take certain positions on

15   liability issues that are different from the PPA's position

16   on liability issues, so be it.

17         My job is to come up with the legally and factually

18   correct answer under the law, and, based upon evidence as it

19   is presented to me and as I see it.  Everyone -- all the

20   parties to this case are simply here to both represent their

21   client's interests and to provide their client's

22   perspectives on the evidence and on the law to the Court, as

23   the Court fulfills its responsibility.

24         And if the City and the PPA agree on some issues or

25   disagree on other issues, either legally or factually, so be

1    it.  If the City wants to present some witnesses on which

2    the PPA does not want to cross-examine, so be it.  If the

3    City doesn't want to present certain witnesses, but the PPA

4    does, so be it.  We'll deal with it.  Everybody -- if the

5    PPA is allowed full intervener status as a defendant

6    intervener, then they would have a right to present their

7    defense just as in any other civil case where we have two

8    defendants who may have some areas in common and some areas

9    where they disagree.  And sometimes they even assert cross

10   claims against each other and point the finger at each

11   other.  So be it.  The Courts are used to that.

12        Does that answer your question?

13             MS. OSOINACH:  Yes.  Thank you.

14             THE COURT:  Anything else from the City I should

15   address today?

16             MS. OSOINACH:  No.

17             THE COURT:  Mr. Karia, anything else from the PPA

18   I should address?

19             MR. KARIA:  No, sir.  Thank you.

20             THE COURT:  Thank you.  Ms. Albies and

21   Ms. Curphey, anything else from AMA Coalition?

22             MS. ALBIES:  No.  Thank you.

23             THE COURT:  Thank you all very much.  I look

24   forward to receiving your opening brief on October 21st.  If

25   anyone needs the assistance of the Court on any other issues

1    that may come up in the meantime, I will make myself

2    available for you on an expedited basis.  Just let my

3    courtroom deputy know by email or by phone that you need me,

4    or file a motion that you need me.  Absent a written motion,

5    let us know, and we'll there be to assist.

6         Thank you all.

7              DEPUTY COURTROOM CLERK:  Court is in recess.

8                   (Hearing concluded.)

1                    C E R T I F I C A T E

2

3   UNITED STATES OF AMERICA,        )
                                      )
4                      Plaintiff,     )   Case No. 3:12-CV-2265-SI
                                      )
5                 v.                  )
                                      )
6   CITY OF PORTLAND,                 )
                                      )
7                      Defendant.     )
    _____)

8

9            I certify, by signing below, that the foregoing is

10  a true and correct transcript of the record of proceedings

11  in the above-entitled cause.  A transcript without an

12  original signature, conformed signature, or digitally signed

13  signature is not certified.

14

15  /s/Jill L. Erwin, CSR, RMR, RDR, CRR
    _____

16

17  Official Court Reporter           Date: August 19, 2013

18

19

20

21

22

23

24

25