TRACY POOL REEVE, Oregon State Bar ID Number 891123
City Attorney
Email:  tracy.reeve@portlandoregon.gov
DAVID WOBORIL, Oregon State Bar ID Number 824347
Senior Deputy City Attorney
Email:  david.woboril@portlandoregon.gov
ELLEN OSOINACH, Oregon State Bar ID Number 024985
Deputy City Attorney
Email:  ellen.osoinach@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Rm 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
        Attorney for Defendant City of Portland

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | **3:12-cv-02265-SI** |
| **PLAINTIFF,** | |
| **v.** | **MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION** |
| **THE CITY OF PORTLAND,** | |
| **DEFENDANT.** | |

## I.      INTRODUCTION

This Court should apply the deferential standard of review governing court approval of

settlement agreements, grant the pending Joint Motion (Dkt 77), and enter the Modified

Proposed Order (Dkt 77-1) approving the Settlement Agreement.  The Modified Proposed Order

comports with plaintiff and defendant's intent in entering into the Settlement Agreement,

responds to the Court's concerns, and provides certainty to the Court, the public, the Compliance

Officer/Community Liaison (COCL), and the parties.

Page  1  –    MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT
                AGREEMENT AND CONDITIONALLY DISMISS ACTION

## II.    BACKGROUND

In September of 2012, the United States and City jointly released a public statement

indicating their intent to negotiate a Settlement Agreement resolving the soon to be filed

complaint by the United States.  (Sam Adams, Thomas Perez, and S. Amanda Marshall,

*Statement of Intent* (September 12, 2012) (available at

http://www.justice.gov/crt/about/spl/documents/ppb_statementofintent_9-12-12.pdf and

introduced at the Fairness Hearing as Government Exhibit 1)  In this early communication, the

United States said it would file the negotiated Agreement with the Court, dismiss its case, "and

the Court will review compliance only upon an assertion by the United States of a material

breach that cannot be resolved through good faith negotiations between the parties."  (*Statement

of Intent* at 2-3)

On December 17, 2012, plaintiff United States filed this action and immediately moved

under Federal Rule of Civil Procedure 41(a)(2) to voluntarily dismiss its Complaint.  (Dkt 3)

The motion, in which the City joined, requested a single condition upon dismissal: that the Court

retain jurisdiction "to enforce the Agreement".

On December 23, 2013, Intervenor-Defendant Portland Police Association ("PPA") filed

with the Court an Agreement ("PPA Agreement") between the United States, City, and PPA

(collectively "the parties") resolving the PPA's objections to the Settlement Agreement.  (Dkt

54-1)  Although the PPA Agreement presumes Court involvement in its enforcement, the parties

did not submit a motion requesting the Court's retention of jurisdiction for that purpose.

On March 24, 2014, the Court circulated an order and requested the parties' and

enhanced amicus' stipulation to it.  (*See* attached Exhibit 1 "Order Entering Settlement

Agreement and Staying Litigation")  Under the proposed order, the Court would have stayed

rather than dismissed the case; retained jurisdiction to enforce "any provision" of the Settlement

Agreement; and required the parties, enhanced amicus, and the COCL to appear at periodic

Page  2  –    MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT
                    AGREEMENT AND CONDITIONALLY DISMISS ACTION

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

hearings before the Court to describe the City's compliance with the Agreement and answer questions from the Court.  The proposed order did not address enforcement of the PPA Agreement.

On June 20, 2014, the United States, joined by the City and PPA, moved again under Rule 41(a)(2) to voluntarily dismiss its Complaint.  (Dkt 77)  Attached to the motion was another proposed order setting forth conditions to which the parties are willing to stipulate.  ("Modified Proposed Order") (Dkt 77-1)  If entered, the Modified Proposed Order will impose conditions on the dismissal that will serve three primary purposes.  Those purposes are:  (1) to allow the parties access to the Court to enforce their Agreements; (2) to clarify the termination and enforcement provisions for both Agreements; and (3) to create a mechanism for the Court to receive information from the COCL who is charged with assessing compliance with the Settlement Agreement.

In status conferences subsequent to March 24, the Court has made clear that its primary concern about the Agreement is that it does not provide the Court with ongoing information about the progress of compliance.  Given that concern, this memorandum focuses principally on the legal and practical issues constraining the Court's authority to order the parties to appear at post-dismissal proceedings.

/////

/////

/////

/////

/////

/////

/////

/////

Page  3  –    MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT
                  AGREEMENT AND CONDITIONALLY DISMISS ACTION

III.    **ARGUMENT**

    A.    <u>The Court Should Enter the Modified Proposed Order and Dismiss the Case</u>

        1.    Although a plaintiff has a right to a voluntary dismissal, the Court can condition the dismissal on terms designed to protect the defendant.

Prior to the adoption of Rule 41(a)(2), the right of a plaintiff to dismiss its suit without prejudice at any stage of the proceedings was absolute.[1]  In 1924, the Supreme Court commented on the deep roots of the right at common law:

> It is very clear from an examination of the authorities, English and American, that the right of a complainant to dismiss his bill without prejudice, on payment of costs, was [a matter] of course except in certain cases. The exception was where a dismissal of the bill would prejudice the defendants in some other way than by the mere prospect of being harassed and vexed by future litigation of the same kind.

*In re Skinner & Eddy Corp.,* 265 U.S. 86, 93, 44 S. Ct. 446, 447-48, 68 L. Ed. 912 (1924).

Rule 41(a)(2) codified the exception referenced in *Skinner* in two ways.  First, under the rule a plaintiff must seek court approval when dismissing a case in the later stages of a proceeding since that is when a defendant is most likely to be prejudiced. Second, a court has the discretion to balance the plaintiff's right to dismiss against the harm to defendant and impose equitable terms and conditions on the dismissal.  As noted by *Wright and Miller*, "the discretion given the district court by Rule 41(a)(2) is a judicial, rather than an arbitrary, discretion." (*Wright & Miller*, 9 Fed. Prac. & Proc. Civ. § 2364 (3d ed.))  Thus, "it is the possibility of prejudice to the defendant, rather than the convenience of the court, that is to be considered in deciding a motion for dismissal under Rule 41(a)(2)."  (*Ibid*)  Because plaintiff's dismissal must be voluntary, the Court should either "grant the motion on the conditions offered or deny it."

---

[1] In the Ninth Circuit, a plaintiff continues to have an absolute right to voluntarily dismiss its action prior to service by the defendant of an answer or motion for summary judgment.  *Wilson v City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997) ("Once the defendant serves an answer or motion for summary judgment, however, the plaintiff may no longer voluntarily dismiss under Rule 41(a)(1), but must file a motion for voluntary dismissal under Rule 41(a)(2) [which] requires court approval.)

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

(*Wright & Miller* § 2366)  In the Ninth Circuit, a plaintiff must also be given an opportunity to withdraw its dismissal if it objects to the Court's conditions.  *Lau v. Glendora Unified Sch. Dist.*, 792 F.2d 929 (9th Cir. 1986)

       2.     The Court's authority to impose equitable terms and conditions on a plaintiff's right to dismiss an action does not extend to imposing affirmative obligations on a party defendant absent its consent.

In this case, the plaintiff has moved for a dismissal twice.  The original motion requested a single condition on its dismissal:  that the Court retain jurisdiction to enforce the Settlement Agreement.  Neither the Settlement Agreement, nor the initial motion, nor the proposed order contained any terms or conditions requiring the United States or the City to periodically report to the Court on the status of compliance.  In fact, the United States and City clearly intended that the Court would only review compliance "upon an assertion by the United States of a material breach that cannot be resolved through good faith negotiations between the parties."  (Adams, et al, *Statement of Intent*, 2-3)

The parties have now stipulated to additional terms and conditions embodied in the Modified Proposed Order requiring the attendance of the COCL and the parties at court proceedings.  The defendants' stipulation signifies their assessment that the specific terms and conditions to which they agreed in the Modified Proposed Order adequately protect them from prejudice.  Thus, the parties have already resolved the concerns which give rise to the Court's discretion under 41(a)(2) in imposing terms and conditions.

The City could find no case where a Court denied a plaintiff's voluntary dismissal because the defendant failed to stipulate to additional terms on the dismissal proposed by the Court.  Nor is there any case law holding that a court has authority under Rule 41 or otherwise to impose affirmative obligations ***on a defendant*** as a condition of plaintiff's dismissal absent the defendant's consent.  In other words, while Rule 41 authorizes a court to dismiss an action "on terms that the court considers proper," the weight of authority suggests that a court would abuse

Page  5  –    MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

its discretion by conditioning acceptance of a plaintiff's voluntary dismissal on terms that require a party defendant to perform duties which it opposes.

      3.      Even if the Court had authority to impose such obligations, it would nonetheless be the better course to enter the stipulated order which has the parties' support.

Even were this Court to conclude that it could add terms and conditions without the consent of the parties, a stipulated order would nonetheless be the better way to proceed in this case. An order supported by all the parties avoids difficult legal questions about jurisdiction and judicial authority. For example, is there a conflict between court's authority to impose terms and conditions on a dismissal and the prohibition against court-ordered amendments to a settlement agreement? Is there a jurisdictional limitation pursuant to Article III on a court's authority to convene supplementary court proceedings in a dismissed case where no justiciable issues are being decided? In the absence of applicable rules of procedure governing such proceedings, does due process require that the obligated parties' consent to a particular procedure? Is Intervenor-Defendant excused from performing under the PPA Agreement if it objects to the order?

If the Court denies the motion to dismiss, the parties will suffer substantial prejudice by being forced to trial on a case which all agree should be resolved through settlement and dismissal. For reasons discussed in Section B.1 below, a trial would not be in the public interest.

      4.      The Modified Proposed Order provides for proceedings at which the Court can be kept apprised of compliance efforts.

Under the Modified Proposed Order, all parties would consent to appear at post-dismissal court proceedings to enable the Court to receive unbiased information from a neutral compliance officer concerning the City's performance under the Agreement. For the reasons set forth in the Modified Proposed Order, the COCL is the best person to provide that information to the Court.

The Modified Proposed Order sets reasonable safeguards to prevent these informational

Page  6  –  MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT
                            AGREEMENT AND CONDITIONALLY DISMISS ACTION

proceedings from devolving into litigation-style hearings where the parties may feel duty-bound to respond to information and argument presented by the other parties.  In addition, the Modified Order protects the integrity of the COCL by ensuring that no party may divert the proceedings into an annual referendum on the COCL's performance.

The City's objection to extensive ongoing court proceedings has always been that ultimate accountability for ensuring the terms of the Settlement Agreement are implemented rests with the City's elected representatives.  As the Court has acknowledged, it does not have the ability to require any party to do anything in response to information it would receive at these proceedings.  The City and the COCL would be significantly burdened in having to review, investigate, and respond to materials generated by and for an adversarial court proceeding. Moreover, by allowing the parties and enhanced amicus to make direct presentations to the Court, the elected officials and the Community Oversight and Advisory Board would be cut out of an important feedback loop.  The parties' presentations would be directed at the performance of various City bureaus, and only the City has the authority and responsibility for managing those bureaus. Whatever benefit the Court might gain by allowing the parties and enhanced amicus to make presentations is significantly outweighed by the damage to public accountability that would result from the inability of the Court and the City's elected officials to meaningfully respond.

        B.     <u>The Settlement Agreement As Drafted, Which Does Not Contemplate or Provide For Court Monitoring, is Fair, Adequate, and Reasonable.</u>

        1.     The complexity, expense, and likely duration of litigation demonstrate the Agreement's reasonableness.

Before approving a court-enforceable agreement, a district court must be satisfied that the Settlement Agreement is at least "fundamentally fair, adequate and reasonable." *United States v Oregon*, 913 F.2d 576, 580 (9th Cir. 1990)  In making this determination, the courts balance several factors, including but not limited to: "strength of the plaintiffs' case; risk, expense,

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

complexity and possible duration of continued litigation; relief offered in settlement; extent of discovery already completed; stage of proceedings; experience and views of counsel; governmental participation; and reaction of the class members."  *Davis v. City and County of San Francisco*, 890 F.2d 1438, 1445 (9th Cir. 1989) (citing *Officers for Justice v Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982)

As the parties argued in their initial joint motion, the proposed Settlement Agreement is "the most effective way to implement the systemic reforms needed to address the allegations in the Complaint."  (Dk 4 at pg 3)

It is particularly appropriate in this case for the Court to "consider the vagaries of litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expansive litigation."  *In re:Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La, 1993); *see also, Rodriguez v West Publ'g Grp.*, 563 F.3d 948, 966 (9th Cir. 2009) (affirming approval of settlement where "a number of serious hurdles remained" for the plaintiffs and noting that the "[i]nevitable appeals would likely prolong the litigation for years.")

In this case, there are many practical and legal hurdles that make the prospect of continuing litigation complex, expensive, and subject to delay.  The case presents difficult legal questions, many of first impression, such as separation of powers between municipalities and the federal government, the right of a labor organization to mount a defense, the requirements for pleading, the United States' burden of proof, as well as the scope of available relief.  Perhaps because of the complexity of the issues involved, no case has ever been litigated to conclusion under 42 U.S.C. § 14141 ("Section 14141"), so there is no substantive guidance for the Court in deciding these issues.

The amount of Court time necessary to try the case would be substantial.  The United States would be required to plead and prove multiple constitutional violations in order to

Page  8  –    MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT
AGREEMENT AND CONDITIONALLY DISMISS ACTION

establish a pattern and practice.  Moreover, the only two district court opinions addressing the

United States' evidentiary burden have found 42 U.S.C. § 1983's heightened standard of

"deliberate indifferent" applicable.  (*United States v. City of Columbus, Ohio*,

CIV.A.2:99CV1097, 2000 WL 1133166 (S.D. Ohio Aug. 3, 2000) (finding that Section 14141

requires the same level of proof as is required against municipalities in actions under 42 U.S.C. §

1983); *United States v. Maricopa Cnty., Ariz.,* 915 F. Supp. 2d 1073, 1082 (D. Ariz. 2012)

(assuming without deciding that a municipality is liable under Section 14141 according to the

same standards as required by *Monnell v Department of Social Services*)  For each incident

alleged, factual and legal defenses would be available.  A complaint alleging a single cause of

action under section 1983 can take years to prepare and several days to try.  This case, which

would in essence constitute an aggregate of section 1983 cases, would consume considerable

time for the parties and the Court.

Moreover, from a pleading standpoint, the United States would be confronted with a

Hobson's choice:  rely on a complaint and investigation that is now almost two years old or

conduct a new investigation.  Plaintiff faces legal risk under either approach.  The City has

already implemented much of the substantive relief provided for by the Settlement Agreement.

This aggressive implementation has furthered the public interest and the City's policy goals in

achieving reforms without delay.  But these positive developments would make it even more

difficult for the United States to identify and prove currently existing violations via a new

investigation and would likely significantly reduce the scope of available relief if they attempt to

prove older violations.  A new investigation would require at least the same expenditure of

resources as did the initial investigation.  As detailed in the joint memorandum, the United States

reviewed thousands of pages of documents, conducted numerous interviews, and site visits and

the City expended significant resources to produce the data and people necessary to further the

investigation.

Page  9  –   MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT
AGREEMENT AND CONDITIONALLY DISMISS ACTION

2.      The Court may not substitute its own policy judgment about plaintiff's chosen method for monitoring compliance with its Settlement Agreement.

The Agreement is a reflection of the risks of litigation and the judgments made about them by the capable representatives of the United States.  When evaluating fairness, adequacy and reasonableness, district courts are instructed to give considerable deference to the executive branch.  *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984)  Where, as here, "a government actor committed to the protection of the public interest," and a defendant, itself "knowledgeable and represented by experienced lawyers," have together "hammered out an agreement at arm's length and advocate[d] its embodiment in a judicial decree," the "[r]espect for the agency's role" is at its apex.  *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)

The Supreme Court, applying this deferential standard in the consent decree context, has declined "to assess the wisdom of the Government's judgment in negotiating and accepting" agreements "at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting."  *Sam Fox Publ'g Co. v. United States*, 366 U.S. 683, 689 (1961).

In light of the deference afforded to government agencies negotiating resolutions to complaints, judicial review is limited.  The court's role is not to "engage in an unrestricted evaluation of what relief would best serve the public," *United States v.BNS Inc.*, 858 F.2d 456, 462 (9th Cir. 1988) (internal quotation marks omitted), to decide "whether the settlement is one which the court itself might have fashioned, or considers as ideal," *Cannons Eng'g Corp.*, 899 F.2d at 84, or to withhold approval unless the court determines that the proposed judgment "is the best possible settlement that could have been obtained," *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991).  Rather, courts must defer to agencies in keeping with the constitutionally mandated separation of powers that assigns to the Department of Justice the responsibility to pursue enforcement of Section 14141.

These decisions are entrusted to agencies, not courts, because an agency is "far better equipped than the courts to deal with the many variables involved in the proper ordering of its

Page  10  –    MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION

priorities." *Heckler v Chaney*, 470 U.S. 821, 831–32 (1985)  Although the judiciary is vested with the authority to interpret the law, it does not possess "the expertise nor the prerogative to make policy judgments.  Those decisions are entrusted to our Nation's elected leaders, who can be thrown out of office if the people disagree with them." *National Federation of Independent Business, et al. v Sebelius*, 132 S.Ct. 2566, 567 U.S.___ (2012).

In this case, the United States has entered into an agreement in which it is the monitor of compliance.  In addition to the expertise the agency already has in monitoring other such agreements, they will be aided by the reports from a professional compliance officer, the input of a community board, and the oversight of the City's elected officials.  The United States' determination that this is the best method for monitoring compliance is reasonable and entitled to deference.

## IV.    CONCLUSION

A settlement of this litigation has been pending for almost two years.  During that time, the United States and City have successfully addressed sometimes conflicting demands in order to ensure that this settlement has the confidence of a broad array of stakeholders.  For the reasons stated above, this Court should grant the parties' Joint Motion (Dkt 77) and enter the Modified Proposed Order (Dkt 77-1) approving the Settlement Agreement..

Dated:  June 24, 2014

Respectfully submitted,


/s/ Ellen Osoinach
ELLEN OSOINACH, OSB # 024985
Deputy City Attorney
Telephone: (503) 823-4047


Page  11 –   MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT
AGREEMENT AND CONDITIONALLY DISMISS ACTION