J. ASHLEE ALBIES     OSB #051846
E-mail: ashlee@civilrightspdx.com
CREIGHTON & ROSE, PC
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon  97204
Phone:   (503) 221-1792
Fax:       (503) 223-1516

SHAUNA CURPHEY, OSB # 063063
E-mail: scurphey@curpheylaw.com
CURPHEY & BADGER, P.A.
520 SW 6th Avenue, Suite 1040
Portland, OR 97204
Phone: (503) 241-2848

*Of Attorneys for Enhanced Amicus AMA Coalition for Justice and Police Reform*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:12-cv-02265-SI |
| Plaintiff, | **AMA COALITION'S RESPONSIVE BRIEF IN SUPPORT OF ENTRY OF SETTLEMENT AGREEMENT AND SEPARATE ORDER REQUIRING PERIODIC HEARINGS** |
| v. | |
| CITY OF PORTLAND | |
| Defendant. | |

The Albina Ministerial Alliance Coalition for Justice and Police Reform (AMA

Coalition) hereby submits its responsive brief in support of the Court's proposal to hold periodic

hearings. The AMA Coalition supports the hearings as an important mechanism for the Court to

remain apprised of the status of the Settlement Agreement, and disagrees with the City of

PAGE 1 – AMA COALITION'S RESPONSIVE BRIEF IN SUPPORT OF ENTRY OF SETTLEMENT
AGREEMENT AND SEPARATE ORDER REQUIRING STATUS CONFERENCES

Portland (City) and the Portland Police Association (PPA) characterization of the hearings as adversarial proceedings that alter the terms of the Proposed Settlement Agreement (PSA). Moreover, the AMA Coalition agrees with the U.S. Department of Justice (DOJ) that the Court has jurisdiction and authority to hold the hearings. Finally, the AMA Coalition agrees with all of the Parties that entry of the PSA is preferable to a trial, which will only delay much-needed reforms within the Portland Police Bureau (PPB). The AMA Coalition's position is set forth more fully below.

## I.    DISCUSSION

The sole point of disagreement among the Parties concerns whether the Court may require that they "appear before the Court at periodic hearings . . . to be held approximately annually . . . to describe to the Court the progress being made toward achieving substantial compliance with all provisions of the Settlement Agreement and any obstacles or impediments toward that end and to otherwise respond to the Court's questions on these issues." (Draft Proposed Order Entering Settlement Agreement and Staying Litigation, March 24, 2014). The Parties substantially agree with the other provisions in the Court's March 24, 2014 proposed order, providing for entry of the PSA and the Court's retention of jurisdiction to enforce it, and that the City direct the Compliance Officer Community Liaison (COCL) to provide the Court copies of its quarterly reports. Thus, months of delay have ensued over the City and PPA's resistance to the Court's request that the Parties, at least annually, simply appear at a hearing and respond to the Court's questions regarding implementation of the PSA. The AMA Coalition maintains that the Court's proposed hearings serve an important feedback function, and that the City and PPA's objections to those hearings are unfounded.

/ / /

**A.      The Periodic Hearings Proposed by the Court Serve an Important, Practical Purpose and Will Enhance the Public's Faith in the PSA.**

The Modified Joint Motion presented by the City, the PPA and the DOJ, Dkt. 77, adds little to the Court's access to information concerning implementation of the PSA. The PSA already requires that COCL make its reports publicly available on the City's website. PSA, Dkt. 4-1, at ¶ 164. And while the Modified Joint Motion provides that the Court may ask the COCL questions, under the terms of the PSA, the COCL has no role other than to collect information, issue reports, and make recommendations to the City. (160-164; 173-174). The COCL is not the party charged with implementing reforms, nor is it the party responsible for enforcing the PSA. Therefore, any information the Court gains from the COCL will necessarily be secondhand and there may be questions the Court has which the COCL cannot answer. Moreover, with regard to the City and DOJ -- parties responsible for implementation and oversight -- the PSA merely provides that they may "informally comment" on the COCL's reports, but does not require that they do so. *Id.* at ¶ 163.

The Court's proposed hearings, however, would require that the Parties appear before the Court – approximately once a year – to respond to its questions and thus serve a vital feedback function.  Contrary to the City's characterization, this is hardly "extensive ongoing court proceedings." Dkt. 82 at p. 7. As the City itself recognizes, "ultimate accountability for ensuring the terms of the Settlement Agreement are implemented rests with the City's elected representatives," and the City has responsibility for directing the performance of City bureaus. Dkt. 82 at p. 7. Thus, the Court would be better informed by an exchange with the City and the DOJ. Moreover, the proposed hearings are to occur "approximately annually," contrary to the City's description of such hearings as "extensive" and "ongoing." Dkt 82 at p. 7.

The participation of the PPA and the AMA Coalition will further aid the Court's

understanding, as they represent constituencies affected by the PSA. Moreover, the status

hearings will not, as the City contends, cut out the City's elected officials and the Community

Oversight Advisory Board (COAB) from an important feedback loop. (Dkt. 82 at p. 7). Rather,

the AMA Coalition has committed itself, through the Collaborative Agreement with the City and

the DOJ, "to continue to work to improve policy, practices and accountability within the PPB"

and "to work in partnership with other entities to support the COAB's community outreach."

(Dkt. 55-1 at p. 4).

Finally, the spontaneous exchange between the Court and the Parties allows a richer

inquiry into the implementation of the PSA. Perhaps most importantly, the Court's airing of that

inquiry in open court serves an important public purpose, as it assures the community at large

that the Parties remain committed to the reforms set forth in the PSA. The Court recognized as

much at the March 24 hearing on the entry of the PSA, when it stated, "there is value to the

Court hearing in a public hearing how things are progressing." (March 24, 2014 Oral Argument

Transcript at p. 26). The AMA Coalition fundamentally disagrees with the City's contention that

the hearings will "damage . . . public accountability." (Dkt. 82 at p. 7).

**B.      The Court May Enter the Settlement Agreement and Conditionally Dismiss
          the Action and Retain Jurisdiction as Requested by the Parties.**

The Parties all agree that, rather than reject the PSA and require a trial in this matter, the

Court should enter the PSA, conditionally dismiss this action, and retain jurisdiction over this

case. Moreover, legal precedent supports the Court's authority to retain jurisdiction.  The briefs

submitted by the AMA Coalition and the DOJ provide ample case law to demonstrate that the

Court has that authority. (Dkt. 79 at pp. 5-6; Dkt. 80 at pp.4-10). The briefs submitted by the

PPA and the City offer no legal precedent to the contrary.

Moreover, in light of the fact that the Parties have asked the Court to conditionally

dismiss the action, the Court would not enter a final judgment in this case. As the DOJ explained in its brief, without a final judgment, there is no jurisdictional basis for an appeal. Dkt. 80 at p. 14. The Court will not enter final judgment until the city has substantially complied with all of the terms of the PSA. Thus, should the Court order the Parties to appear for periodic status hearings, the PPA and the City could not immediately appeal that decision and further delay the PSA's much needed reforms.

### C.    The City's Objection to the Periodic Hearings as Adversarial, Evidentiary Proceedings Misconstrues the Court's Proposal.

The City's objection that the Court has proposed "extensive, ongoing . . . adversarial" court proceedings (Dkt. 82 at p.7) attacks a straw man. Likewise, the City's contention that it and the COCL "would be significantly burdened in having to review, investigate and respond to materials generated by and for an adversarial court hearing" is unfounded. *Id.* At the March 24 hearing on entry of the PSA, the Court explained that it did not intend "to micro-manage compliance activities or even to enter any substantive orders," and that it did not envision cross-examination or an evidentiary hearing. (March 24, 2014 Oral Argument transcript at p. 12, 18). Moreover, for its part, the AMA Coalition does not seek yearly adversarial hearings. As a grassroots community organization, it prefers to expend its limited volunteer resources on ensuring that real reforms take place on the ground so that its constituents feel safe, and are safe, during encounters with members of the Portland Police Bureau.

In light of the fact that the Court has proposed annual status hearings as part of the entry of the PSA, the City's concerns regarding a "jurisdictional limitation . . . on a court's authority to convene supplementary court proceedings" and "the absence of applicable rules of procedure" (Dkt. 82 at p. 6) are unfounded. As the Court is well aware, courts routinely require parties to appear for status conferences, and parties routinely submit without raising constitutional

objections.[1]

**D.    The City's and the PPA's Legal Arguments Against the Hearings Presuppose That the Hearings Alter the PSA or Impose Conditions on Dismissal Under Rule 41(a)(2).**

The PPA's argument that the Court's proposed periodic status hearings "amount to a new, material term in the Settlement Agreement," Dkt. 81 at p.4, ignores the fact that the PSA states "[t]he Court shall retain jurisdiction of this action for all purposes until the City has substantially complied with all provisions of this Agreement." PSA, ¶ 178(b). The PPA's Memorandum of Agreement with the DOJ and the City similarly envisions an ongoing role for the Court. Thus, as the Court itself recognized, the City, the PPA and the DOJ did not choose a private settlement, which would have precluded any Court involvement. (March 24, 2014 Oral Argument transcript at p. 27). Instead, "the parties are asking for the imprimatur of the United States District Court." *Id.* They therefore have submitted themselves to the Court's authority, but now seek to dictate its precise limits.

The Court's authority includes its inherent power to "manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins Co.*, 511 U.S. 375, 380 (1994). The AMA Coalition and the DOJ have both provided legal precedent establishing that the Court's request to hold periodic status hearings is a proper exercise of that power. (Dkt. 66 at pp. 4-6; Dkt. 80 at pp. 20-27.

The PPA and the City, however, contend that the Court may not require the periodic status hearings as a precondition to dismissal under Federal Rule of Civil Procedure 41(a)(2), because that Rule does not authorize the Court to impose obligations on a defendant over the

---

[1] Likewise, the City's characterization of the proposed annual hearings -- held to support the Court's determination that the PSA is *procedurally* fair, adequate, and reasonable -- as a "policy judgment" rings hollow, given the very limited nature of the hearings. Dkt. 80 at p. 11.

defendant's objection. Even assuming (without conceding) that the City and the PPA are correct in that regard, their argument overlooks that the Court need not require the hearings as a condition of dismissal under Rule 41(a)(2). Rather, the Court may, as the DOJ suggests, enter the PSA as an Order of the Court, and then exercise its inherent authority to manage its cases by issuing a separate order requiring that the Parties appear for periodic status hearings. Dkt. 80, at p. 26.

### III.    CONCLUSION

For the reasons stated above, the AMA Coalition respectfully asks the Court to enter an Order adopting the PSA and conditionally dismiss this action and to further require that the Parties appear for periodic hearings on the status of compliance, as described herein.


DATED: July 2, 2014

Respectfully Submitted,

　　　　　　　　　　　　　*s/ J. Ashlee Albies*
J. Ashlee Albies, OSB # 051846
ashlee@civilrightspdx.com

　　　　　　　　　　　　　*s/ Shauna Curphey*
Shauna Curphey, OSB # 063063
scurphey@curpheylaw.com