TRACY POOL REEVE, Oregon State Bar ID Number 891123
City Attorney
Email:  tracy.reeve@portlandoregon.gov
DAVID WOBORIL, Oregon State Bar ID Number 824347
Senior Deputy City Attorney
Email:  david.woboril@portlandoregon.gov
ELLEN OSOINACH, Oregon State Bar ID Number 024985
Deputy City Attorney
Email:  ellen.osoinach@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Rm 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
      Attorney for Defendant City of Portland

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>    **PLAINTIFF,**<br><br>v.<br><br>**THE CITY OF PORTLAND,**<br><br>    **DEFENDANT.** | 3:12-cv-02265-SI<br><br>**REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION** |

**I.     INTRODUCTION**

    After entry of the Settlement Agreement as an order of the Court, the United States, City, Intervenor-Defendant, and Enhanced Amicus all agree that the Court will convene court proceedings. At issue is the nature and scope of those proceedings. This brief replies to the position, advanced by the United States and Enhanced Amicus, that the Court would be well-served by taking a coercive rather than cooperative approach in structuring these proceedings. The City believes that the proceeding proposed by the parties will complement compliance efforts. Given the controlling judicial principles of equity, comity and federalism that govern the

Page  1  –    REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER
                      SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION

Court's exercise of its inherent authority, the proposed proceedings actually provide the Court with more involvement in the compliance effort than it could otherwise achieve.

## II. BACKGROUND

On June 20, 2014, the Court invited the parties to submit additional briefing regarding "whether the Court should grant or deny the original Joint Motion for Settlement or the modified Joint Motion." The court set a schedule of June 24, 2014, for initial briefs and July 2, 2014, for response briefs. On June 24, 2014, the United States and City ("principal parties") submitted briefs in support of their joint motion. Given the procedural posture of this case (the principal parties have joined in a motion) it may seem odd that the City is filing a response brief at all let alone one directly responsive to arguments made by its moving partner. A detailed recitation of the recent history of this case is set forth below in order to provide context for this brief.

On March 24, 2014, the Court announced that it could find the original parties' settlement of this case fair, reasonable and adequate if the Court could stay the case rather than dismiss it and conduct annual hearings at which it would receive information regarding compliance. The Court described the hearings as non-evidentiary but anticipated it would query the parties, amicus, and witnesses about compliance and enforcement and allow the parties and enhanced amicus to make presentations.

Since then, the parties have exchanged a series of proposals with the Court. The first proposal was intended to satisfy the Court's need for information by having the City Council hold annual public hearings regarding compliance and forward a record of those hearings to the Court. The proposal provided enhanced amicus and other stakeholders an opportunity to directly engage with the City's elected officials. It was supported by the original parties, intervenor-defendant, and enhanced amicus. The first proposal would have resulted in dismissal, rather than a stay.

Page  2 –    REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER
           SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

The Court rejected the first proposal as insufficient to address its concerns. This prompted a renewed effort to craft another proposal. Upon learning that the parties could not reach agreement on a second proposal, the Court indicated it would not require a stay if it could expect to receive sufficient information in a hearing. In response to this announcement, the principal parties and intervenor were able to reach agreement on a second proposal which is currently before the Court as a stipulated order and the subject of this brief.

The order before the Court provides for dismissal and authorizes the Court to convene an annual proceeding at which the City's Compliance Officer/Community Liaison (COCL) will provide a briefing on compliance and answer the Court's questions. The order places no restrictions on the Court's interaction with the COCL and does not allow the principal parties, intervenor or enhanced amicus to participate in that interaction. The order also clarifies the process by which the agreement will come to an end.

In its brief opposing the modified proposed order, enhanced amicus urges the Court to ignore the will of the parties and impose additional conditions on the dismissal. For its part, the federal government asks the Court to accept the modified proposed order while also arguing that the Court is nevertheless free to impose different conditions.

Given the context of this proposed order – it is the product of negotiation between various configurations of parties, amicus and the Court – the issues here are not simple, and we have not come to this point through the usual application of purely legal principles and rules. As in any negotiation, it is not clear what might be at stake for other participants. From the City's point of view, it has offered a result not available to the Court through the exercise of judicial power and which best serves the public interest.

Page  3 –   REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER
            SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

**III.    ARGUMENT**

    A.    <u>The publicly available records in the district court cases cited by the United States contradict their claim that "courts routinely require parties to appear for periodic status conferences".</u>

Contrary to plaintiff's assertion that "numerous courts presiding over Civil Rights Division cases that are conditionally dismissed…have required the parties to appear for periodic status conferences," (*US v. City of Portland* - Dkt 80, US Memo at 16) almost none do. Furthermore, of the "status conferences" listed on the dockets for the civil rights cases cited by plaintiff, the City could not find a single example where the proceeding's purpose included routine compliance monitoring.

In support of its claim that this Court would be in good company were it to convene periodic post-dismissal "status conferences," the United States cites three district court cases: *United States* v. *Georgia*, *United States* v. *King County,* and *United States* v. *Commonwealth of Puerto Rico*. But a careful reading of the court record in those cases reveals that none of those courts convene annual court proceedings of the type envisioned here. Each of the cited cases will be discussed in turn below.

    1.    **In *United States* v. *Georgia*, 1:10-CV-00249 (N.D. Ga. 2010)[1], the Court has greater involvement by agreement but refused to order annual status conferences for compliance reporting.**

*United States* v. *Georgia* is a hospital reform case. The parties entered into a settlement agreement and asked the Hon. Charles A. Pannell, Jr. to conditionally dismiss the action with the sole condition that he "retain jurisdiction to enforce the Settlement Agreement."(**Ex. 2**, *US v. Georgia* - Dkt 112 at 1).  The parties did not request periodic post-dismissal court proceedings as a condition of dismissal, and Judge Pannell has never imposed such a requirement.

---

[1] For the Courts' convenience, attached hereto as **Ex. 1** is the ECF docket sheet for *United States* v. *Georgia*, 1:10-CV-00249 (N.D. Ga. 2010) as of July 2, 2014.

Page  4  –    REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION

The fact that Judge Pannell, an experienced jurist appointed to the Federal District Court by Bill Clinton in 1999, considered and rejected convening periodic status conferences is significant. The Georgia Agreement assigns Judge Pannell much more responsibility in oversight than what is contemplated in this case. First, the Georgia Agreement creates an "Independent Reviewer" (IR) who has a much more direct relationship with the Court than our COCL.[2] Second, the enforcement provisions of the Georgia Agreement provide for more direct judicial review because the parties are not required to go through mediation before bringing an enforcement action in court.

Despite the greater court involvement that Judge Pannell accepted when he entered the Agreement, he did not order the parties to appear at annual status conferences.[3]  In fact, in the four years since the entry of the Agreement, the Court has convened exactly two status conferences, both at the request of the parties. The first status conference was for the purpose of scheduling a hearing on the parties' joint motion to modify the Agreement.  The second, although labeled a status conference, was actually the hearing on the parties' motion to modify the Agreement. In other words, none of the reported status conferences could be considered "periodic" nor were they convened for the purpose of monitoring the State's compliance with the Agreement.

The hearing was held in August of 2012, and a transcript of it is available in the court record.

In its motion and at the hearing, amicus curiae asked the judge to convene annual status conferences as a way of forcing the parties to report directly to the court regarding the progress

---

[2] The Court reviews the IR's budget and authorizes reimbursement of its expenses from a Court fund financed by the State; the IR is required to file with the Court annual compliance reports; the IR is authorized to have ex parte contact with the Court; and the Court is authorized to review all of the IR's records.

[3] The Court did not simply rubberstamp the Agreement, however. The Court conditioned its final approval on the parties' amendment of the procedures by which the IR's budget would be approved and paid.

Page 5 –   REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER
            SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION

of implementation. (**Ex. 3**, *US v. Georgia* - Dkt 148 at pg 3). Plaintiff United States took no position on the request, and the defendant opposed it. (*See* **Ex. 4**, *US v. Georgia* - Dkt 156 at Pg 11, ln 15- pg13 ln 5 and pg 17, ln 6-11). Judge Pannell flatly rejected the request and declined to order ongoing status conferences, annual or otherwise.[4]

Given the fact that Judge Pannell specifically considered the issue of convening annual status conferences, held a hearing at which the topic was discussed, and ultimately issued an order rejecting that request, it is difficult to understand why the United States believes this case supports its assertion that "periodic status conferences" occur in dismissed cases as a routine matter.

       **2.**      **In *United States v King County*, 2:09-cv-00059 (D. Wash. 2009)[5], the Court refused to enter the case on its inactive docket and has never convened *any* proceedings post-dismissal.**

*United States v King County* is a jail reform case. The parties entered into a Memorandum of Agreement (MOA) and asked the Hon. Richard A. Jones to dismiss the action conditioned upon defendant achieving substantial compliance with the MOA. In their joint motion, the parties asked the Court to "place this case on its inactive docket for a period of three years while retaining jurisdiction over the case until a final dismissal with prejudice is entered." (**Ex. 7**, *US v. King County* - Dkt 4). Instead, Judge Jones issued an order dismissing the case upon two conditions: (1) he ordered defendant to comply with the terms of the MOA; and (2) he "permitted [the United States] for three years from the date of this order to seek relief in this court if King County does not comply with the MOA." (**Ex. 8**, *US v. King County* - Dkt 7). He entered a dismissal but did not place the case on his "inactive" docket. Furthermore, the court

---

[4] *See* Pannell Order (**Ex. 5**, *US v. Georgia* - Dkt 151). In a colloquy with attorney for amicus, Judge Pannell questioned the propriety of the requested status conferences: "If [the IR] puts out an annual report that indicates there is a real problem, then there may be the necessity of a status conference…but just to say 'everybody bring lunch and we'll have a picnic on the grounds,' I have other things on my calendar." (**Ex. 4**, *US v. Georgia* - Dkt 156, pg 33 ln 3-17).

[5] For the Courts' convenience, attached hereto as **Ex. 6** is the ECF docket sheet for *United States v King County*, 2:09-cv-00059 (D. Wash. 2009) as of July 2, 2014.

record indicates that post-dismissal he held no status conferences or any other proceedings in the case. The case was closed approximately one month after the United States filed its complaint. This case does not support the United States' contention that status conferences are imposed as a routine matter.

### 3. In *United States* v. *Commonwealth of Puerto Rico*, 3:12-CV-2039 (D.P.R. 2012)[6], the Court does not hold compliance hearings.

In *United States of American v. Commonwealth of Puerto Rico*, the settlement agreement created a substantial role for the Hon. Gustavo A. Gelpi in monitoring and managing compliance. The agreement created the position of Technical Compliance Advisor (TCA), and made that position subject to the supervision of the court (**Ex. 10**, *US v. Commonwealth of Puerto Rico*, Dkt 60 at ¶ 226). The agreement requires the TCA to conduct audits, reviews and assessments deemed appropriate by the court. Since the judgment conditionally dismissing the case on July 17, 2013, while there have been numerous hearings in the case, they have had to do only with the appointment, replacement, budget or payment of the TCA, and various motions to intervene. There is a single order in which the court, in the period between TCA's, took it on itself to set a schedule for the production of a compliance report which is required by the settlement. While it is possible that Judge Gelpi and counsel have discussed the status of compliance, there has been no formal inquiry by the court into the performance of the defendant, and certainly no compliance monitoring imposed without the consent of Puerto Rico.

### B.     The United States cites principles of case management for the proposition that this Court can convene substantive proceedings in a dismissed case.

The United States is correct that a court's case management authority allows it in many settings to "order parties to appear even when that party objects". (*US v. City of Portland* - Dkt 80, US Memo at 20). Indeed, "the judiciary is permitted a degree of control and discretion for the

---

[6] For the Courts' convenience, attached hereto as **Ex. 9** is the ECF docket sheet for *United States* v. *Commonwealth of Puerto Rico*, 3:12-CV-2039 (D.P.R. 2012) as of July 2, 2014.

Page  7  –     REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER
               SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION

design and shape of its own system." *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.,* 725 F.2d 537, 541 (9th Cir. 1984). However, the United States cites no case in which a court, in addition to requiring the parties to appear at proceedings in a dismissed case to handle case management matters, has also required the parties to submit to examination ***by the court*** about compliance with a settlement agreement. Whatever the range of a court's discretion in exercising its inherent authority to manage its affairs, it surely does not include the court developing a record that might be used against a party in future enforcement or contempt proceedings. The United States has not cited a single case, and the City is unaware of one, in which a court has conditioned its dismissal upon holding hearings for the purpose of developing a factual record of a defendant's performance under a settlement agreement. Of course, the lack of an available example does not necessarily mean this court lacks the authority to order such hearings. However, given the amount of activity in Section 14141 enforcement over the last two decades, it is reason for pause.

      C.     <u>Even if this Court has inherent authority to question the City about its performance, the public interest would be best served by the Court exercising judicial restraint.</u>

Where a court has entered a settlement agreement as an order of the court "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 380, 114 S. Ct. 1673, 1677, 128 L. Ed. 2d 391 (1994). The question posed by the Court is whether the Court's ancillary jurisdiction, arising as it does from the Court's inherent authority to enforce its orders, necessarily includes the power to independently investigate through direct questioning of the parties the manner in which the parties are performing under their Agreement. There is no case directly on point that answers this question. Assuming that a Court possesses such power, there are, nevertheless, principles of "equity, comity, and federalism" (*Rizzo v. Goode*, 423 U.S. 362, 380, 96 S. Ct. 598, 608-09, 46 L. Ed. 2d 561 (1976)) that counsel against the Court using its

power to directly question the parties.

> 1. **Principles of equitable restraint militate against the Court directly questioning the parties about compliance.**

The parties are asking this Court to enter an order that is both a contract and a judicial decree. *Firefighters v. Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). The proposed order "embodies an agreement of the parties" and is also "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). A court generally relies on the parties to bring to its attention claims that its orders have been violated. Rather than engaging in independent action to enforce its order, "a court ordinarily should first request the appropriate prosecuting authority to prosecute contempt actions" and should "exercise its inherent power of self-protection only as a last resort." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801, 107 S. Ct. 2124, 2134, 95 L. Ed. 2d 740 (1987). The parties' agreement memorializes the general understanding that court proceedings should only be instituted as a last resort to gain compliance with a Court's order. Principles of equitable restraint militate against the Court devising a different procedure.

> 2. **Applying the Principles of Comity and Federalism, this Court should grant the Parties' joint motion to enter the modified order.**

Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, see *Willy v. Coastal Corp.,* 503 U.S. 131, 136–137, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992); *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986), which is not to be expanded by judicial decree, *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

"[P]rinciples of federalism" play "an important part in governing the relationship between federal courts and state governments." *Rizzo v. Goode*, 423 U.S. at 380. Those

principles are particularly applicable where injunctive relief is sought against the executive branch in charge of a local police department. *Ibid*. Thus, a court should not "supervise the functioning of the police department" nor inject itself "into the internal disciplinary affairs" of a police department. *Ibid*. Most Circuits have held that "consent to the proposed decree obviates or minimizes any federalism concerns." *See e.g., Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Met. Transp. Auth.,* 263 F.3d 1041, 1050 (9th Cir.2001) (stating that local agency's consent to remedial scheme in decree relieves many concerns of federalism); *Allen v. Ala. State Bd. of Educ.,* 816 F.2d 575, 577 (11th Cir.1987) ("It is, of course, right for United States Courts to be concerned about the vitality of our federal system; but we disagree that enforcing a settlement made by a state board undercuts important principles of federalism...."); *Duran v. Carruthers,* 678 F.Supp. 839, 847 (D.N.M.1988) ("It would be a bizarre perversion of the principle of comity to suggest that a federal court is required, in order to preserve state autonomy, to override the decisions of state officials and substitute its own judgments.") *with Kasper v. Bd. of Election Comm'rs,* 814 F.2d 332, 340 (7th Cir. 1987).

The Supreme Court pointed out that "[p]rinciples of federalism and simple common sense require the [district] court to give significant weight" to the views of government officials who request modifications to the court's orders. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 392 V (2004) citing *Rufo v. Inmates of Suffolk County Jail* 502 U.S., at 392, n. 14.

In this case, the executive branches of two governments are jointly requesting this Court to enter the modified proposed order. In the City's view, the procedures contained in the modified proposed do not "improperly deprive future officials of their designated legislative and executive powers" nor will they "lead to federal-court oversight of state programs for long periods of time even absent an ongoing violation of federal law." *Id* at 441. The principles of federalism and comity should incline this Court to give deference to the City's view.

Page 10 – REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO ENTER
SETTLEMENT AGREEMENT AND CONDITIONALLY DISMISS ACTION

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

D.  <u>The City is not "judicially estopped" from pointing out the limitations on the Court's authority to order periodic post-dismissal proceedings at which the Court will question the parties about compliance.</u>

The United States asserts that, by signing a document allowing the court to retain jurisdiction of the agreement for all purposes, the City has conceded "the court's continuing subject matter jurisdiction over this action until final judgment." (*US v. City of Portland* - Dkt 80, US Memo at 9). That is true. However, it is *not* true that "if subject matter exists for enforcement, it exists for all other purposes." *Ibid* In fact, subject matter jurisdiction is not at issue here. At issue is whether a court may, in the context of this Settlement Agreement and without the consent of the City or PPA, convene hearings at which the court interrogates witnesses and parties and allows participation in the inquiry by plaintiff, intervenor, and amicus. The answer to that question depends upon the principles discussed above rather than a waiver analysis.

### IV.  CONCLUSION

The City respectfully asks this court to enter the modified proposed order.

Dated:  July 2, 2014

Respectfully submitted,

*/s/ Ellen Osoinach*
DAVID WOBORIL, OSB # 824347
Senior Deputy City Attorney
ELLEN OSOINACH, OSB # 024985
Deputy City Attorney
Telephone: (503) 823-4047