1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3                  PORTLAND DIVISION

4
UNITED STATES OF AMERICA,        )  3:12-cv-02265-SI
5                                 )
            Plaintiff,            )
6                                 )
                    v.            )  February 10, 2014
7                                 )
THE CITY OF PORTLAND,            )
8                                 )
            Defendant.            )
9    _____)  Portland, Oregon

10

11

12

13

14              TRANSCRIPT OF PROCEEDINGS

15                (Telephone Conference)

16      BEFORE THE HONORABLE MICHAEL H. SIMON

17       UNITED STATES DISTRICT COURT JUDGE

18

19

20

21

22

23

24

25

2

APPEARANCES

1 | FOR THE PLAINTIFF:

2 | Adrian Brown
Bill Williams
3 | United States Attorney's Office
1000 SW Third Avenue, Suite 600
4 | Portland, OR  97204

5 | Michelle Jones
R. Jonas Alexander Geissler
6 | U.S. Department of Justice Civil Rights Division
950 Pennsylvania Avenue, NW
7 | Washington, DC  20530

8 | FOR THE DEFENDANT CITY OF PORTLAND:

9 | Ellen C. Osoinach
Tracy Reeve
10 | City of Portland
Office of the City Attorney
11 | 1221 SW 4th Avenue, Suite 430
Portland, OR 97204

12 |

13 | FOR THE DEFENDANT PORTLAND POLICE ASSOCIATION:

14 | Anil Karia
Tedesco Law Group
15 | 3021 NE Broadway
Portland, OR 97232

16 |

17 | FOR ENHANCED AMICUS CURIAE:

18 | Shauna M. Curphey
Curphey & Badger, P.A.
19 | 520 SW Sixth Avenue, Suite 1040
Portland, OR  97204

20 |

Jessica Ashlee Albies
21 | Creighton & Rose, PC
815 SW Second Avenue, Suite 500
22 | Portland, OR  97204

23 |

COURT REPORTER:        Dennis W. Apodaca, RDR, RMR, FCRR, CRR
24 |                        United States District Courthouse
1000 SW Third Avenue, Room 301
25 |                        Portland, OR 97204

```
 1                    (February 10, 2014)

 2                 P R O C E E D I N G S

 3            (In chambers; telephone conference:)

 4            THE CLERK:  Your Honor, this is the time set for

 5    a telephone conference in 12-cv-2265-SI, United States of

 6    America versus of City of Portland.

 7            Counsel, there is a court reporter present.

 8    Please be sure to state your name before you speak.  Here

 9    is Judge Simon.

10            THE COURT:  Good morning, everyone.

11            COUNSEL:  Good morning.

12            THE COURT:  I have been starting the process of

13    going through the written submissions that have already

14    been received from folks that both want to testify orally

15    at the hearing and also those that did not ask to testify.

16            I understand that it was the United States that

17    suggested that we have this telephone conference.  So let

18    me turn it over to the United States and ask what do you

19    recommend we need to address in this conference.

20            MS. BROWN:  Thank you, Your Honor.  This is

21    Adrian Brown for the United States.

22            Prior to getting on this call, just to let you

23    know, all counsel did confer and discuss the matters that

24    we would like to raise with you today.  We have agreement

25    on most everything and some additional questions.
```

1          The first matter we would like to address with

2   you is in regard to those written comments.  The Court's

3   order for the fairness hearing requires the United States

4   to put together a summary sheet of the comments and the

5   presenters that submitted the comments and confer with

6   counsel before submitting that to the Court.

7          The Court's order has the deadline for that to

8   be submitted by tomorrow, the 11th.  Given some need for

9   additional time, getting the CD from the Court and

10  discussing it amongst counsel, we would ask if we could

11  have an extension of that deadline to provide it to the

12  Court this Thursday at 9:00 a.m.  We have conferred with

13  the other counsel, and there is no objection to that

14  request.

15          THE COURT:  Of course.  That's not a problem at

16  all.

17          MS. BROWN:  Thank you, Your Honor.

18          So we plan on submitting to the Court what will

19  essentially be a spreadsheet, after we confer with

20  counsel, that will break up the comments by organization

21  and by individuals.  There will be many different columns

22  with different categories and a summary of the testimony

23  that the person has submitted.  That order will provide

24  the Court with some idea of how many comments are received

25  and the extent of the timing of the hearing.

1          So that brings us to our next issue, which is

2     the timing.  We did a rough calculation of the amount of

3     time that the various commenters would need based upon

4     each individual having five minutes and each organization

5     having up to three representatives with ten minutes each.

6     Based on our rough calculations thus far, we have come up

7     with approximately 12 hours of testimony.  That does not

8     incorporate breaks or time for shuffling people around.

9          So we wanted to talk to you about how the Court

10     would like to set the timing of the hearing.  In essence,

11     we could have it start at 9:00 a.m., and the Court

12     mentioned it would go until it is all over.  But does the

13     Court have an expectation at this point in time as to how

14     long the Court is willing to go for a day and whether or

15     not the Court would be breaking this up into two days?

16          THE COURT:  I would like to hear the parties'

17     preferences, but the Court has the ability and willingness

18     to go 24/7.  By the way, the court reporter just gave me a

19     funny look.  (Laughter)

20          So I think it might be useful to arrange for a

21     second court reporter.  Maybe what we can is essentially

22     go maybe two or three hours with one court reporter.  Then

23     maybe if I don't take much of a break, five minutes or so

24     every now and then, but that way we can have a second

25     court reporter come in.  The people in my opinion who

1    really, really need a significant break of more than five

2    minutes is the court reporter.

3            Myself and our staff can handle a five-minute

4    break every now and then.  Frankly, I think counsel can

5    handle that as well.  If anybody wants to break more

6    frequently or a bit longer, you are welcome to ask for it,

7    and I will give it to you.  I think the only one I need to

8    make sure we can give appropriate breaks to is my court

9    reporter, and we will make sure we will have a second

10   reporter lined up.

11           MS. BROWN:  Okay.  So if we were to start at

12   9:00 a.m., then it is the Court's intention to go that day

13   until everyone has had the opportunity that they want?

14           THE COURT:  I do want to play it by ear, and

15   sometimes I do this with jury trials.  When I ask the jury

16   whether they want to keep going after 5:00 or come back

17   the next morning at a certain time, maybe even early, if

18   it looks like we are going to have difficulties getting

19   things done by 5:00 or 6:00 p.m., then maybe perhaps early

20   afternoon I may have ask the folks who have not yet

21   testified, by a show of hands:  Are there folks who would

22   rather go and wait until the evening and make sure it gets

23   done today or maybe folks would rather come back tomorrow.

24   Maybe take my cue from maybe what the majority of the

25   folks in the room say.

1          Again, right now is the perfect time for me to

2   hear all the opinions from our four parties.

3          MS. BROWN:  Absolutely.  The United States is

4   certainly open to extend it into a second day, if that's

5   necessary.  As far as counsel coming in from Washington,

6   D.C. and local counsel, we have a second day available if

7   the Court wants to do that.

8          Just talking to the parties, it appears that

9   everyone, all the parties except AMA -- AMA has some

10  logistical issues with going into a second day with one of

11  their counsel having a deposition scheduled.  But other

12  than that, I think we are open to whatever the Court feels

13  is appropriate.

14         THE COURT:  Again, I will hear from AMA and the

15  City and the Portland Police Association in a moment.  I

16  think that we should make this decision pretty much once

17  we get the facts on the ground, by early to mid-afternoon.

18  If we think we can finish by 5:00 or 6:00 or 7:00, I

19  definitely think we should do that.

20         If it looks like it is not likely to be able to

21  finish, unless we go to significantly after six o'clock or

22  so, then I will ask counsel for the parties present as

23  well as the people who have not yet testified what their

24  preferences are.

25         But, also, realize that your 12-hour assumption

1   assumes that everyone will take their full five minutes or

2   the organizations will take their full 30.  That may or

3   may not be correct.  We really won't know that until the

4   day of hearing.

5              MS. BROWN:  Okay.  Very well, Your Honor.

6              THE COURT:  Do any other parties want to be

7   heard on this issue now before we move on to another

8   issue?

9              MS. CURPHEY:  This is Shauna Curphey with the

10  AMA Coalition.  I think between Ashlee, my co-counsel, it

11  might be one of us one day and one of us the other day,

12  and that's how we will have to proceed.

13             MS. ALBIES:  I think my deposition is scheduled

14  for 1:00 p.m.  If we do run over, it sounds like we would

15  reconvene in the morning, and that would be preferable

16  than going later and then resume in the morning.

17             THE COURT:  Yes.  My plan would be that we would

18  start up again at 9:00 a.m. the next morning.  I have many

19  things on my calendar, but we can move or postpone those.

20             MS. OSOINACH:  Your Honor, Ellen Osoinach.

21             The City is flexible.  We can play it by ear.

22             MR. KARIA:  ON behalf of PPA, we are flexible

23  too.

24             THE COURT:  Thank you.

25             MS. BROWN:  The next topic, Your Honor, in

 1    regards to how the public will be notified of both their

 2    time coming to an end, whether it be five minutes or ten

 3    minutes and how they will be notified as far as when they

 4    will be expected to testify.  So to take the first

 5    question, many of us are familiar with City Council.  It

 6    has a light and a buzzer that tells people when they are

 7    up.  We all know the Ninth Circuit has that ability, but

 8    we weren't sure what the Court's ability was for notifying

 9    individuals and if there was any thought into that.

10            THE COURT:  Sure.  We do not have the

11    technological ability of either the City or the

12    Ninth Circuit, so we are going to go the old-fashioned

13    way.  Our courtroom deputy, at my direction, will hold up

14    two cards.  One card will say "one minute remaining," and

15    the second card will say "time expired" or "stop" or

16    something that is phrased appropriately like that.

17            Does anyone have any comments on that approach?

18            MS. BROWN:  That's fine for the United States.

19            MS. OSOINACH:  That works for the City.

20            THE COURT:  By the way, does anybody have any

21    suggestions as to what's the right way to say stop in this

22    circumstance?  "Time expired"?  "Stop" seems so harsh.

23            MS. ALBIES:  A loud buzzing noise maybe or a

24    bell or a gavel.  (Laughter)

25            THE COURT:  We will work on it.  We may bring in

1    an air horn.  We will work it out.

2        MS. BROWN:  Then as far as the testimony of

3    individuals, the fairness hearing order sets out some

4    procedures but we wanted to make sure that we were all

5    understanding of any additional procedures.  The way the

6    order reads from Document 53, page 4, is that the

7    individuals will come to the courthouse and check in with

8    Mary, or other courtroom deputies, sign in to let the

9    Court know they are there and ready to testify.  The

10   Court's order also says that those who have submitted

11   written comments will be given priority for testifying.

12        So we were just wondering if there were any

13   other procedures that the Court anticipated following and

14   people signing up and whether or not people will kind of

15   know what order they are in so they can decide whether

16   they want to leave for an hour and come back.

17        THE COURT:  Sure.  You mentioned Docket 53.  I

18   noticed this morning, I don't think we have actually filed

19   my signed order setting notice and procedure for fairness

20   hearing in CM/ECF.  All we have is the Government's

21   stipulated motion, which we took in large part, but not

22   completely.

23        So unless I'm mistaken, we will get that put on

24   CM/ECF later today.

25        MS. BROWN:  I thought Docket 53 was the filed

 1    version, but I could be wrong.

 2            THE COURT:  Let me check.  I'm really not sure.

 3    We will double-check.

 4            In any event, what I plan on having, we have two

 5    externs here who will assist Mary, our courtroom deputy,

 6    in staffing a table at the entrance to the courtroom on

 7    the 13th floor.  We should have some signage on the first

 8    floor.

 9            Adrian, can I ask you to take care of that, to

10    have some type of signage in the lobby of the courthouse,

11    after people clear security, that says the name of the

12    case; fairness hearing, proceed to 13th floor,

13    Courtroom 13B.  We will staff a table right outside

14    Courtroom 13B with a sign-up sheet.  I am going to be

15    consistent with my order.  So we're not taking people in

16    the order they sign up that morning, but we want to know

17    who is there.  I will compare that with our list of

18    written testimony.

19            Then when I take the bench, after some

20    preliminary comments, I will announce who will be

21    testifying, who we will be hearing from in the first half

22    of the morning session, in the second half of the morning

23    session, and then probably update that midway through, and

24    then let folks know who we will be hearing from in the

25    afternoon session.

1          MS. BROWN:  I think that will be very helpful.

2     The parties, when we discussed this, had just a variety of

3     different thoughts on that.  So that works for the

4     United States.

5          THE COURT:  By the way, anybody else is free to

6     make a comment, if you wish.

7          MS. BROWN:  The only other questions we have

8     about the individuals coming up to testify are whether or

9     not there would be any translators available.  So far we

10    have not received any comments in Spanish, but I know that

11    the Court's order must open the ability for people to

12    come, even if they did submit comments.  When we were

13    doing community interviews, there were individuals that we

14    spoke to that spoke Spanish, and we needed translators for

15    them.  I don't know if that's something the Court has

16    thought about or how we would like to handle that.

17         THE COURT:  I don't think we have seen any

18    written requests to have a translator available.  In terms

19    of the economics involved, I don't want to have to pay for

20    an interpreter to be present all day if that interpreter

21    is not needed.  So I'm going to take the position that

22    since no one has yet specifically asked for interpretive

23    services from the Court, we're not going to provide any.

24    Obviously if someone asks for it specifically, for a

25    specific witness, we will see what we can do.  We

1   certainly do have a staff interpreter who speaks Spanish

2   available to us.

3          Let me ask probably Ms. Curphey or Ms. Albies,

4   are you aware of any folks who are coming in that will

5   need interpretation services?

6          MS. CURPHEY:  We are not aware of anybody that

7   needs an interpreter at this time.

8          THE COURT:  Okay.  I am going to be very

9   informal on that.  If someone comes in with their own

10  personal interpreter -- maybe someone wants to give their

11  story, but doesn't speak English well and wants to have a

12  friend speak for them, I don't have a problem with that.

13         MS. CURPHEY:  Okay, Your Honor.  We will relay

14  that to the AMA Coalition, who may field questions about

15  this.

16         MS. BROWN:  Another option for another resource,

17  Your Honor, is that the United States Attorney's Office

18  has a contract with a language services company that we

19  use for callers who call our office and don't speak

20  English.  So that's another option.  We could bring that

21  service in by phone as another option.

22         THE COURT:  Excellent.  If we do have someone

23  that we didn't anticipate, we at least have that

24  opportunity.  Excellent.

25         MS. BROWN:  I did have one other matter

1    regarding individuals testifying.  So far in the

2    submissions we have been reviewing, there have been some

3    individuals that have submitted comments as an individual

4    and then different and separate comments as a

5    representative for the organization.

6            For those persons that overlap, rather than

7    having them come up and down twice before the Court, we

8    discussed this amongst the parties that we are all

9    agreeable to having those individuals testify at one time.

10   They can provide both information to the Court at that

11   time in their individual view and in their view as a

12   representative for an organization, if that would be

13   agreeable to the Court, and limit them to the ten minutes

14   that an organization would have.

15           THE COURT:  That seems fair to me.

16           MS. BROWN:  Okay.  Moving on to counsel's

17   presentation, it appears that each party, except for the

18   AMA -- just to let everyone know, we are getting some

19   feedback on this end.  Is everyone able to hear me okay

20   without feedback?

21           THE COURT:  The Court can hear you fine.

22           MS. BROWN:  Okay.  Forgive me if I'm kind of

23   hesitating, because I am getting some feedback here.

24           But it appears that each party's counsel has a

25   presentation to make, except for the PPA, and we just

1   wanted to give the Court an idea of what each party is

2   planning on presenting for their counsel presentations and

3   for potential witnesses.

4           THE COURT:  Do you want to do that at the

5   fairness hearing on the 18th?

6           MS. BROWN:  Yes.  We would like to do that in

7   the beginning, basically make opening remarks.  Our

8   presentation would consist of some brief opening comments

9   about our role in this matter, the United States' role,

10  and then we have some slides, demonstrative aids.  We

11  would ask if the Court can do this -- I think I have seen

12  the Court do this before -- have a big screen available so

13  the public can see the slide at the same time the Court is

14  seeing them.  We basically have some slides we would like

15  to go through that would help educate the Court and the

16  public about the process we engaged in prior to getting to

17  this point and the type of public engagement that we took

18  on.

19          Then we also have our police practices expert

20  that provided assistance during the investigation.  He is

21  a retired police chief, Charles Gruber.  We would ask him

22  to testify in a very limited capacity as to the types of

23  investigation he participates in and how, in his opinion,

24  the settlement agreement meets the remedies sought from

25  the complaint.  That, in total, would last, we estimate,

1    an hour or less from the United States.

2            There are two other potential experts that

3    aren't experts for the DOJ, but they are experts in the

4    mental health field that may testify.  We are still

5    conferring with the two individuals.  One would be

6    Chris Bouneff, who is the executive director for NAMI

7    Oregon.  The other would be either Maggie Bennington-Davis

8    or Darryl Walker, who are the leaders of Cascadia

9    Behavioral Health.  So those two we haven't figured out

10   whether or not they would be providing public comments

11   orally or written comments or come in for a brief question

12   and answer session.  So we're still working on those two.

13           With respect to all of that, that would take an

14   hour, or slightly more than an hour, for the

15   United States.

16           THE COURT:  All right.  Let me give you my

17   comments.

18           Mary, do we have the large screen that comes

19   down from the ceiling in our courtroom?

20           THE CLERK:  Yes.

21           THE COURT:  Let's make sure we have got your

22   slides tested so we can make sure that works.  It is fine

23   with me to have both our television screen, which is in

24   the back of the courtroom, but it is only like

25   three-by-four, or something.  We will bring down the large

1    screen.  The people that can see that the best are those

2    in the jury box.  But members in the audience, depending

3    on where they are sitting, can see that large screen

4    moderately well.  Let's make sure we've worked out all of

5    the logistics on that, and that's fine with me.

6          With respect to Mr. Gruber testifying, do you

7    envision he would be speaking from a podium addressing the

8    Court, or would you rather see him on the witness stand

9    where he would be more visible to the audience?

10         MS. BROWN:  We would prefer to have him on the

11   witness stand and have him be visible to the audience, and

12   the Court, with a limited inquiry from counsel to direct

13   his statements and his exam.

14         At the same time, we discussed with counsel a

15   stipulation that any parties' witnesses would not be

16   subject to cross-examination.  There are some other

17   witnesses that the other parties are bringing forward,

18   along with the public, who won't be cross-examined.  We

19   have discussed having a stipulation that the witnesses

20   wouldn't be crossed.  Certainly we anticipate keeping his

21   testimony limited.

22         THE COURT:  By the way, speaking of the podium,

23   I am wondering if it might make the most sense to place

24   the podium not so it is facing the Court, with counsel's

25   back to the audience, but if you visualize the courtroom,

1    maybe have the podium so the speaker's back is to the jury

2    box, which will most likely be empty.  That way, with a

3    roughly 90-degree sweep, counsel can speak to the Court

4    and also to the members of the public.

5              What do you think of that idea?

6              MS. BROWN:  The United States thinks that's a

7    great idea.

8              MS. ALBIES:  I think that's a great idea.

9              THE COURT:  How we normally want the podium for

10   opening and closing, which by the way, is a terrible idea.

11   Please don't use a podium for openings and closings in a

12   jury trial, but that's my two cents.

13             But let's take that podium and then switch it

14   around so it is facing the other way so the back is facing

15   the jury box.  That way, they can easily look at the Court

16   and also the members of the public.  Then we can still use

17   the PA system, the microphone system, that works with that

18   podium.  We can do that.

19             Let me also note two more points I wanted to

20   make, and then I will turn it over to anybody else.

21             When you say there is no cross-examination by

22   the parties, that's fine with me.  But I reserve the right

23   to question any witness, whether it be on the stand, if I

24   think it needs clarification, like Mr. Gruber, or I do

25   plan on asking on occasion follow-up questions from some

1   of our people who give testimony.  I am going to do my

2   best not to intimidate anybody, but it might be helpful to

3   ask some follow-up questions.  I don't want anybody to be

4   surprised if I do that.

5           MS. BROWN:  Yes, Your Honor.  I do need to note,

6   in the interest of disclosure, the AMA still does need to

7   talk with their clients about not crossing Chuck Gruber or

8   any other witnesses that the City puts on.  So I want to

9   put that caveat out there.  I won't be speaking for the

10  AMA.

11          THE COURT:  That's fine.  My last point on this

12  issue, and then I will turn it over to the other folks.

13  Although what you say is fine with me, in terms of the

14  process, I just want to make my observation that I believe

15  most of the members of the public who are going to make

16  the effort to come to this fairness hearing are doing it

17  because, more importantly, they want to be heard and have

18  their story heard as opposed to they want to hear

19  information and hear what either the United States or the

20  City or the police association or the AMA has to say.

21  That's just my opinion.  I could be wrong.  But I believe

22  they are coming primarily because they want to be heard,

23  and they feel they have got something to say.

24          That said, I think it would behoove us all if

25  the United States did not spend more than an hour, and,

 1    frankly, if you could cut it down, I think it would be
 2    better, so that we don't look like we are in any way
 3    filibustering or making people wait an unduly long period
 4    of time for people who feel they have got something on
 5    their chest that want to get off, and I don't want to make
 6    them wait too long.
 7         MS. BROWN:  Yes, Your Honor.  We will take
 8    another look at everything and keep that in mind and do
 9    our best to reduce the time.
10         THE COURT:  Because you have got two audiences
11    here obviously.  One is me, because I have to make a
12    fairness decision, but I can learn a lot by reading and
13    have learned a lot by reading.  I will also give you the
14    opportunity to submit comments by our March 11th date.
15    Then if you want additional oral argument after that, let
16    me know.  Otherwise, I will receive your post-hearing
17    briefs by March 11.  So I can learn a lot of what you need
18    to communicate to me in that fashion as well.
19         So to some extent, to the extent that you plan
20    on speaking to the members of the public in your
21    presentation, although I'm positive what you want to say
22    is valuable and important for them to hear, I am concerned
23    that they may get frustrated if they are made to wait too
24    long.
25         MS. BROWN:  Yes, Your Honor.

1          THE COURT:  Okay.  Does anyone from either the

2    City or police association or Albina Ministries Coalition

3    want to make any comments on anything we have talked about

4    so far?

5          MS. CURPHEY:  This is Shauna Curphey for the AMA

6    Coalition.  We want to clarify that counsel for AMA

7    Coalition doesn't plan on making a presentation other than

8    to introduce our clients who intend to speak on their own

9    behalf.  I am assuming they will walk up to the podium and

10   make their presentation as if they were testifying as a

11   member of the public.

12         THE COURT:  That's fine.

13         MS. CURPHEY:  That will look different than the

14   DOJ or the City's presentation who plan to put witnesses

15   on the stand.  I wanted to make that clear.

16         THE COURT:  That's fine.  Let me ask, with the

17   AMA and the Portland Police Association -- I don't know if

18   you are going to have any witnesses from your association,

19   Mr. Karia -- but if you do, would you prefer them to go

20   earlier in the process or later in the day?

21         MR. KARIA:  Thank you, Judge.  This is

22   Mr. Karia.  We do not plan on having any witnesses or

23   presentation.  If we do, frankly, we will go with the flow

24   based on how the hearing is proceeding.

25         THE COURT:  Okay.  And Shauna or Ashlee, do you

1   want the AMA witnesses to go first, early in the process?

2   In the morning?  Later in the day?  What preferences do

3   you have?

4           MS. ALBIES:  This is Ashlee Albies.  We had

5   intended, instead of counsel presentation, we understood

6   the DOJ and the City would be making counsel presentations

7   and maybe putting on a witness in the initial part of the

8   morning.  We had anticipated that counsel would be

9   introducing the three speakers from the AMA Coalition who

10  would then make a presentation.  We are going to confine

11  it to ten minutes each.  We can certainly try to cut that

12  down for the three individuals who are going to speak on

13  behalf of the AMA Coalition, which will be making the

14  Coalition's presentation and their position to the Court

15  and to the members of the public.

16          THE COURT:  All right.  That sounds fine.

17          Let me, Ms. Osoinach, do you plan on calling

18  witnesses for the City or making counsel presentation on

19  behalf of the City?

20          MS. OSOINACH:  Yes, we did.  Honestly, given

21  your comments, I am rethinking that, as probably is the

22  United States.  One of the things that might help me is to

23  ask you a question:  Are you envisioning that there will

24  be a continuing sign-up?  So in other words, are you

25  expecting that any member of the public that wishes to

1    testify needs to be at the courthouse promptly at

2    9:00 a.m. to sign up, or are you envisioning that people

3    will filter in throughout the day, and there will be a

4    continuing sign-up?

5            THE COURT:  The latter.  My experience, and I

6    have limited experience, but I have some experience with

7    homeless/mentally ill.  Frankly, back when I was in

8    private practice, as a pro bono counsel, I represented

9    some folks that fit in that category.  It is very

10   difficult for them, I'd say, it is fairly difficult for

11   them to really get to some place by a specific time.  So I

12   do plan on allowing folks that come in later to still

13   testify.  But my plan would be, if you came in later, you

14   are probably going to be testifying near the end.

15           Does anybody disagree with that approach?

16           MS. OSOINACH:  No, I don't.  I assumed that was

17   sort of the plan.

18           THE COURT:  Yes.  By the way, I do hope the City

19   does make a presentation.  I think it is an excellent idea

20   for the U.S. Department of Justice to make an opening

21   presentation, followed by the City, and then we can go

22   into the AMA's approach the way it has just been

23   described.  Obviously if the Portland Police Association

24   wanted to make a presentation, they are certainly welcome.

25           I think that's all an excellent idea and an

1    excellent way to start.  I was just having some concerns,

2    if we have a lot of people that show up at 9:00 a.m.,

3    making them wait a significant period of time before they

4    speak.  But I definitely do not want to discourage the

5    United States or the City or AMA or even the police

6    association to make opening comments if they want to.  I

7    think that's an excellent way to start.

8              MS. OSOINACH:  Your Honor, the City's intent, to

9    be perfectly blunt, is that the majority of the comments,

10   if not all of them, are critical of the settlement

11   agreement.  So I think in weighing the two audiences, you

12   and the public, given the fact that the entire public

13   might not be there right there at the start, when the City

14   envisions making that presentation, the utility of

15   reaching that audience is minimal, although certainly I

16   think the press will be there, and they will get out a

17   larger picture for the audience.

18             The City's concern is largely in framing the

19   issue for the Court in terms of talking about what the

20   City has done so far in implementing the settlement

21   agreement, even if it had not been an order of the Court,

22   presenting evidence about the implementation and the

23   effects on the ground to help both you and the public

24   understand the reasonableness and adequacy, as we have

25   implemented it thus far.

1          So that's sort of our envisioning of the

2    presentation.  I think I would be comfortable with you

3    working in the City's presentation, knowing that's the

4    contents, in whatever way you felt works best for the

5    presentation.  So, for example, if you have 30 people

6    there at 9:00 a.m., and you want to get started with the

7    public testimony, I would not have any objection to

8    allowing that testimony to happen in the morning and then

9    say we will hear from the City or the DOJ in the

10   afternoon.  I don't feel like the City's presentation,

11   although I think it would help to frame the issue, I don't

12   think it has to happen in the beginning.

13          THE COURT:  All right.  I think that's helpful.

14   I will play it by ear.  I do think hearing from the City

15   and from the United States early on will help frame the

16   issues.

17          Did I hear you say that the City's presentation

18   will be critical of the settlement agreement?

19          MS. OSOINACH:  No.  The City has observed that

20   the majority of the comments that were submitted to the

21   Court have been critical of the settlement agreement.

22          THE COURT:  I agree with that.  I'm glad I

23   misheard what you said.

24          MS. OSOINACH:  Yes.

25          THE COURT:  All right.  Go ahead.

1          MS. BROWN:  Your Honor, just a few evidentiary

2    matters to cover, and then I think I will be done with the

3    list from the United States.

4          The first is that we talked to the parties about

5    stipulating to authenticity of factual documents that the

6    parties plan on submitting.  At this point in time, the

7    only document that the United States plans on submitting

8    as part of a factual record is the findings letter, which

9    I know is already in possession of the Court.  That's what

10   Chuck Gruber will be testifying about, in addition to the

11   complaint.  So we just wanted to let the Court know that

12   the parties have stipulated to the authenticity and

13   admissibility of that document.

14         The City informed us that they may have one or

15   two documents, but they are still looking into that.  AMA

16   told us that they don't anticipate having documents, but

17   will get back to us as well.  And the PPA doesn't

18   anticipate having any documents.

19         Then in regards to other evidentiary matters, we

20   briefly discussed with you, I believe in our last status

21   conference, the possibility of raising continuing

22   objection.  We don't want to interrupt people.  I know the

23   order provides that the parties may object, may raise

24   evidentiary objections, but we would like to ask the Court

25   to basically enter an order of continuing objections from

1  the United States in regards to relevance.

2         The Court's order talks about how the testimony

3  must be relevant.  The cumulative nature of testimony,

4  while we understand many people are going to be

5  testifying, and we want as many people there possible

6  testifying.  We are more referring to that objection as to

7  individuals themselves providing evidence that this is

8  cumulative.

9         Hearsay, we do anticipate obviously a lot of

10  that, but we don't want to raise objections throughout the

11  hearing on that.  We would like to address that as a

12  continuing objection.

13         Any testimony that's argumentative, we would

14  like to raise a continuing objection.

15         Even though none of us -- we have conferred with

16  counsel.  None of us anticipate settlement privileged

17  discussions to come out under Rule 408, but as a

18  precautionary measure, we would like that noted by the

19  Court as well as a continuing objection.

20         And personal knowledge, we want to make sure

21  that, of course, people are testifying to their personal

22  knowledge.

23         THE COURT:  All right.  Although the personal

24  knowledge is modified by the lay opinion rule.  A lot of

25  matters that might not be within personal knowledge might

1  be within the subject of lay opinion.

2         But in terms of your general proposition, I'm

3  fine with that.

4         Does anybody have any objection or disagreement

5  with that approach?

6         I will be glad to enter an order of continuing

7  objections by all four parties.  So all four parties will

8  have continuing evidentiary objections under the Federal

9  Rules of Evidence, I would say including, but not limited

10 to relevance, cumulative testimony, 403, hearsay,

11 argumentative comments, settlement and all attorney-client

12 privilege, and lack of personal knowledge or other

13 foundation.  Then to the extent that you want to spell out

14 what testimony should be either stricken or disregarded in

15 response to a continuing objection, you can do that in

16 your written briefing that will be filed on March 11th.

17        Does anybody have any objections to that

18 approach?  Hearing none.

19        MS. BROWN:  Not by the United States.

20        MS. OSOINACH:  No objection for the City.

21        THE COURT:  Ms. Albies or Ms. Curphey?

22 Mr. Karia?

23        MS. ALBIES:  For the AMA Coalition, no

24 objection.

25        THE COURT:  Mr. Karia?

1          MR. KARIA:  No objection, Your Honor.

2          THE COURT:  I will enter that order of

3    continuing objections for all four parties.

4          MS. BROWN:  Thank you, Your Honor.  Then the

5    final matter on the United States' list was that

6    Mr. Gruber will be testifying, of course, without an

7    expert.  He hasn't been discovered, given that this matter

8    was resolved to any formal discovery process.  The parties

9    conferred on that, and they agreed to that stipulation

10   that he may testify without discovery of an expert report.

11         THE COURT:  Very good.  All right.

12         MS. BROWN:  I believe that's all for the

13   United States.

14         THE COURT:  All right.  Anything else from the

15   City?

16         MS. OSOINACH:  Nothing further from the City.

17         THE COURT:  Anything from the police

18   association?

19         MR. KARIA:  No, Your Honor.

20         THE COURT:  Anything further from Albina

21   Ministries Coalition?

22         MS. ALBIES:  Yes, Your Honor.  This is

23   Ms. Albies.

24         I have a question.  This is in terms if the

25   Court has any sort of -- and this is more curiosity.  I

1  understand it is the Court's discretion about when to

2  enter testimony into the record.

3              Do you have any thoughts about how you plan to

4  do that?

5              THE COURT:  I'm not clear on exactly what you

6  are asking.

7              MS. ALBIES:  I believe the order that was

8  entered said the Court will receive testimony, and it

9  would be entered at the Court's discretion into the

10  record.  So people who have submitted written testimony,

11  will the Court kind of be reviewing that and decide

12  whether that will be entered into the record?  And if so,

13  whether they show up to testify or not, do you have any

14  thoughts on how the Court will be entering that into the

15  record, whether it will be published on ECF or be made

16  public in any other way?

17             THE COURT:  Good question.  My thinking is, I

18  would rather defer that to the parties.  Here is my

19  thinking:  I will hear and read what I need to hear and

20  what I need to read in order to make my decision on the

21  fairness hearing.  The only purpose of having a record, I

22  think, is for appellate purposes; at least that's the

23  primary purpose.

24             So I will be glad to receive into the record

25  anything that any of the four parties believes should be

1   put into the record for appellate purposes, but I was not

2   really planning in going through the written testimony

3   that I have received already in deciding what should be

4   part of the written record or the Court record and what

5   shouldn't be.

6           My expectation is to issue a brief opinion and

7   order on this.  I'll strike the word "brief."  My plan is

8   to write an appropriate opinion and order on this.  I will

9   refer to whatever factual record I think is relevant to

10  understand the reasoning that the Court has gone through

11  in that opinion and order.

12          I don't think it is necessary for me to put

13  certain things into the record for that purpose.  If

14  anyone disagrees, please tell me your opinion.  Otherwise,

15  my plan would be to simply invite the parties, whether it

16  be before the hearing, after the hearing, or in the

17  context of their March 11th filing, to ensure that the

18  record has whatever the parties believe the record should

19  have.

20          Anyone have a better approach or different

21  approach?

22          COUNSEL:  Yes, Your Honor.

23          THE COURT:  All right.  We heard a few people

24  say "yes."  The record is not reflecting anything to the

25  contrary.

1                   By the way, I want to let you know one more

2      thing.  We had a request, and I don't remember which

3      organization did this.  Mary, perhaps you do.

4                   There may be one or two people that might not

5      have government-issued photo ID.  We received sort of an

6      inquiry and a proposal of what to do about that.

7                   Mary, who did that request come from?

8                   THE CLERK:  I think it was the American Mental

9      Health Association.  It was a local mental health

10     organization.  I can find the exact name.

11                  THE COURT:  I think we sent you copies of our

12     response.  We copied the parties?

13                  THE CLERK:  Yes.

14                  MS. BROWN:  Yes, Your Honor.

15                  THE COURT:  The Marshals Service here would

16     really prefer us to not have very many people that try to

17     enter this building without government-issued photo ID,

18     but if there are going to be a couple, we are taking steps

19     to try to make sure they can get in.  We have accepted the

20     proposal from this one organization that they will take

21     photographs of people that they know want to come in and

22     who do not have a government-issued photo ID, send us

23     their names, their photographs, and we will have them on

24     the list for the courtroom security officers down on the

25     first floor of the courthouse.  We need those photographs

1    and that list of names by the close of business on

2    Wednesday, the week before our hearing.  I think that's

3    two days from now.

4           I don't want to advertise this too much.  I

5    don't want too many people that come without

6    government-issued photo IDs.  But if any of you know of

7    people who are planning on coming and don't have or refuse

8    to get government-issued photo IDs, this is how we are

9    planning on dealing with it.  I would really like to keep

10   that number at a minimum.  That's at the request of the

11   U.S. Marshals Service.

12          MS. BROWN:  Thank you, Your Honor.

13          We have one other question.  This may be more

14   directed to Mary, if Your Honor concurs in that request.

15   We really appreciate the Court getting us the DVDs as

16   quickly as possible and gathering that information.  One

17   of the issues that we realize when we got the CD of the

18   written testimony was that there are some people that

19   noted that they submitted a DVD, video testimony, and I

20   just wanted to ask the Court how the Court plans on

21   handling that as far as whether both showing the DVDs

22   during the fairness hearing and also allowing counsel

23   access to those before this hearing or after this hearing.

24          THE COURT:  Let me ask Mary or Nicholle, I have

25   not seen any DVDs.

1          THE CLERK:  People have asked can they, and we

2  have told them they can.  I told them when they needed to

3  have that to us by, but we haven't gotten anything.

4          THE COURT:  Who is talking?

5          MS. BROWN:  This is Adrian Brown.

6          THE COURT:  Did you say that some people

7  actually have submitted DVDs?

8          MS. BROWN:  We're looking at that.

9          MR. WILLIAMS:  Lisa Haynes said she would like

10  her son to submit a DVD.

11          THE CLERK:  He has not submitted one yet.  I

12  have been in contact with her and told her that he could.

13  I haven't received anything yet.  She said she would let

14  me know.

15          MR. WILLIAMS:  It is possible that people could

16  walk in the door with DVDs.

17          THE COURT:  My plan would be to ask how long the

18  DVD is.  If it is a reasonable length, plan on showing it

19  right then and there.  By "reasonable length," my

20  presumption is any oral testimony and DVD should really be

21  limited to five minutes per individual witness.

22          MS. BROWN:  Yes, Your Honor.

23          THE COURT:  If an individual comes in and says,

24  "I would like to give you five minutes of my testimony and

25  five minutes from my son," my plan is to say "fine."  If

1    they want to say, "I would like to give you an hour DVD

2    from my son," I don't think I am going to play it right

3    then and there.

4            MS. BROWN:  Right.

5            MS. CURPHEY:  I think the AMA Coalition, at

6    their community meetings, has taken videotaped testimony

7    for people.  I thought that DVD has been submitted, but

8    obviously it hasn't.  So I know at least some testimony

9    that has been videotaped for people by the AMA Coalition.

10   I don't know its length.

11           THE COURT:  As far as we know, we have not

12   received any DVDs.  If you could check back with those

13   folks, my guess is you will probably learn they were

14   planning to bring it to the Court.  If you could just

15   inquire.

16           Could we get a list of the names of witnesses

17   who are testifying on the video and approximately how long

18   each testimony is.  But if they think they have already

19   turned it in to us, we don't have it.

20           MS. CURPHEY:  I will clarify that.  Thank you,

21   Your Honor.

22           THE COURT:  Let me ask all of you, because you

23   have done a lot of these public hearings in this context

24   before this, does anyone anticipate any particular

25   disruptions that I should anticipate?  I'm not asking for

1  names of potential people who might be disruptive.  But

2  what sort of disruptions might I anticipate, if any?

3          MS. BROWN:  Your Honor, this is Adrian Brown for

4  the United States.  The United States has done a variety

5  of both private council and phone conferences.  The only

6  interruptions that we have seen -- there have been some

7  crowd noise here and there, which is nothing to be too

8  shocked about.  There have been some individuals who

9  appear to have mental illness that may interrupt more

10  loudly and more individually.  But other than that, there

11  hasn't been anything that caused, at least in our

12  settings, a security concern.  It has been more verbal

13  outbursts.

14          THE COURT:  My plan on dealing with that is to

15  ensure that anyone who makes a verbal outburst is advised

16  that they certainly can provide oral testimony, and I want

17  to hear what they have to say.  But I want to hear what

18  everyone has to say, and so I would ask them to not have

19  any more outbursts while other people are talking so we

20  can hear what those folks have to say.  Similarly, I will

21  assure them, when they are talking, I will make sure that

22  no one interrupts them.

23          We will play that by ear.  That's helpful.

24  Thank you.

25          All right.  Anything else anyone wants to talk

1   about now?

2           MS. OSOINACH:  Your Honor, the only other

3   disruption that is fairly typical is clapping or showing

4   support for whoever is testifying.  I don't know how you

5   want to deal with that, but that's fairly typical that the

6   audience will clap.

7           THE COURT:  I think if it is done in the middle

8   of some testimony, I will urge the audience to refrain and

9   wait until that person is done speaking so as not to take

10  away from that person's time, because they are limited to

11  five minutes.  But if someone wants to have brief clapping

12  after someone is done speaking, I'm not going to stop

13  that.

14          MS. ALBIES:  We have nothing further for this

15  hearing, Your Honor.

16          THE COURT:  I found this all very helpful.

17  Thank you very much.  If anyone needs to speak with us

18  before the 18th, just let Mary know, and we will get on

19  the phone with you.

20          COUNSEL:  Thank you, Your Honor.

21          THE COURT:  Thank you.

22          (End of proceedings.)

23

24

25

1

2                              --oOo--

3

4           I certify, by signing below, that the foregoing

5    is a correct transcript of the record of proceedings in

6    the above-entitled cause.  A transcript without an

7    original signature, conformed signature, or digitally

8    signed signature is not certified.

9
     /s/ Dennis W. Apodaca                    December 30, 2014
10   DENNIS W. APODACA, RDR, RMR, FCRR, CRR             DATE
     Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25