J. ASHLEE ALBIES     OSB #051846
E-mail: ashlee@civilrightspdx.com
CREIGHTON & ROSE, PC
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon  97204
Phone:  (503) 221-1792
Fax:      (503) 223-1516

SHAUNA CURPHEY, OSB # 063063
E-mail: scurphey@curpheylaw.com
CURPHEY & BADGER, P.A.
520 SW 6th Avenue, Suite 1040
Portland, OR 97204
Phone: (503) 241-2848
*Of Attorneys for Amicus AMA Coalition for Justice and Police Reform*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:12-cv-02265-SI |
| Plaintiff, | **ALBINA MINISTERIAL ALLIANCE** |
| v. | **FOR JUSTICE AND POLICE** |
| | **REFORM'S STATUS REPORT** |
| CITY OF PORTLAND | |
| Defendant. | |

The Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA Coalition") hereby submits its report regarding the status of the Collaborative Agreement, Dkt. 55, between the U.S. Department of Justice, the City of Portland, and the AMA Coalition. The AMA Coalition makes this submission to the Court in anticipation of the upcoming annual Status Conference scheduled for October 21, 2015. Specifically, this report focuses on the parties'

actions in fulfillment of their obligations under the Collaborative Agreement.

I.      **AMA Coalition Advocacy**

The Collaborative Agreement states that the "AMA Coalition agrees to advocate for the implementation of the Settlement Agreement reforms that the AMA Coalition supports. The AMA further agrees to oppose any attempts to weaken or dilute the Settlement Agreement reforms that the AMA Coalition supports." See Dkt. 55, ¶ 8. To that end, the AMA Coalition has strongly advocated for implementation of the Settlement Agreement reforms in the areas related to the 48-hour rule, training, use of force, the Independent Police Review (IPR), and community engagement, and supports the Community Oversight Advisory Board's recommendations regarding biased-based policing, among others. The AMA Coalition Steering Committee has met with Portland Police Bureau Chief O'Dea, Portland Mayor Charlies Hales, and Portland Auditor Mary Hull Caballero, among others, to continue to push for reforms in these areas.

II.     **Selection process for Compliance Oversight/Community Liaison (COCL) and the Community Oversight Advisory Board (COAB)**

Per the terms of the Collaborative Agreement, the AMA Coalition participated in the selection process for the COCL and in the selection of candidates for membership on the COAB. See Dkt. 55, ¶¶ 10, 11. The AMA Coalition and the COCL selection committee did not recommend Dr. Rosenbaum's team because it was based in Chicago and therefore was not familiar with the local community. The selection committee instead recommended that City Council give priority to the committee's top two selections. The City, however, ignored the selection committee's recommendation. Although the COCL team selected former Oregon Supreme Court Chief Justice Paul DeMuniz to serve on the team locally, he resigned that position in April 2015 for personal reasons. His departure was a blow to the COAB, as described

in their report. He has since been replaced with Kathleen Saadat, a well-respected Portland community activist. The AMA Coalition attends the COAB meetings and regularly provides feedback on proposals during public comment periods.

### III.    City's public notice of meetings

The Collaborative Agreement obliged the City to make best efforts to "make the following information available with as much advance notice as possible, with a goal of three weeks, in one location on a City website: meetings times and locations of the Training Advisory Council, the Citizen Review Committee, the Community/Police Relations Committee and the COAB; as well as all PPB audits and reports related to implementation of the Agreement and final drafts of all new or revised polices that are proposed specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement." *Id.* at ¶ 13. As a result of the Agreement, the Police Bureau section of the City of Portland web site now has a "DOJ" tab, which provides links to documents related to the case and the Settlement Agreement and a calendar of events and meetings related to implementation of the Settlement Agreement and community engagement generally.[1]

At the urging of the AMA Coalition, the City recently took additional steps to make such information available, but is not yet fully compliant with the Collaborative Agreement. Some of the meeting information is not always posted three or more weeks in advance, and the information provided is not always accurate. Recently, for example, the listing for the meeting of the Training Advisory Council (TAC) indicated it would take place on November 11 (Veterans

---

[1] The DOJ tab be viewed at: http://www.portlandoregon.gov/police/62044 (last accessed October 13, 2015).

Day), but the TAC web site listed November 10 as the meeting date. The City fixed the error after the AMA Coalition brought this to its attention. Meetings of the Citizen Review Committee (the civilian body that hears appeals from Independent Police Review findings in non-deadly force police misconduct complaints) are still missing from the DOJ tab. While those meetings are posted elsewhere on the City's web site, the AMA Coalition negotiated this term into the Collaborative Agreement because it is important to have all of the information related to the Settlement Agreement in one central place, making it easier for community members to gather the information and to participate at meetings, if they choose to do so.

### IV. AMA Coalition has supported community outreach

The AMA Coalition continues to support the COAB's community outreach per Paragraph 146 of the Settlement Agreement. CA, ¶ 14. The AMA Coalition, to the best of its ability given frequently short notice from the COAB itself, shares information about COAB meetings (including subcommittee meetings and COCL reports) with its constituents. Additionally, the AMA Coalition's participant organizations also forward information to their respective members. The AMA Coalition also provides monthly updates on the COAB's work, and the implementation of the Settlement Agreement in general, through its monthly membership meetings, which are open to the public, and has engaged in dialogue or informational forums with the following organizations:  Delta Sigma Pheta Links Inc., Race Talks, Baptist Union, Ecumenical Ministries of Oregon, Multnomah Bible College Student Assemblies, Warner Pacific College, and other community organizations.

### V. Meeting with DOJ, City, COCL regarding implementation

The Collaborative Agreement provides, that, within a year of the effective date of the

Settlement Agreement, representatives of the AMA Coalition, the City and the DOJ will meet "to discuss the City's progress in implementation of the Settlement Agreement and any concerns that the AMA Coalition has regarding implementation." *Id*. at ¶ 15. Thus, on September 14, 2015, the AMA Coalition met with counsel for the DOJ and the City, as well as many top-ranking members of the PPB, Mayor Hales, Chief O'Dea, Commissioner Fritz, and City Auditor Hull Caballero, among others. The COCL team also attended the meeting, with the Chicago-based research team appearing by phone. During this meeting, the DOJ shared its compliance assessment, which was recently filed with this Court. Dkt. 105. The AMA Coalition shared its view on the status of implementation, which echoed many of the shortcomings identified by the DOJ. Specifically, the AMA Coalition noted the following:

1. **48-hour rule**: The AMA Coalition has long advocated the City take steps to eliminate the practice of allowing officers involved in serious uses of force 48 hours advance notice before providing a statement on the incident. The Settlement Agreement, at paragraph 124, requires the PPB to review its protocols for compelled statements and revise them as appropriate with applicable law and current professional standards. The City's own independent assessment of the practice has recommended twice now that the practice be eliminated. It remains in effect, however. PPB officers involved in three 2015 shootings declined in to submit to voluntary interviews. During its meeting with City, the AMA Coalition reiterated the DOJ's position that PPB departs from national policing best practices by not requiring public safety statements from involved officers. While the AMA Coalition understands this is an issue in the City's Collective Bargaining Agreement with the Portland Police Association (PPA), the AMA Coalition expressed its support for the City to address that issue as soon as possible. The City's response

was that they were working on it.

   2.  **Training:** At the September 14, 2015, meeting, the AMA Coalition urged the City to include people with lived experience of mental health issues in giving Crisis Intervention Training, and for increased diversity and the use of authentic grassroots community participation in trainings in general.  In addition, the AMA Coalition stressed that training and policy must be consistent with each other in order so that officers may be held accountable when they violate policy. It reiterated the DOJ's concern that, despite the recent findings of uses of excessive force in a civil case and a juvenile case, the PPB's the training assessment found that there were no identified training needs at this time with respect to problematic uses of force.

   3.  **Use of force:**  The AMA Coalition shared its concerns about the recent case of Thai Gurule, a juvenile case in which the state court found that officers unlawfully stopped an African-American teenager, and then punched and Tased him in a show of excessive force. The AMA Coalition shared the DOJ's concern that, although officers are required to report other officers' constitutionally questionable uses of force, they did not do so in Thai Gurule's case. In addition, the AMA Coalition expressed concern that the officers involved did not deescalate the situation, and raised concerns that the community is unaware of whether any officer involved has been held accountable.

   4.  **Independent Police Review (IPR) process:** The AMA Coalition advocated for a less complicated system for police oversight, consistent with paragraph 123 of the Settlement Agreement, and for increased power for the IPR, including authority to compel officer testimony and ability to investigate serious uses of force and cases involving death of community members. The AMA Coalition's advocacy is consistent with the paragraph 9 of the Collaborative

Agreement, which acknowledges the "Settlement Agreement does not preclude the City from making additional changes to its policies, training, practices, procedures and oversight mechanisms of IPR and PPB."

5.  **Community engagement**: The AMA Coalition has advocated for continued community engagement over implementation of the Settlement Agreement. Disappointingly, the City did not substantively respond to many of the AMA Coalition's feedback and concerns at the September 14 meeting.

## VI.    Conclusion

The AMA Coalition welcomes any additional questions at the upcoming hearing on any of the above or related issues.

DATED: October 14, 2015

Respectfully Submitted,

    *s/ J. Ashlee Albies*
J. Ashlee Albies, OSB # 051846
ashlee@civilrightspdx.com

    *s/ Shauna Curphey*
Shauna Curphey, OSB # 063063
scurphey@curpheylaw.com