ELLEN OSOINACH, Oregon State Bar ID Number 024985
Senior Deputy City Attorney
Email: ellen.osoinach@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Suite 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
    *Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | 3:12-cv-02265-SI |
| **PLAINTIFF,** | |
| v. | **DEFENDANT CITY OF PORTLAND'S NOTICE OF COMPLIANCE REPORTING** |
| **CITY OF PORTLAND,** | |
| **DEFENDANT.** | |

    Attached as Exhibit A, for the Court's information is a cumulation of six quarters of the Portland Police Bureau (PPB) status reports created pursuant to paragraph 176 of the Settlement Agreement. These status reports "delineate the steps taken by PPB during the reporting period to comply with each provision" of the Settlement Agreement. PPB has provided these reports to the public and the DOJ since March of 2014.

    In addition, the City submits for the Court's information Exhibit B, a nine-page pamphlet highlighting PPB's work in implementing the Settlement Agreement prior to March 2014, as well as its work around equity in training and hiring. This pamphlet was widely distributed in March and April of 2014, and is currently available on the City's website.

/////

/////

Page  1  –    DEFENDANT CITY OF PORTLAND'S NOTICE OF COMPLIANCE ASSESSMENT

**INTRODUCTION**

The DOJ and Compliance Officer and Community Liaison (COCL) utilized Exhibits A and B in addition to other information provided by the City in formulating their own assessments and recommendations regarding implementation. As the DOJ and COCL recognized, the City has engaged in a substantial body of work to implement the Agreement. The City is well on its way towards achieving substantial compliance, but the City also expected the DOJ and COCL's first reports to point out areas where more work is needed. The DOJ and COCL reports evaluate many but not all of the City's efforts. They offer welcome technical assistance in advanced areas of the City's work, including crisis intervention, training, and officer accountability.

**CRISIS INTERVENTION**

The City particularly appreciated the DOJ's commendation of the City's efforts in the area of crisis intervention.[1] The DOJ recognized the City's devotion of significant resources and personnel to (1) a unique multi-disciplinary Behavioral Health Unit (BHU) that provides wrap-around services for persons experiencing mental illnesses before, during, and after they are in crisis; (2) the unprecedented collaboration between private hospitals, local government, and community service providers to establish a dedicated behavioral health hospital; and (3) the inclusion of advice from diverse external stakeholders in the work of the BHU and development of crisis intervention training.

The City agrees with the DOJ recommendation that PPB and BOEC should continue their work to systematically identify "mental health" calls. Although identification seems straightforward, it is not. All law enforcement agencies struggle to produce reliable data on the total number of police contacts with persons in mental health crisis, and this has hampered root-cause analysis about how to divert such persons from coming into contact with law enforcement.

---

[1] See Docket 105-1, DOJ Compliance Assessment ("DOJ Report".) "We appreciate the City's efforts to engage stakeholders in the development of [a drop off/walk in center]" (DOJ Report at 34); "We applaud [City] efforts to gather information which may be useful for officers to connect individuals with services" (DOJ Report at 37); "We commend PPB on the development and dedication of the BHU and its coordination with the BHU Advisory Committee and other community partners" (Id.); "We are encouraged by the meetings BHU regularly participates in to coordinate resource with community partners" (DOJ Report at 39)

Page  2  –    DEFENDANT CITY OF PORTLAND'S NOTICE OF COMPLIANCE ASSESSMENT

The City's Bureau of Emergency Communications (BOEC) has been diverting suicide calls to a crisis line for several years with great success. But more needs to be done to understand how persons in mental health crisis come into contact with law enforcement and why.

In January 2016, PPB will require all patrol officers to complete forms describing behavioral health indicators of persons they contact. This will require significant effort by the Bureau and individual officers. The data gathered will help inform proposed reforms in our public health systems as well as PPB's own efforts to get appropriate resources to people in crisis. This data will be a crucial supplement to PPB's initial evidence indicating that Portland's model of crisis intervention delivers effective and efficient policing services to persons in mental health crisis.

DOJ recognizes that the City's implementation of the "Memphis model" of crisis intervention is consistent with the goals of the Memphis model but slightly different in practice. The Memphis model requires emergency call-takers to attempt to determine whether a call is likely to have a mental health component. If so, a member of a crisis intervention team (CIT) is dispatched.

The City experienced two problems with that approach prompting us to make adjustments. First, a call-taker's subjective assessments about a person's mental health have the potential to be stigmatizing and inaccurate. Based on advice from community partners, the City instructed call-takers to provide descriptive information about behavioral indicators rather than make subjective assessments about a person's mental health.

Second, a call-taker's primary function is rapid triage. The call-taker necessarily makes decisions based on limited and typically second-hand information and is not well-positioned to make judgments about whether ECIT is the right resource. In "true Memphis Model" CIT officers are dispatched to more calls than they can reasonably handle, many of which do not involve a mental health crisis. To ensure adequate resources, Portland decided all its officers

should be trained in 40 hours of crisis intervention training in addition to having specialized teams of officer volunteers (ECIT). To more effectively utilize the ECIT, the City applied conservative criteria for call-takers to use in dispatch[2]. At the same time, however, the City expanded the use of more accurate "secondary dispatch" resources, including citizens and officers. Any citizen can request an ECIT officer, and the City agrees with DOJ that this service should be more widely advertised. In addition, on-scene officers who desire assistance with calls involving persons in mental health crisis can (and do) request help from ECIT officers.

The City recognizes that more data is needed to support the efficacy of our approach, and as described above, the City is taking aggressive steps to gather it. The City appreciates the support of our community partners, the DOJ, the BHUAC, the COAB, and the COCL as we move forward with assessing our programs.

**TRAINING**

As noted in the COCL's report[3], the City has made substantial changes in its approach to training. Most law enforcement agencies' training programs primarily rely on training methods unique to law enforcement. PPB, however, has benefitted from a broadened focus on additional models of adult learning. PPB created a sophisticated and evidenced-based needs assessment tool to identify gaps in training. And they tailored the widely-used Kirkpatrick Model of Training and Development, with assistance from Dr. Donald Kirkpatrick himself, to evaluate the nature and quality of their training. Both DOJ and the COCL commended PPB on the extensive and thoughtful use of scenarios to train and evaluate officers on de-escalation, disengagement, and communication with persons in crisis, including armed individuals. The City accepts most of the DOJ recommendations in this section and has already implemented many, such as adopting the suggestions from the City Auditor's 2014 report; consulting with Independent Police Review;

---

[2] ECIT is dispatched by BOEC when the subject is suicidal and either violent, armed, or threatening to jump from a structure. In addition, BOEC dispatches ECIT officers on all calls arising from a mental health facility.

[3] Docket 108 at 38

Page  4  –   DEFENDANT CITY OF PORTLAND'S NOTICE OF COMPLIANCE ASSESSMENT

using the force trend analysis of the Force Inspector; and procuring a more robust training tracker system.

In addition to implementing the express terms of the Settlement Agreement, PPB engaged in other efforts to improve the cultural competency of the police force. The leadership of the Bureau participated in a series of small group trainings examining systemic and implicit bias. PPB also hired a full-time equity and diversity manager who is part of the Bureau's senior leadership team. And by the end of 2016, every officer in the bureau will have participated in eight hours of equity training. While there is more work to do, these efforts are a visible demonstration of the City's commitment to continuous improvement both within and outside of the Settlement Agreement.

**OFFICER ACCOUNTABILITY**

The officer accountability section of the Settlement Agreement is designed to ensure that all complaints regarding officer conduct are fairly, consistently, and expeditiously addressed. The City has implemented the basic requirements of a fair, consistent, and timely discipline system but there is more work to be done. The City agrees that a more thorough root-cause analysis is required to identify and reduce barriers to compliance with the investigation timelines in the Settlement Agreement. Under the auspices of the City Attorney's Office, IPR, PPB, and the Mayor's office have met over the last several months to discuss changes to the current system. In December 2015, the City will convene a work group as recommended by DOJ that includes stakeholders such as citizen volunteers from the Citizen Review Commission (CRC) and the Police Review Board (PRB) to receive input on suggested changes to the existing system.

Although the City does not agree with all of the DOJ analysis in the section regarding "On Scene Public Safety Statements and Interviews", the City does agree that further discussion with DOJ and the Multnomah County District Attorney's Office is needed regarding interview

Page  5  –    DEFENDANT CITY OF PORTLAND'S NOTICE OF COMPLIANCE ASSESSMENT

practices in officer-involved death investigations. To be clear, the City does not engage in the practice the DOJ found objectionable in Seattle. That is, the City do not include a "*Garrity* admonishment" on the Force Data Collection Reports (FDCR) that officers routinely fill out after using force.

In 2015, five Portland officers used deadly force. Each of the five waived their Fifth Amendment rights, filled out a FDCR, and gave comprehensive interviews to criminal detectives, a grand jury, and internal affairs. Complex legal and policy issues arise, however, when a public employer requires an officer who invokes his or her Fifth Amendment right to complete a FDCR. Regardless of these issues, the City is committed to continuing its transparent communications with the DOJ and the public about all officer use of force, including deadly force.

**CONSISTENCY IN REPORTING**

The Court asked the Parties to describe any obstacles toward that end, and the City has identified a general concern regarding reporting. The DOJ assigns a compliance status to each paragraph of the Agreement, and the COCL has now adopted that format for its reporting. Many paragraphs in the Agreement have straightforward requirements where compliance can be assessed by asking whether the City did (or did not) do the required task. For example, Paragraph 66 requires PPB to maintain two specific principles in its use of force policy. Paragraph 89, which describes DOJ expectations of care providers, does not impose any requirements on the City. For those paragraphs where the tasks were straightforward, the DOJ did not always consistently assess compliance.

For example, in paragraph 66 the DOJ acknowledged that the force policy contains the two required principles; was approved by DOJ in October of 2013; and "meets the fundamental requirements" of paragraph 66. Nevertheless, the DOJ found the City only partially compliant. Even more puzzling, for paragraph 89 the DOJ acknowledged the paragraph imposes no

Page  6  –    DEFENDANT CITY OF PORTLAND'S NOTICE OF COMPLIANCE ASSESSMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

requirements on the City, but still assessed it as partially compliant. The DOJ and COCL evaluation criteria needs to be clearly articulated and fairly applied in order for the City and the public to understand which requirements have been fulfilled and which are outstanding.

## **CONCLUSION**

The City is committed to achieving full compliance with the terms of the Settlement Agreement. The City has embraced these changes on an individual and institutional level, devoting substantial resources to implementation. The City appreciates DOJ recognition that the City is partially compliant with every section of the Agreement, and the City intends to devote particularly focused attention on the six paragraphs where the DOJ found the City out of compliance. The City will continue to engage with DOJ, the COCL, the COAB, the PPA, the AMAC, and all other stakeholders in the important public dialogue about how to make improvements to our policing services both within and outside of the Agreement.

Dated: October 21, 2015

Respectfully submitted,

*/s/ Ellen Osoinach*
ELLEN OSOINACH. OSB # 024985
Senior Deputy City Attorney
Telephone: (503) 823-4047