**BILLY J. WILLIAMS, OSB # 90136**
United States Attorney
District of Oregon
**ADRIAN L. BROWN, OSB #05020**
adrian.brown@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone:    (503) 727-1003
Facsimile:    (503) 727-1117

**STEVEN H. ROSENBAUM,** Chief
**LAURA L. COON,** Special Counsel
**R. JONAS GEISSLER**
jonas.geissler@usdoj.gov
Senior Trial Attorney
**BRIAN D. BUEHLER**
brian.buehler@usdoj.gov
**SETH WAYNE**
seth.wayne@usdoj.gov
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
50 Pennsylvania Ave., NW
Washington, D.C.  20530
Telephone:    (202) 514-6255
Facsimile:    (202) 514-4883

Attorneys for Plaintiff, United States

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF PORTLAND,<br><br>Defendant. | Case No. 3:12-cv-02265-SI<br><br>**PLAINTIFF'S NOTICE OF SECOND PERIODIC COMPLIANCE ASSESSMENT REPORT** |

Page 1 –    Plaintiff's Notice of Second Periodic Compliance Assessment Report
            *United States v. City of Portland*; Case No. 3:12-cv-02265-SI

Plaintiff, the United States of America, provides notice to the Court of Attachment 1, our Second Compliance Assessment Report ("Report"), for the period of August 29, 2015 - August 29, 2016. Additionally, the United States provides the following executive summary of our Report:

- Use of Force:
  - Policies and training on use of force require modifications to incorporate all aspects of the Settlement Agreement, including provisions on de-escalation, appropriate disengagement, and consideration of signs and symptoms of mental illness. Portland Police Bureau ("PPB") needs to prioritize these revisions so that Officers and Supervisors clearly understand their roles and responsibilities in the field.
  - As a result of policy deficiencies, PPB is not requiring that Members complete a Force Data Collection Report for every use of force. This deprives PPB of adequate oversight of these uses of force, and renders its statistics on use of force unreliable.
  - A general assessment of Officers' actual use of force would be premature, as reports have suffered from incomplete narratives, missing data, or both.
  - The electronic control weapon ("ECW") program requires urgent improvement. We found too many ECW deployments that violated policy; supervisors too often defended these policy violations; and Members candidly shared that ECWs often malfunction, preventing appropriate deployment and reliable accountability.
  - The reports that PPB Officers and their supervisors do complete after a use of force are more rigorous than the Bureau has seen before, but PPB needs to resolve problematic reporting protocols.
  - PPB and the Compliance Officer/Community Liaison ("COCL") consulted on a methodology to audit uses of force, force investigations, and supervisors' reviews of those investigations, as we requested in our 2015 Settlement Agreement Compliance Status Assessment Report. PPB's auditing process will dramatically improve the Bureau's capacity to manage force. The audit is in its infancy, however, and will require considerable refinement and renewed commitment.
- Training: The City places a high value on Officer training.
  - PPB has made substantial progress in a training needs assessment, now informed by COCL's technical assistance.
  - Based on our observations, training should better integrate policy and competency-based evaluations.
  - The City's delay in procuring a training tracking software has hindered PPB.
  - COCL and PPB must agree upon a training audit.
  - Training will benefit from implementing recommendations from the Training Advisory Council.

- Community-Based Mental Health Services:  The City has supported the local establishment of a Psychiatric Emergency Services facility, the Unity Center.  Indeed, PPB deserves credit for the leadership it took to initiate conversations with the county, the state, and local hospitals to address this gap in services.  Once operational, the Unity Center is intended to provide acute psychiatric services for persons in crisis, as well as link individuals to community based services prior to discharge.  Unity will not, however, be a panacea; the State and County must still deliver adequate community-based services in an effort reduce contacts that persons with mental illness have with the police.

- Crisis Intervention:  PPB's dedication to its Behavioral Health Unit has borne fruit and praise from the Attorney General of the United States.  Furthermore, PPB reports that jurisdictions throughout the country have inquired about how PPB has established this successful model, which includes the Behavior Health Unit's Advisory Committee.
    - PPB has created a successful model with the BHU's Behavioral Health Response teams, in which a Project Respond Service provider is paired with a specially trained Patrol Officer to follow-up with individuals with mental illness who have had repeated contacts with law enforcement.
    - The City's Bureau of Emergency Communication ("BOEC," or "911") is in its nascent stage of compliance with revising protocols and training dispatchers to implement a fully operational crisis triage system.  BOEC has just recently developed a robust training curriculum for its dispatchers and call takers, and training will begin this Fall.
    - Portland's CIT model differs from the Memphis Model because it does not reserve all or even nearly all mental health-related calls for the most highly trained Crisis Intervention Officers, those who have received Enhanced Crisis Intervention Training.  To understand whether the Portland Hybrid Model successfully handles mental health calls for service, PPB has agreed to collect extensive data on how these calls are cleared.  To obtain accurate data, PPB must train Patrol Officers on the significance of this effort, and how the information will serve PPB in staffing these calls.

- Employee Information System ("EIS"):  PPB's EIS is a complex instrument that PPB could put to better use for risk mitigation.
    - PPB cannot adequately use the EIS to make finer-level comparisons between units because the system only permits comparisons between the division-level and precinct-level groups, not between discrete shifts and specialized units.
    - PPB has implemented Settlement Agreement-defined thresholds for review of Officers whose force exceeds a very high level; however, these thresholds have proven too high.  We agree with COCL that PPB should consider more sophisticated thresholds to find outliers who engage in higher risk behavior.
    - Once triggered, PPB should use the threshold to offer a meaningful opportunity to retrain or counsel the Officer.  Optimally, the triggered Officers should return to the normative behavior of their peers and, thus, the EIS should reduce risk of potentially career-ending behaviors or potential rights violations.  PPB should not merely treat EIS as a data warehouse.

- Accountability:  PPB's new leadership must rebuild trust from the community and PPB Officers after the prior Chief undercut the Independent Police Review ("IPR") and PPB accountability systems.
    - PPB's successes include:
        - tracking timeliness of investigations (Par. 121);
        - performing concurrent criminal and administrative investigations (Par. 123);
        - working on—though not resolving—the 48-hour rule (Par. 124);
        - issuing many Communication Restriction Orders ("CROs") when required (Par. 125);
        - beginning a process for a witness Officer's walk-through of critical incidents (Par. 126);
        - Seeking contemporaneous interviews of Officers involved in critical incidents (Par. 127);
        - adding IPR investigators (Par. 128); and
        - providing greater direction to Police Review Boards (Par. 132).
    - Challenges to ensure Officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair and consistent include:
        - the former Chief's covering up alleged misconduct (Sec. VIII);
        - the former Chief's boycotting of CRC (Sec. VIII);
        - failing to hold Officers accountable in certain circumstances (Sec. VIII, Par. 129);
        - subverting CROs by sharing videos with PPB Officers at roll calls (Par. 125);
        - permitting a Captain to discourage the filing of a complaint (Par. 130); and
        - begrudgingly addressing a liability finding, albeit absent assistance from the very plaintiff's attorney who sought that remedy (Par. 133).
    - Ultimately, the City plans to engage in comprehensive accountability reform through legislative action.  If successful, this should provide a route to substantial compliance with the Settlement Agreement's accountability provisions.
- Community Engagement:  The Community Oversight Advisory Board ("COAB") was an experiment in direct community participation in monitoring a police reform agreement.
    - Unfortunately, the board's ability to accomplish its work was significantly impaired by foundational problems such as:  the lack of an informed vetting process for the selection of members; a failure to adequately provide a comprehensive orientation and training of the volunteers prior to beginning their substantive work; not accurately predicting the amount of work required for policy recommendations; failure by City Commissioners to appoint replacement members as their appointees resigned, as well as failure by the City to finalize a process to select alternate at-large board members; infighting among members and with COCL as to each other's respective roles and the priorities of the

      workload; a change in COCL leadership and involvement; and civil unrest at meetings.

- o   As a result of these foundational problems, the effort to keep the COAB functioning has taken a disproportionate amount of time, with only mixed results in actually leveraging the ideas, talent, and expertise of the community as envisioned by paragraph 141 of the Settlement Agreement.
- o   Furthermore, a key failure was lack of coordination between the board and the City to implement a Community Engagement and Outreach Plan and work on the long-existent plan to address racial profiling.  We look forward to addressing the issues that have plagued the COAB as we consider modifications to the Settlement Agreement pursuant to our Paragraph 175 two-year comprehensive assessment.

Like last year, our Report uses the following color-coded compliance status levels to indicate our current assessment of PPB's progress in complying with each provision of the Settlement Agreement.  This year, however, we have added some notations to provide increased nuance to compliance status levels that did not change.  The color coding is as follows:

•      Blue: compliance rating pending or not measured.  This level indicates that either the provision does not have a specific measurement to assess, or that the United States has not yet been able to fully assess compliance, either due to insufficient documentation provided for assessment, or because the United States must complete additional analysis/observation of how the specific provision is being implemented.

•      Green: substantial compliance with an ongoing obligation.  This level indicates that the City has implemented the specific provision as required by the Settlement Agreement, and that the City has an ongoing obligation to continue such action to remain in compliance.

•      Yellow: partial compliance with an ongoing obligation.  This level indicates that while there has been progress made with implementation, specific areas need further attention in order to reach substantial compliance.

•      Red: non-compliance.  This level indicates that we have recognized barriers to achieving implementation of the provision that must be addressed to achieve compliance.

The Parties have acknowledged that the systemic reforms required by the Settlement Agreement will take time to implement. *See, e.g.,* Settlement Agreement Par. 178(a) (anticipating substantial compliance with all provisions by October 12, 2017, which was the estimated date as of the date of the initial filing of the proposed Settlement Agreement on December 17, 2012).

Our analysis and technical assistance provided with this Report is intended to both acknowledge the City's accomplishments achieved thus far and to advise the City on certain course corrections that will help achieve compliance.

At the status conference, we anticipate presenting the Court with an overview of our Report and answering any questions that the Court may have concerning this matter.

DATED this 18th day of October, 2016.

Respectfully submitted,

| BILLY J. WILLIAMS<br>United States Attorney<br>District of Oregon<br><br>JANICE E. HéBERT<br>Chief, Civil Division<br><br><br><br>*/s/ Adrian L. Brown*<br>ADRIAN L. BROWN<br>Assistant U.S. Attorney | STEVEN H. ROSENBAUM<br>Chief, Special Litigation Section<br><br>*/s/ Laura L. Coon*<br>LAURA L. COON<br>Special Counsel<br>*/s/ R. Jonas Geissler*<br>R. JONAS GEISSLER<br>Senior Trial Attorney<br>*/s/ Brian D. Buehler*<br>BRIAN D. BUEHLER<br>Trial Attorney<br>*/s/ Seth Wayne*<br>SETH WAYNE<br>Trial Attorney |