J. ASHLEE ALBIES     OSB #051846
E-mail: ashlee@civilrightspdx.com
CREIGHTON & ROSE, PC
300 Powers Building
65 SW Yamhill Street
Portland, Oregon  97204
Phone:  (503) 221-1792
Fax:      (503) 223-1516

KRISTEN CHAMBERS     OSB#130882
E-mail: kristen@ktp-law.com
KIRKLIN THOMPSON & POPE LLP
1000 SW Broadway, Ste. 1616
Portland OR  97205
Phone:  (503) 222-1640
Fax:      (503) 227-5251

SHAUNA CURPHEY, OSB # 063063
E-mail: scurphey@curpheylaw.com
CURPHEY & BADGER, P.A.
520 SW 6th Avenue, Suite 1040
Portland, OR 97204
Phone: (503) 241-2848

*Of Attorneys for Amicus AMA Coalition for Justice and Police Reform*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:12-cv-02265-SI |
| Plaintiff, | **STATUS REPORT OF THE ALBINA MINISTERIAL ALLIANCE FOR JUSTICE AND POLICE REFORM** |
| v. | |
| CITY OF PORTLAND | |
| Defendant. | |

PAGE 1  – AMA COALITION' STATUS UPDATE

The Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA Coalition") hereby submits its report regarding the status of the Collaborative Agreement ("CA") between the U.S. Department of Justice, the City of Portland, and the AMA Coalition, Dkt 55, to the Court in anticipation of the upcoming annual Status Conference scheduled for October 25, 2016.

**I.    AMA Coalition Advocacy**

The CA states, "the AMA Coalition agrees to advocate for the implementation of the Settlement Agreement reforms that the AMA Coalition supports. The AMA further agrees to oppose any attempts to weaken or dilute the Settlement Agreement reforms that the AMA Coalition supports."  See Dkt 55, ¶ 8. To that end, over the past year, the AMA Coalition has strongly advocated for implementation of the Settlement Agreement, and has provided feedback and recommendations to the City in the following areas: community engagement, specifically regarding the structure and role of the Community Oversight Advisory Board ("COAB") and Compliance Officer/Community Liaison ("COCL"); removal of the 48-hour rule and other improvements to the collective bargaining agreement with the Portland Police Association ("PPA"); changes to the Independent Police Review ("IPR") and the Citizen Review Committee ("CRC"); training; and use of force.  The AMA Coalition has also provided feedback and recommendations on the City's implementation of body cameras within the Portland Police Bureau ("PPB").

**II.    Community Oversight Advisory Board, Compliance Oversight/Community Liaison**

The AMA Coalition is greatly concerned about the implementation of the community oversight component of the Settlement Agreement. The COAB got off to a rocky start. Thirteen

members have resigned due to lack of support from the City and the PPB, lack of response from the City to the COAB's over 50 recommendations, and unclear expectations regarding the board's role. This is an alarming number considering the board has 15 members. Many of those who resigned were Council appointees. In addition, Kathleen Saadat, appointed to replace Judge De Muniz after he stepped down in April 2015 as chair of the COAB for the COCL, has also resigned from the COCL position.

Despite pleas from the AMA Coalition and numerous meetings on the selection of new members, the City has not taken action to fill the vacancies. The AMA Coalition participated in discussions with the City on plans to fill vacancies left by community-at-large members of the COAB, but the City did not implement those plans. There are currently four vacancies on the COAB that the City Commissioners can fill by appointment, but they have not done so. As a result of the City's failure to appoint replacement members, the COAB lacks a quorum to carry out its important work.

Moreover, on July 11, 2016, the COCL team requested that "the Settlement Agreement be amended to separate the COCL from the COAB," absolving it of its contractual obligations related to community oversight. *See* COCL Petition for Amendments to Settlement Agreement, (July 11, 2016), available at http://www.cocl-coab.org/sites/default/files/COCL_Formal_Petition_to_Parties_Submitted.7.11.16_0.pdf.

On August 19, 2016, the DOJ agreed to the City's request to place the COAB on a "60-day recess," while the City worked out changes to the COAB structure, which it would present to the DOJ as "conceptual amendments" to the Settlement Agreement. As a result, the work of the COAB was put on hold, as it could not meet and hold votes. The AMA Coalition, as well as the


remaining members on the COAB, strongly opposed this recess, and raised concerns in advance that any break would be seen as abandonment of the community component of the Settlement Agreement. The AMA Coalition, instead of the break, asked that, as provided for in the Settlement Agreement, the City Commissioners and the Human Rights Commission appoint members to the COAB so that it could continue to do its work while the Parties (the City, the DOJ, the AMA Coalition and the PPA) and a representative from the COAB convened a small group to come up with a plan.

The AMA Coalition has serious concerns that the City will request more time from the DOJ to develop a new COAB model and select new members. Any further delay will harm public perception of community involvement in police accountability. It will also prolong noncompliance with the Settlement Agreement.

The AMA Coalition met with members of the COAB and representatives from the City regarding moving forward with improvements to the COAB structure. Based on those meetings, the AMA Coalition made several recommendations to the City regarding the COAB's structure. These included recommendations that: (1) the COAB have adequate funding; (2) the COAB have a voice on hiring its own staff; (3) the COAB staff be able to fill the roles of management, administrative support and community organizing; (4) the COAB members receive stipends; (5) the COAB chair be selected from its membership and serve the role of a traditional board chair, with a facilitator available if needed; (6) a standing selection committee appoint new members to the COAB, filling vacancies as they arise; (7) the number of City appointees be limited to 2-3 members; and (8) criteria be established for selection of the PPB members of the COAB, including expertise in the areas addressed by the Settlement Agreement.

Moreover, the AMA Coalition has advocated that funds allocated to the COCL should be redirected towards the COAB, in light of the COCL's request to cease operational oversight of the COAB. The AMA Coalition understands that the COAB members themselves have proposed a court monitor; the Coalition's sole concern with that proposal is that it may eliminate meaningful community involvement in the oversight process.

The City provided the AMA Coalition with a confidential proposal regarding the new COAB on October 12, 2016. The AMA Coalition met with representatives from the City, the DOJ and the PPA to discuss that proposal on October 14, 2016. At that meeting, the AMA Coalition provided its criticisms of the proposal, and the City proposed that the COAB hold public meetings to seek input directly from the public on the COAB structure. The City indicated that several former COAB members who had recently resigned were willing to reconvene for that purpose.

The COAB serves an extremely important function as the community voice in oversight of implementation of the Settlement Agreement. The process and decision-making of the COAB should be transparent and accessible to the public and community. In light of that, the AMA Coalition does not oppose a plan to seek proposals from the former COAB members so long as the current COAB members concurrently continue the work of the COAB, as well as discuss how to move forward.  The Coalition is gravely concerned that the original 60-day "hiatus" will end on October 21 with no plan in place to implement the Settlement Agreement reforms related to community oversight of implementation of the Settlement Agreement. The AMA Coalition also notes that, a year and a half into implementation of this agreement, there has been little development of the Community Outreach Engagement Plan pursuant to the Settlement

Agreement, paragraph 146.

### III.    48-Hour Rule

As this Court is aware, the AMA Coalition has long advocated for the City to eliminate the provision in the PPA's Collective Bargaining Agreement ("CBA") that gave officers involved in serious uses of force 48 hours before providing a statement on the incident. The Coalition has repeatedly criticized that the provision runs counter to national policing best practices. The Settlement Agreement, at paragraph 124, requires the PPB to review its protocols for compelled statements and revise them as appropriate according to applicable law and current professional standards.

The City recently approved changes to the CBA with the PPA, removing the concrete language of the 48-hour rule embedded in the contract. The AMA Coalition welcomes and appreciates this long-overdue change.

The elimination of the 48-hour rule, however, did not fully address the problems with officer statements. The City's tentative agreement, which clarifies the contract and will become City policy if the ordinance takes effect, provides that "the officer will be afforded a reasonable opportunity to review the officer's police reports and body camera audio/video" before submitting to an investigatory interview in non-deadly force cases. As a result, this could potentially circumvent the purpose of eliminating the 48-hour rule when it comes to Taser or less than deadly force cases, as officers would have the opportunity to review footage without a clear time limitation. Furthermore, officers might not cooperate with the on-scene investigations of less-than-lethal uses of force by sergeants that were implemented as part of the Agreement, if they feel they need time to review video first.

The AMA Coalition has serious concerns about the manner in which the City negotiated the new CBA. The outgoing Mayor negotiated with the PPA in secret long before the June 2017 expiration of the agreement then in place. This was a departure from the prior practices, which allowed the public to observe at least some of the bargaining sessions. The AMA Coalition and other community groups had strongly advocated for the City to consider proposed changes to the CBA on several areas of accountability, not limited to just the 48-rule, but the City did not appear to advocate or propose these changes in bargaining this CBA, which will remain in effect until 2020.

In addition, the AMA Coalition is outraged regarding the manner in which the City passed the ordinance adopting the CBA. Mayor Hales moved up the time of consideration of the ordinance from the announced agenda time, recessed the Council out of council chambers, blocking public input and access with an extreme show of police officer force, and ultimately police used force on community members who expressed disagreement with the passing of the ordinance.  At least 10 demonstrators were arrested, many more injured, and for a period of time, City Hall was surrounded by officers in riot gear.  The City's use of police to block public access to a city council hearing, prohibiting the public from weighing in on and opposing a CBA which continues to hinder police accountalty and oversight, raises deep concerns of the City's commitment to these very notions.

### IV.     Independent Police Review/Citizen Review Committee

Per the Settlement Agreement, paragraph 123, the AMA Coalition has advocated for a less complicated system for police oversight and for increased power for the IPR, including authority to compel officer testimony and ability to investigate serious uses of force and cases

involving the death of community members. These proposals would reduce the complexity in the current system, which has two different entities (IPR and Internal Affairs ("IA")) conducting administrative reviews of use-of-force incidents. In addition, under the current system, IPR cannot interview an officer unless a Bureau member is present, in order to comply with restrictions on IPR authority embedded in the CBA.

The new CBA, however, maintains the provisions that prohibit IPR from conducting investigations into deadly force cases and from compelling officer testimony. The City failed to bargain or address the issues in the CBA which prohibit effective oversight of the PPB by IPR, and hinder accountability and effective oversight. The City Auditor and Director of IPR weighed in regarding their frustration that Mayor Hales did not consult with them during the negotiations. Auditor Hull Caballero wrote "[a] significant overarching concern is that the proposed collective bargaining agreement was negotiated with no notice to community stakeholders, in a break with previous contract negotiations," and "IPR was not notified that the City was engaged in collective bargaining with the [Portland Police Association], and the City did not request IPR input. We are concerned that the veil of secrecy that has enveloped the proposed contract and its creation stands to do long-term harm to the City's efforts to build a stronger police accountability system." *See* Attachment 1, Memo regarding Concerns regarding proposed PPA contract and draft Body Worn Camera policy, to City Council from the Auditor and IPR Director, dated October 3, 2016, available at www.portlandmercury.com/images/blogimages/2016/10/04/1475595249-auditor_memo_to_council_ppa_contract.pdf. The AMA Coalition agrees with Auditor Hull Caballero that IPR's current practice of interviewing officers through IA, necessarily left intact

by the City's failure to address IPR in the CBA, "does not address the City's obligation under the Department of Justice settlement agreement, which requires that IPR be provided with the means to conduct independent investigations of police officer misconduct." *Id*.  As such, the AMA Coalition believes the City's failure to address these issues puts them in non-compliance with the Settlement Agreement, paragraph 123, regarding the creation of an effective oversight system.

The City Auditor has proposed changes to IPR and CRC, which include limiting public input at CRC hearings and creating an appeals panel with a smaller number of CRC members to hear an appeal.  The AMA Coalition strongly opposes any limit on public involvement and any decrease in the diversity of the appeals panels.  Furthermore, the City's proposal is inadequate because it does not address long-standing community concerns such as giving IPR authority to compel officer testimony and conduct investigations into deadly use force and in-custody death cases, permitting CRC to examine the same, and allowing CRC to review cases under the preponderance of the evidence standard.

The Mayor has proposed convening another stakeholder group to consider proposed changes to IPR and CRC, which the AMA Coalition intends to participate in.  But the Mayor has severely circumscribed the topics to be addressed in that group. The AMA Coalition urges the Court to remind the City that community input is a crucial aspect of this Settlement Agreement.

## V.    Body Cameras

In approving this Settlement Agreement, this Court acknowledged the role that body-worn cameras could play in the role of police oversight. To that end, the AMA Coalition expected the City to engage with the community when drafting proposals related to policies around body cameras ("body cams"). The City solicited input from the public in the form of

online comments, and held three "forums," with little notice and small public participation. However, it was not until Mayor Hales introduced a proposed policy attached to the ordinance seeking approval for the proposed changes to the CBA on September 23, 2016, that the public actually saw a draft policy. The AMA Coalition was one of many community groups who opposed the proposed policy, in large part because it afforded officers to review body-cam footage before writing their reports, and because the City conceded that the issue of when and whether the officers could review body-cam footage was subject to mandatory bargaining under state law. The AMA Coalition notes that the City did not even appear to seek a legal opinion from the City Attorney on the issue of whether these issues were subject to permissive or mandatory bargaining until the day before the City adopted the new contract – that is, the City did not get that legal opinion prior to bargaining over the issue.

The AMA Coalition has been clear in its opposition to officers reviewing footage on excessive force and other serious incidents: The purpose of the footage is to establish the facts, not to help an officer delay their report or view it to get their story straight. The same considerations that underlie the DOJ's recommendations to prohibit involved officers reviewing footage in deadly force cases before writing reports or submitting to investigatory interviews is equally applicable to other use of force cases: the risk of collusive reporting and distortion of an officer's subjective belief of what occurred. *See* DOJ 2016 Settlement Agreement Compliance Assessment, Dkt # 124-1, p. 103 (10/18/16). The City Auditor has also expressed concern that a proposed provision which "allows officers [in non-deadly force cases] to view body camera recordings prior to writing a report is problematic; police reports are meant to reflect the PPA member's own recollection of events. *See* Attachment 1.  Accordingly, the AMA Coalition

supports the DOJ's recommendation that "both involved and witness officers not view any video of the force incident prior to providing a full statement and force report. After providing these, officers should be permitted to view video, if they choose, and submit a supplemental report." DOJ 2016 Settlement Agreement Compliance Assessment, Dkt # 124-1, p. 103 (10/18/16).

The Mayor has since promised to take into account public input in the drafting process, but has maintained the position that body cameras are a subject of mandatory bargaining and kept references in the tentative agreement, now adopted by the City, to the "Body Worn Camera Policy Version 2.2 dated 5/6/16." The AMA Coalition remains concerned that the PPA will have final authority over the policy, which imparts the PPA with a great deal of control over issues of public policy related to oversight and accountability.

## VI.    Training

For last year's annual hearing, the AMA Coalition reported its urging the City to include people with lived experience of mental health issues in giving Crisis Intervention Training and increase diversity and the use of authentic grassroots community participation in that training, and stressed that training and policy must be consistent in order for effective oversight and accountability. Those concerns still exist.

The AMA Coalition commends the City for hiring the PPB's first equity and diversity manager, tasked with ensuring the bureau's recruiting, hiring and promotional practices serve all people fairly. This manager developed trainings which included community participation, but it is unclear whether that training has been implemented. Apparently, people with lived mental health experience have been involved in the training, but that information has not been shared publically. The AMA Coalition attempted to review the updated training in this area, but the City

refused to allow such a review. The AMA Coalition would like to see the City take concrete steps on implementing the more inclusive training as well as public involvement in all aspects of training. The City is in a critical time with its focus on recruitment of new officers; these inclusive trainings will impact the bureau and the community for years to come. The AMA Coalition strongly believes a diverse new generation of officers who understand and are committed to community policing and peace keeping, as well as a diversified command staff, can help to change the culture.

**VII.   Use of Force**

For last year's status conference, the AMA Coalition shared concerns about the case of Thai Gurule, a Black teenager tased, arrested and charged with assaulting a police officer and resisting arrest, among other charges. A Multnomah County judge ruled the involved officers had unlawfully stopped the teen and found at least one officer - who had gone through the enhanced crisis intervention training – was not credible in describing the incident, and acquitted Mr. Gurule of all charges. For well over a year, the administrative investigation has been pending, and the public has not been informed of any actions taken in response to those findings. As such, the AMA Coalition again raises concerns about timely investigations, whether there will be any officers held accountable in this case, and whether any training must be changed in response to this incident.

**VIII.  City's Public Notice of Meetings**

Again, last year the AMA Coalition noted that the City was obligated to make best efforts to "make the following information available with as much advance notice as possible, with a goal of three weeks, in one location on a City website: meetings times and locations of the Training Advisory Council, the Citizen Review Committee, the Community/Police Relations

Committee and the Community Oversight Advisory Board; as well as all PPB audits and reports related to implementation of the Agreement and final drafts of all new or revised polices that are proposed specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement." *Id.* at ¶ 13.

The City eventually created a meeting and calendar page, but it does not appear to be updated. For example, as of October 18, 2016, there are no meetings listed for October, and the only meeting listed for November is the Training Advisory Council meeting. *See* http://www.portlandoregon.gov/police/62044.  Other meetings, as described above, and including this status hearing, do not appear on the calendar. The forum on changes to IPR held on August 1, 2016, was announced with three days' notice, on July 29. Because of the rushed timeline, the follow-up city forum hosted by the AMA Coalition only had, at best, 13 days' notice.  Similarly, a city forum hosted by AMA Coalition about the future of the COAB was only announced with 6 days' notice.  This is utterly inadequate notice for community input.

## IX.     AMA Coalition Has Supported Community Outreach

The AMA Coalition continues to support the COAB's community outreach per Paragraph 146 of the Settlement Agreement. CA ¶ 14. The AMA Coalition hosted a forum on the City's proposed changes to the IPR and CRC process on August 23, 2016, at Maranatha Church, and a COAB meeting at Maranatha Church on September 12, 2016.

Moreover, the AMA Coalition continues to communicate with its members and the broader community about events and meetings related to police oversight and accountability, as well as meetings related to implementation of the Settlement Agreement.

///

## X. Conclusion

The AMA Coalition urges this Court to remind the City of the importance of welcoming and valuing community input in the process of implementing the Settlement Agreement. The Coalition welcomes any additional questions at the upcoming hearing on any of the above or related issues.

DATED: October 19, 2016

Respectfully Submitted,

_____*s/ J. Ashlee Albies*_____
J. Ashlee Albies, OSB # 051846
ashlee@civilrightspdx.com

__*s/ Shauna Curphey*_____
Shauna Curphey, OSB # 063063
scurphey@curpheylaw.com

__*s/ Kristen Chambers*_____
Kristen Chambers, OSB # 130882
kristen@ktp-law.com