No. 16-73878

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: CITY OF PORTLAND,

Petitioner,

v.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON,

Respondent,

UNITED STATES OF AMERICA, *et al.*,

Real parties in interest.

ON PETITION FOR WRIT OF MANDAMUS FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF OREGON

**BRIEF OF ALBINA MINISTERIAL ALLIANCE COALITION FOR
JUSTICE AND POLICE REFORM AS *AMICUS CURIAE* IN SUPPORT OF
RESPONDENT, THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF OREGON
(Filed With Consent of all Parties)**

SHAUNA M. CURPHEY
CURPHEY & BADGER, P.A.
5918 NE 15TH Avenue, #155
Portland, OR 97212
Phone: (503) 241-2848

J. ASHLEE ALBIES
ALBIES & STARK, LLC
65 SW Yamhill Street, #200
Portland, OR 97204
Phone: (503) 308-4770

KRISTEN CHAMBERS
KIRKLIN THOMPSON & POPE LLP
1000 SW Broadway, Ste. 1616

Portland OR 97205
Phone: (503) 222-1640

*Attorneys for Amicus AMA Coalition for Justice and Police Reform*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

I.  INTEREST OF AMICUS CURIAE...............................................1

II. STATEMENT OF FACTS............................................................2

A.  Lack of Community Trust Has Been an Issue in This Case From the Outset and Was Raised Repeatedly at the Fairness Hearing. ............ 2

B.  The District Court Sought the Input of the Parties in Addressing the Concerns Raised by the Fairness Hearing. ........................................3

C.  The District Court's Comments at the Second Status Conference Reflect Its Respect for the Parties, the Public Attendees, and Its Role in Relation to the Settlement Agreement.............................................4

D.  At the Time of the Second Status Conference, Public Protests Had Expressed Frustration With the City's Lack of Engagement on Police Matters. .............................................................................5

III. ARGUMENT ..............................................................................6

A.  The City Has Failed to Establish That a Writ of Mandamus Is Appropriate........................................................................................6

1.  The City has not suffered any harm. ...........................................7

  i.   The City's failure to object precludes its claim of harm. ........... 7

  ii.  The status conferences do not deprive the City of the benefit of the bargains it reached with the parties....................................8

  iii. The District Court's decision to hold status conferences is not overreaching. ................................................................9

2.  The District Court did not commit error. ...................................11

  i.   The clear error standard applies. .........................................11

  ii.  The District Court has jurisdiction to hold status conferences. ................................................................12

  iii. The District Court did not overstep its authority. .................. 13

  iv.  The status conferences do not alter the terms of the Settlement Agreement. .........................................................13

  v.   The District Court's decision to allow public comment was not in error. ................................................................14

i

     **3.**    **The District Court has not disregarded its role under the Settlement Agreement.** .................................................................. 15

     **4.**    **The City's petition does not raise an issue of first impression.** .. 15

  **B.**   **No Basis for Reassignment Exists.** .................................................... 16

**IV. CONCLUSION** ............................................................................................ 17

ii

# TABLE OF AUTHORITIES

## Cases

*Bauman v. U.S. Dist. Court*, 557 F.2d 650 (9th Cir. 1977) ...................................... 7

*Bundy* v. *U.S. Dist. Court*, 840 F.3d 1034 (9th Cir. 2016) .............................. 11, 15

*Calderon v. U.S. Dist. Court*, 134 F.3d 981 (9th Cir. 1988) .................................. 11

*Cheney v. U.S. Dist. Court*, 542 U.S. 380 (2004) ....................................................... 6

*Goddard v. U.S. Dist. Court*, 528 F.3d 652 (9th Cir. 2008) .............................. 9, 10

*Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982) ................................................... 15

*In re Cement Antitrust Litigation*, 688 F.2d 1297 (9th Cir. 1982) .......................... 16

*K.C. v. Torlakson*, 762 F.3d 963 (9th Cir. 2014) .................................................... 13

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994) .................................... 13

*Krechman v. County of Riverside*, 723 F.3d 1104 (9th Cir. 2013) ......................... 17

*Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................................................... 10

*McDaniel v. U.S. Dist. Court*, 127 F.3d 886 (9th Cir. 1997) ............................... 7, 8

*O'Connor v. Colvin*, 70 F.3d 530 (9th Cir. 1995) .................................................... 12

*Rizzo v. Goode*, 423 U.S. 362 (1976) ...................................................................... 10

*Spangler v. Pasadena City Bd. of Educ.*, 519 F.2d 430 (9th Cir. 1975) ................ 13

*State Dept. Soc. Servs. v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008) ......................... 13

*United States v. Guerrero*, 693 F.3d 990 (9th Cir. 2012) ........................................ 7

*United States v. Index Newspapers LLC*, 766 F.3d 1072 (9th Cir. 2014) .............. 10

*Valley Broadcasting Co. v. U.S. Dist. Court*, 798 F.2d 1289 (9th Cir. 1986) .......... 7

## Statutes

Or. Rev. Stat. § 192.620 ........................................................................................... 10

## Rules

Fed. R. Civ. P. 42(a)(2) ....................................................................................... 14, 15

AMAC 2017 Status Report Attachment 1 Page 5 of 25

## I.    INTEREST OF AMICUS CURIAE

The Albina Ministerial Alliance Coalition for Justice and Police Reform

(AMA Coalition) is a grassroots association of individuals and 25 community-

based organizations with a long history of advocacy for police accountability and

improved police-community relations in Portland, Oregon. The Albina Ministerial

Alliance (AMA), a group of Portland-area churches, including many

predominantly African-American congregations, founded the AMA Coalition in

2003, in the wake of the police shooting of Kendra James, a young, unarmed

African-American woman. In 2010, the AMA Coalition called for, and participated

in, the U.S. Department of Justice (DOJ) investigation that eventually led to the

DOJ's Complaint against the City of Portland (City) in the case at issue.

In the four years since the District Court granted the AMA Coalition *amicus*

*curiae* status in this case, in an effort to ensure that the City adequately addresses

community concerns as it implements the Settlement Agreement reforms, the

Coalition has participated in all the briefing and hearings before the District Court,

and numerous meetings with the parties. In light of this extensive participation, and

the community perspective it offers, the AMA Coalition believes its brief in

support of the District Court will be helpful to the Court in deciding this matter.[1]

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), the AMA Coalition
hereby certifies that: (a) no party's counsel authored any part of this brief, (b) no
party or party's counsel contributed money to fund the preparation or submission

1

## II.   STATEMENT OF FACTS[2]

### A. Lack of Community Trust Has Been an Issue in This Case From the Outset and Was Raised Repeatedly at the Fairness Hearing.

The DOJ's investigation of the City of Portland that led to the Complaint and proceedings below found that, "a trust divide exists between PPB [Portland Police Bureau] and certain segments of the Portland community" and that,

> [C]oncerns and tensions expressed by community members date back many years and will require persistent continuing commitment to inclusion and transparency as well as effective structures to facilitate continuing dialogue.

[DOJ Findings Letter, ER 327]. Toward that end, the Settlement Agreement created a Community Oversight Advisory Board (COAB) "[t]o leverage the ideas, talent, experience, and expertise of the community." [ER 51]. Among other tasks, the COAB served "to receive public comment and concerns" regarding implementation of the Settlement Agreement. *Id.*

The AMA Coalition sought participation in the proceedings below based in part on concerns that the Settlement Agreement did not adequately provide for community input on and oversight of reform efforts. Numerous individuals and

---

of this brief, and (c) no person other than *Amicus* or their counsel contributed money to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

[2] The AMA Coalition agrees with the facts as set forth in the Response of the District Court (Docket No. 13), and here provides additional relevant facts.

2

community groups made similar criticisms at the fairness hearing. [*See, e.g.,* Written Comments for Fairness Hr'g, ER 328-330, 331-334, 337, 341, 342].

### B. The District Court Sought the Input of the Parties in Addressing the Concerns Raised by the Fairness Hearing.

Following the fairness hearing, the District Court presented questions to the parties regarding issues raised at the hearing, including its authority to hold periodic hearings after entry of the Settlement Agreement. [Post-Hr'g Questions, USDC Docket No. 61]. The parties submitted briefing on that issue, after which the District Court proposed to stay the action and hold periodic hearings where it could accept evidence. [USDC Docket Nos. 63, 64, 67, 68, 78]. The court allowed the parties to submit additional briefing on its proposal. [USDC Docket Nos. 78]. The AMA Coalition and the DOJ asserted that the Court could hold such hearings [USDC Docket Nos. 79, 80, 83, 84], and the Court eventually did order periodic hearings where the parties would present evidence. [ER 78-82].

The City appealed the District Court's order, but, after mediation with the parties, ultimately agreed to a proposed amended order. As relevant here, the main differences between the order the City appealed [ER 78-82] and the amended order [ER 83-88] are that the original order referred to periodic hearings where the parties would "present evidence" [ER 82], whereas the amended order referred only to annual status conferences [ER 87]. Both the order the City appealed and the amended order provided that the case would be placed on the court's inactive

3

docket, "other than for the annual status conferences . . . *or otherwise as may be directed by the Court.*" [ER 82, 87] (emphasis added).

### C. The District Court's Comments at the Second Status Conference Reflect Its Respect for the Parties, the Public Attendees, and Its Role in Relation to the Settlement Agreement.

During the second status conference, the District Court explained its role in relation to the Settlement Agreement on several occasions. [ER 116-117, 192-193, 217, 275]. Following the DOJ's request for two interim status conferences, the District Court stated,

> It is also my understanding that, unless and until there is a motion presented to the Court . . . really the only thing that this court is able to do is hear periodic status conferences and hear from the parties how things are going. Then if I don't receive a motion, then all I can do is receive information and receive input, really from a wide variety of sources.

[ER 116-117]. The DOJ confirmed that this was an accurate summary. [ER 117]. The City did not object to the court's summary and recognized that the status conferences were "helpful" [ER 151]. In an exchange with a city commissioner who asked to speak at the hearing, the District Court, reiterated:

> If the parties come together and . . . ask me to provide direction, I will do whatever the parties jointly ask me to do. But until then, and unless that happens, this is the parties' settlement. The parties are to work together. . . If they want to ask the Court to do something, they can do that. But if they don't agree, the only real vehicle that is left under the law is for the United States to file a motion before me.

[ER 275].

4

The City also did not object to the Court hearing from members of the
public, despite having the opportunity to do so [ER 95], nor did it object to any
specific remark during the conference. [ER 226-280]. The AMA Coalition agrees
with the District Court Response [Docket No. 13] regarding the public comments
at the status conference, except that the Coalition considered Mr. Davis's
statements as inappropriate *ad hominem* remarks, and, after the hearing, expressed
as much to the lawyer against whom they were directed. The AMA Coalition also
notes that the District Court thanked everyone who spoke at the conference (not
just Mr. Davis) and addressed every person by name (not just Mr. Walsh). [ER
226, 230, 235, 238, 240, 243, 247, 248, 250, 252, 254, 257, 258, 260, 266, 268,
270].

### D. At the Time of the Second Status Conference, Public Protests Had Expressed Frustration With the City's Lack of Engagement on Police Matters.

At the time of the second status conference, at the direction of the City, the
COAB had been on hiatus for over two months, despite serving as the primary
vehicle for community input on the implementation of the Settlement Agreement.
Maxine Bernstein, *Portland's Troubled Community Police Advisory Board to Take
Two-Month Hiatus*, THE OREGONIAN, Aug. 24, 2016. Moreover, shortly before the
status conference, the City passed a police union contract in a meeting room
cordoned off from the public, after weeks of public opposition, which culminated

5

in the police forcibly removing demonstrators from City Hall. Brad Schimdt,

*Portland City Council Approves Police Contract Amid Unruly Protest*, THE

OREGONIAN, Oct. 12, 2016.

The City addressed these issues at the status conference, and solicited the

District Court's advice. [ER 145-150]. The City and the Court then discussed the

advisability of interim status conferences [ER 145-155]. The Court stated:

> I do think one of the reasons why we may be seeing disruptions at
> various public meetings . . . maybe is in part driven because of public
> frustrations with the perception of how slowly things are moving. I'm
> not saying things are moving slowly, but nor am I saying they are not.
> But that may be a source of some public frustration. One of the ways
> to address that may be with more transparency, more public hearings.

[ER 155].

The City does not take that view. Instead, its Petition for Writ of

Mandamus takes issue with the District Court order granting the DOJ's

request for an interim status conference, and its decision to allow members

of the public to speak at a status conference. [Docket No. 1, pp. 1-3].

## III.  ARGUMENT

### A. The City Has Failed to Establish That a Writ of Mandamus Is
###     Appropriate.

A writ of mandamus "is a drastic and extraordinary remedy reserved for

really extraordinary causes." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)

(internal citations omitted). The petitioner has the burden of showing that its right

6

to a writ of mandamus "is clear and indisputable." *United States v. Guerrero*, 693 F.3d 990, 999 (9th Cir. 2012) (citing *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 656 (9th Cir. 1977)). While the petitioner need not satisfy all the *Bauman* factors, a writ will not issue when only one of *Bauman* factors is satisfied, or when a majority of factors militate against issuance. *See Valley Broadcasting Co. v. U.S. Dist. Court*, 798 F.2d 1289, 1292 n.3 (9th Cir. 1986). Here, assuming the City meets the first *Bauman* factor, it fails to meet any of the other requirements for issuance of a writ of mandamus.

### 1. The City has not suffered any harm.

A petitioner for writ of mandamus must establish, that "it will seriously be harmed by the denial of relief." *McDaniel v. U.S. Dist. Court*, 127 F.3d 886, 889 (9th Cir. 1997). Here, the City claims harm on the grounds that: 1) the District Court deprived the City of the benefit of the bargains it reached in the Settlement Agreement and its resolution of its appeal; and 2) the District Court "overreached into the management of the City's Police Bureau." (Docket No. 1, at pp. 16-17). Neither of these alleged harms is substantiated.

### i. The City's failure to object precludes its claim of harm.

A petitioner's failure to "immediately and unequivocally" assert its opposition undermines an "argument that extraordinary circumstances exist warranting mandamus relief." *McDaniel*, 127 F.3d at 889 (petitioner not entitled to

7

mandamus relief when it partially complied with a discovery order, and waited five

months to seek a writ of mandamus). Here, the City withdrew its objection to the

District Court setting status conferences when it resolved its appeal and submitted

the proposed amended order, which states that the District Court may direct status

conference as it sees fit. [ER 87]. The City also did not object to members of the

public speaking at the second status conference. [ER 95]. The City's lack of

objections precludes its claim that it has suffered harm.

> ii.    *The status conferences do not deprive the City of the benefit of
> the bargains it reached with the parties.*

The City's assertion that it "was deprived the benefit of its bargain" [Docket

No. 1, p. 17] in the Settlement Agreement and in the resolution of its appeal is not

supported by the facts. The Settlement Agreement provides, "The Court shall retain

jurisdiction of this action *for all purposes* until the City has substantially complied

with all provisions of this Agreement," [ER 71] (emphasis added), and has no

provision regarding status conferences. Similarly, the amended order that the City

agreed to when it dismissed its appeal provides that the District Court may direct

status conferences as it sees fit [ER 87] and has no provision limiting public

comment at the conferences.

Moreover, the City's argument overlooks that, regardless of the agreements

among the parties, the Court retains its discretion to direct the conduct of the case

within the limits set by the Settlement Agreement. The fact that the parties jointly

proposed an amended order did not, and indeed could not, restrict the actions of

District Court. Thus, the District Court's decision to sign the proposed amended

order in no way cabined its exercise of discretion in the fulfillment of its duties –

and accordingly did not deprive the City of the benefit of its bargain.

> iii.   *The District Court's decision to hold status conferences is not overreaching.*

The City's assertion that the District Court overreached "into the

management of the City's Police Bureau" [Docket No. 1, p. 17] similarly lacks

support in the facts. A government entity must provide specific information to

support a contention that a district court has overreached. *See Goddard v. U.S.

Dist. Court*, 528 F.3d 652, 658 (9th Cir. 2008) (state provided no information on

how the order at issue burdened it beyond what is normally required during

litigation).

Here, however, the City's argument relies on cases where a court imposed

injunctive relief. [Docket No. 1, pp. 14-15] (citing *Los Angeles v. Lyons*, 461 U.S.

95 (1983) (reversing court order that enjoined the municipality from applying

choke holds); *Rizzo v. Goode*, 423 U.S. 362 (1976) (reversing court order requiring

submission of a plan for handling citizens' complaints of police misconduct).

Injunctions serve "to accord or to protect some or all of the substantive relief

sought by a complaint in more than a preliminary fashion" and thus are distinct

from a court's case management prerogatives.  *See Goddard*, 528 F.3d at 658

9

(internal citation omitted). Thus, the cases cited by the City are wholly inapposite
because the District Court has not granted any substantive relief. Rather, the
District Court, under its case management prerogative, has placed no burden on the
City other than to appear at status conferences, an act normally required of parties
in litigation.

Essentially, the City claims its harm stems from the fact that the status
conferences are "public proceedings" where people may "provide comments to the
court." [Docket No. 1, p. 10]. The City, however, as a public entity, is required to
conduct its business in public. Or. Rev. Stat. § 192.620 *et seq.* Additionally,
"[p]ursuant to the First Amendment, there is a presumed public right of access to
court proceedings*." United States v. Index Newspapers LLC*, 766 F.3d 1072, 1084
(9th Cir. 2014). Moreover, the City regularly hears from the public at City Council
meetings. Considering its obligations as a public entity, the City's assertion of harm
rings decidedly hollow.

Furthermore, the City opened the door to public testimony when it
introduced the very type of evidence it seeks to exclude. As noted in the District
Court's Response, the City's presentation at the status conference included a 30-
minute video, which included comments from Portland police officers and others.
In light of its video presentation, the City cannot claim it is unfair that other
members of the public (not hand-picked by the City) were allowed to speak.

10

## 2.     The District Court did not commit any error.

The absence of clear error ordinarily precludes mandamus relief. *Bundy* v. *U.S. Dist. Court*, 840 F.3d 1034, 1041 (9th Cir. 2016). The clear error standard requires that the reviewing court have "a definite and firm conviction that a mistake has been committed." *Id.* (citations omitted). A lesser showing applies only in "supervisory mandamus" cases, "where the petition raises an important question of law of first impression, the answer to which would have a substantial impact on the administration of the district courts." *Calderon v. U.S. Dist. Court*, 134 F.3d 981, 984 (9th Cir. 1988) (internal citation omitted).

### i.     *The Clear Error Standard Applies.*

The City argues that the lesser, "supervisory" standard applies because "the question of the appropriate involvement of the District Court in effectuating the terms of a settlement agreement" is one of "major importance." [Docket No. 1, p. 13]. There are three major flaws with this contention. First, the City mischaracterizes the issue as the court's power to "effectuate" a settlement agreement, when its petition merely seeks to restrict the District Court in relation to status conferences, which are nowhere mentioned in the Settlement Agreement. Second, the City's concern over status conferences is idiosyncratic to this case, and thus is not one of "major importance." Finally, even if the City's characterization of the issue is accurate, the circumstances in which a court has jurisdiction to enforce

11

a settlement agreement is not a question of first impression. *See, e.g., O'Connor v. Colvin*, 70 F.3d 530, 532-533 (9th Cir. 1995). Thus, "supervisory" review does not apply here.

### ii. The District Court has jurisdiction to hold status conferences.

The City's first claim of error contends that, absent a claim of breach of the Settlement Agreement, the Court lacked jurisdiction to hold status conferences after it conditionally dismissed the action. [Docket No. 1, pp. 13-14, 17]. The City's argument focuses solely on the circumstances in which a court may exercise jurisdiction to enforce a settlement agreement. The District Court's decision to hold status conferences, however, does not amount to enforcement of the Settlement Agreement, which is silent on that issue. Thus, the District Court did not require a motion to enforce before it could hold a status conference.

Rather, the status conferences are an appropriate exercise of the District Court's inherent power. A court may exercise ancillary jurisdiction "to manage its *proceedings*, vindicate its authority, and effectuate its decrees." *K.C. v. Torlakson*, 762 F.3d 963, 966 (9th Cir. 2014) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380 (1994). Ancillary jurisdiction extends to a court's "broad, inherent authority over collateral matters," even after dismissal of the underlying suit." *Torlakson*, 762 F.3d at 969; *Spangler v. Pasadena City Bd. of Educ.*, 519 F.2d 430, 438 n.10 (9th Cir. 1975) *rev'd on other* grounds, 427 U.S. 424 (1976).  (district

12

court that dissolved an injunction and placed the case on the inactive docket did

not relinquish jurisdiction and could reactivate the case); *see also State Dept. Soc.*

*Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (district court had power to

grant discovery request as "part of its inherent power to enforce judgments"). Thus,

the District Court did not lack jurisdiction to hold status conferences, and the City

cannot establish error on that basis.

> iii.    *The District Court did not overstep its authority.*

The City's next claim of error contends that the Court overstepped its

"authority to supervise the functioning of the City of Portland's police

department." [Docket No. 1, p. 15]. The District Court, however, has not ordered

that the City take any action to the implement the Settlement Agreement. Rather, it

has merely ordered that the City appear at status conferences, an action ordinarily

required of parties to litigation. Thus, the City's contention is not well-founded.

> iv.    *The status conferences do not alter the Settlement Agreement.*

The City also claims error on the ground that the District Court's decision to

hold status conferences, and to allow public comment at them, impermissibly

modified the terms of the Settlement Agreement. [Docket No. 1, p. 16]. The

Agreement, however, states "[t]he Court shall retain jurisdiction of this action *for*

*all purposes* until the City has substantially complied with all provisions of this

Agreement." [ER 71] (emphasis added). Moreover, the Agreement required

13

conditional dismissal under Federal Rule of Civil Procedure 41(a)(2), [ER 71], which states "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 42(a)(2). Thus, by invoking Rule 41(a)(2), the parties contemplated that the District Court could impose conditions on dismissal. As a result, the City cannot establish that the District Court's decision to hold status conferences altered the Agreement.

> v. *The District Court's decision to allow public comment was not in error.*

Finally, the City contends that the Court erred by allowing members of the public act as *amicus curiae*. [Docket No. 1, p. 16]. A district court has broad discretion to appoint *amici curiae*. *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982). Moreover, abuse of discretion review in mandamus proceedings is "especially deferential," requiring an abuse of discretion "so obvious that the error is 'clear' to all." *Bundy*, 840 F.3d at 1041.

Here, when District Court announced it would allow members of the public to speak, no party objected. Moreover, the City's 30-minute video presentation at the conference included public comment. Thus, District Court's decision to allow public comment cannot be characterized as an obvious mistake.

14

### 3. The District Court has not disregarded its role under the Settlement Agreement.

The fourth *Bauman* factor inquires "whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules." *In re Cement Antitrust Litigation*, 688 F.2d 1297, 1303-1304 (9th Cir. 1982). Here, the City's argument that the District Court has persistently disregarded its role under the Settlement Agreement is untenable. [Docket No. 1, p. 17]. The District Court's decision to hold status conferences does not conflict with the Agreement, which provides that the District Court retains jurisdiction over the case for all purposes. [ER 71]. Moreover, the District Court's comments at the status conference regarding its role under the Settlement Agreement amply demonstrate that it respects that role. [ER 116-117, 192-193, 217, 275].

### 4. The City's petition does not raise an issue of first impression.

The fifth *Bauman* factor inquires whether the district court's order raises new and important problems or issues of law of first impression. *In re Cement Antitrust Litigation*, 688 F.2d at 1303-1304. Here, the City argues that "the authority of District Courts in the implementation of settlement agreements is an important question." [Docket No. 1, p. 17]. This contention lacks merit for the reasons set forth in Section III.A.2.ii, above.

15

## B. No Basis for Reassignment Exists.

Reassignment is reserved for "rare and extraordinary circumstances"

*Krechman v. County of Riverside*, 723 F.3d 1104, 1112 (9th Cir. 2013) – and this is

not one of them. Far from exhibiting "substantial difficulty" in limiting its

involvement, as the City claims, the District Court has kept within the confines set

by the Settlement Agreement. It has done nothing more than order the City to

appear at additional status conferences, and did so at the behest of the DOJ (with

the support of the AMA Coalition).

The City nonetheless contends that reassignment is necessary to "preserve

the appearance of justice" because a reasonable person would question whether the

District Court has treated the City fairly. [Docket No. 1, p. 19]. Thus, the City, a

defendant in a case alleging a pattern of police use of excessive force against some

of its most vulnerable citizens, apparently finds it unfair that the District Court

asked it to appear and report publicly on the status of reform efforts. The AMA

Coalition finds the City's position deeply troubling. As a public entity, the City

should embrace the opportunity to engage with the public, especially considering

the DOJ investigation findings that a "trust divide exists" between the police

department and certain segments of the community. [ER 325]. Thus, reassignment

of this case would not preserve the appearance of justice. Rather, it would serve to

engender further public distrust.

16

Finally, reassignment would result in wasted effort. The District Court has had this case for more than four years. It is well acquainted with the parties, has demonstrated a deep understanding of the issues and the successes and challenges of the City's reform effort – all of which would be lost if this case were reassigned.

## IV.  CONCLUSION

The City claims it participated in the settlement of the DOJ's allegations in part "to enhance transparency, and to build trust and legitimacy with the community." [Docket No. 1, p. 4]. Its petition, which asks this Court to limit the number of status conferences and to prohibit public comment, undermines that goal. The AMA Coalition respectfully requests that the Court deny the City's petition.

Dated:  March 22, 2017

Respectfully submitted,

*/s* Shauna M. Curphey
SHAUNA M. CURPHEY
CURPHEY & BADGER, P.A.
5918 NE 15TH Avenue, #155
Portland, OR 97212
Phone: (503) 241-2848

J. ASHLEE ALBIES
ALBIES & STARK, LLC
65 SW Yamhill Street, #200
Portland, OR  97204
Phone: (503) 308-4770

KRISTEN CHAMBERS

17

KIRKLIN THOMPSON & POPE LLP
1000 SW Broadway, Ste. 1616
Portland OR 97205
Phone: (503) 222-1640

*Attorneys for Amicus Curiae AMA Coalition for Justice and Police Reform*

18

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 16-73878

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is 4,097 words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [_____]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

| Signature of Attorney or Unrepresented Litigant | /s/ Shauna M. Curphey | Date | March 22, 2017 |

("s/" plus typed name is acceptable for electronically-filed documents)

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 22, 2017. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: March 22, 2017

*/s* Shauna M. Curphey
SHAUNA M. CURPHEY
CURPHEY & BADGER, P.A.
5918 NE 15TH Avenue, #155
Portland, OR 97212
Phone: (503) 241-2848

*Attorney for Amicus Curiae AMA Coalition for Justice and Police Reform*