NEWS: PPB to Create "New 48-Hour Rule" for Officer Involved Shootings

Albina Ministerial Alliance Coalition for Justice and Police Reform
   c/o Maranatha Church
   503-288-7242

Media contact: Dr. T. Allen Bethel, AMA Coalition    503-288-7242
        Dr. LeRoy Haynes, Jr, AMA Coalition    503-288-7242

NEWS ITEM

For Immediate Release   July 12, 2017

PPB to Create "New 48-Hour Rule" for Officer Involved Shootings

The Portland Police Bureau (PPB) is poised to take the long-time bothersome "48-Hour Rule," which allowed officers two days before being compelled to testify after a shooting, and extend it by a timeline that could be ten times as long as the stricken rule. Last fall, the 48-Hour Rule was removed from the Portland Police Association contract with much fanfare from the City, while the community demanded more change. On July 1, the PPB posted for comment its draft Use of Force and Post-Deadly Force policies for public review, with the latter allowing officers who cause the deaths of community members to forego writing Force reports or being compelled to testify about the deadly force incident until after the District Attorney's criminal investigation has ended.*-1 That criminal investigation usually takes at least three weeks,*-2 or ten times longer than the previously carved-out 48 hours. If the person in question does not die, it is up to the discretion of the Professional Standards Division (PSD) whether the officer has to file a Force report at all.*-3

The Albina Ministerial Alliance Coalition for Justice and Police Reform strongly objects to these provisions in the new policy. After the AMAC co-signed a July 6 letter authored by Portland Copwatch and other organizations asking for more time to comment on the Force Directives, the Chief essentially dismissed any community objections to the policies.*-4
In his memo, Chief Marshman rejected the request for more time to comment, noting the District Attorney, US Department of Justice (DOJ), Compliance Officer/Community Liaison and the Bureau had spent nine months hammering out the current draft. Even though they say they considered community comments made previously (in November, 2015, nearly 2 years ago), they do not acknowledge that the review failed to include any community members. Marshman added that "[The] PPB is confident that the proposed revisions to this suite of directives move the Bureau forward and align with best practices and comports with applicable laws," arguing that letting the community have more time to ponder the new policies would make it impossible for the Bureau to train officers in the fall.

The AMAC has no problem with delaying an in-service training to officers if it means getting these policies right. The reason the DOJ was called to Portland in the first place was to address a pattern and practice of excessive force, and the lack of community trust caused by investigations into deadly and

excessive force cases. The DOJ noted several times in these last two years that nothing should prevent an officer from filing a Force Report before going off shift on the day of a deadly force incident. They also promised that administrative investigations (Internal Affairs/PSD) and criminal investigations would happen simultaneously to speed up the process and ensure accountability. Chief Marshman's memo indicates that the DOJ has let the community down by backing down on both of these promises, which are implied as mandatory in the Settlement Agreement.

The AMAC calls on the City Council to use its authority (as it has promised to do with the Body Cameras Directive) to require the Force policies to be subjected to a Council hearing with public input before they are adopted. Otherwise, Portland will be stuck with the "Ten Times 48-Hour Rule" for years to come.

Other signators to the July 6 letter who support this statement include NAACP Portland Branch and Portland Copwatch.

For more information contact Dr. Leroy Haynes, Jr. or Dr. T. Allen Bethel at 503-288-7242.

-----

\*-1: From proposed Directive 1010.10
<https://www.portlandoregon.gov/police/article/644947>
2.9.1. For use of deadly force resulting in death, the more comprehensive administrative review is intended to capture all information required in a use of force report. Therefore, in those cases, involved members are not required to complete a use of force report until after the criminal investigation concludes.

6.3.1. For deadly force incidents that result in death, PSD shall schedule a compelled interview with the involved member upon receipt of written notification from the DA that all criminal proceedings have concluded.

\*-2 The 3rd/4th Quarter 2015 COCL Compliance Report (p. 58) indicates that a criminal investigation may even continue after the conclusion of the grand jury.

\*-3 also in 1010.10 5.6.1. [Use of Deadly Force (Not Resulting in Death) Reporting.] After consultation with the DA, the PSD Captain shall have the discretion to direct the involved member to complete a use of force report.

\*-4-- Memo from Chief Marshman in response to request for more time
    to review Directives:

July 10, 2017

Mr. Dan Handelman

E-mail: Copwatch@portlandcopwatch.org

Dear Mr. Handelman,

The current versions of Directive 1010.00 and 1010.10 that are currently posted for public comment are the product of nine months of discussions between the Bureau, the DOJ and the COCL (and the Multnomah County District Attorney on 1010.10). All community input that was provided during the first 30 day universal period as well as COAB comments were carefully considered as we worked our way through these directives.

The Bureau agrees with your statement that Directive 1010.00 is "arguably the single most important Directive to those concerned with police conduct." Revisions to this directive have taken a great deal of time, effort and thoughtful consideration to accomplish. PPB is confident that the proposed revisions to this suite of directives move the Bureau forward and align with best practices and comports with applicable laws.

With that in mind, the Bureau is eager to implement and train members to the new directive as soon as possible. Any extension to the 15 day window which is, of course, a newly established procedure to allow for more community input, would cause us to miss the Fall In-Service training cycle, leaving the Bureau with a delay of several more months at a minimum before the improved force policy could be trained and enacted.

I understand your concern that a significant number of directives have been posted simultaneously recently. However, the timing of much of that is due to the City and DOJ's recently articulated goal of completing the review of all DOJ-related policies by early October. I expect that once that is accomplished, the directives process will become more manageable for all concerned.

Thank you very much for your letter. The Bureau appreciates your work in reviewing our proposed polices.

Sincerely,

MICHAEL W. MARSHMAN

Chief of Police MWM/dh