**Juan C. Chavez**, OSB #136428
Oregon Justice Resource Center
Email: jchavez@ojrc.info
PO Box 5748
Portland, OR 97208
Telephone: 503-944-2270 ext. 212
Facsimile: 971-275-1839

    Attorney for Mental Health Alliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>    Defendant. | Case No. 3:12-cv-02265-SI<br><br>MENTAL HEALTH ALLIANCE'S MOTION FOR ENHANCED-*AMICUS CURIAE* STATUS |

COMES NOW, by and through their attorney, Juan C. Chavez, the Mental Health Alliance motions that this court allow it to enter into this matter as an Enhanced-*Amicus Curiae*. This motion is supported by the following memorandum, Declaration of Counsel, and Exhibits 1 and 2.

**LR 7-1 CERTIFICATION**

Pursuant to Local Rule 7-1, counsel for Mental Health Alliance, Juan C. Chavez, hereby certifies that he has conferred with the counsels for the parties: As of today's filing date, Plaintiff United States of America has taken no position on the relief sought in this motion; Defendant

City of Portland is opposed to the relief sought in this motion; Intervenor Defendant Portland Police Association is opposed to the relief sought in this motion; and Enhanced-*Amicus Curiae* Albina Ministerial Alliance Coalition for Justice and Peace does not oppose the relief sought in this motion.

## Motion for Enhanced-Amicus Curiae Status

In accordance with past precedence in this case, *Opinion and Order* Dkt. 32, the Mental Health Alliance requests that they (1) shall have the opportunity to present any briefing requested by the Court in the same manner as the parties; (2) shall have the opportunity to participate in any oral arguments to the same extent as the parties; (3) may present its arguments from counsel table along with the parties; (4) may participate in the Fairness Hearing to the same extent as the parties; and (5) if further mediated discussions are needed, shall be invited and allowed to participate in those discussions. The Mental Health Alliance wishes to be granted this status in time to participate as enhanced-*amicus* by the time of the October 4, 2018 hearing. *Status Conference* Dkt. 170.

## MEMORANDUM

### I.   Introduction

The Mental Health Alliance wishes to enter into the above-proceeding as enhanced-*amicus curiae* to participate in the ongoing settlement management in the fashion described above. As the Court indicated last April, *Ex. 1* Excerpts from Trans. of Proceedings 93:4-11; Dkt. 170, additional amici are welcome to appear in this case, and given the Mental Health Alliance's experience and expertise as direct service providers to person with mental illness, they are in a unique position to address these issues. While the Court has indicated its willingness to

allow new *amici*, because of the unique nature of the Court's allowance for enhanced-*amicus curiae* status, the Mental Health Alliance will be relying on this Court's own opinion to advance its motion.

II.     **Statement of Facts**

A.  **Mental Health Alliance Formation and Present Constituent Members**

The Mental Health Alliance was formed in July 2018 to advocate for the rights of those with mental illness or disability specifically in regards the settlement between the above-mentioned parties. The Mental Health Alliance is comprised of Disability Rights Oregon, the Mental Health Association of Portland, and Cascadia Behavioral Healthcare. Collectively, they seek to advocate for the rights and dignity of persons with mental illness or disabilities and provide inspirational vision in these proceedings as the parties continue to implement the consent decree. Each of the members of the Mental Health Alliance has worked with every litigant party to this action on these issues in the past, and currently provides direct services to those impacted daily by the actions or omissions of the Portland Police Bureau.

Disability Rights Oregon (hereinafter, "DRO") is an Oregon nonprofit that works to transform systems, policies, and practices to give more people the opportunity to reach their full potential. For forty years, the organization has served as Oregon's federally-mandated Protection & Advocacy service, with the ability to access facilities to conduct investigations, provide information and training, and monitor compliance with rights and safety. DRO's attorneys have represented people with mental illness as individuals in court, in class action suits, and in investigative advocacy. On police accountability, for 30 years DRO has interacted with the Portland Police Bureau on behalf of members of the mental health community. DRO has

advocated for better mental health services, and diversion from the criminal justice system. Through their work as the Protection & Advocacy service, DRO has seen the effects of use-of-force and arrests on persons with mental illness.

Mental Health Association of Portland is an Oregon non-profit that provides an impartial and independent advocacy for persons with mental illness and addiction. This peer-driven organization maintains advisory councils and committees for individual educational and advocacy projects. In the past, they have advocated on behalf of persons routinely harmed by law enforcement, including James Chasse in 2006. The Mental Health Association of Portland's advocacy has changed policies and procedures by patrol officers, jail deputies, prosecuting and defense attorneys, judges and court administrators.

Cascadia Behavioral Healthcare delivers whole health care – integrated mental health and addiction services, primary care, and housing – to support the Portland community, provide hope and improve well-being for those they serve. For more than 35 years, Cascadia has been the community health and housing safety net provider for Oregonians of all ages experiencing mental health and addiction challenges, trauma, poverty, and homelessness. From prevention to healthy lifestyle education to intensive treatment when needed, their services encompass a more systemic approach to health management for the adults, children, seniors and families they serve.

B. *United States v. City of Portland* Litigation and Settlement

In May 2010, the AMA Coalition sent a letter to the U.S. Department of Justice ("DOJ") requesting an investigation into the Portland Police Bureau's use of force against people of color and people experiencing mental illness. The U.S. DOJ began their investigation of the Portland Police Bureau pursuant to 42 USC Sec. 14141. *Ex. 2*, RE: Investigation of the Portland Police Bureau, 1.

In September 2012, the U.S. DOJ published its findings in a letter to then-Mayor Samuel Adams. In its letter, the DOJ identified that Portland Police "too frequently" used a higher level of force than necessary on individuals suffering from actual or perceived mental illness. *Id.* at pg. 2. Among its many findings and recommendations, U.S. DOJ summarized its recommendations in a press release thusly:

- "Use of force policies to ensure that officers have necessary guidance when encountering someone with mental illness or perceived to have mental illness…

- Increase capacity for crisis intervention with specially-trained officers and civilians;

- Enhance the early warning system to identify gaps in policy, training and supervision;

- Expedite the investigations of complaints of misconduct while preserving the thoroughness and quality of investigations and community participation; and

- Create a body to ensure increased community oversight of reforms."[1]

After receiving public input and receiving proposals from community members and groups, including members of the Mental Health Alliance, United States filed a complaint against the City of Portland, pursuant to its authority under 42 U.S.C. § 14141 in order to remedy this pattern or practice of conduct by the Portland Police Bureau identified in their letter. *Complaint* Dkt. 1.

Following the filing of the United States' complaint, two groups attempted to intervene in the lawsuit: the Portland Police Association ("PPA"), *Motion to Intervene* Dkt. 7, and the Albina

---

[1] United States Department of Justice, *Justice Department and the City of Portland, Ore., Reach Preliminary Agreement on Reforms Regarding Portland Police Bureau's Use of Force Against Persons with Mental Illness* (September 13, 2012), https://www.justice.gov/opa/pr/justice-department-and-city-portland-ore-reach-preliminary-agreement-reforms-regarding

Ministerial Alliance (AMA) Coalition for Justice and Police Reform. *Motion to Intervene* Dkt. 19. This Court has granted PPA intervention as a right for the "remedy" portion of this matter, and AMA Coalition "enhanced *amicus curiae*" status. *Opinion and Order* Dkt. 32.

## Discussion

Although there is no federal rule or statute governing participation by *amicus curiae* at the district court level, *see United States v. Gotti*, 755 F.Supp. 1157, 1158 (E.D.N.Y. 1991), a federal district court has the inherent authority to invite participation by *amicus curiae* to assist the court in its proceedings. *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir.1982); *United States v. Michigan*, 116 F.R.D. 655, 660 (W.D. Mich. 1987). The decision to invite or accept participation by an amicus is committed to the sound discretion of the court. *Alexander v. Hall*, 64 F.R.D. 152, 155 (D.S.C. 1974). Generally, courts have exercised great liberality in permitting an *amicus curiae* to file a brief in a pending case, and, with further permission of the court, to argue the case and introduce evidence. *Michigan*, 116 F.R.D. at 660–61. There are no strict prerequisites that must be established prior to qualifying for *amicus* status; an individual seeking to appear as amicus must merely make a showing that his participation is useful to or otherwise desirable by the court. *Leigh v. Engle*, 535 F. Supp. 418, 420 (N.D. Ill. 1982); *cf. New England Patriots Football Club, Inc. v. University of Colorado*, 592 F.2d 1196, 1198 n. 3 (1st Cir.1979).

The classic role of the amicus curiae is to assist in a case of general public interest, supplement the efforts of counsel, and draw the court's attention to law that may otherwise escape consideration. *Miller-Wohl Co., Inc. v. Commissioner of Labor and Indus.*, 694 F.2d 203, 204 (9th Cir. 1982); *see also New England Patriots Football Club, Inc., v. University of Colorado*, 592 F.2d 1196, 1198 n. 3 (1st Cir. 1979) (historically, the role of an amicus was "to aid the court in resolving doubtful issues of law"). There is no requirement that an *amicus* be

disinterested. *Funbus Systems, Inc. v California Public Utilities Commission*, 801 F.2d 1120, 1125 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982).

As an alliance of direct service providers to the people affected by the inadequate implementation of the settlement agreement, and being a party best representative of the constituency directly addressed by the settlement agreement, the Mental Health Alliance would offer necessary elements to the proceedings that other parties would neglect. The Alliance's clients and peers have a life and death interest in the proper implementation of the decree. As described below, events indicate not only that the use of police violence against people with mental illness continues, but that the goal of creating an improved and sustained partnership between people with mental illness and public officials has stalled.

While the work of enhanced-*amicus curiae* AMA Coalition has been commendable, the Mental Health Alliance can provide the necessary input from the primary triad of mental illness and disability advocacy: legal support, peer support, and behavioral health support. Like the AMA Coalition, the Mental Health Alliance would bring "a deep understanding of the issues, including those raised in this lawsuit, and an important perspective to bring to the remedy phase of this action." *See Opinion and Order* Dkt. 32.

Since the settlement agreement was signed in 2012, thirteen people have been killed by Portland Police—not including the three people who committed suicide in front of officers while being arrested.[2] All persons killed by Portland police since additional training and resources were made available by the settlement agreement were people in a mental health crisis.[3]

---

[2] Mental Health Alliance of Portland, *The killing of John Elifritz by Portland police officers* (April 10, 2018) http://www.mentalhealthportland.org/what-happened-to-john-elifritz/
[3] Mental Health Alliance of Portland, *People in crisis, with mental illness need sanctuary* (May 2, 2018) http://www.mentalhealthportland.org/people-in-crisis-with-mental-illness-need-sanctuary/

Most recently, the killing of John Elifritz highlights the failures in implementation of the settlement agreement. Despite Mr. Elifritz demonstrating clear signs of mental distress, including self-harm, Portland police entered the houseless shelter where Mr. Elifritz had entered and shot him from across the room.[4] The Enhanced Crisis Intervention Team (ECIT), a group of volunteer officers that respond to mental health crisis calls, were not present, despite knowing that Mr. Elifrtitz had been experiencing mental distress earlier in the day.[5] Multiple Portland police members involved in Mr. Elifritz's shooting had been involved in other instances of excessive force against persons experiencing mental health crises.[6]

Means of public oversight of this settlement agreement have failed, often through a combination of underfunding, undermanaging, and undermining meaningful accountability. To today's filing date, the Community Oversight Advisory Board (COAB), created after entry of the settlement agreement to provide public oversight, has been disbanded by Mayor Ted Wheeler.[7] Eighteen months later, its replacement, Portland Committee on Community-Engaged Policing ("PCCEP") has yet to hold a meeting.

Another critical proposal from the settlement agreement reads as follows:

> "89. The United States expects that the local CCOs will establish, by mid-2013, one or more drop-off center(s) for first responders and public walk-in centers for individuals with addictions and/or

---

[4] Alex Zielinksi, *Portland Police Release New Videos and Witness Interviews from Elifritz Shooting*, The Portland Mercury (May 25, 2018), https://www.portlandmercury.com/blogtown/2018/05/25/20103645/portland-police-release-new-videos-and-witness-interviews-from-elifritz-shooting

[5] Alex Zielinski, *Portland Police Knew Man Was in Crisis Before Fatally Shooting Him*, The Portland Mercury (April 9, 2018) https://www.portlandmercury.com/blogtown/2018/04/09/19802872/portland-police-knew-man-was-in-crisis-before-fatally-shooting-him

[6] Alex Zielinksi, *Officers Involved in Elifritz Shooting Have History of Using Excessive Force Against Mentally Ill*, The Portland Mercury (April 4, 2018) https://www.portlandmercury.com/blogtown/2018/04/10/19804666/officers-involved-in-elifritz-shooting-have-history-of-using-excessive-force-against-mentally-ill

[7] Maxine Bernstein, *Nearly defunct Portland police oversight board begs for renewed life*, The Oregonian (January 27, 2017) https://www.oregonlive.com/portland/index.ssf/2017/01/nearly-defunct_portland_police.html

behavioral health service needs. All such drop off/walk in centers should focus care plans on appropriate discharge and community based treatment options, including assertive community treatment teams, rather than unnecessary hospitalization."

*Settlement Agreement Pursuant to Fed. R. Civ. P. 41(a)(2)*, Dkt. 4-1.

To date, the Unity Behavioral Health Center, a program of Legacy Health under contract and designee of Multnomah County as Mental Health Authority for the area, was the only such drop-off centers available. However, at the date of filing this matter, the Oregon Health Authority is investigating the facility over occupational and patient safety concerns, including partially closing operations for five days.[8] The facility is currently on a 90-day track to lose its federal certification to operate on September 11, 2018.[9]

Because many of the conversations concerning the settlement have taken place only amongst the parties and the enhanced-*amicus* party, the Mental Health Alliance, and the public, have been at a disadvantage in providing thoughtful, useful input to the Court regarding the settlement agreement. The Mental Health Alliance's participation in the ongoing-remedy phase of this case would bring the knowledge, perspective, and know-how of three large mental health advocacy organizations. There is no focused voice from the mental health community currently in these proceedings, and without this community's participation, for the above-identified reasons, the current arrangement will continue to victimize Portlanders with mental illness when they interact with the Portland Police Bureau.

///

---

[8] Molly Harbarger, *Unity Center confirms 2 deaths, wants to be free of investigation in September*, The Oregonian (September 5, 2018) https://www.oregonlive.com/health/index.ssf/2018/09/unity_center_confirms_2_deaths.html
[9] *Id.*

## CONCLUSION

WHEREFORE, plaintiff prays for recognition as an enhanced-*amicus curiae* in this lawsuit.

DATED: September 10, 2018.

*/s/ Juan C. Chavez*
Juan C. Chavez, OSB #136428

Oregon Justice Resource Center
Civil Rights Project
PO Box 5248
Portland, OR 97208
Tel: (503) 944-2270 ext. 212
jchavez@ojrc.info

*LEAD ATTORNEY*