ANIL S. KARIA**,** OSB No. 063902
E-mail: anil@pslglawyers.com
Public Safety Labor Group
3021 NE Broadway
Portland, OR  97232
Telephone:  866-486-5556
Facsimile:  866-401-2201
        Attorneys for Intervenor-Defendant
        Portland Police Association

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Civil Case No. 3:12-CV-02265-SI |
| Plaintiff, | |
| | **INTERVENOR-DEFENDANT PORTLAND POLICE ASSOCIATION'S OPPOSITION TO MENTAL HEALTH ALLIANCE'S MOTION FOR ENHANCED *AMICUS CURIAE* STATUS** |
| v. | |
| **THE CITY OF PORTLAND,** | |
| Defendant. | |

## I.    Introduction.

The Mental Health Alliance (MHA) is playing fast and loose with the law in its motion.

While MHA has moved to appear in this matter as <u>enhanced</u> *amicus curiae*, with all the rights

that unique status carries with it, MHA relies on the thinnest of legal principles for its motion.

Under Fed. R. Civ. P. 24, MHA's motion is five-and-a-half years too late and Plaintiff United

States more than adequately represents MHA's interests and the interests of those persons

affected by mental illness. Knowing that Fed. R. Civ. P. 24 precludes its motion, MHA instead

relies on unrelated case law regarding a petition to appear at the District Court level as a mere *amicus* as legal justification for seeking to appear in this matter as an enhanced *amicus*.

We should not allow ourselves to be fooled by MHA's sleight of hand. MHA does not merely wish to present an isolated "friend of the court" written brief regarding a disputed area of the law. Nor does MHA merely wish to present its opinion on the status of Defendant City of Portland's implementation of the Settlement Agreement as a "friend of the court" during public comment at a periodic status conference. Rather, after the parties have spent thousands of hours and millions of dollars over the past five-plus years working to bring the City's Police Bureau into compliance with the Settlement Agreement, MHA now wishes to inject itself into this process as a quasi-party and assume the same footing as the Albina Ministerial Alliance Coalition for Justice and Police Reform (AMAC).

Indeed, MHA seeks:

(1) The opportunity to present any briefing requested by the Court in the same manner as the parties;

(2) The opportunity to participate in any oral arguments to the same extent as the parties;

(3) To present its arguments from counsel table along with the parties;

(4) To participate in the Fairness Hearing to the same extent as the parties; and

(5) To be invited and allowed to participate in further mediated discussions should they occur.

(MHA Mot. at 2, Docket No. 173).

The Court should reject MHA's last-ditch attempt to put its own stamp on this case by steering the litigation as an enhanced *amicus*. Neither the Federal Rules of Civil Procedure nor principles of judicial efficiency and economy supports what MHA seeks to accomplish with its motion.

Page 2 –    INTERVENOR-DEFENDANT PORTLAND POLICE ASSOCIATION'S
            OPPOSITION TO MENTAL HEALTH ALLIANCE'S MOTION FOR ENHANCED
            *AMICUS CURIAE* STATUS

II.    **Argument.**

A.    **No Legal Basis Exists For MHA's Appearance As Enhanced *Amicus.***

MHA concedes there is "no federal rule or statute governing participation by *amicus curiae* at the district court level." (MHA Mot. at 6, Docket No. 173, *citing U.S. v Gotti*, 755 F.Supp. 1157, 1158 (E.D.N.Y 1991)). Instead, MHA relies on a passing comment by this Court at the last fairness hearing as the legal basis for its motion to appear as an enhanced *amicus*. Such reliance is misplaced.

At the April 19, 2018, Fairness Hearing and Third Status Conference, the Court took public comment, including from an individual who raised the prospect of the Court appointing a Court Monitor and ordering the Secretary of State to investigate the City. (April 19, 2018 Fairness Hearing Transcript, 79:21-95:9 at Decl. of Anil Karia, Ex. A). In response, the Court indicated its willingness to accept from any person "a petition for *amicus* status" and to "rule on that in connection with and consistent with . . . the Federal Rules of Civil Procedure." (*Id.* at 93:9-11).

MHA misconstrues the Court's invitation. Nowhere did this Court invite an interested person or organization to move the Court for quasi-party status as an <u>enhanced</u> *amicus*. That distinction is of great import. A "friend of the court" brief or oral presentation about the importance of a particular legal issue is one thing. Having a seat at the table to steer the implementation of the Settlement Agreement over five-and-a-half years after the inception of this case is altogether a different—and far more onerous—proposition.

B.    **MHA Has Had Ample Opportunity To Have Its Voice Heard.**

While "not normally impartial," an *amicus* can serve to "assist[] the court in cases of general interest" and "insur[e] a complete and plenary presentation of difficult issues so that the

court may reach a proper decision." *Gotti*, 755 F. Supp. at 1158; *see also Funbus Sys., Inc. v. State of Cal. Pub. Utilities Comm'n.*, 801 F.2d 1120, 1125 (9th Cir. 1986) (explaining the limited role of an *amicus curiae*). The "extent to which, if at all, an *amicus* should be permitted to participate lies solely within the discretion of the court." *Gotti*, 755 F. Supp. at 1158. But to be clear, an "*amicus curiae* is not a party to litigation." *See Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982).

MHA has already filled the role of an *amicus* throughout this case even without formal *amicus* status. While MHA presents itself as a new organization formed mere months ago in July 2018, it is far from it. MHA is comprised of three, long-standing organizations that have actively participated before this Court and with the City's Police Bureau in addressing the Bureau's response to persons with actual or perceived mental illnesses. Two of its three constituent organizations—Disability Rights Oregon and the Mental Health Association of Portland—have actively appeared before this Court as members of the AMAC, which is already actively involved in this lawsuit as an enhanced *amicus*. The third constituent MHA organization—Cascadia Behavioral Healthcare—has taken an active and integral role with the City's Police Bureau in bolstering the Bureau's response to persons in mental health crises.

As this Court noted in its Order on the PPA's and the AMAC's motions to intervene back in February 2013, the AMAC's member organizations include, among others, Disability Rights Oregon and the Mental Health Association of Portland. (Op. & Ord. at 11, Docket No. 32). On top of that, as this Court has noted, the AMAC's "police reform work *has addressed issues of mental health* as well as issues of race." (*Id.*; emphasis added). The AMAC—including two of its constituent organizations that have now moved this Court under the shell of a newly formed alliance—has actively assisted the Court in this case of great public interest, along with insuring

Page 4 –    INTERVENOR-DEFENDANT PORTLAND POLICE ASSOCIATION'S
         OPPOSITION TO MENTAL HEALTH ALLIANCE'S MOTION FOR ENHANCED
         *AMICUS CURIAE* STATUS

a complete and plenary discussion of difficult and complicated issues that flow from the

implementation of the Settlement Agreement. *See Funbus Sys., Inc.*, 801 F.2d at 1125; *Gotti*, 755

F. Supp. at 1158.

Beyond their participation under the AMAC's umbrella, both Disability Rights Oregon

and the Mental Health Association of Portland have actively presented testimony to this Court at

various stages of the proceeding in both oral and written form. For example:

- Disability Rights Oregon provided comprehensive written testimony for the February 18, 2014 Fairness Hearing. (Docket No. 58-1 at 3).

- Disability Rights Oregon provided oral testimony during the February 18, 2014 Fairness Hearing. (Feb. 18-19, 2014 Fairness Hearing Transcript, 311:17-316:3 at Karia Decl., Ex. B).

- The Mental Health Association of Portland provided comprehensive written testimony for the February 18, 2014 Fairness Hearing. (Docket No. 58-1 at 12).

- The Mental Health Association of Portland provided oral testimony during the February 18, 2014 Fairness Hearing. (Feb. 18-19, 2014 Fairness Hearing Transcript, 243:1-249:4 at Karia Decl., Ex. B).

- The Mental Health Association of Portland provided comprehensive written testimony to the Court for the April 19, 2018 Fairness Hearing. *See* http://www.mentalhealthportland.org/our-letter-to-judge-michael-simon-about-the-fairness-of-usdoj-v-city-of-portland/.

Similarly, Cascadia Behavioral Healthcare has had an active role in this case, including

as an integral partner through its Project Respond with the Police Bureau's Behavioral Health

Unit and Behavioral Health Response Team, which are key components to the Police Bureau's

approach of addressing the needs of those with actual or perceived mental health illnesses. (*See*

https://www.portlandoregon.gov/police/62135 and https://cascadiabhc.org/project-respond/. *See*

*also* Amended Settlement Agreement at Section VI, Docket No. 175*)*. In addition, Cascadia

Behavioral Healthcare has had a seat on the Police Bureau's Behavioral Health Advisory

Council since at least 2014 (Feb. 18-19, 2014 Fairness Hearing Transcript, 74:21-25 at Karia

Decl., Ex. B), a seat that it continues to fill to this day (*see*

https://www.portlandoregon.gov/police/article/545177). Disability Rights Oregon also maintains

a seat on that same Behavioral Health Advisory Council. (*See id.*).

Of particular note, at the February 2014 Fairness Hearing, Dr. Maggie Bennington-Davis,

the chief medical and operating officer for Cascadia Behavioral Healthcare, testified "in support

of the agreement that the DOJ and the PPB have proffered." (Feb. 18-19, 2014 Fairness Hearing

Transcript, 75:14-15 at Karia Decl., Ex. B).

Putting this all together, it borders on fiction for MHA to assert that it needs enhanced

*amicus* status for its voice to be heard.

C.    **MHA Unavailingly Points To Three Events As Reason To Appear So Late In
The Proceedings.**

MHA points to three events as reason to inject itself in this lawsuit as a quasi-party,

enhanced *amicus.* Each of those events, viewed singularly or in combination, are insufficient to

grant MHA standing in this matter.

The first incident is an officer-involved use of deadly force involving the death of John

Elifritz. Without substantiation, MHA asserts that the Elifritz case is an example of the "failures

in implementation of the settlement agreement." (MHA Mot. at 8, Docket No. 173). Thousands

of pages of investigatory material by both the Portland Police Bureau and a Multnomah County

Grand Jury have been produced and made publicly available. Yet MHA cites only to news

stories—but not to any of those investigatory materials—for its sensationalist assertion that Mr.

Elifritz was the latest victim of a pattern of "excessive force against persons experiencing mental

health crises." (MHA Mot. at 8, Docket No. 173).

What is substantiated by the investigation is that Mr. Elifritz, a self-avowed white supremacist, engaged in a day-long crime spree that included carjacking a Portlander; committing road rage and threatening motorists; holding a knife to a person's throat; jeopardizing the personal safety of many people who were simply seeking refuge in a homeless shelter; stabbing himself repeatedly in the neck to the point of gushing blood, which did not appear to faze him; and then charging at police officers while wielding a knife after refusing to comply with multiple police commands, all the while under the influence of methamphetamine. (*See* Portland Police Bureau Detectives Investigation, available at https://www.portlandoregon.gov/police/article/679710; Multnomah County Grand Jury Investigation, available at http://mcda.us/index.php/news/grand-jury-transcript-released-elifritz-death-investigation/; Multnomah Grand Jury Transcript, Day 2 at 335:23-338:12, available at http://mcda.us/wp-content/uploads/2018/06/GJ-Transcripts-John-Andrew-Elifritz-2.pdf. *See also* https://www.wweek.com/news/courts/2018/04/10/man-killed-by-portland-police-had-been-a-member-of-white-supremacist-gang-the-european-kindred/; https://www.opb.org/news/article/john-elifritz-portland-oregon-shooting-grand-jury-transcripts/).

In any event, whether Mr. Elifritz was on a drug-fueled crime spree or whether he was suffering from a mental health crisis is immaterial to MHA's motion. What matters is that the Police Bureau, under the direct oversight of the United States, has for each of its officer-involved uses of deadly force a robust review and accountability process. In the Elifritz case, the use of deadly force by Portland Police Officers was thoroughly investigated by the Police Bureau as part of a criminal investigation. (*See* https://www.portlandoregon.gov/police/docs/18-114856.pdf). Following that investigation, an independent Multnomah County Grand Jury comprised of community members heard four days of testimony and found the officers' use of

Page 7 –    INTERVENOR-DEFENDANT PORTLAND POLICE ASSOCIATION'S
OPPOSITION TO MENTAL HEALTH ALLIANCE'S MOTION FOR ENHANCED
*AMICUS CURIAE* STATUS

deadly force to be justified under Oregon law. (*See* http://mcda.us/index.php/news/grand-jury-transcript-released-elifritz-death-investigation/). Next up is the Police Bureau's administrative review, under which "the Bureau will conduct an internal review of the entire incident and the case will go before the Police Review Board (PRB), which is comprised of community members, Bureau members and representatives from the Independent Police Review Division." (https://www.portlandoregon.gov/police/article/679710). All those systems of oversight and accountability under the existing terms of the Amended Settlement Agreement have been implemented in the Elifirtz case.

Next, MHA unpersuasively asserts that the nascent status of PCCEP is a basis for its appearance as an enhanced *amicus.* (MHA Mot. at 8-9, Docket No. 173). At the last Fairness Hearing and Status Conference, the Court heard much about PCCEP, the rebooted civilian oversight prong of the Settlement Agreement. Knowing the importance of PCCEP, the Court conditionally approved Settlement Agreement amendments related to formation and implementation of PCCEP pending the Court's further evaluation at the October 4, 2018 Status Conference and final approval of those amendments. (Ord. at 2, Docket No. 175).

A steady drumbeat in calling for further evaluation of PCCEP has already come from the AMAC, which will undoubtedly continue to voice any concerns about the viability of PCCEP. The Court has the AMAC's diligent voice speaking on the subject of community oversight; MHA would add little to that conversation as an enhanced *amicus*. The Court also has the City's serious commitment to the success of PCCEP with the support of the United States, the PPA, and the AMAC, as we heard at the April 19, 2018 Fairness Hearing and Status Conference. Certainly, MHA may provide to the Court through public comment MHA's opinion on PCCEP. But MHA does not need enhanced *amicus* status to make its opinion known.

Page 8 –  INTERVENOR-DEFENDANT PORTLAND POLICE ASSOCIATION'S
OPPOSITION TO MENTAL HEALTH ALLIANCE'S MOTION FOR ENHANCED
*AMICUS CURIAE* STATUS

Finally, MHA points to the failures of the Unity Behavioral Health Center as reason to inject itself into this lawsuit as an enhanced *amicus* at this late hour. (MHA Mot. at 9, Docket No. 173). That reason is similarly unavailing. Since the inception of the Settlement Agreement, the parties have recognized the inability to bind the City to the successes or failures of third-party community care organizations. Put another way, the parties have always recognized that the aspirational goals in the Settlement Agreement related to community based mental health services require action not just by the City, but also by third parties that are not directly bound by the Settlement Agreement terms, including the State of Oregon, Multnomah County, and community care organizations. (*See* Feb. 18-19, 2014 Fairness Hearing Transcript, 71:21-73:13 at Karia Decl., Ex. B). That's not to say that the City is ignoring the need to make community based mental health services successful in Portland. But a third party's failure in reaching a goal that is not binding on the City is no reason for MHA to now enter the fold as an enhanced *amicus*.

MHA's disagreement with the outcome of the Elifritz investigation, the status of PCCEP, or the problems with the Unity Behavioral Health Center does not provide legal justification for tardily stepping into this lawsuit as an enhanced *amicus*.

### D.    The Road To Enhanced *Amicus* Status Begins With Fed. R. Civ. P. 24.

The only mechanism to intervene as a party under the Federal Rules arises under Fed. R. Civ. P.  24. *See Miller-Wohl Co.*, 694 F.2d at 204 ("Courts have rarely given party prerogatives to those not formal parties. A petition to intervene and its express or tacit grant are prerequisites to this treatment."). Indeed, it was only after being denied party status under Fed. R. Civ. P.  24 that this Court granted the AMAC enhanced *amicus* status. Thus, we may presume that a prerequisite to enhanced *amicus* status is a timely Fed. R. Civ. P.  24 motion. (*See* Op. & Ord. at

Page 9 –    INTERVENOR-DEFENDANT PORTLAND POLICE ASSOCIATION'S
OPPOSITION TO MENTAL HEALTH ALLIANCE'S MOTION FOR ENHANCED
*AMICUS CURIAE* STATUS

4-5, Docket No. 32, identifying a timely motion as a prerequisite under both intervention as right and permissive intervention under Fed. R. Civ. P.  24).

But MHA's motion is five-and-half years too late. On December 21, 2012, the Court "entered an order requiring any person wishing to intervene in this action under Rule 24 of the Federal Rules of Civil Procedure to file a motion to intervene not later than January 8, 2013." (Order at 3, Docket No. 32; *see id.* at 6 ("The Court established a deadline for timely motions to intervene.")). MHA's three constituent organizations existed when the Court announced its deadline in late 2012. Those organizations cannot now sidestep that long-overdue deadline by forming a new alliance. *See State of Illinois v. City of Chicago,* 2018 WL 3920816 (N.D. Ill. Aug. 16, 2018) (determining that a motion to intervene, which came only nine months after the filing of the State's lawsuit against the City of Chicago, was untimely).

On top of that, the United States already represents the interests of MHA and its constituent organizations under the intervention tests of Fed. R. Civ. P. 24. (*See* Op. & Ord. at 14-15 (regarding intervention as right) and 16 (regarding permissive intervention)). What this Court said in February 2013 about the AMAC when it sought to intervene in this case applies equally to MHA today:

> The United States and the AMA Coalition share the same interest in remedying the alleged pattern and practice by the Police Bureau of using excessive force in interactions with persons perceived as or actually suffering from mental illness or mental health crises. For those purposes, the AMA Coalition and its members are the constituency that the United States is seeking to protect.

(Op. & Ord. at 14, Docket No. 32).

 In addition, the AMAC already represents the interests of the mental health community in this case as an enhanced *amicus.* Two of the three MHA constituent organizations are already AMAC members. (Op. & Ord., Docket No. 32 at 11). And as this Court has noted, the AMAC is

already committed to issues of mental health as part of its police reform work (*Id.*). As such,

there is no reason to add another seat at the litigation table for MHA.

**III.    Conclusion.**

Nothing prohibits MHA's member organizations from continuing to advocate through the

AMAC or from continuing to actively address the Court through public testimony and written

submissions. But there is no basis for MHA entering the fray at this late juncture as an additional

enhanced *amicus*.

DATED this 23rd day of September, 2018.


PUBLIC SAFETY LABOR GROUP


By:  *s/ Anil S. Karia*
ANIL S. KARIA**,** OSB No. 063902
3021 NE Broadway
Portland, OR  97232
E-mail: anil@pslglawyers.com
Telephone:  866-486-5556
Facsimile:  866-401-2201
        Attorneys for Intervenor-Defendant
        Portland Police Association