**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
**RENATA A. GOWIE, OSB#175273**
Chief, Civil Division
**JARED D. HAGER, WSB #38961**
Assistant U.S. Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Phone: 503.727.1120
Email: jared.hager@usdoj.gov

**JOHN M. GORE**
Acting Assistant Attorney General
**STEVEN H. ROSENBAUM**
Chief, Special Litigation Section
**LAURA L. COWALL**
Special Counsel
**R. JONAS GEISSLER**
**KERRY K. DEAN**
Trial Attorneys
U.S. Department of Justice, Civil Rights Division
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Phone: 202.514.6255
Email: jonas.geissler@usdoj.gov
      Attorneys for the United States

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:12-CV-02265-SI |
| Plaintiff, | |
| v. | PLAINTIFF'S OPPOSITION TO MENTAL HEALTH ALLIANCE'S MOTION FOR ENHANCED *AMICUS CURIAE* STATUS |
| **CITY OF PORTLAND,** | |
| Defendant. | |

Page 1    Opposition to Motion for Enhanced *Amicus Curiae* Status

Plaintiff United States of America does not object to the participation of the Mental Health Alliance (MHA) in the classic role of *amicus curiae*, and indeed welcomes MHA's input and experience.  The United States respectfully opposes MHA's Motion for Enhanced *Amicus Curiae* Status as unnecessary and untimely.

## I.    BACKGROUND

On December 17, 2012, the United States filed a complaint, pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 (1994) (re-codified at 34 U.S.C. § 12601), alleging that the City of Portland, through the Portland Police Bureau (PPB), engaged in a pattern or practice of using excessive force on individuals with actual or perceived mental illness in violation of the Fourth Amendment to the Constitution and other laws of the United States.  ECF 1.  At the same time, the parties filed a Joint Motion and a proposed Settlement Agreement ("Settlement").  ECF 3, 3-1.   On December 18, 2012, one day after the complaint was filed, the Portland Police Association (PPA) filed its motion to intervene.  ECF 7.  On December 21, 2012, the Court entered an order requiring any person wishing to intervene in the action under Rule 24 of the Federal Rules of Civil Procedure to file a motion to intervene not later than January 8, 2013.  ECF 18.  On January 8, 2013, the Albina Ministerial Alliance Coalition for Justice and Police Reform (AMAC) filed its motion to intervene.  ECF 19.

On February 19, 2013, the Court granted PPA's motion to intervene as of right and denied AMAC's motion, but gave AMAC enhanced *amicus* status for remedy purposes.  ECF 32 at 3.  Specifically, the Court granted AMAC enhanced *amicus curiae* status, as follows:

> (1) the AMA Coalition shall have the opportunity to present any briefing requested by the Court in the same manner as the parties; (2) the AMA Coalition shall have the opportunity to participate in any oral arguments to the same extent as the parties; (3) the AMA Coalition may present its arguments from counsel table along with the parties; (4) the AMA Coalition may participate in the Fairness Hearing to the same extent as the parties; and (5) to the extent that the United States, the City, and the PPA may participate in mediated settlement discussions under the authority of the Court and a court-appointed special master for settlement purposes, . . . the AMA

Coalition shall be invited and allowed to participate in those negotiations.
*Id.* at 17.  Now, more than five years later, MHA requests the same status.  ECF 173 at 2.

## II.    DISCUSSION

### A. MHA Untimely Seeks Authority Exceeding the Classic Role of *Amicus Curiae*

District courts in the Ninth Circuit have broad discretion to grant *amicus* status.  *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982).  Indeed, courts "frequently welcome amicus briefs from non-parties" if they concern "legal issues that have potential ramifications beyond the parties directly involved" or if the *amicus* has "unique information or perspective that can help the court." *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (citations omitted).  The United States welcomes the involvement of MHA as *amicus curiae* in this case and encourages MHA to participate through briefing, participation at Court hearings, and the community engagement processes set up as a part of the Settlement.

However, MHA requests authority beyond that of a traditional *amicus curiae*.  "An amicus curiae is not a party to litigation." *Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982) (citing *Clark v. Sandusky*, 205 F.2d 915, 917 (7th Cir. 1953)).  As MHA notes, the "classic role of amicus curiae" is to assist in a case of general public interest, supplement the efforts of counsel, and draw the court's attention to legal or factual issues that may otherwise escape consideration.  *Id.* (citing *Alexander v. Hall*, 64 F.R.D. 152, 155 (D.S.C. 1974)).  Formal intervention is necessary to confer "party prerogatives to those not formal parties."  *Id.* (citing *Brennan v. Silvergate District Lodge No. 50*, 503 F.2d 800, 803 (9th Cir. 1974)).

While no federal rule or statute governs participation by *amicus curiae* at the district court level, *see In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006), courts have placed restrictions on the role of *amicus curiae* to ensure that the extent of *amici* participation is appropriate.  *NGV Gaming*, 355 F. Supp. 2d at 1068 (restricting *amicus curiae* from filing oppositions

Page 3            Opposition to Motion for Enhanced *Amicus Curiae* Status

to briefs to prevent exceeding the "stated role as amicus curiae" or exercising "control over the litigation") (citing *United States v. Michigan*, 940 F.2d 143, 163–64 (6th Cir. 1991) (disapproving of the "legal mutant characterized as 'litigating amicus curiae' " because it impinged on the parties' inherent rights)). *Amicus* participation is generally limited to filing pleadings in response to specific issues raised in proceedings. *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1514 n.3 (9th Cir. 1987) (granting *amicus* status to avail the court of "the benefit of the consul's thorough and erudite legal arguments" but noting that "the consul had no right to appear at oral argument"); *see also Verizon New Eng. v. Me. Public Utilities Com'n*, 229 F.R.D. 335, 338 (D. Me. 2005) (restricting *amicus* from calling or cross-examining witnesses and taking discovery).

The Court invited applications for *amicus curiae* status as recently as the April status hearing. *See* Transcript of Third Annual Status Conference ("April 2018 Hearing") (April 19, 2018), at 93:5-11; 112:1-6.  The United States does not dispute that MHA can fulfill the "classic role of amicus curiae" by assisting in the parties' and the Court's understanding and knowledge of legal or factual issues that may otherwise "escape consideration" in this case of public interest. *Miller-Wohl Co.*, 694 F.2d at 204.

In contrast to the traditional role of *amicus curiae*, however, MHA essentially seeks party status.  Specifically, MHA requests that it:

> (1) shall have the opportunity to present any briefing requested by the Court in the same manner as the parties; (2) shall have the opportunity to participate in any oral arguments to the same extent as the parties; (3) may present its arguments from counsel table along with the parties; (4) may participate in the Fairness Hearing to the same extent as the parties; and (5) if further mediated discussions are needed, shall be invited and allowed to participate in those discussions.

ECF 173 at 2.  Seeking to participate in proceedings and mediation "to the same extent as the parties" is more accurately characterized as a motion to intervene. *See Miller-Wohl Co.*, 694 F.2d at 204.  Yet MHA has not attempted to establish that it meets the requirements for intervention set out in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 24.  Nor could it, at this late stage of the

case, more than five years after the Court set the deadline for intervention motions.

Indeed, the circumstances under which the Court granted AMAC enhanced *amicus* status are distinguishable from the present circumstances. AMAC filed a timely motion to intervene in accordance with the Court's scheduling order, and their special role was tied to that timely motion. ECF 19. While the Court denied AMAC's Motion to Intervene,[1] it conferred enhanced *amicus* status prior to holding the Fairness Hearing on the Settlement in order to ensure that AMAC would have the opportunity to present briefing and oral arguments; to participate in the Fairness Hearing; and to participate in any mediated settlement negotiations with the parties. ECF 32 at 17. To the extent that any of these events recur, classic *amicus* status would permit MHA to present briefing to the Court and participate in oral arguments. Further involvement at this late stage of the case risks undue delay in implementation of the Settlement.

MHA highlights recent tragic events to justify the timing of its belated request for enhanced *amicus* status. ECF 173 at 8-9. The United States is mindful of the concerns that MHA raises, including the death of John Elifritz and safety concerns at the Unity Center. *Id.* However, these issues are known to the parties, are part of the Court's agenda,[2] and MHA can share "the knowledge, perspective, and know-how of three large mental health advocacy organizations" through the classic role of *amicus curiae. Id.* at 9. MHA also raises concerns regarding dissolution of the Community Oversight Advisory Board (COAB). *Id.* at 8. On September 11, 2018, the City announced the members of the new Portland Committee on Community-Engaged Policing (PCCEP), drawn from a broad cross-section of advocates, including the mental health community.[3]

---

[1] The Court denied AMAC's Motion to Intervene because it held that AMAC's interest in the case was not impaired and was adequately represented by the United States. ECF 32 at 12. In addition to being untimely, MHA similarly could not satisfy the requirements of Fed R. Civ. P. 24 because its interests are not impaired and are adequately represented by the United States, AMAC, and traditional *amicus curiae* participation.
[2] *See* April 2018 Hearing at 155:20-25, 156:1-10, and 164:17-19.
[3] Maxine Bernstein, *Mayor Selects Members for New Police Oversight Committee*, The Oregonian (Sept. 12, 2018), https://www.oregonlive.com/portland/index.ssf/2018/09/mayor_selects_members_for_new.html.

Page 5         Opposition to Motion for Enhanced *Amicus Curiae* Status

PCCEP will provide community oversight for the Settlement, and will hold its first meeting in November 2018.[4]

MHA is seeking enhanced *amicus curiae* status more than five years after the Court set a deadline for motions to intervene and gave AMAC this special status, despite that MHA members have been aware of and involved in the case from the outset. The Court should deny MHA's untimely request.

### B. Classic *Amicus* Status Satisfies MHA's Stated Goals

In addition to being procedurally inappropriate, the Court should deny MHA's motion because the enhanced *amicus* status MHA seeks is not necessary to achieve its stated goals. As MHA concedes in its motion, each of MHA's members "has worked with every litigant party to this action on these issues in the past." ECF 173 at 3. MHA's members provided input to the United States before the parties finalized the Settlement. *Id.* at 5. Throughout the course of this case, the Court has welcomed community input by opening hearings to public comment and allowing individuals and advocacy groups to present their views through additional forms of communication. *See, e.g.*, Order Setting Notice and Procedures for Fairness Hearing (Dec. 19, 2013), ECF 53 at 2 (allowing oral, written, and video testimony by the community). MHA members have taken advantage of these opportunities at Court hearings and in community engagement meetings.[5] The Court continues to invite interested community members and groups to provide input as *amicus curiae*. April 2018 Hearing at 93:5-11; 112:1-6.

---

[4] *Id.*
[5] For example, representatives of Disability Rights Oregon and Cascadia Behavioral Healthcare served on PPB's Behavioral Health Unit Advisory Committee, *see* Behavioral Health Unit Advisory Committee Meeting Minutes (Apr. 25, 2018), available at https://www.portlandoregon.gov/police/article/688885; representatives from the Mental Health Association of Portland and of Disability Rights Oregon provided written submissions and testimony at the 2014 Fairness Hearing/Status Conference, ECF 58-1 at 3, 12; the Mental Health Association of Portland provided written testimony and accompanying documentation in advance of the April 2018 hearing, *see* e-mail to Court from Meredith Mathis & Jason Renaud, on behalf of the Mental Health Association of Portland (Apr. 13, 2018); and all members of MHA have been involved in Settlement processes like the monthly Mayor's forum on policing and the PCCEP formation process.

But if each of these interested community members and/or groups sought a formal role in case presentation, negotiations, and formal mediation related to Settlement compliance, the parties would be unable to resolve issues and move forward in a timely manner. *Amici* should not cause a case undue delay. *Long v. Coast Resorts, Inc.*, 49 F. Supp. 2d 1177, 1178 (D. Nev. 1999) (citing *Fluor Corp. and Affiliates v. United States*, 35 Fed. Cl. 284, 286 (1996)) ("It would be unacceptable for an *amici* brief to cause a prolonged delay in the litigation."); *Waste Management of Pa., Inc. v. City of York*, 162 F.R.D. 34, 35 (M.D. Pa. 1995) ("A court may grant leave to appear as an *amicus* if the information offered is 'timely and useful.'") (citation omitted)). MHA has a legitimate interest in Settlement compliance and relevant experience with the mental health community in Portland, as do other members of the advocacy community. Progress toward substantial compliance would be stymied with unacceptable delays if each of these valuable community members invoked the rights of a party. MHA can provide a "focused voice from the mental health community" (ECF 173 at 9) on issues related to Settlement compliance in the traditional *amicus* role.

### III.    CONCLUSION

For the foregoing reasons, the United States respectfully opposes MHA's Motion for Enhanced *Amicus Curiae* Status, but welcomes MHA's participation in the classic role of *amicus curiae*.

Dated this 24th day of September, 2018.

Respectfully Submitted,

| | |
|---|---|
| BILLY J. WILLIAMS<br>United States Attorney<br>District of Oregon<br><br>RENATA A. GOWIE<br>Chief, Civil Division<br><br>*/s/ Jared D. Hager*<br>JARED D. HAGER<br>Assistant U.S. Attorney | JOHN M. GORE<br>Acting Assistant Attorney General<br>United States Department of Justice<br>Civil Rights Division<br><br>STEVEN H. ROSENBAUM<br>Chief, Special Litigation Section<br><br>*/s/ Laura L. Cowall*<br>LAURA L. COWALL<br>Special Counsel<br><br>*/s/ R. Jonas Geissler*<br>R. JONAS GEISSLER<br>Trial Attorney |