| | |
|---|---|
| From: | Mental Health Association <info@mentalhealthportland.org> |
| To: | mary_austad@ord.uscourts.gov |
| Date: | 04/14/2018 05:00 PM |
| Subject: | Testimony by letter for USDOJ v. Portland Fairness Hearing |

Honorable District Judge Michael H. Simon
Mark O. Hatfield United States Courthouse
1000 Southwest Third Avenue – Room 1527
Portland, Oregon 97204-2944

Sent by email to Mary Austed – mary_austad@ord.uscourts.gov
URL at http://www.mentalhealthportland.org/our-letter-to-judge-michael-simon-about-the-fairness-of-usdoj-v-city-of-portland/

April 13, 2018

Your Honor,

In February 2014 the members of the Mental Health Association of Portland testified at your first Fairness Hearing on the Settlement Agreement to *US DOJ v City of Portland*, speaking from the perspective of the persons harmed – people with mental illness who police use force against – is unfair, unreasonable and inadequate. We maintain this opinion.

One Settlement item would have directly benefited people in a mental illness or addiction crisis.

89. The United States expects that the local CCOs will establish, by mid-2013, one or more drop-off center(s) for first responders and public walk-in centers for individuals with addictions and/or behavioral health service needs. All such drop off/walk in centers should focus care plans on appropriate discharge and community based treatment options, including assertive community treatment teams, rather than unnecessary hospitalization.

Arguably no parts of item 89 have been accomplished since settlement in 2012. Further, the facility submitted for compliance is demonstrably unsafe for people in crisis.

The Oregon Occupational Safety and Health Administration report of February 2018 found over 500 patient – on – staff assaults occurred at the Unity Behavioral Health Center, a program of Legacy Health under contract and designee of Multnomah County as Mental Health Authority for the area, between March and November 2017. That number of assaults is surprising, alarming and requires further investigation by the County and State.

Below are outstanding questions we sent Legacy which have gone unanswered. Without answers – and actions – we believe Unity Behavioral Health Center is not a

Exhibit 1
Pg. 1 of 3

safe place for people in a mental health or addictions crisis.

- Please describe what the Unity Assault Log means by "assault."
- What is the breakdown of assaults on security staff compared to assaults on floor/clinical staff?
- Are assaults distributed evenly over time or is there a pattern?
- Are assaults attributed to specific individuals with high acuity needs?
- Are there also corresponding assaults by patients against other patients?
- Did assaults result generally in increased medication, or seclusion, or restraint being used with patients?
- We see more and more people exhibiting psychosis caused by methamphetamine use. Were some or many of the assaults done by people in detoxification?
- What interventions have you implemented to reduce assaults?
- During the past year (since Unity opened), how often have staff call police called to investigate assaults?
- Have police arrested Legacy patients for assaulting staff members?
- How many, if any, former patients has Unity barred from returning to Unity?
- What steps if any has Unity already taken to reduce patient – on – staff assault?
- Will Unity be making changes to it's Psychiatric Emergency Services room?
- How is Unity addressing vicarious trauma of staff and patients from witnessing such events?
- How many of the assaults occurred in the PES as compared to the inpatient units?
- Has Unity considered implementing Collaborative Problem Solving (CPS) with the staff and patients? CPS has been effective at Oregon State Hospital in reducing patient aggression, seclusion/restraint episodes.

Again, the agencies responsible for Unity are entirely silent so we must assume – for safety's sake – there is no change in policy, procedure or staffing to abate these assaults, and Unity is not safe for a person in a mental health or addiction crisis. It should be struck as a completed item of the Agreement.

While items of the Agreement can be debated, the demolition of public oversight of the Agreement is cannot.

The Mayor's office now admits both it and it's contractor, Rosenbaum and Watson, also known as the Compliance Officer/Community Liaison (COCL), underfunded and undermanaged the Community Oversight Advisory Board (COAB) – the public oversight committee for the Settlement Agreement. The prior administration and the COCL put underskilled and uninformed people on the COAB, who predictably challenged underskilled and uninformed COCL-hired facilitators. The result of these unforced errors was disruption, disenfranchisement, and unuseable work product. In review, public oversight of the Settlement Agreement was off the rails from the start.

As a remedy to disruption, Mayor Wheeler cancelled public oversight of the Settlement Agreement in January of 2017 and today, over a year later, there is no published governance, no facilitator, no committee members, no upcoming meetings. No public oversight.

Exhibit 1
Pg. 2 of 3

The rough outline by the Mayor's office of a new committee was agreed to by the parties but is unacceptable. The outline intends to punish public involvement for admitted missteps by the prior administration and the current COCL. It allows private meetings to discuss public business, which is unacceptable. Mayor's office – the defendant – will select all committee members, which is unacceptable. It ends independent assessment of the implementation of the Agreement, which is unacceptable.

Finally, the methods used by the Portland Police Bureau to collect data to show progress have changed so often, and are so inscrutable, we're unable to make any judgement on the Bureau's progress on the other items of the Agreement.

Using verifiable public data – at no cost – we've tracked the harm caused by Portland Police officers back almost fifty years. Our survey (attached) shows and average death rate over 40+ years of 2.06 persons per year, and for the years since the DOJ Agreement than number increased to 2.7 people per year. All the persons killed by the Portland Police Bureau since 2012 were affected by mental illness, drugs or alcohol at their deaths.

The latest death, of John Elifritz, shows police training about mental illness may be necessary, but is insufficient to protect people in crisis. Police intervene at the apex of crisis, not the beginning or the middle – just at the end. Too often it's impossible for them to be anything but brutal. The Agreement is silent and inadequate on important protections for people with mental illness prior to a lethal encounter.

In 2006 Mayor Tom Potter made a enormous and crucial error in response to the death of James Chasse by calling for extensive training of all police officers and not disciplining the three officers involved. Potter tried to reduce public criticism and legal risk by spreading the blame to all officers. He assumed training would reduce or eliminate deadly use of force. Our review shows his error, and gives you a chance to make amends by finding the Settlement Agreement inadequate.

We conclude a lack of progress on these few points is sufficient argument the Settlement Agreement remains unfair, unreasonable and inadequate.

Thanks!

Meredith Mathis & Jason Renaud, on behalf of the

Members of the Board

Mental Health Association of Portland

Attached

Our testimony to Judge Michael Simon – Fairness Hearing, 2013

Oregon OSHA report on Unity Center, February 2018

List of persons harmed by Portland Police Bureau – 1969-2018

Data collected about harm caused by Portland Police Bureau – 1969-2018

Exhibit 1
Pg. 3 of 3