1            IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF OREGON

3                     PORTLAND DIVISION

4
   UNITED STATES OF AMERICA,      )  3:12-cv-02265-SI
5                                 )
            Plaintiff,            )
6                                 )
                 v.               )  April 19, 2018
7                                 )
   THE CITY OF PORTLAND,          )
8                                 )
            Defendant.            )
9  _____)  Portland, Oregon

10

11

12

13                 (Status Conference)

14             TRANSCRIPT OF PROCEEDINGS

15       BEFORE THE HONORABLE MICHAEL H. SIMON

16          UNITED STATES DISTRICT COURT JUDGE

17

18

19

20

21

22

23

24

25

Exhibit 2
Pg. 1 of 23

1                                    APPEARANCES

2

3    FOR THE PLAINTIFF:

4    Billy J. Williams
     Jared Hager
5    Renata Gowie
     United States Attorney's Office
6    1000 SW Third Avenue, Suite 600
     Portland, OR  97204
7
     R. Jonas Alexander Geissler
8    Laura L. Cowall
     U.S. Department of Justice Civil Rights Division
9    950 Pennsylvania Avenue, NW
     Washington, DC  20530
10

11

12   FOR THE DEFENDANT CITY OF PORTLAND:

13   Tracy Pool Reeve
     Denis M. Vannier
14   Mark P. Amberg
     City of Portland
15   Office of the City Attorney
     1221 SW 4th Avenue, Suite 430
16   Portland, OR 97204

17

18

19   FOR THE DEFENDANT PORTLAND POLICE ASSOCIATION:

20   Anil Karia
     Tedesco Law Group
21   3021 NE Broadway
     Portland, OR 97232
22

23

24

25

Exhibit 2
Pg. 2 of 23

```
 1                         APPEARANCES (Continued)

 2

 3    FOR ENHANCED AMICUS CURIAE:

 4    Kristen A. Chambers
      Wyse Kadish LLP
 5    900 SW Fifth Avenue, Suite 2000
      Portland, OR  97204
 6

 7    Jessica Ashlee Albies
      Albies & Stark, LLC
 8    210 SW Morrison Street, Suite 400
      Portland, OR  97204
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    COURT REPORTERS:      Dennis W. Apodaca, RDR, RMR, CRR
                            Jill Jessup, CSR, RMR, RDR, CRR, CRC
24                          United States District Courthouse
                            1000 SW Third Avenue, Room 301
25                          Portland, OR 97204
                            (503) 326-8182
```

Exhibit 2
Pg. 3 of 23

```
 1    opening presentation or at the beginning of the public

 2    testimony?  Any preferences?

 3              MS. REEVE:  Your Honor, we anticipated that the Mayor

 4    would speak at the beginning of the public portion.

 5              THE COURT:  That's fine.  Because I want to

 6    accommodate the Mayor's schedule, if there are issues, perhaps

 7    what we should do is hear the Mayor's comments first and then

 8    take a break.

 9              You're shaking your head yes, so we will do it that

10    way.

11              In addition, some of you may know that we had a

12    sign-up sheet that was already circulating this morning.  Two

13    law students who are assisting me this semester as very capable

14    externs are in the courtroom.

15              Andrew and Cody, please stand.  If you have already

16    given your name to Andrew or Cody, I have you on a list of

17    public comment requesters.  I have Debbie Aiona, Carol Cushman,

18    Lightning, Mimi German.  I have four people who want to speak

19    collectively.  Regina Hamm (phonetic), Dan Handelman, Philip

20    Cacha, and Michael Schumann.  Those are the only names that I

21    have.

22              So if you do want to provide public comment during

23    the public testimony portion, will you please either now or

24    relatively soon, no later than our break, go to the back of the

25    courtroom and give your name to either Cody or to Andrew, who
```

Exhibit 2
Pg. 4 of 23

1    will put it on a supplemental list that will be given to me.

2           I also want to announce, I know that some members of

3    the media have requested the opportunity to take notes on a

4    laptop.  I have given my approval to that.  I do ask that if

5    anyone is going to be typing on a laptop or a similar-type

6    device, please turn off the clicking sound.  My primary concern

7    is to ensure that we don't have a distraction or disruption of

8    whoever is giving me comments orally.  So you're welcome to

9    type.  You're welcome to post what you want to post, but please

10   don't disrupt other people.  So please turn off clicking

11   sounds.

12          Relatedly, although I have some authority, I don't

13   have a lot of authority, and I have no authority to allow the

14   audio or audio-visual recording.  That is dictated by the

15   policies of the administrative courts of the United States.  We

16   follow that here.  No one is allowed to engage in any audio or

17   audio-video recording, with the sole exception of our official

18   court reporter, who is taking down everything that will be said

19   during this hearing.

20          So that takes care of my preliminaries.

21          At this time I invite presentation by the

22   United States.

23          MR. HAGER:  Thank you, Your Honor.  I ask the Court

24   for leave to give my remarks sitting as an accommodation.

25          THE COURT:  Of course.  Everyone is certainly welcome

Exhibit 2
Pg. 5 of 23

1    Portland City Council approved these amendments by a

2    five-to-zero vote after multiple public hearings, multiple

3    public comments, and substantial revision to the proposed

4    amendments in response to those comments.  The United States

5    agreed to the changes, finding them necessary to overcome

6    obstacles to compliance that were unforeseen.  We've also found

7    them to be consistent with the principles embodied by the

8    agreement.  The PPA and the AMAC have stipulated to entering

9    the amendment as a path forward to implementing the goals of

10   the agreement.

11    In sum, Your Honor, the joint motion is the product

12   of a negotiated solution to problems that arose in this case

13   and to implementing the goals of the settlement agreement.  As

14   part of that solution, we have also asked the Court for a

15   standing order of reference to the Ninth Circuit Mediation

16   Program in the case that future disputes arise.  The AMAC, the

17   PPA, the City of Portland, or the United States would be

18   allowed to invoke those provisions to allow for mediation.

19    After this hearing, if Your Honor is inclined to deny

20   the motion, we would ask to be able to supplement the record,

21   as necessary, to satisfy the Court.

22    Mr. Geissler and I will speak briefly about each of

23   the six amendments.  Mr. Geissler is going to discuss changes

24   related to the Employee Information System, or EIS, the Citizen

25   Review Committee, and accountability.  I am going to address

Exhibit 2
Pg. 6 of 23

1          MR. HANDELMAN:  If you could give me five minutes,

2    and I will hand in my testimony to the clerk.

3          THE COURT:  Although I do want to say, you're welcome

4    to make any comments you want, as did Mr. Schumann, as did

5    everyone else.  It would be inappropriate for me to make any

6    comments at all about that shooting, and I understand and

7    appreciate the City's position about not making any comments at

8    this time.  It is my understanding and expectation that there

9    will be an appropriate time for comments about that issue, but

10   this is not it from me -- or even from the City -- that said I

11   will not restrict any testimony that a member of the public

12   wishes to make.

13         MR. HANDELMAN:  That is good because it's always

14   appropriate for the community to make comments about these

15   things.

16         THE COURT:  I'm just explaining why you're not going

17   to get a response from me.

18         MR. HANDELMAN:  No, I gotcha.  I read you loud and

19   clear.

20         So I believe that actually there were 20 officers

21   that went in because there were 12 witness officers in addition

22   to the eight law enforcement agents that shot at Mr. Elifritz,

23   and we -- Mr. Schumann also raised an issue about how the

24   Portland Police Association, which is a full party as a

25   defendant in this case, seemed to act contrary to the reforms

Exhibit 2
Pg. 7 of 23

1    that we're trying to enact.  They blame the agreement's

2    emphasis on using less force for the outcome of the incident

3    when an officer called for backup rather than engage in a fight

4    between a man with a knife and a store clerk with a sword a few

5    weeks ago.

6           Their defending of the Gang Enforcement Team's

7    overpolicing of the African-American community after the city

8    auditor released her report showing they have no documents to

9    justify their behavior.

10          In addition, while the COCL and the DOJ found the

11   City in compliance of paragraph 127 of the City --

12          THE COURT:  Slow down, please.

13          MR. HANDELMAN:  Okay.  They found the City in

14   compliance of paragraph 127 because the City is asking officers

15   to do walk-throughs in deadly force cases.  No officer has done

16   so after a recommendation of the PPA.

17          We hope the judge will consider reminding the PPA

18   they have stated their willingness to embrace these reforms

19   with the only caveat to file formal grievances for the changes

20   that affect their bargaining agreement.

21          As a refresher, the DOJ claimed there were fewer --

22   less lethal force incidents in the year since our investigation

23   began.  We responded with a list of shootings that we sent the

24   Court that shows the average has remained at just over four per

25   year.  The same as before the DOJ arrived.

Exhibit 2
Pg. 8 of 23

1          The majority of those people who have been killed

2     have had mental health issues of some kind.  So this is part of

3     a pattern.  We're not even talking about the specifics of

4     Mr. Elifritz's case.

5          Sarah Michelle Brown, who was shot at by the police

6     earlier this year, was also in some kind of crisis.

7          So the Elifritz case, though, illustrates why the

8     mental requirement of having one behavioral health response

9     people in each precinct, paragraph 106, is insufficient.  The

10    City's DOJ formed a few days before Elifritz died.  They stated

11    those teams go out Tuesdays through Fridays.  The media

12    reported the officers who encountered Mr. Elifritz referred him

13    to the BHOT, but it was a Saturday.

14         The community member semi-jokingly stated that it's a

15    good thing there are no mental health crises on the weekends.

16         Regarding paragraphs 135 and 136 which allow the CRC

17    to declare findings unreasonable and send cases back from our

18    investigation, DOJ reports that IPR is not providing them with

19    regular data.  IPR did not report criminal allegations to the

20    Bureau in three cases.

21         So, you know, kind of the broad issue that we're

22    trying to get at here is that there's a lot of substantial -- a

23    lot of findings of substantial compliance with this agreement,

24    even though we would argue that there are a lot of places

25    where -- in which the City is not in substantial compliance,

Exhibit 2
Pg. 9 of 23

1    as chair for COAB.  And after Kathleen resigned, I was

2    appointed, and I've been working hard, really involved,

3    volunteering my time, doing this work without pay, doing six

4    meetings a month.  It's basically full time for two years.  And

5    we made a hundred recommendations that we voted on.  We voted

6    on those, passed those on to the City.  They approved those and

7    then submitted them to the DOJ, where they sat for almost three

8    years now.

9           And they've been sitting there.  We are waiting to

10   hear from the Department of Justice in regards to our

11   suggestions, and the City has not been in compliance with the

12   settlement according to the DOJ -- they found that the City is

13   not in compliance with the settlement.  And so I'm wondering

14   where the accountability is for the City.  There's no

15   consequence.  There's no change.  Except that the City killed

16   the COAB and took on the -- is taking on the PCCEP group to

17   take over, taking all of the credit from the work that COAB did

18   over the last few years, and their stakeholders are making

19   those suggestions now to the City, and they're respecting those

20   and making changes.  But why can't the City share the respect

21   to -- with COAB making those same suggestions that they've made

22   over the past few years?

23           Now, in the last two weeks, John Elifritz was killed

24   by 20 police officers with a dog and one sheriff that

25   escalated.  This person was experiencing mental health crisis,

Exhibit 2
Pg. 10 of 23

1    and they were saying he was being pursued, but that does not

2    match policy as according to deescalation policies and working

3    with someone who's in a mental crisis.  The result was this

4    person lost their life to a shooting.  So this is not working.

5              Now the City wants to hire 93 more officers, and I'm

6    very concerned as a citizen.  And I guess what I'm trying to

7    say is obviously we have a lot of work to do together to make

8    changes for the better, and I'm asking the DOJ to do something

9    to roll up their sleeves and get to work so that we can make

10   changes, and I just want to encourage them to do that.

11             Your Honor, I hope that you can somehow inspire the

12   DOJ to do something.

13             Thank you very much for your time.

14             THE COURT:  Thank you very much for your comments,

15   Mr. Wolfe.  And I also thank our ASL interpreters for their

16   assistance.  Thank you.

17             UNIDENTIFIED SPEAKER:  Thank you.

18             THE COURT:  Ms. Hayes.  Welcome.

19             MS. HAYES:  Thank you.  Okay.  My name is

20   Donna Hayes, and I'm the grandmother of Quanice Hayes, a young

21   man, 17-year-old man that was killed last year by police.  And

22   the shooting, it was -- the shooting was kind of weird because

23   there was several officers out there and only one officer

24   thought to shoot.  The only one seeing something that -- that's

25   what's weird about it, and -- and I really don't want -- I know

Exhibit 2
Pg. 11 of 23

```
 1  but to do it in a way that establishes trust, establishes and

 2  maintains trust.

 3          It pains me that there's so much dissonance right now

 4  in the community, but I'm hopeful and I'm also optimistic

 5  because I know that we have the right people in the right seats

 6  now to get it done.

 7          So thank you, again, to allow the opportunity -- to

 8  be allowed the opportunity to speak, but I also want everyone

 9  in this room to know that we are, as an organization, very

10  committed, not only to what's in the settlement agreement,

11  but -- not because it's in the settlement agreement.  It's

12  because it's the right thing to do.  Thank you.

13          THE COURT:  Thank you, Chief.  And I think I do speak

14  on behalf of everyone here when I say that I believe everyone

15  in this courtroom and as part of this process wishes you the

16  best of luck, and I also believe that everyone in this

17  courtroom is willing to work with you as appropriate in helping

18  you to achieve these worthwhile goals.

19          So welcome, and thank you.

20          PORTLAND POLICE CHIEF OUTLAW:  Yes, sir.

21          THE COURT:  Let's go back to the United States,

22  Mr. Geissler.

23          MR. GEISSLER:  Your Honor, if it please the Court, in

24  order to bring finality to the fairness hearing portion of

25  today's hearing, I believe Your Honor had posed a question in
```

Exhibit 2
Pg. 12 of 23

1   which you expected responses from each of the four parties.  If
2   we understand Your Honor's proposal precisely, option one is
3   approval of the six amendments; option two is disapproval of
4   the six amendments; and option three, as Your Honor framed it,
5   was conditional.  Approval and coming back in six months with
6   respect to all six portions of the amendments of the settlement
7   agreement.
8           Your Honor, the United States believes that there is
9   a sufficient factual record established already and retains the
10  position that all six should be approved; however, with respect
11  to the option of a conditional approval -- I hesitate to ask
12  the Court a question, but I'll ask the Court a question.  May I
13  take it that the condition is that we come back in six months?
14          THE COURT:  Yes.  And my thinking would be because of
15  some of the concerns, the concerns that maybe either these
16  conditions won't be fully complied with, they might not be
17  sufficient, there might be things that we can learn.  And
18  rather than give final approval now or final disapproval now,
19  my plan or my tentative thinking is to give conditional and
20  provisional approval right now, hear how things are, coming
21  back in six months, with the expectation that based upon what
22  we've learned between now and six months from now, I will
23  either then be in a better position to give full unconditional
24  approval or, perhaps, based upon what is learned, the parties
25  may want to modify some of these conditions even further and

Exhibit 2
Pg. 13 of 23

1    then seek final unconditional approval on some modifications,
2    but that's a long-winded answer of "yes" to your question.
3              MR. GEISSLER:  Thank you, Your Honor.
4              So with respect to five of the six proposed
5    amendments, the first being the two EIS provisions, adoption of
6    1010.10 stipulated discipline, CRC and COCL reporting.  We
7    believe that today finality is important.  Finality is
8    important so that the structures can get in place and so that
9    the police bureau, the CRC, IPR can all function as they
10   should, and the City should come toward completion of the
11   settlement agreement without hesitation.
12             With respect to the sixth, the PCCEP, if Your Honor
13   is so inclined not to grant the United States' request to
14   approve all six, for the sixth alone, for PCCEP, we submit that
15   that one would be the one provision for conditional approval,
16   with the only condition being a status conference in six months
17   from today, Your Honor.
18             I believe, Your Honor, in consultation with the other
19   counsel, that they will have similar positions, if not exactly
20   the same.
21             THE COURT:  All right.  Before we get, then, to a
22   status conference on the status of the settlement, let me ask
23   the City, does the City agree with the position just
24   articulated by the United States?
25             MR. AMBERG:  Yes, we do, Your Honor.

Exhibit 2
Pg. 14 of 23

1  prefer to give me the AMAC's position now or after a ten-minute

2  recess?

3          MS. ALBIES:  Let's take about a ten-minute recess.  I

4  think we'll have about 20 minutes of --

5          THE COURT:  Okay.  That will be fine.

6          In a moment or two we'll take a ten-minute recess,

7  and then we'll come back with a status report from the Albina

8  Ministerial Alliance Coalition for Justice and Police Reform,

9  followed by a presentation from the COCL.

10          Let me also ask counsel two things to think about

11  during this recess.  If I go in the direction urged by

12  Mr. Geissler earlier of giving final approval to a number of

13  the items in the proposed amendments but reserving final

14  decision on the PCCEP portions and only giving that provisional

15  or conditional approval, I was thinking I would like to have a

16  hearing on that issue the week of October 1st through the 5th.

17  Either Monday or Tuesday, the 1st or the 2nd, or that Thursday

18  or Friday, the 4th or the 5th.  I'm wide open, I believe.  If

19  it is going to be Wednesday, I'm only open in the afternoon.

20  Not in the morning.

21          I would envision taking -- hearing from the parties

22  in terms of how the PCCEP provisions are going, as well as

23  anything else you wish to report, and also hearing from the

24  public in terms of whether they have any views on how the PCCEP

25  process is going, as well as anything else that anyone wishes

Exhibit 2
Pg. 15 of 23

1    to say.

2          So would you all check your calendars and let me know

3    whether sometime that week of October 1st through the 5th might

4    work for counsel.

5          Secondly for you to think about, I know that there's

6    a request -- it's not part of a written motion, but I know it's

7    an oral request for some type of standing order of reference to

8    the Ninth Circuit mediator.  I'm not that comfortable with that

9    because the Ninth Circuit mediator is for when matters are

10   before the Ninth Circuit.

11         District -- District of Oregon has its own mediation

12   program.  To the extent that you don't need a specific order

13   from the District Court to get back before a Ninth Circuit

14   mediator, well, fine.  Okay.  Then why should I give it?

15         To the extent that there is some reference order that

16   I should give when a case is not currently on appeal, I'm not

17   aware of that.  I also don't see any problem generally with

18   parties getting together if they have a dispute and either

19   working it out among themselves and/or going to find a mediator

20   that they can all agree upon, but I do have some concerns about

21   the way the Ninth Circuit mediator was used in 2017 as

22   discussed in the AMAC's letter of October 20, 2017, and how it

23   effectively precluded comment and participation by the public,

24   as described in the AMAC's letter, Ms. Chambers' letter, of

25   October 20th.

Exhibit 2
Pg. 16 of 23

 1            I don't want to contribute to that, so I guess my

 2     question is, "Do you really need a standing order from me, a

 3     standing order of reference from me?  Number one, I don't think

 4     so; number two, I'm not quite sure I'm authorized to do that;

 5     and, number three, I'm a little bit concerned about maybe some

 6     of the unintended consequences of doing that.

 7            But to the extent you want to be heard later on that

 8     today, I appreciate your views.

 9            All right.  A ten-minute recess.

10                        (Recess taken.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 2
Pg. 17 of 23

1    was able to activate the community and provide legal analysts

2    to demand that investigation of officers are conducted promptly

3    after an officer-involved incident.

4           The recent shooting of John Elifritz by seven

5    Portland police officers and a Multnomah County sheriff deputy

6    cause AMAC great concern about the Bureau's response to a

7    mental health crisis.

8           Mr. Elifritz's encounter earlier the day of the

9    shooting showed that the officers should have known that he was

10   having a mental health crisis.  The venue of the shooting

11   should have made known the escalation technique used by the

12   Bureau.  This makes AMAC believe that the training and policy

13   brought into the settlement agreement are not as effective as

14   they should be.

15          I want to mention, Judge Michael, that there is a

16   disconnect between the training and the policy and the actual

17   implementation on the street, and I believe that this is

18   because of a lack of accountability beginning on that sergeant

19   level.  If the patrol officer is not held accountable by the

20   sergeant for violation of policy and training, it is just

21   nonsense to have their training and policy and not have it

22   implemented.

23          So this is a big issue that AMAC believes in.  As the

24   witnesses from the community have come up, yes, you can have

25   the best training in the world and the best policy, but if it

Exhibit 2
Pg. 18 of 23

1            THE COURT:  Thank you very much, Dr. Rosenbaum.

2            All right.  Before I give the parties my ruling on

3     the pending joint stipulated motion, let me ask if any counsel

4     or any parties have anything further to say at this time.

5            Mr. Vannier.

6            MR. VANNIER:  Yes.  Denis Vannier for the City.  In

7     this instance I have been deputized to give the answer to the

8     substantive question about the request for referral to

9     Ninth Circuit mediation.

10           This is going to be an explanation and not a plea for

11    that provision.  We did not come up with that.  That was

12    suggested by the Ninth Circuit mediator.  The parties felt

13    there was some value, if the parties ever wanted to go to

14    mediation, and to have a mediator that was familiar with the

15    case, because obviously this is a complex case.

16           What she told us was, "Well, I would need an order of

17    this sort."  In fact, the language that you see in the joint

18    motion was run by her, and we asked was that something that

19    would work for you.  That being said, the City has no strong

20    feelings about that.  So if Your Honor is not comfortable with

21    that --

22           THE COURT:  What I would rather do there is, if and

23    when a dispute arises for which all four parties believe that a

24    referral to the Ninth Circuit mediator would be appropriate,

25    well, then, fine, come to me at that time and ask for a

Exhibit 2
Pg. 19 of 23

1   referral.  I want to make sure that everyone is comfortable

2   with the terms of that referral so we don't have problems of

3   the sort that have been identified in the past referral, and

4   then we will talk our way through that.

5           MR. VANNIER:  But in answer to your question, the

6   City has no objection to the Court dropping that provision.  I

7   understand that the other parties agree.

8           THE COURT:  Very good.  Thank you.

9           Do the parties have any agreement on when in the week

10  of October 1st through the 5th they might be available?

11          MR. GEISSLER:  Your Honor, that week is fine for the

12  United States.  I would ask, for the sake of travel, we avoid

13  either the Monday or Friday.

14          THE COURT:  Tell me what you want.  You can have

15  anything you want that week except Wednesday morning.

16  Wednesday morning I have a fairly full calendar.

17          MR. GEISSLER:  Thursday is fine with me.

18          MR. VANNIER:  And the City is free all that week.

19          THE COURT:  All right.  Should we set another status

20  conference for Thursday, October 4th, 9:00 a.m?

21          Now that I've said that, Mary, we are free then?

22          THE CLERK:  Yes.

23          THE COURT:  All right.  Thank you, Mr. Geissler.

24  Thank you, Counsel.

25          I have before me the joint stipulated motion to enter

Exhibit 2
Pg. 20 of 23

1    the amended settlement agreement, Docket 157.    The ruling is

2    that that motion is granted in part and denied in part.    I am

3    going to follow the request and recommendation that

4    Mr. Geissler gave earlier today.    I'll also ask the

5    United States to take the lead in preparing an appropriate

6    order consistent with that recommendation.    I just would ask

7    that you draft an order, run it by the other three parties, so

8    all four parties can look at it as to form.    Then provide it to

9    me through my courtroom deputy, preferably by email in Word

10   format.    That's the easiest for me.

11              The essence will be, as you've described earlier,

12   Mr. Geissler, frankly, the only real concerns that I have, and

13   that's what is leading me to not at this time enter the amended

14   settlement agreement in full relates, one, to the referral of

15   the Ninth Circuit.    We discussed that.    Let's leave that out of

16   it.

17              Secondly and most significantly, the concerns about

18   community involvement, the COAB, and the new PCCEP concept.    I

19   think we all recognize that the City is not in compliance and

20   has not for some time been in compliance with Section IX of the

21   settlement agreement that relates to the COAB.    I recognize the

22   parties' diligent efforts in trying to fix that with this new

23   proposal and the proposed amendments to Section IX relating to

24   the PCCEP.

25              I don't know whether that will be sufficient to solve

Exhibit 2
Pg. 21 of 23

1    this problem, but I right now am willing to give deference to

2    the four parties here and the hard work that you all have put

3    in to try to make this work.   And so let's give that a try.   So

4    with respect to Section IX issues, I will give that provisional

5    or conditional approval, subject to further evaluation by the

6    Court at our hearing on October 4th.

7                    I give final approval to all other provisions that

8    the parties jointly request be made to the settlement agreement

9    and how it should be amended, and I'll leave the particulars

10   there to be set forth in a revised proposed order submitted by

11   the United States.

12              Are there any questions about what I have just ruled

13   or anything I need to clarify further?

14              Mr. Geissler or Mr. Hager?

15              MR. GEISSLER:  Nothing, Your Honor.

16              THE COURT:  Anything further from the City?

17              MR. VANNIER:  Nothing from the City, Your Honor.

18              THE COURT:  From PPA?

19              MR. KARIA:  No, sir.

20              THE COURT:  And from AMAC?

21              MS. ALBIES:  No, Your Honor.

22              THE COURT:  Is there anything else that any other

23   party would like to address at this hearing; otherwise, I will

24   have a final word or two.  But anything else we should address

25   at this hearing?

Exhibit 2
Pg. 22 of 23

1              MR. GEISSLER:  No, Your Honor.

2              THE COURT:  All right.  Then I thank all the parties

3    for their hard work in getting us to this point.  I do note

4    that the problems that we are facing and that the settlement

5    agreement is trying to address were not created overnight, and

6    they will not be solved overnight.  But I recognize the hard

7    work and the good faith that all four parties are putting into

8    this.

9              I also recognize and appreciate the work of the COCL.

10   Dr. Rosenbaum, you and your team are putting in a lot of work.

11   You have a lot of expertise, and I recognize your contributions

12   and the good-faith contributions contributed by your team.

13             I also very much appreciate the public input as part

14   of this process.  As you can understand from my order, I do

15   think that community involvement is a very important piece to

16   this solution.  I know that the parties here recognize that as

17   well.  That's why they built in Section IX, and that's why they

18   are now trying to address the problems and deficiencies that we

19   have experienced with a new approach.  Community involvement is

20   going to be an important part of this answer.

21             I also recognize and appreciate all of the efforts

22   that have been made by the Portland Police Bureau, including

23   the comments that we heard today from Chief Outlaw, and I wish

24   the best of luck, quite sincerely, in this very important

25   effort.

Exhibit 2
Pg. 23 of 23