**Juan C. Chavez**, OSB #136428
Oregon Justice Resource Center
Email: jchavez@ojrc.info
PO Box 5748
Portland, OR 97208
Telephone: 503-944-2270 ext. 212
Facsimile: 971-275-1839

Attorney for Mental Health Alliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>Defendant. | Case No. 3:12-cv-02265-SI<br><br>MENTAL HEALTH ALLIANCE'S REPLY BRIEF IN RESPONSE TO BRIEFS IN OPPOSITION TO MOTION FOR ENHANCED-*AMICUS CURIAE* STATUS |

COMES NOW, by and through their attorney, Juan C. Chavez, the Mental Health Alliance (MHA) replies to the briefs filed in opposition to its Motion for Enhanced-*Amicus Curiae* status. Because many of the arguments raised by the opposition parties utilize similar themes and theories, MHA wishes to file its reply as a unified response. If the Court prefers separate briefing for each brief in opposition, MHA will do so at its request.

REPLY MEMORANDUM

I.      Introduction

The Mental Health Alliance motioned this Court to enter into the above-proceeding as enhanced-*amicus curiae* to participate in the ongoing settlement. Because of the unique nature of

this case, this Court foresaw that the involvement of a community-led organization such as the Albina Ministerial Alliance Coalition for Justice and Police Reform (AMAC) was necessary. Once again, the Mental Health Alliance calls upon the Court to make the prudential step of allowing it and the voice of the mental health advocacy community to participate more fully with the process of implementing this settlement agreement. At this crucial stage, when a new organization such as the Portland Committee on Community-Engaged Policing (PCCEP) is taking form and when the only promise of a community behavioral health center for drop offs by first responders is under investigation and could face closure, it is important that members of the mental health community participate in the courtroom where actual decisions made about their fortune take place.

The oppositional briefs advance several arguments to block the Mental Health Alliance's participation in this litigation, which this reply will respond to in two parts, summarized below:

1) This case needs an organization whose clearly-established goal is to advocate for the mental health community in relation to the terms of the settlement agreement to have enhanced-*amicus curiae* status; and

2) Because this litigation requires the persistent participation of the parties and new facts have arisen out of the agreement's implementation, traditional notions of timeliness are moot to an extent.

II. **Discussion**

   A.   **"Nothing About Us Without Us."**

As the opposition briefs filed by the Portland Police Association and the City of Portland highlight, the members of the Mental Health Alliance have been providing steady, useful input to

both the City as it relates to persons with mental illness, and to the settlement process of the present case, *see discussion below*; However, that does not mean that the voice of the mental health community has been heard and integrated into the process of managing this settlement.

The City states in its brief in opposition that the "USDOJ and the City rely heavily on the COCL to assess and present evidence to the Court regarding the City's compliance with the terms of the Settlement Agreement related to mental health." Dkt. 181 at 8. The Portland Police Association add that the constituent organizations within the Mental Health Alliance have provided both written and oral testimony at status hearings and to the COCL. Dkt. 178 at 5-6.

While the Mental Health Alliance values the ability to provide testimony for the Court, and has taken as many opportunities available to participate, as the course of litigation has demonstrated, the public has not had a mental health advocacy group in the room while amendments were discussed and drafted. While the current amended settlement agreement was mediated and negotiated, the terms were kept under from the public, including members of the Mental Health Alliance, as the City had invoked mediation privilege. Dkt. 159 at 3. Had the Mental Health Alliance participated in such processes, they could have brought to fore the interests and voices of the mental health community.

This is not to advance the proposition that the Mental Health Alliance objects in full or in-part to the current Amended Settlement agreement, to be further discussed at the October 4, 2018 hearing. If the Mental Health Alliance is granted the relief requested, then it would provide any such briefing as the Court allows. However, for the parties to this agreement to assert that there has been an inclusive process for the mental health community to engage with and negotiate the terms that affect them, that is flatly refutable.

The AMAC has done an admirable job in providing a community-voice in the litigation of this case. But the expertise, value, and necessity for the mental health community to also participate cannot be ignored. As the Portland Police Association has helpfully outlined, the Mental Health Alliance has worked tirelessly both within and without the confines of this case. Members of Mental Health Association of Portland have provided testimony to this Court and to the City. Disability Rights Oregon too has provided testimony to the Court, and has advocated for the rights of the mentally ill in other forums. And Cascadia Behavioral Healthcare works with the Portland Police Bureau in a number of capacities, and provides mental health services for the community. Because of their unique perspectives, they would bring, as the Mental Health Alliance, a "timely and useful" service to the Court. *Long v. Coast Resorts, Inc.*, 49 F. Supp. 2d 1177, 1178 (D. Nev. 1999) (citing *Waste Management of Pennsylvania, Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995)).

Unlike City, State, or Federal governments whom change administrations but retain a cohesive body, community advocacy groups rely on the ability to form alliances or affinity groups as needed to advance a goal. The Court should recognize that groups like the AMAC and Mental Health Alliance can advocate for the same community but from different, non-conflicting perspectives. The same could be said for the governmental and labor organizations involved in this litigation. The main purpose here would be for a community of mental health providers and advocates to be an *amicus* not only for the Court but for the parties involved, as we too share in the vision and promise that a better, safer Portland can exist for persons with mental illness. Fundamentally, at the core of the Mental Health Alliance's mission is to be the concerted voice in the room for the mental health community while decisions made about them are being

considered. The Court should consider this fulfillment of the disability-activist slogan, "Nothing about us without us."

### B. This litigation is unique, and necessitates more than mitigated community-involvement

In the Court's prudence, it identified the necessity for having community advocates elevated in the process of implementing the settlement agreement terms. As the City indicates, this is not a consent decree wherein the Court can have a continuous monitoring of the settlement agreement's implementation. Dkt. 181 at 2. Since the entry of the original settlement agreement, one significant portion of the community oversight mechanism required a complete rewrite, as the board formed pursuant to the agreement Community Oversight Advisory Board (COAB) disbanded. While the Mental Health Alliance can relay its optimism for the success of its replacement, PCCEP, if it too were to fail the Mental Health Alliance's input in creating an inclusive, mental-health informed body to oversee this settlement agreement's implementation would be crucial, and needed promptly.

A significant portion of the settlement agreement also speaks to the need for community-based mental health services. While the agreement acknowledges that separate agreements would be necessary to fulfill this vision, beyond the seemingly-tentative existence of the Unity Center, this type of care organization has yet to come into fruition. Without these services, Portland police officers will continue to be first responders to the inadequacies of our health care system—which, as the settlement agreement acknowledges, has led in the past to disproportionate excessive use of force against community members with mental illness. As this is a portion of the settlement agreement that has not ripened, the Mental Health Alliance's

participation is still timely, and it could be of unique help to the litigants and to the Court on this point.

Lastly, the Mental Health Alliance argued that the deaths of persons whom had been suffering from either mental illness or undergoing a mental health crisis as a means of illustrating not only the stakes involved with the proper implementation of the settlement agreement but the questions that naturally arise concerning its implementation. While we acknowledge that this is an uncomfortable truth for both the City and for the Portland Police Association, the point made should not be taken as an attempt at pejorative sleight-of-hand at the Police Bureau members' expense, but that training, resources, and commitment to the agreement have very real consequences for the community for whom the Mental Health Alliance advocate.

The very nature of this case requires many steady-hands and clear voices to articulate the full-vision needed to bring the City out of this crisis. Because of this unique nature, an ongoing and evolving settlement agreement cannot be bound to its filing date to determine timeliness. The clock has been reset a number of times, and it would not prejudice the overall course of this litigation to allow the Mental Health Alliance's participation.

## CONCLUSION

WHEREFORE, plaintiff prays for recognition as an enhanced-*amicus curiae* in this lawsuit.

DATED: October 1, 2018.

*/s/ Juan C. Chavez*
Juan C. Chavez, OSB #136428
PO Box 5248
Portland, OR 97208
Tel: (503) 944-2270 ext. 212
jchavez@ojrc.info