**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
**RENATA GOWIE, OSB #175273**
Civil Division Chief
**JARED D. HAGER, WSB #38961**
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902
Phone: 503.727.1120
Email: jared.hager@usdoj.gov

**ERIC S. DREIBAND**
Assistant Attorney General
Civil Rights Division
**STEVEN H. ROSENBAUM**
Special Litigation Section Chief
**LAURA L. COWALL**
Special Counsel
**R. JONAS GEISSLER**
**KERRY K. DEAN**
Trial Attorneys
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Phone: 202.514.6255
Fax:   202.514.4883
Attorneys for Plaintiff, United States

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>             Plaintiff,<br><br>     v.<br><br>**THE CITY OF PORTLAND,**<br><br>             Defendant. | Case No. 3:12-cv-02265-SI<br><br>PLAINTIFF'S NOTICE OF FOURTH PERIODIC COMPLIANCE ASSESSMENT REPORT |

Page 1     Plaintiff's Notice of Fourth Periodic Compliance Assessment Report

Plaintiff, the United States of America, provides notice to the Court of Attachment 1, our Fourth Periodic Compliance Assessment Report (Report), for the period of August 30, 2017, to April 11, 2019.  As detailed in the Report, the City has made significant progress in implementing the Amended Settlement Agreement, ECF 171.  Indeed, the City has achieved substantial compliance with all components of five of the Agreement's seven substantive sections:

- Use of Force (Section III);
- Training (Section IV);
- Community-Based Mental Health Services (Section V);
- Crisis Intervention (Section VI); and
- Employee Information System (EIS) (Section VII).

The City is nearing substantial compliance with the two remaining substantive sections:

- Accountability (Section VIII); and
- Community Engagement and Creation of Portland Committee on Community Engaged Policing (PCCEP) (Section IX).

While working to reach substantial compliance with these sections, the City must maintain substantial compliance with the other sections.  The Agreement requires one year of sustained substantial compliance with all provisions before termination.  ECF 171, Amended Settlement Agreement, at 59-60, Par. 175.

Our executive summary of the Report, by topic, is as follows:

- **<u>Use of Force (Section III)</u>:**

The Portland Police Bureau (PPB) effectively governed its uses of force through implementation of the approved use-of-force policies and force-review mechanisms.  PPB

trained all officers on the use-of-force policy both in classroom settings and through demonstration in scenarios. PPB also trained all supervisors on the requirements for critically reviewing uses of force.

PPB's accomplishments with policy and training have yielded positive results. PPB force reports show frequent use of disengagement and utilization of specialized units, like the Enhanced Crisis Intervention Team (ECIT). (Par. 67). As a result, PPB has reduced its use of force. For example, PPB used force in 226 cases in the fourth quarter of 2017 compared to 177 cases in the fourth quarter of 2018, a decrease of 22%. (Pars. 66, 70, 72, 73, 76). Our review of a sample of force events showed that PPB is acting substantially in accordance with approved force policies.

PPB's use of electronic control weapons (ECW) (sometimes called Tasers or conductive energy devices) also has dropped significantly since our investigation began. Even with a slight increase in the reported number of ECW uses (corresponding to more rigorous reporting requirements), PPB has maintained a significantly lower level of ECW use in the past five years than in the four years preceding that period. (Par. 68).

PPB has internalized the value of providing aid to subjects against whom PPB has used force. PPB has practiced this value many times, including providing immediate aid in a non-lethal officer involved shooting. (Pars. 69, 74).

Finally, PPB's Force Inspector and analysts have engaged in rigorous audits of uses of force. Based on these audits, the Force Inspector provided useful data to PPB responsible units and to the Training Advisory Council. In part, these audit data identified trends in the types of force PPB used and who used force. (Pars. 74, 75, 76, 77).

- **Training (Section IV):**

    PPB continued to place a high value on training. PPB implemented a new training needs assessment and a more fulsome training plan addressing multiple areas of training, not just officers' in-service requirements. PPB also responded to the need for separate supervisory training, requiring a separate in-service training for supervisors, in addition to the in-service training for all sworn officers. (Pars. 78, 79, 84). During in-service training, PPB employed competency-based evaluations of all sworn officers and supervisors. In tests, group discussions, individual ECW and firearm qualifications, physical skills demonstrations, and scenarios, officers had to demonstrate proficiency in the required skills they learned. (Par. 80).

    PPB's Field Training Evaluation Program also reinforced the approved policies through field training of new officers. Coaches assessed trainees' performance consistent with those policies. (Pars. 78, 84). And PPB implemented its Learning Management System (LMS), which tracks each officer's assigned training and permits supervisors to check their subordinates' training status. (Par. 81).

- **Community-Based Mental Health Services (Section V):**

    PPB continues to engage with local partners to improve PPB's role in the community response to those with mental illness. PPB's Behavioral Health Unit (BHU) worked closely with service providers in multiple ways, including through its Advisory Committee (BHUAC), the Service Coordination Team (SCT), and the Behavioral Health Response Team (BHRT), which pairs a specialist officer with a mental health professional to connect people with mental illness to services. BHRT successes and community demand led to City funding for two additional teams, for a total of five teams. (Pars. 88-90).

- **<u>Crisis Intervention (Section VI)</u>:**

    The City, through the Bureau of Emergency Communications (BOEC) and PPB, has implemented a crisis intervention approach that folds in community partners, provides enhanced training for a team of volunteer patrol officers, dispatches those officers directly to 911 calls that involve a mental health crisis and pose substantial risk of harm to self or others, collects reliable data to refine and improve the approach, and proactively seeks to connect people with mental illness and repeat police contacts to services in lieu of incarceration. (Pars. 91, 99, 105, 106, 112, 113-115). As a result, in this reporting period, PPB's Directive 850.20 – Police Response to Mental Health Crisis received final approval. The policy emphasizes de-escalation and disengagement, when appropriate, as well as connecting people with services such as transport by ambulance to a hospital as opposed to transport by police cruiser to jail. (Par. 99).

    PPB's Behavioral Health Unit (BHU) continues to collaborate regularly with an advisory committee comprised of community members, service providers, and advocacy groups. (Pars. 91-96). The BHU also continues to oversee the work of the patrol-based ECIT officers, and proactive teams that follow up with people having frequent law enforcement contacts who need mental health and/or addiction services (SCT and BHRT). (Pars. 99, 101, 106-112). BHU officers have demonstrably improved the service PPB provides to individuals in crisis or with an apparent mental illness. (Par. 104). Significantly, the overall rate of force being used against these individuals remains down. Over the six-month period from April 1 to September 30, 2018, PPB reports 28 use-of-force cases among 13,559 service encounters involving a mental health component. (Par. 99). Likewise, BHUAC reports describe many lives saved by the effective response of ECIT officers.

- **Employee Information System (EIS) (Section VII):**

    The City effectively trained supervisors on the required and beneficial use of EIS. Supervisors now routinely perform required reviews of their subordinates' EIS records. (Par. 116). PPB now effectively uses force audit data to identify groups or supervisors that are outliers in the use of force as compared with their peers. (Par. 117).

- **Accountability (Section VIII):**

    PPB and the Independent Police Review (IPR) implemented long-planned changes to the accountability systems and made progress addressing the timeliness of administrative investigations. The City completed extensive joint training of IPR and Internal Affairs investigators to support consistent investigative standards, even when IPR conducts independent investigations. (Par. 128). The City sought on-scene public safety statements when necessary and had witness officers provide on-scene walk-throughs. (Pars. 124, 126, 127). PPB has issued Communication Restriction Orders when required. (Par. 125). Our review of a sample of investigative files showed that a preponderance of the evidence supports PPB's and IPR's sustained, exonerated, or unfounded findings. (Sec. VIII, Pars. 128, 169).

    The City improved the timeliness of many of its administrative investigations, but struggled with the timeliness of some. PPB and IPR are taking steps to address this longstanding issue. In order to reach substantial compliance, the City should develop capacity to address new complaints more expeditiously. (Pars, 121, 123). Also, the City should produce completed investigative reports showing implementation of recent changes to investigations in which the Bureau of Human Resources participates. (Pars. 121, 123, 130).

- **Community Engagement (Section IX):**

    The City's new proposed framework for community engagement—PCCEP—has operated for six months. (Pars. 141, 151). The City has invested substantial resources to support the PCCEP's mission. (Pars. 144, 146, 151, 152). The PCCEP has established a positive, productive relationship with the Mayor's Office, PPB, and other relevant City actors. (Pars. 142, 145). PCCEP members have demonstrated their ability to engage with the community and do the work contemplated by the PCCEP Plan and the Settlement Agreement. (Pars. 142, 146). However, more work remains.

    The PCCEP must continue to engage Portland's communities, guide the PPB's Community Engagement Outreach Plan, and independently assess implementation of the Settlement Agreement. (Pars. 142, 146). In particular, the City must ensure the PCCEP has a functional replacement process and adequate pool of alternate candidates so that the PCCEP remains viable going forward. (Par. 143). More broadly, the City must continue to support the PCCEP's efforts to improve PPB-community relations. (Pars. 141, 142, 144, 145, 151).

*       *       *

Our Report uses the following color-coded compliance status levels to indicate our current assessment of PPB's progress in complying with each provision of the Settlement Agreement. Like last year, we added some notations to provide additional information to compliance status levels that did not change. The color coding is as follows:

- Green: substantial compliance with an ongoing obligation. This level indicates that the City has implemented the specific provision as required by the Settlement Agreement, and that the City has an ongoing obligation to continue such action to achieve sustained substantial compliance.

- Yellow: partial compliance with an ongoing obligation. This level indicates that while

there has been progress made with implementation, specific areas need further attention in order to reach substantial compliance.

- Red: non-compliance. This level indicates that we have recognized barriers to achieving implementation of the provision that must be addressed to achieve substantial compliance.

At the interim status conference scheduled for June 6, 2019, we anticipate presenting the Court with an overview of our Report and answering any questions the Court may have.

DATED this 3rd day of May, 2019.

Respectfully submitted,

| BILLY J. WILLIAMS<br>United States Attorney<br>District of Oregon<br><br>RENATA GOWIE<br>Civil Division Chief<br><br>*/s/ Jared D. Hager*<br>JARED D. HAGER<br>Assistant U.S. Attorney | ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division<br><br>STEVEN H. ROSENBAUM<br>Special Litigation Section Chief<br><br>*/s/ Laura L. Cowall*<br>LAURA L. COWALL<br>Special Counsel<br><br>*/s/ R. Jonas Geissler*<br>R. JONAS GEISSLER<br>Trial Attorney<br><br>*/s/ Kerry K. Dean*<br>KERRY K. DEAN<br>Trial Attorney |
|---|---|