**J. ASHLEE ALBIES, OSB #051846**
E-mail: ashlee@albiesstark.com
ALBIES & STARK, LLC
210 SW Morrison, Ste. 400
Portland, Oregon  97204
Phone:   (503) 308.4770
Fax:       (503) 427.9292

**KRISTEN CHAMBERS, OSB#130882**
E-mail: kac@wysekadish.com
WYSE KADISH LLP
900 S.W. 5th Avenue, Suite 2000
Portland, OR 97204
Phone:   (503) 228.8848
Fax:       (503) 273.9135

*Of Attorneys for Amicus AMA Coalition for Justice and Police Reform*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:12-cv-02265-SI |
| Plaintiff, | **JUNE 2019 STATUS REPORT OF THE** |
| v. | **ALBINA MINISTERIAL ALLIANCE** |
| | **FOR JUSTICE AND POLICE REFORM** |
| **CITY OF PORTLAND** | |
| Defendant. | |

The Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA Coalition") hereby submits its status report for the upcoming June 6, 2019 Status Conference, at which the Court will evaluate the proposed amendments to the Settlement Agreement regarding community engagement and oversight and receive an update on the implementation of the

Settlement Agreement.

I.    **Amendments to the Settlement Agreement**

    a.    <u>Background</u>

For over two years, the City was in non-compliance with the Settlement Agreement in the area of community oversight. In January of 2017, the City allowed the original oversight body created by the Settlement Agreement, the Community Oversight Advisory Board ("COAB"), to expire. In the year and a half that followed, the City drafted an alternative plan, the Portland Committee on Community Engaged Policing ("PCCEP"), distinctly different from the original COAB. The City invited the AMA Coalition to participate in this process.

The primary distinctions between the two bodies were noted by the AMA Coalition in its motion for a fairness hearing and are briefly reiterated here. *See* Dkt. 159. First, the details of the COAB, including its powers, duties, compositions, and selection process, were part of the Settlement Agreement, requiring Court entry of any modifications, *see* Settlement Agreement, Dkt. 157, Ex. 2, Para. 184 (prior 194), whereas most PCCEP details are in a document separate from the Settlement Agreement and thus can be modified without entry into the Court record. Second, the COAB was a board selected by leaders from different segments of Portland's community and all five City Commissioners, whereas the PCCEP members have been selected entirely by the Mayor. Third, the COAB was empowered to oversee the implementation of the Settlement Agreement as a major part of its charge and in fact that was its main purpose, whereas the PCCEP is primarily focused on improving the Portland Police Bureau's engagement with the community. *Id.*

At the April 19, 2018, Fairness Hearing regarding the Amended Settlement Agreement and Hearing on the parties' Joint Stipulated Motion to Enter Amended Settlement Agreement,

the court heard testimony and community input on the proposed changes to the Agreement. On May 5, 2018, the court approved most of the Amendments to the Settlement Agreement, and Conditionally Approved changes to Sections IX and X, related to community oversight and engagement. Dkt. 171.

On October 4, 2018, the court revisited the community oversight and engagement provisions.  At that time, the PCCEP had been approved by City Council and the Mayor had appointed and confirmed 13 members and hired two facilitators.  Dkt. 183, p.2 & Ex. 1.  The City had started providing training to the PCCEP and anticipated that the committee would start meeting in November 2018.  *Id*., pp. 19-20.  The AMA Coalition presented a number of concerns to the court prior to the hearing, including provisions that would exclude the public from attending and participating in PCCEP meetings, lack of timely notice for adequate community involvement, lack of community outreach and education, lack of facilitator continuity, and a lack of a process for replacing alternates. Dkt. 190.  At the hearing, the Mental Health Alliance testified about concerns regarding loss of institutional knowledge, overloading PCCEP members, and inadequate engagement for people with mental health conditions.  Oct. 4, 2018 Hearing Trans. pp. 63-70.  The court asked the parties how we will know if the PCCEP is working.  *Id.* at pp. 47-48.  The AMA Coalition responded that the success of the PCCEP would need to be measured in both  qualitative and quantitative terms—including the number and frequency of meetings, number of engagements in the community, adequate notice to the community, process of feedback, great enhancement of communications with and accessibility to the community, openness to the public, community trust of police, timely and adequate investigations of police misconduct, decreased police violence, transparency, and improved community perception of police.  *Id*. at pp. 48-51.  The Mental Health Alliance added that a good measure of the success

of the PCCEP is how it is working for people with mental illness. *Id*. at p.70. Both amici asked that the court delay its final approval of the PCCEP for at least six months to see whether the committee could function effectively under the proposed PCCEP plan. The court agreed. *Id*. at pp. 124-125.

Since the October 4th hearing, the AMA Coalition has developed the following quantitative and qualitative measurements for the PCCEP:

*Quantitative:*
1. Meetings open to the public
2. Number of PCCEP and community members in attendance at each meeting
3. Testimony taken before votes
4. Forums for public
5. Policy initiatives
6. Developing metrics to measure possible bias in police stops
7. Contact with a diversity of community members
8. Internal training
9. Independent assessment of implementation of Settlement Agreement
10. Response to COCL reports including at quarterly town halls
11. Diversified locations—meetings in different communities
12. Use of diversified cultures
13. Meet with community groups listed in PCCEP founding documents, others
14. Ensure diversity in PCCEP membership
15. Maintain active list of trained alternates so quorum is always met
16. Announcements of meetings at least two weeks in advance to mass media, community media and community
17. Active Work of subcommittees
18. Engage all of City Council, not just the Mayor, on progress of PCCEP and PPB

*Qualitative:*
1. Change and transformation in the relationship between Portland Police and the community, in particular communities of color, houseless persons and persons with mental-illness or perceived mental-illness
2. Reduction of use of force and increase of de-escalation
3. Reduction of disproportionate policing of communities of color, houseless persons and other vulnerable communities
4. Use Stops data / force data / arrest data to measure progress
5. Transformation in the Portland Police culture of "us" against "them"
6. Surveys that are meaningfully inclusive of communities of color

7.  Engagement of the community reflected in meeting attendance/participation

b.  <u>AMA Coalition Concerns</u>

The AMA Coalition believes that the PCCEP plan must continue to move forward in hopes that it could be an effective community oversight body for the Portland Police Bureau.  To that end, the AMA Coalition has conceded on numerous issues and agreed to the eventual approval of the proposed Settlement Agreement Amendments.  *See* Dkt. 157.   The City has made some progress with the PCCEP including training, holding meetings, and replacing members.  In addition, most of the PCCEP members seem to be well-qualified and dedicated to making the committee a success.  However, the AMA Coalition still has serious concerns about the PCCEP.

First, there has not been sufficient continuity and participation of membership.  Since the last Status Conference, seven members have resigned and alternate members have been appointed.  While most of these individuals left the PCCEP for personal reasons, the high turnover has made it challenging for the committee to get any work done.  At the two PCCEP subcommittee meetings that the COCL attended, only the chairs showed up.  In addition, one of the facilitators left under tenuous circumstances, which created unrest and reduced the amount of helpful guidance for the PCCEP.

Second, the AMA Coalition is concerned about the lack of support and organization provided to the PCCEP.  The AMA Coalition has repeatedly emphasized the importance of providing sufficient staffing to the PCCEP in order to lessen the administrative burdens and support the committee.  The City has not yet hired a Program Director for the PCCEP, has taken down the COAB website and not provided much of the necessary information and historical documents on the PCCEP website, and has not provided enough support to the committee

members.

Third, the City has not performed adequate community outreach and engagement.  The AMA Coalition has long advocated for a staff person with community organizing skills.  The City's approach to advertising for the PCCEP meetings through social media and listserves is inadequate, as shown by the low attendance at PCCEP meetings.

Fourth, the AMA Coalition is concerned about a lack of work product arising from the PCCEP.  The PCCEP has produced a "quarterly report" which appears to be mostly administrative matters.  It is unclear who wrote this report or how it was generated, but it does not reflect the duties, responsibilities, and outcomes outlined in the PCCEP plan.  The PCCEP has not made any comments on Bureau policies in its six months of existence.

Fifth, the AMA Coalition continues to have concerns about the lack of advance notice and opportunity for community members to respond meaningfully to the City, including lack of adequate notice for community events and meetings, and the filing of over 300 pages of documents with the court just a few days before the status conference.

## II.    Implementation of the Settlement Agreement

The AMA Coalition is concerned about the lack of overall change to the Portland Police Bureau incidents of violence against people of color and people with mental illness since the inception of the Settlement Agreement.  There were seven deadly force incidents in just over three months in Portland from September 30, 2018 to January 6, 2019 at least three of which involved the deaths of people in mental health crisis.  The February OIR Group report on PPB deadly force showed deadly force against people in mental health crisis went up from 55% to 65% after the Settlement Agreement went into effect.

As the COCL has identified in its most recent quarterly report, the AMA Coalition

believes there is substantial additional work to be accomplished in the areas of Audit After
Action Reports, Audit Force Reports and the Chain of Command Review of those
reports, the kinds of training that are provided, the Crisis Intervention Team and BOEC's
triage of crisis calls, the180 day timeline for investigations, IA/IPR investigations, and
community engagement.  More specifically, the AMA Coalition is concerned that:

- Not enough IA/IPR investigations of use-of-force lead to sustained findings—20% of all
  allegations are "Sustained," but only 1.5% of Force allegations are Sustained;  11% of all
  allegations are "Unfounded" (the facts do not support the allegation), but 19% of Force
  allegations are Unfounded;

- With the Employee Information System, traumatic incident flags lead to intervention
  72% of the time, while force only leads to such supervisory action 34% of the time and
  complaints just 11% of the time; and

- IPR investigations continue to be hampered due to lack of ability to access all Bureau
  documents.

The AMA Coalition believes the City cannot be in substantial compliance with the
community engagement provisions because the PCCEP needs more time to do their work; the
City needs to hire staff; the community survey data, which the AMA Coalition has not been
able to locate, was only published after the PCCEP's May meeting even though it is to be used
to create the Outreach plan; the City needs to finalize metrics to measure success of outreach;
and the Bureau needs to present its annual reports.  More specifically, the AMA Coalition is
concerned because:

- The Bureau did not release its Annual report for 2017 until early 2019 and is waiting
  until the 2018 report is done to hold the community hearings that have been required by

the Agreement since 2014;

- The metrics described to determine good community outreach are for officers to (1) engage in an unbiased, respectful and helpful manner, (2) open conduits for two-way communication, (3) show up at meetings and events, and (4) report on their activities. At the April PCCEP meeting, community members made it clear the Bureau cannot engage in effective community engagement and outreach until some kind of truth and reconciliation occurs to address past and current harms to the community; and

- The PCCEP is not fully functioning (as described in Section I above), therefore the City cannot be in substantial compliance on community engagement.

For the reasons stated, the AMA Coalition believes the City should not be in "substantial compliance" with the categories mentioned above.

In conclusion, the AMA Coalition remains committed to bringing a community voice to this very important process. Consistent with the AMA Coalition's collaborative agreement with the DOJ and City, the AMA Coalition agrees to advocate for the implementation of the Settlement Agreement and PCCEP reforms that the AMA Coalition supports, and will oppose any attempts to weaken or dilute the Settlement Agreement and PCCEP reforms that it supports. The AMA Coalition strongly urges the Court not to rush through the Settlement Agreement, particularly when it comes to community oversight and engagement, and to allow more time for the City to demonstrate its plan will be effective.

DATED: June 4, 2019

Respectfully Submitted,

*/s/ J. Ashlee Albies*
J. Ashlee Albies, OSB # 051846
ashlee@albiesstark.com

*/s/ Kristen A. Chambers*
Kristen A. Chambers, OSB # 130882
kac@wysekadish.com