**Juan C. Chavez**, OSB #136428
Oregon Justice Resource Center
Email: jchavez@ojrc.info
PO Box 5748
Portland, OR 97208
Telephone: 503-944-2270 ext. 212
Facsimile: 971-275-1839

Attorney for *Amicus Curiae* Mental Health Alliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>Defendant. | Case No. 3:12-cv-02265-SI<br><br><br>JUNE 2019 STATUS REPORT FROM THE MENTAL HEALTH ALLIANCE |

COMES NOW, by and through their attorney, Juan C. Chavez, the Mental Health Alliance, *amicus curiae* in the above-captioned case, provide this brief to aid the Court in its assessment of the proposed amendments to the Settlement Agreement. This brief is supported by the Declarations of Counsel, and referenced exhibits. Based on our assessment of the present state of the settlement agreement, we respectfully ask that the Court defer entry of the PCCEP amendments until further time for review has elapsed. We request an additional six (6) months to see if PCCEP can sustain itself while still under the Court's periodic settlement supervision.

///

## Procedural History

On September 10, 2018, the Mental Health Alliance motioned this Court for recognition as an enhanced-*Amicus Curiae*. Dkt. 173. MHA cited their considerable combined knowledge and experience in providing services and advocacy for persons with mental illness or are presenting symptoms of mental illness. *Id.*

As MHA wrote in their original motion: "The Mental Health Alliance is comprised of Disability Rights Oregon, the Mental Health Association of Portland, and Cascadia Behavioral Healthcare. Collectively, they seek to advocate for the rights and dignity of persons with mental illness or disabilities and provide inspirational vision in these proceedings as the parties continue to implement the consent decree. Each of the members of the Mental Health Alliance has worked with every litigant party to this action on these issues in the past, and currently provides direct services to those impacted daily by the actions or omissions of the Portland Police Bureau." *Id.*

The Court granted MHA normal *amicus curiae* status, and we participated in the October 4, 2018 status conference. Dkt. 186. At this hearing, the Court conditionally approved the amendments to the Settlement Agreement regarding PCCEP, and set a hearing for June 6, 2019 to discuss its progress. Dkt. 192.

## October 4, 2018 Hearing

At issue at the October 4, 2018 were the conditionally approved amendments to the Settlement Agreement—particularly, the amendments added to bring the City back into compliance with the community oversight component of their agreement with the United States. The United States and City of Portland proposed amendment created the Portland Committee on

Community-Engaged Policing (PCCEP) to fill the gap left by the Community Oversight Advisory Board's (COAB) disbandment.

While the process of drafting, adopting, and filling PCCEP had been underway for some months prior to the October 4, 2018 hearing, PCCEP had yet to have its first meeting, and questions loomed as to whether it could fulfill its community oversight function. Crucially, in the intervening months since COAB's dissolution the City did not have a community-based apparatus for review of the Portland Police Bureau's progress, or regression, on the matters upon they were sued.

As MHA testified at the Status Hearing, more than just time had been lost, but valuable work product. MHA member Jason Renaud testified that "[u]nless the PCCEP members demand the review of the work and use it, the time spent by COAB members will be wasted, and we're -- worse, the work of the COCL, from 2014 until now, must also be reviewed by the PCCEP members and understood and incorporated into their future work." October 4, 2018 Test. 63:23–64:1-3. Dkt. 193.

MHA also noted that while the PCCEP amendment permitted more agility in changing its fundamental components without the need for Court-approved amendments, this also strayed from the key, animating ideal behind the United States' case against the City of Portland: to eliminate PPB's pattern and practice of unlawful use of force against persons with mental illness. October 4, 2018 Test. 69:12-14. To this point, MHA testified to the many open questions concerning PCCEP's prospective ability to provide meaningful oversight. *Id.*

The Court asked the parties to consider what quantitative and qualitative metrics the Court should consider in adjudging whether the PCCEP amendment should be adopted. To that

end, MHA has worked over the last eight months to work with PCCEP and evaluate its functionality. We are committed to building an equitable, safe, and just environment for Portlanders with mental illness—especially during contacts with the Portland Police Bureau when they are vulnerable and historically at-risk for harm. An effective and inclusive community-oversight body is crucial to this. For this reason, we ask that the Court not adopt the amendment until PCCEP has made further progress in community-engagement.

**Our Analysis**

1. The City Needs to Better Support PCCEP Before the Court Can Evaluate Its Efficacy

Members of MHA have attended PCCEP meetings since its inaugural meeting late-last Fall 2018. While the first meeting was facilitated and well-attended, subsequent meetings were not. PCCEP has struggled to maintain proper staffing—including but not limited to facilitators, administrative support, and trainers. After the October 4, 2018 hearing, PCCEP's trainer quit, leaving PCCEP members to wade through its work on its own. Because of this, it is our belief that PCCEP has become mired in its workload and cannot fulfill its community-oversight function. In this vacuum, significant advisement has come from the City and the United States to push PCCEP into a desired direction. Since both the United States and City of Portland are parties to this action, it is difficult to then believe that PCCEP reflects true, independent community-oversight over the settlement agreement.

PCCEP's work has been further frustrated by the unavailability of old work product by COAB and COCL. When our group inquired as to the location of COAB's work product, we were provided a link to a private internet archiving website, the Way Back Machine.[1]

In its first eight months of existence, PCCEP has had seven members resign. *Exh.* 1. These spots have been refilled, but at the Mayor's selection and without community input. Additionally, these new members have not had the same or as substantial of training as the first members of PCCEP, particularly on the contents and substance of the Parties' settlement agreement. PCCEP's subcommittees remain understaffed and without meaningful community participants.

Lastly, community participation has decreased since PCCEP's meeting. We believe that this is attributable to lack of effective outreach and communication.

Fundamentally, MHA cannot evaluate whether PCCEP has met any qualitative or quantitative metrics when it has not accomplished its first, central task of engaging the community. For this reason, we ask the Court to continue to not fully adopt the PCCEP amendment.

2. The City Is Not in Compliance with the Settlement Agreement

    A. Community Engagement and the BHUAC

Since the October Status Hearing, MHA has engaged the City regarding the Portland Police Bureau (PPB)'s Behavioral Health Unit Advisory Committee (BHUAC) non-compliance with the Oregon Public Meeting Law (OPML). The BHUAC does not allow members of the public attend its meetings. Meeting times, dates, and locations are not made public.

---

[1] The Way Back Machine link to the COAB/COCL material can be found here:
https://web.archive.org/web/20171207041351/http://www.cocl-coab.org/library/library-categories/mental-health-crisis-response-subcommittee%E2%80%94agendas-minutes-handouts

We argued in a letter to the City that these meetings must be public not only under OPML, but pursuant to the community-engagement provisions contained in the present Settlement Agreement. *Exh.* 2.

> There is significant community and City interest in improving PPB's community relationships. The community is a critical resource. Redefining and restructuring existing community input mechanisms to provide for independent oversight of the Agreement, while also enhancing PPB's current community outreach efforts will promote community confidence in PPB and facilitate police / community relationships necessary to promote public safety.

*Proposed Settlement Agreement*, § IX preamble.

With meaningful and thoughtful efforts to engage the public, we argue, and the City agreed to in its settlement with the United States, we can achieve PPB's mission to promote public safety.

The City Attorney's responded to the substance of our letter that covered the OPML, but not in regard to the Settlement Agreement. The City Attorney's office encouraged us to seek voluntary compliance with the OPML with the BHUAC members themselves. We were unsuccessful.

Because the City is not in compliance with this portion of the Settlement Agreement, we ask the Court to continue to monitor its implementation.

<u>B. The City has not complied with ¶ 88 of the Settlement Agreement</u>

As we raised in the Status Conference last October, there remains no appropriate venue for persons in a mental health crisis to receive treatment.

The settlement agreement reads as follows:

> "88. The United States expects that the local CCOs will establish, by mid-2013, one or more drop-off center(s) for first responders and public walk-in centers for individuals with addictions and/or behavioral health service needs. All such drop off/walk in centers

JUNE 2019 STATUS REPORT FROM THE MENTAL HEALTH ALLIANCE

>   should focus care plans on appropriate discharge and community
>   based treatment options, including assertive community treatment
>   teams, rather than unnecessary hospitalization."

To date, the Unity Behavioral Health Center continues to suffer from workplace and patient injuries. This is in part because of its dual role of being a Walk-In and Drop-Off center. Providing both of those services creates unnecessary risk to all who enter that facility, as patients in either of those circumstances require different kinds of care.

We are heartened that Multnomah County has at great expense attempted to remedy this issue through the purchase of a new facility. But the City cannot claim this as its own earned success. Without a meaningful commitment from the City regarding ¶ 88 of the Settlement Agreement, it cannot be truly in compliance.

C. No Reduction in Use of Lethal Force

The reason this lawsuit was initiated by the United States Department of Justice was to address the unlawful pattern and practice of use of force against persons suffering from mental illness. Since the Settlement Agreement's adoption, use of force against persons with mental illness has only increased. *Exh.* 4.

Since 2014, fourteen people have died as a result of PPB use of force. Fourteen others were shot at and/or wounded. Twenty-six out of twenty-eight were impaired by mental illness or addiction, or had a significant history of either. Twenty-five percent of these people were persons of color. Since the October Status Hearing alone, seven people were shot and killed by the Portland Police—three of whom were at the time in a mental health crisis.

This data had to be compiled through our own original research from police, medical examiner, and district attorney public records, media reports, testimony by and conversations with family members and friends of survivors of persons harmed by police, and from consultants

hired by the City of Portland. The lack of collectable, unified public data makes oversight of PPB's use of force difficult. Further complicating our efforts is that the manner in which data is collected has been changed several times in recent years, rendering collected data incomparable to current data.

Based on what we do know, it appears irrefutable that for a person with mental illness in the City of Portland coming into contact with its police force still carries too high of a risk of harm than should be tolerable either constitutionally or morally. Until the City can improve these statistics, we ask that the Court retain oversight of the Settlement Agreement's implementation.

DATED: June 5, 2019.

*/s/ Juan C. Chavez*
Juan C. Chavez, OSB #136428
*LEAD ATTORNEY*
