**Juan C. Chavez**, OSB #136428
Oregon Justice Resource Center
Email: jchavez@ojrc.info
PO Box 5748
Portland, OR 97208
Telephone: 503-944-2270 ext. 212
Facsimile: 971-275-1839

   Attorney for *Amicus Curiae* Mental Health Alliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>   Defendant. | Case No. 3:12-cv-02265-SI<br><br>DECLARATION OF JUAN C. CHAVEZ |

I, Juan C. Chavez, submit the following declaration:

I am the counsel of record for the Mental Health Alliance, and I make this declaration in support of the Mental Health Alliance's June 2019 Status Report for the purpose of identifying exhibits. My statements are true to the best of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

1.   **Exhibit 1** is a compilation of data created by Jason Renaud, member of the Mental Health Alliance, depicting the membership and composition of PCCEP.

JUNE 2019 STATUS REPORT FROM THE MENTAL HEALTH ALLIANCE
Page 1 of 2

2. **Exhibit 2** is a true and correct copy of a letter transmitted to the City of Portland by the Mental Health Alliance concerning the BHUAC.

3. **Exhibit 3** is a true and correct copy of the emailed response to the Mental Health Alliance by the City Attorney's office for the City of Portland.

4. **Exhibit 4** is a compilation of data created by Jason Renaud, member of the Mental Health Alliance, depicting use of force data.

**I hereby declare that above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

DATED: June 5, 2019.

*/s/ Juan C. Chavez*
Juan C. Chavez, OSB #136428
*LEAD ATTORNEY*

JUNE 2019 STATUS REPORT FROM THE MENTAL HEALTH ALLIANCE
Page 2 of 2

**PCPPEP Membership Tracking**
created by www.mentalhealthportland.org

updated 5/2019

*Alternate1 - selected by Wheeler 11 2018*
*Alternate2 - selected by Wheeler 4 2019*

**RED = RESIGNED**

| first | last | status | start | end | replaced? | committee | personal email | | self-ID'd |
|---|---|---|---|---|---|---|---|---|---|
| Yolanda | Clay | member | 11 2018 | 1 2019 | -- | -- | Yolanda.Clay@portlandoregon.gov | | yes |
| Lakayna | Drury | member | 11 2018 | | | steering, race | Lakayana.Drury@portlandoregon.gov | | no |
| LaKeesha | Dumas | member | 11 2018 | | | steering, race | LaKeesha.Dumas@portlandoregon.gov | | yes |
| Robert | Dye | member | 11 2018 | 5 2019 | -- | mental illness | Robert.Dye@portlandoregon.gov | | no |
| Sharon | Gary-Smith | member | 11 2018 | 4 2019 | -- | settlement | Sharon.Gary-Smith@portlandoregon.gov | | no |
| Aden | Hassan | member | 11 2018 | 4 2019 | -- | settlement | Aden.Hassan@portlandoregon.gov | | no |
| Andrew | Kalloch | member | 11 2018 | | | steering, settlement | Andrew.Kalloch@portlandoregon.gov | | no |
| Michelle | Lang | member | 11 2018 | | | steering, race | Michelle.Lang@portlandoregon.gov | | no |
| Patrick | Nolen | member | 11 2018 | | | mental illness | Patrick.Nolen@portlandoregon.gov | | yes |
| Sam | Sachs | member | 11 2018 | | | race | Sam.Sachs2@portlandoregon.gov | | no |
| Zachary | Thornhill | member | 11 2018 | 12 2018 | -- | -- | Zachary.Thornhill@portlandoregon.gov | | no |
| Kalonji | Williams | member | 11 2018 | 1 2019 | -- | -- | Kalonji.Williams@portlandoregon.gov | | no |
| Sebastian | Chevalier | member | 11 2018 | | | NA | Sebastian.Chevalier@portlandoregon.gov | | no |
| Yolanda | Salguiero | alternate1 | 12 2018 | | Thornhill | youth | NA | | no |
| Rachel | Benjamin | alternate1 | 1 2019 | 4 2019 | Clay | NA | NA | | no |
| Britt | Masback | alternate1 | 1 2019 | | Williams | NA | NA | | no |
| Steven | Trujillo | alternate1 | 5 2019 | | G-Smith? | NA | NA | | no |
| Vadim | Mozyrsky | alternate2 | 5 2019 | | Dye? | NA | NA | NA | |
| Marcia | Perez | alternate2 | 5 2019 | | Benjamin? | NA | NA | NA | |
| | | | | | | | | | |
| Taylor | Ford | alternate1 | NA | UNKN | | NA | NA | | no |
| Amy | Anderson | alternate2 | -- | | | NA | NA | NA | |
| Lucy | Keating | alternate2 | -- | | | NA | NA | NA | |
| Thabiti | Lewis | alternate2 | -- | | | NA | NA | NA | |
| Kevin | Neely | alternate2 | -- | | | NA | NA | NA | |
| Dvarrio | Rice | alternate2 | -- | | | NA | NA | NA | |
| DeEtte | Waleed | alternate2 | -- | | | NA | NA | NA | |
| Elliott | Young | alternate2 | -- | | | NA | NA | NA | |
| Amarien | Simmons | alternate1 | -- | | | NA | NA | | no |

**Steering Committee**

| | | | |
|---|---|---|---|
| Lakayna | Drury | co-chair | 11/2018 |
| LaKeesha | Dumas | co-chair | 11/2018 |
| Andrew | Kalloch | member | 11/2018 |
| Michelle | Lang | member | 11/2018 |

**Subcommittee for People with Mental Illness**

| | | | | |
|---|---|---|---|---|
| Timothy | Roessel | member | 2/2019 | |
| Dr. Stephanie | Maya Lopez | member | 2/2019 | |
| Javonnie | Shearn | member | 3/2019 | |
| Mark | Schorr | member | 2/2019 | |
| Patrick | Nolen | co-chair | 1/2019 | |
| Bob | Dye | co-chair | 1/2019 | 5/2019 |
| DeAndre | Kenyanjui | member | 3/2019 | |

**Youth Subcommittee**

| | | | |
|---|---|---|---|
| Yolanda | Salguiero | | 1/2019 |
| Rachel | Benjamin | | 1/2019  4/2019 |

**Race, Ethnicity and Other Subcommittee**

| | | |
|---|---|---|
| Lakayna | Drury | 1/2019 |
| LaKeesha | Dumas | 1/2019 |
| Michelle | Lang | 1/2019 |
| Sam | Sachs | 1/2019 |

**Settlement Agreement and Policy Committee**

| | | | |
|---|---|---|---|
| Sharon | Gary-Smith | | 1/2019  5/2019 |
| Aden | Hassan | | 1/2019  5/2019 |
| Andrew | Kalloch | | 1/2019 |

# Mental Health Alliance

Cascadia Behavioral Healthcare
Disability Rights Oregon
Mental Health Association of Portland
mentalhealthalliance.org

Mayor Ted Wheeler
Portland City Hall
1221 SW 4th Ave, Room 340
Portland, Oregon 97204

February 1, 2019

Dear Mayor Wheeler:

The Mental Health Alliance (MHA) requests you immediately take the necessary steps to ensure the Portland Police Bureau (PPB)'s Behavioral Health Unit Advisory Committee (BHUAC) comply with the Oregon Public Meeting Law (OPML).

The BHUAC does not allow members of the public attend its meetings. Meeting times, dates, and locations are not made public.

We request the times, dates and locations of all meetings of the BHUAC be posted on the BHUAC website ( https://www.portlandoregon.gov/police/68666 ) at least ten days prior to the meeting. We request the BHUAC follow all public meeting recommendations of the Oregon Attorney General's office.

The language and the spirit of Settlement Agreement (Agreement) between the City of Portland and the U.S. Department of Justice highlights the importance of community engagement with the PPB. For example, the Agreement set up a specific mechanism for the police and the community to interact, or the Community Oversight Advisory Board (COAB).

In the Agreement's section regarding the COAB, there is general aspirational language regarding community engagement, for example:

> *There is significant community and City interest in improving PPB's community relationships. The community is a critical resource. Redefining and restructuring existing community input mechanisms to provide for independent oversight of the Agreement, while also enhancing PPB's current community outreach efforts will promote community confidence in PPB and facilitate police / community relationships necessary to promote public safety[1].*

---

[1] Agreement, page 50.

As you are aware, the COAB and the BHUAC were instituted after the U.S. Department of Justice made a finding the Portland Police Bureau (PPB) had used an unconstitutional amount of force on people with or perceived with mental illness. The BHUAC makes recommendations for the training and procedures of PPB officers who work with people who have or are perceived to have mental illness.

MHA believes meetings of the BHUAC should allow community engagement because this comports with Oregon's Public Meeting Law (OPML). The plain meaning of the OPML as well as the spirit of the OPML and the Agreement[2] necessitate the BHUAC allow community engagement at its meetings . Given the BHUAC's role and function, it need comply with the OPML.

**The BHUAC is Subject to the Oregon Public Meeting Law (OPML).**

According to the OPML, "[a]ll meetings of the governing body of a public body shall be open to the public."  ORS 192.630(1). The statute defines "public body" as "the state, any regional council, county, city or district, or any municipal or public corporation, or any board, department, commission, council, bureau, committee or subcommittee or advisory group or any other agency thereof."  ORS 192.610(4). A "governing body" is defined as "the members of any public body which consists of two or more members, with the authority to make decisions for *or recommendations to a public body on policy or administration."*  ORS 192.610(3).

The Public Meetings Law applies to all meetings of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter. ORS 192.610 (5), 192.630(1).  Enclosed is a flowchart of this same information taken from the Oregon Attorney General's Public Records and Meetings Manual.

We believe the BHUAC falls within the OPML's definition of a governing body of a public body. This committee is tasked with making recommendations on policies, procedures, and training to the Portland Police Bureau's Behavioral Health Unit. The Portland Police Bureau falls within the statute's definition of "public body." As an Advisory Committee that deliberates to determine policy recommendations, the BHUAC meets the Attorney General's above test for advisory committees as a governing body. Consequently, we believe BHUAC meetings are subject to the OPML.

**What Does the OPML Require?**

The OPML contains several requirements to ensure the governing body of a public body holds its meetings in a sufficiently public manner. Bodies subject to the OPML must provide "public notice, reasonably calculated to give actual notice to interested persons" of meeting times and locations, including "a list of the principal subjects anticipated to be considered at the meeting . . .."  ORS 192.640(1). The Oregon Attorney General's

---

[2] DRO is a Member of the BHUAC and has been since its inception.  DRO has unsuccessfully advocated for the BHUAC comporting with the OPML.  This has not caused any change in the BHUAC's procedures –aside from its successful advocacy to get the Agenda and Minutes posted.

office recommends certain methods of public notice, including press releases, mailing lists, and notice boards.

There are certain exceptions to the OPML's requirements of publicity. Bodies subject to the OPML are allowed to enter an executive session for a limited number of purposes, and members of the public may be excluded from executive sessions. Enclosed is ORS 192.660, which contains the entire statutory discussion of executive session procedure, including the list of topics are allowed to be considered in an executive session. OPML record keeping and written minutes' requirements may vary based on the topic of the executive session. The specifics of these variations are contained in ORS 192.650(2).

Given this committee's meetings fall within the OPML's definition of meetings that must be held open to the public, the BHUAC should take steps to come into compliance with the OPML. Such steps include publicizing the time, location, and proposed agenda of this committee's meetings in advance of its meetings.

The committee meetings should be held open to the public. Members of the public should be invited to attend and observe BHUAC meetings, but they would not be guaranteed the right to vote or participate in BHUAC meetings. The enclosed Public Meetings Checklist from the Oregon Attorney General may prove helpful in ensuring compliance with the OPML's requirements.

**What are the Consequences of Noncompliance?**

A body subject to the OPML does not comply with the OPML may be party to enforcement proceedings. Any person affected by a decision made by the body has standing to bring a lawsuit against the body for violating the OPML. ORS 192.680. In the presence of "intentional disregard of the law or willful misconduct," the body's decision will be voided and members of the body may additionally be jointly and severally liable for attorney's fees. ORS 192.680(3) and ORS 192.680(4).

Disability Rights Oregon (DRO) has been a Member of the BHUAC since its inception. Cascadia Behavioral Healthcare is also a longtime member of the BHUAC. DRO has raised this concern the BHUAC should come into compliance with the OPML on several occasions, including one when the City Attorney attended the BHUAC meeting to discuss. DRO's understanding of the City Attorney's concern was the BHUAC did not quite come under the OPML. Without conceding this is the case, the spirit of the Agreement and of the OPML clearly favor community engagement and this should be required. Given the BHUAC's advisory role to the Portland Police Bureau, we believe the BHUAC should be required to come into compliance with the OPML. We hope you carefully consider this information.

Sincerely,


Juan Chavez, on behalf of the Mental Health Alliance

*Enclosures*

CC:

Chief Danielle Outlaw
Judge Michael Simon
Christian Wheelwright, PPB BHU
Tracy Reeve, City Attorney
Jonas Geissler, DOJ
Jared Hager, DOJ
Ashley Albies, AMAC
Kristin Chambers, AMAC
Janie Gullickson, BHUAC Chair

K-2                                                              PUBLIC MEETINGS

**GUIDE TO BODIES SUBJECT TO PUBLIC MEETINGS LAW**

This is a simplified guide to understanding when the meetings of a particular body are subject to the Public Meetings Law. For a discussion of the various elements, refer to the text of this manual.



Source: ELLEN ROSENBLUM, ATTORNEY GENERAL'S PUBLIC RECORDS AND MEETINGS MANUAL K-2 (State of Oregon Department of Justice, 2014).

## PUBLIC MEETINGS CHECKLIST

The Public Meetings Law applies to all meetings of a quorum of a governing body of a public body for which a quorum is required to make a decision or to deliberate toward a decision on any matter. This checklist is intended to assist governing bodies in complying with the provisions of this law; however, you should consult the appropriate section(s) of this manual for a complete description of the law's requirements.

- ☐ OPEN TO THE PUBLIC. Unless an executive session is authorized by statute, the meeting must be open to the public.
- ☐ NOTICE. The governing body must notify the public of the time and place of the meeting, as well as the principal subject to be discussed. Notice should be sent to:
- ☐ News media;
- ☐ Mailing lists; and
- ☐ Other interested persons.

The notice for a regular meeting must be reasonably calculated to give "actual" notice of the meeting's time and place. Special meetings require at least 24-hours' notice. Emergency meetings may be called on less than 24-hours' notice, but the minutes must describe the emergency justifying less than 24-hours' notice.

- ☐ SPACE AND LOCATION
- ☐ Space. The governing body should consider the probable public attendance and should meet where there is sufficient room for that expected attendance.
- ☐ Geographic location. Meetings must be held within the geographic boundaries over which the public body has jurisdiction, at its administrative headquarters or at "the other nearest practical location."
- ☐ Nondiscriminatory site. The governing body may not meet at a place where discrimination on the basis of race, color, creed, sex, sexual orientation, national origin, age or disability is practiced.
- ☐ Smoking is prohibited.
- ☐ ACCESSIBILITY TO PERSONS WITH DISABILITIES
- ☐ Accessibility. Meetings must be held in places accessible to

- individuals with mobility and other impairments.
- ☐ Interpreters. The governing body must make a good faith effort to provide an interpreter for hearing-impaired persons.
- ☐ Americans with Disabilities Act (ADA). The governing body should familiarize itself with the ADA, which may impose requirements beyond state law.
- ☐ VOTING. All official actions by governing bodies must be taken by public vote. Secret ballots are prohibited.
- ☐ MINUTES and RECORDKEEPING. Written minutes or a sound, video or digital recording must be taken at all meetings, including executive sessions. Minutes or another recording must include at least the following:
- ☐ Members present;
- ☐ Motions, proposals, resolutions, orders, ordinances and measures proposed and their disposition;
- ☐ Results of all votes and, except for bodies with more than 25 members unless requested by a member, the vote of each member by name;
- ☐ The substance of any discussion on any matter; and
- ☐ A reference to any document discussed at the meeting. (Reference to a document exempt from disclosure under the Public Records Law does not affect its exempt status.)

The minutes or alternative recording must be available to the public within a "reasonable time after the meeting."

For executive sessions, see separate checklist on p. K-6.

Source: ELLEN ROSENBLUM, ATTORNEY GENERAL'S PUBLIC RECORDS AND MEETINGS MANUAL K-3 (State of Oregon Department of Justice, 2014).

O.R.S. § 192.660

**192.660. Executive sessions; procedure**

(1) ORS 192.610 to 192.690 do not prevent the governing body of a public body from holding executive session during a regular, special or emergency meeting, after the presiding officer has identified the authorization under ORS 192.610 to 192.690 for holding the executive session.
(2) The governing body of a public body may hold an executive session:
(a) To consider the employment of a public officer, employee, staff member or individual agent.
(b) To consider the dismissal or disciplining of, or to hear complaints or charges brought against, a public officer, employee, staff member or individual agent who does not request an open hearing.
(c) To consider matters pertaining to the function of the medical staff of a public hospital licensed pursuant to ORS 441.015 to 441.063 including, but not limited to, all clinical committees, executive, credentials, utilization review, peer review committees and all other matters relating to medical competency in the hospital.
(d) To conduct deliberations with persons designated by the governing body to carry on labor negotiations.
(e) To conduct deliberations with persons designated by the governing body to negotiate real property transactions.
(f) To consider information or records that are exempt by law from public inspection.
(g) To consider preliminary negotiations involving matters of trade or commerce in which the governing body is in competition with governing bodies in other states or nations.
(h) To consult with counsel concerning the legal rights and duties of a public body with regard to current litigation or litigation likely to be filed.
(i) To review and evaluate the employment-related performance of the chief executive officer of any public body, a public officer, employee or staff member who does not request an open hearing.
(j) To carry on negotiations under ORS chapter 293 with private persons or businesses regarding proposed acquisition, exchange or liquidation of public investments.
(k) If the governing body is a health professional regulatory board, to consider information obtained as part of an investigation of licensee or applicant conduct.
(L) If the governing body is the State Landscape Architect Board, or an advisory committee to the board, to consider information obtained as part of an investigation of registrant or applicant conduct.
(m) To discuss information about review or approval of programs relating to the security of any of the following:
(A) A nuclear-powered thermal power plant or nuclear installation.
(B) Transportation of radioactive material derived from or destined for a nuclear-fueled thermal power plant or nuclear installation.
(C) Generation, storage or conveyance of:
(i) Electricity;
(ii) Gas in liquefied or gaseous form;

(iii) Hazardous substances as defined in ORS 453.005 (7)(a), (b) and (d);
(iv) Petroleum products;
(v) Sewage; or
(vi) Water.
(D) Telecommunication systems, including cellular, wireless or radio systems.
(E) Data transmissions by whatever means provided.
(3) Labor negotiations shall be conducted in open meetings unless negotiators for both sides request that negotiations be conducted in executive session. Labor negotiations conducted in executive session are not subject to the notification requirements of ORS 192.640.
(4) Representatives of the news media shall be allowed to attend executive sessions other than those held under subsection (2)(d) of this section relating to labor negotiations or executive session held pursuant to ORS 332.061 (2) but the governing body may require that specified information be undisclosed.
(5) When a governing body convenes an executive session under subsection (2)(h) of this section relating to conferring with counsel on current litigation or litigation likely to be filed, the governing body shall bar any member of the news media from attending the executive session if the member of the news media is a party to the litigation or is an employee, agent or contractor of a news media organization that is a party to the litigation.
(6) No executive session may be held for the purpose of taking any final action or making any final decision.
(7) The exception granted by subsection (2)(a) of this section does not apply to:
(a) The filling of a vacancy in an elective office.
(b) The filling of a vacancy on any public committee, commission or other advisory group.
(c) The consideration of general employment policies.
(d) The employment of the chief executive officer, other public officers, employees and staff members of a public body unless:
(A) The public body has advertised the vacancy;
(B) The public body has adopted regular hiring procedures;
(C) In the case of an officer, the public has had the opportunity to comment on the employment of the officer; and
(D) In the case of a chief executive officer, the governing body has adopted hiring standards, criteria and policy directives in meetings open to the public in which the public has had the opportunity to comment on the standards, criteria and policy directives.
(8) A governing body may not use an executive session for purposes of evaluating a chief executive officer or other officer, employee or staff member to conduct a general evaluation of an agency goal, objective or operation or any directive to personnel concerning agency goals, objectives, operations or programs.
(9) Notwithstanding subsections (2) and (6) of this section and ORS 192.650:
(a) ORS 676.175 governs the public disclosure of minutes, transcripts or recordings relating to the substance and disposition of licensee or applicant conduct investigated by a health professional regulatory board.

(b) ORS 671.338 governs the public disclosure of minutes, transcripts or recordings relating to the substance and disposition of registrant or applicant conduct investigated by the State Landscape Architect Board or an advisory committee to the board.

Or. Rev. Stat. Ann. § 192.660 (West)

| | |
|---|---|
| **Subject:** | RE: Open Meetings at BHUAC |
| **Date:** | Tuesday, February 26, 2019 at 11:31:01 AM Pacific Standard Time |
| **From:** | Reeve, Tracy |
| **To:** | Juan Chavez, Wheeler, Mayor |
| **CC:** | Outlaw, Danielle, Wheelwright, Christian, Hager, Jared, ashlee@albiesstark.com, Kristen Chambers, jgullickson@mhaoforegon.org, Anil Karia, Buckley, Mary Claire, Grant, Nicole, Nelson, Berk |

Dear Mr. Chavez,

Thank you for your email and letter. The City continues to believe that the Behavioral Health Unit Advisory Committee (BHUAC) is not a governing body of a public body and is not legally mandated to comply with the open meetings provisions of the Oregon Public Meetings Law. The BHUAC advises the Portland Police Bureau, through the BHU Lieutenant, of its recommendations. The committee is not appointed by and does not report to the Portland City Council, nor do its recommendations require Council action or approval for implementation. Rather, they may be implemented by the Portland Police Bureau under the direction of the BHU Lieutenant and ultimately the Chief of Police. Please see Oregon Attorney General's 2014 Public Records and Meetings Manual, Public Meetings Section II.B.1.b. at pp. 133-134 (noting that an advisory body that reports and makes recommendations to an individual official, such as the individual head of a department, is not ordinarily a governing body subject to the Public Meetings Law, unless the individual official lacks authority to act on the advisory group's recommendations and must pass those recommendations on unchanged to a public body). Here, the relevant police officials (BHU Lieutenant and Chief) do have authority to act on the BHUAC's recommendations -- they are not passed on unchanged to the City Council or any other public body.

Of course, the BHUAC is not precluded from adhering to the processes required by the Public Meetings Law should it choose to do so. My understanding is that the BHUAC has considered this matter, and has determined that its current processes and structure are effective for the conduct of its business, but your clients who participate on the BHUAC can certainly continue to advocate for a change in this position.

Again, thank you for your email and for your clients' continued engagement in these important issues.

Very truly yours,

**TRACY REEVE | City Attorney** (She/Her)
**PORTLAND OFFICE OF THE CITY ATTORNEY**
1221 SW Fourth Avenue, Room 430
Portland OR 97204
Voice: 503-823-4047 | Fax: 503-823-3089
Tracy.Reeve@portlandoregon.gov

*Equal Access Notice:* The City of Portland complies with all non-discrimination and Civil Rights laws including The Civil Rights Act Title VI and ADA Title II. To help ensure equal access to City programs, services and activities, the City of Portland will reasonably modify policies or procedures and provide auxiliary aids or services to persons with disabilities. Please call (503) 823-4047, TTY 503-823-6868 or Oregon Relay Service: 711 with such requests, or click here.
*Portland City Attorney Confidentiality Notice:* This message may contain confidential or legally privileged information belonging to the sender. If you have received this message by mistake, please immediately notify the sender, delete the original message, and destroy all copies.

Exhibit 3
Page 2

**From:** Juan Chavez <jchavez@ojrc.info>
**Sent:** Wednesday, February 13, 2019 11:42 AM
**To:** Wheeler, Mayor <MayorWheeler@portlandoregon.gov>
**Cc:** Outlaw, Danielle <Danielle.Outlaw@portlandoregon.gov>; Wheelwright, Christian <Christian.Wheelwright@portlandoregon.gov>; Reeve, Tracy <Tracy.Reeve@portlandoregon.gov>; Hager, Jared <jared.hager@usdoj.gov>; ashlee@albiesstark.com; Kristen Chambers <kac@wysekadish.com>; jgullickson@mhaoforegon.org; Anil Karia <anil@pslglawyers.com>
**Subject:** Open Meetings at BHUAC

 The City's email systems have identified this email as potentially suspicious. Please click responsibly and be cautious if asked to provide sensitive information.

Dear Mayor Wheeler,

On behalf of the Mental Health Alliance, amicus curiae in the case *U.S. v. City of Portland*, I am writing to you concerning the Portland Police Bureau's Behavioral Health Unit Advisory Committee. Attached, please find a letter detailing our request to make BHUAC meetings open and accessible to the public, as required by Oregon law and in the spirit of the *U.S. v. City of Portland* settlement agreement. As an *amicus*, we look forward to working with you on this issue, and please reach out to us to discuss the matter.

Sincerely,
Juan Chavez

--

Juan C. Chavez
PO Box 5248
Portland OR  97208
Tel: 503-944-2270 ext. 212
Fax: 971-275-1839

Pronouns: he/him/his

NOTICE: This email message and any attachment(s) is/are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**Portland Police training coincides with increase in lethal force**

|  |  | Year | # killed | impaired | Avg to Date |
|---|---|---|---|---|---|
|  |  | 1983 | 1 | 0 |  |
|  |  | 1984 | 0 | 0 |  |
|  |  | 1985 | 3 | 1 |  |
|  |  | 1986 | 1 | 1 |  |
|  |  | 1987 | 3 | 2 |  |
|  |  | 1988 | 2 | 0 |  |
|  |  | 1989 | 0 | 0 |  |
|  |  | 1990 | 1 | 1 |  |
|  |  | 1991 | 4 | 2 |  |
|  |  | 1992 | 6 | 4 |  |
|  |  | 1993 | 2 | 2 |  |
|  |  | 1994 | 4 | 3 | 59% |
| CIT BEGINS |  | 1995 | 0 | 0 |  |
|  |  | 1996 | 3 | 1 |  |
|  |  | 1997 | 2 | 1 |  |
|  |  | 1998 | 5 | 4 |  |
|  |  | 1999 | 3 | 3 |  |
|  |  | 2000 | 5 | 3 |  |
|  |  | 2001 | 3 | 3 |  |
|  |  | 2002 | 2 | 2 |  |
|  |  | 2003 | 3 | 3 |  |
|  |  | 2004 | 4 | 1 |  |
|  |  | 2005 | 4 | 3 |  |
|  |  | 2006 | 5 | 3 | 67% |
| CIT FOR ALL |  | 2007 | 2 | 1 |  |
|  |  | 2008 | 2 | 2 |  |
|  |  | 2009 | 0 | 0 |  |
|  |  | 2010 | 5 | 5 |  |
|  |  | 2011 | 2 | 2 |  |
|  |  | 2012 | 4 | 3 |  |
|  |  | 2013 | 2 | 2 | 88% |
| DOJ BEGINS |  | 2014 | 2 | 2 |  |
|  |  | 2015 | 4 | 3 |  |
|  |  | 2016 | 1 | 1 |  |
|  |  | 2017 | 2 | 2 |  |
|  |  | 2018 | 5 | 5 |  |
|  |  | 2019 | 2 | 2 | 94% |
| Exhibit 4 |  |  | **99** | **73** | **74%** |