**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
**RENATA GOWIE, OSB #175273**
Civil Division Chief
**JARED D. HAGER, WSB #38961**
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902
Phone: 503.727.1120
Email: jared.hager@usdoj.gov

**ERIC S. DREIBAND**
Assistant Attorney General
Civil Rights Division
**STEVEN H. ROSENBAUM**
Special Litigation Section Chief
**LAURA L. COWALL**
Deputy Chief
**R. JONAS GEISSLER**
**KERRY K. DEAN**
Trial Attorneys
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Phone: 202.514.6255
Fax:    202.514.4883
Attorneys for Plaintiff, United States

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:12-cv-02265-SI |
| Plaintiff, | |
| v. | **PLAINTIFF'S NOTICE OF INTERIM COMPLIANCE ASSESSMENT REPORT** |
| **THE CITY OF PORTLAND,** | |
| Defendant. | |

Plaintiff United States of America submits this Interim Compliance Assessment Report in advance of the Interim Status Conference the Court scheduled for February 25, 2020, at 9:00 a.m. in Portland, Oregon. This Report covers the period of April 12, 2019, through January 10, 2020,[1] and addresses only two of the Agreement's seven substantive sections—Accountability (Section VIII) and Community Engagement and Creation of Portland Committee on Community Engaged Policing (PCCEP) (Section IX). These are the only two sections of the Agreement with components the United States had not yet found in substantial compliance as of our last Periodic Compliance Assessment Report, ECF 195. As detailed in this Report, the United States now finds that the City has achieved substantial compliance with all components of these two sections as of January 10, 2020.

Moreover, as detailed in our last Periodic Compliance Assessment Report, ECF 195, the United States previously found that the City has achieved substantial compliance with the other five substantive sections of the Agreement—Use of Force (Section III); Training (Section IV); Community-Based Mental Health Services (Section V); Crisis Intervention (Section VI); and Employee Information System (EIS) (Section VII). We have no cause to disagree with the Compliance Officer's subsequent assessment that the City remains in substantial compliance with these sections. *See* ECF 211, Periodic Compliance Assessment Report. The United States anticipates filing its next complete periodic compliance assessment report in advance of the next periodic status conference.

---

[1] Our most recent compliance assessment report evaluated compliance between August 30, 2017 and April 11, 2019. *See* ECF 195-1. The date of the last item we considered in finding substantial compliance with Section VIII is January 10, 2020. *See* Assessment of Paragraph 128 (citing IPR SOP, revised Jan. 10, 2020).

Pursuant to the Agreement, the City must maintain substantial compliance with all components of all seven sections for one year before the Agreement may be terminated. *See* ECF 171, Am. Settlement Agreement, Par. 175. If the City successfully remains in substantial compliance with the Agreement's terms through January 10, 2021, the United States anticipates the parties would jointly ask the Court to terminate the Agreement thereafter.

Our executive summary of this Report, by topic, is as follows:

**Accountability (Section VIII):**

The City now has achieved substantial compliance with the Accountability Section of the Agreement, Section VIII. The City is complying substantially with the 180-day deadline for completion of accountability investigations conducted by PPB and the Office of Independent Police Review (IPR). (Pars. 121, 123). The City also has completed previously delayed investigations involving the Bureau of Human Resources, enabling it to achieve substantial compliance with anti-retaliation requirements of Paragraph 130. These were the final Settlement Agreement provisions that the City needed to meet to bring the accountability system into substantial compliance.

In addition to assessing the timeliness of accountability investigations, we also assessed their quality. (Sec. VIII, Pars. 128, 169). PPB and IPR continue to complete investigations and reach conclusions that are supported by the evidence. The City continues to seek on-scene public safety statements when necessary and have witness officers provide on-scene walk-throughs. (Pars. 124, 126, 127). As before, PPB issued Communication Restriction Orders when required. (Par. 125). The City revised its City Code to assure a Citizen Review Committee member participates in all force cases that are subject to Police Review Board consideration. (Par. 131).

**Community Engagement (Section IX):**

The City's framework for community engagement—PCCEP—has operated successfully for 14 months. (Pars. 141, 151). The City continues to provide substantial support for the PCCEP's mission. (Pars. 144, 146, 151, 152). The PCCEP has maintained positive, productive relationships with the Mayor's Office, PPB, and other relevant City entities, including the Auditor's Office, the City Attorney's Office, and the Office of Equity and Human Rights. (Pars. 142, 145). The PCCEP has also established good working relationships with non-City entities, including DOJ, the Albina Ministerial Alliance Coalition for Justice and Police Reform (AMAC), the Mental Health Alliance (MHA), and the Portland Police Association (PPA).

During this reporting period, the PCCEP continued to engage Portland's communities on issues of police reform. (Pars. 142, 151). The PCCEP also provided meaningful input into PPB's Community Engagement Plan, for which it plans to review and recommend revisions on an ongoing basis. On October 2, 2019, the City approved PPB's Community Engagement Plan and accepted PPB's 2018 Annual Report following a presentation to City Council by then-PPB Chief Danielle Outlaw and some members of the PCCEP. (Pars. 142, 146, 150). The PCCEP also continues to independently assess implementation of the Settlement Agreement through a subcommittee designed for that purpose and town hall events with the Compliance Officer and DOJ. (Pars. 142, 151). Finally, the City took steps to ensure a functional replacement process for the PCCEP membership so that the body remains viable going forward. (Pars. 141, 143). On December 18, following consultation with the AMAC, MHA, and PPA, the City approved amendments to the PCCEP Plan designed to expand youth participation, and streamline the appointment process while retaining community participation.

In sum, PCCEP members have demonstrated their ability to engage with the community and do the work contemplated by the PCCEP Plan and the Settlement Agreement. (Pars. 142, 146). More broadly, the City has continued to support the PCCEP's efforts to improve PPB-community relations. (Pars. 141, 142, 144, 145, 151).

\*     \*     \*

Our Report uses the following color-coded compliance status levels to indicate our assessment of the City's progress in complying with each term of the Settlement Agreement. As with previous reports, we provided some additional information to compliance status levels that did not change. The color coding is as follows:

• Green: substantial compliance with an ongoing obligation. This level indicates that the City has implemented the specific provision as required by the Settlement Agreement, and that the City has an ongoing obligation to continue such action to achieve sustained substantial compliance.

• Yellow: partial compliance with an ongoing obligation. This level indicates that while there has been progress made with implementation, specific areas need further attention in order to reach substantial compliance.

• Red: non-compliance. This level indicates that we have recognized barriers to achieving implementation of the provision that must be addressed to achieve substantial compliance.

At the interim status conference scheduled for February 25, 2020, we anticipate renewing the Joint Motion to Amend the Settlement Agreement, presenting the Court with an overview of this Report, and answering any questions the Court may have.

DATED this ___ day of January, 2020.

Respectfully submitted,

| | |
|---|---|
| BILLY J. WILLIAMS<br>United States Attorney<br>District of Oregon<br><br>RENATA GOWIE<br>Civil Division Chief<br><br>*/s/ Jared D. Hager*<br>JARED D. HAGER<br>Assistant U.S. Attorney | ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division<br><br>STEVEN H. ROSENBAUM<br>Special Litigation Section Chief<br><br>*/s/ Laura L. Cowall*<br>LAURA L. COWALL<br>Deputy Chief<br><br>*/s/ R. Jonas Geissler*<br>R. JONAS GEISSLER<br>Trial Attorney<br><br>*/s/ Kerry K. Dean*<br>KERRY K. DEAN<br>Trial Attorney |

## VIII. OFFICER ACCOUNTABILITY

"PPB and the City shall ensure that all complaints regarding officer conduct are fairly addressed; that all investigative findings are supported by a preponderance of the evidence and documented in writing; that officers and complainants receive a fair and expeditious resolution of complaints; and that all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair and consistent. The City and PPB seek to retain and strengthen the citizen and civilian employee input mechanisms that already exist in the PPB's misconduct investigations by retaining and enhancing IPR and CRC as provided in this Agreement." Settlement Agreement Section IX Preamble, ECF 171, at p. 35.

169 (formerly 172). PPB shall apply policies uniformly and hold officers accountable for complying with PPB policy and procedure. (Amended by ECF 171.)

| Status | Substantial Compliance |
|---|---|
| **Analysis** | The City now has achieved substantial compliance with Settlement Agreement Section VIII – Accountability. |
| | Compliance Assessment Criteria |
| | As we stated in our prior compliance assessment reports, Section VIII requires that the City's accountability system meet four criteria: (1) all investigative findings are supported by a preponderance of the evidence; (2) all findings are documented in writing; (3) officers and complainants receive a fair and expeditious resolution of complaints; and (4) all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair and consistent. United States 2019 Settlement Agreement Compliance Assessment, ECF 195-1, at p. 54. In our most recent assessment, we identified timeliness of investigations as the major hurdle the City had yet to overcome to achieve compliance with the Settlement Agreement's accountability provisions. *Id.* The City focused on timeliness and, as a result, it now has achieved compliance. We discuss this in detail, below, with respect to Paragraph 121. Our review of accountability investigations from both the Independent Police Review and PPB's Internal Affairs also confirmed that the efficacy of the accountability system did not suffer in order to achieve timely investigations. |
| | We based our assessment on our review of a large sample of complete investigative files. We reviewed these files to determine if the investigation was complete and if the outcome was supported by the evidence.[1] Where we found issues, our assessments included probing questions to PPB, IPR, and/or the City's legal counsel to better understand the process and conclusions reached. We did not depend only on PPB's summaries of its investigative reports. *See, e.g.*, "Police Review Board: Summaries and Reports," May 9, 2018-September 4, 2019, available at https://www.portlandoregon.gov/police/article/749217. |
| | Overall Compliance Assessment |
| | We stated in our last assessment that we agree with the Compliance Officer's perception "that officers are most often held 'accountable for complying with PPB policy and procedure'." ECF 195-1, at p. 55 (quoting Section VIII Officer Accountability and Section IX Community Engagement and Creation of Portland Committee on Community Engaged Policing, p. 14 (Q4 2018 Report) available at https://static1.squarespace.com/static/5a319f76a9db0901e16c6433/t/5c7e1ebd24a694d3df701e32/1551769321244/Compliance+and+Outcome+Assessment+Report+-+Accountability+and+Community+Engagement+FINAL+with+appendices.pdf). The same |

[1] We did not look for any particular rate of sustained allegations because this is neither required by the Settlement Agreement nor the Constitution.

holds true now.  As we describe for each paragraph below, we agree with the Compliance Officer's updated assessment that the City substantially has complied with Section VIII and with the requirement to hold officers accountable to PPB policies and procedures.  *See* Compliance and Outcome Assessment Report Quarterly Report: 2019 Updates and Quarter 4 Analysis (Q4 2019 Report), at p. 5 (finding compliance with all accountability paragraphs assessed) and p. 25 (assessing Paragraph 169), available at https://www.portlandcocl.com/s/Q4-2019-COCL-Compliance-and-Outcome-Assessment-Quarterly-Report-DRAFT-01152020-7ypf.pdf.

## A. Investigation Timeframe

121. PPB and the City shall complete all administrative investigations of officer misconduct within one-hundred eighty (180) days of receipt of a complaint of misconduct, or discovery of misconduct by other means.  For the purposes of this provision, completion of administrative investigations includes all steps from intake of allegations through approval of recommended findings by the Chief, including excluding appeals, if any, to CRC.  Appeals to CRC shall be resolved within 2190 days.  (Amended by ECF 171.)

123. If PPB is unable to meet these timeframe targets, it shall undertake and provide to DOJ a written review of the IA process, to identify the source of the delays and implement an action plan for reducing them.

| Status | Substantial Compliance |
|---|---|
| Analysis | Paragraphs 121 and 123 were two of the last provisions of the Settlement Agreement with which the City had not yet come into compliance as of our last assessment.  *See* ECF 195-1, at pp. 56-57 (DOJ's prior compliance finding).  We agree with the Compliance Officer that, now, the City has reached substantial compliance with Paragraphs 121 and 123.  *See* Compliance Officer Quarterly Report:  All Sections with Remaining Compliance Issues and 2019 Updates on Other Sections (Q3 2019 Report), at p. 37, Nov. 21, 2019, available at https://static1.squarespace.com/static/5a319f76a9db0901e16c6433/t/5dd78954e8d3bc5dd45f9d15/1574406486218/Q3+2019+COCL+Compliance+and+Outcome+Assessment+Quarterly+Report+FINAL+11212019.pdf; Q4 2019 Report, at p. 18 (assessing Par. 123). |
| | The Compliance Officer provided a helpful analysis of the timeliness of administrative investigations.  Either PPB or IPR may initiate investigations, but both track investigatory progress using PPB's Administrative Investigation Maintenance (AIM) system.  The Compliance Officer's analysis used AIM to measure the time from the recorded date of initiation of the allegation until the date of disposition (or the date of data production for those cases that had not yet reached disposition).  *See* Q3 2019 Report at 37-38.  The Compliance Officer found that IA's compliance with the timeliness requirement was 94.4% and IPR's was 85.4%.  *Id.* at 38.  Additionally, since April of 2018, the Compliance Officer has found a significant downward trend in the percentage of investigations overdue at all investigative stages, as represented in this graph: |



*Id.* at 40.

Like the Compliance Officer, we conclude that IA's and IPR's revised Standard Operating Procedures (SOPs) have improved consistency and timeliness in the handling of each step of the investigative process. *See* PPB SOP 29 – Case Management and Investigative Timelines, effective Aug. 16, 2019; PPB SOP 53 – Electronic Case File Packet Distribution within PPB, effective Sept. 11, 2019 ("To allow for greater agility in the assignment of timelines to ensure the 180 day deadline of administrative investigations are met,"); IPR SOP, Section 1.3 Overall Office Case Management and Investigative Timeliness, revised Jan. 10, 2020. IPR has enforced its deadlines by requiring written requests for extensions, which trigger an analysis to determine if such an extension will cause a case to exceed 180 days. *See* Interim IPR Director Memo to IPR Staff, July 28, 2019. *See also* Memo from City Auditor to IPR Managers and Staff re Ensuring Timely Investigations During IPR's Leadership Transition, May 6, 2019 (setting clear expectation to meet deadlines contained in administrative rules). The City's implementation of these SOPs is consistent with our prior technical assistance and appears adequate to sustain the improvements in timeliness.

In addition to the Compliance Officer's analysis, we independently assessed a sample of IA and IPR investigative files to determine whether any of the matters exceeded 180 days between discovery of the allegation and approval of the recommended findings. A sample of eight completed IA investigations and five completed IPR investigations showed nearly all cases completed with 180 days. In one IA case, 2019-C-0128, we opined that PPB should not have closed the case, which led to a reopening and, therefore, more than 180 days between the initial allegation and the recommended finding. Excluding the period of closure, however, the case would have been completed within 180 days. Within our sample, IPR missed the 180-day deadline by two days in 2018-C-0291, in which an Assistant Chief returned the case for further investigation. This quality control check must be balanced against timeliness and, in this instance, led to only minor deviation from the deadline. One case we reviewed from our sample, though, 2018-B-0050, spanned 236 days without an excusable basis. This one case was not compliant with the 180-day deadline; however, the City's anomalous exceeding of the deadline in a single case does not amount to non-compliance with the Settlement Agreement. *See* Settlement Agreement Par. 175(a) ("Substantial compliance is achieved if any violations of the Agreement are minor or occasional and are not systemic").

In 2019, the City continued to address long-standing, older cases requiring resolution. Among these were cases involving allegations of violations of City Human Resources rules, or Human Resources Administrative Rule (HRAR) 2.02 matters. The matter of 2017-B-0005, for example, concerned a member's alleged failure to report a derogatory, sexually explicit remark. Though the case originated from an incident in December 2016, it did not come before a Police Review Board (PRB) until January 2019, and did not reach

disposition of discipline until August 2019. PPB reported that PRB members considered passage of time since the allegation, alone, as a mitigating factor. PPB also reported that the further passage of time until a predetermination hearing for one of the involved members served as additional mitigation for the Chief's reduction of discipline. Though policy permits this reduction, it may not have been necessary if the case had been timely resolved. Though the City will continue to have to resolve these legacy cases, the current cases are moving at the speed the Settlement Agreement requires.

PPB also identified a 26-day delay at Training Division in one case, 2018-B-0068, and both a 26-day delay and then a 47-day delay with the Chief's Office in another case, 2018-B-0056, not involving an allegation of misconduct. *See* Overdue Investigation Summaries. PPB's executives may need to provide additional guidance concerning timely responses so that delays at the various investigatory steps do not result in exceeding the 180-day deadline.

122. PPB shall conduct administrative investigations concurrently with criminal investigations, if any, concerning the same incident. All administrative investigations shall be subject to appropriate tolling periods as necessary to conduct a concurrent criminal investigation, or as otherwise provided by law, or as necessary to meet the CRC or PRB recommendation to further investigate.

| Status | Substantial Compliance |
|---|---|
| **Analysis** | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the requirement to bring concurrent criminal and administrative investigations, subject to tolling. *See* ECF 195-1, at pp. 57-58 (DOJ's prior compliance finding). *See also* Q4 2018 Report, p. 16 (Compliance Officer's prior assessment); Q4 2019 Report, at p. 18. |
| | PPB has implemented an SOP for its Detectives Division concerning the investigation of criminal allegations against PPB members. PPB SOP 39 – Criminal Internal Investigations, effective Dec. 5, 2018. This SOP requires coordination with IA for its administrative investigations. *Id.* Helpfully, the SOP also provides for issuance of communication restriction orders for all identified police personnel until the conclusion of both the IA and the criminal investigation. *Id.* at p. 3. Additionally, there is outside accountability on the handling of potentially criminal investigations by internal affairs. The IA Captain, IPR Director, and Detective Division Commander meet monthly to coordinate concurrent investigations. PPB SOP 6 – Criminal Case Review, effective June 5, 2017. |
| | As with prior monitoring periods, PPB reports on the specific internal affairs investigations it initiates and the corresponding dates of any parallel criminal investigation. *See* Criminal/IA Concurrent Investigation Audit for 3rd Quarter 2019, as of Oct. 14, 2019. AIM data indicates that the City consistently initiated administrative investigations concurrently with criminal investigations. *Id.* |

## B. On Scene Public Safety Statements and Interviews

124.    Within 90 days of the Effective Date, the City and PPB shall review its protocols for compelled statements to PSD and revise as appropriate so that it complies with applicable law and current professional standards, pursuant to *Garrity* v. *New Jersey*, 385 U.S. 493 (1967). The City will submit the revised protocol to DOJ for review and approval. Within 45 days of obtaining DOJ's approval, PPB shall ensure that all officers are advised on the revised protocol.

| Status | Substantial Compliance |
|---|---|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the requirement for an appropriate protocol for compelled statements. *See* ECF 195-1, at p. 58 (DOJ's prior compliance finding). *See also* Q4 2018 Report, at p. 17 (Compliance Officer's prior assessment); Q4 2019 Report, at pp. 18-19. We previously pointed to PPB's enactment and application of Directive 1010.10 – Deadly Force and In-Custody Death Reporting and Investigation Procedures; SOP 7 – Deadly Force; In-Custody Death Investigations; and SOP 30 – Concurrent Administrative/Criminal Investigations, as evidence of PPB's substantial compliance with Paragraph 124. We agree with the Compliance Officer's updated assessment that the City continues to comply with the Directive and SOPs. |

125.    Separation of all witness and involved officers to lethal force events is necessary in order to safeguard the integrity of the investigation of that event. Immediately following any lethal force event, PPB shall continue to issue a communication restriction order ("CRO") to all witnesses and involved officers, prohibiting direct or indirect communications between those officers regarding the facts of the event. The CRO will continue, unless extended further, until the conclusion of the Grand Jury or, if no Grand Jury is convened, until a disposition is determined by the District Attorney.

| Status | Substantial Compliance |
|---|---|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the requirement to issue CROs. *See* ECF 195-1, at pp. 58-59 (DOJ's prior compliance finding). *See also* Q4 2018 Report, pp. 17-18 (Compliance Officer's prior assessment); Q4 2019 Report, at p. 19. |
|  | A review of written CROs indicates PPB timely issued the CROs and then appropriately rescinded the CROs in writing. |

126.    PPB shall continue to require witness officers to lethal force events to give an on-scene briefing to any supervisor and/or a member of the Detective Division to ensure that victims, suspects, and witnesses are identified, evidence is located, and provide any information that may be required for the safe resolution of the incident, or any other information as may be required.

| Status | Substantial Compliance |
|---|---|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the requirement to mandate an on-scene briefing from a witness officer. *See* ECF 195-1, at pp. 59-60 (DOJ's prior compliance finding). *See also* Q4 2018 Report, pp. 17 (Compliance Officer's prior assessment); Q4 2019 Report, at pp. 19-20. |
|  | Detective notes of an Officer-Involved Shooting (OIS) we reviewed reflect the witness officers provided an on-scene briefing to detectives. *See* Case 2019-258996. As in prior monitoring reports, we note that PPB's voluminous files for these incidents identify victims, suspects, and witnesses, and catalogue relevant evidence. ECF 195-1, at pp. 59-60; ECF 148-1. |

127.    In agreement and collaboration with the Multnomah County District Attorney, PPB shall request that

involved officers in lethal force and in-custody death events provide a voluntary, on-scene walk-through and interview, unless the officer is incapacitated.

| Status | Substantial Compliance |
|---|---|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the requirement to request an on-scene walk-through and interview from involved officers. *See* ECF 195-1, at p. 60 (DOJ's prior compliance finding). *See also* Q4 2018 Report, pp. 18 (Compliance Officer's prior assessment); Q4 2019 Report, at p. 20.  Detective notes of an OIS we reviewed reflect that detectives sought an on-scene briefing and walk-through by an involved officer, who declined and invoked right to counsel. *See* Case 2019-258996.  Similarly, the Compliance Officer observed that in each OIS in the past year, PPB detectives continue to ask involved members for on-scene walk throughs and interviews.  Q4 2019 Report, at p. 20. |

## C. Conduct of IA Investigations

128. Currently, both IPR and PPB's PSD have authority to conduct administrative investigations, provided that IPR interview of PPB Officers must only be conducted jointly with IA.  Within 120 days of the Effective Date, the City will develop and implement a plan to reduce time and effort consumed in the redundant interview of witnesses by both IPR and IA, and enable meaningful independent investigation by IPR, when IPR determines such independent investigation is necessary.

| Status | Substantial Compliance |
|---|---|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the requirement to reduce redundancies and enable meaningful, independent IPR investigations. *See* ECF 195-1, at p. 60 (DOJ's prior compliance finding). *See also* Compliance and Outcome Assessment Report, Quarterly Report: All Sections with Remaining Compliance Issues (Q2 2019 Report), at pp. 17-19, Aug. 22, 2019. |
| | In our prior compliance report, we indicated that the City had reached substantial compliance with this provision of the Settlement Agreement based in large part on the implementation of joint training and directives at IA and IPR that largely mirror one another. *See* ECF 195-1, at p. 60.  That process has continued with further joint IA and IPR joint training in 2019. *See, e.g.,* Memo from IPR Director to IPR Investigators re Joint Training, dated Sept. 19, 2019. Both IA and IPR now have agreed to use PPB's Learning Management System (LMS) to track this joint training going forward. *See* Email from IPR Director to PPB, Sept. 18, 2019 (memorializing IPR's agreement to track IPR training in LMS); PPB SOP 52, effective Sept, 19, 2019 (establishing use of LMS for IPR personnel and notifications for current training needs).  IPR also continued to revise its SOPs to further hone its process and make the SOPs reflective of IA's SOPs, where appropriate. *See* IPR SOP, revised Jan. 10, 2020 (clarifying clear and convincing evidence required to close force allegations; defining "public interest" cases for IPR investigation; and guiding investigations with BHR).  Institutionalizing the joint training and processes at both IA and IPR that mirror one another makes meaningful independent investigations a more durable remedy. |
| | As we did in our past compliance assessment, we also reviewed a sample of investigative reports from both IA and IPR to determine whether IPR has conducted meaningful independent investigations.  IPR has.  IPR's investigation of 2019-B-0010 exemplifies the implementation of the meaningful-independent-investigation remedy.  The matter concerned |

allegations surrounding text messages between PPB and outside groups.  Significantly, in a March 7, 2019 email, the PPB's Captain of IA asked the Chief to refer the allegation to IPR for investigation, rather than keep the allegation within PPB for investigation.  PPB utilized IPR's meaningful, independent investigation capabilities to address an allegation that was important to PPB.  And, even though PPB and IPR took ultimately different views on part of the allegations—not sustained vs. exoneration—it was IPR's investigation that found "no evidence that [the PPB member] failed to remain neutral."  This was an effective use of external investigations for credible findings.

There is still room for improvement, even after maintaining substantial compliance with this provision of the Settlement Agreement.  In the matter of 2018-C-0291, for example, IPR did not interview two involved officers until after the Chief's Office identified this deficiency.  The quality assurance mechanism worked.  PPB identified the issue and IPR corrected it.  This minor deviation does not undercut IPR's ability to conduct independent investigations, but does serve as a teachable moment on constant quality improvement, even during sustained compliance.

Also, IPR has identified structural barriers to access to information which slows IPR's ability to conduct independent investigations.  *See* IPR Memo documenting document structural impediments to reducing time spent on intakes and investigations, rev. Sept. 8, 2019.  For example, IPR does not have access to Oregon's Law Enforcement Date Base (LEDS).  *Id.*  The City believes that IPR's LEDS access will depend on a legislative change.  *Id.  Compare* Or. Rev. Stat. 181.730 (including "designated agencies"); Or. Admin. Rule 257-015-0080, available at https://secure.sos.state.or.us/oard/displayDivisionRules.action?selectedDivision=803 (setting criteria for LEDS access).  Regardless of whether a legislative or administrative rule is necessary or appropriate, for the time being, IPR currently obtains required LEDS information through PPB.  This is time consuming, but an effective workaround to complete independent investigations.

IPR has overcome another structural issue that the Compliance Officer and DOJ previously identified:  systemic complaints about how PPB does its law enforcement work, generally, and for which individual officers do not exercise discretion.  *See* ECF 195-1, at p. 61.  The Compliance Officer previously criticized what it called systemic complaints masquerading as individual complaints.  *See* Q4 2018 Report, at p. 19.  We recommended that IPR and PPB could increase their efficiencies if IPR and IA could better funnel such systemic issues to the City agencies capable of providing a remedy to systemic issues.  *See* ECF 195-1, at p. 61.  The City has now developed such a process to better address these systemic issues that do not involve allegations of officer misconduct.  *See* Email from Acting IPR Director to Mayor's Senior Advisor for Public Safety, Sept. 19, 2019 (memorializing agreement on referral of system-level complaints or concerns to other City agencies).  Accordingly, even with substantial compliance for IPR's independent investigations, the City found room for improvement that makes the accountability system, as a whole, more effective.

129. The City and PPB shall ensure that all allegations of use of excessive force are subject to full and completed IA investigations resulting in findings, unless there is clear and convincing evidence to IPR that the allegation has no basis in fact.

| Status | Substantial Compliance |
|---|---|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the requirement to investigate fully all excessive force allegations, unless IPR determines that the allegation has |

no basis in fact. *See* ECF 195-1, at p. 61 (DOJ's prior compliance finding); Q4 2019 Report, at pp. 20-21. We agree with the Compliance Officer, however, that IPR has inconsistently applied its no-basis-in-fact standard. Q4 2019 Report, at pp. 20-21. In response to this critique, however, IPR revised its SOPs to ensure more consistent application of this standard going forward. *Id.*; IPR SOP, Sec. 2.3, revised Jan. 10, 2020 (clarifying clear and convincing evidence required to close force allegations).

As we have done in prior assessments, we reviewed a sample of completed administrative investigations involving allegations of use of excessive force. In the cases we sampled, a preponderance of the evidence contained in the complete administrative record supported the administrative finding for the force allegations where IA or IPR reached a sustained, exonerated, or unfounded finding, but in a small number of non-force cases the preponderance standard was not evenly applied between unfounded, exonerated, and not sustained. We were concerned that this misapplication of evidentiary standard would affect force cases and accountability, generally. Accordingly, we requested that the City implement remedial training on this evidentiary standard. The City did so. *See* Email from PPB Inspector General to DOJ, Oct. 25, 2019 (attaching lesson plan for training on findings). Though only a handful of non-force findings in the initial sample were deficient, the remedial training served to improve the accountability system as a whole, including force allegations. A review of a sample of force cases after the remedial training showed consistent application of the preponderance of evidence standard. *See, e.g.,* 2019-C-0248 (departing from an investigator's recommendation of unfounded, *i.e.,* the incident did not happen, to exonerated, *i.e.,* an incident occurred and was within policy).

Additionally, we requested that PPB reopen one investigation that had been closed without reaching a finding because PPB could not identify an accused officer, 2019-C-0128. PPB did so. That matter involved an allegation of use of force based on a nearly three-year-old incident. PPB had dedicated tremendous resources to interviewing numerous officers and conducting an investigation, but closed the investigation. Paragraph 129 would not permit such a closure by PPB absent IPR's own determination that the allegation had no basis in fact. Accordingly, we recommended that PPB reach a finding. This recommendation is consistent with our previous technical assistance letter in which we recommended that PPB reach findings in all force cases. *See* Letter from DOJ to City Attorney, Oct. 28, 2014. PPB thereby remedied the one force investigation lacking a finding.

130. The City and PPB shall continue to expressly prohibit all forms of retaliation, including discouragement, intimidation, coercion, or adverse action, against any person who reports misconduct, makes a misconduct complaint, or cooperates with an investigation of misconduct.

| Status | Substantial Compliance |
|---|---|
| Analysis | We previously found that there was insufficient data to show implementation of the requirement to prohibit retaliation against or discouragement of those who make complaints or cooperate in investigations. *See* ECF 195-1, at p. 62 (DOJ's prior compliance finding). Now, we agree with the Compliance Officer's assessment, and find that the City has demonstrated implementation. Q4 2019 Report, at p. 21. |
| | The Bureau of Human Resources (BHR) shares responsibility with PPB to investigate retaliation complaints. *See* ECF 195-1, at p. 62. BHR previously had a backlog that was an impediment to finding substantial compliance with this provision. *Id.* BHR, together with PPB, completed the open investigations. To address the timeliness issue going forward, PPB enacted a new SOP to govern cases involving BHR, including |

allegations of retaliation. *See* PPB SOP 22, effective Aug. 16, 2019. In part, this SOP requires weekly review of case status. *Id.*

We have assessed a sample of now-completed BHR-related investigations to ensure that the City fully investigated those matters before closing them. The sample showed fully completed investigations. For example, an investigation of one allegation led to an allegation of retaliation resulting in a full investigation of that retaliation allegation. *See* 2019-B-0012, 2019-B-0013.

Accordingly, we now find the City in substantial compliance with Paragraph 130.

131. The City and PPB shall retain Police Review Board procedures currently utilized for purposes of investigation and making recommended findings on administrative complaints, except as outlined below:

a. Currently, seven voting members of the PRB review use of force incidents, including two citizen members. When PRB reviews uses of force case, one of the two citizen member slots shall be drawn from the Citizen Review Committee members.

b. The CRC slot on the PRB in use of force cases will rotate among the CRC membership so that different CRC members participate on the PRB. Within 60 days of the Effective Date, the Auditor shall develop a membership rotation protocol.

c. All members participating in the PRB must maintain confidentiality and be able to make thoughtful, unbiased, objective recommendations to the Chief of Police and Police Commissioner that are based on facts, consistent with PRB city code provisions and "just cause" requirements set forth in Portland City Charter, City rules, and labor agreements.

d. Cases in which the member elects, with the concurrence of the Chief and the Police Commissioner, to accept the investigative findings and recommended discipline. This option will only be available to a member following implementation of code language which shall require at a minimum a full investigation of the alleged misconduct, issuance of the investigative findings, and concurrence with the findings by the Independent Police Review, the Professional Standards Division and the member's Branch Chief. The scope of cases eligible for stipulated discipline shall be identified in the authorizing code, and cases involving alleged used of excessive force, cases involving alleged discrimination, disparate treatment or retaliation, reviews of officer involved shootings and in-custody deaths, and cases in which the Chief or the Police Commissioner does not agree to accept the member's proposed stipulation to findings and recommended discipline shall not be eligible for stipulated findings and recommended discipline. (Added by ECF 171.)

e. All community members and CRC members must meet the following qualifications to participate on the PRB:

i. Pass a background check performed by the Bureau.

ii. Participate in Bureau training to become familiar with police training and policies, including the PRB process.

iii. Sign a confidentiality agreement.

iv. Participate in ride-alongs to maintain sufficient knowledge of police patrol procedures.

f. Current city code provides that the City Auditor and the Chief have authority to recommend to City Council the removal of citizen members from the PRB pool. Likewise, the City Auditor or Chief shall have authority to recommend to City Council removal of a CRC member from serving on the PRB. The Chief or the City Auditor may recommend that City Council remove a community member or member of the CRC from the pool for the following reasons:

i. Failure to attend training;

ii. Failure to read Case Files;

iii. Objective demonstration of disrespectful or unprofessional conduct;

iv. Repeated unavailability for service when requested;

v. Breach of confidentiality;

vi. Objective demonstration of bias for or against the police; or

vii. Objective demonstration of conflict of interest.

g. Removal from participation in the PRB shall not affect CRC membership.

h. Like current PRB citizen members, CRC members serving on the PRB may serve in that capacity for no more than three (3) years.

i. A CRC member who participates in a PRB review shall recuse himself/herself during any later appeal of the same allegation(s) to the CRC.

| Status | Substantial Compliance |
|--------|------------------------|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the Settlement Agreement's requirements for the composition of and procedures used by the PRBs. *See* ECF 195-1, at p. 62 (DOJ's prior compliance finding); Q4 2019 Report, at pp. 21. We previously reported that the City memorialized the substantive requirements of Paragraph 131 in PPB Directive 336.00. *Id.*; Dir. 336.00 – Police Review Board, effective March 3, 2018, available at https://www.portlandoregon.gov/police/article/674632. |
| | In our prior compliance assessment, we recommended that the City modify its PRB ordinance to ensure that PRBs reviewing uses of force cases include one CRC member, as Paragraph 131(a) requires. The PRB ordinance had limited this CRC representation to only certain types of force cases, albeit the most common force cases. *See* ECF 195-1, at p. 62 (citing Portland City Code 3.20.140 Police Review Board, Sec. (C)(2), available at https://www.portlandoregon.gov/citycode/article/707196). On August 28, 2019, the City amended this code provision, based on the United States' technical assistance. *See* Portland Ordinance 189673, Aug. 28, 2019; full, codified available at https://www.portlandoregon.gov/citycode/article/741180. |
| | A review of a set of PRB memoranda show that PPB continues to use the PRBs not only to test the support for investigative findings, but also for training and policy recommendations. Note that in one matter, 2018-B-0087, the PRB did not reach a final vote on a training recommendation. But even without the final vote on the recommendation, the PRB memo notes that the Board Members acknowledged the Training Division's awareness of the issue. |
| | On September 11, 2019, the City appointed new, and reappointed current, community PRB volunteers for terms into 2022. *See* Portland City Council Agenda, Sept. 11, 2019, item 857. This cohort of 13 volunteers represents Portlanders from various backgrounds and experiences, including a former CRC member. *See* City Auditor Memo to Mayor and Commissioners, Sept. 3, 2019. |

132. By majority vote, the PRB may request that investigations of misconduct be returned to its investigating entity, i.e. PSD or IPR, to complete the investigation as to factual matters necessary to reach a finding regarding the alleged misconduct. The investigating entity must make reasonable attempts to conduct the additional investigation or obtain the additional information within 10 business days or provide a written statement to the PRB explaining why additional time is needed.

| Status | Substantial Compliance |
|---|---|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the requirement to provide additional investigation at the PRB's or IPR's request. *See* ECF 195-1, at p. 64 (DOJ's prior compliance finding); Q4 2019 Report, at pp. 21-22. As we previously observed, PPB has incorporated Paragraph 132's requirement in PPB Directive 336.00 – Police Review Board, section 4.7, and PPB has put this requirement into practice. *See* ECF 195-1, at p. 65. |

133. If an officer's use of force gives rise to a finding of liability in a civil trial, PPB shall:  (1) enter that civil liability finding in the EIS; (2) reevaluate the officer's fitness to participate in all current and prospective specialized units ; (3) if no IA investigation has previously been conducted based upon the same allegation of misconduct and reached an administrative finding, conduct a full IA investigation with the civil trial finding creating a rebuttable presumption that the force used also violated PPB policy, which presumption can only be overcome by specific, credible evidence by a preponderance of evidence; (4) if an IA investigation has already concluded based upon the same allegation of misconduct and failed to reach a sustained finding, identify whether any new evidence exists in the record of the civil trial to justify the reopening of the IA investigation, and if so, reinitiate an IA investigation; and (5) if an IA investigation has already concluded based upon the same allegation of misconduct and failed to reach a sustained finding, and no new evidence from the civil trial justifies reopening the IA investigation, work with IPR to identify the reason why the administrative finding was contrary to the civil trial finding and publish a summary of the results of the inquiry.

| Status | Substantial Compliance |
|---|---|
| Analysis | Like our last report, we note that PPB had no civil liability findings during this compliance period that would have triggered the application of this provision. *See* ECF 195-1, at p. 65 (DOJ's prior compliance finding). We agree with the Compliance Officer that the City is in substantial compliance with this provision through implementation of PPB SOPs 32 and 42, which incorporate the requirements of Paragraph 133. *See* Q4 2018 Report, p. 22; Q4 2019 Report, at p. 22. |

**D. CRC Appeals**

134. The City shall expand the membership of the CRC to 11 members, representative of the many and diverse communities in Portland, who are neutral, unbiased, and capable of making objective decisions. The quorum of CRC members necessary to act may remain at its existing level.

| Status | Substantial Compliance |
|---|---|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the required composition of CRC members and with CRC's quorum. *See* ECF 195-1, at p. 65 (DOJ's prior compliance finding); Q4 2019 Report, at pp. 22-23.<br><br>As we previously reported, the City had already memorialized CRC membership expansion as required by Paragraph 134 in City Code 3.21.080 (*available at* https://www.portlandoregon.gov/citycode/article/479665). In this compliance period, the City continued soliciting new CRC volunteers who are "impartial and objective in regards to law enforcement." *See* "Citizen Review Committee 2019 Recruitment," undated (seeking applications by September 26, 2019). CRC is currently composed of 11 members, as Paragraph 134 requires. *See* CRC member list, updated Sept. 18, 2019. |

135. The City and PPB agree that the CRC may find the outcome of an administrative investigation is unreasonable if the CRC finds the findings are not supported by the evidence.

136. In its review process for purposes of the appeal, the CRC may make one request for additional investigation or information to the investigating entity, i.e. PSD or IPR at any point during its review. The investigating entity must make reasonable attempts to conduct the additional investigation or obtain the additional information within 10 business days or provide a written statement to the CRC explaining why additional time is needed. The request for additional investigation or information may contain multiple points of inquiry, but no follow-up requests will be permitted. The additional request be voted on by a quorum, the members voting must have read the Case File in order to vote, and any request with multiple points of inquiry must be prioritized.

| Status | Substantial Compliance |
|--------|------------------------|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the required CRC evidentiary standard and requests for additional investigation. *See* ECF 195-1, at p. 66 (DOJ's prior compliance finding); Q4 2019 Report, at p. 23. |
| | We previously reported that CRC's governing regulations reflect the requirements of Paragraphs 135 and 136. *See* ECF 158-1; 195-1. Again, the City has long established substantial compliance with these provisions. |

### E. Discipline

137. Within 60 days of the Effective Date, PPB and the City shall develop and implement a discipline guide to ensure that discipline for sustained allegations of misconduct is based on the nature of the allegation and defined, consistent, mitigating and aggravating factors and to provide discipline that is reasonably predictable and consistent.

| Status | Substantial Compliance |
|--------|------------------------|
| Analysis | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the required discipline guide. *See* ECF 195-1, at p. 67 (DOJ's prior compliance finding); ECF 158-1 (DOJ's 2017 compliance report); Q4 2018 Report, pp. 23-24 (Compliance Officer's prior assessment report); Q4 2019 Report, at pp. 23-24. As before, PPB continued to give effect to the Discipline Guide through enactment of Directive 338. *See* Dir. 338.00 – Discipline Guide, effective Mar. 3, 2018, available at https://www.portlandoregon.gov/police/article/674636. A review of corrective action memoranda showed consistent application of the guide. |

### F. Communication with Complainant and Transparency

138. Within 180 days of the Effective Date, the City shall enhance its existing website to ensure that a complainant can file and track his or her own complaint of officer misconduct.

139. Within 120 days of the Effective Date, the City shall review its protocols to ensure that the City shares with complainants requested documentation about his or her own complaint to the extent permitted by law.

140. The City shall ensure that IPR provides each complainant a tracking number upon receipt of the complaint, informs each complainant of the complaint classification, assignment (precinct or IA) and outcome of the complaint (sustained, unproven, etc.) in writing (whether mail, email/text, or fax), including information regarding whether the City took any corrective action. The City Attorney's Office shall determine whether

disclosures regarding corrective action are required on a case-by-case basis consistent with Oregon's Public Records Law.

| Status | Substantial Compliance |
|---|---|
| **Analysis** | Consistent with our prior compliance assessments and the Compliance Officer's assessment, we continue to find that the City substantially has complied with the required communication and transparency for complainants. *See* ECF 195-1, at p. 67 (DOJ's prior compliance finding); Q4 2018 Report, pp. 24-25 (Compliance Officer's prior assessment report); Q4 2019 Report, at pp. 24-25.<br><br>As was the case last year, in our review of administrative investigations that closed over the past year, each investigative file in our sample included letters to the complainant explaining the results of the investigation and the appeal process. The same IPR website on which we previously reported continues to allow complainants to check the status of their complaints by entering their complaint number or the complainant's identifying information. *See* IPR Complaint Status Request Form, available at https://www.portlandoregon.gov/ipr/64452. |

## IX.    COMMUNITY ENGAGEMENT AND CREATION OF PORTLAND COMMITTEE ON COMMUNITY ENGAGED-POLICING

"There is significant community and City interest in improving PPB's community relationships. The community is a critical resource. Soliciting community input regarding PPB's performance, while also enhancing PPB's current community outreach efforts, will promote community confidence in PPB and facilitate police/community relationships necessary to promote public safety." Settlement Agreement Section IX Preamble, ECF 171, at pp. 45-46.

141.    To leverage the ideas, talent, experience, and expertise of the community, the City, in consultation with DOJ, shall establish a Portland Committee on Community Engaged-Policing (PCCEP), within 90 days of the Effective Date of the relevant amendments to this Agreement.

| Status | Substantial Compliance[1] |
|---|---|
| Analysis | The City established the PCCEP on August 24, 2017.  The Mayor's Office selected a diverse cross-section of Committee members on September 11, 2018, following an exhaustive recruitment, selection, and interview process designed to ensure equity and inclusion.  The City confirmed the PCCEP's 13 original members on September 26, 2018.  Since then, the City has ensured a membership roster that is sufficient for the PCCEP to perform its functions. |
| | The PCCEP has held monthly meetings since October 2018.  The City continues to provide substantial support, including by providing designated administrative support, meeting locations, an adequate pool of qualified alternates, and access to City leadership and PPB personnel.  The City hosts a website for the PCCEP, where relevant documents and other information can be accessed.  *See* https://www.portlandoregon.gov/pccep.  The PCCEP also has a YouTube channel for videos, accessible at https://www.youtube.com/channel/UC0W1oX39iMCY-0O-qeqLTxg, and uses other social media platforms.  The City has contracted with Open Signal, a community-driven media service provider, to air live online broadcasts of the PCCEP's monthly public meetings.  Most meetings have been livestreamed successfully.  However, in some cases, the PCCEP chose to meet in locations without sufficient bandwidth for the City's vendor to broadcast the meeting live.  In those cases, video recording of the meeting was uploaded to the YouTube channel within a few days. |

142.    The PCCEP shall be authorized to: (a) solicit information from the community and the PPB about PPB's performance, particularly with regard to constitutional policing; (b) make recommendations to the Chief, Police Commissioner, the Director of the Office of Equity and Human Rights, and community and, during the effective period of this Agreement, to the DOJ; (c) advise the Chief and the Police Commissioner on strategies to improve community relations;

---

[1] At the October 4, 2018 Status Conference, the Court suggested that the United States and the Compliance Officer should evaluate the City's compliance with Section IX as if the Court had entered final approval of the stipulated proposed Section IX amendments. *See* ECF 176, Hearing Transcript, at 128:19 - 129:11.

(d) contribute to the development and implementation of a PPB Community Engagement Plan; and (e) receive public comments and concerns. The composition, selection/replacement process and specific duties of the PCCEP shall be set forth in a separate Plan for Portland Committee on Community-Engaged Policing ("the PCCEP Plan") which shall be substantially similar to Exhibit 1 to this Agreement. Amicus AMAC and Intervenor PPA shall be consulted regarding and DOJ shall review and approve any amendments to the PCCEP Plan proposed to occur during the effective period of this Agreement.

| Status | Substantial Compliance |
|---|---|
| Analysis | The City continues to authorize the PCCEP to perform the tasks enumerated in Paragraph 142. *See* Amended PCCEP Plan, *available at* https://www.portlandoregon.gov/pccep/article/703060. The PCCEP has performed this work to varying degrees, as well as other work, and continues to do so. The City and the PCCEP have each emphasized the importance of the PCCEP setting its own agenda and focusing on topics the PCCEP and its subcommittees perceive are most important to the community. |
| | The PCCEP is authorized to independently assess the City's compliance with the Settlement Agreement, and created a subcommittee for that purpose. The PCCEP Settlement Agreement & Policy Subcommittee materials are available at https://www.portlandoregon.gov/pccep/78726. Much of the PCCEP's assessment of compliance has been conducted through the review and presentation of reports from the City, the Compliance Officer, and DOJ, rather than by way of additional review of underlying data. The PCCEP has considered compliance at several public meetings, including as host to the Compliance Officer's quarterly town hall events (January, April, July, and October) and to DOJ's counsel of record (May). *See* PCCEP Meeting Minutes, *available at* https://www.portlandoregon.gov/pccep/78093; PCCEP Meeting Video Replays, *available at* https://www.youtube.com/channel/UC0W1oX39iMCY-0O-qeqLTxg. |
| | In the summer of 2018, the City consulted with AMAC and PPA on amendments to the PCCEP Plan, which responded to concerns that community members expressed. Of note, the changes reserved seats for two high school-aged youth and allowed for subcommittees that hold public meetings. DOJ approved the amendments as required by this Paragraph. The City approved the amendments, which then became effective on September 5, 2018. *See* City Council Ordinance 27284, *available at* https://efiles.portlandoregon.gov/Record/12278614. In December 2019, the City consulted with AMAC and PPA on potential amendments to the PCCEP Plan designed to strengthen the process for appointing PCCEP members by expanding youth membership, and streamlining the process while retaining community participation. DOJ reviewed and approved the proposed amendment after the City completed its consultation and finalized the amending language. The City approved the amendments, which then became effective on December 18, 2019. *See* City Council Resolution No. 37470, *available at* https://www.portlandoregon.gov/auditor/56674. |

> The City has maintained the PCCEP's composition and specific duties, and is ensuring a workable and fair selection/replacement process that includes citizen participation. To date, the City has twice undertaken an equitable and inclusive recruitment and selection process to create pools of additional qualified alternate members. The PCCEP has engaged with these alternate members in trainings, retreats, and at subcommittee meetings. The City has filled vacancies timely by drawing on alternates in collaboration with the PCCEP. When alternate pools have been exhausted, the City has acted with deliberate speed to recruit, select, and train new alternate members.
>
> The PCCEP is capably exercising its authority. It has solicited information from the community and the City about PPB's performance, recommending concrete actions to City leaders; received public comment and concerns during regularly scheduled, open public committee and subcommittee meetings; and contributed to the development and implementation of PPB's Community Engagement Plan. The City adopted PPB's Community Engagement Plan on October 2, 2019, following a public hearing that included a presentation by PPB and PCCEP members, and a public comment period. *See* City Council Resolution 37452, *available at* https://efiles.portlandoregon.gov/Record/13297449.

143.    PCCEP's membership will come from a reasonably broad spectrum of the community. PCCEP members shall not have an actual or perceived conflict of interest with the City of Portland.

| Status | Substantial Compliance |
|---|---|
| Analysis | PCCEP members come from a reasonably broad spectrum of the community. *See* Member Bios, *available at* https://www.portlandoregon.gov/pccep/article/705718. Members have a diverse cross-section of relevant lived experiences, possess a wide range of ideas, skillsets, and interests, and are dedicated to improving police-community relations. The PCCEP's subcommittees have welcomed interested members of the public who similarly represent various lived experiences and communities. The City has trained PCCEP members on applicable conflict-of-interest rules, and members have followed them. |

144.    The City shall provide administrative support so that the PCCEP can perform the duties and responsibilities identified in this Agreement and in the PCCEP Plan.

| Status | Substantial Compliance |
|---|---|
| Analysis | The City continues to invest substantial resources to support the PCCEP. Administrative staff support includes two full-time, devoted employees, Theo Latta (PCCEP Project Director) and Claudia Claudio (PCCEP Project Assistant). Judith Mowry, a Senior Policy Advisor in the City's Office of Equity and Human Rights, continues to offer regular guidance and support to the PCCEP despite relinquishing her role as Acting Project Director. Though it took the City several |

months to fill the Project Director position with a permanent hire, the City has consistently provided ample administrative support so that the PCCEP can perform its duties. The relationship between City staff and the PCCEP's members remains professional and productive.

The City has also provided the PCCEP with logistical support, including office space independent from other City facilities, where most subcommittee meetings are routinely held; designated e-mail addresses for PCCEP members; meeting spaces across the Portland community along with food and beverages for attendees at full monthly meetings and town hall events; and technical assistance. The City has also provided contract facilitation services, which the PCCEP has accepted at times. At other times, the PCCEP has chosen to self-facilitate, with assistance from PCCEP staff. The City has engaged Open Signal to stream monthly PCCEP meetings live online, and replays are available on the PCCEP's YouTube site, *available at* https://www.youtube.com/channel/UC0W1oX39iMCY-0O-qeqLTxg, and local cable television, *see* https://www.portlandoregon.gov/pccep/78094 (linking to PCCEP Public Meetings Broadcast Times). A consequence of the PCCEP deliberately choosing to hold monthly meetings at different locations, however, has been the sporadic unavailability of bandwidth sufficient for three meetings to air live. In these cases, video replays were available within a day or two.

The PCCEP website links to numerous documents, memorializing the PCCEP's work, the COAB's work before them, and the PCCEP's administrative support staff. *See* https://www.portlandoregon.gov/pccep/ (organizing pages by tabs titled, "Library," "Reports & Recommendations," "COAB," "Meeting Agendas / Minutes," and by subcommittee). PCCEP staff have shown they are willing and able to respond effectively to community concerns regarding particular documents or other items to be linked on the PCCEP website. PCCEP staff can be contacted at: PCCEPInfo@portlandoregon.gov.

145.    To ensure constitutional policing, to closely interact with the community to resolve neighborhood problems, and to increase community confidence, PPB shall work with City resources knowledgeable about public outreach processes and the PCCEP to improve its engagement with the community.

| Status | Substantial Compliance |
|---|---|
| Analysis | PPB continues to work in good faith with City partners and the PCCEP to improve its efforts to engage the community effectively and to increase community confidence. PPB has documented its engagement efforts and, through its newly formed Office of Community Engagement, has developed a Community Engagement Plan as part of a broader five-year Strategic Plan. For information about PPB's Community Engagement and Inclusion Report, see https://www.portlandoregon.gov/pccep/article/726822; and for the Strategic Plan, see https://www.portlandoregon.gov/police/76886. PPB's Community |

Engagement Plan, which incorporates the PCCEP's input, is available at
https://www.portlandoregon.gov/police/article/744534.

The Community Engagement Plan is designed to evolve over time. The Plan
anticipates the PCCEP's continued involvement to annually assess and improve
on the initial iteration. PPB and the PCCEP have established a productive
working relationship sufficient to enable an ongoing collaboration. PPB
command staff and members of the Office of Community Engagement have
attended all of the full monthly PCCEP meetings, and most of the PCCEP's
subcommittee meetings. PPB has provided timely responses to the PCCEP's
requests for knowledgeable personnel and information relevant to the PCCEP's
community engagement work.

146.    Within 120 days of the effective date of the relevant Amendments to this Agreement, the
City, in consultation with the PCCEP, will conduct another reliable, comprehensive and
representative survey of members of the Portland community regarding their experiences with
and perceptions of PPB's community outreach efforts and accountability efforts and where those
efforts could be improved, to inform the work of the PCCEP and the development and
implementation of the Community Engagement Plan.

| Status | Substantial Compliance |
|---|---|
| Analysis | For the 2019 survey, the City engaged the same professional survey research group – DHM Research – that conducted similar surveys in 2013, 2015, and 2016. The City consulted with the PCCEP about the 2019 survey in November and December 2018. DHM finalized and administered the 2019 survey between January and March. Data collection was complete in May 2019. DHM presented the results to the PCCEP and the public, and PCCEP discussed the results at its July 2019 meeting, which can be viewed online here: https://www.youtube.com/watch?v=N3N6666BHek. The final report and data analysis are memorialized on the PCCEP's website, available here: https://www.portlandoregon.gov/pccep/article/734466. |
| | The City has empowered the PCCEP to solicit community views on issues of equitable policing and meaningful public engagement. The PCCEP is exploring recommending additional surveys to inform the evaluation and refinement of PPB's community engagement efforts, including one focused on perceptions of the City's youth and another focused on City residents having police contacts. |

147.    PPB shall continue to collect appropriate demographic data for each precinct so that the
Precinct Commander, considering any input from the PCCEP, may develop outreach and
policing programs specifically tailored to the residents of the precincts. The data shall also be
provided to PCCEP to inform its work.

| Status | Substantial Compliance |
|--------|------------------------|
| Analysis | PPB continues to collect the demographic data required by this Paragraph, which is culled from the American Community Survey of the U.S. Census Bureau. *See* https://www.census.gov/content/dam/Census/programs-surveys/acs/about/ACS_Information_Guide.pdf. The demographic data is published on the PCCEP's website. *See* PPB Precinct Demographics Report, Dec. 2018, *available at* https://www.portlandoregon.gov/pccep/article/745563. Raw Data, *available at* https://www.portlandoregon.gov/pccep/article/745564. |
| | As detailed by the Compliance Officer in its Fourth Quarter Report in 2018, PPB precinct commanders use demographic data to tailor outreach efforts. *See* ECF 196-1 at 45. PPB provided the demographic data to the PCCEP in March 2019, and reported on its community engagement and inclusion efforts at the PCCEP's March meeting. *See* https://www.portlandoregon.gov/pccep/article/728027 (report); https://www.youtube.com/watch?v=LdSHCg0Ayrc (March meeting video). |
| | The City has empowered the PCCEP to review, evaluate, and recommend improvements to PPB's community engagement and outreach activities on an annual basis. In performing this work, the PCCEP may consider precinct demographic data relevant to its analysis and recommendations. |

148.    PPB shall continue to require that officers document appropriate demographic data regarding the subjects of police encounters, including the race, age, sex and perceived mental health status of the subject, and shall provide such information to the PCCEP and make such information publicly available to contribute to the analysis of community concerns regarding discriminatory policing. PPB shall consider enhancements to its data collection efforts, and report on its efforts to enhance data collection to the DOJ by no later than December 31, 2013, and quarterly thereafter.

| Status | Substantial Compliance |
|--------|------------------------|
| Analysis | PPB continues to require that officers collect the demographic data required by this Paragraph. The data is publicly available on PPB's website. *See* Stops Data Collection, *available at* https://www.portlandoregon.gov/police/65520. PPB publishes a yearly report with more in-depth analyses of the stops data. *See* https://www.portlandoregon.gov/police/72040. The PCCEP has the data. |
| | PPB also continues to consider and report on efforts to enhance its data collection efforts. For example, to resolve concerns surrounding the collection of data related to perceived mental health status, PPB issued reminders to underscore the importance of officers completing reports timely during roll call and in videos. PPB's publicly available Open Data Portal is another notable effort to enhance data collection. The Portal catalogs a broad array of PPB-related information, such as police-officer-involved shootings, officer use-of-force reports generally, reports of bias-related crimes, and crime statistics generally. *See* PPB Open Data, |

| | |
|---|---|
| | *available at* https://www.portlandoregon.gov/police/71673. The searchable database is updated regularly with new data relevant to community concerns. |

149. The COCL, PPB, and DOJ will jointly develop metrics to evaluate community engagement and outreach. PCCEP may review these metrics and may suggest additional metrics to DOJ and PPB.

| Status | **Substantial Compliance** |
|---|---|
| **Analysis** | Over the course of meetings in January and February 2019, the Compliance Officer, PPB, and DOJ jointly developed a list of metrics to evaluate community engagement and outreach. The metrics define "community engagement and outreach" as PPB actions involving community contact, whether individually or collectively, to provide services, establish relationships and build public trust in the police as public servants." *See* ECF 197-1 at 61. The initial metrics covered four categories, including: (1) interactions with the public and general service delivery; (2) communication with the public; (3) collective engagement with the community through boards, commissions, committees and other stakeholder groups, and (4) regular reporting to the community on PPB activities. *See id.* at 61-62.<br><br>The City provided these metrics to the PCCEP. The Steering Committee delegated the task of reviewing and suggesting additional metrics to the Settlement Agreement & Policy Subcommittee, which considered the issue at its April and May meetings. *See* https://www.portlandoregon.gov/pccep/article/730254 (April subcommittee meeting minutes). After deliberation and public comment, the Subcommittee approved recommendations modifying three metrics and adding a fifth. *See* https://www.portlandoregon.gov/pccep/article/732333. The full PCCEP considered and approved the recommendations at its May meeting. *See* https://www.portlandoregon.gov/pccep/article/735685 (May meeting minutes); https://www.youtube.com/watch?v=mZytWu9k1is (May meeting video).<br><br>PPB accepted the recommendations. The five metrics as revised are:<br><br>*1. Survey data detailing public trust and confidence in PPB. PPB is expected to continue to engage with diverse community members in a manner that is fair (unbiased), respectful, and helpful. Public perceptions of the PPB and the performance of its officers are considered important metrics, as they affect public trust and confidence in the police. These can be measured through community and/or contact surveys.*<br><br>*2. Communication with the public. The PPB is expected to maintain and continue to establish conduits of information to encourage the bi-directional flow of information between the community and the PPB. These can be measured through the presence, quality, and quantity of information available on PPB's website and social media outlets.*<br><br>*3. Collective engagement with the community through boards, commissions, committees, and other stakeholder forums/groups/meetings. PPB is expected to continue to participate in a wide range of public events and groups for purposes of accountability, transparency, and public education. This participation could be* |

*measured through the presence, quality, and quantity of PPB participation in these collective events. PPB is expected to report on strategies used to engage with communities that have historically been difficult to reach, including but not limited to, people with mental illness and houseless individuals."*

***4. Regular reporting to the community on PPB activities.*** *In the interest of transparency and public education, PPB is expected to continue to report regularly to the community regarding its activities and events in the realm of community engagement (including #3 above). These can be measured through the presence, quality, and quantity of information contained in PPB's reports, website and social media outlets. PPB reports should note situations in which Bureau members engage with the community in an official capacity, but out of their patrol uniform. In addition, reports should note significant changes year over year, including number and type of contacts, to allow for historical comparison."*

***5. Integrating best practices from police departments across the country and around the world.*** *PPB is expected to report on efforts made to identify learnings from other departments and integrate those learnings into the Bureau's community engagement work. This metric includes, but is not limited to, attendance at conferences outside of Portland, training by personnel from outside of Portland, and changes to policies and practices inspired by learnings from other jurisdictions.*

The Community Engagement Plan addresses these metrics in aiming to ensure data-driven assessment and refinement, strategies for engaging with historically difficult to reach communities, and improving communications with the public. *See* https://www.portlandoregon.gov/police/article/744534. The PCCEP is tasked with holding PPB accountable to its community engagement strategies, and PPB has pledged to work with the PCCEP to evaluate the Plan in action. To that end, the City has completed the community survey required by Paragraph 146 and presented the survey analysis to the PCCEP. Likewise, PPB continues to communicate with the public, not just through the PCCEP, but also through direct contact, City Council presentations, and numerous community groups and stakeholders. In addition to the City's above-described presentations to the PCCEP, PPB has also reported on community activities in each precinct and produced the annual report as described below. PPB likewise took part in conferences, such as National Association of Civilian Oversight of Law Enforcement, and outside training with the Metropolitan D.C. Police Department.

150.   Annually, PPB shall issue a publicly available PPB Annual Report, which shall include a summary of its problem-solving and community policing activities. A draft of the Annual Report shall be provided to the PCCEP for review and comment before the report is finalized and released to the public. Once released, PPB shall hold at least one meeting in each precinct area and at a City Council meeting, annually, to present its Annual Report and to educate the community about its efforts in community policing, in regard to the use of force, and about PPB's policies and laws governing pedestrian stops, stops and detentions, and biased-free policing, including a civilian's responsibilities and freedoms in such encounters.

| Status | Substantial Compliance |
|---|---|
| Analysis | PPB released a 2017 Annual Report in December 2018, after providing a draft to the PCCEP for review and comment. *See* PPB 2017 Annual Report, *available at* https://www.portlandoregon.gov/police/article/711973. The PCCEP provided comments and made recommendations, including to release the report in a more timely fashion, acknowledge challenges in addition to accomplishments, and present the 2017 and 2018 reports in each precinct area and at a City Council hearing. *See* PCCEP Recommendation Number 004, Feb. 26, 2019, *available at* https://www.portlandoregon.gov/pccep/article/727017. PPB accepted the recommendations, pledging to incorporate responsive data in the 2018 report. |

PPB released a 2018 Annual Report in July 2019, along with translations and additional links to background information, after again providing a draft to the PCCEP for review and comment. *See* PPB 2018 Annual Report, *available at* https://www.portlandoregon.gov/police/79379. The PCCEP discussed the 2018 Annual Report at its July meeting, adopting recommendations formulated at the subcommittee level. *See* https://www.portlandoregon.gov/pccep/article/737042 (July meeting minutes); https://www.youtube.com/watch?v=N3N6666BHek (July meeting video); https://www.portlandoregon.gov/pccep/article/737446 (recommendations). PPB accepted the PCCEP's recommendations, pledging to incorporate responsive information in the 2019 Annual Report.

PPB's three precinct commanders held meetings to discuss the 2018 Annual Report on August 14 (North), August 21 (East), and August 28 (Central). *See* https://www.portlandoregon.gov/police/article/739229 (North); https://www.portlandoregon.gov/police/article/739230 (East); and https://www.portlandoregon.gov/police/article/739231 (Central). PPB's Chief, Danielle Outlaw, presented the 2018 Annual Report at the afternoon session of City Council on October 2, 2019. Her remarks are available at: https://www.portlandoregon.gov/video/player/?tab=council.

151. PCCEP shall meet as needed to accomplish their objectives as set forth in the PCCEP Plan. PCCEP shall hold regular Town Hall meetings which shall be open to the public. To the extent that PCCEP meetings are subject to the Oregon Public Meetings Law, or similar regulatory or statutory requirements, the City shall be responsible to give advice necessary to the PCCEP to ensure compliance with those laws and agrees to represent PCCEP in any challenges regarding compliance with those laws.

| Status | Substantial Compliance |
|---|---|
| Analysis | Beginning in November 2018, the PCCEP has held monthly, three-hour, open public meetings to accomplish the objectives set forth in the PCCEP Plan. *See* https://www.portlandoregon.gov/pccep/78093 (meeting agendas and minutes); https://www.youtube.com/channel/UC0W1oX39iMCY-0O-qeqLTxg (meeting videos). The PCCEP has addressed governance issues, received various |

presentations on police issues, taken public comment, and developed, discussed, and voted on recommendations regarding police-community interactions.

The PCCEP has organized into five committees: (1) a steering committee; (2) a settlement agreement and policy subcommittee; (3) a subcommittee for people with mental illness; (4) a youth subcommittee; and (5) a subcommittee addressing race, ethnicity, and other groups. The PCCEP formed these subcommittees after input from the public, including members of the amici groups, the Albina Ministerial Alliance Coalition for Justice and Police Reform (AMAC) and the Mental Health Alliance (MHA). The Steering Committee has held monthly open meetings since December 2018. *See* Steering Committee Materials, *available at* https://www.portlandoregon.gov/pccep/79067. The PCCEP's other four committees have also held regular public meetings following their formation in January 2019. *See* PCCEP Subcommittee Materials, *available at* https://www.portlandoregon.gov/pccep/78723.

The PCCEP has hosted regular, town-hall-style meetings to take public comment, including in concert with the Compliance Officer's presentation of its Quarterly Reports in January, April, July, and October 2019. The PCCEP has also held town-hall-style meetings independent of the Compliance Officer to solicit community views on policing issues, such as racial profiling, body-worn cameras, and gun violence. In sum, the PCCEP has consistently performed the work required by the PCCEP Plan and the Settlement Agreement.

152.    The City shall provide PCCEP members with appropriate training necessary to comply with requirements of City and State law.

| Status | Substantial Compliance |
|---|---|
| Analysis | The City Attorney's Office has provided multiple rounds of in-person training on the requirements of local law. The City and amicus groups have also provided background materials for PCCEP members and alternates. City staff has provided timely written and verbal responses to PCCEP member questions. The City continues to be responsive to the PCCEP's requests for training and teambuilding opportunities. The PCCEP has been generally responsive to City staff guidance with regard to process-related concerns, such as the importance of timely setting agendas so the City can announce the information to the broader community in line with public meeting laws and the PCCEP Plan. |