**J. ASHLEE ALBIES, OSB #051846**
E-mail: ashlee@albiesstark.com
ALBIES & STARK, LLC
210 SW Morrison, Ste. 400
Portland, Oregon  97204
Phone:   (503) 308.4770
Fax:      (503) 427.9292

**KRISTEN CHAMBERS, OSB#130882**
E-mail: kac@wysekadish.com
WYSE KADISH LLP
900 S.W. 5th Avenue, Suite 2000
Portland, OR 97204
Phone:   (503) 228.8848
Fax:      (503) 273.9135

*Of Attorneys for Amicus AMA Coalition for Justice and Police Reform*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:12-cv-02265-SI |
| Plaintiff, | **FEBRUARY 2020 STATUS REPORT** |
| v. | **OF THE ALBINA MINISTERIAL** |
| | **ALLIANCE FOR JUSTICE AND** |
| **CITY OF PORTLAND** | **POLICE REFORM** |
| Defendant. | |

The Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA Coalition") hereby submits its status report for the upcoming February 25, 2020 Status Conference, at which the Court will evaluate the proposed amendments to the Settlement Agreement regarding community engagement and oversight and determine whether the City is in substantial compliance with the Settlement Agreement.

I.      **Relevant Background**

At the April 19, 2018, Fairness Hearing regarding the Amended Settlement Agreement and Hearing on the parties' Joint Stipulated Motion to Enter Amended Settlement Agreement, the Court heard testimony and community input on the proposed changes to the Agreement. On May 5, 2018, the court approved most of the Amendments to the Settlement Agreement, and conditionally approved changes to Sections IX and X, related to community oversight and engagement. Dkt. 171.

On October 4, 2018, the Court revisited the community oversight and engagement provisions.  At that time, the PCCEP had been approved by City Council and the Mayor had appointed and confirmed 13 members and hired two facilitators.  Dkt. 183, p.2 & Ex. 1.  The City had begun to provide training to the PCCEP and anticipated that the committee would start meeting in November 2018.  *Id.*, pp. 19-20.  The AMA Coalition presented a number of concerns to the Court prior to the hearing, including provisions that would exclude the public from attending and participating in PCCEP meetings, lack of timely notice for adequate community involvement, lack of community outreach and education, lack of facilitator continuity, and a lack of a process for replacing alternates. Dkt. 190.  At the hearing, amicus Mental Health Alliance testified about concerns regarding loss of institutional knowledge, overloading PCCEP members, and inadequate engagement for people with mental health conditions.  Oct. 4, 2018 Hearing Trans. pp. 63-70.  The Court asked the parties how we will know if the PCCEP is working.  *Id.* at pp. 47-48.  The AMA Coalition responded that the success of the PCCEP would need to be measured in both  qualitative and quantitative terms—including the number and frequency of meetings, number of engagements in the community, adequate notice to the community, process of feedback, great enhancement of communications with and accessibility to the community, openness to the public, community trust

of police, timely and adequate investigations of police misconduct, decreased police violence, transparency, and improved community perception of police. *Id*. at pp. 48-51. The Mental Health Alliance added that a good measure of the success of the PCCEP is how it is working for people with mental illness. *Id*. at p.70. Both amici asked that the Court delay its final approval of the PCCEP for at least six months to see whether the committee could function effectively under the proposed PCCEP plan. The court agreed. *Id*. at pp. 124-125.

Prior to the next hearing, the AMA Coalition developed set of quantitative and qualitative measurements to determine whether the PCCEP was functioning effectively and whether the City should be found in substantial compliance with the community oversight and engagement sections of the Settlement Agreement.

At the June 6, 2019 status conference, the AMA Coalition testified that stability, of members, attendance, and engagement by City Council and the community, would be markers of success of the PCCEP. The AMA Coalition agreed with the Court that evaluating the implementation of the PCCEP will determine the adequacy of its infrastructure. The AMA Coalition requested that the Court wait and see how the PCCEP is functioning after a period of six months, which the Court agreed to.

## II.    The AMA Coalition's Evaluation

The AMA Coalition believes that the PCCEP plan must continue to move forward in hopes that it could be an effective community oversight body for the Portland Police Bureau. To that end, the AMA Coalition conceded on numerous issues and agreed to the eventual approval of the proposed Settlement Agreement Amendments. *See* Dkt. 157. The City has made some progress with the PCCEP including training, holding meetings, and replacing members. In addition, most of the PCCEP members seem to be well-qualified and dedicated to making the committee a

success.  However, the AMA Coalition still has serious concerns about the PCCEP.  The AMA

Coalition's current evaluation of the PCCEP's effectiveness based on the qualitative and

quantitative measurements presented to the Court prior to the June 2019 hearing is as follows:

A. Quantitative Measures

1. *Meetings Open to the Public*

While the PCCEP's regular meetings are open to the public, they have held, or have

attempted to hold (many members did not show up), several "retreats" that were not open to the

public.  The AMA Coalition is concerned that these retreats are kept private to hide difficult

discussions and controversial issues from public view.  Even if the retreats are private for

innocuous reasons, the lack of transparency about their content reduces community confidence in

the PCCEP.

2. *Number of PCCEP and Community Members in Attendance at Each Meeting*

For most of 2019, the PCCEP had only 10 to12 members (down from 13) and only 7 to 10

members were present at each meeting.  The AMA Coalition's concern that only 7 members

present at a meeting, a bare minimum quorum, does not reflect the diversity of the panel.

Moreover, there has often been an equal or lesser number of general community members

at PCCEP meetings.  The AMA Coalition is concerned that the low attendance of community

members is due to a lack of community outreach, accessibility, and effective communication

relatable to the community.

3. *Testimony Taken Before Votes*

The PCCEP has been successful at taking testimony before almost every vote.

4. *Forums for Public*

The PCCEP has increased community engagement by incorporating public testimony into

each meeting and holding a few forums around the Gun Violence Reduction Unit and Facial Recognition.  However, the COCL presentations, billed as "public forums," do not allow enough time for in depth discussion on compliance analysis and the "general public discussion" agenda item on the PCCEP agenda has rarely been held.  The AMA Coalition is concerned that the City's attempts at public forums create the appearance of compliance with the Settlement Agreement, but do not actually create the opportunity for meaningful community engagement.  The AMA Coalition believes that better time management and prioritization of community discussion in COCL presentations and PCCEP meetings would help resolve this issue.

5. *Policy Initiatives*

The AMA Coalition is aware and appreciates that the PCCEP has taken the initiative to address several policy initiatives such as the use of body cameras, content of the Portland Police Association contract, and what officers should be required to do at traffic stops.  The AMA Coalition remains concerned about the need for policies about how the City is going to address the mental health crisis and the Community Engagement Plan, as well as the need for policies prioritizing the hiring of local and diverse PPB officers, and will support PCCEP in addressing these issues as well.

6. *Developing Metrics to Measure Possible Bias in Police Stops*

The PPB's own stop data still shows a disparity in stops and searches of Black people and people of color in this city as compared to their white counterparts.  The PCCEP has not been involved in developing metrics to measure possible bias in police stops.  In fact, since the Human Rights Commission's Community Police Relations Committee, which attempted to address stop data, dissolved in early 2016 the AMA Coalition is not aware of any City-related advisory group that has publicly discussed on-going concerns about stop data.  The AMA Coalition is particularly concerned

about the absence of this work on the City's part because the Portland Police Bureau has attempted to

justify the recent over-stopping and searching of African American Portlanders by claiming

equivalence to the crime victimization rate for African American Portlanders.  *See* Stops Data

Collection 2018 Annual Report at 20, available at

https://www.portlandoregon.gov/police/article/747580.

       7.  *Contact with a Diversity of Community Members*

The AMA Coalition is concerned about the lack of contact with a diversity of community

members based upon the low attendance of diverse community members present at PCCEP

meetings.

       8.  *Internal Training*

The AMA Coalition participated in PCCEP trainings in summer of 2019, after the last court

hearing, and has been invited by the City to participate in internal 2020 PCCEP trainings.

       9.  *Independent Assessment of Implementation of Settlement Agreement*

The PCCEP attempted to provide an independent assessment of the COCL's third quarter

2019 report which found the City in full compliance with the Settlement Agreement.   The PCCEP

voted by majority to push back on the findings that the City was in substantial compliance with the

Mental Health walk-in/drop off center requirements of the Settlement Agreement.  However, after

discussing the continued officer shootings of people in mental health crises and hearing from the

Mayor and Chief that the City never promised to stop shooting people in mental health crises,

three PCCEP members abstained from the vote, and the panel was therefore unable to secure a

majority vote on PCCEP's independent assessment of the City's substantial compliance with the

Settlement Agreement.

/ / /

10. *Response to COCL Reports Including at Quarterly Town Halls*

In addition to the comments in paragraphs 4 and 9 above, the AMA Coalition has observed that PCCEP members have asked some pointed questions to the COCL.  However, the AMA Coalition is concerned that the complex historical background between the police and the community may serve to limit the scope and depth of the PCCEP members' responses to the COCL reports.

11. *Diversified Locations—Meetings in Different Communities*

The PCCEP has successfully met in a number of different locations but has indicated they want to (a) stop meeting in religious buildings like churches and (b) want to cut down to three to four locations to rotate through.  The AMA Coalition is concerned that the PCCEP's plan will lead to less accessibility for community members and reduce the diversity and meaningfulness of community involvement.

12. *Use of Diversified Cultures*

The PCCEP has made efforts at diversified cultural representation or use of diversified cultural procedures thus far, though the practice has been somewhat sporadic.

13. *Meet with Community Groups Listed in PCCEP Founding Documents, Others*

The AMA Coalition is not aware of any meetings that PCCEP has had with the AMA Coalition, Mental Health Alliance, Office of Community and Civic Life (Civic Life) and/or District Coalitions, Coalition of Communities of Color, and Civic Life's Diverse Civic Leadership partners, the Portland Commission on Disabilities, the Human Rights Commission, or the New Portlander Policy Commission.

/ / /

/ / /

14. *Ensure Diversity in PCCEP Membership*

The PCCEP is made up of a number of diverse members, but as the COCL notes as well, the majority of members have been male.

15. *Maintain Active List of Trained Alternates so Quorum is Always Met*

The PCCEP burned through its original alternates quickly and more alternates had to be selected. The AMA Coalition understands that the City is currently working on fixing the problem of a lack of alternates by recruiting new youth alternates and considering taking rolling applications. The AMA Coalition is concerned that rolling applications will make it impracticable to provide the amount and type of training that is necessary for new members.

16. *Announcements of Meetings at Least Two Weeks in Advance to Mass Media, Community Media, and Community*

The City has generally been successful at announcing PCCEP meetings at least two weeks in advance. However, the City has not been as successful in its announcements for PCCEP Subcommittee meetings of in announcing/updating meeting agendas. The AMA Coalition remains concerned that if all meetings and agendas are not announced at least two weeks in advance, fewer community members will be able to attend because they are unavailable or are unsure whether a particular meeting will cover topics which they are interested in.

17. *Active Work of Subcommittees*

Most of the PCCEP Subcommittees meet regularly, and several have put forward recommendations. The AMA Coalition is concerned because the Mental Health Subcommittee only had one PCCEP member on it starting in May 2019 and is now thinking of folding.

18. *Engage all of City Council, not just the Mayor, on Progress of PCCEP and PPB*

PCCEP members testified before City Council when new members were appointed and when the PCCEP plan was modified. The AMA Coalition strongly urges City Council to remain

sufficiently informed about the PCCEP and to continue involvement now that the PCCEP is established.

> B. Qualitative Measures

> > *1. Change and Transformation in the Relationship between Portland Police and the Community, in Particular Communities of Color, Houseless Persons and Persons with Mental-Illness or Perceived Mental-Illness*

> > While the AMA Coalition sees that the PPB has engaged with some community members in a more positive way on an individual level, it has not been a widespread change and transformation with the above groups.  While the AMA Coalition realizes this takes time, the PPB is capable of de-escalation and investing in communities, and the patrol level officers must be on board.

> > *2. Reduction of Use of Force and Increase of De-escalation*

> While the numerical data show less force, we are still seeing too much force used against protestors, and too much force including deadly force against houseless persons, people with mental illness, and people of color.

> > *3. Reduction of Disproportionate Policing of Communities of Color, Houseless Persons and Other Vulnerable Communities*

> The AMA Coalition continues to have grave concerns about PPB's disproportionate policing of communities of color and other vulnerable communities.  Stop data and studies continue to show over policing of these communities, and the devastating impacts of this problem.

> > *4. Use Stops Data / Force Data / Arrest Data to Measure Progress*

> Rather than acknowledge that this pervasive problem of use of force, arrest, and stop data disproportionately impacting communities of color and vulnerable populations, the PPB attempts to reframe the issue of data collection, rather than attempt to address these concerns through training and policies.

*5. Transformation in the Portland Police Culture of "Us" Against "Them"*

The AMA Coalition continues to raise concerns about the rhetoric from the PPB: those advocating for accountability do so because they see the devastating impacts of the lack of that accountability. Members of the PPB who claim that those seeking accountability are fostering an "us" versus "them" culture fail to acknowledge the basis for that distrust: the legacy of the lack of accountability, lack of transparency, and continued over policing of communities of color.

*6. Surveys that are Meaningfully Inclusive of Communities of Color*

The AMA Coalition is not aware of how inclusive of communities of color the surveys initiated by the City or the PCCEP have been. The AMA Coalition strongly believes that surveys need to be designed and distributed in such a way that encourages more participation of persons of color.

*7. Engagement of the Community Reflected in Meeting Attendance/Participation*

As described above, the AMA Coalition remains concerned about the lack of a broad representation of community members at PCCEP's general meetings.

## III.    Conclusion

The AMA Coalition is concerned about the lack of overall change to the Portland Police Bureau incidents of violence against people of color and people with mental illness since the inception of the Settlement Agreement. There were eleven deadly force incidents in just over fourteen months in Portland from September 30, 2018 until the end of 2019, at least five of which involved the deaths of people in mental health crisis. The February OIR Group report on PPB deadly force showed deadly force against people in mental health crisis went up from 55% to 65% after the Settlement Agreement went into effect.

/ / /

For the reasons stated, the AMA Coalition believes the City should not be in "substantial compliance" with the community oversight and engagement and mental health crises sections of the Settlement Agreement, that the Court should schedule another hearing in six months, and order a local person to serve as independent court monitor to evaluate the City's progress in meeting the qualitative and quantitative measures identified by the AMA Coalition.

In conclusion, the AMA Coalition remains committed to bringing a community voice to this very important process. Consistent with the AMA Coalition's collaborative agreement with the DOJ and City, the AMA Coalition agrees to advocate for the implementation of the Settlement Agreement and PCCEP reforms that the AMA Coalition supports, and will oppose any attempts to weaken or dilute the Settlement Agreement and PCCEP reforms that it supports. The AMA Coalition strongly urges the court to not rush through the Settlement Agreement, particularly when it comes to community oversight and engagement, and to allow more time for the City to demonstrate its plan will be effective.

DATED: February 24, 2020

Respectfully Submitted,

*/s/ J. Ashlee Albies*
J. Ashlee Albies, OSB # 051846
ashlee@albiesstark.com

*/s/ Kristen A. Chambers*
Kristen A. Chambers, OSB # 130882
kac@wysekadish.com