ROBERT TAYLOR, OSB# 044287
City Attorney
Email: robert.taylor@portlandoregon.gov
HEIDI K. BROWN, OSB# 922410
Chief Deputy City Attorney
Email: heidi.brown@portlandoregon.gov
DENIS M. VANNIER, OSB# 044406
Senior Deputy City Attorney
Email: denis.vannier@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Suite 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
        *Of Attorneys for Defendant City of Portland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | **3:12-cv-02265-SI** |
| **PLAINTIFF,** | |
| v. | **CITY OF PORTLAND'S MEMORANDUM FOR FIFTH STATUS CONFERENCE** |
| **CITY OF PORTLAND,** | |
| **DEFENDANT.** | |

## I.       INTRODUCTION

The City of Portland (City) is committed to public safety reform and the

goal of changing its systems and institutions to better serve all members of our community.  The

settlement agreement between the City and the United States is part of this commitment to

change, with particular focus under the agreement on change for policing of individuals with

perceived or actual mental illness or those experiencing a mental health crisis.

//

Page  1 – CITY OF PORTLAND'S MEMORANDUM FOR FIFTH STATUS CONFERENCE

In January 2020, the United States found the City in substantial compliance in all areas of the settlement agreement. While the City began the year in substantial compliance, the COVID-19 pandemic struck in March 2020 and caused significant changes to how people in the City lived and worked. In May 2020, George Floyd was murdered by police in Minnesota, and people across the nation – and the world – began demonstrating to advance the racial justice movement. Portland saw many demonstrations throughout the summer of 2020 and into the early winter, with the deployment of additional federal law-enforcement personnel to Portland in July 2020 contributing in part to a prolonged and difficult situation.

In February 2021, the United States found the City no longer in substantial compliance in four of the nine sections of the settlement agreement: Section III – Use of Force; Section IV – Training; Section VIII – Officer Accountability; and Section IX – Community Engagement and Creation of Portland Committee on Community Engaged Policing.

The City's work related to the remaining areas of the settlement agreement reflected success. The United States found the City continued in substantial compliance in Section V – Community-Based Mental Health Services; Section VI – Crisis Intervention; and Section VII – Employee Information System (EIS).

The City also has done substantial work in standing up the Portland Committee on Community-Engaged Policing (PCCEP) and renews its motion for the Court to formally recognize the hard work of this committee and grant final approval to the 2017 amendments. The PCCEP deserves an established and approved framework that sets forth its authority and its responsibilities as it undertakes its challenging and important work. The PCCEP and the parties also need the clarity of knowing that the terms they must meet to achieve compliance as it relates to PCCEP are settled.

## II.    AREAS OF PARTIAL COMPLIANCE

The United States found the City in only partial compliance, but no longer in substantial compliance, in four areas of the settlement agreement: Use of Force, Training, Officer

Page  2 – CITY OF PORTLAND'S MEMORANDUM FOR FIFTH STATUS CONFERENCE

Accountability, and Community Engagement. The City is actively working to regain substantial compliance in these critical areas.

1.   USE OF FORCE

Under the Use of Force section of the settlement agreement, the United States found that some of the uses of force that occurred during the nightly crowd control events between May 29 and November 15, 2020, did not comport with the requirements of the settlement agreement.

The United States and the City agree that there were issues with the use of force during crowd control events in 2020. There were sometimes misapplications and violations of the use of force policy. The City's review of use of force reports, the After Action Report (AAR), did not always meet the requirements of the agreement or policy. Some AARs were not done within the timelines required by the settlement agreement. There were AARs where the supervisor did not perform the required thorough investigation. There were times when there were misunderstandings of the law and policy relating to use of force in crowd control situations.

Over the course of the protests of 2020, the Portland Police Bureau (PPB) attempted to redress the shortcomings in the system. PPB specifically assigned sergeants to act as After Action supervisors rather than requiring supervisors who were on scene for hours on end, day after day, to review and assess uses of force. While this helped somewhat with the timeliness of After Action investigations, other issues remained.

After the protests of 2020, PPB developed strategies to better ensure timely and thorough investigation of uses of force. PPB requires that, even in crowd control situations, when there are uses of force, the assigned After Action sergeants' interview of the involved officer and witnesses occur before they are released at the end of their shift, even if the officers have been on duty for several hours or for multiple days. Additionally, officers working protest events will, in most circumstances, not do so for more than ten consecutive days. Information was shared with PPB members to help address the misunderstandings of law and policy, and these issues will be addressed more thoroughly in a training that starts September 1, 2021. City Council provided

Page  3 – CITY OF PORTLAND'S MEMORANDUM FOR FIFTH STATUS CONFERENCE

PPB with funding to purchase Office365, which includes SharePoint and can be used to better track force reports and AARs for timeliness. The City is also giving serious consideration to body worn cameras, which will assist with the thoroughness of reviews of uses of force and with accountability.  The City is exploring other avenues to further review and assess the events of 2020 so as to provide more information about what went wrong and how to best remedy these issues going forward.

Finally, even with all of the challenges of 2020, the City was able maintain substantial compliance with the settlement agreement for all uses of force that occurred outside of the crowd control events. This positively reflects on the changes that the City has accomplished during the course of the settlement agreement.

2.  TRAINING

PPB developed a training program that was found in substantial compliance in early 2020. In the fall of each year, the PPB Training Division performs a needs assessment from the prior year that informs the training schedule for the following year.[1] The specifics of the needs assessment is detailed in paragraph 79 of the settlement agreement. There were several paragraphs under the Training section of the settlement agreement where the City maintained substantial compliance.

Unfortunately, training also suffered as a result of the events of 2020. One key component of the settlement agreement's Training section is the requirement for scenario-based training, in addition to traditional lecture-based training. Scenario-based training requires in-person practice of situations officers may face in the field. While all PPB members received their required annual lecture-based training, this training occurred moved to a virtual format after March 2020. Only about half of PPB members received their annual scenario-based training since it was not finished when the pandemic broke out. As COVID-19 hit in full force, the City

---

[1] PPB may add other trainings throughout the year as necessary, but the needs assessment provides PPB with information to guide the decision making around the issues that are ultimately calendared for the following year.

Page  4 – CITY OF PORTLAND'S MEMORANDUM FOR FIFTH STATUS CONFERENCE

moved to virtual and telework as work allowed, limiting in-person contact to the extent possible. In-person training halted.

In-person training was delayed until 2021. As of the end of May 2021, the scenario-based training originally scheduled for 2020 finally concluded, and the City redressed the Training compliance issue from 2020.

### 3. OFFICER ACCOUNTABILITY

For the most part, the City remained in substantial compliance in this section of the United States' compliance report. PPB's Internal Affairs Division continued to complete a high percentage of its investigations within the 180-day required timeline. However, the timeliness of investigations by the Independent Police Review (IPR) suffered, and as a result the City was no longer in substantial compliance for Officer Accountability. The United States raised a few concerns with officer accountability that were addressed at the time.[2]

_____

[2] In regard to officer accountability concerns raised by the United States that were not timeliness of investigations, these issues often involved circumstances of first impression. In one instance, an officer struck someone in the head and contended it was unintentional. The matter was sent to Internal Affairs for investigation to determine if it was excessive, however, the provisions of the deadly force directive were not immediately implemented, as the force was reported as unintentional and only intentional head strikes are considered "deadly force" under the deadly force directive. Once a question arose about the intentionality of the strike, the United States and the City engaged in discussions, and agreed to implement the provisions of the deadly force directive. Part of the issue related to the fact that the provisions of the deadly force directive focus on actions bureau members must take at the scene of a deadly force incident, and these actions are not transferable when the event is determined to be deadly force days after the incident. The directive for assessing whether the use of force is excessive is the same, whether deadly or non-lethal force is used, so accountability still exists.

Page  5 – CITY OF PORTLAND'S MEMORANDUM FOR FIFTH STATUS CONFERENCE

Like PPB, IPR was impacted by COVID-19 and the protests. The number of complaints filed with IPR increased significantly during the protests of 2020, and IPR simply did not have the staff to handle the influx of investigations. Additionally, many complaints were based on video that did not provide the name of the person impacted by the use of force. IPR made valiant efforts to find those impacted by uses of force; sometimes their efforts were successful, and other times they were not. In either instance, the time spent trying to find people caused significant delays in investigations.

In response to the concerns raised by the United States, the Auditor, who oversees IPR, temporarily moved staff to IPR from other divisions in her office to help with the backlog of cases. IPR has resolved the majority of this backlog; a few matters remain outstanding, but the settlement agreement provides for a tolling of the timeline in many of those instances. Looking prospectively, the vast majority of cases are timely.

The United States also raised concerns about the new Community Police Oversight Board and how a transition from IPR to this Board will occur. In November 2020 the voters of Portland amended the City Charter to provide for a community oversight board for certain police misconduct cases. In July 2021, Council adopted a Resolution creating a commission tasked with writing the procedures, powers, definitions, and other details of the Oversight Board. The Resolution further provided that the commission will perform this task over the course of eighteen months. The commission will report its recommendations to City Council. City Council will then make a final determination as to the various aspects of the Oversight Board. Thereafter, the City will start the process of finding members for the Oversight Board, and of staffing investigators and others to serve the needs of the Board.

The United States raised concerns about the transition from IPR to the Oversight Board. The City was already in the process of addressing concerns regarding existing IPR staff and their roles leading up to, and after, the transition to an Oversight Board. In its adopted budget for

Page  6 – CITY OF PORTLAND'S MEMORANDUM FOR FIFTH STATUS CONFERENCE

fiscal year 2021-2022[3], City Council committed to funding the existing positions through the transition to the Oversight Board. Council also agreed in a budget note to find equivalent positions for IPR staff within the City so that they would not fear that they would no longer be employed once the new Oversight Board was implemented. The City continues to work to find suitable solutions to other concerns that IPR staff have about their future, so as to maintain their vital work during the transition.

4.   COMMUNITY ENGAGEMENT

The last area where the United States found the City no longer in substantial compliance is community engagement. Under paragraph 150 of the settlement agreement, PPB issues a publicly available Annual Report and then holds a meeting in each precinct and at a City Council meeting annually. PPB has three precincts. In 2020, PPB presented the Annual Report to City Council and presented it at two precinct meetings but did not present it at the third precinct.[4] PPB committed to presenting the Annual Report earlier the following year, and Mayor Wheeler acknowledged the need for this.

In 2021, PPB scheduled presentation of the Annual Report to City Council on August 18, 2021, and scheduled presentation at the precincts for August 17, 18, and 19, 2021. The City is committed to presentation of the Annual Report at all required locations each year by the end of summer and does not anticipate future problems with this.

5.   AREAS OF SUBSTANTIAL COMPLIANCE – COMMUNITY-BASED MENTAL HEALTH SERVICES, CRISIS INTERVENTION, AND EMPLOYEE INFORMATION SYSTEM

The City maintained substantial compliance under the settlement agreement in three areas: Community-Based Mental Health Services, Crisis Intervention, and Employee Information System (EIS).

---

[3] The City's fiscal years runs from July 1 through June 30.
[4] The nightly protests and a COVID outbreak impacted the ability to hold it at the third precinct.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
PHONE: (503) 823-4047
FAX: (503) 823-3089

In the area of Community-Based Mental Health Services, the City remained in substantial compliance. PPB's Behavioral Health Unit continues to work closely with outside entities to help provide addictions and mental health services to those in need. PPB works with several other stakeholders in various committees to continually assess and address the needs of those interested supportive services for addiction and mental health.

The City also remained in substantial compliance for its implementation of the Employee Information System (EIS). EIS is used to track data and provides information of trends or patterns of behavior that need attention.

Under the Crisis Intervention section, there are a number of requirements, all of which the City continued to maintain substantial compliance. The City continues, as required by the settlement agreement, the Behavioral Health Unit (BHU), and the Behavioral Health Unit Advisory Committee. As noted by the United States in its compliance report, the "BHU exemplifies the City's effort to coordinate law enforcement activity with the broader behavioral health system to aid people in crisis resulting from known or suspected mental illness and/or addiction." ECF 236-1, United States Compliance Report, p. 32.

The City also continues to ensure that all officers are trained in crisis intervention. Some officers undertake additional training in crisis intervention (i.e. enhanced crisis intervention training), and these officers are part of a team that are sent to respond to particular calls. The City adopted a model of crisis intervention response that was based on the "Memphis Model" and approved by the United States. Under this model, 911 dispatchers send specially trained officers to respond as primary officers to pre-identified calls including certain suicide calls and other similar call-types involving mental health crises.

The City recently implemented the Portland Street Response. Portland Street Response provides first responders trained in behavioral health, crisis intervention, and on-scene medical assistance to people who may be experiencing a mental health crisis or have a health concern that does not immediately threaten their lives. Portland Street Response's current team is staffed with

Page  8 – CITY OF PORTLAND'S MEMORANDUM FOR FIFTH STATUS CONFERENCE

a qualified mental health professional and a paramedic. While not required by the settlement agreement, Portland Street Response is an example of the City's commitment to change and service to community members.

6.   THE COURT SHOULD GIVE FINAL APPROVAL TO THE STIPULATED AMENDMENTS TO SECTIONS IX AND X OF THE SETTLEMENT AGREEMENT

On May 15, 2018, this Court conditionally approved the amended settlement agreement, except those paragraphs pertaining to community engagement and oversight. The City urges this Court to formally recognize the excellent work of the Portland Committee on Community-Engaged Policing (PCCEP) and fully approve the amendments. The City therefore renews its motion to approve those amendments (ECF 157).

PCCEP has made a great deal of progress since the last Status Conference. During the summer of 2020, PCCEP held a handful of weekly listening sessions on Zoom to hear community reactions to the murder of George Floyd and the resulting protests in Portland. Attendance at these listening sessions ranged from 100 to 300 people. These listening sessions resulted in recommendations to PPB, many of which were accepted by PPB. PCCEP formed a Racial Justice subcommittee, where space was provided for people from differing racial identities to share their experiences with police. Like PCCEP's other committees, this subcommittee continues to meet monthly. Also of note is PCCEP's Behavioral Health subcommittee. Most members of this subcommittee are persons with lived experience. This subcommittee has formed relationships with the PPB Behavioral Health Unit and they regularly meet to discuss ways that PPB's Behavioral Health Unit can better engage with individuals with lived experience.  This is a small sampling of the critical work of the PCCEP during 2020, but reflects the importance of the committee itself, as well as the value of formal recognition by this Court.

//

//

Page  9 – CITY OF PORTLAND'S MEMORANDUM FOR FIFTH STATUS CONFERENCE

7.   CONCLUSION

In 2020, the world, the nation, and the City of Portland, faced serious and significant issues – a pandemic that continues today, a demand for true racial justice, and prolonged demonstrations in Portland.  The City of Portland, our nation, and our world, must do better moving forward. The City is committed to doing so, both within the context of the settlement agreement with the United States, and beyond.

Dated:  19th day of August 2021.

Respectfully submitted,

*/s/ Robert Taylor*
ROBERT TAYLOR, OSB# 044287
City Attorney
Email: robert.taylor@portlandoregon.gov

HEIDI K. BROWN, OSB# 922410
Chief Deputy City Attorney
Email: heidi.brown@portlandoregon.gov

DENIS M. VANNIER, OSB# 044406
Senior Deputy City Attorney
Email: denis.vannier@portlandoregon.gov
*Of Attorneys for Defendant*

Page  10 – CITY OF PORTLAND'S MEMORANDUM FOR FIFTH STATUS CONFERENCE