**J. ASHLEE ALBIES, OSB #051846**
E-mail: ashlee@albiesstark.com
ALBIES & STARK, LLC
1 S.W. Columbia Street, Suite 1850
Portland, Oregon  97204
Phone:   (503) 308.4770
Fax:       (503) 427.9292

**KRISTEN CHAMBERS, OSB#130882**
E-mail: Kristen@prism-legal.com
Prism Legal LLC
3519 NE 15th Ave., Ste. 424
Portland, OR 97212
Phone:    (503) 809.0902

*Of Attorneys for Amicus AMA Coalition for Justice and Police Reform*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:12-cv-02265-SI |
| Plaintiff, | **AUGUST 2021 STATUS REPORT OF** |
| v. | **THE ALBINA MINISTERIAL** |
| | **ALLIANCE COALITION FOR** |
| **CITY OF PORTLAND** | **JUSTICE AND POLICE REFORM** |
| Defendant. | |

The Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA

Coalition") hereby submits its status report for the upcoming August 24, 2021 Status

Conference.

## I.    IN REMEMBRANCE OF DR. T. ALLEN BETHEL

This will be the first status conference since the passing of Albina Ministerial Alliance

Coalition for Justice and Police Reform's Co-Chair Dr. T. Allen Bethel in December 2020. His

contribution to making Portland a more just City cannot be overstated, and his engagement with Portland Police and this case on behalf of the community in particular was consistent with his adage: "this a marathon, not a sprint." Dr. Bethel understood to get it right, we have to be engaged and adaptable. The AMA Coalition appreciates and honors Dr. T. Allen Bethel with its continued work.

## II.    SUMMARY OF CURRENT STATUS REPORT

2020 was a year unlike any other. COVID-19 rapidly disrupted almost every facet of life, and the police murder of George Floyd ignited a movement against police violence with heightened momentum in support of Black Lives.

In response to these unprecedented and massive protests against police violence in Portland, in the summer of 2020, the Portland Police Bureau ("PPB") used crowd control weapons against largely peaceful protestors, journalists, legal observers, and medics on an epic scale, using tear gas and pepper spray indiscriminately against large crowds, until Oregon federal judges placed and enforced limits on their use. *See generally Don't Shoot Portland, et al. v. City of Portland*, 3:20-cv-00917-HZ; *Index Newspapers LLC v. City of Portland*, 3:20-cv-01035-SI; VanderHart, Dirk, "Federal Judge Places Formal Restrictions On Tear Gas At Portland Protests," *Oregon Public Broadcasting ("OPB")*, June 9, 2020, *available at* https://www.opb.org/news/article/tear-gas-ban-portland-judge-lawsuit-dont-shoot/[1]; Wilson, Conrad "Federal judge finds Portland in contempt for violating order that limited use of tear gas, other munitions," *OPB,* Nov.30, 2020, available at https://www.opb.org/article/2020/12/01/federal-judge-finds-portland-in-contempt-for-violating-order-that-limited-use-of-tear-gas-other-munitions/; Wilson, Conrad, "Judge orders sanctions on

---

[1] All online news publications cited herein were last accessed on 8/22/2021.

Portland police over crowd control, Oregon Public Broadcasting," March 17, 2021, *available at* https://www.opb.org/article/2021/03/17/portland-police-bureau-sanctions-crowd-control/.

By the end of 2020, there were over 6,000 documented reports of PPB using force against protesters. PPB failed to follow its own policies for the vast majority of these force incidents, and PPB validated officers' actions with little or no critical assessment. While PPB blames the protesters for this failure, as stated by Assistant U.S. Attorney Jared Hager "it was PPB's use of force, not the demonstrations, that revealed the city's force reporting/reviewing systems and its accountability systems to be inadequate." Levinson, Jonathan "After Portland police used force 6,000 times, federal attorneys crack down," *OPB*, March 26, 2021, *available at* https://www.opb.org/article/2021/03/26/portland-police-use-of-force-department-of-justice/.

In the United States Department of Justice ("DOJ")'s Fifth Periodic Compliance Assessment Report, it found the City failed to implement the following terms of the Agreement: Section III -- Use of Force, Paragraphs 66, 67,  69, 70, and 73; Section IV -- Training, Paragraphs 78 and 84; Section  VIII -- Officer Accountability, Paragraphs 121, 123, and 169; and Section IX - Community Engagement and Creation of Portland Committee on  Community Engaged Policing, Paragraph 150. Dkt. 236-1.

As Court has likely seen, the Compliance Officer and Community Liaison ("COCL")'s recent 2021 Quarterly Report: Quarter 1 Updates & Analysis (8/23/21)("COCL Q1"), [2] raises serious concerns with the City's implementation and compliance with use of force, reporting, and accountability during 2020, and ultimately found the City:

/ / /

___

[2] Available at
https://static1.squarespace.com/static/5a319f76a9db0901e16c6433/t/6122f452e314a8784374dedb/16296807262
98/Q1+2021+COCL+Compliance+and+Outcome+Assessment+Quarterly+Report+FINAL+08232021.pdf

A.  Out of compliance in the areas of Use of Force (¶¶ 74-77), EIS (¶¶ 116-119), Community Engagement (¶ 144);

B.  In partial compliance in the areas of Use of Force (¶¶ 66, 67, 69, 70, 73), Accountability (¶ 121), and Community Engagement (¶ 150); and

C.  At risk of falling out of compliance in the area of Training (¶¶ 79, 84, 86).

In response to these compliance ratings and feedback and a demand from the COCL that the PPB provide a comprehensive self-assessment of the 2020 protests, the City's response was, generously speaking, subpar. *See* COCL Q1, pp. 3, 5, 15-16, Appx. A. The DOJ has not had a chance yet to assess whether the City is out of compliance in all of the areas found by the COCL (because of the timing of the different reports), and the AMA Coalition believes the DOJ's next report is likely to find the City in further noncompliance. The AMA Coalition will be joining the other parties to mediate these issues as required by the Agreement.

While the AMA Coalition has primarily focused its attention on the area of Community Engagement to assist and assess compliance with the Agreement, the spirit of the Agreement has always been to transform the culture of the PPB to a community-focused entity. The City continues to refuse to engage in deep self-reflection on use of force and meaningful community engagement, and to take accountability for its escalation of violence at the protests last summer. Without doing so, the City and PPB will not make progress towards resolution of this case, nor will it become a viable public safety organization.

## III.    AMA COALITION ACTION SINCE LAST STATUS HEARING

The Collaborative Agreement between the AMA Coalition, the DOJ and the City, Dkt. 55, states, "the AMA Coalition agrees to advocate for the implementation of the Settlement Agreement reforms that the AMA Coalition supports. The AMA further agrees to oppose any

attempts to weaken or dilute the Settlement Agreement reforms that the AMA Coalition supports." *Id.* at ¶ 8. Since entry of the Agreement, including at the annual status conferences, the AMA Coalition has been vocal regarding its concerns about implementation of the community oversight and engagement pieces of the Settlement Agreement. In addition, the AMA Coalition has consistently engaged with the other parties regarding these pieces of the Settlement Agreement.

The AMA Coalition has sent out notification about all PCCEP meetings to which the City gave advance notice, even in frequent cases where notification was less than two weeks. In addition, the AMA Coalition has participated in the following meetings and trainings since the last status conference:

- Met with the PCCEP and introduced the metrics articulated at the last status conference;
- Attended major PCCEP training on November 24, 2020, and provided ongoing support and additional training as requested;
- Met with the Mental Health Alliance to discuss issues relevant to this matter;
- Participated in PCCEP training on July 15, 2021; and
- Met with youth leaders in Oregon to discuss police reform.

## IV.  COMMUNITY ENGAGEMENT

### A.  Building Trust

The community's distrust of PPB and the City has worsened since implementation of the Settlement Agreement began. If PPB and the City want to gain trust of the community, so that they must show that they are responding to community demands to change the culture of policing and holding them accountable.

/ / /

The City also needs to expand investments in diversity and transparency to build trust amongst Portland's many communities. If community members do not see themselves as important members of the City and treated with respect, then it is unlikely that communities will grow to trust the City.

### B. Accessibility

The AMA Coalition maintains its concerns about the timing of the City's announcements to the public about important community engagement events. The AMA Coalition has raised these concerns at nearly every status conference, and with the City on an ongoing basis. The City in general sends out timely notices, but there are still some lapses, including those described below regarding the PPB annual report. These lapses result in fewer community members engaging in this process.

### C. PCCEP

The AMA Coalition remains supportive of the Portland Committee on Community Engaged Policing ("PCCEP") and appreciates the PCCEP's community engagement in the aftermath of George Floyd's murder. PCCEP has made substantial progress since the last hearing. The AMA Coalition is committed to continue to work in collaboration with the PCCEP and continues to attend PCCEP meetings and send the meeting announcements to its large email list. In addition, the AMA Coalition maintains its position that to truly engage with the Portland community, PCCEP **needs to hire a local grassroots community organizer** for outreach and engagement.

At the 2018 Status Conference, after discussion with the Court about developing metrics to measure the PCCEP's effectiveness, the AMA Coalition developed set of quantitative and

/ / /

qualitative measurements to determine whether the PCCEP was functioning effectively, and presented them for the June 6, 2019 Status Conference. *See* Dkt. 220, pp. 4-10.

In response to the Court's request at the February 2020 Status Conference, the AMA Coalition and the MHA developed metrics for the PCCEP to assess its success, attached hereto as Exhibit 1. After meeting with and presenting the metrics to the PCCEP, to the AMA Coalition's disappointment, in September 2020 the PCCEP voted not to adopt the proposed metrics, but rather to use them as guidelines. The AMA Coalition believes this is a product of the City's selective[3] hands-off approach to the PCCEP, which has hampered community engagement and the success of implementing the Settlement Agreement.

While the AMA Coalition believes the PCCEP is still a work in progress, the City/PCCEP has met many of the quantitative metrics. For example, PCCEP meetings are open to the public (except for "retreats"), attendance has been up, it takes public testimony before votes, it has held many public forums and internal trainings with AMA Coalition and MHA participation, it has expanded its diversity of members, and has active subcommittees.

However, the City/PCCEP has still not met some of the quantitative metrics, including announcing meetings at least two weeks in advance to mass media, community media, and community, and having a website that is easy to navigate and encourages dissemination of information to the community.

The qualitative measures are the crux of this lawsuit. The City/PCCEP has been charged with changing and transforming the relationship between Portland Police and the community, in particular, communities of color, houseless persons, and persons with mental illness or perceived mental illness.

---

[3] For example, by way of contrast, the Mayor assigned PCCEP to review "Core Patrol Services" and to set up the Truth and Reconciliation commission.

The past year has demonstrated continuing mistrust by the community of the PPB, most visibly by the PPB's forceful response to the 2020 summer demonstrations, several high-profile police killings – including of Robert Delgado and Michael Townsend – both experiencing mental health crises at the time they were killed, and the PPB sweeps of various houseless encampments. Instead of decreasing use of force overall, PPB increased its use of force to astronomical numbers against protesters protesting against police violence.

The AMA Coalition continues to have grave concerns about PPB's disproportionate policing of vulnerable communities. Stop data and studies continue to show the City continues to over-police communities-of-color instead of supporting efforts to reduce the type of calls to which PPB must respond.

The AMA Coalition believes that the City's regressions over the past year clearly show that the PCCEP framework still needs significant work. The City continues to NOT be in substantial compliance with the amended Sections IX and X of the Settlement Agreement, and therefore it is premature for the Court to give final approval to the amendments.

## V.    OFFICER ACCOUNTABILITY

### A. New Police Oversight Board

The new Portland police oversight body, intended to replace the Independent Police Review, passed the electorate with about 82% voting in favor. The AMA Coalition has been calling for an oversight body like this since 2003, and AMA Coalition members were instrumental in organizing support for the ballot measure through public presentations to various community groups, seeking endorsements, and participating in educational events. Now that the measure is in the implementation stages, the AMA Coalition continues to urge the City and the DOJ to make any necessary changes in the Settlement Agreement for full implementation of the

new oversight body and calls on the Portland Police Association to support implementation as well.

AMA Coalition Steering Committee member Dan Handelman has been selected in his individual capacity to serve as a commissioner to help implement the body.

## B.  Use of Force

The City's lack of accountability for PPB's actions last year is unacceptable. As mentioned above, the City's conclusion that almost all of the 6,000+ uses of force by the PPB in 2020 were within policy is called into question by the PPB's clearly excessive use-of-force incidents that were captured on camera during the protests. In addition, despite the uptick in civilian-on-civilian gun crimes in 2020 and 2021, none of the six people PPB shot had a real firearm: Joshua Lyle Merritt, Michael Ray Townsend, Darren Carr, Robert Delgado, David Dahlen, Gray Tristan Stockton.

Furthermore, in *Don't Shoot Portland et al. v. City of Portland*, Judge Hernandez found PPB Officer Brent Taylor's conduct had violated the existing temporary restraining order ("TRO") limiting the circumstances in which PPB could use force during demonstrations, specifically finding Taylor's of force against protestors unjustified, and ordered him removed from the RRT team pending internal investigation. Riski, Tess, "Are Protest Banners Weapons? Sometimes, Say Portland Police," *Willamette Week,* July 21, 2021, https://www.wweek.com/news/city/2021/07/21/are-protest-banners-weapons-sometimes-say-portland-police/. The IPR and PPB examined the same conduct the Court found had violated the TRO, and found it within PPB's use of force policy, in other words, the City's determination was inconsistent with Judge Hernandez's ruling. *Id.* Likewise, a training on the Court's temporary restraining order, as ordered by the Court, was lackluster. COCL Q1, p. 24.

Lastly, Officer Corey Budworth was indicted for hitting a protestor in the head with a baton, but his conduct was found by the City to be within policy. *See* Washington Post Article "*Portland officer was recorded hitting a protester with a baton. He's charged with assault.*" by Derek Hawkins dated June 16, 2021, *available at*

https://www.washingtonpost.com/nation/2021/06/16/portland-officer-indicted-baton-protest/;

Reaume, Genevieve, "Portland Police union claims officer use-of-force indictment is political," *KATU2,* June 15, 2021, available at https://katu.com/news/local/portland-police-union-believes-officer-use-of-force-indictment-is-political.

The Multnomah County District Attorney, two federal judges, the DOJ and the COCL have made findings of force or raised concerns with the City and PPB's conduct that are directly contradicted by the City's own assessment. The City and PPB have not provided any further self-assessment in response to the DOJ and the COCL's feedback on their initial After Action Review. COCL Q1, p. 15-16, 18, 20. To truly be a community focused organization, the City and PPB must hold themselves accountable with true self-reflection and an acknowledgment of their past errors in order to move forward and create lasting change.

## C.  Bias Based Policing

The PPB's own data continues to reflect disparate policing of Black and minority people in its stops, searches, and seizures. COCL Q1, p. 64; PPB Stops Data Collection 2020 Annnual Report, August 3, 2021, at pp. 12-14, 19, available at

https://www.portlandoregon.gov/police/article/785420. The AMA Coalition remains concerned about disproportionate use of force against Black people: for example, a Black Portland resident was struck in the head by a PPB officer when he went to complain to PPB members about the tear gas seeping into his home. Eadens, Savannah, "Portland man files $400,000 lawsuit

accusing police detective of hitting him with baton," *The Oregonian,* May 27, 2021, available at

https://www.oregonlive.com/portland/2021/05/portland-man-files-400000-lawsuit-accusing-police-detective-of-hitting-him-from-behind-with-baton.html.

In late June of 2021, PPB implemented two protocols to address its racial disparities in traffic stops. First, officers will no longer prioritize making traffic stops for the enforcement of low-level traffic infractions, like expired tags or minor equipment issues, that are not immediate public safety threats; other cities that enacted similar policies saw a reduction in racial disparities in their traffic stop data, and the AMA Coalition will continue to monitor the data. Second, officers will follow new consent search protocols that will inform residents of their Fourth Amendment Rights: officers will make a recording of their request for consent to search, will submit this recording with their police report, and must provide the person subject to the consent request information in writing about their right to refuse and revoke consent. *See*

https://www.portland.gov/wheeler/news/2021/6/22/mayor-and-police-chief-announce-ppb-will-change-traffic-enforcement-consent.

Despite the City's direction to deprioritize nonmoving traffic violations, the Chief has explicitly stated he will not enshrine these protocols in PPB Policy because he may have to then find officers in violation of policy for a legitimate traffic stops under the law. This begs the question of whether and how these protocols will be effective, and how they will be enforced. The AMA Coalition will be monitoring this as well, to ensure officers are held accountable if they do not follow these procedures.

## VI.    TRAINING

PPB has demonstrated a lack of vested interest in training. For example, the COCL reports that when the City Attorney was explaining court rulings to officers on the Rapid

Response Team, the attorney seemed dismissive, the officers did not turn their cameras on during the session, and one officer admitted to multitasking. COCL Q 1, p. 24. This raises critical questions on whether de-escalation training has been effective for reducing use of force. The AMA Coalition sees a need to expand community member participation in the training of PPB officers.

The AMA Coalition will carefully review the expected Training Audit plan and eventual Audits are required by the DOJ and COCL. COCL Q1 p 7.

## VII.    MENTAL HEALTH

The City has failed to address mental health crises in a nonviolent manner and PPB has therefore continued to use excessive force against people with mental health conditions or perceived mental health conditions.

The AMA Coalition believes the City needs to transfer more resources to unarmed projects, such as Portland Street Response and the Public Safety Support Specialists, which were designed to reduce violent interactions between PPB and people with mental health conditions by reducing contact with armed officers who are not equipped to safely manage mental health crises.

Additionally, the AMA Coalition believes the City is making it more difficult for Portland's houseless communities to survive and obtain assistance. The AMA Coalition is concerned that the continued sweeping of camps and denial of basic human rights to persons experiencing houselessness will lead to more uses of excessive force by PPB.

The AMA Coalition defers to the Mental Health Alliance for further information and assessment of PPB's interactions with people in crisis and the City's attempts at providing training and resources to reduce incidents of violence.

## VIII.   MEDIATION & DOJ PROPOSED REMEDIES

Per the Settlement Agreement, the parties will mediate the City's noncompliance and have invited amici to participate. The AMA Coalition plans to participate in the mediation.

The primary task for mediation will be to determine what remedies are appropriate for the City's noncompliance with the Agreement. The AMA Coalition generally agrees with the DOJ's proposed remedies below[4]:

### A.  Body Cameras

The AMA Coalition believes that if body cameras are used by PPB, certain parameters must be met, as drafted and adopted by the AMA Coalition in 2015, and restated here:

1.    The community has to be involved in setting any rules if the Bureau decides to get cameras.

2.    A third-party Oregon company subject to Oregon law who's not the manufacturer nor any law enforcement entity should store the footage, to ensure access/storage and prevent tampering.

3.    If civilians who are in the video OK its being released, the footage should be released. To the extent possible under state law, the images should not be blurred out of those who have given release permission.

4.    Policy should require officers to turn cameras on before interacting with any community member. There must be increasing, structured disciplinary measures depending on the seriousness of violations, including failing to record interactions or turning cameras off during contact.

5.    Officers should not be allowed to review the footage before giving statements/writing reports so that they don't use the footage to change their statements.

6.    PPB must inform community members that they are being recorded, and inform them of their rights to remain silent and not make incriminating statements or walk away as appropriate.

7.    PPB cannot use footage to gather data on people's lawful activity in violation of state law (ORS 181A.250).

8.    PPB shall not tie the video to facial recognition software to pull up information on people when they have no suspicion of criminal conduct.

---

[4] Zelinski, Alex, "DOJ Requests Body Cams, New Penalties for Portland Police," The Portland Mercury, July 15, 2021, available at https://www.portlandmercury.com/blogtown/2021/07/15/35108182/doj-requests-body-cams-new-penalties-for-portland-police

9.      Footage should be used to hold police accountable for officer misconduct/criminal activity and to improve training and policy.

10.     Footage should not be used to prosecute community members for minor infractions; and footage should not be used to retroactively go back and find minor crimes to prosecute.

Notwithstanding the above, if the Portland Police Association is able to bargain with the City for a policy that officers are allowed to review body camera footage before writing their reports, the AMA Coalition does not support using body cameras. The AMA Coalition strongly urges the DOJ and the City to implement polices that are consistent with the above principles.

**B. Data Collection --** The City should revise Force Data Collection Report (FDCR) and After-Action Review (AAR) forms to better capture information to show required timeliness of completion and review.

The AMA Coalition supports this proposal.

**C. Crowd Control -** The City should contract with a qualified outside entity to critically assess the City's response to crowd control events in 2020 in a public-facing report that includes recommendations to which the City will publicly respond. The City should create a "needs assessment" for crowd control training that adequately addresses issues with PPB's response to the 2020 protests.

The AMA Coalition supports this in general and believes the "needs assessment" should also be part of the outside entity's critical assessment.

**D. Training and Budget** - The City should ensure PPB's budget covers officers' annual required training without relying on overtime. In addition, the City should appoint a qualified civilian head over PPB's Training Division to ensure consistent and appropriate training based on problem-based learning and other generally accepted adult-learning techniques.

The AMA Coalition supports this remedy, with a few notes. Apparently, although about 100 officers have resigned and their replacements were budgeted for, the City could not afford to rehire for those positions last year because of the overtime officers incurred. However, even if the PPB spent the funds meant to hire 100 more officers on overtime in 2020-21, PPB still should be able to hire those officers in the 2021-22 budget. Moreover, the AMA Coalition believes the City should expand the personnel of trained persons in the Portland Street Response

to replace sworn officers with guns to handle the large portion of mental health 911 crisis calls, and other programs that will reduce unnecessary police/community interaction.

    **E.** **Accountability -** The City should identify and hold accountable [Rapid Response Team] Lieutenants and above who approved force without adequate justification during the 2020 protests. Additionally, if the City's proposal for addressing timeliness and quality of investigations and effective discipline is the implementation of the new voter-approved police oversight board, the City should propose amendments to the Agreement within 90 days and formulate a plan for an orderly transition to and full implementation of the board.

The AMA Coalition supports this remedy.

    **F.** **Reporting -** The City should issue its 2020 annual report and hold the required meetings before the end of summer 2021, and do the same in 2022 and any future years during which the Agreement is still in effect.

The AMA Coalition supports this remedy but notes the COCL was three months late in issuing its most recent report because it could not get the necessary data for that report from the PPB, presumably in part because the PPB believed that one year of substantial compliance (in what would have been January of 2021) would result in the end of their obligations under the Settlement Agreement. As such, the AMA Coalition remains concerned about the City's willingness to make lasting change beyond the Settlement Agreement.

## IX.    CONCLUSION

The AMA Coalition is concerned about the lack of overall change to the culture of the Portland Police Bureau and the continuing incidents of violence against people of color and people with mental illness or in crisis since the inception of the Settlement Agreement. The City has fallen out of substantial compliance with the Settlement Agreement, despite years of ongoing litigation. For these reasons, the AMA Coalition request that the Court postpone final approval of the amendments to Sections IX and X of the Settlement Agreement.

/ / /

/ / /

The AMA Coalition looks forward to participating in the upcoming mediation and will continue to support transformative change within the bureau that will lead to the safety of all community members.

In conclusion, the AMA Coalition remains committed to bringing a community voice to this very important process. Consistent with the AMA Coalition's collaborative agreement with the DOJ and City, the AMA Coalition agrees to advocate for the implementation of the Settlement Agreement and PCCEP reforms that the AMA Coalition supports and will oppose any attempts to weaken or dilute the Settlement Agreement and PCCEP reforms that it supports. The AMA Coalition strongly urges the court to not rush through the Settlement Agreement, particularly when it comes to community oversight and engagement, and to allow more time for the City to demonstrate its plan will be effective.

DATED: August 23, 2021

Respectfully submitted,

*/s/ J. Ashlee Albies*                          */s/ Kristen A. Chambers*
J. Ashlee Albies, OSB # 051846              Kristen A. Chambers, OSB # 130882
ashlee@albiesstark.com                      Kristen@prism-legal.com