**SCOTT ERIK ASPHAUG, OSB #833674**
United States Attorney
**RENATA A. GOWIE, OSB #175273**
Civil Division Chief
**JARED D. HAGER, WSB #38961**
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902
Phone: 503.727.1120
Email:  jared.hager@usdoj.gov


**KRISTEN CLARKE**
Assistant Attorney General
Civil Rights Division
**STEVEN H. ROSENBAUM**
Chief
**LAURA L. COWALL**
Deputy Chief
**R. JONAS GEISSLER**
Trial Attorney
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C.  20530
Phone:  202.514.6255
Fax:  202.514.4883
    Attorneys for Plaintiff United States


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:12-cv-02265-SI |
| Plaintiff, | |
| v. | PLAINTIFF'S BRIEF IN SUPPORT OF APPROVING SECTION XI AS FAIR, ADEQUATE, AND REASONABLE |
| **THE CITY OF PORTLAND,** | |
| Defendant. | |

Plaintiff United States of America (United States) submits this brief in support of the Unopposed Motion to Amend the Settlement Agreement (ECF No. 276), which seeks court approval to add new Section XI to the Amended Settlement Agreement (Agreement) entered in this case (ECF No. 262). If approved, Section XI would resolve our pending notice of noncompliance,[1] and going forward, DOJ would periodically assess the City's compliance with Section XI along with the other substantive sections of the Agreement.

Section XI is a good faith effort by the United States and City (collectively, the Parties) to address compliance concerns related to force, training, accountability, and community engagement, as identified in the Fifth Periodic Compliance Assessment Report. ECF No. 236. The proposed additions are consistent with the Agreement, which empowers the Parties to "jointly stipulate to make changes, modifications, and amendments." ECF No. 262-1, ¶ 184. This flexible approach aligns with Supreme Court guidance. *See Horne v. Flores*, 557 U.S. 433, 450–51 (2009); *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 & n.7 (1992). The proposed amendment also accords with the history of this case. Twice this Court has approved changes to the Agreement. ECF Nos. 171, 262. Likewise, Section XI merits the Court's immediate approval.

---

[1] *See* Exhibit 1, DOJ Letter to City, April 2, 2021.

## DISCUSSION

In a federal government agency's enforcement action, the Ninth Circuit advises district courts to "pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment," and "[u]nless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved." *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984). Section XI meets the standard for approval for several reasons.

First, Section XI is a stipulated change that adds remedies to a settlement that this Court previously approved as fair, adequate, and reasonable. Because Section XI is additive and does not weaken or eliminate existing remedies, *see* ECF No. 276-2, the proposed Amended Settlement Agreement, as a whole,[2] is not unfair, inadequate, or unreasonable. *See Randolph*, 736 F.2d at 529. Moreover, the additional remedies are adequate to address the nature and extent of the City's noncompliance because they are reasonably tailored to address the root causes of the concerns we identified.

Second, Section XI is not the product of fraud or collusion. *See United States v. Oregon*, 913 F.2d 576, 586 (9th Cir. 1990) (holding that the district court's role in reviewing an agreement between two governments is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

---

[2] *See Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982) (holding that a district court is not "empowered to rewrite the settlement agreed upon by the parties" and "the settlement must stand or fall as a whole").

overreaching by, or collusion between, the negotiating parties"). The Parties agreed to the terms after months of mediation. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1292 (9th Cir. 1992) (upholding settlement as fair, adequate, and reasonable in part because it resolved complex issues and "was not hastily arrived at"); *see also* ECF Nos. 256, 263, 266, 267, 268, 272. The mediation was in no way collusive. Rather, the mediation included the Intervenor-Defendant Portland Police Association (PPA), Enhanced Amicus Curiae Albina Ministerial Alliance Coalition for Justice and Police Reform (AMAC), and Amicus Curiae Mental Health Alliance (MHA). The mediation process resulted in Section XI, which consists of eight paragraphs that codify a variety of remedies. ECF No. 276-1. The vast majority of the remedies are not objectionable to the PPA, AMAC, and MHA. *See* ECF No. 276. For the Parties to reach an agreement that is largely acceptable to five diverse entities with sometimes sharply divergent views shows that Section XI is a reasonable compromise free of fraud and collusion. *See Oregon*, 913 F.2d at 586.

Third, Section XI advances the interests of the Parties to fairly and efficiently address compliance concerns. *See Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 290 (1986) (O'Connor, J., concurring) ("The value of voluntary compliance is doubly important when it is a public employer that acts, both because of the example its voluntary assumption of responsibility sets and because the remediation of governmental [wrongdoing] is of unique importance."). Compromise advances the general interests of all to avoid the potential risks and the certain costs and delay of litigating an

enforcement action. *See Class Plaintiffs*, 955 F.2d at 1292. Section XI provides for specific remedies that will improve policing in Portland and are reasonably tailored to compliance concerns that manifested in 2020. We briefly address each.

**Paragraph 188**. The 2020 protests revealed that PPB's force data collection reports (FDCR) and after-action review (AAR) forms did not capture accurate information regarding timeliness. During the 2020 protests, PPB failed to effectively enforce its force and accountability policies, particularly as to timely reporting and supervisory review of force. The problem was compounded by FDCR and AAR forms that identified the date force was used, but not the date the form was completed or reviewed. Proposed Paragraph 188 would require PPB to revise the forms to capture that information.

**Paragraph 189**. The City has not yet adequately assessed its response to the 2020 protests, which inhibits PPB from identifying and learning from its mistakes.[3] Paragraph 189 would require the City to contract with a qualified outside entity to critically assess the City's 2020 protest response in a public-facing report. The qualified outside entity also would review the City's reply to the report. In addition, PPB would prepare a training needs assessment based on the report's findings. A qualified outside entity can provide the critical, unbiased perspective necessary for pubic credibility and

---

[3] On March 29, 2021, PPB released a set of documents that were neither comprehensive nor sufficiently self-critical. *See* Exhibit 2, DOJ Letter to City, May 5, 2021.

the City's ability to comply with the Agreement going forward.  *See* ECF No. 278-1, COCL Q3 2021 Report at 6, 14, 34–35, 47.

**Paragraph 190**.  PPB must provide annual training to all officers, but did not in 2020 due in part to overtime budget cuts.  Paragraph 190 would require the City to fund PPB's regular budget to account for this annual training.

**Paragraph 191**.  PPB's Training Division has recently had a string of short-tenured leaders.  Consistent and qualified leadership is needed to deliver training effectively, including the remedial training required by proposed Paragraph 189.  Accordingly, Paragraph 191 would require the City to install a qualified civilian to direct all educational aspects of the Training Division alongside the Captain of the Training Division, who directs administrative aspects.[4]

**Paragraph 192**.  PPB officers repeatedly misapplied the standard for using force and the requirements for supervisory review of force during the 2020 protests.[5]  To remedy the lack of accountability for misconduct related to PPB's 2020 protest response, Paragraph 192 requires the City to identify and hold accountable the high-level supervisors—ranked Lieutenant or above—who: (a) trained officers to believe they could use force against individuals during crowd control events without meeting the requirements of PPB's policy that governs all uses of force; or (b) served as incident

---

[4] The respective roles and responsibilities of the civilian and the Captain are outlined in Exhibit 2 of the proposed Amended Settlement Agreement.  ECF No. 276-1.

[5] *See* Exhibit 3, DOJ Letter to City, March 23, 2021.

commanders and directed or authorized any officer to use force in violation of PPB policy, or who failed to ensure that FDCRs and AARs were completed as required by PPB's force reporting policy. The City should also identify PPB Commanders and above who did not correct misunderstandings and misapplications of PPB policies governing the use, reporting, and review of force during the 2020 protests.

**Paragraph 193**. PPB did not release its 2019 Annual Report until December 2020. The year ended before PPB held at least three precinct meetings, as required by Paragraph 150. The City similarly failed to comply in 2018 because PPB did not issue its 2017 Annual Report until December 2018. Proposed Paragraph 193 addresses the root cause of noncompliance by requiring PPB to issue its Annual Report and hold the required precinct meetings by September 20 of each year that the Agreement is in effect.

**Paragraph 194**. Body-worn cameras (BWCs) can demonstrate evidence-based policing, improve training and supervision, and better ensure accountability than written reports, alone. Given the failures of PPB officers to timely and accurately report force, and the failures of PPB supervisors to require adequate justifications for force and ensure compliance with policies, Paragraph 194 would require the City to equip PPB officers with BWCs. The obligation codified in proposed Paragraph 194 would require proper "implementation," as defined by Paragraph 33,[6] pursuant to a BWC policy reviewed and approved by DOJ in accord with Paragraph 166.

---

[6] Paragraph 33 defines implementation as "the development or putting into place of a policy or procedure, including the appropriate training of all relevant personnel, and the consistent and verified

**Paragraph 195**.  The City should transition to the voter-approved Oversight Board in an orderly fashion, including by ensuring the continuity of the Independent Police Review (IPR) while the City develops and implements the new Board.  The City has a present and continuing obligation to investigate misconduct complaints, reach timely findings, and hold officers accountable for misconduct.  Accordingly, Paragraph 195 requires that when the City defines the parameters of the new Oversight Board, the City will propose amendments to the Agreement to ensure full implementation and effective police accountability, consistent with the Agreement's requirements.

*    *    *

Enhanced amicus AMAC and amicus MHA have raised some concerns about Section XI, but none justify this Court rejecting the Parties' stipulated agreement.  *See Oregon*, 913 F.2d at 581 (agreeing with other circuits that when a negotiated decree is "the product of good faith, arms-length negotiations," the decree "is presumptively valid" and there is "a heavy burden" to prove the decree is unreasonable).  We address these concerns in turn.

With respect to Paragraph 191, the MHA favors conditional approval because it is concerned that the City will not adequately implement the requirement to hire a qualified civilian to direct the educational aspects of PPB's Training Division.  *See* ECF No. 276, Unopposed Mot. to Amend at 2.  This concern is better addressed by

---

performance of that policy or procedure in actual practice through the regular use of audit tools."

compliance assessment reports and, if necessary, the Agreement's enforcement provisions. More importantly, the City's future performance is an undetermined fact that should not impact the present legal question of whether the agreement is fair, adequate, and reasonable. *See Randolph*, 736 F.2d at 529.

With respect to Paragraph 194, the AMAC and MHA express concerns that the City and PPA will agree to terms for a BWC policy that will undercut accountability by, for example, allowing officers to review BWC recordings prior to completing force reports. To prevent this possibility, the AMAC and MHA believe that the Parties should codify particular guidelines for a BWC policy in the text of Paragraph 194. *See* ECF No. 276, Unopposed Mot. to Amend at 2. The amici's suggestion is unnecessary and potentially counterproductive.

First, Paragraph 194(a) acknowledges that the City may have state law obligations to bargain in good faith with the PPA about BWCs. The mediated solution protects the PPA's bargaining rights and lessens the chance of litigation that could imperil all of Section XI's remedies or, at best, significantly delay their implementation. This compromise was essential to the PPA's non-objection to Section XI. *See* ECF No. 270, Hr'g Tr. at 24:3–24:11 (Nov. 9, 2021) (stating that the PPA does not object to proposed Section XI and appreciates that Paragraphs 194 and 195 "acknowledge and allow for the exercise of the collective bargaining rights and procedures under state law").

Second, the requirements of Paragraph 166 and proposed Paragraph 194(d) mitigate the risk that the City and PPA bargain for a BWC policy that undercuts the

Agreement's existing provisions or fails to resolve the concerns animating our notice of noncompliance. Paragraph 166 requires, *inter alia*, PPB to submit new policies to effectuate the Agreement to DOJ for review, comment, and approval. Paragraph 194(d) creates quick and direct enforcement rights should the City and PPA bargain for BWC policy provisions that "the United States determines, in its sole and absolute discretion, will not adequately resolve the compliance concerns identified in the April 2, 2021 notice of noncompliance." ECF No. 276-1, ¶ 194(d).[7]

Finally, the City's recent disclosure of crowd control training materials from 2018 should not change the outcome of mediation. On January 14, 2022, the City provided DOJ the 2018 training materials for the first time.[8] The training materials have varying degrees of offensive content, incorrect guidance, and false or misleading information related to PPB's crowd management policies and practices. The materials address a topic that was central to our 2021 compliance report, filed in February 2021, ECF No. 236, and pending notice of noncompliance, issued in April 2021. However, the training materials were not known to us then or during the mediation that ran from September to December 2021. Given the recent disclosure, we will address the training

---

[7] In a letter to the City dated November 15, 2021, we explained that a "properly implemented program" for using BWCs would address the City's noncompliance in this case and, at the City's request, we set forth several BWC policy guidelines that would fairly and adequately remedy the notice of noncompliance. *See* Exhibit 4, DOJ Letter to City, November 15, 2021.

[8] *See* Exhibit 5, DOJ Letter to City, January 18, 2022.

materials in our next compliance assessment report. We have thus appropriately reserved our rights to seek additional remedies based on these materials.

## CONCLUSION

This Court should grant the unopposed motion and approve Section XI as a fair, adequate, and reasonable way to resolve the notice of noncompliance.

DATED: April 15, 2022.

Respectfully submitted,

FOR THE UNITED STATES:

SCOTT ERIK ASPHAUG
United States Attorney
District of Oregon

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

RENATA A. GOWIE
Civil Division Chief

STEVEN H. ROSENBAUM
Special Litigation Section Chief

*/s/ Jared D. Hager*
JARED D. HAGER
Assistant U.S. Attorney

*/s/ Laura L. Cowall*
LAURA L. COWALL
Deputy Chief

*/s/ R. Jonas Geissler*
R. JONAS GEISSLER
Trial Attorney