**J. ASHLEE ALBIES, OSB #051846**
E-mail: ashlee@albiesstark.com
ALBIES & STARK, LLC
1 SW Columbia St., Ste. 1850
Portland, Oregon  97204
Phone:   (503) 308-4770
Fax:       (503) 427-9292

*Attorney for Enhanced Amicus AMA Coalition for Justice and Police Reform*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:12-cv-02265-SI |
| Plaintiff, | **ENHANCED AMICUS ALBINA** |
| v. | **MINISTERIAL ALLIANCE** |
| | **COALITION FOR JUSTICE AND** |
| **CITY OF PORTLAND** | **POLICE REFORM SUBMISSION RE:** |
| | **PLAINTIFF'S UNOPPOSED MOTION** |
| Defendant. | **TO AMEND THE AMENDED** |
| | **SETTLEMENT AGREEMENT** |

## I.  Introduction

Enhanced Amicus Curiae the Albina Ministerial Alliance Coalition for Justice and Police

Reform ("AMAC") files this position statement in advance of the upcoming Fairness Hearing in

this case, set for April 29, 2022.  That this will be the Third Fairness Hearing in this case to

determine whether the second round of amendments is fair, adequate, and reasonable reflects the

importance of this case.  As it has since the outset of this case – and throughout its long history of

advocacy for police accountability-- the AMAC remains committed to community involvement in

the oversight and implementation of the Amended Settlement Agreement.  The AMAC continues

to welcome community input and Court oversight in this case, both of which have strengthened the

process and outcomes in this case.

The AMAC did not object to setting this Fairness Hearing regarding the proposed Amendments adding Section XI- Addendum of Additional Remedies to the Amended Settlement Agreement addressing the City's noncompliance with the Amended Settlement Agreement.  As ordered by this Court, the AMAC participated in several mediation sessions with Plaintiff United States of America, Defendant City of Portland, Intervenor Portland Police Association, and fellow amicus Mental Health Association of Portland over the course of several weeks in Fall and Winter of 2021 with United States Magistrate Judge Stacie Beckerman.  During these mediation sessions, the AMAC offered several proposals to the additional remedies; some were incorporated, and some were not.

While the AMAC did not object to the Plaintiff's unopposed motion for Court approval to amend the Settlement Agreement to add Section XI, it does believe the current addendum could be strengthened in several ways.  First, the parties should codify specific guidelines for a body worn camera policy in the text of Section XI (para. 194).  Second, the City should ensure PPB members involved in the missteps during the 2020 George Floyd Protests are held accountable, regardless of rank (para. 192).  Finally, as described below, the AMAC supports a Court Monitor in this case.

## II. Body Worn Camera Policy

The AMAC has long been vocal on the issue of body worn cameras, in particular that any applicable policies be subject to community input and that they absolutely prohibit preview by officers before writing a report or providing information or testimony regarding use of force. Body worn cameras are primarily a tool for oversight and accountability, not as a tool for increasing criminal prosecution.  Paragraph 194 provides a framework for such a policy but does not contain specifics because of considerations of state collective bargaining law.  While the AMAC respects the right to collectively bargain over the terms and conditions of employment and

state law requiring collective bargaining over certain issues, the AMAC reminds the Court, the

Parties, and the public that the intersection of police accountability and collective bargaining have

a dramatic impact on public safety and are not mutually exclusive.  Thus, the AMAC believes the

parameters around how a body worn camera policy will achieve police accountability should be

clear and transparent.  The AMAC's position on body worn cameras has been consistent and is

outlined in its August 2021 Status Report, at Dkt. 245, pp. 13-14, and below.  Critically, the issue

of prereview, number 5, is of primary importance and where the PPA and City appear to have

disagreement.

1. The community has to be involved in setting any rules if the Bureau decides to get cameras.
2. A third-party Oregon company subject to Oregon law who's not the manufacturer nor any law enforcement entity should store the footage, to ensure access/storage and prevent tampering.
3. If civilians who are in the video OK its being released, the footage should be released. To the extent possible under state law, the images should not be blurred out of those who have given release permission.
4. Policy should require officers to turn cameras on before interacting with any community member. There must be increasing, structured disciplinary measures depending on the seriousness of violations, including failing to record interactions or turning cameras off during contact.
5. **Officers should not be allowed to review the footage before giving statements/writing reports so that they don't use the footage to change their statements.**
6. PPB must inform community members that they are being recorded and inform them of their rights to remain silent and not make incriminating statements or walk away as appropriate.
7. PPB cannot use footage to gather data on people's lawful activity in violation of state law (ORS 181A.250).
8. PPB shall not tie the video to facial recognition software to pull up information on people when they have no suspicion of criminal conduct.
9. Footage should be used to hold police accountable for officer misconduct/criminal activity and to improve training and policy.
10. Footage should not be used to prosecute community members for minor infractions; and footage should not be used to retroactively go back and find minor crimes to prosecute.

/ / /

PAGE 3 – ENHANCED AMICUS AMAC SUBMISSION RE: PLAINTIFF'S UNOPPOSED MOTION TO AMEND THE AMENDED SETTLEMNET AGREEMENT

The AMAC will continue to advocate that the above concepts be part of a comprehensive body worn camera policy, one that is accountable to the community, and one that strengthens public safety.

### III.    Accountability for George Floyd Protests

Paragraph 192 acknowledges that PPB officers repeatedly misapplied the standard for using force and the requirements for supervisory review during the 2020 George Floyd protests.  It requires the City to investigate and hold PPB supervisors of Lieutenant rank and above accountable for training Rapid Response Team members to use force against individuals during crowd control events without meeting the requirements of Directive 1010, for directing or authorizing this use of force, or failing to ensure after action reports were completed, and to hold accountable PPB commanders and above who failed to address these systemic issues.  The AMAC urges that all PPB members be accountable, including sergeants, who enabled the massive uses of force during the protests, including those PPB members who were temporarily acting as Lieutenants or who were delegated the authority to give instruction to line officers.

### IV.    The AMAC supports appointment of a Court Monitor or Special Master

During the 2021 status hearing in this case, the Court floated the idea of a special master or a court monitor.  In the AMAC's 2019 proposed quantitative and qualitative metrics to assess the progress of the Portland Committee on Community Engaged Policing (PCCEP), metrics included change and transformation in relationship between the PPB and marginalized communities, reduction in force and de-escalation, reduction in disproportionate policing of communities of color, houseless people, and other vulnerable populations, and transformation of the PPB Culture of "us" against "them." See Dkt. 220, pp. 9-10.  The AMAC closely followed the reports regarding the City's release of the offensive training slide, a "Prayer of the Alt Knight," in January of 2022,

reportedly created by a known white nationalist, with adverse beliefs about civil rights protestors. Many PPB members presumably viewed the offensive training slide and failed to raise concerns with anyone within the PPB about it.  While the AMAC appreciates the Addendum of Additional Remedies addresses some specific issues of noncompliance related to the Black Lives Matters protests of 2020, the larger issue of culture change within the PPB remains elusive.  The AMAC supports additional remedies related to this training slide, since it was not disclosed to the US DOJ during the course of mediation as it should have been.  In addition, since the US Department of Justice began its investigation in 2010, PPB has used deadly force against at least 47 individuals, many of whom were in mental health crisis; 30 of those people died.[1]  Moreover, PPB has disciplined only one officer for the use of deadly force, where the officer mistakenly used lethal instead of less lethal ammunition.  Early in this case, the City filed several motions that appealed or delayed implementation of this Agreement and disbanded the first iteration of the community oversight entity, the Community Oversight Advisory Board (COAB), the second iteration is now the PCCEP.  In a situation reminiscent of the COAB, the City has not adequately staffed or refilled empty seats of the current PCCEP, and recently floated the idea of pausing its work.[2] In conjunction with the lack of accountability with the PPB related to the 2020 Black Lives Matter protests, community distrust of the police understandably persists.  Moreover, despite PPB's funding levels remaining quite high,[3] Portland crime rates tracking national averages and in some areas decreasing,[4] and no proof of correlation between police budgets and crime rates,[5] community

---

[1] https://www.portlandcopwatch.org/listofshootings.html

[2] *Police Oversight Group Will Continue, Despite City Staffing Shortages,* Alex Zielinski, Portland Mercury (4/7/22), available at https://www.portlandmercury.com/blogtown/2022/04/07/40006602/police-oversight-group-will-continue-despite-city-staffing-shortages

[3] *A year after big cuts, Mayor Ted Wheeler wants to add to the Portland Police Bureau*, Rebecca Ellis, OPB (11/3/21), available at  https://www.opb.org/article/2021/11/03/portland-mayor-ted-wheeler-proposal-police-funding-increase/

[4] *Some Oregon midterm candidates focus on crime — even when the data disagrees*, Jonathan Levinson, OPB

members continue to hear from PPB that it cannot respond effectively because of budget cuts.  For these reasons, the AMAC believes the time has come for a Court Monitor to be appointed to continue movement and compliance with the Amended Settlement Agreement, with greater ability to access information and to answer to the Court. Such a monitor must allow a significant role for the community in the selection process, job description, and oversight.

## V.  Conclusion

The AMA Coalition remains committed to bringing a community voice to this very important process.  Consistent with the AMA Coalition's collaborative agreement with the DOJ and City, the AMA Coalition agrees to advocate for the implementation of the Settlement Agreement and PCCEP reforms that the AMA Coalition supports and will oppose any attempts to weaken or dilute the Settlement Agreement reforms that it supports. The proposed Amendments continue steps towards creating a safer and more just City, but more work needs to be done.


DATED: April 21, 2022

Respectfully Submitted,

*/s/ J. Ashlee Albies*
J. Ashlee Albies, OSB # 051846
ashlee@albiesstark.com

---

(4/21/22), available at https://www.opb.org/article/2022/04/21/oregon-governors-race-portland-city-council-crime-polling-data/

[5] *Over the past 60 years, more spending on police hasn't necessarily meant less crime*, Phillip Bump, The Washington Post (6/7/20), available at https://www.washingtonpost.com/politics/2020/06/07/over-past-60-years-more-spending-police-hasnt-necessarily-meant-less-crime/