dan handelman
portland copwatch

-----------------------

From: Portland Copwatch
PO Box 42456
Portland, OR  97242

To: Hon. Judge Michael Simon
US District Court (District of Oregon)
1000 SW Third Av
Portland, OR 97204

In the matter of United States of America v. City of Portland
Case Number: 3:12-cv-02265-SI

Testimony of Portland Copwatch on US DOJ/City of Portland Settlement for
the Status Conference to be held July 27, 2022

July 25, 2022

Your honor

Portland Copwatch strongly supports the analysis done by the US
Department of Justice, which continues to find the City of Portland out

1

of compliance with the 2012 Settlement Agreement.

After the Bureau revealed it had created and then withheld from release a set of biased training slides, the DOJ appears to have taken a closer look at some issues that Portland Copwatch has been bringing to the court all these years.

We compared the DOJ's report, which added 17 more paragraphs to the 13 previously found out of compliance, to the Compliance Officer's report. We found that the COCL only believes that 20 of the 30 paragraphs identified by DOJ are lacking. Some of this is due to changes that are underway, while some is due to believing that the PPB is going to fix problems despite their not-so-stellar track record of doing so.

Here are some of the highlights of the DOJ report which we want to be sure go on the record, even if the DOJ brings them up in their testimony on the 27th.

--Although it is not clear what their misconduct was, seven officers had their sustained findings voluntarily removed from their records by the City due to a grievance that was filed. It's rare enough that any officers at all are found out of policy-- usually about 30 a year total. So to hear that the DOJ agreed there was underlying misconduct and yet the City willingly expunged records is quite alarming.

--At least two people were unnecessarily sent to the hospital due to bites by police dogs. In one case, the dog helped find the person, and as officers carried that person away, the dog grabbed the suspect's legs and would not let go. PCW has enough concerns that the PPB is training non-human animals to be part of their violent system of social order maintenance, but training animals to deliberately cause harm is also disturbing.

--We believe your honor is already aware that in early 2021, the Portland Police released a report that was mostly self-congratulatory about how they handled the racial justice protests in 2020. Apparently, an updated version of that analysis was released in late 2021; if it was posted publicly we have never seen it. The DOJ's description shows that the Bureau did not seem to learn anything from the feedback they and the Compliance Officer gave the City about the first review. Now an outside professional review is not expected to be ready until January 2023, over 2.5 years since the protests began. Justice delayed is justice denied. The PPB cannot fix its policies or training on crowd control until this analysis is done, and done right, and the longer the report takes, the longer bad crowd management tactics continue.

--PCW is particularly pleased that the DOJ found the Behavioral Health Unit Advisory Committee to be out of compliance because they refuse to review deadly force incidents to identify ways to prevent future occurrences. This came to the DOJ's attention because PCW brought it up at a BHUAC meeting in October. As a side note, Portland Copwatch's sister project group at Peace and Justice Works, Flying Focus Video

2

Collective, recorded that October meeting and it is cited in a footnote in the report. We recognize the court does not have infinite time, but watching that video to hear the BHUAC members first hand is valuable to understand why the DOJ and COCL are now pushing the City. For their part, the City is accusing the DOJ of trying to move the goalposts for the BHUAC. The sad truth is that because the Committee refused to hold any public meetings until early 2021, there was never a chance for community members to raise issues of concerns until then, a year after the initial finding of compliance.

--Your Honor may not be aware that when the Auditor washed her hands of the Independent Police Review earlier this year, it meant the Council needed to change City Code to remove references to her office from both the IPR and the Police Review Board sections. The IPR changes were made appropriately, but the City Attorney tried using the opportunity to make major changes to the PRB, including (a) making it an option to stop investigating officers who leave the force, (b) replacing Citizen Review Committee members with PRB civilian pool volunteers if CRC members aren't available, and (c) allowing PPB employees to facilitate the PRB hearings instead of professional facilitators. Luckily, Commissioner Hardesty was way ahead of Copwatch's testimony and recognized that such changes should not be made without public input. That is not to mention that some of these proposed changes stand in contradiction to the Agreement.

---As has already been relayed, the PRB also continues to use mitigating circumstances to excuse officer behavior instead of using it to consider proposed discipline once an officer has been found guilty of misconduct. We've long called for the PRB hearings to be public, to allow the civilian harmed by the action in question to participate, and for the Board not to be dominated by police personnel. Such changes likely would prevent these incorrect applications of code.

--The Portland Committee on Community Engaged Policing's lack of staffing and the City failing to fill their empty seats also led to that part of the agreement being found out of compliance. It's really by no fault of the remaining members that PCCEP has become a sad shell of what it once was and can be. At the July meeting, City staff for the first time set up the PCCEP meeting as a "Zoom Webinar," meaning community members not only could not see one another, they could not see how many city/federal employees were at the meeting. Were the meeting in person, or, as it had been for the two plus years until then in regular Zoom format, everyone could have seen who was "at" the meeting. When you consider that the name of this group includes the words "community engagement," it is even more discouraging that the new format was used.

---Portland Copwatch has also urged City Council and the PCCEP to modify their quorum requirement so that only a majority of seated members are needed to take votes and hold meetings. Instead, the Committee has been struggling to get seven people to meetings, out of 13 total seats, for several months. Even once the City bumped their membership up to eight members in early June, the quorum issue has continued to keep PCCEP from

3

being able to vote, even to elect interim chairpeople to run the
Committee. We're not sure if it's an appropriate role for the court, but
PCW has been unable to get a legal opinion from the state Attorney
General or the City Attorney on whether a sliding scale quorum meets
public meeting law requirements. We're fairly sure that a 1989 ruling
from the AG clearly states that a governmental body can set the quorum
however they want, just that the default is 50%+1 of the number of
seats, regardless of whether they are filled. The DOJ Agreement itself
required the City to expand the CRC to an 11 member board but left the
quorum at 5 to enable them to meet even if they did not have a full
contingent, and/or to meet as sub-panels to hear cases. We welcome the
court to ask the City why they won't make it easier for PCCEP to keep
doing its work.

--Similarly, the much-touted Precinct presentations of the Bureau's
Annual Report left a lot to be desired. It's worth mentioning that Chief
Lovell did raise issues about civilians' rights to refuse a search and
the racial disparity of consent searches. These are outlined in the
Agreement. However, even though these meetings were on the regular Zoom
platform, the public was asked to pose their questions in the chat. When
PCW raised a concern about the disparity of traffic stops, Chief Lovell
restated an oft-used excuse from the Bureau that people drive into
Portland from surrounding areas, changing the demographics on a daily
basis. A follow up question we posed asked that the PPB track which
drivers have addresses in Portland, but the Public Information Officer
who was reading the question read only the first half, making it sound
as if the question was about tracking addresses in general. If this were
an in-person meeting, the public could have asked the questions directly
to the Chief. It helps nobody to shield the PPB from probing questions
that could lead to a better understanding of the appearance that they
are enforcing the law in a racially biased way.

--While we realize the DOJ's report stops before the eight new remedies
were approved by the court in late April, here are a few thoughts about
how the City is progressing on those items:

1-- The Court is probably aware that the City chose a current Los
Angeles Police Sergeant to be the so-called "civilian dean of training."
Most people we know expected this to be an actual civilian, rather than
a 20 year sworn officer who would need to resign from LAPD to take a
civilian job with Portland Police. A real civilian would help bring PPB
closer to a true community-engaged entity, rather than perpetuating the
us vs. them mentality that brought us to this table in the first place.
Luckily, the person's background check led to the City starting the
process over again.

2- The DOJ and your honor have been pushing the City and the PPB to
create a body worn camera program for some time. However, the Police
Association appears to be locked in an endless mediation with the City
over questions about when officers can review footage and whether
supervisors can remotely turn on officers' cameras. Again, we recognize
Your Honor's desire not to step into the middle of employee-management

4

negotiations, but we feel the community's voice on these issues has been
excluded since the PPA took what were semi-public bargaining sessions
behind closed doors over a year ago. It's worth mentioning here that we
have sent a strong response to Sheriff Mike Reese for attempting to
create a policy at the Multnomah County Sheriff's Office which would
allow officers to look at footage before writing reports. We included
our ongoing concern how this contradicts the principles of Graham v.
Connor about officers not using 20/20 hindsight to justify force.

3- Without getting too far into the details since PCW member Dan
Handelman sits on the Commission, it is fairly clear that the Police
Accountability Commission has a lot of work left to do and only 11
months left to do it. At the Fairness Hearing, we noted that the
document approved by the Court states that the PAC would have 18 months
_from the time of the court's approval_ to finish its work; the City
instead opted by resolution to declare that timeline began in December,
shortening the potential timeline by almost five months.

As always we appreciate the time to share our thoughts with the court.
We may add other items to this written testimony when we present orally
on Wednesday.

Thank you
dan handelman and other members of
Portland Copwatch


CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.