**NATALIE K. WIGHT, OSB #035576**
United States Attorney
**RENATA A. GOWIE, OSB #175273**
Civil Division Chief
**JARED D. HAGER, WSB #38961**
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2936
Phone:  503.727.1120
Email:  jared.hager@usdoj.gov

**KRISTEN CLARKE**
Assistant Attorney General
Civil Rights Division
**STEVEN H. ROSENBAUM**
Chief
**LAURA L. COWALL**
Deputy Chief
**R. JONAS GEISSLER**
Trial Attorney
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C.  20530
Phone:  202.514.6255
Fax:  202.514.4883
     Attorneys for Plaintiff United States

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:12-cv-02265-SI |
| Plaintiff, | PLAINTIFF'S STATUS REPORT |
| v. | |
| **THE CITY OF PORTLAND**, | |
| Defendant. | |

**Page 1     Plaintiff's Status Report**

Plaintiff United States of America (United States) submits this Status Report in advance of the Interim Status Conference set for November 9, 2022. We address issues raised by the Court at the April 2022 fairness hearing and July 2022 status conference, provide brief updates about progress and barriers to the City re-achieving substantial compliance with the Amended Settlement Agreement (Agreement), ECF 276-1, and respond to concerns raised by Defendant City of Portland (the City) with parts of our Sixth Periodic Compliance Assessment Report, ECF 292-1.

## I.     Issues Raised by the Court.

In recent hearings, the Court has asked the parties for updates on: (1) independent monitor discussions; (2) investigation of the legally incorrect and otherwise problematic Rapid Response Team (RRT) training slides from 2018, which the City disclosed on January 14, 2022; (3) hiring a civilian dean of police training, as required by ¶ 191; and (4) body-worn camera (BWC) policy negotiations between Intervenor Portland Police Association (PPA) and the City, as required by ¶ 194. *See* Fairness Hr'g Tr. 12:10–14:25 (Apr. 29, 2022); Status Conf. Tr. 5:14–6:7, 7:16–8:23 (July 27, 2022).

**Independent Monitor**. On October 25, the parties will engage in mediation at the City's request to discuss ways to improve the monitoring process. Two of the three sessions will include the PPA, AMAC, and MHA, and one of those will also include the Compliance Officer / Community Liaison (COCL). (The leader of COCL has given notice of his intent to resign the position as of June 2023.) The substance of the mediation is confidential. However, if the parties reach consensus on any particular issues of concern, we will inform the Court.

**RRT Training Slides**. At DOJ's request, the City initiated a broader investigation into the approval of the training, a potential violation of PPB Directive 1500.00 – Training. The City has completed an administrative investigation of only the allegations against an individual PPB member and submitted that investigation to a Police Review Board. Pending resolution of the investigation, we have informed the City of concerns with the investigative process in an effort to permit the City

**Page 2     Plaintiff's Status Report**

to address them, if possible, before finalizing the investigative findings.  The City has not advised us whether it will publicize the results when available given the substantial public interest involved.  We will evaluate the investigations in a future compliance assessment report after the City finalizes the findings.

**Civilian Training Dean**.  After withdrawing an offer to its first choice to fill the civilian dean position at PPB's Training Academy, the City chose to restart the process rather than select from other top applicants.  On August 15, the City provided the parties with its proposed process to evaluate applications and interview candidates, which incorporates community input and includes the PPA, AMAC, and MHA.  The Mayor and Chief retain the right to select the candidate for hire.  The City has posted the job position, which will remain open until October 31, 2022.  *See* www.governmentjobs.com/careers/portlandor/jobs/3742702/dean-of-education.  We expect the City to conclude this process before the end of the year or shortly thereafter.  *Cf.* Agreement ¶ 191 (providing 240 days from funding the position in November 2021 to filling it, or July 2022).

**BWC Bargaining**.  The City and PPA continue to bargain the details of a BWC policy. Neither the City nor PPA asked to include BWC policy issues in the full-day mediation session set for October 25.  *Cf.* Hr'g Tr. 44:21–45:10 (July 29, 2022) (offering PPA Judge Beckerman's services facilitating BWC negotiations with the City to ensure "it is also something that the U.S. Department of Justice can find appropriate").

## II.    Progress and Barriers to Re-achieving Substantial Compliance.

The City has made progress since the July 29 status conference, but barriers to substantial compliance remain.

**Behavioral Health Unit Advisory Committee (BHUAC), ¶ 95**.  The parties have reached agreement on the information that PPB will provide the BHUAC to enable it to make informed recommendations to policy, procedure and training. On an annual basis, PPB will provide the BHUAC

with relevant information regarding actual violent encounters between PPB and those having an actual or perceived mental health crisis. In addition to fulsome statistical analyses of Category II and Category III use of force events resulting in injury, PPB will provide essential facts regarding Category I use of force events,[1] such as the type of officer involved (e.g., ECIT or non-ECIT, patrol or specialty unit), whether the subject was a frequent BHU contact, where and when the event occurred, the nature of the contact that preceded the event, and whether the subject was armed or otherwise threatened physical harm to others.

**In-Service and Specialty Training, ¶ 84**.  Over three days in late September, DOJ monitored PPB training for specialty units at Camp Rilea and in-service at the Training Academy.  We found the training delivery to be a substantial improvement on prior efforts.  Though lesson plans continue to require improvement, we were pleased with much of the training by various entities and PPB leaders, including the training for Special Emergency Response Team and Crisis Negotiation Team, the presentation of force policy updates led by the City Attorney's Office, scenario training on force policy updates led by the Training Division, and Active Bystandership in Law Enforcement (ABLE) training updates.

**Accountability, ¶¶ 122–140, 169, 195**.  We have observed four Police Review Boards since assessing the data on which we based our last report.  We timely provided the City with critical feedback to allow the City to correct course as it deems appropriate before finalizing findings.

---

[1] Category I force is defined as "likely to cause death or serious physical injury, including the use of a firearm, carotid neck hold, or strike to the head, neck or throat with a hard object," Category II force is defined as "resulting in hospital treatment or admission" or "reasonably likely to cause enduring: pain, physical injury, disability or impairment of any body part, but does not result in death," and Category III force is defined as "reasonably likely to cause non-enduring: pain, disorientation, physical injury, or the complaint of pain."  Dir. 1010.00, Section 10, available at www.portlandoregon.gov/police/article/751998.

**Page 4    Plaintiff's Status Report**

We are encouraged by the Police Accountability Commission's diligent efforts to identify relevant practices from police departments across the nation and distill those into best practice recommendations. When the Commission finishes its work, City Council will "propose amendments to City Code to address the Commission's proposal, and corresponding amendments to this Agreement, subject to the United States' and the Court's approval, to ensure full implementation of the Oversight Board and effective police accountability." ¶ 195(b). Full implementation of this Board and effective police accountability are critical remedies.

**Portland Committee on Community Engaged Policing (PCCEP), ¶¶ 141–152**. The Court unconditionally approved PCCEP amendments to the Agreement in September 2021. ECF 262. In the ensuing eight months, the City allowed significant compliance concerns to form and grow, particularly as to Paragraphs 143, 144, and 151. *See* ECF 292-1, DOJ 6th Periodic Compliance Assessment Report, at 77–78, 83–84; ECF 296, AMAC Status Rep., at 7–8; ECF 297, MHA Br., at 9–11. And at the July status conference, the Court was unable to hear from PCCEP as a group as required by the Court's Order. ECF 99.[2] PCCEP had only seven active members at that time and was unable to meet the quorum requirement to vote on a statement to the Court.

Between June and October 2022, the City partially corrected course by hiring PCCEP staff and appointing replacement members, as required by Paragraphs 143 and 144. However, for the past six months, the City has not allowed PCCEP's subcommittees to meet. In addition, the City has imposed new limits on the PCCEP's independence, while creating new compliance concerns through proposed changes to the PCCEP Plan that would eliminate the mission to independently assess

---

[2] Although ECF 99 references PCCEP's predecessor body, the Community Oversight Advisory Board (COAB), we believe the Court Order, properly read, applies to the community body created pursuant to the Agreement to independently assess implementation.

**Page 5     Plaintiff's Status Report**

implementation of the Agreement.  For example, the City has not allowed the PCCEP to set its own

agenda, with public input, through a Steering Committee as previously occurred.

### III.      Concerns Raised by the City.

On July 20, 2022, the City responded to DOJ's Sixth Periodic Compliance Assessment Report.

ECF 295.  The City agreed with our assessment that it has not yet re-achieved substantial compliance

with many provisions of the Agreement.  *See id.* at 4–9.  The response noted that the City would meet

with DOJ "to address factual concerns" and "clarify" and "reconcile" our perspectives of the

Agreement's requirements.  *Id.* at 10.  The response concluded by expressing appreciation for a

"forward-looking approach" that the City hoped to build on.  *Id.* at 10–11.

On July 27, the City provided DOJ a document setting forth its specific concerns.  On August

3, we replied by letter requesting "any original, underlying data on which the City's Response relies

that has not already been provided."  The City provided additional information in response to this

request on September 13.  The parties have also met several times to discuss the City's concerns and,

at the City's request, plan to discuss some of them in our October 25 mediation.

We share the City's desire to look forward rather than litigate factual disputes that are

immaterial to compliance assessments.[3]  We have considered the City's concerns but are not persuaded

that any rating should change from partial to substantial compliance.  However, based on information

the City has provided since the filing of our Sixth Periodic Compliance Assessment Report, ECF 292-

1, we provide the following corrections.

**Paragraphs 66 and 67**.  We found the City remained in partial compliance with these

Paragraphs for many reasons, including two canine force events that indicated to us a failure to ensure

---

[3] As noted in previous compliance assessment reports:  "DOJ regularly reevaluates its assessment of
the City's compliance with the terms of the Amended Settlement Agreement in each periodic report
that we file."  ECF 236-1, DOJ's 5th Periodic Compliance Assessment Report, at 30.

force is no greater than necessary to accomplish a lawful objective. ECF 292-1, at 7–8. The City takes issue with our characterizing the two events as evidencing a find-and-bite practice, explaining that in both cases the handler specifically commanded the canine to bite. The characterization is immaterial to our assessment. Nevertheless, we agree that that these two cited examples should not be extrapolated to a find-and-bite practice across all PPB's canine interactions.

The City also takes issue with our statement that "PPB did not provide us with the harness-mounted video recording of the interaction, though reports indicate it exists." ECF 292-1, at 7. The City explains that no such recording exists because PPB uses technology that only livestreams and does not record an interaction. The reports we reviewed are not so clear. We appreciate this clarification from the City.

**Paragraph 79**. The opening sentence of our assessment of this Paragraph was mistakenly truncated, deleting the final clause and period. *See* ECF 292-1, at 28. The sentence should read: "The City is no longer in substantial compliance with Paragraph 79 because the Training Division did not conduct a needs assessment for PPB's annual training plan that complied with the requirements of this Paragraph." We believe the rest of the assessment adequately conveys our meaning, but confirm it here.

**Paragraph 117**. We found the City in partial compliance with this Paragraph for several reasons, including because: "The Force Inspector's July 9, 2020 training, which the City produced to us on January 14, 2022, admits that many supervisors lack access to the EIS, in violation of this Agreement." ECF 292-1, at 54. The City recently explained that supervisors' lack of access was limited "to the records of PPB members who they did not supervise," a problem that PPB corrected in August 2020. We did not contemporaneously receive these documents and this explanation in 2020, but we appreciate the clarification now. Our assessment should have stated: "The Force Inspector's July 9, 2020 training, which the City produced to us on January 14, 2022, admits that for

a crucial but short period during the protests of 2020 many supervisors lacked access to relevant

records in the EIS, in violation of this Agreement.  In September 2022, the City reported that PPB

corrected the issue in August 2020."

      **Paragraph 122**.  We found the City in substantial compliance with the requirements of this

Paragraph, but noted our concern that administrative investigations are being inappropriately tolled:

> Accordingly, we sought information about the lengthy delays following presentations at a February 1, 2022 IA/IPR meeting.  Specifically, we asked who was the point of contact for PPB to communicate with state and local prosecutors concerning open criminal investigations of PPB officers.  PPB reported being mere passive receivers of information.   It does not appear that PPB tracks the progress of criminal investigations, which could potentially result in excessive tolling.  PPB should institute a tracking practice.

ECF 292-1 at 63.  The City takes issue with our characterization.  The City asserts that IA and IPR

staff "regularly communicate with outside agencies conducting criminal investigations so as to track

the status of the investigations (generally on a monthly basis, but sometimes more or less frequently

depending on the number of outstanding cases)."  Going forward, we ask that PPB document these

communications in writing, including when the information was sought, who sought it, and what

information was received in response.  Such documentation will assist the City in maintaining

substantial compliance with Paragraph 122 by ensuring that administrative investigations are subject

only to "appropriate tolling".

      **Paragraph 125**.  In discussing an event in which an officer shot at an auto theft suspect who

drove a truck at and into the officer, our report included a typographical error.  The event occurred

on December 24, 2020, not December 24, 2021, as our report indicated.  ECF 292-1 at 64.  The City

provided the materials in 2021, which is why the event was discussed in this report.

      In addition, we found that PPB compromised the communication restriction order (CRO)

required by Paragraph 125 by emailing video of the incident to all PPB personnel, including the

involved and witness officers subject to the CRO.  *Id.*  This was based on an email with the subject

**Page 8     Plaintiff's Status Report**

"Suspect video Shooting" to ALLPPBUsers, December 24, 2020 at 9:19:56 p.m. (PDF page 95 of 1075). The City does not dispute that distribution of the video would compromise the required CRO,[4] but has since clarified that despite the subject line, PPB emailed only *still* photos from the video for a legitimate law enforcement purpose, i.e., to apprehend a dangerous fleeing subject. We accept the City's explanation. Also, in the involved officer's interview, the officer stated that she saw the video on the news 25 times before the delayed interview though the officer had been issued the CRO. This undercut the CRO, even if the distribution of the still photos was reasonably explained.

**Paragraph 126**. In discussing the same lethal-force event discussed in Paragraph 125, we repeated the typographical error misidentifying the year of the event as 2021, instead of 2020. In addition, we found that "PPB did not properly implement the requirements of Directive 1010.10 in multiple cases this reporting period," noting failures in "two of ten officer-involved-shooting events." ECF 292-1 at 65. Directive 1010.10 requires witness members to "provide a full and candid account" of a lethal force event during an on-scene interview. The City has correctly advised us that the referenced requirement does not apply to involved officers. Because one of the two examples we relied on pertained to an involved officer, three changes to our assessment report are appropriate: (1) our reference to "multiple cases" should be changed to "one case"; (2) our reference to "two of ten" should be changed to "one of ten"; and (3) the final three paragraphs, beginning with "Second, on December 24 . . ." should be deleted.

**Paragraph 169**. In finding that the City remained in partial compliance with Paragraph 169, we relied in part on the length of administrative investigations, stating: "The City's accountability

---

[4] We previously found that PPB compromised CROs by allowing involved and witness officers to review video of an event involving an officer's use of lethal force. ECF 124-1, DOJ 2nd Periodic Compliance Assessment Report, at 102–03. This bears on a body-worn camera policy's pre-review provisions—i.e., because Paragraph 125 forbids involved and witness officers from reviewing video of lethal force events while a CRO is in place, we expect the City is negotiating pre-review rights only as to Category II, III, and IV force events so as to defend the provisions of the Agreement. ¶ 185.

investigations take around a year to reach a finding." ECF 292-1, at 58.  The City directed us to IPR

statistics and two COCL quarterly reports, which show that *with tolling*, investigations average 145 days

and that 76% to 84% of investigations are closed within 180 days.  Accordingly, the sentence at issue

should be revised to read:  "<u>Some of the</u> ~~The~~ City's accountability investigations take around a year to

reach a finding<u>; even more take that long when tolling is not factored</u>."  The City remains in partial

compliance with Paragraph 169's obligation to "apply policies uniformly and hold officers accountable

for complying with PPB policy" for the many other reasons stated in our report.

*        *        *

We will provide updates and answer the Court's questions at the interim status conference set

for November 9.

DATED: October 24, 2022.

FOR THE UNITED STATES:

| | |
|---|---|
| NATALIE K. WIGHT<br>United States Attorney<br>District of Oregon | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| RENATA A. GOWIE<br>Civil Division Chief | STEVEN H. ROSENBAUM<br>Special Litigation Section Chief |
| <u>/s/ Jared D. Hager</u><br>JARED D. HAGER<br>Assistant U.S. Attorney | <u>/s/ Laura L. Cowall</u><br>LAURA L. COWALL<br>Deputy Chief |
| | <u>/s/ R. Jonas Geissler</u><br>R. JONAS GEISSLER<br>Trial Attorney |

**Page 10     Plaintiff's Status Report**