# Mary Austad

| | |
|---|---|
| **From:** | Portland Copwatch <copwatch@portlandcopwatch.org> |
| **Sent:** | Friday, November 4, 2022 3:18 PM |
| **To:** | Mary Austad |
| **Cc:** | Dennis Apodaca |
| **Subject:** | Portland Copwatch Written Testimony for 11/9 Status Conference: USDOJ v. City of Portland |

CAUTION - EXTERNAL:

Judge Simon

This is a rough outline of the comments that Portland Copwatch members
will discuss in our oral testimony on Wednesday at the Status Conference
on US DOJ v. City of Portland. We will try to send in a longer version
to help the stenographer if it is ready before the hearing.

In general, we see the City acting much in the same way we have
described over the 10 years since they agreed to voluntarily make
changes to the Police Bureau to avoid a Consent Decree:

--they are more inclined to "check the boxes" than make meaningful
change

--they talk about community engagement but find ways to exclude the
community from discussions and decision-making

--they avoid using data required by the Agreement to make policy changes
and build community trust.

Examples of the community dis-engagement issue include:

--heavy-handedly re-booting the Portland Committee on Community Engaged
Policing by having staff and the City Attorney write the group's agendas
and bylaws, facilitate the meetings, and decide when the public can
talk.

--while the Behavioral Health Unit Advisory Committee is moving toward
the DOJ and COCL's request for them to discuss real use of force cases
against people with mental illness, they also voted at a meeting that
they do not have to address concerns that are raised by the public at
their community outreach meetings. Which, of course, is how that issue
was brought to them in the first place.

--the Independent Police Review is now in a unique place in the City
where they are not under any elected official, Bureau or Department.
However, they are considering having staff from the Community Safety
Division, which reports to the Mayor, work to support the Citizen Review
Committee. Setting aside the above-mentioned issues that PSD staff is

1

causing the PCCEP, an institutional analysis says that the Police Commissioner should not be staffing the police oversight body.

Examples of data which are not being used properly include:

--examining lawsuit settlements and judgments to determine issues that might lead to training/policy changes. While this is outline in Section X of the Agreement (paragraph 170-e-v), such analysis has not been done. Portland Copwatch has repeatedly asked City Council to discuss underlying policy issues each time a settlement comes before them for a vote. Yet they seem so boxed-in by the City Attorney telling them not to say anything to jeopardize the case, which by then is about to be settled anyway, that no such discussion ever happens.

--As pointed out by the Compliance Officer (after years of our urging the same), the PPB analyzes stop and search data, but does not seem to be doing anything to address the inequities those data reveal. The COCL generously lets slide the PPB analysis that more Black Portlanders get pulled over because they are more likely to be crime victims, an absurd premise, but agrees that the numbers still could be improved with training and policy changes. The COCL even threatens to find the data collection paragraph out of compliance if PPB does not change. We agree, but that should have been done long ago.

Finally, to reiterate points we've made before about the idea of a court monitor, should the parties agree to replace the Compliance Officer with one:

--the Monitor should be someone who lives in the region, not in Los Angeles, Chicago, New York, or some other remote location.

--the Monitor should be required to seek out input from the community and be responsive to that input.

Thank you

dan handelman
for Portland Copwatch
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.