**Mary Austad**

**From:**          Portland Copwatch <copwatch@portlandcopwatch.org>
**Sent:**          Wednesday, November 9, 2022 8:43 AM
**To:**            Mary Austad
**Cc:**            Dennis Apodaca
**Subject:**       Oral testimony of Portland Copwatch (Dan Handelman and Marc Poris)

CAUTION - EXTERNAL:

Hello
We expect that each of us will need about 3 to 3.5 minutes to deliver
this testimony in whole.

Heard you mention our written testimony and it reminded me to send this!
dan handelman

Judge Simon

In general, we see the City acting much in the same way we have
described over the 10 years since they agreed to voluntarily make
changes to the Police Bureau to avoid a Consent Decree, which is to say:

--they are more inclined to "check the boxes" than make meaningful
change;

--they avoid using data required by the Agreement to make policy changes
and build community trust;

and

--they talk about community engagement but find ways to exclude the
community from discussions and decision-making.

Some examples of how community engagement has been failing include:

--When the City re-booted the Portland Committee on Community Engaged
Policing, the City did so with a heavy hand. City staff from the
Community Safety Division (CSD) and the City Attorney have been writing
the group's agendas and draft documents for them to consider, including
their bylaws. The staff also has taken over facilitation of most
meetings, and has narrowed down the ability of the public to talk. This
is a Committee whose name includes "community engagement." Because of
the pandemic, the PCCEP has not been holding in-person meetings where
community members might be able to chat one-on-one with committee
members before meetings, during breaks, or at the end. The closest
analog is the chat function on Zoom, which has been closed down in
recent months except during public testimony times. Most community
attendees and many PCCEP members are recognizing that the tone of these

meetings has changed dramatically.

--It is gratifying to know that the Behavioral Health Unit Advisory
Committee is moving toward the DOJ and COCL's request for them to
discuss actual use of force cases against people with mental illness.
However, the COCL's recent report says the BHUAC voted at a recent
meeting that they do not have to address concerns raised by the public
at their community outreach meetings. This compounds the issue that led
to the outreach meetings in the first place-- that the BHUAC's regular
business meetings are not open to the public. And, it's important to
note, the new policy to review actual cases came from public comment
made by Portland Copwatch at one of the outreach meetings. So it seems
the BHUAC is doubling down on its contention that they are the community
and they don't need to hear from anyone else. As a side note, the
Focused Intervention Team Community Oversight Group, which isn't
directly related to the Settlement Agreement, has taken a similar
attitude.

(2:15)

--The Independent Police Review is now in a unique place in the City
where they are not under any elected official, Bureau or Department.
This could be seen as a good practice run prior to the new oversight
board's implementation as a similarly independent entity. However, IPR
is considering having staff from the Community Safety Division, which
reports to the Mayor, work to support the Citizen Review Committee.
Setting aside the above-mentioned issues that CSD staff is causing the
PCCEP, an institutional analysis says that the Police Commissioner
should not be staffing the police oversight body.

--The police pledge transparency, but have withheld the names of the
last four officers involved in shootings-- including one from Monday
morning. At first they claimed there was a "credible threat" to the
officers, now they seem to have made it routine to violate their written
policy that calls for release of that information in 24 hours. That is a
policy approved by the DOJ.

Examples of data which are not being used properly include:

--The City should be examining lawsuit settlements and judgments to
determine issues that might lead to training and/or policy changes. This
concept is outlined in Section X of the Agreement (paragraph 170-e-v),
where the COCL is required to lead semi-annual qualitative and
quantitative outcome assessments of the settlement and judgment data.
This analysis is not being done. Portland Copwatch continues to ask City
Council to discuss underlying policy issues each time a settlement comes
before them for a vote, yet they seem boxed-in by the City Attorney
telling them not to say anything that would jeopardize the case. No such
discussion ever happens and the ordinances get approved since the City
and the individual harmed by PPB have agreed on the settlement. In fact,
last week City Council heard an ordinance for a $47,500 settlement for a

street medic who sustained injuries from being brutally shoved to the ground by an officer in riot gear. The officer was apparently found out of policy for use of force. The City did not discuss the underlying facts of the case, whether the discipline might prevent future occurrences, or broader policy and training issues.

--We have been pointing out for years, and the Compliance Officer now agrees, that when PPB analyzes stop and search data, they do not seem to be doing anything to address the inequities those data reveal. The COCL generously lets slide the PPB analysis that more Black Portlanders get pulled over because they are more likely to be crime victims, an absurd premise, but agrees that the numbers still could be improved with training and policy changes. The COCL even threatens to find the data collection paragraph out of compliance if PPB does not change. We agree, but that should have been done long ago.

Finally, to reiterate points we've made before about the idea of a court monitor, should the parties agree to replace the Compliance Officer with one:

--the Monitor should be someone who lives in the region, not in Los Angeles, Chicago, New York, or another far-flung location,

--the Monitor should be required to seek out input from the community and be responsive to that input,

and

--community groups should have a seat at the table when the Monitor job description is written and when the candidates are interviewed.

Thank you for your time.

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.