**NATALIE K. WIGHT, OSB #035576**
United States Attorney
**JARED D. HAGER, WSB #38961**
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2936
Phone: 503.727.1120
Email: jared.hager@usdoj.gov

**KRISTEN CLARKE**
Assistant Attorney General
Civil Rights Division
**STEVEN H. ROSENBAUM**
Chief
**LAURA L. COWALL**
Deputy Chief
**R. JONAS GEISSLER**
**AMY SENIER**
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Phone: 202.514.6255
Fax: 202.514.4883
    Attorneys for Plaintiff United States

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:12-cv-02265-SI |
| Plaintiff, | PLAINTIFF'S STATUS REPORT |
| v. | |
| **THE CITY OF PORTLAND**, | |
| Defendant. | |

Page 1     Plaintiff's Status Report

In advance of the status conference set for February 28, 2023, Plaintiff United States of America (United States) submits this Status Report to address issues that the Court raised at the July 2022 and November 2022 status conferences, and to provide brief updates on the City's effort to re-achieve substantial compliance with the Amended Settlement Agreement (Agreement), ECF 276-1.

## I.    Issues Raised by the Court.

In recent hearings, the Court asked the parties for updates on: (1) discussions about an independent monitor; (2) the City's investigation of Rapid Response Team (RRT) training slides from 2018, which contained legally incorrect and otherwise problematic material that the City produced to separate outside entities in April 2020 and September 2021, and disclosed to us on January 14, 2022; and (3) body-worn camera (BWC) policy negotiations between Intervenor Portland Police Association (PPA) and the City, as required by ¶ 194. *See* Status Conf. Tr. 10:13–13:19 (Nov. 9, 2022); Status Conf. Tr. 5:14–6:7, 7:16–8:23 (July 27, 2022).

**Independent Monitor**. The parties met in mediation on October 25, December 13, January 24, and February 27 to discuss ways to improve the monitoring process. Mediation included working sessions for the United States and the City, and discussion sessions with the PPA, enhanced *Amicus Curiae* Albina Ministerial Alliance Coalition for Justice and Police Reform (AMAC), and *Amicus Curiae* the Mental Health Alliance (MHA). One session included the Compliance Officer-Community Liaison (COCL).[1] The parties also provided relevant background information at public meetings of the Portland Committee on Community Engaged Policing (PCCEP). On February 15, 2023, the PCCEP voted to approve a recommendation related to an independent monitor.

The parties continue to mediate the issue, but the substance of conversations is confidential. We will inform the Court if the parties agree to shift to an independent monitor. If there is not an

---

[1] COCL's principal member, Dr. Dennis Rosenbaum, announced his intent to retire in June 2023, and will wind up service as the COCL in August 2023, after finalizing 2023's first quarterly report.

**Page 2    Plaintiff's Status Report**

agreement by the time Dr. Rosenbaum retires this June, the United States will continue to monitor the City's implementation of the Agreement. The Agreement will continue to require the City to publicly identify COCL candidates and select a COCL. ECF 276-1, ¶ 137.

**RRT Training Slides**. The City completed an administrative investigation related to a single RRT training slide. At DOJ's request, the City opened other administrative investigations related to the training slides, which are still pending. The City has advised that it will consider publicizing the results of the completed investigations, consistent with its obligations under the Oregon Public Records Law. We have requested information about the investigations on an ongoing basis, including the City's rationale for how it has framed the allegations at issue in the investigations. We will fully evaluate the completed investigations and any necessary investigations that were not opened in a future compliance assessment report. However, it is clear right now that, at least in this instance, the City has not complied with its obligation to complete administrative investigations of officer misconduct within 180 days, as required by the Agreement. ECF 276-1, ¶ 121.

**BWC Bargaining**. The City and PPA have not yet completed the state law collective bargaining process. We are advised that the City and PPA will submit at least one BWC-related issue to arbitration, which may add several months to the bargaining process. Because the positions of the City and PPA have become public through Oregon Employment Relations Board filings, there may be an opportunity for the parties and the Court to compare those positions with DOJ's prior letter concerning BWC use, ECF 286-4.

## II.   Progress and Barriers to Re-achieving Substantial Compliance.

The City has made progress since the November 9, 2022 status conference, but barriers to substantial compliance remain. Below, we touch on training, accountability, and community engagement.

**Page 3      Plaintiff's Status Report**

**Training, ¶¶ 79–87, 190–191**.  We are pleased to report significant progress by the City with respect to PPB training.  Three events, in particular, have moved the City closer to re-achieving substantial compliance with the Agreement's training-related obligations.

First, on November 22, 2022, DOJ, the City, and the COCL met to address training-related compliance concerns and the steps the City can take to resolve them.  We identified best practices for police training, emphasizing how to incorporate PPB's new civilian "dean," adult-based learning concepts, and facilitated-scenario approaches that reduce reliance on generally less effective lecturer-based, PowerPoint approaches.  The City and leaders at PPB's training academy acknowledged the concerns laid out in our Sixth Periodic Compliance Assessment Report, ECF 292-1, and the COCL's more recent assessments, ECF 306-1; COCL Q1 2022 Report, at 47–86; ECF 328-1, COCL Q2 2022 Report, at 60–98.  We provided four recommendations related to consistent leadership, instructor development, equivalent reporting structures, and adequate resources to ensure the City can re-achieve substantial compliance with Section IV.  We will report on the City's progress to implement these recommendations and resolve remaining concerns in our next periodic compliance assessment report.

Second, on January 19, 2023, the City provided us a copy of PPB's 2023 Annual Training Plan, which PPB's Training Division shared with all PPB responsible unit managers along with a reminder that Directive 1500.00 requires that the Training Division review and approve all training and lesson plans.  Centralized control of training provided by and to PPB members should aid the City in avoiding the type of errors reflected in the RRT training slides. The Annual Plan is consistent with the Agreement's requirements, and reflects increased professionalization within PPB's Training Division.

Finally, PPB is in the process of training all members on how to manage crowds and First Amendment-protected demonstrations consistent with law and policy.  In December and January, we reviewed lesson plans, which we found were an improvement on prior efforts.  In mid-February, we observed training sessions and provided real-time feedback.  With the exception of a single

presentation on officer accountability, which was problematic but corrected, we found the training to meet Agreement requirements. The COCL and the outside entity reviewing the City's response to the 2020 protests also reviewed this training, which will run through May 2023. We plan to continue observing this critical training to ensure that it meets the requirements of the Agreement.

**Accountability, ¶¶ 122–140, 169, 192, 195**. Accountability continues to be a challenge for the City. We have identified significant concerns with the conduct of the City's accountability processes, with respect to both the adequacy and timeliness of investigations of officer misconduct. We have observed several Police Review Boards (PRBs) since assessing the data that formed the basis of our last report. EFC 292-1, DOJ Sixth Periodic Compliance Assessment Report, at 56–74 (finding the City in substantial compliance with 12 of 20 accountability-related paragraphs). Consistent with our course of monitoring compliance, we have timely offered to provide the City with critical feedback to allow the City to correct course as it deems appropriate before finalizing findings.

On November 10, 2022, DOJ, the City, and the COCL met to address accountability-related compliance concerns and the steps the City can take to resolve them. At that meeting, we discussed confidential PRBs and underlying accountability investigations for four specific incidents. We asked for responses to several serious issues raised in the underlying incidents and in the conduct of the PRBs. For example, our review of an investigation of a particular lethal force event revealed that PPB did not assess, let alone justify, a standalone use of lethal force. The City has not yet produced full responsive data, provided a plan of corrective action, or identified barriers to remediating our compliance concerns.

Finally, we have been encouraged by the Police Accountability Commission's volunteer service to propose recommendations for overhauling the City's police accountability structure, consistent with the overwhelming will of Portland voters. However, we are concerned whether the Commission has sufficient support from the City to complete its work in a timely and thorough manner. When the

**Page 5      Plaintiff's Status Report**

Commission's work is done, the City must "propose amendments to City Code to address the Commission's proposal, and corresponding amendments to this Agreement, subject to the United States' and the Court's approval, to ensure full implementation of the Oversight Board and effective police accountability." ECF 276-1, Agreement, ¶ 195(b).  We will continue to report on the City's efforts to implement the new Oversight Board and effective police accountability, as required by the Agreement.

**Portland Committee on Community Engaged Policing (PCCEP), ¶¶ 141–152, 193**. The City continues on a path of course correction following a period of allowing significant compliance concerns to persist, particularly as to Paragraphs 143, 144, and 151.  *See* ECF 292-1, DOJ Sixth Periodic Compliance Assessment Report, at 77–78, 83–84; ECF 296, AMAC Status Rep., at 7–8; ECF 297, MHA Br., at 9–11.  Between June and October 2022, the City hired PCCEP staff and appointed replacement members, as required by Paragraphs 143 and 144.  Between November 2022 and January 2023, the City further supported the PCCEP as it elected co-chairs, held monthly subcommittee meetings, and deliberated on police-related issues and recommendations of interest to the public.  We are pleased with the recent progress and will continue to monitor the City's support of the PCCEP and its mission.

*       *       *

We will provide additional updates and answer the Court's questions at the interim status conference on February 28, 2023.

DATED: February 21, 2023.

FOR THE UNITED STATES:

| | |
|---|---|
| NATALIE K. WIGHT<br>United States Attorney<br>District of Oregon | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| | STEVEN H. ROSENBAUM<br>Special Litigation Section Chief |
| /s/ Jared D. Hager<br>JARED D. HAGER<br>Assistant U.S. Attorney | /s/ Laura L. Cowall<br>LAURA L. COWALL<br>Deputy Chief |
| | /s/ R. Jonas Geissler<br>R. JONAS GEISSLER<br>Trial Attorney |
| | /s/ Amy Senier<br>AMY SENIER<br>Trial Attorney |