**February 24, 2023**

Dear Judge Simon,

I'm writing to share my views on the status of Settlement Agreement implementation, reflect on recent challenges, and call out opportunities to improve outcomes moving forward.

BODY-WORN VIDEO

The City of Portland is long overdue in implementing body-worn video for officers. Implementation of body-worn video was added to the Settlement Agreement as a remedy following the crowd control events of 2020. This should be a positive development, but the parties have unfortunately decided to repeat the mistakes Portlanders have made many times in the past, insisting on perfect policy while ignoring the benefits of urgent, incremental action.

The United States' preferences for the body-worn video pre-review policy are consistent with the most strident voices in the activist community. Their position would put Portland out of step with most similar cities and has, predictably, set up program implementation for failure, or at best, years of delays. The United States seems to believe that Portland is different enough from other cities that we need a highly unusual policy. I disagree.

It is now February 2023, and the bargaining process has resulted in impasse, as all parties likely knew it would as early as September 2022. The incremental benefit of the United States' preferred pre-review policy is not worth the time cost. The United States has argued in the past that the bargaining parties have freedom in choosing a pre-review policy. I do not believe that can be true when the United States has expressed a specific preference and threatened enforcement action if the city makes the wrong choice.

There are echoes of previous efforts to implement body-worn video. This process failure was clearly foreseeable by all parties. I hope that the court will, in the future, be more proactive in identifying unreasonable demands made by the United States and helping the parties agree on remedies and implementation approaches that are more likely to succeed.

If the crowd control events of 2020 were to be repeated this summer, Portlanders would once again be deprived of the accountability that body-worn video can provide. It is unacceptable that the parties have, in effect, collaborated to achieve this outcome. I hope that the City of Portland will be more forceful in pushing back against unreasonable impositions by the United States, and that Your Honor will find some means to help the parties recognize their shared interests and take action to make progress.

PREVALENCE OF BEHAVIORAL HEALTH CHALLENGES

The Settlement Agreement was intended to improve outcomes for Portlanders experiencing behavioral health challenges. The agreement wisely recognized that interventions within the PPB alone would not sufficiently improve outcomes for these Portlanders.

As the Mental Health Alliance has pointed out, PPB's data in isolation does not show a clear decline in the use of force against subjects in crisis. So far, there has not been a clear explanation of why this is. I hope that the City of Portland will study the prevalence of mental illness and addiction in the community to understand if underlying factors have changed, or if PPB's performance is regressing. Regardless of cause, the City of Portland will need this information to understand how services can adapt to current circumstances, which may be quite different from what Settlement Agreement remedies were designed for.

TRAFFIC VIOLENCE

Our city continues to see the tragic outcomes of poor road design, underinvestment in disadvantaged communities, lack of traffic enforcement, inadequate access to behavioral health care, and a farcical neglect of our 'Vision Zero' commitments. The costs of our failures to take traffic safety seriously are, tragically, measured in lives lost.

I understand that a driver recently struck Your Honor in a Northwest Portland crosswalk. According to news reports, slow speed was a factor in your survival. While visibility at that crossing could be improved by curb extensions, Your Honor benefited from other aspects of street design that encouraged slow, survivable speeds. Unfortunately, this privilege is not available to all Portlanders, with unsafe road design being especially prevalent in our less affluent East and Northeast Portland communities. While some will point to traffic enforcement as the way to reduce fatalities, it is, compared to design interventions, a risky and unscalable approach.

Portlanders recognize that traffic enforcement is a critical piece of the traffic safety puzzle yet remain concerned about disparities that are evident in stop and use of force data. Where there has been progress in reducing racial disparities, that may be a result of the bureau's choice to stop enforcing many kinds of traffic violations. A return to vigorous enforcement, if not done very thoughtfully, risks reversing necessary progress. PPB and City of Portland leaders should not resume traffic enforcement until they have a plan and policies with explicit intent to avoid disparate outcomes and use stop data to improve road conditions.

City leadership has been openly discussing the use of Oregon State Police for traffic enforcement. This seems unlikely to happen, and I am dismayed that there has been little exploration of more innovative, equitable, and realistic approaches. It is unfair to use traffic

enforcement to correct for road design flaws, which are often the cause of speeding. To reduce disparate impact, the city should explore automated traffic enforcement, road design interventions, education, efforts to reduce vehicle miles traveled, and other 21st century approaches that reduce demand on limited officer resources. Officer-based traffic enforcement should focus on unsafe driving behaviors that cannot be corrected through other means, like reckless, drunk, and distracted driving.

## PCCEP

I am pleased to report that PCCEP is back on track and has been doing good work for some time now. City staff, working with PCCEP members, articulated a clear plan and timeline for resuming full functionality, and that plan has been carried through to completion. PCCEP is now a strong, collaborative group with recent successes tackling difficult subjects, managing disagreement, and producing work products under challenging deadlines. I have been impressed with members' diversity of thought and lived experience, and it is my honor to serve on PCCEP alongside this dedicated group of Portlanders.

Sincerely,
Nathan Castle