**Juan C. Chavez**, OSB #136428
Email: jchavez@ojrc.info
**Franz Bruggemeier**, OSB # 163533
Email: fbruggemeier@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-275-1839

Attorneys for *Amicus Curiae* Mental Health Alliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>    Defendant. | Case No. 3:12-cv-02265-SI<br><br>DECLARATION OF JUAN C. CHAVEZ |

I, Juan C. Chavez, submit the following declaration:

I am the counsel of record for the Mental Health Alliance, and I make this declaration in support of the Mental Health Alliance's November 2022 Status Report for the purpose of identifying exhibits. My statements are true to the best of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

1. **Exhibit 1** is the written report by MHA member Jonathan Brown. *United States v. Miami-Dade County, et. al.*, Case 1:13-cv-21570-BB, Dkt. 246 p. 4 (S.D. Fl. 2022).

2. **Exhibit 2** is a compilation created by MHA member Eben Hoffer of his survey of city jurisdictions with similar population size to the City of Portland and their body-worn camera pre-review policies.

**I hereby declare that above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

DATED: February 27, 2023.

                                        */s/ Juan C. Chavez*
                                        Juan C. Chavez, OSB #136428

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-21570-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MIAMI-DADE COUNTY, THE BOARD
OF COUNTY COMMISSIONERS, *et al.*,

    Defendants.

_____/

## ORDER TO SHOW CAUSE

**THIS CAUSE** is before the Court following receipt of the Lead Monitor's Interim Report, dated August 12, 2022. This report follows a glaring lack of compliance by the Defendants, resulting in life-threatening consequences to inmates.

The parties entered into a Consent Agreement ("Consent Agreement"), ECF No. [5-2], effective May 22, 2013, to remedy the constitutional violations at the Miami-Dade County correctional facilities regarding inmates' medical care, mental health care, and suicide prevention. A separate Settlement Agreement was signed on April 30, 2013, addressing inmates' protection from harm, fire and life safety, and inmate grievances. *Id.* at 5; ECF No. [85-1] ("Settlement Agreement"). The Consent Agreement contained deadlines and requirements for implementation of 119 provisions. The Settlement Agreement contains 56 paragraphs. Defendants were to implement all provisions of the Consent Agreement and Settlement Agreement within 180 days of the Effective Dates. More than nine (9) years later, Defendants *still* have not achieved full compliance with either Agreement.

At the last status conference before the Court on April 15, 2022, following the Independent

Exhibit 1
1

Monitors' Compliance Report #14, Lead Monitor Susan McCampbell reported that 11 of the 115 paragraphs in the Consent Agreement remain in partial compliance, and 5 of the 56 paragraphs in the Settlement Agreement remain in partial compliance. *See* ECF No. [244] at 10. Ms. McCampbell advised the Court of the Monitors' significant concerns regarding inmate in-custody deaths in the last year. As the Monitors reported, there were 14 deaths in 2021, and 6 deaths in 2022 at the time of the status conference. *See id*. at 11.

The Monitors also expressed that one of the main reasons Defendants have failed to reach full compliance is a lack of leadership, but they remained optimistic due to the support and involvement of Miami-Dade County Mayor Daniella Levine Cava. The United States agreed with the Monitors' assessment that a lack of effective leadership hampered progress but echoed the Monitors' hope that the Mayor's active involvement would propel Defendants toward compliance. *Id*. at 21, 25-26. At the status conference, the Mayor stated:

> I'm here today to show this Court, the Department of Justice, and the monitoring team that the County at the highest level is absolutely committed to bringing Corrections into full and lasting compliance with the consent agreement.
> But in addition to that, I want to ensure that Miami-Dade Corrections goes above and beyond the requirements of these agreements and orders and ultimately that we are able to position this department as a national leader and a model for corrections departments across the country. That is my commitment.
> I consider that the consent agreement and any reforms of the utmost importance. And I have not been in the position for long, but I have now taken a deep dive, and will continue to do so, to learn as much as I can to drive these reforms necessary to make our system more efficient, safe and humane for our inmates and our staff.

*Id*. at 35-36.

Based upon the parties' representations, the Court announced it expected full compliance with the remaining provisions in the Consent Agreement and Settlement Agreement by November 18, 2022 and scheduled a final status conference on December 16, 2022.

Case No. 13-cv-21570-BLOOM

However, since the April status conference, Defendants appear to be no closer to reaching full compliance by the Court's deadline and inmates' safety and welfare remains a critical concern. The attached Interim Report prepared by Ms. McCampbell details that, as of August 12, 2022, there have been eleven (11) inmate deaths in 2022, four (4) of which were suicides. The Interim Report identifies four main issues that remain of critical concern to the Monitors:

1. Care of inmates with serious mental illness and segregation;
2. Inmate classification;
3. Mechanisms and systems to assess sentinel events (deaths, serious harm); and
4. Mental health staffing.

The devastating failures have prompted Ms. McCampbell and Dr. Robert Greifinger, medical monitor, to submit their resignations in this case as of December 30, 2022. Interim Report at 3. Since the Interim Report, the Court has learned of *more* incidents of self-harm and/or inmate-on-inmate violence:

- August 22, 2022 – an inmate was involved in a self-harm/suicide attempt at the Pretrial Detention Center, and as of August 26, 2022 is in the Mental Health Treatment Center at Turner Guilford Knight ("TGK").

- August 24, 2022 – two co-housed inmates at TGK fought in their cell, resulting in severe injuries to one of the inmates. The injured inmate also attempted self-harm almost one year ago.

- August 26, 2022 – two inmates at Metro West Detention Center were involved in an altercation that resulted in one of the inmates sustaining severe injuries. The injured inmate remains in a coma with multi-organ failure and a poor prognosis.

These incidents highlight the Court's concerns that the Defendants' lack of compliance is resulting in serious and life-threatening consequences, and that the United States is not seeking any relief.

As the Interim Report succinctly states:

> It is the responsibility of the plaintiffs, the U.S. Department of Justice, to engage the County in discussing remedies to the current situations, as well as attend to the Court's direction to propose sanctions if compliance is not achieved in the October tour. It is apparent that the strategies implemented/attempted since 2013 – summary action plans and guidance (outcomes and due dates) contained in the fourteen compliance reports have not resulted in reforms, harm continues, resources continue to be expended, and frustration grows on all sides.

Interim Report at 15. The Interim Report also states that "[a]t the core of the County's inability to gain and sustain compliance are the internal culture of the organization, leadership ambivalence, and absence of sufficient subject matter expertise." *Id*. at 2.

Despite the most recent incidents, and the long-standing deficiencies in protecting inmates from harm, the United States has failed to seek sanctions or other relief since May 2018, nor has the United States sought enforcement of the provisions of the Consent Agreement or the Settlement Agreement. The Consent Agreement specifically allows the United States to seek Court intervention, *see* ECF No. [5-2] at 33, VII.E., and the Settlement Agreement states, in pertinent part, that if the "DOJ determines that the County has not substantially complied with this Agreement the DOJ may pursue litigation against the County." *See* ECF No. [85-1] at 21, VII.D.

Accordingly, it is **ORDERED AND ADJUDGED** that the parties shall appear before this Court on **October 12, 2022 at 9:00 a.m. at 400 North Miami Avenue, Courtroom 10-2, Miami, Florida 33128**. The United States shall show cause as to why, despite Defendants' well-documented and repeated failures to comply with the Consent Agreement and Settlement Agreement, the United States has failed to seek enforcement of either Agreement. The United States shall further provide a written response to this Order **no later than September 16, 2022**. The response shall include a summary of sanctions the United States has requested of courts in similar cases, and why the United States has failed to seek those sanctions in this case.

Case No. 13-cv-21570-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 30, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Exhibit 2

| US City | City Name | Prereview Allowed? | Policy 1 | Link 1 | Policy 2 | Link 2 |
|---|---|---|---|---|---|---|
| **US Cities by population rank, ±10 ranking slots from Portland, OR (#26)** | | | | | | |
| 15 | Indianapolis | Prereview allowed or compelled, unless subject to forcible Garrity interview (not usbale in court) | BWC SOP IV.A | https://citybase-cms-prod.s3.am | | |
| 16 | Charlotte | Prereview with prior supervisory approval in critical incident cases. allowed in all other cases. | 400-006.V.I.1.d-e | https://charlottenc.gov/CMPD/D | | |
| 17 | San Francisco | STATEMENT PRIOR TO VIEWING REQUIRED for high-level force | DGO 10.11 F | https://bja.ojp.gov/sites/g/files/x | | |
| 18 | Seattle | No review any case responded to by force investigators | 16.090-POL-2 | https://www.seattle.gov/police-n | p. 46 A | https://www.seattle.c |
| 19 | Denver | Prior approval of investigatior/MCU cmdr required before viewing for reviewable force events | 119.04 (4)(f) | https://www.denvergov.org/files/ | | |
| 20 | Oklahoma City | pre-review required before interview/statement, except crim investigation not in line of duty | 188.30 | https://www.okc.gov/home/show | | |
| 21 | Nashville | No prereview for cases involving death or serious injury, allowed in all other cases | 8.30.180 B | https://www.nashville.gov/sites/ | 8.30.180 F | |
| 22 | El Paso | No prereview during force incidents. Review following supervisor approval of initial report. | 510.10 | https://public.powerdms.com/El | | |
| 23 | Washington DC | Review not allowed for officer-involved shootings. Allowed in all other cases (for serious force or DIC, only with prosecutor declination or after a reverse garrity wanring is given - EG, following a voluntary interview) | GO-SPT-302.13 V.D | https://go.mpdconline.com/GO/ | GO-SPT-302.13 V.E.3 | https://www.aele.org |
| 24 | Boston | Prereview allowed in all cases. In deadly force cases, at time determined by investigation spvsr. | RULE 405, Sect. 6 | https://static1.squarespace.com | | |
| 25 | Las Vegas | Prereview allowed in all cases. | 5/210.01 Sect. 3 | https://www.lvmpd.com/en-us/Ir | | |
| 26 | Portland OR | TBD | | | | |
| 27 | Detroit** | Prereview allowed in all cases. | 304.6-6 | https://nyenhuislaw.com/wp-cor | | NOT CURRENT PO |
| 28 | Louisville | Prereview allowed in all cases. | SOP 4.31.15 | https://louisville-police.org/Docu | | |
| 29 | Memphis | Prereview only with high-level supervisory approval for deadly force cases or other firearm discharge. Allowed in other cases. | Chap. XIII Sect. 15 (B.8) | https://memphispolice.org/wp-c | Chapt. 2 Sect. 8 (VI.A-B) | https://memphispolic |
| 30 | Baltimore | Review not allowed for serious force unless prosecutor declination or following voluntary interview | Policy 824, Review, § 5-6 | https://www.baltimorepolice.org | Policy 1115 def. lvl 3 force | https://www.baltimor |
| 31 | Milwaukee | Review only with Chief's approval in critical incidents (death, serious physical injury, firearm discharge resulting in injury). Prereview allowed in all other cases. | 747.25 F | https://city.milwaukee.gov/Imag | 455.05 (critical incident definition) | https://city.milwauke |
| 32 | Albuquerque | No directives governing officer review of BWC footage prior to force reporting | | https://documents.cabq.gov/poli | | |
| 33 | Fresno | policy is confidential, link may be out of date. if correct, no constraints on review | Policy 450 | https://www.documentcloud.org | | |
| 34 | Tuscon | "officers shall not view any video depictions related to an incident under investigation prior to providing a statement." | 2517 | https://www.tucsonaz.gov/files/p | | |
| 35 | Sacramento | Prereview allowed in all cases. | 525.07 C5 | https://www.cityofsacramento.or | | |
| | | | | | | |
| **OTHER PEER CITIES** | | | | | | |
| 11 | Austin | Prereview allowed in all cases. | 303.6(a-b) | https://cao-94612.s3.amazonaw | | |
| 14 | Columbus | Prereview allowed in all cases. | 11.07.III.EE | https://www.columbus.gov/polic | | |
| 38 | Atlanta | No prereview prior to any force report. no review in lethal force cases. | 4.12.2-3 | https://public.powerdms.com/AF | | |
| 40 | Colorado Springs | No review in deadly force cases without high-up authorization. Procedure for constraining review in compolaint cases. prereview otherwise allowed. | 704.40 | https://coloradosprings.gov/sites | | |
| 41 | Raleigh | Prereview allowed in all cases. | 1109-18 | https://cityofraleigh0drupal.blob. | | |
| 44 | Miami | Review in critical incidents requires authorization from investigator. Prereview otherwise allowed. | 6.4.4 | https://www.miami-police.org/De | | |
| 45 | Oakland | Critical Incident + Investigations review requires high-up auth. Prereview otherwise allowed. | I-15 IV | https://public.powerdms.com/oa | | |
| 46 | Minneapolis | No prereview in critical incidents. Otherwise allowed. All access of footage is documented. | 4-223 (IV-A-9) | https://www.minneapolismn.gov | IV-D-5 | https://www.minnea |
| 53 | New Orleans | Prereview allowed in all cases. | PR447.6(b) | https://www.fopno.com/uploads | | |
| 68 | Pittsburgh | Prereview allowed in all cases. | 69-03 (15-16) | https://pittsburghpa.gov/files/pol | | |
| 94 | Boise | Officers have presumptive right to review, but BPD "reserves the right" to restrict media access. Officers may only look at their own video. | P-17.020 | https://www.cityofboise.org/med | | |
| 122 | Salt Lake | Prereview allowed in all cases. | 422.9 | http://www.slcpd.com/ass3ts/up | 305.9 | https://www.slcpd.cc |