Hon. Judge Michael Simon
US District Court (District of Oregon)
1000 SW Third Av
Portland, OR 97204

In the matter of United States of America v. City of Portland
Case Number: 3:12-cv-02265-SI

Testimony of Portland Copwatch on US DOJ/City of Portland Settlement for the
Status Conference to be held February 28, 2023

February 27, 2023

Judge Simon

(INTRO / PART 1)

Once again Portland Copwatch offers its comments on the status of the Settlement Agreement between the US Department of Justice and the City of Portland. These comments are on behalf of our organization, not the Albina Ministerial Alliance Coalition for Justice and Police Reform, nor the Police Accountability Commission, despite Dan Handelman's membership in those groups. Some of these comments reflect information we sent the Court on February 23 analyzing the Compliance Officer's Q3 2022 Report.

First, though, to address some of the issues your honor was pushing for the City to address at least since the status conference in July last year:

--The City finally made an announcement that they were disciplining one Sergeant for his role in including the violent, degrading and biased slide against protestors as part of the PPB's Crowd Control training. It's fairly typical of the City's turning in their homework at the last minute that this was revealed just six days in advance of the status conference. It's also telling that the Sergeant has a history of violence at protests: Sgt. McDaniel was seen around the world in a viral photo of him pepper-spraying an Occupy Portland protestor in the mouth. And it's aggravating but not surprising that the City had proposed to fire the Sergeant but instead gave him 100 hours off without pay. Moreover, there has been no clear discussion about the other training slides which had racial biases and legally questionable assertions in them.

--Likewise, the City and the Portland Police Association announced their impasse in collective bargaining over the Body Worn Cameras policy just 11 days before today's hearing. As Portland Copwatch has said many times, we cannot support the PPA's proposal to let officers review body camera footage before testifying or writing reports. That flies in the face of the Graham v. Connor standard requiring force to be predicated on what the officer knows at the time, not 20/20 hindsight. The arbitrators who are hired to moderate these disputes for the state of Oregon seem hopelessly mired in the assumption that police are like other laborers whose power needs to be lifted up against management; they're not thinking of armed agents of the state who are empowered to use violence in the course of their duties. We are hoping that there will be a discussion today about how the public, including the US DOJ, can present testimony for the arbitrators to consider so that the Court does not have to deal with a faulty ruling leading to pushback from the USDOJ and the inevitable court battle that will ensue.

--The Compliance Officer has been rightly focusing on the apparent bias in Portland Police traffic stops, but has not put enough emphasis on similar, but more pronounced bias shown in the PPB's use of force. Force used between Q4 2021 and Q2 2022 showed that the percentage of Black people subjected to force in Portland went down from its usual 25-30% to between 19 and 22%. But in Q3, that number went back up. The Bureau has stated in person and in its reports that one reason for such disparities is the number of Black people who commute or otherwise drive into Portland on any given day. Taking this argument at face value, and even using the data point where about 20% of those stopped are Black, in order for the police to be enforcing the law equitably, this is what would have to happen on a given day. 89,000 people who are not Black would have to leave Portland, and 89,000 people who are Black would have to enter, which would be the entire Black population of the state of Oregon along with 27,000 other people. The PPB has been collecting stop data for 23 years and force data for at least 16. That they keep using excuses like this instead of really examining what's behind the numbers is unconscionable.

(PART 2)

--This status conference should have been the first after Independent Monitor LLC presented its report on the 2020 protest response, which was due out in January. The latest information shows that report will not be ready until April, nearly three full years since Minneapolis Police killed George Floyd and prompted the uprising. Your honor indicated that the City and/or the PPA seemed to be deliberately delaying the implementation of body cameras; it also is apparent that the crucial lessons of 2020 will be harder to address the longer this drags on.

--Some of these issues are not solely the responsibility of the Police or even the elected leadership of Portland. In many ways, the City Attorney's office has been part and parcel of the problems that have continued to plague the community since the DOJ Agreement was written and implemented. Dr. Gina Ronning, a member of both the Training Advisory Council and the Focused Intervention Team Community Oversight Group, said this recently at a community event: "PPB has external limitations which make it very difficult for them to become a learning institution. Specifically the role of the City Attorney's office greatly controls the narratives and limits the ability of the PPB to become a more reflective, vulnerable and truth-telling agency."

--Another such issue, which is not in the purview of the court or the Agreement, but is pertinent nonetheless, is the state's arbitration system we referred to earlier. In an arbitration considering whether the former President of the PPA retaliated when he leaked unconfirmed accusations against former City Commissioner Jo Ann Hardesty, the arbitrator determined it was not retaliation, and that because Officer Brian Hunzeker was acting on behalf of the Association and not in his role as an officer, the City's disciplinary action of firing him was not appropriate. We would argue that the only reason Officer Hunzeker had access to the police report in this case was because he was a police officer. This also points to institutional issues around the PPA, who continue to throw up roadblocks to fully implementing the Agreement.


(PART 3)

--Turning to the issue of the community advisory bodies that are trying to help the police become a trustworthy institution, the Behavioral Health Unit's Advisory Committee worked out a deal to address the issue that Portland Copwatch raised at their public meetings. The question we raised was, "do you ever talk about the cases where police use deadly force against people in mental heath crisis?" The USDOJ pointed out that the BHUAC is supposed to make recommendations to prevent use of force against people with mental health issues. Yet they initially said they were not allowed to look at those cases. Now, a proposed remedy is to present them data about non-lethal force and facts about deadly force incidents on an annual basis. As described in the COCL's report, there is no requirement that the BHUAC then use that information to make recommendations to the Bureau. The first serious discussion of this issue was in October, 2021, and the first presentation about force is supposed to take place in March, 2023, 17 months later. In the interim, the PPB has shot at 11 more people, killing five of them, several of whom we believe were in crisis. And yet, the COCL finds the City in compliance for the BHUAC fulfilling its role before the first presentation is even given. As we said in our analysis of the COCL report, that is like giving an "A" to a student just for handing in their paper without reading the substance.

--Meanwhile, the City keeps talking about how they have finally obtained full membership for the Portland Committee on Community Engaged Policing. While that was true last summer, when PCCEP finally had 13 members after being down to as low as six members in early 2022, four people left the group in the interim. Three resigned within just a few months of being appointed, and one had their term expire. The City promises to keep filling the empty seats. But your honor knows what happened to the Community Oversight Advisory Board when their membership wasn't replenished. The PCCEP was unable to make many decisions, including voting on its own leadership, while the City toiled to fill those seats. On February 15, Council only filled two of the four empty seats. PCW testified, for the umpteenth time, that the City should allow advisory bodies to have a quorum of seated, active members, rather than a majority of the number of seats. That way if the PCCEP gets down to six people again, they can still function. We urge the Court and DOJ to press the City to take action on this concept.

(PART 4 / CONCLUSION)

--Moving on to the question of hiring a court monitor to replace the Compliance Officer in the future, PCW again urges all parties to ensure there is an active, accessible local component to the monitoring team. When Copwatch raised the point that the Police Bureau had begun withholding the names of officers involved in deadly force despite a policy requiring their names to be released in 24 hours, the current COCL confessed they had not heard anything about that issue. The PPB shot three people in late July, and withheld the name of the officer in the third case, citing threats made against the officers _in the first two cases._ They went on to not release the names of the officers involved in a shooting in August, which by the way was the third in 2022 to involve the Focused Intervention Team. Several news outlets including the Oregonian, Oregon Public Broadcasting and the Portland Mercury wrote extensively about this issue, and of course Portland Copwatch and others in the community also raised the problem repeatedly. That the COCL was unaware is shocking. It will be interesting to see their analysis of the Bureau's resolution to the issue, which took place in Q4, where they unilaterally changed their policy to release the names in 15 days instead of 24 hours. There was no process by which the community weighed in on the changed policy, and the PPB sent a copy to the USDOJ Civil Rights Division but without seeking their input. The Bureau wrote in their news release that they had "worked with the DOJ," meaning the FBI, which echoed the claims of threats against officers, was involved. Shame on the PPB for deliberately implying they meant the DOJ which is the arbiter in the case before you today, US vs. City of Portland.

--Finally, we would like to address the issue of the deadline for the Police Accountability Commission to finish its work designing the new oversight system. Your honor signed a court order following the fairness hearing on April 29, 2022, which clearly stated the PAC would have 18 months from the time of the order to finish its work. Yet the City, in its filing for today's hearing, reasserts that it believes the start date for the clock was December 9, 2021, the day of the PAC's first meeting. In January, the City had prepared a resolution to align the date properly to October 29, 2023, but the Mayor pulled it off the Council Agenda. We have a member of our group who sits on the PAC. In order to try to meet the June deadline, PAC members have been attending 2-3 meetings a week, and more than that if they are co-chairing in some capacity. This is not a sustainable work plan for a volunteer Commission. We urge the court to remind the City that they themselves wrote the amendment giving the group until October. It is possible, and maybe even likely, that the Commission can finish before October, but it will not go well if they are forced to try finishing by June. Other than Mr. Handelman sitting on the Commission, several of us have attended the meetings as observers and believe the Commission is headed toward streamlining the currently fractured system, and finding ways to make it so that community members harmed by the PPB have an equal chance of getting satisfaction from the system as the officers accused of misconduct. Right now the system is very biased in officers' favor. Please ensure the PAC can finish its work.

We appreciate you giving time to the community to express our concerns about the status of the implementation of the Agreement. We hope that our observations help lead to a better city for everyone who lives, works or visits here.


Portland Copwatch
PO Box 42456
Portland, OR 97242
copwatch@portlandcopwatch.org
www.portlandcopwatch.org
503-236-3065 (call or text)