# PCCEP STATUS CONFERENCE HEARING STATEMENT
## February 28, 2023

## I. PCCEP Status

PCCEP members are pleased to announce and celebrate our progress and accomplishments since the last Status Hearing. These achievements return us to a higher level of functionality and effectiveness, resulting in stronger community engagement and elevation of community voices.

We also appreciate and thank Dori Grabinski for her tireless and efficient support as program manager and PCCEP Project Assistant, Emily Mann.

### Accomplishments/ Progress

- PCCEP elected leadership for both the full committee and subcommittees.
  - PCCEP chairs and members plan and set agendas and priorities with support from staff.
- Subcommittee structures are re-established to continue addressing core Settlement Agreement (SA) requirements:
  - Community Engagement: will improve and expand community outreach and seek implementation of public input on policy as outlined in the Settlement Agreement.
    - Renewed commitment to connecting with mental health community and communities of color.
  - Settlement Agreement: will address policy and compliance.
  - Racial Equity: will address advocacy, outreach, and engagement with racial minority communities, those affected by/ experiencing mental/ behavioral health challenges, youth and other marginalized groups included in the Settlement Agreement.

- PCCEP members held a Facilitated Teambuilding Retreat and Orientation. Our Amici partners AMAC and MHA were invited, but declined to attend or contribute to our training, however we look forward to their participation at a future date.

- PCCEP began bylaws revisions to improve PCCEP functionality.

- A PCCEP member was selected to serve on Civilian Training Dean hiring committee.

- PCCEP members and staff are creating an outreach strategy:
  - Compiled updated list of community outreach partners.
  - Meeting with affinity groups for targeted communities
  - Created new Agenda Input Form for community.
  - Promoting Advance Public Comment form on the website
  - Reserving an Open Public Comment period at the end of every meeting
  - Promoting PCCEP presence and activities with new organizations and affinity groups

1

- PCCEP dedicated a meeting session for public input for November 2022 Status Conference Hearing Statement.
- PCCEP staff upgraded the website and social media presence, promoting methods for public engagement.
- PCCEP members and staff improved website access to PCCEP minutes, agendas and significant documents.
- PCCEP dedicated a meeting session for public input for February 2023 Status Conference Hearing Statement
- PCCEP held a special session for public input on Independent Monitor Recommendation
- PCCEP held a special informational overview presentation on Gunshot Detection Systems
- A PCCEP member will serve on RFP committee for Gunshot Detection pilot project.
- New members were recruited to PCCEP in January/ February 2023; recruitment is ongoing for youth seats.
- PCCEP will present formal recommendation for an Independent Monitor to replace the COCL.
- Upcoming March 1, 2023, PCCEP Town Hall on Gunshot Detection Systems (an informational presentation and request for public input)

**Emerging Concerns**

- Concerns that the current SA compliance metrics are not responsive to emerging community insight and needs, e.g., the use of force metric has not resulted in decreased use of force. For example, being "in compliance" often doesn't reflect in a reality where the state of policing is better for impacted communities. Vulnerable communities (as designated in the SA) continue to have disturbingly high numbers of use of force.
- The need for clarity in how the City (i.e., the Mayor, City Attorneys, PPB leadership, THE UNION/ PPA) will respond to PCCEP's (and by association, community) work and input—for example our work on Body Worn Cameras and the Training Slide. This apparent void undermines public perception of the PPB sincerity regarding building trust and creating equitable and just policies and practices and calls into question if meaningful progress and community engagement is possible particularly when the Union is involved.

## II. Progress Needed

PCCEP members recognize there is still much room for improvement:

- PCCEP still requires a dedicated staff person to assist with our robust plan for community outreach (per the November 2022 Status Hearing report). This will assist our efforts to consider hybrid meetings to increase marginalized community members' participation.
- Given the challenges observed with filling the Youth designated seats, alternative youth recruitment or engagement measures may be considered (e.g., working with youth focused groups, holding roundtable/ townhall events, focus group discussions) to meet those requirements.
- PCCEP's desire and effort is for more expansive Community Engagement, especially working with the PPB: there has been no recent activity to meet SA conditions outlined in:
    - Paragraphs 145: no meetings address constitutional policing policy and practices; no meetings between PCCEP and PPB to improve public outreach processes.
    - Paragraph 150: no meeting (in each precinct) to present the PPB Annual Report and educate the community about its policing efforts related to use of force, and about PPB policies and laws governing (traffic and pedestrian) stops, detentions, search consent, and bias-free policing, including civilian's responsibilities and freedoms.

## III. Concerns with PPB Policy

- Portland Police Bureau has been inordinately slow to respond to past PCCEP recommendations or the City directions and inquiries regarding problematic officer behavior, whether as a corporate-wide issue (body worn cameras) or regarding individual officer on and off-duty conduct. Regardless of how well PCCEP does in meeting its goals and objectives, regardless of compliance met in other areas, if this delayed/ no response dynamic continues, the community will lose faith in the PPB as a sincere partner in achieving the SA goal of promoting community confidence and facilitating the joint relationships necessary to promote public safety.
    - Reinstatement of Officer Hunzinger
    - Union-led delay on Body-Worn Camera Implementation
    - Union-led delay on Training Slide Investigation AND the insufficient remediation of that incident.
    - PPB use of force remains unacceptably high overall and is disproportionately high against people with real or perceived mental illness and people of color, particularly Black Portlanders.
    - Paragraph 150: no meeting (in each precinct) to present the PPB Annual Report and educate the community about its policing efforts related to use of force, and about PPB policies and laws governing (traffic and pedestrian) stops, detentions, search consent, and bias-free policing, including civilian's responsibilities and freedoms.

3

## IV. Forward Visioning

- Increased support and compliance from the City of Portland in terms of ongoing training: e.g., best practices for equitable community engagement.
- PCCEP considers requesting City assistance to help advocate for statewide policing policy changes/ reforms.
- Codification of PCCEP elements

## V. Conclusion

PCCEP members are encouraged and optimistic about our progress but recognize there are still steps we must take to bring in the breadth and diversity of community voices that makes our work succeed. However, our accomplishments indicate renewed responsiveness and success.

PCCEP remains, nevertheless, deeply concerned with the City's (i.e., City Council, Mayor, and PPB leadership) longstanding disregard of community input and the lack of meaningful engagement with committee work. To uphold our mission of being a "community-engaged" committee, PCCEP demands that the City take our time, knowledge, and commitment to improving public safety for all Portlanders seriously. We have laid out specific concerns in this statement and will continue to work together to make recommendations that reflect the will of the public. It is the City's responsibility to turn those recommendations into actions.

Respectfully submitted,

Members of the Portland Committee on Community-Engaged Policing

| Title of Recommendation | PCCEP Recommendation to Appoint an Independent Monitor in the Settlement Agreement | | |
|---|---|---|---|
| Author(s): (Subcommittee or committee members) | Celeste Carey, Robin Wisner, Ann Campbell, Leslie Martinez, Ashley Schofield, Gloria Canson, Byron Vaughn, Tia Palafox | Date presented: | February 28, 2023 |

**Summary of Recommendation:**

PCCEP recommends that an Independent Monitor be appointed to oversee the Settlement Agreement. PCCEP also recommends that the new Independent Monitor have a local presence and demonstrate substantial expertise in issues pertaining to mental illness, racial equity, community engagement, and evidence-based police oversight. The community must be engaged in the selection process to ensure adequate demonstration of this criteria.

**Body of Recommendation:**

The Portland Committee on Community-Engaged Policing recommends that an Independent Monitor be appointed in the *United States of America v. City of Portland* Settlement Agreement. The Settlement Agreement was approved in 2014 after PPB was found to engage in a pattern and practice of excessive force against those with actual or perceived mental illness. Many Portlanders hoped the Settlement would improve outcomes for the BIPOC community, the mental health community, and all other people who are impacted by unconstitutional policing.

Nine years, dozens of compliance reports, millions in taxpayer dollars, and countless hours of public testimony later, PCCEP echoes the question of the community at large: Why has so little progress been made?

The percentage of officer-involved shootings and in-custody deaths of people in mental health crisis actually went *up* after the Settlement Agreement was reached, from 55% between 2004-2012 to 67% between 2013-2018.[1] Using PPB's own data,

---

[1] Microsoft Word - OIR Group Report 7 .docx (portlandoregon.gov)

the Mental Health Alliance has shown that use of force against people with mental illness has been on the rise since 2017, both in numbers and intensity.[2] PPB's use of force against BIPOC communities also remain disproportionately high relative to Portland demographics. Use of force against Black people comprised 21% of incidents according to PPB's most recent Force Analysis report[3] despite making up only 5.6% of the population.[4] As recently as November 2022, two Black men were victims of officer-involved shootings.[5]

PCCEP believes that the lack of progress and accountability with this case lies with the City, and would like to formally thank Rosenbaum & Associates for their hard work over the years. However, the compliance officer/community liaison (COCL) monitoring structure has been fraught since the beginning. Mental health advocates criticized the selection process in 2014, noting that the City failed to recruit enough applicants with sufficient expertise in issues pertaining to mental illness, racial equity, or police oversight. The public also expressed concerns that the COCL was not based in the Portland community. These concerns continue to be voiced at PCCEP meetings almost a decade later, representing the community's lack of trust in our current monitoring system.

PCCEP also has concerns about the City's management of the COCL contract. Although COCL has asserted their independence from the City, PCCEP wonders if true independence can exist between an employer and a contractor. Coupled with the DOJ's separate monitoring process, this system creates the public perception of one set of compliance assessments that are pro-plaintiff and another that are pro-defendant. Not only is this system hard for the community to understand, but it continues to degrade trust in efforts to advance compliance with the Settlement Agreement.

PCCEP recognizes that there is no single solution to achieving our goals as a community. However, we believe that a court-appointed Independent Monitor is a first, crucial step in bringing momentum back to the Settlement Agreement.

PCCEP hereby recommends that an Independent Monitor, reporting directly to the court and with an independently managed contract, be appointed to oversee the Settlement Agreement. However, this is the bare minimum; as outlined above, the City's 2014 selection of a compliance officer initiated a cycle of promising to involve the community in the process and ignoring our voices. To begin to redress this harm, PCCEP demands a robust reflection of community concerns and opportunities to participate in the selection of the Independent Monitor in the following ways:

---

[2] 285-Dec-of-Chavez.pdf (mentalhealthalliance.org)
[3] 799661 (portlandoregon.gov)
[4] U.S. Census Bureau QuickFacts: Portland city, Oregon
[5] PPB Officer Involved Shootings | Tableau Public

1) The Independent Monitor Team must have expertise in issues pertaining to living with mental illness. PCCEP believes there are a variety of ways this requirement can be met, whether through personal lived experience, experience with a family member, or working in a direct service capacity alongside communities experiencing mental illness. The monitor team should understand how policing and other institutions of power have failed people with mental illness and let *their* perspectives guide implementation of the Settlement Agreement. An effective team will demonstrate competency in using a trauma-informed approach and distilling a broad range of community voices into solutions that work for impacted populations.

2) The Independent Monitor Team must bring a racial equity perspective to their work. PCCEP recognizes that mental illness is an intersectional issue, and that Black, Indigenous, and People of Color who have a mental illness are at extreme risk for police violence. Moreover, the BIPOC community at large is disproportionately harmed by areas named under the Settlement Agreement. The Black community in particular continues to be harmed by institutional racism within policing, and any forward-looking, just system will center their voices at its very core. PCCEP recommends that the Independent Monitor team be comprised of a minimum of 50% of individuals who identify as BIPOC. PCCEP also recommends that the team at large demonstrate cultural competency in how structural racism in policing has caused generational damage to communities of color.

3) The Independent Monitor Team should have a local presence in the Portland community to facilitate dialogue with community stakeholders. PCCEP recommends the monitor have an in-person office space in Portland that is accessible for community members to come and discuss concerns about the Settlement Agreement, ongoing implementation, and compliance progress. This dialogue, and other methods of community engagement, should be considered a qualitative evaluation criteria where the community's assessment of public safety outcomes are an essential part of measuring whether progress is being made.

4) PCCEP recommends that the community be formally represented in the selection process for the Independent Monitor team, beginning with a PCCEP representative assigned to every stage of the process. This would include any drafting of an RFP, screening of RFP applications, interviews, and final selection. PCCEP further recommends that a town hall be held prior to the final selection of an applicant. The town hall should be publicized with sufficient advance notice and significant efforts should be made to procure attendance of a community body broadly representative of the many and diverse communities in Portland, including persons with mental illness, mental health providers, faith communities, minority, ethnic, and other community

organizations, LGBTQIA2S+ people and organizations, and student or youth organizations.

5) PCCEP recommends that EITHER (1) the termination clause in the Settlement Agreement remain as written in Paragraph 175 so that the City must achieve and maintain substantial compliance with all provisions for one year, OR (2) that a shift to a partial termination system will trigger a new assessment by the Independent Monitor if there is any backsliding on any sections previously found in full or partial compliance.

It is past time for a change. PCCEP believes that an Independent Monitor will reinvigorate the Settlement Agreement with a renewed sense of urgency. Moreover, we demand the DOJ and the City hear our concerns and take seriously the selection criteria outlined above. Only the communities centered in the Settlement Agreement can lead the charge to solve these problems and work towards a public safety system that leads to not just compliance, but real results for all Portlanders.

| | |
|---|---|
| **How does this recommendation redress barriers to racial equity?** | Unconstitutional policing disproportionately harms BIPOC communities through implicit and explicit bias, leading to higher rates of police brutality and other forms of structural racism implicated under the Settlement Agreement.<br><br>An Independent Monitor will help advance the Settlement Agreement. If the City achieves and maintains full compliance, the remedies in the Settlement Agreement will promote constitutional policing and help reduce harm to communities of color. |
| **How does this recommendation improve outcomes for persons with mental illness?** | The Settlement Agreement was reached because of PPB's unconstitutional use of force against people with perceived or actual mental illness, or those who are experiencing a mental health crisis. Real or perceived mental illness frequently intersects with other factors of identity, |

| | |
|---|---|
| | including class, disability, addiction, and/or race. These factors not only make people more vulnerable to abuse of power, but can pose substantial barriers to participating in the policymaking process.<br><br>An Independent Monitor will help advance the Settlement Agreement. The remedies in the Settlement Agreement are intended to redress the wrongs of PPB's use of force against persons with mental illness. Moreover, the Settlement Agreement is intended to give voice to those who cannot represent themselves. A monitoring process that is more independent from the City and PPB and with substantial community input will help advance this goal. |
| **How were marginalized and underrepresented communities, including those who will be affected by this recommendation, engaged to shape, write and otherwise develop this recommendation?** | PCCEP members held a series of discussions in public meetings in service of crafting this recommendation. The PCCEP membership engaged in developing this recommendation represents a diverse spectrum of the Portland community, including the BIPOC community, those who identify as experiencing mental illness, and those who identify as having a disability. PCCEP also incorporated public input into this recommendation, including comments, ideas, and data from members of the Albina Ministerial Alliance Coalition for Justice and Police Reform and the Mental Health Alliance. |

**Resources**

*Please list all resources relevant to this recommendation*

Microsoft Word - OIR Group Report 7 .docx (portlandoregon.gov)

285-Dec-of-Chavez.pdf (mentalhealthalliance.org)

799661 (portlandoregon.gov)

U.S. Census Bureau QuickFacts: Portland city, Oregon

PPB Officer Involved Shootings | Tableau Public