**NATALIE K. WIGHT, OSB #035576**
United States Attorney
U.S. Attorney's Office for the District of Oregon
**JARED D. HAGER, WSB #38961**
Trial Attorney, Special Litigation Section
Civil Rights Division, U.S. Department of Justice
1000 SW Third Ave., Suite 600
Portland, Oregon 97204
Phone: 202.353.5432
Email: jared.hager2@usdoj.gov

**KRISTEN CLARKE**
Assistant Attorney General
Civil Rights Division
**STEVEN H. ROSENBAUM**
Chief
**LAURA L. COWALL**
Deputy Chief
**R. JONAS GEISSLER**
Trial Attorney
**AMY SENIER**
Trial Attorney
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C.  20530
Phone: 202.514.6255
Fax:    202.514.4883
    Attorneys for Plaintiff United States

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:12-cv-02265-SI |
| Plaintiff, | |
| v. | JOINT STATUS REPORT REGARDING BODY WORN CAMERAS |
| **THE CITY OF PORTLAND,** | |
| Defendant. | |

**Page 1    Joint Status Report Regarding Body Worn Cameras**

Plaintiff United States of America (United States) and Defendant City of Portland (City) jointly submit this status report following a collectively bargained agreement between the City and Intervenor-Defendant Portland Police Association (PPA) regarding a body-worn camera (BWC) policy for Portland Police Bureau (PPB) officers during a pilot period.  The City agreed to implement a BWC program to resolve a notice of noncompliance with the Amended Settlement Agreement (Agreement), after complying with its bargaining obligations under state law.  ECF 354-1, Am. Settlement Agreement, ¶ 194.

The City and PPA negotiated the terms of a BWC policy after the Court approved a joint motion to amend the Agreement to require that the City, *inter alia*, implement a BWC program. *See* ECF 290, Minute Order, Apr. 29, 2022.  On February 10, 2023, the City and PPA declared impasse on one issue—whether and when an officer could review their own BWC recording of a use of force relative to providing a written force report.  *See* ECF 341, City Status Rep. at 2.  On February 17, 2023, the City and PPA submitted final offers on the unresolved issue that were far apart—the City wanted officers to always provide a force report (albeit orally and recorded on a BWC, not in writing) before reviewing their BWC recording and supplementing the initial report, if needed, while PPA wanted officers to always have the right to review their BWC recording before completing a force report.  *See* Status Conf. Tr. 39:21-39:23, 59:4-64:5 (Feb. 28, 2023).[1]

After the February Status Conference, the City and PPA negotiated further to seek an agreeable middle ground.  By April 2023, the City and PPA successfully reached a tentative

---

[1] Local news media publicized the City and PPA's final offers, which are made public by Or. Rev. Stat. § 243.712 (2)(b).  *See, e.g.*, KGW News, *Portland releases details of dispute with police union over body cameras*, Feb. 17, 2023, available at https://perma.cc/ARP7-G93R.

agreement on a BWC directive that would resolve the impasse, enable a pilot period to start, and

avoid the delays and uncertain outcomes of interest arbitration.[2]

The agreed directive requires an officer who uses Category I force to provide an on-scene

public safety statement, if requested by a supervisor, and in all cases to provide "an audio-recorded

factfinding interview to Internal Affairs" within 48 hours of the incident and before reviewing their

BWC recording.  After providing a statement recounting their perceptions of the incident, the

involved officer then will review their BWC recording and thereafter provide any further requested

information, clarification, or explanations.[3]  Exhibit 1, § 11.2.2.  Similarly, the agreed directive

requires an officer who uses Category II force to provide a video-recorded "full and candid account

of the facts and circumstances of the event" before reviewing their BWC recording.[4]  Exhibit 1,

§ 11.2.1.1.  PPB members who use Category III or Category IV force will provide a "full and

---

[2] The agreement has two parts: (1) a BWC directive, dated April 20, 2023, attached as Exhibit 1; and (2) a letter of agreement on written instruction to PPB members and a BWC pilot program, dated April 20, 2023, attached as Exhibit 2.

[3] Category I covers "[d]eadly force use, in-custody death, and death resulting from member use of force," and "includes, but is not limited to: (i) All critical firearm discharges by a member, except as authorized to stop an aggressive animal or end the suffering of a badly injured animal; (ii) In-custody deaths; (iii) Death resulting from member use of force; (iv) Neck holds; and (v) All intentional head, neck, and throat strikes with a hard object or when a member strikes the head of a person against a hard object."  PPB Directive 910.00, Procedure 1.2, available at https://perma.cc/PE37-VSSB.

[4] Category II covers: "[a]ll member use of force resulting in serious physical injury, hospitalization, disability, or warranting an elevated review," and "includes, but is not limited to: (i) Force resulting in serious physical injury, hospitalization, or disability; (ii) Force resulting in injury deemed to be significant by a member's supervisor; (iii) More than one simultaneous intentional CEW application on a person at a time; (iv) Three or more CEW applications to the same person; (v) CEW applications or attempted applications on persons who have an actual or perceived mental illness, or who are in mental health crisis; (vi) Canine bites; (vii) Force used upon restricted persons (i.e., children under the age of fifteen, pregnant persons, medically fragile); (viii) Force resulting in a loss of consciousness; (ix) Any strike, blow, kick, or similar use of force against a handcuffed, otherwise restrained, under control, or in-custody subject, with or without injury; and (x) Ramming as a vehicle intervention strategy."  PPB Directive 910.00, Procedure 1.3, available at https://perma.cc/PE37-VSSB.

candid account of the facts and circumstances of the event" that is *not* recorded on BWC before reviewing their BWC recording.[5]  Exhibit 1, § 11.2.1.2.  The City-PPA agreement thus reflects a compromise of final offers based on the seriousness of the force at issue.

On April 20, 2023, the United States conditionally approved the proposed BWC directive subject to DOJ's review and approval of the final BWC directive that will govern all PPB members after the 60-day pilot period ends.  Approval is also subject to the understanding that the BWC directive will not reduce or eliminate any of the Agreement's existing obligations.[6]  The pilot period will cover all PPB members who are assigned to Central Precinct and the Focused Intervention Team.  Exhibit 2, § 4(a).  The 60-day pilot period may be extended if the City and PPA agree.  Exhibit 2, § 4(d)(i).

---

[5] Category III covers "[a]ll member use of force resulting in physical injury, complaint of pain or physical injury, and less lethal weapon use without serious physical injury," and "includes, but is not limited to: (i) Two (2) or fewer CEW applications or attempted applications on persons who do not have an actual or perceived mental illness, or who are not in mental health crisis; (ii) FSDD use inside a structure or vehicle. FSDD use outdoors, not directed at a person, and where there is no injury or complaint of pain or injury is not a use a force. Outdoor use occurring nearby to a person the member was unaware of may not be considered force, but supervisors shall investigate the incident in the after action review; (iii) All other less lethal weapon use (This includes less lethal weapon discharges, regardless of contact, and all baton pushes, strikes, and jabs. Use of a baton to guide a person where there is no injury or complaint of pain or injury is not a use of force); (iv) Physical injury; (v) Complaint of pain or physical injury; (vi) Complaint of improper force; (vii) Takedown; (viii) Strikes with the hands or feet; and (ix) PIT maneuver as a vehicle intervention strategy."  PPB Directive 910.00, Procedure 1.4, available at https://perma.cc/PE37-VSSB.

Category IV covers "[a]ll member use of force that is intended to establish control of a resistant person, though not reasonably likely to cause persistent pain or physical injury," and "includes, but is not limited to: (i) Takedown performed in a completely controlled manner where there is minimal resistance and no injury; (ii) Handcuffing against resistance or control against resistance; (iii) Pointing of a firearm; (iv) Use of hobble restraint; and (v) Boxing-In maneuver as a vehicle intervention strategy, except static box-ins where there is no injury and no complaint of injury." PPB Directive 910.00, Procedure 1.5, available at https://perma.cc/PE37-VSSB.

[6] Attached as Exhibit 3 is the United States' letter, dated April 20, 2023, approving the City and PPA's agreed directive for BWC use and management during the pilot period.

**Page 4    Joint Status Report Regarding Body Worn Cameras**

On April 26, 2023, the City ratified the agreement reached with PPA when City Council voted unanimously to approve the BWC directive and related letters of agreement. *See* City of Portland, Emergency Ordinance No. 191257, available at https://perma.cc/4ZQA-7N66.

Consistent with the Agreement, the City and PPA agreed that PPB must provide training on how to use BWCs and the BWC directive before the 60-day pilot period will begin to run. *See* Exhibit 2, § 4(b) ("Before implementing BWCs for use, the Bureau shall provide training on the proper operation and care of the device, and the Bureau's policy regarding the authorized use of BWCs."). DOJ has authority to review and approve all training associated with the BWC directive. *See* ECF 354-1, Am. Settlement Agreement, ¶ 166. PPB is preparing training lesson plans and materials for the BWC directive, which PPB will provide to DOJ for review and approval. PPB anticipates training the pilot period group in August 2023. PPB will deliver training on the BWC directive either concurrently or close in time with the City's chosen contractor, Axon, who will deliver training on the technical aspects of using BWC technology. Before the pilot period begins, PPB also intends to provide online video training to all PPB members, which will inform them about the pilot program and key aspects of the BWC directive.

After the pilot concludes, the City will complete the Request for Proposal, which includes assessing Axon as the vendor. If the City selects Axon, it will negotiate a contract, set up PPB's precincts with wiring and other hardware to operate the Axon BWC system, and arrange for Axon to provide technical training to the PPB sworn members who did not participate in the pilot program. If the City does not select Axon, it will reopen the Request for Proposal process.

PPB plans to train the remaining sworn members on the new policy during fall in-service training, which runs from September 6 to December 19, 2023. This training on the policy will occur regardless of who the City selects to be its BWC vendor.

**Page 5     Joint Status Report Regarding Body Worn Cameras**

The Parties will keep the Court apprised of progress on implementation in the coming months.

DATED: August 8, 2023.

Respectfully submitted,

FOR THE UNITED STATES:

NATALIE K. WIGHT                    KRISTEN CLARKE
United States Attorney              Assistant Attorney General
District of Oregon                  Civil Rights Division

                                    STEVEN H. ROSENBAUM
                                    Special Litigation Section Chief

                                    /s/ Laura L. Cowall
                                    LAURA L. COWALL
                                    Deputy Chief

                                    /s/ R. Jonas Geissler
                                    R. JONAS GEISSLER
                                    Trial Attorney

                                    /s/ Jared D. Hager
                                    JARED D. HAGER
                                    Trial Attorney

                                    /s/ Amy Senier
                                    AMY SENIER
                                    Trial Attorney

FOR THE CITY OF PORTLAND:

/s/ Robert Taylor                   /s/ Heidi Brown
ROBERT TAYLOR                       HEIDI BROWN
City Attorney                       Chief Deputy City Attorney

/s/ Sarah Ames
SARAH AMES
Deputy City Attorney