Revised TA PPA 4/20/23

*Heidi Brown*

Revised by City 2023-04-20

XXX.XX Body-Worn Camera Use and Management

**Refer**:
- ORS 133.402 Recording of Custodial Interviews of Juveniles
- ORS 133.741 Law Enforcement Agency Policies and Procedures Regarding Video and Audio Recordings
- ORS 165.540 Obtaining Contents of Communications
- ORS 181A.250 Specific Information Not To Be Collected or Maintained
- ORS 192.345 Public Records Conditionally Exempt from Disclosure
- ORS 192.355 Public Records Exempt from Disclosure
- ADM 8.03 Public Records Requests
- DIR 0310.70, Dissemination of Information
- DIR 0317.40 Authorized Use of Bureau Resources
- DIR 0330.00, Internal Affairs, Complaint Intake and Processing
- DIR 0635.10, Crowd Management/Crowd Control
- DIR 0640.36, Communicating with Hearing Impaired and Limited English Proficient Persons
- DIR 0900.00, General Reporting Guidelines
- DIR 0910.00, Use of Force Reporting, Review, and Investigation
- DIR 0905.00, Non-Force After Action Reporting
- DIR 1010.00, Use of Force
- DIR 1010.10, Deadly Force and In-Custody Death Reporting and Investigation Procedures
- DIR 1200.00 Inspections, Maintenance, Responsibility, and Authority

**Definitions:**
- Activation: Begin video and/or audio recording.

- Body-Worn Camera (BWC): An audio and video recording device that is worn by a Bureau member and is capable of capturing and storing information regarding the member's activities and interactions with members of the public.

- Buffer Mode: A pre-recording setting when the BWC is powered on, but not activated. When in buffer mode, the BWC continuously captures a 30-second loop of video footage (no audio) that records and only retains the footage when activation occurs.

- Deactivate: Temporarily or permanently ending video and/or audio recording and returning the BWC to buffer mode.

- Feasible: When time and safety allow for a particular action.

- Police Action: Any circumstance, on or off duty, in which a sworn member exercises or attempts to exercise police authority. This includes, but is not limited to, stops, searches, arrests, and use of force.

Revised TA PPA 4/20/23

*Heidi Brown*
Revised by City 2023-04-20

- Power Off: Turning the device off. The device is not capable of buffering or recording video or audio when in power off mode.

- Power On: Turning the device on. The device is capable of buffering or recording video or audio when in power on mode.

- Sleep Mode: A device setting that temporarily suspends buffer mode, without powering off.

**Policy:**
1. The purpose of this directive is to provide for the use of BWCs, to include the device, audio and video recordings, and any database where BWC recordings are stored or accessed.

2. BWCs are a law enforcement and accountability tool that can enhance the transparency and understanding of interactions between officers and the public. BWCs provide additional documentation of police-public encounters and can be a tool for collecting evidence and building and maintaining public trust.

3. The Bureau has adopted BWCs to accomplish several objectives, including: allowing for additional documentation of police-public contacts, encounters, arrests, and critical incidents; serving as a supplement to and/or enhancing the accuracy of officer reports and testimony; gathering evidence for investigative and prosecutorial purposes; providing additional information for officer evaluation, feedback, and training; and conducting fair and thorough professional standards reviews and investigations in resolving community/public and Bureau complaints.

4. Although BWC recordings have evidentiary value, they may not capture the entirety of an incident or the actual vantage point of the Bureau member, and footage may not necessarily depict the entire scene, circumstances, or incident in the way that it may have been perceived or experienced by any person present. BWC recordings serve as additional evidence related to an incident, but the footage is only an individual piece of evidence and should not be used in lieu of a complete and thorough police report or a complete and thorough investigation of any incident. Persons reviewing BWC recordings must be cautious before reaching conclusions about what the recordings show.

**Procedures:**

1. **Body-Worn Camera Issuance.**
    1.1. The Bureau shall individually issue BWCs to sworn members as described in Section 1.4, or as otherwise determined by the Chief or designee.

    1.2. Members shall use only Bureau-authorized and -issued BWCs.

Revised TA PPA 4/20/23

*Heidi Brown*

Revised by City 2023-04-20

- 1.3. The Bureau does not expect members to wear or carry Bureau-issued BWCs while off duty.

- 1.4. Who Wears BWCs:
  - 1.4.1. All on-duty sworn members in a uniform assignment displaying a badge who take part in Special Emergency Response Team (SERT), patrol, traffic, public order event operations, and special duty work for secondary employers, regardless of rank; and
  - 1.4.2. All other sworn non-uniform Bureau personnel when engaging in police action, excluding detective interviews.

- 1.5. Members in the following assignments are exempt from wearing BWCs, unless otherwise directed by the Chief or a designee:
  - 1.5.1. Criminalists;
  - 1.5.2. Air Support;
  - 1.5.3. Explosive Disposal Unit;
  - 1.5.4. Undercover or plain clothes assignment, when working in an undercover capacity;
  - 1.5.5. Members at the rank of Captain and above, unless engaging in police action.

- 1.6. The Bureau shall make available additional BWCs to certain Responsibility Units (RUs) where members' primary duties are investigative or administrative in nature and community member contact is limited.
  - 1.6.1. Members assigned to designated divisions and specialty units shall utilize the BWCs allocated to their RUs when deployed in uniform for enforcement activities or events involving community member contact.

- 1.7. If there are not enough BWCs to allocate to members who provide rotational support or those who are assigned to work a designated event (e.g., parade), the RU Manager shall document the shortage in the Computer Aided Dispatch (CAD) system and identify the members who did not receive a BWC.

- 1.8. To facilitate proficiency with the BWC, for the first 60 calendar days of any Bureau member first being issued a BWC in an assignment that requires the wearing of a BWC in an assignment covered by this directive, members shall not be subject to discipline for errors in applying this policy that are not intentional. Subject to approval by an RU Manager, a member who is being reassigned to an assignment covered by this directive may request the 60-day period to facilitate proficiency with the BWC. Such approval by an RU Manager shall not be unreasonably denied.
  - 1.8.1. The Bureau shall use existing systems for coaching and counseling to address non-intentional errors in applying this policy during the 60-day period, but not include these counselings in performance evaluations.

- 1.9. Intentional member violations of this policy shall be subject to discipline during any period.

Revised TA PPA 4/20/23

*Heidi Brown*
Revised by City 2023-04-20

2. **Functionality Check and Device Placement.**
   2.1. Members shall test their BWCs at the beginning of their shift to ensure:
      2.1.1. The BWC is fully charged and functioning properly.
         2.1.1.1. If the battery is dead or the charge is critically low, the member shall dock the BWC and immediately contact their supervisor to request a temporary replacement.
      2.1.2. The wireless automatic activation feature is paired with their firearm and Conducted Electrical Weapon (CEW).

   2.2. If a member discovers that their BWC is damaged, malfunctioning or missing, they shall contact their supervisor to request a replacement as soon as feasible to ensure they are appropriately equipped and able to capture their activity.
      2.2.1. Supervisors shall, as soon as feasible, provide a replacement BWC to the member upon notification.

   2.3. Members shall attach the BWC to their person at chest level or in a manner that provides an unobstructed view of their activities and interactions with community members. Members should act in accordance with training when attaching the BWC.

   2.4. Members shall power on the BWC when they begin a shift.

3. **Recording Notification.**
   3.1. When contacting a person, members shall announce to the person at the beginning of the interaction that the member is recording the interaction, unless not feasible.
      3.1.1. If the member knows or recognizes that the person has difficulty hearing or limited English proficiency, the member shall make a reasonable effort to communicate to the person that they are being recorded (e.g., by pointing to the camera).

   3.2. If the member is unable to announce to the person at the beginning of the interaction that they are recording, they shall do so when feasible.
      3.2.1. The member shall provide justification for the timing or absence of the recording notification in an appropriate police report or, if no report is required for the incident, in the CAD.

4. **Required Activation.**
   4.1. Automatic Activation.
      4.1.1. Members' BWCs shall include a default setting that automatically activates the device via a Bluetooth signal when members:
         4.1.1.1. Activate emergency vehicle lights;
         4.1.1.2. Draw their CEW or firearm from their holsters.
      4.1.2. The Bluetooth signal shall emit for thirty seconds and shall automatically activate any Axon BWCs within range of approximately thirty feet.

Revised TA PPA 4/20/23

*Heidi Brown*

Revised by City 2023-04-20

- 4.1.3. When feasible, members shall check to confirm automatic activation of their BWC and shall activate as soon as possible if it is not activated.
- 4.1.4. Exception.
  - 4.1.4.1. For training or administrative purposes, such as weapons qualifications, inspections, and maintenance, members may temporarily turn off the automatic activation feature by placing the BWC in sleep mode.
    - 4.1.4.1.1. Members shall re-activate the feature upon completion of the administrative activity.

- 4.2. Mandatory Manual Activation.
  - 4.2.1. If not already activated, members shall activate their BWCs when feasible and when:
    - 4.2.1.1. Dispatched or otherwise responding or "self-dispatching" to a call for service;
    - 4.2.1.2. Engaging with the public during a public order event, when consistent with the law;
    - 4.2.1.3. Attempting to conduct a traffic or pedestrian stop;
    - 4.2.1.4. Attempting to obtain consent for a search or conduct a search;
    - 4.2.1.5. Conducting a custodial interview of a juvenile outside of a law enforcement facility, when the person is under 18 years old and being interviewed in connection with an investigation into a misdemeanor or a felony, or an allegation that the person being interviewed committed an act that, if committed by an adult, would constitute a misdemeanor or felony;
    - 4.2.1.6. The member develops reasonable suspicion or probable cause to believe that a crime or violation has occurred, is occurring, or will occur and the member begins to make contact with the person suspected of committing the offense.
  - 4.2.2. SERT members shall activate their BWCs when they arrive at a scene.

5. **Permissive Activation.**
   - 5.1. Members are authorized to activate their BWCs in any other situation that serves a legitimate law enforcement purpose that does not otherwise conflict with this policy or state law.

6. **Recording Exceptions and Prohibitions.**
   - 6.1. Exceptions.
     - 6.1.1. Personal Privacy.
       - 6.1.1.1. Members are authorized to enable sleep mode when engaging in personal private activities, such as using a bathroom or other similar conduct.
       - 6.1.1.2. After activating a BWC under this directive, and so long as it does not unduly interfere with members' official duties, members are authorized to mute their BWCs when engaging in personal conversations not related to law enforcement activities or in legally privileged communications with individuals, such as their spouse, legal counsel, union representative, or police peer counselor.

Revised TA PPA 4/20/23

*Heidi Brown*

Revised by City 2023-04-20

- 6.1.2. Prohibitions.
  - 6.1.2.1. Members shall deactivate (or not activate) their BWCs in the following circumstances:
    - 6.1.2.1.1. When interviewing victims of sexual assault, trafficking or child abuse.
      - 6.1.2.1.1.1. Members shall discontinue recording and advise the victim that the camera will remain off unless they receive consent from the person to reactivate their BWC. If the person is unable or unwilling to consent, the member shall not reactivate the BWC. If the person consents to reactivation, the member shall acknowledge the consent on the BWC after reactivated.
    - 6.1.2.1.2. When inside a medical or mental health treatment facility, unless performing a legitimate law enforcement purpose authorized under this policy or responding to a call for service that is in progress inside the facility.
      - 6.1.2.1.2.1. If interviewing a victim, suspect, or complainant who has been admitted into the facility, members shall activate their BWC only at the start of the interview.
      - 6.1.2.1.2.2. Members should be aware of the patient's privacy rights and avoid recording during medical treatments or exams.
      - 6.1.2.1.2.3. Members shall avoid recording anyone other than the victim, suspect, or complainant.
    - 6.1.2.1.3. When inside a courthouse, unless performing a legitimate law enforcement purpose authorized under this policy or responding to a call for service that is in progress inside the courthouse.
    - 6.1.2.1.4. During communications between a suspect and their legal representation that would have a reasonable expectation of privacy, unless activation is required under this directive;
    - 6.1.2.1.5. During encounters with undercover members or confidential informants when discussing confidential information;
    - 6.1.2.1.6. When present in restricted areas of law enforcement facilities that are not routinely accessible to the public, not including intoxilyzer rooms, holding cells or interview rooms; and
    - 6.1.2.1.7. Death notifications.

- 6.2. Sensitive Tactical Information.
  - 6.2.1. During on-scene mission planning, members may mute their BWCs when engaging in tactical discussions with or between Crisis Negotiation Team (CNT) or SERT members about information obtained from SERT intelligence or information that creates current or future safety concerns, if released.
  - 6.2.2. When feasible, members shall record a verbal justification for muting the BWC before muting the device.
  - 6.2.3. Members shall document in an appropriate police report the reason they muted the BWC.

Revised TA PPA 4/20/23

*Heidi Brown*
Revised by City 2023-04-20

- 6.3. During roll calls, briefings, incident debriefings, training, community engagement activities at which no law enforcement action is anticipated, administrative meetings, and Bureau meetings, members shall not activate or shall deactivate their BWCs, unless required to comply with mandatory activation requirements in this directive.

- 6.4. Individual Requests.
    - 6.4.1. Even if a community member requests that a Bureau member deactivate their BWC, the Bureau member shall not deactivate their BWC, unless permitted by Bureau policy.

7. **Recording Deactivation.**
    - 7.1. Members shall deactivate their BWCs:
        - 7.1.1. No sooner than the termination of their participation in the call or contact with a person, unless already deactivated for reasons permitted by this directive.
        - 7.1.2. When on a call involving a potentially explosive device.

    - 7.2. If stopping an active recording, members shall provide verbal justification for deactivating on the recording before ending the recording. Members shall also document the reason for the termination in an appropriate police report or, if no report is required for the incident, in the CAD.

8. **Uploading, Tagging and Storage of Recordings.**
    - 8.1. Members shall upload all recordings prior to the end of their shift, unless directed by their supervisor to do so at another time or the member is incapacitated.
        - 8.1.1. If a member is incapacitated, a supervisor shall upload the recordings from the member's BWC no later than the end of their shift.
        - 8.1.2. If it is not feasible to upload recordings before the end of the member's shift or if a supervisor directs a member to upload a recording at a time other than prior to the end of the member's shift, the supervisor shall document the reason in a police report or, if no report is required for the incident, in the CAD.

    - 8.2. When uploading footage, members shall tag each recording in accordance with training (e.g., call type, citation or warrant number and, when applicable, the associated report number).

    - 8.3. Unless incapacitated, prior to the end of their shift, members involved in a force incident where they use nondeadly force and that does not result in an in-custody death shall upload the footage of the incident as established by the force reporting requirements set forth in Directive 0910.00, Force Reporting, Review, and Investigation.

    - 8.4. If the member is the subject of a Category I force Review or any criminal investigation, the on-scene supervisor shall, as soon as feasible, take custody of the involved member's BWC and provide it to the Homicide Detective upon their arrival to the scene of the incident.

Revised TA PPA 4/20/23

*Heidi Brown*
Revised by City 2023-04-20

    8.5. Members shall dock their assigned BWCs at the end of shift to ensure the BWC is charged and all data is uploaded.

    8.6. Bureau-purchased BWCs do not allow for tampering with, manipulating or altering content, or deleting recordings. Members shall not attempt to tamper with, manipulate, or alter content or delete recordings.

9. **General Bureau Prohibitions.**
    9.1. The Bureau shall not use facial recognition or other biometric matching technology to analyze recordings obtained through the use of a BWC. Biometric matching technology involves the use of technology to identify a person based on some aspect of their biology.

    9.2. The Bureau shall not use any recordings obtained from a BWC for any purpose other than a legitimate law enforcement purpose.

    9.3. If their BWCs were not activated at the time of the incident, members are prohibited from engaging in BWC recorded re-enactments.

    9.4. No member shall remotely activate another member's BWC, nor shall any member use live view features, if available.

10. **Member Reporting Requirements.**
    10.1. Members shall document all BWC recordings in an appropriate report or, if no report is required for the incident, in the CAD.

    10.2. If a member deactivates their BWC prior to the conclusion of an event, the member shall document the reason(s) for terminating the recording in the CAD or an appropriate report.

    10.3. If a member reactivates their BWC after deactivating it or powering off, the member shall document the reason(s) for restarting the recording in the CAD or an appropriate report.

    10.4. If, for any reason, a member fails to activate their BWC, as required by Bureau policy, the member shall document the reason(s) for not activating the device in the CAD or an appropriate report.

    10.5. Nothing in this directive prohibits the member, while the BWC is activated, from narrating their reasons for activating or deactivating the BWC.

11. **Recording Review.**
    11.1. Members shall review BWC footage only in accordance with this Section.

Revised TA PPA 4/20/23

*Heidi Brown*

Revised by City 2023-04-20

11.2.  Member Review

11.2.1 Unless otherwise restricted by this Directive, members shall have the opportunity to review recordings from their assigned BWC before: writing a report of any kind (e.g., force, general offense, etc.); conducting an investigation of any kind; or providing testimony in any forum (e.g., force reviews/investigations, administrative investigations, civil cases).

    11.2.1.1   Following Category II force incidents and prior to reviewing any BWC recordings, involved and witness officers shall provide a full and candid account of the facts and circumstances of the event, recorded on BWC, to the supervisor at the scene in conformance with Directive 0910.00 Use of Force Reporting, Review, and Investigation. The purpose of the full and candid account is to assist the supervisor in appropriately categorizing the use of force and gathering a description of the officer's perception of the event. Thereafter, the member shall have the opportunity to review their assigned BWC footage and prepare their reports in conformance with Directive 0910.00.

    11.2.1.2   Following Category III and IV force incidents and prior to reviewing any BWC recordings, involved and witness officers shall provide a full and candid account of the facts and circumstances of the event, not recorded on BWC, to the supervisor at the scene in conformance with Directive 0910.00. The purpose of the full and candid account is to assist the supervisor in appropriately categorizing the use of force and gathering a description of the officer's perception of the event. Thereafter, the member shall have the opportunity to review their assigned BWC footage and prepare their reports in conformance with Directive 0910.00.

        11.2.1.2.1 During this account, if the supervisor determines that the incident is a Category II incident, the supervisor shall notify the officer that it is a Category II force event and shall record the full and candid account on BWC.

11.2.2 Following Category I force incidents:

    11.2.2.1   Witness members, as defined in Directive 1010.10, Deadly Force and In-Custody Death Reporting and Investigation Procedures, shall have the opportunity to review recordings from their assigned BWC before providing a verbal statement or writing a report.

        11.2.2.1.1 If requested by a supervisor and prior to reviewing recordings from any BWC, a witness officer shall provide an on-scene, compelled Public Safety Statement, as set forth in Directive 1010.10.

    11.2.2.2   Involved members, as defined in Directive 1010.10, shall comply with the following procedure and shall only view BWC recordings as provided for in this section:

Revised TA PPA 4/20/23

*Heidi Brown*

Revised by City 2023-04-20

    11.2.2.2.1    If requested by a supervisor and prior to reviewing recordings from any BWC, an involved officer shall provide an on-scene, compelled Public Safety Statement, as set forth in Directive 1010.10.

    11.2.2.2.2    Within 48 hours of the event, the involved officer shall provide an audio-recorded fact-finding interview to Internal Affairs.

        11.2.2.2.2.1    The involved officer shall first provide a perceptual statement to Internal Affairs investigators, which shall include what brought the officer to the scene and the officer's initial observations, the subject's demeanor, actions, and statements, the threat posed by the subject and/or the nature of their resistance, any warnings and/or de-escalation tactics used, the officer's force response, and any post-force medical aid. IA investigators may ask follow-up questions if the officer's response does not provide the information required by this paragraph to ensure investigators gained responsive information.

        11.2.2.2.2.2    Prior to providing that perceptual statement, neither the involved officer nor the Internal Affairs investigators shall review the involved officer's BWC footage.

        11.2.2.2.2.3    The perceptual statement is intended to capture the involved officer's state of mind and perceptions at the time of the incident.

        11.2.2.2.2.4    After providing the perceptual statement during the interview, a break shall be taken where both the involved officer (and their attorney) and the Internal Affairs investigators shall be allowed to review the involved officer's BWC footage in separate rooms. The Internal Affairs investigator shall provide instruction to the involved officer that notes the limitations of video evidence and that any subsequent video evidence review is intended to assist the officer's recollection of the incident.

        11.2.2.2.2.5    Within a reasonable time, the Internal Affairs investigators shall continue with the audio-recorded interview, which shall include an opportunity to clarify any discrepancies between the involved officer's perceptions and their BWC footage.

11.2.3  The Bureau acknowledges the limitations of officer perceptions and memory in stressful events, along with the limitations of video evidence.

11.2.4  Members shall not view recordings that are unrelated to an incident in which they participated or were assigned, unless authorized to do so by the Chief or a designee.

Revised TA PPA 4/20/23

*Heidi Brown*
Revised by City 2023-04-20


11.3. Supervisor and After Action Review.
- 11.3.1. General Reviewing Guidelines.
    - 11.3.1.1. Supervisors may review BWC footage only in accordance with this Section.
    - 11.3.1.2. Supervisors shall review reporting members' BWC recordings as part of the After Action review process.
    - 11.3.1.3. When reviewing a member's BWC footage, supervisors who discover conduct that they reasonably believe violates Bureau policy shall follow established corrective processes.
    - 11.3.1.4. Supervisors shall limit their initial review to footage of incidents or interactions that are the subject of the complaint or After Action review. If, during this review, the supervisor determines that separate footage may be relevant to the incident, investigators may expand the scope of their review to include footage from those other incidents and shall document the basis for expanding the review.
    - 11.3.1.5. Supervisors shall document the reason for their review (e.g., performance review, After Action review) in the Axon viewing system.

- 11.3.2. Performance Review.
    - 11.3.2.1. Consistent with annual performance evaluations, in addition to recordings already reviewed for other purposes, supervisors shall review three BWC events of each reporting member per evaluation year. Supervisors shall randomly select BWC events using the Axon random review feature.
        - 11.3.2.1.1. If occurring within the same reporting year, two of the three reviewing requirements may be satisfied by a supervisor's review of footage for a force incident or if done pursuant to an administrative investigation.


11.4. Training Division Review.
- 11.4.1. For the purpose of assessing training needs, the Training Division may review a BWC recording that is the subject of an After Action review, following an incident in which a member is injured in the line of duty, or as determined appropriate by the Chief or designee.

- 11.4.2. Members may provide their BWC recording(s) to the Training Division for instructional use. In addition, the Training Division Captain or a designee, during an authorized review, may use recordings that are identified as having instructional value for training purposes.

- 11.4.3. Prior to using a recording that has not been voluntarily offered by a member, the Training Division Captain or designee shall notify the Bureau member of the intended use of footage that depicts the member's actions or response to a call.

Revised TA PPA 4/20/23

*Heidi Brown*

Revised by City 2023-04-20

    11.4.3.1. If the member objects to the use of the recording for training purposes, the Training Division Captain or designee shall notify the Chief's Office.
    11.4.3.2. The Chief or designee shall determine whether to authorize the use of the recording by the Training Division.
    11.4.3.3. The Training Division shall not use the recording if it is related to a criminal or administrative investigation involving a Bureau member until the investigation is completed.

11.5. Administrative Investigator Review.
    11.5.1. Investigators and/or supervisors who are investigating an administrative complaint may review BWC recordings that pertain to the investigation.
    11.5.2. Investigators shall limit their review to footage of incidents or interactions that is the subject of the review. If, during this review, investigators determine that separate footage may be relevant to the incident, investigators may expand the scope of their review to include footage from those other incidents and shall document the basis for expanding the review.

11.6. Criminal Investigator Review.
    11.6.1. Detectives who are conducting a criminal investigation may review BWC recordings that pertain to the investigation.
    11.6.2. Detectives shall limit their review to footage of the specific date, time, and location of the incident or interaction that is the subject of the investigation. If, during this review, investigators determine that separate footage may be relevant to the incident, investigators may expand the scope of their review to include footage from those other incidents and shall document the basis for expanding the review.
    11.6.3. If there is a compelled statement of a Bureau member reflected in the footage, then Detectives shall not have access to the compelled statement.

11.7. Discovery of Misconduct During a Review.
    11.7.1. Subject to Section 1.8 of this policy, if, during the course of an authorized review, an investigator or Bureau member discovers a policy violation(s) or potential misconduct, they shall immediately notify the Internal Affairs (IA) Captain and document the reason for the review.
    11.7.1.1. The IA Captain or designee shall act in accordance with Directive 330.00, Complaint Intake, when processing the new information or complaint.

12. **Accidental Recordings.**
    12.1. Members shall tag accidental recordings as such.

    12.2. The Records Division is authorized to delete accidental recordings, with review and approval by the Director of the Community Safety Division, or designee, and the City Attorney's Office, and as allowed by law.

13. **Recording Duplication and Disclosure**.

Revised TA PPA 4/20/23

*Heidi Brown*

Revised by City 2023-04-20

   13.1.  The Records Division is solely authorized to copy, share, or publicly release BWC recordings.

   13.2.  Public Records Request.
       13.2.1.  The Records Division shall receive and manage all public records requests for BWC recordings and act in accordance with state law regarding disclosure requirements.
       13.2.2.  Prior to disclosure, the Bureau shall edit the video in a manner as to render the faces of all persons within the recording unidentifiable.
       13.2.3.  The Bureau may make additional redactions in accordance with other exemptions permitted by law.

   13.3.  The Records Division shall respond to and manage requests from the assigned District Attorney's Office (DA) and the United States Department of Justice, including the assigned United States Attorney's Office and Federal Bureau of Investigation.
       13.3.1.  The Bureau shall follow existing procedures for sharing discovery information with prosecutors.

   13.4.  Members outside of the Records Division shall not disclose or disseminate BWC recordings, take screenshots, or make reproductions of any video or audio content, unless it is for a legitimate law enforcement purpose and in compliance with Bureau policy.

   13.5.  BWC recordings are the property of the City and are not owned by third-party vendors, although such recordings shall be stored with a third-party vendor.

   13.6.  Nothing in this policy shall limit the ability of the Bureau to respond to a subpoena issued by a court of proper jurisdiction.

14. **Affirmative Release of Recordings.**
   14.1.  As a general rule, the Bureau shall release BWC recordings of Category I force incidents upon conclusion of the Grand Jury or, if no Grand Jury is convened, once a disposition is determined by the DA. As an exception to the general rule and when in the public interest, the Commissioner in Charge or Chief of Police may release BWC recordings sooner.

   14.2.  The Bureau shall determine when it is appropriate to affirmatively release BWC recordings of other incidents.

15. **Bureau Body-Worn Camera Program Manager Responsibilities.**
   15.1.  The BWC Program Manager shall:
       15.1.1.  Ensure there are enough BWCs for all designated members;
       15.1.2.  Establish BWC recording default settings and ensure that they are not altered;

Revised TA PPA 4/20/23

*Heidi Brown*

Revised by City 2023-04-20

- 15.1.3. Perform periodic audits of BWC recording to ensure the devices are functional and members are operating BWC equipment in accordance with Bureau policy;
- 15.1.4. Coordinate with the Information Technology Division and the Bureau of Technology Services) to perform installs and software updates, provide technical assistance, and to respond to system outages;
- 15.1.5. Review new BWC features for necessary policy changes, as required; and
- 15.1.6. Monitor the system to ensure storage capacity is sufficient.

16. **Recording Retention.**
    16.1. The City shall retain BWC footage in accordance with state law and City policy.

17. **Members' Constitutional Rights.**
    17.1. Nothing in this policy will be construed to limit a member's ability to assert their constitutional rights, except in those circumstances in which the member is compelled to provide information.