**Juan C. Chavez**, OSB #136428
Email: jchavez@ojrc.info
**Franz Bruggemeier**, OSB # 163533
Email: fbruggemeier@ojrc.info
**Amanda Lamb**, OSB #222284
Email: alamb@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270

Attorneys for *Amicus Curiae* Mental Health Alliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>　　　　Defendant. | Case No. 3:12-cv-02265-SI<br><br>*AMICUS CURIAE* MENTAL HEALTH ALLIANCE'S AUGUST 2023 STATUS REPORT |

**AUGUST 2023 STATUS REPORT**

*Amicus Curiae* Mental Health Alliance ("MHA") provide this Status Report for the scheduled status hearing on August 14, 2023. Members of MHA and their counsels will present testimony within their allotted 15 minutes in support of their statements here.

///

///

## I. INTRODUCTION

Given two working days to read and respond to the compliance reports by the parties, we are unable to submit as fulsome of a status brief as MHA would have desired. Regardless, MHA is grateful to be heard on their thoughts, concerns, and hopes for the future of the City of Portland and the persons living here with mental illness. As ever, we dream of a day when this case can conclude because the City of Portland has cured itself of its pattern and practice of unlawful force against persons with mental illness. Unfortunately, MHA believes there is still significant work to be done before we are there.

## II. DISCUSSION

A. Transparency

As MHA has highlighted in past briefing, the public will not accept closure on this chapter of City history until it can trust that its City government is being honest and transparent about its police force. MHA understands that the complexity of City government administration means that the public will not always be forewarned of decision-making. But whenever decisions are made behind closed doors, it comes at the cost of an opportunity to educate the public about what in fact its police force does.

For example, the community has asked for years that the Behavioral Health Unit Advisory Committee (BHUAC) meetings be open to the public. During the last year the BHUAC has held quarterly "community meetings." In these meetings, the co-chairs of the BHUAC tell the community what they talked about in their prior three meetings during the quarter. At the last community BHUAC meeting held on July 6, 2023, Police Bureau Lieutenant Chris Burley told those present that some BHUAC meetings include presentations from the Inspector General on the Bureau's use of force statistics. Members of MHA and the public deserve to be at meetings

when such valuable information is being shared. Telling the public that the committee discussed these items things brings little value or transparency.

Data transparency is of particular value to the public and to community members with expertise in reviewing and analyzing data. The City has made significant progress in this area with the Portland Police Bureau's dashboards and open data systems. MHA supports further progress in this area. Dr. Jonathan Brown, a member of MHA who is independently studying Police Bureau use of force data, has had many fruitful discussions and access to Police Bureau data in the past. However, at times the City erects administrative barriers that slow the flow of information used in his research. It is our hope that this process results in a more transparent City government and that the role of external research and evaluation is honored.

### B. Portland Street Response

The Department of Justice and the Compliance Officer assert the City is in substantial compliance with paragraphs 88-90 of the Settlement Agreement (Section V, Community-Based Mental Health Services) thanks to the creation of the Portland Street Response crisis-response program; the ongoing operations of the Portland Police Bureau's Behavioral Health Unit, including its several Behavioral Health Response Teams; and the establishment of the Unity Center in 2017.

1. <u>The Portland Street Response risks failure due to lack of City support</u>

Paragraph 90 of the Settlement Agreement calls for "immediate and long-term improvements to the behavioral health care system" and lists seven "initial improvements," one of which is "d. Expanding the options and available capacity to BOEC Operators to appropriately divert calls to qualified civilian mental health providers as first responders." Dkt. 276-1, ¶ 90(d). The United States Department of Justice (U.S. DOJ) has found the existence of

Portland Street Response indicates compliance with this paragraph. For the reasons listed below, we disagree.

Although we join in the U.S. DOJ's concern about the durability of Portland Street Response, particularly given the City's recent failure to fully support their work (discussed below), we believe the U.S. DOJ should reconsider whether the mere existence of a new and threatened program represents "substantial compliance." Existence alone is insufficient. In our experience looking at similar mobile teams around the country, success requires three necessary factors: 1) an unwavering and vocal champion in city hall; 2) the endorsement and support of the police chief; and 3) early engagement with both the city attorney and emergency communications. What is now missing is that city-hall champion to laud achievements, support expansion of the service, and retain staff. If Portland Street Response becomes a political tool or a punching bag, it could easily falter and fail to achieve its goals, violating leadership commitments and community expectations.

    a.   *Portland Street Response does not operate during key hours*

The City stopped the expansion of Portland Street Response so as not to allow operations at all hours and days.[1] Unfortunately, the population Portland Street Response serves do not keep to standard business hours. Neither should Portland Street Response.

    b.   *Future funding for Portland Street Response remains uncertain*

---

[1] Alex Zelinski, *Portland Street Response, despite successes, faces an uncertain future*, Oregon Public Broadcasting (June 27, 2023), available at https://www.opb.org/article/2023/06/27/portland-street-response-citywide-one-year-later-future/.

*AMICUS CURIAE* MENTAL HEALTH ALLIANCE'S AUGUST 2023 STATUS REPORT
Page 4 of 9

The City has not identified how existing operations of Portland Street Response will be funded in the future and is "planning" to get outside organizations like Multnomah County, the state through Medicaid funds, and private non-profits to pay for Portland Street Response.[2]

### c. Portland Fire and Rescue's mismanagement of the Portland Street Response program has failed the program

The responsible City bureau, Portland Fire and Rescue, has mismanaged Portland Street Response to the extent that several key members of the Portland Street Response staff resigned, including the director.[3] Given the amount of training required for staff, the level of engagement with peers in other city departments, and integration with other service providers, this is a major setback for the program, which now must rebuild its in-house institutional knowledge and expertise.

### d. Portland Street Response is underutilized

The diversion of 19% of non-emergency welfare check and unwanted person dispatches that previously went to the Police Bureau, or 3.5% of total calls, cited by DOJ as an indicator of success, do not constitute a large percentage or number of total calls. Dkt. 369, p. 7. Also, these statistics apply only to the hours when Portland Street Response was staffed and allowed to operate, further minimizing the potential impact.

From the outset, the City created rules that prevent BOEC from dispatching to Portland Street Response to many kinds of calls. For example, by agreement between the Police Bureau

---

[2] *Id.*

[3] Alex Zelinski, *Former Portland Street Response manager blames exit on city leadership shortfalls*, Oregon Public Broadcasting (July 27, 2023), available at https://www.opb.org/article/2023/07/27/portland-street-response-team-manager-resignation/#:~:text=Robyn%20Burek%20left%20her%20position,growing%20morale%20and%20leadership%20issues.

*AMICUS CURIAE* MENTAL HEALTH ALLIANCE'S AUGUST 2023 STATUS REPORT
Page 5 of 9

and the police union, Portland Street Response staff are not allowed to enter a residence.[4] Any access to a weapon prevents diversion, a category that the Police Bureau reporting includes needles, knives (most homeless persons possess a knife for self-protection), and even spit. *Id.* Any threatening behavior is ruled out. This level of risk avoidance prevents the Portland Street Response from realizing its full potential and does not conform to national best practices for similar programs.

      e. *City leadership has indicated a lack of support for Portland Street Response*

The Commissioner-in-charge and Fire Bureau, both overseeing the program, have prevented Portland Street Response from distributing products such as tents, clothes, food and other items that are essential to the program staff's ability to initiate and gain the trust necessary to cause behavioral change among Portlanders who are homeless and unsheltered or mentally ill.[5] This decision hampers the basic task of Portland Street Response and shows a deep misunderstanding and suspicion of street-level social work. It appears from these and other decisions that current leaders overseeing Portland Street Response do not actually support the work of the program, which will inevitably hurt the program's performance and sustainability.

In her exit interview, former Portland Street Response program manager Robyn Burek wrote, "I felt intentionally set up and politically scapegoated, all while Fire leadership continued to lack accountability in their failure to adequately support the buildout of this program over the past 2.5 years."[6]

---

[4] Alex Zelinski, *Portland Street Response is Still Banned From Responding to Suicide Calls or Entering Buildings*, Portland Mercury (September 14, 2022), available at https://www.portlandmercury.com/news/2022/09/14/46074835/portland-street-response-is-still-banned-from-responding-to-suicide-calls-or-entering-buildings.

[5] Nicole Hayden, *Portland Street Response no longer allowed to hand out tents following order from Fire Commissioner Rene Gonzalez*, The Oregonian (February 15, 2023), available at https://www.oregonlive.com/portland/2023/02/portland-street-response-no-longer-allowed-to-hand-out-tents-following-order-from-fire-commissioner-rene-gonzalez.html.

[6] Zelinsky, *supra* note 3.

*AMICUS CURIAE* MENTAL HEALTH ALLIANCE'S AUGUST 2023 STATUS REPORT
Page 6 of 9

*f.  It is unclear how or whether Portland Street Response has reduced contacts between police and people in mental health crisis*

Although we have convincing reports from Portland State University that Portland Street Response has offloaded some 9-1-1 dispatches from Police Bureau, we have no evidence the Portland Street Response has reduced incidence of severe and disorderly mental crisis events or the need for use of force by Police Bureau against Portlanders with mental illness. In part, this is because the program is too new to fully evaluate these outcomes. Thus, it remains an open question whether Portland Street Response, as it is currently managed, contributes materially to the goal of the Settlement Agreement, which is to reduce unjustified use of force on persons living with mental illness.

Because the success of the Portland Street Response model depends on gaining the trust of persons living on the street with mental illness, it might be too early to see the ultimate benefits of Portland Street Response, especially given City actions that reduce the ability of Portland Street Response staff to build relationships with potential beneficiaries.

## C.  The Unity Center

Since it was established in 2017, the Unity Center has been an emergency hospital that provides care for psychiatric emergencies and fulfills civil commitment judicial orders. It is not now, nor has it ever provided walk-in or drop-off services as the U.S. DOJ insists.[7] Again, we urge the DOJ to tour actual walk-in and drop-off centers, understand the best practices of these centers, and listen to the advice from experts in the field. We believe the result would be a finding of noncompliance for Paragraph 89.

---

[7] See Rebecca Ellis, *Portland wants to build a 'one-stop-shop' for people in crisis*, Oregon Public Broadcasting (January 7, 2021), available at https://www.opb.org/article/2021/01/07/to-fill-void-left-by-sobering-station-portland-officials-want-to-build-a-one-stop-shop-for-people-in-crisis/.

*AMICUS CURIAE* MENTAL HEALTH ALLIANCE'S AUGUST 2023 STATUS REPORT
Page 7 of 9

D. Updates

<u>Portland Committee on Community Engaged Policing (PCCEP)</u>

The Portland Committee on Community Engaged Policing (PCCEP) is required by Section IX of the Settlement Agreement to ensure the community's voice and experiences remain central to the City's police reforms. Dkt. 276-1, Section IX. The Settlement Agreement requires the City maintain the PCCEP with sufficient and appropriate volunteer membership, staffing, facilitation, and financial resources. Unfortunately, PCCEP continues to lack sufficient support from the City and struggles to maintain its membership. As the U.S. DOJ consistently notes, PCCEP routinely falls far short of retaining 13 community members. Dkt. 369, p. 8.

The importance of PCCEP and their success cannot be overstated. It is crucial to the success of the Settlement Agreement that the community's independent voice is heard and that all reforms include an element of community oversight. We expect the City to take its responsibility to provide sufficient resources to ensure PCCEP's success seriously. Given the struggles PCCEP continues to have to maintain its membership, we have concerns about the City's current level of support and commitment to PCCEP's success.

**CONCLUSION**

MHA provides the constructive criticism above in an effort to inform the court of potential risks to the Settlement Agreement and to encourage all parties to maintain focus on the purpose of the Settlement Agreement: to reduce police use of force on people living with mental illness. The City's continued and improved transparency, the success of the Portland Street Response, the use of the Unity Center, and PCCEP all play a critical role in achieving that goal and serve the additional purpose of building trust in the system and in the City. MHA appreciates the opportunity to share that message with the court.

DATED August 11, 2023.

/s/ *Amanda Lamb*
Amanda L. Lamb, OSB #222284
Of Attorneys for *Amicus Curiae*
Mental Health Alliance

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB #136428
Of Attorneys for *Amicus Curiae*
Mental Health Alliance