# Final Statement before Judge Simon regarding
# The Portland Police Settlement Agreement
# Case No. 3:12-cv-02265-SI

## Statement by Dr. Dennis P. Rosenbaum, Ph.D.
## Former Compliance Officer and Community Liaison (COCL)
## Status Conference, August 14, 2023

Your Honor, after serving as the Compliance Officer and Community Liaison (or COCL) for 8 and a half years, I'd like to thank everyone that helped us do our job in Portland. I want to thank you, Judge Simon, for bringing new insights to this process and joining me in asking some tough questions, including "Where are the body-worn cameras?" I'd also like to thank the many community volunteers and community organizations for offering their insights and experiences regarding the Portland police and for giving us helpful feedback on our compliance reports. I'd like to thank the City and the Portland Police Bureau for maintaining a working, respectful relationship with us over the years despite our endless requests for information and disagreements at times. I'd like to thank DOJ for working side by side with us, while respecting our independence. And finally, I'd like to thank Tom - Dr. Christoff will do a fantastic job as the Compliance Officer.

Today, I'd like to make a few comments on the status of the Settlement Agreement and the obstacles to police reform. Portland is my hometown, so I genuinely care about this city and would like to offer

some constructive recommendations as I walk out the door into retirement.

First, a statement about polarization. Clearly, there are some extreme views in Portland on both sides regarding the Settlement Agreement. From community activists, I often hear statements like, "There has been absolutely no improvement in the Portland Police Bureau since the start of the Settlement Agreement." That is simply not true. There have been significant improvements in the Bureau's policies and actions regarding training, community engagement, force, and mental health, to mention a few. At the other extreme, inside the City and Bureau, I hear people say, "We have done everything asked of us, and we can't do our job well now because DOJ and COCL are standing in our way." The first part of that statement is not true – the City and PPB have not implemented all of our requests and accountability through early intervention remains a problem, as Dr. Christoff noted. For the second part – are we standing in the way? Yes, ideally, the City should be self-regulated, and we were ready to depart in 2020 when the City reached full compliance with the Settlement Agreement. But here we are, three years later, and the crowd management piece is still a work in progress, along with Accountability.

I would like to offer some departing advice to the City and the community on effective methods of police reform and the transition to self-regulation without external oversight from DOJ. I am pleased to see the progress in training, as well as the progress in developing a new oversight body and the implementation of body-worn cameras. These systems must be carefully implemented and clearly, more work is needed.

In terms of police reform in general, first, I will address the community's side. PCCEP, the Training Advisory Council, and the Police Accountability Commission are very engaged and are producing some great reports and recommendations that should be taken seriously by the City. But some community activists take extreme positions that are counterproductive. For example, calling for the elimination or abolition of the Portland Police Bureau is not a sound tactic – in fact, it will backfire – we all need the police and we need 911, period. Sometimes, we even want them to use deadly force to save the lives of other people, as we have seen with hundreds of mass shootings each year. But creating alternatives to law enforcement for handling mental health calls is an excellent idea – one that is being pursued nationwide. Even though the Bureau has a respectable set of mental health systems in place, I encourage you to keep working in this area and continue to invest in other options such as Portland Street Response.

Second, if you, as community members, want to make impactful recommendations for improving the police, then you must first get to know the police. You need a deep understanding of the current problems in urban policing and Portland in particular. You must take the time to ride along in police cars, conduct interviews with them, observe their training, participate in their Community Academy training, read their policies and procedures, and invite them to participate in your community meetings.

Essentially, you must be willing to work with the police – talk to them, listen to them, and learn about their work and the challenges they face. Otherwise, you are yelling in the dark without any real knowledge of who or what you are complaining about. I had to log hundreds and

hundreds of hours hanging out with police in dozens of American cities before I really achieved a deep understanding of what they are facing.

Now I turn to the Police and City side of the equation – the same is true for you – you must be willing to work with the community at all levels and respond to their recommendations.  Don't put your lawyers and your PR people or the Chief's office on the frontline to defend you. For most of these issues, the setting should not be like a criminal court, where the lawyers are defending their client whether their client is guilty or innocent – You need to be a learning organization willing to work with, and listen to, community members and subject matter experts. Acknowledge more of your mistakes and be willing to work on them to improve police services rather than "circle the wagons."

The Settlement Agreement tends to focus on holding officers accountable for misconduct. Let's be honest (and I'm speaking to the police unions as well) -- some police officers create problems for the entire organization and should be held accountable for their actions. There are deviant cops in every American city and the police on the street know who they are! The failure of management to properly identify and intervene with a few problematic officers who repeatedly misbehave has a negative effect both inside and outside the organization.

In contrast, the vast majority of police officers in Portland are good people and good employees trying to do a very difficult job – they simply need better guidance from first-line supervisors, who, by the way, hold the keys to reform, so please pay more attention to the sergeants and what they are doing. To move the agency beyond traditional police culture, most officers simply need clearer incentives

and a new form of supervision, so they can do the right thing in their daily work. So, yes, the City should administer serious negative consequences for these few "rotten apples" -  a task that could be done better. But the City and the Bureau need to give much more attention to rewarding good behavior throughout the organization (I will return to this issue in a moment).

But first, both sides – the Portland Police Bureau and some community activists -- need to reboot and begin to listen to each other.  Take down the barriers to communication. I encourage you not to do what the rest of our country is doing right now – engaging in political warfare with disinformation and hatred.  Instead, show good intentions and make a good faith effort to learn from each other and work together, rather than take extreme, defensive, and legalistic positions. We live in a time when trust in government has declined significantly over the past few decades, but good government is the backbone of our democracy. Everyone must work together to achieve what I call the 3 E's of policing – Efficiency, Effectiveness, and Equity.

As a psychologist, I also want to acknowledge the real psychological harm that occurred in Portland as a result of the 2020 protests – on both sides, after days and weeks of violent confrontations, some experienced trauma. Recovering from trauma is not easy – often we withdraw with anger, depression and fear.  The PPB has introduced Wellness training for officers, but trauma therapy should be available for both police and community members. Also, please work together to create an environment where this does not happen again.

In terms of restoring public trust, your systems of community engagement and policing should be designed for self-regulation – by

the community and the police working together without the oversight of DOJ, the federal courts, or independent monitors.  That is the goal. And the new Community Police Oversight Board, when operational, must also function with the understanding that there are a few bad cops that need more accountability. However, from my perspective, your new job is not to run the Portland Police Bureau, especially when you have limited knowledge of police work and the challenges they face. Leave that job to the police administration!

Finally, I want to back away and return to the bigger question regarding police reform and why it has been so difficult to change police culture (and it does need to be changed!). The most basic question is this – Can we change the rigid, quasi-military culture that has defined American policing for many decades, and if so, how?

Systems of reform should be based on a solid understanding of organizational behavior – I happen to be an organizational and social psychologist by training, so I have some expertise here. All organizations are living, breathing groups of individuals who are social beings - they care about what others think of them, they conform to peer pressure, they are responsive to group leaders, and most want to perform well at their job. They want to be successful and please their bosses, especially when they first start as new recruits.

So what is expected of them currently? Think of your own work – how is your performance evaluated at your job? For university professors, I can tell you from experience – it is very clear – professors at major universities are judged based on how many articles and books they publish, and only secondarily on how well they teach. For major law firms, I know from family members that lawyers are judged almost

entirely by how many hours they are able to bill their clients. When I ask police officers how they are evaluated, I get various answers – too often, it's about how many tickets they write or how many drugs or guns they recover from traffic stops, but surprisingly, many officers tell me, "We're judged by whether or not we can stay out of trouble." Judged by what they don't do rather than what they actually do! That's not good, and maybe Settlement Agreements and Consent Decrees contribute to this problem, but it's true in nearly all big cities.

So, we need a new set of metrics to evaluate police performance and it needs to be taken seriously by police administrators and City officials. If you don't measure something, you have no idea whether your officers are engaging in that activity or have achieved that outcome – It gives you the freedom, as an administrator, to ignore it or tell the public you're doing a great job at it, even though you have no clue how well your officers are doing.

And organizations shouldn't just measure something – they need to use that information for management purposes to incentivize good policing. In other words, they need to reward officers for the desired behaviors, not just punish them for misbehaving. Psychology is very clear about what shapes behavior – nearly all human behavior is driven by rewards and punishments, incentives and disincentives – that is a fact.

So how should police be evaluated? Certainly, the metrics should be community oriented, as police are public servants.  Let's keep it really simple - the public cares about two things: (1) public safety and (2) how they are  treated by the police.

First, the issue of crime and public safety…

In terms of public safety, yes, the Bureau measures citywide crime rates, and does a good job of it. But the police are not entirely in control of crime – there are many forces at work, so they must work with others in partnership to achieve what we call the "co-production" of public safety. However, it's time to measure the ability of individual officers to solve persistent crime-related problems (What we call Problem Oriented Policing) and measure their ability to engage the community in these tasks (what we call Community Policing) – these are the two biggest innovations in policing over the past three decades that should be measured in Portland.

There is no time to really discuss these options today, except to say that measuring these behaviors is not happening citywide. I will simply say this – Don't allow your officers to just drive around in their cars with their windows rolled up, waiting to be dispatched to another call – 50 years ago we learned that was a waste of taxpayers' money, yet we keep doing it. When I presented before the President Task Force on 21st Century policing in 2015, I said that officers need to get out of their car, walk the beat, and get to know the community, attend community meetings, meet the business owners and work with them to improve public safety. This is how you solve neighborhood problems and improve public safety. In Portland, only 6% of community residents know the first or last name of a Portland Police officer who patrols in their neighborhood. That number needs to increase.

Now, to the second and most important issue where the public wants to see improvement, namely, how well they are treated by the police. If you care about public trust in the police (which happens to be the

8

central focus of the Settlement Agreement), then you must care about how the officers are interacting with the public. Hundreds of scientific studies tell us that public trust in the police is driven by how the community is treated (or mistreated) by the police.

Over the years, I have repeatedly suggested that the City of Portland create a Contact Survey Program. Introducing and institutionalizing a contact survey will give voice to the thousands of residents each year who are stopped by the Portland police or have other contact with a Portland police officer, including victims of crime. Advisory groups in Portland are continuously talking about "community engagement" -- what it means and how to achieve it. A contact survey is a far-reaching method of community engagement that could change policing in Portland forever by changing how officers are evaluated, trained, and supervised.

A contact survey can measure the basic elements of procedural justice - Are community members treated with dignity and respect by Portland Police officers? Are community members given a voice or chance to express their concerns?  Are officers making decisions about community members in a neutral or unbiased manner, not considering race or ethnicity, gender identity, age, mental health, disabilities, and other constitutionally protected characteristics? And are officers showing concern for the well-being of those with whom they interact? How well are the police treating people who have been victimized and traumatized by violence? Or those who are poor and often blamed for their circumstances? Or those having a mental health crisis? Or members of the LGBTQ+? Or more generally, those who are scared when they get stopped by the police?

A Contact Survey Program will incentivize a new definition of good policing by introducing community-based performance metrics and encouraging more police officers to "serve and protect" in a fair, respectful, and compassionate manner. (I encourage everyone to read my report on this topic which is available online[1]). The contact survey data, along with body-worn camera data, can be used to incentivize the desired interpersonal communication skills among officers -- the social skills needed to achieve equitable and constitutional policing, to de-escalate tense encounters and to prevent the use of force.

After working in dozens of US cities over the years, I have thought a lot about innovative programs in policing, and why many of them don't get implemented. Sometimes, the unions get in the way. Other times, police and city administrations are unwilling to take risks and challenge the status quo. Sometimes, they face budget constraints.  I often hear the same response from criminal justice leaders local or nationally -- "That's a great idea, Dennis, I really wish we had the time or the resources to make it happen." Here is my view - you make time for something you consider important and you find the resources to make it happen. Otherwise, it is simply not a priority. And this should apply to nearly all innovations that are strongly supported by the communities being served.

---

[1] To read about the proposed Contact Survey Program, go to:
https://static1.squarespace.com/static/5a319f76a9db0901e16c6433/t/63db4b38ec537f751df77c99/1675316025917/COCL+TECHNICAL+ASSISTANCE+REPORT+Proposed+Contact+Survey+Program+02012023.pdf

I wish you all the best and hope that the people of Portland will continue down the challenging road of police reform and police innovation.  Thank you.