## XII.    AGREEMENT IMPLEMENTATION AND ENFORCEMENT

### A.    Implementation

196.    The City shall implement immediately all provisions of this Agreement which involve the continuation of current policies, procedures, and practices specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement. Except where otherwise specifically indicated, the City shall implement all other provisions of this Agreement no later than within 180 days of the Effective Date.

197.    With regard to any provision that provides for review and approval by the DOJ or the Monitor, approval will be granted in a timely fashion provided that the PPB's action reasonably satisfies the requirements and standards set forth in the relevant provision(s).

198.    All PPB audits and reports related to the implementation of this Agreement shall be made publicly available via website and at PPB, IPR, City Hall, and other public locations. Audits and reports shall be posted on PPB's website.

199.    PPB shall collect, and maintain, and post for public download all data and records necessary to facilitate and ensure transparency and wide public access to information related to PPB decision making and activities, and compliance with this Agreement, in accordance with the Oregon Public Records Law.

200.    All PPB officers and persons related to the implementation of this Agreement shall sign a statement indicating that they have read and understand this Agreement within 90 days of the effective date of this Agreement.  When there are amendments to this Agreement, PPB officers and persons related to the implementation of this Agreement shall acknowledge review and understanding of the amendments within 90 days of the effective date of the amendments.  Such

statements and acknowledgements shall be retained by PPB. PPB shall require compliance with this Agreement and any amendments by their respective officers, employees, agencies, assigns, or successors.

## B.    Independent Monitor

201.    An Independent Monitor (Monitor) shall assess the City's compliance with, and implementation of, this Agreement. The Monitor will include a team of people with expertise in policing, civil rights, data analysis and auditing, project management, behavioral health, emergency dispatch, and writing about complex matters succinctly in plain language intended for a general audience. The Monitor will work with the Parties to identify and address any barriers to substantial compliance and report regularly on the City's progress.

202.    The Monitor will have only the role, responsibilities, and authority conferred by this Agreement. The Monitor will not, and is not intended to, replace or assume the role or responsibilities of any City or PPB employee, including the Police Commissioner, or any other City official. It is not the Monitor's role to change either the scope or the terms of this Agreement.

### 1.    Selection, Term, Compensation, and Replacement

203.    Within 15 days of the date this paragraph is entered as an order of the Court, or additional time if mutually agreed to by the Parties, the Parties will agree on the terms the City will include in a Request for Proposal. The City will post the Request for Proposal within 15 days of the agreement.

204.    Within 60 days of the date of the posting of the Request for Proposal, or additional time if mutually agreed to by the Parties, the Parties will jointly select three finalists to be the Monitor, after considering input from the Intervenor-Defendant Portland Police Association (PPA), Enhanced Amicus Albina Ministerial Alliance Coalition for Justice and Police Reform

(AMAC), and Amicus Mental Health Alliance (MHA). The Parties will evaluate Monitor applications based on, but not limited to: ethics; subject matter expertise in policing; project management capacity; ability to write about complex matters succinctly in plain language intended for a general audience; commitment to establish a local presence; demonstrated experience, willingness, and ability to solicit and obtain meaningful community participation; ability to seek out varied stakeholder interests and perspectives, including law enforcement, the Black community, communities of color, mental health communities, and LGBTQIA+ communities; demonstrated knowledge about Portland's history of policing, mental health needs and services, and institutional racism, and willingness to expand upon that knowledge.

205. The Parties may interview each team member of Monitor applicants in determining or assessing the three finalists and will invite a representative from the PPA, AMAC, MHA, and the PCCEP to observe any such interview and, thereafter, offer their comments on the candidates for consideration by the Parties. The Parties will publicly announce the three finalists through various media intended to reach diverse populations, will post their resumes and proposed team members' profiles on the City website, and will provide and advertise a 32-day public comment period. Within two weeks of being announced, the finalists will participate in a public town hall forum, hosted by the Parties, to answer facilitated community questions about their experience, qualifications, and approach to monitoring the terms of the Agreement. The town hall will be held in a manner that is easily accessible, will allow for remote participation, and will be widely publicized to encourage broad participation-.

206. Within 30 days of the date of the close of the public comment period, the Parties will jointly select a candidate for the Court to appoint as the Monitor. In selecting the final candidate, the Parties will consider public input and any input from the PPA, AMAC, MHA, and

PCCEP.  The Parties' joint selection of a Monitor will be subject to the Court's appointment, provided that the Monitor's activities will be governed solely by the terms of this Agreement.  The Court will give deference to the Parties' joint selection of the Monitor.  If the Court does not appoint the Parties' selection, the Court will meet and confer with the Parties and then refer the Parties to mediation for selection of another candidate for the Court's consideration.  The Parties shall hold one session after Court referral to mediation and thereafter will jointly select another candidate to serve as Monitor subject to the Court's appointment and with deference to the Parties' selection.  The process of selecting a Monitor for Court appointment shall continue until the Court makes an appointment.

207.    If the Parties are unable to agree on a joint selection, the Parties agree to engage in mediation pursuant to Paragraph 271 of this Agreement.  If the Parties are unable to agree on a selection within one mediation session, each Party may submit to the Court a proposed Monitor, and the Court will give deference to those proposals in selecting and appointing the Monitor, after a hearing and opportunity for public comment, and input from the PPA, AMAC, MHA, and the PCCEP. If Court does not accept either candidate, the Court will meet and confer with the Parties and then refer the Parties to mediation for selection of additional candidate(s) for the Court's consideration.  Subject to the mediator's discretion and invitation, such mediation shall include the PPA, AMAC, and MHA.

208.    During the Monitor selection process, the City will continue to fund the COCL position to continue the COCL's duties under the prior version of this Agreement (ECF 354-1). The City will continue to fund the COCL during a period of transition to the appointed Monitor for no fewer than 30 days after the Monitor begins work; provided, however, if the contract with the current COCL expires while the Parties are in the process of transitioning to a Monitor as

provided herein, the Parties may agree to select a temporary COCL or suspend the COCL requirements and duties during the transition to a Monitor.  The COCL shall provide the Monitor with a copy of reports and methodologies and debrief the Monitor on the status of the City's compliance and any barriers to implementation.

209.    The Monitor will be appointed for a term of two years, which may be extended for additional two-year terms if the Parties jointly request, and the Court approves.  The Parties will consult with the PPA, AMAC, MHA, and PCCEP and will consider their input before seeking to extend the Monitor's appointment for additional two-year terms.  In deciding whether to extend the appointment, the Court will give deference to the request of the Parties, and will consider public input, including that of the PPA, AMAC, MHA, and PCCEP, and the Monitor's performance under this Agreement, including whether the Monitor is completing their work on time, within budget, and in a manner that facilitates the City's ability to achieve substantial compliance with this Agreement.

210.    The Parties recognize the importance of constraining the Monitor's fees and costs. Accordingly fees and costs will be a factor to consider in selecting the Monitor, including the ability to offer pro bono time or reduced rates, geographic proximity of the Monitor or team members to limit travel costs, affiliation with academic institutions or non-profit organizations, and willingness to enter an "alternative fee" arrangement that reduces costs and promotes efficiency by, for example, capping fees and costs at a flat rate that decreases each year as provisions of this Agreement become subject to self-monitoring and partial termination.

211.    The Monitor's budget will be publicly filed with the Court.  The Monitor will submit quarterly statements to the Parties and the Court detailing the work that they did for the quarter, as well as a projection for future work.

212.    The Monitor may request at any time to hire, employ, or contract with additional persons or entities reasonably necessary to perform the tasks assigned to the Monitor by this Agreement, but will be judicious in their decision to do so.  Any such requests that exceed the annual contracted amount will be subject to approval by City Council and DOJ, which may be decided at their respective discretion.  Any person or entity so retained by the Monitor will be subject to the provisions of this Agreement.  The Monitor will notify the Parties in writing of requests to retain such additional persons or entities and identify relevant qualifications.  If the Parties agree with the proposal, the Monitor will be authorized to retain such additional persons or entities.  All persons employed or retained by the Monitor shall successfully complete any required background checks before accessing applicable data, reports, or other information.

213.    If a dispute arises regarding the reasonableness or payment of the Monitor's fees and costs, the City, DOJ, and the Monitor will attempt to resolve such dispute cooperatively.  If the dispute remains unresolved, the City, DOJ, and the Monitor will engage in mediation pursuant to Paragraph 271 of this Agreement.  Such mediation shall include the Monitor.  For anything other than requests to exceed the annual contracted amount, either Party may file a motion petitioning the Court for relief pursuant to Paragraph 272 for disputes not resolved within 45 days of the start of mediation.

214.    If either Party to this Agreement determines that the Monitor, or members of the Monitor's team, have exceeded their authority or failed to perform the duties required by this Agreement, the Party may, after consultation with the other Party and the Monitor, request mediation with the Monitor pursuant to Paragraph 271 of this Agreement.  If the issue is not resolved within 45 days of the start of mediation, either Party may file a motion petitioning the Court for relief pursuant to Paragraph 272 of this Agreement.  If either Party disagrees with another

Party's interpretation of authority or duties provided under this Agreement, the Party may request mediation with the Monitor pursuant to Paragraph 271 of this Agreement.  If the dispute is not resolved within 45 days of the start of mediation, either Party may file a motion petitioning the Court for relief pursuant to Paragraph 272 of this Agreement.

215.    If the Monitor is no longer able to perform their functions, the Parties will meet and confer to determine whether a Monitor is still necessary.  If the Parties are unable to agree on whether a Monitor is still necessary, either Party may submit the dispute to mediation pursuant to Paragraph 271 of this Agreement.  If the Parties are unable to resolve the dispute within 45 days of the start of mediation, either Party may file a motion petitioning the Court for relief pursuant to Paragraph 272 of this Agreement.  If the Court decides that a Monitor is still necessary to oversee implementation of the Agreement, the Parties, after consideration of input from the PPA, AMAC, and MHA will jointly select a replacement Monitor for the Court to approve.  If the Parties are unable to agree on a selection for replacement Monitor, the Parties will participate in mediation pursuant to Paragraph 271 of this Agreement.  If the dispute is not resolved within 45 days of the start of mediation, each Party will submit a proposed replacement Monitor to the Court, along with resumes and cost proposals, and the Court will select and appoint the Monitor.

## 2.    Monitor's Duties

216.    The Monitor's core duties include:  (a) developing a Monitoring Plan, updated at the beginning of each two-year term, to ensure reliable compliance assessments; (b) conducting semi-annual assessments of the City's compliance with the terms of this Agreement; (c) conducting the outcome assessments required by this Agreement; (d) identifying barriers to compliance and providing recommendations on how to overcome such barriers; and (e) filing

semi-annual reports with the Court that detail the status of the City's progress in implementing this Agreement.

### a.    Monitoring Plan

217.    Using as guidance prior COCL and DOJ Compliance Assessment Reports, within 30 days of appointment, the Monitor will develop a plan for conducting compliance assessments and filing its reports (Monitoring Plan).  The Parties will have 15 days to provide the Monitor with written comments on the draft Monitoring Plan.  The Monitor will modify the draft Monitoring Plan as appropriate to address the comments or will inform the Parties in writing of the reasons for not modifying the draft.  Either Party may submit unresolved disputes regarding the draft Monitoring Plan to mediation with the Monitor pursuant to Paragraph 271 of this Agreement.  If the Parties are unable to resolve the dispute within 45 days of the start of mediation, either Party may file a motion petitioning the Court for relief pursuant to Paragraph 272 of this Agreement.

218.    The Monitor shall file the final Monitoring Plan with the Court.  The Monitoring Plan will, at a minimum:  (a) delineate the requirements of this Agreement that the Monitor will assess for substantial compliance; (b) identify the assessments necessary to determine whether the City has reached substantial compliance; and (c) set a schedule for the Monitor's two-year term, including assessments, outcome measurements, and reports that will ensure a semi-annual review of each discrete section, as defined below.

219.    If the Monitor is appointed for an additional two-year term, then the Monitor will file an updated Monitoring Plan with the Court after following the same process outlined in this section.  The updated Monitoring Plan will, at a minimum, set a schedule for the Monitor's two-year term, including assessments and reports that will ensure a semi-annual review of each substantive section.

b.      **Compliance Assessments**

220.    Six months after approval of the initial Monitoring Plan and every six months thereafter, the Monitor will assess whether the City is in substantial compliance with the requirements of this Agreement that are not subject to either self-monitoring or partial termination pursuant to Section XII, subsection G.   Compliance assessments will contain the elements necessary for reliability and comprehensiveness.   The Monitor may use sampling and compilation data where appropriate.

221.    Prior to initiating any audit pursuant to the Monitoring Plan, the Monitor will submit a proposed methodology to the Parties.   The Parties will have 15 days to provide written comments on the proposed methodology.    The Monitor will modify the methodology as appropriate to address the comments or will inform the Parties in writing of the reasons for not modifying the methodology.   Either Party may submit unresolved disputes involving the Monitor's audit methodology to requested mediation with the Monitor pursuant to Paragraph 271 of this Agreement.   If the Parties are unable to resolve the dispute within 45 days of the start of mediation, either Party may file a motion petitioning the Court for relief pursuant to Paragraph 272 of this Agreement.

c.      **Outcome Measurements**

222.    In addition to compliance reviews, the Monitor will conduct semi-annual qualitative and quantitative outcome assessments to measure whether the implementation of this Agreement has created:  (1) capable systems and resources for responding to persons in mental health crisis; (2) competent accountability and oversight systems; (3) effective training for police officers that increases the knowledge, skills and abilities necessary for effective and successful delivery of service to persons in mental health crisis; (4) proper management of the use of force to

meet constitutional standards; and (5) robust systems of community engagement. These outcome assessments will be informed by the following:

a.   Use of Force Data:

   i.   the number of police interactions where force was used on individuals in an actual or perceived mental health crisis, including the type of force used; the reason for the interaction, i.e., suspected criminal conduct or a well-being check; the threat to public safety, including whether the person was armed and if so, weapon type; a description of the facts and circumstances of resistance offered, if any; and a description of any attempts at strategic disengagement or de-escalation;

   ii.   the rate of force used per arrest by PPB; force type used; geographic area (i.e., street address, neighborhood, or police precinct); reason for arrest; and the subject's age, gender, race, and whether they were in an actual or perceived mental health crisis);

   iii.   the number of officers who repeatedly use force within the outcome measurement reporting period, or have more than one instance of force found to violate policy;

   iv.   number of officer and subject injuries resulting from force interactions, and force type used by the officer; and

   v.   a comparison of the category of non-deadly use of force cases for force used against persons in a mental health crisis and persons not in a mental health crisis.

b.  Mental health interaction data on:

    i.  Percentage of ECIT dispatched calls that have an ECIT officer on-scene;

    ii.  MCPT, currently known as Behavioral Health Response Team (BHRT), dispositions, including the percent of outcomes that are due to behavioral health system coordination (i.e., coordinated services, civil commitment, and systems coordination);

    iii.  the number of people with an actual or perceived mental illness encountered by PPB;

    iv.  the number of calls for service involving an individual with an actual or perceived mental illness who has been the subject of a prior call for service related to their behavioral health;

    v.  the number of police officer holds placed by PPB officers; and

    vi.  the disposition of PPB service interactions (e.g., calls for service and BHRT interactions) involving people with an actual or perceived mental illness (e.g., transfer to ambulance, hospital, Unity Center, jail, juvenile detention; community mental health referrals; dis-engagement; or none).

c.  Training data, including:

    i.  the number of officers trained, by the type of training provided;

    ii.  Training Division response to Force Inspector's referral of concerns of training deficiencies identified through use of force reviews or investigations;

    iii.  officer evaluation of adequacy of training; and

    iv.  the Training Division's assessment of incidents involving officer or subject injury.

d.  Performance data, including:

    i.  uses of force found to be out of policy;

    ii.  force allegations sustained and not sustained; and

    iii.  initial identification of officer policy violations and performance problems by supervisors, and effectiveness of supervisory response.

e.  Accountability data, including:

    i.  the number of complaints (broken out by type of complaint);

    ii.  uses of force that were found to violate policy overall and by force type; reason for arrest; the subject's age, gender, race, and whether they were in an actual or perceived mental health crisis; force type used; and number of officers involved;

    iii.  the number and rate of complaints that are sustained annually and by type; source of complaint (internal or external); type of arrest; the subject's age, gender, race, and whether they were in an actual or perceived mental health crisis;

    iv.  the rate of complaints closed within 180 days, and the explanation for cases that take longer;

    v.  the number and rate of disposition of allegations categorized by finding for all finding types;

vi.   the number and rate of complaints, including use of force complaints, in which the finding for each allegation is supported by a preponderance of the evidence;

vii.  the number of officers who are subjects of repeated complaints, or have repeated instances of sustained complaints, other than auto accidents; and

viii. the number, nature, and settlement amount of civil suits against the City based on PPB officers' conduct but not including auto accidents.

223.    In conducting these outcome assessments, the Monitor may use any relevant data collected and maintained or owned by the City, provided that the Monitor determines, and the Parties agree, that the data is reasonably reliable and complete.  The Monitor will also solicit input from community members and groups that have information or expertise relevant to an outcome assessment.

224.    At least 45 days prior to the initiation of any outcome assessment, the Monitor will submit a proposed methodology to the Parties.  The Parties will have 15 days to provide written comments on the proposed methodology.  The Monitor will modify the methodology as appropriate to address the comments or will inform the Parties in writing of the reasons for not modifying the proposed methodology.  Either Party may submit unresolved disputes involving the Monitor's methodology to requested mediation with the Monitor pursuant to Paragraph 271 of this Agreement.  If the Parties are unable to resolve the dispute within 45 days of the start of mediation, either Party may file a motion petitioning the Court for relief pursuant to Paragraph 272 of this Agreement.

### d.    Recommendations

225.    The Monitor may make recommendations to the Parties regarding actions necessary to ensure timely substantial compliance with this Agreement.  Such recommendations may include revising a policy related to this Agreement, conducting additional training, or seeking technical assistance.  The Monitor has no authority to modify any aspect of this Agreement by making recommendations, or by any other means.

### e.    Semi-Annual Monitor Reports

226.    Six months after approval of the Monitoring Plan and every six months thereafter, the Monitor will prepare a written public report that will:

a.    Describe the work conducted by the Monitor during the reporting period;

b.    List each requirement of this Agreement that is not subject to either self-monitoring or partial termination;

c.    Indicate which paragraphs the City has met requirements for substantial compliance, how long the City has met such requirements, and the data and evidence used to determine substantial compliance as required by this Agreement;

d.    Indicate which paragraphs the City has not met requirements for substantial compliance, how long the City has not met such requirements, the data and evidence used to determine lack of substantial compliance, and recommend steps necessary to achieve and maintain substantial compliance;

e.    Detail the data, evidence, and specific findings for each outcome assessment conducted during the six-month reporting period;

> f.    Project the work to be completed during the upcoming reporting period, and any anticipated challenges or barriers to substantial compliance with this Agreement; and
>
> g.    For any requirements that the City is in partial compliance with, explain why the City is not in substantial compliance and identify specific actions the City must take to achieve substantial compliance.

227.    The Monitor will provide a copy of reports to the Parties in draft form within 45 business days after the end of each reporting period.  The Parties will have 15 days to provide confidential written comments to the draft report; however, nothing in this paragraph precludes the City and Monitor from communicating orally about the draft report.  The Monitor will have 14 days to consider and make any revisions based on the Parties' feedback.  Then, the Monitor will post the draft report publicly for 32 days to receive any community input, during which the Monitor shall hold the town hall addressed in Paragraph 230.  The Monitor will have 14 days to consider the community input, including from PPA, AMAC, MHA, and the PCCEP, before filing a final report with the Court.  The Monitor shall substantiate its compliance assessments and recommendations.  The Monitor's reports shall be written with due regard for the privacy interests of individual officers and the subjects involved in the use of force interactions, and the interest of PPB in protecting against disclosure of non-public information.  The Parties agree that Monitor reports may be used to evidence compliance or non-compliance with this Agreement, subject to the weight afforded to such reports by the Court.

228.    The Court will hold semi-annual status conferences to discuss the Monitor's reported assessments of whether the City is in substantial compliance with this Agreement, and

may accept testimony from the PPA, AMAC, MHA, PCCEP and community members at those hearings.

### 3.        Monitor Communications and Conflicts of Interest

229.    The Monitor will maintain regular contact with the Parties to ensure effective and timely communication regarding the status of the City's implementation of this Agreement.  To facilitate this communication, the Monitor will hold regular status teleconferences and in-person or virtual meetings with the Parties on a schedule agreed upon by the Parties and the Monitor.  The Parties may speak privately with the Monitor but may not direct the Monitor's conduct or findings, shall respect the Monitor's independence, and will give deference to the expertise of the Monitor. DOJ will not issue monitoring reports.

230.    The Monitor will hold town hall meetings twice a year to discuss this Agreement's implementation process, answer questions about the Monitor's reports, assessments, and recommendations, and hear community perspectives of interactions with PPB as those relate to the requirements of this Agreement.  The Monitor will conduct community outreach to promote widespread public participation in the town hall meetings.  The public will have the opportunity to make comments or raise concerns at these meetings or via online and/or electronic mail submissions.  The Monitor and the City, in consultation with the PCCEP, will ensure that the time and location of these town hall meetings are well publicized with sufficient advance notice and that significant efforts are made to procure attendance of a community body broadly representative of the many and diverse communities in Portland, including persons with mental illness, mental health providers, faith communities, the Black community, people of color, student or youth organizations, and other community organizations.

231.    In addition to using town halls to seek community feedback, the Monitor will solicit feedback from stakeholders, including the PPA, AMAC, MHA, and other impacted individuals and communities and law enforcement who live or work in Portland to ensure the Monitor reaches a broad diversity of people.  The Monitor will also use modern tools of communication, such as social media, to ensure the Monitor receives feedback from community members whose voices are not as regularly heard.  The Monitor shall maintain a website where the documents referenced herein, including the Monitor's invoices and reports, are readily available to the public.

232.    Except as required or allowed by this Agreement, or with the Parties' mutual consent, the Monitor, including any member of the Monitor's team, will not make any public statements or issue findings with regard to any act or omission of the DOJ, City, PPB, or their agents, representatives, or employees; nor shall it disclose non-public information provided to the Monitor pursuant to this Agreement, and shall not make any statement to the press or public regarding its employment or monitoring activities under this Agreement.

233.    The Monitor, including any member of the Monitor's team, may testify as to observations, findings, and recommendations before the Court with jurisdiction over this matter. However, the Monitor, including any member of the Monitor's team, may not testify in any other litigation or investigative or pre-litigative proceeding with regard to any act or omission of the City, PPB, or any of their agents, representatives, or employees related to any matter of which knowledge was received as a result of this Agreement.  This paragraph does not apply to any proceeding before a court related to performance of contracts or subcontracts for the Monitor services referenced in this Agreement.

234.    Unless such conflict is waived by the Parties, the Monitor and all members of the Monitor's team will not accept employment or provide consulting services that would present a

conflict of interest with the Monitor's responsibilities under this Agreement.  The Monitor and all members of the Monitor's team may not enter into any contract with the City, PPB, or the United States while serving as the Monitor unless the Monitor first discloses the potential contract to the Parties and the Parties agree in writing to waive any conflict.  The Monitor may not serve as a member of another monitoring team, unless both Parties consent.

235.    The Monitor is not a state or local agency, or an agent thereof, and accordingly, the records maintained by the Monitor are not designated as public records subject to public inspection.

236.    The Monitor will not be liable for any claim, lawsuit, or demand arising out of the Monitor's performance pursuant to this Agreement brought by any person or entity that is not a Party to this Agreement.

**C.    PPB Compliance Coordinator, City Reports, and Records**

237.    PPB will hire or retain an employee familiar with the operations of PPB for the duration of this Agreement, to serve as a PPB Compliance Coordinator.   The Compliance Coordinator will serve as a liaison between PPB and both the Monitor and DOJ, and will assist with PPB's compliance with this Agreement.  At a minimum, the Compliance Coordinator will:

    a.    Coordinate PPB's compliance and implementation activities;

    b.    Facilitate the provision of data, documents, materials, and access to PPB personnel to the Monitor and DOJ, as required;

    c.    Ensure that all documents and records are maintained as provided in this Agreement;

    d.    Assist in assigning compliance tasks to PPB personnel, as directed by the Chief of Police or the Chief's designee; and

e.    Take primary responsibility for collecting the information the Monitor requires to carry out the duties contained in this Agreement.

238.    The City shall prepare a status report no later than 45 days after the close of each six-month reporting period.  The PPB Compliance Coordinator shall lead the effort in preparing this status report and shall provide copies to the Monitor and DOJ, and shall post the status report on the PPB website for access by PPA, AMAC, MHA, and the public.  The City's report shall delineate the steps taken during the reporting period to comply with each requirement of this Agreement.

239.    The City shall maintain all records, as applicable, necessary to document their compliance with the terms of this Agreement and all documents expressly required by this Agreement.

**D.    Access to People and Documents**

240.    The Monitor shall have full and direct access to all PPB and City staff, employees, facilities, and documents that the Monitor reasonably deems necessary to carry out their duties.  If a document requested by the Monitor is a privileged attorney-client communication, the Monitor shall not disclose the document in a manner that destroys that privilege without the approval of the City Attorney.  The Monitor shall cooperate with PPB and the City to access people, facilities, and documents in a reasonable manner that minimizes, to the extent possible, interference with daily operations.  In order to report on the City's implementation of this Agreement, the Monitor shall regularly conduct reviews to ensure that the City implements and continues to implement all requirements of this Agreement.

241.    For the purpose of assessing the Monitor's work and whether enforcement of this Agreement is appropriate, DOJ as the plaintiff and its consultative experts and agents shall have

full and direct access to all City staff, employees, facilities, and documents, to the extent necessary to carry out the enforcement provisions of this Agreement under Section XII, subsection H to the extent permitted by law. DOJ and its consultative experts and agents shall cooperate with PPB and the City to access involved personnel, facilities, and documents in a reasonable manner that minimizes interference with daily operations. DOJ shall provide PPB or the City with reasonable notice of a request for copies of documents. Upon such request, PPB or the City shall provide DOJ with copies (electronic, where readily available) of any documents that DOJ is entitled to access under this Agreement, except any documents protected by the attorney-client privilege. Should the City decline to provide DOJ with access to a document based on attorney-client privilege, the City promptly shall provide DOJ with a log describing the document, including its author, recipients, date of production, and general topic.

242.    All non-public information provided to the Monitor or DOJ by the City shall be maintained in a confidential manner. The underlying data for compliance reviews and outcome assessments will not be publicly available unless properly subject to disclosure under the Oregon Public Records Law. Nothing in this Agreement requires the City to disclose documents protected from disclosure by the Oregon Public Records Law to third parties.

**E.    Review of Policies, Trainings, and Investigations**

243.    Within 180 days of the Effective Date, PPB shall revise and/or develop its policies, procedures, and practices to ensure that they are consistent with, incorporate, address, and implement all provisions of this Agreement specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement. PPB shall revise and/or develop as necessary other written documents such as handbooks, manuals, and forms, to effectuate the provisions of this Agreement. PPB shall

send to the Monitor and DOJ as they are promulgated new or revised policies or procedures regarding use of force, interactions with persons in mental health crisis, and systems of accountability.  The Monitor shall have access to the public comments received during the policy universal review period and may consider such input.  If the Monitor or DOJ objects to the proposed new or revised policy or procedure because it does not incorporate the requirements of this Agreement or is inconsistent with this Agreement or the law, the Monitor or DOJ shall note the objection in writing within 21 days.  If neither the Monitor nor DOJ objects, PPB will implement the policy or procedure as soon as practicable consistently with any collective bargaining obligations that may exist.  PPB shall have 21 days to resolve any objections.  If, after the 21-day period has run, the DOJ maintains its objection, then the Monitor shall have an additional 21 days to resolve the objection.  If either Party disagrees with the Monitor's resolution of the objection, they may demand mediation and the Parties and Monitor shall participate in mediation pursuant to Paragraph 271 of this Agreement.  If the dispute is not resolved within 45 days of the start of mediation, either Party may file a motion petitioning the Court for relief pursuant to Paragraph 272 of this Agreement.  Upon approval consistent with this Agreement or Court decision, policies shall be implemented as soon as practicable consistent with any collective bargaining obligations that may exist.  PPB shall document employee review of new or revised policies and procedures.  The Chief shall post on PPB's website final drafts of all new or revised policies that are proposed specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement, to allow the public an opportunity for notice and comment, prior to finalizing such policies.

244.    The Chief's Office shall coordinate a review of each policy or procedure required by this Agreement 180 days after such policy or procedure is implemented, and biennially thereafter (on a regularly published schedule), unless either Party requests an annual review, to ensure that such policy or procedure provides effective direction to PPB personnel and remains consistent with the purpose and requirements of this Agreement.

245.    PPB shall apply policies uniformly and hold officers accountable for complying with PPB policy and procedure.

246.    PPB shall revise and/or develop its training curricula to ensure that they are consistent with, incorporate, address, and implement all provisions of this Agreement specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement.  PPB shall send new or revised training curricula regarding use of force, interactions with persons in mental health crisis, and systems of accountability to the Monitor as they are promulgated, with a copy to DOJ.  The Monitor will provide comments within 14 days and will not unreasonably withhold approval of training curricula.  PPB shall provide initial and in-service training to all officers and supervisors with respect to newly implemented or revised policies and procedures.  PPB shall document employee training in new or revised policies and procedures.

## F.    Changes, Modifications, and Amendments

247.    Nothing prohibits the Parties from engaging in any informal or formal discussions regarding this Agreement or the City's compliance with this Agreement.  After considering input from the PPA, AMAC, and MHA, the Parties may jointly stipulate to make changes, modifications, and amendments to this Agreement, which shall be effective, absent further action from the Court,

45 days after a joint motion has been filed with the Court. Any modification of this Agreement by the City of Portland must be approved by the City Council of the City by written ordinance.

248.    Where the Parties or the Monitor are uncertain whether a change to this Agreement is advisable, the Parties may agree to suspend the current Agreement requirement for a time period agreed upon at the outset of the suspension. During this suspension, the Parties may agree to temporarily utilize an alternative requirement. The Monitor will assess whether the alternative is as, or more, effective at achieving the purpose as was the original, and the Parties will consider this assessment along with input from PPA, AMAC, and MHA in determining whether to stipulate jointly to the suggested change, modification, or amendment.

**G.    Partial Termination, Self-Monitoring, and Final Termination**

249.    Partial termination will serve to acknowledge the successful efforts of PPB and the City to date and will allow the Parties and Monitor to focus their efforts on areas in which the City is not in or has not maintained substantial compliance. Self-monitoring is a transition phase that involves continued Monitor review of the City's methodology and self-assessments while allowing the City to demonstrate its ability to sustain compliance after termination. Final termination is achieved when the City has satisfied its obligations under this Agreement. As used herein:

a.    A "discrete section" of this Agreement is a paragraph or group of paragraphs that do not necessarily implicate other provisions of the Agreement and may be assessed for compliance independently of other provisions.

b.    This Agreement has 35 discrete sections:

1)    Paragraphs 66-67 (force principles);

2)    Paragraph 68 (ECWs);

3)    Paragraphs 69, 70, 72-73, 188 (force reports and reviews);

4)    Paragraph 71 (supervisory staffing);

5)    Paragraphs 74-77 (force audits);

6)    Paragraphs 78-79, 81, 84, and 190 (training principles);

7)    Paragraphs 80, 82-83 (training evaluations, reports, and qualifications);

8)    Paragraphs 85-86 (training audits, analyses, and recommendations);

9)    Paragraph 87 (training advisory council);

10)   Paragraphs 88-90 (community-based mental health services);

11)   Paragraphs 91-93 (behavioral health unit);

12)   Paragraphs 94-96 (behavioral health unit advisory committee);

13)   Paragraphs 97-98 (continuing the crisis intervention program);

14)   Paragraphs 99-105 (establishing enhanced crisis intervention team);

15)   Paragraphs 106-111 (behavioral health response team);

16)   Paragraph 112 (service coordination team);

17)   Paragraphs 113-114 (BOEC);

18)   Paragraph 115 (crisis triage);

19)   Paragraphs 116-118 (EIS operation);

20)   Paragraphs 119-120 (EIS staffing);

21)   Paragraphs 121-123 (investigation timelines);

22)   Paragraphs 124-127 (on-scene public safety statements and interviews);

23)   Paragraphs 128-129, 131-133 (conduct of IA investigations);

24) Paragraph 130 (retaliation);

25) Paragraphs 134-136 (CRC appeals);

26) Paragraphs 137 and 245 (discipline and accountability);

27) Paragraphs 138-140 (communication and transparency);

28) Paragraphs 141-144, 151-152 (PCCEP);

29) Paragraphs 145-147, 149 (PPB community engagement);

30) Paragraphs 148, 150, 193 (PPB Stops Data and Annual Reports);

31) Paragraph 189 (outside review of 2020 protest response);

32) Paragraph 191 (training dean);

33) Paragraph 192 (investigating 2020 protest response);

34) Paragraph 194 (body-worn cameras); and

35) Paragraph 195 (new accountability structure).

c. Substantial compliance is achieved if any violations of the Agreement are minor or occasional and are not systemic.  The Monitor will assess whether the City has achieved substantial compliance in accord with the provisions of this Agreement.

## 1.    Immediate Partial Termination

250.    Upon approval of this Section XII, the following discrete sections of the Agreement, which the City has achieved and maintained substantial compliance for at least the prior three complete DOJ assessment reports, are terminated:

a. Paragraph 68 (ECWs);

b. Paragraph 71 (supervisory staffing);

c. Paragraphs 80, 82-83 (training evaluations, reports, and qualifications);

    d.      Paragraph 87 (Training Advisory Council);

    e.      Paragraphs 91-93 (Behavioral Health Unit);

    f.      Paragraphs 97-98 (continuing the crisis intervention program);

    g.      Paragraphs 99-105 (establishing "Memphis Model" crisis intervention team);

    h.      Paragraphs 106-111 (Behavioral Health Response Team);

    i.      Paragraph 112 (Service Coordination Team);

    j.      Paragraphs 113-114 (BOEC);

    k.      Paragraph 115 (crisis triage), subject to Paragraph 252(a) below;

    l.      Paragraphs 119-120 (EIS staffing);

    m.      Paragraph 130 (retaliation);

    n.      Paragraphs 134-136 (CRC appeals);

    o.      Paragraphs 138-140 (communication and transparency); and

    p.      Paragraphs 145-147, 149 (PPB community engagement).

251.    A discrete section that is terminated is no longer subject to enforcement, monitoring, or self-monitoring, and the requirements under the discrete section are no longer part of this Agreement.

252.    The Parties have a current dispute over the meaning of two provisions of this Agreement:

    a.    The Parties disagree about the meaning and requirement of Paragraph 115 of this Agreement and whether it should be immediately partially terminated. The Parties shall attend mediation and exchange information to try to resolve the question of whether Paragraph 115 should also be immediately partially terminated. The

Parties shall mediate the matter for not more than 60 days after entry of the Section XII amendments. If the Parties come to agreement that Paragraph 115 should be immediately partially terminated, the Parties shall expeditiously file a joint motion stipulating to terminate the obligations under Paragraph 115 of this Agreement independently of other provisions.   During the pendency of a joint motion stipulating to partial termination, the United States agrees not to enforce the obligations, and the obligations of the Monitor, and/or the obligations of the COCL if a Monitor is not yet assessing compliance, and requirements for self-monitoring shall suspend.  The joint stipulated motion will take effect as an order of the Court if the Court does not act within 45 days of the motion being filed. If, after mediation, the Parties do not agree to immediate partial termination, then either Party may file a motion with the Court for determination of the correct interpretation of Paragraph 115. After a hearing on the motion, the Court will make such determination. If the Court's interpretation of Paragraph 115 means that the City was in substantial compliance with Paragraph 115 during the seventh compliance report period, then the Court will immediately terminate Paragraph 115. If the Court determines that the City was not in substantial compliance with Paragraph 115, then Paragraph 115 will remain in this Agreement until the City meets the requirements for self-monitoring followed by partial termination or until Paragraph 115 is otherwise terminated as an obligation of this Agreement, whichever shall first occur.

b.  The Parties disagree about the meaning of the phrase "direct access to documents" as that phrase is used in Paragraphs 240 and 241 and how it applies to access to evidence.com or equivalent cloud storage service.   The Parties shall attend

mediation and exchange information to try to resolve the question of the meaning of direct access as stated above regarding Paragraphs 240 and 241. The Parties shall mediate the matter for not more than 60 days after entry of the Section XII amendments. If, after mediation, the dispute remains unresolved, then either Party may file a motion with the Court as permitted by this Agreement.

**2.     Self-Monitoring Followed by Partial Termination**

253.    Upon approval of this Section XII, the following discrete sections in Paragraph 249(b) shall move into self-monitoring:

   a.      Paragraphs 88-90 (Community Based Mental Health Services);

   b.      Paragraphs 94-96 (BHU Advisory Committee);

   c.      Paragraphs 141-144, 151-152 (PCCEP); and

   d.      Paragraphs 148, 150, and 193 (PPB Stops Data and Annual Reports).

254.    Going forward, within seven days of the Monitor filing each semi-annual compliance report, the Parties will identify whether additional discrete sections are subject to self-monitoring.  A discrete section will become subject to self-monitoring if:  (a) the Monitor's first report and DOJ's Seventh Periodic Compliance Assessment Report (ECF 369) found the City in substantial compliance with the discrete section; (b) the Monitor's first report and COCL's final two quarterly assessment reports found the City in substantial compliance with the discrete section; or (c) the Monitor finds the City in substantial compliance with the discrete section for two consecutive reports.

255.    For discrete sections subject to self-monitoring, the City will create a self-monitoring plan in consultation with the Monitor that emphasizes assessments to evidence

continued substantial compliance, prepare semi-annual compliance reports subject to the Monitor's evaluation, and report its findings to the Court at non-evidentiary status conferences.

256.    Within 45 days of receipt, the Monitor shall evaluate the City's semi-annual reports to determine whether the City has maintained substantial compliance in accordance with the self-monitoring plan.  The Monitor may reasonably request additional time for evaluation and the Parties shall not unreasonably deny such request.

257.    If the Monitor's evaluations find that the City has adequately demonstrated that it has maintained substantial compliance with a discrete section of this Agreement for two consecutive reports, the discrete section will be subject to termination.  In that event, the Parties shall file a joint motion stipulating to terminate the obligations under the discrete section of this Agreement independently of other provisions.  During the pendency of a joint motion stipulating to partial termination, the United States agrees not to enforce the obligations, and the obligations of the Monitor and requirements for self-monitoring shall cease.  The joint stipulated motion will take effect as an order of the Court if the Court does not act within 45 days of the motion being filed.

258.    If the Monitor's evaluations find that the City has not adequately demonstrated that it has maintained substantial compliance with a discrete section subject to self-monitoring, then the City shall prepare additional semi-annual reports until the Monitor determines that the City has adequately demonstrated that it has maintained substantial compliance with the discrete section for two consecutive reports, at which point the discrete section shall be subject to a motion stipulating to partial termination pursuant to Paragraph 257.

259.    If the Parties disagree about whether a discrete section of this Agreement is appropriate for partial termination, prior to filing a contested motion for partial termination, the

City will notify DOJ in writing of the grounds for its motion and provide documents to support its position.  Thereafter, the Parties will confer within seven days as to the status of compliance, and DOJ may elect to conduct reasonable assessments, or, for any City assertion in the grounds for its motion for partial termination that have not been subject to the Monitor's assessment, the DOJ may request that the Monitor conduct reasonable assessment of that assertion.  Such assessment may include on-site observations, document reviews, or interviews with City and PPB personnel. The period of consultation and assessments shall not exceed 30 days; however, DOJ may request a reasonable extension of time, which the City shall not unreasonably deny.  If after the period of consultation and assessment the Parties cannot resolve their disagreement about compliance, the Parties agree to participate in mediation pursuant to Paragraph 271 of this Agreement.  If the dispute is not resolved within 45 days of the start of mediation, the City may file a motion to terminate discrete sections of this Agreement.  If the City moves to terminate discrete sections of this Agreement, DOJ will have 30 days after the receipt of the City's motion to respond, however, DOJ may request reasonable extensions of this deadline which the City shall not unreasonably oppose.  If DOJ objects to the City's motion, the Court will hold a hearing on the motion, and the burden will be on the City to demonstrate that the City remains in substantial compliance with the discrete section(s) at issue after successfully self-assessing its compliance for two consecutive self-assessment reports, as provided in this Agreement, and that partial termination is appropriate.

### 3.     Final Termination

260.     This Agreement will terminate in all respects when all discrete sections identified in Paragraph 249(b) have been terminated pursuant to this Agreement.

261.     The City and the United States shall file a joint motion stipulating to final termination of this Agreement once the City has achieved substantial compliance and adequately

demonstrated by self-monitoring consistent with this Agreement that it maintained substantial compliance with each respective discrete section(s) not already terminated, and as documented by the joint motions stipulating to partial termination on file or any judicial findings that result from a contested motion for partial termination. The Court shall consider the stipulation of the Parties, the Monitor's reports, and other admissible evidence. During the pendency of a joint motion stipulating to final termination, the United States agrees not to enforce the obligations, and the obligations of the Monitor and requirement for self-monitoring shall cease. The joint stipulated motion will take effect as an order of the Court if the Court does not act within 45 days of the motion being filed.

262.    If this Agreement has not already been terminated in its entirety within three years of the date of the Monitor's appointment, the Court shall hold a hearing in which the City will be invited to provide evidence to the Court of the progress it has made and, if the City chooses, to demonstrate that the City can be released from this Agreement, either in whole or in part. For work that remains, if any, this hearing shall be used as an opportunity to solidify a plan and timeline for completing any outstanding work as efficiently as possible.

## H.    Enforcement

263.    The Parties agree jointly to file this Agreement with the United States District Court for the District of Oregon, in a matter to be captioned *United States* v. *City of Portland*, Civil Action No. 3:12-CV-02265-SI. The joint motion shall request that the Court enter the Agreement pursuant to Federal Rule of Civil Procedure 41(a)(2), and conditionally dismiss the complaint in this action with prejudice, while retaining jurisdiction to enforce the Agreement. If the Court does not retain jurisdiction to enforce the Agreement, the Agreement shall be void.

264.    The Court shall retain jurisdiction of this action for all purposes until the City's obligations are terminated as provided by this Agreement.

265.    The United States acknowledges the good faith of PPB and the City in trying to address the remedial measures that are needed to promote police integrity and ensure constitutional policing in the City.  The United States, however, reserves its right to seek enforcement of the provisions of this Agreement if it determines that PPB or the City have failed to fully comply with any provision of this Agreement that is not subject to a pending motion stipulating to termination or has not otherwise been terminated as provided by this Agreement.

266.    The United States understands that some portions of this Agreement will take time to implement and that implementation may require changes to, among other things, collective bargaining agreements, the City Code, and current City policies and will likely require additional revenue resources that have not yet been identified at the time this Agreement is executed.

267.    If the United States reasonably believes the City has failed to implement the terms of the Agreement, it shall promptly notify the City in writing and identify with specificity the portion or portions of the Agreement about which it has concerns.  Similarly, if the City believes that DOJ has misinterpreted a provision of this Agreement it may promptly notify DOJ of its concerns, noting the specific portions of the Agreement that it believes has been misinterpreted.

268.    Notices provided by the United States or by the City shall be in writing and provided by mail to the following persons:

Chief of Police                     City Attorney
1111 SW Second Ave.                 1221 SW Fourth Ave., Suite 430
Portland, OR  97204                 Portland, OR  97204


Section Chief                       U.S. Attorney
Special Litigation Section          District of Oregon
950 Pennsylvania Ave., NW           1000 SW Third Ave., Suite 600

Washington, D.C.  20530          Portland, OR  97204

269.    Following receipt by mail of any written Notice, the City or DOJ shall respond in writing within 30 days to the concerns raised by the other Party.  Depending on the nature and number of concerns, the City or DOJ may request additional time to respond, and such request shall not be unreasonably denied.  The Notice and the response thereto shall be considered to be in the nature of settlement discussions subject to Federal Rule of Evidence 408.

270.    If the response fails to resolve the stated concerns, the Parties agree to meet as soon thereafter as is mutually convenient to discuss the City's compliance with the portion(s) of the Agreement identified in the Notice or the interpretation of the Agreement by DOJ.  Persons attending the meeting shall have authority to resolve the concerns, unless resolution of the concern requires adoption of an ordinance or resolution by City Council or by the Assistant Attorney General in Charge of the DOJ Civil Rights Division.

271.    If a meeting between the Parties fails to resolve the concerns, the Parties agree to participate in mediation conducted by a mutually agreeable neutral third party.  Any such mediation may include the PPA, AMAC, and MHA at the Mediator's discretion and invitation.  If the Parties cannot agree upon the selection of a mediator, the Parties shall submit three names of potential mediators to each other.  Each Party may then strike two of the three names provided by the other participant.  The remaining two names shall be given to the Chief Judge of the U.S. District Court for the District of Oregon and the Chief Judge shall appoint the mediator from one of the names provided.

272.    If mediation fails to resolve the concerns, the United States or the City may file a Motion in the U.S. District Court for the District of Oregon, located in Portland, Oregon, to enforce compliance with the terms of this Agreement or to seek a Declaration of the meaning of this

Agreement.  The Motion or request for Declaration shall only allege concerns raised by the City or DOJ that were the subject of mediation.  The Parties shall then confer with the Court to schedule a date on which the Motion or Declaration shall be heard or will otherwise comply with the Court's preferred procedure.  The Judge hearing the Motion shall determine whether or not the Agreement has been breached and may interpret the meaning of the Agreement and has the power to issue an appropriate remedy, if any.  If, for any reason, the Judge finds the City is not in compliance with the Agreement, but that noncompliance was beyond the reasonable control of the City, the City shall not be in breach of this Agreement.  However, in the event of noncompliance beyond the reasonable control of the City, the Parties agree that the Court may exercise its equitable powers to devise an appropriate remedy or modification of this Agreement to accomplish the same result as that intended by the portion of the Agreement with which noncompliance was found, provided the Parties cannot reach agreement on the remedy or modification. Both Parties retain the right to appeal these decisions.

273.    The Parties agree to defend the provisions of this Agreement and any joint motion filed pursuant to this Agreement.  The Parties shall notify each other of any court or administrative challenge to this Agreement.  In the event any provision of this Agreement is challenged in any City, county, or state court, removal to a federal court shall be sought by the Parties.

274.    The Parties agree that the provisions of Section XII of this Agreement are not severable and are effective only when Section XII is adopted in its entirety.

275.    The City agrees to promptly notify the Monitor and DOJ if any term of this Agreement becomes subject to collective bargaining.  The City agrees to keep the Monitor and DOJ apprised of the status of the resulting negotiations.