**Juan C. Chavez**, OSB #136428
**Franz Bruggemeier**, OSB #163533
**Amanda Lamb**, OSB #222284
Email: jchavez@ojrc.info
PO Box 5748
Portland, OR 97208
Telephone: 503-944-2270 ext. 212
Facsimile: 971-275-1839

Attorney for Plaintiff-Intervenor Mental Health Alliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>Defendant. | Case No. 3:12-cv-02265-SI<br><br>MENTAL HEALTH ALLIANCE'S NOVEMBER 2023 FAIRNESS HEARING BRIEF |

**INTRODUCTION**

*Amicus Curiae* Mental Health Alliance provides this briefing in response to the Parties' Joint Motion to Amend the Settlement Agreement. We are not opposed to the relief sought.

The parties, often including the Amici, met over the course of several mediations to discuss the details of Section XII. MHA is not opposed to the adoption of Section XII, but provides this short briefing to stake out three points that we would like to highlight to the Court and to the parties about what we anticipate and are hopeful could be achieved by adding a court monitor.

### I.  Self-monitoring plan requires strict scrutiny from the monitor, court, plaintiff, and public

MHA's primary interest in having an Independent Court Monitor assume the responsibility of curing the City's pattern and practice of excessive force is to increase two things: the Court's and Public's involvement in this case and the Public's involvement in the case. We appreciate the many years and hard labor put into this case by the United States Department of Justice. Many changes have happened as a result over the years of its involvement, and there is hope yet that the changes in training and use of force review may bear fruit. But the parties understand the necessity of change in the enforcement and review scheme of the settlement agreement in this case.

Our issue then turns to where we fear community input and insight might be lost, which is when the City assumes "self-monitoring" responsibilities under the agreement. Just a few years ago, the City had for years remained out of compliance regarding use of force reporting. While the City eventually gained substantial compliance in 2019, the complete collapse of internal accountability and reversal of progress during the 2020 protests still haunt these proceedings. We fear that, left to its own devices, the City will see self-monitoring as an opportunity to hastily run to compliance when the systems in place are not actually durable remedies.

Section XII includes provisions to ensure that self-monitoring is not an end around to actually curing the pattern and practice.

> "If the Monitor's evaluations find that the City has adequately demonstrated that it has maintained substantial compliance with a discrete section of this Agreement for two consecutive reports, the discrete section will be subject to termination. In that event, the Parties shall file a joint motion stipulating to terminate the obligations under the discrete section of this Agreement independently of other provisions." Dkt. 390-1, ¶ 257.

MENTAL HEALTH ALLIANCE'S NOVEMBER 2023 FAIRNESS HEARING BRIEF
Page 2 of 4

Whether self-monitoring is fair, adequate, and reasonable must be a continued matter of discussion for the Court and the public.

## II. Court monitor selection process must honor and place heavy weight on the input of the public.

Of course, the selection of a Court Monitor will have a tremendous bearing on the efficacy of this settlement agreement. The process laid out in Section XII allows for community engagement with the potential Court Monitors in the form of a town hall, but the ultimate decision will be left to the parties. The City *must* place the greatest emphasis on the community's input. "In selecting the final candidate, the Parties *will consider* public input and any input from the PPA, AMAC, MHA, and PCCEP." Dkt. 390-1, ¶ 206 (emphasis added). The public's trust in this process is at stake. The *amici* should be included in every aspect and instance of this selection process. There will be no peaceable conclusion to the problems identified in this case *unless* the public has faith in the Court Monitor's integrity.

The Court will have the ultimate say in the hiring of the Court Monitor. Dkt. 390-1, ¶ 206. We intend to inform the Court of our opinions about the Court Monitor selection if we take issue with the process.

## III. Section XII's goal must be ceasing the pattern and practice of excessive force against persons with mental illness, not a short cut to dismissal of the case.

No provision in Section XII changes the problem the parties seek to address: the Portland Police Bureau's pattern and practice of excessive force against people with mental illness. The approval of Section XII should not affect the parties' focus on meeting that goal, nor should end any progress toward that desired outcome. While Section XII marks a change in the Settlement Agreement's system of overseeing the changes the City of Portland implements, that change should not be a barrier to continuous improvement in reducing excessive force.

While we understand the Settlement Agreement must end at some point, Section XII is not that end. Even with a clearer path to moving oversight from a court monitor to self-monitoring and then eventual termination, the City is still beholden to the paragraphs that remain. Moreover, the City and Portland Police Bureau will remain beholden to the community it serves and must continue to make progress toward the goal of ending excessive force against people with mental illness.

DATED: November 29, 2023

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB 136428
Of Counsels to *Amicus* Mental Health Alliance