**From:** Debbie Aiona ▮▮▮▮▮▮▮▮▮▮▮▮
**t:** Tuesday, November 28, 2023 4:51 PM
Mary Austad
**Cc:** Carolyn Buppert
**Subject:** League of Women Voters comments for 11/30 Fairness Hearing
**Attachments:** LWV comments Independent Monitor Nov. 2023.pdf

CAUTION - EXTERNAL:

Hi Mary,

Here are the League's written comments for the Nov. 30 Fairness Hearing. Thank you for sharing them with Judge Simon.

All the best,

Debbie Aiona
LWV Portland

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



# League of Women Voters of Portland

PO Box 3491, Portland, Oregon 97208-3491
503-228-1675  •  info@lwvpdx.org  •  www.lwvpdx.org

**Date:**       November 28, 2023

**To:**          Honorable District Judge Michael Simon

**From:**      League of Women Voters of Portland
Carolyn Buppert, president
Debbie Aiona, Action Committee chair

**Re:**          Fairness Hearing – Independent Monitor
United States of America v. City of Portland Case No. 3:12-cv-02265-SI

The League of Women Voters of Portland has a long-standing interest in Portland's police oversight system and in other issues related to the Settlement Agreement between the City and U.S. Department of Justice. We appreciate the opportunity to provide our comments.

The City currently is grappling with implementation of Measure 26-217 that voters adopted in 2020. The Police Accountability Commission (PAC) presented its recommended <u>code</u> to City Council in September and the City recently shared its <u>proposal</u>. There are significant differences between the two. We are in the middle of a 30-day comment period that will culminate in city council action to submit another set of proposed Settlement Agreement <u>amendments</u> to the DOJ.

There are numerous unresolved issues that should be addressed before moving any accountability paragraphs in the Settlement Agreement to immediate partial termination status. The League therefore recommends that, although the City is in substantial compliance with the following provisions, the new Independent Monitor should maintain oversight.

- Retaliation (130): The PAC-recommended code includes retaliation among the types of cases the new Community Board for Police Accountability (CBPA) is authorized to investigate. The city omitted the requirement from its proposed code. Moving the retaliation provision in the Settlement Agreement to immediate partial termination runs the risk that the police bureau policy prohibiting retaliation could be removed before the new board begins its work. When community members or police officers are afraid of filing misconduct complaints, the system cannot function effectively.
- Citizen Review Committee (CRC) Appeals (134 – 135): The PAC's proposal maintains the right to appeal; the City eliminated it. Complainants have had the right to appeal non-sustained findings since the Independent Police Review's inception--and should continue to have that right.

League of Women Voters of Portland:
*To promote political responsibility through informed and active participation in government.*

- Communication with Complainant and Transparency (138 – 140): The PAC incorporated requirements for communicating with complainants in its proposed code. The City eliminated these requirements.

Leaving the above Settlement Agreement provisions in place until we have certainty about the structure of our new system will ensure these important protections are subject to oversight by the Monitor.

Additionally, there are unanswered questions about how the City's recommendation will affect Portland Police Bureau (PPB) operations related to officer accountability. The PAC's proposed code calls for the new oversight board to handle a detailed and comprehensive set of complaints. The intent was that the new Office of Community-based Police Accountability (OCPA) should investigate all except internal PPB job-related issues. The City takes a different approach and specifies a limited set of complaints subject to OCPA jurisdiction, with the remainder left to Internal Affairs to investigate, including truthfulness and courtesy complaints. In other words, Portland will have a bifurcated system. This approach raises a number of questions:

- Will the system proposed by the City with two agencies handling complaints increase complexity and confusion?
- Is the City's proposed oversight system in line with the voters' intent when they passed Measure 26-217?
- With which office will community members file complaints – OCPA or the police bureau?
- As IPR currently does, will the OCPA director have the authority to review Internal Affairs investigations and recommended findings to ensure accuracy and completeness? Will they determine whether additional allegations warrant further investigation or have the ability to controvert police bureau findings?
- Will the Police Review Board (PRB) continue to operate?
- If the PRB continues to operate, will the OCPA director serve on the PRB?
- Will CBPA members serve on the PRB as CRC members do now?
- Will there be any community members on the PRB once the IPR ceases to exist and will no longer handle recruitment and appointments?

**Additional Comments:**

**Demographic Data (148):** One of the items designated for self-monitoring is the paragraph requiring collection of demographic data gathered in the course of police encounters. The City is collecting the data and sharing it, but has fallen short in using the data to develop policies and practices that reduce disparities. Disproportionate representation of specific populations is a serious issue in Portland and around the nation. We recommend this remain under the Monitor's purview.

**Independent Monitor Qualifications (204):** In paragraph 204 of the proposed amendments, the list of qualifications the parties should keep in mind when evaluating applications does not include police oversight/accountability expertise. Given the level of community concern and

League of Women Voters of Portland:
*To promote political responsibility through informed and active participation in government.*

2

uncertainty about the future of police accountability in Portland, this should be added to the list of considerations.

**Public Involvement (228):** It is encouraging to see in paragraph 228 that, along with the other parties, PCCEP and the general public will continue to be invited to testify at status conferences.

**Transparency (238):** If you approve the proposals for the City to take on monitoring its own performance, we appreciate that paragraph 238 requires posting the semi-annual reports on the PPB website so they are publicly available.

**Portland Street Response:** It is disappointing that the City and DOJ have been unable to resolve their differences on this issue. At the last status conference, the League joined others in supporting full funding and implementation of Portland Street Response (PSR). One of the primary objectives of the DOJ's presence in Portland is to reduce police use of force against people experiencing mental health issues. PSR has proven its ability to make a difference and should be fully supported.

In conclusion, the League has serious concerns about the future of police accountability in Portland and recommends that Settlement Agreement provisions applying to our current system remain in place until the differences between the Police Accountability Commission and City's proposals have been resolved. It is premature to make changes to the Officer Accountability section now.

**Mary Austad**

| | |
|---|---|
| **From:** | Sandy Chung <SChung@aclu-or.org> |
| **Sent:** | Wednesday, November 29, 2023 12:00 PM |
| **To:** | Mary Austad |
| **Cc:** | Sandy Chung |
| **Subject:** | RE: Fairness Hearing - Independent Monitor, United States of America v. City of Portland, Case No. 3:12-cv-02265-SI |
| **Attachments:** | ACLU of Oregon - comments regarding Fairness Hearing - Independent Monitor, United States of America v. City of Portland.pdf |

**CAUTION - EXTERNAL:**

Hello Mary,

Please find attached to this email the ACLU of Oregon's comments related to the Fairness Hearing - Independent Monitor scheduled for November 30, 2023, in *United States of America v. City of Portland*, Case No. 3:12-cv-02265-SI.

Thank you,
Sandy Chung

**Sandy Chung**
Pronouns: she, her

**Executive Director**
American Civil Liberties Union of Oregon
P.O. Box 40585 Portland, OR 97240
(971) 358-2017 | schung@aclu-or.org
aclu-or.org


Oregon

*The ACLU of Oregon is excited and honored to be a part of Willamette Week's* ***Give!Guide*** *again this year! When you support our work in creating a more just, equitable and caring Oregon through the* ***Give!Guide****, you can unlock fun incentives and prizes while supporting important work that supports the wellbeing of Oregonians and our communities. Make a gift today!*

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



**AMERICAN CIVIL LIBERTIES UNION**
Oregon

*Sent via email (mary_austad@ord.uscourts.gov)*

November 29, 2023

The Honorable Michael Simon
U.S. District Court for the District of Oregon
Mark O. Hatfield United States Courthouse
1000 Southwest Third Avenue
Portland, Oregon 97204-2944

<u>RE: Fairness Hearing - Independent Monitor, *United States of America v. City of Portland*, Case No. 3:12-cv-02265-SI</u>

Dear Judge Simon,

The American Civil Liberties Union of Oregon (ACLU of Oregon) is a nonpartisan, nonprofit organization dedicated to defending and enhancing civil liberties and civil rights, with more than 27,000 members statewide.

An important area of our work is police/government accountability. We appreciate this opportunity to provide our comments to the Court about the Fairness Hearing scheduled for November 30, 2023, in the case *United States of America v. City of Portland*, Case No. 3:12-cv-02265-SI.

- **We have concerns that approving significant changes to the settlement agreement may be premature until there is more certainty about the City of Portland's implementation of Measure 26-217.**

The extent and effectiveness of police/government accountability in the City of Portland will be significantly affected by how the City implements Measure 26-217, which was passed in 2020 by more than 81% of Portland voters.

On November 15, 2023, we attended a Portland City Council hearing about the implementation of Measure 26-217. A main point of contention at that hearing were multiple significant deviations that the City Attorney's Office proposed making to the implementation recommendations for Measure 26-217 made by the Police Accountability Commission (PAC), the

group tasked with the responsibility of making implementation recommendations by Portland City Council.

Like many of the members of the Police Accountability Commission, community members, and community organizations who spoke at that hearing, the ACLU of Oregon had significant concerns about the City Attorney's proposed changes and whether such changes would dilute the effectiveness of Measure 26-217's implementation. These concerns included:

- That the City Attorney's changes to PAC's recommendations may create dangerous conflicts of interest on the nominating committee for the Community Police Oversight Board.

- That the City Attorney's changes to PAC's recommendations may exclude people with relevant lived and work experience from serving on the Community Police Oversight Board.

- That the City's Attorneys changes to PAC's recommendations may undermine the transparency of the Community Police Oversight Board.

Currently, we are in the middle of a 30-day comment period related to the City Attorney's proposed changes PAC's recommendations. The end of this process will result in the City engaging in action to submit another set of proposed Settlement Agreement amendments to the Court.

Given that the City is in a process that will result in more proposed Settlement Agreement amendments in the near future, we have concerns that approving significant changes to the settlement agreement now may be premature.

- **We are deeply concerned about the City of Portland's failure to fully fund and implement Portland Street Response.**

A study by Portland State University about Portland Street Response (PSR) made the following findings about PSR during its second program year:

- Portland Street Response responded to 7,418 calls with only one call resulting in an arrest.

- There was a 3.5% reduction in total calls traditionally responded to by police.

- There was a 19% reduction in police response on non-emergency welfare checks and dispatches coded as "unwanted persons" calls.

- There was a 3% reduction in fire department activity on behavioral health calls, illegal burn calls, and non-emergency medical calls.

-   Only 187 clients (2.5% of all calls) required transport to the hospital. Most were treated on scene by PSR.

-   PSR clients rated it 4.8 on a scale of 1-5 with 5 being the best.

-   The PSR team made 894 referrals during initial contact, and the team's community health workers and peer support specialists made another 216 referrals in 1,518 follow-up visits with clients for everything from housing and financial benefits to medical treatment and pet care. The team also helped 10 people find permanent housing.

Given serious issues of unsheltered homelessness, mental illness, and drug addiction in Portland's communities and our streets, we are deeply concerned about the City of Portland's failure – whether intentional or unintentional – to fully fund and implement Portland Street Response. Based on data about the program, the ACLU of Oregon believes that the City's full funding and implementation of Portland Street Response would go a significant way to addressing civil liberties and rights violations by the City of Portland and Portland Police.

Thank you for this opportunity to provide these comments.

Sincerely,
Sandy Chung
Executive Director
ACLU of Oregon

**Mary Austad**

| | |
|---|---|
| )m: | Ken Luchini ~~████████████~~ |
| ₂nt: | Wednesday, November 29, 2023 3:35 PM |
| To: | Mary Austad |
| Subject: | Fairness Hearing Comments |

**CAUTION - EXTERNAL:**

Dear Honorable Judge Simon,

Thank you very much for supporting people in the community who have been demanding police accountability and for advocating for those most often negatively impacted by police brutality:  most notably, mentally-ill community members and Black, Indigenous and People of Color community members.

We are writing to you today to urge you to please continue your advocacy by listening to and heeding the concerns of the Portland Accountability Commission with regards to the watered-down version of the Settlement Agreement that was submitted by the City Attorney and City Council.   The changes being proposed by the City Attorney seem to substantively change the intent and spirit of the proposed Settlement Agreement drafted by the Portland Accountability Commission.   The changes seemingly-arbitrarily submitted by the City Attorney and City Council disrespect the hard and committed work of the Police Accountability Commission, which was made up of the impacted community and through which extensive community outreach was performed.

Thank you again for supporting the Portland Accountability Commission's proposals as they continue to advocate for police accountability with integrity and from a place of lived experience with a commitment to effect positive change.  The City Attorney's and City Council's proposed amendments seem to largely accommodate the unacceptable status quo and to be performative.

Sincerely,

Joanne Rees and Ken Luchini

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



To whom it may concern,

My name is Lauren Armony and I am the Systemic Change Program Director at Sisters of the Road. I am writing to share that we have deeply felt concerns over the City's proposal for the Office of Community-based Police Accountability and the Community Board for Police Accountability. As written, we disapprove of the proposal.

Sisters of the Road is a social justice organization, and we have followed the Police Accountability Commission's (PAC) work since its inception. The PAC process was more transparent, and engaged more feedback, than any other city commission we've experienced, and we are alarmed at the elimination of most of the progressive, state of the art suggestions proposed by PAC in September 2023 in the City Attorney's proposal.

Of the many concerns we have, we have greater concern related to the elimination of the word "transparency," from the bulk of the proposal. This was a clear ask in the charter reform measure that city voters overwhelmingly approved of.

We are concerned about the reduction in the size of the board, and the scope of complaints they will review. If enacted as proposed this will maintain the status quo of police review and undermine Portlander's trust in city government and erode any trust left in the Portland Police Bureau.

We also want a clear answer as to why the complaint navigator would only be available to a complainant after the initial investigation. This was a clear ask from participants at PAC listening sessions, and we have yet to hear a reason why this was amended.

We are also very disturbed over the amendment that members of the board are prohibited from having "anti-police bias." Our primary concern is that candidates that are pro-police accountability may be conflated with having anti-police sentiments. Not only is this term poorly defined, but we hold deep concerns that this will be weaponized disproportionately towards candidates with lived experience.

We are all here to ensure that Portland Police will safely serve and protect residents in Portland. Trust is built with accountability.

Please take this to heart as you make your final decision, please request the city to amend their proposal to be in line with PAC suggestions.

Sincerely,

Lauren Armony

**Mary Austad**

**From:** �█�█�█�█�█▆▆▆▆▆
**Sent:** Wednesday, November 29, 2023 11:26 AM
**To:** jared.hager2@usdoj.gov; doj-comments@portlandoregon.gov; Mary Austad
**Subject:** Measure 26-217

CAUTION - EXTERNAL:

Hey there,

I'm writing because I think it's important we chat about Measure 26-217 and the new Police Accountability Commission. Honestly, I feel it's not quite hitting the mark.

First off, the balance seems off between public safety and fairness to our officers. I mean, can we really expect anyone to be on board with policies that feel biased, impractical, and pricey? A lot of folks don't fully grasp the extent of what's being proposed here, especially in terms of the power shift the PAC is aiming for.

We've all seen how small groups can push their agenda, but it's time we consider what's best for everyone in our community. Most of us in Portland, regardless of our background, agree that more effective policing is the way forward. Measure 26-217, as it stands, doesn't really represent our collective voice and feels kind of antagonistic.

We need a review system that's fair and doesn't demoralize our officers or make them fearful of doing their job. They've already made great strides in areas like mental health, which was a big part of the DOJ settlement. But this Measure 26-217? It's overstepping, big time.

The proposed PAC's powers are, frankly, a bit scary. No police or their family members allowed on board, yet they get to handle serious disciplinary actions, have a hefty budget, and operate without oversight. Plus, their scope is huge — investigating a wide range of incidents and even influencing police policies without PPB input.

I've got three big issues with this:

It feels discriminatory and unconstitutional. The board setup is exclusive and not really inclusive. Banning people with law enforcement connections while specifically requiring those with certain lived experiences seems unfair. What about the union's role in this?

It could hurt police recruitment. Let's be real, who would want their career in the hands of an inexperienced volunteer board? We're already struggling with police numbers, and this could make things worse, impacting our city's safety and economy.

The cost and economic impact are concerning. Spending 5% of the police budget on this? Plus, we're still adjusting to the new city government system and dealing with Measure 110's fallout. We can't afford another expensive experiment.

I've also noticed some worrying trends at the PAC meetings. The vibe often seems anti-police, and there's a lack of openness to differing viewpoints. This isn't what most Portlanders want.

So, let's think about prioritizing what's truly best for our officers and community and the safety of our taxpaying residents. It's clear that Measure 26-217 needs a rethink.

1

Thanks for hearing me out.

Scott Hendison

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

From: Portland Copwatch
   a project of Peace and Justice Works
PO Box 42456
Portland, OR 97242

To: Hon. Judge Michael Simon

Written testimony for the Fairness Hearing on Court Monitor in US v. City of Portland

hearing date November 30, 2023, testimony submitted November 29, 2023

Judge Simon:

We are testifying today about the Amendments to the Settlement Agreement related to the Court Monitor, which include deleting some 40 paragraphs from the Agreement. Since some of those paragraphs are about the new oversight system, we feel that the Court needs to hear concerns now about the City's proposals that are impacted by the amendments before you today. Overall, the City and the DOJ's desire to close out this case is admirable from a practical standpoint, but not fair, adequate or reasonable in the way these decisions will impact the community. While some paragraphs that are only about establishing certain Police Bureau units might make sense to dismiss at this point, we would suggest leaving the others in place for the Monitor to independently evaluate before taking them out of the Agreement. Our position on this has become more clear as we analyzed the overlap between the two sets of amendments and some related developments.

It is also important to note that while Mr. Handelman was able to sit in on the closed mediation sessions as a member of the AMA Coalition for Justice and Police Reform Steering Committee, he could not discuss the plans with members of Portland Copwatch until the City released the draft Amendments just over five days before the Council hearing where they affirmed the changes about the Monitor on November 8.

Similarly, nobody in the community saw the City's proposed changes to the Police Accountability Commission's design for the new oversight system or the connected Settlement Agreement amendments until about a week before that hearing at City Council on November 15. Despite overwhelming testimony encouraging Council to keep the PAC's work intact, they voted to affirm not only a very watered down version of the oversight system, but a version that was created without consulting the volunteers who, over 20 months, were immersed in researching community police oversight.

Portland Copwatch generally expressed support in the past for the idea of a monitor with the caveat that we want the person to be local to ease the learning curve and increase the likelihood of true community engagement. While the City and DOJ have yet to write up a request for proposal for this job, we hope those criteria will be weighted in favor of local candidates. We've noted how the process of hiring the COCL in 2014 included community input which favored two of the three candidates, who were both local. However, the City ignored the community's input and chose someone from Chicago instead.

With regard to those sections which are being moved to "self-monitoring," while we recognize the reality that one day the US Department of Justice will no longer be able to look over the City's shoulder to be sure the agreed-upon reforms are continuing, we have little faith that Portland can monitor itself.

Example 1: At a November 1 Council hearing to grant a $300,000 settlement to a person who video shows was shoved down by Portland Police officers multiple times, resulting in two fractures to the person's arm, the attorney hired by the City to defend its officer's behavior described the incident as an "encounter" where the person "fell" and was injured. A City that talks about brutality in such an inauthentic way is not capable of self-monitoring.

Example 2: In the proposal for Crowd Control training that is related to Paragraph 189, the 2023 Crowd Management/Incident Management Team Leaders and Lead Instructors will include both Craig Dobson, the only Commander who knew about the "Dirty Hippy" slide included in the infamous 2018 training slide deck, and Charles Elam, one of the officers identified by Sgt. Jeffrey McDaniel as likely having inserted the offensive slide. Elam was also identified as an officer who slammed journalist Jacob Johnson onto a car hood and used a chemical spray on him at close range, leading to a $13,750 settlement.

Example 3: When investigating that slide deck, the City only focused on the "Dirty Hippy" slide but not on the slides contrasting white "peaceful" protestors with "violent" protestors of color.

The City doesn't understand how violence and racial bias impact policing and community trust. Unless the institution truly changes when the new Charter expanding the size of and changing the role of City Council kicks in in January 2025, there should be no self-monitoring. The Court Monitor should be the authority that makes the final decision about when paragraphs can be dismissed.

Other details of these amendments: the City and DOJ apparently are in disagreement about dispatch rules for the Portland Street Response program. The City has pledged its support for PSR, which is meant to be an alternative to police engaging with people in mental health crisis but not engaged in criminal activity. This is 100% what the Settlement Agreement is about, and that the City has any question about it being a necessary piece to complete "substantial compliance" shows again its disregard for true accountability.

We are glad that among the paragraphs the City and DOJ agreed to keep under review are about the operation of the Employee Information System. The most recent Compliance Officer's report shows that, during the one year studied, 18 officers used force between 9 and 18 times each, which was far more than their peers, and they were not universally counseled. There is work to be done.

Regarding the oversight system, while 14 of the sections on officer accountability will remain active, six that are being dismissed could prove detrimental to making the new oversight system function properly. We will now examine what those paragraphs do and why their dismissal is unfair to the community.

Paragraph 134 set the size of the community body, currently the Citizen Review Committee, and requires a diverse membership. The PAC's proposal envisioned the new Board having 33 members to handle the caseload as volunteers and required a similarly diverse membership, using the language from the Oversight Charter Chapter and adding, for instance, that people who have been houseless will add important perspectives. The City cut the size down to 21 people and removed the reference to houselessness. They also inserted three people selected by the Police Chief and the two "unions" to be on the nominating committee. So cutting this paragraph opens the door to an imbalanced, non-representative and undersized Board.

Paragraph 135 describes how the CRC will decide the findings at appeals if they are supported by the evidence. By removing this paragraph the City can justify their removal of appeals from the PAC plan, an option that has been part of Portland's oversight system for 40 years.

Paragraph 130 requires a policy against retaliation for people who file complaints. Notably, the City removed retaliation from the list of complaint types the new Board can investigate. This could pave the road for removal of that policy, once it's not enshrined in the Agreement.

Paragraphs 138, 139 and 140 direct the Independent Police Review to make a complainant's complaint progress available online, release non-confidential information to them, and share information including the outcome of the complaint. While these paragraphs have been found in compliance by the DOJ and COCL, removing them means the new system does not have to meet these criteria. All the more disturbing because the City removed most of the requirements for communication with the complainant from PAC's proposal.

There are many more problems with what the City has done to the PAC's plan, most of which we will save for the future hearing on those amendments. But your honor should know that the Amendments were neither read into the record nor discussed at the November 15 Council hearing. There are also many ways in which the City is not following the spirit or letter of the Charter nor of paragraph 195.

We should also add that the Compliance Officer put out a biased "Technical Assistance" document about the PAC's plan which mischaracterizes or ignores the actual proposal. For instance, the COCL claims the PAC only calls for police officers to be involved in high-level case hearings, where the proposed code actually asks for a ranking member of PPB's Training Division to be at _all_ hearings to answer questions about police policy, training, and procedure, as they are for the current Police Review Board.

The COCL recognizes that the lack of police officers on the new Oversight Board is a requirement of the City Charter, however, they claim having no officers creates an inability to represent the community. The COCL has signed off on the diversity of the Citizen Review Committee and the Portland Committee on Community Engaged Policing for 8 years and never suggested those groups need to have law enforcement on them to be representative.

For the self-monitoring paragraphs, it's important that paragraph 150 isn't being "terminated" because, as we have told the court before, PPB's annual report presentations continue to be poorly promoted leading to low attendance. They are over-moderated to where certain questions are rephrased or ignored, and light on areas that are required for presentation such as stops data. They also do not focus at all on outcomes of misconduct investigations and trivialize deadly force incidents.

Similarly, paragraph 148 on stop data collection has been called out by the COCL in its last several reports because the disparate numbers of Black people stopped by police isn't changing, meaning the data aren't being used to really figure out how to fix this glaring problem.

There are other paragraphs being cut which cause us similar concerns, such as ensuring all officers get 40 hours of Crisis Intervention Training. This training was suggested for 14 years until it was implemented after James Chasse was killed by the PPB.

Portland Copwatch's concerns are based on over 30 years of experience seeing the limited forward-thinking policies that get enacted by the PPB being eroded, in part because there is so much turnover in the Bureau, at City Council and in the City Attorney's office, while only a dedicated few stay active to bring a collective memory forward.

Thank you.
Dan Handelman and Marc Poris
and other members of
Portland Copwatch

**Mary Austad**

| | |
|---|---|
| From: | Mary Austad |
| Sent: | Sunday, November 12, 2023 7:14 PM |
| To: | Michael Simon |
| Cc: | Nicholle Winters |
| Subject: | Fwd: Analysis: Compliance Officer Shrugs at Violent Cops in DOJ Assessment |

Michael:

Please see below. Mary

Get Outlook for iOS

**From:** Portland Copwatch <copwatch@portlandcopwatch.org>
**Sent:** Sunday, November 12, 2023 2:41:51 PM
**To:** COCL Tom Christoff <portlandcocl@cna.org>; Jonas Geissler <Jonas.Geissler@usdoj.gov>; Jared Hager <Jared.Hager@usdoj.gov>
**Cc:** Mary Austad <Mary_Austad@ord.uscourts.gov>; Mayor Ted Wheeler <mayorwheeler@portlandoregon.gov>; Commissioner Dan Ryan <commissionerryanoffice@portlandoregon.gov>; Commissioner Carmen Rubio <comm.rubio@portlandoregon.gov>; Commissioner Mingus Mapps <mappsoffice@portlandoregon.gov>; Rene Gonzalez <gonzalezoffice@portlandoregon.gov>; PCCEPinfo@portlandoregon.gov <PCCEPinfo@portlandoregon.gov>; News Media <newsmedia@portlandcopwatch.org>
**Subject:** Analysis: Compliance Officer Shrugs at Violent Cops in DOJ Assessment

CAUTION - EXTERNAL:

To: Compliance Officer/Community Liaison
     US Department of Justice
cc: Hon. Judge Michael Simon
     City of Portland
     Portland Committee on Community Engaged Policing
     AMA Coalition for Justice and Police Reform and
       other community organizations
     News media

COMPLIANCE OFFICER SHRUGS AT VIOLENT COPS, FINDS CITY CLOSER TO
FINISHING DOJ AGREEMENT
an analysis by Portland Copwatch, November 12, 2023

In mid-October, the Compliance Officer/Community Liaison (COCL)
published a draft analysis about the City's progress in Q2 2023 toward
implementation of the 2012 Settlement Agreement between the US
Department of Justice (DOJ) and the City of Portland.*-1 That Agreement
calls for the Portland Police to use less force against people,
particularly those in mental health crisis. Two new paragraphs,
regarding the full investigation into excessive force allegations and
the hiring of a civilian training "dean," were moved into "Substantial
Compliance," leaving just 21 paragraphs unfulfilled by the COCL's

1

count.*-2 As is often the case, some specific details provided by the
Report are alarming... that is, if you're a concerned community member
and not a bureaucrat. Both the new COCL Dr. Tom Christoff and Jonas
Geissler of the DOJ shrugged off concerns about a case discussed in the
Report in which three officers fired Tasers at a suspect simultaneously,
which was a result of their not following training. Apparently, their
actions weren't considered violations because they did not intend to use
multiple weapons at the same time. Thus, with the same kind of a shrug
these oversight bodies express when the community is outraged by a
deadly shooting, the world moves on. For all the changes the DOJ has
brought, the underlying tension between people who think police should
not use violence and those who only want to be sure the violence is
"constitutional" remains.

That said, the COCL continues to probe ongoing problems such as
inadequate hearings by the Bureau's Police Review Board (PRB, paragraph
131), not having a consistent way to identify and counsel officers who
use substantially more force than others (116-117), and, to some extent,
the ongoing disparity in how many Black drivers are pulled over by the
PPB (148).

Developments in Q3 and Q4 2023 are mostly not included in the Report,
but Portland Copwatch (PCW) thinks it's significant that the Behavioral
Health Unit Advisory Committee (BHUAC), which received a presentation
about deadly force incidents in Q1/Q2, stated on the record in October
2023 that they cannot make recommendations about policies related to
those incidents. The problem is, that claim was refuted by DOJ when it
was last made in October 2021-- which is what led to the presentations
in the first place.

This is only one example of how the City's "Substantial Compliance" with
certain elements of the Agreement can't be trusted to be lasting, and a
reason that PCW is deeply concerned about the upcoming approval of
amendments to dismiss over three dozen paragraphs while at the same time
replacing the COCL with an Independent Monitor.

Also in Q2, the Portland Police alongside a Clackamas County deputy shot
a suspect to death, meaning the COCL did not have direct access to
evidence whether required elements of the investigation were undertaken.
Specifically, they had to get verbal assurance from the PPB that
Communications Restrictions were put on the officers (125). The analysis
of whether walk-throughs were requested from the involved officers (127)
only repeats that the Clackamas Sheriff's Office is investigating,
trailing off before making any kind of cogent point [p. 96]. No mention
is made that the Clackamas officer was named 48 hours after the
incident, while the PPB continues its unreasonable policy of withholding
names for 15 days, a time period that according to PPB policy is
supposed to be 24 hours. As PCW noted in our prior analysis, the Chief
did not issue his executive order extending this timeline until the day
after the April 24 shooting (in Q2). Shrug.

Another major failing of the COCL report is that the alarming use of

vehicle "intervention" as observed by how many times police use lower levels of force. If one looks at the corrected numbers for the table on p. 29*-3, it is troubling that officers used the "Box-in" tactic 114 times in a one year period and the "Pursuit Intervention Technique" (") 87 times. That's 201 times hitting people's moving cars (not counting the eight times cops used "ramming"), or more than once every two days. The figure for PIT was just 68 times in calendar year 2022, and the COCL did not analyze this increase. This is a particularly important question after (admittedly, in Q3) two women had their car struck in a PIT maneuver when the PPB mistook their car for a suspect's car.*-4

The new COCL team has slightly updated the format of the Report with some spiffy splashes of color and cut the overall length down from over 200 pages to just over 130. While the Reports could still use more clarity in places, they continue to provide important information that isn't otherwise available to the community.

As above, paragraph numbers in the body of our analysis will generally appear in (parentheses) with Report page numbers in [brackets].

COCL ON COPS AND FORCE: THE GOOD, THE BAD AND THE "MEH, WHATEVER"

Good: The COCL's analysis of the officers who used more force than others comes complete with a helpful table showing how 18 officers used force between 9 and 18 times apiece, with nine of the officers not getting any kind of counseling from supervisors [pp 87-88]. While the COCL continues to push the Force Inspector to explain why some officers are flagged as "outliers" and others are not, it seems they're calling for there to be more consistency in addressing these cops who use so much violence.

A quick rundown: One officer used force 18 times and one 17 times, each was counseled three times-- all other counseling only happened once. Two used force 15 times but only one was counseled. Two had 14 uses and were counseled. Two used force 12 times and two 11 times, none of these four officers were counseled. The eight remaining officers each used force 9 times and only four were counseled. One officer who had five "force alerts" issued did not get counseling.

The lack of follow up is one reason that the Employee Information System operational paragraphs (116-117) are still not in compliance (and are not being considered for dismissal).

The COCL notes that the force data show that 27% of those subjected to force are Black, and that 33% of the women subjected to force are Black (p. 76) [p. 27]. It's noted that the Training Advisory Council is looking into these statistics.

d: As noted above, the COCL did not look at the high uses of deliberate vehicle crashes. They also do not comment on the fact that police reported a high number of people in mental health crisis as being

armed, counting "spit and bodily fluids" as one type of weapon (76) [p. 31] The category of "Needle,, spit or other bodily fluid" accounted for 27.8% of the "weapons" in the last year but only 18.5% over the course of five years, indicating that officers are claiming they are facing these "weapons" more frequently. Trouble is, everyone carries spit and bodily fluids on them so by that measure, everyone the police encounter can be considered armed.

PCW also finds it disturbing that the COCL previously identified cases that were required to be investigated under paragraph 129 due to excessive force allegations. Even though the PPB and IPR did not open investigations, the rating for this paragraph was moved up from "Partial" to "Substantial" compliance because no _new_ force allegations were swept under the rug [p. 98].

Apparently all but one case the COCL reviewed led to investigations with findings. In that case, the supervisor claimed it was a "customer service" issue and closed the complaint as "not substantiated." The COCL doesn't say if they thought that was wrong. They also note, in a footnote rather than in the body text, that an After Action Report found misconduct but that incident didn't make it into the proper database (169) [p. 108].

Officers used strikes and kicks 30 times over the course of five years. Ten of those were in the last year, but the COCL does not make note of that fact (pp. 30-31).

Injuries are included as an item that feeds into what the PPB will have in its annual training... but only those suffered by officers is listed, not those of community members (79) [pp. 34-35]. On the other hand, the COCL does say that "the community should play a bigger role in setting police priorities because it is the recipient of police services" [p. 43].

Meh, Whatever: The "shrug" attitude of the COCL (and the other powers that be) is also reflected in other ways. Examining whether officers use certain kind of force more often than others, only Categories II (serious), III (less serious) and IV (least serious) are included (120) [p. 86], but not Category I (deadly force), which was used at least 19 times between 2021 and the end of Q2 2023.

The story about the person who had three officers fire Tasers at them [p. 17] has more nuances: one Taser didn't deploy, and the cops said their failure to alert each other (by saying "Taser, Taser, Taser") is why they other two hit the person twice at the same time. Apparently, the DOJ ok'd the Bureau's policy in the past, saying that the use of more than one Taser at a time is only against policy if it is "intentional." Well, for the person hit with two times 10,000 volts*-5 the intent doesn't matter. The fact that the officers violated training which led to an apparent (but "oopsie!" not intentional) policy violation should still have led to consequences, which aren't indicated in the report.

What the PPB got out of this case: They couldn't line up the time stamps on the Tasers because, they say, the equipment is too old (can't they reset the clocks on them?). The COCL said of the Taser that didn't work officers need to be reminded to test the weapons before they head out in the field. But then the Compliance Officer did not include that in recommendations for paragraph 68.

There is notably no follow up to the Q1 COCL Report which found that 25% of 20 random cases they reviewed were not "tactically sound." Shrug.

Finally in the "meh, whatever" category: to show how "low level" most uses of force are, the COCL notes that one of the cases they saw with level IV force was when a "resistant subject" did not put their head up for a booking photo and the officer pulled his head up twice (76) [p. 26]. Again, if you are that person you would find that problematic, and moreover, if a community member touched a police officer that way they would be charged with harassment or assault.

OVERSIGHT: WHAT IS TAKING SO LONG?

The "Independent" Police Review (IPR, the civilian intake point for complaints) reported that five of 14 cases took over 180 days in the quarter under review. But police Internal Affairs put that number at three [p. 89], because they were given permission by the DOJ to "toll" (that is, not count toward the 180 day deadline in paragraph 121) time taken off by officers that's legally permissible ("protected leave"). nobody told IPR (or, apparently, the COCL-- see our analysis of the Q1 2023 report*-6).

But that 180 day timeline has been well trampled by the IPR's investigations into supervisors during the 2020 Black Lives Matter protests, required by paragraph 192. Those were to begin by the end of June, 2022, and were not done by the end of Q2 2023-- over a year later. In fact, they were still not completed by the time the COCL held a Town Hall on the draft Report on November 8, well over 16 months later. The COCL said at that Town Hall that they can't explain the delays without breaching some kind of confidentiality; it seems ridiculous that they can't say something simple like "the supervisors are refusing to cooperate," "the evidence is being reconstructed frame by frame at Industrial Light and Magic" or "nobody cares any more, that was three years ago."

With all these overages, one would think that the COCL would find a lack of compliance with paragraph 123, which requires the IPR and IA to come up with plans to keep cases from running long. Despite that requirement and the fact that the DOJ found paragraph 123 out of compliance in their most recent report, the COCL gives a full ok to the City for having a process to identify the problems [p. 92].

PROBLEMATIC PROCESSES

Buried deep in the Report, the COCL, which wrote a whole position paper on Body Worn Cameras, was not given the draft bodycam policy as required by the Agreement paragraph 166 [p. 127]. This seems to be a pretty serious issue (and not surprising given how the City is stingy about sharing information).

The COCL observed two Police Review Board hearings and tells the reader that the DOJ wrote an executive summary of what the issues were that keep paragraph 131 from being in compliance [p. 100]. PCW asks, would it be possible to list those issues in the COCL Report so a person doesn't have to keep every document on hand to understand it? They do give examples: training reviews not being performed for "non-conventional lethal force events." They also say the PRB needs to identify "collateral misconduct," which is a disturbing term for possible misconduct not related directly to the deadly force. If these are the issues raised by DOJ, it's not clear.

The Report mentions that the Training Advisory Council voted on a recommendation about the Enhanced Crisis Intervention Team (ECIT) training, but doesn't say what it was (86) [p. 44]. They only give an embedded general link to the website (notably, prior reports have included the URLS in the text for more transparency).

BHUAC received a spreadsheet about the ECIT course, but not the full content. They were only told it was similar to the previous course. But once the police said the BHUAC would later be allowed to attend dry runs, they approved the training, sight unseen. And yet paragraph 95 on BHUAC's role in making recommendations is found in compliance [p. 55].

The BHUAC made a good suggestion that the police should record the deadly force presentation and post it to the web. PPB said they agreed ... for next year. (96) [p. 57].

Even though the entire section on Mental Health continues to be considered in "substantial compliance," the committee where Portland Police are supposed to talk to medical facilities about transporting patients has not met in three quarters (89) [pp. 47-48].

At their retreat, which is closed to the public, the Portland Committee on Community Engaged Policing discussed the inadequacy of the Mayor's response to their recommendations. In theory this was in violation of public meetings laws. (PCCEP is only voluntarily following those laws because, the City says, they only advise the Mayor not the whole City Council). They brought it up in public at their June 7 meeting (141/142) [p. 116].

CH-CH-CH-CHANGES

Though they previously pooh-poohed the idea, the COCL seems encouraged that Portland might issue another city-wide survey that will include questions about police behavior (80) [p. 37]. Of course, they still prefer "contact surveys" and say that will better get at people who

6

interact with police – e.g. crime victims [496] (p. 114). Those crime victims are not likely the ones being subjected to force, which is the focus of the Settlement Agreement.

) COCL refers to the new civilian training dean as the "Police Education Director" (p. vi), not the "Director of Police Education," which PCW noted previously spells "DOPE." It's not clear whether this is an official change.

In the appendix listing acronyms used in the report [pp. 130-131]: (a) the listings are now properly in alphabetical order, (b) the layout is easier to follow, and (c) a number of acronyms that aren't used in this particular report, and some that have become obsolete, were dropped. This includes the acronyms of the Rapid Response Team being taken out (as they self-disbanded in 2021) and Mobile Field Forces (which sort of took RRT's place in crowd control) being added.

----------

CONCLUSION

While there is essentially no break in continuity between previous Reports and this one, since Dr. Christoff was part of previous COCL Dr. Dennis Rosenbaum's team, that's not necessarily a good thing as many of the same deficiencies of previous reports persist. Similarly, the problematic behaviors of the Portland Police persist, and while some more technical aspects are raised in the new Report, issues of deep community concern like deadly force and solutions to PPB racial discrimination are still out there. PCW repeats its earlier hope that the new Independent Court Monitor will improve on both of these fronts.

---------

Footnotes

*1- Find the Report at
https://www.portlandcocl.com/reports/102023/draft-quarterly-report-quarter-updates-analysis

*2- Actually this is by Portland Copwatch's count, because the executive summary doesn't clearly spell out which paragraphs are still lacking compliance and the Report Card narrative on p. 2 doesn't give a count.

*3- PCW pointed out that the table was incorrect and the COCL sent us the corrected copy.

*4- Notably the lawyer suing on behalf of these women mentioned the PPB mistaking Immanueal Clark-Johnson for a suspect and shooting the unarmed Black man in the back in November 2022... facts that were also not revealed until after Q2 2023.

7

*5- PCW welcomes an electrical engineer to explain how much voltage this adds up to cumulatively if it's not 20,000 volts.

*6- https://www.portlandcopwatch.org/COCLanalysisPCW0823.html

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Mary Austad**

| | |
|---|---|
| **From:** | jimkahan@alumni.reed.edu |
| **Sent:** | Tuesday, November 28, 2023 3:04 PM |
| **To:** | Mary Austad |
| **Cc:** | Jim Kahan |
| **Subject:** | written testimony for Settlement Agreement hearing 30 November 2023 |

CAUTION - EXTERNAL:

Dear Ms. Austad,

Please convey to Judge Simon my testimony below regarding matters that may arise during the hearing. I am a Portland resident, retired policy analyst, and have been a member of many volunteer efforts concerning police matters, most recently as a member (and briefly interim chair) of the PPB Training Advisory Council and (relatedly) a member of the PPB Coalition of Advisory Boards.

Although it is not a perfect document, I support the agreement between the DoJ and the City regarding the change from a Compliance Officer to a Court Monitor. I would urge Judge Simon to specify that the independent monitor should be somebody with local expertise and a reputation for independence. (No, I am not self-nominating.)

Regarding the Police Accountability Commission (PAC) report, I fully support the amendments made by the City Council. The PAC was chosen deliberately to have people who have a clear bias against the PPB and perhaps policing in general, and their report reflected this bias. The amendments by the City Council have moved the effort from the absurd to something that could work. My own efforts in this regard are attempting to instill a culture of Continuous Quality Improvement in the PPB (principally through community engagement in needs assessments for training and participating actively in germane training courses).

I applaud your own efforts to bring sanity and reason to what all too often has been a cacophony of confusion.

Sincerely,

James Paul Kahan, Ph.D.
2835 SE Lambert St.
Portland, OR 97202 USA
tel: 1-503-777-1346
mobile: 1-503-309-3375
<jimkahan@alumni.reed.edu>

"Science would be ruined if it were to withdraw entirely into narrowly defined specialties. The rare scholars who are wanderers-by-choice are essential to the intellectual welfare of the settled disciplines."

(Benoit Mandelbrot)

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Mary Austad**

m:                annie
t:                 Thursday, November 23, 2023 10:53 AM
**To:**            Mary Austad
**Subject:**       fairness hearing

CAUTION - EXTERNAL:

I am a Portland resident, taxpayer and voter.

Along with 82% of my community, I voted for police accountability, transparency and citizen control, not for police control or police exoneration.

Police already have economic power, political power, legal power (qualified immunity 🙄), brute power and propaganda power in the media. To keep our citizens safe, especially the marginalized citizens, we need to take away some of the police power, which is why 82% of us voted to keep police OFF the Community Board for Police Accountability. The city's amendment, which gives police nominating power, undermines the voters' will.

city's proposal will NOT help the DOJ achieve its goals in Portland. ...ie amended proposal will NOT address the pattern of excessive force and constitutional violations. Instead, because it doesn't take away any police power, it will continue to harm marginalized communities, like the homeless and the mentall ill. Police will continue to act with impunity and won't have to take responsibility for their actions.

The city's proposal further undermines public trust. It further erodes constitutional rights, like freedom of speech, freedom of assembly, freedom of association, freedom of the press...

The city's propowal denies voters a roll in their own government. It would hide the truth from citizens about police wrongdoing and malfeasance. It would further ENDANGER Portlanders because police won't rein in their bad behavior.

The recent hearing the city held for voter input was a farce. They were not listening to voters (who primarily spoke against the amendment). The council had already made up their minds to protect police power. (were they illegally lobbied by the police union? we know they gave Zenith Energy what it wanted after illegal lobbying.)

o make Portland safer for all of us. Reject the city's proposal for ...e Community Board for Police Accountability; it is very flawed in many ways. Portlanders want to put ACCOUNTABILITY back into the COmmunity Board for Police Accountability.

1

annie capestany

97202

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Mary Austad**

| | |
|---|---|
| From: | Diane Meisenhelter |
| Sent: | Wednesday, November 29, 2023 12:45 PM |
| To: | Mary Austad |
| Subject: | Please support Portland's Police Accountability Commission's recommendations |

CAUTION - EXTERNAL

To: The Department of Justice
Testimony for the Nov. 30 meeting

Voters in 2020, overwhelmingly( by 82% ) approved the need for a civilian review and oversight board to increase police accountability. After waiting to the end of their 60 day period to make amendments to the report of the Police Accountability Commission's (PAC) recommendations for City Code to establish a framework for this new Community Board for Police Accountability, the City attorney announced late this week a plan that would gut many of the most important elements of the PAC plan, despite the Commission having held over 128 meetings over several years incorporating the views of over 1500 Portland citizens. After the City Attorney's proposed changes, there was still widespread testimony asking City Council to accept the Commission's recommendations AS IS due to the act it could always undergo future review or modifications.

We ask the Department of Justice to help mediate this process to retain some of the most important provisions in the original report and not allow the City to ignore community input.

1. Putting 3 police representatives on the nominating committee violates the whole spirit of separation of the Bureau and independent civilian review which received overwhelming citizen support— a community led review board holding police accountable to their own conduct standards.
2. The prohibition of anyone with "anti-police bias" being considered for the Board could be easily abused and confused with citizens' true desire for real accountability. A similar clause has been problematic in other cities, including Boulder.
3. Similarly, narrowing the investigative team of 5-7 proposed members to only 3 Board members will not only reduce diversity but also increase workload so that the number of cases annually able to be reviewed is likely to be smaller.
4. The City Attorney has narrowed the types of complaints to be reviewed and delayed access to a complaint navigator from the beginning of the process which is critical for citizens to be fully heard and not feel alone in navigating what could feel like a stressful process.
5. The City Attorney also removed the ability to file an appeal of complaint decisions which has been key in prior oversight systems.
6. The City Attorney moved to closed instead of open hearings, while the latter is of particular import in cases of great community concern.
7. The City Attorney also undermined the independence of the Board by requiring City Council approval on member reimbursements.

There are other more minor changes as well, but we ask that the Department of Justice not accept the City's proposed changes until more of an effort has been made to mediate the differences or to accept the Police Accountability Commission's original report. Thanks for your time and consideration.

Sincerely,

**Mary Austad**

| | |
|---|---|
| **From:** | Rebecca Dempsey ~~[redacted]~~ |
| **Sent:** | Wednesday, November 29, 2023 11:22 AM |
| **To:** | Mary Austad |
| **Subject:** | Police Accountability testimony |

CAUTION - EXTERNAL:

To: The Department of Justice

Voters in 2020, overwhelmingly( by 82% ) approved the need for a civilian review and oversight board to increase police accountability.  After waiting to the end of their 60 day period to make amendments to the report of the Police Accountability Commission's (PAC) recommendations for City Code to establish a framework for this new Community Board for Police Accountability, the City attorney announced late this week a plan that would gut many of the most important elements of the PAC plan, despite the Commission having held over 128 meetings over several years incorporating the views of over 1500 Portland citizens.  After the City Attorney's proposed changes, there was still widespread testimony asking City Council to accept the Commission's recommendations AS IS due to the act it could always undergo future review or modifications.

We ask the Department of Justice to help mediate this process to retain some of the most important provisions in the original report and not allow the City to ignore community input.

1. Putting 3 police representatives on the nominating committee violates the whole spirit of separation of the Bureau and independent civilian review which received overwhelming citizen support— a community led review board holding police accountable to their own conduct standards.
2. The prohibition of anyone with "anti-police bias" being considered for the Board could be easily abused and confused with citizens' true desire for real accountability.  A similar clause has been problematic in other cities, including Boulder.
3. Similarly, narrowing the investigative team of 5-7 proposed members to only 3 Board members will not only reduce diversity but also increase workload so that the number of cases annually able to be reviewed is likely to be smaller.
4. The City Attorney has narrowed the types of complaints to be reviewed and delayed access to a complaint navigator from the beginning of the process which is critical for citizens to be fully heard and not feel alone in navigating what could feel like a stressful process.
5. The City Attorney also removed the ability to file an appeal of complaint decisions which has been key in prior oversight systems.
6. The City Attorney moved to closed instead of open hearings, while the latter is of particular import in cases of great community concern.
7. The City Attorney also undermined the independence of the Board by requiring City Council approval on member reimbursements.

   There are other more minor changes as well, but we ask that the Department of Justice not accept the City's proposed changes until more of an effort has been made to mediate the differences or to accept the Police Accountability Commission's original report.  Thanks for your time and consideration.


Rebecca Dempsey

7836 SW Terwilliger Blvd

November 28, 2023

TO: mary_austad@ord.uscourts.gov
FR: Monica Cory with 17 other NE Portland residents
CC: jared.hager2@usdoj.gov
    doj-comments@portlandoregon.gov

RE: Testimony PAC Measure 26-217

I am so sorry that I cannot submit this testimony in person on my behalf and the many others who share these sentiments and have signed off on them below. If not for a previous commitment, I would be there in the front row to vocally tell you exactly what the majority of tax paying and moderate-minded community members think about Measure 26-217.

That said, we emphatically ask you to do the right thing and REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission and SEND THIS BACK TO THE VOTERS.

BECAUSE...The system proposed by the PAC does not balance public safety concerns and with any sense of fairness to our officers.

There is no way that any rational resident would approve of the UNWORKABLE and BIASED and EXPENSIVE policies set forth by the PAC. Obviously, the general public is woefully unaware of the power grab the new PAC has outlined.  They certainly weren't aware of the DOJ progress and how they could have participated in support of our officers.

But many of us have found out how to be heard, and we are tired of being bullied by a small group of biased activists who have put their special interests in front of the common good of our community.

The pendulum swung. The majority of Portlanders—*white, BIPOC, LGBTQ and certainly small business owners*—know that we need and want more policing and we want to move forward together for the greater good.  Measure 26-217 does not represent the feelings of the majority of local residents and is adversarial to say the least.

As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize our law enforcement officers and limit their ability to act without fear of reprisal from an inexperienced and expensive volunteer board.

## MENTAL HEALTH ACCOUNTABILITY

The accountability piece of the DOJ settlement agreement was tied to mental health. Over the past four years, mental health has been brought to the forefront of our social conversations like never before.  Our PPB has gained more education and accreditation regarding behavioral health than officers in most jurisdictions, and PPB has established of the Behavioral Health Unit.  The settlement goal was tied to meeting conditions related to mental health.  Mission accomplished.

1

*Everything else* that is drafted in this PAC Measure 26-217 is outside of the obligation of the settlement review. The policies outlined in PAC Measure **26-217** are nothing short of gross overreach.

As written, the unprecedented power the PAC will wield is terrifying:

- The board cannot consist of current or former police, nor family members of police.
- The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- A budget that is no less than 5% of the police budget.
- Functions independently of any government official
- Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
- Makes recommendations on police policy and directives that city councilors – not PPB – get the final say on implementing.
- Power to subpoena documents and compel statements from PPB during investigations.
- The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
- Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

Here are three major reasons for rejecting this measure:

**IT'S DISCRIMINITORY AND UNCONSTITUTIONAL**

The proposed board make up is unconstitutional and clearly not "inclusive." It is blatantly discriminatory. How can this board **ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?"** This is clearly unfair and therefore unconstitutional. (And who/what determines who has experienced systemic racism? I have endured sexism. Obviously, good cops have been branded by calls of ACAB. Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.) Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions. Every other public service employee is represented by their union in matters of discipline. This is another example of gross discrimination.

**IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED**

If this measure is adopted it would be the end of recruiting and retaining quality officers. What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union? It's outlandish. Nearby jurisdictions would be able to recruit and retain officers and Portland's pool of police would continue to dry up.

The city's economic downturn will continue to spiral. Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities. Businesses, restaurants and retailers continue to close their doors because they can no longer operate

2

safely. Other businesses and residents are living in a non-stop state of frustration and fear. Nearby cities will thrive while Portland further implodes. And, those who can't afford to leave will be further victimized by criminals who know they outnumber and can outmaneuver our understaffed law enforcement. Our city is already aching, and our civic spirit is broken. : )

## UNNECESSARY EXPENSE AND ECONOMIC IMPACT

The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty. The city is already dealing with the additional expenses required to implement the new government outlined in the City Charter. Not surprisingly, the new city government system was grossly underbudgeted. At the same time, our community is dealing with the lingering lawlessness and financial impact of the poorly crafted Measure 110. **As a community we can't absorb more multi-million-dollar experiments in governing crafted by single focused people who apparently don't understand cause-and-effect decision making.**

As a further follow up, I am resubmitting testimony provided by citizen Amy Woods to the Portland City Council on 9/21 which merits further consideration.

*I also do not think that the majority of Portlanders want a police accountability commission that is solely comprised of people who, as far as I can tell, are anti-police activists. I have been to some of the PAC public meetings, both in-person and online. I have met almost all of the Police Accountability Commissioners at these meetings. I was alarmed at the things I was hearing from them, and I was alarmed by the way they dismissed questions from the public that seemed at all supportive of law enforcement. I went to a PAC meeting in January where the commissioners were asked if they all support the abolishment or defunding of police. One of the commissioners answered, "We probably do, but we haven't discussed it." Another commissioner answered, "we have to present this proposal to city council, and we know there are people on city council who support law enforcement, and we need to have plausible deniability so that we don't sound like Antifa trolls." At that same meeting, the commissioners were forward about their intent to have a member sit in on union contract negotiations. They kept repeating that they were "thinking big.". They certainly did that, given their proposal.*

For the greater good and fairness to our officers and the community, Measure 26-217 must be rejected.

Sincerely,

*mCory*

| | | |
|---|---|---|
| Monica Cory | Tess Cory | Mary Fuher |
| Joe Cory | Kelly Allen | Greg Fuher |
| Sue Mackley | Barry Allen | Rhonda Garner |
| Tee Mackley | Michael Monahan | Steve Bellotti |
| Robert Sopke | Margo Monahan | Suzanne Belotti |
| Sheryle Sopke | | George Donnerberg |

**East Portland Residents from Wilkes, Argay Park, and Parkrose Neighborhoods**

**Mary Austad**

| | |
|---|---|
| **From:** | Monica Cory <monica@corycompany.com> |
| **t:** | Wednesday, November 29, 2023 8:36 AM |
| | Mary Austad |
| **Cc:** | jared.hager2@usdoj.gov; doj-comments@portlandoregon.gov |
| **Subject:** | TESTIMONY for Measure 26-217 |
| **Attachments:** | DOJ Testimony.docx; DOJ Testimony 112823.pdf |

CAUTION EXTERNAL

RE:  Testimony PAC Measure 26-217

I am so sorry that I cannot submit this testimony in person on my behalf and the 17 others who share these sentiments and have signed off on them below.    I have attached a PDF of the testimony, as well as outlined it here.

If not for a previous commitment, I would be there in the front row to vocally tell you exactly what the majority of tax-paying and moderate-minded community members think about Measure 26-217.

That said, we emphatically ask you to do the right thing and REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission and SEND THIS BACK THE VOTERS.

BECAUSE…The system proposed by the PAC does not balance public safety concerns and with any sense of fairness to our officers.

There is no way that any rational resident would approve of the UNWORKABLE and BIASED and EXPENSIVE policies set forth by the PAC.  Obviously, the general public is woefully unaware of the power grab the new PAC has outlined.  They certainly weren't aware of the DOJ progress and how they could have participated in support of our officers.

But many of us have found out how to be heard, and we are tired of being bullied by a small group of biased activists who have put their special interests in front of the common good of our community.

The pendulum swung. The majority of Portlanders—*white, BIPOC, LGBTQ and certainly small business owners*—know that we need and want more policing and we want to move forward together for the greater good.  Measure 26-217 does not represent the feelings of the majority of local residents and is adversarial to say the least.

As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize our law enforcement officers and limit their ability to act without fear of reprisal from an inexperienced and expensive volunteer board.

**MENTAL HEALTH ACCOUNTABILITY**
he accountability piece of the DOJ settlement agreement was tied to mental health. Over the past four years, ental health has been brought to the forefront of our social conversations like never before.  Our PPB has gained more education and accreditation regarding behavioral health than officers in most jurisdictions, and

1

PPB has established the Behavioral Health Unit.  The settlement goal was tied to meeting conditions related to mental health.  Mission accomplished.

***Everything else*** that is drafted in this PAC Measure 26-217 is outside of the obligation of the settlement review.  The policies outlined in PAC Measure **26-217** are nothing short of gross overreach.

As written, the unprecedented power the PAC will wield is terrifying:

- The board cannot consist of current or former police, nor family members of police.
- The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- A budget that is no less than 5% of the police budget.
- Functions independently of any government official
- Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
- Makes recommendations on police policy and directives that city councilors – not PPB – get the final say on implementing.
- Power to subpoena documents and compel statements from PPB during investigations.
- The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
- Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

ere are three major reasons for rejecting this measure:

## IT'S DISCRIMINATORY AND UNCONSTITUTIONAL

The proposed board makeup is unconstitutional and clearly not "inclusive."  It is blatantly discriminatory.  How can this board **ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?"**  This is clearly unfair and therefore unconstitutional.  (And who/what determines who has experienced systemic racism?  I have endured sexism.  Obviously, good cops have been branded by calls of ACAB.  Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.)  Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions. Every other public service employee is represented by their union in matters of discipline.  This is another example of gross discrimination.

## IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDER POLICED

If this measure is adopted it would be the end of recruiting and retaining quality officers.   What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union?  It's outlandish.  Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up.

The city's economic downturn will continue to spiral.  Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities.  Businesses, restaurants and retailers continue to close their doors because they can no longer operate safely.  Other businesses and residents are living in a non-stop state of frustration and fear. Nearby cities will thrive while Portland further implodes.  And, those who can't afford to leave will be further victimized by criminals who know they outnumber and can outmaneuver our understaffed law enforcement.  Our city is already aching, and our civic spirit is broken.

## UNNECESSARY EXPENSE AND ECONOMIC IMPACT
The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty.  The city is already dealing with the additional expenses required to implement the new government outlined by the City

Charter. Not sur[garbled overlapping text]ne time, our community is dealing with the lingering lawlessness and financial impact of the poorly crafted Measure 110. **As a community we can't absorb more multi-million-dollar experiments in governing crafted by single-focused people who apparently don't understand cause-and-effect decision making.**

a further follow-up, I am resubmitting testimony provided by citizen Amy Woods to the Portland City Council on 9/21 which merits further consideration.

*I also do not think that the majority of Portlanders want a police accountability commission that is solely comprised of people who, as far as I can tell, are anti-police activists. I have been to some of the PAC public meetings, both in-person and online. I have met almost all of the Police Accountability Commissioners at these meetings. I was alarmed at the things I was hearing from them, and I was alarmed by the way they dismissed questions from the public that seemed at all supportive of law enforcement. I went to a PAC meeting in January where the commissioners were asked if they all support the abolishment or defunding of police. One of the commissioners answered, "We probably do, but we haven't discussed it." Another commissioner answered, "we have to present this proposal to city council, and we know there are people on city council who support law enforcement, and we need to have plausible deniability so that we don't sound like Antifa trolls." At that same meeting, the commissioners were forward about their intent to have a member sit in on union contract negotiations. They kept repeating that they were "thinking big.". They certainly did that, given their proposal.*

For the greater good and fairness to our officers and the community, Measure 26-217 must be rejected.

Sincerely,


onica Cory
e Cory
Sue Mackley
Tee Mackley
Robert Sopke
Sheryle Sopke
Tess Cory
Kelly Allen
Barry Allen
Mike Monahan
Margo Monahan
Mary Carleton
Mary Fuher
Greg Fuher
Rhonda Garner
Steve Bellotti
Suzanne Belotti
George Donnerberg


**East Portland Residents from Wilkes, Argay Park, Parkrose Neighborhoods**

Nov, 29, 2023

TO: mary_austad@ord.uscourts.gov
FROM: Michael Roydon, Brenda Scrivens, Cheryl Lindblad

We emphatically ask you to do the right thing and REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission and SEND THIS BACK TO THE VOTERS.

BECAUSE...The system proposed by the PAC does not balance public safety concerns and with any sense of fairness to our officers.

There is no way that any rational resident would approve of the UNWORKABLE and BIASED and EXPENSIVE policies set forth by the PAC. Obviously, the general public is woefully unaware of the power grab the new PAC has outlined. They certainly weren't aware of the DOJ progress and how they could have participated in support of our officers.

But many of us have found out how to be heard, and we are tired of being bullied by a small group of biased activists who have put their special interests in front of the common good of our community.

The pendulum swung. The majority of Portlanders—*white, BIPOC, LGBTQ and certainly small business owners*—know that we need and want more policing and we want to move forward together for the greater good. Measure 26-217 does not represent the feelings of the majority of local residents and is adversarial to say the least.

As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize our law enforcement officers and limit their ability to act without fear of reprisal from an inexperienced and expensive volunteer board.

## MENTAL HEALTH ACCOUNTABILITY

The accountability piece of the DOJ settlement agreement was tied to mental health. Over the past four years, mental health has been brought to the forefront of our social conversations like never before. Our PPB has gained more education and accreditation regarding behavioral health than officers in most jurisdictions, and PPB has established of the Behavioral Health Unit. The settlement goal was tied to meeting conditions related to mental health. Mission accomplished.

***Everything else*** that is drafted in this PAC Measure 26-217 is outside of the obligation of the settlement review. The policies outlined in PAC Measure **26-217** are nothing short of gross overreach.

As written, the unprecedented power the PAC will wield is terrifying:

- The board cannot consist of current or former police, nor family members of police.
- The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- A budget that is no less than 5% of the police budget.
- Functions independently of any government official
- Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
- Makes recommendations on police policy and directives that city councilors -- not PPB -- get the final say on implementing.
- Power to subpoena documents and compel statements from PPB during investigations.
- The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."

- Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

ere are three major reasons for rejecting this measure:

## IT'S DISCRIMINITORY AND UNCONSTITUTIONAL

The proposed board make up is unconstitutional and clearly not "inclusive." It is blatantly discriminatory. How can this board **ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?"** This is clearly unfair and therefore unconstitutional. (And who/what determines who has experienced systemic racism? I have endured sexism. Obviously, good cops have been branded by calls of ACAB. Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.) Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions. Every other public service employee is represented by their union in matters of discipline. This is another example of gross discrimination.

## IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED

If this measure is adopted it would be the end of recruiting and retaining quality officers. What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union? It's outlandish. Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up.

The city's economic downturn will continue to spiral. Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities. Businesses, restaurants and retailers continue to close their doors because they can no longer operate safely. Other businesses and residents are living in a non-stop state of frustration and fear. Nearby cities will thrive while Portland further implodes. And, those who can't afford to leave will be further victimized by criminals who know they outnumber and can outmaneuver our understaffed law enforcement. Our city is already aching, and our civic spirit is broken.

## UNNECESSARY EXPENSE AND ECONOMIC IMPACT
The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty. The city is already dealing with the additional expenses required to implement the new government outlined by the City Charter. Not surprisingly, the new city government system was grossly underbudgeted. At the same time, our community is dealing with the lingering lawlessness and financial impact of the poorly crafted Measure 110. **As a community we can't absorb more multi-million-dollar experiments in governing crafted by single focused people who apparently don't understand cause-and-effect decision making.**

As a further follow up, I am resubmitting testimony provided by citizen Amy Woods to the Portland City Council on 9/21 which merits further consideration.

*I also do not think that the majority of Portlanders want a police accountability commission that is solely comprised of people who, as far as I can tell, are anti-police activists. I have been to some of the PAC public meetings, both in-person and online. I have met almost all of the Police Accountability Commissioners at these meetings. I was alarmed at the things I was hearing from them, and I was alarmed by the way they dismissed questions from the public that seemed at all supportive of law enforcement. I went to a PAC meeting in January where the commissioners were asked if they all support the abolishment or defunding of police. One of the commissioners answered, "We probably do, but we haven't discussed it." Another commissioner answered, "we have to present this proposal to city council, and we know there are people on city council who support law enforcement, and we need to have plausible deniability so that we don't sound like Antifa trolls." At that same meeting, the commissioners were forward about their intent to have a member sit in on union contract negotiations. They kept repeating that they were "thinking big.". They certainly did that, given their proposal.*

For the greater good and fairness to our officers and the community, Measure 26-217 must be rejected.

Sincerely,

Michael Roydon,  Brenda Scrivens and Cheryl Lindblad

We are registered voters and Argay neighborhood residents

November 29, 2023

TO: mary_austad@ord.uscourts.gov
FR: Janet Bain
CC: jared.hager2@usdoj.gov
    doj-comments@portlandoregon.gov

RE: Testimony PAC Measure 26-217

Please REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission and SEND THIS BACK TO THE VOTERS.

The system proposed by the PAC does not balance public safety concerns and with any sense of fairness to our officers.

There is no way that any rational resident would approve of the UNWORKABLE, BIASED and EXPENSIVE policies set forth by the PAC. Obviously, the public is woefully unaware of the power grab the new PAC has outlined.  They certainly weren't aware of the DOJ progress and how they could have participated in support of our officers.

But many of us have found out how to be heard, and we are tired of being bullied by a small group of biased activists who have put their special interests in front of the common good of our community.

The pendulum swung. The majority of Portlanders—*white, BIPOC, LGBTQ and certainly small business owners*—know that we need and want more policing and we want to move forward together for the greater good.  Measure 26-217 does not represent the feelings of the majority of local residents.

As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize our law enforcement officers and limit their ability to act without fear of reprisal from an inexperienced and expensive volunteer board.

## MENTAL HEALTH ACCOUNTABILITY

The accountability piece of the DOJ settlement agreement was tied to mental health. Over the past four years, mental health has been brought to the forefront of our social conversations like never before.  Our PPB has gained more education and accreditation regarding behavioral health than officers in most jurisdictions, and PPB has established of the Behavioral Health Unit.  The settlement goal was tied to meeting conditions related to mental health.  Mission accomplished.

*Everything else* that is drafted in this PAC Measure 26-217 is outside of the obligation of the settlement review.  The policies outlined in PAC Measure **26-217** are nothing short of gross overreach.

1

As written, the unprecedented power the PAC will wield is terrifying:

- The board cannot consist of current or former police, nor family members of police.
- The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- A budget that is no less than 5% of the police budget.
- Functions independently of any government official
- Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
- Makes recommendations on police policy and directives that city councilors – not PPB – get the final say on implementing.
- Power to subpoena documents and compel statements from PPB during investigations.
- The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
- Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

Here are three major reasons for rejecting this measure:

## 1.  IT'S DISCRIMINITORY AND UNCONSTITUTIONAL

The proposed board make up is unconstitutional and clearly not "inclusive." It is blatantly discriminatory. How can this board **ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?"** This is clearly unfair and therefore unconstitutional. (And who/what determines who has experienced systemic racism? I have endured sexism. Obviously, good cops have been branded by calls of ACAB. Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.)  Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions. Every other public service employee is represented by their union in matters of discipline. This is another example of gross discrimination.

## 2.  IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED

If this measure is adopted it would be the end of recruiting and retaining quality officers.  What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union? It's outlandish.  Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up.

The city's economic downturn will continue to spiral.  Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities.  Businesses, restaurants and retailers continue to close their doors because they can no longer operate safely.  Other businesses and residents are living in a non-stop state of frustration and fear. Nearby cities will thrive while Portland further implodes.  And, those who can't afford to leave will be further victimized by criminals who know they outnumber and can outmaneuver our understaffed law enforcement.  Our city is already aching, and our civic spirit is broken.

2

## 3.  UNNECESSARY EXPENSE AND ECONOMIC IMPACT

The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty. The city is already dealing with the additional expenses required to implement the new government outlined by the City Charter.  Not surprisingly, the new city government system was grossly underbudgeted.  At the same time, our community is dealing with the lingering lawlessness and financial impact of the poorly crafted Measure 110. **As a community we can't absorb more multi-million-dollar experiments in governing crafted by single focused people who apparently don't understand cause-and-effect decision making.**

As a further follow up, I am resubmitting testimony provided by citizen Amy Woods to the Portland City Council on 9/21 which merits further consideration.

*I also do not think that the majority of Portlanders want a police accountability commission that is solely comprised of people who, as far as I can tell, are anti-police activists.  I have been to some of the PAC public meetings, both in-person and online.  I have met almost all of the Police Accountability Commissioners at these meetings.  I was alarmed at the things I was hearing from them, and I was alarmed by the way they dismissed questions from the public that seemed at all supportive of law enforcement.  I went to a PAC meeting in January where the commissioners were asked if they all support the abolishment or defunding of police.  One of the commissioners answered, "We probably do, but we haven't discussed it."  Another commissioner answered, "we have to present this proposal to city council, and we know there are people on city council who support law enforcement, and we need to have plausible deniability so that we don't sound like Antifa trolls."  At that same meeting, the commissioners were forward about their intent to have a member sit in on union contract negotiations.  They kept repeating that they were "thinking big.".  They certainly did that, given their proposal.*

For the greater good and fairness to our officers and the community, <u>Measure 26-217 must be rejected.</u>

Sincerely,


Janet Bain

NE Portland Resident

November 288, 2023

TO:  mary_austad@ord.uscourts.gov
FR:  Daniel Sprouse, 5th generation Oregonian, NE Portland Resident
CC:  jared.hager2@usdoj.gov
     doj-comments@portlandoregon.gov

RE:  Testimony PAC Measure 26-217

I am so sorry that I cannot submit this testimony in person on my behalf and the many others
who share these sentiments and have signed off on them below. If not for a previous
commitment, I would be there in the front row to vocally tell you exactly what the majority of tax
paying and moderate-minded community members think about Measure 26-217.

That said, we emphatically ask you to do the right thing and REJECT THE GROSS
OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability
Commission and SEND THIS BACK TO THE VOTERS.

BECAUSE…The system proposed by the PAC does not balance public safety concerns and
with any sense of fairness to our officers.

There is no way that any rational resident would approve of the UNWORKABLE and BIASED
and EXPENSIVE policies set forth by the PAC. Obviously, the general public is woefully
unaware of the power grab the new PAC has outlined.  They certainly weren't aware of the DOJ
progress and how they could have participated in support of our officers.

But many of us have found out how to be heard, and we are tired of being bullied by a small
group of biased activists who have put their special interests in front of the common good of our
community.

The pendulum swung. The majority of Portlanders—*white, BIPOC, LGBTQ and certainly small
business owners*—know that we need and want more policing and we want to move forward
together for the greater good.  Measure 26-217 does not represent the feelings of the majority
of local residents and is adversarial to say the least.

As a community we need to move forward with a fair review system, not one that will continue
to devalue and demoralize our law enforcement officers and limit their ability to act without fear
of reprisal from an inexperienced and expensive volunteer board.

## MENTAL HEALTH ACCOUNTABILITY

The accountability piece of the DOJ settlement agreement was tied to mental health. Over the
past four years, mental health has been brought to the forefront of our social conversations like
never before.  Our PPB has gained more education and accreditation regarding behavioral
health than officers in most jurisdictions, and PPB has  established of the Behavioral Health
Unit.  The settlement goal was tied to meeting conditions related to mental health.  Mission
accomplished.

1

***Everything else*** that is drafted in this PAC Measure 26-217 <u>is outside of the obligation of the settlement review.</u>  The policies outlined in PAC Measure **26-217** are nothing short of gross overreach.

As written, the unprecedented power the PAC will wield is terrifying:

- The board cannot consist of current or former police, nor family members of police.
- The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- A budget that is no less than 5% of the police budget.
- Functions independently of any government official
- Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
- Makes recommendations on police policy and directives that city councilors – not PPB – get the final say on implementing.
- Power to subpoena documents and compel statements from PPB during investigations.
- The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
- Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

ere are three major reasons for rejecting this measure:

**IT'S DISCRIMINITORY AND UNCONSTITUTIONAL**

The proposed board make up is unconstitutional and clearly not "inclusive."  It is blatantly discriminatory.  How can this board **ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?"**  This is clearly unfair and therefore unconstitutional.  (And who/what determines who has experienced systemic racism?  I have endured sexism.  Obviously, good cops have been branded by calls of ACAB.  Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.)   Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions. Every other public service employee is represented by their union in matters of discipline.  This is another example of gross discrimination.

**IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED**

If this measure is adopted it would be the end of recruiting and retaining quality officers.   What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union?  It's outlandish.  Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up.

The city's economic downturn will continue to spiral.  Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities.  Businesses, restaurants and retailers continue to close their doors because they can no longer operate

2

safely.  Other businesses and residents are living in a non-stop state of frustration and fear.
Nearby cities will thrive while Portland further implodes.  And, those who can't afford to leave
will be further victimized by criminals who know they outnumber and can outmaneuver our
understaffed law enforcement.  Our city is already aching, and our civic spirit is broken.

**UNNECESSARY EXPENSE AND ECONOMIC IMPACT**
The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty.
The city is already dealing with the additional expenses required to implement the new
government outlined by the City Charter.  Not surprisingly, the new city government system was
grossly underbudgeted.  At the same time, our community is dealing with the lingering
lawlessness and financial impact of the poorly crafted Measure 110.  **As a community we can't
absorb more multi-million-dollar experiments in governing crafted by single focused
people who apparently don't understand cause-and-effect decision making.**

As a further follow up, I am resubmitting testimony provided by citizen Amy Woods to the
Portland City Council on 9/21 which merits further consideration.

*I also do not think that the majority of Portlanders want a police accountability commission that
is solely comprised of people who, as far as I can tell, are anti-police activists.  I have been to
some of the PAC public meetings, both in-person and online.  I have met almost all of the
Police Accountability Commissioners at these meetings.  I was alarmed at the things I was
hearing from them, and I was alarmed by the way they dismissed questions from the public that
seemed at all supportive of law enforcement.  I went to a PAC meeting in January where the
commissioners were asked if they all support the abolishment or defunding of police.  One of
the commissioners answered, "We probably do, but we haven't discussed it."  Another
commissioner answered, "we have to present this proposal to city council, and we know there
are people on city council who support law enforcement, and we need to have plausible
deniability so that we don't sound like Antifa trolls."  At that same meeting, the commissioners
were forward about their intent to have a member sit in on union contract negotiations.  They
kept repeating that they were "thinking big.".  They certainly did that, given their proposal.*

For the greater good and fairness to our officers and the community, Measure 26-217
must be rejected.

Sincerely,


Daniel Sprouse
Wilshire NE Portland

**TO:** mary_austad@ord.uscourts.gov
**FR:** Theresa Griffin Kennedy
**CC:** jared.hager2@usdoj.gov
**DOJ:** doj-comments@portlandoregon.gov

**RE:** Testimony PAC Measure 26-217!

I want to tell all those at the DOJ what taxpayers, and moderate-minded community members like myself think about Measure 26-217! Namely, that we do NOT like it. It is a radical, and dangerous measure that will result in LESS public safety for ALL Portland residents.

My friends and I emphatically and respectfully *demand* that you do the right thing and REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission!

We further demand that you listen to voters and SEND this back to the VOTERS for the simple reason that the processes proposed by the PAC does NOT balance public safety concerns with any sense of fairness to Portland police officers. There is no way that any rational resident would approve of this UNWORKABLE and BIASED measure. It is also far too EXPENSIVE and will cut into the police budget that is currently needed so police can combat crime.

Obviously, the general public is woefully unaware of the power grab the PAC has outlined. They certainly weren't aware of the DOJ progress and how they could have participated in support of Portland police officers. But many of us have found out how to be heard, and we are tired of being bullied by a small group (the vocal minority) of biased activists who have put their special interests and hatred of police in front of the common good of the Portland community.

The pendulum has swung. The majority of Portlanders—white, BIPOC, LGBTQ and certainly small business owners have learned and know that we need and want more policing! We want to move forward together for the greater good.

Measure 26-217 does not represent the feelings of the majority of local residents and is adversarial to say the least, presenting Portland police as the enemy, when in fact they are not.

As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize law enforcement officers and limit their ability to act without fear of reprisal from an inexperienced and expensive volunteer board of people with NO experience or background in law enforcement and therefore lacking in a nuanced perspective. .

## MENTAL HEALTH ACCOUNTABILITY

The accountability piece of the DOJ settlement agreement was tied to mental health. Over the past four years, mental health has been brought to the forefront of our social conversations like never before. The Portland Police Bureau has gained more education and accreditation regarding behavioral health than officers in most jurisdictions, and PPB has established the *Behavioral Health Unit*. The settlement goal was tied to meeting conditions related to mental health.

Mission accomplished!

Everything else that is drafted in this PAC Measure 26-217 is outside of the obligation of the settlement review. The policies outlined in PAC Measure 26-217 are nothing short of gross and immoral overreach. As written, the unprecedented power the PAC will wield is terrifying:
- The board cannot consist of current or former police, nor family members of police.
- They gave the power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- They propose a budget that is no less than 5% of the police budget.
- Functions independently of any government official
- Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.

It would make recommendations on police policy and directives that city councilors – not PPB – and would have the final say on implementing. It would have the power to subpoena documents and compel statements from PPB during investigations.

The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."

Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union. There are three major reasons for rejecting this measure:

It is DISCRIMINATORY AND UNCONSTITUTIONAL!

The proposed board make up is unconstitutional and clearly not "inclusive" in the true definition of the word. It is also blatantly discriminatory!

How can this board ban members who have "lived experience" in law enforcement or members who would be related to an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?" This is clearly unfair, biased and therefore unconstitutional. (And who/what determines who has experienced systemic racism? Does that include ONLY black people, or are Hispanic people or Asian people or white people included in that, too?

I have endured sexism in this world, as many women have. Obviously, good cops have been branded (ACAB) which stands for All Cops Are Bastards, by radical extremists who know nothing about them.

Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in *any* review board credentials! Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions!

Every other public service employee is represented by their union in matters of discipline. This is another example of gross discrimination. This board would HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDER POLICED and need at least 400 new officers!

If this measure is adopted it would be the end of recruiting and retaining quality officers in Portland. What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with NO understanding of police science, police procedure or police training?!

The ability to micromanage investigations and retain the final word on disciplinary action without input from people with lived experience in law enforcement careers is a serious

danger. It's outlandish. Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up. The city's economic downturn will continue to spiral. Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities. Businesses, restaurants and retailers continue to close their doors because they can no longer operate due to CRIME and a DA who does NOT prosecute violent predators!Other businesses and residents are living in a non-stop state of frustration and fear of assaults, RAPE and MURDER!

Nearby cities will thrive while Portland further implodes. And, those who can't afford to leave will be further victimized by criminals who know they outnumber and can outmaneuver our understaffed law enforcement AND residents who want and need law and order. Our city is already aching, and our civic spirit is broken.

## UNNECESSARY EXPENSE AND ECONOMIC IMPACT

The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty. The city is already dealing with the additional expenses required to implement the new government outlined by the City Charter. Not surprisingly, the new city government system was grossly under budgeted. At the same time, our community is dealing with the lingering lawlessness and financial impact of the poorly crafted Measure 110.

As a community we can't absorb more multi-million-dollar experiments in governing crafted by single focused people who don't understand cause-and-effect decision making. As a further follow up, I am resubmitting testimony provided by citizen Amy Woods to the Portland City Council on 9/21 which merits further consideration. I also do not think that the majority of Portlanders want a police accountability commission that is solely composed of people who, as far as we can tell, are anti-police activists with a strong and unbalanced HATRED of police and law and order.

I have been to some of the PAC public meetings, both in-person and online. I was alarmed at the things I was hearing from them, and I was alarmed by the way they dismissed questions from the public who seemed at all supportive of law enforcement.

I know a person who went to a PAC meeting in January where the commissioners were asked if they all support the abolishment or defunding of police. One of the commissioners answered: "We probably do, but we haven't discussed it." Another

commissioner answered, "we have to present this proposal to city council, and we know there are people on city council who support law enforcement, and we need to have plausible deniability so that we don't sound like Antifa trolls."

At that same meeting, the commissioners were forward about their intent to have a member sit in on union contract negotiations. They kept repeating that they were "thinking big." They certainly did that, given their proposal. For the greater good and fairness to our officers and the community, Measure 26-217
must be rejected!

It is no longer 2020, and as the last city council meeting regarding the PAC has demonstrated, nearly all those Portland residents who voted for it, would not NOT vote for it, because in the four years since 2020, we have all seen our city devolve and cower under the heavy weight of nightly shootings, weekly murders and a city dark with RAPE and sex trafficking that goes ignored.

The PAC is inherently biased, discriminatory and will DESTROY Portland. It must be REJECTED!


**~Theresa Griffin Kennedy**

**Mary Austad**

| | |
|---|---|
| )m: | SUSAN SCARLETT███████████████ |
| .nt: | Wednesday, November 29, 2023 10:20 AM |
| **To:** | Mary Austad |
| **Cc:** | jared.hager2@usdoj.gov; doj-comments@portlandoregon.gov |
| **Subject:** | Measure 26-217 Must Be Rejected |
| **Attachments:** | DOJ Testimony.pdf |

**CAUTION - EXTERNAL:**

Please add my letter as a rejection to Measure 26-217. We are tired of being under-policed. It is not good for our community and our police. Defund the police is in the past and we need to move forward in making Portland a city that everyone wants to live, work and visit.

Sincerely,
Susan Scarlett
St John's Community

To:

mary_austad@org.uscourts.gov
jared.hager2@usdoj.gov
doj-comments@portlandoregon.gov

RE: Testimony PAC Measure 26-217
I am so sorry that I cannot submit this testimony in person on my behalf and the many others who share these sentiments and have signed off on them below. If not for a previous commitment, I would be there in the front row to vocally tell you exactly what the majority of tax paying and moderate-minded community members think about Measure 26-217.
That said, we emphatically ask you to do the right thing and REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission and SEND THIS BACK TO THE VOTERS.
BECAUSE...The system proposed by the PAC does not balance public safety concerns and with any sense of fairness to our officers.
There is no way that any rational resident would approve of the UNWORKABLE and BIASED and EXPENSIVE policies set forth by the PAC. Obviously, the general public is woefully unaware of the power grab the new PAC has outlined. They certainly weren't aware of the DOJ progress and how they could have participated in support of our officers.
But many of us have found out how to be heard, and we are tired of being bullied by a small group of biased activists who have put their special interests in front of the common good of our community.
The pendulum swung. The majority of Portlanders—*white, BIPOC, LGBTQ and certainly small business owners*—know that we need and want more policing and we want to move forward together for the greater good. Measure 26-217 does not represent the feelings of the majority of local residents and is adversarial to say the least.
As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize our law enforcement officers and limit their ability to act without fear of reprisal from an inexperienced and expensive volunteer board.
MENTAL HEALTH ACCOUNTABILITY
The accountability piece of the DOJ settlement agreement was tied to mental health. Over the past four years, mental health has been brought to the forefront of our social conversations like never before. Our PPB has gained more education and accreditation regarding behavioral health than officers in most jurisdictions, and PPB has established of the Behavioral Health Unit. The settlement goal was tied to meeting conditions related to mental health. Mission accomplished. 2

*Everything else* that is drafted in this PAC Measure 26-217 is outside of the obligation of the settlement review. The policies outlined in PAC Measure **26-217** are nothing short of gross overreach.
As written, the unprecedented power the PAC will wield is terrifying:
- • The board cannot consist of current or former police, nor family members of police.

- • The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- • A budget that is no less than 5% of the police budget.
- • Functions independently of any government official
- • Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
- • Makes recommendations on police policy and directives that city councilors – not PPB – get the final say on implementing.
- • Power to subpoena documents and compel statements from PPB during investigations.
- • The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
- • Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

Here are three major reasons for rejecting this measure:

**IT'S DISCRIMINITORY AND UNCONSTITUTIONAL**
The proposed board make up is unconstitutional and clearly not "inclusive." It is blatantly discriminatory. How can this board **ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?"** This is clearly unfair and therefore unconstitutional. (And who/what determines who has experienced systemic racism? I have endured sexism. Obviously, good cops have been branded by calls of ACAB. Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.) Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions. Every other public service employee is represented by their union in matters of discipline. This is another example of gross discrimination.

**IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED**
If this measure is adopted it would be the end of recruiting and retaining quality officers. What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union? It's outlandish. Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up.
The city's economic downturn will continue to spiral. Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities. Businesses, restaurants and retailers continue to close their doors because they can no longer operate 3

safely. Other businesses and residents are living in a non-stop state of frustration and fear. Nearby cities will thrive while Portland further implodes. And, those who can't afford to leave will be further victimized by criminals who know they outnumber and can outmaneuver our understaffed law enforcement. Our city is already aching, and our civic spirit is broken.

**UNNECESSARY EXPENSE AND ECONOMIC IMPACT**
The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty. The city is already dealing with the additional expenses required to implement the new government outlined by the City Charter. Not surprisingly, the new city government system was grossly underbudgeted. At the same time, our community is dealing with the lingering lawlessness and financial impact of the poorly crafted Measure 110. **As a community we can't absorb more multi-million-dollar experiments in governing crafted by single focused people who apparently don't understand cause-and-effect decision making.**
As a further follow up, I am resubmitting testimony provided by citizen Amy Woods to the Portland City Council on 9/21 which merits further consideration.
*I also do not think that **the majority of** Portlanders want a police accountability commission that is solely comprised of people who, as far as I can tell, **are anti-police activists**. I have been to some of the PAC public meetings, both in-person and online. I have met almost all the Police Accountability Commissioners at these meetings. I was alarmed at the things I was hearing from them, and I was alarmed by the way they dismissed questions from the public that seemed at all supportive of law enforcement. I went to a PAC meeting in January where the commissioners were asked if they all support the abolishment or defunding of police. One of the commissioners answered, "We probably do, but we haven't discussed it." Another commissioner answered, "we have to present this proposal to city council, and we know there are people on city council who support law enforcement, and we need to have plausible deniability so that we don't sound like Antifa trolls." At that same meeting, the commissioners were forward about their intent to have a member sit in on union contract negotiations. They kept repeating that they were "thinking big.". They certainly did that, given their proposal.*
**For the greater good and fairness to our officers and the community, Measure 26-217 must be rejected.**

Sincerely,

Susan Scarlett
Monica Cory
Joe Cory
Sue Mackley
Tee Mackley
Robert Sopke
Sheryle Sopke
Tess Cory
Lilly Allen
Terry Allen
Mike Monahan
Margo Monahan
Mary Carleton
Mary Fuher

November 28, 2023

TO:  mary_austad@ord.uscourts.gov
FR.  Susan Scarlett 200 other N and NE Portland residents
CC:  jared.hager2@usdoj.gov
     doj-comments@portlandoregon.gov

RE:  Testimony PAC Measure 26-217

I am so sorry that I cannot submit this testimony in person on my behalf and the many others
who share these sentiments and have signed off on them below. If not for a previous
commitment, I would be there in the front row to vocally tell you exactly what the majority of tax
paying and moderate-minded community members think about Measure 26-217.

That said, we emphatically ask you to do the right thing and REJECT THE GROSS
OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability
Commission and SEND THIS BACK TO THE VOTERS.

BECAUSE…The system proposed by the PAC does not balance public safety concerns and
with any sense of fairness to our officers.

There is no way that any rational resident would approve of the UNWORKABLE and BIASED
and EXPENSIVE policies set forth by the PAC. Obviously, the general public is woefully
unaware of the power grab the new PAC has outlined.  They certainly weren't aware of the DOJ
progress and how they could have participated in support of our officers.

But many of us have found out how to be heard, and we are tired of being bullied by a small
group of biased activists who have put their special interests in front of the common good of our
community.

The pendulum swung. The majority of Portlanders—*white, BIPOC, LGBTQ and certainly small
business owners*—know that we need and want more policing and we want to move forward
together for the greater good.  Measure 26-217 does not represent the feelings of the majority
of local residents and is adversarial to say the least.

As a community we need to move forward with a fair review system, not one that will continue
to devalue and demoralize our law enforcement officers and limit their ability to act without fear
of reprisal from an inexperienced and expensive volunteer board.

**MENTAL HEALTH ACCOUNTABILITY**

The accountability piece of the DOJ settlement agreement was tied to mental health. Over the
past four years, mental health has been brought to the forefront of our social conversations like
never before.  Our PPB has gained more education and accreditation regarding behavioral
health than officers in most jurisdictions, and PPB has established of the Behavioral Health
Unit.  The settlement goal was tied to meeting conditions related to mental health.  Mission
accomplished.

1

***Everything else*** that is drafted in this PAC Measure 26-217 <u>is outside of the obligation of the settlement review.</u>  The policies outlined in PAC Measure **26-217** are nothing short of gross overreach.

As written, the unprecedented power the PAC will wield is terrifying:

- The board cannot consist of current or former police, nor family members of police.
- The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- A budget that is no less than 5% of the police budget.
- Functions independently of any government official
- Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
- Makes recommendations on police policy and directives that city councilors – not PPB – get the final say on implementing.
- Power to subpoena documents and compel statements from PPB during investigations.
- The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
- Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

Here are three major reasons for rejecting this measure:

<u>IT'S DISCRIMINITORY AND UNCONSTITUTIONAL</u>

The proposed board make up is unconstitutional and clearly not "inclusive."  It is blatantly discriminatory.  How can this board **ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?"**  This is clearly unfair and therefore unconstitutional.  (And who/what determines who has experienced systemic racism?  I have endured sexism.  Obviously, good cops have been branded by calls of ACAB.  Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.)   Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions.  Every other public service employee is represented by their union in matters of discipline.  This is another example of gross discrimination.

<u>IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED</u>

If this measure is adopted it would be the end of recruiting and retaining quality officers.   What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union?  It's outlandish.  Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up.

The city's economic downturn will continue to spiral.  Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities.  Businesses, restaurants and retailers continue to close their doors because they can no longer operate

2

safely. Other businesses and residents are living in a non-stop state of frustration and fear. Nearby cities will thrive while Portland further implodes. And, those who can't afford to leave will be further victimized by criminals who know they outnumber and can outmaneuver our understaffed law enforcement. Our city is already aching, and our civic spirit is broken.

## UNNECESSARY EXPENSE AND ECONOMIC IMPACT

The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty. The city is already dealing with the additional expenses required to implement the new government outlined by the City Charter. Not surprisingly, the new city government system was grossly underbudgeted. At the same time, our community is dealing with the lingering lawlessness and financial impact of the poorly crafted Measure 110. **As a community we can't absorb more multi-million-dollar experiments in governing crafted by single focused people who apparently don't understand cause-and-effect decision making.**

As a further follow up, I am resubmitting testimony provided by citizen Amy Woods to the Portland City Council on 9/21 which merits further consideration.

*I also do not think that **the majority of** Portlanders want a police accountability commission that is solely comprised of people who, as far as I can tell, **are anti-police activists**. I have been to some of the PAC public meetings, both in-person and online. I have met almost all the Police Accountability Commissioners at these meetings. I was alarmed at the things I was hearing from them, and I was alarmed by the way they dismissed questions from the public that seemed at all supportive of law enforcement. I went to a PAC meeting in January where the commissioners were asked if they all support the abolishment or defunding of police. One of the commissioners answered, "We probably do, but we haven't discussed it." Another commissioner answered, "we have to present this proposal to city council, and we know there are people on city council who support law enforcement, and we need to have plausible deniability so that we don't sound like Antifa trolls." At that same meeting, the commissioners were forward about their intent to have a member sit in on union contract negotiations. They kept repeating that they were "thinking big.". They certainly did that, given their proposal.*

## For the greater good and fairness to our officers and the community, Measure 26-217 must be rejected.

Sincerely,

Susan Scarlett
Monica Cory          Tess Cory           Mary Fuher
Joe Cory             Kelly Allen         Greg Fuher
Sue Mackley          Barry Allen         Rhonda Garner
Tee Mackley          Mike Monahan        Steve Bellotti
Robert Sopke         Margo Monahan       Suzanne Belotti
Sheryle Sopke        Mary Carleton       George Donnerberg


**East Portland Residents from Wilkes, Argay Park, Parkrose, St. Johns Neighborhoods**

3

**Mary Austad**

| | |
|---|---|
| From: | mary carlton ~~████████~~ |
| Sent: | Tuesday, November 28, 2023 9:32 PM |
| To: | Mary Austad |
| Cc: | jared.hager2@usdoj.gov |
| Subject: | Re Testimony PAC measure 26-217 |

CAUTION EXTERNAL:

I am so sorry that I cannot submit this testimony in person due to a death in the family. I would be there in the front row to vocally tell you exactly what the majority of tax paying and moderate-minded community members think about Measure 26-217.

That said, we emphatically ask you to do the right thing and REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission and SEND THIS BACK TO THE VOTERS.

BECAUSE...The system proposed by the PAC does not balance public safety concerns and with any sense of fairness to our officers.

There is no way that any rational resident would approve of the UNWORKABLE and BIASED and EXPENSIVE policies set forth by the PAC. Obviously, the general public is woefully unaware of the power grab the new PAC has outlined. They certainly weren't aware of the DOJ progress and how they could have participated in support of our officers.

But many of us have found out that a small group of biased activists who have put their special interests in front of the common good of our community.

The pendulum swung. The majority of Portlanders—white, BIPOC, LGBTQ and certainly small business owners—know that we need and want more policing and we want to move forward together for the greater good. Measure 26-217 does not represent the feelings of the majority of local residents and is adversarial to say the least.

As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize our law enforcement officers and limit their ability to act without fear of reprisal from an inexperienced and expensive volunteer board.

MENTAL HEALTH ACCOUNTABILITY
The accountability piece of the DOJ settlement agreement was tied to mental health. Over the past four years, mental health has been brought to the forefront of our social conversations like never before. Our PPB has gained more education and accreditation regarding behavioral health than officers in most jurisdictions, and PPB has established of the Behavioral Health Unit. The settlement goal was tied to meeting conditions related to mental health. Mission accomplished.
Everything else that is drafted in this PAC Measure 26-217 is outside of the obligation of the settlement review. The policies outlined in PAC Measure 26-217 are nothing short of gross overreach.
As written, the unprecedented power the PAC will wield is terrifying:
• The board cannot consist of current or former police, nor family members of police.
• The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
• A budget that is no less than 5% of the police budget.
• Functions independently of any government official

1

• Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
• Makes recommendations on police policy and directives that city councilors – not PPB – get the final say on implementing.
• Power to subpoena documents and compel statements from PPB during investigations.
• The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
• Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

There are three major reasons for rejecting this measure:

IT'S DISCRIMINITORY AND UNCONSTITUTIONAL

The proposed board make up is unconstitutional and clearly not "inclusive." It is blatantly discriminatory. How can this board ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?" This is clearly unfair and therefore unconstitutional. (And who/what determines who has experienced systemic racism? I have endured sexism. Obviously, good cops have been branded by calls of ACAB. Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.) Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions. Every other public service employee is represented by their union in matters of discipline. This is another example of gross discrimination.

IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED

If this measure is adopted it would be the end of recruiting and retaining quality officers. What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union? It's outlandish. Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up.

The city's economic downturn will continue to spiral. Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities. Businesses, restaurants and retailers continue to close their doors because they can no longer operate safely. Other businesses and residents are living in a non-stop state of frustration and fear. Nearby cities will thrive while Portland further implodes. And, those who can't afford to leave will be further victimized by criminals who know they outnumber and can outmaneuver our understaffed law enforcement. Our city is already aching, and our civic spirit is broken.

UNNECESSARY EXPENSE AND ECONOMIC IMPACT
The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty. The city is already dealing with the additional expenses required to implement the new government outlined by the City Charter. Not surprisingly, the new city government system was grossly underbudgeted. At the same time, our community is dealing with the lingering lawlessness and financial impact of the poorly crafted Measure 110. As a community we can't absorb more multi-million-dollar experiments in governing crafted by single focused people who apparently don't understand cause-and-effect decision making.

I also do not think that the majority of Portlanders want a police accountability commission that is solely comprised of people who, as far as I can tell, are anti-police activists.
I was alarmed at the things I was hearing from them, and I was alarmed by the way they dismissed questions from the public that seemed at all supportive of law enforcement. I understand that the meeting in January where the

commissioners were asked if they had a plan to implement it. One of the commissioners answered, "We probably do, but we haven't discussed it."  Another commissioner answered, "we have to present this proposal to city council, and we know there are people on city council who support law enforcement, and we need to have plausible deniability so that we don't sound like Antifa trolls.".  At the same meeting, the commissioners were forward about their intent to have a member sit in on union contract negotiations.  They kept repeating that they were thinking big.".  They certainly did that, given their proposal.

For the greater good and fairness to our officers and the community, Measure 26-217 must be rejected.
Sincerely,


Mary Carlton
Portland resident and voter

17809 NE A8.
Portland Or. 97230
503-349-6919

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Mary Austad**

| | |
|---|---|
| **From:** | leslie@~~███████████~~ |
| **t:** | Tuesday, November 28, 2023 10:09 PM |
| **.⎽:** | Mary Austad; jared.hager2@usdoj.gov; doj-comments@portlandoregon.gov |
| **Subject:** | DOJ Testimony PAC Measure 26-217 |
| **Attachments:** | Testimony PAC Measure 26-217.pdf |

CAUTION - EXTERNAL:

Please, REJECT the Police Accountability Commission, Measure 26-217.

Thank you,

Leslie Peterson
Peterson Media, LLC
leslie@petersonmedia.net

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

DATE:       November 28, 2023

TO:         mary_austad@ord.uscourts.gov
FROM:       Leslie Peterson
CC:         jared.hager2@usdoj.gov
            doj-comments@portlandoregon.gov

SUBJECT:    Testimony PAC Measure 26-217


I am sorry I am unable to submit this testimony in person on my behalf tomorrow. If not for a previous commitment, I would be there to tell you what the majority of tax paying and moderate-minded community members think about Measure 26-217.

That said, we emphatically ask you to do the right thing and REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission and SEND THIS BACK TO THE VOTERS.

The system proposed by the PAC does not balance public safety concerns and with any sense of fairness to our officers.

There is no way that any rational resident would approve of the UNWORKABLE and BIASED and EXPENSIVE policies set forth by the PAC. Obviously, the general public is woefully unaware of the power grab the new PAC has outlined.  They certainly weren't aware of the DOJ progress and how they could have participated in support of our officers.

But many of us have found out how to be heard, and we are tired of being bullied by a small group of biased activists who have put their special interests in front of the common good of our community.

The pendulum swung. The majority of Portlanders—*white, BIPOC, LGBTQ and certainly small business owners*—know that we need and want more policing and we want to move forward together for the greater good.  Measure 26-217 does not represent the feelings of the majority of local residents and is adversarial to say the least.

As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize our law enforcement officers and limit their ability to act without fear of reprisal from an inexperienced and expensive volunteer board.

**MENTAL HEALTH ACCOUNTABILITY**

The accountability piece of the DOJ settlement agreement was tied to mental health. Over the past four years, mental health has been brought to the forefront of our social conversations like never before.  Our PPB has gained more education and accreditation regarding behavioral health than officers in most jurisdictions, and PPB has established of the Behavioral Health Unit.  The settlement goal was tied to meeting conditions related to mental health.  Mission accomplished.

1

*Everything else* that is drafted in this PAC Measure 26-217 is outside of the obligation of the settlement review. The policies outlined in PAC Measure **26-217** are nothing short of gross overreach.

As written, the unprecedented power the PAC will wield is terrifying:

- The board cannot consist of current or former police, nor family members of police.
- The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- A budget that is no less than 5% of the police budget.
- Functions independently of any government official
- Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
- Makes recommendations on police policy and directives that city councilors – not PPB – get the final say on implementing.
- Power to subpoena documents and compel statements from PPB during investigations.
- The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
- Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

There are three major reasons for rejecting this measure:

**IT'S DISCRIMINITORY AND UNCONSTITUTIONAL**

The proposed board make up is unconstitutional and clearly not "inclusive." It is blatantly discriminatory. How can this board **ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?"** This is clearly unfair and therefore unconstitutional. (And who/what determines who has experienced systemic racism? I have endured sexism. Obviously, good cops have been branded by calls of ACAB. Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.) Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions. Every other public service employee is represented by their union in matters of discipline. This is another example of gross discrimination.

**IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED**

If this measure is adopted it would be the end of recruiting and retaining quality officers. What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union? It's outlandish. Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up.

The city's economic downturn will continue to spiral. Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities.

2

Businesses, restaurants and retailers continue to close their doors because they can no longer operate safely.  Other businesses and residents are living in a non-stop state of frustration and fear. Nearby cities will thrive while Portland further implodes.  And, those who can't afford to leave will be further victimized by criminals who know they outnumber and can outmaneuver our understaffed law enforcement.  Our city is already aching, and our civic spirit is broken.

## UNNECESSARY EXPENSE AND ECONOMIC IMPACT

The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty. The city is already dealing with the additional expenses required to implement the new government outlined by the City Charter.  Not surprisingly, the new city government system was grossly underbudgeted.  At the same time, our community is dealing with the lingering lawlessness and financial impact of the poorly crafted Measure 110. **As a community we can't absorb more multi-million-dollar experiments in governing crafted by single focused people who apparently don't understand cause-and-effect decision making.**

As a further follow up, I am resubmitting testimony provided by citizen Amy Woods to the Portland City Council on 9/21 which merits further consideration.

*I also do not think that the majority of Portlanders want a police accountability commission that is solely comprised of people who, as far as I can tell, are anti-police activists.  I have been to some of the PAC public meetings, both in-person and online.  I have met almost all of the Police Accountability Commissioners at these meetings.  I was alarmed at the things I was hearing from them, and I was alarmed by the way they dismissed questions from the public that seemed at all supportive of law enforcement.  I went to a PAC meeting in January where the commissioners were asked if they all support the abolishment or defunding of police.  One of the commissioners answered, "We probably do, but we haven't discussed it."  Another commissioner answered, "we have to present this proposal to city council, and we know there are people on city council who support law enforcement, and we need to have plausible deniability so that we don't sound like Antifa trolls."  At that same meeting, the commissioners were forward about their intent to have a member sit in on union contract negotiations.  They kept repeating that they were "thinking big.".  They certainly did that, given their proposal.*

For the greater good and fairness to our officers and the community, Measure 26-217 must be rejected.

Sincerely,


Leslie Peterson
leslie@petersonmedia.net

3

**Mary Austad**

**From:** George Warneke ⬛⬛⬛⬛⬛⬛
**Sent:** Wednesday, November 29, 2023 7:21 AM
**To:** Mary Austad
**Cc:** doj-comments@portlandoregon.gov; jared.hager2@usdoj.gov
**Subject:** RE: Testimony PAC Measure 26-217

CAUTION EXTERNAL

I am so sorry that I cannot submit this testimony in personon my behalf and the many others who share these sentiments and have signed off on them below. If not for a previous commitment, I would be there in the front row to vocally tell you exactly what the majority of tax paying and moderate-minded community members think about Measure 26-217.

That said, we emphatically ask you to do the right thingand REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission and SEND THIS BACK TO THE VOTERS.

BECAUSE...The system proposed by the PAC does not balance public safety concerns and with any sense offairness to our officers.

There is no way that any rational resident would approve of the UNWORKABLE and BIASED and EXPENSIVE policies set forth by the PAC. Obviously, the general publicis woefully unaware of the power grab the new PAC has outlined.  They certainly weren't aware of the DOJ progress and how they could have participated in support of our officers.

But many of us have found out how to be heard, and we are tired of being bullied by a small group of biased activists who have put their special interests in front of the common good of our community.

The pendulum swung. The majority of Portlanders—*white, BIPOC, LGBTQ and certainly small business owners*—know that we need and want more policing and we wantto move forward together for the greater good.  Measure 26-217 does not represent the feelings of the majority of local residents and is adversarial to say the least.

As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize our law enforcement officers and limit theirability to ct without fear of reprisal from an inexperiencedand expensive volunteer board.

**MENTAL HEALTH ACCOUNTABILITY**

The accountability piece of the DOJ settlement agreement was tied to mental health. Over the past four years, mental health has been brought to the forefront of our social conversations like never before.  Our PPB has gained more education and accreditation regarding behavioral health than officers in most jurisdictions,
and PPB has established of the Behavioral Health Unit. The settlement goal was tied to meeting conditions related to mental health.  Mission accomplished.

***Everything else*** that is drafted in this PAC Measure 26-217 <u>is outside of the obligation of the settlement review.</u> The policies outlined in PAC Measure **26-217** are nothing short of gross overreach.

As written, the unprecedented power the PAC will wield is terrifying:

- ☐ The board cannot consist of current or former police, nor family members of police.
- ☐ The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- ☐ A budget that is no less than 5% of the police budget.
- ☐ Functions independently of any government official
- ☐ Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
- ☐ Makes recommendations on police policy and directives that city councilors – not PPB – get the final say on implementing.
- ☐ Power to subpoena documents and compel statements from PPB during investigations.
- ☐ The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
- ☐ Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

ere are three major reasons for rejecting this measure:

## IT'S DISCRIMINITORY AND UNCONSTITUTIONAL

The proposed board make up is unconstitutional and clearly not "inclusive."  It is blatantly discriminatory. How can this board **ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?"**  This is clearly unfair and therefore unconstitutional. (And who/what determines who has experienced systemic racism?  I have endured sexism. Obviously, good cops have been branded by calls of ACAB. Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.)  Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions. Every other public service employee is represented by their union in matters of discipline.  This is another example of gross discrimination.

2

## IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED

this measure is adopted it would be the end of recruiting and retaining quality
officers.  What trained law enforcement professional would place their career
and livelihood in the hands of 22 inexperienced volunteers with the ability to
micromanage investigations and retaining the final
word on disciplinary action without input from people with lived experience in
law enforcement or support from their union? It's outlandish.  Nearby jurisdictions would
be able to recruit and retain officers and Portland pool of police would continue to dry up.

The city's economic downturn will continue to spiral.  Portland is already
seeing an exodus of people with resources eager to leave the city for safer surrounding
cities.  Businesses, restaurants and retailers continue to close their doors because
they can no longer operate safely. Other businesses and residents are living in a non-stop
state of frustration and fear. Nearby cities will thrive while Portland further
implodes.  And, those who can't afford to leave will be further victimized by criminals who
know they outnumber and can outmaneuver our understaffed law enforcement.  Our city
is already aching, and our civic spirit is broken.

## UNNECESSARY EXPENSE AND ECONOMIC IMPACT

The formula for spending 5% of the PPB budget is excessive at a time of financial
uncertainty.  The city is already dealing with the additional expenses required to
implement the new government outlined by the City Charter. Not surprisingly,
the new city government system was grossly underbudgeted.  At the same time, our
community is dealing with the lingering lawlessness and financial impact of the poorly
crafted Measure 110. **As a community we can't absorb more multi-million-
dollar experiments in governing crafted by single focused people who apparently
don't understand cause-and-effect decision making.**

As a further follow up, I am resubmitting testimony provided by citizen Amy Woods to the
Portland City Council on 9/21 which merits further consideration.

*I also do not think that the majority of Portlanders want a police accountability commission
that is solely comprised of people who, as far as I can tell, are anti-police activists.  I have
been to some of the PAC public meetings, both in-person and online.  I have met
almost all of the Police Accountability Commissioners at these meetings.  I was alarmed
at the things I was hearing from them, and I was alarmed by the way they dismissed
questions from the public that seemed at all supportive of law enforcement.  I went to a
PAC meeting in January where the commissioners were asked if they all support the
abolishment or defunding of police.  One of the commissioners answered, "We probably
do, but we haven't discussed it."  Another commissioner answered, "we have to present
this proposal to city council, and we know there are people on city council who support
law enforcement, and we need to have plausible deniability so that we don't sound like
Antifa trolls."  At that same meeting, the commissioners were forward about their intent to*

*have a member sit in on union contract negotiations.  They kept repeating that they were
"thinking big.".  They certainly did that, given their proposal.*

For the greater good and fairness to our officers and the community, Measure 26-217
must be rejected.

Sincerely,

George and Susan Warneke

**East Portland Residents from Wilkes**

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening
attachments or clicking on links.

November 29, 2023

TO: mary_austad@ord.uscourts.gov
FR: Stephanie Kyle with 178 other NE Portland residents
CC: jared.hager2@usdoj.gov
doj-comments@portlandoregon.gov

RE: Testimony PAC Measure 26-217

I am so sorry that I cannot submit this testimony in person on my behalf and the many others who share these sentiments and have signed off on them below. If have a commitment to work at my place of business, I would be there in the front row to vocally tell you exactly what the majority of tax paying and moderate-minded community members think about Measure 26-217.

That said, we emphatically ask you to do the right thing and REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission and SEND THIS BACK TO THE VOTERS.

BECAUSE...The system proposed by the PAC does not balance public safety concerns and with any sense of fairness to our officers.

There is no way that any rational resident would approve of the UNWORKABLE and BIASED and EXPENSIVE policies set forth by the PAC. Obviously, the general public is woefully unaware of the power grab the new PAC has outlined.  They certainly weren't aware of the DOJ progress and how they could have participated in support of our officers.

But many of us have found out how to be heard, and we are tired of being bullied by a small group of biased activists who have put their special interests in front of the common good of our community.

The pendulum swung. The majority of Portlanders—*white, BIPOC, LGBTQ and certainly small business owners*—know that we need and want more policing and we want to move forward together for the greater good. Measure 26-217 does not represent the feelings of the majority of local residents and is adversarial to say the least.

As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize our law enforcement officers and limit their ability to act without fear of reprisal from an inexperienced and expensive volunteer board.

## MENTAL HEALTH ACCOUNTABILITY

The accountability piece of the DOJ settlement agreement was tied to mental health. Over the past four years, mental health has been brought to the forefront of our social conversations like never before.  Our PPB has gained more education and accreditation regarding behavioral health than officers in most jurisdictions, and PPB has established of the Behavioral Health Unit.  The settlement goal was tied to meeting conditions related to mental health.  Mission accomplished.

1

*Everything else* that is drafted in this PAC Measure 26-217 <u>is outside of the obligation of the</u> <u>settlement review.</u>  The policies outlined in PAC Measure **26-217** are nothing short of gross overreach.

As written, the unprecedented power the PAC will wield is terrifying:

- The board cannot consist of current or former police, nor family members of police.
- The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler).
- A budget that is no less than 5% of the police budget.
- Functions independently of any government official
- Investigates all deaths in police custody, uses of deadly force, complaints of force causing injury, discrimination against protected classes, and constitutional rights violations.
- Makes recommendations on police policy and directives that city councilors – not PPB – get the final say on implementing.
- Power to subpoena documents and compel statements from PPB during investigations.
- The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
- Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

Here are three major reasons for rejecting this measure:

## IT'S DISCRIMINITORY AND UNCONSTITUTIONAL

The proposed board make up is unconstitutional and clearly not "inclusive." It is blatantly discriminatory.  How can this board **ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?"**  This is clearly unfair and therefore unconstitutional.  (And who/what determines who has experienced systemic racism?  I have endured sexism.  Obviously, good cops have been branded by calls of ACAB. Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.)   Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders support unions. Every other public service employee is represented by their union in matters of discipline.  This is another example of gross discrimination.

## IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED

If this measure is adopted it would be the end of recruiting and retaining quality officers.   What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union?  It's outlandish.  Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up.

The city's economic downturn will continue to spiral.  Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities.  Businesses, restaurants and retailers continue to close their doors because they can no longer operate

2

safely.  Other businesses and residents are living in a non-stop state of frustration and fear.
Nearby cities will thrive while Portland further implodes.  And, those who can't afford to leave
will be further victimized by criminals who know they outnumber and can outmaneuver our
understaffed law enforcement.  Our city is already aching, and our civic spirit is broken.

## UNNECESSARY EXPENSE AND ECONOMIC IMPACT

The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty.
The city is already dealing with the additional expenses required to implement the new
government outlined by the City Charter.  Not surprisingly, the new city government system was
grossly underbudgeted.  At the same time, our community is dealing with the lingering
lawlessness and financial impact of the poorly crafted Measure 110. **As a community we can't
absorb more multi-million-dollar experiments in governing crafted by single focused
people who apparently don't understand cause-and-effect decision making.**

As a further follow up, I am resubmitting testimony provided by citizen Amy Woods to the
Portland City Council on 9/21 which merits further consideration.

*I also do not think that the majority of Portlanders want a police accountability commission that
is solely comprised of people who, as far as I can tell, are anti-police activists.  I have been to
some of the PAC public meetings, both in-person and online.  I have met almost all of the
Police Accountability Commissioners at these meetings.  I was alarmed at the things I was
hearing from them, and I was alarmed by the way they dismissed questions from the public that
seemed at all supportive of law enforcement.  I went to a PAC meeting in January where the
commissioners were asked if they all support the abolishment or defunding of police.  One of
the commissioners answered, "We probably do, but we haven't discussed it."  Another
commissioner answered, "we have to present this proposal to city council, and we know there
are people on city council who support law enforcement, and we need to have plausible
deniability so that we don't sound like Antifa trolls."  At that same meeting, the commissioners
were forward about their intent to have a member sit in on union contract negotiations.  They
kept repeating that they were "thinking big.".  They certainly did that, given their proposal.*

For the greater good and fairness to our officers and the community, Measure 26-217
must be rejected.

Sincerely,

Stephanie Kyle
Dominic Giusto

| | | |
|---|---|---|
| Monica Cory | Tess Cory | Mary Fuher |
| Joe Cory | Kelly Allen | Greg Fuher |
| Sue Mackley | Barry Allen | Rhonda Garner |
| Tee Mackley | Mike Monahan | Steve Bellotti |
| Robert Sopke | Margo Monahan | Suzanne Belotti |
| Sheryle Sopke | Mary Carleton | George Donnerberg |

**East Portland Residents from Wilkes, Argay Park, Parkrose Neighborhoods**

3

**Mary Austad**

| | |
|---|---|
| ~~m:~~ | Vikki Payne ~~████████████████~~ |
| ~~nt:~~ | Wednesday, November 29, 2023 9:45 AM |
| To: | Mary Austad |
| Cc: | jared.hager2@usdoj.gov; doj-comments@portlandoregon.gov |
| Subject: | Testimony PAC Measure 26-217 |

CAUTION EXTERNAL

Greetings,

I am so sorry that I cannot submit this testimony in person on my behalf. If not for a previous commitment, I would be there in the front row to vocally tell you exactly what the majority of tax paying and rational-minded community members think about Measure 26-217.

That said, we emphatically ask you to do the right thing and REJECT THE GROSS OVERREACHING POLICIES outlined in Measure 26-217 by the new Police Accountability Commission and SEND THIS BACK TO THE VOTERS.

BECAUSE...The system proposed by the PAC does not balance public safety concerns and with any sense of fairness to our officers.

~~)~~ere is no way that any rational resident would approve of the UNWORKABLE and BIASED and EXPENSIVE policies set forth by the PAC. Obviously, the general public is woefully unaware of the power grab the new PAC has outlined. They certainly weren't aware of the DOJ progress and how they could have participated in support of our officers. I personally attended some of these planning meetings and they were hostile environments stacked with anti-police abolishonists, often taking public comment from their 'comrades' from other cities and states.

But many of us have found out how to be heard, and we are tired of being bullied by a small group of biased activists who have put their special interests in front of the common good of our community.

The pendulum has swung. The majority of Portlanders—white, BIPOC, LGBTQ and certainly small business owners—know that we need and want more policing and we want to move forward together for the greater good. Measure 26-217 does not represent the feelings of the majority of local residents and is adversarial to say the least.

As a community we need to move forward with a fair review system, not one that will continue to devalue and demoralize our law enforcement officers and limit their ability to act without fear of reprisal from an inexperienced and expensive volunteer board.

## MENTAL HEALTH ACCOUNTABILITY

~~)~~e accountability piece of the DOJ settlement agreement was tied to mental health. Over the past ~~.~~our years, mental health has been brought to the forefront of our social conversations like never before. Our PPB has gained more education and accreditation regarding behavioral health than

officers in most jurisdictions, and PPB has established of the Behavioral Health Unit. The settlement goal was tied to meeting conditions related to mental health. Mission accomplished.

Everything else that is drafted in this PAC Measure 26-217 is outside of the obligation of the settlement review. The policies outlined in PAC Measure 26-217 are nothing short of gross overreach.

As written, the unprecedented power the PAC will wield is terrifying:

- The board cannot consist of current or former police, nor family members of police.
- The power to discipline and fire police, as opposed to the police commissioner (currently Mayor Wheeler)
- A budget that is no less than 5% of the police budget.
- Functions independently of any government official
- Investigates all deaths in police custody, uses of deadly force, complaints of force
- causing injury, discrimination against protected classes, and constitutional rights
- violations.
- Makes recommendations on police policy and directives that city councilors – not PPB –
- get the final say on implementing.
- Power to subpoena documents and compel statements from PPB during investigations.
- The board must have diverse backgrounds, including "lived experience with systemic racism, mental illness and addiction."
- Public police misconduct investigations, currently prohibited by state law and the police union contract, with no right of appeal by the police union.

There are three major reasons for rejecting this measure:

## IT'S DISCRIMINATORY AND UNCONSTITUTIONAL

The proposed board make up is unconstitutional and clearly not "inclusive." It is blatantly discriminatory. How can this board ban members who have "lived experience" in law enforcement or as a relative of an officer, yet require membership of someone with "lived experience of systemic racism, mental illness and addiction?" This is clearly unfair and therefore unconstitutional. (And who/what determines who has experienced systemic racism? I have endured sexism. Obviously, good cops have been branded by calls of ACAB. Choosing preferred, random demographics for board membership is a slippery slope that shouldn't be included in any review board credentials.)

Furthermore, the proposal indicates that the union would have no role in this new PAC even though the majority of Portlanders
support unions. Every other public service employee is represented by their union in matters of discipline. This is another example of gross discrimination.

## IT WILL HAMSTRING RECRUITMENT WHEN WE ARE ALREADY UNDERPOLICED

If this measure is adopted it would be the end of recruiting and retaining quality officers. What trained law enforcement professional would place their career and livelihood in the hands of 22 inexperienced volunteers with the ability to micromanage investigations and retaining the final word on disciplinary action without input from people with lived experience in law enforcement or support from their union? It's outlandish. Nearby jurisdictions would be able to recruit and retain officers and Portland pool of police would continue to dry up.

The city's economic downturn will continue to spiral. Portland is already seeing an exodus of people with resources eager to leave the city for safer surrounding cities. Businesses, restaurants and retailers continue to close their doors because they can no longer operate safely. Other businesses d residents are living in a non-stop state of frustration and fear. Nearby cities will thrive while rtland further implodes. And, those who can't afford to leave will be further victimized by criminals who know they outnumber and can outmaneuver our understaffed law enforcement. Our city is already aching, and our civic spirit is broken.

## UNNECESSARY EXPENSE AND ECONOMIC IMPACT

The formula for spending 5% of the PPB budget is excessive at a time of financial uncertainty. The city is already dealing with the additional expenses required to implement the new government outlined by the City Charter. Not surprisingly, the new city government system was grossly underbudgeted. At the same time, our community is dealing with the lingering lawlessness and financial impact of the poorly crafted Measure 110. As a community we can't absorb more multi-million-dollar experiments in governing crafted by single focused people who apparently don't understand cause-and-effect decision making.

I also do not think that the majority of Portlanders want a police accountability commission that is solely comprised of people who, as far as I can tell, are anti-police activists. Again, at the meetings I was alarmed at the things I was hearing
from them, and I was alarmed by the way they dismissed questions from the public that seemed at all supportive of law enforcement. At a PAC meeting in January, the commissioners were asked if they all support the abolishment or defunding of police. One of the commissioners answered, "We probably do, but we haven't discussed it." Another commissioner answered, "we have to present this proposal to city council, and we know there are people on city council who support law enforcement, d we need to have plausible deniability so that we don't sound like Antifa trolls." At that same meeting, the commissioners were forward about their intent to have a member sit in on union contract negotiations. They kept repeating that they were "thinking big.". They certainly did that, given their proposal.

For the greater good and fairness to our officers and the community, Measure 26-217 must be rejected.

Sincerely,

Vikki Payne

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Michael Simon**

| | |
|---|---|
| **From:** | Mary Austad |
| **Sent:** | Thursday, November 30, 2023 8:22 AM |
| **To:** | Michael Simon |
| **Cc:** | Nicholle Winters |
| **Subject:** | FW: Letter for Judge Simon related to the 11/30/23 fairness hearing |

Michael:

Please see below.

Mary Austad  |  (she/her/hers)
Courtroom Deputy for The Honorable Michael H. Simon
U.S. District Court
(503) 326-8034
Mary_Austad@ord.uscourts.gov

**From:** Ann Brayfield <▇▇▇▇▇▇▇▇▇▇▇▇▇▇>
**Sent:** Thursday, November 30, 2023 12:07 AM
**To:** Mary Austad <Mary_Austad@ord.uscourts.gov>
**Subject:** Letter for Judge Simon related to the 11/30/23 fairness hearing

CAUTION - EXTERNAL

November 29, 2023
The Honorable Michael H Simon
US District Court
District of Oregon
Portland OR 97204

Dear Judge Simon,

Thank you for the opportunity to present written testimony for tomorrow's fairness hearing in the ongoing case of United States of America vs The City of Portland. The issue before us tomorrow as I understand it is whether the proposed changes to the current settlement agreement as reflected in the mediated amended agreement being presented are fair, adequate and reasonable.

Before I get to fair, adequate and reasonable I must express my surprise that what I understood the mediation to be about turned out to be about more than a court appointed monitor. While there was agreement on a court appointed monitor it appears it was also about a path for the City to get extricated from this agreement. From my perspective the latter was a discussion that again happened behind closed doors without input from the public or an opportunity for the public to be educated and brought along in the proposed changes to the agreement. As you may know the public had less than three full business days to understand what was being proposed to City Council before they voted on the amended agreement. Personally I am still trying to wrap my mind around the implications of all the proposed changes especially given that the Police Accountability Commission's proposal for a police oversight board has been revised by a city attorney and voted on by City Council.

What isn't clear to me is how the termination of some of the items in the amended agreement may affect the revisions to the proposed police oversight board. There appears to be a relationship that needs clarification before the termination of these items can be said to be fair, adequate and reasonable.

1

Understanding that the items proposed for termination have been in compliance for three assessment cycles and that the items proposed for self monitoring will involve "continued Monitor review of the City's methodology and self-assessments while allowing the City to demonstrate its ability to sustain compliance after termination" appear to be fair, adequate and reasonable changes if it can be shown that these terminations will not affect the proposed police oversight board.

Creating community trust is paramount in the matters before us tomorrow as is the opportunity to strengthen our democracy and our civil society.  My hope is that you will be able to have light shed on the relationship between the proposed changes to the settlement agreement and the proposed police oversight board.


Thank you,

Ann Brayfield


CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** Joe Rowe <███████████████>
**Sent:** Wednesday, November 29, 2023 10:48 PM
**To:** Mary Austad <Mary_Austad@ord.uscourts.gov>
**Cc:** Dan Handleman Coowatch <copwatch@portlandcopwatch.org>; markjginsberg <markjginsberg@yahoo.com>; Marc Poris <marc.poris@gmail.com>
**Subject:** Judge Simon testimony DOJ agreement

**CAUTION - EXTERNAL:**

This is my written testimony to the honorable judge Simon in regards to the agreement between the city of Portland and the US department of Justice.

I urge judge Simon to give the least possible leniency to the city of Portland in this process.

I have lived in Portland since August of 2004 and in my first month here I was abused by police and illegally detained and arrested and cited.

I have seen the police abuse the houseless population and my neighbors of color with the exact same contempt for the law that I was shown, and this has continued non-stop for 20 years with no decline in frequency. It has resulted in the deaths of countless innocent people. It has resulted in unmeasurable trauma for countless people, and it has resulted in very measurable hundreds of millions of dollars of taxpayer money paid to the victims of police abuse in Portland.

I was part of a completely peaceful protest where I witnessed over two dozen people being detained by police.  People en masse were  falsely arrested and falsely charged as a means to suppress a legal protest.  The police showed absolute contempt for the Oregon Constitution article 1 section 26 on the right to assemble.

I was able to prove my innocence and refund the fines for which I was illegally charged by making my own pro se appeal to the Oregon Court of appeals where I won before three judges.

https://law.justia.com/cases/oregon/court-of-appeals/2006/a128400.html

1

Case numbers
Z1414778
A128400

For the last 20 years I have attended City Hall hearings as the city attempts to erode the constitutional rights of the houseless.   This dates back to Mayor Adams and his attempt to pass a no sit lie ordinance and continues on with commissioner Gonzalez and mayor Wheeler spearheading more attempts to undermine the constitutional rights for houseless people to find the most basic places to pass an evening or find shelter during the day in the public spaces to which they are entitled.

I recently attended City council meetings where the mayor and all commissioners unanimously interfered with the creation of a board for police oversight.   In November of 2020 City voters past a change to the city charter specifically stating that we needed to create a new system of oversight and the city council shall not interfere with that board nor its creation.

Because of my work situation in a public service job there is no possible way for me to miss one day of work and attend your hearing.

For years I have called the city auditor's office and various commissioners to demand that they share any training materials or other documents to show that the city will break the pattern in my appellate case.  It is uncontested that even this year police announce to a crowd of people who are peacefully assembled that they are part of an illegal assembly and must disperse.  This happened to me about a week ago in a peaceful candlelight protest to support a Palestinian ceasefire.

Not only has the city refused to follow the case law from the Oregon Court of appeals, but the city openly works in opposition to the right of citizens to stay in one place and no longer face the order from an officer or any city or state employee to tell them to move along.

The Honorable judges of the Oregon court of appeals concluded their statements in my case with the quote that follows:

"The state further acknowledges that.... it can identify no authorization in substantive law that would apply to the officer's order that defendant "move along." Again, we agree and accept the concession."

I have faith in you judge Simon and your staff because I have faith in the Oregon Court of appeals that allowed me to speak and have my case heard.

While I cannot be with you to testify in person I trust that you will continue to acknowledge the constitutional rights of the people of Portland and you will continue to recognize the data that shows the city management and City Police department have systematically eroded the constitutional rights of Portland residents.  Those patterns have not changed in the favor of citizens.

This video evidence from City Hall two weeks ago proves that the city is showing contempt for the agreement with the department of Justice and has shown contempt for every person who faces the police abuse that I faced and defeated

https://www.youtube.com/live/G58tpIQ1fs8?si=dd3CVxJkfrLOzdNp&t=11562

This video is from November 15th 2023 on the topic of police oversight and it proves every point I have made here in my written testimony.

I ask again in conclusion that the court and the department of Justice give the least possible leniency to the city of Portland.

I ask the court to mandate the city adopt the full city code language as proposed by the 20 member PAC committee and reject the oversight board code adopted by city council resolution 37637. of November 15 2023 which diluted and interfered with the police board oversight formation and intent of voters who passed measure 26-217
https://www.portland.gov/council/documents/resolution/adopted/37637


Summary of Measure 26-217
https://ballotpedia.org/Portland,_Oregon,_Measure_26-
217,_Police_Oversight_Board_Charter_Amendment_(November_2020)


Signed Joe Rowe, resident of Portland Oregon

=============

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.