

City of Portland, Oregon

# RFA NO. 00002255

for
**INDEPENDENT MONITOR**
**FOR THE SETTLEMENT AGREEMENT ON POLICING**

*This Request for Applications is a contract-specific Special Procurement under ORS 279B.085, PCC 5.33.220, as authorized by Ordinance 191519 that is calling for competition among prospective contractors.*

**Date Issued:** December 14, 2023

**Applications Due:** January 19, 2024, before 4:00 p.m. Pacific Time

**SUBMITTAL INSTRUCTIONS:** Submit one (1) Adobe PDF electronic copy clearly marked "Master" or "Original," and if redactions are requested, one (1) additional electronic copy, in MS Word format with redactions made (the Redacted for Public Disclosure Copy) to both of the following:

| Department of Justice (DOJ) | City of Portland (City) |
|---|---|
| Kelsey Pormasdoro | Monitor Hiring Team |
| Kelsey.pormasdoro@usdoj.gov | Monitor.Hire@portlandoregon.gov |

**SUBMISSIONS MUST BE SUBMITTED TO BOTH DOJ AND THE CITY AND WILL NOT BE ACCEPTED THROUGH THE CITY'S ELECTRONIC PROCUREMENT SYSTEM.**

**REFER QUESTIONS TO:**

Point of Contact: Sarah Ames, Deputy City Attorney, sarah.ames@portlandoregon.gov

**Exhibit A**

## I.    INTRODUCTION

The City of Portland has been under a Settlement Agreement (Agreement) with the United States Department of Justice (DOJ) since 2014 that requires sustained reforms to policies, programs, and procedures in, and oversight of, the Portland Police Bureau (PPB) to ensure that PPB delivers police services to the people of Portland in a manner that effectively supports officer and public safety, and complies with the Constitution and laws of the United States. The Portland City Council first approved the Agreement in November 2012, and it was entered as an enforceable court order in August 2014 in United States District Court Case No. 3:12-cv-02265-SI.

Under the Agreement, the DOJ has served as both Plaintiff and monitor, filing periodic compliance assessment reports with the Court. In addition, a City-hired Compliance Officer/Community Liaison (COCL) has filed quarterly compliance reports and outcome assessments. The Court recently entered an amendment to the Agreement negotiated by the City and DOJ that replaces these previous compliance assessment arrangements with a highly qualified Independent Monitor who is free of conflicts of interest.

This RFA seeks to identify an Independent Monitor to assess the City's compliance with, and implementation of, this Agreement. The Independent Monitor's core duties include: (a) developing a Monitoring Plan, updated at the beginning of each two-year term, to ensure reliable compliance assessments; (b) conducting semi-annual assessments of the City's compliance with the terms of this Agreement; (c) conducting the outcome assessments required by this Agreement; (d) identifying barriers to compliance and providing recommendations on how to overcome such barriers; and (e) filing semi-annual reports with the Court that detail the status of the City's progress in implementing this Agreement. (See Statement of Work, Section V below.)

Section XII of the Agreement, added by the most recent amendment, recognizes that the City has implemented many substantial reforms over the last decade, and thus the Independent Monitor will be charged with helping the City focus on the remaining areas of partial compliance, implementing durable reforms, which ultimately will lead to the timely resolution and termination of the Agreement.

Section XII does this in two critical ways. First, Section XII immediately terminates certain obligations under the Agreement where the City has a demonstrated history of substantial compliance. Forty paragraphs of the Agreement were immediately terminated upon the Court's approval of Section XII. Thus, the Independent Monitor will not assess compliance with those dismissed provisions. Second, the remaining obligations are grouped into related paragraphs ("discrete sections"), which are subject to either ongoing assessment by the Independent Monitor or, for certain sections previously found in compliance, subject to City-led self-assessment under the oversight of the Independent Monitor. Section XII sets forth this process in detail, including a process for future partial termination of provisions as the City maintains substantial compliance with them. Currently, fifteen paragraphs of the Agreement are subject to self-monitoring; other paragraphs will be eligible for self-assessment after future substantial compliance assessments.

The Independent Monitor, thus, will be expected to provide continuing assessments of 41 remaining paragraphs of the Settlement Agreement. The Monitor will also consult with the City on its self-

**Exhibit A**

monitoring plan and report on its continued substantial compliance for the discrete sections under self-monitoring.

## II.    THE INDEPENDENT MONITOR

The DOJ and City (collectively the "Parties") seek an Independent Monitor to be appointed by the Court to assist the Parties, the Court, and the Portland community by assessing compliance with the Agreement in an independent and transparent manner.

The Independent Monitor is expected to provide objective, cost-effective, and thorough assessments of whether the City is in substantial compliance with the terms of the Agreement, and of whether implementation of the Agreement is achieving its intent.

The Parties anticipate that the Independent Monitor will focus on compliance assessments, engaging with the Portland community, making reports to the community, Parties and Court, and providing technical assistance and recommendations to support compliance as needed. Specific duties and responsibilities are outlined in the Scope of Work, below. The Independent Monitor will not replace or assume the role and duties of the City or PPB, including the Chief of Police, or any other City official. The Chief of the PPB retains full authority to run the Police Bureau in accordance with the laws of Portland.

## III.    QUALIFICATIONS

The Parties seek interested individuals, firms, or organizations to serve as Independent Monitor. The Independent Monitor will include a team of people with expertise in policing, civil rights, data analysis and auditing, community engagement, project management, behavioral health, emergency dispatch, and writing about complex matters succinctly in plain language intended for a general audience.

The Monitor and team must possess the following qualities:

- Objectivity

- Credibility

- Ability to build trust and confidence

- Record of accomplishing goals and objectives

- Leadership

The Parties will evaluate Independent Monitor candidates based on the requirements set forth in Section XII of the Agreement regarding selection of an Independent Monitor, in addition to the following minimum qualifications:

- Maintaining strong ethical standards;

- Subject matter expertise in police practices including use of force and force investigations, de-escalation techniques, community policing, training, and officer

**Exhibit A**

accountability;

- Project management experience;

- Ability to write about complex matters succinctly in plain language intended for a general audience;

- Commitment to establish and maintain a presence in Portland;

- Demonstrated experience, willingness, and ability to solicit and obtain meaningful community participation;

- Ability to seek out varied stakeholder interests and perspectives, including law enforcement, mental health communities, the Black community, communities of color, and LGBTQIA+ communities; and

- Demonstrated knowledge, and willingness to expand upon that knowledge, about Portland's history related to: policing, including the events that led to the DOJ's initial investigation, and the progress of reforms under the Agreement; the community's mental health needs and services; and Portlanders' particular experiences with institutional racism.

Experience in the following areas may be useful, although lack of experience in any particular area will not disqualify a candidate:

- Managerial experience in law enforcement;

- Evaluating organizational change and institutional reform, including applying qualitative and quantitative analyses to assess progress and performance;

- Experience monitoring and ensuring compliance with settlement agreements, consent decrees, or court orders;

- Use of technology, analytical tools, information systems, and data collection to support and enhance law enforcement, including statistical analysis of law enforcement practices, internal and external benchmarking techniques, and regression analysis;

- Providing formal and informal feedback, technical assistance, and guidance to law enforcement agencies;

- Knowledge of adult learning techniques and other pedagogy for law enforcement training;

- Expertise in assessing uses of force, use of force review, and accountability systems; and

- Experience reviewing policies, procedures, manuals, and other administrative orders or directives, and training programs related to law enforcement practices.


## IV.    LOCALITY AND COSTS

The Parties prefer to have an Independent Monitor that offers a consistent local presence. This may include engaging local team membership and planning for regular site visits by other team members for compliance assessments and community engagement. The Independent Monitor will undergo

**Exhibit A**

local orientation with community groups, including the Albina Ministerial Alliance Coalition for Justice and Police Reform (AMAC) and Mental Health Association (MHA).

Finally, fees and costs will be a consideration in selecting the Independent Monitor. That includes the ability to offer pro bono time or reduced rates, geographic proximity of the Independent Monitor or team membership to limit travel costs, affiliation with academic institutions or non-profit organizations, and willingness to enter an alternative fee arrangement that reduces costs and promotes efficiency by, for example, capping fees and costs at a flat rate that decreases each year as provisions of this Agreement become subject to joint monitoring and partial termination.

At the end of each month, the Independent Monitor should expect to provide the Parties and the Court with monthly bills setting forth for each team member the hourly rate, hours worked, and general description of monitoring tasks.  The Independent Monitor should anticipate utilizing cost-effective travel methods, including applying federal employee per diem reimbursement rates for individual travelers and, where available, obtaining lodging at or near the rate offered to federal employees.


## V.    SCOPE OF WORK

The Settlement Agreement establishes the responsibilities and duties of the Independent Monitor and monitoring team. The RFA provides a summary of the requirements and expectations for the Independent Monitor under the Agreement. It is not intended to be an exhaustive explication of the Agreement, and the Agreement shall control any discrepancies between the RFA and the Agreement with respect to the role of the Independent Monitor. The Monitor's core duties include:

(a) **Developing a monitoring plan**, due within 30 days of appointment and updated at the beginning of each two-year term, to ensure reliable compliance assessments. The Independent Monitor will use past COCL and DOJ compliance assessment reports as guidance, consult with the Parties, and will file the Monitoring Plan with the Court. The Monitoring Plan will identify the assessments necessary to determine whether the City has reached or sustained substantial compliance, and will set a schedule for assessments, outcome measurements, and reports.

(b) **Conducting semi-annual compliance assessments** of the City's compliance with the terms of this Agreement that are not subject to either self-monitoring or partial termination. Compliance assessments will contain the elements necessary for reliability and comprehensiveness and may involve sampling and compilation data where appropriate. Before any audit, the Independent Monitor will consult with the Parties on the proposed methodology.

(c) **Conducting qualitative and quantitative outcome assessments**. Semi-annually, the Independent Monitor will assess and report whether the City's implementation of the Settlement Agreement has created:  (1) capable systems and resources for responding to persons in mental health crisis; (2) competent accountability and oversight systems; (3) effective training for police officers that increases the knowledge, skills and abilities

**Exhibit A**

necessary for effective and successful delivery of service to persons in mental health crisis; (4) proper management of the use of force to meet constitutional standards; and (5) robust systems of community engagement. The outcome assessments shall be informed by data on the following: use of force; police interactions with community members with actual or perceived mental illness; training; and police performance and accountability. The Monitor must consult with the Parties on the methodology for these outcome assessments.

(d) **Providing recommendations** that identify barriers to compliance and advise on actions necessary to ensure timely substantial compliance, such as revising a related policy, conducting training, or seeking technical assistance.

(e) **Filing semi-annual monitor reports** with the Court that detail the status of the City's progress in implementing this Agreement and which substantiate the compliance assessments and recommendations. These written reports shall be given in draft form to the Parties, who will have the opportunity to provide comments for the Independent Monitor's consideration before the Independent Monitor releases the draft report to the public for community input, and which shall be considered before the report is filed with the court.

(f) **Appearing in Court.** The Independent Monitor and team members, as appropriate, are expected to appear at semi-annual status conferences to discuss the Independent Monitor's semi-annual reports, which may be used by the Parties to evidence compliance or non-compliance.

(g) **Holding town hall meetings.** Twice a year, the Independent Monitor shall hold community town hall meetings to discuss the implementation of the Agreement, answer questions about the Independent Monitor's reports, assessments, and recommendations, and hear community perspectives. The Monitor must promote widespread public participation and make efforts to reach the many and diverse communities in Portland. The Monitor will also seek community feedback online, through email, by social media, and by reaching out to stakeholders including the Portland Police Association (PPA), AMAC, MHA, Portland Committee on Community-Engaged Policing (PCCEP) and other impacted individuals, communities, and law enforcement. The Monitor's website shall post reports and invoices on a website.

In the performance of these duties, the Independent Monitor must maintain all documents and information related to this project in a confidential manner as required by the Settlement Agreement and may testify in proceedings and make public or media statements only as provided by the Agreement.


## VI.    REQUESTED INFORMATION

The Parties request that interested individuals, firms, or organizations submit information to assist the Parties in identifying candidates to serve as Independent Monitor. Completed packets must include:

- A cover letter describing your interest in the position and summarizing how you meet the qualifications identified in the Qualifications section.

- A professional resume, no longer than five pages in length, specifically focused on this position and the services to be provided.

- One-paragraph summaries of the qualifications of each additional team member who would be assigned to carry out the work, with indication of the specific responsibilities and expected time commitment of each team member, for example, hours per month per team member. You may also submit a resume for each team member.

- A description of all other current employment, projects, or other professional undertakings for each team member, noting the team member's time commitments for each.

- Responses to the RFA shall include references to the requirements outlined in Sections III, IV, and V, above, and detailed descriptions of how candidates will meet those requirements.

- A proposed first-year budget including compensation for the performance of the work and anticipated reimbursable expenses.

- An explanation of how you will meet an aggressive timetable to help the City get into full substantial compliance and implement the monitorship lessons so that the City can move forward without further external support.

- A proposal for decreasing costs as additional discrete paragraphs are terminated.

- Contact information for at least three references (including law enforcement agencies, community groups, and subject matter experts) who have knowledge of and experience with your work, and who can speak to your expertise in police practices, community engagement, and compliance assessment.

After receiving applicants' submissions, the Parties may request additional information. Candidates considered for Monitor or as a member of the Independent Monitor's team will be required to disclose all actual and potential conflicts of interest. Team members who are provided access to police records shall also be subject to a background check performed by PPB.

As described above, the Parties are particularly interested in ensuring that the Independent Monitor team include membership with substantial local expertise. Individuals who are not interested in serving as Independent Monitor, but who would welcome the opportunity to participate as part of an Independent Monitor's team, may **email the City at Monitor.Hire@portlandoregon.gov no later than 5 p.m. January 10.**  Please include in your email: Name, Title and Current Employer; contact information; a link to a current resume or CV; and a statement of interest and expertise, no longer than 50 words. The City will compile and add to the list on a rolling basis and will make the list available to applicants upon request.

**Exhibit A**

VII.   **SELECTION PROCESS AND DEADLINE**

RFA responses should be submitted as soon as possible, but no later than January 19th, 2024, before 4:00 p.m., to the Parties as follows:

| **Department of Justice** | **City of Portland** |
|---|---|
| Kelsey Pormasdoro | Monitor Hiring Team |
| Kelsey.pormasdoro@usdoj.gov | Monitor.Hire@portlandoregon.gov |

The Parties will jointly select three finalists for consideration as the Independent Monitor, following internal reviews and interviews with candidates, and likely including interviews with their team members. The Parties will invite a representative from the PPA, AMAC, MHA, and PCCEP to observe any such interview and offer their comments.

The Parties will publicly announce the three finalists and will post their information packets on the City website. Withing 32 days following the posting, finalists will participate in a public town hall forum in Portland to answer facilitated community questions about their experience, qualifications, and approach to monitoring the terms of the Agreement.  The town hall will be held in a manner that is easily accessible, will allow for remote participation, and will be widely publicized to encourage broad participation. A public comment period will be available for 32 days after the posting of the finalists.

Within 30 days of the close of the public comment period, the Parties will jointly select a candidate for the Court to appoint as the Independent Monitor, considering public input and any comments from the PPA, AMAC, MHA, and PCCEP. The Monitor will be appointed for a term of two years, which may be extended for additional two-year terms if the Parties jointly request, and the Court approves.

**Expected Activity Schedule** (the Parties may extend the dates)

| | |
|---|---|
| Posting and Outreach | December 14, 2023, to January 19, 2024 |
| Statements from Potential Team Members Due | January 10, 2024 |
| Monitor Letters of Interest Due | January 19, 2024 |
| Initial Screening of Applicants | Week of January 22, 2024 |
| Notification of Initial Interviews | January 29, 2024 |
| Selection Committee Interviews | February 5 to 7, 2024 |
| Notification and Announcement of 3 Finalists | February 8, 2024 |
| Public comment period: | February 8 to March 11, 2024 |
| Community Forum | Week of February 19, 2024 |
| Finalist Interviews | Week of February 26, 2024 |

**Exhibit A**

First choice notified, report to council      March 15, 2024

Council Considers Report Adoption      March 20, 2024

Court Appointment      April 2024

Start Date      May 2024

## VIII.  ADDITIONAL RFA TERMS

**Award Review and Protest:** The City shall post a Notice of Intent to Negotiate and Award in the same manner as the RFA.  The Notice shall identify the applicant to which the City intends to award a contract. Applicants are permitted to challenge the City's procurement in accordance with PCC 5.33.700 – 5.33.750. Applicants who wish to protest their elimination must submit a protest within seven (7) Calendar Days of the City's posting of the Notice of Intent to Award.

**Addenda**: If additional information or interpretation is needed, the City shall issue an addendum. Any addenda issued seventy-two (72) hours or more before the scheduled closing time, Saturday, Sunday, and City-observed holidays not included, shall be binding. The City shall provide such addenda in the same manner in which it provided the RFA, but failure of the applicant to receive or obtain such addenda shall not excuse the applicant's compliance with its contents.

**Oral Instructions**: Oral instructions or information concerning the RFA or the project given out by officers, employees, or agents of the City shall not modify the RFA or bind the City. Any changes or revisions to the RFA shall be binding only if issued by the City in a written addendum.

**Withdrawal, Modification or Alteration Of Application**: Prior to the RFA due date and time, a applicant may submit revised versions of its application. Also, an application may be withdrawn upon written request of the applicant prior to the due date and time. Negligence on the part of the applicant in preparing their application confers no right to withdraw their response after the scheduled closing time for filing Applications. As a result of any of these actions, if the intent of the applicant is not clearly identifiable, the interpretation most advantageous to the City will prevail.

**Late Applications**: Applications must be received no later than the date and time specified on the cover of this solicitation. It is the applicant's responsibility to ensure that applications are received prior to the specified closing date and time. Applications received after the specified closing date and/or time shall not be considered and will be rejected.

**Public Records:** Any information provided to the City pursuant to this RFA shall be public record and subject to public disclosure pursuant to Oregon public records laws.

**Clarifying Application During Evaluation Period**: During the evaluation process, the City has the right to require any clarification or change it needs in order to understand the applicant's view and approach to the project and scope of the work.

**Exhibit A**

**Notice of Intent to Award Is Not a Contract:** A notice of intent to negotiate and award posted on the Procurement Services website does not constitute a directive to proceed with Services. Before performing any work, the contractor must receive a properly authorized Contract.

**Contract Development:** The application and all related responses provided by the applicant may become a part of the final Contract.

**Exhibit A**