**Juan C. Chavez**, OSB #136428
**Franz Bruggemeier**, OSB #163533
**Amanda Lamb**, OSB #222284
Email: jchavez@ojrc.info
PO Box 5748
Portland, OR 97208
Telephone: 503-944-2270 ext. 212
Facsimile: 971-275-1839

Attorneys for *Amici* Mental Health Alliance

**J. Ashlee Albies**, OSB #051846
Albies & Stark LLC
Email: ashlee@albiesstark.com
1500 SW First Ave, Suite 1000
Portland, OR 97201

**Kristen Chambers, OSB**
PRISM LEGAL LLC
kristen@prism-legal.com
3519 NE 15th Ave., Ste. 424
Portland, OR 97212
Phone:  (503) 809-0902

Attorneys for *Enhanced Amicus* Albina Ministerial Alliance Coalition for Justice and Police Reform

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>Defendant. | Case No. 3:12-cv-02265-SI<br><br><br>JOINT STATUS REPORT ON PARAGRAPH 195 OF THE SETTLEMENT AGREEMENT |

## INTRODUCTION

*Amicus Curiae* Mental Health Alliance and *Enhanced-Amicus* Albina Ministerial

Alliance Coalition submit this joint status report in advance of the upcoming status hearing on

May, 15 2024. The focus of this report is the lack of adherence to Paragraph 195, Section XI of

the Settlement Agreement. This Joint Status Report is supported by the Declaration of Juan C.

Chavez, Counsel for MHA.

## FACTUAL HISTORY

### A. A Voter Initiative to Allow the Public to Hold Police Accountable

George Floyd's murder at the hand of Minneapolis Police Officer Derek Chauvin on May

25, 2020, forced a national reckoning over the police's treatment of Black Americans. Over the

weeks and months after his murder, outrage grew into a larger referendum on police violence.

As MHA wrote in their August 2021 Status Hearing Brief:

> Police in Portland, and elsewhere, responded with violence toward
> people protesting police violence. These protests took place likely
> in hundreds of places in Portland—street corners, parks,
> driveways, parkways, highways, streets, and government
> buildings. The first 100 nights since George Floyd's murder had
> Portlanders of all kinds out in the street demanding justice not only
> for Mr. Floyd, but for the injustices committed upon them by their
> own City. The Plaintiff in this case released a report in February
> 2021 revealing that Portland Police Bureau used force against
> protesters in 2020 more than 6,000 times. Each of those 100 nights
> or those uses of force deserve their own briefing, their own
> hearing, their own memorial—beyond which this amicus could
> provide the Court.

Dkt. 247, p. 6.

It was in that spirit that Portlanders overwhelmingly[1] supported a voter-led measure,

Measure 26-217, to alter and improve the means by which the public holds police accountable.

---

[1] Jonathan Levinson, *Portlanders favor changes to police oversight*, Oregon Public Broadcasting (Nov. 3, 2020), available at https://www.opb.org/article/2020/11/04/portlanders-favor-changes-to-police-oversight/.

The status quo did not work. The measure's plain text put to the voters the following

components:

- The new oversight board would "independently investigate Portland Police Bureau sworn employees and supervisors thereof promptly, fairly, and impartially, to impose discipline as determined appropriate by the Board, and to make recommendations regarding police practices, policies and directives to the Portland Police Bureau and with a primary focus on community concerns." Portland City Charter Ch. 2, Art. 10 § 2-1001.

- The board would "include[] representation from diverse communities including those from diverse communities and with diverse lived experiences, particularly those who have experienced systemic racism and those who have experienced mental illness, addiction, or alcoholism." *Id.* at § 2-1002.

- The board would not permit "[p]eople currently employed by a law enforcement agency[,] their immediate family members[,] nor formerly employed by a law enforcement agency" to be members of the board. *Id.* at § 2-1003.

- The budget would be "proportional to be no less than 5 percent of the Police Bureau's Annual Operational Budget." *Id.* at § 2-1004.

- "The Mayor, City Council, Auditor, and City departments, bureaus and other administrative agencies shall not interfere in the exercise of the Board's independent judgment." *Id.* at § 2-1006.

- The new accountability board would be able to "investigate complaints including the power to subpoena and compel documents, and to issue disciplinary action up to and including termination for all sworn members and the supervisors thereof within the Portland Police Bureau." *Id.* at § 2-1007(a).

- The board would also be able to propose policy recommendations to the Bureau which it could reject or accept, § 2-1007(b); and compel truthful testimony from Bureau members. *Id.* at § 2-1007(d).

Eighty-two percent of voters approved this language for Portland's Charter.[2] After the vote, the Portland Police Association's lawyer claimed that "The entirety of the existence of this board will be litigated."[3]

**B. Section XI: Paragraph 195**

In the opening months of 2021, the Plaintiff in this action found the Defendant City of Portland once again out of compliance with the settlement agreement. Dkt. 236, *Pla. Not. of 5th Periodic Compliance Assessment Report*. This began a months-long negotiation to formulate a remedy to cure the City's non-compliance. The parties negotiated eight new paragraphs for the settlement agreement, including Paragraph 195. Dkt. 276, *Pla. Mot. to Am. Settlement Agreement*. No party, including Defendant-Intervenor Portland Police Association ("PPA"), opposed the relief. Dkt. 276.[4] The Court held a Fairness Hearing on April 29, 2022, during which the PPA representative made it "crystal clear" that the PPA did not object to the proposed amendments which included paragraph 195, and that the PPA "agree[d] that those amendments are fair, adequate, and reasonable." Ex. 01, Apr. 29, 2022 Fairness Hr. Trans. 42:13-16.  At the conclusion of the Fairness hearing, the Court approved the amendments, and Section XI was adopted on April 29, 2022. Dkt. 290.

Paragraph 195 concerned the implementation of Measure 26-217. Dkt. 276-1. Its main requirements were to follow a schedule of dates, to implement the Police Accountability Commission's ("PAC") recommendations, and to provide transitional support for the outgoing Independent Police Review ("IPR") as the charter amendments settle.

---

[2] *Id.*, *supra* fn. 1.

[3] *Id.*

[4] MHA took no position on Paragraphs 191 and 194, and requested that the Court only conditionally approve those paragraphs, while AMAC believed the parties should codify particular guidelines for Body Worn Camera (BWC) policy in the text of Section XI and sought to ensure the City held PPB members accountable for missteps during the 2020 protests regardless of rank. Dkts. 284, 288.

### C. The City Undermined PAC's Proposal

The PAC worked diligently and dedicatedly, meeting over 120 times and holding public meetings over the course of 20 months to craft the proposed charter amendments. PAC completed its work on August 31, 2023. The City received the PAC's proposal on September 21, 2023. At the September 21, 2023, hearing, Council members expressed a belief that the public did not vote for the exact language described in Measure 26-217. In particular, council members announced their desire to minimize the budget of the proposed oversight board and to allow police officers onto the new board—both of which would violate the City Charter. The City also expressed a fixation on mandating "ride alongs" for future board members. The MHA and AMAC believe insisting on this would likely put members of the board, drawn from a pool of person whom have "experienced systemic racism and those who have experienced mental illness, addiction, or alcoholism," into an uncomfortable and potentially traumatic positions alone with a police officer in a cruiser.

The City then held a hearing on November 15, 2023, to discuss the PAC's proposal. The City presented its own watered-down version of the PAC proposal for the new Community Board for Police Accountability ("CBPA"). The City's proposed version undermined the voter's mandate and PAC's recommendations for the CBPA in a number of ways by:

- Reducing the proposed size of the oversight board. 35B.010(A)(1).

- Moving public investigation hearings to closed-door executive sessions. 35D.060(D)(1).

- Restricting membership of persons with "bias for or against law enforcement" from becoming a board member. 35B.010(D)(6)(c).

- Placing three police representatives, including a representative chosen by PPA, on the committee responsible for nominating board members. 35B.010(B)(2)(c)-(e).

Ex. 02 – Proposed Chapter 35 of Portland City Code.

The City adopted its version of the PAC proposal and directed the City Attorneys Office to "seek required approvals from the United States Department of Justice and the United States District Court, and comply with any mandatory collective bargaining obligations" within 60 days.[5]

According to the Draft 2023 Q4 COCL Report,[6] "At present [April 2024], the City and PPA are still bargaining proposed amendments to the Settlement Agreement based on the code change, after which DOJ will review them." The code amendments have yet to be approved by Plaintiff United States.  While the MHA and AMAC understand that these timelines must be flexible to account for bargaining, and both parties strongly support the collective bargaining process, it is nonetheless frustrating that it appears unlikely the timeline carefully planned and laid out by the PAC will not be met.

**D. PPA Works to Undermine the Voter Approved Measure While Bargaining with the City**

While PPA has yet to make good on its promise to litigate the implementation of the CBPA, it has opened a new front of opposition by filing ballot initiatives that seek to repeal and eliminate the CBPA—all while bargaining with Defendant City of Portland on the terms of the watered-down PAC proposal. The most concerning of these initiatives is Initiative PDX24OL-03, filed by PPA's attorneys and publicly boosted by PPA President Aaron Schmautz.[7] Ex. 03, Portland Ballot Initiative PDX24OL-03. The title given to this initiative by the City does not adequately describe the true nature of the PPA's ballot initiative, which is to radically transform

---

[5] https://www.portland.gov/council/documents/resolution/adopted/37637
[6] Covering a period of October 31, 2023, to December 31, 2023.
[7] Ken Boddie, *Portland Police Association president on measures to enhance public safety, police accountability*, Yahoo! News (April 28, 2024), available at https://news.yahoo.com/portland-police-association-president-measures-164500830.html

the oversight board. This initiative would gut the Charter amendments implemented by Measure

26-217. Changes include:

> (1) Amend Section 2-1001 by eliminating the Board's ability to investigate supervisors of Portland Police Bureau employees, eliminating the ability of the Board to impose discipline as determined by the Board, and eliminating the Board's authority to make recommendations regarding police practices, policies, and directives with a primary focus on community concerns; minimizing the mission of the Board to reviewing and recommending improvements to Portland Police Bureau recruiting, retaining, and training efforts and investigating and making disciplinary recommendations about certain complaints for Portland Police Bureau sworn employees only;

> (2) Amend Section 2-1002 by eliminating the Board membership diversity requirement that the Board includes "those from diverse communities and with diverse lived experiences, particularly those who have experienced systemic racism and those who have experienced mental illness, addiction, or alcoholism" and replacing this language with a requirement to include people from "various professional backgrounds, and from different geographic areas";

> (3) Fully repeals Section 2-1003, which prohibits people currently employed by law enforcement or their immediate family members or former law enforcement employees from serving on the Board;

> (4) Amends Section 2-1004 by eliminating the minimum budget set at "proportional to be no less than 5 percent of the Police Bureau's Annual Operating Budget" and replacing it with language permitting City Council to set the budget;

> (5) Amends Section 2-1005 to require the Director and professional staff of the Board only receive the same briefing as Board members;

> (6) Fully repeals Section 2-1006 which describes the Board's "Independent Authority" to exercise independent judgment in performing its powers and duties, prohibits the Mayor, City Council, Auditor, and City departments, bureaus, and other administrative agencies from interfering in the Board's exercise of independent judgment, and requires that the Board's office be located outside Portland Police Bureau facilities;

(7) Amends Section 2-1007 by eliminating the ability of the Board to investigate complaints involving supervisors, the ability to subpoena documents, the ability to issue disciplinary actions, and the authority to make policy recommendations; reducing the Board's investigation authority to deaths in custody and deadly force, excessive force, discrimination, constitutional rights violations, and bias-based policing; reducing the evidentiary powers of the Board to the ability to "gather" and "seek" information; removes the Board's final discipline authority and transfers that power to the Chief of Police, and requires the Board to issue public reports about their investigations and recommendations of discipline that anonymize the identities of all parties involved, including the officers who are subject of the misconduct investigations; and

(8) Fully repeals Section 2-1008 which currently provides the Board's authority to investigate all deaths in custody and uses of deadly force; all complaints of force resulting in injury, discrimination, and constitutional rights violations; and any "other complaints or incidents of misconduct as [the Board] see fit."

Ex. 03, Portland Ballot Initiative PDX24OL-03.

The PPA measure title is currently being challenged by the Oregon ACLU and Rev. Dr. LeRoy Haynes. Critically, the PPA's filing of this initiative is contrary to the stated goals of paragraph 195, directly contradicts its agreement to paragraph 195, and puts the City in the difficult position of bargaining over the very issue the PPA is litigating and seeking a ballot initiative. This seems to fit the definition of "bad faith." If the ballot measure title is approved, the PPA has until July 5, 2024, to gather signatures sufficient to place it on the November 2024 ballot.

## DISCUSSION

The United States, the City, and the PPA must explain to the Court and the public why the settlement agreement has not been enforced nor adhered to.

As the above factual history demonstrates, the fate of Paragraph 195 and Measure 26-217 are imperiled by the City's and the PPA's affirmative actions to undermine both the will of the

voters and Paragraph 195. Even if Initiative PDX24OL-03 struggles to make it onto the November 2024 ballot, it appears certain that its existence will be used as leverage against Defendant City of Portland to further undermine the provisions of Measure 26-217 and Paragraph 195 during bargaining.

**CONCLUSION**

MHA and AMAC join in this status report to highlight the importance of this issue, to seek an accounting of why Paragraph 195 has not been enforced, and to urge the parties to promptly come into compliance with its requirements or give a full and transparent accounting of why they have not.

DATED: May 8, 2024

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB 136428
Of Counsels to *Amicus* Mental Health Alliance

Ashlee Albies, OSB 051846
Of Counsels to *Enhanced-Amicus* Albina
Ministerial Alliance Coalition