**Juan C. Chavez**, OSB #136428
Email: jchavez@ojrc.info
**Franz Bruggemeier**, OSB # 163533
Email: fbruggemeier@ojrc.info
**Amanda Lamb**, OSB #222284
Email: alamb@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-275-1839

Attorneys for *Amicus Curiae* Mental Health Alliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>Defendant. | Case No. 3:12-cv-02265-SI<br><br><br>DECLARATION OF JUAN C. CHAVEZ |

I, Juan C. Chavez, submit the following declaration:

I am the counsel of record for the Mental Health Alliance, and I make this declaration in support of the Joint Status Brief on ¶ 195 for the purpose of identifying exhibits. My statements are true to the best of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

DECLARATION OF JUAN C. CHAVEZ
Page 1 of 2

1.      **Exhibit 1** is a true and correct excerpt from the transcript of the Fairness Hearing held on

April 29, 2022 in *United States v. City of Portland*, USDC of Or. Case No. 3:12-cv-

02265-SI.

2.      **Exhibit 2** is a true and correct copy of the proposed Chapter 35 code amendments passed

by Portland City Council on November 15, 2023.

3.      **Exhibit 3** is a true and correct copy of the Ballot Initiative PDX24OL-03 as retrieved

from the Portland City Auditor's Office.

**I hereby declare that above statement is true to the best of my knowledge and belief,**

**and that I understand it is made for use as evidence in court and is subject to**

**penalty for perjury.**

DATED: May 8, 2024.

*/s/ Juan C. Chavez*
Juan C. Chavez, OSB #136428

DECLARATION OF JUAN C. CHAVEZ
Page 2 of 2

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF OREGON

 3                         PORTLAND DIVISION

 4
     UNITED STATES OF AMERICA,        )
 5                                    )
                         Plaintiff,   )  Case No. 3:12-cv-02265-SI
 6                                    )
                    v.                )
 7                                    )  April 29, 2022
     THE CITY OF PORTLAND,            )
 8                                    )
                         Defendant.   )  Portland, Oregon
 9

10

11

12                       STATUS CONFERENCE

13                    TRANSCRIPT OF PROCEEDINGS

14            BEFORE THE HONORABLE MICHAEL H. SIMON

15             UNITED STATES DISTRICT COURT JUDGE

16

17

18

19

20

21

22

23

24

25
```

```
 1                          APPEARANCES

 2  FOR THE PLAINTIFF:     Jared Hager
                           U.S. Attorney's Office
 3                         1000 SW Third Avenue
                           Suite 600
 4                         Portland, OR 97204

 5
                           R. Jonas Alexander Geissler
 6                         Laura Coon
                           U.S. Department of Justice Civil Rights
 7                         Division
                           950 Pennsylvania Avenue, N.W.
 8                         Washington, DC 20530

 9

10  FOR THE CITY:          Heidi Brown
                           Sarah Ames
11                         Robert Taylor
                           Vamshi Reddy
12                         City Attorney's Office
                           1221 SW Fourth Avenue
13                         Room 430
                           Portland, OR 97204
14

15

16  FOR PORTLAND POLICE    Anil Karia
    ASSOCIATION:           Public Safety Labor Group
17                         3021 NE Broadway
                           Portland, OR 97232
18

19

20  FOR AMICUS AMAC:       Jessica Ashlee Albies
                           Albies & Stark, LLC
21                         210 SW Morrison Street
                           Suite 400
22                         Portland, OR 97204

23

24

25
```

```
 1                         APPEARANCES (Continued)

 2

 3   FOR AMICUS MHA:        Juan C. Chavez
                            Oregon Justice Resource Center
 4                          PO Box 5248
                            Portland, OR 97208
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   COURT REPORTER:       Dennis W. Apodaca, RDR, CSR
                            United States District Courthouse
24                          1000 SW Third Avenue, Room 301
                            Portland, OR 97204
25                          (503)326-8191
```

1                                    INDEX

2   Status conference held April 29, 2022                        5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Very good.  Thank you, Mr. Taylor.

2          I will certainly include you in the list of people

3   that have a very difficult job in this room, and I thank you

4   very much for your service and for your candor here today.  We

5   will probably be talking about some of these issues in future

6   hearings, but I think that's enough for right now.

7          MR. TAYLOR:  Thank you, Your Honor.

8          THE COURT:  Thank you.

9          Mr. Karia, on behalf of Portland Police Association,

10  I look forward to anything you may wish to say.

11          MR. KARIA:  Thank you, sir.  With respect to the core

12  issue before the Court at Docket No. 276, as filed by the

13  United States, I want to make crystal clear that the police

14  association does not object to the proposed settlement

15  agreement amendments and that the Association agrees that those

16  amendments are fair, adequate, and reasonable.

17          Your Honor has already highlighted a particular

18  element of that analysis that you are paying particular

19  attention to, of course, adequacy.  The Ninth Circuit has

20  hinted, as the United States has captured in its briefing at

21  Docket 286, that when the plaintiff here is sitting as

22  effectively a monitor, that some deference should be paid to

23  the sorts of remedies proposed by the United States.

24          And because this is Portland, there is always process

25  and a unique approach, and the months-long mediation amongst

1

2                                    --oOo--

3

4            I certify, by signing below, that the foregoing is a

5    correct transcript of the record of proceedings in the

6    above-entitled cause.   A transcript without an original

7    signature, conformed signature, or digitally signed signature

8    is not certified.

9
     /s/ Dennis W. Apodaca                    July 19, 2022
10   DENNIS W. APODACA, RDR, RMR, FCRR, CRR             DATE
     Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Chapter 35 Community Police Oversight Board

## 35A.010 Creation of City of Portland Community Police Oversight Board

A. Portland City Charter Chapter 2, Article 10 has established the City of Portland Community Police Oversight Board. The name of the Board shall be the Community Board for Police Accountability (CBPA). The CBPA shall exercise independent judgment in performing all legally assigned powers and duties. The Mayor, City Council, Auditor, City Administrator and Deputies, and City departments, bureaus, and other administrative agencies shall not interfere in the exercise of the CBPA's independent judgment.

1. The Office of Community-based Police Accountability (OCPA) is established by this Code and reports to the CBPA.

2. The CBPA and OCPA collectively form the "Oversight System." References to "Oversight System" in this Code refer to the CBPA and OCPA, consistent with their roles and functions as outlined in this Code.

3. The Oversight System shall report to a Deputy City Administrator in the same manner as other City Bureaus. The CBPA may delegate authority given to it under the Charter and this Code to the OCPA, to permit the Oversight System to fulfill its obligations established under Charter 2-10.

4. The physical office of the CBPA shall be located outside of a Portland Police Bureau facility.

5. The Oversight System shall develop working relationships with other parts of City government to ensure its ability to participate in relevant City processes related to the tasks required of the CBPA by law or regulation.

B. Purpose. The Oversight System shall independently investigate sworn employees and supervisors thereof within the Portland Police Bureau (PPB) promptly, fairly, and impartially, and impose discipline if determined appropriate by the CBPA, and make recommendations regarding police practices, policies, and directives to PPB with a primary focus on community concerns.

C. The CBPA may recommend administrative rules to the Chief Administrative Officer prior to January 1, 2025, and thereafter to the City Administrator, who shall have final rule-making authority. The CBPA shall have the authority to

adopt operating policies and procedures that apply to the Oversight System as necessary to carry out their duties, and bylaws that apply to the CBPA. The CBPA shall subject all of its administrative rules, policies and procedures, and bylaws to a community input period that shall last not less than 30 days, except that the CBPA may adopt policies, procedures, and bylaws in an urgent situation that shall be in effect no longer than 90 days and thereafter shall follow the community input process. The Chief Administrative Officer until January 1, 2025 and thereafter the City Administrator may adopt temporary administrative rules that shall be in effect no longer than 90 days and thereafter shall follow the community input process.

D. Copies of all current administrative rules, policies and procedures, and bylaws will be posted on the Oversight System's website.

## 35A.020 Definitions

In this Chapter:

A. **"CBPA"** refers to the Community Board for Police Accountability and members thereof, and is the community police oversight board established under Charter 2-1001.

B. **"OCPA"** refers to the Office of Community-based Police Accountability of the City of Portland and the employees thereof.

C. "**Oversight System**" refers collectively to the CBPA and OCPA.

D. **"Director"** refers to the Director of the OCPA, who shall be a Bureau Director for purposes of Charter 4-301.

E. **"Accountability"** is a comprehensive system of checks and balances aimed at ensuring that in instances where a Covered Employee violates City rules or PPB policy, including when such violation is damaging to other individuals or the community at large or constitutes a failure to carry out their duties properly, they are held responsible through a fair and impartial process that helps foster community trust with police.

F. **"Administrative Investigation"** is an employment investigation into an allegation of a Covered Employee's violation of City rules or PPB directives and that may result in disciplinary or corrective action in the employment relationship. This shall not preclude criminal investigations or investigations by

the Ombuds office, Elections office, and other similar offices that do not result in disciplinary action in the employment relationship.

G. **"Complainant"** is a person who has filed a complaint of misconduct against a Covered Employee and was the recipient of alleged misconduct, as distinct from a Third-Party Complainant.

H. **"Covered Employee"** is a sworn employee and supervisors thereof within PPB. The Chief of Police is not a Covered Employee under City Charter section 2-401(g).

I. **"Immediate Family Members"** include parents, spouses, domestic partners, children, or siblings but do not include family members who are estranged.

J. **"Independent Judgment"** is the ability to make considered decisions or come to sensible conclusions that are not dependent on another's authority, free from outside control, including improper influence from law enforcement, political actors, and other special interests looking to affect the operations of the Oversight System. The exercise of independent judgment shall be fair, reasonable, objective, and consistent with applicable laws, rules, policies, and procedures**.**

K. **"Just Cause"** per ORS Chapter 243, is a cause reasonably related to the public safety officer's ability to perform required work. The term includes a willful violation of reasonable work rules, regulations or written policies**.**

L. **"Law Enforcement Agency"** means county sheriffs, municipal police departments, public university police departments, state and federal police agencies, and municipal, state and federal corrections agencies**.**

M. **"Notice"** occurs when it is sent or otherwise communicated to the last known contact information. If no contact information was provided to OCPA staff when requested, then notice is not required**.**

N. **"Panel"** is a subset of the CBPA's full membership empowered to make **decisions related directly to cases of allegations of administrative misconduct by Covered Employees.**

O. **"Preponderance of the Evidence"** is the standard of proof applied to findings and means to prove that something is more likely than not.

P. **"Third-Party Complainant"** is a person who has filed a complaint of misconduct against a Covered Employee and was not the recipient of alleged misconduct.

**35A.030 Obligation to Follow Law**

In the performance of its duties, the CBPA and OCPA are obligated to follow all applicable federal, state, and local laws and rules, including but not limited to the United States Constitution and Oregon Constitution; City Charter; collective bargaining agreements; and Oregon public records, public meetings, and ethics laws.

**35A.040 Powers and Duties of the Oversight System**

The CBPA and OCPA have the following powers and duties:

A. **Intake.** The OCPA shall receive complaints alleging Covered Employee misconduct and determine the appropriate manner to address the complaint consistent with this Code and CBPA procedure.

   1. When there is an allegation of misconduct against the Chief of Police, the OCPA shall investigate the allegation and report its findings to the Mayor. The Mayor may elect for another entity to perform the investigation.

B. **Initiate and conduct administrative investigations.** The OCPA will initiate and conduct administrative investigations that are under its jurisdiction and in the manner described in Section 35D.

   1. For formal investigations conducted by the OCPA, investigation reports will include factual findings and will be resolved in one of two ways: 1) sustained, meaning the action is found by preponderance of the evidence to have violated City policy; or 2) not sustained, meaning the evidence is not sufficient to demonstrate by a preponderance of the evidence that a violation of City policy occurred, or, the evidence demonstrated by a preponderance that the Covered Employee's conduct was lawful and within policy.

   2. The OCPA shall send notice to the Police Chief or designee that it intends to conduct an administrative investigation into misconduct before initiating the investigation.

   3. The OCPA shall have the authority to obtain information to investigate allegations of misconduct.

    a. The CBPA and OCPA shall have the authority and ability to gather and compel all evidence relevant to an investigation, including access to all police records, to the extent allowed by federal and state law.

    b. Consistent with other provisions of this Code, the CBPA and OCPA shall have the authority to compel witnesses who are City Employees to participate in investigations and to answer all questions completely and truthfully, and to warn City Employees that refusal to truthfully and completely answer all questions may result in discipline up to and including termination. The Oversight System shall coordinate with City Bureaus and Offices, including PPB and any applicable union representative, to schedule investigatory interviews at a time when the employee is on duty and that does not unduly interfere with the operations of the Bureau or Office and is consistent with any applicable collective bargaining agreement. The investigation shall not be unreasonably delayed. The CBPA and OCPA shall have the authority to compel and subpoena witnesses outside of City employment to the extent allowed by law.

4. Access to information.  Notwithstanding any other provision of City law or rule, OCPA shall have access to and be authorized to examine and copy, without payment of a fee, any Bureau or Office information and records relevant to an investigation, including confidential and legally privileged information and records, so long as privilege is not waived as to third parties, as well as access to police databases, subject to any applicable state or federal laws. The Oversight System shall not disclose confidential or legally privileged information or records and shall be subject to the same penalties as the legal custodian of the information or records for any unlawful or unauthorized disclosure.

    a. Records shall include all records as defined under Oregon Public Records Law.

    b. PPB and other City Bureaus and Offices shall not unreasonably delay in providing records relevant to an investigation to the OCPA. Information received under this provision by the Oversight System shall not be used in a way that undermines or interferes with an ongoing criminal investigation or prosecution.

C. **Recommend policy changes**. The CBPA shall have authority to make policy and directive recommendations to PPB. PPB shall consider and accept or reject all policy or directive recommendations made by the CBPA. If PPB rejects a policy or directive recommendation, then at the request of the CBPA, City Council must consider and vote to accept or reject the policy recommendations received from the CBPA.  Council's decision will be binding on PPB.

D. **Outreach**. The CBPA and OCPA may widely distribute complaint forms in languages and formats accessible to community members and educate them on the process of reporting complaints.

E. **Oversight System External Audit**. The Oversight System shall have the authority to hire a qualified independent third-party expert to audit the Oversight System's closed investigations and its disciplinary decisions pertaining to officer-involved shootings, in-custody deaths, and uses of deadly force that do not result in death to assess and provide recommendations. For purposes of this section, "closed investigation" shall mean that the investigation has been completed, a determination was made either not to issue discipline or any discipline arising from the incident has been issued and the Covered Employee's grievance and appeal rights have been exhausted.

   1. Consistent with applicable law and collective bargaining agreements, the completed reviews of these closed investigations shall be described in periodic reports available to the public. Names of any individuals, including but not limited to Covered Employees or community members and complainants, that have not already been publicly released by the City will be redacted or otherwise changed to maintain privacy. (E.g., Employee A, Community Member A, etc.)

   2. These reports will be presented to the public and City Council.

F. **Annual reports.** The CBPA will annually publish a written report with an Executive Summary. The report will be presented at a public meeting of the CBPA. The annual report will also be presented at a public City Council session.

   1. The Annual Report shall include the following information:

      a. Overview of the CBPA, its staff, and its functions;

      b. Summary of recommendations submitted by the CBPA to the Police Bureau, and if applicable City Council, regarding changes to PPB policy and directives along with outcomes for each listed recommendation;

      c. An implementation update for accepted policy recommendations;

d. Summary of complaints received by the CBPA over the year, while not disclosing confidential information or information exempt from disclosure under public records laws. All names of Covered Employees and community members will be anonymized. (E.g., Employee A, Community Member A, etc.);

e. The number of Covered Employees who have two or more sustained complaints within one year;

f. The number of complainants who filed multiple complaints, and issues that were raised by multiple complaints;

g. Demographic profiles of the complainants to the extent that information exists or is voluntarily provided by the complainants;

h. Number and percentage of intake complaints that were appealed for reconsideration by the Director and the outcome of those appeals;

i. Number and percentage of cases referred to mediation;

j. Number, percentage, and type of informal outcomes, cases not sustained, non-disciplinary corrective actions, and discipline decisions that were imposed;

k. Number of discipline decisions that were grieved under the applicable collective bargaining agreement or appealed to the Civil Service Board and whether discipline was upheld, modified, or overturned;

l. Number of times a PPB employee failed to comply with the CBPA's request for an interview or for the production of documents, and the number of times a PPB sworn employee failed to comply with a valid subpoena, and whether discipline was imposed for any such non-compliance;

m. Number of closed cases involving either uses of deadly force or in-custody deaths;

n. Number of cases in which the CBPA failed to complete its administrative investigation within 180 days of commencement of an investigation;

o. List of CBPA-member-required training and percentage of CBPA members who have completed each training.

p. Identification of trends with respect to complaint types and frequency, and consistency of corrective action imposed; and

q.  Participant satisfaction survey results and community and PPB feedback.

**G. Data dashboards** The Oversight System shall develop interactive data anonymized dashboards.

**H. Legal Advice.** The CBPA may obtain legal advice and representation from the City Attorney, or may retain or employ outside legal counsel in a manner consistent with the procedures of City Code 5.68.060.

## 35B.010 CBPA Membership

A.  **Number of members and alternates.**

1.  The CBPA shall consist of twenty-one (21) members.

2.  The CBPA shall also have six (6) alternates, appointed by Council from individuals who apply for CBPA membership and meet the qualifications included in this Code section. Alternates shall be available to serve when a CBPA position is vacated. Alternates shall complete all requirements necessary to be prepared to act as a replacement. The Council shall appoint an alternate to the CBPA when a CBPA position is vacated. Until appointed as a CBPA member, alternates may not serve on the CBPA.

B.  **Appointment process.** CBPA members and alternates shall be appointed by a vote of the City Council.

1.  CBPA members shall be appointed but shall not serve on the CBPA until passing the background check provided for in this Section. If a person does not pass, or fails to comply with, the background check, then Council shall appoint another CBPA member.

2.  A nominating committee comprised of members as listed below shall solicit applicants for the CBPA and shall refer potential CBPA members to City Council based on a recommendation of a majority of nominating committee members. The initial nominating committee shall be as stated below, except in lieu of subparagraph (a) below there shall be two members of the Citizen Review Committee community member, and in lieu of subparagraph (b) below Council shall each appoint one member. The nominating committee shall be comprised of the following members:

    a.  Two CBPA representatives;

    b.  One community member from each Council district as designated by the Council members of that district;

    c.  One representative designated by the Chief of Police;

    d.  One representative from PPA; and

    e.  One representative from PPCOA.

C.  **Quorum Requirements.**

1.  **Matters Affecting Full CBPA:** A simple majority of the full CBPA shall constitute a quorum of the CBPA for decisions about procedures, protocols, or other decisions of the CBPA provided for in this Code Section. Unless otherwise stated in this Code, a simple majority of the full CBPA shall vote in favor of adopting procedures, protocols and other decisions of the CBPA provided for in this Code Section for such to go into effect.

2.  **Removal**: Removal of the OCPA Director shall require a "yes" vote of two-thirds of the full CBPA.

3.  **CBPA Review Panels:** All panel members are required to be present to establish a quorum.

D.  **Qualifications and Selection Criteria**: Prospective CBPA members shall be considered for vacancies on the CBPA based upon the following qualifications and selection criteria:

1.  CBPA members must live or work in the City of Portland for at least twelve months prior to their appointment.

2.  In making appointments, Council shall make provisions to ensure the CBPA's membership includes representation from diverse communities including those with diverse lived experiences, particularly those who have experienced systemic racism and those who have experienced mental illness, addiction, or alcoholism.

3.  Individual CBPA members must have a commitment to police accountability, fairness, and ensuring that PPB policies do not violate state and federal constitutional rights. Individual CBPA members must also commit to upholding the City's core values of anti-racism, equity, transparency, communication, collaboration, and fiscal responsibility.

4.  CBPA members must be capable of making fair, objective, and impartial decisions consistent with applicable laws, rules, policies, and procedures and based on the evidence presented to them in an environment where controversy is common.

5. Prerequisites for Service on the CBPA:

   a. A prospective CBPA member must comply with ORS Chapter 244 (Government Ethics) and Portland City Code Chapter 1.03 (Code of Ethics) and disclose at the time of their application any potential or actual conflicts of interests. The City Attorney's Office shall conduct a check of prospective CBPA members for legal conflicts.

   b. The CBPA member must sign a confidentiality agreement.

   c. Background Check. Members shall pass a criminal background check by an entity other than the PPB to conduct such check. Background checks shall comply with all laws, including the Fair Credit Reporting Act. A background check shall include consideration of any potential CJIS-authorized waivers or exceptions for access to protected information. The Chief Administrative Officer until January 1, 2025, and thereafter the Deputy City Administrator assigned to the Oversight System will make the final determination as to whether an applicant has passed a background check.

6. Restrictions on CBPA Membership. The following individuals are not eligible for service on the CBPA:

   a. An individual currently employed by a law enforcement agency;
   b. An immediate family member of an individual currently employed by a law enforcement agency;
   c. Any individual who has an objective demonstration of bias for or against law enforcement; and
   d. An individual formerly employed by a law enforcement agency.

E. **Training and Other Requirements.** CBPA members and alternates shall complete these training and other requirements within six (6) months of appointment, unless extended for good cause. CBPA members shall not vote on Administrative Investigations prior to completing these requirements unless authorization is given by the Deputy City Administrator. Such permission shall only occur for CBPA members who have made a good faith effort to complete the requirements herein and there is good cause for any missing requirements.

1. Complete all paperwork necessary to ensure access to City resources, including compensation and other support services;

2. Complete orientation and training applicable to all members of a City governing body;

3. Become familiar with the City Charter Chapter 2, Article 10, and chapters of this Code that address the CBPA's roles and responsibilities;

4. Receive training on the CBPA's history, internal structure and processes, including CBPA bylaws, rules and procedures;

5. Become familiar with applicable federal, state, and local laws and rules, including but not limited to the United States Constitution and Oregon Constitution; City Charter; collective bargaining agreements; ORS 243.808-.812; ORS 236.350-370; and Oregon public records, public meetings, and ethics laws; and done in consultation with the City Attorney's Office;

6. Training and requirements for access to police databases, including any annual renewal requirements;

7. Receive instruction about PPB's history, procedures, policy development process, and PPB's training on de-escalation, equity, bias-based policing, and crisis intervention;

8. Participate in at least one PPB "ride-along" and PPB community academy;

9. Attend training on national best practices for civilian oversight of law enforcement misconduct;

10. Receive training about the City's Civil Service Board;

11. Receive training on relevant City personnel policies and procedures, procedural justice, and equity and implicit bias;

12. Receive training on using video footage in administrative or force investigations, limitations of video evidence, human performance dynamics and limitations, and cognitive interviewing techniques; and

13. Receive training in the legal requirements for maintaining the confidentiality of personnel records and other confidential documents or information.

The OCPA shall ensure training is offered at least annually for CBPA members and alternates.

F. **Term Lengths and Renewability.**

    1. CBPA members and alternates shall each serve a term of three years, unless reappointed by Council. An alternate CBPA member appointed to a CBPA vacancy shall serve the remainder of the vacant term.

    1. Initial appointment lengths may be staggered.

    2. CBPA members and alternates may apply to renew their term and will be considered for the position by the CBPA nominating committee.

    3. A CBPA member may be granted a leave of absence for good cause as approved by the Bureau of Human Resources, including in instances of illness, injury, or other personal hardship.

G. **CBPA Member Support and Compensation**

    1. CBPA members shall be eligible for compensation subject to applicable law, City policy, and rulemaking. This compensation may be up to the maximum allowable for volunteers under applicable law, subject to City Council approval.

    2. Additional reimbursement to CBPA members for expenses associated with service on the CBPA may be authorized, subject to City Council approval. The CBPA may establish non-financial support systems within or outside of City structures to support CBPA members, subject to City Council approval.

**35B.020 Resignation and Removal from CBPA**

A. A CBPA member may resign prior to the expiration of their term and shall provide written notice to the CBPA and the Director.

B. City Council may remove a CBPA member for cause. Cause for removal may include, but is not limited to:

    1. Official Misconduct (See ORS 162.405-162.415);

    2. Repeated and excessive unavailability for service, including unexcused absences, failure to participate, or inactivity;

    3. Excessive excused absences;

    4. Failure to timely disclose an actual conflict of interest;

5.  Loss of eligibility to serve, including no longer meeting any of the requirements such as living or working in the City of Portland;

6.  Member's, or immediate family member's, employment by a law enforcement agency;

7.  Failure to read entire case files and adequately prepare for Reviews;

8.  Breach of confidentiality;

9.  Objective demonstration of bias for or against the police;

10. Failure to attend scheduled training or to complete training within six (6) months of appointment or after any granted extensions;

11. Misconduct, such as harassment, discrimination, or retaliation;

12. Conduct that constitutes an improper disclosure of private information as defined in ORS 30.835; or

13. Any other cause which impacts the CBPA's effective operations.

C.  The Deputy City Administrator or designee shall confirm eligibility to serve on the CBPA not less than annually.

D.  The Bureau of Human Resources shall investigate allegations of misconduct regarding CBPA members and communicate their findings to City Council. The BHR Director may recommend, and the Deputy City Administrator may suspend, a CBPA member from duties pending the resolution of the allegations.


## 35B.030 CBPA Budget

A.  The CBPA's budget shall be a publicly disclosed, and shall comply with all State, City, Procurement, and City Budget Office budget requirements.

B.  Council shall adopt a budget at the conclusion of the budget cycle that is proportional to five percent (5%) of the concurrently adopted PPB annual operating budget.


## 35C.010 Director Roles, Responsibilities, and Delegation

A.  The CBPA shall hire a Director to manage the professional administrative staff and professional investigators, and to make operational and administrative decisions. The Director is a "Bureau Director" for purposes of Charter section

4-301 and shall be appointed by, and serve at the will and pleasure of, the CBPA. The same nominating committee that provides recommendations for CBPA member appointments will review applicants for Director and make recommendations for consideration by the CBPA. Professional staff of the Oversight System shall be appointed by and serve under the direction of the Director. Such appointment and service shall comport with all City and classified service requirements.

1. As part of the professional staff of the OCPA, the Director shall hire complaint navigators to help complainants navigate their cases. All complaint navigators shall be trained on culturally sensitive and trauma-informed support.

C. The Director shall make operational and administrative decisions for the OCPA.

D. The Director is authorized to adopt, amend, and repeal policies, procedures, and forms to implement the provisions of this Code and CBPA rules, including for the discharge of its duties.

E. The Director may delegate to a designee any or all duties or responsibilities.

## 35C.020 Staff Training and Qualifications

A. All OCPA employees shall be trained on the following areas of training that are required for CBPA members in Code section 35B.010(E)(3)-(9), and (11)-(13).

B. All OCPA employees who will have access to legally protected information shall pass a criminal background check performed by an entity other than the PPB. Background checks shall comply with all laws, including the Fair Credit Reporting Act. A background check shall include consideration of any potential CJIS-authorized waivers or exceptions for access to protected information.

C. Investigators shall also complete training in:

1. CBPA policies and directives;

2. Interviewing techniques;

3. Trauma-informed service delivery; and

4. Other relevant training needs as identified by the Director.

**35C.030 Staff Community Engagement**

A. The CBPA shall conduct public education on the role of the Oversight System and community members' rights, keeping the community informed of its activities, how to file complaints, and receive input.

B. The outreach shall be conducted in ways that are accessible in terms of language, abilities, and other considerations.

C. Community engagement shall include discussions on how to improve police practices and policy, which includes soliciting community input.

Educate the public about the processes of the Oversight System and the corrective action goals.


**35D.010 Elements of Administrative Process**

A. Beyond the requirements listed here and in other parts of this Code, the Oversight System shall develop rules and procedures for receiving and processing complaints, conducting investigations, reporting of findings, conclusions and recommendations, and taking of disciplinary action consistent with any binding disciplinary rules and applicable collective bargaining agreements or statewide standards.

B. Investigations must be conducted in a manner that is ethical, independent, thorough, timely, fair, and impartial.

C. Interviews

1. Interviews with Covered Employees shall be audio-only recorded and conducted in a manner that is consistent with state law and any applicable collective bargaining agreement.

2. Interviews with Complainants and witnesses shall be audio-only recorded.

   a. When a Complainant or witness is concerned about public release of their information, they may request that the information be treated as confidential. The CBPA may adopt a rule for handling of such information consistent with Oregon Public Records laws.

3. Investigations shall be completed even if an officer retires, resigns, or is terminated.

## 35D.020 Timelines for Completion

The CBPA shall adopt an administrative rule regarding the timelines for completion of investigations and any matters related to discipline.

## 35D.030 Oversight System Jurisdiction

A. The Oversight System shall accept complaints from any source. The CBPA is authorized to perform an administrative investigation into complaints against Covered Employees to determine compliance with City or Police Bureau policy, as well as all in-custody deaths and uses of deadly force by sworn members of the Police Bureau unless otherwise stated in this Code.

B. The Oversight System shall have the authority to administratively investigate for violation of City or PPB policy all complaints against Covered Employees as follows:

1. All allegations of excessive force;

2. Discrimination against a protected class as defined by local, state, or federal law in consultation with a BHR Business Partner;

3. Violations of federal or state constitutional rights;

4. Negligent discharge of a firearm, outside of a PPB Training event;

5. Biased-based policing;

6. Complaints referred to the Oversight System by Internal Affairs and accepted by the OCPA;

7. Officer failure to identify, consistent with ORS 181A.704; and

8. Complaints brought by a PPB sworn member who requests CBPA investigation.

C. The CBPA may also investigate:

1. Other allegations of misconduct by Covered Employees as the CBPA deems fit, provided that the CBPA first brings an ordinance to Council to amend this Code and add the newly covered misconduct to this Code section.

D. Criminal Investigations.

1. If a criminal investigation has been initiated against the involved member, or during the course of an Oversight System administrative investigation a basis for conducting a criminal investigation arises, the Oversight System

shall immediately advise the City Attorney or designee prior to initiating or continuing an administrative investigation.

2. The Oversight System shall toll the administrative investigation while the criminal investigation is ongoing except where the administrative investigation will not interfere with the criminal investigation.

3. In no event shall the Oversight System interview the Covered Employee, outside of the initial administrative investigatory interview in an instance of deadly force or an in-custody death, until the entity investigating the criminal charges advises the Oversight System that such interview will not interfere with the criminal investigation. The Oversight System shall take all steps necessary to meet constitutional requirements and comply with existing provisions of City labor agreements.

4. The Oversight System will have no role or responsibility in conducting criminal investigations of any kind.

E. The following types of complaints which are outside the CBPA's jurisdiction, shall be handled as follows:

1. When the complaint involves an allegation of a violation of Human Resources Administrative Rule 2.02, the complaint shall be referred to the Bureau of Human Resources within two business days. If the HRAR 2.02 allegation is covered under this Code subsection, then the Oversight System shall include a BHR Business Partner in the investigation.

2. When the alleged violations are not under the Oversight System's authority to investigate, the matter shall be referred to the appropriate investigatory City or outside entity.

3. Allegations of violations of truthfulness and courtesy directives and of criminal law.

   a. For allegations of violations of the truthfulness or courtesy directives or criminal law, the OCPA Director or designee shall receive access to the full PPB administrative investigation case file and report. The OCPA Director or designee shall only permit access to the full case file and report for purposes of preparing written feedback and recommendations. The OCPA Director or designee and those with access to this information shall treat it as confidential.

b. The OCPA Director or designee shall have not less than twenty-one days to submit written feedback and recommendations.

c. The OCPA Director or designee is authorized to provide summaries of these matters to the CBPA. Such summaries shall be provided in executive session in compliance with Oregon public meetings laws.

## 35D.040 Investigations of deadly force and in-custody deaths

The CBPA shall have authority to perform an administrative investigation into all in-custody deaths and uses of deadly force.

A. In use of deadly force and in-custody death cases, the OCPA Investigators shall coordinate with criminal investigators.

B. The OCPA's investigator shall take a compelled statement no later than 48 hours after the event after issuing a *Garrity* warning, unless the Covered Employee is incapacitated.

C. No CBPA member or OCPA employee may disclose any compelled statements taken pursuant to this Code Section, any evidence derived from those statements, or any information whatsoever gathered as part of the use of deadly force or in-custody death investigation to anyone outside of the CBPA or OCPA until the conclusion of any and all criminal proceedings against the Covered Employee.

D. When an incident involves police use of deadly force or an in-custody death, PPB shall notify the Director or designee as soon as possible after the incident. The Director or designee shall go to the scene and shall abide by police procedures and applicable law.

E. The OCPA shall have access to PPB's criminal investigatory records relevant to the deadly force or in-custody death case and shall maintain such records confidentially unless authorized otherwise by the PPB Chief or designee.

F. OCPA shall review uses of deadly force and in-custody deaths to determine if the force complied with policy. This investigation shall not only review the officer who used force but shall include a review of the supervisors.

G. The OCPA shall coordinate with PPB Training Division to provide access to transcripts and the investigative file throughout their investigation.  PPB Training Division shall review the investigation to determine whether the actions of Covered Employees were consistent with training and whether

those actions reflect training deficiencies. The Training Division shall present its analysis to the CBPA.

H. The PPB Chief or designee shall receive access to the full case file and investigation report. The Chief or designee shall only permit access to the full case file and investigation report for purposes of preparing written feedback or recommendations. The Chief or designee and those with access to it shall treat the information as confidential. The Chief or designee shall have not less than twenty-one days to submit written feedback or recommendations.

I. The OCPA shall thereafter submit the full case file, the investigation report, and any submissions from the PPB Chief or designee to the CBPA.

J. All uses of deadly force and in-custody death cases shall be reviewed by a quorum of the full CBPA.

K. The CBPA review shall follow the procedure as outlined in Section 35D.060(D)-(F).

L. If the CBPA determines the use of deadly force or in-custody death was sustained as out of policy, the OCPA will, if possible, provide notice to the person on whom deadly force was used or their survivor and opportunity to provide an impact statement to the CBPA. Such notice shall occur simultaneously to issuance of a proposed discipline letter.

A. All interviews of City and PPB employees shall be conducted in conformance with legal requirements and collective bargaining provisions.


## 35D.050 Administrative Investigation and Discipline Process

A. When the Oversight System receives a complaint regarding alleged misconduct of a Covered Employee, staff shall:

1. Intake:

    a. Assign a case number;

    b. Conduct a preliminary investigation, including gathering information about the complaint through an intake interview. All facts as alleged are assumed to be true for purposes of case handling decisions as outlined in Section 35D.050(A)(2); and

    c. Determine whether facts as alleged constitute a policy violation under the Oversight System's jurisdiction.

2. Make a case-handling decision:

   a. Conduct a full investigation when facts as alleged constitute a policy violation under the Oversight System's jurisdiction, except as follows:

      i. When the matter falls under section 35D.050(A)(2)(d)(i), the Oversight System may refer complainant and Covered Employee to mediation and close the case; or

      ii. Where there is clear and convincing evidence that the Covered Employee did not engage in misconduct. Allegations of excessive force shall be subject to full investigations unless there is clear and convincing evidence that the allegation has no basis in fact.

   b. Administratively close the complaint when facts as alleged do not constitute a policy violation under the Oversight System's jurisdiction or the misconduct would be so minor that the matter would be better addressed through other means;

      i. If a Complainant disagrees with the OCPA staff's decision to administratively close a complaint, they can appeal the decision if within fourteen (14) days of the date the notice of administrative closure is sent to the Complainant or they are otherwise notified, they file a request for the OCPA Director or designee to review the decision to administratively close the complaint to determine if the Investigator gave proper consideration to the allegations.

      ii. The CBPA shall adopt a rule for this appeal process.

   c. Refer to other City entity or outside entity if not within the Oversight System's jurisdiction; or

   d. Mediation when:

      i. the misconduct would be so minor that the matter would be better addressed through other means; or

      ii. when a case is administratively closed and mediation could benefit the relationship between PPB and the community member.

3. If appropriate for a full investigation, identify the allegations or possible rule violations.

4. Complete an investigation report outlining the evidence obtained during the investigation and make a recommendation as to whether the evidence supports a finding of sustained or not sustained.

5. Provide notice in writing, if possible, to the Complainant and Covered Employee stating the allegations and the investigator's recommendation to either sustain or not sustain as to each allegation.

6. The Complainant shall have not less than fourteen days to provide an impact statement and any additional information they believe has not already been considered.

7. The Covered Employee shall have not less than fourteen days to provide any additional information they believe has not already been considered.

8. Provide to the PPB Chief or designee access to the full case file and investigation report. The Chief or designee shall only permit access to the full case file and investigation report for purposes of preparing written feedback or recommendations. The Chief or designee and those with access to it shall treat the information as confidential. The Chief or designee shall have not less than twenty-one days to submit written feedback or recommendations. If the Complainant or Covered Employee provides additional information, the Chief or designee shall receive such information and have five days to provide additional written feedback or recommendations.

9. Submit the full case file, the investigation report, and any submissions from the Complainant, Covered Employee, and the PPB Chief or designee to the CBPA.

10. The OCPA will provide a Complaint Navigator no later than at the determination by the OCPA to conduct a full investigation. The CBPA may adopt a rule requiring assignment of a Complaint Navigator earlier in the process.

## 35D.060 CBPA Review

A. All uses of deadly force and in-custody death cases shall be reviewed by a quorum of the full CBPA and in the manner stated in Section 35D.040.

B. For all other cases within the CBPA's jurisdiction, the CBPA shall establish Review Panels to make findings based on the investigation and determine whether City rules or PPB directives were violated.

1. Panels shall be comprised of three (3) CBPA Members, who shall attend all Reviews for the assigned case.

C. Panel assignments shall be made in rotation and in a manner that will ensure the Panel reflects the demographic and life experience make-up of the CBPA to the extent possible. Altogether, the CBPA shall ensure a balance that allows the Panel as a whole to benefit from the knowledge and expertise of its individual members.

D. **Findings and Investigation Review**.

1. **Case presentation.** At the Findings Review, the OCPA investigator or designee shall present the report to the CBPA for uses of deadly force and in-custody deaths and to the Review Panel Members (Reviewing Members) in Executive Session, unless the Covered Employee opts for public session. Reviewing Members may ask questions and discuss the case.

2. **Consensus on investigation.** At the conclusion, Reviewing Members shall by majority consensus either:

   a) send the matter back for further investigation; or
   b) propose to either sustain or not sustain each allegation and explain the facts that support their proposed findings and the policy or directive at issue.

3. **Proposed discipline and binding discipline rules.** If a majority of Reviewing Members propose to sustain one or more allegations, those same Reviewing Members shall propose discipline based on any binding discipline rules, such as a collective bargaining agreement or statewide standards. For the purpose of making disciplinary decisions, the Reviewing Members shall have access to the full investigation file and personnel records of the Covered Employee, including all commendations and prior corrective action.

4. **Issuance of proposed discipline.** Based on the majority vote of Reviewing Members regarding proposed discipline, the OCPA staff, in collaboration with the Reviewing Members shall prepare a written letter to the Covered Employee detailing the findings and conclusions of the majority vote, as well as the proposed discipline and basis thereof, including the date for a Due Process Review, which shall be no sooner than seven (7) days after

issuance of the written letter. OCPA staff shall also provide the Covered Employee, and any appropriate union representative, with access to a copy of the file provided to the Reviewing Panel once the letter is issued.

E. **Due Process Review**. The Covered Employee shall be provided a Due Process Review. This Review shall be held in Executive Session unless the Covered Employees opts for public session. This Review will provide the Covered Employee and their representative with the opportunity to present to the Reviewing Members any information or mitigation as deemed appropriate by the Covered Employee. The Covered Employee may waive their right to appear at the Due Process Review and may choose to submit written response. In addition, the Chief or designee shall attend the Due Process Review.

F. **Final Findings Review**. Except as stated herein, this Review shall be held in Executive Session unless the Covered Employees opts for public session. The Covered Employee and their representative shall be excused at the conclusion of the Due Process Review. The Reviewing Members shall discuss the information presented at the Due Process Review and have access to the full investigation file and personnel records of the Covered Employee, including all commendations and prior corrective action, for the purpose of making disciplinary decisions.

1. A majority of Reviewing Members shall reach a consensus to:

    a. send the matter back for further investigation;

    b. either sustain or not sustain each allegation and explain the facts that support their findings and the policy or directive at issue; or

    c. recess for not more than seven (7) days to consider any information from the Due Process Review, after which they will reconvene to reach consensus and then vote to sustain or not sustain each allegation.

2. If a majority of Reviewing Members reaches consensus to sustain any allegations, they shall then reach consensus as to the appropriate corrective action based on any binding discipline rules, such as a collective bargaining agreement or statewide standards.

3. Once consensus is reached, a formal vote shall be taken in public session. The formal vote shall occur as follows:

a. Reviewing Members shall vote on whether to sustain or not sustain each allegation, which shall only be referenced by "allegation 1", "allegation 2", and so forth, and the Covered Employee shall be anonymized.

b. Reviewing Members shall also vote on the appropriate final corrective action to be imposed.

4. Based on the majority vote regarding imposed discipline, the OCPA staff, in collaboration with the Reviewing Members during Executive Session, shall prepare a written letter to the Covered Employee detailing the findings and conclusions of the majority vote, a summary of the information presented at the Due Process Review and how that information was considered, the imposed discipline and basis thereof, and the voting tally showing the vote of each Reviewing Member.  Such letter shall include the fact of any grievance or appeal rights.

## G. Stipulated Discipline Process

1. If the case is appropriate for Stipulated Discipline under City Code section 3.20.XXX (currently 140(J)), prior to referring to the Reviewing Panel for Findings Review the Director or designee shall recommend findings and proposed discipline and provide notice to the Covered Employee of such recommendation, who may then request stipulated discipline.

2. If, after the conclusion of the presentation of the case, a majority of the Reviewing Panel at Findings Review proposes to adopt the recommendation from the Director or designee for stipulated discipline, the Reviewing Panel shall then go into public session and shall follow the process outlined in Section 35D.060(F)(3) to enter the Stipulated Discipline determination as final discipline in an anonymized manner. Based on the majority vote of the Panel of Reviewing Members regarding the stipulated discipline, the OCPA staff shall prepare a written letter to the Covered Employee detailing the findings and conclusions of the investigation and the imposed discipline and basis thereof.

## 35D. 070 Review Procedures

A. All CBPA and Panel Reviews shall be supported by an OCPA staff member, a neutral facilitator, and a labor and employment attorney from the City Attorney's Office. The CBPA may adopt rules to include advisory members in

CBPA or Panel Reviews, such as, OCPA Director or designee, and representatives from the PPB Training Division, BHR, and PPB Internal Affairs, but shall not include the Complainant or the Covered Employee, except the Covered Employee may attend the Due Process Review. All attendees shall sign a confidentiality agreement.

B. Prior to CBPA and Panel Reviews, the Reviewing Members shall review all investigative materials and any impact statements from the Complainant. Reviewing Members shall not discuss the matter with other CBPA members until the CBPA or Panel Review. Reviewing Members shall not review or consider materials or information outside of the investigative materials, but at the conclusion of the CBPA or Panel Review, Reviewing Members may refer the case back to OCPA if additional investigation is warranted.

C. CBPA and Panel Reviews shall be noticed as required by Oregon Public Records laws and in anonymized manner.

D. The Reviewing Members shall only sustain an allegation if the preponderance of evidence supports this finding.

## 35D. 080 Subpoenas

The CBPA shall have the authority to issue and enforce all categories of subpoenas to the extent allowed by law.

## 35D.090 Alternative Dispute Resolution

Informal Resolution

A. If the Complainant expresses an interest in resolving their complaint informally through discussion with the Covered Employee's supervisor, the Director shall determine whether such resolution is appropriate.

  1. The Director or designee shall confer with the Covered Employee's supervisor about the possibility of an informal resolution process, and the supervisor shall make a determination whether to resolve the case informally or send it back to the OCPA for full investigation.

  2. Once approved for informal complaint resolution, a case can be resolved without full investigation and the Complainant will be informed of this decision.

3. If the case is sent back for full investigation by the supervisor, or informal resolution is unsuccessful, the OCPA will inform the Complainant.

Mediation

A. The Oversight System is authorized to provide for voluntary, confidential mediation between Complainants and Covered Employees as provided for in this Code and to improve police-community relations. There shall be no cost to any party to utilize the mediation option.

B. In addition to other provisions for mediation in this Code, mediation shall be offered to the Covered Employee and Complainant after a Panel Review votes to sustain a finding. Such mediation is not in lieu of discipline, although it may constitute education-based alternative.

## 35D.100 Appeals

A. Appeal of Administratively Closed Complaint. If a Complainant disagrees with the OCPA investigator's decision to administratively close a complaint, they can appeal the decision as provided for in Section 35D.040(A)(2)(b)(i).

B. Appeals to City's Civil Service Board or Arbitration. If a Covered Employee chooses to appeal to the City's Civil Service Board or if a Covered employee or their collective bargaining representative files a grievance under a collective bargaining agreement, the Reviewing Panel shall receive a copy of the appeal notice. The CBPA and OCPA shall cooperate with the City Attorney's office designee handling the appeal or grievance.

## 35E.010 Policy Recommendations

The CBPA shall have authority to make policy and directive recommendations to the Portland Police Bureau and City Council. The Portland Police Bureau shall consider and accept or reject all policy or directive recommendations made by the CBPA. If the Portland Police Bureau rejects a policy or directive recommendation, then at the request of the CBPA, City Council must consider and vote to accept or reject the policy recommendations received from the CBPA.  Council's decision will be binding on the Portland Police Bureau.

The development of policy recommendations, procedures or practices will incorporate equity and anti-racist lenses.

**35E.020 Response of Police Chief; Referral to City Council**

A. The Chief of Police or designee, after reviewing a policy or directive recommendation submitted by the CBPA under City Code Section 35E.010, shall respond to the CBPA in writing within a reasonable time, but in no event more than 60 days after receipt of the recommendation. The response shall indicate what, if any, of the recommended policy, directive or procedural changes are to be made within the Portland Police Bureau.

B. If the Police Chief rejects a recommendation, a portion of a recommendation, or fails to respond within 60 days after its receipt from the CBPA, then within 60 days after receipt of the response or failure to respond the CBPA may submit the matter for consideration and decision by City Council. The CBPA shall post the policy recommendation for public input for 30 days and shall consider such input prior to submitting the matter for consideration and decision by City Council.

C. If, after complying with any bargaining obligations, curriculum development and training requirements, PPB fails to timely implement a policy change either accepted by the Chief or required by City Council, the CBPA may place the matter on the Council agenda to request further Council action.

Exhibit 3
Page 1 of 4

8:00 am, February 20, 2024

Received

**Portland**
**City Auditor**

Elections

City of Portland Initiative No. PDX24OL-03
November 5, 2024 Election

AN ACT

BE IT ENACTED BY THE PEOPLE OF THE CITY OF PORTLAND

The City Charter of the City of Portland is amended as follows (additions in underlined bold text; deletions in strikethrough):

1. Amend Chapter 2, Article 10 by amending Section 2-1001 to read as follows:

**Section 2-1001. City of Portland Community Police Oversight Board.** A Board is hereby authorized and shall be established upon compliance with any legal obligations the City may have under the Public Employees Collective Bargaining Act, other state and federal laws, and upon adoption by City Council of an implementing Ordinance.  The mission of the City of Portland Community Police Oversight Board (Board) is to **review and recommend improvements to recruiting, retaining, and training efforts by the Portland Police Bureau, and to** independently **receive,** investigate**, and make disciplinary recommendations about certain complaints against** Portland Police Bureau sworn employees ~~and supervisors thereof~~ promptly, fairly, and impartially~~, to impose discipline as determined appropriate by the Board, and to make recommendations regarding police practices, policies and directives to the Portland Police Bureau and with a primary focus on community concerns~~.  The final name of this Board will be established by City Code.

2. Amend Chapter 2, Article 10 by amending Section 2-1002 to read as follows:

**Section 2-1002 Nature of the Board.** Board members shall be appointed by approval of Council to a term of years established in City Code.  Members may not be removed from the Board prior to the completion of their term except for cause.  Successors to an unexpired term shall be appointed by approval of Council for the remainder of the term.  The Board shall make provisions to ensure its membership includes representation from diverse communities**,** ~~including those from diverse communities and with diverse lived experiences, particularly those who have experienced systemic racism and those who have experienced mental illness, addiction, or alcoholism~~ **various professional backgrounds, and from different geographic areas within the City. Board members must live or work in the City. Board members shall receive briefing on best practices surrounding recruiting, retaining, and training police officers and investigating complaints against police officers.**

3. Delete Chapter 2, Article 10, Section 2-1003:

~~**Section 2-1003 Restrictions on Board Membership.** People currently employed by a law enforcement agency and their immediate family members are not eligible for service on the Board. People who were formerly employed by a law enforcement agency are not eligible for service on the Board.~~

4. Amend Chapter 2, Article 10, Section 2-1004 to read as follows:

**Section 2-100~~4~~3 Budget of the Board.** Funding for the Board shall be ~~proportional to be no less than 5 percent of the Police Bureau's Annual Operational Budget~~ **set by Council so that the Board will provide sufficient focus on recruiting, retaining, training, and investigating complaints against police officers**.

5. Amend Chapter 2, Article 10, Section 2-1005 to read as follows:

**Section 2-100~~5~~4 Professional Staff of the Board.** The Board shall hire a Director to manage the professional ~~administrative~~ staff and ~~professional~~ investigators, and to make operational and administrative decisions. The Director is a "Bureau Director" for purposes of Charter section 4-301 and shall be appointed by, and serve at the will and pleasure of, the Board.  Professional staff of the Board, other than the Director, shall be appointed by and serve under the direction of the Director as classified employees. **The Director and Professional staff will receive the same briefing as Board members.**

6. Delete Chapter 2, Article 10, Section 2-1006:

~~**Section 2-1006 Independent Authority.** The Board shall have authority to exercise independent judgment in performing all legally assigned powers and duties. The Mayor, City Council, Auditor, and City departments, bureaus and other administrative agencies shall not interfere in the exercise of the Board's independent judgment. The physical office of the Board shall be located outside of a Portland Police Bureau facility.~~

7. Amend Chapter 2, Article 10, Section 2-1007 to read as follows:

**Section 2-100~~7~~5 Powers of the Board.**

(a)    **Recruiting and Retaining Police Officers. Annually, the Board shall review and issue a report regarding the effectiveness of, and provide recommendations to further improve, the recruiting and retention programs for sworn police officers of the Police Bureau.**

(b)    **Training Police Officers. Annually, the Board shall review and issue a report regarding the effectiveness of, and provide recommendations to further improve, training programs for sworn police officers of the Police Bureau.**

(c)    **Investigating and Disciplining Police Officers.**

(1)    The Board**, by and through its Director and Professional Staff,** shall ~~have the power to the full extent allowed by law to~~ receive and investigate complaints  ~~including the power to subpoena and compel documents, and to issue disciplinary action up to and including termination for~~ **against** all sworn ~~members and the supervisors thereof within~~ **employees of** the Portland Police Bureau **for:**~~.~~

    **a.**    **All deaths in custody and uses of deadly force;**
    **b.**    **Complaints of excessive force;**
    **c.**    **Complaints of discrimination against a protected class;**
    **d.**    **Complaints of violations of constitutional rights; and**
    **e .**    **Complaints of bias-based policing.**

~~(b)  The Board shall have the authority to make policy and directive recommendations to the Portland Police Bureau and City Council. The Portland Police Bureau shall consider and accept or reject all policy or directive recommendations made by the Board. If the Portland Police Bureau rejects a policy or directive recommendation, then at the request of the Board, City Council must consider and vote to accept or reject the policy recommendations received from the Board.  Council's decision will be binding on the Portland Police Bureau.~~

**(2)** ~~(c)~~ **For cases within its jurisdiction, the** ~~The~~ Board**, by and through its Director and Professional Staff,** shall have the authority and ability**, to the extent allowed by federal and state law and collective bargaining agreements,** to gather ~~and compel~~ all evidence~~;, to~~ access all police records~~; to the extent allowed by federal and state law, and the ability to compel~~ **seek** statements from **complainants, subjects, and** witnesses**,** including officers**; and subpoena documents and witnesses. Such investigations must respect the legal rights of all complainants, subjects, and witnesses, including officers.**

**(3)** **The Board, by and through its Director and Professional Staff, shall provide to the Chief of Police full, fair, and objective investigation reports and recommended levels of discipline, if any, for complaints within its jurisdiction. The Chief of Police shall have final and sole authority to impose discipline against Portland Police Bureau sworn employees, subject only to the approval of the City Administrator, and consistent with applicable law and collective bargaining agreements.**

**(4)** **Annually, the** ~~The~~ Board shall ~~make provisions for regular and open meetings, public transparency, and~~ **issue a public** reporting on the Board's activities **surrounding its receipt, investigation, and disciplinary recommendations for complaints against Police Bureau sworn employees within its jurisdiction, while taking all reasonable and necessary steps to anonymize the identities of complainants, subjects, and witnesses.** ~~One of the goals of the Board will be to remove barriers for Board members to fully participate in the work of the Board.~~

~~(d)  The Board shall have the power to compel sworn members of the Portland Police Bureau and their supervisors to participate in investigations and to completely and truthfully answer all questions. Refusal to truthfully and completely answer all questions may result in discipline up to and including termination.~~

8. Delete Chapter 2, Article 10, Section 2-1008:

~~**Section 2-1008 Duties of the Board.**~~ ~~The board shall have the authority to investigate certain Police actions, including but not limited to;~~

(a)  All deaths in custody and uses of deadly force.

(b)  All complaints of force that result in injury, discrimination against a protected class, violations of federal or state constitutional rights.

(c)  The Board may investigate other complaints or incidents of misconduct as they see fit or as mandated by City Code.

9. Amend Chapter 2, Article 10, Section 2-1009 to read as follows:

**Section 2-10096 Severability.** For the purpose of determining constitutionality, every section, subsection and subdivision thereof of this Section, at any level of subdivision, shall be evaluated separately. If any section, subsection or subdivision at any level is held invalid, the remaining sections, subsections and subdivisions shall not be affected and shall remain in full force and effect. The courts shall sever those sections, subsections and subdivisions necessary to render this Section consistent with the United States Constitution and with the Oregon Constitution. Each section, subsection and subdivision thereof, at any level of subdivision, shall be considered severable, individually or in any combination.