**Juan C. Chavez**, OSB #136428
**Franz Bruggemeier**, OSB #163533
**Amanda Lamb**, OSB #222284
Email: jchavez@ojrc.info
PO Box 5748
Portland, OR 97208
Telephone: 503-944-2270 ext. 212
Facsimile: 971-275-1839

Attorneys for *Amici* Mental Health Alliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF PORTLAND,<br><br>　　　　Defendant. | Case No. 3:12-cv-02265-SI<br><br>MENTAL HEALTH ALLIANCE'S MAY 2024 STATUS REPORT |

## INTRODUCTION

*Amicus Curiae* Mental Health Alliance ("MHA") provides this brief status report for the Court ahead of the parties' hearing on May 15, 2024. In this brief, MHA will primarily be addressing the Joint Motion to Appoint Independent Monitor, Dkt. 412; however, MHA notes that it filed a joint status report on Paragraph 195 of the settlement agreement, and they hope to address that as well at the status hearing.

Regarding the Joint Motion, MHA takes no position on the motion, but wishes to provide the Court their appraisal of the appointment process and what they hope to see from the Independent Monitor in the coming months and years if appointed.

# DISCUSSION

## A. Application and Selection Process

MHA was invited to send a designee to observe the Plaintiff and Defendant's application process for the role of Independent Monitor. MHA sent Dr. Jonathan Brown as their designee. Dr. Brown observed the interview process and engaged in discussions with the constituent members of the hiring committee. Dr. Brown reports that he believed that the process was fair and that MHA's positions and thoughts were heard and considered throughout.

However, MHA is concerned that the public did not have a fair opportunity to scrutinize the final three applicants. The City hosted a town hall-style meeting for the final three applicants to speak to their strengths and introduce their team members. Based on turn out, it did not appear that the greater public was aware that this meeting was happening. While there was a press release about the event posted on the City's website, it is unclear whether the City performed any additional outreach to ensure that members of the public were aware that the meeting was happening. PCCEP did send a notice via email to people on its mailing list, but not until March 8, 2024, four days before the event. At the town hall, City employees and potential independent monitor team members greatly outnumbered members of the public. The monitor team introductions took up more than three-quarters of the scheduled two hours. The remaining time was reserved for a question-and-answer interaction with the monitor applicants. The hurried end of the meeting only allowed for very few questions to be asked. MHA is aware that the Plaintiff solicited feedback from the public prior to making a selection but is not aware what public feedback was given.

Ultimately, MHA does find the selected independent monitor group Mark P. Smith & Associates as competent and capable, with one particular reservation that it will discuss next, but

worry that the public has not adequately weighed in on the choice. Accordingly, MHA cannot take a position on whether the selection is fair, adequate, or reasonable.

**B. Looking to the Future**

If appointed, MHA wishes Mark P. Smith & Associates ("MPS") the best of luck in helping to bring the City back into compliance with the settlement agreement and the U.S. Constitution. MHA offers its support, expertise, and advocacy to MPS on that endeavor. Here are three things MHA would to highlight for MPS and the Court as hopes and expectations going forward:

    **(1) Recruit People with Local Mental Health Expertise.** MPS needs to recruit a person with the expertise and knowledge of how Portland's various mental health services systems operate. Mental health services in Portland are comprised of a complicated web of providers, practitioners, and interlocking government agencies, including the Portland Police Bureau. If MPS is to evaluate the Defendant's compliance with the requirements of the settlement agreement, they will need someone on its team who knows what exists here and how it works. MHA has communicated this point to the Plaintiff, included with names of people who may meet such criteria.

    **(2) Engage the Community.** Portland's engaged and active public is its greatest asset as a city. We hope that MPS maintains a regular and consistent community presence, and that they listen to the lived experiences of people who come into contact with the police—including people experiencing mental illness and addiction. This will in part require MPS to go and meet people where they are, in the conditions that they are existing in, in their homes, on the streets, and in the hospital. We echo AMAC's consistent call for community organizing being a necessary component of any team addressing these issues.

(3) **Take As Long As You Need.** As MHA raised in their Fairness Briefing regarding Section XII, Dkt. 399, we want to emphasize that appointment of an independent monitor must be a means to end the pattern and practice of excessive force, *not* just as a means to swiftly conclude the settlement agreement. While there may be pressures to quickly find compliance and move on, it is MHA's hope that MPS does not fall to such temptation. MHA and the public have observed on too many unfortunate occasions that the Defendant's claims that it has been cured of its malady was merely temporary or the result of obfuscation. The public demands and deserves durable solutions and long-term outcomes.

## CONCLUSION

As always, MHA thanks the Court for listening to its observations and concerns. We look forward to an end to this pattern of violence that has affected so many of our loved ones and community members with mental illness and addiction, and we again offer our support to MPS as it joins the case.

DATED: May 10, 2024

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB 136428
Of Counsels to *Amicus* Mental Health Alliance