Hon. Judge Michael Simon
US District Court (District of Oregon)
1000 SW Third Av
Portland, OR 97204

In the matter of United States of America v. City of Portland
Case Number: 3:12-cv-02265-SI

## Testimony of Portland Copwatch for the Fairness hearing on oversight system, Section VIII amendments to be held August 29, 2024

August 26, 2024

Hon. Judge Michael Simon

Portland Copwatch unequivocally believes that the proposed amendments to Section VIII of the US v City of Portland Settlement Agreement as a whole are not fair, adequate or reasonable. The City and DOJ have chosen to retain language about bias, which you likely have or will hear from other people, is not fair because is too vague and prone to misuse. It is not adequate because the Parties call for Internal Affairs and the oversight system to decide who has jurisdiction over cases, when the current system with both the Independent Police Review and IA is widely seen as confusing. Another topic you will hear a lot about is that it is not reasonable to exclude otherwise well-qualified candidates who may not be willing to go on a ride along with police or attend community academy.

While it is frustrating for community members that the oversight system voted into place in 2020 is still not implemented nearly four years later, implementing a poor imitation of what was promised will ultimately end everyone back in a courtroom.

We believe that getting it right is more important than trying to meet artificial deadlines. The City has missed deadline after deadline. For instance, hiring the civilian dean of training took almost a year longer than mandated. Yet the City seems obsessed with pushing forward on the oversight system. This speediness resulted in negative reaction from nearly every member of the Police Accountability Commission. City Code was put forward in November, which led to a special meeting in December, and a few reasonable changes were made thanks to the City taking some extra time to listen. But not enough.

Regarding the November Council meeting, the City has stated that a version of the amendments before you today were presented to the public at that meeting. They were not. If your honor checks the transcript and/or recording of that hearing, the amendments are not discussed in any detail, nor were they featured in the City Attorney's slide show explaining what was being voted on that day. Few if any members of the public testified about the amendments, though they were included in the paperwork for the Council agenda item.

In addition to the three items listed above, Portland Copwatch is deeply concerned with the opening paragraph of the new Section VIII, which requires the new oversight Board to turn over to the Monitor and the DOJ every "rule, policy, or procedure" before they are enacted for review of compatibility with the Agreement. The City Charter states explicitly that no city employee should interfere with the independent judgment of the Board. Unfortunately, it doesn't cover the federal government or the Court Monitor. Take, for instance, the idea of compensating the Board members for their work, which is severely limited by various laws. Research for PAC found it would likely be a maximum of $7000 or so per year. The PAC proposed that this compensation be offered. The City requires the Board to ask City Council to approve the idea of compensation. What interest do the Monitor or the DOJ have in that policy? This will simply further slow down implementation.

| Testimony of Portland Copwatch on | Portland Copwatch |
| US DOJ/City of Portland Settlement for Aug. 29, 2024 Fairness Hearing (p. 2) | 503-236-3065 |

Another example that the City and the DOJ are ignoring the public is their recent change to how force is tracked by creating a new "De Minimis" category that does not require a force form to be filled out. Not only will this affect the Board's jurisdiction, but it will throw off statistical data gathered since 2017. The Board is supposed to take all complaints about excessive force. Moreover, one of the main arguments the Bureau has made for the change is how long officers have to spend doing paperwork and investigating these lower level uses of force. But the new oversight system will have a $14 million budget, potentially enough to send investigators out to the scene of some or all of these incidents. The way the change was made, there was no time to discuss this possibility and it will be implemented before the Board is even seated.

We recognize your honor has no jurisdiction over the code, but we want to make sure the Settlement Agreement will not override the code, and the City's implementation should not undermine the Agreement or the will of the voters.

One other topic you will probably hear about is the size of the panels. The existing system has an advisory body, the Police Review Board, which is currently in Section VIII. Five PRB members vote on regular cases and seven vote on deadly force and other serious incidents. The PAC proposed retaining these numbers, as the numerical size of the Boards, though not the makeup of them, are one instance in which the current system is adequate. Though Section VIII says that the panels shall be of "three or more people," the code is requiring the panels to be of <u>only</u> three people for regular cases, and somewhere between 11 and 21 for full cases. That is unreasonable, particularly in light of the City's promise to value anti-racism and equity.

Another area where we disagree with the City's interpretation of the Charter is the jurisdiction over the Chief of Police. The Charter says the Board will investigate all sworn officers and their supervisors. It's hard to argue that the Chief is not a supervisor of the officers. However, the City asserts that voters who supported a subsequent ballot measure which reorganized City Council and the Mayor's duties wanted the Mayor to decide whether to let the Board investigate the Chief. We reject the notion that people made the connection that the Mayor hiring and firing the Chief would have anything to do with the Board's authority to investigate and discipline <u>all</u> sworn PPB members. PCW has suggested that the Board should investigate the Chief for misconduct and if their proposed discipline is termination, then the Mayor can get involved. But the City has chosen their own interpretation. This is important as the IPR was initially not informed when former Chief Larry O'Dea shot a friend while squirrel hunting and ended up investigating not only the Chief's behavior, but the actions of other high ranking staff who helped cover it up.

Your honor may also hear from one or more other community members how the current system, and many others in the United States, uses four findings in misconduct investigations. However, the City cut it down to just two— in or out of policy— not based on research, the experience of being a complainant or officer, or months of public discussions, but rather on it being a "pet peeve" of one of the Deputy City Attorneys as stated at a July 15 meeting about the oversight system.

This is an example of why the Settlement Agreement should not be approved at this time without further guarantees that the City will honor the intent of the voters. There also needs to be written assurance that the DOJ and Monitor will not interfere with the Board's activities unless they somehow violate some aspect of the Agreement. Finally, the Amended Agreement needs to be sharpened to make sure the new system does what it is intended to do, which is to have a community-run oversight system that can fairly, adequately and reasonably hold officers accountable for misconduct.

Thank you
Dan Handelman and other members of
Portland Copwatch