Dear Judge Simon,

My name is Matt LaVine. I live in what is now known as North Portland, but is actually occupied, rightful, ancestral land of many different Indigenous peoples of the Lower Columbia River—Multnomah, Clackamas, Cayuse, Umatilla, Walla Walla, Cowlitz, Chinook, Tualatin Kalapuya, Molalla, and many other peoples of the Confederated Tribes of Grand Ronde, Warm Springs, and Siletz Indians. I work in what is now known as Northeast Portland. The people closest to me live in North, Northeast, and Southeast Portland. I am deeply committed to the Portland community.

I am a senior race equity consultant and facilitator at the Center for Equity & Inclusion, where I work with individuals and organizations in our community trying to disrupt and dismantle the ways in which we have all been complicit in, and impacted by, white supremacy. I am also an academic and activist focusing on racial, gender, environmental, and social justice—speaking on such matters in venues from the Historic Alberta House to Powell's to the Oregon Convention Center to protests around the city to meetings with the Police Accountability Commission and City Council. I also engage in mutual aid work, helping with water, food, and clothing exchanges around the city. Again, I am deeply committed to the Portland community.

**I'm writing to implore you to find the City's amendments to the DOJ settlement agreement unfair, inadequate, and unreasonable**. Because of the changes that City Council and the City Attorney made to the rules for the CBPA as they were proposed by the PAC, the CBPA will no longer reflect the will of the people of Portland and will not implement the radical corrective measures required by the DOJ. I included a bit about myself before this request because I'm going to write quite a bit to argue for my position and I wanted you to have some context for my arguments. Furthermore, I want to be transparent that I'm going to write quite a bit because I've heard from several people that I trust that you are a Judge who listens. I want to take advantage of having a judge who listens because, unfortunately, this will be unique in the process since 26-217 was passed overwhelmingly by 82% of Portland voters.

Arguably, the place that City Council has stopped listening the most is whenever community members bring up the history and present of white supremacy in Portland, in Oregon, and in the United States. So, please, I ask you to listen to at least one argument that the question of the fairness, adequacy, and reasonableness

of the City's amendments to the DOJ settlement agreement require considering this history and present of systemic, racist, white supremacy. As James Baldwin famously reminded us, "Not everything that is faced can be changed, but nothing can be changed until it is faced."

Since 2012, the DOJ has been trying to get Portland police to change radically because of a "pattern and practice of constitutional violations" resulting from "unnecessary or unreasonable force". Patterns and practices cannot be understood properly if we only look at a small snapshot of them. Thus, to remedy this pattern and practice of constitutional violations, we must look at the whole history of the pattern and not just a snapshot. If we look at the historical record, we'll see that there is an unbroken chain going back to settler colonialism and the earliest forms of anti-Indigenous and anti-Black racism which helped create this pattern and practice of constitutional violations that the settlement agreement, 26-217, and the CBPA are a response to. Policing as an American institution began with slave patrols and land thieves around 1680, then moved to enforcing the Black codes, Jim Crow, Indian Residential Schools, the war on drugs, the war on terror, and more. In Portland, specifically, there is the additional concern of a history of long-standing ties between Portland police and the KKK. This has been exacerbated in systemic ways through e.g. [the racially discriminatory demolition of homes that happened to create I-5 and Legacy Emanuel Hospital](#).

Unfortunately, this connection between policing in Portland and white supremacy is not unique. This has all been consistent throughout Portland's history. Portland was founded as part of a genocidal campaign against Indigenous peoples of the lower Columbia River and Willamette River that involved Oregon's Trail of Tears, mass executions, colonial and exploitative land grabs of white supremacists like William Overton, Asa Lovejoy, and Francis Pettygrove, as well as biological warfare in the form of malaria, smallpox, and measles. These histories have unfortunately created a current climate in which the lives of loved ones, community members, friends, parents, and children like Keaton Otis, Patrick Kimmons, Kendra James, Immanueal Jaquez Clark-Johnson, and others have been tragically ended by racist police violence.

To bring this directly to the question before you, **all of this makes it particularly concerning that e.g., the City Council has removed the ability of the CBPA to make systemic findings related to patterns and policy issues**. Instead, the board must treat all cases of police abuse as isolated incidents. Again, this is contrary to the settlement agreement's talk of patterns and practices. It is also in

tension with the text of 26-217.  Section 2-1001 continues the language of the DOJ settlement agreement that would require systemic investigations, talking about "practices, policies and directives".  Furthermore, Section 2-1002 explicitly mentions "systemic racism".  Clearly, the vote for 26-217 was a vote that said there's a problem with the *system* of policing and the *system* we use for police oversight.  Furthermore, it's worth noting that the claim that some incident was an isolated result of one bad apple is one of the most common denial tactics of white supremacist ignorance.

**This also makes changes to the PAC's proposal for the CBPA by the City, such as the added prohibition on CBPA members having pro-police or anti-police bias, extremely concerning.**  It incorrectly assumes that neutrality is the desirable position with respect to the CBPA's cases.  We should not be neutral about police violence.  We must be staunchly opposed to it.  City Council's prohibition also clearly conflates an anti-police *position* and an anti-police *bias*.  As should begin to be clear from the brief historical discussion above, an objective look at the history of policing in this country and this city leads to an anti-police *conclusion*, not an anti-police bias.  Again, returning directly to your decision—the DOJ settlement agreement and 26-217 make it clear that "fair" in the case of policing does not mean neutral with respect to policing.  The official position of the DOJ and the people of Portland is that PPB has a history of being unjust.  This means that the settlement agreement and 26-217 both fall under the rubric of corrective justice.  This means that CBPA members should actually be *required* to hold certain views that the city is prohibiting under the heading of "anti-police bias".

Unfortunately, this is certainly not the only case where the City's amendments are in violation of the settlement agreement and 26-217.  As voters saw it on the ballot, the text of 26-217 read "Shall Charter be amended to authorize new, independent community police oversight board to investigate complaints against Portland Police, impose discipline?"  This means that an investigation into the adequacy of the City's amendments requires at least the follow questions:
    Is it new?
    Is it independent?
    Is it run by the community?
    Does it investigate the complaints against PPB and impose discipline?
Unfortunately, the City has made changes to what the PAC originally proposed which make it so the answers to each of these are not clearly "yes".  **Rather, by allowing Police to be on the nominating committee, they have made the CBPA no longer fully independent and run by the community.**  Furthermore, by not including the

Chief of Police as somebody to potentially be investigated by the CBPA, the answer to the last question would be that the CBPA only partially investigates complaints against a proper subset of PPB.  And, finally, every change that the City made to the PAC's proposals was to make it less new and more of the same old status quo.  This cannot stand.

      Finally, I want to end with one last reminder of history to hopefully make it clear just how important this decision you're making is.  Those of us familiar with the history of the Civil Rights Movement know that it wasn't southern white conservatives that killed the momentum of the Civil Rights Movement.  It was actually northern white liberals that killed the Civil Rights Movement when it moved from a focus on Alabama to a focus on Chicago with the Chicago Freedom Movement of 1965-1968.  We don't hear much about it today because there were no real victories in Chicago like there were victories in the south.  Rather, northern white liberals, led by democratic mayor Richard J Daley, showed that there's unfortunately a lot of wisdom in the saying that "a liberal is someone who opposes all wars except for any that are happening at the current moment and who supports every movement for rights except any that are happening at the current moment".  Please don't let Portland be a repeat of Chicago.  Don't let Portland be the place that the Black Lives Matter movement came to die like Chicago was the place the Civil Rights Movement went to die.  Don't let Mayor Wheeler be the white liberal name we talk about ensuring the perpetuation of racism like we do with Mayor Daley.  And to you and the rest of the folx who work in government here in Portland, don't be the equivalent of the Daley machine that let this happen in Chicago.  **The people in this city—especially the BIPOC folx, people with disabilities and mental illnesses, houseless folx, and LGBTQ2S+ members of this community deserve better.**

Thank you for your time,
Dr. Matthew J. LaVine