

**League of Women Voters of Portland**

PO Box 3491, Portland, Oregon 97208-3491

503-228-1675   •   info@lwvpdx.org   •   www.lwvpdx.org

| | |
|---|---|
| Date: | August 26, 2024 |
| To: | Honorable District Judge Michael Simon |
| From: | League of Women Voters of Portland<br>Carolyn Buppert, president<br>Debbie Aiona, Action Committee chair |
| Re: | Fairness Hearing, August 29, 2024<br>***United States of America v. City of Portland*** Case No. 3:12-cv-02265-SI |

The League of Women Voters of Portland began studying policing in Portland in the 1960s and has been engaged in issues related to law enforcement and police accountability since that time.  In November 2020, we supported Measure 26-217 and have encouraged the city to create a new police accountability system that lives up to voters' expectations and to the aspirations captured in the settlement agreement between the city and U.S. Department of Justice (DOJ).

Although the city has aimed to adhere to the letter of the police oversight board charter amendment, the proposed amendments to the agreement and draft city code fall short of what we believe the community expected.  In addition, the city's current draft code is a significant departure from the Police Accountability Commission's (PAC) final proposal.  The PAC's proposal carefully followed the charter amendment's provisions and city council direction, incorporated effective and promising practices from other jurisdictions, and relied on research and reports produced by the National Association for Civilian Oversight of Law Enforcement (NACOLE) and the U.S. DOJ, among others.  It is disappointing that this work is not reflected in the city's proposed amendments and draft code.  We ask you to urge the city to address the following concerns.

## Settlement Agreement Amendments of Concern

**Section VIII Officer Accountability:**  Draft amended Section VIII describes a system in which the police bureau's Internal Affairs Division will have jurisdiction over a significant number of types of misconduct complaints.  The Office of Community-based Police Accountability (OCPA) will be responsible only for the categories of cases named in the charter amendment.  This means that Portland will continue to have a two-track accountability system, a problem the DOJ identified in its 2012 findings letter.  Paragraph 128 does aim to avoid the redundant interviews that plagued the system in the past, which is an improvement.  The PAC-proposed code requires that the civilian OCPA handle all complaints, something we believe the public expected when it voted for Measure 26-217.

It is unreasonable to think that community members filing complaints will trust the city-proposed system once they learn their complaints will be investigated and processed by police bureau staff. In order to keep faith with the community, we believe that all complaints should be investigated by the OCPA.

**Complainant's right to appeal:**  An important feature of our current accountability system is the complainant's right to appeal findings in misconduct cases.  Paragraph 121 removes mention of Citizen Review Committee (CRC) appeals and the draft city code eliminates the option.  (Section D, CRC Appeals, was eliminated entirely in November 2023).  Police officers continue to have more than one avenue for appeal, while complainants only will be able to appeal dismissals.  This imbalance will lead some Portlanders to question whether our new oversight system is fair to all.  In the interest of fairness, the complainant's right to appeal the findings in their case should be restored.

**Community Board for Police Accountability (CBPA) panel sizes:**  Paragraphs 131 and 132 address panel sizes for use of force cases and separately for all other administrative investigations.  Currently, use of force cases involve Police Review Board panels of five or seven members, depending on severity.  The city's draft code calls for 11 out of the 21 CBPA members to participate in deadly force and in-custody death cases. We understand investigative files in these more serious cases can be extremely lengthy and are required reading for the panelists.  We do not understand why it will take more people to hear these cases under the new system than it does now.  Indeed, tying up so many in time-consuming preparation risks board member fatigue and resignations.  This issue is of particular concern because the city has not provided a rationale for requiring the larger number.

### Concerns with the Community Police Oversight System Draft Code

We recognize the court does not have jurisdiction over city code.  However, we feel it is important to share concerns about some of the inadequacies in the draft city code that threaten to undermine the spirit of the settlement agreement and that depart from voter expectations.

**Continuous Improvement:**  Effective police oversight systems do more than handle individual complaints.  They incorporate methods that capture what is learned from individual misconduct cases in order to make broader improvements.  NACOLE states the following in its publication, *Civilian Oversight of Law Enforcement*[1]:

> *While ensuring that individual incidents of misconduct are properly investigated and handled is a crucial tool for building public confidence, the ability to examine broader issues relating to policy, training, discipline, and supervision may promote long-term organizational change that can improve community relations and deter future misconduct, civil rights violations, and legal liability. Contemporary civilian oversight increasingly embraces this potential, as jurisdictions increasingly develop hybrid models of oversight combining policy-related functions with the traditional functions of performing independent investigations and reviewing completed internal investigations.* **(p. 70)**

---

[1] https://portal.cops.usdoj.gov/resourcecenter/content.ashx/cops-w0952-pub.pdf

In order to incorporate continuous improvement in its proposed code, the Police Accountability Commission included methods for identifying broader issues of concern occurring in individual cases. The following were removed from the city's draft code:

- **Systemic findings:** These separate findings point to training, equipment, policy, supervisory and other issues beyond the individual officer's control. They should be identified and addressed in order to avoid similar problems in the future.
- **Sentinel Event Review/root cause analysis:** These are non-blaming reviews of undesirable events involving the police. In Seattle, they describe the reviews as a community inclusive accountability program that examines critical incidents in order to determine how they can avoid future harmful outcomes and better serve the community.
- **Performance reviews:** This provision in the PAC-recommended code calls for regular reviews of the Community Board for Police Accountability's performance, the charter, city code, board policies and protocols on an ongoing basis.

Our new system has the potential to do much more than hold individual officers accountable. It can use what is learned through individual officer interactions and from larger events involving police to make broader improvements to policing and the oversight system. These features are included in the PAC-recommended code and should be part of our new oversight system.

**Nominating Committee:** The city's draft code calls for three individuals connected to the police bureau to serve on the 10-person nominating committee (11-person through December 31, 2024) that screens and recommends candidates for the new board to city council. The same nominating committee also will advise the new board on candidates for the director position. Although the individuals affiliated with police will be a minority of the committee, their involvement in the selection process for board members and the director risks eroding trust in the new system.

**Transparency:** Under our current system, Citizen Review Committee appeal hearings are open to public observation. We recognize that this will change because the CBPA is integral to the discipline process. Proceedings in misconduct cases will take place behind closed doors, but the CBPA will vote in public. In the interest of transparency and increasing public understanding, a basic explanation of why the complaint was filed, a list of allegations, bureau directives considered, findings, and discipline imposed should be shared at that public meeting and in written reports. As is current CRC practice, names of officers and complainants are protected, balancing privacy considerations with the public's right to know. Providing this information to the public is a reasonable approach that can be accomplished without violating privacy.

**Misconduct case findings:** The draft city code calls for two findings in misconduct cases: sustained or not sustained. It is accepted practice elsewhere, however, to use four findings and Portland currently uses four findings in its oversight system. Four findings allow for more nuanced dispositions. Officers and complainants may want to know if there was not enough evidence to draw a definitive conclusion, for example.

*The Standards and Guidelines for Internal Affairs*[1], recommends four findings similar to these: 1) Sustained or Founded; 2) Not Sustained or Not Resolved or Unresolved; 3) Exonerated; or 4) Unfounded (p. 50). We believe the city's rationale for using only two findings and deviating from this well-accepted practice is not adequate. The city should continue to utilize four findings, as it does now and as recommended by experts in the field.

## Conclusion

The League has worked for years for an effective civilian police accountability system. We expected that with the passage of Measure 26-217, Portland would finally enact a system with jurisdiction over all cases of police misconduct, independent from the police bureau, and governed by a civilian board. Per the mandate from city council, the Police Accountability Commission designed such a system. The city's proposal adheres to the basic provisions of the charter amendment, but fails to include many of the features that would create the type of system Portland voters supported when they overwhelmingly passed Measure 26-217. For the amended settlement agreement to be fair, adequate, and reasonable, the court should require amendments that reflect the spirit as well as the letter of the charter amendment voters passed in 2020.

---

[1] https://portal.cops.usdoj.gov/resourcecenter/RIC/Publications/cops-p164-pub.pdf