**Juan C. Chavez**, OSB #136428
**Amanda Lamb**, OSB #222284
Email: jchavez@ojrc.info
PO Box 5748
Portland, OR 97208
Telephone: 503-944-2270 ext. 212
Facsimile: 971-275-1839

Attorney for Plaintiff-Intervenor Mental Health Alliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>   Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>   Defendant. | Case No. 3:12-cv-02265-SI<br><br>*AMICUS* MENTAL HEALTH ALLIANCE'S AUGUST 2024 FAIRNESS HEARING BRIEF |

## INTRODUCTION

*Amicus Curiae* Mental Health Alliance ("MHA") provides this brief in response to the Parties' Joint Motion for Amended Settlement Agreement. Dkt. 431. After much toil and discussion with the Parties about the proposed code change and amendments, unfortunately the MHA does not believe that the proposed change is fair, adequate, and reasonable. The Parties' proposed change neither reflects the will of the voters nor the best interests of persons with mental illness hoping and praying for safety in this community. MHA humbly requests that the Court not enter this amended settlement agreement unless revisions are made.

///

## DISCUSSION

A.   **Update on PCCEP**

As the Court may recall, members of MHA have participated in or attended Portland Committee on Community-Engaged Policing ("PCCEP") meetings since its inception. While MHA has been critical of PCCEP's over-all governance, retention of volunteers, and community engagement, MHA is pleased to report that PCCEP has continued to flourish in the time since we last reported to the Court. This is a credit to all of the hard work and diligence of the PCCEP volunteers over the years and in the present.

B.   **Discussion on Paragraph 195 and the "Oversight System"**

MHA's points of discussion have been previously expressed to the Court. For this record, we will repeat some of the essential backstory and argument, as the fundamental issues have not been addressed since last raised.

1. Background

Portlanders overwhelmingly[1] supported a voter-led measure, Measure 26-217, to alter and improve the means by which the public holds police accountable. The status quo did not work. The measure's plain text put to the voters the following components:

- The new oversight board would "independently investigate Portland Police Bureau sworn employees and supervisors thereof promptly, fairly, and impartially, to impose discipline as determined appropriate by the Board, and to make recommendations regarding police practices, policies and directives to the Portland Police Bureau and with a primary focus on community concerns." Portland City Charter Ch. 2, Art. 10 § 2-1001.

- The board would "include[] representation from diverse communities including those from diverse communities and with diverse lived experiences, particularly those who have

---

[1] Jonathan Levinson, *Portlanders favor changes to police oversight*, Oregon Public Broadcasting (Nov. 3, 2020), available at https://www.opb.org/article/2020/11/04/portlanders-favor-changes-to-police-oversight/.

experienced systemic racism and those who have experienced mental illness, addiction, or alcoholism." *Id.* at § 2-1002.

- The board would not permit "[p]eople currently employed by a law enforcement agency[,] their immediate family members[,] nor formerly employed by a law enforcement agency" to be members of the board. *Id.* at § 2-1003.

- The budget would be "proportional to be no less than 5 percent of the Police Bureau's Annual Operational Budget." *Id.* at § 2-1004.

- "The Mayor, City Council, Auditor, and City departments, bureaus and other administrative agencies shall not interfere in the exercise of the Board's independent judgment." *Id.* at § 2-1006.

- The new accountability board would be able to "investigate complaints including the power to subpoena and compel documents, and to issue disciplinary action up to and including termination for all sworn members and the supervisors thereof within the Portland Police Bureau." *Id.* at § 2-1007(a).

- The board would also be able to propose policy recommendations to the Bureau which it could reject or accept, § 2-1007(b); and compel truthful testimony from Bureau members. *Id.* at § 2-1007(d).

Eighty-two percent of voters approved this language for Portland's Charter.[2]

2. Formation of the Portland Accountability Commission

The PAC worked diligently and dedicatedly to craft the proposed charter amendments, meeting over 120 times and holding public meetings over the course of 20 months. PAC completed its work on August 31, 2023. The City received the PAC's proposal on September 21, 2023. At the September 21, 2023, hearing, Council members expressed a belief that the public did not vote for the exact language described in Measure 26-217. In particular, council members announced their desire to minimize the budget of the proposed oversight board and to allow

---

[2] *Id.*, *supra* fn. 1.

*AMICUS* MENTAL HEALTH ALLIANCE'S AUGUST 2024 FAIRNESS HEARING BRIEF
Page 3 of 6

police officers onto the new board—both of which would violate the City Charter. The City also expressed a fixation on mandating "ride alongs" for future board members. The MHA and AMAC believe insisting on this would likely put members of the board, drawn from a pool of person whom have "experienced systemic racism and those who have experienced mental illness, addiction, or alcoholism," into an uncomfortable and potentially traumatic positions alone with a police officer in a cruiser.

The City then held a hearing on November 15, 2023, to discuss the PAC's proposal. The City presented its own watered-down version of the PAC proposal for the new Community Board for Police Accountability ("CBPA"). The City's proposed version undermined the voter's mandate and PAC's recommendations for the CBPA in a number of ways by:

- Reducing the proposed size of the oversight board. 35B.010(A)(1).

- Moving public investigation hearings to closed-door executive sessions. 35D.060(D)(1).

- Restricting membership of persons with "bias for or against law enforcement" from becoming a board member. 35B.010(D)(6)(c), *see also* ¶ 131(b)(vi).

- Placing three police representatives, including a representative chosen by PPA, on the committee responsible for nominating board members. 35B.010(B)(2)(c)-(e).

The City adopted its version of the PAC proposal and directed the City Attorneys Office to "seek required approvals from the United States Department of Justice and the United States District Court, and comply with any mandatory collective bargaining obligations" within 60 days,[3] which brings us to the present Fairness Hearing.

3. <u>We Must Create an Inclusive and Effective Oversight System</u>

MHA takes issue with all of the above listed items that have been changed from the PAC's recommendation but will focus on the latter two.

---

[3] https://www.portland.gov/council/documents/resolution/adopted/37637

Simply, allowing the Portland Police Association and the Police Bureau to have a veto power on the selection committee will doom this project. And MHA does not write that lightly. Indeed, MHA members could be prevented from joining the oversight committee altogether based on the inclusion of the PPA's potential veto-power, and given the code-change's loose language on "bias against law enforcement." Nowhere in the settlement agreement is there a comparable provision regarding bias or the police bureau getting a voting seat on a *community-led* committee—as distinguished from the current Police Review Board ("PRB"), which is a police-led body, and that the community clearly voted to repudiate and remove from Portland's accountability system.

In past versions of the settlement agreement, sworn officers were only given non-voting seats on the since-failed Community Oversight Advisory Board ("COAB"). Previously ¶ 141(a)(iv). On PCCEP, there has been no seat for police bureau members at all. Giving the police bureau voting seats on a community-led board would be a significant deviation from prior attempts to avoid a corrupting influence from the very agency this lawsuit seeks to correct. Allowing the police bureau an opportunity to influence outcomes undermines the very purpose of the voter-approved charter change and dissipates trust in the outcomes of future investigations led by this system.

The "bias against police" language is also a deviation from past settlement agreement provisions for community-led committees. The COAB, for instance, required that members "shall not have an actual or perceived conflict of interest with the City of Portland." Former ¶ 141(b). The PCCEP amendments had similar language. ¶ 143, Dkt. 340-1. Again, the "bias" language has only previously appeared in sections governing the PRB, which the voters have rejected.

This proposed version of the Oversight System would not pass muster on MHA's simplest test: Would a person with mental illness feel comfortable participating in this? Would a person with mental illness feel comfortable doing a mandatory ride-along with police officers, as is required under ¶ 131(a)(iv)? Would the PPA perceive refusal to do the ride-along because of past traumas as a disqualifying "bias" against the police? Failing to address not only the voters' concerns but also the very animating principle of why this lawsuit was brought by the Plaintiff—to correct and end the City's pattern and practice of unlawful uses of force against persons experiencing mental illness—imperils the progress made in this suit.

## CONCLUSION

MHA respectfully requests that the Court not grant the Parties' proposed settlement agreement amendments. As always, MHA is grateful to the Court for granting us time to be heard on this important matter.

DATED: August 26, 2024.

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB 136428
Of Counsels to *Amicus* Mental Health Alliance