Dear Judge Simon,

On behalf of the Portland Committee on Community Engaged Policing (informally known as PCCEP), thank you for the opportunity to present today. My name is Odelia Zuckerman, I've been a PCCEP youth member for one year, and I am co-chair of the Community Engagement subcommittee. And my name is Jorge Sanchez Bautista and I'm also a PCCEP youth member. I was recently appointed a few months ago and I am on both the Community Engagement and Settlement and Policy Subcommittees.

Every step the City takes towards adopting the Community Board for Police Accountability (CBPA) is a step towards upholding the values ingrained in this Settlement Agreement. PCCEP was born out of the Settlement Agreement, works to support the goals of the Settlement Agreement, and we are excited by the promise that the CBPA will provide an independent system supporting transparency as well as a platform for the voices of impacted communities.

We would first like to recognize the work of the former Police Accountability Commission (or PAC) in developing the code package proposed last fall. As a fellow community board working on policing issues, PCCEP knows better than most how tremendous of an undertaking this project was for the PAC. PCCEP also understands that the City has an obligation to create an oversight system that is functional and legally defensible. We appreciate and applaud everyone's commitment to creating the best accountability system possible. We are optimistic that the CBPA is the step in the right direction and are honored to be able to contribute feedback during this preparation phase.

In the spirit of community leadership that has guided this process all along, we hope that the Judge, City, and amici will consider addressing the following four concerns PCCEP has about the proposed changes to the Settlement Agreement and / or CBPA code:

1. We have issue with membership criteria that measures bias
2. We are concerned about the impact that these proposed criteria will have on recruitment and the ability of members to work without threat of dismissal
3. We feel that police-adjacent organizations are overly represented on the proposed CBPA nominating committee members, and
4. We don't understand why the Chief of Police should be allowed exemption from CBPA reviews or conduct decisions.

First, I'll talk about our concerns regarding the consideration of bias as part of the membership evaluation. In the revisions to Section VIII of the Settlement Agreement being considered today, it is outlined that "City Council shall have authority to remove a member of the CBPA for cause," including "***Objective demonstration of bias for or against the police.***"

This is a sharpening of the previous criteria in Section VIII for Citizen Review Committee members which stated that members must be "representative of the many and diverse communities in Portland, who are neutral, unbiased, and capable of making objective decisions." The previous version allowed for a Board comprised of people with diverse perspectives and trusted that board members could still make objective decisions. PCCEP is not alone in our concern that the new code says members should be evaluated based on whether or not they've demonstrated pro- or anti-bias towards police. It has also come up in the form of spoken testimony at many PCCEP meetings and most of the written testimony submissions sent to the Department of Justice.

As fellow community board members, this rewrite strikes us as significant and problematic. While we also feel that the former language refers to general capabilities of objective decision making and encompasses any form of bias, the new language does not mention neutrality or objectivity and limits displays of bias only for or against police. The new language also suggests that bias can be "objectively" identified yet does not provide any guidance as to how it will be assessed. The fact that this same problematic language also appears in CBPA code is an issue for us too.

PCCEP wants to be clear that we wholeheartedly support a board that is neutral and capable of objective decision making, and we feel that provisions already exist in the CBPA code to ensure neutrality without using phrases related to "objective demonstration of bias".

Now I'll explain our second concern. Because the language is so vague, it will be easy for evaluators to label a candidate's behavior as either pro- or anti-police based on their own bias, even though the same behavior might be judged as neutral or the opposite by someone else. This means that the evaluator's assessment is inherently subjective as opposed to fact-based. This will lead to difficulty recruiting members because people can be easily and incorrectly disqualified if deemed bias, and to retaining board members because people will feel restricted from sharing thoughts during CBPA meetings.  On top of this, there is room for people to be wrongfully removed from the board if their opinions and decisions appear to be skewed in either direction, regardless of if they make these decisions objectively and fairly.

Once again, speaking from our experience as a community board that works on policing, we know that there is no such thing as an "**objective** demonstration of bias for or against police" and we'd hate to see CBPA being set up for failure before it even begins.

In a recent public forum about the CBPA code, a PCCEP member asked how bias would be identified in discipline cases heard by the CPBA. The City Attorney at the meeting responded to community attendees by saying *"How do we know when someone is doing that? [...] It's not an easy thing to determine [...] If there's a bias for police, you all [community members], I imagine, are going to tell us, and if there's a bias against police, then the Union's going to bring it up."*

This response illustrates that different stakeholders will view objectivity differently based on their personal circumstances and perspectives. It also illustrates how difficult it would be for CBPA members to work towards their goals if they're always concerned that statements may demonstrate bias. As an example of what could happen, consider the Colorado district court case of Lisa Sweeney-Miran vs. Boulder, Colorado where Ms. Sweeney-Miran is suing the city for kicking her off the Police Oversight Panel based on what they deemed as biased behavior.

The City claims that the written anti-bias language is necessary in order for the CBPA's discipline decisions to be upheld in court. However, PCCEP believes the vague standards inadvertently create a huge liability for the City, both in terms of CBPA recruitment and potential lawsuits.

Let's move on to our third concern, which is that the makeup of the nominating committee for the CBPA has too much police and police-adjacent representation. While we know this gets into the details of the code, we think it's crucial to bring up today. Under section 35B.020 of the proposed code for CBPA, it is stated that "The nominating committee should be comprised of: Two CBPA representatives; One community member from each Council district as designated by the Council members of that district;

One representative from the Office of Equity and Human Rights; One representative designated by the Chief of Police; One representative from Portland Police Association; and One representative from Portland Police Commanding Officers Association." Given the desire for objectivity and fairness in decision making, the operations of the nominating committee must be set up to ensure this. As it currently stands, and speaking from experience as a community board, this committee cannot nominate members successfully given that three of the 10 nominating positions are filled by police-related representatives.

We understand that the goal of this board is ultimately a fair and objective decision regarding potential misconduct. While the nominating committee is not directly tied to such outcomes, there is an indirect connection that necessarily will affect decision making. Pro-police bias will exist in representatives from the Portland Police Association, the Portland Police Commanding Officers Association, and the Chief of Police. The City Attorney's statement about how bias will be judged differently by different people illustrates exactly this. In order to produce fair and objective decisions as a board, diverse perspectives must be represented, and we believe that such heavy police representation on the nominating committee could result in potential candidates being unfairly barred from joining the board, or unfairly removed from the board. We're glad the city added one position from the Office of Equity and Human Rights, and we'd like them to further seek diversity by recognizing that the current membership roster gives too much power to the police-adjacent nominating committee members.

This brings us to our fourth and final concern pertaining to the chief's involvement in CBPA investigations. PCCEP has heard numerous concerns about the lack of accountability for the Chief of Police.  Section VIII exists to hold police accountable, and we fear that the chief's possible exemption from this process undermines the very nature of police accountability in Portland. The CBPA code states that "When there is an allegation of misconduct against the Chief of Police, the OCPA shall investigate the allegation and report its findings to the Mayor, unless the Mayor opts for another entity to perform the investigation."

It's unclear why the Chief of Police may be exempt from the CBPA process of accountability as the chief's position holds the most power and authority in the Bureau. Any investigation into the chief should be at the discretion of the CBPA as the code package promises. We were told that this decision was tied to the organizational chart of the new charter system, specifically as it relates to hiring and firing of the Chief. However, we feel there is room to explore how CBPA can be the default investigator of all misconduct charges against the Chief of Police. We suggest that the Board have the ability to recommend and impose discipline, except if it were to recommend firing, the mayor could ultimately make the decision.

In conclusion, we as a committee believe in the purpose and mission of this board and want it to be as successful as possible in its duty of accountability. We think the above references to the bias, the nominating committee, and the chief's potential lack of accountability, are essential to overcome before this board can operate effectively.

Thank you so much for allowing us to share and inform this process. PCCEP appreciates this space to voice our concerns and be heard. We hope that you consider the points we shared on behalf of the committee and many community members, and we look forward working with a future CBPA that can authentically represent an accountability board and uphold the promises of the Settlement Agreement.

Thank you.

PCCEP