ROBERT TAYLOR, OBS #044287
City Attorney
Email: Robert.Taylor@portlandoregon.gov
HEIDI BROWN, OSB #922410
Chief Deputy City Attorney
Email: Heidi.Brown@portlandoregon.gov
SARAH AMES, OSB #163350
Deputy City Attorney
Email: Sarah.Ames@portlandoregon.gov
LISA ROGERS, OSB #176519
Deputy City Attorney
Email: Lisa.Rogers@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Avenue, Suite 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**CITY OF PORTLAND,**

Defendant.

Case No. 3:12-cv-02265-SI

**CITY OF PORTLAND'S MOTION FOR RECONSIDERATION**

**CERTIFICATE PURSUANT TO LOCAL RULE 7-1**

Defendant City of Portland (City) hereby certifies that they have conferred with Plaintiff United States Department of Justice (DOJ), on this Motion for Reconsideration of the Court's August 29, 2024, Order.

**MOTION FOR RECONSIDERATION**

The Citizen Review Committee (CRC) and Independent Police Review (IPR) are at significant risk of failure with the recent decision to delay implementation of the Community

Police Oversight Board. With this new material fact, reconsideration and revision of the Court's August 29, 2024, Order, ECF 458, is appropriate.

During the August 29 hearing the Court allowed City Council to proceed with the adoption of the City Code that creates the Oversight System. On September 11, 2024, Council approved the Code. The first step under the Code is the appointment of the nominating committee whose job is to nominate and propose members for the Community Board for Police Accountability (CBPA) to Council for appointment.[1] The Order setting the effective date of the Section VIII amendments as January 2, 2025, delayed the nomination and appointment process until the newly elected City Council takes office.

New information came to the attention of the City that is relevant to this Court's decision regarding the implementation date for the new Oversight System; information that the City believes the Court would have found significant when deciding the timeline for the Section VIII amendments. This new information shows the negative impacts, and the risk of failure, that the additional delay will have on the existing structure for community oversight of the police, consisting of IPR, CRC, and the Police Review Board (PRB).[2]

***A. District Courts may modify an order under their inherent power and under Rule 54(b).***

The Court has the inherent power under common law, as well as the authority provided in Federal Rule of Civil Procedure 54(b), to reconsider and modify its order. "A district court has

[1] Portland City Code (PCC) Title 35. *See* https://www.portland.gov/sites/default/files/council-documents/2024/exhibit-a-title-35-ar-edits.pdf. PCC 35.20.010 (B)(2) provides for the nominating committee's membership. Specifically, for the initial appointment of the eleven-person nominating committee, it includes a community member selected by each existing Council member; thereafter, the ten-person nominating committee includes one community member per district designated by the three Councilors representing that district. PCC Title 35, at p. 9.

[2] In the new Section VIII, the City committed to maintaining the current police accountability structure and processes, including IPR, CRC, and PRB. This commitment requires the existing systems to complete all investigations initiated before the new Oversight System is operational and starts taking cases. Paragraph 195 allows reasonable extensions for good cause shown, but only if the current system continues to complete administrative investigations and hold officers accountable for violations of policy and procedures.

inherent power, derived from the common law, to rescind, reconsider, or modify an interlocutory order." *Complete Distribution Servs., Inc. v. All States Transp., LLC*, 2015 WL 6739125, at *1–2 (D. Or. Nov. 2, 2015) (citing *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001); *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000)). A district court may exercise that power "for cause seen by it to be sufficient." *Id*. (quoting *City of Los Angeles*, 254 F.3d at 885).

Further, Rule 54(b) provides that any order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Rule 54(b) does not address the standard for a district court's reconsideration of interlocutory orders, and "the limits governing reconsideration of final judgments under Rule 59(e) do not strictly apply." *Hunter v. FedEx Corp. Servs., Inc*., 2024 WL 1020870, at *1 (D. Or. Feb. 21, 2024). Nonetheless, courts use the Rule 59(e)[3] limits "as common-sense guideposts" when evaluating reconsideration under 54(b). *Id*. (quoting Stephen S. Gensler & Lumen N. Mulligan, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 54 (Feb. 2024 update)). Motions to reconsider under Rule 54(b) may be granted if, among other reasons, "there are new material facts that happened after the Court's decision." *Id.* (citing *In re Galena Biopharma, Inc. Derivative Litig.*, 2014 WL 5494890 (D. Or. Oct. 30, 2014)).

Under the inherent power of the Court and the Federal Rules of Civil Procedure, reconsideration is warranted due to new material facts that were not before this Court at the August 29, 2024, hearing.

***B. Delayed implementation increases the risk of failure of the current police oversight system.***

The vote in November 2020 placed the dedicated employees of IPR and committed community volunteers of CRC and PRB who hear police misconduct cases into uncertainty. The

---

[3] If the order is considered a judgment, then reconsideration is appropriate under FRCP 59(e). As stated above, reconsideration under FRCP 59(e) is appropriate when there are new material facts that happened after the Court's decision.

City has taken several steps to stabilize the existing police accountability structure and specifically to incentivize retention of IPR employees. To date IPR employees and CRC and PRB community volunteers have continued and renewed their service despite the uncertainty of this transitional phase. But now, further delay threatens that commitment.

On September 4, 2024, after this Court's ruling on the Section VIII amendments, the CRC held a meeting where they discussed the Court's recent decision to delay the nominating committee process until January 2025.[4] The CRC Chair and other CRC members expressed grave concern about the impact of this decision. The IPR Director also shared these concerns. As a result, the City requested that CRC members with concerns submit a letter detailing the issues, and asked the IPR Director to document his concerns. The letter from the CRC Chair, which was endorsed by several members, is attached as Exhibit 1 to the Declaration of Heidi K. Brown in Support of the Motion for Reconsideration.[5]

As stated by CRC Chair, Yume Delegato, who is also a former member of the Police Accountability Commission, the situation of the CRC is precarious. Brown Dec., Ex. 1, p. 3. He, and other CRC members, believe it is unlikely that cases in the existing system will be completed before they reach their term limits if seating of the CBPA is delayed. *Id.* at 2. These members of a "condemned institution" agreed to support the existing structure with the understanding that they would help bring in a new accountability system. *Id.* Mr. Delegato states, "In good conscience, I cannot ask my current members or prospective (and likely needed) future members to continue living with that moral dissonance indefinitely." *Id.* Without Mr. Delegato, and the other CRC members, the existing system fails and no community review of deadly force, and other force cases, will occur.

IPR Director Ross Caldwell raises similar concerns with the delay. He states that the period since the 2020 Charter amendments has been long and challenging. Brown Dec., Ex. 2, p.

---

[4] An audio recording of the CRC's discussion at its September 4, 2024 meeting is available at https://efiles.portlandoregon.gov/Record/17000382/, with the discussion of this matter at about 1:40 into the meeting.

[5] CRC members who supported the CRC Chair's letter are reflected in emails attached to the letter.

1. Mr. Caldwell has declined offers for other employment so as to support the existing system through the transition because other staff have shared that were he to leave, they would leave. *Id.* Prolonging the transition period increases the risk that IPR employees will leave for other opportunities. *Id.* Mr. Caldwell's experience with City bureaucracy suggests that it will likely be four to six months before the new Council will be able to appoint CBPA members. *Id.*

Mr. Delegato and Mr. Caldwell are concerned that the many tasks the newly seated Council will need to complete will cause further delay. These tasks include electing the Council president and vice president, considering and establishing their committee structure, adopting rules of procedure, developing the process for executive appointments and Council confirmation, developing Council procedures for responding to community members and providing constituent services, participating in work sessions on budget and finance and learning about City infrastructure, as well as creating new laws for the City. It will likely take months for the new Council to learn about the Settlement Agreement and Oversight System, and to select members for the nominating committee. The current Council members have deep experience and familiarity with these and have the capacity and are ready to move forward expeditiously.

Throughout this process of establishing the new Oversight System, Mr. Caldwell notes, IPR staff and CRC volunteers have put much on hold. "I am very concerned that additional delay could come at a high cost." Brown Dec., Ex. 2, at 1. Without IPR, community members will have nowhere to file complaints except the Portland Police Bureau's Internal Affairs Division. This would put the City back years in its work to have greater community involvement in police accountability.

These risks are unnecessary because there is already a mechanism in the Code to ensure the new Council has meaningful control over the nascent CBPA. Although CBPA members will normally serve a three-year term, the initial terms may be staggered.[6] The current Council intended to follow the recommendation of the Police Accountability Commission and stagger

[6] PCC 35.20.010(H)(1)-(2). PCC Title 35, at p. 12.

initial terms to one, two, and three years. If this occurred, the new Council would appoint one-third of the CBPA before the end of their first year.

## CONCLUSION

The current accountability system depends on the dedication and loyalty of volunteers, investigators, and leaders, who are highly concerned with the delay in standing up the new Oversight System, and who are uncertain of the sustainability of the existing system with this delay.

These concerns are valid. Convening the nominating committee is only the first step in an involved process to ensure the CBPA is "staffed and operational" within 12 months of Council's code adoption.[7] The nominating committee will recruit board applicants, review applications and interview candidates, and will refer 21 prospective members and six alternates to City Council for appointment.[8] Once appointed, the CBPA members must pass a background check before beginning their service.[9] The CBPA will then recruit and hire a director, who in turn will recruit and hire investigators, complaint navigators and other staff. At the same time, the CBPA and Director will be developing rules and policies to govern the Oversight System's operations. Only then – fully staffed and with rules and procedures established – may the "fully operational" Oversight System start taking complaints and investigating those within their jurisdiction. And only at that time will IPR stop taking new cases; at that time, IPR and CRC and PRB community volunteers will finally wind down their service.

The CRC and IPR's response to the delay is a significant fact that was not known at the August 29, 2024, hearing, a fact that the City is certain the Court would have wanted to know and consider when deciding the implementation date for the Section VIII amendments. The City urges the Court to consider these unintended consequences on the only current means of providing community voice and civilian investigation of complaints under the existing system.

---

[7] Settlement Agreement paragraph 195(b).

[8] PCC Title 35, at p. 9.

[9] CBPA members will undergo a criminal background check after Council appointment but before serving on the CBPA. See PCC 35.20.010 (B)(1). PCC Title 35, at p. 8.

Given these newly discovered facts, the City implores the Court to reconsider the delay in implementation of Section VIII.

DATED: September 12, 2024

Respectfully submitted,

**FOR THE CITY OF PORTLAND:**

*/s/ Robert Taylor*
ROBERT TAYLOR
City Attorney

*/s/ Heidi Brown*
HEIDI BROWN
Chief Deputy City Attorney

*/s/ Sarah Ames*
SARAH AMES
City Attorney

*/s/ Lisa Rogers*
LISA ROGERS
City Attorney