> -----Original Message-----
> From: Portland Copwatch <copwatch@portlandcopwatch.org>
> Sent: Friday, December 6, 2024 1:26 PM
> To: Independent Monitor Team <info@portlandpolicemonitor.com>
> Cc: Chief Bob Day <robert.day@police.portlandoregon.gov>; Buckley, Mary Claire <MaryClaire.Buckley@police.portlandoregon.gov>; Mayor Ted Wheeler <mayorwheeler@portlandoregon.gov>; Mary Austad <Mary_Austad@ord.uscourts.gov>; Community members <copwatch@portlandcopwatch.org>
> Subject: Feedback on Monitoring Compliance and Methodology plans
>
> CAUTION - EXTERNAL:
>
>
> Supervision of DOJ Agreement: Content Mostly Fine, Presentation Not
> Engaging for Community
> Portland Copwatch comments on Monitor's monitoring and methodology plans
> December 6, 2024
>
> Portland Copwatch (PCW) thanks the Independent Court Monitor team
> ("Monitor") for putting together a draft plan for assessing Portland's
> compliance with the US Department of Justice (DOJ) Settlement Agreement.
> We appreciate that we had a chance to meet with members of the team in
> early October. Our biggest concern with the plan is not the substance,
> but rather the form. The team has promised that one of its highest
> priorities in taking over assessment duties from the Compliance
> Officer/Community Liaison (COCL) is to engage the community and create
> documents that people can understand without being lawyers.
> Unfortunately, the monitoring and methodology plans are confusing, not
> up-to-date, repetitive and, at a total of 65 pages, a bit overwhelming.
>
> Portland Copwatch (PCW) has already noted that the outcomes of the
> changes made by the City should also be included in the Monitor's
> reports (see item #3). This would cover many paragraphs which are not
> yet mentioned, such as 222-e-viii requiring review of lawsuit data to
> examine whether the Bureau is truly a learning agency or whether they
> simply rely on the the City to shell out money as a cost of doing
> business without trying to prevent future occurrences.
>
> As much as PCW had issues with the COCL's perspective on what compliance
> looks like, the Monitor's plan can benefit from some things that
> consultant did to simplify the overwhelming task of reviewing dozens of
> paragraphs, especially now that there are fewer than 45 paragraphs
> remaining which are to be fully externally monitored.
>
> 1) Combine the two plans to shorten into one document
>
> The biggest issue is that these documents are redundant. An easy way to

> consolidate the information would be to have each paragraph (or set of
> paragraphs-- comment #2) followed by information about the methodology
> to be used to ensure compliance.
>
> 2) Combine similar paragraphs to shorten document
>
> The COCL combined certain paragraphs which are in the same subject
> matter area and whose assessment could be done with similar research.
> For example, they would combine paragraphs 74, 75 and 77 which all
> pertain to reviewing data about use of Force. While it's important for
> the Monitor to be independent in their analysis, the new reports should
> retain helpful practices initiated by the COCL.
>
> 3) Add outcomes plan to the shortened document
>
> The Monitoring plan does mention that the team will have to produce
> outcomes assessments every six months along with the compliance
> assessments.-* Over time, the COCL combined these two required reviews
> into the same document. Similar to our suggestion about the plan itself,
> their assessment and outcome reports would list the compliance ratings
> with explanations, followed by the outcomes for each major section of
> the reports. Keep it simple!
>
> 4) Cross-reference previous sections when the content is the same
>
> There are 15 or so paragraphs that the City is now allowed to
> "self-monitor." (Don't get us started on how this is something we do not
> trust given their track record.) It seems that either they can all be
> combined (see item #2) or, alternatively, the plan can say "see plan for
> paragraph 88 for information." (88 is the first of the self-monitoring
> paragraphs.)
>
> Similarly, rather than include a full timeline column, the Monitor's
> paragraphs can say "timeline A" (which is February 15/August 15, 2025
> and February 15, 2026 for all paragraphs, with assessments completed by
> April 1/October 1, 2025 and April 1, 2026) and TBA for all
> self-monitoring.
>
> 5) Add short explanations
>
> The plan's effort to be clear which paragraph is being discussed lifts
> the section headings from the Agreement but often is not at all clear
> about the content of the paragraphs. Short summaries could be added in
> the "sub-area" column along the lines of what PCW did when creating its
> own scorecard before the COCL making similar tables (though the COCL
> never adopted short-form explanations like the ones we illustrated).
> This is particularly important for the self-monitoring paragraphs which
> give no indication at all as to the substance being reviewed.

>
> See this one from 2021:
> https://www.portlandcopwatch.org/sampleDOJscorecard1121.pdf
>
> 6) Take a look at current events
>
> A separate issue is the copy-and-paste nature with which the Monitor
> team painstakingly recreated, nearly line-by-line, what the Settlement
> Agreement literally required at its outset. As a result, names remain
> that were changed in the real world but not the Agreement (such as the
> "Addictions and Behavioral Health Unit" which simply became the
> Behavioral Health Unit). References to time that has passed since the
> adoption of the Agreement are mostly moot at this point, including, for
> instance the requirement for the civilian head of the Training Division
> (paragraph 191), whose hiring was delayed by a problematic initial
> candidate being chosen. Paragraph 131 refers to the Auditor examining
> members of the Police Review Board, though those members are currently
> nominated by the Independent Police Review (now separated from the
> Auditor's office). A reference in paragraph 195 to holding officers
> accountable lists paragraph 169, which was replaced by paragraph 245.
>
> 7) Other specific edits that could / should be made
>
> PCW also found a few items where clarifications or edits would help the
> reader. For instance, the methodology for Paragraph 131 says the review
> of the Police Review Board will be done "except as enumerated in this
> paragraph." It's not clear what that means. Paragraph 195 refers
> obliquely to "the Commission" but should specifically name the Police
> Accountability Commission (PAC).
>
> Now, our advice for examining compliance and outcomes:
>
> A) A floor, not a ceiling
>
> PCW strongly recommends adopting the philosophy expressed by the
> community, the DOJ and the COCL over these last 12 years: the Agreement
> is a floor, not a ceiling. When the City and PPB can do better by going
> beyond the Agreement's requirements, they should be encouraged to do so.
>
> B) Look at PPB directives and other documents to define terms being
> used.
>
> The Use of Force Policy (1010.00) describes two kinds of de-escalation:
> one that is done initially ("Proactive," which we agree should be called
> de-escalation) and one that is done in response to the community
> member's lowering their resistance to the police ("Reactive," which we
> would call mitigation of force, not de-escalation, as the scenario has
> already been escalated).

> 
> C) Seek compliance with the spirit, not just the letter of the
> Agreement.
> 
> The City has been allowed to "self-monitor" the two paragraphs about
> presenting the PPB's annual reports to the public and to City Council.
> Yet their outreach and precinct presentations have been rushed and
> lacking, and their presentations to Council have not incorporated any
> feedback they heard from the community, which would seem an important
> thing to include after spending the time to listen. This is just one
> example of "checking off the boxes" without achieving the spirit of the
> goals set by the DOJ and agreed to by the City.
> 
> D) Try to overcome obstacles set up by the collective bargaining units.
> 
> The Portland Police Association is an intervenor in this case. The
> Portland Police Commanding Officers Association often follows their lead
> when throwing up roadblocks to true transparency and accountability.
> While they have the legal right to bargain for workplace safety, and the
> Constitutional right not to self-incriminate, the restrictions they have
> put on body-worn camera use undermine the purported reason for having
> the cameras-- accountability. (An exception is that they are not allowed
> to look at the video before giving statements after using significant
> amounts of force including deadly force, but even that has its
> limitations.) We believe that no officer involved in a deadly force
> incident has given an on-scene statement in these 12 years, because the
> Agreement only requires that they be asked to do so. This makes
> paragraph 127 merely performative.
> 
> E) Don't leave the Bureau to its own devices.
> 
> The last COCL report was published on July 1, the day the Monitor team
> began its work. It covered January-March 2024. We had hoped the team
> would have its plan in place by October to review the months from
> April-June 2024 for compliance. This is particularly important because
> of the PPB's reportedly strong-arm tactics at the Portland State
> University protests for Palestinian solidarity in May. It appears that
> the first report will only cover July to December, and won't be
> published until May 2025. We hope the three missing months of data will
> be included in the first report. It was the Bureau's response to
> protests in 2020 that led to them falling out of compliance, the
> additional remedies section, and in particular the external review
> envisioned in Paragraph 189.
> 
> 
> We recognize that this plan needs to be finalized soon, but it will be a
> foundational document that needs to be referenced moving forward and we
> hope you will take the time to make the changes we have suggested. This

> will also help improve future publications by the Monitor.
>
> Thank you again for your work and we look forward to meaningful,
> easy-to-understand and comprehensive reports in 2025.
>
> dan handelman and other members of
> Portland Copwatch
>
> *- PCW missed the mention of outcomes upon our first brief review of the
> plans.
> CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.
>