

**League of Women Voters of Portland**

PO Box 3491, Portland, Oregon 97208-3491

503-228-1675  •  info@lwvpdx.org  •  www.lwvpdx.org

DATE:       July 21, 2025

TO:         Honorable U.S. District Court Judge Michael Simon

FROM:       League of Women Voters of Portland
            Audrey Zunkel-deCoursey, President
            Debbie Aiona, Action Committee Chair
            James Ofsink, Justice Interest Group Chair

RE:         Status Conference:  United States of America v. City of Portland
            Case No. 3:12-cv-02265-SI

The League of Women Voters of Portland began studying policing in Portland in the 1960s and has been engaged in issues related to law enforcement and police oversight since that time.  We appreciate the opportunity to comment once again on the City's progress meeting the terms of the Settlement Agreement.

**Future of the Settlement Agreement**

The President's executive order on policing (Strengthening and Unleashing America's Law Enforcement to Pursue Criminals and Protect Innocent Citizens) raised concerns that Portland's Settlement Agreement with the U.S. Department of Justice (DOJ) might be terminated before its completion.  Although imperfect, the agreement has benefited Portlanders by bringing more transparency to police policies and practices, increasing public participation, and leading the Portland Police Bureau (PPB) to engage in self-reflection and targeted improvement actions.

The League urges the court to continue its oversight of the agreement until all the steps have been completed and the City has been in substantial compliance for one year.  We further encourage the City, with the court's support, to incorporate many of the agreement's provisions into City Code.  Finally, we recommend that Portland follow Seattle and Oakland's example and add an Office of Inspector General to Portland's Office of Community-based Police Accountability.  In both cities, the Inspector General is responsible for overseeing continued fidelity with the reforms implemented through the consent decree and settlement agreement imposed by the U.S. DOJ.[1]

---

[1] https://www.oaklandca.gov/Government/Departments/Inspector-General/About-the-OIG
https://www.seattle.gov/oig/about

**Address Assessment Gap in Quarter 2, 2024**

Oversight from the Compliance Officer/Community Liaison (COCL) ended three months before the Independent Monitor started work. This left a gap in coverage between the COCL's last compliance report and the Independent Monitor's first compliance report. This problematic break in assessment is especially concerning because the PPB used more force in 2024 Q2 than any other quarter currently displayed on the City's use of force dashboard. The newly re-formed Rapid Response Team also was introduced in 2024 Q2. We encourage the court to require a Quarter 2 assessment.

**Comments on the Independent Monitor's Semi-Annual Compliance Report**
**July 1, 2024 – December 31, 2024**

The Independent Monitor team determined that a number of Settlement Agreement requirements are now in substantial compliance despite the many shortcomings and deficiencies identified in their analysis. It is encouraging to see in the Work to Be Completed (p. 94) section that they plan to conduct outcome measurements. The recent in-custody death of Damon Lamarr Johnson underscores community concerns that, while the City and PPB may be in substantial compliance with the majority of the agreement's requirements, more work needs to be done to protect people experiencing mental health crises from harm.

1. **Officer-Involved Shootings (Paragraph 69)**

In Paragraph 69, the Independent Monitor outlines areas where investigations of Officer-Involved Shootings could be improved. As required by City Code (3.21.070.L), Independent Police Review is required to hire a qualified person to review closed cases of officer-involved shootings and deaths in custody. One of the issues of concern the independent experts (OIR Group and PARC before them) have raised is the timing of administrative investigation interviews with involved officers. The City's 48-hour rule allows those interviews to take place within a 48-hour window. The OIR Group, however, strongly recommends contemporaneous interviews of involved officers. See p. 90 of the April 2020 [report](#) for their recommendation and rationale. OIR Group repeated their recommendation that 48 hours is "not sufficiently close in time to the event to be considered ideal" in their 2023 report when analyzing the shooting of Ryan Beisley (pg. 43).

The compliance report does not include information on the elapsed time between the deadly force incidents and the administrative interviews of the involved officer(s). Given the past concern over this issue, that information should be included in the next semi-annual assessment.

2. **Paragraph 86 - Training Advisory Council and Transparency**

The League agrees wholeheartedly with the Independent Monitor's additional recommendation on transparency and trust (p. 48-49):

*Continue to work toward greater transparency and trust with the community of Portland by reporting more comprehensive and extensive data on use of force patterns and potential training and policy challenges, with a focus on how PPB is addressing any patterns and challenges.*

League of Women Voters of Portland:
*To promote political responsibility through informed and active participation in government.*

2

The Training Advisory Council has, at times, expressed concern about the way data on stops and use of force are presented to them.  This recommendation also should apply to the PPB Annual Report.  The Settlement Agreement (Paragraph 150) calls for the PPB to educate the public at its precinct meetings about "efforts in community policing in regard to the use of force, and about PPB's policies and laws governing pedestrian stops, stops and detentions, and biased-free policing, including a civilian's responsibilities and freedoms in such encounters."  Although PPB leadership does present the information at the precinct meetings, the written version of the annual report would be improved by adding a written summary on those topics in addition to supplying links to the data.

### 3.  Employee Information System (Paragraphs 116, 117, 118)

The Employee Information System (EIS) has the potential to prevent future problematic police actions by identifying issues early and providing guidance to officers before they result in serious harm.  Striving for the most effective system possible would benefit the City, the Bureau, and the community.  The League appreciates the Independent Monitor's recommendations and looks forward to a time when the EIS is used to its greatest advantage.

### 4.  Self-Monitoring (p. 81)

The public raised concerns in 2024 about having the City self-monitor specific Settlement Agreement paragraphs.  At the town hall co-hosted by the Portland Committee on Community Engaged Policing at which the Independent Monitor's compliance report was presented, members of the public requested access to the City's self-assessment reports.  The League appreciates that the Independent Monitor included links on its website to those reports.

### 5.  Behavioral Health Unit Advisory Committee (p. 94)

Although the paragraphs related to the Behavioral Health Unit Advisory Committee (BHUAC) are under the City's self-monitoring section and deemed to be in substantial compliance, the Independent Monitor's analysis indicates that there is room for improvement in how this committee functions.  In light of the fact that excessive use of force against people with actual or perceived mental illness or in a mental health crisis was the primary reason for the Settlement Agreement, providing technical assistance to the BHUAC to improve its effectiveness would help ensure that the Bureau is getting the advice it needs to protect people from harm.

Thank you again for the opportunity to provide community input to the court's review of the Settlement Agreement.  The court's oversight of the city's compliance has been an important driving-factor in the City making what progress it has.  The agreement is intended to be a floor, not a ceiling.  We look forward to seeing more recommendations from the Independent Monitor that guide PPB towards going well above the minimum requirements.  The League again urges the court to maintain oversight of the agreement until the City has been in substantial compliance with all steps for one year.