Portland Copwatch Comments for the July 29, 2025 Status Conference

Judge Simon,

**Damon Lamarr Johnson In-Custody Death**

Section 3 of the Settlement Agreement states:

> "PPB shall ensure that officers use non-force and verbal techniques to effect compliance with police orders whenever feasible, especially in the course of conducting welfare checks or effecting arrests for minor offenses or for persons whom officers have reason to believe are experiencing a mental health crisis."

On June 27, three Portland Police officers did not follow the letter or the spirit of the Settlement Agreement when they entered Damon Lamarr Johnson's home and escalated, leading to Mr. Johnson death. We know of this behavior by the police only because Mr. Johnson died and the body camera footage was released. We wonder what discipline these officers would've faced if Mr. Johnson had not died but only had been subjected to force that didn't lead to his death while cleaning his room and eating cake? Would their supervisors have given the actions of these officers a second thought? The police escalated a situation and another member of the community who was experiencing a mental health crisis was subjected to force and is dead.

This excessive force by the police toward people suffering from mental health crises is the exact reason that we're meeting here today. 13 years after the City and DOJ reached this Settlement Agreement, we are disappointed that the police are still using excessive force on people in Portland and believe even tougher measures are needed to prevent the police from continuing this pattern and practice. We expect there to be an independent investigation and public report on the Damon Lamarr Johnson death.

1

**PPB Annual Report**

Once again, we are disappointed by PPB's Annual Report. The 2024 Annual Report makes very little mention of use of force, no STOPS data (with the exception of anti-street racing missions), and no mention of bias-free policing, therefore, the report appears to be out of compliance with paragraph 150 of the Settlement Agreement.

Other than stating the number of officer-involved shootings (6) and in-custody deaths (1), the report fails to provide any details or demographics regarding PPB's seven deadly force incidents. All that is mentioned is: "(For information regarding deadly use of force, see page??.)" That is literally all we get regarding the most extreme uses of force by the police - more transparency is required for an Annual Report. For the record, there were six times where officers shot at people in 2024, three of which were fatal. The Special Emergency Reaction Team (SERT) was involved in five of the six shootings. There was also one death in-custody in 2024.

Even though the city-- and the whole country-- went through a reckoning about police use of force disproportionately affecting the Black community, there is no mention that one of the six people shot by the PPB in 2024 was a Black man, Robert Seeger, who was in a mental health crisis when police shot and injured him.

In previous years, Annual Reports mentioned houselessness but this report avoids that topic altogether even though a large percentage of PPB's resources are used on people experiencing houselessness. There is no mention of PPB assisting in camp sweeps, no mention of helping people find shelter, no mention of demographics data on arrests or 911 calls related to poverty. The Chief's letter begins with "Dear Community." If PPB means to be reporting on the community and to the community, the police should not fail to report on their interactions with the unhoused as they are also part of the community.

**Alternatives to the Police**

Referring to Damon Lamarr Johnson's in-custody death, Chief Day stated, "My desire is that law enforcement should not even have to be at these calls for service. At the end of the day, this is not the appropriate response model."

Just as the Settlement Agreement is a floor, and not a ceiling, so is the Chief of Police acknowledging that police are the wrong response. What is the Chief actively doing to further the City's ability to better respond to these calls?

We agree with Chief Day and the Mental Health Alliance that the police are not the appropriate response to welfare checks and responding to mental health crisis calls. We look forward to the police willingly reducing their workload and encouraging alternatives to police response. We look forward to the City taking Chief Day at his word and moving resources and changing policy to prioritize and fully-fund non-police responses such as Portland Street Response. In addition, the City needs comprehensive, culturally appropriate mental health care so that people do not wait until mental health issues become  such a big crisis.

**Independent Monitor Missing Three Months**

There is a three month gap in independent assessment of the City's compliance with the Settlement Agreement between where the COCL left off and the Independent Monitor began. During this time, there were significant uses of force by the PPB against Portlanders, in particular during the protests at Portland State University in May 2024. We again request that the Independent Monitor analyze the events in this gap.

**Community Board for Police Accountability (CBPA)**

We are anxious to see the CBPA operational and hope that can happen sooner than later. Portland Copwatch is concerned about the process and the ability of board members to quickly get the training, resources, and the staffing they need. We ask that the appointed board members be able to direct the Office of Community-Based Police Accountability (OCPA) in the search process for a director of the OCPA, including the creation of any questionnaires or experience requirements for the position. The CBPA will oversee the director and to facilitate a good match, the CBPA needs to be involved in the search.


Members of Portland Copwatch