**J. ASHLEE ALBIES, OSB #051846**
E-mail: ashlee@albiesstark.com
ALBIES & STARK
1500 S.W. First Ave., Suite 1000
Portland, Oregon  97201
Phone:  (503) 308.4770
Fax:     (503) 427.9292

**RIAN PECK, OSB #144012**
Email: rian@visible.law
VISIBLE LAW LLC
333 SW Taylor St., Ste. 300
Portland, Oregon 97204
Phone: (503) 773.0103

*Attorneys for Amicus AMA Coalition for Justice and Police Reform*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br>      Plaintiff, <br><br> v. <br><br> **CITY OF PORTLAND**, <br><br>      Defendant. | Case No. 3:12-cv-02265-SI <br><br> **JULY 2025 FAIRNESS HEARING REPORT OF THE ALBINA MINISTERIAL ALLIANCE COALITION FOR JUSTICE AND POLICE REFORM** |

## Introduction

The Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA Coalition") hereby submits its report for the upcoming July 29, 2025 hearing.

As an initial matter, the AMA Coalition prepares for and attends this upcoming hearing as the first since the passing of our steering committee member, colleague, fellow advocate, and friend Dan Handelman of Portland Copwatch. As this Court and community know, Mr.

Handelman's contribution to police oversight and accountability, and to this case, are immeasurable. Mr Handleman provided an in-depth base of knowledge about the history of policing in this City that provided invaluable context to the important decisions of all parties to this lawsuit and to community members engaged in advocacy. Mr. Handelman has been memorialized by many who knew and loved him and who were impacted by his important work. It is in his honor and with homage to his generous and gentle spirit we continue to advocate for a world more committed to peace and justice.

I. **The Court Monitor Report & Work**

The AMA Coalition appreciates the work of the Court Monitor. Dkt. 490-1. Their report is a significant undertaking and the AMAC commends the readability of the report. The Court Monitor found the City in substantial compliance with many aspects of the agreement, which should be commended. However, the AMA Coalition has concerns about the small data pool on which the Independent Monitor's analyses were based. Specifically, it examined just 25 out of 886 events of use of non-deadly force—a 2.8% sample size. *Id.* at 12. It also examined just 20 out of 9,180 dispatched calls—a 0.02% sample size. *Id.* at 50. The Court Monitor does not explain in its report its sampling methods, does not clarify how cases were selected, does not explain the review undertaken, and does not report statistical confidence intervals. The AMA Coalition is hopeful that the Court Monitor will expand the data sets to provide a more reliable sample size of incidents to examine. This is how trends are identified.

In addition, as noted by other advocates, including the League of Women Voters, Mr. Handelman, and the PCCEP, the gap in assessment for Quarter 2 of 2024 due to the transfer from the COCL to the Independent Monitor leaves three months of data unexamined. This time period should not be forgotten or unexamined, and we urge the Court Monitors to go back and review this period.

The AMA Coalition deeply appreciates the work of the local Portland Court Monitor member Antionette Edwards and suggests the Court Monitor hold office hours in a space unconnected to the Police Bureau as a way for community members not comfortable or not as well versed with electronic communication to connect with the Court Monitor on the technical aspects of the Agreement.

**II. Body Worn Cameras, ECIT, and the Death of Damon Lamarr Johnson**

The AMA Coalition recognizes the roll out of body worn cameras (BWC) and commends the release of the footage in the recent death of Damon Lamarr Johnson, a Black man in mental health crisis who died in police custody after PPB responded to a call for a welfare check on Mr. Johnson. This tragedy should not have happened.

ECIT officers responded, yet Mr. Johnson ended up dead after being placed in a prone position for at least four minutes. He can be heard screaming, while the police narrate the situation by telling him repeatedly to "stop resisting" and to "stop." Again, Mr. Johnson was not suspected of a crime and was demonstrating visible signs of mental illness. It is not clear why the police decided they needed to arrest him and why they decided to place him in handcuffs, so it is understandable that Mr. Johnson likely had no understanding why he was being arrested, even if he were not in crisis. Time and again the amicus have brought specific instances of in custody deaths into these hearings, and time and again no Portland Police Bureau officer has been disciplined or held accountable for the death of the person in custody. And yet, the City is found to be in substantial compliance with the use of force and accountability measures of this agreement. This very fact contributes to a lack of trust in the community and signals that the culture of the PPB has not yet shifted to one of true accountability.

In addition, the PPB convened private viewings of the body worn camera footage before releasing it to the public but did not invite either the MHA or the AMA Coalition to these

viewings. When the footage was released, the PPB included an edited version with a narration that did not allow the viewer to reach their own conclusions. The narrated version edited out several minutes of Mr. Johnson being held in a prone position, which made it appear that he was only briefly on his stomach with his hands cuffed behind his back, and the narration appeared designed to assure the viewer that the police had done nothing wrong. Such influence on the general public when releasing body worn camera footage undermines the very purpose of doing so and suggests to the viewer that his experience should be dismissed, and that his life did not matter.

As the AMA Coalition has maintained, body worn cameras do not solve the cultural issues within the PPB, and while the additional transparency they create are welcomed, any review of this incident must include a full review of the use of cameras and the release of the footage in this case.

### III. Stop Data Remains a Concern

The AMA Coalition notes with continued dismay that PPB's own stop data continues to show that the PPB stops Black people and people of color at a disproportionate rate. See PPB's [Stops Data Collection, 1st Quarter Report 2025](). While the AMA Coalition deeply appreciates that PPB members are prohibited by Oregon's Sanctuary Statute from terrorizing our community through immigration enforcement, disproportionate stop rates continue to negatively impact the community, and relations with the police.

### IV. Seating of the Community Board for Police Accountability (CBPA)

City Council recently approved members of the CBPA. The AMA Coalition notes that two members seated were former district attorneys, contrary to the City Code implementing the Oversight System. The AMA Coalition continues to believe that the City Code should provide for *all* cases involving community members to be investigated by the new system. As we have

remarked in the past, this is a chance to improve community perception and relationships, and it will be difficult to expand the Community Board's jurisdiction later if, early on, people avoid the new system due to the perception that their complaints are not being handled independently of the Police Bureau. Because the Charter allows the Community Board to review cases "as they see fit," the new Board should not have to go to the City Council to expand its jurisdiction. This will also be seen as a weakening of the system and an opening for the City Council to interfere with the judgment of the Community Board.

### V. Paragraph 192

The City has still not completed its investigation into the 2020 protests outlined in Paragraph 192. These investigations have now been open for three years, for events which occurred five years ago. It is difficult to see how the PPB can be found in partial compliance with respect to this paragraph.

### Conclusion

The AMA Coalition will continue to support transformative change within the Portland Police Bureau that will lead to safety of all community members and the building of community trust and the creation of a truly 21st Century Portland Police Bureau. We will continue to work and collaborate with the USDOJ, City, PPA, MHA and community stakeholders to create a police force that is fair and just for all the community.

DATED: July 25, 2025         Respectfully submitted,

*/s/ J. Ashlee Albies*
J. Ashlee Albies, OSB # 051846
ashlee@albiesstark.com

*/s/ Rian Peck*
Rian Peck, OSB #144012
rian@visible.law