**HARMEET K. DHILLON**
Assistant Attorney General
Civil Rights Division
**R. JONAS GEISSLER**
Deputy Assistant Attorney General
**PATRICK MCCARTHY**
Chief
**LAURA L. COWALL**
Deputy Chief
**JEFFREY R. MURRAY**
**CATHERINE YOON**
Trial Attorneys
Special Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530
Phone: (202) 305-3229

   Attorneys for Plaintiff United States

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:12-cv-02265-SI |
| Plaintiff, | |
| v. | UNITED STATES' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT |
| **CITY OF PORTLAND,** | |
| Defendant. | |

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iii

MOTION TO ENFORCE THE SETTLEMENT AGREEMENT.................................... 1

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE THE SETTLEMENT
AGREEMENT ................................................................................................................ 1

I.      INTRODUCTION .............................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................. 2

   A.   Background and Procedural History................................................................ 2

   B.   The United States' Requests for Documents .................................................. 2

   C.   The City's Failure to Provide All Requested Documents and the Parties' Efforts to
   Resolve the Dispute............................................................................................ 5

   D.   Pertinent Terms of the Settlement Agreement................................................ 8

   E.   Pertinent Portland Police Bureau Policies ................................................... 10

III.    LEGAL STANDARD....................................................................................... 12

   A.   Enforcement of Settlement Agreements ....................................................... 12

   B.   Principles of Interpretation ........................................................................... 12

IV.     ARGUMENT .................................................................................................... 14

   A.   The Agreement Authorizes the United States to Access Documents for the Purpose of
   Carrying out the Agreement's Enforcement Provisions ........................................ 14

   B.   Whether the Portland Police Bureau Applies Its Policies Uniformly, Without Regard to
   Political Viewpoint, Is a Matter for Possible Enforcement....................................... 15

   C.   The United States' Document Requests Relate to Whether the Portland Police Bureau
   Applies Its Policies Uniformly, Without Regard to Political Viewpoint................................. 16

   D.   The United States Has Satisfied the Agreement's Pre-Enforcement Requirements......... 19

V.      CONCLUSION................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265 (9th Cir. 1996) ............................................................ 12

*Arizona v. Tohono O'odham Nation*, 818 F.3d 549 (9th Cir. 2016) ............................................. 13

*CNH Indus. N.V. v. Reese*, 583 U.S. 133 (2018) ................................................................... 13, 15

*Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018 (9th Cir. 1989) .............................. 13

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999) ...... 13, 15, 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ............................................... 12

*Miller v. Fairchild Indus., Inc.*, 797 F.2d 727 (9th Cir. 1986) ..................................................... 12

*O'Neill v. United States,* 50 F.3d 677 (9th Cir. 1995) .................................................................. 13

*Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028 (9th Cir. 2005) ......................... 13

*U.S. Postal Serv. v. Ester*, 836 F.3d 1189 (9th Cir. 2016) .......................................................... 13

*Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033 (9th Cir. 2011) ................................. 13

## MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

The United States of America hereby moves to enforce Paragraph 241 of the Settlement Agreement.  On October 3 and October 29, 2025, the United States asked the City of Portland to provide certain documents related to the City's compliance with the Agreement.  The City has not provided most of the requested documents and, in particular, has provided none of the requested recordings.  As discussed in the Memorandum in support of this Motion, Paragraph 241 authorizes the United States to access these documents to assess whether enforcement of the Agreement is appropriate.  The Parties have made a good-faith effort to resolve this dispute through formal mediation but have been unable to do so.  The United States now asks the Court to order the City to provide all requested documents in accordance with Paragraph 241.

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

### I.    INTRODUCTION

The United States of America respectfully submits the following memorandum in support of its Motion to Enforce the Settlement Agreement.

The United States moves to enforce the Agreement to access certain documents the United States has requested to determine whether the Portland Police Bureau (PPB) applies its policies uniformly, including when responding to protests outside the Immigration and Customs Enforcement (ICE) facility in Portland.[1]   The requested documents are relevant to whether the United States should move to enforce Paragraph 245 of the Agreement, which provides that "PPB

---

[1] The United States has not reached any conclusions regarding allegations of additional unconstitutional conduct by the City and PPB.  The United States uniformly enforces the constitutional rights of Americans, including the rights protected under the Settlement Agreement, regardless of the City's allegations regarding the United States' motivations.  The City's accusatory response to the United States' requests, Ex. 4, does not inoculate the City from its straightforward obligations under Paragraph 241 to provide the required information.

shall apply policies uniformly and hold officers accountable for complying with PPB policy and procedure." *See* ECF 499-2, ¶ 245; ECF 506. Paragraph 241 of the Agreement authorizes the United States to access the requested documents "[f]or the purpose of assessing . . . whether enforcement of this Agreement is appropriate." *See* ECF 499-2, ¶ 241; ECF 506. The City must therefore provide all of the documents the United States has requested.

## II.    <u>STATEMENT OF FACTS</u>

### A.  Background and Procedural History

On July 30, 2015, this Court entered the Settlement Agreement as an order of the Court. ECF 99 at 4.[2] As part of that order, the Court conditionally dismissed the Complaint without prejudice and retained jurisdiction "to enforce any provision of the Settlement Agreement . . . ." *Id.* Since then, the Court has approved several amendments to the Agreement. *See* ECF 171 (May 15, 2018); ECF 262 (Sept. 23, 2021); ECF 290 (Apr. 29, 2022); ECF 354 (Feb. 28, 2023); ECF 408 (Jan. 26, 2024); ECF 458 (Aug. 29, 2024); ECF 476 (Dec. 17, 2024); ECF 506 (July 29, 2025). Among these amendments is a 2022 addendum of additional remedies that the Parties added to resolve a notice of noncompliance related to the City's response to protests in 2020. *See* ECF 236 at 4-5, 7; ECF 276 at 2-3; ECF 286-1; ECF 290.

### B.  The United States' Requests for Documents

In an October 3, 2025 letter, pursuant to the Agreement, the United States asked the City to provide certain documents related to PPB's response to recent incidents outside the ICE facility in Portland. Ex. 1. The letter explained that the United States sought these documents to address compliance with the Agreement. *Id.* at 2. Through the letter, the United States requested the documents by October 10, 2025. *Id.*

---

[2] The 2015 order amended the Court's original 2014 order entering the Agreement, ECF 86.

The requested documents included the following:

1)   "The original, unredacted [Body-Worn Camera (BWC)] recording of the officers involved in the observation of the incident involving Mr. [Nick] Sortor, his arrest, and his processing following arrest";

2)   "The original, unredacted BWC recording of the officers involved in the observation of the incident involving Ms. [Katie] Daviscourt, the brief detention of the alleged assailants, and any follow-up discussion regarding the incident at the scene";

3)   "All unredacted incident reports, force reports, arrest reports, general order reports, and after actions reviews of the incidents involving Mr. Sortor and Ms. Daviscourt";

4)   "All complaints received about the incidents involving Mr. Sortor and Ms. Daviscourt or the decision to target the ICE facility for zoning enforcement, and the City's ongoing administrative investigation materials involving such complaints";

5)   "All non-attorney-client-privileged communications regarding the decision to target the ICE facility for zoning enforcement";

6)   "All non-attorney-client-privileged communications regarding directions to PPB officers responding to the protests at the ICE facilities in the last 30 days"; and

7)   "Any documents or explanation that the City wants to provide to the United States in response to the above-listed allegations."[3]

Ex. 1 at 2.

Subsequently, in an October 29, 2025 letter, the United States requested additional documents.  Ex. 2.  These documents included:

8)   "Any or all directives, orders, memos, emails, social media posts, interviews, or other statements or communications to the extent they are not protected by the attorney-client privilege, issued or made by the Mayor, his office, the Chief of Police, his office, or other designees since June 1, 2025, related to protests, incidents involving protest attendees and observers, arrests made at or after protests, First Amendment practices, responses to crowds (including but not limited to crowd monitoring,

---

[3] The "above-listed allegations" included the following: (1) "PPB reportedly arrested individuals who may have been involved in an altercation choosing to arrest Nick Sortor, but not others"; (2) "PPB reportedly failed to identify or arrest individuals who allegedly assaulted Katie Daviscourt, even after briefly detaining the individuals"; and (3) "The City of Portland reportedly has attempted to use its policing powers through a zoning enforcement action to limit ICE's use of its Portland facility."  Ex. 1 at 1.

management, intervention, and control), officer deployments in South Portland, immigration issues, ICE, and cooperation with federal agents";

9)   "Staffing data by shift and district since June 1, 2025";

10)  "Copies of all versions of any policies related to protests and crowd management and control that have been in effect in 2025 including 620.00, 635.10, and 1010.00";

11)  "All records regarding training related to protests, crowd management, ICE, immigration, and cooperation with federal agents and agencies, including in-service and roll-call training, provided to officers since June 1, 2025";

12)  "All Incident Action Plan(s) regarding protests at or near the ICE facility in Portland";

13)  "All daily and/or shift reports by Crowd Management Incident Commanders (CMIC), other supervisors, and the Bureau of Emergency Communications (BOEC) regarding activities in Portland since June 1, 2025";

14)  "All records of all CMIC activations of [the] Rapid Response Team (RRT) since June 1, 2025";

15)  "All documentation and/or recordings of any crowd announcements made by PPB to protest attendees and/or observers at or near the ICE facility since June 1, 2025";

16)  "All social media communications by and from PPB regarding protests or protest attendees and/or observers at or near the ICE facility since June 1, 2025";

17)  "All reports by Special Events Coordinators, Event Liaisons, and/or Dialogue Liaison Officers (DLOs) regarding events at or near the ICE facility";

18)  "All reports regarding any uses of force arising from protest-related incidents since June 1, 2025";

19)  "All After Action reports generated for protest incidents at or near the ICE facility since June 1, 2025";

20)  "Arrests, stops, and calls data and reports by shift and district since June 1, 2025";

21)  "All analyses that PPB conducted or commissioned of its stop, arrest, and call data for the months since June 1, 2025";

22)  "All data and reports related to arrests of individuals for incidents at or near the ICE facility, including any arrests made in a different location for ICE facility-related incidents, since June 1, 2025";

23)    "Information about other protest events in 2025 that PPB has managed and that are not related to ICE including pre-event planning documents, after action reports, [and] arrest data and reports";

24)    "All copies of videos recorded by PPB, including body-worn camera (BWC) video, of protest-related events, arrests, and engagement with the public at or near the ICE facility";

25)    "All documentation of BWC recordings made at or near the ICE facility including reports and/or documentation in the Computer Aided Dispatch (CAD) system";

26)    "All documentation of any communication of any nature by and or between any and all City employees, officers, or officials, from whatever department or office relating to or in any way connected with enforcement or potential enforcement of any zoning, building, or use rules, regulations, laws, or similar authorities, in any way related to or connected with the ICE facility since March 1, 2025";

27)    "All non-emergency call data for the addresses and areas in the streets surrounding the ICE facility since June 1, 2025";

28)    "All CAD transcripts referencing 'Antifa,' 'antifa,' or 'ANTIFA' since June 1, 2025"; and

29)    "All documentation of any resignations proffered by PPB officers related to PPB's response to incidents at or near the ICE facility since June 1, 2025."

Ex. 2 at 1-3.  The letter also asked the City to provide a privilege log as required by Paragraph 241 of the Agreement if the City withheld documents based on attorney-client privilege.  *Id.* at 1.

## C. The City's Failure to Provide All Requested Documents and the Parties' Efforts to Resolve the Dispute

On October 3, 2025, before sending its document requests, the United States asked to meet with the City by videoconference. Ex. 3, ¶ 1.  The City did not schedule the meeting.  *Id.* ¶ 3.  The United States then sent its document request letter.  *Id.* ¶ 2.  Later that day, instead of responding to the United States' request to meet, the City informed the Honorable Stacie F. Beckerman that it believed mediation may soon be needed.  *Id.* ¶ 4.  On October 6, 2025, the City sent the United States a letter response.  Ex. 4.  The letter expressed the City's general opposition to the United States' authority to access the requested documents.  *See id.*  On October 8, 2025, the Parties

attended mediation.  ECF 516.  Judge Beckerman informed the Parties that they had satisfied the Agreement's requirement for mediation before a motion for enforcement.

On October 14, 2025, completely ignoring the Agreement and its requirements, the City produced a portion of the requested documents in the format of a response to a public records request.  Ex. 3, ¶ 7.  The email that accompanied this production explained that the City was providing the documents in response to Request No. 5—i.e., non-attorney-client-privileged communications regarding the decision to target the ICE facility for zoning enforcement.  *Id.*  The email noted that the City would "continue to respond to [the public records] request as items are gathered."  *Id.*  The email did not state whether or when the City would provide all remaining requested documents.  *Id.*  On October 20 and October 23, 2025, the City supplemented its production with additional documents related to Request No. 5.  *Id.* ¶¶ 8-9.  To date, to the United States' knowledge, the City has produced no documents responsive to Requests No. 1 through 4 or 6 through 29.[4]  *Id.* ¶ 19.

On October 29, 2025, the United States sent the City a notice of noncompliance with Paragraph 241 of the Agreement.  Ex. 5.  The notice expressed concern that the City had failed to fully and timely respond to the United States' October 3, 2025 document requests; not provided any assurance it would provide all requested documents; and provided no timeline for producing the remaining documents.  *Id.* at 2.  The notice included an offer to meet with the City if the City desired.  *Id.*  On the same date, the United States sent the City a letter requesting a second set of documents.  Ex. 2.

---

[4] The City has not asserted privilege or produced a Paragraph 241 privilege log in response to any of the United States' pending requests.

On November 3, 2025, the City sent the United States an email acknowledging receipt of the second document request letter.  Ex. 3, ¶ 12.  In its email, the City again ignored the requirements of the Agreement and again characterized that letter as a public records request.  *Id.* On November 4, 2025, the City provided a letter response regarding the second document request letter as well as the notice of noncompliance.  Ex. 6.  The City's letter rejected the United States' authority to access the requested documents and declared that the City would treat the second document request letter as a public records request.  *Id.* at 2.  The City's letter also asserted that the notice of noncompliance did not satisfy the Agreement's pre-enforcement notice requirement. *Id.* at 1-2.  On November 4, 2025, the City explained on a call with the United States that the City would only provide redacted BWC recordings with the faces blurred, consistent with its practice when responding to public records requests.  Ex. 3, ¶ 13.  In an email on November 7, 2025, the City reiterated that it would blur faces before providing BWC recordings; estimated the time it would take the City to blur faces; and asked the United States to choose between narrowing its requests by more than three-quarters or accept a charge for production.  *See id.* ¶ 15.  The Settlement Agreement does not permit such a limitation.[5]

On November 12, 2025, the United States confirmed that the City agreed that all pre-enforcement steps had been accomplished.  Ex. 3, ¶ 16.  On November 21, 2025, the United States sent the City a supplemental notice of noncompliance with Paragraph 241 of the Agreement. Ex. 7.  The notice letter addressed the City's refusal to fully respond to the United States' October 29, 2025 document requests and responded to the City's arguments regarding pre-enforcement requirements.  *Id.*

---

[5] On November 17, 2025, the City resent its November 7 email along with information regarding how to appeal a denial of access to a public record.  Ex. 3, ¶ 17.

**D. Pertinent Terms of the Settlement Agreement**

The Agreement includes the following provisions relevant to the United States' document requests.

The Introduction describes the purpose of the Agreement. It explains that "[t]he Parties enter[ed] into this Agreement with the goal of ensuring that [PPB] delivers police services to the people of Portland in a manner that effectively supports officer and public safety, and complies with the Constitution and laws of the United States." *See* ECF 499-2 at 3; ECF 506. Further, the Introduction recognizes that "[t]he full and sustained implementation of this Agreement is intended to protect the constitutional rights of all members of the community, continuously improve the safety and security of the people of Portland, keep PPB employees safe, and increase public confidence in PPB, all in a cost-effective, timely, and collaborative manner."[6] *See* ECF 499-2 at 4; ECF 506.

Section III, comprised of Paragraphs 66 through 77, discusses use of force. Section III includes requirements related to PPB's use of force policy, supervisory investigations and reports regarding use of force, and compliance audits related to use of force. *See* ECF 499-2, ¶¶ 66-77; ECF 506.

Section XI, comprised of Paragraphs 188 through 195, is an addendum of additional remedies. *See* ECF 499-2, ¶¶ 188-195; ECF 506. Section XI includes, among other things, requirements to "prepare a training needs assessment" based on an outside review of "the City's response to crowd control events in 2020"; conduct investigations related to use of force "against

---

[6] The Introduction also states that the Agreement "requires that the City and PPB put in place more effective systems of oversight and self-correction that will identify and correct problems before they develop into patterns or practices of unconstitutional conduct and/or erode community trust." *See* ECF 499-2 at 4; ECF 506.

individuals during crowd control events [in 2020] without meeting the requirements of PPB Directive 1010.00"; and implement Body-Worn Cameras (BWCs) "pursuant to a policy that is subject to the policy-review-and-approval provisions of this Agreement." *See* ECF 499-2, ¶¶ 189, 192, 194; ECF 506.

Paragraph 241 provides the United States with the authority to independently access information from the City "[f]or the purpose of assessing the Monitor's work and whether enforcement of [the] Agreement is appropriate." *See* ECF 499-2, ¶ 241; ECF 506. Specifically, Paragraph 241 gives the United States "full and direct access to all City staff, employees, facilities, and documents, to the extent necessary to carry out the enforcement provisions of this Agreement under Section XII, subsection H [Paragraphs 263-275] to the extent permitted by law."[7] *Id.*

Paragraph 245 requires PPB to "apply policies uniformly and hold officers accountable for complying with PPB policy and procedure." *See* ECF 499-2, ¶ 245; ECF 506.

Paragraphs 267 through 271, which comprise a portion of Section XII, subsection H,

---

[7] Paragraph 241 states in full:

> For the purpose of assessing the Monitor's work and whether enforcement of this Agreement is appropriate, DOJ as the plaintiff and its consultative experts and agents shall have full and direct access to all City staff, employees, facilities, and documents, to the extent necessary to carry out the enforcement provisions of this Agreement under Section XII, subsection H [Paragraphs 263-275] to the extent permitted by law. DOJ and its consultative experts and agents shall cooperate with PPB and the City to access involved personnel, facilities, and documents in a reasonable manner that minimizes interference with daily operations. DOJ shall provide PPB or the City with reasonable notice of a request for copies of documents. Upon such request, PPB or the City shall provide DOJ with copies (electronic, where readily available) of any documents that DOJ is entitled to access under this Agreement, except any documents protected by the attorney-client privilege. Should the City decline to provide DOJ with access to a document based on attorney-client privilege, the City promptly shall provide DOJ with a log describing the document, including its author, recipients, date of production, and general topic.

*See* ECF 499-2, ¶ 241; ECF 506.

describe the Agreement's pre-enforcement requirements.  First, Paragraph 267 provides that "[i]f the United States reasonably believes the City has failed to implement the terms of the Agreement, it shall promptly notify the City in writing and identify with specificity the portion or portions of the Agreement about which it has concerns."  *See* ECF 499-2, ¶ 267; ECF 506.  Paragraph 268 provides that such notices "shall be in writing and provided by mail . . . ."  *See* ECF 499-2, ¶ 268; ECF 506.  Second, Paragraph 269 provides that "[f]ollowing receipt by mail of any written Notice, the City . . . shall respond in writing within 30 days to the concerns raised by the other Party."  *See* ECF 499-2, ¶ 269; ECF 506.  Third, Paragraph 270 provides that "[i]f the response fails to resolve the stated concerns, the Parties agree to meet as soon thereafter as is mutually convenient to discuss the City's compliance with the portion(s) of the Agreement identified in the Notice or the interpretation of the Agreement by DOJ."  *See* ECF 499-2, ¶ 270; ECF 506.  Finally, Paragraph 271 provides that "[i]f a meeting between the Parties fails to resolve the concerns, the Parties agree to participate in mediation conducted by a mutually agreeable neutral third party."  *See* ECF 499-2, ¶ 271; ECF 506.

Paragraph 272 sets forth the Agreement's requirements for a motion for enforcement:

> If mediation fails to resolve the concerns, the United States or the City may file a Motion in the U.S. District Court for the District of Oregon, located in Portland, Oregon, to enforce compliance with the terms of this Agreement or to seek a Declaration of the meaning of this Agreement. The Motion or request for Declaration shall only allege concerns raised by the City or DOJ that were the subject of mediation. The Parties shall then confer with the Court to schedule a date on which the Motion or Declaration shall be heard or will otherwise comply with the Court's preferred procedure.

*See* ECF 499-2, ¶ 272; ECF 506.

### E.  Pertinent Portland Police Bureau Policies

PPB policies relevant to the dispute include the following PPB Directives: (1) 0315.00 (Laws, Rules, and Orders); (2) 0635.10 (Portland Police Bureau Response to Public Order Events);

(3) 0620.00 (Body-Worn Camera Use and Management), and (4) 1010.00 (Use of Force).

First, Directive 0315.00 requires that PPB members have knowledge of and comply with federal law.   City of Portland, PPB Directive 0315.00 Laws, Rules, and Orders, https://perma.cc/RS5U-8FLQ.   This is PPB's general policy which requires that all members uphold legally protected federal civil rights and federal law.

Second, the subject of Directive 0635.10 is PPB's role in public order events, including "crowd monitoring, crowd intervention, and crowd control."   City of Portland, PPB Directive 0635.10 Portland Police Bureau Response to Public Order Events, https://perma.cc/4P3K-HAVG. Among other things, this directive requires PPB and/or certain PPB members to:

1) "continuously monitor the crowd for behavior that presents a clear and present danger that threatens the public safety, peace, or order and issue appropriate announcements, as needed";

2) "strive to distinguish between persons engaged in criminal behavior, persons peacefully and lawfully demonstrating, legal observers and members of the media, and nonparticipants";

3) "use intervention strategies and tactics, such as individual arrests, in an attempt to de-escalate the situation and prevent further unlawful behavior without interfering with members of the crowd who are lawfully assembling";

4) "[w]hen feasible . . . convey police action to the crowd via announcements and warnings and attempt to encourage lawful activity";

5) "not detain or arrest legal observers or members of the media solely for their role in observing, capturing, and/or reporting on events";

6) "when feasible and consistent with the law . . . activate . . . Body Worn Cameras when engaging with the public during a public order event";

7) "[w]hen applicable, write an overall police report that describes major decision-making during the event"; and

8) "[f]or non-extended events, complete an After Action in accordance with Directive(s) 0905.00, Non-Force After-Action Reporting."

*Id.*

Third, Directive 0620.00 requires "[a]ll on-duty sworn members in a uniform assignment displaying a badge who take part in . . . public order event operations . . . ." to wear a BWC.  City of Portland, PPB Directive 0620.00 Body-Worn Camera Use and Management, https://perma.cc/FHW9-ZJE4.  The directive further requires PPB members to "activate their BWCs [if not already activated] when feasible and when . . . [e]ngaging with the public during a public order event, when consistent with the law . . . ."  *Id.*  PPB members are to also "document all BWC recordings in an appropriate report or, if no report is required for the incident, in the CAD."  *Id.*  PPB supervisors are required to "review reporting members' BWC recordings as part of the After-Action review process."  *Id.*

Fourth, Directive 1010.00 extends PPB's use of force policies and procedures to "all force used during crowd management."  City of Portland, PPB Directive 1010.00 Use of Force, https://perma.cc/6BDW-YHEV.

### III.    LEGAL STANDARD

#### A.  Enforcement of Settlement Agreements

A district court's jurisdiction to enforce a settlement agreement arises where "the district court explicitly retains jurisdiction over the settlement agreement, or incorporates the terms of the agreement in its dismissal order."  *Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1268-69 (9th Cir. 1996).  In such instances, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."  *Id.* (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).

#### B.  Principles of Interpretation

Courts construe settlement agreements as contracts.  *Miller v. Fairchild Indus., Inc.*, 797

F.2d 727, 733 (9th Cir. 1986).  In interpreting a federal contract,[8] "[w]ell-known principles of contract law guide [the court] . . . ."  *U.S. Postal Serv. v. Ester*, 836 F.3d 1189, 1195 (9th Cir. 2016) (quoting *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011)).

Under general principles of contract interpretation, "[w]hen the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further."  *CNH Indus. N.V. v. Reese*, 583 U.S. 133, 141 (2018) (citation and quotation marks omitted); *see also Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) ("Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.").

In examining the terms of a contract, courts consider first "[w]henever possible, the plain language of the contract . . . ."  *Klamath Water Users Protective Ass'n*, 204 F.3d at 1210.  Courts also consider the written contract "as a whole" and interpret "every part . . . with reference to the whole, with preference given to reasonable interpretations."  *Id*.  Courts do not look to extrinsic evidence when contract terms are not ambiguous.  *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 560-61 (9th Cir. 2016) (A contract "must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the contract.").

A contract is not ambiguous "unless, after applying established rules of interpretation, it remains reasonably susceptible to at least two reasonable but conflicting meanings."  *CNH Indus. N.V.*, 583 U.S. at 139 (citation, quotation marks, and brackets omitted); *see also Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989) ("[A] contract is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation.").

---

[8] Courts use federal law to interpret contracts "entered into pursuant to federal law and to which the government is a party."  *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1034 (9th Cir. 2005) (citing *O'Neill v. United States,* 50 F.3d 677, 682 (9th Cir. 1995)).

# IV.    ARGUMENT

Court enforcement of the Agreement is necessary to address the City's failure to comply with Paragraph 241.  Paragraph 241 of the Agreement requires the City to produce all of the documents the United States has requested because the United States has requested those documents to determine whether it is appropriate to enforce compliance with the Agreement. Specifically, the documents the United States has requested pertain to the City's compliance with Paragraph 245 in the context of protests.  Under Paragraph 245, the City must uniformly apply PPB policies, including Directives 0315.00 (Laws, Rules, and Orders), 0635.10 (Portland Police Bureau Response to Public Order Events), 0620.00 (Body-Worn Camera Use and Management), and 1010.00 (Use of Force).  To date, the City has only partially provided the requested documents, providing limited responsive material as to Request No. 5.  The City has not committed to providing the remainder of the documents that have been requested.  Additionally, as to BWC recordings, the City has expressed its intent to provide incomplete, redacted documents.  The United States is entitled to, and the Court should order the City to provide, all requested documents as required by Paragraph 241, without redaction or alteration.

## A. The Agreement Authorizes the United States to Access Documents for the Purpose of Carrying out the Agreement's Enforcement Provisions

The plain language of Paragraph 241 makes clear that the United States is entitled to access City documents to determine whether enforcement of the Agreement is appropriate.  Paragraph 241 of the Agreement expressly provides that "for the purpose of assessing . . . whether enforcement of this Agreement is appropriate,[9] DOJ as the plaintiff . . . shall have full and direct

---

[9] Paragraph 241 authorizes access for the dual purpose of "assessing the Monitor's work and whether enforcement of [the] Agreement is appropriate."  ECF 499-2, ¶ 241; ECF 506.  Here, access would satisfy both purposes.  The Monitor has not reviewed the City's compliance with Paragraph 245, despite the United States having repeatedly found the City only in partial

access to all City staff, employees, facilities, and documents, to the extent necessary to carry out the enforcement provisions of this Agreement . . . to the extent permitted by law."[10]  *See* ECF 499-2, ¶ 241; ECF 506.  Therefore, the plain language of Paragraph 241 unambiguously expresses the Parties' intent.  That expression controls, and the inquiry should proceed no further.  *See CNH Indus. N.V.*, 583 U.S. at 141; *Klamath Water Users Protective Ass'n*, 204 F.3d at 1210.

### B.  Whether the Portland Police Bureau Applies Its Policies Uniformly, Without Regard to Political Viewpoint, Is a Matter for Possible Enforcement

Additionally, the plain language of Paragraph 245 requires that PPB implement its policies without regard to political viewpoint.  First, as Paragraph 245 of the Agreement provides, "PPB shall apply policies *uniformly* and hold officers accountable for complying with PPB policy and procedure."  *See* ECF 499-2, ¶ 245 (emphasis added); ECF 506.  Under its ordinary meaning, the word "uniformly" precludes PPB from providing police services differently based on the political views of the people it serves.  Second, nothing about the word "policies" limits the scope of PPB policies that Paragraph 245 covers.  Paragraph 245 could have included such a restriction, but it unambiguously does not.  Taking these two points together, the plain language of Paragraph 245 sufficiently shows the Parties' intent to have PPB apply its policies uniformly regardless of political viewpoint, including with regard to the policies that are relevant here.[11]  *See CNH Indus. N.V.*, 583 U.S. at 141; *Klamath Water Users Protective Ass'n*, 204 F.3d at 1210.

The plain language is sufficient to resolve any dispute.  But even if that were not so, the

---

compliance with that paragraph.  *See* ECF 369-1 at 56, 60; ECF 490-1 at 18.  The United States may conclude based on the documents it receives that the Monitor should provide a compliance rating for Paragraph 245.  Thus, access by the United States is particularly important.

[10]  The City does not—nor could it—claim that any law prohibits access to the requested documents.

[11]  The relevant PPB policies are Directives 0315.00, 0635.10, 0620.00, and 1010.00.

only reasonable interpretation of Paragraph 245 is that it covers, at a minimum, PPB Directives 0315.00 (Laws, Rules, and Orders), 0635.10 (Portland Police Bureau Response to Public Order Events), 0620.00 (Body-Worn Camera Use and Management), and 1010.00 (Use of Force).  These policies address core Agreement issues.  For example, the Introduction addresses the delivery of police services in a manner that complies with the Constitution and laws of the United States and the protection of all community members' constitutional rights, *see* ECF 499-2 at 3-4; ECF 506; Section XI addresses PPB's response to crowd control events in 2020, *see* ECF 499-2, ¶¶ 189, 192; ECF 506; Paragraph 194 addresses the use of BWCs, *see* ECF 499-2, ¶ 194; ECF 506; and Section III addresses use of force, s*ee* ECF 499-2, ¶¶ 66-77; ECF 506.  Moreover, the Agreement's purpose to support public safety is consistent with uniform implementation of these policies.  *See* ECF 499-2 at 3-4; ECF 506.  A holistic reading of the Agreement therefore affirms the inclusion of these policies under Paragraph 245.  *See Klamath Water Users Protective Ass'n*, 204 F.3d at 1210.

### C.  The United States' Document Requests Relate to Whether the Portland Police Bureau Applies Its Policies Uniformly, Without Regard to Political Viewpoint

All of the documents the United States has requested would help inform the United States' assessment of whether enforcement of Paragraph 245 is appropriate.  As discussed below, the requested documents relate to whether PPB has uniformly applied the above PPB Directives without regard to political viewpoint as required by Paragraph 245.  These documents would enable the United States to develop the record and consider possible enforcement.  Accordingly, the United States' access is necessary to carry out the enforcement provisions of the Agreement.

*First*, Requests No. 1-4, 13-19, 22-25, and 27-28 include records of individual incidents at or near the ICE facility, PPB's response to those incidents, and comparative information about PPB's other crowd management activities in Portland.  These records would show whether there have been any systemic failures to apply Directive 0315.00's legal compliance requirements,

Directive 0635.10's crowd management requirements,[12] Directive 0620.00's BWC requirements,[13] and Directive 1010.00's requirements regarding use of force.[14] Further, these records would reveal the nature of such failures, how widespread they have been, and whether they have tended to occur when people with political views disfavored by the City are involved.

In particular, Requests No. 1 and 2 address BWC recordings related to PPB's response to alleged incidents at the ICE facility protests. BWC recordings are a specific remedy added following the City's previous breach during the 2020 crowd control incidents and the United States' requests relate directly to recent crowd control. Denying the United States' requests would eviscerate the Court-approved remedy, i.e., the direct recording of data to assess PPB compliance with the Settlement Agreement and federal law. Requests No. 1 and 2 are specific requests for BWC recordings of defined incidents. Previously, when the Parties disagreed before this Court about the scope of access to BWC recordings, the City assured—outside the context of mediation—that it would provide the United States access in response to any such specific requests. The City is now estopped from taking an inconsistent position when faced with such a

---

[12] For example, Directive 0635.10 requires PPB and/or PPB members to "continuously monitor the crowd for behavior that presents a clear and present danger that threatens the public safety, peace, or order and issue appropriate announcements, as needed"; "strive to distinguish between persons engaged in criminal behavior, persons peacefully and lawfully demonstrating, legal observers and members of the media, and nonparticipants"; and "use intervention strategies and tactics, such as individual arrests, in an attempt to de-escalate the situation and prevent further unlawful behavior without interfering with members of the crowd who are lawfully assembling." City of Portland, PPB Directive 0635.10 Portland Police Bureau Response to Public Order Events, https://perma.cc/4P3K-HAVG.

[13] These requirements include, among other things, wearing BWCs in "public order event operations" and activating BWCs "when . . . [e]ngaging with the public during a public order event . . . ." City of Portland, PPB Directive 0620.00 Body-Worn Camera Use and Management, https://perma.cc/FHW9-ZJE4.

[14] See City of Portland, PPB Directive 1010.00 Use of Force, https://perma.cc/6BDW-YHEV.

request.

*Second*, Requests No. 3, 17-19, 22, 23, and 25 include reports and reviews of incidents taking place at the ICE facility protests and comparative information about PPB's other activities. Similar to the materials described above, these documents would provide the United States with relevant information as to whether PPB has uniformly applied the requirements of Directives 0315.00, 0635.10, 0620.00, and 1010.00 when monitoring and responding to protest-related incidents. In addition, a portion of these documents would show whether PPB has uniformly applied post-incident policies, including Directive 0635.10's requirements to have certain PPB members "write an overall police report that describes major decision making during the [public order] event" and "[f]or non-extended events, complete an After Action in accordance with Directive(s) 0905.00, Non-Force After-Action Reporting." City of Portland, PPB Directive 0635.10 Portland Police Bureau Response to Public Order Events, https://perma.cc/4P3K-HAVG.

*Third*, Requests No. 9, 20, and 21 include citywide data regarding staffing, arrests, stops, and calls. These documents would help evaluate whether PPB has uniformly applied Directives 0315.00, 0635.10, 0620.00, and 1010.00 by providing comparative information with which to assess PPB's response to the ICE facility protests. For example, these documents would show whether PPB's staffing decisions affected its capacity to uniformly apply its policies. Further, these documents would show whether PPB distributed its staff according to need.

*Fourth*, the portion of Request No. 4 concerning an alleged decision to target the ICE facility, and the owners of the facility, for zoning enforcement and Requests No. 5, 8, and 26 are needed to ascertain whether any viewpoint bias by City leadership has affected PPB's uniform application of Directives 0315.00, 0635.10, 0620.00, and 1010.00 with regard to incidents at the ICE facility protests. Intent to treat individuals differently based on viewpoint makes it more likely

that such treatment occurred.  Intent also makes it more likely that there has been a pattern or practice of such treatment, rather than isolated incidents.

*Fifth*, Requests No. 6, 8, 11, 12, and 29[15] include trainings, plans, and communications regarding directions to PPB officers.  These documents relate to whether any failure to uniformly apply Directives 0315.00, 0635.10, 0620.00, and 1010.00 was intentional.  Similar to the above, intent makes a pattern or practice more likely.

*Sixth*, Request No. 10 includes policies related to protests and crowds.  This request is meant to capture all relevant PPB policies, including those the United States has not already identified.

*Finally*, Request No. 7 is a catchall request for any other information the City would like the United States to consider.

**D.  The United States Has Satisfied the Agreement's Pre-Enforcement Requirements**

As discussed above, the Agreement requires the United States to take certain actions before filing a motion to enforce the Agreement.  The United States has satisfied these requirements.  Although certain steps have occurred out of order, the United States has sent the City a notice of noncompliance with regard to the issues addressed in the pending Motion and has attended mediation, which was unsuccessful.  These steps occurred out of order because the City requested mediation before the United States had received the City's response to the United States' document requests.  *See* Ex. 3, ¶¶ 4-5.  Nonetheless—without speaking to the content of mediation—at the October 8, 2025 mediation, the mediating judge instructed the Parties to consider the pre-enforcement mediation requirement satisfied.  Afterward, the United States offered, but the City

---

[15] If PPB officers have resigned due to dissatisfaction with PPB's response to incidents around the ICE facility, documentation of their resignations could include communications regarding directions to PPB officers.

did not desire, to meet to discuss the notice. *See id.* ¶¶ 10, 13, 16. The Parties have agreed that they do not seek any further steps from the other Party to accomplish the pre-enforcement requirements. *See id.* ¶ 16. Therefore, the United States has met the pre-enforcement requirements to the extent it was reasonable to do so.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the United States asks the Court to order the City to timely and fully produce all documents requested by the United States in its October 3, 2025 and October 29, 2025 letters in accordance with Paragraph 241 of the Agreement.

DATED: November 24, 2025.

Respectfully submitted,

For Plaintiff UNITED STATES OF AMERICA:

SCOTT E. BRADFORD
United States Attorney
District of Oregon

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

R. JONAS GEISSLER
Deputy Assistant Attorney General

PATRICK MCCARTHY
Chief
Special Litigation Section

LAURA L. COWALL
Deputy Chief
Special Litigation Section

 */s/ Catherine Yoon*
JEFFREY R. MURRAY
CATHERINE YOON
Trial Attorneys
Special Litigation Section
Civil Rights Division
United States Department of Justice