**Juan C. Chavez**, OSB #136428
Email: jchavez@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270

    Attorney for *Amicus Curiae* Mental Health Alliance

**J. Ashlee Albies**, OSB #051846
Email: ashlee@albiesstark.com
Albies & Stark, LLC
1500 SW First Ave., Suite 1000
Portland, OR 97201
Phone: 503-308-4770

**Rian Peck**, OSB #144012
Email: rian@visible.law
Visible Law LLC
333 SW Taylor Street, Suite 300
Portland, OR 97204
Phone: 503-773-0103

    Attorneys for Enhanced *Amicus* AMA Coalition for Justice and Police Reform

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>    Defendant. | Case No. 3:12-cv-02265-SI<br><br>*AMICI'S* COMBINED OPPOSITION TO UNITED STATES'S MOTION TO ENFORCE SETTLEMENT AGREEMENT |

COMES NOW, Enhanced-*Amicus* Albina Ministerial Alliance Coalition for Justice and Police Reform and *Amicus* Mental Health Alliance provide this joint briefing in opposition to Plaintiff United States of America's Motion for Enforcement.

## INTRODUCTION

Even though the United States knows that the *amici* oppose its Motion to Enforce, it did not inform this Court of that opposition when it filed its motion. To be clear: The *Amici* are opposed to the relief the United States seeks. This is somewhat unfamiliar ground for *Amici*. We have historically been largely aligned with the United States, often supporting its past motions to cure past deficiencies in either enforcement or to address new problems. We have very often encouraged the City to take affirmative action in areas where we believed there were (and in some cases, still are) compliance gaps.

When another person in mental health crisis has been killed by a Portland Police officer, like in July of this year, we have asked the United States, and now the Monitor, to take immediate affirmative steps to address these failings. We have been told time and time again that there would eventually be a status report where maybe it will be addressed. That the time to comment is later, in due course. Little urgency. Rare follow up. No motions to enforce.

Simply, the import of the United States's action here are not subtle: The rights of right wing–adjacent social media influencers cannot wait. No other group, least of all Portlanders, need apply. The timing of the United States's letters in this case is also not subtle: both demand letters arrived during hearings when the City and the State of Oregon were in court before Judge Immergut defending our sovereignty in the face of the Federal Executive Branch's aggressive action to commandeer our State's national guard and, when that failed, to send other states'

national guards in. The demands for documents being made here are obviously, flagrantly, as a punishment or a precursor for punishment for challenging this Administration's conduct.

The *Amici* strenuously request that the Court **DENY** the United States's motion.

## DISCUSSION

**I.     No Ifs about "And"**

The United States's motion is premised on an inartful reading of Paragraph 241. The United States reads an "or" where there is none. Paragraph 241 provides that "[f]or the purpose of *assessing the Monitor's work* **and** whether enforcement of this Agreement is appropriate, DOJ as the plaintiff… shall have full and direct access to all City staff, employees, facilities, and documents, to the extent necessary to carry out the enforcement provisions of this Agreement…" (Emphasis added). Assessment of the Independent Monitor's work begets determining whether enforcement is appropriate. Interpreting this paragraph any other way ignores the purpose of Section XII, and the months of negotiations about it, subverting the very purpose of having a Monitor in the first place.

Paragraph 241 is nestled amongst the newly adopted Section XII, which was adopted to transfer monitoring the agreement away from the United States and into the hands of an independent court monitor. The preceding 51 paragraphs in Section XII highlight the duties, responsibilities, and abilities of the Monitor, and the City's duties to comply with the work of the Monitor. After paragraph 241, Section XII only enumerates further powers and duties independent of the Monitor when PPB is adopting new training or policies. *See* ¶ 243. Simply, Section XII recentered the case around a Monitor.

It is grammatically permissible to read Paragraph 241 the way that the United States does, but the Court should not rest there. Last year, the Supreme Court discussed a disputed

conjunction in *Pulsifer v. United States*, 601 U.S. 124 (2024). There, the Court had to determine how many conditions must be met (or not met) under the First Step Act. *Id.* As the Court cautioned, "The choice between [two permissible grammatical readings] is not a matter of grammatical rules. It can sensibly be made only by examining . . . the paragraph's content . . . . Or, as we usually say in statutory construction cases, by reviewing text in context." *Id.* at 133.

"And" means "along with or together with." *Id. citing* Webster's Third New International Dictionary 80 (1993). Here, requesting documents from the City is conjoined with assessing the Monitor's work. Had there been a comma, or an "or," between these clauses, that would better support that these are independent conditions for requesting documents from the City. But there is none.

As here, an "and" can serve as a natural order of operations. Take for instance the admonition "don't drink and drive." Reading this as the United States might, one could interpret the rule as to not drive. Another reading could be that the order is not material, and one should not drive and drink. The most natural and sensible reading would be to read those conditions in the order that they were written, to not drink *then* drive. So too here, the order provided in Paragraph 241 makes the most sense when it is interpreted to give full effect to the purpose of Section XII, to let the Monitor do its work and to allow the United States to assess that work when it has been completed. That is the framework the Parties were operating under—at least until October.

The Parties must let the Monitor do its job before rushing to the conclusion that it is not doing its job consistent with the Agreement. The Monitor is not set to review PPB's actions from September and October 2025 until next year. The United States cannot request documents to evaluate the Monitor's performance until then.

**II.     An Overreach Untethered from Reality**

Our text-based argument is not to suggest that we believe there is a good faith basis under the Settlement Agreement to demand these documents. If and likely when the Monitor finds no compliance problems under Paragraph 245 for actions taken outside the ICE Building in September and October, the *Amici* would still not support the United States's crusade here. We anticipate that the United States will tell the Court at our next hearing that they are entitled to these documents whether or not the unconstitutional use of force against people in a mental health crisis is implicated. If so, the context of United States's demand bears discussion. It is important that the Court ward against this type of political point-taking and spectacle-making from the United States.

In our review of the relevant information, the subjects of the United States's concern were not treated with undue rigor or explicit viewpoint discrimination. The *Amici* are in fact grateful that PPB interactions with these counter-demonstrators appeared to use minimal force—which was not the case during the racial justice protests of 2020—and with minimal escalation of tensions at the protests.

Based on the videos available, the two people identified in Assistant Attorney General Dhillon's letter giving rise to the United States's motion appear to use their appearances at protests to antagonize other protesters in fights to provide fodder for their social media platforms. While not a new dynamic in Portland, to date the United States has not taken an interest in these street squabbles.

It has been well-documented that far-right groups like the Proud Boys have used Portland[1] as a training ground for insurrectionist activities that eventually culminated in the invasion of the United States Capitol building on January 6, 2021.[2] From 2016 to 2019, when the Proud Boys or other far-right groups organized events, it was left-wing counter protesters who were often subjected to mass violence by PPB.[3] The same was true after the murder of George Floyd in May 2020.[4]

To now claim that PPB has engaged in viewpoint discrimination, after two right-wing media influencers were mildly inconvenienced, strains credulity. The United States did not initiate a First Amendment and Equal Protection investigation after other litigation revealed the "Prayer of the Alt-Knight" training slide.

It is further discouraging that AAG Dhillon immediately took to social media to announce that Portland was about to "FO" (initialism for "Find Out," the second part of an oft-used phrase by the administration, "Fuck Around and Find Out") what happens when local police attempt to hold administration-favored media influencers accountable.

Indeed, the weekend after sending this letter on Ms. Daviscourt's behalf, according to media reports, Ms. Daviscourt was allowed onto the roof of the ICE Building for a photo opportunity. Immediately after the parties to this suit received the letter—unsubtly sent while the

---

[1] Andy Campbell, *Proud Boys Leader Admits Their Rallies Are For Fighting And Wasting Money*, The Huffington Post (August 22, 2019), available at https://www.huffpost.com/entry/proud-boys-rallies-portland_n_5d5e9882e4b0dfcbd4893ee5

[2] *Proud Boys organizer arrested in Florida over riot at Capitol*, Politico (January 21, 2021) available at https://www.politico.com/news/2021/01/21/proud-boys-organizer-arrested-florida-461022.

[3] Katie Shepherd, *Portland Police Chief Says Protesters Went Off to "Whine And Complain" Last Week Because Officers "Kicked Your Butt"*, Willamette Week (August 15, 2018), available at https://www.wweek.com/news/courts/2018/08/15/portland-police-chief-says-protesters-went-off-to-whine-and-complain-last-week-because-officers-kicked-your-butt/.

[4] Maxine Bernstein, *Lawyers for Don't Shoot Portland urge judge to sanction city for violating court orders restricting force used against crowds*, The Oregonian (July 1, 2020), available at https://www.oregonlive.com/crime/2020/07/lawyers-for-dont-shoot-portland-urge-judge-to-sanction-city-for-violating-court-orders-restricting-force-used-against-crowds.html.

Plaintiff and Defendant to this case were arguing about the deployment of military troops into the peaceful streets of Portland—Mr. Sortor had already taken to social media celebrating the AAG's demand letter. Between these events, one of the points of the United States's records demand letter became clear: they were attempting to create social media content.

The other apparent point is to collect discovery in *State of Oregon, et. al. v. Trump, et. al.*, 3:25-cv-01756-IM (D. Or. 2025), currently before the Ninth Circuit. For instance, the United States seeks information about "[a]ll non-attorney-client-privileged communications regarding the decision to target the ICE facility for zoning enforcement"; "[a]ll documentation of any communication of any nature by and or between any and all City employees, officers, or officials, from whatever department or office relating to or in any way connected with enforcement or potential enforcement of any zoning, building, or use rules, regulations, laws, or similar authorities, in any way related to or connected with the ICE facility since March 1, 2025"; and "All CAD transcripts referencing 'Antifa,' 'antifa,' or 'ANTIFA' since June 1, 2025."[5]

The *Amici* will not stand idly by while this long litigated Settlement Agreement—designed to protect people with mental illness from unconstitutionally excessive force—risks exploitation by the United States. Indulging this motion to enforce threatens to undermine the proceedings of the past thirteen years.

## CONCLUSION

The United States's Motion to Enforce was filed the Monday before the Thanksgiving holiday. The *Amici* and its members have participated in this case since its inception. The reasons are myriad, but what weighs on us most are the lives that have been lost while the parties dither

---

[5] "Antifa" is short for "anti-fascist."

on what is a relevant fact, a durable remedy, and whether PPB can ever really change. The family of Damon Johnson just had a Thanksgiving with their loved one no longer on this Earth. The *Amici* request that the parties get back to the hard work of improving the lives of Portlanders, and protecting the most vulnerable amongst us.

DATED: December 8, 2025.

    Respectfully,

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB 136428
Oregon Justice Resource Center
Attorney for Mental Health Alliance

/s/ *J. Ashlee Albies*
J. Ashlee Albies, OSB 051846
Albies & Stark, LLC

/s/ *Rian Peck*
Rian Peck, OSB 144012
Visible Law LLC

Attorneys for AMA Coalition