**HARMEET K. DHILLON**
Assistant Attorney General
Civil Rights Division
**R. JONAS GEISSLER**
Deputy Assistant Attorney General
**PATRICK MCCARTHY**
Chief
**JEFFREY R. MURRAY**
**CATHERINE YOON**
Trial Attorneys
Special Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: (202) 305-3229

    Attorneys for Plaintiff United States

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:12-cv-02265-SI |
| Plaintiff, | |
| v. | PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENFORCE THE SETTLEMENT AGREEMENT |
| **CITY OF PORTLAND,** | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. ii
TABLE OF AUTHORITIES ......................................................................................................... iii
REPLY IN SUPPORT OF MOTION TO ENFORCE THE SETTLEMENT AGREEMENT ...... 1
I.     INTRODUCTION ............................................................................................................. 1
II.    ARGUMENT ..................................................................................................................... 1
   A.   The Agreement's Plain Language Affirms the United States' Right to Access the
   Requested Documents ............................................................................................................ 1
      1.    The United States Has an Enforceable Right to Access Documents ............................. 2
      2.    The United States May Access Documents Independent of Monitor Compliance
      Assessments .......................................................................................................................... 3
      3.    The United States May Access Documents Without Showing It Has a Basis for
      Enforcement .......................................................................................................................... 6
      4.    The Agreement's Requirement Regarding Portland Police Bureau Policies Prohibits
      Selective Application of the Policies the United States Has Identified ................................ 7
   B.   Resorting to Extrinsic or Parol Evidence to Interpret the Agreement Is Inappropriate ...... 9
   C.   The Unclean Hands Doctrine Does Not Bar the United States' Access to Documents ... 11
III.   CONCLUSION ................................................................................................................ 14

Page ii    Plaintiff's Reply in Support of Motion to Enforce the Settlement Agreement
           *United States of America v. City of Portland*, 3:12-cv-02265-SI

# TABLE OF AUTHORITIES

**Cases**

*Angelette, LLC v. Bradley*, 674 F. Supp. 3d 687 (D. Alaska 2023) .............................................. 10

*Arizona v. Tohono O'odham Nation*, 818 F.3d 549 (9th Cir. 2016) ................................................ 9

*CNH Indus. N.V. v. Reese*, 583 U.S. 133 (2018) ........................................................................... 9

*Hadix v. Caruso*, 297 Fed. App'x 504 (6th Cir. 2008) .................................................................. 11

*Int'l Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401 (9th Cir. 1985) ........................................................................................................................ 10

*Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018 (9th Cir. 1989) ............................... 10

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999) .................... 9

*Oregon v. Trump*, No. 3:25-cv-1756-IM, 2025 WL 2817646 (D. Or. Oct. 4, 2025). ................... 12

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945) ........................ 11

*Pulsifer v. United States*, 601 U.S. 124 (2024) ............................................................................... 4

*Republic Molding Corp. v. B. W. Photo Utils.*, 319 F.2d 347 (9th Cir. 1963) ......................... 11, 12

*S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921 (9th Cir. 2014) ....................................................... 11

*United States v. Asarco Inc.*, 430 F.3d 972 (9th Cir. 2005) .......................................................... 10

*United States v. City of Northlake, Ill.*, 942 F.2d 1164 (7th Cir. 1991) ........................................ 10

## REPLY IN SUPPORT OF MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

### I.	INTRODUCTION

On November 24, 2025, Plaintiff United States of America moved to enforce Paragraph 241 of the Settlement Agreement to access certain City documents. Pl.'s Mot. to Enforce the Settlement Agreement ("Pl.'s Mot."), Dkt. No. 520. On December 8, 2025, Defendant City of Portland, Amicus Mental Health Alliance, and Enhanced Amicus Albina Ministerial Alliance Coalition for Justice and Police Reform filed oppositions to the United States' Motion.[1] Amici's Joint Opp'n to Pl.'s Mot. to Enforce the Settlement Agreement ("Amici's Opp'n"), Dkt. No. 522; Def.'s Resp. to Pl.'s Mot. to Enforce the Settlement Agreement ("Def.'s Resp."), Dkt. No. 523. The United States now submits its Reply in Support of Motion to Enforce the Settlement Agreement.

Contrary to the City's and Amici's contentions, the Agreement unambiguously provides for, and expresses the Parties' intent to authorize, the United States' access to the requested documents. The United States respectfully requests that the Court grant the United States' Motion.

### II.	ARGUMENT

**A. The Agreement's Plain Language Affirms the United States' Right to Access the Requested Documents**

As discussed below, in objecting to the United States' access to the requested documents, the City and Amici fail to overcome the plain language of the Agreement, which reads in pertinent part: "For the purpose of assessing the Monitor's work *and* whether enforcement of this

---

[1] Amici assert that the United States failed to inform this Court of Amici's opposition. The Declaration attached to the United States' Motion noted that one of the amici had expressed opposition. Decl. of Yvonnie Demmerritte, Dkt. No. 520-3, ¶ 14. At the time of the Motion, the United States was only aware that one amicus had taken a formal position of opposition.

Page 1	Plaintiff's Reply in Support of Motion to Enforce the Settlement Agreement
	*United States of America v. City of Portland*, 3:12-cv-02265-SI

Agreement is appropriate, [the Department of Justice] as the plaintiff and its consultative experts and agents shall have full and direct access to all City staff, employees, facilities, and documents, to the extent necessary to carry out the enforcement provisions of this Agreement under Section XII, subsection H to the extent permitted by law." Settlement Agreement ("Agreement"), Dkt. No. 499-2, ¶ 241; Dkt. No. 506 (emphasis added). On its face, the Agreement does not block the United States from accessing documents during the Monitor's preparation of his compliance assessments. Nor does it require the United States to show it already has a basis for enforcement before exercising its right to access documents. Reading such limits into the Agreement would not only be inconsistent with the text of the Agreement but also be an unreasonable interpretation in that doing so would hamstring the United States' ability to ensure full and timely implementation of the Agreement. Moreover, the City's objections to the scope and substance of the United States' document requests misinterpret the Agreement and inappropriately rely on extrinsic evidence. Accordingly, the City's and Amici's arguments must fail, and the United States' Motion should be granted.

    1. <u>The United States Has an Enforceable Right to Access Documents</u>

The City incorrectly argues that Paragraph 241 is "not capable of implementation" and that, consequently, the United States has not provided notice of a failure to "implement" the Agreement. *See* Def.'s Resp. at 17-18.[2] The City's argument would lead to the nonsensical conclusion that Paragraph 241 may never be enforced. Not only that, the City's proposed

---

[2] The City bases its strained interpretation on Paragraph 267, which requires the United States to provide notice of a failure to "implement" the Agreement, and Paragraph 33, which defines "implementation" as "the development or putting into place of a policy or procedure, including the appropriate training of all relevant personnel, and the consistent and verified performance of that policy or procedure in actual practice through the regular use of audit tools." *See* Def.'s Resp. at 17; Settlement Agreement ("Agreement"), Dkt. No. 499-2, ¶¶ 33, 267; Dkt. No. 506.

interpretation would turn many of the City's obligations into unenforceable requirements simply because they do not involve developing a policy or procedure as described in Paragraph 33. The scope of such unenforceable requirements would be quite broad, as they would include not only Paragraph 241 (the United States' access to information), but also Paragraph 240 (the Monitor's access to information); Paragraph 189 (funding for an outside assessment of the City's response to 2020 crowd control incidents); Paragraph 190 (budget line item for training overtime costs); Paragraph 192 (investigations of, and accountability for, 2020 crowd control incidents); and Paragraph 195(b) (staffing of the Oversight Board). *See* Agreement, ¶¶ 189, 190, 192, 195(b), 240. Such a reading of the Agreement would be unreasonable and should be rejected.

2. The United States May Access Documents Independent of Monitor Compliance Assessments

The plain language of Paragraph 241 authorizes the United States to access documents "[f]or the purpose of assessing the Monitor's work and whether enforcement of [the] Agreement is appropriate." Agreement, ¶ 241. Although the City and Amici advocate for a contrary position, *see* Def.'s Resp. at 18-20; Amici's Opp'n at 3-4, Paragraph 241 cannot reasonably be read to prevent the United States from accessing documents before the Monitor has assessed compliance with the underlying provisions.

Under Paragraph 241, two separate bases for accessing documents are available to the United States: (1) to assess the Monitor's work and (2) to assess whether enforcement is appropriate. The United States has shown it satisfies the second basis because it seeks the requested documents to assess whether enforcement is appropriate. The requested documents would help the United States gather information regarding the City's compliance with Paragraph 245. This, in turn, would help the United States assess whether it is appropriate to move to enforce Paragraph 245.

The United States need not establish both bases to access the requested documents. As the case Amici cites explains, the word "and" can mean either that all items in a list must be satisfied or that only one of them must be. *See Pulsifer v. United States*, 601 U.S. 124, 134-35 (2024). In *Pulsifer*, the context in which the list appeared dictated that only one of the three listed conditions had to be met for disqualification from "safety-valve relief." *See* 601 U.S. at 152-53. Here, too, the context weighs in favor of document access to assess *either* the Monitor's work *or* whether enforcement is appropriate. Paragraph 241 is a provision that ultimately provides the United States with the information it needs to move to enforce the Agreement. *See* Agreement, ¶ 241 (permitting document access "to the extent necessary to carry out the enforcement provisions of this Agreement . . . ."). A contrary outcome would result if the United States were barred from accessing documents when it does not have a dual purpose, for example, where the United States has already assessed the Monitor's work and only seeks documents to carry out enforcement. Therefore, it is only reasonable for the United States to have access to documents for the purpose of considering possible enforcement, apart from assessing the Monitor's work.

Even if Paragraph 241 required the United States to establish both bases for document access—which it does not—the City and Amici incorrectly suggest there is no work by the Monitor for the United States to assess until the Monitor provides his semi-annual compliance assessments. *See* Def.'s Resp. at 18; Amici's Opp'n at 4. This, however, ignores the plain language of Paragraph 241. Nothing in Paragraph 241 or the Agreement restricts the extent to, or manner in, which the United States may assess the Monitor's work. Nowhere does the Agreement limit the United States' right to access documents under Paragraph 241 to circumstances where the United States is assessing the Monitor's compliance assessments. Indeed, to assess the Monitor's overall

Page 4  Plaintiff's Reply in Support of Motion to Enforce the Settlement Agreement
    *United States of America v. City of Portland*, 3:12-cv-02265-SI

effectiveness, the United States may examine actions that the Monitor has taken as well as those the Monitor has failed to take in furtherance of the Monitor's duties under the Agreement.

Here, the Monitor has explained he has decided to not assess the City's compliance with Paragraph 245.[3]  *See* Monitor's Semi-Annual Compliance Report, July 1, 2024–December 31, 2024, Dkt. No. 490-1, at 79-80.  Under Paragraph 241, the United States has the right to access documents to assess whether that decision is appropriate, given the status of the City's compliance and the Monitor's obligation to assess compliance.  It is therefore not premature, as the City and Amici suggest, to access compliance-related documents to assess the Monitor's decision.  And, contrary to the City's suggestion, Def.'s Resp. at 19, the records that the City provided for the Monitor's first compliance report would be insufficient for this purpose.  Those records would shed no light on whether the appropriateness of the Monitor's opinion has changed in light of events since that report.

Moreover, the plain language of Paragraph 241 does not restrict the timing of the United States' access to documents.  *See* Agreement, ¶ 241.  Paragraph 241 therefore allows the United States to have advance access to documents that may be relevant to assessing the Monitor's future work and the appropriateness of possible future enforcement, well before the Monitor's next report is due.  In fact, receiving documents early in the process would enable the United States to proactively raise issues for the Monitor to consider; provide meaningful comments on the Monitor's reports; and promptly work with the Monitor and the City to resolve issues, especially where such issues are urgent and should not remain unaddressed for months until the Monitor's next report.  Instead of infringing on the Monitor's role, these activities would help the United

---

[3] The Monitor appears to have based his decision on his interpretation of the Agreement, rather than the status of compliance.  *See* Monitor's Semi-Annual Compliance Report, July 1, 2024–December 31, 2024, Dkt. No. 490-1, at 79-80.

States effectively perform its role as the Plaintiff as contemplated in Paragraph 241, by continuously working to assess the Monitor's work and the appropriateness of enforcement. Such activities would, moreover, support the timely implementation of the Agreement.[4]

Accordingly, the City's and Amici's contention that the absence of a Monitor's compliance assessment forecloses the United States' access to documents is contrary to the meaning of the Agreement. The only reasonable reading of Paragraph 241 is to allow the United States to access documents before, as well as independent of, the Monitor's compliance assessments.

    3. <u>The United States May Access Documents Without Showing It Has a Basis for Enforcement</u>

Although the City and Amici suggest that the United States has not shown there is an underlying compliance issue to justify its access to the requested documents, Def.'s Resp. at 19-20, 22-25; Amici's Opp'n at 5, nothing in Paragraph 241 requires the United States to first make a showing of noncompliance before accessing documents sought to ascertain the status of compliance. Indeed, interpreting Paragraph 241 to include such a requirement would thwart the purpose of such access. The City cannot make an end run around Paragraph 241 by simply

---

[4] If for some reason the Court were inclined to find that the United States must meet the first substantive requirement of Paragraph 241 ("For the purpose of assessing the Monitor's work . . .") prior to the Court granting access to the documents the United States seeks, it should be noted that the City has separately asked the United States to join a Joint Stipulated Motion to Terminate certain provisions of the Settlement Agreement, including those regarding the Portland Committee on Community-Engaged Policing ("PCCEP"), Agreement, ¶¶ 141-44, 151-52, and the 2020 crowd control assessment, Agreement, ¶ 189. PCCEP made numerous recommendations on crowd control, and the 2020 crowd control assessment was designed, in part, to halt the repetition of failed crowd control tactics. Regardless of one's perspective on the events about which the United States seeks documents, PPB's conduct in crowd control, now, directly implicates whether the City has implemented a durable remedy, and whether the Monitor appropriately assessed compliance, as to the very provisions for which the City is now seeking termination. For the reasons stated above, the City's proposal to terminate these provisions renders assessment of the City's compliance with Paragraph 245 (e.g., uniform application of crowd control policies) particularly important and timely.

Page 6    Plaintiff's Reply in Support of Motion to Enforce the Settlement Agreement
            *United States of America v. City of Portland*, 3:12-cv-02265-SI

asserting that it is in compliance with the issues about which the United States has inquired. While the City and Amici may believe the Portland Police Bureau ("PPB") is in compliance with the Agreement, *see* Def.'s Resp. at 19-20, 22-25; Amici's Opp'n at 5, those views are not relevant for purposes of adjudicating this Motion. Compliance with the Agreement is not a matter that can be self-certified by the City or PPB. If that were the case, there would be no need for the Agreement at all and certainly no need for the United States or the Monitor—nor this Court—to remain involved in this matter.

### 4. The Agreement's Requirement Regarding Portland Police Bureau Policies Prohibits Selective Application of the Policies the United States Has Identified

The City incorrectly argues that Paragraph 245 does not require PPB to uniformly apply the four policies the United States has identified. *See* Def.'s Resp. at 23-25. Paragraph 245 states simply, "PPB shall apply policies uniformly and hold officers accountable for complying with PPB policy and procedure." Agreement, ¶ 245. The United States' right to access documents under Paragraph 241 extends to the full scope of compliance issues that Paragraph 245 encompasses. Nothing in Paragraph 245's surrounding paragraphs limits the scope of Paragraph 245, as the City proposes, Def.'s Resp. at 25. Instead, the express contours around certain PPB policies in Paragraphs 243, 244, and 246[5] underscore the fact that the Parties could have included a similar restriction in Paragraph 245, but they chose not to do so.

Even if Paragraph 245 only covered PPB policies covered by Paragraphs 243 and 246, those 243-and-246-covered policies include the policies at issue. First, Directive 0635.10

---

[5] The City does not appear to argue that the PPB policies in Paragraph 245 should be limited to those described in Paragraph 246, but Paragraph 246 also describes certain PPB policies.

(Portland Police Bureau Response to Public Order Events)[6] addresses the Agreement's requirements regarding "force" and "officer accountability" as described in Paragraphs 243 and 246. *See* Agreement, ¶¶ 243, 246. Directive 0635.10 specifically includes provisions governing PPB's use of force during crowd management events; other provisions that help PPB respond appropriately to crowds, including in ways that potentially avoid the use of force; and requirements to document PPB's responses to crowds. *See* City of Portland, PPB Directive 0635.10 Portland Police Bureau Response to Public Order Events, https://perma.cc/4P3K-HAVG. Second, Directive 1010.00 (Use of Force) addresses the Agreement's requirements regarding "force." *See* Agreement, ¶¶ 243, 246. Third, Directives 0315.00 (Laws, Rules, and Orders) and 0620.00 (Body-Worn Camera Use and Management) address the Agreement's requirements regarding "systems of accountability." *See id.*

Although the City asserts otherwise, Def.'s Resp. at 23, it is not necessary for Paragraph 245 to include the words "political viewpoint" for it to require uniform application of PPB policies without regard to political viewpoint. The plain meaning of the words "apply policies uniformly" is sufficiently broad. *See* Agreement, ¶ 245. Indeed, reading Paragraph 245 to include an *exception* for viewpoint discrimination would run counter to its plain meaning.

Relatedly, the City puts misplaced emphasis on Paragraph 245's requirement for PPB to apply its *policies* uniformly, rather than provide *services* uniformly. *See* Def.'s Resp. at 23. As described in the United States' Motion, the policies at issue require PPB members to take certain

---

[6] The City inexplicably contends that this policy is inapplicable because it concerns crowd management. *See* Def.'s Resp. at 23. However, the main subject of the United States' document requests is crowd management, including responses to protests.

actions when responding to crowds, including actions that protect members of the public. *See* Pl.'s Mot. at 20. Whether those actions constitute services is a distinction without a difference.[7]

The City's arguments therefore fail to refute the United States' interpretation of Paragraph 245.

### B. Resorting to Extrinsic or Parol Evidence to Interpret the Agreement Is Inappropriate

The City inappropriately refers to extrinsic or parol evidence to argue that the United States' right to access the requested documents is more limited than what the terms of the Agreement provide. *See* Def.'s Resp. at 22-25. As discussed in the United States' Motion, because the Parties' intent can be inferred from the plain meaning of the Agreement, *see* Pl.'s Mot. at 15-19, no ambiguity justifies the consideration of extrinsic or parol evidence.

Extrinsic or parol evidence should not be considered to interpret the United States' right to access the requested documents because the City has not shown any ambiguity in the terms of the relevant Agreement provisions. *See CNH Indus. N.V. v. Reese*, 583 U.S. 133, 141 (2018) ("When the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further."); *see also Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) ("Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself."). Courts do not look to extrinsic or parol evidence when contract terms are not ambiguous. *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 560-61 (9th Cir. 2016)

---

[7] In addition, the City suggests the United States' document requests are overbroad for the purpose of addressing Paragraph 245 compliance issues. *See* Def.'s Resp. at 24-26. The United States' Motion already addresses the relationship between the requests and Paragraph 245. Pl.'s Mot. at 19-22. As to the City's objection to the United States' request for PPB staffing data, Def.'s Resp. at 26, that request is within the scope of Paragraph 245 because a failure to adequately staff protests despite documented need may be evidence of PPB's intent to not uniformly apply its policies.

Page 9     Plaintiff's Reply in Support of Motion to Enforce the Settlement Agreement
           *United States of America v. City of Portland*, 3:12-cv-02265-SI

(explaining that, under federal common law, which "follows the traditional approach for the parol evidence rule," a contract "must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the contract"); *United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005) (noting the same specifically as to consent decrees, which "are entered into by parties to a case after careful negotiation has produced agreement on their precise terms").

Although the City apparently disagrees with the United States' interpretation of the Agreement, "[t]he fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous." *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989) (quoting *Int'l Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir. 1985)). Nor does silence in a contract show that an ambiguity exists. *Angelette, LLC v. Bradley*, 674 F. Supp. 3d 687, 696-97 (D. Alaska 2023).

The City's effort to interpret the Agreement using the United States' Complaint and findings letter, Def.'s Resp. at 22, impermissibly relies on extrinsic or parol evidence. Although the City cites *United States v. City of Northlake, Illinois*, 942 F.2d 1164 (7th Cir. 1991), in support of its argument, this case instead makes clear that the plain language of the Agreement is paramount. In *Northlake*, the Seventh Circuit Court of Appeals reversed the district court's denial of the United States' motion for further discovery and a contempt hearing because the district court had incorrectly limited the United States' ability to address the city's compliance with an express nondiscrimination requirement under the decree. *Northlake, Ill.*, 942 F.2d at 1165, 1167-68. Reasoning that "[e]ven if the case did initially center on the residency requirement, the proper focus must be on the language contained within the consent decree itself," the Seventh Circuit concluded that the district court had wrongly decided the United States had to bring a new action to address issues the case did not originally address. *Id.* at 1167-68.

Similarly, the plain language of this Agreement ensures the United States' access to the requested documents. The express requirements of the Agreement, rather than the issues that prompted this case, govern the City's obligations under the Agreement. *See id.*[8] The City's proposed extrinsic or parol evidence should therefore be rejected.

### C. The Unclean Hands Doctrine Does Not Bar the United States' Access to Documents

Contrary to the City's contention, Def.'s Resp. at 27-31, equity considerations do not justify denying the United States access to the requested documents.

Courts require movants who invoke the equitable powers of the court to "come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). In considering whether to deny relief, "[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant . . . ." *Republic Molding Corp. v. B. W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963). The unclean hands doctrine "pertains only to misdeeds that have an immediate and necessary relation to the equity that a plaintiff seeks in respect of the matter in litigation." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 932 (9th Cir. 2014) (internal brackets and quotation marks omitted). Further, "the extent of actual harm caused by the conduct in question, either to the defendant or to the public interest, is a highly relevant consideration." *Republic Molding Corp.*, 319 F.2d at 349-50.

---

[8] *Hadix v. Caruso*, another case on which the City relies, is distinguishable from the present case because the *Hadix* plaintiffs sought to interpret the consent decree to include requirements that were not found in the decree. *See Hadix v. Caruso*, 297 Fed. App'x 504, 506-07 (6th Cir. 2008) (holding that prison units to which plaintiffs sought to extend coverage of consent decree did not meet decree's definition of covered facilities).

Page 11   Plaintiff's Reply in Support of Motion to Enforce the Settlement Agreement
         *United States of America v. City of Portland*, 3:12-cv-02265-SI

Here, the unclean hands doctrine does not bar relief. First, the City fails to show that the United States engaged in any inequitable conduct to acquire its right to access the requested documents. The City alleges no improper conduct by the United States in investigating the City and reaching a resolution of its findings through the present Agreement.

Second, the City has not demonstrated the United States' assertion of its right to access the requested documents would be inequitable. The City misleadingly conflates alleged unconstitutional conduct by federal agents—to whom the City interchangeably refers as the "United States," "DOJ," and "DHS"—with the United States' conduct as the Plaintiff in this case. *See* Def.'s Resp. at 9-14, 29. This case is not about federal agents' conduct, so the City's references are irrelevant to the legal question before the Court.

Even if federal agents had engaged in unlawful conduct, which the City has not proven,[9] such conduct should not preclude relief in this case. Otherwise, allegations of unlawful conduct by any of the myriad governmental entities represented by the Department of Justice in litigation would prevent the Department from enforcing civil rights laws in any related areas. For instance, the Department would not be able to address employment discrimination by private employers if federal agencies allegedly discriminated against their employees. And the Department could not address constitutional violations in state and local prisons if constitutional violations have allegedly occurred in federal prisons. Such a result would harm the public interest, contrary to considerations of equity. *See Republic Molding Corp.*, 319 F.2d at 349-50.

---

[9] The City bases its allegations on testimony given by PPB members in a case that was, also, not about federal agents' conduct and resulted in no findings about the constitutionality of such conduct, as well as news reports and allegations made by State and local officials. *See* Def.'s Resp. at 9-14; *Oregon v. Trump*, No. 3:25-cv-1756-IM, 2025 WL 2817646, at *4-6 (D. Or. Oct. 4, 2025).

Similarly, other arguments the City makes would harm the public interest if adopted. The City erroneously claims that the alleged views of the Department of Justice regarding police misconduct cases, Def.'s Resp. at 27-28,[10] should block the United States from accessing the requested documents. The gist of the City's argument is that, if the Department of Justice is criticizing and closing its police investigations and consent decrees, the Department cannot be working in good faith to address compliance issues in this case. *See id.* at 28. Such an argument has no limiting principle. It is unclear how any enforcement motion in this case could survive if the United States' motivations are considered tainted. Moreover, hindering enforcement of the Agreement would harm the public interest.

The City also unreasonably suggests that the United States is now barred from accessing documents related to viewpoint discrimination allegations because it has not previously asserted its authority to address such allegations. *See* Def.'s Resp. at 30. However, the United States is not required to exercise its right to access documents as to every possible enforcement issue to preserve this right. Preventing the United States from addressing issues it has not previously addressed would harm the public interest.

Furthermore, the City mischaracterizes the United States' actions when it describes the title of the United States' October 3, 2025 document request letter. *See* Def.'s Resp. at 22, 27. The title of the letter, "Potential Viewpoint Discrimination Expansion of Amended Settlement Agreement," United States' October 3, 2025 Letter, Dkt. No. 520-1, was not an admission that the United States' request fell outside the scope of the Agreement. Rather, it alluded to the potential expansion of remedies under the Agreement that could result from the United States' document requests. As discussed in the United States' Motion, Pl.'s Mot. at 5, a similar expansion of the

---

[10] The United States has not corroborated these allegations.

Page 13    Plaintiff's Reply in Support of Motion to Enforce the Settlement Agreement
          *United States of America v. City of Portland*, 3:12-cv-02265-SI

Agreement occurred in response to the United States' notice of noncompliance regarding the City's response to protests in 2020.

Finally, the City suggests that the United States should not have access to the requested documents because, according to the City, PPB's response to the protests has been effective and consistent with the Agreement, and the United States' access would undermine that. Def.'s Resp. at 29-30. The City asserts, without evidence, that PPB's protest response has been consistent with the Agreement, and that the United States seeks to undermine the City's protest response. *Id.* However, through its document requests, the United States seeks to gather information to probe that statement, which the United States has the right to do. And it should be obvious the United States does not seek to undermine PPB's protest response. Again, the Agreement does not permit the City or PPB to self-certify compliance with the Agreement and it would be highly suspect to argue otherwise.

In sum, the United States neither acquired the right to access the requested documents through inequitable means nor engaged in conduct that makes assertion of the right inequitable. Accordingly, the unclean hands doctrine does not provide a basis to deny the United States relief.

### III. CONCLUSION

For the foregoing reasons, the United States asks the Court to order the City to timely and fully produce all documents requested by the United States in its October 3, 2025 and October 29, 2025 letters in accordance with Paragraph 241 of the Agreement.

DATED: December 22, 2025.

Respectfully submitted,

For Plaintiff UNITED STATES OF AMERICA:

| | |
|---|---|
| SCOTT E. BRADFORD<br>United States Attorney<br>District of Oregon | HARMEET K. DHILLON<br>Assistant Attorney General<br>Civil Rights Division<br><br>R. JONAS GEISSLER<br>Deputy Assistant Attorney General<br><br>PATRICK MCCARTHY<br>Chief<br>Special Litigation Section<br><br> /s/ Catherine Yoon<br>JEFFREY R. MURRAY<br>CATHERINE YOON<br>Trial Attorneys<br>Special Litigation Section<br>Civil Rights Division<br>United States Department of Justice |