**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:12-cv-02265-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER DENYING UNITED STATES' MOTION TO ENFORCE SETTLEMENT AGREEMENT** |
| **CITY OF PORTLAND**, | |
| Defendant, | |
| and | |
| **PORTLAND POLICE ASSOCIATION**, | |
| Intervenor-Defendant. | |

Harmeet K. Dhillon, Assistant Attorney General, Civil Rights Division; R. Jonas Geissler, Deputy Assistant Attorney General, Civil Rights Division; Patrick McCarthy, Chief, Special Litigation Section, Civil Rights Division, and Jeffrey R. Murray and Catherine Yoon, Trial Attorneys, Special Litigation Section, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, 950 Pennsylvania Avenue, NW, Washington, DC 20530. Of Attorneys for Plaintiff United States of America.

Robert Taylor, Portland City Attorney; Heidi Brown, Chief Deputy City Attorney; and Sarah Ames and Lisa Rogers, Deputy City Attorneys; PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendant City of Portland.

Anil Karia, PUBLIC SAFETY LABOR GROUP, PO Box 12070, Portland, OR 97212. Of Attorneys of Intervenor-Defendant Portland Police Association.

Page 1 – OPINION AND ORDER

J. Ashlee Albies, ALBIES & STARK, LLC, 1500 SW First Avenue, Suite 1000, Portland, OR 97201; and Rian Peck, VISIBLE LAW, LLC, 333 SW Taylor Street, Suite 300, Portland, OR 97204. Of Attorneys for *Amicus Curiae* AMA Coalition for Justice and Police Reform.

Juan C. Chavez, OREGON JUSTICE RESOURCE CENTER, PO Box 5248, Portland, OR 97208. Of Attorneys for *Amicus Curiae* Mental Health Alliance.

**Michael H. Simon, District Judge.**

Pending before the Court is a motion brought by Plaintiff, the United States of America, to enforce ¶ 241 of the settlement agreement entered in this case. ECF 520. Plaintiff states that it has asked Defendant, the City of Portland ("City"), to provide certain documents that the United States contends are "related to the City's compliance with the Agreement" and the City "has not provided most of the requested documents." *Id.* at 4. The City opposes the motion on several grounds, including arguing that the United States Department of Justice "is proceeding with unclean hands [and] in bad faith." ECF 523 at 17 (internal page 14). The *amici curiae* also oppose Plaintiff's motion. ECF 522. The matter has been fully briefed, and the Court has considered the parties' documentary evidence and heard oral argument. ECF 535. For the reasons explained below, the Court denies the United States' motion to enforce on the grounds that the Court finds by clear and convincing evidence that the United States has brought this motion in bad faith and with unclean hands.

## BACKGROUND

### A.    The Settlement Agreement, as Amended

On December 17, 2012, the United States commenced this action by filing a complaint against the City under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 (now recodified as 34 U.S.C. § 12601). ECF 1. In its Complaint, the United States explained that "[t]his action seeks to remedy a pattern or practice of

unconstitutional uses of force by officers of the Portland Police Bureau." *Id.* ¶ 1. The

United States expressly alleged:

> Too frequently, ***persons who have or are perceived to have mental illness and are in crisis*** are subjected to unnecessary or excessive force by police officers. The Portland Police Bureau lacks adequate policies to guide officers in these circumstances, or training, supervision and accountability measures necessary to ensure that officers comply with the constitutional rights of people in mental health crisis.

*Id.* (emphasis added).

On the same day in December 2012 that the United States filed this lawsuit, the

United States and the City filed a Joint Motion to Enter Settlement Agreement and

Conditional Dismissal of Action. ECF 3. After holding several hearings, the Court found

the proposed settlement to be fair, reasonable, and adequate to remedy the City's pattern

or practice of subjecting persons who have or are perceived to have mental illness and are

in crisis to unnecessary or excessive force by officers of the Portland Police Bureau. The

settlement agreement has been amended several times, and the operative amended

agreement (hereinafter, the "Agreement") can be found at ECF 552. Under the

Agreement, the Court expressly retained jurisdiction over this action for all purposes until

the City's obligations are terminated under the Agreement. ECF 552, ¶ 264; *see also*

ECF 86 at 4. The Court has not yet entered an order of final termination.

As noted, the United States has moved to enforce the Agreement against the City.

ECF 520. Specifically, the United States asks the Court to order the City to provide all

requested documents in accordance with ¶ 241 of the Agreement. *Id.* at 4 (internal p. 1).

In its motion, the United States explains that "[t]he requested documents are relevant to

whether the United States should move to enforce Paragraph 245 of the Agreement." *Id.*

Paragraph 241 of the Agreement provides, in full:

> ***For the purpose of assessing the Monitor's work and whether enforcement of this Agreement is appropriate***, [the United States Department of Justice ("DOJ")] as the plaintiff and its consultative experts and agents shall have full and direct access to all City staff, employees, facilities, and documents, to the extent necessary to carry out the enforcement provisions of this Agreement under Section XII, subsection H to the extent permitted by law. DOJ and its consultative experts and agents shall cooperate with PPB and the City to access involved personnel, facilities, and documents in a reasonable manner that minimizes interference with daily operations. DOJ shall provide PPB or the City with reasonable notice of a request for copies of documents. Upon such request, PPB or the City shall provide DOJ with copies (electronic, where readily available) of any documents that DOJ is entitled to access under this Agreement, except any documents protected by the attorney-client privilege. Should the City decline to provide DOJ with access to a document based on attorney-client privilege, the City promptly shall provide DOJ with a log describing the document, including its author, recipients, date of production, and general topic.

ECF 552 ¶ 241 (emphasis added). Paragraph 245 of the Agreement provides, in full:

> PPB shall apply policies uniformly and hold officers accountable for complying with PPB policy and procedure.

*Id.* ¶ 245.

## B.    Plaintiff's Demand and the Events Preceding that Demand

"On September 27, 2025, President Trump posted a message on his Truth Social account stating that he was directing Pete Hegseth, the Secretary of War, to provide troops to protect 'War ravaged Portland' from 'Antifa, and other domestic terrorists' and authorizing 'Full Force, if necessary.'" *Oregon v. Trump*, 802 F. Supp. 3d 1277, 1281 (D. Or. 2025), *appeal dismissed*, 171 F.4th 1144 (9th Cir. 2026); *see also* ECF 524-1 at 1. "In response, on September 28th, Secretary Hegseth issued a memorandum authorizing the deployment and federalization of 200 of Oregon National Guard service members, over

the objection of Oregon's Governor, Tina Kotek." *Id.* That same day, the State of Oregon, joined by the City, filed a lawsuit seeking a declaration that the federalization and deployment of the Oregon National Guard was contrary to law. *Id.* at 1281-82. The next day, September 29, 2025, the State and the City moved for a temporary restraining order. *Id.* at 1282. United States District Judge Karin Immergut held a hearing on that motion on October 3, 2025, and granted the requested order the next day. *Id.* Although a divided panel of the Ninth Circuit granted the federal defendants' motion for a stay of that order pending appeal, the Ninth Circuit vacated the stay and granted rehearing en banc. *Oregon v. Trump*, 165 F.4th 1158 (9th Cir. 2025). The federal defendants later moved to dismiss their appeal of Judge Immergut's order, which the Ninth Circuit granted. *Oregon v. Trump*, 171 F.4th 1144 (9th Cir. 2026).

In support of the motion heard by Judge Immergut on October 3, 2025, several law enforcement officers provided evidence. This included declarations from two high-ranking officials from the Portland Police Bureau, the Assistant Chief of Operations and the Commander of the Specialized Resources Division. *Oregon v. Trump*, 802 F. Supp. 3d at 1283, 1296; *see also* Case No. 3:25-cv-1756-IM (D. Or.) at ECF 7 and 12. After considering the evidence, Judge Immergut granted the motion and found that "[t]he President's determination was simply untethered to the facts." *Id.* at 1292.

On October 3, 2025, the same day that Judge Immergut was holding the hearing on the motion for temporary restraining order requested by the State of Oregon and the City, the Assistant Attorney General for the Civil Rights Division of the United States Department of Justice, Ms. Harmeet Dhillon, publicly stated that DOJ would conduct a "full investigation" of policing of the protests at the Immigration and Customs

Page 5 – OPINION AND ORDER

Enforcement ("ICE") facility in Portland, Oregon. ECF 524-1 at 1. She announced this by reposting a social media post from social media personality Nick Sortor, who wrote: "BREAKING: Attorney General Pam Bondi has ORDERED a full investigation, led by Asst. AG Harmeet Dhillon, of the Portland Police Bureau, following my wrongful arrest last night, Bondi confirmed to me. FAFO, @PortlandPolice…." *Id.* Assistant Attorney General Dhillon also attached to her repost her own comment, which read: "***Portland: It's FO time. Buckle up.***" *Id.* (emphasis added).

On the same day of these postings and Judge Immergut's hearing on the motion for temporary restraining order, October 3rd, the United States Department of Justice sent a letter to the City Attorney for Portland and to the Chief of the Portland Police Bureau. ECF 520-1. After referencing the case name and number of this civil lawsuit, the United States Department of Justice titled its letter: "Potential Viewpoint Discrimination ***Expansion*** of Amended Settlement Agreement." *Id.* (emphasis added). The United States Department of Justice's October 3rd letter read:

> Your immediate attention to this matter is required. We write regarding Portland Police Bureau's (PPB) response to incidents surrounding the Immigration and Customs Enforcement (ICE) facility in Portland and, specifically, the City of Portland's use of its policing powers in a manner that may be based on viewpoint discrimination. Specifically, three issues have been brought to our attention:
>
> > 1.    PPB reportedly arrested individuals who may have been involved in an altercation choosing to arrest Nick Sortor, but not others;
> >
> > 2.    PPB reportedly failed to identify or arrest individuals who allegedly assaulted Katie Daviscourt, even after briefly detaining the individuals; and

Page 6 – OPINION AND ORDER

3.    The City of Portland reportedly has attempted to use its policing powers through a zoning enforcement action to limit ICE's use of its Portland facility.

While we have not reached any conclusions on these allegations, we note a consistent theme in these three allegations—all three would choose one viewpoint over another. Moreover, the allegations implicate the City's performance under the Settlement Agreement in the above-referenced case.

To address our compliance concerns raised by these allegations, we request the following, by no later than October 10, 2025:

1.    The original, unredacted BWC recording of the officers involved in the observation of the incident involving Mr. Sortor, his arrest, and his processing following arrest;

2.    The original, unredacted BWC recording of the officers involved in the observation of the incident involving Ms. Daviscourt, the brief detention of the alleged assailants, and any follow-up discussion regarding the incident at the scene;

3.    All unredacted incident reports, force reports, arrest reports, general order reports, and after actions reviews of the incidents involving Mr. Sortor and Ms. Daviscourt;

4.    All complaints received about the incidents involving Mr. Sortor and Ms. Daviscourt or the decision to target the ICE facility for zoning enforcement, and the City's ongoing administrative investigation materials involving such complaints;

5.    All non-attorney-client-privileged communications regarding the decision to target the ICE facility for zoning enforcement;

6.    All non-attorney-client-privileged communications regarding directions to PPB officers responding to the protests at the ICE facilities in the last 30 days; and

> 7.      Any documents or explanation that the City
> wants to provide to the United States in response to
> the above-listed allegations.

*Id.* The first signature on that letter, in bold blue ink, was "Harmeet K. Dhillon, Assistant Attorney General, Civil Rights Division." *Id.* at 2. On October 29, 2025, the United States Department of Justice sent a second letter to the Portland City Attorney and the Portland Police Chief, containing 22 additional demands. ECF 520-2. The October 29th letter was signed only by Assistant Attorney General Dhillon. *Id.* at 3.

## DISCUSSION

The United States Department of Justice seeks an order in equity, directing the City to provide documents responsive to the 29 demands stated in its October 3rd and October 29th letters. ECF 520. A district court's jurisdiction to enforce a settlement agreement arises when "the district court explicitly retains jurisdiction over the settlement agreement." *Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1268-69 (9th Cir. 1996). In such instances, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.* (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)). When such jurisdiction is present, a court's power to enforce a settlement agreement is a matter of equity. *See Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the *equitable power* to enforce summarily an agreement to settle a case pending before it.") (emphasis added).[1]

---

[1] In *Callie*, the Ninth Circuit explained that "[w]here material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." 829 F.2d at 890 (emphasis in original). Here, the United States submitted documentary evidence in support of its motion (ECF 520), and the City submitted documentary evidence in opposition (ECF 524), all of which the Court considered. No party requested the opportunity to call witnesses.

Page 8 – OPINION AND ORDER

Paragraph 241 of the Agreement allows the United States Department of Justice to have "full and direct access to all City staff, employees, facilities, and documents, ***to the extent necessary to carry out the enforcement provisions of this Agreement under Section XII, subsection H to the extent permitted by law***." ECF 552, ¶ 241 (emphasis added). Under Section XII, subsection H of the Agreement, "[i]f the United States reasonably believes the City has failed to implement the terms of the Agreement, it shall promptly notify the City in writing and identify with specificity the portion or portions of the Agreement about which it has concerns." ECF 552, ¶ 267. In its October 3rd letter, the United States explained that it has "compliance concerns" about "the City of Portland's use of its policing powers in a manner that may be based on viewpoint discrimination," although the United States notes that it has "not reached any conclusions on these allegations." ECF 520-1. The October 29th letter is similar, with the United States explaining that it is requesting documents under ¶ 241 "to assess whether it is appropriate to enforce the Agreement." ECF 520-2. Further, as noted, ¶ 245 of the Agreement provides that "PPB shall apply policies uniformly and hold officers accountable for complying with PPB policy and procedure." ECF 552, ¶ 245.

Based on the Court's reading of the October 3rd and October 29th letters, it appears that the United States has not yet formed a "reasonable belief" that the City ***has failed*** to implement the terms of the Agreement, specifically ¶ 245. Nevertheless, the United States argues that it need not form a reasonable belief that the City has failed to comply with ¶ 245 to justify its right to investigate using ¶ 241. This is a close question of contract interpretation, which the parties have not fully addressed in their briefing or

Page 9 – OPINION AND ORDER

oral argument.[2] The Court, however, need not resolve any questions of contract interpretation at this time. This is because the Court finds that even if the Agreement were interpreted to allow the United States such broad access to the files and records of the Portland Police Bureau merely to "investigate" whether the City may be in violation of ¶ 245 of the Agreement by engaging in political viewpoint discrimination, a court may not enter an equitable order if the movant is acting in bad faith. For the reasons described next, the Court finds by clear and convincing evidence that the movant is not acting in good faith and that the purported reasons for the 29 requests are pretext.

Courts require movants who invoke the equitable powers of the court to "come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).[3] In considering whether to deny relief, "[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant." *Republic Molding Corp. v. B. W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963). Further, unclean hands must be shown by evidence that is clear and convincing. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 833 (9th Cir. 2011).

---

[2] There are several issues relevant to the question of contract interpretation, including whether the United States' invocation of its investigatory powers under ¶ 245 is limited to the purpose of assessing the work of the Independent Monitor. *See* ECF 552 ¶ 241.

[3] The unclean hands doctrine applies against the executive branch. *See* William Baude and Samuel L. Bray, *When the Executive Has Unclean Hands*, 135 YALE L.J. FORUM 567, 568 (2026) ("Our bottom line is that unclean hands does apply against the executive branch. Nevertheless, it applies in a more limited way than it would to a typical private litigant, given the agency problems that inhere in executive enforcement of federal law.") As Professors Baude and Bray note, the "clean-hands doctrine, also called the unclean-hands defense, gives courts a reason to deny equitable relief to litigants who have acted inequitably in 'immediate and necessary relation to the equity' they now seek." *Id.*

There is no argument here that the United States *acquired* the rights being invoked under ¶ 241 of the Agreement in bad faith. It did not. Thus, the relevant question is whether the specific context of the pending motion would render inequitable the assertion of these rights. Further, the unclean hands doctrine "pertains only to misdeeds that have an immediate and necessary relation to the equity that a plaintiff seeks in respect of the matter in litigation." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 932 (9th Cir. 2014) (internal brackets and quotation marks omitted).

For three reasons the Court finds that the United States, acting through the United States Department of Justice, has unclean hands in connection with its motion that is before the Court. First, the United States asserts that it is purporting to investigate whether the Portland Police Bureau has engaged in political viewpoint discrimination in violation of the Agreement in *this* case. This case, however, has *never* been about viewpoint discrimination, or even any issues arising under the First Amendment. As noted earlier, when the United States first filed its Complaint in this lawsuit in December 2012, it began its Complaint as follows:

> Too frequently, ***persons who have or are perceived to have mental illness*** and are in crisis are subjected to unnecessary or excessive force by police officers. The Portland Police Bureau lacks adequate policies to guide officers in these circumstances, or training, supervision and accountability measures necessary to ensure that officers comply with the constitutional rights of ***people in mental health crisis***.

ECF 1, ¶ 1 (emphasis added). Further, shortly after the commencement of this action, the Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA Coalition") filed a motion to intervene, ECF 19, asserting that the lawsuit should also include allegations that the Portland Police Bureau used excessive force against people of color.

Page 11 – OPINION AND ORDER

ECF 20 at 5. The United States opposed the AMA Coalition's motion to intervene, arguing that "[w]hile the AMA Coalition, too, may have a limited interest in the subject of this litigation, its current claims are outside the scope of the United States' Complaint." ECF 25 at 7. The Court agreed with the United States and denied the AMA Coalition's motion to intervene. ECF 32. If, as the United States then argued, claims that Portland Police Officers may have engaged in a pattern of excessive force against persons of color were "outside the scope" of this lawsuit, it is difficult to accept the United States' current assertion that alleged political viewpoint discrimination is *within* the scope of the current action.

Second, the timing of the United States' October 3rd letter is highly suspicious. As noted, in *Oregon v. Trump*, Case No. 3:25-cv-1756-IM (D. Or.), the plaintiffs filed their complaint on September 28, 2025, and their motion for temporary restraining order on September 29, 2025, which included both a ten-page detailed declaration from the Assistant Chief of Operations at the Portland Police Bureau and a four-page declaration from the Commander of the Specialized Resources Division of the Portland Police Bureau, both in support of the plaintiffs' motion.[4] Further, as also noted, Judge Immergut heard the motion for temporary restraining order on October 3, 2025, which was the same day that the United States sent its first letter to the City and the Portland Chief of Police demanding extensive access to the Police Bureau's files and records. To the Court, this reasonably appears to be a not-so-subtle signal from the United States Department of Justice to the Portland Police Bureau that if it continued to assist the plaintiffs in the case

---

[4] *See* ECF 7 and ECF 12, respectively, in Case No. 3:25-cv-1756-IM (D. Or.).

of *Oregon v. Trump*, the United States Department of Justice could make matters quite difficult, burdensome, and expensive for the Portland Police Bureau.

Third, and finally, the language used by Assistant Attorney General Dhillon, the first signer of the October 3rd letter, in her social media post on that date is strong language of a threatening nature. As noted, Assistant Attorney General Dhillon preceded her reposting of a Nick Sortor comment with Dhillon's own comment: "***Portland: It's FO time. Buckle up.***" ECF 524-1 at 1 (emphasis added). That is neither language nor tone of a good faith investigation by the United States Department of Justice. Instead, it exhibits all the hallmarks of a threat and attempted intimidation.[5]

For these three reasons taken together, the Court finds by clear and convincing evidence that the pending motion brought by the United States was not made in good faith and that the United States lacks clean hands.[6] Accordingly, the Court will not enter the equitable relief sought.

---

[5] In addition, on the same day that Judge Immergut issued her temporary restraining order, relying in part on the testimony of two high-ranking officials from the Portland Police Bureau, Assistant Attorney General Dhillon reposted a comment from another social media personality that read, in part, "***Judge Immergut must be impeached***." ECF 524-15 at 1 (emphasis added). This too is threatening conduct by Assistant Attorney General Dhillon. As noted previously, however, after the Ninth Circuit vacated the divided panel's order staying Judge Immergut's temporary injunction and granted en banc review, the United States Department of Justice voluntarily dismissed its appeal of Judge Immergut's order.

[6] The Court recognizes the seriousness of this conclusion and makes this finding soberly. The Court also recognizes that the "presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926). Yet, in a challenge brought by several unions against the President's executive order removing various agencies and agency subdivisions from coverage of the Federal Service Labor-Management Relations Statute and other similar laws, U.S. District Judge Paul L. Friedman "conclude[d] that the Union Plaintiffs have rebutted the presumption of regularity." *Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 89 (D.D.C. 2025). So too is the Court's finding here. Finally,

**CONCLUSION**

For the reasons explained in this Opinion and Order, the Court DENIES the

United States' Motion to Enforce the Settlement Agreement, ECF 520.

**IT IS SO ORDERED.**

DATED this 24th day of July, 2026.

_/s/ Michael H. Simon_
Michael H. Simon
United States District Judge

---

although the Court does not rely upon any findings in any other cases regarding alleged
threatening behavior or bad faith conduct by the United States Department of Justice, the
existence of those decisions shows that the Court is not alone in making these findings.
*See, e.g.*, *In re Grand Jury Subpoenas*, No. 26-MC-43 PJS, 2026 WL 1783899, at *10 (D.
Minn. June 22, 2026) ("In sum, because the Court finds that the dominant purpose of the
challenged subpoenas is to ***coerce*** Minnesota officials into assisting the federal
government with enforcing civil immigration law and ***to harass and retaliate against
them for failing to do so***, the Court grants the motions to quash.") (emphasis added);
*Trump v. Internal Revenue Serv.*, No. 26-cv-20609-WILLIAMS, 2026 WL 2015525, *20
(S.D. Fla. July 13, 2026) (finding that "Plaintiffs acted in ***bad faith and for an improper
purpose*** by 'collusively filing a lawsuit with claims subject to multiple dispositive
defenses solely to provide cover for a collusive settlement'") (emphasis added).

Page 14 – OPINION AND ORDER