

**League of Women Voters of Portland**

PO Box 3491, Portland, Oregon 97208-3491

503-228-1675  •  info@lwvpdx.org  •  www.lwvpdx.org

**DATE:**  July 22, 2026

**TO:**  Honorable U.S. District Court Judge Michael Simon

**FROM:**  League of Women Voters of Portland
Audrey deCoursey, President
Debbie Aiona, Vice President of Action
James Ofsink, Justice Interest Group Chair

**RE:**  Status Conference:  United States of America v. City of Portland
Case No. 3:12-cv-02265-SI

The League of Women Voters of Portland began studying policing in Portland in the 1960s and has been engaged in issues related to law enforcement and police oversight since that time.  We appreciate the opportunity to comment once again on the City's progress meeting the terms of the settlement agreement.

**Ongoing Fidelity to Reforms:  Create an Office of Inspector General**

As the City comes closer to completion of the settlement agreement's requirements, the court, our elected officials, and the community need to consider next steps.  Significant time and effort have been devoted to implementing reforms to police bureau policies and practices, the accountability system, and mental health response, to name a few.  The compliance officer and independent monitor have provided valuable guidance, oversight, and transparency that the City should endeavor to sustain into the future.  Adding an Office of Inspector General (OIG) to our new Office of Community-based Accountability (OCPA) would best position the City to maintain and build upon what has worked well during the settlement agreement and help ensure that the City does not backslide on its progress.  We strongly urge the City to learn from what has worked here and in other cities and add an inspector general to the new accountability system.

The Police Accountability Commission included an inspector general in its proposed code, but it was not part of the final City Council-adopted version.  Adding an OIG would extend into the future the community benefits of the oversight and transparency we have experienced throughout the settlement agreement.  As an example, the Seattle OIG was established to:

> *help ensure the fairness and integrity of the police system as a whole in its delivery of law enforcement services by providing civilian auditing of the management, practices, and policies of the Seattle Police Department and Office of Police Accountability and oversee ongoing fidelity to organizational reforms implemented pursuant to the goals of the 2012 federal Consent Decree in United States of America v. City of Seattle.[1]*

---

[1] https://www.seattle.gov/inspector-general/about-us

1

The League recommends that the court urge formation of a City Council-appointed task force charged with researching Seattle's and other jurisdictions' approaches to the inspector general function. The task force would present a proposal for council consideration and adoption. The Portland Committee on Community Engaged Policing (PCCEP) has expressed an interest in this issue and should be included in the process. It is imperative that the OIG is in place before the settlement agreement ends.

The monitor's decision to move Paragraph 73 (Semi-Annual Assessment Report, pgs. 29 - 32) from full to partial compliance underscores the value of independent oversight. Without the monitor's oversight, it is possible the systemic deficiencies they identified in the way supervisors handle use of force cases may have persisted or worsened. An inspector general would have the authority to examine the internal workings of the Portland Police Bureau (PPB) and recommend specific improvements. In the absence of an entity filling the roles performed under the settlement agreement by the compliance officer and independent monitor, the League has serious concerns that the City will lose focus on maintaining the reforms and backslide on the improvements brought through more than a decade of monitoring and court oversight.

**Address settlement agreement ambiguities as they relate to Portland's police accountability system**

The independent monitoring team expresses concern in its compliance report (pgs. 109 - 110) about the ambiguities in the settlement agreement paragraphs related to Portland's police accountability system. The League agrees with their recommendation to address these ambiguities by amending the settlement agreement.

The City is in the process of transitioning from Independent Police Review (IPR) to the new voter-enacted OCPA. Maintaining a functioning accountability system while standing up an entirely new system has proved challenging. Voters approved Measure 26-217 in 2020, but six years later the new system is just getting off the ground. Furthermore, IPR's Citizen Review Committee is struggling to continue functioning when its volunteer members are asked to cover Police Review Board sessions and extend the length of their terms.

The OCPA's Community Board for Police Accountability holds regular meetings and has made some progress, but a lack of support staff has prevented them from forming subcommittees so that they can draft by-laws and decide on a leadership structure. Furthermore, during the City's budget process, the new office has been threatened by attempts to divert a significant portion of the OCPA's 2026-27 budget allocation to other uses. The transition would benefit from the monitor's expertise and guidance. Amending the agreement to make it clear that the independent monitor has the authority to monitor and assess our existing accountability system as well as the new one is essential.

**Precinct meetings needed for the Portland Police Bureau Annual Report**

Paragraph 150 requires the PPB to produce an annual report, share a draft with PCCEP, and hold public meetings in each of the three precincts to present and discuss the report with community members. This year, the report was completed and shared with PCCEP, but the PPB held only one precinct meeting. On

2

its website[2], PPB explains that the other two meetings were cancelled because they require significant staff time to plan and present and there is a low turnout.

The League encourages PPB to consult with the City's community engagement staff about how to improve outreach and make the sessions more engaging so that more Portlanders know about them and find them worth attending.  Regardless, the Bureau's unilateral decision to ignore the requirements of the settlement agreement when it is expedient to do so further motivates the need for an entity like the proposed inspector general to continue monitoring best practices and community-focused transparency after the conclusion of court oversight.

**Assessment Gap in Quarter 2, 2024**

As a reminder, the oversight from the compliance officer ended three months before the independent monitor started work.  This left a gap in coverage between the compliance officer's last report and the independent monitor's first compliance report.  This problematic break in assessment continues to be especially concerning because the PPB used more force in 2024 Q2 than any other quarter currently displayed on the City's use of force dashboard.  The newly re-formed Rapid Response Team also was introduced in 2024 Q2.  We encourage the court to keep this gap in mind when offering feedback to the parties.

**Conclusion**

Thank you for the opportunity to provide community input on the settlement agreement at the status conferences.  The court's oversight of the City's compliance has been an important driving factor in the City making the progress it has.  The League once again emphasizes the need for an inspector general with the authority to maintain ongoing oversight of the PPB and the accountability system.  The time and effort that have gone into the reforms over the years will only be worthwhile if they are maintained and built upon in the future.

---

[2] https://www.portland.gov/police/news/2026/6/2/portland-police-bureau-2025-annual-report