**HARMEET K. DHILLON**
Assistant Attorney General
Civil Rights Division
**R. JONAS GEISSLER**
Deputy Assistant Attorney General
**PATRICK MCCARTHY**
Chief
**JEFFREY R. MURRAY**
**CATHERINE YOON**
Trial Attorneys
Special Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530
Phone: (202) 305-3229

Attorneys for Plaintiff United States

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:12-cv-02265-SI |
| Plaintiff, | |
| v. | UNITED STATES' MOTION TO COMPEL PARAGRAPH 245 COMPLIANCE ASSESSMENTS |
| **CITY OF PORTLAND,** | |
| Defendant. | |

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

MOTION TO COMPEL PARAGRAPH 245 COMPLIANCE ASSESSMENTS........................ 1

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PARAGRAPH 245
COMPLIANCE ASSESSMENTS................................................................................................ 1

I.      INTRODUCTION ............................................................................................................ 1

II.     STATEMENT OF FACTS ............................................................................................... 2

   A.   Background and Procedural History........................................................................ 2

   B.   Prior Monitors' Approaches to Reviewing Paragraph 245.................................... 3

   C.   Current Monitor's Approach to Reviewing Paragraph 245 and the United States'
        Response................................................................................................................... 3

   D.   Pertinent Terms of the Settlement Agreement........................................................ 5

III.    LEGAL STANDARD........................................................................................................ 9

   A.   Enforcement of Settlement Agreements ................................................................. 9

   B.   Principles of Interpretation .................................................................................... 9

IV.     ARGUMENT ................................................................................................................... 10

   A.   The Agreement Requires Compliance Assessments for Paragraph 245............... 11

   B.   The Monitor Should Review the United States' Relevant Compliance Concerns .......... 13

   C.   The United States Has Satisfied the Agreement's Requirements for This Motion .......... 15

V.      CONCLUSION................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Angelette, LLC v. Bradley*, 674 F. Supp. 3d 687 (D. Alaska 2023)............................................. 10

*Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265 (9th Cir. 1996).................................................. 9

*Arizona v. Tohono O'odham Nation*, 818 F.3d 549 (9th Cir. 2016)............................................. 10

*CNH Indus. N.V. v. Reese*, 583 U.S. 133 (2018) .................................................. 9, 10, 14

*Int'l Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401 (9th Cir. 1985).................................................. 10

*Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018 (9th Cir. 1989) .............................. 10

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999)........ 9, 10, 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................................................. 9

*Miller v. Fairchild Indus., Inc.*, 797 F.2d 727 (9th Cir. 1986)........................................... 9

*O'Neill v. United States,* 50 F.3d 677 (9th Cir. 1995) ....................................................... 9

*Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028 (9th Cir. 2005) ........................... 9

*U.S. Postal Serv. v. Ester*, 836 F.3d 1189 (9th Cir. 2016).................................................. 9

*United States v. Asarco Inc.*, 430 F.3d 972 (9th Cir. 2005)......................................... 10

*Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033 (9th Cir. 2011) ................................... 9

<u>**MOTION TO COMPEL PARAGRAPH 245 COMPLIANCE ASSESSMENTS**</u>

The United States of America hereby moves to compel the Monitor to conduct compliance assessments for Paragraph 245 of the Amended Settlement Agreement (Agreement). As discussed in the Memorandum in support of this Motion, the terms of the Agreement require the Monitor to assess the City of Portland's compliance with Paragraph 245. The Monitor's refusal to assess compliance with Paragraph 245, and the City's agreement with the Monitor's position, is inconsistent with the plain language of the Agreement. The United States, the City, and the Monitor have made a good-faith effort to resolve this dispute through formal mediation but have been unable to do so. The United States now asks the Court to order the Monitor to assess the City's compliance with Paragraph 245.

<u>**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PARAGRAPH 245
COMPLIANCE ASSESSMENTS**</u>

**I.         INTRODUCTION**

The United States' notice of noncompliance with Agreement Paragraph 169 (now renumbered Paragraph 245) (ECF 286-1) led directly to the addition of new remedies to the Agreement, followed, ultimately, by the addition of a Court Monitor to assess all substantive provisions of the Agreement (ECF 390). Ironically, now, the resultant Monitor refuses to assess the very Agreement provision that gave genesis to his position and his obligation to this Court.

To be sure, the Agreement requires the Monitor to conduct semi-annual assessments of the City's compliance with the Agreement, including Paragraph 245. And, just as has occurred repeatedly in this case, allegations of misconduct continue to warrant assessment of Paragraph 245 compliance. Yet, to date, the Monitor has failed to conduct compliance assessments for Paragraph 245, either as to the Portland Police Bureau (PPB)'s protest responses or any other issue. The Monitor's refusal to assess compliance with Paragraph 245 constitutes a failure to perform the

Monitor's duties.  Accordingly, the Court should specifically direct the Monitor to assess compliance with Paragraph 245.

## II.    STATEMENT OF FACTS

### A.  Background and Procedural History

On July 30, 2015, this Court entered the Settlement Agreement as an order of the Court. ECF 99 at 4.[1]  As part of that order, the Court conditionally dismissed the Complaint without prejudice and retained jurisdiction "to enforce any provision of the Settlement Agreement . . .." *Id.*  Since then, the Court has approved several amendments to the Agreement.  *See* ECF 171 (May 15, 2018); ECF 262 (Sept. 23, 2021); ECF 290 (Apr. 29, 2022); ECF 354 (Feb. 28, 2023); ECF 408 (Jan. 26, 2024); ECF 458 (Aug. 29, 2024); ECF 476 (Dec. 17, 2024); ECF 506 (July 29, 2025); ECF 552 (May 8, 2026); ECF 573 (Aug. 4, 2026).  Among these amendments is a 2022 addendum of additional remedies that the Parties added with the Court's approval to resolve a notice of noncompliance related to the City's response to protests in 2020.  *See* ECF 236 at 4-5, 7; ECF 276 at 2-3; ECF 286-1 at 1; ECF 290.  The notice of noncompliance specifically referenced a failure to comply with Paragraph 245, then numbered 169.  ECF 286-1 at 1.

Also, the Parties agreed to, and the Court approved, a 2023 amendment establishing an independent Monitor and a process for terminating the Agreement through which, the United States explained, "the Parties can be assured of an independent assessment of compliance followed by a testing period during which the City demonstrates its ability to sustain compliance and self-detect/self-correct under the tutelage of the Monitor."  *See* Pl.'s Mem. in Supp. of Joint Mot. to Amend the Am. Settlement Agreement at 2, 10-11, ECF 391; Order Granting Joint Mot. to Amend the Am. Settlement Agreement, ECF 401.  That amendment introduced a list of discrete sections

---

[1] The 2015 order amended the Court's original 2014 order entering the Agreement, ECF 86.

Page 2    United States' Motion to Compel Paragraph 245 Compliance Assessments
*United States of America v. City of Portland*, 3:12-cv-02265-SI

of the Agreement that could become eligible for partial termination. *See* ECF 390-1 at 23-25. The Court ordered the Monitor's appointment, effective July 1, 2024. ECF 423 at 2.

### B. Prior Monitors' Approaches to Reviewing Paragraph 245

When the Department of Justice (Department) served as the monitor, informed by the Portland Compliance Officer/Community Liaison (COCL)'s assessments, before the current Monitor was appointed, both the Department and COCL conducted compliance assessments for Paragraph 245, then 169. *See, e.g.*, Department's Seventh Periodic Compliance Assessment Report (Department's Seventh Report) at 56, 60-65, ECF 369-1; COCL's Quarterly Report: 2023 Quarter 4 Updates and Analysis (COCL's Q4 2023 Report) at 79-80, ECF 425-1. In their most recent reports, both found the City only in partial compliance with Paragraph 245. *Id.*

### C. Current Monitor's Approach to Reviewing Paragraph 245 and the United States' Response

As indicated in his February 3, 2025 Monitoring Plan and Methodology, the Monitor originally intended to conduct compliance assessments for Paragraph 245. Monitoring Plan at 24, ECF 484-1; Methodological Plan at 41, ECF 484-2. However, in his first report, the Monitor reversed course and indicated that he would not review the paragraph because it is located within a section whose other paragraphs concern procedural aspects of the Agreement. *See* Monitor's Semi-Annual Compliance Report: July 1, 2024–December 31, 2024 (Monitor's First Report) at 80, ECF 490-1. The Monitor also explained that COCL had not reviewed other paragraphs in that section in the last report COCL prepared as the monitor. *Id.* Citing the explanation in his first report, the Monitor continued to not review Paragraph 245 in his second and third reports. Monitor's Semi-Annual Compliance Report: January 1, 2025–June 30, 2025 (Monitor's Second Report) at 66 n.32, ECF 526-1; Monitor's Semi-Annual Compliance Report: July 1, 2025–December 31, 2025 (Monitor's Third Report) at 60 n.32, ECF 554-1.

Page 3    United States' Motion to Compel Paragraph 245 Compliance Assessments
*United States of America v. City of Portland*, 3:12-cv-02265-SI

At the July 28, 2026 status conference, the Monitor cited additional reasons for not reviewing Paragraph 245. These related to the Monitor's perception that the Parties have not made it sufficiently clear what they intend for the Monitor to review under Paragraph 245. The Monitor indicated that he is open to assessing Paragraph 245 if provided with further clarity.

The Monitor has not assessed the City's compliance with Paragraph 245, but the Monitor has nonetheless concluded that the City has adequately demonstrated substantial compliance with the discrete section for "discipline and accountability," which is comprised of Paragraphs 137 and 245. *See* Agreement ¶ 249(b), ECF 552; Monitor's Second Report at 68, 87, ECF 526-1; Monitor's Third Report at 62, 84, ECF 554-1.[2] As a result, the Monitor has jumped over the required assessment, straight to dismissal without proof. Based on the Monitor's reports, the City has informed the United States it will seek termination of the discipline and accountability discrete section. Att. 1 ¶¶ 5-6.

The United States has provided written comments on the Monitor's second and third reports disagreeing with the Monitor's decision to not review Paragraph 245. Att. 1 ¶¶ 1-2. On May 4, 2026, the United States sent the Monitor an email further detailing the United States' concerns about the Monitor's decision to not review Paragraph 245. Att. 1 ¶ 3. On June 18, 2026, the United States sent the Monitor a letter explaining why the Monitor needs to review the paragraph and responding to the Monitor's reasons for not reviewing the paragraph. Att. 1 ¶ 4.

---

[2] To the United States' knowledge, the City never sent the Monitor any proposed self-monitoring plan for Paragraph 245; the Monitor never reviewed any such self-monitoring plan; and the Monitor never reviewed any self-monitoring reports for Paragraph 245 when reviewing the City's self-monitoring of the discrete section. *See* Agreement ¶¶ 255-56, ECF 552 (requiring the City to create self-monitoring plans in consultation with the Monitor and prepare self-monitoring reports; requiring the Monitor to evaluate the City's self-monitoring reports to determine whether the City has maintained substantial compliance).

Page 4    United States' Motion to Compel Paragraph 245 Compliance Assessments
*United States of America v. City of Portland*, 3:12-cv-02265-SI

On June 22, 2026, the United States, the Monitor, the City, and both *amici curiae* attended mediation, which did not resolve the dispute. *See* ECF 555.

### D. Pertinent Terms of the Settlement Agreement

The Agreement includes the following provisions relevant to the Monitor's duty to review Paragraph 245.

### 1. Agreement's Purpose and Requirements for Policing

The Introduction describes that the Agreement "is targeted to strengthen initiatives already begun by PPB to ensure that encounters between police and persons with perceived or actual mental illness, or experiencing a mental health crisis, do not result in unnecessary or excessive force." ECF 552 at 3. In addition to that focus, the Introduction explains that the Agreement's broader purpose is the Parties' shared "goal of ensuring that [PPB] delivers police services to the people of Portland in a manner that effectively supports officer and public safety, and complies with the Constitution and laws of the United States." *Id*. Further, the Introduction recognizes that "[t]he full and sustained implementation of this Agreement is intended to protect the constitutional rights of all members of the community, continuously improve the safety and security of the people of Portland, keep PPB employees safe, and increase public confidence in PPB, all in a cost-effective, timely, and collaborative manner."[3] ECF 552 at 4.

Section III, comprised of Paragraphs 69 through 77, discusses use of force. Section III includes requirements related to PPB's supervisory investigations and reports regarding use of force and compliance audits related to use of force. *See* ECF 552, ¶¶ 69-77; ECF 573.

---

[3] The Introduction also states that the Agreement "requires that the City and PPB put in place more effective systems of oversight and self-correction that will identify and correct problems before they develop into patterns or practices of unconstitutional conduct and/or erode community trust." ECF 552 at 4.

Page 5    United States' Motion to Compel Paragraph 245 Compliance Assessments
          *United States of America v. City of Portland*, 3:12-cv-02265-SI

Section XI, comprised of Paragraphs 188 through 195, is an addendum of additional remedies.  *See* ECF 552, ¶¶ 188-89, 192-195; ECF 573.  Section XI includes, among other things, requirements to "prepare a training needs assessment" based on an outside review of "the City's response to crowd control events in 2020"; conduct investigations related to use of force "against individuals during crowd control events [in 2020] without meeting the requirements of PPB Directive 1010.00"; and implement Body-Worn Cameras "pursuant to a policy that is subject to the policy-review-and-approval provisions of this Agreement."  ECF 552, ¶¶ 189, 192, 194.

Paragraph 245 requires PPB to "apply policies uniformly and hold officers accountable for complying with PPB policy and procedure."  ECF 552, ¶ 245.

### 2.  Monitor's Duties

Paragraph 201 provides that the Monitor "shall assess the City's compliance with, and implementation of, this Agreement."  ECF 552, ¶ 201.  Specifically, Paragraph 216 provides that "[t]he Monitor's core duties include: (a) developing a Monitoring Plan, updated at the beginning of each two-year term, to ensure reliable compliance assessments; (b) conducting semi-annual assessments of the City's compliance with the terms of this Agreement . . . and (e) filing semi-annual reports with the Court that detail the status of the City's progress in implementing this Agreement."  ECF 552, ¶ 216.

The Agreement sets forth processes for developing the Monitor's plan and methodology. Paragraph 217 provides that "[u]sing as guidance prior COCL and [Department of Justice] Compliance Assessment Reports, within 30 days of appointment, the Monitor will develop a plan for conducting compliance assessments and filing its reports (Monitoring Plan)."  ECF 552, ¶ 217. The Parties will have the opportunity to provide written comments.  *Id.*  If disputes about the draft Monitoring Plan go unresolved, either Party may seek relief from the Court.  *Id.*

Paragraph 221 provides that "[p]rior to initiating any audit pursuant to the Monitoring Plan, the Monitor will submit a proposed methodology to the Parties." ECF 552, ¶ 221. The Parties will have the opportunity to provide written comments. *Id.* If disputes about the draft audit methodology go unresolved, either Party may seek relief from the Court. *Id.*

Paragraph 202 provides that "[i]t is not the Monitor's role to change either the scope or the terms of this Agreement." ECF 552, ¶ 202.

### 3.  Termination Based on Monitor's Compliance Assessments

The Agreement lays out a process to terminate discrete sections of the Agreement after certain steps have been followed. First, the section must become "subject to self-monitoring," which occurs when the Monitor finds the City in "substantial compliance" with "each paragraph within the section,"[4] either in two consecutive reports issued by the Monitor or in certain combination with reports issued by the Department or COCL. *See* ECF 552, ¶ 254.

Second, for each section subject to self-monitoring, the City must "create a self-monitoring plan in consultation with the Monitor that emphasizes assessments to evidence continued substantial compliance, prepare semi-annual compliance reports subject to the Monitor's evaluation, and report its findings to the Court at non-evidentiary status conferences." ECF 552, ¶ 255.

Third, the Monitor must "evaluate the City's semi-annual reports to determine whether the City has maintained substantial compliance [with the section] in accordance with the self-monitoring plan." ECF 552, ¶ 256.

---

[4] Prior to a July 29, 2025 amendment, the Agreement required findings of substantial compliance with the discrete section, rather than each paragraph, before self-monitoring could begin. *See* Minutes of Interim Status Conference, ECF 506; Order Granting Parties' Joint Mot. to Enter Reformatted Settlement Agreement ¶ 254, ECF 486.

Fourth, for the section to become "subject to termination," the Monitor's evaluations must "find that the City has adequately demonstrated that it has maintained substantial compliance with [the] section" for two consecutive reports. ECF 552, ¶ 257. If the Parties do not agree that a section is appropriate for termination, the Agreement sets forth additional steps for efforts to resolve the dispute before the City may file a contested motion for termination. *See* ECF 552, ¶ 259.

Finally, the Agreement "will terminate in all respects when all discrete sections identified in Paragraph 249(b) have been terminated pursuant to this Agreement." ECF 552, ¶ 260. Accordingly, monitoring of Paragraph 245 is required to bring the termination process to fruition and resolve this case.

### 4. Steps for Seeking Relief from This Court

Paragraph 214 provides the following procedure for dispute resolution over the Monitor's failure to perform his duties under the Agreement:

> If either Party to this Agreement determines that the Monitor, or members of the Monitor's team, have exceeded their authority or failed to perform the duties required by this Agreement, the Party may, after consultation with the other Party and the Monitor, request mediation with the Monitor pursuant to Paragraph 271 of this Agreement. If the issue is not resolved within 45 days of the start of mediation, either Party may file a motion petitioning the Court for relief pursuant to Paragraph 272 of this Agreement. If either Party disagrees with another Party's interpretation of authority or duties provided under this Agreement, the Party may request mediation with the Monitor pursuant to Paragraph 271 of this Agreement. If the dispute is not resolved within 45 days of the start of mediation, either Party may file a motion petitioning the Court for relief pursuant to Paragraph 272 of this Agreement.

ECF 552, ¶ 214.

### III.     LEGAL STANDARD

#### A.  Enforcement of Settlement Agreements

A district court's jurisdiction to enforce a settlement agreement arises where "the district court explicitly retains jurisdiction over the settlement agreement, or incorporates the terms of the agreement in its dismissal order." *Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1268-69 (9th Cir. 1996).  In such instances, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.* (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).

#### B.  Principles of Interpretation

Courts construe settlement agreements as contracts.  *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 733 (9th Cir. 1986).  In interpreting a federal contract,[5] "[w]ell-known principles of contract law guide [the court] . . . ." *U.S. Postal Serv. v. Ester*, 836 F.3d 1189, 1195 (9th Cir. 2016) (quoting *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011)).

Under general principles of contract interpretation, "[w]hen the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further." *CNH Indus. N.V. v. Reese*, 583 U.S. 133, 141 (2018) (citation and quotation marks omitted); *see also Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) ("Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.").

In examining the terms of a contract, courts consider first "[w]henever possible, the plain language of the contract . . .." *Klamath Water Users Protective Ass'n*, 204 F.3d at 1210.  Courts

---

[5] Courts use federal law to interpret contracts "entered into pursuant to federal law and to which the government is a party." *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1034 (9th Cir. 2005) (citing *O'Neill v. United States,* 50 F.3d 677, 682 (9th Cir. 1995)).

Page 9     United States' Motion to Compel Paragraph 245 Compliance Assessments
         *United States of America v. City of Portland*, 3:12-cv-02265-SI

also consider the written contract "as a whole" and interpret "every part . . . with reference to the whole, with preference given to reasonable interpretations." *Id*. Courts do not look to extrinsic evidence when contract terms are not ambiguous. *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 560-61 (9th Cir. 2016) (explaining that, under federal common law, a contract "must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the contract"); *United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005) (noting the same specifically as to consent decrees, which "are entered into by parties to a case after careful negotiation has produced agreement on their precise terms").

A contract is not ambiguous "unless, after applying established rules of interpretation, it remains reasonably susceptible to at least two reasonable but conflicting meanings." *CNH Indus. N.V.*, 583 U.S. at 139 (citation, quotation marks, and brackets omitted); *see also Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989) ("[A] contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation."). "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous." *Kennewick Irrigation Dist.*, 880 F.2d at 1032 (quoting *Int'l Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir. 1985)). Nor does silence in a contract show that an ambiguity exists. *Angelette, LLC v. Bradley*, 674 F. Supp. 3d 687, 696-97 (D. Alaska 2023).

## IV.    ARGUMENT

An order is necessary to address the Monitor's failure to assess compliance with Paragraph 245. Paragraph 245 is a substantive provision of the Agreement that the Parties meant for the Monitor to review. The Monitor's review of Paragraph 245 is also warranted because the United States has raised relevant compliance concerns.

## A. The Agreement Requires Compliance Assessments for Paragraph 245

The plain language of the Agreement unambiguously demonstrates the Parties' intent for the Monitor to review Paragraph 245. Paragraph 216 of the Agreement requires the Monitor to "conduct[] semi-annual assessments of the City's compliance with the terms of [the] Agreement." ECF 552, ¶ 216. Two aspects of the Agreement show that the Parties intended to include a review of Paragraph 245 in these assessments.

First, Paragraph 245 is one of the provisions the Monitor must find in substantial compliance before the Agreement can terminate under the termination procedure provided by the Agreement. Under Paragraph 260, the Agreement "will terminate in all respects when all discrete sections identified in Paragraph 249(b) have been terminated pursuant to this Agreement." ECF 552, ¶ 260. One of the discrete sections identified in Paragraph 249(b) is a section comprised of Paragraphs 137 and 245. *Id.* ¶ 249(b). For termination of that section to occur pursuant to the Agreement, the Monitor must first find that the City is in substantial compliance with the section— either in two consecutive reports issued by the Monitor or in certain combination with reports issued by the Department or COCL—followed by the Monitor's confirmation that the City's self-monitoring has demonstrated substantial compliance in two consecutive reports. *See id.* ¶¶ 254-59.

The Agreement does not group all of its paragraphs into discrete sections that may become eligible for termination based on the Monitor's assessments. Rather, only the operative paragraphs—those paragraphs that impose an obligation upon the City or PPB related to routine law enforcement operations—are grouped into discrete sections. *See id.* ¶ 249(b). This includes Paragraph 245. If the Parties did not intend for the Monitor to assess compliance with Paragraph

245, the Parties could have omitted the explicit reference to Paragraph 245 from these discrete sections.  However, the Parties did not do so.

Second, the Agreement requires the Monitor to use the Department's and COCL's past reports as a guide to monitoring and the Department and COCL both reviewed Paragraph 245. Paragraph 217 provides that the Monitor "will develop a plan for conducting compliance assessments and filing its reports (Monitoring Plan)" "[u]sing as guidance prior COCL and [Department of Justice] Compliance Assessment Reports."  *Id.* ¶ 217.  Not only did both the Department and COCL review Paragraph 245 when those entities served as the monitor, but both found in their most recent reports that the City had not achieved substantial compliance with the paragraph.  Department's Seventh Report at 56, 60-65, ECF 369-1; COCL's Q4 2023 Report at 79-80, ECF 425-1.  The requirements of Paragraph 217 evidence the Parties' intent for the Department's and COCL's approach to monitoring to continue, including review of Paragraph 245.[6]

In contrast, if the Agreement were interpreted to omit the Monitor's review of Paragraph 245, a nonsensical outcome would result.  Either the Agreement would not terminate because the Monitor has never found compliance with Paragraph 245 or Paragraph 245 would terminate automatically regardless of compliance.  The latter approach, suggested by the Monitor's reports concluding that the City has adequately demonstrated sustained compliance with the section containing Paragraph 245, would make Paragraph 245 a meaningless provision.  This is not a "reasonable interpretation" of the Agreement.  *See Klamath Water Users Protective Ass'n*, 204 F.3d at 1210.  Nor is it consistent with the Agreement's admonition that "[i]t is not the Monitor's

---

[6] In fact, the Monitoring Plan that the Monitor developed with the Parties' input includes a plan to review Paragraph 245.

role to change either the scope or the terms of this Agreement." *See* ECF 552, ¶ 202.

### B. The Monitor Should Review the United States' Relevant Compliance Concerns

Just as has occurred repeatedly throughout this case, when the United States or amici become aware of credible allegations of noncompliance with the Agreement, it is altogether appropriate to apply the Agreement's accountability provisions—specifically Paragraph 245—to such allegations. Indeed, that is precisely the scenario that gave rise to the Agreement's additional remedies concerning crowd control. *See* ECF 286-1.

Now, not only should the Monitor assess compliance with Paragraph 245, but the Monitor should apply that same critical rigor that COCL, amici, and the United States have previously applied to assess the City's compliance with Paragraph 245 with respect to the United States' specific concerns. This includes the City's response to protests around the U.S. Immigration and Customs Enforcement (ICE) facility in Portland, just like the City's responses to protests across the City in 2020. As the Plaintiff, the United States has an interest in ensuring compliance with the Agreement that makes it inappropriate for the Monitor to dismiss the United States' concerns without any review.

The scope of Paragraph 245 covers the United States' requested assessments. The plain language of Paragraph 245 requires that PPB put its policies into effect uniformly.[7] *See* ECF 552, ¶ 245. Under its ordinary meaning, the word "uniformly" precludes PPB from applying its policies differently, and, in turn, providing police services differently. Also, nothing about the word "policies" limits the scope of PPB policies that Paragraph 245 covers. Paragraph 245 could have included such a restriction, but it unambiguously does not. Taking these two points together, the

---

[7] The dictionary definition of "apply" includes "to put into operation or effect." *Apply*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/apply (last visited Aug. 6, 2026).

Page 13    United States' Motion to Compel Paragraph 245 Compliance Assessments
         *United States of America v. City of Portland*, 3:12-cv-02265-SI

plain language of Paragraph 245 sufficiently shows the Parties' intent to have PPB apply all its policies uniformly, including with regard to the policies relevant here.[8] *See CNH Indus. N.V.*, 583 U.S. at 141; *Klamath Water Users Protective Ass'n*, 204 F.3d at 1210.

The plain language is sufficient to resolve any dispute.  But even if that were not so, the only reasonable interpretation of Paragraph 245 is that it covers, at a minimum, policies including PPB Directives 0635.10 (Portland Police Bureau Response to Public Order Events), 0620.00 (Body-Worn Camera Use and Management), and 1010.00 (Use of Force).  These policies address core Agreement issues.  For example, the Introduction addresses the delivery of police services in a manner that complies with the Constitution and laws of the United States and the protection of all community members' constitutional rights, *see* ECF 552 at 3-4; Section XI addresses PPB's response to crowd control events in 2020, *see* ECF 552, ¶¶ 189, 192; Paragraph 194 addresses the use of Body-Worn Cameras, *see* ECF 552, ¶ 194; and Section III addresses use of force, s*ee* ECF 552, ¶¶ 69-77; ECF 573.  Moreover, the Agreement's purpose to support public safety is consistent with uniform implementation of these policies.  *See* ECF 552 at 3-4.  A holistic reading of the Agreement therefore affirms the inclusion of these policies under Paragraph 245.  *See Klamath Water Users Protective Ass'n*, 204 F.3d at 1210.

Even if the United States had not raised compliance concerns about the City's crowd control response, Monitoring of Paragraph 245 is central to this Agreement.  The City supports skipping over the required Monitoring of Paragraph 245 for obvious reasons.  Not Monitoring Paragraph 245 allows the City to escape assessment of a basic—even the fundamental—purpose of the Agreement: accountability.  Even if the United States had not identified allegations of

---

[8] The relevant PPB policies are Directives 0635.10, 0620.00, and 1010.00.

improper crowd control response and viewpoint discrimination from City political interference with policing (ECF 520), omitting Monitoring of Paragraph 245 would run counter to the central tenet of the Agreement—to ensure a fulsome and fair accountability process for officers and the public.

### C. The United States Has Satisfied the Agreement's Requirements for This Motion

As discussed above, the Agreement requires the United States to take certain actions before filing a motion for relief under Paragraph 214. The United States has satisfied these requirements. The United States has consulted with the Monitor and the City regarding the issues addressed in the pending Motion. Subsequently, the United States, the Monitor, and the City—as well as the Albina Ministerial Alliance Coalition for Justice and Police Reform (AMAC) and the Mental Health Alliance (MHA)[9]—attended mediation, which was unsuccessful. The 45-day window for mediation has elapsed.

### V.    CONCLUSION

For the foregoing reasons, the United States asks the Court to order the Monitor to assess the City's compliance with Paragraph 245, both generally and specifically for the allegations that the United States has raised. Because the Monitor has finalized his third report without reviewing Paragraph 245, the United States asks the Court to order the Monitor to supplement the third report.

DATED: August 7, 2026.

Respectfully submitted,

For Plaintiff UNITED STATES OF AMERICA:

SCOTT E. BRADFORD                           HARMEET K. DHILLON
United States Attorney                       Assistant Attorney General
District of Oregon                           Civil Rights Division

---

[9] The Portland Police Association (PPA) was invited to the mediation but was unable to attend.

R. JONAS GEISSLER
Deputy Assistant Attorney General

PATRICK MCCARTHY
Chief
Special Litigation Section

 /s/ Catherine Yoon
JEFFREY R. MURRAY
CATHERINE YOON
Trial Attorneys
Special Litigation Section
Civil Rights Division
United States Department of Justice