**HARMEET K. DHILLON**
Assistant Attorney General
Civil Rights Division
**R. JONAS GEISSLER**
Deputy Assistant Attorney General
**PATRICK MCCARTHY**
Chief
**JEFFREY R. MURRAY**
**CATHERINE YOON**
Trial Attorneys
Special Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: (202) 305-3229

Attorneys for Plaintiff United States

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND,**<br><br>Defendant. | Case No. 3:12-cv-02265-SI<br><br>PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL PARAGRAPH 245 COMPLIANCE ASSESSMENTS |

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL PARAGRAPH 245 COMPLIANCE ASSESSMENTS ........ 1

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. The Agreement's Plain Language Requires Monitoring of Paragraph 245 ........ 3

B. The Monitor's Discretion Does Not Extend to Ignoring the Agreement's Requirements 13

C. The Monitor Could Conduct a Reasonable Assessment by Reviewing Specific Compliance Concerns ........ 15

D. Neither the Court's Prior Decision Nor the Underlying Clean Hands Doctrine Bars Relief 17

1. The Court's Prior Decision Does Not Bar Relief ........ 17

2. The Clean Hands Doctrine Does Not Bar Relief ........ 19

3. The United States Does Not Have Unclean Hands ........ 21

III. CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Cases**

*Angelette, LLC v. Bradley*, 674 F. Supp. 3d 687 (D. Alaska 2023) ........ 10

*Arizona v. Tohono O'odham Nation*, 818 F.3d 549 (9th Cir. 2016) ........ 9

*CNH Indus. N.V. v. Reese*, 583 U.S. 133 (2018) ........ 9, 10

*Gregory v. City of Chicago*, 394 U.S. 111 (1969) ........ 17

*Hook v. State of Ariz., Dep't of Corrections*, 972 F.2d 1012 (9th Cir. 1992) ........ 7

*Int'l Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401 (9th Cir. 1985) ........ 10

*Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018 (9th Cir. 1989) ........ 10

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999) ........ 3, 8, 9

*Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956 (9th Cir. 2015) ........ 20

*Oregon v. Trump*, 171 F.4th 1144 (9th Cir. 2026) ........ 19

*Precision Instrument Mfg. Co. v. Auto. Maint. Machinery Co.*, 324 U.S. 806 (1945) ........ 19

*Republic Molding Corp. v. B. W. Photo Utils.*, 319 F.2d 347 (9th Cir. 1963) ........ 20

*S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921 (9th Cir. 2014) ........ 20

*Starrag v. Maersk, Inc.*, 486 F.3d 607 (9th Cir. 2007) ........ 4

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011) ........ 21

*Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n*, 903 F.3d 862 (9th Cir. 2018) ........ 4

*United States v. Asarco Inc.*, 430 F.3d 972 (9th Cir. 2005) ........ 9

*United States v. City of Northlake, Ill.*, 942 F.2d 1164 (7th Cir. 1991) ........ 7, 9

*United States v. Jingles*, 702 F.3d 494 (9th Cir. 2012) ........ 16

*United States v. Paulson*, 68 F.4th 528 (9th Cir. 2023) ........ 4

*United States v. Salazar*, No. 1:23-cv-01282-JLT-CDB, 2024 WL 4589971 (E.D. Cal. Oct. 28, 2024) ........ 7

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL PARAGRAPH 245 COMPLIANCE ASSESSMENTS**

## I. INTRODUCTION

From the outset, this Court, Amici, and the Parties have all acknowledged the Settlement Agreement's unambiguous, substantive requirement that the Portland Police Bureau must uniformly enforce its policies and procedures. Indeed, the failure to do so has been at the center of numerous compliance assessments and status conferences: Thai Gurule; the former Chief's negligent shooting of his friend—and the cover up; directions to use indiscriminate force; the "Prayer of the Alt Knight" slide—and the cover up; and the fourteen shots at a vehicle—many dangerously fired over the head of another officer. These were just some of the many failures to uniformly enforce policies and procedures, often excusing executives while rank-and-file officers are held to a different standard. Similar failures to uniformly enforce policies remain an issue, which requires monitoring.

So, now, Plaintiff United States of America (United States) seeks the Monitor's review of Paragraph 245, a key provision of the Settlement Agreement, with which the City has never demonstrated sustained compliance and about which the United States has continuing compliance concerns. On August 7, 2026, the United States filed a motion for an order directing the Monitor to assess compliance with Paragraph 245. Pl.'s Mot. to Compel Paragraph 245 Compliance Assessments (Pl.'s Mot.), ECF 574; *see also* Am. Settlement Agreement (Agreement) ¶ 245, ECF

552.[1] On August 11, 2026, the Monitor filed a statement regarding Paragraph 245.[2] Statement of Independent Court-Appointed Monitor—Settlement Agreement Paragraph 245 (Monitor's Statement), ECF 578. On August 24, 2026, Defendant City of Portland (City) filed its response in opposition to the United States' Motion. Def.'s Resp. to Pl.'s Mot. to Compel Paragraph 245 Compliance Assessments (Def.'s Resp.), ECF 580. On the same date, Enhanced Amicus Albina Ministerial Alliance Coalition for Justice and Police Reform (AMAC) and Amicus Mental Health Alliance (MHA) (collectively, Amici) also filed their opposition. Amici's Resp. to Pl.'s Mot. to Compel Paragraph 245 Compliance Assessments and Def.'s Mot. to Terminate a Discrete Section of the Settlement Agreement Pursuant to Paragraph 259 (Amici's Resp.), ECF 581.

The City, Monitor, and Amici all fail to refute the grounds on which the United States has brought its Motion. First, contrary to the City's, Monitor's, and Amici's contentions, the Agreement unambiguously expresses the Parties' intent for Paragraph 245 to impose substantive requirements on the Portland Police Bureau (PPB) and for the Monitor to assess compliance with those requirements. Second, although the City asserts that the Monitor should be afforded discretion in conducting his compliance assessments, the scope of that discretion does not extend to disregarding the terms of the Agreement. Third, the City is incorrect that there are no valid issues for the Monitor to review under Paragraph 245. Finally, the City and Amici are wrong to

[1] The Court has approved further amendments to the Settlement Agreement. Order at 1, ECF 573 (terminating Paragraphs 66-67, 78-79, 81, 84, 115, 124-127, and 190). The most recent version of the Agreement has not yet been entered. For simplicity, the United States cites to the previous version that the Court has entered (ECF 552), except where differences between the two versions are relevant to the analysis.

[2] The Monitor is not a party. The Monitor has no standing to object to the Agreement's requirements. The United States objects to the Monitor's submission.

suggest that the Court's order denying the United States access to Paragraph 245-related documents (ECF 563) precludes relief under the present Motion.

Accordingly, the Court should reject the City's, Monitor's, and Amici's arguments and grant the United States' Motion.

## II. ARGUMENT

The City's, Monitor's, and Amici's arguments are unavailing. The plain language of the Agreement requires Paragraph 245 to be read as a substantive provision that the Monitor needs to include in his compliance assessments. The discretion the Monitor enjoys in his role does not allow the Monitor to ignore the Agreement's requirements. The Monitor could appropriately review Paragraph 245 by addressing specific compliance concerns. It is possible to accomplish the review the United States seeks in a manner consistent with the Court's recent order and without triggering the unclean hands defense. The Court should grant the United States' Motion.

### A. The Agreement's Plain Language Requires Monitoring of Paragraph 245

Although the City contends that Paragraph 245 is merely aspirational and does not include requirements appropriate for monitoring, ECF 580 at 4-6, the only reasonable interpretation of the Agreement is that Paragraph 245 is a substantive provision that the Monitor has to review. The United States' reading of the Agreement begins with the plain text. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), *amended by* 203 F.3d 1175 (9th Cir. 2000) (noting that courts consider first "[w]henever possible, the plain language of the contract . . ..").

First, Paragraph 245 states that "PPB *shall* apply policies uniformly and hold officers accountable for complying with PPB policy and procedure." Agreement ¶ 245, ECF 552 (emphasis added). The word "shall" shows that this provision imposes obligations on PPB because

the Agreement defines "shall" to mean "a mandatory duty."[3] *See id.* ¶ 59. In contrast, the Introduction to the Agreement includes true aspirational statements couched in purpose-oriented language, such as "with the goal of," "is targeted to," and "is intended to."[4] *See id.* at 3-4.

The City cross-references its motion to terminate the discrete section containing Paragraph 245, which also asserts that the paragraph is redundant of other provisions of the Agreement. *See* Def.'s Resp. at 5, ECF 580; Def.'s Mot. to Terminate a Discrete Section of the Settlement Agreement Pursuant to Paragraph 259 at 8-10, ECF 575. To the extent the City's opposition incorporates that argument, it lacks merit as well. Under basic contract law principles, an interpretation that would make the entirety of Paragraph 245 meaningless must be avoided. *See Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007) (observing that, in federal admiralty law, courts "interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous"); *see also Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n*, 903 F.3d 862, 872 (9th Cir. 2018) (declining to "interpret a contract so as to render one of its provisions meaningless"); *United States v. Paulson*, 68 F.4th 528, 539 (9th Cir. 2023) (noting that, in statutory interpretation, courts must "strive to give effect to each word and make every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous") (internal brackets and quotation marks omitted).

[3] Similarly, the dictionary explains that "shall" is used in the legal context "to express what is mandatory." *See Shall*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/shall (last visited Sept. 8, 2026).

[4] The Agreement includes "shall" statements in the introductory portions of the Use of Force and Officer Accountability sections that are not part of a discrete section as defined by Paragraph 249(b). *See* Agreement at 14, 29 & ¶ 249(b), ECF 552. This does not change the fact that these provisions are mandatory. While they are not separately monitored, they inform, and are properly read together with, the numbered paragraphs that follow them.

Second, as discussed in the United States' Motion, the Agreement's provisions regarding monitoring and termination require the Monitor to assess and find the City in compliance with Paragraph 245 as part of the Discipline and Accountability discrete section, before that section can become eligible for termination. *See* Pl.'s Mot. at 14-15, ECF 574; Agreement ¶¶ 254-60, ECF 552. The inclusion of Paragraph 245 in such a discrete section evidences the Parties' intent for the Monitor to review Paragraph 245.

Third, as also discussed in the United States' Motion, the Monitor's review of Paragraph 245 is consistent with the Agreement's process for developing a Monitoring Plan using the Department of Justice (Department)'s and the Portland Compliance Officer/Community Liaison (COCL)'s past reports as a guide. *See* Pl.'s Mot. at 15, ECF 574; Agreement ¶ 217, ECF 552. Because the Department and COCL reviewed Paragraph 245 before Paragraph 217 was adopted,[5] Paragraph 217 further shows that the Parties contemplated the Monitor's review of Paragraph 245.

In contrast, the City disregards the Parties' intent as reflected in the Agreement's plain language when it contends that Paragraph 245 is too broad, imprecise, and vague to monitor.[6] *See* Def.'s Resp. at 4-5, ECF 580. Paragraph 245 provides that PPB must "apply"—that is, put into

---

[5] *See* COCL's Quarterly Report: Quarter 2 Updates and Analysis (COCL's Q2 2022 Report) at 172-73, ECF 328-1 (Nov. 30, 2022); Department's Seventh Periodic Compliance Assessment Report (Department's Seventh Report) at 56, 60-65, ECF 369-1 (Aug. 8, 2023); Proposed Amendment, ECF 390-1 (Nov. 3, 2023); Order Granting Joint Mot. to Amend the Am. Settlement Agreement, ECF 401 (Nov. 30, 2023).

[6] Similarly, the Monitor contends, and Amici agree, that the scope and subject of Paragraph 245 are unclear. *See* Statement of Independent Court-Appointed Monitor—Settlement Agreement Paragraph 245 (Monitor's Statement) at 2, ECF 578; Amici's Resp. to Pl.'s Mot. to Compel Paragraph 245 Compliance Assessments and Def.'s Mot. to Terminate a Discrete Section of the Settlement Agreement Pursuant to Paragraph 259 (Amici's Resp.) at 4, ECF 581.

effect[7]—"policies uniformly and hold officers accountable for complying with PPB policy and procedure." *See* Agreement ¶ 245, ECF 552. Paragraph 50 provides that "policies and procedures" means "regulations or directives, regardless of the name, describing the duties, functions, and obligations of PPB officers and/or employees, and providing specific direction in how to fulfill those duties, functions, or obligations." *Id.* ¶ 50. Nothing about this language is imprecise nor vague.

Contrary to the City's suggestion, ECF 580 at 4-5, the lack of additional specificity about the policies Paragraph 245 covers does mean that the provision is vague. Rather, the lack of an express limit means that Paragraph 245 is not limited to any particular PPB policy or procedure. The Parties could have included references to specific Agreement topics in Paragraph 245, as they did when they described policies and procedures in Paragraphs 243 and 246. However, they did not do so. *See id.* ¶¶ 243, 246. This demonstrates the Parties' intent to not limit Paragraph 245.

The City also erroneously asserts that the location of Paragraph 245 within the Agreement Implementation and Enforcement Section (Section XII) indicates that Paragraph 245 is not appropriate for monitoring.[8] *See* ECF 580 at 6. Instead, the location underscores the Parties' intent that the Monitor review Paragraph 245. Of all the paragraphs in that section, the Parties singled out Paragraph 245 for inclusion in a discrete section that the Monitor would review. As discussed above, the Parties' express assignment of Paragraph 245 to a discrete section under Paragraph

---

[7] The dictionary definition of "apply" includes "to put into operation or effect." *Apply*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/apply (last visited Sept. 8, 2026).

[8] Similarly, the Monitor has indicated that he has not reviewed Paragraph 245 in part because it is located within a section whose other paragraphs concern procedural aspects of the Agreement. *See* Monitor's Semi-Annual Compliance Report: July 1, 2024–December 31, 2024 (Monitor's First Report) at 80, ECF 490-1.

249(b) nullifies any argument about the Parties' intent based on the location of Paragraph 245.

Further, contrary to the City's[9] suggestion, ECF 580 at 4-6, the breadth of Paragraph 245 relieves neither the City of its obligation to comply with the provision, nor the Monitor of his duty to assess the City's compliance. A court-ordered requirement does not become void simply because it is broad. *See, e.g.*, *United States v. City of Northlake, Ill.*, 942 F.2d 1164, 1165, 1167-69 (7th Cir. 1991) (finding that district court incorrectly limited plaintiff's ability to address defendant's compliance with general injunction against engaging in unlawful employment discrimination); *United States v. Salazar*, No. 1:23-cv-01282-JLT-CDB, 2024 WL 4589971, at *3 (E.D. Cal. Oct. 28, 2024) (permanently enjoining defendants from violating federal statute prohibiting housing discrimination). Here, Paragraph 245 is a catchall provision. By its nature, a catchall provision is broad because the Parties may need to apply it flexibly to address circumstances they did not specifically anticipate and sufficiently cover through other provisions but they still intended to reach under the Agreement. If the City believes Paragraph 245 is overbroad, the solution is to seek a modification, instead of opposing monitoring. *See Hook v. State of Ariz., Dep't of Corrections*, 972 F.2d 1012, 1016 (9th Cir. 1992) (finding that proper response to defendant's belief that consent decree was overly broad was for defendant to seek a modification, instead of "simply ignor[ing]" the decree).

Contrary to the City's contention, ECF 580 at 5, nothing about the grouping of Paragraph 245 in a different discrete section from most other provisions in the Officer Accountability section[10] shows that there can be no topics or obligations in common between Paragraph 245 and

---

[9] The Monitor has also suggested that he has not reviewed Paragraph 245 due to its breadth. *See* July 28, 2026 Status Conference Tr. at 49, 53, ECF 577.

[10] The Agreement groups Paragraph 245 together with Paragraph 137, which is a provision in the

the Officer Accountability section. Paragraph 245 is located among other paragraphs addressing PPB's policies and procedures at large. *See* Agreement ¶¶ 243-44, 246, ECF 552. Unlike references to specific policies and procedures in other sections of the Agreement, these paragraphs are not limited to a single topic. *See* Agreement at 29 & ¶¶ 194, 243-44, 246, ECF 552. Instead of showing that Paragraph 245 does not include obligations that address Officer Accountability, the placement of Paragraph 245 supports the interpretation that the scope of the provision includes—but is not limited to—policies and procedures related to Officer Accountability.

Even if the Court were to determine that Paragraph 245 includes some limitation on the policies and procedures covered, the most reasonable limitation would be to include those policies and procedures that implicate provisions of the Agreement itself. Paragraph 245 therefore reasonably covers, at a minimum, PPB directives that address the Agreement's purpose and core issues. These include, for example, protest responses and crowd control, body-worn cameras, and uses of force. *See* Agreement at 3-4 & ¶¶ 69-77, 189, 192, 194, ECF 552. Because the Agreement as amended addresses these topics, they reflect the intended scope of the Agreement, regardless of whether the Agreement addressed them at the inception of this case. This reading of the Agreement is consistent with an interpretation that considers the Agreement "as a whole" and interprets "every part . . . with reference to the whole, with preference given to reasonable interpretations." *See Klamath Water Users Protective Ass'n*, 204 F.3d at 1210.

The City[11] inappropriately relies on the United States' past actions to interpret the Agreement when such actions are extrinsic evidence and, in any event, fail to support the City's

Officer Accountability section. Agreement ¶ 249(b), ECF 552.

[11] Also, the Monitor asserts, and Amici agree, that there has been an inconsistent history of monitoring Paragraph 245. Monitor's Statement at 2, ECF 578; Amici's Resp. at 4, ECF 581.

conclusions. The City suggests without an appropriate, adequate basis that the United States[12] has never interpreted Paragraph 245 to apply to all PPB directives and that the United States' prior compliance assessments of Paragraph 245 constitute past interpretations of the Agreement. *See* ECF 580 at 2-3, 5. Contrary to the City's reliance on the Department's past compliance assessments, ECF 580 at 2-3, the Court should not consider such extrinsic evidence in interpreting the Agreement because the terms of the Agreement are not ambiguous.

As the Supreme Court has instructed, "[w]hen the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further." *CNH Indus. N.V. v. Reese*, 583 U.S. 133, 141 (2018) (citation and quotation marks omitted). Further, a contract is not ambiguous "unless, after applying established rules of interpretation, it remains reasonably susceptible to at least two reasonable but conflicting meanings." *Id.* at 139 (citation, quotation marks, and brackets omitted); *see also Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 560-61 (9th Cir. 2016) (explaining that a contract "must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the contract"); *United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005) (noting the same specifically as to consent decrees, which "are entered into by parties to a case after careful negotiation has produced agreement on their precise terms"); *Klamath Water Users Protective Ass'n*, 204 F.3d at 1210 (observing that "[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself"); *City of Northlake, Ill.*, 942 F.2d at 1167-68 (finding that "the proper focus must

[12] The City also asserts without evidence that the City never interpreted Paragraph 245 to apply to all PPB directives. *See* ECF 580 at 5.

be on the language contained within the consent decree itself").[13]

Here, the City, Monitor, and Amici do not point to any aspect of Paragraph 245 that, after applying established rules of interpretation, remains reasonably susceptible to at least two reasonable, but conflicting, meanings. *See CNH Indus. N.V.*, 583 U.S. at 139; Def.'s Resp. at 5-6, ECF 575; Monitor's Statement at 2, ECF 578; Amici's Resp. at 4, ECF 581. The City fails to offer any alternative, reasonable interpretation because, as discussed above, the City's view that Paragraph 245 lacks any monitorable requirements contradicts the Agreement's plain terms.

Similarly, the Monitor and Amici fail to identify any ambiguity after applying established rules of interpretation. They only assert that Paragraph 245 lacks clarity and has had an inconsistent history of monitoring.[14] *See* Monitor's Statement at 2, ECF 578; Amici's Resp. at 4, ECF 581. Therefore, consideration of extrinsic evidence is inappropriate.

Even if the Court were to consider the Department's past monitoring of Paragraph 245, that history fails to show that the Department previously interpreted Paragraph 245 to include any

---

[13] In determining whether an ambiguity exists, "[t]he fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous." *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989) (quoting *Int'l Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir. 1985)). Nor does silence in a contract show that an ambiguity exists. *Angelette, LLC v. Bradley*, 674 F. Supp. 3d 687, 696-97 (D. Alaska 2023).

[14] Outside the briefing on this Motion, the Monitor also discussed his reasons for not reviewing Paragraph 245 at the last status conference. *See* July 28, 2026 Status Conference Tr. at 48-53, ECF 577. Such reasons not already discussed elsewhere in the United States' Motion or Reply include the Monitor's comparison between the structure of this Agreement and that of a settlement agreement in an entirely separate case. *See id.* at 51-52. This is yet another instance of inappropriately relying on extrinsic evidence. Another reason the Monitor has given is the Monitor's purported inability to envision situations where PPB does not apply its policies uniformly. *See id.* at 48-49. This inexplicably fails to account for possible situations where policies on paper do not translate to practice. The Department of Justice (Department) identified such instances in its reports.

limitation on the directives Paragraph 245 covers. At most, it shows that the Department did not have the occasion to review every directive at the time of the Department's compliance assessments. That the Department did not review every directive in its past reports does not signify that the Department decided to never review those requirements or that it did not view those requirements as ever monitorable. Indeed, in reviewing Paragraph 245, the Department referenced a wide variety of PPB directives. *See* Department's Seventh Periodic Compliance Assessment Report (Department's Seventh Report) at 61-64, ECF 369-1 (discussing PPB Directives 310.00, Professional Conduct and Courtesy; 315.00, Laws, Rules, and Orders; and 1010.00, Use of Force).

Further, in contrast to the City's suggestion, ECF 580 at 5, nothing about the Department's past references to the Officer Accountability section (Section VIII) shows that Paragraph 245 contains no requirements separate from that section. The Department explained that Paragraph 245[15] addressed Section VIII's requirement that "all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair and consistent." Department's Third Periodic Compliance Assessment Report at 58, ECF 158-1 (quoting Section VIII); Department's Fourth Periodic Compliance Assessment Report at 54, ECF 195-1 (same). Nothing about that statement is at odds with treating Paragraph 245 as a substantive provision, which is, in fact, what the Department did. That there is no discrete section specifically including the introductory portion of Section VIII, which the Department cited when reviewing Paragraph 245, does not show that Paragraph 245 lacks any substantive requirements. Paragraph 245 stands on its own and includes the express requirements that its text provides. Section VIII, while providing context to Paragraph 245, is not the full equivalent of Paragraph 245—and the Department did not say that it was.

[15] At the time, Paragraph 245 was numbered 172 and then re-numbered 169.

Likewise, the City incorrectly asserts that there is no need for the Monitor to assess all provisions within a discrete section based on the Department's marking of certain provisions as "not measured" in its past reports and the United States' agreement to terminate the Community-based Mental Health Services discrete section (Paragraphs 88-90). *See* ECF 580 at 6-8. For the same reasons above, these past actions by the Department and the United States constitute impermissible extrinsic evidence.

Even if the Court were to consider such instances of extrinsic evidence, they do not support the City's contentions. As to the Department indicating in its reports that it had not measured certain provisions, that is irrelevant because it is not the United States' position that every provision should be monitored. Paragraph 249(b) does not include every provision in a discrete section to be monitored. But it includes Paragraph 245, and the Monitor needs to review Paragraph 245.

As to the United States' agreement to terminate the Community-based Mental Health Services discrete section, that history is distinguishable and not relevant to whether Paragraph 245 is appropriate for monitoring. Contrary to the City's suggestion, ECF 580 at 8, the United States did not agree to terminate this section based on any agreement that provisions within it were inherently unmonitorable. Rather, the United States agreed to terminate Paragraphs 88-90 because the City had already demonstrated longstanding compliance with those paragraphs when the Department and COCL monitored them.[16] *See* Joint Stipulated Mot. to Terminate Discrete Sections of the Settlement Agreement Pursuant to Paragraph 257 at 2-3, ECF 537 (noting that the

---

[16] In monitoring those provisions, the Department looked at, among other things, the City's engagement with community partners and participation in the process of developing community-based mental health services. *See, e.g.*, Department's Third Periodic Compliance Assessment Report at 36-39, ECF 158-1; Department's Fourth Periodic Compliance Assessment Report at 30-33, ECF 195-1; Department's Fifth Periodic Compliance Assessment Report (Department's Fifth Report) at 28-32, ECF 236-1; Department's Sixth Periodic Compliance Assessment Report at 35-38, ECF 292-1; Department's Seventh Report at 26-30, ECF 396-1.

Department and COCL found the City in substantial compliance for eight years). The Parties also concluded that the Monitor's assessment that no City obligations remained under Paragraphs 88 and 89 was proper. Joint Stipulated Reply to Joint Amicus Br. in Opp'n to Dismissal of Section V and Paragraphs 95 and 96 at 3, ECF 547. In contrast, the Department and COCL found the City only in partial compliance with Paragraph 245 when they last assessed compliance with that paragraph. Department's Seventh Report at 56, 60-65, ECF 369-1; COCL's Quarterly Report: 2023 Quarter 4 Updates and Analysis (COCL's Q4 2023 Report) at 79-80, ECF 425-1. The City struggled to achieve substantial compliance with Paragraph 245 when the Department and COCL served as monitors. *See, e.g.*, Department's Seventh Report at 56, ECF 369-1; COCL's Q4 2023 Report at 79-80, ECF 425-1; COCL's Quarterly Report: Quarter 3 Updates and Analysis (COCL's Q3 2023 Report) at 20, 108-10, ECF 409-1. Moreover, the plain language of Paragraph 245 includes significant remaining obligations. Therefore, the United States' treatment of provisions with which the City had demonstrated longstanding compliance fails to show that the same approach should apply to Paragraph 245, whose compliance status has long been an issue. Accordingly, the City's argument that Paragraph 245 lacks any substantive requirements appropriate for monitoring is baseless.

**B. The Monitor's Discretion Does Not Extend to Ignoring the Agreement's Requirements**

Although the City contends that it is within the Monitor's discretion to not review Paragraph 245, ECF 580 at 4-8, the discretion afforded to the Monitor does not include conducting his compliance assessments in a manner that is plainly inconsistent with the Agreement's requirements. Paragraph 202 prohibits the Monitor from "chang[ing] either the scope or the terms of [the] Agreement." Agreement ¶ 202, ECF 552. Here, the Agreement provides that Paragraph 245 is a substantive provision that the Monitor must review as part of the Discipline and

Accountability discrete section. Under Paragraph 202, the Monitor cannot treat Paragraph 245 as if it were nonexistent, effectively changing the Agreement's scope and terms.

Moreover, the City incorrectly points to Paragraph 217 in order to justify the Monitor's decision not to review Paragraph 245. Paragraphs 217 to 219 set forth a process for developing the Monitoring Plan, as part of which the Monitor considers the Department's and COCL's past reports, the Parties provide input on the draft Plan, and the Parties may submit unresolved disputes about the draft Plan to the Court. *See* Agreement ¶¶ 217-19, ECF 552. However, the Agreement does not authorize the Monitor to depart from the Monitoring Plan after the Plan has been finalized and filed with the Court. *See id.* ¶¶ 217-19 (contemplating no change in the Plan until the Monitor files an updated Plan at the start of another two-year term, following the same process used to develop the initial Plan). Rather, the Monitor's unilateral decision to not review Paragraph 245 has upended the Monitoring Plan process and undermined the Parties' intent to subject the Plan to the Parties', and if needed, the Court's, review. This, too, constitutes an impermissible change by the Monitor to the Agreement's terms, contrary to Paragraph 202.[17] Accordingly, Monitorial discretion does not justify the Monitor completely omitting Paragraph 245 from his review when doing so contradicts the Agreement's limits on the Monitor's role and the Agreement's process for changing the Monitoring Plan.

---

[17] Under the Monitoring Plan process, by failing to contest the inclusion of Paragraph 245 in the Monitoring Plan, the City has waived its argument that Paragraph 245 is not appropriate for monitoring.

### C. The Monitor Could Conduct a Reasonable Assessment by Reviewing Specific Compliance Concerns

Contrary to the City's and the Monitor's suggestion that there is no review of a reasonable scope to conduct (*see* Def.'s Resp. at 5, 8-10, ECF 580; July 28, 2026 Status Conference Tr. at 49, 53, ECF 577), the Monitor could reasonably assess compliance with Paragraph 245 by focusing on the most pertinent issues at the time of his review, taking into account concerns raised by the United States, Amici, and members of the public.

The Monitor's questions about how to review Paragraph 245 do not justify omitting Paragraph 245 from the Monitor's compliance assessments. *See* July 28, 2026 Status Conference Tr. at 49, 53, ECF 577. In reviewing Paragraph 245, the Monitor need not address every PPB policy and procedure that could fall under Paragraph 245 during every reporting period. Rather, as the Department did when it previously reviewed Paragraph 245, the Monitor could review specific compliance concerns as they arise and by sampling accountability records to determine whether PPB is applying policies "uniformly" and whether officers—including executives—are being held "accountable for complying with PPB policy and procedure."[18] *See, e.g.*, Department's Seventh Report at 56, 60-65, ECF 369-1 (addressing specific issues including the City's accountability investigation for particular training materials, disclosure of training materials to the Department, and accountability for shooting at moving vehicles); Department's Sixth Periodic Compliance Assessment Report (Department's Sixth Report) at 57-60, ECF 292-1 (reviewing accountability investigations for PPB's 2020 protest response, failures to identify collateral misconduct in Police Review Board files, failure to identify and investigate all allegations in

[18] If PPB has not adequately reviewed, or documented its review of, possible failures to apply PPB policies, the Monitor may also need to draw on other sources of information beyond PPB's accountability records.

critical force incidents, and interference by officer representatives in administrative interviews); Department's Fifth Periodic Compliance Assessment Report (Department's Fifth Report) at 50-52, ECF 236-1 (discussing, among other things, accountability failures related to uses of force during 2020 protest response).

Also, the Monitor himself previously identified a methodology for reviewing Paragraph 245 that the Monitor developed with the Parties' input and filed with the Court. *See* Methodological Plan at 41, ECF 484-2; Agreement ¶ 221, ECF 552. To be clear, the United States does not seek to direct the Monitor's compliance assessments. But the existence of reasonable methods of assessing compliance with Paragraph 245, which this Court has accepted,[19] negates the City's current contention that Paragraph 245 is not suited for monitoring. In addition, the Methodological Plan process, including the Parties and the Court, shows that the Monitor's discretion to conduct compliance assessments is not unlimited.

Based on the incorrect premise that, if the Monitor were to review Paragraph 245, the Monitor would only review Officer Accountability, the City contends that the Monitor has adequately reviewed the Officer Accountability section and that no further basis for monitoring exists. *See* ECF 580 at 9-10. However, nothing limits the scope of Paragraph 245 to that section. Also, in his most recent report, the Monitor identified barriers to reviewing whether the City had adequately demonstrated sustained compliance with two discrete sections whose provisions correspond with the Officer Accountability section: Investigation Timelines (Paragraphs 121-123) and Conduct of IA Investigations (Paragraphs 128-129 and 131-133). Monitor's Semi-Annual

---

[19] Under the "law of the case" doctrine, courts are "ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012) (quotation marks and citation omitted). This doctrine applies where the issue was "decided explicitly or by necessary implication in the previous disposition." *Id.* (quotation marks, brackets, and citation omitted).

Compliance Report: July 1, 2025–December 31, 2025 (Monitor's Third Report) at 62, 109-10, ECF 554-1. The Monitor explained that, until the City makes further progress in operationalizing the new Oversight System, the City would not be able to comply with provisions that depend on a functioning Oversight System. *See id.* at 110. The United States agrees. Therefore, it is not accurate that the Monitor has already rigorously assessed the Officer Accountability section, leaving nothing to assess under Paragraph 245 related to that section. Accordingly, the purported lack of a reasonable scope of assessment fails to serve as a justification for not reviewing Paragraph 245.

**D. Neither the Court's Prior Decision Nor the Underlying Clean Hands Doctrine Bars Relief**

The City and Amici inappropriately seek to extend the Court's order denying the United States' motion to access Paragraph 245-related documents (ECF 563) to this Motion. *See* Def.'s Resp. at 8-9, ECF 580; Amici's Resp. at 2-3, ECF 581. However, neither the Court's decision nor the basis for it bars the relief the United States seeks.

1. The Court's Prior Decision Does Not Bar Relief

Despite the City's assertion that the Court has determined that viewpoint discrimination does not fall within the scope of the Agreement, *see* ECF 580 at 9, the Court's prior decision does not resolve this Motion. Although the Court noted that this case has never been about viewpoint discrimination or the First Amendment,[20] the Court made that observation in evaluating the United States' conduct under the clean hands doctrine. *See* Order and Op. Denying United States' Mot. to Enforce Settlement Agreement at 10-12, ECF 563. The Court did not find, as a matter of

[20] *But see* Department's Fifth Report at 2-3, ECF 236-1 (discussing use of force against "demonstrators who sought lawful expression of grievances," citing *Gregory v. City of Chicago*, 394 U.S. 111 (1969)) and United States' Notice of Noncompliance at 1, ECF 286-1 (incorporating the Fifth Periodic Compliance Assessment Report into the notice of noncompliance).

Agreement interpretation, that the Agreement does not cover viewpoint discrimination even where that issue overlaps with other issues the Agreement covers. *See id.* at 10 (noting that the "Court . . . need not resolve any questions of contract interpretation at this time"). Rather, at the most recent status conference, the Court indicated that it had not made a final decision about its interpretation of Paragraph 245. *See* July 28, 2026 Status Conference Tr. 16:8-11, ECF 577.

Further, regardless of whether the Court finds that viewpoint discrimination or protection of First Amendment activity falls outside the scope of this Agreement, the Monitor's review of Paragraph 245 is required. Neither of the issues presented in this Motion hinges on whether the Monitor needs to review allegations of viewpoint discrimination. The issues presented are twofold: (1) whether the Monitor has a duty to assess compliance with Paragraph 245, and (2) if so, what scope of review is appropriate. As to the first issue, the Monitor has a duty to assess compliance with Paragraph 245 regardless of any viewpoint discrimination allegations, based on the plain language of the Agreement and the Monitoring Plan filed with the Court.

As to the second issue—the scope of the Monitor's Paragraph 245 assessment—it is not so narrowly focused on only the City's response to protests including those at the U.S. Immigration and Customs Enforcement (ICE) facility in Portland. The Monitor should review whether PPB uniformly implemented its Settlement-Agreement-related policies and procedures. Yes, this should include crowd-control, body-worn camera, and use-of-force directives, including at the ICE protests given public allegations that implicate whether PPB followed its own policies. But, the Monitor's assessment should also include other policies and procedures. Given the recent completion of 2020 crowd control investigations, for example, it should include whether the City uniformly held its executives responsible for their roles—leaving officers on the line without relief despite Employee Information System warnings, promoting supervisors identified as having

violated this Court's order, failing to produce a candid after-action assessment, etc. The conclusions of those reviews would have implications for PPB's training and supervision.

Moreover, there is no legal basis to extend the City's unclean-hands argument to excuse the City's long-existent obligations to uniformly enforce policies and procedures. In any respect, the basis for the Court's prior finding is moot. The prior finding relied on a supposition that the United States had issued its document requests in an effort to prevent the City from continuing to participate in *Oregon v. Trump*, Case No. 3:25-cv-1756-IM (D. Or.).[21] *See* ECF 563 at 12-13. But the merits of that case relating to the October 2025 deployment of the National Guard have now concluded. On February 17, 2026, the Ninth Circuit Court of Appeals dismissed the consolidated appeals in that case, leaving the district court's permanent injunction in effect. *Oregon v. Trump*, 171 F.4th 1144 (9th Cir. 2026). And, on March 2, 2026, the district court stated that it retained jurisdiction only for purposes of enforcing the permanent injunction and resolving issues relating to the scope of that case's protective order that have since been resolved. *See* Order, *Oregon v. Trump*, No. 3:25-cv-1756-IM, ECF 163 (D. Or. Mar. 2, 2026). Accordingly, the City's attempt to apply the prior finding is a non sequitur.

2. The Clean Hands Doctrine Does Not Bar Relief

Based on the current facts relevant to this Motion, the unclean hands defense[22] must fail. First, the public interest forecloses using unclean hands to omit monitoring of Paragraph 245.

---

[21] The United States continues to object to that finding. There is no factual basis to support it. It is untrue.

[22] Courts require movants who invoke the equitable powers of the court to "come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). In considering whether to deny relief, "[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant . . .." *Republic Molding Corp. v. B.*

When "determining whether the doctrine of unclean hands precludes relief," courts "balanc[e] the alleged wrongdoing of the plaintiff against that of the defendant, and weigh[] the substance of the right asserted by the plaintiff against the transgression which, it is contended, serves to foreclose that right." *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 960 (9th Cir. 2015) (citing *Republic Molding Corp. v. B. W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963)) (internal brackets and quotation marks omitted). In conducting the required balancing, "the extent of actual harm caused by the conduct in question, either to the defendant or to the public interest, is a highly relevant consideration." *Republic Molding Corp.*, 319 F.2d at 349-50. Specifically, "the clean hands doctrine should not be strictly enforced when to do so would frustrate a substantial public interest." *Recruit U.S.A., Inc.*, 939 F.2d at 753. In addition, "equitable relief should be withheld if its exercise would be contrary to the public interest." *Id.* at 754 (internal quotation marks omitted).

Here, the public interest in having the Monitor assess compliance with Paragraph 245 outweighs any harm that might result to the City from cooperating with such compliance assessments. Paragraph 245 is a key provision of the Agreement. A lack of compliance verification for Paragraph 245 would both frustrate a substantial public interest and be contrary to the public interest. *See Recruit U.S.A., Inc.*, 939 F.2d at 753 (rejecting an unclean hands challenge to the Equal Employment Opportunity Commission's effort to enforce a federal employment discrimination statute, reasoning that the Commission's investigation served a substantial public interest in eradicating unlawful employment discrimination and vindicating individuals' rights).

---

*W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963). The unclean hands doctrine "pertains only to misdeeds that have an immediate and necessary relation to the equity that a plaintiff seeks in respect of the matter in litigation." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 932 (9th Cir. 2014) (internal brackets and quotation marks omitted).

Like the Commission's investigation, the United States' effort to ensure compliance with the Agreement, including Paragraph 245, serves a substantial public interest: ensuring compliance with the Constitution. *See* Agreement ¶¶ 1-2, ECF 552 (explaining that the Agreement resolves an alleged pattern or practice of constitutional violations). To allow the City to escape verification of compliance with Paragraph 245—a provision with which the City has previously failed to comply and about which the United States has continuing compliance concerns—would frustrate and harm that public interest. *See Recruit U.S.A., Inc.*, 939 F.2d at 753-54.

In contrast, the City articulates no harm it will experience if the Monitor includes Paragraph 245 in his compliance assessments. Nor could the City do so because there is no reason to believe that the Monitor, operating under the Court's supervision, would conduct compliance assessments for Paragraph 245 in a manner that causes the City any harm.

3. The United States Does Not Have Unclean Hands

Neither the City nor Amici have shown any wrongdoing by the United States. Unclean hands is an affirmative defense that requires an evidentiary record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 833 (9th Cir. 2011) (requiring showing of unclean hands by clear, convincing evidence). There is none here. The City insinuates that the United States' disagreement with the Monitor's decision not to review Paragraph 245 is suspect merely based on the timing of the United States' formal disagreement with the Monitor's decision and the United States' effort to ensure compliance with Paragraph 245 as to PPB's protest responses. *See* ECF 580 at 3. However, there is nothing suspicious about the United States not immediately disputing a consequential and unexpected decision by a new Monitor in the very first report that the Monitor prepared in this case. The United States responded in a reasonable time—about four months after the Monitor's first report. *See* Monitor's Semi-Annual Compliance Report: July 1, 2024–

December 31, 2024 (Monitor's First Report) at 80, ECF 490-1 (June 30, 2025); Decl. of Yvonnie Demmeritte ¶ 1, ECF 574-1 (describing the United States' Oct. 16, 2025 comments). Although the City seeks to tie the United States' response to the Monitor's compliance assessments to alleged unclean hands, *see* ECF 580 at 3, as the Plaintiff, the United States exercises discretion about what issues to raise to the Monitor and when. As detailed in the United States' opposition to the City's motion to terminate the discrete section containing Paragraph 245, the United States may exercise such discretion in response to myriad considerations related to PPB's activities and the United States' assessment of how to best advance the goals of the Agreement. *See* Pl.'s Opp'n to Def.'s Mot. to Terminate a Discrete Section of the Settlement Agreement Pursuant to Paragraph 259 at 27-28, ECF 582.

Nor is the United States' effort to address protest-response issues evidence of any misconduct. The United States has had a longstanding interest in protest-response issues. In 2021, the United States issued a notice of noncompliance about issues it had identified in PPB's 2020 protest responses. Those issues specifically included a failure to comply with Paragraph 245, then numbered 169. *See* United States' Notice of Noncompliance at 1, ECF 286-1; Department's Fifth Report at 51, ECF 236-1. Subsequently, the United States continued to report on protest-response issues until its role as the monitor ended. *See* Department's Sixth Report at 58, ECF 292-1; Department's Seventh Report at 60, ECF 369. Following the 2020 protest events, the United States sought—and the Court approved—an addendum of additional remedies that included generally applicable accountability provisions, as well as provisions specific to protest responses. *See* Pl.'s Br. in Supp. of Mot. to Amend Settlement Agreement at 5-8, ECF 286; Minute Order, ECF 290; Order at 2-3, ECF 354. Thus, Paragraph 245 is the exact same provision that the United States found the City previously violated (ECF 286-1) and that underpinned this Court's approval of

additional remedies to resolve that finding (ECF 354 at 2) (describing the Court's conclusion, after considering the Parties' and Amici's views, that the additional remedies were fair, reasonable, and adequate). In light of this history—as well as more recent allegations brought to the United States' attention—the United States reasonably seeks the Monitor's verification that the City has achieved compliance with Paragraph 245 in the protest-response and other contexts.

Indeed, the public interest supports continued enforcement of Paragraph 245 separate and apart from any allegations concerning *current* crowd control responses. The City cannot have met Paragraph 245 when it still has not demonstrated it has properly completed, and held leadership accountable following, required investigations of crowd control responses from 2020—a matter of ongoing public interest.[23]

Additionally, the City suggests that it is somehow improper for the United States to seek the Monitor's review of Paragraph 245 when the United States has not substantiated the allegations. *See* ECF 580 at 8. The City's insinuation does not evidence unclean hands. The United States has not reached a conclusion about these allegations before reviewing all of the relevant information. But the United States need not prove a violation of the Agreement before seeking the Monitor's review. Indeed, that would defeat the purpose of such a review. Moreover, the review the United States seeks is broader than, and not specifically tied to, these allegations.

[23] Indeed, recently released memoranda show that the City continues to fail to hold most PPB leadership—Chiefs and the then Commissioner—responsible for policies and procedures surrounding the 2020 protests and the City's response. The City has sustained an investigation finding against only one former Deputy Chief and, even for him, did not address all policies at issue. *See* Memoranda from Deputy City Administrator Tracy Warden to Mayor Keith Wilson (June 25, 2026), available at https://portlandor.govqa.us/WEBAPP/_rs/(S(r3r0bsrd0s4yr0lptiyekdi0))/BusinessDisplay.aspx?sSessionID=&did=123&cat=0 [https://perma.cc/H673-6YAY] (click "08/19/2026" and "9/4/2026" download links).

The United States notes, however, that what Amici describe as "mild[] inconvenience[]," ECF 581 at 2, included reports of violence against protest attendees.[24]

Finally, even if the Court were to find unclean hands in the context of this Motion, the Court should not deny the Motion in its entirety. Protest responses are only one possible area to which Paragraph 245 applies. Should the Court find that the United States has unclean hands, this should not preclude all compliance assessments of any topic under Paragraph 245.

Accordingly, neither the Court's prior decision nor the underlying clean hands doctrine prevents the Court from ordering the Monitor's compliance assessments.

## III. CONCLUSION

The United States submits that: (1) the Agreement's plain language mandates the Monitor's assessment of compliance with Paragraph 245; (2) the Monitor improperly exercises discretion when the Monitor departs from the Agreement's plain requirements; (3) a reasonable scope of assessment for Paragraph 245 exists; and (4) the Court's unclean hands decision does not preclude relief, nor is there an evidentiary basis to support its application.

For the foregoing reasons and those discussed in the United States' Motion, the United States respectfully asks the Court to grant the United States' Motion to Compel Paragraph 245 Compliance Assessments.

[24] *See* Multnomah County District Attorney's Office, Prosecution Decline Memo (Oct. 6, 2025), available at https://www.mcda.us/wp-content/uploads/2025/10/Sortor-decline-redacted-dob.pdf [https://perma.cc/65RX-LUPP] (describing allegation that individuals, who were part of a crowd, swung at and pushed another individual to the ground); Katie Daviscourt (@KatieDaviscourt), X (Oct. 1, 2025, at 12:19 ET), available at https://x.com/KatieDaviscourt/status/1973241441834115509 [https://perma.cc/KQ6A-KPJK] (describing an allegation that an individual struck another individual in the face).

DATED: September 8, 2026.

Respectfully submitted,

For Plaintiff UNITED STATES OF AMERICA:

SCOTT E. BRADFORD
United States Attorney
District of Oregon

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

R. JONAS GEISSLER
Deputy Assistant Attorney General

PATRICK MCCARTHY
Chief
Special Litigation Section

*/s/ Catherine Yoon*
JEFFREY R. MURRAY
CATHERINE YOON
Trial Attorneys
Special Litigation Section
Civil Rights Division
United States Department of Justice