**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND**,<br><br>Defendant,<br>and<br><br>**PORTLAND POLICE ASSOCIATION**,<br><br>Intervenor-Defendant. | Case No. 3:12-cv-02265-SI<br><br>**OPINION AND ORDER ON MOTIONS REGARDING PARAGRAPHS 137 AND 245 OF THE SETTLEMENT AGREEMENT** |

Harmeet K. Dhillon, Assistant Attorney General, Civil Rights Division; R. Jonas Geissler, Deputy Assistant Attorney General, Civil Rights Division; Patrick McCarthy, Chief, Special Litigation Section, Civil Rights Division, and Jeffrey R. Murray and Catherine Yoon, Trial Attorneys, Special Litigation Section, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, 950 Pennsylvania Avenue, NW, Washington, DC 20530. Of Attorneys for Plaintiff United States of America.

Robert Taylor, Portland City Attorney; Heidi Brown, Chief Deputy City Attorney; and Lisa Rogers, Deputy City Attorneys; PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendant City of Portland.

Anil Karia, PUBLIC SAFETY LABOR GROUP, PO Box 12070, Portland, OR 97212. Of Attorneys of Intervenor-Defendant Portland Police Association.

J. Ashlee Albies, ALBIES & STARK, LLC, 1500 SW First Avenue, Suite 1000, Portland, OR 97201; and Rian Peck, VISIBLE LAW, LLC, 333 SW Taylor Street, Suite 300, Portland, OR 97204. Of Attorneys for *Amicus Curiae* AMA Coalition for Justice and Police Reform.

Juan C. Chavez, OREGON JUSTICE RESOURCE CENTER, PO Box 5248, Portland, OR 97208. Of Attorneys for *Amicus Curiae* Mental Health Alliance.

Mark P. Smith, Lead Monitor, INDEPENDENT COURT-APPOINTED MONITOR, http://www.portlandpolice monitor.com

**Michael H. Simon, District Judge.**

On July 24, 2026, the Court entered its Opinion and Order Denying United States' Motion to Enforce Settlement Agreement. ECF 563. Plaintiff, United States of America ("United States" or "Plaintiff"), had sought an order compelling Defendant, City of Portland ("City" or "Defendant"), to produce certain documents and other materials to aid the United States in deciding whether to move to enforce ¶ 245 of the Settlement Agreement in this case. For the reasons explained in the Court's decision, the Court found by clear and convincing evidence that the United States had brought its motion to enforce in bad faith and with unclean hands. *Id.*

Two weeks later, on August 7, 2026, Plaintiff filed United States' Motion to Compel Paragraph 245 Compliance Assessments. ECF 574. Defendant filed its opposition and also filed Defendant City of Portland's Motion to Terminate a Discrete Section of the Settlement Agreement Pursuant to Paragraph 259. ECF 575. In the City's motion, the City seeks an order terminating ¶¶ 137 and 245 of the Settlement Agreement pursuant to its terms. *Id.* The United States filed its opposition. Both motions have been fully briefed, including a surresponse by the United States to the City's reply in support of its motion to terminate. In addition, *amicus curiae* Albina Ministerial Alliance Coalition for Justice and Police Reform and *amicus curiae* Mental Health Alliance jointly

filed their opposition to Plaintiff's motion, asserting that it is the "United States' most recent bad faith attempt to weaponize Paragraph 245 for enforcement purposes unrelated to the underlying reason for the Settlement Agreement," adding that these *amici* "take no position on the City's Motion to Terminate Paragraphs 137 and 245." ECF 581 at 3-4. The Court held a hearing on September 15, 2026. For the reasons explained below, the Court grants the City's motion to terminate ¶¶ 137 and 245 (ECF 575) and denies as moot the United States' motion to compel ¶ 245 compliance assessments (ECF 574).

## BACKGROUND

On December 17, 2012, the United States filed a complaint against the City under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 (now recodified as 34 U.S.C. § 12601). ECF 1. In that Complaint, the United States explained that "[t]his action seeks to remedy a pattern or practice of unconstitutional uses of force by officers of the Portland Police Bureau." *Id.* ¶ 1. The United States expressly alleged:

> Too frequently, ***persons who have or are perceived to have mental illness and are in crisis*** are subjected to unnecessary or excessive force by police officers. The Portland Police Bureau lacks adequate policies to guide officers in these circumstances, or training, supervision and accountability measures necessary to ensure that officers comply with the constitutional rights of people in mental health crisis.

*Id.* (emphasis added).

On the same day that the United States commenced this lawsuit, the United States and the City filed a Joint Motion to Enter Settlement Agreement and Conditional Dismissal of Action. ECF 3. After holding several hearings, the Court found the proposed settlement to be fair, reasonable, and adequate to remedy the City's pattern or practice of subjecting persons who have or are perceived to have mental illness and are in crisis to

unnecessary or excessive force by officers of the Portland Police Bureau. The settlement agreement has been amended several times, and the operative amended agreement (hereinafter, the "Agreement") can be found at ECF 552.[1] Under the Agreement, the Court expressly retained jurisdiction over this action for all purposes until all obligations by the City under the Agreement have been terminated by the Court. ECF 552, ¶ 264; *see also* ECF 86 at 4. The Court has not yet entered an order of final termination.

Additional background relevant regarding the two motions now before the Court can be found in the Court's recent Opinion and Order Denying United States' Motion to Enforce Settlement Agreement. ECF 563. The parties are well familiar with that Opinion and Order. Thus, the Court need not repeat here what it said in that decision.

**DISCUSSION**

In November 2023, the Court granted the parties' Joint Motion to Amend the Amended Settlement Agreement. ECF 401. This amendment created a new Section XII and the new position of a court-appointed Independent Monitor ("Monitor").[2] *Id.*; *see also* ECF 390 (Joint Motion, explaining proposed amendments). Section XII(G) is titled "Partial Termination, Self-Monitoring, and Final Termination." Agreement at 60 (ECF 552). The first paragraph in that newly added section provides, in part:

> Partial termination will serve to acknowledge the successful efforts of PPB [Portland Police Bureau] and the City to date and will allow the Parties and Monitor to focus their efforts on areas in which the City is not in or has not maintained substantial compliance. Self-monitoring is a

[1] By stipulation of the parties, on August 4, 2026, the Court terminated ¶¶ 66-67, 78-79, 81, 84, 115, 124-127, and 190 of the Agreement (ECF 573), but a further amended text of the Settlement Agreement reflecting these changes has not yet been provided to the Court. These recently terminated paragraphs are not material to the pending motions.

[2] The Court uses the terms "Monitoring Team" and "Monitor" interchangeably. The Lead Monitor, Mr. Mark Smith, speaks for the Monitoring Team.

> transition phase that involves continued Monitor review of the City's methodology and self-assessments while allowing the City to demonstrate its ability to sustain compliance after termination. Final termination is achieved when the City has satisfied its obligations under this Agreement.

Agreement, ¶ 249. In a subparagraph, the Agreement defined the term "discrete section" as "a paragraph or group of paragraphs [in the Agreement] that do not necessarily implicate other provisions of the Agreement and may be assessed for compliance independently of other provisions." *Id.*, ¶ 249(a). Paragraphs 137[3] and 245,[4] collectively described as "Discipline and Accountability," comprise one of the 35 discrete sections of the Agreement. *Id.*, ¶ 249(b)(26).

The City has moved under ¶ 259 of the Agreement for partial termination of the Disciple and Accountability discrete section (¶¶ 137 and 245). Paragraph 259 provides:

> 259. If the Parties disagree about whether a discrete section of this Agreement is appropriate for partial termination, prior to filing a contested motion for partial termination, the City will notify DOJ in writing of the grounds for its motion and provide documents to support its position. . . . If the City moves to terminate discrete sections of this Agreement, DOJ will have 30 days after the receipt of the City's motion to respond . . . . If DOJ objects to the City's motion, the Court will hold a hearing on the motion, and the burden will be on the City to demonstrate that the City remains in substantial compliance with the discrete section(s) at issue after successfully self-assessing its compliance for two consecutive self-assessment reports,

[3] Paragraph 137 states: "Within 60 days of the Effective Date, PPB and the City shall ensure there are binding discipline rules to ensure that discipline for sustained allegations of misconduct is based on the nature of the allegation and defined, consistent, mitigating and aggravating factors and to provide discipline that is reasonably predictable and consistent. In all instances, the City shall follow any statutorily mandated disciplinary standards." Agreement, ¶ 137 (ECF 552).

[4] Paragraph 245 states: "PPB [Portland Police Bureau] shall apply policies uniformly and hold officers accountable for complying with PPB policy and procedure." *Id.*, ¶ 245.

> as provided in this Agreement, and that partial termination is appropriate.

*Id.*, ¶ 259.

The Monitor's first report, dated June 30, 2025, covered the period of July through December 2024. ECF 490-1. In that report, the Monitor found the City to be in substantial compliance with the requirements of ¶ 137. *Id.* at 18, 70. The Monitor also explained his reasoning for not assessing the City's compliance with ¶ 245. The Monitor first recited the inconsistent history of assessment of this paragraph by both the U.S. Department of Justice ("DOJ") and the Compliance Officer Community Liaison ("COCL").[5] *Id.* at 79. The Monitor then explained:

> Recognizing that Paragraph 245 is located within a section of the Settlement Agreement that includes provisions detailing procedural aspects of the agreement's implementation and enforcement such as selecting a Monitor, modifying the Settlement Agreement, and terminating the Settlement Agreement, and further recognizing that no other paragraphs from this section of the report were monitored by the COCL in its most recent report, *the Monitoring Team does not believe that Paragraph 245 should be included among its semi-annual compliance assessments and chooses not to do so*.

*Id.* at 80 (emphasis added).[6]

---

[5] The Parties amended the Agreement to eliminate the position of COCL, and many of the COCL's duties were later assumed by the Monitor.

[6] The Monitor further explained this conclusion at the status conference held on July 28, 2026, noting that the provision on its face is so broad that the Monitoring Team determined they could not make an effective assessment. *See* ECF 577 at 47-69 (transcript of court hearing on July 28, 2026). The Court agrees with the Monitor's independent conclusion, especially when ¶ 245 is read in the context of the entire Agreement, as the Court must. *See Tanadgusix Corp. v. Huber*, 404 F.3d 1201, 1205 (9th Cir. 2005) (stating that when considering a contract between the United States and another entity, a court must "construe the contract by reading it as a whole and interpreting each part with reference to the entire contract").

After the Monitor's First Report, the Parties jointly agreed that five discrete sections, including the Discipline and Accountability discrete section, would move into self-monitoring by the City. On July 1, 2025, Plaintiff's attorney Laura Cowall, then-Deputy Chief of the Special Litigation Section of DOJ's Civil Rights Division, responded to an email from the City and agreed that the Discipline and Accountability discrete section (¶¶ 137 and 245) should move to self-monitoring. In that email, Plaintiff's counsel Ms. Cowall stated: "Thank you for doing the review and compiling the sections that now meet the requirements of Paragraph 254. That list looks correct to us, so we agree that those sections should proceed to self-monitoring." Declaration of Heidi Brown (Brown Decl.), Ex. 1 at 1 (ECF 575-1).

---

According to Plaintiff, ¶ 245 requires (under a literal reading) the Portland Police Bureau uniformly to apply *all* its policies throughout the Bureau, even those that have nothing to do with the Agreement. In response, the City argues (consistent with the Monitor's understanding), that ¶ 245, read in the context of the entire Agreement, means only that the Portland Police Bureau must uniformly apply all policies that are required under the Agreement. Thus, the Court is presented with a question analogous to the classic "no vehicles in the park" problem of interpretation. *See generally* WILLIAM N. ESKRIDGE JR., INTERPRETING LAW: A PRIMER ON HOW TO READ STATUTES AND THE CONSTITUTION 34 (2016 Foundation Press). Further, this analogy shows that sometimes a broad, literal interpretation is not the most reasonable reading of a term or clause. *See generally* RICHARD CALNAN, PRINCIPLES OF CONTRACTUAL INTERPRETATION 39 at § 3.23 (2d ed. 2017 Oxford Univ. Press) ("A reading of the rest of the contract can show that the parties did not intend those words to be given their broad, literal meaning because that would conflict with the scheme of the contract as a whole.").

Considering the entire Agreement, including the placement of ¶ 245 immediately after the text of ¶ 243 (requiring the Portland Police Bureau to "develop its policies, procedures, and practices to ensure that they are consistent with, incorporate, address, and implement all provisions of this Agreement specific to force, training, community-based mental health services, crisis intervention, employee information system, officer accountability, and community engagement") and ¶ 244 (discussing how the Chief of Police will coordinate review of each "policy or procedure required by this Agreement"), the Monitor's interpretation of ¶ 245 (which also is the City's) is the most reasonable interpretation that is consistent with the purpose of the Agreement, which is to address concerns with the use of force by the Portland Police against persons who have or are perceived to have mental illness and people in mental health crisis. *See* ECF 563 at 11.

On July 28, 2025, several weeks after the email dated July 1, 2025, from Plaintiff's counsel to the City, Plaintiff filed the United States' Status Report. ECF 503. Consistent with the Monitor's report and Ms. Cowall's email to the City dated July 1, 2025, Plaintiff expressly stated to the Court in its Status Report that the Monitor concluded that the City had "***complied with 50 of the 56*** substantive provisions in the Amended Settlement Agreement (Agreement)." *Id.* at 2 (emphasis added). According to the United States, the only paragraphs of the Agreement with which the City was not in substantial compliance were ¶¶ 69, 76, 118, 192, 194 and 195. *Id.* Plaintiff's Status Report further stated: "The United States commends PPB [Portland Police Bureau] for its progress and accomplishments to date and looks forward to its achieving full compliance with the Agreement, the transition to self-assessing, and the successful resolution of this case." *Id.*

Nothing in the United States' Status Report expressed any disagreement with the Monitor's decision and explanation for not assessing ¶ 245 but instead considering it linked with ¶ 137 as a "discrete section," which the Monitor did assess and found to be in substantial compliance. ECF 490-1 at 18, 70. Moreover, in the Monitor's report, the Monitor included a "Compliance Tracking Chart" that expressly included 40 separate paragraphs of the Agreement, including ¶ 137 but not ¶ 245. *Id.* at 18. The Monitor also identified 15 separate paragraphs of the Agreement that were already in self-monitoring because the City had previously shown substantial compliance with those 15 paragraphs. *Id.* at 81. Because 40 plus 15 equals 55 and not 56, this confirms that the United States, in its written Status Report dated July 28, 2025, that referenced 56 provisions must have considered ¶ 245 to be linked with ¶ 137 and not in need of any separate assessment, as

the Monitor had concluded. This conclusion is further supported by the fact that the United States' Status Report listed only six paragraphs not in substantial compliance, which did not include ¶ 245. ECF 503 at 2. Plaintiff filed its written Status Report under the name of Assistant Attorney General Harmeet K. Dhillon. *Id.* at 3.[7]

On July 29, 2025, the day after the United States filed its Status Report (ECF 503), the Court held an interim status conference. ECF 506 (Minutes); ECF 586 (Transcript). During this hearing, Plaintiff did not raise any objection to the Monitor's interpretation that ¶ 245 need not be included in any compliance assessment. ECF 490-1 at 80; *see also* ECF 586 (transcript from hearing held on July 29, 2025). Indeed, during this hearing, Plaintiff's counsel Catherine Yoon expressly told the Court:

> Also, we would like to thank the new independent monitor and his team for all of their work on the first monitoring

---

[7] The United States now argues, for the first time, that Deputy Section Chief Cowall, the author of the email dated July 1, 2025, lacked authority to make any concessions on behalf of the United States. In response, the City relies on the doctrine of equitable estoppel. The City states that "[e]quitable estoppel has been used to prohibit the government from asserting its own theory of recovery, or from asserting a theory which would undermine the plaintiff's cause of action." *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir. 1981) (citing *Cooper v. Bell*, 628 F.2d 1208 (9th Cir. 1980) (remanding to determine whether the United States was estopped from asserting filing deadlines to the plaintiff's claim)); *Sun Il Yoo v. Immigr. & Naturalization Servs.*, 534 F.2d 1325 (9th Cir. 1976) (holding that the government was estopped from deporting the plaintiff for his failure to comply with certain labor provisions when the government itself did not process the relevant information); *United States v. Wharton*, 514 F.2d 406 (9th Cir. 1975) (holding that the plaintiffs may not be ejected because of what they were incorrectly told by the United States); *Fox v. Morton*, 505 F.2d 254 (9th Cir. 1974) (holding that the Bureau of Indian Affairs was estopped from denying that a work program was "general assistance" for termination purposes).

The Court agrees with the City's estoppel argument and is unpersuaded by the United States' attempt to distinguish the City's cases. But the City does not need to rely on that argument. Even if Deputy Section Chief Cowall lacked authority to bind the United States, Assistant Attorney General Dhillon's name appears on the written Status Report that confirms the understanding of ¶ 245 explained by the Monitor and the City. *See* ECF 503. Further, the United States does not argue that Assistant Attorney General Dhillon lacked authority to bind Plaintiff to the statements in its Status Report filing.

> report issued last month and about which we will hear more today. * * *
>
> In the time since the City and DOJ entered the settlement about a decade ago, the City has made significant progress. Consistent with this progress in 2023, the Court terminated 40 of the settlement's 96 substantive provisions. ***Only 56 provisions remain, a portion of which are being monitored through the independent monitor and a portion of which have moved into self-monitoring as provided by the settlement.***
>
> *Last month, the new independent monitor issued his first report.* Again, the City demonstrated progress. ***The monitor found the City in substantial compliance with all but six provisions.*** * * *
>
> Overall, based on the monitor's report, we believe there is a clear path forward to successful implementation of the settlement and ultimately termination of the settlement. We hope to support the city in achieving full compliance with a settlement as quickly as possible.

ECF 586 at 11-12 (comments of Ms. Yoon representing Plaintiff at hearing held on July 29, 2025) (emphases added). At the same hearing, the Monitor stated that only six paragraphs remain for continued assessment by the Monitor:

> Ultimately we found that the City had demonstrated substantial compliance with all but six of the paragraphs subject to monitoring during the reporting period, which covered the third and fourth quarters of 2024.

*Id.* at 54 (comments of Lead Monitor, Mr. Smith). As noted, none of those paragraphs were ¶ 245. *See* United States' Status Report, ECF 503 at 2.

The City then developed a self-monitoring plan for the identified discrete sections (including the discrete section comprised of ¶¶ 137 and 245) in consultation with the Monitor and produced an associated score card for the first and second quarters of 2025. The City developed this plan in reliance on the Monitor's report; Plaintiff's email dated

July 1, 2025 (agreeing to move the identified "discrete sections" into self-monitoring); Plaintiff's Status Report (filed under the name of Assistant Attorney General Dhillon); and the comments made to the Court at the hearing held on July 29, 2025, by Plaintiff's counsel (Ms. Yoon) and the Monitor. The City followed its self-monitoring plan, and the Monitor reviewed and approved the City's methodology and self-assessments. Further, the Monitor has found the City in substantial compliance with its self-monitoring plan. Based on the length of time that has passed, the statements made by the United States in Plaintiff's Status Report (ECF 503) and orally by its counsel at the interim status conference, the City's reliance on the agreement by the United States to move the "discrete section" containing ¶¶ 137 and 245 into self-monitoring, and the City's successful self-monitoring of that discrete section for the past year, the City has met its burden needed for the Court to grant the City's motion for termination of that discrete section. Further, Plaintiff only recently changed its position on ¶ 245 after issues arose between the current Administration and the City of Portland concerning the Immigration and Customs Enforcement facility in Portland, Oregon. *See* ECF 563.

## CONCLUSION

For the reasons stated in this Opinion and Order, the Court GRANTS the City of Portland's motion to terminate paragraphs 137 and 245 of the Settlement Agreement, as amended. ECF 575. The Court also DENIES AS MOOT the United States' motion to compel the Monitor to provide paragraph 245 compliance assessments. ECF 574.

**IT IS SO ORDERED.**

DATED this 15th day of September, 2026.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge